1

The Honorable _____

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

STATE OF WASHINGTON,

12

Plaintiff,

13

v.

14

THE GEO GROUP, INC.

15

Defendant.

16

(SUPERIOR COURT OF THE STATE OF
WASHINGTON FOR PIERCE COUNTY,
CAUSE NO. 17-2-11422-2)

Case No: _____

**GEO'S NOTICE OF REMOVAL TO
FEDERAL COURT**

17

18

19

20

21

22

23

24

25

26

27

28

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION AND BACKGROUND ................................................................ 1

GROUNDS FOR REMOVAL ................................................................................... 5

I.  THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE ............................................................................................ 5

    A.  GEO Is A "Person" Under The Statute ................................................. 6

    B.  There Is A Causal Nexus Between The State's Claims And Actions GEO Took Pursuant To ICE's Direction ............................................. 6

    C.  GEO Has Colorable Defenses To The State's Claims .......................... 10

II.  THIS CASE IS REMOVABLE BECAUSE IT RAISES SUBSTANTIAL AND DISPUTED FEDERAL ISSUES THAT THE COURT MAY ENTERTAIN WITHOUT INTERFERING WITH THE BALANCE OF FEDERAL AND STATE JUDICIAL RESPONSIBILITIES ................................. 18

III.  THE COURT HAS DIVERSITY JURISDICTION ....................................... 25

CONCLUSION ......................................................................................................... 31

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES:**

4

5

*Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) .....................................10, 14, 15, 16

6

*Arizona v. Manypenny*, 451 U.S. 232 (1981) ................................................................6

7

*Arizona v. United States*, 567 U.S. 387 (2012) ...................................................11, 12

8

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985).....................................26

9

10

*Bijeol v. Nelson*, 579 F.2d 423 (7th Cir. 1978) ...........................................................16

11

*Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988) ...................................................22

12

*Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997)............................................................16

13

*Colorado v. Symes*, 286 U.S. 510 (1932) .......................................................................6

14

15

*Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315 (N.D. Ala. 2010) .......................7

16

*Dep't of Fair Emp't & Hous. v. Lucent Tech., Inc.*, 642 F.3d 728 (9th Cir.
2011) ...........................................................................................25, 26, 27, 29

17

18

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006)............................5

19

*Ex parte Nebraska*, 209 U.S. 436 (1908) ...................................................................25

20

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d
1237 (2017) .............................................................................................5, 6

21

22

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ..........................................................2, 19, 20, 21, 24

23

24

*Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ...............13

25

*Hauenstein v. Lynham*, 100 U.S. 483 (1879) ...............................................................29

26

*Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993) .......................................................16

27

28

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

ii

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Hines v. Davidowitz*, 312 U.S. 52 (1941)................................................................12

*Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash. 2d 853, 93 P.3d 108 (2004)..........15

*Hopkins v. Walker*, 244 U.S. 486 (1917) ................................................................20

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 723
    (E.D. Pa. 2017)............................................................................................29

*Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 7 P.3d 807 (2000) .................................15

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) .......................6, 7, 10, 11

*Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301 (E.D. Mich. July 23,
    2013) ...........................................................................................................16

*Jefferson Cty., Ala. v. Acker*, 527 U.S. 423 (1999) ...........................................6, 11

*Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966) .......................................................16

*Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015).............................15

*Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) ..........................................6

*Lozano v. City of Hazleton*, 620 F.3d 170 (3d Cir. 2010), *vacated and
    remanded on other grounds by City of Hazleton v. Lozano*, 131 S. Ct 2958
    (2011) ..........................................................................................................17

*Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) ...........15, 16, 21, 24

*Mesa v. California*, 489 U.S. 121 (1989).........................................................6, 10,  11

*Miller v. Dukakis*, 961 F.2d 7 (1st Cir. 1992) ........................................................17

*Mo., Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53 (1901)...............................26, 27

*Morgan v. Bill Vann Co., Inc.*, No. 11-0535-WS-B, 2011 WL 6056083 (S.D.
    Ala. Dec. 6, 2011) ........................................................................................7

*Nebraska ex rel. Dep't of Soc. Servs. v. Bentson*, 146 F.3d 676 (9th Cir. 1998)....................16

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012).................................26

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

iii

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325 (D. Conn. 2008) ...................................7

*Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1894) ........................................25

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)..........................................12

*Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011)...................................................11

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) ...............................................6

*Toll v. Moreno*, 458 U.S. 1 (1982) ................................................................12

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) .....................................15

*Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) ...........................................15

*Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997)........................................14, 15

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007)........................................6, 7

*Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618 (Mass. App. Ct. May 24, 2017)........................................15, 23

*Willingham v. Morgan*, 395 U.S. 402 (1969)..........................................................6

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) ................................6

**STATUTES:**

U.S. Const. art. I, § 8, cl. 4..........................................................................21

U.S. Const. art. III, § 2, cl. 1 ........................................................................25

U.S. Const. art. VI, cl. 2. ...........................................................................11

1 U.S.C. § 1 ........................................................................................6

8 U.S.C. § 1103 .............................................................................2, 12, 21

8 U.S.C. § 1225 ....................................................................................12

8 U.S.C. § 1226 .........................................................................2, 10, 12, 21

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

iv

8 U.S.C. § 1226a ...................................................................................12, 21

8 U.S.C. § 1231 ...........................................................................................12

8 U.S.C. § 1324a ................................................................2, 10, 17, 21

8 U.S.C. § 1555 .....................................................................................2, 13

28 U.S.C. § 1331 .........................................................................1, 2, 19, 20

28 U.S.C. § 1332 .......................................................1, 2, 25, 26, 29, 30

28 U.S.C. § 1441 .............................................................1, 2, 5, 19

28 U.S.C. § 1442 ...................................................................1, 5, 6

28 U.S.C. § 1446 .............................................................................................3

29 U.S.C. § 202 ................................................................................14, 17

Dep't of Justice Appropriations Authorization Act, 1979,
    Pub. L. No. 96-132, § 2(10), 93 Stat. 1040, 1042 (1979) ..................................13

Dep't of Justice Appropriation Act, 1979,
    Pub. L. No. 95-431, 92 Stat. 1021 (Oct. 18, 1978) ..........................................13

Wash. Rev. Code § 43.10.030 ..............................................................................3

Wash. Rev. Code § 49.46.010 .....................................................................1, 4, 24

Wash. Rev. Code § 49.46.020 .....................................................................3, 4, 30

Wash. Rev. Code § 49.46.090 ..............................................................................3

Wash. Rev. Code § 49.48.040 .........................................................................3, 27

Wash. Rev. Code § 49.48.050 ..............................................................................3

Wash. Rev. Code § 49.48.070 ..............................................................................3

**REGULATIONS:**

Washington Dep't of Corrections Policy 700.100 ................................................1

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

**RULE:**

W.D. Wash. Local Civil Rule 101 ............................................................3

**OTHER AUTHORITIES:**

INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for
  Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13,
  1992) ..................................................................................................14

Performance-Based Nat'l Detention Standards 2011 ...............................8, 9, 14, 17

Washington Attorney General's Office, *AG Ferguson sues operator of the
  Northwest Detention Center for wage violations* (Sept. 20, 2017)
  (http://www.atg.wa.gov/news/news-releases/ag-ferguson-sues-
  operator-northwest-detention-center-wage-violations)............................30

13E Wright, Miller, & Cooper, Federal Practice and Procedure § 3613 (3d ed.
  2017) ..................................................................................................31

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

vi

**GEO'S NOTICE OF REMOVAL TO FEDERAL COURT**

The GEO Group, Inc. ("GEO") gives notice that it is removing this case from state court to the United States District Court for the Western District of Washington at Tacoma, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1442.

