1

The Honorable Theresa L. Fricke

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT
9                                    WESTERN DISTRICT OF WASHINGTON
                                                 AT TACOMA
10

11   STATE OF WASHINGTON,

12                           Plaintiff,          Case No: 3:17-cv-05806-TLF

13                  v.                            **GEO's MOTION TO DISMISS COMPLAINT**

14                                               NOTE ON MOTION CALENDAR:
                                                 November 17, 2017
15   THE GEO GROUP, INC.,
                                                 ORAL ARGUMENT REQUESTED
16                           Defendant.

17

18

19

20

21

22

23

24

25

26

27

28   STATE OF WASHINGTON V. GEO GROUP                           III BRANCHES LAW, PLLC
     ECF CASE NO. 3:17-cv-05806-TLF                                    Joan K. Mell
     GEO'S MOTION TO DISMISS                                    1019 Regents Blvd. Ste. 204
                                                                    Fircrest, WA 98466
                                                                     253-566-2510 ph
                                                                  joan@3brancheslaw.com

# TABLE OF CONTENTS

Page

1 TABLE OF AUTHORITIES................................................................ii

2 INTRODUCTION AND BACKGROUND ........................................ 1

3 STANDARD OF REVIEW ............................................................... 2

4 SUMMARY OF THE ARGUMENT ................................................ 3

5 ARGUMENT ...................................................................................... 4

6 I.      THE STATE LACKS AUTHORITY TO BRING THIS LAWSUIT.................... 4

7       A.      There Is No Quasi-Sovereign Interest ................................. 4

8       B.      The State Does Not Plausibly Allege Injury To A Substantial
                Segment Of The Population .......................................... 6

9       C.      The State Has No Independent Interest.................................. 7

10      D.      Bar Against Suing The Federal Government In *Parens Patriae* ............. 8

11 II.     THE STATE'S CLAIMS ARE PREEMPTED BY FEDERAL LAW ................. 8

12      A.      Preemption Principles ............................................... 8

13      B.      ICE Controls Detainee Pay ........................................... 9

14      C.      The MWA Is Preempted By Federal Law................................. 11

15              1.      Express Preemption........................................ 12

16              2.      Field Preemption .......................................... 13

17              3.      Conflict/Obstacle Preemption ............................. 15

18 III.    THE STATE FAILS TO STATE A MWA CLAIM ............................. 16

18
19 IV.     THE STATE FAILS TO STATE A CLAIM FOR UNJUST
        ENRICHMENT ..................................................................... 21

20 V.      UNCLEAN HANDS AND LACHES BAR EQUITABLE RELIEF.................... 22

21 CONCLUSION .................................................................... 24

22

23

24

25

26

27

28

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - i

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

# TABLE OF AUTHORITIES

**CASES:**                                                                 **Page**

*Adler v. Fed. Republic of Nigeria*, 219 F.3d 869 (9th Cir. 2000) ..............................23

*Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) ..............4, 6, 8

*Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) ..............................11, 17, 19, 20, 22

*Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851, 281 P.3d 289 (2012) ..............................16, 17

*Arizona v. United States*, 567 U.S. 387 (2012) ..............................9, 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................2

*Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005) ..............................20

*Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988) ..............................15

*Brown v. Cont'l Can Co.*, 765 F.2d 810 (9th Cir. 1985) ..............................23

*California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973) ..............................6, 8

*Clark Cty. Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wash. 2d 840, 991 P.2d 1161 (2000) ..............................23

*Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222 (9th Cir. 2005) ..............................2

*Confederated Tribes of Colville Reservation v. Anderson*, 903 F. Supp. 2d 1187 (E.D. Wash. 2011) ..............................4

*Crosby v. Nat't Foreign Trade Council*, 530 U.S. 363 (2000) ..............................9, 15

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728 (9th Cir. 2011) ..............................6

*Doe v. United States*, 831 F.3d 309 (5th Cir. 2016) ..............................8

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165 (9th Cir. 1989) ..............................23

STATE OF WASHINGTON V. GEO GROUP                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05806-TLF                                Joan K. Mell
GEO'S MOTION TO DISMISS - ii                        1019 Regents Blvd. Ste. 204
                                                      Fircrest, WA 98466
                                                        253-566-2510 ph
                                                    joan@3brancheslaw.com

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. C12-1913-RSM, 2013 WL
5945810 (W.D. Wash. Nov. 6, 2013) ..................................................23

*Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ..................10, 14, 18

*Hedin v. Roberts*, 16 Wash. App. 740, 559 P.2d 1001 (1977).................................22

*Hines v. Davidowitz*, 312 U.S. 52 (1941)........................................................9, 15

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)...................................................23

*In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008)....................................2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL
3475408 (N.D. Cal. Aug. 9, 2011) ....................................................4

*Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 7 P.3d 807 (2000) .................................16

*Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015)................................18

*Kilgore v. Shriners Hosps. For Children*, 190 Wash. App. 429, 360 P.3d 55
(2015) ..................................................................................16

*Lynch v. Deaconess Med. Ctr.*, 113 Wash. 2d 162, 776 P.2d 681 (1989) ..............................21

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) .....................................................8

*Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) ............18, 19, 20, 24

*Miller v. Dukakis*, 961 F.2d 7 (1st Cir. 1992) ...........................................14, 18, 19

*Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wash. 2d 363, 301 P.2d
759 (1956) ................................................................................21

*Missouri v. Harris*, 58 F. Supp. 3d 1059 (E.D. Cal. 2014), *aff'd and remanded
sub nom. Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017).........................6

*Morrison v. Basin Asphalt*, 130 Wash. App. 1016, 2005 WL 2857944 (Nov. 1,
2005) (unpublished) ......................................................................6

*Nation v. City of Glendale*, 804 F.3d 1292 (9th Cir. 2015) ....................................15

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ..................................................2

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - iii

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Nevada v. Burford*, 918 F.2d 854 (9th Cir. 1990) ...................................................................8

*Oklahoma ex rel. Johnson v. Cook*, 304 U.S. 387 (1938) ........................................................6

*Payne v. Ruesegger*, 194 Wash. App. 1034, 2016 WL 3402353 (June 14, 2016)
    (unpublished) .....................................................................................................................22

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ...................................................................8

*People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. Civ.A05-0211, 2005 WL
    1719892 (E.D. Cal. July 18, 2005) .....................................................................................8

*Pierce v. King Cty.*, 62 Wash. 2d 324, 382 P.2d 628 (1963) ..................................................23

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) ...................23

*Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337 (D.N.J. 2000)...........................................22

*Stahl v. Delicor of Puget Sound, Inc.*, 148 Wash. 2d 876, 64 P.3d 10 (2003) ........................16

*State v. Am. Tobacco Co., Inc.*, No. 96-2-15056-8, 1996 WL 931316 (Wash.
    Super Nov. 19, 1996) ...................................................................................................21, 22

*State v. Bobic*, 140 Wash. 2d 250, 996 P.2d 610 (2000)........................................................16

*Toll v. Moreno*, 458 U.S. 1 (1982) ..........................................................................................9

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) ....................................18

*Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) ...................................................18, 20

*United States v. Thomas*, 240 F.3d 445 (5th Cir. 2001)...........................................................8

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013).................................................9

*Vance v. City of Seattle*, 18 Wash. App. 418, 569 P.2d 1194 (1977) .....................................23

*Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017)...........................................................2

*Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997)........................................17, 18, 19, 20

*Waltz v. Tanager Estates Homeowner's Ass'n*, 183 Wash. App. 85, 332 P.3d
    1133 (2014) .......................................................................................................................23

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - iv

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL
    2274618 (Mass. App. Ct. May 24, 2017)..................................................18, 19, 20, 22, 24

