**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

STATE OF WASHINGTON,

        Plaintiff,

  v.

THE GEO GROUP, INC.,

        Defendant.

CIVIL ACTION NO. 3:17-cv-05806-RJB

**STATE OF WASHINGTON'S**
**MOTION TO REMAND**

NOTE ON MOTION CALENDAR:
December 1, 2017

ORAL ARGUMENT REQUESTED

MOTION TO REMAND

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 1

III.  ARGUMENT ...................................................................................................... 3

    A.   GEO Cannot Avail Itself of Federal Officer Removal Because It Made a Discretionary Business Decision for Which It Lacks a Colorable Defense Under Federal Law ............................................................................................ 3

        1.   There is no causal nexus between any federal officer's direction and GEO's choice to pay $1 per day ............................................................. 4

        2.   Preemption Is Not a Colorable Federal Defense to Washington's Claims ........ 8

            a.   GEO does not allege a colorable express-preemption defense .................. 9

                i.   The ICE-GEO contract cannot preempt state law ........................... 9

                ii.  IRCA does not preempt generally applicable state laws that protect workers ................................................................................. 9

            b.   GEO does not allege a colorable field preemption defense ..................... 11

            c.   GEO does not allege a colorable conflict preemption defense ................ 14

    B.   No Substantial and Disputed Federal Issue Provides Grounds for Removal .......... 15

    C.   States Are Not "Residents" For Purposes of Diversity Jurisdiction ....................... 19

IV.   CONCLUSION ................................................................................................. 22

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

# TABLE OF AUTHORITIES

## Cases

*Alvarado Guervara v. INS,*
902 F.2d 394 (5th Cir. 1990) .......................................................................... 14

*Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. cv-11-141-PHX-FJM, 2011 WL
995963 (D. Ariz. Mar. 21, 2011) .................................................................... 21

*Arizona v. Manypenny,*
451 U.S. 232 (1981) ......................................................................................... 4

*Arizona v. United States,*
567 U.S. 387 (2012) ............................................................................... 9, 12, 14

*Arness v. Boeing N. Am., Inc.,*
997 F.Supp. 1268 (C.D. Cal. 1998) ................................................................. 7

*AU Optronics Corp. v. South Carolina,*
699 F.3d 385 (4th Cir. 2012) ......................................................................... 21

*Becerra v. Expert Janitorial,*
332 P.3d 415 (Wash. 2014) ............................................................................ 13

*Berg v. Leason*, 32 F.3d 422 (9th Cir. 1994) ...................................................... 17

*Boyle v. United Technologies, Corp.,*
487 U.S. 500 (1988) ........................................................................................ 18

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015) .................. 5, 6

*Cabalce v. VSE Corp.,*
922 F. Supp. 2d 1113 (D. Haw. 2013) ............................................................. 5

*Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011) ............................................. 10

*Chen v. GEO Group, Inc.,*
No. 3:17-cv-056769 (W.D. Wash. Sep. 26, 2017) ......................................... 21

*Chicanos Por La Causa v. Napolitano,*
558 F.3d 856 (9th Cir. 2009). ....................................................................... 15

*Cipolione v. Ligget Group Inc.,*
505 U.S. 504 (1992) ....................................................................................... 11

*City of Seattle v. McKenna,*
259 P.3d 1087 (Wash. 2011) .......................................................................... 20

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000)............................................................................................ 14

*Dep't of Fair Emp't & Hous., v. Lucent Tech., Inc.*, 642 F.3d 728 (9th Cir. 2011) ...... 19, 20, 21

*Dep't of Labor & Indus. v. Common Carriers*, 762 P.2d 348 (Wash. 1988) ......................... 13

*Dep't of Labor & Indus. v. Lanier Brugh,*
   147 P.3d 588 (Wash. App. 2006) ....................................................................... 13

*Empire HealthChoice Assur. Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005) ............................ 9

*Fifty Ass'ns v. Prudential Ins. Co.,*
   446 F.2d 1187 (9th Cir. 1970) ........................................................................... 19

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144 (D. Colo.
   2002)............................................................................................................... 4, 7

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
   505 U.S. 88 (1992)............................................................................................ 11

*Getz v. Boeing Co.,*
   654 F.3d 852 (9th Cir. 2011) ............................................................................. 18

*Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017) ............. 4, 5, 8

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) .......... 16, 18

*Gunn v. Minton*, 568 U.S. 251 (2013) ..................................................................... 16, 17

*Hawaii ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-LRP, 2014 WL
   3427387 (D. Haw. July 15, 2014)...................................................................... 21

*Holdren v. Buffalo Pumps, Inc.,*
   614 F. Supp. 2d 129 (D. Mass. 2009).................................................................... 4

*Incalza v. Fendi N. Am., Inc.,*
   479 F.3d 1005 (9th Cir. 2007) ........................................................................... 10

*Inniss v. Tandy Corporation,*
   7 P.3d 807 (Wash. 2000) .................................................................................. 13

*Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224 (8th Cir. 2015) ..................................... 8

*K2 Am. Corp. v. Roland Oil & Gas, LLC,*
   653 F.3d 1024 (9th Cir. 2011) ........................................................................... 16

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219 (2d Cir. 2006)................................. 10

*Menocal v. GEO Group, Inc.,*
   113 F. Supp. 3d 1125 (D. Colo. 2015).............................................................. 14, 17

Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

*Metro. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985)................................................................................................ 11

*Mobley v. Cerro Flow Prods., Inc.*,
    No. 09–697–GPM, 2010 WL 55906 (S.D. Ill. Jan. 5, 2010) ................................. 7

*Moor v. Alameda Cty.*,
    411 U.S. 693 (1973) ............................................................................................... 19

*N.L.R.B. v. Calkins*,
    187 F.3d 1080 (9th Cir. 1999) ............................................................................... 8

*Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016) ....................... 11

*Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012) ........................................... 19

*Pac. Merch. Shipping Assoc. v. Aubry*,
    918 F.2d 1409 (9th Cir. 1990) ............................................................................... 12

*Parks v. Guidant Corp.*,
    402 F. Supp. 2d 964 (N.D. Ind. 2005) ................................................................... 7

*Prewett v. Goulds Pumps (IPG)*,
    No. C09-0838 RSM, 2009 WL 2959877 (W.D. Wash. Sept. 9, 2009) .................. 4

*Quillinan v. Papavassiliou*,
    No. C12-04159CRB, 2013 WL 428604 (N.D. Cal. 2013) ..................................... 17

*RUI One Corp. v. City of Berkeley*,
    371 F.3d 1137 (9th Cir. 2004) ............................................................................... 11

