1

2                                                      THE HONORABLE ROBERT J. BRYAN

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

10   STATE OF WASHINGTON,                    CIVIL ACTION NO. 3:17-cv-05806-RJB

11                         Plaintiff,         **STATE'S RESPONSE TO GEO'S**
                                              **MOTION TO DISMISS**
12             v.                             **COMPLAINT**

13   THE GEO GROUP, INC.,                     Oral Argument Requested

14                         Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................................. 1

III.  ARGUMENT ..................................................................................................... 2

    A.    The Federal Court Lacks Jurisdiction Over This Matter ............................. 2

    B.    The Washington Supreme Court Should Decide Whether the State's
        Minimum Wage Law Applies to Private Detention Facilities................................. 3

    C.    GEO's Motion to Dismiss Fails.................................................................. 4

        1.    The State Has Authority to Bring This Lawsuit.............................................. 4

            a.    The State has a quasi-sovereign interest in enforcing the minimum
                wage law ......................................................................................... 5

            b.    The State's interest is independent from the interests of its residents ........ 7

            c.    GEO's actions harm a substantial segment of Washington residents........ 8

            d.    The State sues GEO, not the Federal Government ................................. 10

        2.    The State Sufficiently Pleads GEO's Violation of State Minimum Wage
           Law ....................................................................................................... 11

            a.    Ordinary statutory construction principles show that GEO's business
                is covered by the minimum wage law ..................................................... 11

            b.    Interpretations of the FLSA or out-of-state statutes do not control ......... 12

        3.    Federal Law Does Not Preempt the State's Minimum Wage Law ................. 14

            a.    The State's claims are not expressly preempted ..................................... 15

            b.    Washington's claims are not field preempted........................................... 16

            c.    There is no conflict between the state minimum wage and federal
                law ..................................................................................................... 18

        4.    GEO's Attempts to Dismiss the Unjust Enrichment Claim Are
           Unavailing ............................................................................................ 20

            a.    The State sufficiently alleges GEO was unjustly enriched ...................... 20

            b.    Neither unclean hands nor laches bars the State's requested equitable
                relief ................................................................................................. 22

1

IV.    CONCLUSION ........................................................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) ............... passim

*Alvarado Guervara v. INS*, 902 F.2d 394 (5th Cir. 1990) ........................................................ 13

*Amaker v. King Cty.*, 540 F.3d 1012 (9th Cir. 2008) ........................................................... 3, 4

*Anfinson v. FedEx Ground Package Sys.*, 281 P.3d 289 (Wash. 2012) .................................. 12

*Arizona v. United States*, 567 U.S. 387 (2012) .............................................................. 17, 19

*Arnold v. Melani*, 449 P.2d 800 (Wash. 1968) ...................................................................... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 4

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12 (Wash. Ct. App. 1991) .............. 20

*Becerra v. Expert Janitorial*, 332 P.3d 415 (Wash. 2014) ...................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 4

*Burton v. Lehman*, 103 P.3d 1230 (Wash. 2005) ..................................................................... 11

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015) ...................... 2

*Cabalce v. VSE Corp.*, 922 F. Supp. 2d 1113 (D. Haw. 2013) .................................................. 2

*Calhoun v. State*, 193 P.3d 188 (Wash. Ct. App. 2008) ............................................................ 3

*California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973) ...................................................... 7

*Carrillo v. City of Ocean Shores*, 94 P.3d 961 (Wash. Ct. App. 2004) ................................... 23

*Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582 (2011) ....................................... 15

*Chen, et. al. v. GEO Group, Inc.*, No. 3:17-cv-05769 (W.D. Wash. Sept. 26, 2017) ................ 7

*Chicanos Por La Causa v. Napolitano*, 558 F.3d 856 (9th Cir. 2009) ..................................... 19

*City of Mercer Island v. Steinmann*, 513 P.2d 80 (Wash. Ct. App. 1973) ............................... 23

*City of Seattle v. McKenna*, 529 P.3d 1087 (Wash. 2011) ....................................................... 6

*Clark Cty. Pub. Util. Dist. No. 1 v. Wilkinson*, 991 P.2d 1161 (Wash. 2000) ......................... 23

*Columbia Cmty. Bank v. Newman Park, LLC*, 304 P.3d 472 (Wash. 2013) ............................ 21

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1 | *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ................................... 19

2 | *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997) ........................... 15

3 | *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728 (9th Cir. 2011) ................... 7

4 | *Dep't of Labor & Indus. v. Common Carriers*, 762 P.2d 348 (Wash. 1988) ........................... 13

5 | *Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588 (Wash. Ct. App. 2006) ................... 13

6 | *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582 (Wash. 2000) ................................. 11, 12

7 | *EEOC v. Recruit USA, Inc.*, 939 F.2d 746 (9th Cir. 1991) ........................................... 22

8 | *Ellenburg v. Larson Fruit Co.*, 835 P.2d 225 (Wash. Ct. App. 1992) ............................... 21

9 | *Empire HealthChoice Assur. Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005) ........................... 15

10 | *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) ..................................... 17

11 | *Hanford Challenge v. Moniz*, 218 F. Supp. 3d 1171 (E.D. Wash. 2016) ................................ 10

12 | *Hawaii ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-LRP,
    2014 WL 3427387 (D. Haw. July 15, 2014) ....................................................... 8

13
14 | *Hous. Auth. of King Cty. v. NE Lake Wash. Sewer & Water Dist.*, 784 P.2d 1284
    (Wash. Ct. App. 1990) ...................................................................... 22

15 | *In re Marriage of Hunter*, 758 P.2d 1019 (Wash. Ct. App. 1988) .................................... 23

16 | *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir. 2007) .................................... 16

17 | *Inniss v. Tandy Corp.*, 7 P.3d 807 (Wash. 2000) ................................................. 12

18 | *Johnson v. Hawe,* 388 F.3d 676 (9th Cir.2004) .................................................. 4

19 | *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024 (9th Cir. 2011) ............................. 2

20 | *Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283 (Wash. 2010) ................................... 11

21 | *Lynch v. Deaconess Medical Ctr.*, 776 P.2d 681 (Wash. 1989) .................................... 21

22 | *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219 (2d Cir. 2006) ............................ 16

23 | *Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90 (D. Mass. 1998) ................... 8, 9

24 | *Massachusetts v. EPA*, 549 U.S. 497 (2007) ..................................................... 10

25 | *Massachusetts v. Mellon*, 262 U.S. 447 (1923) .................................................. 10

26 | *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) .............................. 14, 20

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

*Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) ..................................................... 17

*Missouri ex. rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ............................................... 7

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) ...................................... 4

*Monschke v. Cross*, No. 11-5276 RBL/KLS, 2012 WL 2565026
    (W.D. Wash. June 11, 2012) .............................................................................................. 11

*Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016) ....................... 17

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) .................................................. 2

*New York v. Cornwell*, 695 F.2d 34 (2d Cir. 1982) ................................................................ 9

*Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409 (9th Cir. 1990)................................... 12

*People v. Mid-Hudson Medical Grp.*, 877 F. Supp. 143 (S.D.N.Y. 1995)................................ 9

*Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016) .............................................. 5

*Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877
    (W.D. Wash. Sept. 9, 2009)................................................................................................ 10

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1990) ........................................................... 17

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2004) ......................................... 17

*Rutter v. Rutter*, 370 P.2d 862 (Wash. 1962)......................................................................... 23

*State v. Am. Tobacco Co.,* No. 96-2-15056-8 SEA, 1996 WL 931316
    (Wash. Superior Ct. Nov. 19, 1996) ................................................................................... 21

