The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

11 | STATE OF WASHINGTON,

                    Plaintiff,

v.

THE GEO GROUP, INC.,

                    Defendant.

NO. 3:17-cv-05806-RJB

**GEO GROUP'S RESPONSE TO THE STATE'S MOTION TO COMPEL**

ORAL ARGUMENT REQUESTED

## INTRODUCTION

Defendant the GEO Group, Inc. ("GEO") opposes Plaintiff the State of Washington's (the "State's") Motion to Compel ("Motion") all documents responsive to the State's First Requests For Production – namely documents subject to review and approval by the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") as well as unredacted versions of GEO-ICE contracts and bids – because doing so would violate GEO's contractual, statutory, and regulatory obligations, and is contrary to the law. Moreover, it appears the State has conceded that ICE review of these documents is required. *See* Dkt. 77 at 4 (Reply to GEO's Response to the State's Motion for Relief) ("Washington . . . will work with ICE to do its part to ensure a timely review [of certain GEO records.]").

The importance of the documents GEO seeks to protect is further demonstrated by the fact that ICE has now written to <u>both</u> parties informing them of ICE's legal obligation to review these

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

documents.  ICE clearly asserts it "need[s] to review" these documents in order to safeguard sensitive immigration information, the privacy of vulnerable detainees, and its own attorney-client and law enforcement privileges.  *Declaration of Andrea L. D'Ambra in Support of GEO's Response to the State's Motion To Compel* ("D'Ambra Decl.") at ¶ 3, Ex. 1 at 3 (June 28, 2018 ICE Letter to Parties).

Many of these arguments have already been laid out in GEO's Motion for a Protective Order, Dkt. 63, where GEO presents a clear history outlining not only these obligations, but also GEO's repeated representations to the State on the nature of these obligations.  GEO has never represented that it is not going to produce documents.  Indeed, GEO has worked very hard to address the State's concerns while still adhering to its statutory, regulatory and contractual obligations as well as its obligations to the Court to adhere to a fulsome and rigorous discovery process.  Frustratingly, despite these efforts and despite the additional time, effort and cost GEO spent providing productions of documents not subject to ICE review, the State refused to negotiate extended deadlines to accommodate ICE's review, and filed a Motion compelling documents despite being fully aware that they were subject to ICE review.  *Washington State Physicians Insurance Exchanges & Association v Fisons*, 122 Wash.2d 299, 342 (1993); Dkt. 71 at 2 ("when advocates attempt to use discovery tools as tactical weapons . . . this results in excessively costly and time consuming activities that are disproportionate to the nature of the case.")  Although the parties had multiple, very open discussions on these issues, the State takes the stance that GEO has provided no clear justification for ICE review, Dkt. 66 at 4, has not identified the categories of documents it is withholding, Dkt. 66 at 2, and does not plan to produce any additional documents, Dkt. 66 at 2-4.  In fact, GEO has repeatedly explained the nature of these contractual and statutory restrictions, D'Ambra Decl. at ¶ 11, Ex. 2 at 2 (June 18 Letter to the State) ("we directed you to several provisions in the contract applicable to these obligations"); identified the categories of documents GEO is withholding subject to ICE review, *id.* (specifically "documents that contain identifiable detainee information, sensitive immigration information, or are otherwise protected under relevant statutes and laws"); and, represented that GEO plans to produce additional

- 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

documents not subject to ICE review should this Court enter the parties' stipulated protective order. Dkt. 73 at 6.   GEO has been forthright on these issues, and is working to quickly produce confidential documents now that the Court has entered the Protective Order, Dkt. 70.

ICE review is necessary because only ICE can determine which categories of information implicate federal security concerns.  Compelling these documents prior to ICE review would not only force GEO to violate federal law, but it would also put sensitive immigration, security, and safety information in jeopardy.  GEO does not ask to be excused from its discovery obligations, only to have the time to comply with its legal obligations to ICE prior to production.

