The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:17-cv-05806-RJB<br><br>STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER |

## I.   INTRODUCTION

Since January, GEO has had an obligation to produce responsive documents regarding the operation, finances, and profits of the Voluntary Work Program ("VWP") at the Northwest Detention Center ("NWDC ")—including such basic information as GEO's bids, unredacted ICE-GEO contract and its modifications, and information about how many hours and in what capacities detainees have worked at NWDC. The Court should deny GEO's Motion for a Protective Order to indefinitely postpone the production of documents GEO has identified as responsive to Washington's discovery requests, but is withholding to enable third-party review by ICE. GEO fails to show good cause for withholding 20,000 responsive documents for a review that even ICE has advised the parties it need not conduct prior to production. To the extent there is a limited universe of documents responsive to Washington's discovery requests that ICE legitimately needs to review before production, Washington does not object, and the overbroad protective order GEO seeks is unnecessary. However, the Court should order that (1)

any such review and subsequent production of responsive documents to Washington occur within 30 days, (2) that a log be produced simultaneously, identifying any documents redacted or withheld, and (3) that the Court monitor this process for efficiency and compliance.

## II.    FACTUAL BACKGROUND

On September 20, 2017, Washington sued GEO, a private, for-profit company that operates the Northwest Detention Center ("NWDC") in Tacoma, Washington, for failure to pay minimum wage to detainee workers and for unjust enrichment. ECF 1-1. GEO removed the matter to this Court. ECF 32.

Washington issued its first set of discovery requests on January 5, 2018, requesting the GEO-ICE contracts, GEO's bids for services at NWDC, GEO's Voluntary Work Program ("VWP") policies at NWDC, and documents showing hours worked by detainee workers in the VWP. ECF 67-1 at 23-25; Baker Declaration in Support of Washington's Response to the GEO Group's Motion for Protective Order ("Baker Decl. ISO Resp. to Mot. for Prot. Ord.") at 1, Ex. 1. GEO served written responses on February 5, 2018, ECF 67-1 at 34, but did not produce any documents to Washington until May 31, 2018, making a limited production of 495 responsive documents. ECF 65 at 3. Washington served its second set of discovery requests on June 12, 2018, requesting financial information from GEO, information regarding NWDC operations including the VWP, and documents showing aggregate information regarding detainee worker participation and pay in the VWP. ECF 73-5; ECF 73-6. GEO has not yet answered Washington's second set of discovery requests. ECF 73 at 2.

On June 21, 2018, Washington filed a Motion to Compel the production of documents responsive to Washington's First Request for Production from GEO, ECF 66, because GEO was withholding from production approximately 20,000 responsive documents it claims U.S Immigrations and Customs Enforcement ("ICE") must review and approve prior to their production to Washington. *See* ECF 67 at 2 (preparing 5,000 documents to send in the next week; 15,000 documents later); ECF 67-1 at 9 ("we plan to provide over 5,000 documents to ICE this

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

week") In discovery conferences, Washington demanded a legal basis for GEO's claim that ICE needed to review all remaining responsive documents prior to GEO producing them to Washington. ECF 67-1 at 14. GEO answered Washington's request generally but did not provide Washington with reference to specific provisions in any contract, statute, policy, or directive. ECF 67-1 at 19-21. GEO also informed Washington that as of June 13, 2018, it had not provided any documents to ICE for review and planned "to provide over 5,000 documents to ICE" that week. ECF 67-1 at 9. GEO also confirmed that GEO did not know when ICE would complete its review or when Washington would receive the responsive documents. ECF 67 at 2-3; ECF 67-1 at 18. Without any deadline for said pre-production review, and with the acknowledgment that they had not yet even provided any documents to ICE to get the review started, Washington moved for an order compelling GEO to produce responsive documents to Washington. ECF 66. Washington concurrently filed a Motion for Relief from Deadline, to seek a short continuance of discovery-related deadlines as a result of the delay in discovery. ECF 72. On the same day, GEO filed the present Motion for Protective Order seeking permission from the Court to delay its entire, remaining document production until such time as the ICE review had occurred. ECF 63.

