The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP INC.'S MOTION TO COMPEL |
| THE GEO GROUP, INC., | |
| Defendant. | |

## I.    INTRODUCTION

Instead of issuing subpoenas directly to the Department of Labor & Industries ("L&I"), the Department of Corrections ("DOC"), and the Department of Social and Health Services ("DSHS"), the agencies with custody and control of documents that The GEO Group, Inc. ("GEO") seeks in discovery, GEO asks this Court to compel the Attorney General's office ("AGO") to search the files of the *lawyers* for those state agencies. Further, GEO seeks an order compelling counsel for the State of Washington ("State" or "Washington") to identify the specific custodian of each document produced even though such information is not kept in Washington's usual course of business. Neither request is supported by law.

## II.    FACTUAL BACKGROUND

GEO served its first set of discovery, including requests for production of documents, on January 11, 2018. Baker Decl. ¶ 3, Ex. A. Washington responded to GEO's discovery requests on February 12, 2018. *Id*. at ¶ 4, Ex. B. In preparing its response, Washington searched the files

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   of the AGO's Civil Rights Unit ("CRU"), which initated this investigation and litigation; the

2   Public Affairs Unit, the unit that coordinates press coverage regarding this litigation; the

3   executive leadership team members, who provided final approval of the litigation, as well as the

4   files of all Assistant Attorneys General who CRU conferred with prior to filing this litigation.

5   Baker Decl. ¶ 5. To the extent GEO's requests required a search of other state agencies'

6   documents, Washington objected that such materals are irrelevant to GEO's compliance with

7   state law, and that in any event lawyers in CRU did not have control over separate state agencies

8   and advised GEO to serve subpoenas upon them directly for information, documents or

9   testimony. Baker Decl. ¶ 4, Ex. B.

10   With respect to the form of document production, in March 2018, during a telephonic

11   conference, GEO's local counsel informed Washington that GEO preferred that Washington

12   produce responsive documents in a PDF format. Baker Decl. ¶ 6. On April 10, 2018, Washington

13   complied with GEO's request.  Baker Decl. ¶ 7, Ex. C. Three weeks later, on April 27, 2018,

14   GEO's New York-based counsel requested that Washington reproduce documents according to

15   that law firm's preferred production protocols. Baker Decl. ¶ 8. Washington agreed inasmuch as

16   Washington's systems of maintaining documents in the ordinary course of business allowed it

17   to do so. *Id.*

18   On July 2, 2018, GEO served its second set of discovery requests. GEO again sought

19   information from non-party state agencies. Baker Decl. ¶ 9, Ex. D. Not only did GEO again rely

20   on Rule 34, which governs *party* discovery, GEO's new requests were far-reaching and broad.

21   *See id.* (requesting information and documents as to "how the State calculates staffing needs for

22   each Washington Department of Corrections facility," the "compensation of all Washington

23   State inmates or detainees for their participation in any work program in any state facility," and

24   the "financial transactions . . . between Washington and any contractor that provides detention

25   or private correctional or detention services").

26

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

2

1           In an August 20, 2018 letter, AGO again confirmed that it did not have state agency

2   materials from L&I, DOC, or DSHS in its possession, custody, or control. Baker Decl. ¶ 11, Ex.

3   F. Likewise, on August 22, 2018, Washington addressed GEO's concerns about metadata and

4   provided GEO with a spreadsheet with as much custodian information as was available. St. John

5   Decl. ¶ 7.

6                          **III.    ARGUMENT**

7           GEO is not entitled to the requested documents through party discovery. In the present

8   case, Washington seeks a declaration that GEO comply with its laws and disgorge unjust profits.

9   When the State sues as *parens patriae*, the State does not make every government entity in the

10   state a party to that lawsuit. While GEO may seek information in support of its affirmative

11   defenses, the state agencies in possession of the information GEO seeks are not parties to this

12   action and no relief is sought on their behalf. Further, neither the Attorney General, as an

13   independent public official, nor the AGO, as an independent state agency, have possession,

14   custody, or control over the documents of other agencies. Nor does the AGO have authority or

15   the practical ability to produce these documents. Since GEO is equally able to seek discoverable

16   information, if any, through third-party discovery, and since Washington does not keep the

17   custodian information GEO seeks in its usual course of business, GEO's motion to compel

18   should be denied.