**INTRODUCTION**

The State of Washington  ("State") filed a lawsuit against GEO, a private company that contracts with the Department of Homeland Security—U.S. Immigration and Customs Enforcement ("ICE") to operate the Northwest Detention Center ("NWDC"), which temporarily houses federal immigration detainees in ICE's custody.  The State alleges that GEO is required to pay these federal detainees "wages" at the rate prescribed by Washington's Minimum Wage Act ("MWA") as if they are "employees" and that GEO should be forced to "disgorge" money under a claim of unjust enrichment—even though Washington itself *excludes* detainees held in its own facilities from wage protections and pays them cents per hour for similar activities.[1]

This suit is removable to federal court on three grounds.  First, this case is removable under the Federal Officer Removal Statute,[2] which applies to GEO as a government contractor. The causal nexus of the State's Complaint alleges conduct directed by the federal government, and GEO has a colorable defense that the State's claims are preempted by federal law.  Second,

---

[1] Although the State is demanding that GEO pay minimum wage to detainees in federal custody, Washington's MWA expressly exempts residents of state, county or municipal detention institutions from minimum wage protections.  Wash. Rev. Code § 49.46.010(3)(k).  Moreover, detainees and inmates in the custody of the Washington Department of Corrections ("DOC") are provided "opportunities to support the daily operation and maintenance" of state facilities, but they are compensated at fraction of the minimum wages that the Attorney General demands GEO to pay federal detainees.  *See* Washington Dep't of Corrections Policy 700.100 (capping compensation at $55 per month, or less than 32 cents per hour, based on a 40-hour week).

[2] 28 U.S.C. § 1442.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

1  the case is removable under the general removal statute,[3] because this Court has "original

2  jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

3  States,"[4] and this case involves issues of federal law and federal interests.[5]   The Complaint

4  necessarily states a federal issue with its reference to "adult civil detainees," a population defined

5  exclusively under federal law,[6] for whom the right to work is restricted under federal law,[7] and

6  whose "allowance" paid for work is determined by federal statute and agencies with authority

7  delegated by Congress.[8] Removal of this case to federal court will provide GEO a better chance

8  of a fair proceeding and maintain needed uniformity in the growing number of similar federal

9  cases.   Third, the case is removable because the Court has diversity jurisdiction under 28 U.S.C.

10  § 1332(a).

## BACKGROUND

        Since 2004, GEO has operated NWDC in Tacoma's tideflats to serve the detention

processing needs of ICE in the Western region.   As part of its contract with ICE to operate

NWDC (the "Contract"), GEO must offer a Voluntary Work Program ("VWP") to detainees.

Detainees may choose to participate in this program to occupy their time or to learn transferable

skills while awaiting deportation or release.   Federal regulations specify the $1.00 per day rate

that GEO pays to each detainee who participates, for which ICE reimburses GEO.

---

[3] 28 U.S.C. § 1441.
[4] 28 U.S.C. § 1331.
[5] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (explaining that federal jurisdiction is proper when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities").
[6] 8 U.S.C. § 1226(a).
[7] 8 U.S.C. §§ 1226(a)(3), 1324a.
[8] 8 U.S.C. §§ 1555(d), 1103.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Washington's Department of Labor and Industries ("L&I") has conducted site visits over the years based upon the complaints of detainee advocates who seek to use state regulatory authority to control immigration policy. L&I has never applied state minimum wage laws to this voluntary work program.  Despite the absence of any agency enforcement action on this subject, on September 20, 2017, the elected Attorney General filed a Complaint naming Washington State as the plaintiff against GEO, styled *State of Washington v. The GEO Group, Inc.*, No. 17-2-11422-2, in Superior Court for the State of Washington for Pierce County, that cites alleged violations of Washington's MWA.  While Attorney General Ferguson held his press conference, GEO received service on September 20, 2017.[9]  The Attorney General does not identify in the complaint any legislative delegation of authority to his office to initiate a MWA case against a corporation he considers an employer.[10]  Actually, the Legislature delegated enforcement authority for the MWA to L&I, not the Attorney General,[11] or alternatively to local authorities where higher minimum wage rates control,[12] as they do in Tacoma.[13]

---

[9] Pursuant to Local Civil Rule 101(b), a copy of the Complaint filed in this case is attached as Exhibit 1.  This notice of removal is timely, because it is filed within 30 days of September 21, 2017 summons and service of the complaint.  28 U.S.C. § 1446(b)(1).  Pursuant to 28 U.S.C. § 1446(d), GEO is concurrently filing a copy of this Notice of Removal with the Clerk of the Court of the Superior Court in Pierce County, Washington in Cause No. 17-2-11422-2, and serving a copy on counsel for the State of Washington.  Additionally, a complete copy of all documents filed in the state court proceeding will be submitted with a subsequent declaration of counsel. W.D. Wash. LCR101(c).

[10] The State cites Wash. Rev. Code § 43.10.030(1), which authorizes the attorney general to appear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested.  Complaint at ¶ 2.1.

[11] Wash. Rev. Code §§ 49.46.090; 49.48.040.

[12] Wash. Rev. Code § 49.48.050.

[13] Resolution No. 39237, Tacoma Citizen's Initiative 1, adopted November 3, 2015, set Tacoma's minimum wage rate at $11.15 beginning January 1, 2017.  The state minimum wage rate became $11.00 per hour on January 1, 2017.  The rates gradually rise thereafter, reaching $13.50 per hour by 2020. Wash. Rev. Code § 49.46.020.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

3

The State, not L&I, alleges two claims against GEO.  First, the State alleges that detainees at NWDC are "employees" covered by Washington's minimum wage law,[14] and that GEO is an "employer" violating the minimum wage law by paying detainees who participate in the federally mandated VWP $1 per day, rather than the state minimum wage.[15]  Second, the State alleges that GEO is unjustly enriched by retaining the difference between the $1 per day and the minimum wage rate.[16]

The State seeks a declaration that "detainees" who work at NWDC are "employees" and that GEO is an "employer" under the Washington minimum wage law.[17] The State also seeks a declaration that GEO must comply with the state minimum wage,[18] and treat detainees as employees under the MWA, and an injunction against GEO from compensating detainees less than the minimum wage when the detainees participate in the federally mandated VWP while detained at NWDC.[19]  The State seeks a declaration that GEO has been unjustly enriched by the practice of "failing to adequately pay detainee workers" for their VWP activities at NWDC.[20] The State also seeks monetary relief in the form of an order to GEO to "disgorge the amount by which it has been unjustly enriched."[21]  It also seeks attorney's fees and costs.[22]  GEO will move to dismiss the case citing federal law and other authorities.  This Court already has before it a purported class action, brought by a former NWDC detainee, alleging the same MWA claims for

---

[14] *See* Wash. Rev. Code §§ 49.46.010, 49.46.020.
[15] Complaint, ¶¶ 5.1-5.6.
[16] Complaint, ¶¶ 6.1-6.6.
[17] Wash. Rev. Code § 49.46.010(3), (4); Complaint ¶¶ 7.1-7.2.
[18] Wash. Rev. Code § 49.46.020.
[19] Complaint ¶¶ 7.3-7.4.
[20] Complaint ¶ 7.5.
[21] Complaint ¶ 7.6.
[22] Complaint ¶ 7.7.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

4

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

the detainees at NWDC based upon diversity jurisdiction, entitled *Chao Chen v. The GEO Group, Inc.*, ECF Case No. 3:17-cv-05769 (filed Sept. 26, 2017).