*Wis. Dep't of Indus., Labor & Human Relations v. Gould*, 475 U.S. 282 (1986) ...................14

*Xieng v. People's Nat'l Bank of Wash.*, 120 Wash. 2d 512, 844 P.2d 389
    (1993) .............................................................................................................................17

**CONSTITUTIONAL PROVISIONS AND STATUTES:**

U.S. Const. art I, § 8, cl. 4 ...........................................................................................9

U.S. Const. art. VI, cl. 2 ..............................................................................................9

8 U.S.C. § 1103 .........................................................................................................10

8 U.S.C. § 1225 .........................................................................................................12

8 U.S.C. § 1226 .........................................................................................................10

8 U.S.C. § 1226a ........................................................................................................10

8 U.S.C. § 1231 ..............................................................................................10, 11, 15

8 U.S.C. § 1324a ....................................................................................................12, 13

8 U.S.C. § 1555 ..............................................................................................10, 14, 15, 22

29 U.S.C. § 202 .........................................................................................................14

29 U.S.C. § 203 .....................................................................................................16, 24

Dep't of Justice Appropriation Act, 1979,
    Pub. L. No. 95-431, 92 Stat. 1021 (Oct. 10, 1978) ........................................................10

Dep't of Justice Appropriations Authorization Act, 1979,
    Pub. L. No. 96-132, § 2(10), 93 Stat. 1040 (1979) ........................................................10

Wash. Const. art. II, § 29 ........................................................................................5, 23

Wash. Rev. Code § 43.22.282 ......................................................................................24

Wash. Rev. Code § 49.46.005 .......................................................................................7

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Wash. Rev. Code § 49.46.010.................................................................2, 5, 16, 20, 23

Wash. Rev. Code § 49.46.090................................................................................6

Wash. Rev. Code § 49.48.040................................................................................6

Wash. Rev. Code § 49.48.070................................................................................6

**REGULATIONS:**

Washington Dep't of Corrections Policy 700.100 ...............................................24

Washington Dep't of Labor & Indus., Admin. Policy ES.A.1, *Minimum Wage*
    *Act Applicability* (revised July 15, 2014)
    (http://www.lni.wa.gov/WorkplaceRights/files/policies/esa1.pdf).....................5

**RULES:**

Fed. R. Civ. P. 12(b)(6)................................................................................1, 2, 4

Fed. R. Civ. P. 81(c)...........................................................................................1

**OTHER AUTHORITIES:**

Attorney General of Washington, *AG Ferguson sues operator of the Northwest
    Detention Center for wage violations* (Sept. 20, 2017)
    (http://www.atg.wa.gov/news/news-releases/ag-ferguson-sues-operator-
    northwest-detention-center-wage-violations) .................................................1

Attorney General of Washington, AGO 1970 No. 9 (May 26, 1970)
    (http://www.atg.wa.gov/ago-opinions/offices-and-officers-state-labor-and-
    industries-working-hours-and-conditions-women)..........................................12

Ballotpedia, *Washington Inmate Labor Programs*, SJR 8212 (2007) .....................7

INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for
    Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13,
    1992) .........................................................................................................10

Performance-Based Nat'l Detention Standards 2011 ..................................1, 11, 15, 16, 21, 22

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - vi

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

2

U.S. Dep't of Labor, Field Assistance Bulletin No. 2015-1, *Credit toward Wages under Section 3(m) of the FLSA for Lodging Provided to Employees* (Dec. 17, 2015)..................................................................................................................24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - vii

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

The GEO Group, Inc. ("GEO") hereby moves to dismiss the complaint filed by the State of Washington pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION AND BACKGROUND

Since 2004, U.S. Immigration and Customs Enforcement ("ICE") has entrusted GEO to operate the Northwest Detention Center ("NWDC") in Tacoma, Washington, where ICE processes immigration detainees held in ICE's custody.[1]   As a federal contractor, GEO is subject to a complex statutory, regulatory, and contractual relationship with ICE that requires, among other things, that GEO adhere to ICE's 2011 Performance Based National Detention Standards ("PBNDS").  As an "expected practice," PBNDS provides that "[d]etainees shall be provided the opportunity to participate in a voluntary work program ["VWP"]."[2]   The VWP provides detainees "opportunities to work and earn money while confined," and all work—other than personal housekeeping—is voluntary.[3]   Consistent with decades of Congressional direction, the compensation is "at least $1.00 (USD) per day."[4]   ICE reimburses GEO  $1 per day per detainee for VWP participation.  This rate cannot be altered without ICE's approval.

With the fanfare of its press release touting a suit worth "millions" of dollars,[5] the Washington Attorney General filed this suit against GEO on behalf of the State of Washington (the "State").[6]   The State alleges a "quasi-sovereign" interest in bringing claims on behalf of

---

[1] The GEO Group, Inc., Tacoma ICE Processing Center (https://www.geogroup.com/FacilityDetail/FacilityID/71).
[2] PBNDS, at § 5.8.V.A  (https://www.ice.gov/doclib/detention-standards/2011/pbnds2011.pdf).
[3] *Id.* at §§ 5.8.II.1, 5.8.II.2.
[4] *Id.* at § 5.8.V.K.
[5] Attorney General of Washington, *AG Ferguson sues operator of the Northwest Detention Center for wage violations* (Sept. 20, 2017) (http://www.atg.wa.gov/news/news-releases/ag-ferguson-sues-operator-northwest-detention-center-wage-violations).
[6] *See* Complaint, filed on September 20, 2017 in Superior Court in Pierce County, Washington (attached as Exhibit 1).  On October 9, 2017, GEO removed this case to federal district court.  Notice of Removal, ECF No. 1.   This Rule 12(b)(6) motion is timely filed within 7 days after the removal notice.  Fed. R. Civ. P. 81(c).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 1

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Washington residents.[7]  The State alleges that federal immigration detainees are "employees," and that GEO is their "employer" for purposes of Washington's Minimum Wage Act ("MWA").[8] The State also claims unjust enrichment and seeks declaratory and injunctive relief.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."[9]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  The Court need not accept the plaintiff's legal conclusions.[12]  While detailed allegations are not needed, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[13] Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[14]  A court may dismiss under Rule 12(b)(6) based on a defendant's preemption defense.[15]

---

[7] Complaint at ¶¶ 3.3-3.5.
[8] Wash. Rev. Code § 49.46.010; Complaint at ¶¶ 4.5-4.6, 5.1-5.6.
[9] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Villa v. Maricopa Cty.*, 865 F.3d 1224, 1228 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).
[11] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[12] *Iqbal*, 556 U.S. at 678.
[13] *Twombly*, 550 U.S. at 555.
[14] *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).
[15] *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1224-25 (9th Cir. 2005).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 2

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

## SUMMARY OF THE ARGUMENT

As a threshold matter, the State lacks authority to bring this suit in *parens patriae*. It does not allege any injury of its own. It may not sue in a merely representative capacity on behalf of detainees for minimum wage under the MWA and for unjust enrichment.

Federal law preempts the State's claims. Congress, through statutes and delegated authority, has reserved for itself the determination of whether and how much immigration detainees are paid for work. Congress has expressly preempted claims that would impose the kind of civil sanction the State seeks here. Compelling GEO to pay a minimum wage to federal immigration detainees, or to the state in trust for them, intrudes on a field controlled by Congress and conflicts with federal law and federal interests in a uniform detention system.

The State fails to state a valid claim against GEO. The meaning of "employee" and "employer" under the MWA should be read in light of federal precedents under the Fair Labor Standards Act ("FLSA"), which uniformly hold that detainees may be paid $1 per day for voluntary work because they are already provided necessities while in detention, and therefore are not the kind of wage-seeking earners whom minimum wage laws are designed to protect. There is no unjust enrichment because work is voluntary and there is no expectation of a wage.