*Shanks v. Dressel*,
    540 F.3d 1082 (9th Cir. 2008) ............................................................................... 18

*Snell v. Bell Helicopter Textron, Inc.*,
    107 F.3d 744 (9th Cir. 1997) ................................................................................. 18

*State v. Chinook Hotel, Inc.*,
    399 P.2d 8 (Wash. 1965) ....................................................................................... 20

*State v. Monsanto Co.*,
    No. C17-53RSL, 2017 WL 3492132 (W.D. Wash. July 28, 2017)........................ 5

*Sygenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002)................................................................................................. 22

*Telecomms. Records Litig.*,
    483 F. Supp. 2d 934 (N.D. Cal. 2007)................................................................... 5

*United States v. Nixon*,
    839 F.3d 885 (9th Cir. 2016) ................................................................................. 12

*Whyte v. Suffolk Cty. Sheriff's Dep't.*,
  91 Mass. App. Ct. 1124, 2017 WL 2274618 (May 24, 2017) ................................. 14

*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000) ........................................................................ 8

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) ................................. 7

## Statutes

28 U.S.C. § 1441 ................................................................................................... 16

28 U.S.C. § 1442 ............................................................................................... 4, 7

28 U.S.C. 1442(a)(1) ....................................................................................... 3, 4, 8

29 U.S.C. § 202 ................................................................................................... 13

29 U.S.C. § 202(a) ............................................................................................... 14

29 U.S.C. § 218 ................................................................................................... 12

8 U.S.C. § 1226(a) ........................................................................................... 15, 16

8 U.S.C. § 1324a(a) ............................................................................................... 9

8 U.S.C. § 1324a(h)(2) ....................................................................................... 9, 11

Wash. Rev. Code § 43.10.030(1) .......................................................................... 20

Wash. Rev. Code § 49.46.005(1) .......................................................................... 13

Wash. Rev. Code § 49.46.005(1)-(3) ...................................................................... 22

## Other Authorities

*Compliance Inspection*,
  January 10-12, 2012, U.S. Department of Homeland Security Office of Detention
  Oversight at https://www.ice.gov/doclib/foia/odo-compliance-
  inspections/2012northwest-detention-center-tacoma-wa-jan10-12.pdf ................................. 1

U.S. Const. Art. VI ................................................................................................... 9

U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet #48: Application of U.S.
  Labor Laws to Immigrant Workers (July 2008), *available at*
  https://www.dol.gov/whd/regs/compliance/whdfs48.htm ................................................. 10

# I.    INTRODUCTION

The State of Washington ("Washington") filed a complaint in state court to require THE GEO GROUP, INC. ("GEO"), the private operator of a for-profit detention facility, to comply with its obligations to Washington workers under state law. GEO removed this matter to federal court seeking to avail itself of federal jurisdiction by cloaking its business decisions in the color of federal law.

GEO's attempt to remove under the "federal officer" removal statute fails because it did not operate under a federal directive: GEO made the discretionary decision to pay workers $1 per day, in violation of state law and its own contract with the federal government. GEO also cannot sustain its burden to demonstrate a colorable federal defense, as no form of preemption displaces Washington's minimum wage law. This case does not turn on any substantial dispute over the construction of federal law, and no diversity of parties exists. GEO cannot meet its burden of proof to sustain removal, and this matter should be remanded to state court for a determination of Washington's two state-law causes of action.

# II.    FACTUAL BACKGROUND

GEO is the exclusive owner and operator of the Northwest Detention Center ("NWDC") in Tacoma, Washington.[1] GEO contracts with U.S. Immigration and Customs Enforcement ("ICE") to detain non-citizens pending resolution of their civil immigration proceedings. *See* Baker Decl., Ex. A HSCEDM-15-D-00015 ("ICE-GEO Contract").[2] GEO provides detention

_____

[1] NWDC is a Contract Detention Facility ("CDF") exclusively owned and operated by GEO. *See Compliance Inspection*, January 10-12, 2012, U.S. Department of Homeland Security Office of Detention Oversight at https://www.ice.gov/doclib/foia/odo-compliance-inspections/2012northwest-detention-center-tacoma-wa-jan10-12.pdf.

[2] Despite relying heavily on its contract with ICE in its Notice of Removal to Federal Court ("Removal Notice"), ECF 1, GEO did not provide the Court with a copy of the contract. Instead, GEO cites to a declaration of counsel where counsel purports to recite excerpts of GEO's contract with ICE. *See* Mell Decl. ¶ 1.3, ECF 3. Without a copy of the contract, neither Washington nor the Court can confirm the contract language (or evaluate it in context). Washington attaches a copy of the 2015–2025 contract between GEO and ICE that was obtained

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

services to ICE pursuant to a contract that requires GEO to comply with "applicable federal, state and local labor laws and codes." Baker Decl., Ex. A at 44. Under the contract, GEO is "expected to be knowledgeable" of all "statutory" and "regulatory" constraints under state and local law, and must "perform in accordance with the most current version of the constraints." *Id.* at 43-44; *see also id.* at 85 ("The facility . . . shall be designed, constructed, *operated*, and maintained in accordance with all applicable federal, state, and local laws, regulations, codes, guidelines, and policies.") (emphasis added). Confirming the application of state law, the contract's "Ambiguities" section provides as follows:

> "All services must comply with the Performance Work Statement (PWS) [in the contract] and all applicable federal, state, and local laws and standards. Should a conflict exist between any of these standards, the most stringent shall apply."

*Id.* at 52.

The ICE-GEO contract also sets the rates ICE will pay for specific expenses and services, including bed space, transportation services, fuel costs, and overtime. *Id.* at 1-43. No line item sets the amount that ICE must reimburse for GEO's employee labor costs; those amounts must be paid by GEO from the overall price it charges to operate the facility.

GEO's contract additionally directs it to "manage a detainee work program" that is "developed by the Contractor." *Id.* at 82. The contract does not define how GEO must implement the detainee work program, instead granting GEO discretion to design and adopt the program, provided it complies with all other laws. *Id.* at 44, 52, 85. The contract provides that ICE will reimburse GEO up to $1 day for compensation made to detainee-workers in the detainee work program. *See id.* at 5, 9, 12, 16.

GEO uses the detainee work program as a replacement for all non-security staff at NWDC. Compl. ¶¶ 14.1-14.9, ECF 1-1 at 5. GEO uses detainee workers to cook all the food

---

through the Freedom of Information Act. Baker Decl., Ex. A (redactions as produced by the government). Washington's citations to the "ICE-GEO Contract" are to this Exhibit.