*State v. Chinook Hotel, Inc.*, 399 P.2d 8 (Wash. 1965) .......................................................... 7

*State v. Swanson*, 65 P.3d 343 (Wash. 2003) ........................................................................ 12

*Stengel v. Medronic*, 704 F.3d 1224 (9th Cir. 2013) ............................................................. 15

*Texas v. Scott & Fetzer Co.*, 709 F.2d 1024 (5th Cir. 1983) ................................................... 7

*Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) ................................................ 10

*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001) .......................................... 4

*United States v. Nixon*, 839 F.3d 885 (9th Cir. 2016)............................................................. 18

*United States v. Phillip Morris, Inc.,* 300 F. Supp. 2d 61 (D.D.C. 2004) .......................... 22, 23

*W. Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937) ......................................................... 6, 11

*Whyte v. Suffolk Cty. Sheriff's Dep't*, No. 16-P-751, 2017 WL 2274618
(Mass. App. Ct. May 24, 2017) ........................................................ 13, 20

*Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000) ...................................... 14

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) ...................... 4

*Young v. Young*, 191 P.3d 1258 (Wash. 2008) ........................................ 20

### Statutes

8 U.S.C. § 1226(a) .................................................................... 1, 16

8 U.S.C. § 1324a(a) ........................................................................ 15

8 U.S.C. § 1324a(h)(2) .................................................................... 15

28 U.S.C. § 1447(c) ........................................................................ 5

29 U.S.C. § 202 ........................................................................... 13

29 U.S.C. § 218 ........................................................................... 12

Wash. Rev. Code § 2.60.010 ............................................................... 3

Wash. Rev. Code § 43.10.030(1) .......................................................... 6

Wash. Rev. Code § 49.46.005 ............................................................. 6

Wash. Rev. Code § 49.46.005(1) ..................................................... 11, 13

Wash. Rev. Code § 49.46.010 ......................................................... 3, 12

Wash. Rev. Code § 49.46.010(2) .......................................................... 12

Wash. Rev. Code § 49.46.010(3) .......................................................... 12

Wash. Rev. Code § 49.46.010(3)(k) .................................................... 3, 12

### Other Authorities

U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet #48: Application of U.S.
Labor Laws to Immigrant Workers (July 2008), *available at*
https://www.dol.gov/whd/regs/compliance/whdfs48.htm ................................. 16

Wash. Inmate Labor
Programs, SJR 8212 (2007), https://ballotpedia.org/Washington_Inmate_Labor_Prog
rams,_SJR_8212_(2007) ................................................................. 8

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

vi

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

**Regulations**

8 C.F.R. § 274a.12(c) .......................................................................... 16

**Rules**

Rule 12(b)(1) .......................................................................... 4

Rule 12(b)(6) .......................................................................... 4

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

vii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

# I.     INTRODUCTION

The State of Washington ("Washington" or "the State") seeks a declaration that GEO Group, Inc. ("GEO"), a private, for-profit employer doing business in Tacoma, must comply with state law. Contrary to GEO's arguments for dismissal, the State does not dispute the federal government's authority to detain aliens pursuant to 8 U.S.C. § 1226(a), question the federal government's authority to contract with GEO for detention services, challenge Congress's 1979 decision to "reimburse[]" ICE $1 per day for detainee work, or otherwise interfere with federal immigration policies. The State's prayer for relief is simply that GEO pay all workers – whether detained or not – the state-mandated wage for work performed at the NWDC, and that GEO disgorge profits made from failing to pay detainee-workers a fair wage for over a decade. The Court should deny GEO's motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

GEO is the exclusive owner and operator of the Northwest Detention Center ("NWDC") in Tacoma, Washington. Compl. ¶ 3.8, ECF 1-1. GEO contracts with U.S. Immigration and Customs Enforcement ("ICE") to detain non-citizens pending resolution of their civil immigration proceedings. *See* ECF 16-1 (ICE-GEO Contract).

GEO relies on detainee-workers to operate it business, yet pays detainee-workers only $1 per day for work performed. This violates the ICE-GEO Contract, which dictates that "detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor." *Id.* at 82; *see id.* at 57, 58, 83 (outlining contractor responsibilities as keeping the facility "clean and vermin/pest free," "launder[ing] and chang[ing] linens," and "provid[ing] detainees with nutritious, adequately varied meals . . . while identifying, developing, and managing resources to meet the operation needs of the food service program"). Likewise, GEO is "expected to be knowledgeable" of all "statutory" and "regulatory" constraints under state and local law, and must "perform in accordance with the most current version of the constraints." *Id.* at 43-44; *see also id.* at 85 ("The facility . . . shall be . . . operated, and maintained in accordance

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1   with all applicable federal, state, and local laws, regulations, codes, guidelines, and policies.").

2   If any ambiguities arise between applicable federal, state, and local laws and standards, the ICE-

3   GEO Contract instructs GEO that "the most stringent shall apply." *Id.* at 52.

4           Washington filed suit in state court alleging that GEO's practice of paying detainee-

5   workers $1 per day violates both state statutory and common law. In seeking declaratory

6   judgment and disgorgement of unjustly gained profits, Washington seeks to protect its economy

7   and workers – both inside the NWDC and in the greater Tacoma area – from unfair labor

8   practices that exploit detainee-workers, threaten employment opportunities for non-detainees,

9   and depress the economy. GEO removed this case to federal court, and now seeks dismissal of

10   Washington's complaint. GEO's arguments for dismissal are unpersuasive. The State not only

11   has the "authority" to enforce its own laws, nothing within federal law preempts the State's

12   claims, and neither the equitable doctrines of unclean hands or laches precludes the State from

13   disgorging GEO's profits from over a decade of unjust enrichment.

14   ### III.   ARGUMENT

15   **A.   The Federal Court Lacks Jurisdiction Over This Matter**

16           As an initial matter, the Court should grant the State's November 8, 2017, Motion to

17   Remand and decline consideration of GEO's motion to dismiss. *See* Pl.'s Mot. to Remand, ECF

18   15. A state is not subject to diversity jurisdiction because it cannot be a "citizen" of its own state.

19   *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 672 (9th Cir. 2012). Further, there is no federal

20   question jurisdiction because the State alleges state law claims only. *See* Compl. ¶¶ 5.1-6.6. The

21   general existence of "federal issues" or a federal contract is insufficient to invoke a federal

22   forum, and GEO is not a "federal officer." *See K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653

23   F.3d 1024, 1033 (9th Cir. 2011) (rejecting jurisdiction even though the parties' dispute involved

24   tribal lands subject to extensive federal regulations); *Cabalce v. VSE Corp.*, 922 F. Supp. 2d

25   1113, 1122 (D. Haw. 2013), *aff'd sub nom. Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,

26   797 F.3d 720 (9th Cir. 2015) (refusing to apply the federal officer removal statute where the acts

at issue merely occurred under the "general auspices of federal direction"). Remand to state court is necessary because this Court lacks jurisdiction.

**B.     The Washington Supreme Court Should Decide Whether the State's Minimum Wage Law Applies to Private Detention Facilities**

Assuming *arguendo* that federal jurisdiction exists the principal issues raised by GEO's motion to dismiss – whether state minimum wage laws apply to work performed in private, for-profit detention facilities – is one of first impression that should be decided by the Washington Supreme Court.