**FACTS**

As part of its obligations as a contracting entity with the Department of Homeland Security, GEO has certain statutory, regulatory, and contractual obligations to restrict the dissemination of certain categories of information and must get express clearance from ICE before disclosing documents related to the detainees in GEO's custody and the procedures around that detention. Dkt. 63 at 3.  GEO has worked diligently to secure ICE's review of the documents.  GEO's counsel has negotiated with Assistant United States Attorney Kristin Johnson, who will coordinate DHS/ICE's review of the documents. *Id.* at 4.  On June 12, 2018, Anne Rose, Associate Legal Advisor from the Office of Principal Legal Advisor, indicated that DHS/ICE will only respond to discovery requests – including subpoenas for deposition testimony and requests to review documents – that explicitly comply with DHS' *Touhy* regulations. *Id.*  On June 21, 2018, upon hearing that the State planned to file a motion to compel these documents, Ms. Rose stressed that ICE is required to review these documents and redact certain confidential information pursuant to statute and regulation and that this remains the case even if there is a protective order in place in this litigation. Dkt. 63 at 8.  In a letter to both parties on June 28, 2018, Ms. Johnson clarified the scope of ICE's review, which applies to 1) "records owned by ICE," 2) records that "contain ICE information," 3) "law enforcement sensitive" or official information documents, 4) documents covered by ICE "attorney client privilege and work product privilege," and, 5) information protecting vulnerable persons, including Violence Against Women Act (VAWA) applicants,

refugees and asylees, Seasonal Agricultural Workers claims, T visas, and U visas.  D'Ambra Decl.

at ¶ 3, Ex. 1 at 2.  ICE also clarified that it "need[s] to review the records prior to disclosure," and

although "ICE is presently engaged in several, substantial, court-ordered productions of

documents," ICE "intends, subject to resource constraints, to allocate resources to the reviews for

the above referenced case."  D'Ambra Decl. at ¶ 4-5, Ex. 1 at 2.

## ARGUMENT

### I.      Legal Standard

"The moving party bears the burden of demonstrating that the information it seeks is

relevant and that the responding party's objections lack merit." *Hancock v. Aetna Life Ins. Co.*, 321

F.R.D. 383, 390 (W.D. Wash. 2017) (citing *Bluestone Innovations LLC v. LG Elecs.*, Inc., No.

C1301770SI (EDL), 2013 WL 6354419, at \*2 (N.D. Ca. Dec. 5, 2013)).  The party opposing

discovery must ultimately show and support why discovery should not be allowed, and holds the

burden of "clarifying, explaining, and supporting its objections."   *Superior Commc'ns v.*

*Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519

F.2d 418, 429 (9th Cir. 1975)).

### II.     GEO Must Withhold Certain Documents Pending ICE Approval Pursuant to Its Contractual, Statutory, and Regulatory Obligations

#### A.      GEO's Contractual, Statutory, and Regulatory Obligations

GEO has outlined the majority of the relevant statutes, contract provisions, and regulations

that require GEO to withhold documents pending ICE approval in its Motion for a Protective Order,

Dkt. 63 at 6-8, and thus provides only a brief summary of some of these key obligations below:

Pursuant to *Touhy*,[1] GEO is not allowed to "produce any document or any material acquired

as part of the performance of that employee's duties or by virtue of that employee's official status,

unless authorized to do so by the Office of the General Counsel . . . ." *See* 6 C.F.R. § 5.44(b).

Federal law also explicitly prohibits GEO, acting on its own volition, from disclosing detainee

information.  *See* 8 C.F.R. § 236.6 ("No person, including . . . any privately operated detention

facility, that houses, maintains, provides services to, or otherwise holds any detainee . . . shall

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–70 (1951).

disclose or otherwise permit to be made public the name of, or other information relating to, such detainee."). Instead, GEO must submit the documents for DHS/ICE review, which is memorialized both in DHS/ICE guidance and the terms of the GEO-ICE Contract. As a result, GEO must cooperate with DHS/ICE to ensure that "no public disclosures regarding this contract [are] made by the Contractor (or any subcontractors) without review and approval of such disclosure." Dkt. 19 at 85. Although the State asserts that Washington has not provided a "clear justification" for withholding documents subject to ICE approval, courts have found *Touhy* regulations are a "clear assertion" of an agency's authority to regulate disclosure of documents. *Stevens v. F.D.I.C.*, No. EDCV 11-00841-MMM, 2011 WL 3925087, at \*5 (C.D. Cal. Aug. 25, 2011) (FDIC's regulations under *Touhy* "appear to be a clear assertion of the lines of FDIC's authority to determine whether to disclose information."). GEO was very transparent about these obligations and has highlighted this issue in the joint scheduling order, its Motion for Joinder and in the Protective Order heavily negotiated with the State. *See* Dkt. 38 at 2; Dkt. 51 at 8; D'Ambra Decl. at ¶ 11, Ex. 3 at 2. (June 13, 2018 Letter to State) ("Negotiations and redlines of section 6.2 and 6.3 of the protective order were focused on this very issue [of ICE approval]").