On June 28, 2018, ICE's legal representative advised the parties that ICE did not need to review all responsive documents prior to their production. "ICE only needs to review records that are owned by ICE, or that contain ICE information. Records that are owned or created by contractors, such as GEO, or records that solely contain contractor information, do not need to be reviewed by ICE, except to the extent such records contain ICE information." ECF 78 at 5. The letter also identified a limited category of documents that ICE claims are not subject to disclosure. *Id. at 6.* Finally, ICE requested a simple modification of the parties' Stipulated Protective Order to limit the need for redaction of any ICE documents containing information revealing the identity of detainees, as protected by the Privacy Act. ECF 78 at 5-7. The letter does not assert that ICE must review all responsive documents prior to their production.

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

For those documents ICE must review, ICE indicates willingness to do so "within a reasonable time frame," but does not specify what that time frame will be. *Id.* at 7.

### III.   ARGUMENT

#### A.   Legal Standard

Federal Rule of Civil Procedure 26(b) governs the scope and limits of discovery and assures that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). This gives district courts "broad discretion to determine the scope of discovery." *Cabell v. Zorro Productions, Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013). "The Court in which the action is pending has the authority to 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[,]'" but only upon a showing of good cause. *Id.* (quoting Fed. R. Civ. Pro. 26(c)(1)). *See also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). To do so the moving party bears the burden of showing that "specific prejudice or harm will result if no protective order is granted." *Id.* Broad assertions of harm untethered to specific facts are insufficient to meet Federal Rule 26(c)'s showing to support a request for a protective order. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (establishing that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test). "Conclusory or speculative statements about the need for a protective order and the harm that would be suffered without one are insufficient." *Sims v. Lakeside Sch.*, No. C06-1412RSM, 2007 WL 4219347, at *1 (W.D. Wash. 2007) (denying the defendant's request to prevent the "disclosure of non-party employee personnel information, and defendant's proprietary financial information" because the "defendant ha[d] failed to provide concrete examples or facts to show the harm that would result if such information [wa]s disseminated to the public"). *See also Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Where protective order disputes involve conflicting interests, the Court balances the needs of the party seeking disclosures against the risk of injury that may result if

THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the requested discovery is permitted. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

**B. GEO Fails to Show Good Cause Why a Protective Order Should Issue, Allowing ICE to Review and Approve the Production of Non-Privileged, Responsive GEO Documents That Are Unlikely to Contain ICE Information**

GEO is withholding over 20,000 documents responsive to Washington's First Requests for Production that seek GEO documents, most of which are unlikely to contain ICE information. ECF 67-1 at 23-35 (Washington's First RFPs). GEO provides no basis for withholding such responsive GEO documents from production pending ICE's review. GEO cannot show good cause for the protective order it seeks, as it cannot show a basis for withholding these documents and requiring ICE's review of them, nor can it articulate any specific harm that it will suffer due to disclosure of its own documents. *See Avocent Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 574, 579 (W.D. Wash. 2007) (denying defendants' motion for a protective order because they did not show good cause as "Defendants only make the vague argument that potentially devastating consequences to Defendants' businesses would result"). Thus, GEO fails to establish good cause for the overbroad protective order that it seeks.

Washington seeks by its First Requests for Production, and its motion to compel regarding the same, the production of:

- Unredacted GEO-ICE contracts and GEO's bids for detention services provided at NWDC;
- GEO's policies regarding the VWP at the NWDC;
- Documents showing how many hours detainee-workers have worked in the VWP at NWDC;
- Documents showing the process by which detainee workers are paid for participating in the VWP;
- Documents and communications related to the VWP and ICE's Performance Based National Standard 5.8;
- Documents regarding the process by which detainee workers are paid for participating in, and terminated from, the VWP; and
- Documents regarding how detainee workers are reviewed.

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  *See* ECF 66 at 2-3; Baker Decl., Ex. F., ECF 67-1 at 28-33. Washington's second discovery
2  requests seek documents and information from GEO related to its operation of the NWDC and
3  the VWP, including, aggregate information about detainee worker hours, shifts, and
4  compensation; the profits of GEO, the NWDC, and the VWP; training materials; schedules of
5  VWP jobs; and detainee complaints about the VWP. *See* ECF 73-5 (State of Washington's
6  Second Interrogatories to Defendant The GEO Group, Inc.); ECF 73-6 (State of Washington's
7  Second Requests for Production to Defendant The GEO Group, Inc.). GEO fails to explain why
8  ICE needs to review and approve the production of GEO documents responsive to these requests
9  where those documents do not contain ICE information.