19   **A.    GEO's Discovery Requests Seek Material that Is not Relevant to any Claim or
20         Defense**

21           As an initial matter, GEO's discovery requests do not meet Federal Rule of Civil

22   Procedure 26(b)(1)'s threshold relevance requirement. Although GEO argues information

23   regarding any inmate labor practices at DOC is relevant to its unclean hands defense, DOC's

24   inmate labor practices are—unlike GEO's—statutorily exempt from Washington's minimum

25   wage laws. Wash. Rev. Code § 49.46.010(3)(k). Even if the DOC pays inmates less than the

26   minimum wage at its facilities, Washington's hands are not thereby "unclean." Likewise, GEO's

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    request for information about what L&I knew about GEO's practices years before this lawsuit

2    is similarly flawed. Even if L&I knew of GEO's practices for decades, such knowledge would

3    not bar Washington from bringing this suit now. *See United States v. Phillip Morris, Inc.*, 300

4    F. Supp. 2d 61, 75 (D.D.C. 2004) ("[L]aches or neglect of duty on the part of officers of the

5    government is no defense to a suit by it to enforce a public right or protect a public interest").

6    None of GEO's requests for non-party agency documents are relevant.

7    **B.     The AGO Does Not Have Control over the Documents of State Agencies**

8           Inasmuch as this Court may find that the requested material may meet Federal Rule of

9    Civil Procedure 26(b)(1)'s relevance threshold, GEO fails to meet its burden of showing that the

10   AGO controls the documents.

11          As its motion concedes, GEO bears the burden of proving the AGO has control over the

12   documents sought. *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*,

13   870 F.2d 1450, 1452 (9th Cir. 1989). "Proof of theoretical control is insufficient; a showing of

14   actual control is required." *In re Citric Acid Lit.*, 191 F.3d 1090, 1107 (9th Cir. 1999). In *Citric*

15   *Acid Litigation* for example, the plaintiffs argued "control" should be defined in a manner that

16   focuses on a party's "practical ability" to obtain the requested documents. *Id.* at 1107. The Ninth

17   Circuit rejected that argument, reasoning that, even if a party had the practical ability to obtain

18   the documents, the other entity "could legally—and without breaching any contract—continue

19   to refuse to turn over such documents." *Id.* at 1108. Indeed, at least two district courts have found

20   discovery of state agencies through their state attorneys general to be barred because "the State

21   Attorneys General [had] no more way of compelling production than [the defendant] [did] if an

22   agency refuse[d] to cooperate." *United States v. Am. Express Co.*, No. 1:10-cv-04496

23   (NGG)(RER), 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011) (hereinafter "*American*

24   *Express*"); *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05-2182, slip op. at 8 (D.D.C.

25   May 8, 2007) (hereinafter "*Warner Chilcott*") (attached to Baker Decl. ¶ 13, Ex. F) (refusing to

26   compel discovery through the state attorneys general because the state attorneys general operated

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

independently of the state governors and, therefore, could not force separate state entities to produce documents).

Just like in *American Express* and *Warner Chilcott*, here, the AGO has no more way of compelling production from L&I and DOC than GEO. In Washington, the Governor and Attorney General operate as independent executives under the state constitution. *See* Wash. Const. art. 3, § 1. Accordingly, the Governor and Attorney General have distinctly separate areas of authority. *Compare* Wash. Const. art. 3, § 5 (setting forth the Governor's duties), *with* Wash. Const. art. 3, § 21 (setting forth the Attorney General's duties). While the Attorney General is designated to act as counsel for state agencies, *see* Washington Revised Code § 43.10.040, the Attorney General is an independently elected public official, who does not have the authority to set agency policies or priorities, nor the practical ability to produce agency documents, which are obtained through compulsory process directed to the agency. *See* Wash. Rev. Code § 43.06.010 (requiring that the Governor—not the Attorney General—supervise the conduct of all executive and ministerial agencies).