**GROUNDS FOR REMOVAL**

## I.   THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Under the Federal Officer Removal Statute, a civil action commenced in a state court and that is against or directed to "[t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or any agency thereof, in an official or individual capacity, for *or relating to any act under color of such office*" may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending.[23]

The Ninth Circuit has recognized a court's "duty to 'interpret Section 1442 broadly in favor of removal.'"[24]  "Because it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441."[25] A case may be removed under section 1442 "even if the plaintiff couldn't have filed the case in federal court in the first instance," and removals under section 1442 are not subject to the well-pleaded complaint rule.[26]  Section 1442 is "liberally construed to give full effect" to the purpose of giving federal actors access to a federal forum;[27] the "right of removal is absolute for conduct

---

[23] 28 U.S.C. § 1442(a)(1) (emphasis added).
[24] *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (2017) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)).
[25] *Durham*, 445 F.3d at 1253.
[26] *Id.*
[27] *Colorado v. Symes*, 286 U.S. 510, 517 (1932).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

performed under color of federal office, and … 'should not be frustrated by a narrow, grudging interpretation.'"[28]

A defendant may invoke the statute by showing that (1) it is a person within the meaning of the statute, (2) a causal nexus exists between plaintiff's claims and the actions that the defendant took pursuant to a federal officer's direction, and (3) the defendant has a colorable federal defense to plaintiff's claims.[29]

## A.    GEO Is A "Person" Under The Statute.

It is well settled that the term "person" under Section 1442(a) applies to a private company that contracts with the federal government.[30]   GEO is a corporation operates NWDC under its Contract with ICE, a federal agency.  Therefore, GEO is a "person" under the statute.

## B.    There Is A Causal Nexus Between The State's Claims And Actions GEO Took Pursuant To ICE's Direction.

A removing defendant must show that the actions that are challenged by a plaintiff are "actions under" a federal officer, and that there is a causal nexus between the plaintiff's claims and those actions.[31]   For a private actor to be "acting under" a federal officer, the private entity must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."[32]   The assistance private contractors provide federal officers should go "beyond

---

[28] *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).
[29] *Goncalves*, 865 F.3d at 1244; *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014); *see also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).
[30] *See* 1 U.S.C. § 1 (describing words "person" and "whoever" to include corporations); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)  ("There is no indication that Congress meant to exclude corporations."); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *see also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007) (noting that statute permits such removal because "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks").
[31] *See Goncalves*, 865 F.3d at 1244-45.
[32] *Id.* at 1245 (emphasis in original) (quoting *Watson*, 551 U.S. at 152).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

6

simple compliance with the law and help[] officers fulfill other basic governmental tasks."[33]  The "hurdle erected by [the causal-connection] requirement is quite low."[34]  Rather, "[a]ll a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under [the federal contract]."[35]  Indeed, rather than requiring strict, definitive "but for" causation, courts have held that a defendant "must only establish that the act that is the subject of [a plaintiff's] attack … occurred *while* defendants were performing their official duties."[36]

Since 2004, ICE has entrusted GEO as its contracting partner to carry out ICE's duty to house immigration detainees at NWDC.  GEO provides a comprehensive range of services, including the administration of the work programs at NWDC, directed by its Contract with ICE and applicable federal statutes, regulations and policies.  The State filed this action "to enforce Washington's minimum wage laws and to remedy the unjust enrichment that results from" GEO's alleged "failure to adequately pay immigration detainees for their work" at NWDC.[37]  The State's pleading concedes that GEO contracts with ICE "for the detention of adult civil detainees awaiting resolution of their immigration matters," and that GEO's administration of the work programs and related payments are directed by ICE policy, stating that ICE's Performance-Based National Detention Standards ("PBNDS") "require [GEO] to pay detainees at least $1 per

---

[33] *Id.* at 1244;  *see also id.* at 1249 (describing *Isaacson*, 517 F.3d at 137 as "distinguishing between entities that 'contracted with the Government' and entities that were simply 'regulated by the federal law'").
[34] *Id.* at 1244; *see also Morgan v. Bill Vann Co., Inc.*, No. 11-0535-WS-B, 2011 WL 6056083, at *8 (S.D. Ala. Dec. 6, 2011) (noting that the "causal nexus requirement does not establish a stringent standard," and is not a difficult burden to meet).
[35] *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1335 (N.D. Ala. 2010).
[36] *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 330 (D. Conn. 2008) (alteration and emphasis in original).
[37] Complaint at ¶ 1.1.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

day for their labor."[38]   Thus, on the face of the Complaint, GEO's payments (or alleged lack of

payments) to detainees under the direction of ICE is the "causal nexus" of the State's suit.

The Contract for NWDC includes a detailed Statement of Work that requires that

"[d]etainee labor shall be used in accordance with the detainee work plan developed by the

Contractor, and will adhere to the ICE PBNDS on Voluntary Work Program."[39]   The detainee

work plan "must be voluntary, and may include work or program assignments for industrial,

maintenance, custodial, service, or other jobs."[40]   ICE retains control over decision-making about

who can work in the VWP.[41]

The PBNDS provides, as an "Expected Practice," that "[d]etainees shall be provided the

opportunity to participate in a voluntary work program."[42]  The policy provides specific details on

how the VWP is to be administered.   It specifically provides that "[d]etainees shall receive

monetary compensation for work completed in accordance with the facility's standard policy,"

and that compensation is at least $1.00 (USD) per day."[43]   This section does not require that

compensation adhere to the minimum wage of any state.   Nor are there provisions to offset the

payment with the costs of the services the detainee receives such as room, meals, clothing,

medical, and dental care.   The facility policy, which is approved by ICE, specifies that detainees

---

[38] Complaint at ¶¶ 3.10, 4.3.
[39] Declaration of Joan Mell ("Mell Declaration"), at ¶ 1.3 (Statement of Work at 82).  The Mell Declaration is attached as Exhibit 2.
[40] Id.
[41] Id. ("It will be the sole responsibility of ICE to determine whether a detainee will be allowed to perform on voluntary work details and at what classification level.").
[42] PBNDS, § 5.8.V.A ("Voluntary Work Program"), attached as Exhibit 3.
[43] PBNDS, § 5.8.V.K; see also ICE National Detainee Handbook, at 12, which is attached as Exhibit 4.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

will be paid $1 per day for VWP participation.[44]  Payment for the activities undertaken in the

VWP is also specifically established in the Contract:

> Detainee Volunteer Wages for the Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee.  Contractor shall not exceed the amount shown without prior approval by the Contracting Officer.[45]

As this provision dictates, detainees receive $1 per day to participate.  ICE clearly expects that

GEO would not pay more than the reimbursement amount because the Contract specifies that

GEO "shall not exceed the amount shown without prior approval by the Contracting Officer."

The requirement to seek approval of the Contracting Officer is similar to that in numerous other

expenses, such as overtime pay or travel costs, for which the federal government expects to

control contractors' expenditures.[46]  Thus, the VWP and its rate for participation are directed by

the PBNDS and the Contract, and cannot be altered without ICE's approval.