The State cannot recover in equity because it comes to this case with unclean hands and after undue delay. The Attorney General seeks to compel GEO, and ultimately, the federal government and taxpayers, to do what the people of Washington overwhelmingly rejected via referendum: to have private contractors pay minimum wages to detained workers for work performed while confined at public expense. The suit is also barred by laches because the State filed this suit without ever having notified GEO that it believed a minimum wage must be paid.

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

**ARGUMENT**

## I.   THE STATE LACKS AUTHORITY TO BRING THIS LAWSUIT.

The State alleges a "quasi-sovereign interest," indicating that it is bringing the MWA and unjust enrichment claims *in parens patriae*.[16]   For a state to properly act under *parens patriae* authority, it must make several showings: first, the State must identify a sovereign or quasi-sovereign interest of the public; second, that interest must touch upon a "substantial segment of its population"; and third, the State must "articulate an interest apart from the interest of particular private parties, *i.e.*, the State must be more than a nominal party."[17] The Complaint offers up three threadbare allegations,[18] each of which fail to establish any basis to conclude that the State has authority to bring its MWA and unjust enrichment claims in *parens patriae*. Therefore, the case should be dismissed.[19]

### A.   There Is No Quasi-Sovereign Interest.

The State alleges the Attorney General's conclusory political opinion that "Washington has a quasi-sovereign interest in protecting the health, safety, and well-being of its residents which includes protecting its residents from harms to their own and Washington's economic health."[20]   The Complaint lacks any factual averments that support or explain how the health, safety or well-being of Washington's residents are harmed by GEO paying federal immigration detainees less than the state minimum wage, or how this practice impacts Washington's

---

[16] *See, e.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600-01 (1982).
[17] *Id.* at 607.
[18] *See* Complaint at ¶¶ 3.3-3.5.
[19] Although *parens patriae* can involve Article III standing, at this time GEO argues only under Rule 12(b)(6) for failure to state a claim.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *6 (N.D. Cal. Aug. 9, 2011)  (12(b)(6) dismissal of New York's *parens patriae* suit), *reconsideration denied in relevant part*, 2011 WL 5573930, at *1 (N.D. Cal. Nov. 16, 2011); *Confederated Tribes of Colville Reservation v. Anderson*, 903 F. Supp. 2d 1187, 1195 (E.D. Wash. 2011) (12(b)(6) dismissal of tribe's *parens patriae* action).
[20] Complaint at ¶ 3.3.

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 4

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

economic health at all.

To the contrary, Washington law demonstrates that the State has no quasi-sovereign interest in compelling GEO to pay a minimum wage in order to protect residents or Washington's economic health.  The Complaint briefly refers to Washington's Department of Labor and Industries ("L&I") as a state agency "dedicated to the safety, health, and security" of Washington's workers.[21]  But the Attorney General does not allege that it is suing on behalf of L&I, or exercising any of L&I's statutory enforcement under state law.  There is no allegation that L&I itself has been delegated authority to sue in *parens patriae* by state law (and GEO has found no authority to that effect), or even that L&I exhausted the administrative processes that presage a request for the Attorney General to bring this suit.  Although the Attorney General claimed on television that the MWA's exclusion for inmates and detainees would not apply to private companies,[22] L&I's own policies indicate the opposite.  L&I has interpreted the statutory exclusion to expressly exclude from minimum wage requirements work for private companies by state inmates.[23]

The State's claim that it can sue in *parens patriae* based on general welfare and economic health of Washington residents is out-of-sync with its claims, which are narrowly focused on minimum wage for detainees for their work in a detention facility.  A quasi-sovereign interest does not include "sovereign interests, proprietary interests, or private interests pursued by the

---

[21] Complaint at ¶ 3.2.
[22] Link to video statement by AG Robert Ferguson, The News Tribune (Sept. 20, 2017) (http://www.thenewstribune.com/news/politics-government/article174383746.html).
[23] *See* Wash. Const. art. II. § 29; Wash. Rev. Code § 49.46.010(3)(k); Washington Dep't of Labor & Indus., Admin. Policy ES.A.1, *Minimum Wage Act Applicability* (revised July 15, 2014) (http://www.lni.wa.gov/WorkplaceRights/files/policies/esa1.pdf) (excepting detainees working at state-run facilities from the MWA and further providing that "***State inmates assigned by prison officials to work on prison premises for a private corporation at rates established and paid for by the state are not employees of the private corporation and would not be subject to the MWA.***").

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 5

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

State as a nominal party."[24]   L&I is entitled to order the payment of all wages owed to workers, bring actions necessary for the collection of the sums owed, and "[t]ake assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel…."[25]   These provisions do not authorize the Attorney General to seek relief on behalf of "all" Washington residents: the Legislature permits L&I to "stand[] in the shoes of employees and act[] in a representative capacity on their behalf."[26]   That is *not* a basis to sue in *parens patriae*, because it would "merely seek recovery for the benefit of individuals who are the real parties in interest."[27]

## B.      The State Does Not Plausibly Allege Injury To A Substantial Segment Of Its Population.

The State makes a global allegation of both direct and indirect injuries to members of the general public.[28]   The allegation does no more than recite the standard test for *parens patriae* authority.[29]   There is no other allegation that connects this purported interest in the health, safety and well-being of "all" of Washington's residents, directly or indirectly, to the payment of minimum wage at the NWDC, which can house little more than 1,500 detainees.[30]

The plausible inference is that Washington's citizens are *not* supportive of the idea of federal immigration detainees—who are already supported at taxpayer expense while detained,

---

[24] *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 n.2 (9th Cir. 2011).
[25] Wash. Rev. Code  §§ 49.46.090, 49.48.040, 49.48.070.
[26] *Morrison v. Basin Asphalt*, 130 Wash. App. 1016, 2005 WL 2857944, at *4 (2005).
[27] *Oklahoma ex rel. Johnson v. Cook*, 304 U.S. 387, 396 (1938); *Missouri v. Harris*, 58 F. Supp. 3d 1059, 1074 (E.D. Cal. 2014), *aff'd and remanded sub nom. Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) (finding no *parens patriae* standing where state plaintiffs "alleged nothing to suggest California's shell egg laws will detrimentally affect anyone outside of an identifiable group of individual egg farmers"); *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775, 778 (9th Cir. 1973) (holding that State of California had no standing to "sue in a representative capacity" as *parens patriae* to recover for individual citizen injuries).
[28] Complaint at ¶ 3.4.
[29] *Snapp*, 458 U.S. at 607.
[30] Complaint at ¶ 3.9.

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 6

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  receiving food, shelter, clothing, and medical care—are also entitled to earn a minimum wage for

2  participating in a voluntary work program.  In fact, in 2007, the voters of Washington, through a

3  ballot initiative referendum, overwhelmingly (more than 60% of the vote) authorized "state-

4  operated inmate labor programs and programs in which inmate labor is used by private entities

5  through state contracts …" with private companies.[31]   Among the rationale supporting the

6  measure was that offenders "should work to reduce their burden on taxpayers by paying room

7  and board."[32]   Thus, the Washington public has reached its own conclusion that labor of persons

8  in state custody is a public benefit, not a harm.  The State alleges no basis from which to infer

9  Washington has an interest in paying federal immigration detainees an $11 per hour state

10  minimum wage while in the care and custody of ICE.

11  ### C.  The State Has No Independent Interest.