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1 served to detainees, operate the laundry facility for clothing and bedding, clean most areas of

2 NWDC, and assist in distributing commissary. *Id.* GEO pays detainees who perform this labor

3 $1 per day regardless of hours worked. *Id.*

4     Washington alleges that GEO's decision to pay $1 per day to detainee-workers, who

5 qualify as "employees" for purposes of Washington law, is a violation of state statutory and

6 common law. In seeking declaratory judgment and disgorgement of unjustly gained profits,

7 Washington seeks to protect its economy and workers – both inside NWDC and in the greater

8 Tacoma area – from unfair labor practices that unfairly game the system and depress the

9 economy. Washington alleges state-law harms including the loss of employment opportunities

10 for non-detainees, exploitation of detainee-workers, and the undermining of our State's long

11 history of worker protections.

12 **III.  ARGUMENT**

13     GEO claims to qualify for "federal officer" removal and attempts to remove this action

14 in the interest of federal "uniformity." Removal Notice at 13-17, 21, 28-29. However, GEO is a

15 private company that made the discretionary business decision at the heart of this dispute, and a

16 private litigant's bare interest in a uniform, nationwide regulatory landscape is not a basis for

17 federal jurisdiction. GEO's diversity argument fails because Washington is a real party in interest

18 and not a citizen of Washington State for purposes of diversity jurisdiction. No removal

19 jurisdiction exists.

20 **A.  GEO Cannot Avail Itself of Federal Officer Removal Because It Made a
21 Discretionary Business Decision for Which It Lacks a Colorable Defense Under
Federal Law**

22     GEO's primary argument is that it qualifies for "federal officer removal" under 28 U.S.C.

23 § 1442(a)(1). This argument is in error.

24     The purpose of the federal officer removal statute is "to ensure a federal forum in any

25 case where a federal official is entitled to raise a defense arising out of his duties." *Arizona v.*

26

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

*Manypenny*, 451 U.S. 232, 241 (1981). "An entity seeking removal under § 1442(a)(1) bears the burden of showing 'that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).[3] GEO cannot meet the second or third elements because there is no causal nexus between GEO's actions and a federal officer's direction nor any colorable federal defense to Washington's claims.

### 1. There is no causal nexus between any federal officer's direction and GEO's choice to pay $1 per day

In order to remove this case pursuant to § 1442, GEO must show "that the challenged acts occurred *because of* what they were asked to do by the Government." *Goncalves*, 865 F.3d at 1245 (citation omitted). It is not enough that GEO is a federal government contractor. *See Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 140-41 (D. Mass. 2009) ("[A] crucial jurisdictional question in [private government contractor cases] is whether the contractor's actions were undertaken at the direction of the federal government at all."); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1152 n.6 (D. Colo. 2002) ("Given the purpose of § 1442, . . . it should be read expansively only when . . . individual federal officials, and not government contractors, [are] at issue."); *Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877, at *3 (W.D. Wash. Sept. 9, 2009) ("[W]here a private company violates state law at its own discretion rather than at the government's discretion and in accordance with federal duties, it cannot be said that there is a sufficient federal interest to justify a federal forum even using the broadest of interpretations.").

Instead, to show that a defendant "acted under" a federal officer for purposes of § 1442, "[t]he removing defendant must by direct averment exclude the possibility that [the action] was

---

[3] "The courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244. GEO is a "person" for purposes of § 1442(a)(1).

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  based on acts or conduct of his not justified by his federal duty." *Cabalce v. VSE Corp.*, 922 F.

2  Supp. 2d 1113 (D. Haw. 2013), *aff'd sub nom. Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,

3  797 F.3d 720 (9th Cir. 2015). "[C]ourts generally find that persons are 'acting under' a federal

4  officer if acts forming the basis of the state suit were performed pursuant to a federal officer's

5  direct orders or comprehensive and detailed regulations." *In re Nat'l Sec. Agency     Telecomms.*

6  *Records Litig.*, 483 F. Supp. 2d 934, 943 (N.D. Cal. 2007; *Cabalce*, 922 F. Supp. 2d at 1122

7  (same). "[T]he removing defendant must show that the government *supervised* or *influenced* the

8  way in which the defendant performed the allegedly culpable activities." *State v. Monsanto Co.*,

9  No. C17-53RSL, 2017 WL 3492132, at *4 (W.D. Wash. July 28, 2017). Acts occurring under

10  the "general auspices of federal direction" are insufficient. *Cabalce*, 797 F.3d at 729.

11       Under this standard, GEO must show that (1) its decision to pay detainee-workers $1 per

12  day was taken pursuant to a federal officer's direction, and (2) the federal directive is causally

13  connected to Washington's claims. *Goncalves*, 865 F.3d at 1244. GEO fails to show either.

14       First, GEO did not "act under" a federal officer's direction when setting the $1 per day

15  rate. GEO's contract directs it to "manage a detainee work program" that is "developed *by the*

16  *Contractor*." Baker Decl., Ex. A at 82 (emphasis added). The work program must comply with

17  ICE's 2011 Performance-Based National Detention Standards ("PBNDS"). *Id.* In turn, the

18  PBNDS provide GEO with broad, express discretion over the operation and terms of the detainee

19  work program. *See* Baker Decl., Ex. B at 5.8(I) (granting a contractor permission to "either

20  conform to these procedures or adopt, adapt or establish alternatives, provided they meet or

21  exceed the intent represented"); *id.* at 5.8(V)(D) (allowing GEO to develop site-specific rules

22  for selecting work detail volunteers); *id.* at 5.8(V)(E) (permitting GEO to establish "temporary

23  work details" ranging in length and scope); *id.* at 5.8(V)(H) (requiring GEO to establish work

24  schedule within general limits); *id.* at 5.8(V)(N) (authorizing GEO to "develop and institute

25  appropriate training" for detainee workers); *id.* at 5.8(V)(O) (requiring GEO to develop and

26  implement "procedures for immediately and appropriately responding to on-the-job injuries").