Pursuant to the Federal Court Local Law Certificate Procedure Act, Wash. Rev. Code § 2.60.010, a federal court may certify questions of state law to the state supreme court when "it is necessary to ascertain the local law of this state in order to dispose of the proceeding and the local law has not been clearly determined." *See also Amaker v. King Cty.*, 540 F.3d 1012, 1015 (9th Cir. 2008) (considering it "prudent" to seek certification where no Washington court had previously confronted the issue). Here, Washington's minimum wage law, Wash. Rev. Code § 49.46.010 sets forth the minimum wages employers must pay "employees" in the state. However, as GEO observes, the state minimum wage law excludes from its definition of "employee" "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution." Wash. Rev. Code § 49.46.010(3)(k). In order to adjudicate this dispute, it is necessary to determine whether Washington's minimum wage law also contains an implied exemption for work performed by detainees at private, for-profit detention centers. No Washington court has addressed this issue. *Cf. Calhoun v. State*, 193 P.3d 188, 193 (Wash. Ct. App. 2008) (considering the minimum wage exemption in the context of a detainee held at a facility owned and operated by a state agency).

Since the legal issue "has not been clearly determined" and no Washington authority is on point, if the Court declines to remand this matter to Pierce County Superior Court, the State requests a stay of these proceedings for certification of whether the state minimum wage exempts

private, civil detention facilities. *See Amaker,* 540 F.3d at 1017 ("When we are left without a definitive rule statement on a question of state law, like we are here, '[w]e are not making the most of our opportunity to cooperate as judicial neighbors, and we are not in tune with the requirements of judicial federalism, when we declare state law . . . without first asking the state supreme court for clarification.'") (citing *Johnson v. Hawe,* 388 F.3d 676, 689 (9th Cir.2004) (Gould, J. dissenting)); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (noting the task of a federal court is to "approximate state law as closely as possible to make sure that the vindication of the state right is without discrimination because of the federal forum").

**C.      GEO's Motion to Dismiss Fails.**

Even if the Court reaches the merits of GEO's motion to dismiss, it should be denied. On a motion to dismiss, the Court's task "is necessarily a limited one," concerned with "only whether the complaint states a claim upon which relief can be granted," and not whether the State will ultimately prevail on the merits. *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1100 (9th Cir. 2010) (internal quotations omitted). The Court must accept all well-pleaded allegations of material fact as true, and draw all reasonable inferences in favor of the State. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Here, the State not only has the authority to enforce its own laws, but its complaint contains "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Neither federal preemption, unclean hands, nor laches bars the State's claims. The Court should deny GEO's motion to dismiss.

**1.      The State Has Authority to Bring This Lawsuit.**

GEO styles its "threshold" argument for dismissal as a Rule 12(b)(6) challenge to the State's "authority" to bring this lawsuit instead of a Rule 12(b)(1) challenge the State's Article III standing. *See* Mot. to Dismiss at 12 n.19, ECF 10. Presumably, GEO does so because, if the Court were to find the State lacked standing, the proper remedy is remand – not dismissal. *See*

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016) ("Remand is the correct remedy [when standing is lacking] because a failure of subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter.").

Regardless, GEO's attack on the State's "authority" – entirely based on standing case law – fails. The State certainly has both "authority" and standing to enforce its own laws. Under the doctrine of *parens patriae*, states have standing to protect "quasi-sovereign" interests, including "the health and well-being" of their residents, whether "physical [or] economic." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). To invoke *parens* jurisdiction, a state must (1) articulate a "quasi-sovereign" interest, (2) identify an interest apart from those of particular private parties, and (3) allege injury to a "sufficiently substantial" segment of its population. *Id.* at 593. That standard is met here.

### a.   The State has a quasi-sovereign interest in enforcing the minimum wage law

The health and well-being of Washington residents is a quasi-sovereign state interest. *Id.* at 607. As the Supreme Court explains, "[a] helpful indication in determining whether an alleged injury to the health and welfare of its citizens" suffices to give the State a quasi-sovereign interest to sue as *parens patriae* "is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.*

Here, there can be no question that the health and well-being of state residents are impacted, or injured, when a subset of residents are paid a single dollar for a day's work and another subset is denied employment opportunities because of this practice. Even if a state resident worked every day of the year at such a rate, they would earn only $365 per year – an amount insufficient for their own maintenance and, for detainee-workers, an amount wholly inadequate to allow them to take care of their non-detained children, to make necessary food and

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  self-care purchases at GEO's commissary, to call their families abroad or in-state, or to retain an
2  immigration attorney. Likewise, other state residents are injured when their counterparts,
3  whether detained or not, are paid $1 for a day's work. State residents lose job opportunities
4  because they are unable to compete with $1-per-day wages, and lost job opportunities threaten
5  residents' abilities to provide for themselves and their families. These injuries to the economic
6  health and well-being of state residents are so obvious that they are not merely injuries the State
7  "would likely attempt to address" in theory, *Id.* at 607, but ones that the State *has* addressed for
8  more than a century. *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 386 (1937) (analyzing
9  Washington's 1913 minimum wage law). As the preamble to the current statute sets forth, the
10 State set a minimum wage "to encourage employment opportunities within the state" and "to
11 protect[] the immediate and future health, safety and welfare of the people of this state." Wash.
12 Rev. Code § 49.46.005. It is, therefore, far from the Attorney General's personal "political
13 opinion" that Washington has a quasi-sovereign interest in establishing a minimum wage. *Cf.*
14 Mot. to Dismiss at 12.

15     GEO's observations regarding the scope of Washington's Department of Labor and
16 Industries ("L&I") authority to enforce the state minimum wage are equally inapposite. *See* Mot.
17 to Dismiss at 13-14 (arguing L&I's statutory authority is limited to "standing in the shoes of
18 employees"). As GEO itself admits, the Attorney General is not suing on behalf of L&I or relying
19 on L&I's statutory authority to bring this action. *Id.* at 13. Instead, the Attorney General brings
20 suit pursuant to his own authority under Wash. Rev. Code § 43.10.030(1). Compl. ¶ 2.1. As the
21 Washington Supreme Court held, Wash. Rev. Code § 43.10.030(1) grants the Attorney General
22 "discretionary authority to act in any court, state, or federal, trial or appellate, on 'a matter of
23 public concern' provided that there is a 'cognizable common law or statutory cause of action.'"
24 *City of Seattle v. McKenna*, 529 P.3d 1087, 1093 (Wash. 2011) (citation omitted). Because
25 GEO's failure to pay a minimum wage for over a decade is a matter of public concern, the State
26 wields clear authority to enforce laws enacted "through its sovereign lawmaking powers" and to

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

assert its quasi-sovereign interest in the health and well-being of its residents.[1] *See also State v. Chinook Hotel, Inc.*, 399 P.2d 8, 9 (Wash. 1965) (minimum wage claim brought by the Attorney General).

> **b.** **The State's interest is independent from the interests of its residents**

GEO argues that the State's interest is duplicative of the interests of its residents. Mot. to Dismiss at 14 (citing *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973)). This argument fundamentally mischaracterizes the nature of the State's enforcement action.

The State's goal in ending the injuries to its residents extends well beyond those of a "nominal" party. *Snapp*, 458 U.S. at 607. Unlike in *Frito-Lay*, where California sought treble damages against snack food manufacturers for injuries suffered by its residents, the State here does not seek damages for detainee-workers at all.[2] Instead, the State seeks to protect its own quasi-sovereign interests. Specifically, in its prayer for relief, the State seeks declarations that detainee-workers are "employees;" that GEO is an "employer;" that GEO was unjustly enriched by failing to pay detainee-workers a fair wage; an injunction prohibiting GEO from paying detainee-workers less than the minimum wage for work performed at the NWDC; and disgorgement. Compl. ¶¶ 7.1-7.8.