### B.    Withholding Documents Pending Government Approval Is In Accordance With Ninth Circuit Law

The State argues in its Motion that GEO may disclose documents contrary to its contractual, statutory, and regulatory obligations. What the State neglects to mention is the body of case law that allows federal agencies to review protected documents prior to disclosure in litigation.

Ninth Circuit case law supports federal agency review and approval of disclosure of documents in litigation where the documents are protected from public disclosure pursuant to *Touhy* regulations: "[c]ourts, in construing regulations which control the release of official information, have held that such information should not be compelled to be produced in violation of these regulations." *Am. Sav. Bank v. Painewebber Inc.*, 210 F.R.D. 721, 722 (D. Haw. 2001) (citing cases). Where parties attempt to compel production of protected documents, courts have denied these motions and ordered the moving party to request permission from the regulating agency to use such documents. *See, e.g.*, *Bay Bank v. f/v ORDER OF MAGNITUDE*, No. C05-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5740-RBL, 2007 WL 737344, at *1 (W.D. Wash. Mar. 7, 2007) ("In order to secure information within the scope of 12 C.F.R. 309, a litigant must comply with the agency regulations regarding discovery requests"); *Am. Sav. Bank v. Painewebber Inc.* at 722 (ordering the parties to "request[] permission from [the Office of Thrift Supervision ("OTS")] to use unpublished OTS information in the litigation."). In tandem with these holdings, Courts have sometimes instructed the federal agency to review documents promptly. *Painewebber* at 724 ("The Court directs OTS to make an initial determination as to disclosure as quickly as is practicable.").

Allowing federal agencies to review documents prior to disclosure provides them with the opportunity to assert the privileges they hold. *See* Ex. 1 at 2 (ICE Letter to Parties) ("legal privileges . . . may apply, such as information that is law enforcement sensitive."). This is supported by case law. *See, e.g.*, *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 259 F.R.D. 51, 57 (S.D.N.Y. 2009) (law enforcement privilege); *Painewebber* at 722 (official information privilege). Should the regulating agency not authorize disclosure, *then* the requesting party may seek relief from the Court. *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-CV-5295-MRP MANX, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) ("If the [Federal Reserve Board ("FRB")] and [Office of the Comptroller of the Currency ("OCC")] do not authorize disclosure of the information . . . then the parties can seek the appropriate relief from this Court regarding document production.").

In *Bay Bank v. f/v ORDER OF MAGNITUDE*, defendants sought to compel plaintiff, a bank, to produce examination reports protected by Federal Deposit Insurance Corporation ("FDIC") regulations. No. C05-5740-RBL, 2007 WL 737344 (W.D. Wash. Mar. 7, 2007). The Western District of Washington held that defendants must first attempt to comply with the prescribed *Touhy* procedures promulgated by the FDIC. The *Bay Bank* court also noted that if the FDIC "refuses to produce the information after completion of this process, the litigant may move to compel production by the *agency*." *Id.* at *1; (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 571 (D. Kan. 1994)) (emphasis supplied by *Bay Bank* court). DHS and ICE have promulgated *Touhy* regulations limiting the disclosure of certain categories of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

documents.  Similarly to the FDIC in *Bay Bank*, Assistant United State Attorney Kristin Johnson explained in her letter that DHS and ICE require litigants to comply with prescribed procedures to obtain information: "The regulations specify procedural steps by which a party in litigation is to request ICE information, whether in the possession of ICE or some third party, and the standards that DHS will apply in assessing the propriety of any releases."  D'Ambra Decl. at ¶ 5, Ex. 1 at 2. As a result, the State has no basis to compel protected DHS/ICE documents from GEO at this time, and must instead adhere to the *Touhy* process.  Furthermore, should DHS/ICE refuse to produce certain information in whole or in part, the State must challenge DHS/ICE, not GEO, on the basis for DHS/ICE's refusal.