10     ICE does not claim that it needs to review all of GEO's responsive documents related to
11 the operation of the NWDC prior to GEO producing them to Washington. Instead, ICE has
12 expressly acknowledged it does not need to review "[r]ecords that are owned or created by
13 contractors, such as GEO, or records that solely contain contractor information, . . . except to the
14 extent such records contain ICE information." ECF 78 at 5. Thus, even ICE confirms that it need
15 not review "documents pertaining to (1) when detainee workers generally start and end shift
16 work in the VWP; (2) the numbers of detainee workers whom GEO paid on any given day for
17 work performed in the VWP; (3) the hours detainees have worked in the VWP; and (4)
18 information regarding non-monetary payment of detainees for their labor." ECF 78 at 5-6 (noting
19 categories of documents not needing ICE review). These categories of documents encompass
20 much of what's at issue in Washington's motion to compel documents responsive to its First
21 Requests for Production, and Washington's second discovery requests. As ICE makes plain,
22 GEO is free to produce its own records. *See* ECF 78 at 6 (noting that documents created and
23 owned by GEO "would have been created solely based on GEO information while detainees
24 were housed at GEO's facility, and thus would not seem necessary for ICE to review").
25     Despite this, GEO is withholding over 20,000 documents for ICE review. ECF 67 at 2.
26 GEO has not produced a log of withheld documents, but describes them as including

"modifications of GEO's contract with ICE concerning the NWDC, commissary reports, documents containing information regarding detainee identification and immigration status, and other documents that GEO believes to contain sensitive information protected under the GEO-ICE contract and the corresponding rules, regulations, and statutes." ECF 63 at 4. GEO fails to provide any details or a log of what it is withholding under the broad category of "sensitive information protected under the GEO-ICE contract," explain why ICE review would be necessary for documents such as commissary reports that GEO itself created, or why any withholding is appropriate of the ICE-GEO contract or contract modifications which comprises the ICE-GEO agreement, not ICE information. And, with the exception of detainee identification and immigration status information – to the extent that Washington's discovery requests even ask for such information – the above information would be protected by a modification to the Protective Order. *See accord* ECF 78 at 7. (ICE Letter).

**C.    GEO Overstates the Legal and Contractual Obligations it Claims Prevent it From Producing Responsive Documents, and Few, if Any, Responsive Documents Fall Within the Categories ICE Claims Are Protected From Disclosure**

GEO claims good cause exists for a protective order because it is "trapped between two diametrically opposed duties: (1) its discovery obligations in the above action, and (2) its contractual, statutory, and regulatory obligations to safeguard ICE documents." ECF 63 at 1-2. However, GEO overstates its alleged "rock and a hard spot." *Id.* at 8.

**1.    No Statute, Regulation, Directive or Contract Provision Cited by GEO Bars it From Providing Washington With Responsive Documents**

*First*, GEO's argument that 8 C.F.R. § 236.6 bars it from providing responsive documents in this matter fails. ECF 63 at 6-7. Section 236.6 bars *public* disclosure of "the name of, or other information relating to, . . . detainee[s]." *Id.* Washington does not challenge GEO's obligation to protect detainee workers' personal information from such disclosure. Indeed, Washington also seeks to protect detainee workers' personal identity and information from public disclosure in this matter. *See* ECF 70 (Stipulated Protective Order); Baker Decl. ISO Resp.

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  to Mot. for Prot. Ord. at 2. Nor do Washington's requests seek information about individual
2  detainees or their immigration status. *See* ECF 67-1 at 23-35; Baker Decl. ISO Resp. to Mot. for
3  Prot. Ord., Ex. 1. Washington's requests are targeted to GEO's information about the VWP, the
4  financial impact of the VWP on GEO's profits, and types of work performed in the NWDC and
5  seek aggregated information. *See id*. And to the extent GEO claims that all documents related to
6  the VWP are subject to 8 C.F.R. § 236.6 even if they do not contain detainee identifying
7  information, that argument is untenable. The authorities upon which GEO relies do not provide
8  to the contrary. *See Am. Sav. Bank v. Painewebber, Inc.*, 210 F.R.D. 721, 722-23 (D. Haw. 2001).
9  GEO may protect any responsive detainee information subject to 8 C.F.R § 236.6, and
10 simultaneously satisfy its discovery obligations by entering into a modified stipulated protective
11 order, as requested by ICE. *See* ECF 78 at 7; Baker Decl. ISO Resp. to Mot. for Prot. Ord. at 1-
12 2.