GEO nevertheless argues that it's simply "common sense" that the AGO, as the State's legal adviser, could obtain information from non-party state agencies. ECF 113 at 8. GEO's argument, which lacks citation to any law, regulation, or policy requiring state agencies to respond to an AGO request for documents, is mistaken. While it is undisputed that the AGO represents and advises state agencies, the decision to bring this action was not done on behalf or in protection of any state agency. *See American Express*, 2011 WL 13073683, at *2 (determining state agencies not to be parties for purposes of discovery in an action brought by the state attorneys general because the state attorneys general acted independently of the state agencies). The AGO is akin to a law firm with many different clients. Just as a law firm does not subject all its clients to party discovery when it sues on behalf of only one client, the AGO cannot subject all state agencies to party discovery when it sues on behalf of one client—here, Washington residents. *See New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 265

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

5

1    (N.D.N.Y. 2006) (hereinafter "*Amtrak*") (refusing to compel production from the state

2    Comptroller via a Rule 34 subpeona when the State sued on behalf of the Department of

3    Transportation, a different agency).

4        GEO's case citations to argue otherwise are inapposite. In fact, nearly all of the cases

5    GEO cites as compelling the AGO to produce documents from non-parties involve pro se

6    litigants who did not have the capability to issue third-party subpoenas or otherwise obtain the

7    requested information themselves. *See, e.g., Bovarie v. Schwarzenegger*, No.08cv1661 LAB

8    (NLS), 2011 WL 767249, at *1 (S.D. Cal. Feb. 25, 2011); *Ochotorena v. Adams*, No. 1:05-cv-

9    01524-LJO-DLB (PC), 2010 WL 1035774, at *1 (E.D. Cal. Mar. 19, 2010); *Alexander v. Cal.*

10   *Dep't of Corr.*, No. 2:08-cv-2773 MCE KJN P., 2010 WL 4069953, at *1 (E.D. Cal. Oct. 18,

11   2010). The remaining cases GEO does cite that do not involve pro se litigants are simply

12   inapplicable. In *State v. Reed*, a prosecuting attorney sought to compel a defendant's medical

13   records from defendant after defendant's attorneys instructed the state hospital not to release

14   such information. 429 P.2d 870 (Wash. 1967). While the state supreme court denied the

15   prosecuting attorney's request and suggested the prosecuting attorney request the Attorney

16   General advise the state hospital to produce the medical records, nowhere did the state supreme

17   court determine the Attorney General had a legal right to the state hospital's records or an

18   obligation to produce them. *See id.* at 872 (observing only that a request to the Attorney General

19   "*may* have accomplished the purpose [of obtaining defendant's medical records]") (emphasis

20   added); *see also Wilson v. Washington*, No. C16-5366 BHS, 2017 WL 518615, at *3 (W.D.

21   Wash. Feb. 8, 2017) ("[I]t *appears* that . . . the State . . . ha[s] authority to obtain documents")

22   (emphasis added). In *Board of Education of Shelby County, Tennessee v. Memphis City Board*

23   *of Education*, No. 2:11-CV-02101-SHM, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012),

24   the court allowed plaintiffs to seek discovery of the General Assembly through the state attorney

25   general only after explaining that the attorney general raised no argument that it lacked control

26

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   over the documents and made no meaningful relevance or undue burden arguments. The AGO

2   makes each of those arguments here.

3        In sum, GEO falls far short of its burden of showing that the AGO has the legal right to

4   obtain the information in the possession of state agencies. *See In re NCAA Student-Athlete Name*

5   *& Likeness Litig.*, No. 09-cv-01967CW (NC), 2012 WL 161240, at *3 (N.D. Cal. Jan. 17, 2012)

6   (refusing to find NCAA "control" over documents held by individual members institutions even

7   where the NCAA's bylaws granted it "power to collect information and data from members").

8   Despite GEO's vague protestations that the AGO has the "requisite relationship" over state

9   agencies, *see* ECF 113 at 9, GEO offers no evidence of such control. *See Int'l Union*, 870 F.2d

10  at 1453-54 ("Control must be firmly placed in reality, not in an esoteric concept such as [an]

11  'inherent relationship.'") (citations omitted).