The Statement of Work provides that GEO must comply with, among other things,

"*[a]pplicable* federal, state and local labor laws and codes."[47] To comply with federal labor laws,

GEO is forbidden from employing immigration detainees at NWDC, because they are not U.S.

citizens or otherwise lawfully admitted into the United States.[48]  The Fair Labor Standards Act

("FLSA") does not recognize federal immigration detainees as "employees" who are entitled to a

---

[44] *See* NWDC Detainee Handbook (4.1.4), Exhibit 5, at 1, 15 ("Wages are $1.00 per day.").
[45] Mell Declaration at ¶ 1.3 (Contract at 5).
[46] Mell Declaration at ¶ 1.3 (Statement of Work at 97) (noting that Contracting Officer "is the only person authorized to approve changes in any of the requirements under this contract.").
[47] Mell Declaration at ¶ 1.3 (Statement of Work at 44); *see also* Complaint 3.11.
[48] Mell Declaration at ¶ 1.3 (Statement of Work at 63) ("The Contractor shall agree that each person employed by the firm or any subcontractor(s) shall have a social security card issued and approved by the Social Security Administration and shall be a United States citizen or a person lawfully admitted into the United States for permanent residence . . ."); 8 U.S.C. §§ 1226, 1324a.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

9

minimum wage.[49]   The state minimum wage laws asserted by the State are **in**applicable at

NWDC because detainees, even when participating in program activities, are unauthorized

aliens, and not "employees" of GEO; detainees and employees are clearly distinguished in the

Contract.[50]   Even assuming for the purpose of argument that the State articulates a colorable

minimum wage claim, the Statement of Work contains preemptive language, directing that "[i]n

cases where other standards conflict with DHS/ICE policy or standards, DHS/ICE policy and

standards prevail."[51] Accordingly, ICE standards would prevail over state wage laws.  Therefore,

in all respects, the causal nexus of the State's Complaint—that GEO is required to pay detainees

a minimum wage—is directed by the federal government.

### C.      GEO Has Colorable Defenses To The State's Claims.

To demonstrate a colorable federal defense under the Federal Officer Removal Statute,

the removing party is not required to prove that it will prevail on the defense, or even that it is

meritorious.[52]   The removing party is only required to show that it has a defense, based in federal

law, which arises out of the removing party's compliance with the demands of a federal officer.[53]

A court should "credit the [defendant's] theory of the case for purposes of [the causal connection

and colorable defense] elements of [the] jurisdictional inquiry."[54] The well-pled complaint rule

does not apply when seeking to remove a case under the Federal Officer Removal statute,

---

[49] *Alvarado Guevara v. I.N.S.*,  902 F.2d 394, 396 (5th Cir. 1990).
[50] Mell Declaration at ¶ 1.3 (Statement of Work at 62) ("The employee may not interact with any detainee except in a relationship that supports the approved goals of the facility."); Mell Declaration at ¶ 1.3 (Statement of Work at 82) ("Detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor.").
[51] Mell Declaration at ¶ 1.3 (Statement of Work at 44).
[52] *Mesa*, 489 U.S. at 129; *see also Isaacson*, 517 F.3d at 138 ("Courts have imposed few limitations on what qualifies as a colorable defense.").
[53] *Mesa*, 489 U.S. at 129-30.
[54] *Jefferson Cty,*, 527 U.S. at 432.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

because a core purpose of the statute is to let the "validity of the [federal] defense" be "tried in federal court."[55]   A defendant seeking removal need not "virtually... win his case,"[56] nor must his defense even be "clearly sustainable" on the facts.[57]   Therefore, even if the complaint contains only state law claims, removal is possible under this statute if a colorable federal defense exists as to those claims.[58]

GEO has a colorable defense that the State's MWA claim and unjust enrichment claims are preempted by federal law.  The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."[59] Under this principle, Congress has the power to preempt state law.[60]  "There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."[61] Additionally, states are "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance," which "can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"[62]  State laws are also preempted "when they conflict with federal law," including

---

[55] *Isaacson*, 517 F.3d at 139; *see also Rodas v. Seidlin*, 656 F.3d 610, 616-17 (7th Cir. 2011).
[56] *Jefferson Cty.*, 527 U.S. at 431.
[57] *Isaacson*, 517 F.3d at 139.
[58] *Jefferson Cty.*, 527 U.S. at 431.
[59] U.S. Const. art. VI, cl. 2.
[60] *Arizona v. United States*, 567 U.S. 387, 399 (2012).
[61] *Id.* at 399.
[62] *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   where the challenged state law "stands as an obstacle to the accomplishment and execution of the

2   full purposes and objectives of Congress."[63]

3       "The Government of the United States has broad, undoubted power over the subject of

4   immigration," and "[t]he federal power to determine immigration policy is well settled."[64]  The

5   supremacy of the national power "in the general field of foreign affairs, including power over

6   immigration, naturalization and deportation, is made clear by the Constitution."[65] This power

7

8   includes Congress' broad authority, which it has delegated to DHS and ICE, to detain aliens

9   pending removal or a removal hearing, or to detain certain categories of aliens.[66]  These

10  agencies, in turn, have authority to contract with private sector entities, such as GEO, to provide

11  secure facilities,[67] and broad administrative discretion.[68]

12

13      Ultimately, Congress, by statute and through delegated authority, determines whether and

14  how much federal immigration detainees are paid for work.  In a statute enacted in 1950, and

15  unchanged today, Congress provided that:

16

17      Appropriations now or hereafter provided for the Immigration and Naturalization Service
        shall be available for payment of . . . (d) payment of allowances (at such rate as may be
18      specified from time to time in the appropriation Act involved) to aliens, while held in
        custody under the immigration laws, for work performed . . .[69]
19

20  From 1950 to 1979, Congress specially authorized "payment of allowances . . . to aliens, while

21  held in custody under the immigration laws, for work performed."  The appropriations bills for

22  this time period authorized reimbursement for the VWP program "at a rate not in excess of $1.00

23

24  _____

25  [63] *Id.* at 399-400 (citations omitted).
    [64] *Arizona*, 567 U.S. at 394-95.
    [65] *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941); *see also Toll v. Moreno*, 458 U.S. 1, 10 (1982).
26  [66] *See* 8 U.S.C. §§ 1225, 1226, 1226a, 1231.
    [67] 8 U.S.C. § 1231(g).
27  [68] 8 U.S.C. § 1103.
    [69] 8 U.S.C. § 1555(d).
28  GEO'S NOTICE OF REMOVAL TO FEDERAL COURT            III BRANCHES LAW, PLLC
    ECF CASE NO. _____                                      Joan K. Mell
                                                          1019 Regents Blvd. Ste. 204
                        12                                    Fircrest, WA 98466
                                                             253-566-2510 ph
                                                          joan@3brancheslaw.com

per day."[70]  After the 1979 appropriation, Congress ceased specifically appropriating monies for the VWP program, opting instead to provide more general appropriations authorization.[71]  Under this more general authority, INS (and now ICE) retained authority to reimburse VWP detainees, but without the requirement that "Congress [] set the rate of compensation for each fiscal year."[72]  The $1.00 per day allowance remains "a matter of legislative discretion."[73]

As discussed above, the Contract for  NWDC provides, consistent with Congressional direction, that ICE will reimburse GEO for allowances for detainee participation at a rate of $1 per day.  The $1 per day amount is also consistent with ICE's PBNDS.   That amount cannot be changed without the approval of the ICE Contracting Officer.  Thus, the federal government continues to direct the amount that is paid to detainees through the reimbursement rate.