12  The State alleges that enforcing minimum wage laws concerns the health, safety and

13  welfare of the people of the state.[33]   Neither this allegation, nor others in the Complaint,

14  establishes that the State has the independent interest necessary to sue in *parens patriae*.  As

15  discussed, even were it presumed that the Attorney General could sue on behalf of L&I, he lacks

16  statutory authority to seek relief for the State through the MWA or unjust enrichment.  But in

17  seeking disgorgement for alleged wages due, the State wants the same money that  individual

18  detainees would pursue if they were actually employees.  Allowing the State to pursue its relief

19  in a representative capacity for a de facto class of detainee "employees" would "be a substantial

20  departure from the scope of *parens patriae* authority as it has been recognized in this country to

---

[31] Ballotpedia,  Washington Inmate Labor Programs, SJR 8212 (2007)
(https://ballotpedia.org/Washington_Inmate_Labor_Programs,_SJR_8212_(2007))
[32] *Id.*
[33] Complaint at ¶ 3.5 (quoting Wash. Rev. Code § 49.46.005(1)).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 7

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

date."[34]

### D.   Bar Against Suing The Federal Government In *Parens Patriae*.

Another reason why the State may not sue in *parens patriae* is GEO's status as a federal contractor. "Supreme Court and Ninth Circuit precedent indicate that a state does not have standing as *parens patriae* in an action against the federal government."[35] As the Supreme Court has held, "[w]hile the State, under some circumstances, may sue in that capacity for the protection of its citizens … it is no part of its duty or power to enforce their rights in respect of their relations with the Federal Government."[36] Citizens of a state are also citizens of the United States, and when federal law is at issue, "it is the United States, and not the State, which represents them as *parens patriae,* when such representation becomes appropriate…."[37] This limitation applies to a federal contractor like GEO which, although it is a private entity, carries out a federal function at ICE's direction with federal dollars.[38]

## II.   THE STATE'S CLAIMS ARE PREEMPTED BY FEDERAL LAW.

### A.   Preemption Principles.

Under the Supremacy Clause, federal law "shall be the supreme Law of the Land; and the

---

[34] *Frito-Lay, Inc.*, 474 F.2d at 775-76 ("*Parens patriae* has received no judicial recognition in this country as a basis for recovery of money damages for injuries suffered by individuals."); *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976) (explaining that a state has standing to sue "only when its sovereign or quasi-sovereign interests are implicated and it is not merely litigating as a volunteer the personal claims of its citizens").

[35] *People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. CIV.A05-0211, 2005 WL 1719892, at *2 (E.D. Cal. July 18, 2005) (citing *Snapp*, 458 U.S. at 610 n. 16; *Nevada v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990)).

[36] *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923) (internal citation omitted).

[37] *Id.* at 486.

[38] *See, e.g, Doe v. United States*, 831 F.3d 309, 316 (5th Cir. 2016) (noting that private contractor's "role … in detaining aliens pending a determination of their immigration status pursuant to ICE specifications" was "fundamentally a federal function" for purposes of suits under 42 U.S.C. § 1983); *United States v. Thomas*, 240 F.3d 445, 448 (5th Cir. 2001) (holding that private contractor's guard at a detention center housing federal detainees was the equivalent of a federal corrections officer acting on behalf of the United States under the authority of a federal agency); *cf. Snapp*, 458 U.S. at 610 n.16 (no bar to suing defendant "individuals and companies engaged in the apple industry in Virginia," but not acting as federal contractor).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 8

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Judges in every State shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwithstanding."[39]   Congress has the power to preempt state law.[40]   "There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."[41]   States are also "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance," which "can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"[42]   State laws are also preempted "when they conflict with federal law," including where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[43]

## B.   ICE Controls Detainee Pay.

"The Government of the United States has broad, undoubted power over the subject of immigration," and "[t]he federal power to determine immigration policy is well settled."[44] "[T]he supremacy of the national power in the general field of foreign affairs, including power over immigration, naturalization and deportation, is made clear by the Constitution."[45] This power includes Congress' broad authority—delegated to DHS and ICE—to detain certain

---

[39] U.S. Const. art. VI, cl. 2.
[40] *Arizona v. United States*, 567 U.S. 387, 399 (2012); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law.").
[41] *Arizona*, 567 U.S. at 399.
[42] *Id*. (citations omitted).
[43] *Id*. (citations omitted).
[44] *Id.* at 394-95.
[45] *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941); *see also Toll v. Moreno*, 458 U.S. 1, 10 (1982); U.S. Const. art. 1, § 8 cl. 4 ("To establish a uniform Rule of Naturalization"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013) (power over immigration also rests significantly on federal government's "inherent power as a sovereign to control and conduct relations with foreign relations").

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 9

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  categories of aliens.[46]  DHS and ICE, in turn, have broad administrative discretion to contract
2  with private sector entities, such as GEO, to provide secure facilities.[47]

3      Congress, by statute and through delegated authority, determines if, when, and how much
4  federal immigration detainees are paid for work.  Since 1950, Congress provided that:

6      Appropriations now or hereafter provided for the Immigration and Naturalization Service
        shall be available for. . . (d) payment of allowances (at such rate as may be specified from
7       time to time in the appropriation Act involved) to aliens, while held in custody under the
        immigration laws, for work performed . . .[48]
8

9  From 1950 to 1979, Congress specially authorized these allowances.  During this time, the
10  appropriations bills authorized reimbursement for the VWP program "at a rate not in excess of
11  $1.00 per day."[49]   After 1979, Congress opted instead to provide general appropriations
12  authorization.[50]   ICE now has authority to reimburse VWP detainees, but without the
13  requirement that "Congress [] set the rate of compensation for each fiscal year."[51]  That
14  reimbursement remains a matter of "legislative discretion."[52]

16      Congress has also delegated authority to agencies not only to detain aliens,  but also to
17  contract with private sector entities, such as GEO, to provide secure facilities.[53]  Those federal
18  agencies have broad discretion to decide how to carry out their duty to "arrange for appropriate

---

[46] *See* 8 U.S.C. §§ 1225, 1226, 1226a, 1231.
[47] 8 U.S.C. §§ 1103, 1231(g).
[48] 8 U.S.C. § 1555(d).
[49] *See, e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 10, 1978).
[50] Dep't of Justice Appropriations Authorization Act, 1979, Pub. L. No. 96-132, § 2(10), 93 Stat. 1040, 1042 (1979).
[51] *See* INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor, General Counsel
Op. No. 92-63, 1992 WL 1369402, *1 (Nov. 13, 1992) (citing 93 Stat. at 1042) (noting that discontinuance of
annual appropriation of $1 daily allowance "does not abrogate [INS/ICE] authority to pay aliens for labor performed
while in [INS/ICE] custody" and "the [INS/ICE] retains authority to expend appropriated funds to pay aliens for
labor performed while in custody").
[52] *Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992).
[53] *See* 8 U.S.C. §§ 1103, 1225, 1226, 1226a, 1231.

STATE OF WASHINGTON V. GEO GROUP                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05806-TLF                           Joan K. Mell
GEO'S MOTION TO DISMISS - 10                         1019 Regents Blvd. Ste. 204
                                                     Fircrest, WA 98466
                                                     253-566-2510 ph
                                                     joan@3brancheslaw.com

places of detention for aliens detained pending removal or a decision on removal."[54]  GEO's facility at NWDC is one such appropriate place.  ICE requires GEO to comply with the PBNDS, including that "[d]etainees shall be provided the opportunity to participate in a voluntary work program."[55]  The PBNDS specifies that "[d]etainees shall receive monetary compensation for work completed in accordance with the facility's standard policy," and that compensation is "at least $1.00 (USD) per day."[56]  This policy does not require compliance with the minimum wage laws of any state.