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

Consistent with granting GEO discretion over the terms of work program, ICE expressly permits GEO to set the rate of pay. *Id.* at 5.8(V)(K). ICE tells GEO to compensate detainees "in accordance with *the facility's* standard policy." *Id.* (emphasis added). The only limit on GEO's discretion is that detainees be paid "at least $1.00 (USD) per day." *Id.* Nowhere in the contract or other applicable standards does ICE direct GEO to pay $1 per day or set that amount as a ceiling.[4]

Second, and fatal to GEO, the plain and unambiguous language of its contract requires it to comply with state law and destroys any causal nexus between a federal officer's direction and its choice to pay $1 per day. GEO's contract requires it to comply with "applicable federal, state and local labor laws and codes." Baker Decl., Ex. A at 44; *id.* at 85 ("The facility . . . shall be designed, constructed, *operated*, and maintained in accordance with all applicable federal, state, and local laws, regulations, codes, guidelines, and policies.") (emphasis added). And ICE expressly instructs GEO to apply the "most stringent" of any federal, state, or local law applicable to NWDC. *Id.* at 52. It is hard to imagine how ICE could have used clearer language directing GEO to know and comply with state law.

Courts presented with similar circumstances have routinely found that private defendants have failed to show the requisite "causal nexus" where the federal officer provided no direct order mandating the conduct alleged to violate state law. *See Cabalce*, 797 F.3d at 728 (remanding after finding a lack of any evidence of the requisite federal control or supervision

---

[4] GEO's reference to the ICE "Contracting Officer" is not to the contrary. GEO complains that it may not be reimbursed for paying more than $1 per day "without prior approval by the Contracting Officer." Removal Notice at 16 (citing Baker Decl., Ex. A at 97). The context of this standard contract term demonstrates that is wholly irrelevant to the scope of GEO's duties under federal or state law. For example, similar reimbursement terms require the Contracting Officer to pre-approve expenses over certain amounts for staff overtime, fuel costs, and lodging rates. Baker Decl., Ex. A at 4, 7. GEO cannot plausibly argue that these contract terms entitle it to flout federal and state overtime laws, or to refuse to pay a merchant for fuel or lodging that it obtains but that the Contracting Officer does not approve. A contract term governing the reimbursement process is just that.

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

over the defendant contractor's plan to destroy explosives that was central to the state claims); *Mobley v. Cerro Flow Prods., Inc.*, No. 09–697–GPM, 2010 WL 55906, at \*5 (S.D. Ill. Jan. 5, 2010) (remanding where company controlled "the actual, basic operation of the plant" and the military did not specifically direct the manner of chemical disposal); *Parks v. Guidant Corp.*, 402 F. Supp. 2d 964, 971 (N.D. Ind. 2005) (remanding where manufacturer of medical device failed to establish that federal agency "effectively directed them to design, manufacture or sell the device at issue in a manner that gave rise to the claims in this case").

In other words, acts occurring under the general auspices of federal direction are insufficient for removal. *See, e.g., Freiberg*, 245 F. Supp. 2d at 1155-56 (defense contractor could not remove case even though plaintiffs alleged contractor failed to comply with state requirements regarding safe construction practices while building a nuclear weapons facility for the federal government because the contractor failed to show that the federal government's "direction and control of their activities directly interfered with their ability to fulfill their state law obligation"); *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1273-74 (C.D. Cal. 1998) (finding insufficient causal nexus to support removal where government specifications required Boeing to clean mechanical engines with a toxic substance but did not specify how Boeing was to dispose of the cleanser and Boeing's disposal of the toxic substance was the basis for the plaintiffs' claims). *Cf. Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398-99 (5th Cir. 1998) (upholding removal under § 1442 where defendants made Agent Orange pursuant to the exact specifications of the Department of Defense and where defendants were compelled to deliver the chemicals under threat of criminal sanctions).[5]

---

[5] Consistent with these precedents, there is a body of caselaw holding that insurance carriers that administer health insurance for federal employees as part of the Federal Employee Health Benefit Act ("FEBHA") sufficiently "act under" federal officers for purposes of removal. These holdings turn on the detailed and comprehensive rules that apply to the subrogation claims where such carriers (1) have been instructed to pursue subrogation claims; (2) the monies sought to be recouped are paid from a special fund in the U.S. Treasury into which the government pays about 75% of premiums; and (3) the funds are owned by the federal government, not the carriers,

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    These cases apply here. GEO cannot sustain its claim that it paid detainee-workers $1

2    per day "*because of*" anything it was "asked to do by the Government," *see Goncalves*, 865 F.3d

3    at 1245, and therefore fails to show that its actions have a sufficient "causal nexus" to a federal

4    directive to sustain removal under § 1442(a)(1).

5         **2.    Preemption Is Not a Colorable Federal Defense to Washington's Claims**

6         GEO raises a mix of preemption doctrines and argues that Washington's claims are

7    preempted under express, field, and/or conflict preemption. *See* Removal Notice at 17-25. None

8    of the preemption doctrines applies, and GEO has no colorable defense to Washington's claims.

9         "Consideration of the issues arising under the Supremacy Clause start[s] with the

10   assumption that the historic police powers of the states [are] not to be superseded by . . . Federal

11   Act unless that [is] the clear and manifest purpose of Congress." *Williamson v. Gen. Dynamics*

12   *Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000) (internal quotation marks omitted). Courts are

13   reluctant to infer preemption. *N.L.R.B. v. Calkins*, 187 F.3d 1080, 1095 (9th Cir. 1999). The

14   Ninth Circuit recognizes three categories of preemption: "(1) *express preemption* – where

15   Congress explicitly defines the extent to which its enactments preempt state law; (2) *field*

16   *preemption* – where state law attempts to regulate conduct in a field that Congress intended the

17   federal law exclusively to occupy; and (3) *conflict preemption* – where it is impossible to comply

18   with both state and federal requirements, or where state law stands as an obstacle to the

19   accomplishment and execution of the full purposes and objectives of Congress. *Williamson*, 208

20   F.3d at 1149 (internal quotation marks omitted). Regardless of the type of preemption analysis,

21   congressional intent to preempt state law must be clear and manifest. *Arizona v. United States*,

22   567 U.S. 387, 400 (2012). Here, none of the preemption categories provide GEO a colorable

23   defense to Washington's claims.

24

25   _____

26   and the federal government decides how to use any surplus funds. *Goncalves*, 865 F.3d at 1247
     (citing *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224 (8th Cir. 2015)).

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

### a. GEO does not allege a colorable express-preemption defense

GEO argues that the ICE-GEO contract and Immigration Reform Control Act ("IRCA") expressly preempt Washington's claims. Removal Notice at 23-25. Neither of these arguments has merit.