The relief sought by the State is not only broader than that which could be sought by private litigants, but actually *is* broader than the relief sought by the private litigants currently suing GEO for minimum wage violations at NWDC. *See* Class Action Complaint for Damages at 5, *Chen, et. al. v. GEO Group, Inc*., No. 3:17-cv-05769 (W.D. Wash. Sept. 26, 2017), ECF 1

---

[1] Defendant's citations – without analysis – to *Missouri ex. rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017), and *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 738 (9th Cir. 2011), only cement this point. In *Missouri*, the Ninth Circuit held six states lacked standing to challenge a California law where, unlike here, it was unclear whether the California law would impact the other states' residents at all. *Missouri*, 847 F.3d at 651. In *Lucent*, the Ninth Circuit held the state agency seeking to enforce a state law enacted to protect its residents was not a real party in interest for purposes of diversity jurisdiction, but observed there was "little doubt" that the state agency was a "real party in interest for purposes of standing." *Lucent*, 642 F.3d at 738.

[2] Congress later recognized the authority of state attorneys general to enforce consumer protection through their authority as *parens patriae*. *See Texas v. Scott & Fetzer Co.*, 709 F.2d 1024, 1025 n.1 (5th Cir. 1983) (observing the legislative history shows "the thrust of [Congress's] bill [was] to overturn *Frito-Lay*").

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  (seeking class certification, damages for lost wages, and attorneys' fees, but not injunctive relief,

2  declaratory relief, or equitable relief for unjust enrichment); *see also Massachusetts v. Bull HN*

3  *Info. Sys., Inc.*, 16 F. Supp. 2d 90, 101-02 (D. Mass. 1998) (finding Massachusetts had standing

4  as it sought "broad injunctive and declaratory relief of a kind that individual litigants likely

5  would not attempt to seek"). Although GEO speculates that the State seeks disgorgement

6  because it "wants the same money that individual detainees would pursue," *see* Mot. to Dismiss

7  at 15, disgorgement to obtain ill-gotten gains is "separate and apart" from the interests of

8  particular individuals. *See Hawaii ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-

9  LRP, 2014 WL 3427387, at *10 (D. Haw. July 15, 2014). As such, a concrete state interest exists

10  independent of those of particular parties.

11          **c.**    **GEO's actions harm a substantial segment of Washington residents**

12        GEO argues that the State lacks authority to bring this lawsuit because a 2007 ballot

13  measure proves that not "all" Washingtonians are "supportive of the idea" of paying detainee-

14  workers a minimum wage. *See* Mot. to Dismiss at 14. GEO's argument makes little sense.

15        First, the language of the ballot measure explicitly referred to "state-operated inmate

16  labor programs" operated at state prisons through "state contracts." Wash. Inmate Labor

17  Programs, SJR 8212 (2007), https://ballotpedia.org/Washington_Inmate_Labor_Programs,_SJ

18  R_8212_(2007). If this ballot measure sheds any light on this lawsuit at all, it is only to show

19  that voters were never asked about, and did not opine on, labor practices at GEO's private, for-

20  profit civil detention center.

21        Second, even if this ballot measure somehow constitutes evidence that some Washington

22  voters approve of GEO's conduct, *Snapp* does not require the State represent the interests of *all*

23  residents – or even a majority of residents – in order to sue as *parens patriae*. In fact, there are

24  no "definitive limits on the proportion of the population" that a state must allege to be adversely

25  affected. *Snapp*, 458 U.S. at 607. And states can establish sufficient impacts by reference to the

26  "indirect effects of the injury" implicating a group broader than just those residents directly

involved. *Id.*; *see also Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d at 100 (considering "not just the individuals directly affected by the defendant's conduct, but all similarly situated individuals who might be subject to similar discrimination if it were to be tolerated"). In *Snapp*, for example, the Supreme Court agreed that the loss of 787 temporary jobs sufficed to give Puerto Rico standing to sue an apple grower for federal labor violations. *Id.* at 599.

In this case, the impacts, both direct and indirect, are even broader. As the complaint alleges, at any given time, GEO detains up to 1,575 individuals at the NWDC. Compl. ¶ 3.9. This means that, since 2005, tens of thousands of state residents have likely worked for GEO at a wage far below the minimum wage. Likewise, an unknown number of non-detained state residents lost out on job opportunities they would have had if GEO did not rely on underpaid workers to provide labor critical to the operation of its business. If GEO's conduct is allowed to continue, tens of thousands of future residents will be impacted when they are detained at NWDC or lose work opportunities to individuals who are. Such an extensive violation of the state's minimum wage laws is more than sufficient to support standing. *See, e.g., People v. Mid-Hudson Medical Grp.*, 877 F. Supp. 143, 148 (S.D.N.Y. 1995) (finding the state had standing because the defendant's discrimination against its seven to ten deaf patients threatened all hearing-impaired citizens in New York); *New York v. Cornwell*, 695 F.2d 34, 39 (2d Cir. 1982) (finding state standing to protect "eight to ten" state residents); *Bull HN Info. Sys.*, 16 F. Supp. 2d at 101 (standing where "approximately 50" workers directly affected and conduct "stings" a broader segment of state workers through "indirect effects"). Since the State alleges a substantial segment of its residents are impacted by GEO's conduct, the State has authority and *parens patriae* standing to bring this action.

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1          **d.      The State sues GEO, not the Federal Government**

2          Finally, as a last-ditch effort, GEO argues the State lacks authority to sue the federal

3    government. Mot. to Dismiss at 16. Not only is this argument irrelevant as the State's suit does

4    not lie against the federal government,[3] it misstates the law.

5          While GEO argues that *Massachusetts v. Mellon*, 262 U.S. 447 (1923), bars *parens*

6    *patriae* actions against the federal government, GEO ignores case law holding that *Mellon* was

7    all but eradicated by the Supreme Court's subsequent decision in *Massachusetts v. EPA*, 549

8    U.S. 497, 518 (2007). There, the Supreme Court affirmed the states' "special solicitude" in

9    matters of standing and rebuffed the dissent's *Mellon* arguments by pointing out "the long

10   development of cases permitting States 'to litigate as *parens patriae* to protect quasi-sovereign

11   interests." *Massachusetts v. EPA*, 549 U.S. at 520 & n.17 (citing cases). The Supreme Court also

12   stated that "*Mellon* itself disavowed any such broad reading," because *Mellon* expressly noted it

13   had not been called upon to determine whether claims involving quasi-sovereign interests were

14   barred. *Id.* at 520 n.17; *see also Hanford Challenge v. Moniz*, 218 F. Supp. 3d 1171 (E.D. Wash.

15   2016) (rejecting *Mellon* as a bar and recognizing Washington's standing to sue the U.S.

16   Department of Energy); *Texas v. United States*, 86 F. Supp. 3d 591, 626-28 (S.D. Tex. 2015)

17   (rejecting *Mellon* and allowing states' *parens patriae* suit to protect residents' economic

18   interests).

19         In other words, even assuming *arguendo* that GEO should be treated as something other

20   than a private, for-profit company, the State has the authority to sue GEO in its capacity as *parens*

21   *patriae*.