Even where courts have ordered disclosure contrary to *Touhy* regulations, they have done so under a narrow exception.  In *Newton v. Am. Debt Servs., Inc.*, the court granted plaintiff's motion to compel FDIC and OCC documents, despite FDIC and OCC regulations protecting disclosure.  No. 11-CV-03228-EMC(JCS), 2014 WL 2452743 (N.D. Cal. May 13, 2014).  The *Newton* court recognized "that there are authorities to support the position that a litigant must comply with agency regulations before seeking the court's assistance," but "[u]nlike the agencies in several of the above-cited cases, the agencies here have not asserted any privileges *or otherwise stated a position on the disclosure of the requested documents*."  *Id.* at \*6  (emphasis supplied). The *Newton* court cites to *Painewebber*, in which the OTS filed a letter with the court, and *In re Countrywide Fin. Corp. Sec. Litig.*, in which the FRB and OCC wrote to Defendants, for this position.  The facts in this case are more in line with the *Painewebber* and *In re Countrywide Fin. Corp. Sec. Litig.* cases than the *Newton* case.  Whereas in *Newton* the FDIC and OCC did not write to the parties or the Court on this issue, here, ICE has "stated a position on the disclosure of the requested documents," by drafting a letter to both parties.  D'Ambra Decl. at ¶ 2, Ex. 1 at 1-2 ("We write to clarify the government's position . . . ICE will need to review the records prior to disclosure in order to make any redactions mandated by law and apply any applicable privileges.").

Therefore, because Ninth Circuit case law supports federal agency review and approval of disclosure of documents pursuant to *Touhy*, and because DHS and ICE have asserted a position of

1

2

3

4

5

nondisclosure in accordance with *Newton*, the State's Motion to compel protected DHS/ICE documents prior to DHS/ICE review should be denied at this time.  GEO further requests that the Court enter an Order requiring the State to pursue these documents pursuant to ICE's *Touhy* regulations.

6

**C.      The Scope of Documents GEO Is Withholding Subject to ICE Review Is In Compliance With Its Obligations And Is Not Overbroad**

7

8

9

10

11

12

13

14

15

16

17

18

19

The State alleges that the scope of documents GEO is withholding for ICE review is overbroad because it goes beyond the "fairly limited" universe of documents ICE would deem confidential and is not "tethered to any purported contractual, statutory, policy, or directive (sic)." *See* Dkt. 66 at 7.  GEO disagrees that the scope of documents GEO is withholding from ICE review is overbroad.  However, GEO notes that the State has appropriately articulated the two categories of documents GEO is withholding subject to ICE approval.  This includes "detainee records," as defined as any document containing "[i]nformation concerning the individual's personal, criminal and medical history, behavior, and activities while in custody," (Dkt. 19 at 51; Dkt. 66 at 7-8); and "sensitive information" defined as "[a]ny information which could affect the national interest, law enforcement activities, the conduct of federal programs, or the privacy to which individuals are entitled under Title 5, U.S. Code, section 552a."  Dkt 19 at 57; Dkt. 66 at 8.  GEO has provided documents to ICE for its review based on these definitions, as well as the statutes, regulations, and other contractual provisions outlined above, and in ICE's letter to the parties.

20

21

22

23

24

25

26

27

28

Although the State erroneously believes that these categories of protected information are "fairly limited," this is not true; in fact the majority of the documents responsive to the State's requests fall under these two categories.  In addition, ICE rightly states that "[r]ecords that are owned or created by contractors, such as GEO, or records that solely contain contractor information, do not need to be reviewed by ICE, except to the extent such records contain ICE information."  Ex. 1 at 1.  The issue is that the majority of the information that the State seeks contains ICE information, including particularized, non-anonymized information on ICE detainees. For example, the State argues that GEO is withholding documents showing 1) "when detainee workers generally start and end shift work"; 2) "the numbers of detainee workers who GEO paid

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on any given day for work performed in the VWP"; 3) "the hours detainees have worked in the VWP"; and, 4) "information regarding non-monetary payment of detainees for their labor."  Dkt. 66 at 6.  The vast majority of documents GEO possesses showing this information contains extensive individualized information such as Alien numbers, health information, religious affiliation, and individualized detainee correspondence and complaints.  D'Ambra Decl. at ¶ 10. As GEO has informed the State, only a small percentage of documents reflecting these four categories of information contains the summary, aggregate information that the State desires. D'Ambra Decl. at ¶ 10, Ex. 2 at 1-2 ("you stated that you are not seeking particularized information about detainees, but overall or summary information about detainees.  However, . . . there are few documents that exist that have non-specific information about detainees, detainee work, or the voluntary work program, many of which were already produced to you in our first production."). This is simply the nature of GEO's documents related to ICE detainees and detainee work at the Northwest Detention Center.  *See* Fed. R. Civ. P. 34(a)(1) (Parties are not required to create documents in response to productions requests, but need only produce existing responsive documents that are within their "possession, custody or control.").  To the extent these documents do not appear to contain particularized detainee or sensitive information, GEO notes that it has already produced documents responsive to these four categories of information in this litigation in both its first production, and anticipates it will continue to produce these documents.  D'Ambra Decl. at ¶ 9.