13         *Second*, GEO cites DHS Management Directive 11042.1, which governs "sensitive but
14 unclassified information" (designated "For Official Use Only") to suggest it must "cooperate
15 with DHS/ICE to ensure that 'no public disclosures regarding this contract [are] made by the
16 Contractor (or any subcontractors) without review and approval of such disclosure.'" ECF 64-2
17 at 2; ECF 63 at 7 (citing ECF 19 at 85). However, GEO has already filed a GEO-ICE contract
18 publicly in this case, and it contains no marking indicating it contains FOUO information, as
19 provided by the Directive. *See* ECF 19 at 5-373; ECF 64-2 at 7-8. Neither has GEO stated that,
20 or identified any, FOUO information called for by Washington's requests. To the extent any
21 such "sensitive but unclassified information" is implicated, it too may be protected by entry into
22 a modified stipulated protective order, as requested by ICE to "protect[] against the disclosure
23 of personally identifiable information covered by the Privacy Act, 5 U.S.C. § 552(a)." *See* ECF
24 78 at 7; Baker Decl. ISO Resp. to Mot. for Prot. Ord. at 1—2.

25         *Third*, the GEO-ICE contract provisions GEO cites do not bar the disclosure of
26 responsive documents nor require ICE review prior to production. The provision GEO cites

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

stating that "[a]ll records will remain the property of the U.S. Government" makes plain that the records it refers to are records "the Government will store," not records GEO maintains. ECF 63 at 6 (citing ECF 19 at 49.) Similarly, the provision GEO cites stating that "[t]he Government may review 100% of the documents . . . at any point during the period of performance" makes plain that such review right is for the purposes of ensuring GEO's compliance with performance standards, not reviewing documents prior to production in discovery. ECF 63 at 6 (citing ECF 19 at 125). Finally, GEO cites a provision regarding "[c]riminal penalties for . . . improperly handing or releasing federal records," and points to 18 U.S.C. § 2071(a), but that statute only provides for fines or imprisonment for removing records filed with a federal court or "in any public office," of which GEO is neither. ECF 63 at 8 (citing ECF 19 at 50). Thus, the GEO-ICE Contract does not provide good cause for the protective order GEO seeks.

### 2. *Touhy* Does Not Bar GEO From Producing Documents to Washington

GEO argues that "[p]ursuant to *Touhy*, GEO is not allowed to 'produce any document or any material acquired as part of the performance of [its] duties or by virtue of [its] official status, unless authorized to do so by the Office of the General Counsel." ECF 63 at 6. Assuming arguendo that GEO is correct and that DHS defines its contractors as "employees" for purposes of its *Touhy* regulations, *Touhy* procedures would only apply to ICE documents and information in GEO's possession, and ICE agrees. ECF 78 at 5-6. As ICE states, GEO is free to produce its own records without prior review and approval. Such information is not "official information" governed by *Touhy* regulations, 6 C.F.R. 5.41(e), nor a shield for GEO's compliance with its discovery obligations.[1]

---

[1] While ICE asserts *Touhy* for itself, Washington reserves the right to challenge any documents or information withheld by ICE from Washington. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (noting that *Touhy* regulations does not "authorize federal agency heads to withhold evidence" sought pursuant to the authority and power of a federal court). *See also Nat. Res. Def. Council v. Zinke*, No, 105CV01207LJOEPG, 2018 WL 2382798, at *2 (E.D. Cal. May 25, 2018); *Roy v. Cty. of Los Angeles*, N. CV1209012ABFFMX, 20185 WL 914773, at *11 (C.D. Cal. Feb. 7, 2018) (noting that "[c]ritically, the Ninth

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

3. **The Particular Immigration or Privileged Documents ICE Asserts Are Protected From Disclosure Are Not Likely Implicated by Washington's Requests**