12  **C.      Neither L&I, DOC, nor DSHS Are Parties to This Litigation**

13       The State of Washington is the Plaintiff in this suit—not L&I, DOC, or DSHS. Although

14  GEO repeatedly notes that L&I is referenced in the State's complaint, that single allegation

15  merely recites that L&I enacts administrative rules that may be relevant to the minimum wage

16  claim. ECF 1-1 ¶ 3.2.  GEO does not—and cannot—argue that L&I is actually a party to this

17  lawsuit. Not only has the State repeatedly made clear that this action is brought by the Attorney

18  General pursuant to his own statutory authority, *see* ECF 17 at 14, GEO itself conceded in its

19  motion to dismiss that "the Attorney General does not allege that it is suing on behalf of L&I, or

20  exercising any of L&I's statutory enforcement under state law," *see* ECF 10 at 13.

21       Since L&I is clearly not a party, GEO resorts to arguing L&I is the agency "at issue" in

22  this litigation. ECF 113 at 11. GEO is still mistaken. It is the AGO that brings suit here as *parens*

23  *patriae* to enforce state law and disgorge unjust profits. The AGO does not represent the interests

24  of L&I or any governmental agency, nor does it seek remedies based on harm to L&I or any

25  governmental agency. While L&I has statutory authority to enforce the state's minimum wage

26  laws, the AGO is not required to consult with or obtain approval from L&I before initiating this

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    action. *See* Wash. Rev. Code § 43.10.030(1) (setting forth the Attorney General's own authority

2    to act in any court on a matter of public concern).

3        GEO's reliance on *Amtrak*, 233 F.R.D. at 265, is therefore misplaced. In *Amtrak*, the

4    State of New York "by and through" its Department of Transportation sued Amtrak over a

5    contract dispute. Amtrak issued discovery requests to the plaintiffs seeking documents from the

6    Comptroller, who had performed auditing work relevant to the contract. While Amtrak argued

7    "the State of New York" is the named party and the State of New York was a single, superior

8    entity that controlled all state agencies, the court rejected Amtrak's view. It determined that,

9    while "the State" was the named party, the state was acting only on behalf of the Department of

10   Transportation, the party to the contract at issue, and denied Amtrak's discovery request for

11   information from the Comptroller.

12       Like in *Amtrak*, the AGO does not act as a single, superior entity with control over all

13   state agencies. The AGO cannot be aggregated together with L&I, DSHS, or DOC for purposes

14   of discovery where, as here, the agencies are neither interrelated nor subject to common

15   executive control. *See Warner Chilcott*, slip op. at 8. The AGO, therefore cannot, as GEO

16   requests, "admit that the State has not previously sought to enforce the Minimum Wage Act or

17   bring unjust enrichment claims against GEO." *See* ECF 114-5, Response to RFA No. 1 (refusing

18   to answer on behalf of all state agencies, but answering on behalf of the AGO). The AGO brings

19   this action on behalf of its residents—not any governmental agency. The AGO does not have an

20   obligation to respond or produce information in the possession of non-party agencies.

21   **D.      GEO Should Seek Discovery Directly from Third-Party State Agencies**

22       Federal Rule of Civil Procedure 26(c)(1)(C) allows a court to enter an order "prescribing

23   a discovery method other than the one selected by the party seeking discovery." Even if the Court

24   were persuaded that the AGO could legally be compelled to produce documents in the possession

25   of non-party state agencies, several prudential considerations suggest that Rule 45 subpoenas are

26   a more appropriate avenue for GEO to seek the desired information. *See Perez v. United States*,

STATE OF WASHINGTON'S RESPONSE TO                    8                ATTORNEY GENERAL OF WASHINGTON
THE GEO GROUP INC.'S MOTION TO                                              Civil Rights Unit
COMPEL                                                                  800 Fifth Avenue, Suite 2000
                                                                          Seattle, WA  98104-3188
                                                                             (206) 464-7744

No. 13cv1417-WQH-BGS, 2016 WL 705904, at *5 (S.D. Cal. Feb. 23, 2016) (directing plaintiffs to subpoena the requested information from the government agency directly instead of the retired government officer "in the interest of efficiency"). *See also California ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 338 (Ct. App. 2004) (directing defendants to serve subpoenas directly upon the relevant state agencies "to obtain documents and witnesses from state agencies").