Demonstrating the degree to which Congress (and the federal agencies to which it has delegated power) control the field of payment of detainee activities, the $1 per day allowance has withstood legal challenges for decades, including challenges by federal detainees who have sought a minimum wage under the FLSA.  Congress enacted the FLSA to eliminate "in industries engaged in commerce or in the production of goods for commerce, ... labor conditions detrimental to the maintenance of the minimum standard of living necessary for health,

---

[70] *See, e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 18, 1978).
[71] *See* Dep't of Justice Appropriations Authorization Act, 1979, Pub. L. No. 96-132, § 2(10), 93 Stat. 1040, 1042 (1979).
[72] *See* INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402, *1 (Nov. 13, 1992) (citing 93 Stat. at 1042).
[73] *Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

efficiency, and general well-being of workers" because such conditions "constitute[ ] an unfair method of competition in commerce[.]"[74]

In *Alvarado*,[75] immigration detainees challenged the $1 daily rate, claiming that they were entitled to the federal minimum wage for work in grounds, maintenance, cooking, laundry, and other services. The Fifth Circuit noted that, despite this "apparent exchange of money for labor," the detainees were not "employees" under the FLSA.  Specifically, "it would not be within the legislative purpose of the FLSA to protect [the detainees]," because "[t]he congressional motive for enacting the FLSA," was to protect the "standard of living" and "general well-being" of the worker in American industry.[76]  Because detainees are "removed from American industry," they are "not within the group that Congress sought to protect in enacting the FLSA."[77]  The conclusion that detainee minimum wage claims are outside the scope of the FLSA is even more forceful given that the U.S. Supreme Court has consistently construed the FLSA "liberally to apply to the furthest reaches consistent with congressional direction, … recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."[78]

---

[74] 29 U.S.C. § 202(a); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).
[75] 902 F.2d at 395.
[76] *Id.* at 396 (citations omitted).
[77] *Id.*
[78] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (citation omitted).  The FLSA definition of "employee" is "strikingly broad."  *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Other courts have uniformly held that detainees are not entitled to a minimum wage under the FLSA or state law, frequently reasoning that detainees need no minimum wage because they are already provided with necessities during the course of their detention.[79]

In *Menocal v. GEO Group*, which is still being litigated in Colorado federal court, the district court judge concluded that the immigrant detainees at GEO's Aurora facility were not "employees" entitled to minimum wage protection under the Colorado Minimum Wage Order.[80] The district court found it persuasive that the Colorado minimum wage law, like the FLSA, "was not intended to be extended to those working in government custody."[81]  Additionally, Colorado exempted "inmates and prisons" from the wage laws because they were not employees under Colorado law.  The court agreed with GEO that this exemption could also be extended to detainees: "[a]though immigration detainees appear to fall under the broad definition of 'employee' … so do prisoners," and Colorado had interpreted the "employee" not to include prisoners.  And, "immigration detainees, like prisoners, do not use their wages to provide for themselves," and therefore the purposes of state minimum wage laws does not apply to them. The court found persuasive the Fifth Circuit's reasoning in *Alvarado* that even the FLSA's broad definition of "employee" was not intended to cover immigration detainees "because the

---

[79] *See, e.g.*, *Tourscher v. McCullough*, 184 F.3d 236, 243-44 (3d Cir. 1999) (pretrial detainee not an employee entitled to minimum wage under FLSA because, like a prisoner, his standard of living is protected and the work "bears no indicia of traditional free-market employment"); *Villarreal*, 113 F.3d at 206-07 (pretrial detainees performing translation services for prison not employees under FLSA; "detention facilities provide pretrial detainees with their everyday needs such as food, shelter, and clothing"); *Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2  (Mass. App. Ct. May 24, 2017) (affirming dismissal of ICE detainee's claim for minimum wage and unjust enrichment); *Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (granting motion to dismiss ICE detainee claim for minimum wage at GEO facility).
[80] *Menocal*, 113 F. Supp. 3d at 1129.
[81] *Id.* (citing *Alvarado*, 902 F.2d at 396).  This Court can apply the same persuasive authority in interpreting Washington's MWA, which  is based upon the FLSA.  *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash. 2d 853, 862 n.6, 93 P.3d 108, 112 n.6 (2004); *Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 523, 7 P.3d 807 (2000).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   congressional motive for enacting the FLSA," like the Colorado law, was to protect the "standard

2   of living" and "general well-being" of the worker in American industry.[82]

3   Moreover, it is well-settled that federal detainees can be required to perform some

4   housekeeping chores without any pay at all.[83]   Within this authority, ICE-approved regulations

5   require detainees to perform certain housekeeping chores without pay.  ICE requires that "[t]he

6   facility administrator shall ensure that staff **and detainees** maintain a high standard of facility

7   sanitation and general cleanliness.[84] While VWP jobs are voluntary, ICE requires that "all

8

9   detainees are responsible for personal housekeeping."[85]

10   Through statutes and delegated authority, Congress has preempted the fields of

11   employment status and payment to immigration detainees in its custody.   Congress'

12

13   determination is unequivocal that the "the minimum wage is not needed to protect the

14   [detainees'] well-being and standard of living."[86]   Indeed, Congress has taken steps to expressly

15   prohibit persons, including companies like GEO, from hiring immigrant detainees.  In 1986,

16

17

---

18   [82] *Menocal*, 113 F. Supp. 3d at 1129 (citing *Alvarado*, 902 F.2d at 396).  Given the weight of this authority, it is likely that a suit by an aggrieved detainee's suit for minimum wage under the FLSA would be dismissed.  However, it is accepted that the defendant's power to remove a case to federal court does not assure the federal court's power to hear it.  Various federal statutes may bar the court from granting relief against the federal officer or agency; in that event, after removal, the action must be dismissed.  *See Nebraska ex rel. Dep't of Soc. Servs. v. Bentson*, 146 F.3d 676, 678-679 (9th Cir. 1998) (state court action seeking to enjoin IRS from collecting child support arrearages was removable but statute deprived court of subject matter jurisdiction to restrain collection).

21   [83] *See Channer v. Hall*, 112 F.3d 214, 219 (5th Cir. 1997) (holding that "the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks"); *Hause v. Vaught*, 993 F.2d 1079, 1081, 1085 (4th Cir. 1993) (holding that pretrial detainees may be required to "assist in cleaning the common areas of their cell-block"); *Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978) (holding that a pretrial detainee "may constitutionally be compelled to perform simple housekeeping tasks in his or her own cell and community areas"); *Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966) (explaining that detained patients may be required to perform "chores of a normal housekeeping type and kind"); *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *10 (E.D. Mich. July 23, 2013) ("[R]equiring a pretrial detainee to help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the Thirteenth Amendment.")

26   [84] PBNDS, § 1.2.V.A.3 ("General Housekeeping"), Exhibit 6.

   [85] PBNDS, § 5.8. V.C, Exhibit 5.

27   [86] *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992); *see* 29 U.S.C. § 202(a) (congressional finding and declaration of policy).

28   GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
   ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  Congress enacted the Immigration Reform and Control Act ("IRCA"), which made the

2  regulation of employers who hire "unauthorized aliens a central concern of federal immigration

3  policy."[87]  IRCA made it unlawful "to hire, or to recruit or refer for a fee, for employment in the

4  United States an alien knowing the alien is an unauthorized alien … with respect to such

5  employment."[88] Obviously this prohibition would prevent GEO from hiring the removable aliens

6  detained at NWDC as employees. Accordingly, the ICE-GEO Contract expressly distinguishes

7  between GEO's employees and detainees.[89]

8

9      Furthermore, IRCA included an express preemption provision that preempts "any state or

10  local law imposing civil or criminal sanctions (other than through licensing or similar laws) upon

11  those who employ, or recruit or refer for a fee for employment, unauthorized aliens."[90]  Thus, if

12  the MWA is interpreted as the State advocates—to deem federal detainees "employees" of GEO,

13  and to enforce state minimum wage law and order GEO to "disgorge" monies allegedly due, it is

14  expressly preempted under IRCA.

15

16      Compelling GEO to pay a state minimum wage, or authorizing unjust enrichment claims

17  to recover allegedly unpaid wages for work, will cause clear conflicts between the demands of

18  state law and federal law, and create an obstacle to the federal government's ability to achieve its

19  ends.  This conflict is clearly evident at  NWDC.  ICE contracted with GEO for GEO to operate

20  the facility under detailed standards, including the administration of the housekeeping

21  requirements and the VWP.  ICE policy states that payment of $1 per day for VWP participation

---

[87] *Lozano v. City of Hazleton*, 620 F.3d 170, 206 (3d Cir. 2010), *vacated and remanded on other grounds by City of Hazleton v. Lozano*, 131 S. Ct 2958 (2011).
[88] 8 U.S.C. § 1324a(a)(1)(A).
[89] Mell Declaration at ¶ 1.3 (Statement of Work at 62, 82).
[90] 8 U.S.C. 1324a(h)(2).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

is permissible, and, per the Contract, ICE reimburses GEO for money paid under the VWP at the rate of $1 per day.  Nothing in these contracts or ICE's standards requires GEO to pay detainees minimum wage as employees; indeed, federal law makes it impossible for detainees to be GEO's employees because they are unauthorized aliens who cannot be employed.