The $1 daily allowance has withstood legal challenges under the FLSA for decades.  In *Alvarado Guevara v. I.N.S.*,[57] immigration detainees challenged the $1 daily rate, claiming that they were entitled to the federal minimum wage for work in grounds, maintenance, cooking, laundry, and other services.  The Fifth Circuit noted that, despite this "apparent exchange of money for labor," the detainees are not "employees" under the FLSA.  "[I]t would not be within the legislative purpose of the FLSA to protect [the detainees]," because "[t]he congressional motive for enacting the FLSA, … was to protect the 'standard of living' and 'general well-being' of the worker in American industry."[58]  Detainees are "removed from American industry," and "not within the group that Congress sought to protect in enacting the FLSA."[59]

## C.    The MWA Is Preempted By Federal Law.

The preemptive effect of federal law on the issue of detainee exclusion from minimum wage is strong, and Washington's Attorney General has recognized federal preemption excuses

---

[54] 8 U.S.C. § 1231(g).
[55] PBNDS, § 5.8.V.A.
[56] PBNDS, § 5.8.V.K..
[57] 902 F.2d 394, 395 (5th Cir. 1990).
[58] *Id.* at 396 (citations omitted).
[59] *Id.*

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 11

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   compliance with state labor law in similar contexts.[60]   The MWA is expressly preempted, and

2   also subject to field and obstacle preemption.

3              **1.      Express Preemption.**

4

5   In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which

6   "clearly made the regulation of the employment of unauthorized aliens a central concern of

7   federal immigration policy."   IRCA made it unlawful "to hire, or to recruit or refer for a fee, for

8   employment in the United States an alien knowing the alien is an unauthorized alien … with

9   respect to such employment."[61]   Under a subsection entitled "Preemption," Congress stated that

10  "[t]he provisions of this section preempt any State or local law imposing civil or criminal

11  sanctions (other than through licensing and similar laws) upon those who employ, or recruit or

12

13  refer for a fee for employment, unauthorized aliens."[62]

14  Under the State's interpretation of the MWA, the State seeks an outcome that is

15  impossible and illegal.   GEO may not become an "employer" compelled to pay a minimum wage

16

17  to immigration detainees because GEO—like all other employers—may not employ

18  undocumented aliens in contravention to federal law.   Thus, the MWA comes within the scope of

19  state laws that are expressly preempted by Congress.

20

21  The unjust enrichment claim is also expressly preempted.   Because the State may not

22  seek damages under the MWA, the unjust enrichment claim similarly fails because the State has

23

24  _____

25  [60] Attorney General of Washington, AGO 1970 No. 9 (May 26, 1970) (http://www.atg.wa.gov/ago-opinions/offices-and-officers-state-labor-and-industries-working-hours-and-conditions-women) (opining: (1) an employer who is
governed by Title VII of the Federal Civil Rights Act of 1964 could not use state labor laws relating to working

26  conditions to justify refusing to hire or promote women; and (2) an employer governed by Title VII "is excused
from compliance with" state statutes "to the extent that these state provisions are in conflict with the federal act").

27  [61] 8 U.S.C. 1324a(a).
    [62] 8 U.S.C. § 1324a(h)(2).

28  STATE OF WASHINGTON V. GEO GROUP                              III BRANCHES LAW, PLLC
    ECF CASE NO. 3-17-cv-05806-TLF                                         Joan K. Mell
    GEO'S MOTION TO DISMISS - 12                                  1019 Regents Blvd. Ste. 204
                                                                          Fircrest, WA 98466
                                                                          253-566-2510 ph
                                                                          joan@3brancheslaw.com

1   no applicable authority to compel a payment greater than the payment ICE sets and GEO

2   advances.[63]   The unjust enrichment claim is just a derivative theory to seek monetary recovery

3   for the same minimum wage claim, and is preempted for the same reason.  The State has not

4   identified, nor can it identify, anything it did to unjustly enrich GEO.

5

6   ## 2.   Field Preemption.

7          States cannot regulate conduct in a field that Congress, acting within its proper authority,

8   has determined must be regulated by federal law alone.[64]  This determination can be inferred

9   from a regulatory framework "so pervasive ... that Congress left no room for the States to

10  supplement it" or where there is a "federal interest ... so dominant that the federal system will be

11  assumed to preclude enforcement of state laws on the same subject."[65]  "Where Congress

12  occupies an entire field … even complementary state regulation is impermissible."[66]  Thus, in

13  *Arizona* the Supreme Court held that Congress has occupied the field of alien registration, such

14  that the State of Arizona's alien registration statute was preempted.[67]

15

16         In the same way, Congress has preempted the field of immigration detention, and

17  specifically of confinement conditions in federally controlled immigration processing centers

18  like NWDC.  Congress, by statute and through delegated authority, determines where immigrant

19  detainees are housed and regulates detention conditions extensively.   Congress determines

20  whether anyone can employ unauthorized aliens.[68]  Congress made the decision to appropriate

---

[63] Complaint at ¶ 6.5.
[64] *Arizona*, 567 U.S. at 399.
[65] *Id.* (alterations in original) (citation omitted).
[66] *Id.* at 401.
[67] *Id.* at 401-02 ("Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders.").
[68] *See, e.g.,* 8 U.S.C. § 1324a.

STATE OF WASHINGTON V. GEO GROUP                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05806-TLF                                      Joan K. Mell
GEO'S MOTION TO DISMISS - 13                          1019 Regents Blvd. Ste. 204
                                                                              Fircrest, WA 98466
                                                                              253-566-2510 ph
                                                                              joan@3brancheslaw.com

monies for "payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens …. for work performed."[69]   The only "rate" Congress specified in decades of appropriations was $1 per day.[70]   If Congress intended that federal immigration detainees would be paid a state minimum wage, it could legislate that; it could make detainees "employees" under the FLSA by amending that act.   But Congress has made the contrary determination that the "the minimum wage is not needed to protect the [detainees'] well-being and standard of living."[71]   Federal detainees are not "employees," because detainees "are both confined and provided for" in detention facilities.[72]

In *Arizona*, the Supreme Court noted that, consistent with the notion that there is a single sovereign in charge of keeping track of aliens, the preemption doctrine did not tolerate a situation in which "every State could give itself independent authority to prosecute federal registration violations, 'diminish[ing] the [Federal Government]'s control over enforcement' and 'detract[ing] from the 'integrated scheme of regulation' created by Congress.'"[73]   Likewise, applying MWA's minimum wage requirements to detention facility contractors would allow the states to intrude upon an area the federal government has claimed for itself.   The "federal interest" in the uniformity of detention programs is so "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[74]

---

[69] 8 U.S.C. § 1555(d); *see also Guevara*, 1992 WL 1029, *2 ("Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor," and that "wage level is a matter of legislative discretion.").

[70] *See supra* at 10.

[71] *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992); *see* 29 U.S.C. § 202(a) (congressional finding and declaration of policy).

[72] *Guevara*, 1992 WL 1029, *1.

[73] *Arizona*, 567 U.S. at 402 (alteration original) (quoting *Wis. Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 288-289 (1986)).

[74] *See id.* at 399.