### i. The ICE-GEO contract cannot preempt state law

GEO's claims that "the Statement of Work" in its contract "contains preemptive language," but this argument falls flat. Removal Notice at 17. Even if GEO's contract clearly limited it to paying detainees $1 per day – and it does not – contract terms, in and of themselves, cannot preempt state law. *Empire HealthChoice Assur. Inc. v. McVeigh*, 396 F.3d 136, 143 (2d Cir. 2005) ("[W]e generally take for granted that it is *law*, and not a mere contract, that carries [any] preemptive force."). GEO's suggested "preemption by contract" would be "highly problematic, and probably unconstitutional, because only federal *law* may preempt state and local law." *Id.* "There is no constitutional basis for making the terms of contracts with private parties similarly 'supreme' over state law." *Id.* (citing U.S. Const. Art. VI, cl. 2). GEO's contract does not preempt state law.

### ii. IRCA does not preempt generally applicable state laws that protect workers

GEO next cites to language in the Immigration Reform and Control Act ("IRCA") in an attempt to find a colorable defense. GEO's attempt fails. IRCA prohibits employers from knowingly hiring or recruiting unauthorized aliens to work. 8 U.S.C. § 1324a(a). In doing so, IRCA permits only the federal government to sanction employers that violate its prohibition and expressly "preempt[s] any State or local law imposing civil or criminal sanctions . . . upon those who employ, or recruit . . . unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

Here, Washington is not attempting to sanction GEO for employing undocumented workers. Instead, Washington seeks to enforce its state minimum wage. It is well established that states can enforce generally applicable regulations that protect workers without violating

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

IRCA. *See Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 600 (2011) (holding that "IRCA expressly preempts some state powers dealing with the employment of unauthorized aliens and it expressly preserves others" and finding no preemption for an Arizona licensing law); *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (holding that IRCA did not preempt California labor law that forbids employers from terminating an employee without good cause even if that law applied to an employer who terminated an immigrant who temporarily lost their legal work status); *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 237-38 (2d Cir. 2006) (holding that there is no basis for concluding that Congress clearly intended IRCA to preempt established state law affording workers protections). In fact, federal law similarly requires workers be paid the minimum wage regardless of their work authorization. *See* U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet #48: Application of U.S. Labor Laws to Immigrant Workers (July 2008), *available at* https://www.dol.gov/whd/regs/compliance/whdfs48.htm (declaring DOL will continue to enforce federal minimum wage laws "without regard to whether an employee is documented or undocumented"). If IRCA's preemption clause is read as GEO argues, IRCA would create an incentive for employers to hire undocumented workers so they could pay them substandard wages, and ignore all state labor safety and protection laws. IRCA does not command this absurd result.

Nor does IRCA preempt Washington's claim for unjust enrichment. When a federal law contains an express preemption clause, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Whiting*, 563 U.S. at 594 (quotations omitted). Under a plain language reading of IRCA's preemption clause, Congress only intended to preempt state action that would impose sanctions "upon those who employ, or recruit or refer for a fee for employment" undocumented immigrants. 8 U.S.C. § 1324a(h)(2). Washington's unjust enrichment claim does not seek to sanction GEO for employing

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  undocumented immigrants, but rather to impose liability for GEO's failure to pay detainee-

2  workers a fair wage. GEO's argument that IRCA preempts Washington's claims fails.

**b.    GEO does not allege a colorable field preemption defense**

4      GEO argues that it has a colorable field preemption defense because Congress has broad

5  authority over immigration and because the Fair Labor Standards Act ("FLSA") "control[s] the

6  field of payment of detainee activities." Removal Notice at 20. These arguments significantly

7  overreach, and field preemption is not at issue here.

8      "[S]tate law is pre-empted . . . if federal law so thoroughly occupies a legislative field 'as

9  to make reasonable the inference that Congress left no room for the States to supplement it.'"

10  *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 733 (9th Cir. 2016) (citing

11  *Cipolone v. Ligget Group Inc.*, 505 U.S. 504, 516 (1992)).  However, "[i]n areas without

12  pervasive regulations or other grounds for preemption, the state standard . . . remains applicable."

13  *Id* at 734 (holding that the Federal Aviation Administration's regulations could not serve as a

14  basis for field preemption where the regulatory scheme does not expressly address the cause of

15  the state law claim). And, "[w]here, as here, the field which Congress is said to have pre-empted

16  has been traditionally occupied by the States, we start with the assumption that the historic police

17  powers of the States were not to be superseded by the Federal Act unless that was the clear and

18  manifest purpose of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 116

19  (1992) (citation omitted).  *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir.

20  2004) ("'States possess broad authority under their police powers to regulate the employment

21  relationship to protect workers within the State. Child labor laws, minimum and other wage laws,

22  laws affecting occupational health and safety . . . are only a few examples.'") (quoting *Metro.*

23  *Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)).

24      Here, GEO argues field preemption based on a scattering of federal interests and

25  authorities: (1) the federal government's "broad, undoubted power over the subject of

26  immigration," Removal Notice at 19; (2) a congressional appropriation that provides funding for

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    immigration enforcement, *id.* at 19-20; and (3) cases holding the FLSA or other state minimum

2    wage laws inapplicable to other immigration detention facilities, *id.*

3        The first two sources are simply insufficient to sustain a colorable claim of field

4    preemption. Though Congress has broad authority regarding immigration, such authority cannot

5    displace every generally applicable state labor law that touches anyone involved in the

6    immigration system. *Cf. Arizona*, 567 U.S. at 401 (finding field preemption where "[t]he federal

7    statutory directives provide a full set of standards governing alien registration, including the

8    punishment for noncompliance" and as was designed as a "harmonious whole"). And GEO's

9    reliance on a 1979 appropriations bill that predates the existence of private immigration detention

10   facilities is equally unavailing. At most, the appropriations sets the amount ICE can reimburse

11   an entity for detainee-workers that participate in the Voluntary Work Program. It cannot and

12   does not occupy the legislative field of laws governing worker protections and safety. *See United*

13   *States v. Nixon*, 839 F.3d 885, 887-888 (9th Cir. 2016) (affirming that an appropriations rider

14   simply restricts an agency's ability to use certain funds and does not invalidate existing law).

15       Nor may GEO show field preemption by reference to the FLSA, as the FLSA only

16   preempts state laws that are *less* beneficial to the employee. *See Pac. Merch. Shipping Assoc. v.*

17   *Aubry*, 918 F.2d 1409, 1425 (9th Cir.1990) (affirming that "the purpose behind the FLSA is to

18   establish a national *floor* under which wage protections cannot drop, not to establish absolute

19   uniformity in minimum wage . . . standards nationwide"). As the Ninth Circuit has held, when

20   Congress enacted the FLSA it "made clear its intent not to disturb the traditional exercise of the

21   states' police powers with respect to wages and hours more generous than the federal standards."