22

23

24         _____
           [3] As demonstrated in the State's Motion to Remand, ECF 15 at 9-13, GEO's repeated claims that it acts as
25   the federal government should be rejected. *See Prewett v. Goulds Pumps (IPG),* No. C09-0838 RSM, 2009 WL
     2959877, at *3 (W.D. Wash. Sept. 9, 2009) (holding a private company does not act as federal officer when it
26   "violates a state law at its own discretion rather than at the government's discretion and in accordance with federal
     duties").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**2.    The State Sufficiently Pleads GEO's Violation of State Minimum Wage Law**

"[T]he establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of this state." Wash. Rev. Code § 49.46.005(1). The State first adopted a minimum wage law in 1913, a full 25 years before Congress enacted the federal Fair Labor Standards Act ("FLSA"). *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000); *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 386 (1937). Since then, Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz*, 996 P.2d at 586. GEO nevertheless argues that thousands of state residents employed by a private contractor need not be paid the minimum wage. GEO's argument relies exclusively on cases applying the FLSA, Colorado's minimum wage law, and Massachusetts' minimum wage law. None of these cases construes Washington's broader law, and GEO's argument fails.

**a.    Ordinary statutory construction principles show that GEO's business is covered by the minimum wage law**

In interpreting a state statute, Washington courts first look the plain language of the statute at issue, not to other federal or state laws. *Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283, 1288 (Wash. 2010). Where it is clear on its face, the court applies the provisions as they are written. *Id.* (cautioning that courts "must not add words where the legislature has chosen not to include them"); *see also Monschke v. Cross*, No. 11-5276 RBL/KLS, 2012 WL 2565026, at *10 (W.D. Wash. June 11, 2012) (observing federal courts are bound by state statutory construction requirements when applying state law). A court should resort to extrinsic sources "[o]nly where the legislative intent is not clear from the words of a statute." *Burton v. Lehman*, 103 P.3d 1230, 1234 (Wash. 2005) (internal quotation marks omitted).

Applying these statutory construction principles, it is clear that the state's minimum wage law applies to GEO. *See Becerra v. Expert Janitorial*, 332 P.3d 415, 420 (Wash. 2014) (noting the state's minimum wage law is remedial in nature and should be "liberally construed"). The plain language of the state minimum wage law defines "[e]mploy" to mean "to permit to work."

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    Wash. Rev. Code § 49.46.010(2). In turn, "[e]mployee" is broadly defined as any individual

2    permitted to work by an employer – whether or not they are detained. Wash. Rev. Code

3    § 49.46.010; *Anfinson v. FedEx Ground Package Sys.*, 281 P.3d 289, 297 (Wash. 2012).

4    Although the definition of "employee" contains sixteen exemptions, *see* Wash. Rev. Code

5    § 49.46.010(3), none of the exemptions covers detainee-workers held in a privately owned and

6    operated facilities, *cf.* Wash. Rev. Code § 49.46.010(3)(k) (exempting only "a state, county or

7    municipal correctional, detention, treatment or rehabilitative institution"). GEO's claim that it

8    would be "reasonable" for this Court to expand the exemption to encompass its private facility

9    violates the basic statutory construction rule requiring courts to presume that legislative

10   omissions are intentional. *See State v. Swanson*, 65 P.3d 343, 347 (Wash. 2003) (reciting the

11   maxim *expressio unius est exclusio alterius*).

12              **b.      Interpretations of the FLSA or out-of-state statutes do not control**

13              GEO attempts to escape liability by reference to the FLSA or statutes from other states.

14   These arguments fail because Washington's law is broader than the statutes GEO cites.

15              While Washington's current minimum wage statute was modeled on the FLSA, they are

16   "not identical." *Drinkwitz*, 996 P.2d at 586. The FLSA itself recognizes state minimum wage

17   laws will differ from its own provisions. *See* 29 U.S.C. § 218 (directing that "[n]o provision of

18   [the FLSA] or of any order thereunder shall excuse noncompliance with any Federal or State law

19   or municipal ordinance establishing a minimum wage higher than the minimum wage established

20   under this chapter"); *Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990)

21   (affirming that "the purpose behind the FLSA is to establish a national *floor* under which wage

22   protections cannot drop, not to establish absolute uniformity in minimum wage . . . standards

23   nationwide"). As such, federal law serves only as "persuasive authority" when construing

24   Washington's minimum wage laws, and only then for provisions that are similar to those found

25   in the FLSA. *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000) (Washington courts "may

26   consider" federal interpretations of "comparable provisions"); *see also Dep't of Labor & Indus.*

*v. Lanier Brugh*, 147 P.3d 588, 594 (Wash. Ct. App. 2006) (holding that the FLSA did not preempt state wage laws establishing minimum wages nor protect private companies from paying more than the federal minimum wage to comply with local wage laws); *Dep't of Labor & Indus. v. Common Carriers*, 762 P.2d 348, 349-350 (Wash. 1988) (holding that the FLSA did not preempt state wage laws and requiring federal contractor to comply with Washington's minimum wage laws).

Most importantly, the purpose of Washington's minimum wage law is substantially broader than that of the FLSA. Washington's Legislature declared that minimum wage laws are necessary not only to protect "the health, safety and the general welfare of the citizens of this state," but also to "encourage employment opportunities within the state." Wash. Rev. Code § 49.46.005(1). This latter purpose – the prevention of predatory labor practices to encourage maximum employment opportunities for state residents – is wholly missing from the FLSA's more limited scope. *See* 29 U.S.C. § 202 (declaring the purpose of the FLSA is to ensure the free flow of goods in commerce and maintain "the minimum standard of living necessary for health, efficiency, and general well-being of workers").

Washington's broader purpose sets it apart from the FLSA or the minimum wage laws of other states. In *Alvarado Guervara v. INS*, the Fifth Circuit found that detainee-workers held in a federally owned and operated detention facility were not protected by the FLSA's minimum wage provisions. 902 F.2d 394, 396 (5th Cir. 1990). However, to reach this holding, the *Alvarado* court relied upon the conclusion that "[t]he congressional motive for enacting the FLSA . . . was to protect the 'standard of living' and 'general well-being' of the worker in American industry" and did not include an express inclusion or exemption regarding incarcerated individuals. *Id.* Likewise, in *Whyte v. Suffolk Cty. Sheriff's Dep't*, No. 16-P-751, 2017 WL 2274618, at *1-2 (Mass. App. Ct. May 24, 2017), the intermediate state court dismissed the plaintiff's claim against the sheriff's office detaining him under contract with ICE  because it determined that the purpose of Massachusetts' minimum wage laws were almost identical to that of the FLSA. In

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015), the district court

2    found that detainee-workers were not "employees" under the Colorado Minimum Wage Act

3    ("CMWA") because the purpose of the CMWA is to "supply the necessary cost of living and to

4    maintain the health of the workers." *Id.* at 1129-32 (finding that the CMWA only covered four

5    limited categories of employees).

6         None of these cases turned on the question of statutory construction presented here:

7    whether an exception for government-operated detention facilities contained within an otherwise

8    broad minimum wage law should be read to contain an *implied* exception for private, for-profit

9    detention providers. Because the question presented is different, *Alvarado Guevara*, *Whyte*, and

10   *Menocal* are of no help in construing Washington's broader statute, with its explicit goal of

11   protecting employment opportunities for the greater public. The State sufficiently pleads a claim

12   that GEO's longstanding practice violates Washington's state-specific law.