**III.      GEO May Withhold Contracts and Modifications Subject to ICE Approval**

As GEO has previously represented, GEO-ICE contracts and modifications are currently being withheld pursuant to ICE review and approval in accordance with its legal and contractual obligations, as they may contain detainee or sensitive information subject to ICE review.  D'Ambra Decl. at ¶ 11, Ex. 2 at 3 (GEO's June 18 Letter to the State) ("GEO plans to produce relevant non-privileged copies of all bids and contracts between GEO and ICE responsive to RFP No. 8 to the State after review and approval by ICE.").

The same holds true for the ICE-GEO contract, which has been filed in redacted form at Dkt. 19 – GEO cannot disclose this contract to the State unless and until it is cleared by ICE.  ICE will need to review these documents to determine whether redactions are appropriate to protect DHS/ICE's government interests in nondisclosure.  Ex. 1 at 2 ("legal privileges . . . may prevent disclosure of certain information.").  Should the State seek to challenge ICE's decision, this Motion is not the appropriate remedy.  *See Bay Bank v. f/v ORDER OF MAGNITUDE* at *1 ("If the agency refuses to produce the information after completion of this process, the litigant may move to compel production by the *agency*.").

Although GEO does not feel it has any obligation to respond to the State's Motion on this issue any further, GEO notes that the State cites to *Detention Watch Network v. U.S. Immigration & Customs Enforcement*, 215 F. Supp. 3d 256 (S.D.N.Y. 2016) in support of disclosure of an unredacted version of the ICE-GEO contract.  While GEO respectfully disagrees with the outcome in that case, GEO further notes that it does not bind this court.  Moreover, *Detention Watch* did not concern the need for ICE review to protect *DHS/ICE's* government interests in nondisclosure, and thus is inapplicable to the current circumstances.  Ex. 1 at 2.  As a result, *Detention Watch*'s persuasive value is also low.  In any event, that case did not address the contract at issue here.

**IV.     The State's Motion To Compel <u>ALL</u> Documents Is Unreasonable And Contrary To The Federal Rules**

The State request that this Court enter an order for GEO to produce "all" documents responsive to the State's First Requests "within one week," is unreasonable.  First, the close of fact discovery is currently almost three months away.  Second, the Federal Rules do not require such an unreasonable timeframe for production – only that the parties work diligently to provide documents within the time period allotted for discovery.  This is particularly true in cases where there are significant volumes of documents to be collected, processed, culled and produced, parties often must provide documents on a rolling basis.  *See* Fed. R. Civ. P. 34, Advisory Committee Notes to 2015 Amendments (noting that it may be "necessary" for a party "to make the production in stages"); *see also Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 573 (D. Utah 2012) ("[A] 'rolling production' is not unexpected in a very large case . . . Given certain circumstances it may

1
2
be impractical to think that a party should be expected to produce the entire galaxy of relevant

documents in one or two weeks or even after one or two requests for production.").

3
4
A Protective Order was entered in this case less than one week ago, on June 26, 2018.  Dkt.

70.  GEO is currently conducting a time-consuming and costly review to find documents that would
5
6
not be subject to ICE review, but anticipates it will produce documents pursuant to the protective

order shortly.  *See Miller v. Monroe Sch. Dist.*, No. C14-1946-JCC, 2015 WL 12696531, at \*2
7
8
(W.D. Wash. Aug. 10, 2015) (Defendants "provided a persuasive explanation for their rate of

production, citing the need to comb through the emails to ensure that they are indeed public records
9
10
before producing them.").

11
Moreover, the State's timeframe is inequitable in light of the State's own deficient
12
productions to date.  Although the State has represented that it does not have a large quantity of
13
documents it can produce (which GEO disputes because the State has inappropriately narrowed the
14
scope of its discovery efforts), it admits that it has still not produced all documents responsive to
15
GEO's First Set of Requests even within this narrower universe.  The State should not be able to
16
ask GEO to do what it has not done itself.