ICE identifies "several categories of records" it claims cannot be released, even under the terms of a Stipulated Protective Order. ECF 78 at 6. These categories include detainee immigration documents and records related to: petitions brought under the Violence Against Women Act; trafficking victim T Visa applications; crime victim U Visa applications; claims for Legalization/Seasonal Agricultural Workers; asylum and refugee applications. *Id.* In addition, ICE states that it needs to review for legal privileges and information that is law enforcement sensitive. *Id.* However, Washington has not requested documents that seek detainee immigration files or privileged information, and any such documents tangentially implicated by its requests should be limited. Thus, ICE's claims that certain documents are protected from disclosure do not provide good cause for GEO's withholding of 20,000 documents.

D. **To the Extent Any Responsive Documents Contain ICE Information Over Which ICE Asserts a Right to Review, The Court Should Order Said Review and Production to Be Completed Within 30 Days, Together with Logs of Any Documents Redacted or Withheld**

To the extent there are, in fact, responsive documents to Washington's discovery requests over which ICE asserts a legitimate right of review, Washington does not object to such review, and the overbroad protective order GEO seeks is unnecessary. However, Washington requests that the Court order any such review and subsequent production of responsive documents to Washington within 30 days and requests that the Court monitor the process for compliance and efficiency. Washington further requests that the Court order the simultaneous production of a log identifying any documents that may be redacted or withheld following ICE's review so that Washington may have the information it needs to review and challenge, and the Court to rule on, the propriety of any such redactions or withholdings, to the extent necessary. This process

---

Circuit held that section 301 does not authorize agency heads to withhold documents or testimony from federal courts").

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  will mitigate Washington's harm in the delay in receiving responsive documents, and the harm
2  to the parties from the delay in the completion of discovery and of the case schedule. It will also
3  eliminate any purported harm to non-parties. This proposal fully addresses GEO's concerns
4  regarding its "legal liabilities, financial harm, and [the protection of] privacy rights and the safety
5  and security of personnel and detainees[.]"[2] ECF 63 at 2.

6  Washington further agrees with ICE's request that the parties enter into a revised
7  Stipulated Protective Order that "protects against the disclosure of personally identifiable
8  information covered by the Privacy Act, 5 U.S.C. § 552(a), which includes any data that could
9  potentially identify a specific individual, or any information that can be used to distinguish one
10 person from another and can be used for de-anonymizing anonymous data," to "decrease the
11 number of redactions necessary and allow for a faster turnaround for [ICE's] review." ECF 78
12 at 7. Washington has already proposed a provision along these lines in the course of
13 negotiatiating the Stipulated Protective Order with GEO, as follows:

> Personally identifying information of individuals who are or were detained at the Northwest Detention Center. To the extent information about individuals who are or were detained at the Northwest Detention Center will be included in pleadings and declarations, the parties agree to refer to those individuals by the initials of their first and last names only (middle initials optional except when needed to differentiate between people). Deposition transcripts and exhibits shall be redacted to include only initials and not full names;

Baker Decl. ISO Resp. to Mot. for Prot. Ord. at 1-2. However, counsel for GEO rejected this proposal. *Id*. at 2.

---

[2] Additionally, any documents produced to Washington following ICE review, and pursuant to an order of the Court entered here, would be exempt from the Public Records Act. *See* Wash. Rev. Code § 42.56.290.

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP'S MOTION FOR A
PROTECTIVE ORDER

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## IV. CONCLUSION

For the foregoing reasons, the Court should deny GEO's request for a protective order as unnecessary, and order that (1) any review of documents by ICE, and subsequent production of responsive documents to Washington, occur within 30 days, (2) that a log be produced simultaneously, identifying any documents redacted or withheld, and (3) that the Court monitor this process for efficiency and compliance.

Dated this 2nd day of July, 2018.

Respectfully submitted,

BOB FERGUSON
Attorney General of Washington

s/ *La Rond Baker*
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
larondb@atg.wa.gov
marshac@atg.wa.gov
andreab3@atg.wa.gov

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

2nd day of July, 2018

                                                              s/ *La Rond Baker*
                                                              La Rond Baker

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP'S MOTION FOR A PROTECTIVE ORDER — 13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744