First, GEO's requests for production are unduly burdensome as directed to the AGO. GEO's discovery requests are incredibly broad; they include but are not limited to (1) all documents showing "each and every employee that supervised prioners/detainees incarcerated or detained by Washington State" who worked in the kitchen, laundry facilities, or as janitorial staff in a state correctional or detention facility since 2005 (RFP Nos. 60-62); (2) all documents that "relate to staff recruitment by [DOC or DSHS] operated or controlled facilities from local communities and those facilities' contribution to the local economy" (RFP No. 63); (3) all documents "reflecting financial transactions, such as invoices for reimbursement of payments for any inmate or detainee work program between Washington and any contractor" (RFP No. 54); (4) "[a]ll versions, including drafts, of Washington State prisoner/detainee manuals discussing prisoner/detainee work programs" (RFP No. 56); (5) all documents showing "how the State calculates staffing needs for each DOC facility" (RFP No. 46), and (6) documents relating to discussions about amounts paid to prisoners/detainees incarcerated or detained by Washington State since 2005 (RFP No. 59). Baker Decl. ¶ 9, Ex. D.

None of this requested information originates with the AGO. If the AGO is in possession of any of these documents, it would have gathered them in the course of its representation of a client agency and they likely would be protected by attorney-client privilege or the work product doctrine. Although GEO claims the AGO likely possesses nonprivileged documents responsive to its request, GEO's argument relies on the existence of a single contract executed between GEO and the DOC, approved by the AGO "as to form only" and printed on DOC letterhead.

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP INC.'S MOTION TO COMPEL

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  ECF 113 at 11 n.2. However, the fact that the GEO-DOC contract invokes the AGO's name

2  once—to indicate that an unnamed "WA Assistant Attorney General" "[a]pproved [the contract]

3  as to form only"—hardly suggests the AGO is in possession of the contract. In fact, the GEO-

4  DOC contract highlights the undue burden that would be placed on the AGO if made to search

5  for GEO's requested information through its attorneys' files. Without knowing the name of the

6  Assistant Attorney General who approved the contract, in order to respond to GEO's request,

7  the AGO would have to search the files of more than 500 Assistant Attorneys General in 27

8  different legal divisions.

9         Second, GEO's requests are more appropriately responded to by the state agencies

10  themselves. L&I, DOC and DSHS are separate and distinct state agencies. Each may be subject

11  to federal and state laws that govern issues such as confidentiality and disclosure. The

12  reasonableness of ordering discovery may vary between the state agencies because the burdens

13  of compliance with GEO's requests vary. The Assistant Attorneys General who represent

14  Washington in this lawsuit are civil rights attorneys and may lack specialized legal or factual

15  knowledge regarding the disclosure limits applicable to particular state agencies. It is possible

16  that each state agency may wish to raise issues of law, such as the deliberative process privilege,

17  or issues of fact, such as the burden required to comply given the minimal (if any) relevance of

18  state-agency practices in this litigation. Requiring GEO to seek information and documents

19  directly from the identified state agencies will allow those agencies to raise any appropriate

20  objections and protect their particular interests. *See Lockyer*, 19 Cal. Rptr. 3d at 338.

21        Finally, public policy dictates that GEO be required serve third-party discovery directly

22  on state agencies. It would be unduly burdensome if any time the AGO engages in an

23  enforcement action, the AGO is required to search for documents from each of its 26 cabinet

24  agencies and more than 230 boards and commissions. *See id.* Here, even assuming that the AGO

25  could comply with GEO's requests, the time and cost to to collect, review, and produce discovery

26  from three large cabinet agencies will waste resources and chill future enforcement efforts. If

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   GEO remains determined to seek information about state agency practices, the Court should

2   direct GEO to seek it by issuing third-party subpoenas.