If a court were to require payment of a state minimum wage, GEO would be compelled to make payments that ICE did not require in the contracts, and that the federal government did not account for in the contract expenses.  By giving the Contracting Officer the sole discretion to change the reimbursement rate for VWP participation, ICE made it clear that it continues to exercise its Congressionally-delegated power and spending authority to determine whether and when detainees receive compensation in addition to the services provided.  A contrary state law conflicts with federal law and creates an obstacle to ICE's contracting for detention services. GEO has a colorable preemption defense, and therefore this case belongs in federal court.

## II.   THIS CASE IS REMOVABLE BECAUSE IT RAISES SUBSTANTIAL AND DISPUTED FEDERAL ISSUES THAT THE COURT MAY NOT ENTERTAIN WITHOUT INTERFERING WITH THE BALANCE OF FEDERAL AND STATE JUDICIAL RESPONSIBILITIES.

The general removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."[91]   District courts shall have "original

---

[91] 28 U.S.C. § 1441.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

18

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[92]

Under a doctrine set forth by the Supreme Court in *Grable*, a case is removable when a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum  may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.[93]  This case is removable under this standard because the core question is whether federal immigration detainees are "employees" of GEO that must be paid a minimum wage, an issue that cannot be adjudicated without disputed and substantial questions of federal law, implicating questions of federal immigration powers that are properly heard in a federal court.

In *Grable*, the plaintiff brought a quiet title action and claimed he had a superior right to title against another private party because the IRS had not given him adequate notice to effectively transfer title.  The Supreme Court noted that normally a defendant was entitled to remove the quiet title action if the plaintiff could have brought it in federal district court originally,[94] as a civil action "arising under the Constitution, laws, or treaties of the United States."[95]  However, there is "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," that recognizes federal-question jurisdiction "over state-law claims that implicate significant federal issues."[96]  This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that

---

[92] 28 U.S.C. § 1331.
[93] *Grable*, 545 U.S. at 314.
[94] *See* 28 U.S.C. § 1441(a).
[95] *See* 28 U.S.C. § 1331.
[96] *Grable*, 545 U.S. at 312 (citing *Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917)).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[97]

The plaintiff in *Grable* "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law."[98]  Whether that notice was given within the meaning of the federal statute was therefore an element of the quiet title claim, and the meaning of the federal tax provision was "an important issue of federal law that sensibly belongs in a federal court."[99]  The federal government had an interest in collecting delinquent taxes that may be impaired by unclear title, and therefore an interest in the federal forum "to vindicate its own administrative action"; the Court also recognized that citizens might "find it valuable to come before judges used to federal tax matters."[100]  Thus, the Supreme Court held that the national interest in providing a federal forum for tax litigation was sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress.[101]

Similarly here, although the State pleads state-law causes of action, the federal issues are evident on the face of the State's Complaint.  The Complaint concedes that ICE contracts for detention services associated with ICE processing detainees under federal immigration laws.[102]  The Complaint also pleads that ICE directs payment based upon national standards.[103]  The

---

[97] *Id*. (citation omitted).
[98] *Id*. at 314-15.
[99] *Id*. at 315.
[100] *Id*.
[101] *Id*. at 310.
[102] Complaint at ¶ 3.10.
[103] Complaint at ¶ 4.3.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Complaint pertains to the detention of "adult civil detainees," a population that is defined and controlled by federal law.[104]   The Complaint expressly avers that these federally designated "detainees" are "employees,"[105] which is a highly disputed issue of federal law (indeed, it is impossible) since federal law and GEO's contracts prohibit GEO from hiring illegal aliens.[106] The State's allegations, even on the face of the Complaint, will require the Court to address federal restrictions on the employability of "detainees."

Federal question jurisdiction appropriately balances this politically charged issue that urgently requires a federal forum and a uniform determination applicable nationwide. Immigration, including the detention of aliens in its custody, is an authority vested in the federal government by the U.S. Constitution and federal statute.[107]   The issues of whether federal detainees are "employees" that must be paid state minimum wages by a federal contractor must be uniform across the United States.   Similar claims for state minimum wage and unjust enrichment have been raised in a suit in Colorado, and the class certification of that issue is currently before the Tenth Circuit on appeal.[108]   Another putative class action raising the identical MWA claim as the Complaint was recently filed in this Court.[109]  Permitting this suit to proceed in state court risks inconsistent determinations by federal and state courts on an issue that demands uniformity.  As a practical matter, ICE has detention facilities across the nation; it would make no sense for detainees in one state to be deemed "employees" that are entitled to a

---

[104] 8 U.S.C. § 1226(a) (providing for ICE's authority to detain certain aliens).
[105] Complaint at ¶ 4.6.
[106] 8 U.S.C. §§ 1226(a)(3), 1324a; Mell Declaration at ¶ 1.3 (Statement of Work at 63).
[107] U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1103, 1226a.
[108] *Menocal v. GEO Group*, No. 17-1125 (10th Cir.); *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) (dismissing claim for minimum wage under Colorado statute).
[109] *Chao Chen v. The GEO Group, Inc.*, No. 3:17-cv-05769 (filed Sept. 26, 2017).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

minimum wage, while detainees in another facility are not.  Disparities among states should be discouraged on this issue.  GEO needs to know definitively that it has been and will continue to be operating lawfully under state and federal laws without risk of multi-state liabilities. Similarly, ICE must know that its applicable standards control so that it can meet national needs within appropriated dollars.  These needs for national uniformity demand a federal forum.

The federal government and its contractors have a clear interest in this case being heard in the federal forum.  Specifically, ICE has an interest in being able to have facilities at which to carry out its Congressionally-mandated duties to arrange for appropriate places of detention. That interest is directly impacted by the kinds of liability that its contractors may face in carrying out these federal duties.  In this respect, ICE's interest is analogous to *Boyle v. United Technologies Corp.*,[110] in which the Supreme Court held that there was a federal interest in a state law suit brought by a plaintiff against a private contractor under a procurement contract.  As the court reasoned, "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.  Either way, the interests of the United States will be directly affected."[111]  The Court explained that as with a claim against a federal official, a claim against an independent contractor ""implicated the same interest in getting the Government's work done."[112]

Likewise, there is a clear federal interest in whether GEO is deemed to have an employer-employee relationship with ICE's immigration detainees and is required to pay them state-

---

[110] 487 U.S. 500 (1988).
[111] *Id*. at 507.
[112] *Id*. at 505.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

mandated minimum wages.  Were a state court to conclude that GEO must pay thousands of detainees a minimum wage, it would significantly affect the prices that GEO would have charge for its services, and impact what ICE (and ulimately, federal taxpayers) must pay to federal contractors to obtain the services that ICE needs to carry out its duties.

There is no risk that removing this case would disturb a balance between federal and state judicial responsibilities provided or assumed by Congress.  Congress has given no indication that detainees are to be considered employees under state labor laws, or that state laws should play a role in determining what detainees are paid for housekeeping or volunteer work, or that state courts should play a role in determining these issues.  To the contrary, Congress has taken control over the issue of whether and how much federal detainees will be paid.  ICE provides for the $1 daily rate for VWP work in its policies and contracts, and federal courts have uniformly determined that detainees are not entitled to a federal minimum wage under the FLSA.[113]  A Massachusetts state court that considered whether Massachusetts minimum wage and unjust enrichment law applied to ICE detainees decided that case against the plaintiff by express reference to FLSA precedents.[114]  A federal court deciding whether Colorado's minimum wage laws applied to federal immigration detainees did the same.[115] Removing this case, which raises the same issues, does not upset any balance of responsibilities.