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 14

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

### 3.   Conflict/Obstacle Preemption.

Obstacle preemption arises when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[75]  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."[76]

The federal government has a clear interest in how it carries out its duty to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."[77] ICE commonly contracts with private companies such as GEO to provide detention services across the United States.  ICE's contracts require federal contractors to administer the VWP, with authorization and contractual reimbursement to pay detainees $1 per day for participation.[78] As the Supreme Court has explained, "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.  Either way, the interests of the United States will be directly affected."[79]

Minimum wage payments to detainees would directly impact what ICE (and ultimately, federal taxpayers) must pay to federal contractors to obtain the services that ICE needs to carry out its duties.  Congress controls the expenditures for detainee work;[80] therefore, ICE did not contract for detention services with the expectation that states would force  contractors to pay

---

[75] *Crosby*, 530 U.S. at 373 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *Nation v. City of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015).
[76] *Crosby*, 530 U.S. at 373.
[77] 8 U.S.C. § 1231(g).
[78] PBNDS, § 5.8.V.K.
[79] *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988).
[80] 8 U.S.C. § 1555(d).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 15

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

state minimum wages for VWP participation, particularly a state like Washington where the people amended their constitution to permit private employment of persons in the state's custody for nominal amounts.  ICE detention operators would suffer from a balkanized patchwork of state laws, with unpredictable equitable demands based on what particular courts might order. By contrast, in the PBNDS, ICE has implemented national standards, with the goal of uniformity in how detention facilities are operated, including how detainees are paid for work.  Applying the MWA thus creates an obstacle to Congress's objectives, and is preempted by federal law.

## III.      THE STATE FAILS TO STATE A MWA CLAIM.

The Washington Supreme Court has repeatedly recognized that the "MWA is based on the Fair Labor Standards Act of 1938."[81]  The general definitions of "employee" and "employ" are functionally identical under the two acts.[82]  In the absence of a contrary legislative intent, when a state statute is "taken 'substantially verbatim' from [a] federal statute, it carries the same construction as the federal law and the same interpretation as federal case law."[83]

The Court can and should look to decisions interpreting the FLSA to conclude that GEO and detainees would not be an "employer" and "employees" under the statute.[84]  "Congress enacted the FLSA to eliminate 'in industries engaged in commerce or in the production of goods

---

[81] *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851, 868, 281 P.3d 289, 298 (2012)  (citing *Stahl v. Delicor of Puget Sound, Inc*., 148 Wash. 2d 876, 885, 64 P.3d 10, 14 (2003)); *Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 524, 7 P.3d 807 (2000) (en banc).
[82] *Compare* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer."), *with* Wash. Rev. Code § 49.46.010(3) ("'Employee' includes any individual employed by an employer ...."); *compare also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), *with* Wash. Rev. Code § 49.46.010(2) ("'Employ' includes to permit to work.").
[83] *Anfinson*, 174 Wash. 2d at 868 (citing *State v. Bobic*, 140 Wash. 2d 250, 264, 996 P.2d 610 (2000)).
[84] *Id.*;  *Kilgore v. Shriners Hosps. For Children*, 190 Wash.App. 429, 435, 360 P.3d 55 (2015) (when construing the MWA, courts "may consider interpretations of comparable provisions of the [FLSA] as persuasive authority"); *Xieng v. Peoples Nat'l Bank*, 120 Wash.2d 512, 531, 844 P.2d 389 (1993) (in the absence of adequate state authority, federal authority is persuasive).

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 16

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   for commerce, ... labor conditions detrimental to the maintenance of the minimum standard of

2   living necessary for health, efficiency, and general well-being of workers' because such

3   conditions 'constitute[] an unfair method of competition in commerce[.]'"[85]   Washington's

4   minimum wage law has the same purpose: to protect against "the evils and dangers resulting

5   from wages too low to buy the bare necessities of life and from long hours of work injurious to

6

7   health."[86]   This rationale does not apply to an immigration detention facility, where the federal

8   government provides for detainees.

9         As discussed, courts have upheld—for decades—the $1 allowance for detainee work.  In

10  *Alvarado*,[87] the Fifth Circuit upheld the $1 daily rate for voluntary work against an immigration

11  detainee's challenge.  The court reasoned that detainees were not "employees" under the FLSA,

12  and "it would not be within the legislative purpose of the FLSA to protect [the detainees],"

13  because "[t]he congressional motive for enacting the FLSA," was to protect the "standard of

14  living" and "general well-being" of the worker in American industry.[88]   Because detainees are

15  "removed from American industry," they are "not within the group that Congress sought to

16

17  protect in enacting the FLSA."[89]   This conclusion is even more forceful given that the U.S.

18  Supreme Court has consistently construed the FLSA "liberally to apply to the furthest reaches

19  consistent with congressional direction, … recognizing that broad coverage is essential to

20

21  accomplish the goal of outlawing from interstate commerce goods produced under conditions

22

23

24

25  [85] *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (alterations in original)  (quoting 29 U.S.C. § 202(a)).
    [86] *Anfinson*, 174 Wash. 2d at 870 (citations omitted).
26  [87] 902 F.2d at 395.
    [88] *Id.* at 396 (citations omitted).
27  [89] *Id.*

28  STATE OF WASHINGTON V. GEO GROUP                                    III BRANCHES LAW, PLLC
    ECF CASE NO. 3-17-cv-05806-TLF                                            Joan K. Mell
    GEO'S MOTION TO DISMISS - 17                                       1019 Regents Blvd. Ste. 204
                                                                              Fircrest, WA 98466
                                                                              253-566-2510 ph
                                                                              joan@3brancheslaw.com

that fall below minimum standards of decency."[90]   Other courts have likewise uniformly held

that detainees are not entitled to a minimum wage.[91]

Indeed, the MWA expressly excludes "[a]ny resident, inmate, or patient of a state,

county, or municipal correctional, detention, treatment or rehabilitative institution."[92]   The

exclusion applies to many persons whose civil rights have not been compromised by a criminal

conviction.   A resident of a state, county or municipal detention institution is not entitled to the

minimum wage.   While the exclusion does not specifically reference federal immigration

detainees in private detention facilities, it makes perfect sense that Washington's statute would

not specifically address persons not in state custody.   To the extent the MWA is claimed to apply

to federal detainees, however, it is reasonable to read the exclusion to include them.[93]

In *Menocal v. The GEO Group, Inc.*, the district court judge concluded that the immigrant

detainees at GEO's Aurora facility were not "employees" entitled to minimum wage protection

under the Colorado Minimum Wage Order.[94]   The district court found it persuasive that the

Colorado minimum wage law, like the FLSA, "was not intended to be extended to those working

---

[90] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985).  The FLSA definition of "employee" is "strikingly broad."  *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015).

[91] *See, e.g.*, *Guevara*, 1992 WL 1029, *1-2; *Miller*, 961 F.2d at 9 ("the minimum wage is not needed to protect the [detainees'] well-being and standard of living"); *Tourscher v. McCullough*, 184 F.3d 236, 243-44 (3rd Cir. 1999) (pretrial detainee not an employee under FLSA because, like a prisoner, his standard of living is protected and the work "bears no indicia of traditional free-market employment"); *Villareal*, 113 F.3d at 206-07 (pretrial detainees performing translation services for prison not employees under FLSA; "correctional facilities provide pretrial detainees with their everyday needs such as food, shelter, and clothing"); *Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2 (May 24, 2017) (affirming dismissal of ICE detainee's claim for minimum wage and unjust enrichment); *Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (granting motion to dismiss ICE detainee claim for minimum wage at GEO facility).

[92] Wash. Rev. Code § 49.46.010(3)(k).

[93] L&I has read this exclusion to cover state prisoners working at prisons for private companies.  *See supra* at 5 n.23.

[94] 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015).  In *Menocal*, detainees' state minimum wage claim was dismissed. The merits of the plaintiffs' other claims have not yet been fully litigated.