22   *Id.* (citing 29 U.S.C. § 218 (directing that "[n]o provision of [the FLSA] or of any order

23   thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance

24   establishing a minimum wage higher than the minimum wage established under this chapter")).

25       Further, while Washington's minimum wage laws were originally modeled on the FLSA,

26   federal law serves only as "persuasive authority" when construing the Washington's minimum

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

wage laws, and only then for provisions that are similar to those found in the FLSA. *Inniss v. Tandy Corp.,* 7 P.3d 807, 811 (Wash. 2000) (Washington courts "may consider" federal interpretations of "comparable provisions"); *see also Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588, 594 (Wash. App. 2006) (holding that the FLSA did not preempt state wage laws establishing *minimum* wages nor protect private companies from paying more than the federal minimum wage to comply with local wage laws); *Dep't of Labor & Indus. v. Common Carriers*, 762 P.2d 348, 349-350 (Wash. 1988) (holding that FLSA did not preempt state wage laws and requiring federal contractor to comply with Washington's minimum wage laws)).

The purpose of Washington's law is substantially broader than that of the FLSA. Washington's Legislature enacted its minimum wage laws nearly 25 years before the federal government, proclaiming that, "the establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of this state." Wash. Rev. Code § 49.46.005(1); *see also Becerra v. Expert Janitorial*, 332 P.3d 415, 420 (Wash. 2014) (holding that Washington's minimum wage laws are to be "liberally construed"). Washington's Legislature has declared that minimum wage laws are necessary not only to protect "the health, safety and the general welfare of the citizens of this state," but also to "encourage employment opportunities within the state." Wash. Rev. Code § 49.46.005(1). This latter purpose – the prevention of predatory labor practices to encourage maximum employment opportunities for state residents – is wholly missing from the FLSA's more limited scope. *See* 29 U.S.C. § 202 (declaring the purpose of the FLSA is to maintain "the minimum standard of living necessary for health, efficiency, and general well-being of workers"). This broader purpose alone sets FLSA apart from Washington law.

GEO's reliance on out of circuit cases applying FLSA or the minimum wage laws of other states does not save its argument. In *Alvarado Guervara v. INS,* the Fifth Circuit found that detainee-workers held in a federally-owned and operated detention facility were not protected by FLSA's minimum wage provisions. 902 F.2d 394, 396 (5th Cir. 1990). To reach this holding,

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1 the *Alvarado* court relied upon the fact that "[t]he congressional motive for enacting the
2 FLSA . . . was to protect the 'standard of living' and 'general well-being' of the worker in
3 American industry" and did not include an express inclusion or exemption regarding
4 incarcerated individuals. *Id.* (citing 29 U.S.C. § 202(a)) Likewise, in *Menocal v. GEO Group,*
5 *Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015), the district court found that detainee-workers were
6 not "employees" under the Colorado Minimum Wage Act ("CMWA") due to the particular
7 structure of the CMWA. *Id.* at 1129-32 (finding that the CMWA only covered four limited
8 categories of employees). Further, both the *Menocal* court, *id.* at 1129, and the intermediate state
9 court in *Whyte v. Suffolk Cty. Sherriff's Dep't.,* 91 Mass. App. Ct. 1124, 2017 WL 2274618, at
10 * 1-2 (May 24, 2017), determined that the purpose of the states' minimum wage laws were
11 almost identical to that of the FLSA, i.e., they were limited to supplying the necessary cost of
12 living and to maintain the health of the workers.

13     In short, broad references to the federal government's immigration authority or the
14 application of the FLSA do not displace state laws protecting worker rights and safety. Field
15 preemption does not provide GEO with a federal defense.

16           **c.**    **GEO does not allege a colorable conflict preemption defense**

17     Finally, GEO fails to show a colorable defense of conflict preemption. "[S]tate laws are
18 preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399 (citing *Crosby v. Nat'l*
19 *Foreign Trade Council*, 530 U.S. 363, 371-72 (2000)). But courts should only find conflict
20 preemption in instances where (1) "compliance with both federal and state regulations is a
21 physical impossibility," and (2) those instances where the challenged state law "stands as an
22 obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"
23 *Id.* "For conflict preemption to apply, the conflict must be an actual conflict, not merely a
24 hypothetical or potential conflict." *Chicanos Por La Causa v. Napolitano*, 558 F.3d 856, 863
25 (9th Cir. 2009).

26

1    Here, GEO cannot make a colorable claim that there is a conflict between Washington's

2    minimum wage laws and any federal law. GEO can comply with both state and federal laws

3    governing who it may employ and how much it must pay employees who work at NWDC – just

4    as it is currently doing with the security officers who staff the facility. Paying the state minimum

5    wage to the remaining workers who run NWDC creates no actual conflict with federal and state

6    law.

7    GEO again cites IRCA, stating that all NWDC detainees are "removable aliens" who

8    GEO is "prevent[ed]" from hiring. Removal Notice at 24. This claimed conflict is wrong for at

9    least two reasons. First, GEO assumes, without any basis, that all NWDC detainees are

10   unauthorized to work. Removal Notice at 17. GEO is incorrect, because at least some detainee-

11   workers (like lawful permanent residents) are lawfully present, have authorization to work, and

12   may never be found removable at all. *See, e.g.*, 8 U.S.C. § 1226(a) (authorizing detention

13   "pending decision on *whether* the alien" is removable) (emphasis added).

14   Second, and more importantly, it is *GEO's responsibility* under IRCA to hire eligible

15   workers, and GEO's obligations under IRCA are entirely independent from state law. Simply

16   put, if Washington's minimum wage law applies to detainee-workers, GEO will have two

17   choices: hire detainees who have appropriate work authorization or hire non-detainee

18   Washington workers to perform the tasks necessary to operate GEO's business. Either way,

19   Washington's claims in no way force GEO to engage in employment practices that conflict with

20   IRCA. Instead, GEO should follow employment practices that comply with both state and federal

21   requirements – just like all other employers in Washington.