13       **3.**      **Federal Law Does Not Preempt the State's Minimum Wage Law**

14         Nothing in federal law preempts GEO's compliance with the state minimum wage law.

15         There are three types of preemption: "(1) *express preemption* – where Congress explicitly

16   defines the extent to which its enactments preempt state law; (2) *field preemption* – where state

17   law attempts to regulate conduct in a field that Congress intended the federal law exclusively to

18   occupy; and (3) *conflict preemption* – where it is impossible to comply with both state and federal

19   requirements, or where state law stands as an obstacle to the accomplishment and execution of

20   the full purposes and objectives of Congress. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d

21   1144, 1149 (9th Cir. 2000) (internal quotation marks omitted).

22         Regardless of the type of preemption analysis, "[c]onsideration of the issues arising under

23   the Supremacy Clause start[s] with the assumption that the historic police powers of the states

24   [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of

25   Congress." *Id.* (internal quotation marks omitted). "Parties seeking to invalidate a state law based

26   on preemption 'bear the considerable burden of overcoming the starting presumption that

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  Congress does not intend to supplant state law.'" *Stengel v. Medronic*, 704 F.3d 1224, 1227-28

2  (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520

3  U.S. 806, 814 (1997)). GEO fails to meet its burden.

4                 **a.**        **The State's claims are not expressly preempted**

5         GEO argues that the Immigration Reform and Control Act ("IRCA") expressly preempts

6  the state's minimum wage law.[4] This argument falls flat.

7         IRCA prohibits employers from knowingly hiring or recruiting unauthorized aliens to

8  work. 8 U.S.C. § 1324a(a). In doing so, IRCA permits only the federal government to sanction

9  employers that violate its prohibition and expressly "preempt[s] any state or local law imposing

10  civil or criminal sanctions . . .  upon those who employ, or recruit . . . unauthorized aliens." 8

11  U.S.C. § 1324a(h)(2). When a federal law contains an express preemption clause, courts "focus

12  on the plain wording of the clause, which necessarily contains the best evidence of Congress'

13  preemptive intent." *See Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594 (2011).

14  Under a plain language reading of IRCA's preemption clause, Congress only intended to

15  preempt state action that would impose sanctions "upon those who employ, or recruit or refer

16  for a fee for employment" undocumented immigrants. *Id.*

17         Here, Washington does not attempt to sanction GEO for employing undocumented

18  workers. Instead, Washington seeks to enforce its state minimum wage, which applies without

19  regard to an employee's immigration status, and disgorge ill-gotten gains from GEO for its

20  failure to pay a fair wage. It is well established that states can enforce generally applicable

21  regulations that protect workers without violating IRCA. *Whiting*, 563 at 600 (holding that

22  "IRCA expressly preempts some state powers dealing with the employment of unauthorized

23  aliens and it expressly preserves others" and finding no preemption of an Arizona licensing law

---

24           [4] The ICE-GEO contract cannot, as GEO argues, "control[] detainee pay" either through contract terms or

25  the general detention standards incorporated into the contract. The contract itself requires compliance with "all applicable federal, state, and local laws." ECF 16-1 at 44. Even if it did not, "we generally take for granted that it is

26  *law*, and not a mere contract, that carries [any] preemptive force." *Empire HealthChoice Assur. Inc. v. McVeigh*, 396 F.3d 136, 143 (2d Cir. 2005); *see also id.* ("[O]nly federal *law* may preempt state and local law.")

STATE'S RESPONSE TO GEO'S MOTION             15             ATTORNEY GENERAL OF WASHINGTON
TO DISMISS COMPLAINT                                      Civil Rights Unit
                                                          800 Fifth Avenue, Suite 2000
                                                          Seattle, WA 98104-3176
                                                              (206) 442-4492

1   targeting employers that hire undocumented workers); *Incalza v. Fendi N. Am., Inc.*, 479 F.3d

2   1005, 1013 (9th Cir. 2007) (holding that IRCA did not preempt California labor law that forbid

3   employers from terminating an employee without good cause even if that law applied to an

4   employer who terminated an immigrant who temporarily lost their legal work status); *Madeira*

5   *v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 237 (2d Cir. 2006) (holding IRCA did not

6   preempt established state workers' compensation law). Even the federal government requires

7   that workers be paid the minimum wage for work actually performed regardless of their work

8   authorization. *See* U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet #48: Application

9   of U.S. Labor Laws to Immigrant Workers (July 2008), *available at*

10  https://www.dol.gov/whd/regs/compliance/whdfs48.htm (declaring that the U.S. Department of

11  Labor will enforce federal minimum wage laws "without regard to whether an employee is

12  documented or undocumented").

13       In other words, despite GEO's arguments to the contrary, the State does not seek an

14  outcome that is "impossible and illegal." *Cf.* Mot. to Dismiss at 20. GEO can easily comply with

15  both IRCA and state minimum wage laws by employing detainee-workers who are authorized

16  to work,[5] or hiring non-detained employees from the local community (as it does with its security

17  officers). If IRCA's preemption clause is read as GEO argues, IRCA would create an incentive

18  for employers to hire undocumented workers so they could pay them substandard wages and

19  ignore all other state labor laws. IRCA does not command this absurd result.

20       **b.    Washington's claims are not field preempted**

21       GEO's field preemption defense also fails. Neither the federal government's general

22  authority over immigration detention nor a congressional appropriation that provides funding for

23

24       [5] To the extent GEO suggests none of the detainee-workers at NWDC are work-authorized, GEO's
25  argument is factually and legally wrong. At least some detainee-workers are lawfully present, have authorization to
    work, and may never be found removable at all. *See* 8 U.S.C. § 1226(a) (authorizing detention "pending decision
26  on *whether* the alien is removable) (emphasis added); 8 C.F.R. § 274a.12(c) (work authorization continues during
    "any period when an administrative appeal or judicial review of an application or petition is pending").

immigration enforcement constitutes a regulatory framework so pervasive as to displace state law.

"[S]tate law is pre-empted . . . if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 733 (9th Cir. 2016)). However, "[i]n areas without pervasive regulations or other grounds for preemption, the state standard . . . remains applicable." *Id.* (holding that the Federal Aviation Administration's regulations could not serve as a basis for field preemption where the regulatory scheme does not expressly address the cause of the state law claim). And, "[w]here, as here, the field which Congress is said to have pre-empted has been traditionally occupied by the States, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 116 (1992). *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ("'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety . . . are only a few examples.'") (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)).

Here, GEO suggests that a loose assortment of statutes, policy guidelines, and contract clauses establish field preemption. Mot. to Dismiss at 21. This is not the case. While the federal government has broad authority regarding immigration, such authority cannot displace every generally applicable state law that touches anyone involved in the immigration system. *Cf. Arizona v. United States*, 567 U.S. 387, 401 (2012) (affirming that legislative intent to preempt can be inferred from a "framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where a 'federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* at 398 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1990)). In fact, not even the federal

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1  government believes field preemption applies here, given that ICE's contract with GEO

2  expressly reserves room for state and local laws to apply within contract detention facilities. *See*

3  ECF 16-1 at 44 ("The facility . . . shall be . . . operated, and maintained in accordance with all

4  applicable federal, state, and local laws, regulations, codes guidelines and policies."); *id.* at 52

5  (requiring GEO apply the "most stringent" of any federal, state, or local law applicable to

6  NWDC).

7          Likewise, GEO's reliance on a 1979 appropriations bill that predates the existence of

8  private immigration detention is equally unavailing. At most, the appropriation sets the amount

9  ICE can reimburse an entity for detainee-workers who participate in the detainee work program.

10  It cannot and does not occupy the legislative field of laws governing how much GEO must then

11  pay detainee-workers for work performed in its facilities. *See United States v. Nixon*, 839 F.3d

12  885, 887-888 (9th Cir. 2016) (affirming that an appropriations rider simply restricts an agency's

13  ability to use certain funds and does not invalidate existing law). ICE's detention standards

14  require GEO to pay a minimum of $1 per day for detainee labor, but explicitly leaves GEO with

15  the discretion to pay more. *See* ECF 16-2 at 5.8(V)(K) (requiring GEO pay detainee-workers "*at*

16  *least* $1.00 (USD) per day") (emphasis added); ECF 16-1 at 43-44 (directing that state and local

17  labor laws and codes may constrain the contractor's operations and requiring GEO "to be

18  knowledgeable of any changes to the constraints and  perform in accordance with the most

19  current version of the constraints").