17
Rather than conform to an unreasonable production timeframe, GEO would instead request
18
that the Court allow GEO to continue to produce documents in a reasonable time frame taking into
19
account GEO's obligations to ICE.  As ICE approves documents for disclosure, GEO anticipates
20
that it will apply required redactions, and thereafter begin rolling out ICE documents to the State.

21
GEO is willing to agree to reasonable extensions to all case deadlines to ensure the State is not

prejudiced by any delays caused by ICE's review.
22
23
**CONCLUSION**

Although GEO appreciates the State's desire to get the documents requested in its
24
discovery (as it too is eager to have its discovery fully answered), GEO has been very transparent
25
about its obligations with respect to ICE.  This is not a case where the producing party is being
26
obstructionist or dilatory, rather GEO merely seeks to comply with its legal obligations to ICE – a
27
28
stance recognized by the 9th Circuit as being valid and reasonable.  Moreover, the State now

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

appears to agree that ICE must review at least some portion of GEO's responsive records.  Dkt. 77 at 4.  For the above reasons, GEO requests that the Court deny the State's Motion compelling all documents responsive to the State's First Requests and permit GEO to submit documents to ICE as required.  GEO also requests that the Court enter an Order requiring the State to pursue any documents eventually withheld or redacted in accordance with DHS/ICE's *Touhy* regulations.

1

Dated: July 2, 2018

**NORTON ROSE FULBRIGHT US LLP**

2

3

/s/ *Andrea L. D'Ambra*_____

Andrea L. D'Ambra

4

1301 Avenue of the Americas
New York, NY 10019

5

Telephone: (212) 318-3000
Facsimile: (212) 318-3400

6

andrea.dambra@nortonrosefulbright.com

7

**NORTON ROSE FULBRIGHT US LLP**

8

Charles A. Deacon
300 Convent St.

9

San Antonio, Texas 78205
Telephone: (210) 270-7133

10

Facsimile: (210) 270-7205

11

charlie.deacon@nortonrosefulbright.com

12

**NORTON ROSE FULBRIGHT US LLP**

Mark Emery

13

799 9th Street NW, Suite 1000
Washington, DC 20001-4501

14

Telephone: (202) 662-0210

15

Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

16

**III BRANCHES LAW PLLC**

17

Joan K. Mell, WSBA #21319
1019 Regents Blvd. Ste. 204

18

Fircrest, WA 98466

19

253-566-2510 (P)
281-664-4643 (F)

20

joan@3brancheslaw.com

21

**ATTORNEYS FOR DEFENDANT**
**THE GEO GROUP, INC.**

22

23

24

25

26

27

28

- 13 -

1

**CERTIFICATE OF SERVICE**

2

I, Susana Medeiros, hereby certify as follows:

3

I am over the age of 18, a resident of New York County, and not a party to the above

4

action.  On July 2, 2018, I electronically served the above Response to the State's Motion to

5

Compel via Email to the following:

6

7
Office of the Attorney General
La Rond Baker, WSBA No. 43610

8
Marsha Chien, WSBA No. 47020

9
800 Fifth Avenue, Suite 2000
Seattle, WA 98104

10
LaRondB@atg.wa.gov

11
MarshaC@atg.wa.gov

12
Norton Rose Fulbright US LLP

13
Charles A. Deacon (Pro Hac Vice)
300 Convent St.

14
San Antonio, TX 78205

15
(210)-270-7133
charlie.deacon@nortonrosefulbright.com

16

17
Norton Rose Fulbright US LLP
Mark Emery (Pro Hac Vice)

18
799 9th St. NW, Suite 1000

19
Washington, DC 20001-4501
(202)-662-0210

20
mark.emery@nortonrosefulbright.com

21
III Branches Law, PLLC

22
Joan K. Mell, WSBA #21319
1019 Regents Blvd. Ste. 204

23
Fircrest, WA 98466

24
253-566-2510 (P)
281-664-4643 (F)

25
joan@3brancheslaw.com

26

27
I certify under penalty of perjury under the laws of the State of Washington that the above

28
information is true and correct.

- 14 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 2nd day of July, 2018 at New York, New York.

_____

Susana Medeiros