3   **E.      The State Produced Documents as They Were Kept "In the Usual Course of Business"**

4

5   Washington has fulfilled its discovery obligations with respect to the form of the

6   documents produced. Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii) requires parties to

7   produce documents either as they were kept "in the usual course of business" or to organize and

8   label them to correspond to the categories in the request. Upon GEO's belated request for

9   production in a new format, Washington reproduced documents to include custodian

10  information, indicating where within its network documents were collected. While GEO now

11  demands Washington identify the individual custodians for each document, Washington does

12  not keep documents that way and Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii) nowhere

13  requires such detailed information not kept in the usual course of business.

14  First, neither case that GEO cites stands for the proposition that parties must produce

15  specific custodian information. In *Hullinger v. Anand*, No.CV15-7185 SJO (FFMx), 2016 WL

16  7444620, at *9 (C.D. Cal. Aug, 19, 2016), the court ordered production of custodian information

17  only after recognizing the parties had previously agreed to exchange such information. In *City

18  of Colton v. American Promotional Events, Inc.*, 277 F.R.D. 578, 584 (C.D.Cal. 2011), the court

19  merely noted ESI productions should be produced in "the usual course of business" and only

20  include "the provenance of the files and some context as to their meaning." Here, Washington

21  has provided that information. It is clear which documents were collected from the CRU, which

22  documents were collected from the AGO's leadership team, and which documents were

23  collected elsewhere. Baker Decl. ¶ 12.

24  Second, GEO does not need custodian information to argue its affirmative defenses. GEO

25  identifies only one reason it requests custodian information—to determine when Washington

26  officials were "put on notice concerning GEO's administration of the VWP." ECF 113 at 12.

STATE OF WASHINGTON'S RESPONSE TO        11        ATTORNEY GENERAL OF WASHINGTON
THE GEO GROUP INC.'S MOTION TO                           Civil Rights Unit
COMPEL                                                800 Fifth Avenue, Suite 2000
                                                       Seattle, WA  98104-3188
                                                          (206) 464-7744

However, GEO already has this information. GEO held a Federal Rule of Civil Procedure 30(b)(6) deposition on August 10, 2018, where Washington's designee testified that CRU was established in January 2015 and was made aware of GEO's labor practices and the likelihood that it may violate state law in May 2017. Baker Decl. ¶ 10, Ex. E.

Third, individual custodian information is clear from many of the documents Washington produced. Of the 477 documents produced, over 100 are e-mails, which indicate both the author and recipient of the document. Baker Decl. ¶ 12. In addition, the individual custodian of each e-mail also appears in the filename of the .pst.[1] St. John Decl. ¶¶ 6-7. Of the remaining documents, the documents are electronically stored on shared AGO networks for which more specific custodian information is unavailable. St. John Decl. ¶¶ 3-5.

The Court should deny GEO's motion to compel. GEO does not need the metadata nor does Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii) require Washington to create more detailed custodian information where none otherwise exists.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny GEO's motion to compel and direct GEO to issue third-party subpoenas for the information it requests from non-party state agencies.

Dated this 10th day of September, 2018.

Respectfully submitted,

BOB FERGUSON
Attorney General of Washington

s/ *Marsha Chien*
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
Assistant Attorneys General
Office of the Attorney General

---

[1] To the extent GEO did not receive filenames in the load file produced, Washington is willing to create a custodian list for those email communications.

STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP INC.'S MOTION TO COMPEL

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
larondb@atg.wa.gov
marshac@atg.wa.gov
andreab3@atg.wa.gov

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

13

1

**CERTIFICATE OF SERVICE**

2
    I hereby certify that the foregoing document was electronically filed with the United

3
States District Court using the CM/ECF system. I certify that all participants in the case are

4
registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5
system.

6

7
10th day of September, 2018

                                *s/ Marsha Chien*

8
                                Marsha Chien

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S RESPONSE TO
THE GEO GROUP INC.'S MOTION TO
COMPEL

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744