Washington has jurisdiction over its *own* correctional facilities, and, as is its prerogative, excludes detainees in state institutions from the class of "employees" who are entitled to

---

[113] *See supra* n.79.
[114] *Whyte*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2 (affirming order dismissing ICE detainees claim for minimum wage and unjust enrichment).
[115] *Menocal*, 113 F. Supp. 3d at 1129.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

protection on the MWA.[116]  By contrast, GEO has operated NWDC to house federal immigration detainees and openly and transparently operated the VWP and housekeeping programs for many years, without L&I or Tacoma seeking to enforce the MWA.  While Washington and the federal government have essentially reached the same answer that detainees are not entitled to minimum wage, they have done so on separate tracks.

By filing this suit in state court, the Attorney General attempts to interfere with federal immigration policies because he personally disfavors the current administration for political reasons.[117]  The Attorney General seeks to use state judicial power to compel GEO, a federal contractor, to pay federal immigration detainees a state minimum wage that even the Washington legislature and L&I have not required.  It is common sense that a federal contractor, carrying out a quintessential federal prerogative such as immigration detention, caught in the political crosswinds in a state, should receive the "experience, solicitude, and hope of uniformity"[118] offered by the federal forum.

## III.     THE COURT HAS DIVERSITY JURISDICTION.

The Court also has jurisdiction based on the diversity of citizenship.  Federal district courts have original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States…" as well as "citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for

---

[116] Wash. Rev. Code § 49.46.010(3)(k).
[117] This is evident from his campaign materials that he had published at the same time he filed the Complaint.  *See* Exhibit 8.
[118] *Grable*, 545 U.S. at 312.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

24

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  permanent residence in the United States and are domiciled in the same State."[119]  GEO is a

2  citizen of the State of Florida.  The company's principal place of business is at its headquarters in

3  Boca Raton, Florida.  GEO is incorporated in Florida.

4      The Attorney General of Washington has brought this action on behalf of the "State of

5  Washington" as the sole plaintiff.  In some instances, there is no federal diversity jurisdiction

6  over a state because "a State is not a citizen of itself."[120]  However, "the mere presence on the

7  record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it

8  appears that the state has no real interest in the controversy."[121]  Although "'the State has a

9  governmental interest in the welfare of all its citizens, in compelling obedience to the legal

10  orders of all its officials, and in securing compliance with all its laws,' these 'general

11  governmental interest[s]' will not satisfy the real party to the controversy requirement for the

12  purposes of defeating diversity because 'if that were so the state would be a party in interest in

13  all litigation...'"[122] A state must have a "substantial state interest" distinct from the relief sought

14  on behalf of aggrieved individuals.[123]  A state's presence in a lawsuit will defeat jurisdiction

15  under 28 U.S.C. § 1332(a)(1) only if "the relief sought is that which inures to it alone, and in its

16  favor the judgment or decree, if for the plaintiff, will effectively operate."[124]  This determination

---

[119] 28 U.S.C. § 1332; *see also* U.S. Const. art. III, § 2, cl. 1.
[120] *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 291 n. 44 (1985); *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894).
[121] *Dep't of Fair Emp't & Hous. v. Lucent Tech., Inc.* ("*Lucent*"), 642 F.3d 728, 737 (9th Cir. 2011) (quoting *Ex parte Nebraska*, 209 U.S. 436, 444 (1908)).
[122] *Id.* (quoting *Mo., Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901) ("*Missouri Railway*")).
[123] *Id.* at 739.
[124] *Id.* at 737-38 (quoting *Missouri Railway*, 183 U.S. at 59).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

requires an examination of "the essential nature and effect of the proceeding" as it appears from the entire record.[125]

In *Lucent*, a state agency, California's Department of Fair Employment and Housing ("DFEH"), brought an enforcement action on behalf of the public based on a state employment statute. The Ninth Circuit held that the district court had diversity jurisdiction over DFEH because "any judgment will effectively operate in favor of the person claiming to be aggrieved," not the state itself.[126] Similarly, the Ninth Circuit rejected the state's contention that its pursuit of equitable remedies constituted a state interest, "as most of these forms of equitable relief could be obtained by the individual aggrieved."[127] The state agency was not the real party in interest where it sought, among other things, "back pay, front pay, and other benefits of employment."[128]

Likewise here, the Attorney General initiated this lawsuit of first impression "to ensure compliance with Washington's laws," and claims interests in protecting and preventing and remedying injuries to the public's health, safety and well-being.[129] The State alleges that it has "a quasi-sovereign interest in protecting the health, safety, and well-being of its residents which includes protecting its residents from harms to their own and Washington's economic health."[130] The State claims that this interest "extends to all of Washington's residents, including individuals who suffer indirect injuries and members of the general public."[131]  The State claims that

---

[125] *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 669, 670 (9th Cir. 2012).
[126] *Lucent*, 642 F.3d at 739.
[127] *Id.*
[128] *Id.* at 739 n.8.
[129] Complaint ¶¶ 3.1-3.4.
[130] Complaint ¶ 3.3.
[131] Complaint ¶ 3.4.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  "enforcement of minimum wage laws is of preeminent concern to the people of Washington."[132]

2  These alleged interests are no more than the "'general governmental interest[s]'" that "'cannot

3  satisfy the diversity requirement.'"[133]

4

5  In seeking relief under the MWA, the State is not seeking "relief ... which inures to it

6  alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate."[134]

7  The real party in interest would be the beneficiaries of the Attorney General's lawsuit, which,

8  although not specifically identified in the Complaint, are some portion of "all of Washington's

9  residents," possibly some of the "2.5 million workers" identified globally in the facts.[135]  The

10  Attorney General references L&I as the state agency with delegated authority that "operates

11  enforcement programs that help ensure compliance with the State's wage laws."[136]  But L&I is

12  only entitled to "take assignment of wage claims."[137]  GEO has had no notice of any wage claims

13  assigned to L&I.  Furthermore, L&I's authority to prosecute is conditional.  L&I has statutory

14  authority to "prosecute actions for the collection of wages of persons who are financially unable

15  to employ counsel when in the judgment of the director ... the claims are valid and enforceable

16  in the courts."[138]  The Complaint does not identify any determination by the director that the

17  MWA applies to federal detainees.  L&I has never communicated such to GEO despite having

---

[132] Complaint ¶ 3.5.
[133] *Lucent*, 642 F.3d at 738 (citing *Missouri Railway*, 183 U.S. at 60).
[134] *Id.* at 737-38.
[135] *See* Complaint ¶ 3.2, 3.4.
[136] *See* Complaint ¶ 3.2.
[137] Wash. Rev. Code § 49.48.040(1)(c).
[138] *Id.*

28  GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

conducted extensive on site audits in the past.  And, as illustrated by the similar suit pending before this court,  the detainees have been able to afford private counsel on their own.[139]

Likewise, the State is not the real party in interest to bring equitable unjust enrichment claims.  The Complaint alleges that GEO receives a benefit "without bearing the financial burden of paying the minimum wage to those who perform such work" at NWDC.[140]  The Attorney General has vaguely requested that GEO "disgorge the amount by which it has been unjustly enriched."[141]  The Complaint makes no allegation that the money is for the State itself, but the clear inference is that it is for NWDC detainees.