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 18

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   in government custody."[95]   Additionally, Colorado law exempted "inmates and prisoners" from

2   the wage laws because inmates and prisoners were not employees under Colorado law.[96]

3   Although the Colorado statute, like Washington's, did not specifically exempt federal detainees

4   in a private facility, the court agreed with GEO that this exemption extended to detainees:

5   "[a]though immigration detainees appear to fall under the broad definition of 'employee,' so do

6   prisoners," and Colorado had interpreted "employee" not to include prisoners.[97]   Further,

7   "immigration detainees, like prisoners, do not use their wages to provide for themselves," so

8
9   minimum wage laws do not apply to them.[98]

10          Similarly, a Massachusetts appellate court recently affirmed the dismissal of a claim by

11  an ICE detainee that he was entitled to a minimum wage under Massachusetts' law for work

12
13  performed.[99]   Like the *Menocal* court, the Massachusetts court was "guided in the interpretation

14  of our wage laws by Federal case law interpreting the [FLSA]."[100]   As that court concluded,

15  "[f]ederal decisions consistently recognize that minimum wage and overtime laws intended to

16
17  apply to work in the national economy do not apply to incarcerated individuals employed within

18  the prison walls."[101]   The appellate court found "no reason why [plaintiff] Whyte's status as a

19
20  detainee should result in a different outcome from Federal cases," which have excluded inmate

21  or detainee labor within a facility "because the primary goals of the FLSA—ensuring a basic

22  standard of living and preventing wage structures from being undermined by unfair competition

---

[95] *Id.* (citing *Alvarado*, 902 F.2d at 396).
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Whyte*, 2017 WL 2274618, at *1.   *Whyte* involved a class minimum wage claim by ICE detainees who participated in a VWP.   *Id.*   The detention facility was run under a contract with a local sheriff's department.
[100] *Id.*   The court found "no Massachusetts authority … treat[ing] inmates or detainees as employees."   *Id.*
[101] *Id.* (citing *Miller*, 961 F.2d at 8-9; *Villarreal*, 113 F.3d at 207).

STATE OF WASHINGTON V. GEO GROUP                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05806-TLF                               Joan K. Mell
GEO'S MOTION TO DISMISS - 19                         1019 Regents Blvd. Ste. 204
                                                                        Fircrest, WA 98466
                                                                        253-566-2510 ph
                                                                        joan@3brancheslaw.com

in the marketplace—do not apply in that context."[102]  Thus, "[t]he rationale of the Federal cases is equally applicable to the Massachusetts wage laws at issue here."[103]

The court has no basis to interpret Washington's MWA differently than the statutes in *Menocal* or *Whyte*, or these numerous other precedents.  A uniform application of the MWA and the FLSA in public and private detention settings makes sense.  The rationale is simple and compelling.  The Seventh Circuit, presented with an FLSA wage claim against a privately-operated prison, noted that the wage claim was "an issue of some novelty but little difficulty," because the FLSA is "intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one."[104]  As Judge Posner reasoned, "[p]eople are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep.  If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside," and "[n]one of these goals is compatible with ... regulation of their wages and hours."[105] Noting that the FLSA contains no express exception for prisoners, the court noted that the reason for the lack of an exception "is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress."[106]  MWA pay for detainee participating in a voluntary work program is also too "outlandish" to survive dismissal.

## IV.    THE STATE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Under Washington law, the equitable principle of unjust enrichment (also known as

---

[102] *Id.*
[103] *Id.* (citing and discussing *Alvarado*, 902 F.2d at 395-96).
[104] *Bennett v. Frank*, 395 F.3d 409, 409-10 (7th Cir. 2005) (citing *Tourscher*, 184 F.3d at 243; *Villarreal*, 113 F.3d at 206).
[105] *Id.* at 410.
[106] *Id.*

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  "quasi contracts") provides that one should not be "unjustly enriched at the expense of

2  another."[107]  Two elements must be established.  First, the enrichment of the defendant must be

3  unjust; and second, the plaintiff "cannot be a mere volunteer."[108]

4
5  By definition, detainees who participate in the VWP have no claim for unjust enrichment.

6  According to ICE policy, VWP participation must be voluntary.[109]  The State has not alleged that

7  it is **in**voluntary.[110]  Thus, the claim fails.

8
9  The State's vague claim that it is entitled to unjust enrichment based on alleged

10  underpayment to third parties—the detainees—is inadequate.   That claim would "turn[] on

11  whether the State's actions have benefitted defendants."[111] In the *American Tobacco* litigation, a

12  superior court denied the State's unjust enrichment claim because the State had not alleged that it

13  gave the defendant tobacco companies possession of or an interest in goods.[112]  To the extent that

14  the State alleged that it performed any services for or at the request of the defendants (such as the

15  provision of medical services that allowed smokers to continue to purchase defendants'

16
17  products), those benefits were "too indirect and speculative to support its unjust enrichment

18  claim under Washington case law."[113] An unjust enrichment claim "stands or falls on the State's

19  theory that the defendants have an underlying obligation or legal duty to third persons which has

20  been satisfied **by the State's efforts**."[114]  Likewise, here the State's claim is "deficient" because it

21

22

_____

23  [107] *Lynch v. Deaconess Med. Ctr.*, 113 Wash. 2d 162, 165, 776 P.2d 681, 683 (1989); *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wash.2d 363, 367, 301 P.2d 759 (Wash. 1956).

24  [108] *Lynch*, 113 Wash. 2d at 165.
   [109] PBNDS, § 5.8.II.2.

25  [110] Detainees must qualify to participate in the VWP, and normally sign agreement acknowledging their voluntary participation in the program.

26  [111] *State v. Am. Tobacco Co., Inc.*, No. 96-2-15056-8 SEA, 1996 WL 931316, at *8 (Wash. Super. Nov. 19, 1996).
   [112] *Id.* at *9.

27  [113] *Id.*
   [114] *Id.*

28  STATE OF WASHINGTON V. GEO GROUP                                III BRANCHES LAW, PLLC
   ECF CASE NO. 3-17-cv-05806-TLF                                           Joan K. Mell
   GEO'S MOTION TO DISMISS - 21                                    1019 Regents Blvd. Ste. 204
                                                                              Fircrest, WA 98466
                                                                              253-566-2510 ph
                                                                              joan@3brancheslaw.com

makes no allegation that the State has conferred a benefit on GEO.

The core of an unjust enrichment action "lies in a promise, implied by law, that one will render to the person entitled thereto that which, in equity and good conscience, belongs to the latter."[115]  The Complaint does not allege that any detainee was promised a minimum wage, nor could it.  Decades ago Congress set the allowance for VWP work at $1 per day, and to this day ICE policies permit the payment of $1 per day because detainees are provided for, and not seeking a wage in commerce.[116]  In *Whyte*, an ICE detainee sued for unjust enrichment based on a minimum wage theory.  The Massachusetts court of appeals affirmed the dismissal of the claim, noting that "[a]bsent some factual allegation that he reasonably expected compensation at a higher rate, and the defendants accepted the benefit of his labor with actual or chargeable knowledge of his expectation, the complaint fails to state a claim for quantum meruit or unjust enrichment."[117]  Here, the State made no allegation in the Complaint that would permit the Court to conclude that detainees (or anyone else on whose behalf the State purports to sue) had a reasonable expectation of being paid a minimum wage.

## V.    UNCLEAN HANDS AND LACHES BAR EQUITABLE RELIEF.

The "unclean hands" doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief," regardless of the

---

[115] *Hedin v. Roberts*, 16 Wash. App. 740, 742, 559 P.2d 1001, 1002 (1977).  *See also Payne v. Ruegsegger*, 194 Wash. App. 1034, 2016 WL 3402353, *6  (2016) (unpublished) ("[T]he plaintiff must allege that she performed or otherwise conferred a benefit on the defendants under a contractual or quasi-contractual relationship with the expectation of remuneration.") (citing *Prima v. Darden Restaurants, Inc*., 78 F. Supp. 2d 337, 355 (D.N.J. 2000)).
[116] 8 U.S.C. § 1555; PBNDS, § 5.8.V.K; *see Alvarado*, 902 F.2d at 396.
[117] *Whyte*, 2017 WL 4231182, at *2 (citation omitted).

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1 defendant's conduct.[118]  A party has unclean hands when it has "violated conscience, good faith,

2 or other equitable principles" in its prior conduct.[119]  "A defense of unclean hands, if sufficiently

3 established, may preclude equitable relief."[120]  The defense of laches also may preclude equitable

4 relief, and "consists of two elements: (1) inexcusable delay and (2) prejudice to the other party

5 from such delay."[121]  Prejudice is the main component.[122]

6

7         The State has unclean hands that prevent it from seeking relief under an unjust

8 enrichment theory.  First, the State acts in bad faith by seeking to force GEO to pay a minimum

9 wage when Washington law itself excludes residents of state, county or municipal detention

10 centers from minimum wage protections, and expressly excludes state prisoners in private

11 facilities from minimum wage protections.  As noted, Washington's MWA expressly exempts

12 residents of state, county or municipal detention institutions from minimum wage protections.[123]

13 Inmates in the custody of the DOC are provided "opportunities to support the daily operation and

14 maintenance" of state facilities, but are compensated at a fraction of the wages that the Attorney

15 General demands GEO to pay federal detainees.[124]   The State alleges that GEO unjustly retains a

16

17

18 _____

19 [118] *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876–77 (9th Cir. 2000) (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)); *Waltz v. Tanager Estates Homeowner's Ass'n*, 183 Wash. App. 85, 92, 332 P.3d 1133, 1136 (2014) ("[I]t has long been the rule in this state that equity does not aid those with unclean hands.").

20 [119] *Dollar Sys. Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

21 [120] *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. C12-1913-RSM, 2013 WL 5945810, at *5 (W.D. Wash. Nov. 6, 2013).

22 [121] *Clark Cty. Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wash. 2d 840, 848, 991 P.2d 1161, 1166 (2000); *Brown v. Cont'l Can Co.*, 765 F.2d 810, 814 (9th Cir. 1985).

23 [122] *Pierce v. King Cty.*, 62 Wash. 2d 324, 332, 382 P.2d 628 (1963); *see also Vance v. City of Seattle*, 18 Wash. App. 418, 425, 569 P.2d 1194 (1977) (noting that laches does not depend upon passage of time alone, but also upon the effects of delay upon the relative positions of the parties) (citing *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)).

24 [123] Wash. Const. art. II, § 29; Wash. Rev. Code § 49.46.010(3)(k); *see supra* at 5.

25 [124]   *See* Washington Dep't of Corrections Policy 700.100 (capping compensation at $55 per month, or less than 32 cents per hour, based on a 40-hour week).  GEO recognizes that the DOC policy applies to prisoners convicted of offenses, rather than civil immigration detainees.   But this distinction does not override the fundamental reason why detainees, like prisoners, are not paid wages for their work under FLSA or state law:  they are already provided

26

27

28

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 23

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  benefit from having detainees participate in the VWP for $1 per day.  Were that true, the same

2  goes for the State of Washington; it is inequitable to prosecute claims against GEO for actions

3  the State's agencies also take.

4

5      Second, the State has unclean hands and is barred by laches because L&I, the relevant

6  agency with supervisory and enforcement authority,[125] has never taken any enforcement action

7  against GEO despite knowing about the voluntary work program from prior site inspections.

8  The current Attorney General's political interest in anti-Trump rhetoric is no excuse for the

9  State's inaction.  Additionally, GEO periodically enters into new contracts or extensions of

10  contracts with ICE and has done so without budgeting under the MWA for detainees.  If the

11  Court somehow finds merit in these claims to avoid dismissal, the Court should conclude that the

12

13  State is barred from seeking equitable recovery by its unclean hands and inexcusable, prejudicial

14  delay.[126]

15

16                              **CONCLUSION**

17      For the above stated reasons, the Complaint should be dismissed in its entirety.

18

19

20

21

22

23

necessities while in detention or incarcerated, and thus are not part of the wage-earning public that relies on a
minimum wage to obtain these necessities.  *Whyte*, 2017 WL 2274618, at *1-2; *Menocal*, 113 F. Supp. 3d at 1129.

24
[125] Wash. Rev. Code § 43.22.282.

25  [126] Furthermore, if GEO is deemed an "employer," and the State is allowed to pursue monetary recovery for a
minimum wage, the State  may also be subject to a claim for offset for expenses for mainlining detainees.  *See, e.g.*,

26  29 U.S.C. § 203(m);  U.S. Dep't of Labor, Field Assistance Bulletin No. 2015-1, *Credit toward Wages under
Section 3(m) of the FLSA for Lodging Provided to Employees* (Dec. 17, 2015).  GEO reserves the right to raise such

27  a claim or defense at an appropriate time.

28  STATE OF WASHINGTON V. GEO GROUP                         III BRANCHES LAW, PLLC
    ECF CASE NO. 3-17-cv-05806-TLF                                    Joan K. Mell
    GEO'S MOTION TO DISMISS - 24                          1019 Regents Blvd. Ste. 204
                                                                   Fircrest, WA 98466
                                                                   253-566-2510 ph
                                                               joan@3brancheslaw.com

| | |
|---|---|
| 1 | Dated: October 16, 2017 |

**III BRANCHES LAW, PLLC**

By: _____
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com

**NORTON ROSE FULBRIGHT US LLP**
Charles A. Deacon
300 Convent St.
San Antonio, Texas 78205
Telephone: (210) 270-7133
Facsimile:  (210) 270-7205
charlie.deacon@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
Mark Emery
799 9th Street NW, Suite 1000
Washington, DC  20001-4501
Telephone: (202) 662-0210
Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

**ATTORNEYS FOR DEFENDANT THE GEO GROUP, INC.**

STATE OF WASHINGTON V. GEO GROUP
ECF CASE NO. 3-17-cv-05806-TLF
GEO'S MOTION TO DISMISS - 25

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

**CERTIFICATE OF SERVICE**

1

2        I, Joseph Fonseca, hereby certify as follows:

3
         I am over the age of 18, a resident of Pierce County, and not a party to the above action.
4

5    On October 16, 2017, I electronically filed the above GEO's Motion to Dismiss, with the Clerk

6    of the Court using the CM/ECF system and served via Email to the following:

7    Office of the Attorney General
     La Rond Baker, WSBA No. 43610
8    Marsha Chien, WSBA No. 47020
9    800 Fifth Avenue, Suite 2000
     Seattle, WA 98104
10   LaRondB@atg.wa.gov
11   MarshaC@atg.wa.gov

12   Norton Rose Fulbright US LLP
     Charles A. Deacon(Pro Hac Vice To Be File)
13   300 Convent St.
14   San Antonio, TX 78205
     (210)-270-7133
15   charlie.deacon@nortonrosefulbright.com

16
     Norton Rose Fulbright US LLP
17   Mark Emery (Pro Hac Vice To Be Filed)
     799 9th St. NW, Suite 1000
18   Washington, DC 20001-4501
19   (202)-662-0210
     mark.emery@nortonrosefulbright.com
20

21       I certify under penalty of perjury under the laws of the State of Washington that the above

22   information is true and correct.

23       DATED this 16th day of October, 2017 at Fircrest, Washington.

24

25       Joseph Fonseca, Paralegal

26

27

28   STATE OF WASHINGTON V. GEO GROUP                III BRANCHES LAW, PLLC
     ECF CASE NO. 3-17-cv-05806-TLF                        Joan K. Mell
     GEO'S MOTION TO DISMISS - 26                   1019 Regents Blvd. Ste. 204
                                                          Fircrest, WA 98466
                                                          253-566-2510 ph
                                                        joan@3brancheslaw.com