22   **B.      No Substantial and Disputed Federal Issue Provides Grounds for Removal**

23   Defendant argues this action is removable under the general removal statute, 28

24   U.S.C. § 1441, because the state law claim raises "substantial and disputed federal issues."

25   Removal Notice at 18. Defendant's argument is unpersuasive.

26

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    In certain cases, federal question jurisdiction will lie over state law claims that "really

2    and substantially" involve a dispute or controversy respecting the validity, construction, or effect

3    of federal law. *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314

4    (2005). For jurisdiction to exist under this rule, the following requirements must be met: (1) the

5    state law claims must *necessarily* raise a federal issue, (2) that issue must *actually be disputed*;

6    (3) the *federal interest* in the issue must be *substantial*, or central to the case; and (4) the exercise

7    of federal jurisdiction must not disturb "any congressionally approved balance of federal and

8    state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

9        Here, none of the requirements is met. Washington's minimum wage claim does not raise

10   a substantial federal legal issue – let alone one that is actually disputed. Contrary to GEO's

11   suggestion, Washington's lawsuit does not dispute the federal government's authority to detain

12   aliens pursuant to 8 U.S.C. § 1226(a), question the federal government's authority to contract

13   with GEO for its services, challenge Congress's 1979 decision to "reimburse[]" GEO only a

14   dollar per day for detainee-worker participation on the Volunteer Work Program, or otherwise

15   "attempt[] to interfere with federal immigration policies." *Cf.* Removal Notice at 24. To the

16   contrary, the minimum wage claim requires GEO to pay detainee-workers the state-mandated

17   wage regardless of whether the detainee-workers' detention is lawful and regardless of the

18   amount GEO receives from the federal government as reimbursement. The mere fact that the

19   federal government has authority over immigration, or that federal law and regulations are

20   implicated by the background facts, is insufficient to create a "substantial" federal issue. *See,*

21   *e.g., K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1033 (9th Cir. 2011) (rejecting

22   federal jurisdiction for want of a substantial federal question even though dispute involved

23   federally authorized "oil and gas leases on tribal lands" and the "very extensive federal

24   regulatory scheme governing them"); *Gunn*, 568 U.S. at 258 (refusing federal question

25   jurisdiction over state law claim alleging legal malpractice even when claim turned on attorneys'

26   handling of a federal patent case); *Berg v. Leason*, 32 F.3d 422, 425 (9th Cir. 1994) (refusing

1    federal jurisdiction even when plaintiff's malicious prosecution claim required proof that

2    underlying federal securities action was legally untenable); *Quillinan v. Papavassiliou*, No. C12-

3    04159CRB, 2013 WL 428604 *3-4 (N.D. Cal. 2013) (holding federal interests regarding a

4    government-operated housing program to be insufficient for federal jurisdiction).

5        GEO's plea for federal jurisdiction in the name of "national uniformity" is likewise

6    insufficient to trigger federal jurisdiction. *Cf.* Removal Notice at 29. GEO's mere desire for

7    consistency in its national business operations is hardly a federal interest. *See Gunn*, 568 U.S. at

8    260 ("[I]t is not enough that the federal issue be significant to the particular parties in the

9    immediate suit," because the substantiality inquiry "looks instead to the importance of the issue

10   to the federal system as a whole."). In fact, ICE expressly contemplates that GEO's obligations

11   will not be uniform by requiring that GEO comply with all state and local labor laws. Baker

12   Decl., Ex. A at 44, 52 (requiring compliance with all "state and local laws"). Since no federal

13   law is in dispute, whether or not detainee-workers are "employees" will continue to depend on

14   the state law at issue, not on the existence of a federal forum. *See, e.g.*, *Menocal*, 113 F. Supp.

15   3d at 1129 (relying on Colorado case law and state agency guidance, not federal law, in

16   determining whether detainee-workers were "employees" under the state's minimum wage law).

17   Granting GEO a federal forum will do nothing to supply it with the uniform and nationwide

18   business regulation it seeks.

19       GEO next argues that ICE has a "clear federal interest" in this case because, if GEO were

20   obligated to pay minimum wage to run its business, "it would significantly affect the prices that

21   GEO would have to charge for its services." Removal Notice at 23. ICE has not intervened to

22   present this interest, and, in any event, the negotiated contract between ICE and GEO puts the

23   burden squarely on GEO to absorb the cost of complying with any new or clarified "statutory"

24   and "regulatory" constraints. Baker Decl., Ex. A at 44. Although paying Washington workers

25

26

MOTION TO REMAND                               17

1  minimum wage may cut into GEO's profit margin,[6] there is no reason to believe that ICE would

2  be responsible to bear the cost of this increased expense.

3      The cases cited by GEO also do not support federal jurisdiction. First, resolution of the

4  quiet-title action in *Grable* required construction of "the meaning of a federal statute" as an

5  "essential element" of the state law claim. *Grable*, 545 U.S. at 315. Because federal tax matters

6  are heard nearly exclusively in federal court, it was important that such cases "come before

7  judges used to federal tax matters." *Id.* Here, none of Washington's claims requires construction

8  of federal law, and state courts apply minimum wage rules in their normal and routine course of

9  casework.

10     GEO's citation to *Boyle v. United Technologies, Corp.*, 487 U.S. 500, 502 (1988) is even

11 less helpful. *Boyle* was brought as a diversity action and the issue of federal question jurisdiction

12 was never raised. *Id.* More to the point, *Boyle* and its progeny provide military contractors with

13 a defense "from tort liability that arises as a result of the contractor's compliance with the

14 specifications of a federal government contract." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir.

15 2011). This defense is strictly limited "to contractors who design and manufacture military

16 equipment." *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 n.1 (9th Cir. 1997). GEO

17 has not – and cannot – raise this defense, and *Boyle* is inapposite.

18     Finally, contrary to GEO's argument, allowing Washington's claims to go forward in

19 federal court undermines Congress's "intended division of labor between state and federal

20 courts." *See Shanks v. Dressel*, 540 F.3d 1082, 1093-94 (9th Cir. 2008) (rejecting federal

21 jurisdiction as contrary to the "sensitive judgment[] about congressional intent"). Federal

22 question jurisdiction was never meant to create federal jurisdiction by any case against a

23 government contractor, especially a state minimum wage claim that sits squarely within a state's

24

25      [6] In 2016, GEO reported $2,180,000,000 in revenue from providing private detention
    services. *See* http://www.snl.com/Interactive/newlookandfeel/4144107/2016-GEO-Annual-
26  Report.pdf.

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

traditional police powers. *See WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996) (affirming that "[i]t is well settled that wages are a subject of traditional state concern"). GEO's argument for removal jurisdiction would result in federal jurisdiction whenever a plaintiff sues on a state law that tangentially relates to a federal interest. This is not the law.

## C.    States Are Not "Residents" For Purposes of Diversity Jurisdiction

Defendant's reliance on diversity to remove this action is equally misplaced.

"Neither a state nor a state agency [can] be a party to a diversity action." *Fifty Ass'ns v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970). *See also Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). As long as the state has a "real interest in the controversy," *i.e.*, the relief sought "insures to [the state] alone," the state's presence as a party plaintiff will defeat diversity jurisdiction. *Dep't of Fair Emp't & Hous., v. Lucent Tech., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011).

In *Nevada v. Bank of America Corp.*, for example, the Nevada Attorney General sued Bank of America for misleading borrowers about the terms of their mortgage modification and foreclosure processes in violation of the state's consumer protection laws. 672 F.3d 661, 664-65 (9th Cir. 2012). After considering "the essential nature and effect of the proceeding," the Ninth Circuit held Nevada was a "real party in interest" to the action, which defeated even the minimal diversity required for federal jurisdiction under the Class Action Fairness Act. *Id.* at 669-72. In so doing, the Ninth Circuit observed the devastating effect the foreclosure crisis had in Nevada and found it "unsurprising" that the Nevada Attorney General had a real interest in not only protecting the integrity of mortgage loan servicing, but also protecting the state's citizens and economy from deceptive mortgage practices. *Id.*

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

Here, as in *Nevada*, there is no question that Washington is a "real party in interest" to this litigation.[7] Washington sues to protect the tens of thousands of detainees who have worked at the NWDC since 2005 for $1 per day, the tens of thousands of detainees who will work at that rate in the future, and the yet-unknown number of non-detained residents who lost out on job opportunities because of GEO's use of underpaid detainee-workers to operate its business. Considering the widespread impact of GEO's violations, Washington's prayer for relief seeks broad declarations that detainee-workers are "employees," that GEO is an "employer" of detainee-workers, that GEO has been unjustly enriched, an injunction prohibiting GEO from paying detainee-workers less than the minimum wage, and disgorgement. Compl. ¶¶ 7.1-7.8. Washington's concrete interest in this action extends beyond its general governmental interest. *See, e.g.*, *Nevada*, 672 F.3d at 670 (observing Nevada had a specific, concrete interest in eliminating deceptive practices given that it was hard-hit by the mortgage crisis).

GEO's reliance on a single case, *Lucent*, 642 F.3d at 739, to argue otherwise is unavailing. Removal Notice at 33-37. In *Lucent*, a California state agency filed a discrimination action "on behalf of a single aggrieved employee" for "reinstatement and payment of compensatory and punitive damages to the aggrieved individual." *See Nevada*, 672 F.3d at 670 (distinguishing *Lucent*). In considering the "essential nature and effect of the proceeding as it appear[ed] from the entire record," the *Lucent* court held the state agency was not a real party in interest because the relief sought could have been brought – and was, in fact, brought – by the individual employee, rendering the state's interest merely "tangential." 642 F.3d at 739. By

---

[7] GEO argues that the Washington Department of Labor & Industries' (L&I) authority is "conditional" and limited to "taking assignment of wages." Removal Notice at 34. But it is Washington State, and not the individual agency L&I, that brings this action on behalf of its economy and state residents. *See* Compl. ¶ 2.1. The Attorney General has discretionary authority to bring actions in any court, federal or state, where there is a cognizable cause of action and Washington's case raises a matter of public concern. *See* Wash. Rev. Code § 43.10.030(1); *City of Seattle v. McKenna*, 259 P.3d 1087, 1093 (Wash. 2011); *see also State v. Chinook Hotel, Inc.*, 399 P.2d 8, 9 (Wash. 1965) (minimum wage claim brought by the Attorney General's office).

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

contrast, the relief Washington here seeks is not the same as the relief sought by private litigants. *Compare* Compl. ¶¶ 7.1-7.8 *with Chen v. GEO Group, Inc.*, No. 3:17-cv-056769 (WD Wash. Sep. 26, 2017), ECF 1 at 5 (seeking back pay, damages, and class certification, but not injunctive relief, declaratory relief, or disgorgement). Unlike in *Lucent*, the State's interests are substantial and far from concurrent with the interests of a single aggrieved resident. *See also Nevada*, 672 F.3d at 671 (observing a state's "strong and distinct interest . . . is further strengthened by the other forms of relief it seeks.").

Further, even if some detainee-workers or job seekers receive some portion of the monetary relief sought by Washington, that fact would not render its action removable. *See Nevada*, 672 F.3d at 671 ("Nevada's sovereign interest in protecting its citizens and economy . . . is not diminished merely because it has tacked on a claim for restitution"); *see also AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 393 (4th Cir. 2012) (observing the state's restitution claims, when included with other claims properly pursued by the state, did not alter the state's quasi-sovereign interest in enforcing its own laws); *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. cv-11-141-PHX-FJM, 2011 WL 995963 at *3 (D. Ariz. Mar. 21, 2011) (observing the fact "[t]hat some private parties may receive restitution does not negate the State's substantial interest or render the entire action removable"); *Hawaii ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-LRP, 2014 WL 3427387 at *10 (D. Haw. July 15, 2014) (explaining "[d]isgorgement to obtain ill-gotten gains is separate and apart from interests of particular [individuals] in obtaining restitution and recognizing Hawai'i to be the real party in interest for purposes of diversity).

Finally, GEO argues – without any citation to authority – that this matter is removable because it is similar to a class action currently pending in this Court. Removal Notice at 30. GEO's argument fails. Not only has GEO not moved to relate the actions, GEO ignores that removal is a jurisdictional question, such that the mere existence of another federal case, or GEO's interest in "avoiding double recovery and conflicting outcomes," *id.*, cannot give rise to

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1 | diversity jurisdiction. *See Sygenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) (refusing

2 | to recognize removal jurisdiction despite the existence of a similar federal case in which the state

3 | court plaintiff had intervened).

4 |      In sum, Washington cannot be its own resident for purposes of diversity when, as here,

5 | its substantial interests in the matter are separate from the interests of any private litigant. By

6 | violating the state minimum wage laws and unjustly enriching itself, GEO depresses

7 | employment opportunities in Washington and threatens both Washington's economic health as

8 | well as the health, safety and welfare of Washington's residents. *See* Wash. Rev. Code §

9 | 49.46.005(1)-(3) (setting forth Washington's purpose in setting the minimum wage). Regardless

10 | of the yet-to-be-determined amount the State seeks to disgorge, this Court lacks diversity

11 | jurisdiction over this matter.

## IV. CONCLUSION

For the foregoing reasons, Washington respectfully requests that the Court remand this action back to state court.

DATED this 8th day of November, 2017.

Respectfully submitted,
BOB FERGUSON
Attorney General of Washington

/s La Rond Baker
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744
larondb@atg.wa.gov
marshac@atg.wa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document and all supporting declaration with exhibits were electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 8th day of November, 2017.

/s La Rond Baker
LA ROND BAKER

Attorney General of Washington
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492