20          In sum, considering the express language of GEO's contract and incorporated detention

21  standards, GEO's broad references to the federal government's immigration authority and a

22  congressional appropriation is not enough to displace state law. The NWDC cannot be a private,

23  for-profit island sitting beyond the reach of all state or local laws.

24              **c.      There is no conflict between the state minimum wage and federal law**

25          Finally, GEO fails to show the state's minimum wage law is subject to conflict

26  preemption. "[S]tate laws are preempted when they conflict with federal law." *Arizona*, 567 U.S.

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT                                    18                    ATTORNEY GENERAL OF WASHINGTON
                                                                                          Civil Rights Unit
                                                                                     800 Fifth Avenue, Suite 2000
                                                                                       Seattle, WA 98104-3176
                                                                                          (206) 442-4492

1    at 400 (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 371-72 (2000)). But courts

2    should only find conflict preemption in instances where (1) "compliance with both federal and

3    state regulations is a physical impossibility," and those instances where the challenged state law

4    "stands as an obstacle to the accomplishment and execution of the full purposes and objectives

5    of Congress[.]" *Id.* at 376. "For conflict preemption to apply, the conflict must be an actual

6    conflict, not merely a hypothetical or potential conflict." *Chicanos Por La Causa v. Napolitano*,

7    558 F.3d 856, 863 (9th Cir. 2009).

8          Here, GEO argues compliance with the state minimum wage "would directly impact what

9    ICE (and ultimately, federal taxpayers) must pay to federal contractors." Mot. to Dismiss at 23.

10   But GEO's objection to the cost of complying with state law is hardly tantamount to a conflict

11   with federal law. As an initial matter, GEO's assumption that an increase in pay to detainee-

12   workers inherently increases the cost of operating its facility undermines GEO's argument that

13   the "Voluntary Work Program" is truly "voluntary." If GEO cannot run its business without

14   detainee-workers, it proves that detainee-workers are displacing employment opportunities for

15   non-detained Washington workers. Regardless, GEO's contract with ICE puts the burden

16   squarely on GEO to absorb the cost of complying with any new or clarified "statutory" and

17   "regulatory" constraints. ECF 16-1 at 44. While paying Washington workers the minimum wage

18   may cut into GEO's profit margin, there is no reason to believe that ICE would be responsible

19   to bear the cost of GEO's compliance with state law.

20         GEO's fear of a "balkanized patchwork of state laws" is similarly inapposite. *Cf.* Mot. to

21   Dismiss at 24. GEO's mere desire for consistency in its national business operations does not

22   create a conflict with federal law. This is especially true given that ICE expressly contemplates

23   that GEO's obligations will not be uniform by requiring that GEO comply with all state and local

24   labor laws. ECF 16-1 at 44. Neither IRCA, the federal government's general authority over

25   immigration detention, nor any congressional appropriation, conflict with the State's minimum

26

1   wage law. Instead, the State requests that GEO follow employment practices that comply with

2   both state and federal requirements – just like all other employers in Washington.

3       **4.      GEO's Attempts to Dismiss the Unjust Enrichment Claim Are Unavailing**

4           **a.      The State sufficiently alleges GEO was unjustly enriched**

5       The Court should deny GEO's motion to dismiss the State's unjust enrichment claim.

6   Unjust enrichment occurs "when one retains money or benefits which in justice and equity

7   belong to another." *Bailie Commc'ns*, *Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct.

8   App. 1991). Three elements are necessary to sustain an unjust enrichment claim: (1) GEO

9   receives a benefit, (2) the received benefit is at another's expense, and (3) the circumstances

10  make it unjust for the GEO to retain the benefit without payment. *See Young v. Young*, 191 P.3d

11  1258, 1262 (Wash. 2008).

12      Here, there is no question that the State alleges the necessary elements of unjust

13  enrichment. *See Menocal*, 113 F.Supp. 3d at 1133 (refusing to dismiss detainees' unjust

14  enrichment claim relating to GEO's failure to pay a fair wage for work performed). As alleged,

15  GEO utilizes detainee-workers to operate the NWDC, pays them $1 per day for the work

16  performed, and benefits from the difference between the $1 per day that it pays and the *fair* wage

17  that GEO should have paid.[6] *See* Compl. ¶¶ 6.3-6.6. Considering that detainee-workers have no

18  other means of earning money while detained at the NWDC, it is unjust for GEO to retain the

19  benefit of having necessary work done by captive workers without having to pay the fair wage

20  it would otherwise pay for that labor.

21      GEO nevertheless argues the State's claim is precluded because the detainee-workers are

22  "volunteers" with no "reasonable expectation" of a fair wage. *See* Mot. to Dismiss at 29-30

23

24          [6] In *Whyte*, the Massachusetts court dismissed plaintiff's unjust enrichment claim because it was based on
       a minimum wage theory and the court held plaintiff was not an "employee" under that state's minimum wage laws.
25     2017 WL 2274618, at *2 (Mass. App. Ct. May 24, 2017). In contrast, here the State's unjust enrichment claim is
       untethered to the minimum wage law; the State sues for unjust enrichment based on GEO's failure to pay the fair
26     market rate it would have had to pay for the work performed.

(citing *Lynch v. Deaconess Medical Ctr.*, 776 P.2d 681, 683 (Wash. 1989)). Whether the detainee-workers are "volunteers," depends on the surrounding circumstances, i.e., (1) whether the detainee-workers conferred the benefit of their labor at GEO's request, (2) whether GEO knowingly accepted the benefit of the detainee-workers' labor, and (3) whether the detainee-workers' labor furthered GEO's interests. *See Ellenburg v. Larson Fruit Co.*, 835 P.2d 225, 229 (Wash. Ct. App. 1992).

At most, GEO's argument about "volunteer" status creates a factual issue that cannot be resolved on a motion to dismiss. Moreover, although GEO certainly refers to its program as "voluntary" and GEO may or may not request detainee-workers sign an agreement to that effect,[7] the detainee-workers can hardly be categorized as "volunteers" in light of all the surrounding circumstances. In fact, GEO admits as much when it argues the cost of operating its facility would increase if required to pay detainee-workers the minimum wage. Mot. to Dismiss at 23-24. Not only does GEO invite, or request, detainee-workers participate in its program and perform a wide range of work, including cooking food, cleaning bathrooms, painting walls, and buffing floors, *see* Compl. ¶ 4.2, the detainee-workers have little choice but to provide such labor as they are unable to seek other employment. In short, the benefits detainee-workers conferred are critical to furthering GEO's business model. *See also Columbia Cmty. Bank v. Newman Park, LLC*, 304 P.3d 472, 473 (Wash. 2013) (rejecting the "volunteer rule" as a bar to an equitable subrogation claim, a type of unjust enrichment).

GEO's reliance on an unpublished state superior court case is equally inapposite. In *State v. Am. Tobacco Co.,* No. 96-2-15056-8 SEA, 1996 WL 931316, n.1 (Wash. Superior Ct. Nov. 19, 1996), the State did not sue in its capacity as *parens patriae*. Instead, the State alleged tobacco companies conspired to prevent the manufacture and sale of safer tobacco products,

---

[7] GEO asserts in a footnote – without any supporting declaration or exhibit – that detainees "generally" sign an agreement acknowledging their voluntary participation in the program. Mot. to Dismiss at 29 n.110. At best, such an agreement merely creates a dispute of fact as to whether the detainees have a reasonable expectation of payment for their services. Regardless, at this stage, where the State's allegations are taken as true, the mere suggestion of an agreement about "volunteer" status does not warrant dismissal.

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

which then increased the State's own healthcare costs. *Id*. Here, in contrast, the State sues GEO based on its quasi-sovereign interest in protecting the health, safety, and well-being of its residents. *See Snapp*, 485 U.S. at 602-04. As *parens patriae*, the State need not show that the State itself conferred a benefit on GEO, but only that *its state residents*, whom Washington has a quasi-sovereign duty to protect, conferred a benefit on GEO. Since the State undoubtedly meets that requirement, and GEO benefitted from paying detainee-workers at a rate far below fair market value, the Court should deny GEO's motion to dismiss the unjust enrichment claim.

### b.   Neither unclean hands nor laches bars the State's requested equitable relief

Finally, GEO argues the State "acts in bad faith" by enforcing the state minimum when the state minimum wage does not apply to its own state detention facilities and because it did not sue GEO earlier.[8] Mot. to Dismiss at 31. Neither the doctrine of unclean hands or laches provides a basis to dismiss the State's unjust enrichment claim.

GEO's unclean hands argument amounts to nothing more than a disagreement with state law. The mere fact that state law requires GEO to pay the minimum wage, and does not require state prisons to do the same, does not render the State's hands "unclean." *See, e.g., United States v. Phillip Morris, Inc.,* 300 F. Supp. 2d 61, 75-76 (D.D.C. 2004) (refusing to apply unclean hands where defendant alleged the government "committed the 'same sort of wrongdoing' as is alleged against them"). Courts refuse to apply equitable defenses when to do so would interfere with the State's "proper exercise of its governmental duties." *Hous. Auth. of King Cty. v. NE Lake Wash. Sewer & Water Dist.*, 784 P.2d 1284, 1286-87 (Wash. Ct. App. 1990). GEO cannot evade application of the public policy requiring private companies to pay the minimum wage by pointing to a state-law exemption that applies exclusively to government facilities. *See EEOC v. Recruit USA, Inc.*, 939 F.2d 746, 753 (9th Cir. 1991) (refusing to apply the unclean hands

---

[8] Again, the State's unjust enrichment claim is not based on GEO's failure to pay the minimum wage required under state law at all, but GEO's failure to pay a *fair* wage. *See* Compl. ¶¶ 6.1-6.6.

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3176
(206) 442-4492

1    doctrine against the Equal Employment Opportunity Commission because it would frustrate

2    "Congressional purpose and the public interest" and "abusive employment practices would be

3    allowed to continue unchecked").

4         GEO's laches defense also fails because, like unclean hands, it too is an equitable defense

5    rarely applied against governmental entities seeking to enforce the law against an ongoing

6    violation. *See City of Mercer Island v. Steinmann*, 513 P.2d 80, 82-83 (Wash. Ct. App. 1973)

7    (observing a governmental entity acting in "its governmental capacity," and not its "proprietary

8    capacity," cannot be precluded from enforcing zoning regulations even "if its officers have

9    remained inactive in the face of such violations"); *Phillip Morris*, 300 F.Supp.2d at 72 ("[L]aches

10   or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce

11   a public right or protect a public interest"). Even if laches could preclude a governmental

12   enforcement action, GEO fails to meet its burden of showing both: (1) inexcusable delay, and

13   (2) prejudice from such delay. *See Rutter v. Rutter*, 370 P.2d 862, 865 (Wash. 1962); *Arnold v.*

14   *Melani*, 449 P.2d 800, 803 (Wash. 1968) (requiring laches be proved by clear and convincing

15   evidence); *Clark Cty. Pub. Util. Dist. No. 1 v. Wilkinson*, 991 P.2d 1161, 1167 (Wash. 2000)

16   (noting a court "will not presume prejudice merely from the fact of a delay"). Although GEO

17   states – without any factual support – that a state agency "kn[ew] about the voluntary work

18   program from prior site inspections," Mot. to Dismiss at 32, GEO nowhere indicates when, if

19   any, applicable statutes of limitations started running on the States' claims. *See Carrillo v. City*

20   *of Ocean Shores*, 94 P.3d 961, 970 (Wash. Ct. App. 2004) ("Absent highly unusual

21   circumstances," courts "will not apply the doctrine of laches to bar an action short of the

22   applicable statute of limitations"). Without identifying *when* the State's claims accrued, GEO

23   cannot argue any delay, let alone inexcusable delay. Likewise, simply stating – again, without

24   support – that GEO "periodically" contracts with ICE and "has done so without budgeting under

25   the state minimum wage law for detainees," Mot. to Dismiss at 32, hardly shows prejudice. *See*

26   *In re Marriage of Hunter*, 758 P.2d 1019, 1023 (Wash. Ct. App. 1988) (holding a delay of seven

STATE'S RESPONSE TO GEO'S MOTION
TO DISMISS COMPLAINT                              23                ATTORNEY GENERAL OF WASHINGTON
                                                                        Civil Rights Unit
                                                                      800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA 98104-3176
                                                                          (206) 442-4492

1  years did not bar an action to recover child support because defendant could not" be said to be

2  'damaged' simply by having to do now what he was legally obligated to do years ago"). GEO

3  fails to allege, let alone show, it has attempted to negotiate its ICE contracts based on its

4  understanding of its state law obligations. As such, GEO has shown no prejudice.

5      A disagreement with state law is not a basis to dismiss a claim for equitable relief. GEO

6  fails to meet its burden of proving its affirmative defenses.

7                          **IV.    CONCLUSION**

8      For the foregoing reasons, the State respectfully requests that this Court remand this

9  action to state court or certify to the Washington Supreme Court the question of the application

10  of Washington's minimum wage law to GEO's business. In the alternative, the State requests

11  the Court deny GEO's motion to dismiss in its entirety.

12  DATED this 13th day of November, 2017.

13                                      Respectfully submitted,

14

15                                      BOB FERGUSON
                                        Attorney General of Washington

16                                      /s/ Marsha Chien
17                                      MARSHA CHIEN, WSBA No. 47020
                                        LA ROND BAKER, WSBA No. 43610
18                                      Assistant Attorneys General
                                        Office of the Attorney General
19                                      800 Fifth Avenue, Suite 2000
                                        Seattle, WA 98104
20                                      (206) 464-7744
                                        marshac@atg.wa.gov
21                                      larondb@atg.wa.gov

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that the foregoing document was electronically filed with the United

3 States District Court using the CM/ECF system. I certify that all participants in the case are

4 registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5 system.

6

7 November 13th, 2017        /s/ Marsha Chien_____
                 MARSHA CHIEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE'S RESPONSE TO GEO'S MOTION    25    ATTORNEY GENERAL OF WASHINGTON
TO DISMISS COMPLAINT               Civil Rights Unit
                        800 Fifth Avenue, Suite 2000
                        Seattle, WA 98104-3176
                        (206) 442-4492