The clearest evidence of who the real parties interest are can be found in the Attorney General's September 20, 2017 press release, which noted that the Attorney General intends, if he prevails in obtaining monetary recovery, to "ask the court to place any monetary award into a constructive trust or cy pres fund" that "would be dedicated to supporting people detained in NWDC, as well as job seekers in the community surrounding the detention center who may have lost employment opportunities because of GEO's practices."[142]  This clearly indicates that this is not a lawsuit in which "the relief sought is that which inures to [the state] alone."[143]

The press release, in conjunction with the Complaint, indicates that the real parties in interest are diverse from GEO.  The State claims that its interest "extends to all of Washington's

---

[139] *See Chen v. GEO Group, Inc.*, No. 3:17-cv-05769, at ¶ 2.1 (W.D. Wash. filed September 27, 2017), alleging diversity jurisdiction to decide by way of a class action the application of the MWA to detainees at NWDC.
[140] Complaint at ¶ 4.9.
[141] Complaint at ¶ 7.6.
[142] *See* Washington Attorney General's Office, *AG Ferguson sues operator of the Northwest Detention Center for wage violations* at 3 (Sept. 20, 2017)   (http://www.atg.wa.gov/news/news-releases/ag-ferguson-sues-operator-northwest-detention-center-wage-violations) ("Press Release," attached as Exhibit 7).
[143] *Lucent*, 642 F.3d at 737-38.  *See also In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 730 (E.D. Pa. 2017) (state not real party in interest for purposes of diversity jurisdiction where portion of money recovered by attorney general suit would go to county, not state, and therefore "the relief sought would not inure to the benefit of the state alone").

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

residents, including individuals who suffer indirect injuries and members of the general public."[144]  The Attorney General's press release identifies two particular populations to which it would direct funds:  (1) "supporting people detained in NWDC," and (2) "job seekers in the community surrounding the detention center who may have lost employment opportunities because of GEO's practices."[145]  Immigration detainees currently "detained" at NWDC are awaiting removal, and by definition are "citizens or subjects of a foreign state,"[146] and therefore diverse from GEO.  The Complaint does not allege any basis from which to conclude that the beneficiaries of the lawsuit would include any citizens of Florida (rather than "all of Washington's residents"), and the Court may presume that the detainee beneficiaries are not U.S. citizens until proven otherwise.[147]  The "job seekers in the community surrounding the detention center" would indicate persons domiciled in the Tacoma, Washington area, and therefore diverse from GEO for jurisdictional purposes.[148]  The Complaint does not include allegations that indicate that any of these persons would be Florida citizens for diversity jurisdiction.[149]

The amount in controversy requirement in 28 U.S.C. § 1332 is also met.  Although the Complaint does not pray for a specific dollar relief, GEO formed a good faith belief that the State seeks to recover in excess of $75,000 based upon the State's prayer and factual allegations.[150]

---

[144] Complaint ¶ 3.4.
[145] *See* Press Release at 3.
[146] 28 U.S.C. § 1332(a)(2).
[147] *Hauenstein v. Lynham*, 100 U.S. 483, 484 (1879).
[148] 13E Wright, Miller, & Cooper, Federal Practice and Procedure § 3613 (3d ed. 2017) (domicile requires physical presence at location and intention to remain there indefinitely).
[149] To the extent that Washington's Attorney General is exhausting Washington State resources for Florida's citizens and offers proof of such for diversity purposes at the time of this removal, GEO acknowledges that such proof may defeat diversity of citizenship as a basis for removal, while removal still remains proper on other grounds.
[150] W.D. Wash. LCR 101(a).

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

29

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

The relief requested contains a demand for GEO's profits.[151]  The State does not allege a specific hourly amount that should be "disgorged," but claims that GEO benefits by "retaining the difference between the $1 per day" and the state statutory minimum wage rate.[152]   The State does not allege how many detainees allegedly unjustly enriched GEO since 2005, but alleges that NWDC has the capacity to house over 1,500 detainees.[153]   A claim to pay the State a sum of money calculated at the state minimum wage rate for thousands of detainees over a span of years is presumptively in excess of $75,000.

This reasonable conclusion is supported by the Attorney General's press release where AG Ferguson says in reference to this lawsuit:

> The lawsuit also asks the court to order GEO to pay the state its costs and fees from bringing the lawsuit, and to give up the profits it made by underpaying its employees over many years. The exact amount will be determined as the lawsuit progresses, ***but is expected to be in the millions***.[154]

Accordingly, on the Attorney General's own published estimate, the State will be seeking in excess of $75,000, which meets the amount in controversy requirement.

The fact that a plaintiff class action lawsuit has already been filed in this court based upon diversity jurisdiction further supports this court exercising diversity jurisdiction.   This matter is related to that matter, and there is a clear interest in avoiding double recovery and conflicting outcomes.  As an added benefit, prosecutions of the claims before one court would be favorable under principles of judicial economy.

---

[151] *See* Complaint at ¶¶ 3.6, 4.9, 6.1-6.6, 7.5-7.6.
[152] *See* Wash. Rev. Code § 49.46.020; Complaint at ¶ 5.6, 6.5.
[153] Complaint at ¶ 3.9.
[154] *See* Press Release at 3.

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

**CONCLUSION**

2

Pursuant to Local Rule W.D. Wash. CR 3(d), removal from Pierce County Superior

3

Court to the United States District Court, Western District of Washington in Tacoma, is proper.

4

Dated: October 9, 2017

5

**III BRANCHES LAW, PLLC**

6

7

By:_____

Joan K. Mell, WSBA #21319

8

1019 Regents Blvd. Ste. 204
Fircrest, WA 98466

9

253-566-2510 (p)
281-664-4643 (f)

10

joan@3brancheslaw.com

11

**NORTON ROSE FULBRIGHT US LLP**

Charles A. Deacon (*Pro Hac Vice To Be*

12

*Filed*)

300 Convent St.

13

San Antonio, Texas 78205

Telephone: (210) 270-7133

14

Facsimile:  (210) 270-7205

charlie.deacon@nortonrosefulbright.com

15

16

**NORTON ROSE FULBRIGHT US LLP**

Mark Emery (*Pro Hac Vice To Be Filed*)

17

799 9th Street NW, Suite 1000

Washington, DC  20001-4501

18

Telephone:     (202) 662-0210

Facsimile:     (202) 662-4643

19

mark.emery@nortonrosefulbright.com

20

**ATTORNEYS FOR DEFENDANT THE**

21

**GEO GROUP, INC.**

22

23

24

25

26

27

28

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT
ECF CASE NO. _____

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

# CERTIFICATE OF SERVICE

I, Joseph Fonseca, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On October 9, 2017, I electronically filed the above GEO's Notice of Removal to Federal Court, with the Clerk of the Court using the CM/ECF system and served via Email to the following:

| ATTORNEY NAME & ADDRESS | METHOD OF DELIVERY |
| --- | --- |
| Office of the Attorney General<br>La Rond Baker, WSBA No. 43610<br>Marsha Chien, WSBA No. 47020<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>LaRondB@atg.wa.gov<br>MarshaC@atg.wa.gov<br><br>Norton Rose Fulbright US LLP<br>Charles A. Deacon(Pro Hac Vice To Be File)<br>300 Convent St.<br>San Antonio, TX 78205<br>(210)-270-7133<br>charlie.deacon@nortonrosefulbright.com<br><br>Norton Rose Fulbright US LLP<br>Mark Emery (Pro Hac Vice To Be Filed)<br>799 9th St. NW, Suite 1000<br>Washington, DC 20001-4501<br>(202)-662-0210<br>mark.emery@nortonrosefulbright.com | ■ CM/ECF E-Service<br><br>■ E-mail |

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 9th day of October, 2017 at Fircrest, Washington.

_____
Joseph Fonseca, Paralegal

GEO'S NOTICE OF REMOVAL TO FEDERAL COURT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph