The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | LCR 37 EXPEDITED JOINT DISCOVERY MOTION TO COMPEL DEFENDANT GEO'S FINANCIAL DOCUMENTS |
| THE GEO GROUP, INC., | |
| Defendant. | ORAL ARGUMENT REQUESTED |
| | **Noted for Consideration: Sept. 18, 2018** |

## I.    WASHINGTON'S INTRODUCTORY STATEMENT

The State of Washington ("Washington") challenges The GEO Group, Inc.'s ("GEO") longstanding practice of paying detainee workers that keep the Northwest Detention Center ("NWDC") operational $1 per day or food for labor in the Voluntary Work Program ("VWP"). Washington seeks a declaration requiring GEO comply with Washington's minimum wage laws in the future. In addition, Washington claims that, since 2005, GEO has benefitted from its unfair labor practices regarding detainee workers at the NWDC and asks the Court to order GEO, a for-profit corporation, to disgorge the amount by which it has been unjustly enriched. Complaint, ECF 1-1 ¶ 7.6. Washington pursues discovery regarding at least two dimensions of GEO's

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  benefit and unjust enrichment: 1) the difference between "fair wages" and what GEO actually
2  paid detainee workers; and 2) the profit GEO derived as a result of its unfair labor practices.

3      GEO asserts an Affirmative Defense[1] of "offset" against Washington's unjust
4  enrichment award: "Affirmative Defense 8.12. [A]ny award against GEO for unjust enrichment
5  must be offset by costs incurred for caring for plaintiffs during their time in detention." GEO's
6  Answer and Counterclaims, ECF 34, *as modified by* Order on State's Motion to Dismiss or Strike
7  Defendant's Counterclaims and Affirmative Defenses, ECF 44 at 5-6 (removing first clause). In
8  its initial disclosures and interrogatory answers, GEO quantifies the offset as "$17.12 per hour
9  of participation in the Voluntary Work Program."

10     In Section A of this motion, Washington seeks financial information, statements, and
11  documents regarding NWDC and the VWP to ascertain the profits and benefits GEO retained
12  from detainee labor from 2005 to the present that are relevant to Washington's "unjust
13  enrichment" claim and remedy. In Section B of this motion, Washington seeks financial
14  documents related to the care of detainees that are relevant to GEO's offset affirmative defense
15  and that were used to generate the offset amount and calculation.

16     GEO has refused to produce any responsive profit or financial information, statements,
17  or documents regarding the NWDC or the VWP, claiming that the discovery is irrelevant,
18  premature until liability is established, and, if there is a future production of financial
19  information, should be limited to the VWP alone. In addition, GEO has withheld all but three
20  summary documents underlying its offset calculation. As Washington cannot effectively litigate
21  its claims or defend against GEO's affirmative defense without the profit and financial evidence
22  it seeks, Washington now moves this Court to order GEO to produce the requested discovery.

23     This Court should order GEO to produce responsive documents now because (1) GEO's
24  profit information and financial records are relevant and necessary to prove Washington's unjust

25
26
---
[1] The affirmative defense of "offset" portion of this joint discovery motion is now moot, *see infra* Section III.B, but remains here to ensure the integrity of the LCR 37 briefing process.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS                                    2                 ATTORNEY GENERAL OF WASHINGTON
                                                                         Civil Rights Unit
                                                                         800 Fifth Avenue, Suite 2000
                                                                         Seattle, WA 98104-3188
                                                                         (206) 464-7744

1    enrichment claim as well as to calculate the disgorgement of profit remedy; (2) GEO's financial

2    records are relevant to its own offset affirmative defense; (3) GEO has refused to produce any

3    profit information or financial records; and (4) Washington's attempts to resolve these issues

4    without judicial intervention have been unsuccessful.

5       Federal Rule of Civil Procedure 33 requires parties to answer interrogatories and Federal

6    Rule of Civil Procedure 34 requires parties to produce documents that are responsive to

7    discovery requests. A party may move to compel discovery if the movant has, in good faith,

8    conferred with the party opposing discovery to obtain the requested discovery without the court's

9    intervention and that good faith attempt has failed. *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D.

10   383, 390 (W. D. Wash. July 20, 2017) (citing Fed. R. Civ. P. 26(c)). "A party seeking discovery

11   may move for an order compelling . . . production . . . if a party fails to produce documents."

12   Fed. R. Civ. P. 37(a)(3)(B)(iv).

13       "The party that resists discovery has the burden to show why the discovery request should

14   be denied[.]" *Alexander v. U.S. Bank. N.A.*, No. C16-1045RSM, 2016 WL 9525593, at *1 (W.D.

15   Wash. Dec. 1, 2016). Indeed, under "the liberal discovery principles of the Federal Rules [the

16   resisting party] carr[ies] a heavy burden of showing why discovery was denied." *Blankenship v.*

17   *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

18       Washington certifies pursuant to LCR 37(a) that it has met and conferred with GEO over

19   the telephone and in good faith in an effort to resolve this dispute without Court action. *See*

20   Brenneke Decl. ¶ 15.

## II.    GEO'S INTRODUCTORY STATEMENT

22       The GEO Group, Inc. ("GEO") moves under Federal Rule 26(c) for a protective order

23   limiting discovery with respect to GEO's profitability because that information is irrelevant to

24   any issue in this case. Alternatively, the Court should bifurcate trial of liability and damages on

25   the State of Washington's ("State") claims and stay production of profitability information

26   unless and until it becomes relevant to any issue in this case.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      The State currently seeks to force GEO to produce extensive discovery relating not only

2  to NWDC's yearly profitability but also into almost all aspects of GEO's business in Washington

3  and elsewhere.  *See infra*, III(A).  But this information is completely irrelevant to any liability

4  issue in this case.  Whether NWDC—or GEO as a whole—operates in the red or in the black has

5  no bearing on who is an "employee," or whether GEO is their "employer."  Nor does it relate to

6  the measure of any fair wage that detainees or anyone else would fairly expect for working at

7  NWDC.  As the State admits in its briefing, the VWP program is a pass-through.  GEO does not

8  pay the detainees $1 a day, then charge ICE some markup above that.  There are no profits from

9  the program itself.  The only conceivable "profit" that could be disgorged would be the

10  differential between the VWP's $1 a day payment, and what GEO would otherwise have to pay

11  outside workers (to the extent the work is even necessary to run the facility).  The information

12  is therefore completely irrelevant, and the State's attempt to force GEO to produce it is an

13  improper fishing expedition.  Further, even if the information were to have some marginal

14  relevance, its only conceivable use would be prejudicial to GEO, and any inadvertent disclosure

15  could encourage further competitive harm at NWDC.  Because information relating to NWDC's

16  profitability is irrelevant to the State's claims and could potentially cause substantial harm to

17  GEO or others if disclosed, it should be protected from discovery.

18      Even if the Court believes the information might have some relevance, the Court should

19  still stay production unless and until that relevance is manifest.  This Court has discretion to

20  bifurcate proceedings to address liability before assessing any possible award to the State.  By

21  doing so, it could obviate any need to force GEO to disclose its confidential business

22  information, which is irrelevant to liability under any theory the State has espoused to date.  That

23  approach would protect GEO's interests against any possible misuse of the information by the

24  State, whether inadvertent or otherwise.  Consequently, the Court need not order GEO to disclose

25  information relating to GEO's profitability—or any of the other myriad documents the State

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

seeks relating to GEO's business, internal analyses, bid preparation, or anything similar—even if it finds that that information may become relevant at some future time.

## III.   DISCOVERY REQUESTS AT ISSUE

**A.    GEO's Financial Statements and Documents for NWDC and the VWP Program**

Washington's Second Interrogatories to Defendant GEO ("Second Rogs") ask GEO to identify GEO's profits or losses for NWDC [f]or each year from 2005 to the present. *See* Brenneke Decl. ¶3, Ex. A (Second Rogs at Int. No. 7) and Brenneke Decl. ¶4, Ex. B (Resp. to Second Rogs at Int. No. 7).  Specifically:

> **INTERROGATORY NO. 7**:  For each year from 2005 to the present, please identify GEO's profits or losses for NWDC and the basis for your answer.

> **RESPONSE TO NO. 7**:  GEO objects to this Interrogatory as outside of the scope of discovery, to the extent that its seeks information regarding GEO's profits or losses beyond those related to the voluntary work program ("VWP"), which are not relevant to the claims or defenses in this case. GEO further objects on the grounds that the Interrogatory is unduly burdensome, as it would require GEO to continuously supplement and amend its response without a defined end date. Subject to and without waiving GEO's above stated objections, GEO answers as follows: GEO's profits or losses are not relevant to this proceeding, if at all, until there is determination that GEO is subject to suit and liable for payment of wages to VWP participants under the Washington Minimum Wage Act and/or a theory of unjust enrichment. Should GEO at that time be required to provide a response, GEO will produce documents pursuant to Fed. R. Civ. P. 33(d) that state and describe GEO's profits or losses for the NWDC during the relevant period.

Washington's Second Requests for Production to Defendant GEO ("Second RFPs"), seek production of financial documents regarding GEO's profits or losses for NWDC and GEO's Response to Interrogatory No. 7. *See* Brenneke Decl. ¶5, Ex. C (Second RFPs at RFP 18) and Brenneke Decl. ¶6, Ex. D (Resp. to Second RFPs). Specifically:

> **REQUEST FOR PRODUCTION NO. 18**: Please produce all documents that are referenced in, support, or that form the basis of Your response to Interrogatory No. 7.

> **RESPONSE TO NO. 18**: GEO objects to this Request on the grounds that it is unduly burdensome as it seeks "all documents . . . that form the basis" for GEO's response to Interrogatory No. 7, where documents sufficient to show the profits and losses for NWDC would be reasonable and complete. Likewise, GEO objects to the Request as not proportionate to the needs of the case, as discovery of "all documents" used to detail the profits and losses at NWDC does

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

nothing to resolve any issue in the case and any burden on GEO would outweigh the negligible benefit Plaintiff would receive from the information. GEO further objects to this Request as outside of the scope of discovery, to the extent that its seeks information regarding GEO's profits or losses, beyond those related to the voluntary work program ("VWP"), as all other profits and losses are not relevant to the claims or defenses in this case. GEO also objects to this Request as overly broad and unduly burdensome as Interrogatory No. 7 has no defined end date and requires GEO to continuously supplement its responses. GEO objects to this Request to the extent that it seeks that information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. Subject to and without waiving GEO's above stated objections, GEO will not be producing documents responsive to this Request at this time. Documents concerning GEO's profits or losses are not relevant to this proceeding at this time. Should the court determine that GEO is subject to suit and liable for payment of wages to VWP participants under the Washington Minimum Wage Act and/or a theory of unjust enrichment, GEO will then conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, to the extent they exist and subject to the protective order entered in this case, produce relevant, responsive, non-privileged documents sufficient to show the profits and losses related to the VWP at NWDC created from 2005 to January 5, 2018. GEO is withholding documents on the basis of the above stated objections.

Washington also requested financial documents regarding the benefits and profits derived from detainee labor and the VWP at the NWDC, as well as the relevant corporate entities, from greater to more particular specificity.

**REQUEST FOR PRODUCTION NO. 38**: For each of the years 2005 to the present, please produce all GEO's financial statements, Profit and Loss statements, budget, and budget to actual analysis on a quarterly or annual basis for each of the years during the relevant time period.

**RESPONSE TO NO. 38**: GEO objects to this Request as outside of the scope of discovery, as it seeks documents that are not relevant to the claims or defenses in this case. GEO's Profit and Loss statements contain information related to a multitude of other facilities that are not subject to the above captioned litigation and over which the State of Washington has no authority, oversight, or contractual relationship. GEO also objects to this Request as cumulative of other requests, including, but not limited to, Request No. 18. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. Finally, GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

---

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

6

**REQUEST FOR PRODUCTION NO. 39**: To the extent not previously produced, please produce GEO's U.S. Corrections & Detention Division financial statements, Profit and Loss statements, budget, and budget to actual analysis on a quarterly or annual basis for each of the years during the relevant time period.

**RESPONSE TO NO. 39**: GEO objects to this Request as outside of the scope of discovery, as it seeks documents that are not relevant to the claims or defenses in this case. Furthermore, GEO objects to this Request as it is not proportionate to the needs of the case, as discovery of GEO's U.S. Corrections & Detention Division's financial statements, Profit and Loss statements, budget, and budget to actual analysis on a quarterly or annual basis do nothing to resolve any issue in the case and any burden on GEO would outweigh the negligible benefit Plaintiff would receive from the information. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. GEO also objects to this Request as cumulative of other requests, including, but not limited to, Request Nos. 18 and 38. Finally, GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 40**: To the extent not previously produced, please produce the NWDC's financial statements, Profit and Loss statements, budget, and budget to actual analysis on a quarterly or annual basis from 2005 to present, including all documents that set forth the detailed operating costs of the facility, Voluntary Work Program costs, labor costs, and payroll expenses as well as all details of revenue, contract payments and reimbursements.

**RESPONSE TO NO. 40**: GEO objects to this Request to the extent that it seeks financial statements or other documents reflecting budgeted expenditures that are not relevant to the claims or defenses in this case. In addition, this request is objectionable because it is overly broad and unduly burdensome as it seeks budgets, budget to actual analyses which have no bearing on any claim or defense in the case. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. Finally, GEO also objects to this Request as cumulative of other requests, including, but not limited to, Request Nos. 18, 38, and 39. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show actual expenditures related to the VWP at NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**REQUEST FOR PRODUCTION NO. 41**: To the extent not previously produced, please produce all documents that contain financial performance analysis, financial models, financial evaluations, analysis of profits earned, or other assessments of the performance of the NWDC contract(s) with ICE.

**RESPONSE TO NO. 41**: GEO objects to this Request on the grounds that it far exceeds the scope of discovery under Fed. R. Civ. P. 26(b)(1) as it seeks documents that have no bearing on the claims or defenses in this case. To the extent the State seeks information related to its unjust enrichment claim, analyses, models, evaluations and other assessments are not relevant. Only the actual profits or losses related to the NWDC's VWP program would be relevant. GEO has agreed to produce those documents, subject to its objections, in response to Request 18. GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. Finally, GEO objects to this Request as cumulative of other Requests seeking similar financial information. GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 42**: To the extent not previously produced, please produce all documents related to the profit or loss of the NWDC's Voluntary Work Program, including budget, and budget to actual analysis on a quarterly or annual basis from 2005 to the present, and all documents that set forth the detailed operating costs of the Voluntary Work Program, as well as revenues, payments and reimbursements received.

**RESPONSE TO NO. 42**: GEO objects to this Request because it is overly broad and unduly burdensome as it seeks budgets, budget to actual analyses which have no bearing on any claim or defense in the case. GEO further objects to this request because it seeks all documents related to the profit or loss of the NWDC's Voluntary Work Program. To the extent the State seeks information related to its unjust enrichment claim only the actual profits or losses related to the NWDC's VWP program would be relevant. GEO has agreed to produce those documents, subject to its objections, in response to Request 18. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. Finally, GEO objects to this Request as cumulative of other Requests seeking similar financial information, such as Request No. 40. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show the operating costs of the VWP at NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

**REQUEST FOR PRODUCTION NO. 43**: To the extent not previously produced, please produce all documents that contain financial analysis, financial models, analysis of profits earned, valuation of the work performed, or other assessments of the Voluntary Work Program at the NWDC from 2004 to present.

3

4

5

6

7

8

9

10

11

**RESPONSE TO NO. 43**: GEO objects to this Request to the extent that it seeks financial projections or other documents reflecting budgeted expenditures that are not relevant to the claims or defenses in this case. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO produce documents dating back to 2004—before the relevant time period of this case and to continuously supplement and produce additional information without a defined end date. Finally, GEO objects to this Request as cumulative of other Requests seeking similar financial information, such as, but not limited to, Requests Nos. 40 and 42. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show GEO's financial analysis of the VWP at NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

12

13

14

15

**REQUEST FOR PRODUCTION NO. 44**: To the extent not previously produced, please produce all documents that contain financial analysis, financial models, analysis of profits earned, valuation of the work performed, or other assessments of the Voluntary Work Program within the GEO Group from 2005 to the present.

16

17

18

19

20

21

**RESPONSE TO NO. 44**: GEO objects to this Request to the extent that it seeks financial projections or other documents reflecting budgeted expenditures that are not relevant to the claims or defenses in this case. GEO also objects on the grounds that this Request seeks information related to facilities other than the NWDC, which is outside of the scope of discovery and not relevant to the claims or defenses of this case. Furthermore, GEO objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. Finally, GEO objects to this Request as cumulative of other Requests seeking similar financial information, such as, but not limited to, Requests Nos. 40, 42, and 43. GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

22

23

24

25

26

Finally, Washington sought additional categories of financial documents and information regarding the benefits and profits derived from detainee labor and the VWP at the NWDC, including: financial performance analysis, models and evaluations (RFP 51); per diem rate calculations (RFP 52); calculations concerning overhead and other costs allocated to the

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

NWDC Contracts in evaluating profitability and the per diem rates (RFP 53); analyses of the NWDC Contract costs, and categorization of those costs as variable or fixed (RFP 54); and assumptions made in determining the contractually negotiated per diem rate(s) and calculations for the NWDC Contracts (RFP 55).  Specifically:

**REQUEST FOR PRODUCTION NO. 51**:   Please produce all documents containing financial performance analyses, financial models, or other financial evaluations prepared in connection with or for the purpose of GEO Group's offer(s) and bid(s), and negotiations related to amendment(s) and renewal(s), of contracts related to the NWDC from 2005 - present.

**RESPONSE TO NO. 51**: GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities.  GEO objects to this request as it is wildly overbroad because as written it would seek the analyses, models, or other valuations for any contract, the vast majority of which have no bearing whatsoever on the claims or defenses in this case.  For example, the request as written seeks financial analyses, models, or evaluations related to contracts with food distributors, maintenance contracts for the heating and air conditioning, and contracts for IT equipment.  None of these are relevant to the claims or defenses in this case.  GEO also objects to this Request overly broad and unduly burdensome as the financial performance analyses, financial models, or other financial evaluations prepared in connection with or for the purpose of GEO Group's offer(s) and bid(s), and negotiations related to amendment(s) and renewal(s), of ICE contracts related to the NWDC also have no bearing on the claims or defenses in this case.  None of that information would make it more or less likely that detainees at the NWDC who participated in the VWP are employees under the Washington State Minimum Wage Act.  Nor would these analyses, evaluations or assessments impact the actual profit or losses related to the NWDC's VWP program.  GEO also objects on the basis that the terms "financial performance analysis," "financial models," and "financial evaluations" as vague and ambiguous.  GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date.  Finally, GEO objects to this Request as cumulative of other Requests seeking similar financial information.  GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 52**: To the extent not previously produced, please produce any per diem rate calculations and models related to GEO Group's NWDC Contract(s) from 2005 to present, including, but not limited to, the following factors: "Voluntary Work Program" costs and expenses; labor costs and payroll expenses (excluding Voluntary Work Program); expected and guaranteed occupancy; all other costs of providing services (including food, medical, building operations, etc.); desired margins.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**RESPONSE TO NO. 52**: GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO objects to this request as outside the scope of discovery as defined in Fed. R. Civ. P. 26(b)(1) as it requests per diem rate calculations and models related to the NWDC's expected and guaranteed occupancy and desired margins. Neither of these categories of documents have any bearing on the claims or defenses in this case nor would they impact any disgorgement calculation. GEO also objects to this Request on the grounds that it is unduly burdensome, as it would require GEO to continuously supplement and produce additional information without a defined end date. GEO objects to this Request as vague and ambiguous as it relates to the undefined "NWDC Contracts," which (as described in GEO's response to Request 51) may encompass myriad contracts having nothing to do with this case. Finally, GEO objects to this Request as it is cumulative of other Requests seeking similar financial information. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show GEO's per diem rate calculations and models related to the VWP, labor costs and payroll expenses (excluding Voluntary Work Program); all other costs of providing services (including food, medical, building operations, etc.) at NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 53**: To the extent not previously produced, please produce any calculations concerning overhead and other costs allocated to the NWDC Contracts in evaluating profitability and the per diem rates as well as the methodology used to allocate such costs, including any changes in methodology.

**RESPONSE TO NO. 53**: GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. Furthermore, GEO objects to the Request as not proportionate to the needs of the case, as discovery of any calculations concerning overhead and "other costs allocated to the NWDC contracts" is unreasonably broad and burdensome when documents sufficient to show such calculations and costs would be reasonable and complete. GEO objects to this Request as vague and ambiguous as it relates to the undefined "NWDC Contracts," which (as described in GEO's response to Request 51) may encompass myriad contracts having nothing to do with this case. Finally, GEO objects to this Request as it is cumulative of other Requests seeking similar financial information, including but not limited to Request No. 52. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show GEO's calculations and models concerning overhead and other costs related to the VWP at NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 54**: To the extent not previously produced, please produce all documents that contain any analyses of the NWDC Contract costs, and categorization of those costs as variable or fixed, during the relevant period and any changes to allocation of costs inbetween categories.

**RESPONSE TO NO. 54**: GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO also objects to this Request to the extent that it seeks analyses of NWDC ICE contract costs that are not relevant to the claims or defenses in this case. Furthermore, GEO objects to the Request as not proportionate to the needs of the case, as discovery of "all documents that contain any analyses of the NWDC Contract costs" places a substantial burden on GEO that would outweigh the negligible benefit Plaintiff would receive, especially from information unrelated to the VWP at the NWDC. GEO objects to this Request as vague and ambiguous as it relates to the undefined "NWDC Contracts," which (as described in GEO's response to Request No. 51) may encompass myriad contracts having nothing to do with this case. This request is also unduly because it seeks, among other information, documents containing "any changes to the allocation of costs inbetween categories," which would require an unreasonable and disproportionate amount of analysis to determine which, if any, documents contained such changes. Finally, GEO objects to the extent this Request is cumulative of other Requests seeking similar financial information. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show GEO's analysis of costs related to the VWP in GEO-ICE contracts governing GEO's operation of the NWDC from 2005 to January 5, 2018. GEO will withhold documents subject to the above stated objections.

**REQUEST FOR PRODUCTION NO. 55**: To the extent not previously produced, please produce any documents or information related to assumptions made in determining the contractually negotiated per diem rate(s) and calculations for the NWDC Contracts.

**RESPONSE TO NO. 55**: GEO objects to this Request to the extent that it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO objects to this request as it seeks documents outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) because assumptions made in determining the contractually negotiated per diem rates and calculations in the GEO ICE NWDC contract have no bearing on whether

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

detainees participating in the VWP program are employees under the Washington State Minimum Wage Act nor does that information impact any possible disgorgement calculation.  GEO objects to this Request as vague and ambiguous as it seeks "information related to assumptions made" concerning the undefined "NWDC Contracts."    Finally, GEO objects to the extent this Request is cumulative of other Requests seeking similar financial information, including but not limited to, Requests No. 52 to 54.  GEO will not be producing documents in response to this Request and is withholding responsive documents subject to the above stated objections.

1.    **Washington's Argument**

    a.    **GEO Refuses to Produce Any of The Profit and Financial Information, Statements, and Documents Washington Seeks**

Washington's discovery seeks information regarding the "benefit" and profits GEO received at the NWDC from detainee labor there. *See* Brenneke Decl. ¶3, Ex. A (Int. No. 7) and Brenneke Decl. ¶5, Ex. C (RFPs 18, 38-44, 51-55). Washington propounded Interrogatory No. 7 and RFP No. 18 to obtain comprehensive information about GEO's profits and finances at the NWDC where the detainees work, including the VWP. Washington also issued a series of requests for production of particular financial documents related to evaluating GEO's profits and losses from a lesser to greater specificity of focus on the VWP at the NWDC. These include: GEO's overall corporate profits and losses, *id*. at RFP 38; GEO's profits and losses within the "U.S. Corrections & Detention" division, of which NWDC is part, *id*. at RFP 39; GEO's profits at the NWDC itself, *id*. at RFPs 18, 40-41; GEO's profits and losses of the VWP at the NWDC, *id*. at RFPs 42-43; and GEO's profits and losses from the VWP in its overall corporate structure. *Id*. at RFP 44.

In addition, Washington propounded a series of additional requests to illuminate other aspects of the financial model and profits of the NWDC and its VWP: financial performance analysis, models and evaluations, *id*. at RFP 51; per diem rate calculations, *id*. at RFP 52; calculations concerning overhead and other costs allocated to the NWDC Contract in evaluating profitability and the per diem rates, *id*. at RFP 53; analyses of the NWDC Contract costs, and categorization of those costs as variable or fixed, *id*. at RFP 54; and assumptions made in

1    determining the contractually negotiated per diem rate(s) and calculations for the NWDC

2    Contract, *id*. at RFP 55.

3          In response, Defendant GEO refused to produce any of its profit or financial information

4    about the NWDC, claiming "GEO's profits or losses are not relevant to this proceeding, if at all,

5    until there is determination that GEO is subject to suit and liable for payment of wages to VWP

6    participants under the Washington Minimum Wage Act and/or a theory of unjust enrichment."

7    *See supra*, GEO's Resp. to Int. 7. Only then, after a liability determination, would GEO agree to

8    search for and produce documents. *Id*. GEO's refusal to release financial documents until after

9    it is determined GEO is liable disregards the fact that the Court already has entered an Order

10   denying Defendant GEO's motion to dismiss Washington's unjust enrichment claim and allowed

11   the claim to proceed to discovery. ECF 29 at 15-16. Further, as set forth below, the evidence of

12   GEO's profits and finances is relevant and necessary for Washington to prove liability on the

13   unjust enrichment claim itself and it would prejudice Washington to delay discovery until after

14   a liability determination.

15          Inasmuch as GEO has indicated willingness to produce any financial information,

16   statements, and documents responsive to Washington's requests in the future, GEO also

17   unilaterally limits the scope of the requested discovery to responsive information "related *to the*

18   *VWP* at the NWDC" alone, ignoring that the VWP is but one part of the NWDC's and GEO's

19   total budget and profit picture. *See* GEO's Resp. to RFP 18 (emphasis added). *See also*, GEO's

20   Resp. to RFP 40 (will search for and produce only documents related to the VWP at the NWDC);

21   GEO's Resp. to RFP 41 (refusal to produce any documents showing financial performance

22   analysis or profit modeling of the NWDC); GEO's Resp. to RFP 51 (refusal to produce NWDC

23   financial performance analysis, models, or evaluations underlying contract offers or bids);

24   GEO's Resp. to RFP 53 (will search for and produce documents related to calculations of

25   overhead and costs only for the VWP at the NWDC); GEO's Resp. to RFP 54 (will search for

26   and produce only documents related cost categories for the VWP at the NWDC); GEO's Resp.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  to RFP 38 (refusal to produce financial documents related to The GEO Group, Inc.); GEO's

2  Resp. to RFP 39 (same for GEO's US. Corrections & Detention Division)

### b.   GEO's Profit and Financial Records Are Essential Elements of Proof of Washington's Unjust Enrichment Claim and Remedy

5  Under Washington law, unjust enrichment occurs "when one retains money or benefits

6  which in justice and equity belong to another." *Bailie Commc'ns*, *Ltd. v. Trend Bus. Sys., Inc.*,

7  810 P.2d 12, 18 (Wash. Ct. App. 1991). To sustain its unjust enrichment claim, Washington must

8  prove three elements: (1) GEO receives a benefit, (2) the received benefit is at another's expense,

9  and (3) the circumstances make it unjust for GEO to retain the benefit without payment. *See*

10 *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). The Washington State Supreme Court

11 clarified that the remedy for "unjust enrichment" requires disgorgement of the *full value* of the

12 received benefit, with a focus on the *receiver of the benefit*, not the provider of the benefit. *Id.* at

13 1265 (holding disgorgement is not limited to the fair market value of labor, but also includes the

14 amount the contested services enhanced the value of the property at issue).

15 GEO's profits and financial records are essential elements of proof in the first and third

16 prongs of the unjust enrichment liability analysis. To the extent GEO derived profit from the

17 VWP, there is "benefit" to GEO received from the detainees' work; the amount and extent of

18 the profit derived from the unfair detainee labor practices are factual circumstances relevant to

19 the analysis of whether it is "unjust for GEO to retain the benefit without payment." *Id.*  In

20 addition, determining the *amount of profit* GEO derived from the unfair detainee labor practices

21 at the NWDC is necessary for the computation of "disgorgement," the remedy for unjust

22 enrichment. ECF 1-1 at ¶ 7.6. While the difference between a "fair wage" and the $1/day paid is

23 an essential part of the disgorgement of unjust enrichment analysis, Washington also is entitled

24 to discover and evaluate the full value of the benefit received and retained by GEO, including

25 company-wide profits, resulting from its practice of failing to pay adequate compensation to

26 detainees at the NWDC. As such, Washington must have access to GEO's financial information,

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  statements, and documents to understand the scope of GEO's benefit and enrichment and

2  effectively litigate its unjust enrichment case.

3      Circumstances particular to GEO's operations require – at a minimum – discovery of

4  financial information regarding the NWDC operation as a whole, not just the VWP in particular,

5  to complete the unjust enrichment liability and disgorgement analysis.

6      *First*, GEO contracts with ICE to run the NWDC, and is paid on the basis of a negotiated

7  per diem rate with a minimum bed guarantee. *See, e.g*., GEO-ICE Contract, ECF 19 at 6

8  ("Detention Bed Days, Guaranteed Minimum), and 103 (invoicing for "Firm Fixed Price Items"

9  including "pre-established monthly guaranteed minimums for detention" and "Fixed Unit Price

10  Items" including "Detention Services (other than firm fixed price)" paid on basis of "Bed day

11  rate"); Brenneke Decl. ¶ 14, Ex. J, Transcript of GEO 30(b)(6) Deposition in the Person of Ryan

12  Kimble (hereinafter "GEO 30(b)(6) Dep.") at 146:5–147:12. Therefore, any savings on

13  operational costs, such as avoiding fair market labor costs by paying detainees $1/day or food

14  through the VWP, would increase GEO's profit margin. Foundationally, GEO admits that

15  NWDC *is profitable* and has not run at a loss, at least since 2012. GEO 30(b)(6) Dep. at 136:17–

16  137:4.

17      *Second*, as a result of GEO's budgeting practices, GEO's refusal to produce financial

18  statements and records regarding the NWDC, the U.S. Corrections & Detention Division, and

19  The GEO Group, Inc., and instead limit future production of financial documents to those related

20  to the VWP at the NWDC alone, will result in the production of no meaningful financial records

21  at all. This is because GEO chooses not to track specific information about the benefit or profit

22  it derives from detainee participation in the VWP in its normal course of operations; the NWDC

23  has an operating budget with line items for certain programmatic aspects of its operations such

24  as kitchen, food, and security, but there is no budget line item for the VWP. *Id.* at 134:3–135:7.

25  For budgeting purposes, the VWP is treated simply as a pass through: GEO invoices ICE for

26  reimbursement simply in the amount GEO has paid detainee workers. *Id*. at 135:8–136:1. The

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  very fact that GEO does not keep financial information about the profits generated by the VWP

2  itself requires GEO to produce profit and financial information about the operation of the

3  NWDC, the U.S. Corrections & Detention Division, and The GEO Group, Inc., as a whole, to

4  enable evaluation of GEO's benefit and profit from the challenged labor practices.

5      *Third*, in its written discovery responses, GEO has said it would provide Washington

6  documents responsive to requests seeking financial information and analysis about the VWP at

7  the NWDC. *See* Resp. to RFP 42 and RFP 43. GEO also said it would produce NWDC

8  documents that "show GEO's per diem rate calculations and models related to the VWP; labor

9  costs and payroll expenses (excluding Voluntary Work Program); all other costs of providing

10 services (including food, medical, building operations, etc.) at NWDC from 2005 to January 5,

11 2018." *See* Resp. to RFP 52. Yet, Washington has not yet received the responsive documents

12 and GEO refuses to produce them now. Indeed, during the meet and confer telephone

13 conferences, and in their CR 37 letters, GEO's counsel backtracked, rejected Washington's

14 articulation of why profit and financial information is relevant and necessary for proof of unjust

15 enrichment, the disgorgement of profit remedy, and analysis of GEO's claimed offset, and

16 refused to produce any financial documents without order of the court. *See* Brenneke Decl.¶12,

17 Ex. H (GEO's Aug. 14, 2018 letter); *id. at* ¶9, Ex. F (Washington's Aug. 10, 2018 letter).

18     Because the financial documents requested about the VWP, the NWDC, the U.S.

19 Corrections & Detention Division, and The GEO Group, Inc. all are relevant to proving and

20 assessing the elements of unjust enrichment, the Court should order that they be produced within

21 10 days, and in full.

22     **2.     GEO's Response**

23         **a.     The State Seeks Discovery That Is Irrelevant And Burdensome**

24     The State's litany of requests for information regarding GEO's finances should be

25 denied.  This Court may issue an order to "protect a party or person from … undue burden or

26 expense," and it may specifically protect confidential commercial information.  Fed. R. Civ. P.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

26(c).  While the Federal Rules allow for broad discovery, such discovery must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.."  Fed. R. Civ. P. 26(b)(1).  It is improper to order a party to produce irrelevant information. *Jiminez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("While the standard for relevance in the context of discovery is broader than in the context of admissibility…, this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery.") (citations omitted); *Reming v. Holland Am. Line, Inc.*, No. C11-1609RSL, 2012 WL 3704937, at *1-2 & n.1 (W.D. Wash. Aug. 27, 2012).

As noted above, the State currently seeks to discover the "profits or losses for NWDC" for "each year from 2005 to the present."  *See supra*, III(A).  The State also seeks to discover all manner of other confidential business documents including internal financial analyses, performance analyses, budgets of various kinds, operating costs, payroll expenses, financial models used in bids and contract negotiations, and many other documents.  *See id.*  The State's requests are not limited to NWDC but extend to the rest of GEO's business as well.  *See id.*  In short, the State apparently seeks to audit GEO's entire business dating back to 2005 on the pretense that that material is somehow essential to the State's claims.

But the State's claims do not turn on GEO's general financial status and profitability.  That information plainly does not relate to the applicability of the MWA.  And in its own words, the State measures GEO's alleged unjust enrichment according to "the ***difference between the $1 per day that [GEO] pays detainees and the fair wage that it should pay*** for work performed at NWDC," because it is "unjust for [GEO] to retain the benefit gained from its practice of ***failing***

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1     ***to pay adequate compensation*** to detainees for the work they perform at NWDC."  Complaint,

2     ECF 1-1, ¶¶ 6.5-6.6 (emphasis added).

3           The State's other filings show the same pattern.  For example, the State claimed that GEO

4     has been unjustly enriched "by failing to pay detainee-workers a fair wage."  State's Response

5     to GEO's Mot. to Dismiss Compl., ECF 17, at 7.  When detailing the elements of this claim later

6     in that same filing, the State described the alleged benefit to GEO as "the difference between the

7     $1 per day that it pays and the fair wage that GEO should have paid."  *Id.* at 20.  While the State

8     claimed that this measure is "untethered" to the MWA, the State's measurement was still the

9     "fair market rate [GEO] would have had to pay for the work performed."  *Id.* at 20 n.6.

10         But to the extent this theory of unjust enrichment is appropriate at all—which GEO does

11     not admit—it has no relationship GEO's profitability in Washington or elsewhere:  the State's

12     theory calls for a differential calculation between what GEO ***has*** paid and whatever the State

13     thinks GEO ***should*** pay.  Indeed, when the State talks about "profit" it really means a "benefit,"

14     an element required under an unjust enrichment claim.  But surely the State would make the

15     same claim if GEO was operating the VWP or the facility at a loss, rather than as a profit.  The

16     State's loose use of the term "profit" should not entitle it to discovery of irrelevant information

17     about "profits" that will only be used to harass GEO in a trial or in the public opinion.  Thus,

18     discovery relating to profitability is irrelevant and undiscoverable.  *Jiminez*, 733 F. Supp. 2d at

19     1273.  It is just the sort of "fishing expedition" that courts should not allow.  *Hofer*, 981 F.2d at

20     380; *Reming*, 2012 WL 3704937, at \*1-2.

21         The State's own testimony confirms this result.  The State claimed that when GEO

22     "employs" detainees to do odd tasks at NWDC, "it needs to pay workers no less than $11 an

23     hour."  *Id.* at 126:23-127:7.  Again, the State claimed that "if GEO was only going to pay

24     minimum wage for cooking, let's say, GEO makes $10 each hour that it otherwise had to pay

25     someone else to do that same work."  *Id.* at 135:13-18.  The State admitted that the "minimum

26     wage has to be paid to employees who work for employers in Washington state, regardless of

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    whether a corporation makes any money, lots of money, [or] loses money." *Id.* at 161:24-162:4.

2    And while the State then claimed that GEO's profitability could be relevant to unjust enrichment

3    because that "analysis does depend on what the benefit is," *id.* at 162:5-9, the State nonetheless

4    claimed that the benefit to GEO was the "receipt of the [detainees'] labor," which it further

5    described as "avoid[ing] having to pay the minimum wage or any fair wage to workers and yet

6    ***get[ting] the full value of their work***," *id.* at 163:1-4 (emphasis added).  When asked how the

7    State would calculate that "full value," the State explained that the "***legislature sets it or the***

8    ***people through their initiative lawmaking power set the value of hourly work***, at least at a

9    minimal level." *Id.* at 163:10-13 (emphasis added).

10         This testimony shows that GEO's profitability is irrelevant to the State's claims:  If GEO

11   would owe a janitor minimum wage to clean, then it could conceivably have been unjustly

12   enriched—which GEO does not admit—by getting the same work from a detainee for only $1;

13   and if GEO would owe a janitor a "fair wage" of, say, $15 per hour to clean, then again it could

14   conceivably have been unjustly enriched by getting the same work for $1.  But in neither case

15   would GEO's ***profitability*** affect the calculation of its unjust enrichment, let alone any of the

16   financial information the State now seeks.  *See supra*, III(A).  Thus, GEO's profitability is just

17   as irrelevant to the State's unjust enrichment claim as it is to the State's claim for declaratory

18   and injunctive relief under the MWA.  And if profitability is irrelevant, then discovery is

19   improper.  *Hofer*, 981 F.2d at 380; *Jiminez*, 733 F.Supp.2d at 1273.

20         The State's current arguments are not to the contrary.  The State argues (1) that GEO's

21   profit margins are relevant to its unjust enrichment claim because they are affected by alleged

22   savings achieved through the VWP; (2) that the State needs to dig into all of GEO's financial

23   records because GEO does not keep records at NWDC that are specifically tailored to proving

24   the State's case; and (3) that the State should get the records it wants because GEO agreed at one

25   point to provide some of them and should not be allowed to refuse now.  *See supra*, III(A)(1)(a).

26   None of these arguments shows that GEO's profitability is relevant to its liability under either

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

of the State's claims.  And the first argument—the only one that even tries to connect profits to an unjust enrichment award—is backward:  even if GEO's profits are ***affected by*** the VWP—which GEO does not admit—those profits are not therefore ***the cause of*** any unjust enrichment to GEO.

Nor does the State's reliance on *Young v. Young* change the outcome.  *Young* involved an unjust enrichment claim regarding the improvement of a piece of real estate.  *See* 164 Wash. 2d at 480-83.  In assessing the proper measure of unjust enrichment, the court "h[e]ld [that] when calculating an unjust enrichment award in a quasi-contract action for improvements to real property the award may not be reduced by the claimant's actual cost absent fault by the claimant or inconsequential relationship to the benefit conferred to the defendant."  *Id.* at 491.  That holding simply has nothing to do with the State's claim, which expressly turns on whether GEO needed to pay either a minimum wage or some other "fair wage" at NWDC.  *Young* offers no support for the wide-ranging discovery the State seeks here.

Even were the information sought marginally relevant—which GEO does not admit—the Court should still consider whether particularized harm will result from disclosure of information to the public.  If so, it should balance the public and private interests to decide whether to compel production.  *See Solis v. Washington, Dep't of Corr.*, No. 08-5362RJB, 2009 WL 10676491, at *1 (W.D. Wash. Oct. 15, 2009) (Bryan, D.J.) (citing *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004)).  With respect to confidential information, courts should consider the risk of "inadvertent disclosure" of a trade secret or other confidential information.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Here, that risk is palpable.  First, any use of GEO's confidential information would likely be prejudicial.  The State has admitted that it intends to produce a "calculation and analysis" of GEO's apparent unjust enrichment that would "be disclosed in connection with [the State's] disclosure of an expert report in this case."  Dep. of Melody Colleen, 166:5-18.  The State would not explain how any profitability or other financial information would affect that calculation and

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

analysis, however.  And any use of GEO's financial information at trial would be more prejudicial than probative.  *See, e.g.*, *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 949-50 (N.D. Cal. 2016) (noting that "proof of greed, without more, is likely to amount to a great deal of unfair prejudice with little probative value).  The State has already trumpeted GEO's alleged greed to the media to support this claim.  *E.g.*, Attorney General of Washington, AG Ferguson Sues Operator Of The Northwest Detention Center For Wage Violations (Sept. 20, 2017)          (http://www.atg.wa.gov/news/news-releases/ag-ferguson-sues-operatornorthwest-detention-center-wage-violations) (describing GEO as a "multi-billion dollar corporation" that has netted "millions in ill-gotten profits").[2]  If the only plausible use for GEO's financial information is to disclose it to an expert and then to prejudice GEO in court, the Court should not allow discovery of that information now.

At bottom, the State has no legitimate purpose for GEO's financial information.  Its only plausible use is to prejudice GEO, and any inadvertent public disclosure of that information could create further disturbances outside NWDC beyond those that the State's case has already provoked.  For these reasons, GEO respectfully requests a protective order prohibiting the State from inquiring into GEO's finances, both at NWDC and nationwide.

    **b.**    **The Court Need Not Order Burdensome Discovery Of GEO's Finances Unless And Until That Information Becomes Relevant**

Even were the Court to deem evidence of profits to be relevant to the unjust enrichment claim, GEO should not have to incur the prejudice of providing such information until the Court

---

[2] Over the past few months, protesters have been regularly present outside NWDC and have caused significant disruptions.  Those protests have resulted in the need for new fencing to keep people away from nearby train tracks.  Jamie Tompkins, *Protesters Voice Complaints To Tacoma City Council Over Northwest Detention Center* (https://q13fox.com/2018/07/10/protesters-voice-complaints-to-tacoma-city-council-over-northwest-detention-center/) (last visited Sept. 5, 2018).  And one recent protest even resulted in several arrests when a group of people surrounded a local police officer's car outside NWDC.  Kenny Ocker, *10 Arrested Outside Northwest Detention Center, Tacoma Police Say* (https://www.kiro7.com/news/south-sound-news/10-arrested-outside-northwest-detention-center-tacoma-police-say/777884865) (last visited Sept. 5, 2018).  Many of these protests focus on GEO's for-profit status, such that the risk of an inadvertent disclosure of information relating to GEO's profitability may well encourage further and more violent protests.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    or a factfinder has found that GEO is liable to pay restitution to the State.  As the Court is aware,

2    this issue is novel, and GEO has raised numerous defenses against the State's ability to recover

3    restitution for unjust enrichment.

4          A court may bifurcate proceedings under Federal Rule of Civil Procedure 42(b).  That

5    Rule allows a court to order a "separate trial of one or more separate issues [or] claims" in order

6    to promote "convenience, to avoid prejudice, or to expedite and economize."  A decision to

7    bifurcate under Rule 42(b) is within the court's discretion.  *Cty. v. Travelers Indem. Co.*, No.

8    C14-1957, 2015 WL 4878011, at *2 (W.D. Wash. Aug. 14, 2015).  Bifurcating a case into

9    liability and damage phases is one common approach.  *Estate of Diaz v. City of Anaheim*, 840

10   F.3d 592, 603 (9th Cir. 2016) (finding district court abused its discretion by refusing to bifurcate

11   liability and damages when testimony relevant only to damages was prejudicial on liability);

12   *Allstate Ins. Co. v. Breeden*, 410 F. App'x 6, 9 (9th Cir. 2010) (upholding bifurcation of damages

13   and liability proceedings when "liability … was a dispositive issue" and verdict "obviated the

14   need for a jury trial … for damages"); *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th

15   Cir. 1993); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) ("One favored

16   purpose of bifurcation is to … avoid[] a difficult question by first dealing with an easier,

17   dispositive issue").

18         Bifurcating proceedings may also warrant staying discovery on issues that are only

19   relevant to a subsequent stage.  Thus, for example, this Court has stayed discovery into a

20   plaintiff's bad faith claim when the defendant's contract-based defense was discrete and

21   potentially dispositive.  *Karpenski v. Am. Gen. Life Cos.*, LLC, 916 F. Supp. 2d 1188, 1190

22   (W.D. Wash. 2012).  Another court stayed discovery into a defendant's net worth when that

23   information would be relevant only after liability was specifically established.  *Ziemkiewicz v.*

24   *R+L Carriers, Inc.*, Civ. No. RDB-13-0048, 2013 WL 2299722, at *2 (D. Md. May 24, 2013).

25         To the extent NWDC's profitability is relevant to any issue in this case—and it is not—

26   it will be relevant only to the amount of any award against GEO and not to GEO's underlying

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  liability.  That liability will turn entirely on other evidence relating to the proper scope of GEO's

2  legal obligations, the proper construction of its contract, and its performance of that contract in

3  compliance with ICE's direction.  Because establishing liability will not involve any information

4  relating to NWDC's profitability, the Court can easily bifurcate proceedings and stay disclosure

5  of that information unless and until GEO is found to be liable.

6      Other courts have used similar procedures.  *Physicians Healthsource, Inc. v. Janssen*

7  *Pharmaceuticals, Inc.*, for example, involved a Telephone Consumer Protection Act ("TCPA")

8  claim relating to a fax that provided drug information.  No. 12-2132(FLW), 2014 WL 413534,

9  at *1 (D.N.J. Feb. 4, 2014).  The parties disputed whether the fax was informational or an

10  advertisement, which affected whether sending the fax violated the TCPA.  *Id.*  Because that

11  determination raised a "narrow, potentially dispositive issue" that could be settled with limited

12  discovery, and because discovery on that issue would not "significant[ly] overlap" with the

13  remaining merits issues, bifurcation was an efficient means to resolve the case.  *Id.* at *4-5.  The

14  Ninth Circuit has approved a similar approach.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942

15  (9th Cir. 2001).

16      The same procedure would work here.  Both of the State's claims pose a narrow question

17  regarding liability:  is GEO required to comply with a state wage law or pay some other "fair

18  wage" when it administers the VWP in accordance with ICE's contract terms and governing

19  policies?  While the parties disagree on the answer, settling that disagreement does not turn on

20  any of the voluminous records the State now seeks from GEO; it turns on the proper

21  interpretations of federal and state statutes, federal regulations and policies, and the terms of a

22  contract.  These issues can be settled with limited evidence, offering the Court an easily separable

23  issue that can be resolved quickly and efficiently before any exhaustive review of GEO's

24  financial records even becomes relevant.  *See Danjaq LLC*, 263 F.3d at 961.

25      On the other hand, forcing GEO to disclose corporate financial information now creates

26  the constant risk of its misuse through prejudicial disclosures to the public or a jury about GEO's

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

24

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    "profits" as a result of wrongdoing.  The State has offered no logical link between GEO's

2    finances and any legal liability for unjust enrichment.  The State claims it seeks "damages" that

3    are "untethered" to the MWA, State's Opp to GEO's Mot. To Dismiss, ECF 17, at 20 n.6, but if

4    so, its claim is unmoored from any standard at all.  The State has essentially admitted this

5    problem by trying to distinguish between a wage action and the State's unjust enrichment action.

6    Dep. of Colleen Melody, 163:9-15 (claiming that the State's unjust enrichment claim turns on

7    GEO's alleged authority to pay more than the "floor set by law").  The State has further explained

8    that it intends to give GEO's information to an expert for a "precise calculation" about "the

9    amount of the unjust enrichment," but has never explained the connection between profitability

10   and liability for unjust enrichment.  *Id.* at 171: 1-10.  As noted, GEO's pleadings make it clear

11   that the State's unjust enrichment claim seeks only the difference between a "fair wage" and $1

12   per day per detainee.

13           Allowing the State to use profitability to establish liability for unjust enrichment would

14   give it free rein to shake down employers as it pleases.  On the State's logic, any Washington

15   commercial entity could be accused of unjust enrichment whenever the State alleges that it is too

16   profitable.  Given that the State has already claimed—and that this Court has agreed—that it is

17   not subject to any statutes of limitations, the State's theory would amount to a breathtaking

18   amount of prosecutorial power: the State could sue any company it wishes, investigate its

19   finances, and seek to force it to pay the State an award if it decides that that company "can pay

20   [its employees] more."  *See* Dep. of Melody Colleen, 127:7.  That is not the law, and the Court

21   should not sanction discovery that advances such a theory.

22           **3.       Washington's Reply**

23           GEO argues its financial information is irrelevant to Washington's claims and that

24   producing it now would be prejudicial and inefficient. GEO's arguments are unpersuasive and

25   its effort to postpone all discovery regarding its financial benefit from detainee labor impedes

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

25

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   Washington's ability to litigate its unjust enrichment case in chief. The Court should compel

2   GEO to produce its financial information and documents within 10 days.

3           **a.**      **GEO's Financial Information and Documents Are Relevant To Washington's Unjust Enrichment Claim and to the Calculation of**

4                           **Profits GEO Must Disgorge**

5   GEO's benefit from detainee labor at NWDC – and the financial information and

6   documents that prove and quantify it – are relevant to liability and calculating disgorgement.

7   First, the requested financial information is necessary to prove unjust enrichment liability

8   itself. Unjust enrichment is an equitable claim arising from a contract "implied in law;" courts

9   evaluate the "benefit" and value of the labor provided, from the perspective of "the receiver of

10  the benefit," to determine if it is unjust for the beneficiary to retain it and, if so, what

11  disgorgement is required to set things right. *Young*, 191 P.3d at 1262, 1265. Here, GEO denies

12  that it receives *any* benefit from the work of the detainees at NWDC or that the work is even

13  "necessary to run the facility." *See, e.g.,* GEO's Response, *supra* at 4. As such, the "benefit" to

14  GEO of detainee labor at NWDC is directly at issue. Washington is entitled to GEO's financial

15  documents and information to prove benefit and quantify the *amount* of the benefit detainee

16  workers have provided GEO. Such documents are necessary not only to prove GEO obtained a

17  benefit from detainee workers' labor, but also are necessary in considering whether it is "unjust"

18  for GEO to retain the financial benefit – a liability question.

19  Washington seeks NWDC financial documents to track the financial benefit to GEO of

20  its practice of employing detainees and paying them food or $1/day for work, instead of paying

21  them a fair wage or hiring outside workers. The discovery sought here is necessary to prove and

22  quantify the reduction of wage costs ($1/day or food instead of fair wages) and how those savings

23  increased GEO's value, profitability, and expanded its business.

24  As such, Washington is entitled to discover the "benefit" to GEO in the form of its

25  increased profits derived from the unfair labor practice. "A person has been unjustly enriched

26  when he has profited or enriched himself at another's expense, contrary to equity." *Cox v.*

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS
26
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   *O'Brien*, 206 P.3d 682, 688 (2009) (citing *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 482

2   (2007)). Because GEO is paid on the basis of a per diem contract, any savings on operational

3   costs, such as avoiding fair market labor costs necessary to run the facility, allows GEO to keep

4   more of each per diem rate payment for itself. GEO has reinvested this in the NWDC (increasing

5   bed capacity) and other parts of its business, all of which increase overall profits.  While GEO

6   denies any "profits from the [VWP] program itself," GEO's Response, *supra* at 4, as a result of

7   GEO's own accounting and bookkeeping choices, Washington must conduct a more holistic

8   analysis to understand how its labor practices benefit the NWDC's bottom line.

9        In unjust enrichment cases, courts have compelled financial "documents relevant to the

10   benefit [defendant] allegedly received." *See Am. KUSA Corp. v. Advantus Corp.*, No. CV 08-

11   3100-VBF(RCX), 2009 WL 10674756, at *3 (C.D. Cal. Sept. 29, 2009) (citing *United States ex*

12   *rel. Purcell*, 238 F.R.D. 321, 324 (D.C. D.C. 2006) ("defendants' profit … is not only [relevant,]

13   ... but it is patently central to the [plaintiff's] claims."); *State Farm Mut. Ins. Co. v. CPT Med.*

14   *Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D. N.Y. 2005) (financial records relevant to profit)).

15        Second, quantification of the amount of unjust enrichment is necessary for the remedy of

16   disgorgement. The fair market value of the detainee labor is a central part of the analysis, but

17   disgorgement of "unjust enrichment" must be for the full value by which the labor enriched the

18   beneficiary. *See Young*, 191 P.3d at 1258, 1265 (owner "must disgorge the entire value of the

19   benefit she received as determined by either the fair market value of the services rendered or the

20   amount the improvements enhanced the value of the property"). The remedy may include

21   disgorging "wrongfully obtained profits." *Staff Builders Home Healthcare, Inc. v. Whitlock*, 33

22   P.3d 424, 426 (2001). Here, the benefit to GEO from detainee labor includes, at a minimum, the

23   fair market value differential between a fair wage and what was paid ($1/day or food). However,

24   the difference between a fair wage and what GEO paid is not the only factor to be considered

25   when determining the scope of benefit the GEO received from its unfair labor practices. Indeed,

26   the amount of the profit GEO derived and retained from detainee labor at the NWDC and the

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

27

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

financial boon it received from its unfair labor practices are also part of the benefit that GEO received. It is undisputed that NWDC and GEO did make and retain profits, and Washington is entitled to discovery of the full "amount by which it has been unjustly enriched" by detainee labor to pursue its prayer for relief that GEO be ordered to disgorge it. ECF 1-1 ¶7.6. "Plaintiffs are entitled to discovery regarding their theory of recovery." *Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08CV1992 AJB MDD, 2012 WL 3150604, at *3 (S.D. Cal. Aug. 2, 2012) (allowing discovery of financial records to determine amount to be disgorged in unjust enrichment suit).

Third, GEO wrongly asserts that Washington's liability case revolves around GEO's contract with ICE. *See* GEO's Response, *supra* at 24 (liability evidence relates "to the proper scope of GEO's legal obligations, the proper construction of its contract, and its performance of that contract in compliance with ICE's direction;" "proper interpretations of federal and state statutes, federal regulations and policies"). This argument misses the mark. In fact, the unjust enrichment liability case revolves around GEO's implied in law contract with the detainees, not GEO's contract with ICE. Financial documents are relevant to the actual liability theory in this case.

Finally, GEO attempts to dodge accountability altogether by questioning the legitimacy of Washington's use of its prosecutorial law enforcement authority and claiming Washington is suing GEO, and can "shake down" any business, simply because it is "too profitable." *See* GEO's Response, *supra* at 25. GEO fails to identify any evidence of prosecutorial misconduct. This is a law enforcement case arising from GEO's own longstanding, unjust, and unfair labor practices. *See* Complaint, ECF 1-1 at ¶¶ 4.4-4.5, 4.9, 6.3-6.6. (GEO "utilizes detainee labor to operate NWDC," and pays detainees in food or $1/day, instead of the "adequate compensation," "minimum wage," or a "fair wage" that it should have paid). Washington seeks only what is fair and the remedy that is available under the common law: "disgorgement of unjust enrichment." *Id.* at ¶ 7.6.

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

28

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### b. Disclosure of GEO's Financial Documents Would Not Prejudice GEO

GEO claims that allowing discovery into its financial information will inflame community-based protests against it and the for-profit prison industry. GEO's Response, *supra* at 22, fn. 2. But GEO's corporate profits are no secret. GEO is publicly traded on the New York Stock Exchange and reports its overall annual financials on its website. *See* The GEO Group, Inc. 2001-17 Annual Reports, http://investors.geogroup.com/FinancialDocs (last checked Sept. 18, 2018).

Washington simply seeks to obtain financial information specific to the legal claims at the heart of this case: GEO's unjust benefit from detainee labor at the NWDC. GEO can produce responsive documents – to the extent necessary – pursuant to the terms of the Protective Order. GEO's profitability is requisite information to understand the extent of its enrichment and calculate the disgorgement that justice demands must occur. GEO cannot credibly claim to be prejudiced if Washington obtains, and uses, GEO's own financial documents to prove the elements of its unjust enrichment claim. As GEO's financial information can – inasmuch as is necessary – be shielded by the Protective Order, and is needed to prove liability and calculate the remedy for Washington's unjust enrichment claim, there is no harm or prejudice to GEO in producing it.

### c. Bifurcation Would Cause Prejudice and Is Inefficient

In a last ditch attempt to shield its financial information, GEO, alternatively, argues for two additional procedural delays: bifurcation of trial and a stay of discovery on remedies. However, the facts related to GEO's benefit from detainee labor at the NWDC are squarely at issue in both the liability and remedy aspects of Washington's case. Here, where there is a complete overlap of factual issues, bifurcation of the trial and delay of discovery of financial information essential to the liability phase until after the liability phase would rob Washington of information critical to its ability to prove its case. Bifurcation in this instance is also an affront

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

29

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    to judicial economy and would prejudice Washington, as it would require two periods of

2    overlapping discovery and two duplicative trials that would draw this matter out for years. As

3    bifurcation would not promote convenience, expedite or economize the proceedings, and itself

4    would cause prejudice, it meets none of the standards of Federal Rule of Civil Procedure 42(b)

5    and GEO's motion for bifurcation should be denied.

6    **B.      GEO's "Offset" Affirmative Defense**

7            In discovery, Washington also seeks financial information and documents about GEO's

8    "Offset" affirmative defense.  Specifically:

9            **INTERROGATORY NO. 8**:  For each year from 2005 to the present,
10   please state the amount and basis for the amount of GEO's claimed offset,
     including GEO's calculation in its Initial Disclosures: "Offset: $17.12 per hour
11   of participation in the Voluntary Work Program."

12           **RESPONSE TO NO. 8:**  GEO objects to this Interrogatory to the extent
     that it seeks that information protected by the attorney-client privilege, the work
13   product doctrine, the common interest privilege, and/or any other applicable
     privileges or immunities. GEO further objects on the grounds that the
14   Interrogatory is unduly burdensome, as it would require GEO to continuously
     supplement and amend its response without a defined end date. Subject to and
15   without waiving the above stated objections, GEO answers as follows: The
     formula is described in its Initial Disclosures and the data used in calculating the
16   offset come from the budget and actual expenditures of the NWDC. The rate of
     $17.12 has been established based on (1) GEO's calculation of $28.12 as cost per
17   detainee; (2) less the $1 dollar per day detainee participants are compensated for
     their participation in the VWP; and (3) less the $10 dollars per hour for the
18   balance of the allegedly applicable minimum wage. GEO seeks an offset to
     reimburse ICE for ICE expenditures providing for detainees essential living
19   expenses while earning minimum wages in ICE's VWP as GEO will pass on any
     increased VWP payments to ICE by way of an equitable adjustment. Pursuant to
20   Fed. R. Civ. P. 33(d), GEO will produce documents that state and describe the
     total expenditures for the relevant period that serve as the basis for the amount of
21   GEO's claimed offset. Documents that are referenced in, support, or form the
     basis for GEO's response to this Interrogatory are forthcoming and will be
22   produced in response to Plaintiff's Request for Production No. 19. Following
     production, GEO will provide Bates number references for the documents
23   produced in response to this Interrogatory.

24           **REQUEST FOR PRODUCTION NO. 19**: Please produce all
     documents that are referenced in, support, or that form the basis of Your response
25   to Interrogatory No. 8.

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS                                30                    ATTORNEY GENERAL OF WASHINGTON
                                                                               Civil Rights Unit
                                                                          800 Fifth Avenue, Suite 2000
                                                                           Seattle, WA  98104-3188
                                                                              (206) 464-7744

**RESPONSE TO NO. 19**: GEO objects to this Request on the grounds that it is unduly burdensome as it seeks "all documents . . . that form the basis" for GEO's response to Interrogatory No. 8, where documents sufficient to show the amount and basis of GEO's claimed offset would be reasonable and complete. Likewise, GEO objects to the Request as not proportionate to the needs of the case, as discovery of "all documents" that form the basis of the claimed offset does nothing to resolve any issue in the case and any burden on GEO would outweigh the negligible benefit Plaintiff would receive from the information. GEO objects to this Request to the extent that it seeks that information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO also objects to this Request as overly broad and unduly burdensome as Interrogatory No. 8 has no defined end date and requires GEO to continuously supplement its responses. Subject to and without waiving GEO's above stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, to the extent they exist, have not already been produced, and subject to the protective order entered in this case, produce relevant, responsive, non-privileged documents sufficient to show the amount and basis of GEO's claimed offset created from 2005 to January 5, 2018. In addition, GEO has already produced three responsive documents: GEO- State 19281, GEO-State 19283, and GEO-State 19286. GEO is withholding documents on the basis of the above stated objections.

### 1. Washington's Argument

GEO alleges an offset affirmative defense to Washington's unjust enrichment award for "costs incurred for caring for plaintiffs during their time in detention." ECF 34, page 7 at ¶8.12, *as modified by* Order on State's Motion to Dismiss or Strike Defendant's Counterclaims and Affirmative Defenses, ECF 44, at 5-6 (removing first clause). In discovery, GEO quantifies its offset at "$17.12 per hour of participation in the Voluntary Work Program." Brenneke Decl. ¶ 6, Ex. D (Resp. to Int. 8).

Washington seeks full discovery of the underlying documents that provide the basis for GEO's offset affirmative defense. Brenneke Decl. ¶ 5, Ex. C (RFP 19). In response, GEO produced three summary documents to support its quantification of the offset and indicated it would produce all documents sufficient to show the amount and basis for the offset calculations. *See* Brenneke Decl. ¶ 6, Ex. D (Resp. to RFP 19). Later, after Washington requested the underlying documents again in a CR 37 letter, counsel for GEO changed course and refused to

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

31

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1 produce them. *Id*. at ¶11, Ex. G (Washington's August 23, 2018 letter); *Id*. at ¶13, Ex. I (GEO's

2 August 23, 2018 letter). These documents are unquestionably discoverable and the Court should

3 order GEO to produce them.

4        In addition, GEO's finances and profits at issue in Section A, *supra*, also are relevant to

5 GEO's offset affirmative defense to Washington's unjust enrichment claim, as they are

6 circumstances that either make it unjust for GEO to retain the benefit without payment, *see*

7 *Young v. Young*, 191 P.3d at 1262, or require an offset. GEO focuses on the *costs* incurred for

8 caring for detainees during their time in detention, but that is only one side of the equation. To

9 defend against the offset, and retain the equitable nature of the unjust enrichment remedy of

10 which it is a part, Washington is entitled to full discovery related to the care of the detainees

11 under the terms of its "per diem" GEO-ICE NWDC contract: the costs, the revenues and

12 reimbursements GEO receives from ICE, and the profits earned. To ensure that any offset

13 analysis is equitable, the Court should compel GEO to produce all of its financial and profit

14 records regarding the benefit it retained from the NWDC and its VWP since 2005, including the

15 costs, revenues and profits it derived from the care for detainees.

16        **2.        GEO's Response**

17        The State's arguments in support of its motion to compel the production of GEO's

18 financial and profit records based on GEO's Offset affirmative defense are moot and should be

19 disregarded.  On September 14, 2018, GEO filed a Notice of Volunteer Dismissal of Offset

20 Affirmative Defense.  Prior to filing the Notice of Volunteer Dismissal of Offset Defense,

21 GEO met and conferred with the State regarding this issue, and the State indicated that they

22 had no objection to GEO's voluntary dismissal of its Offset affirmative defense.  As a result,

23 the State's arguments in support of its motion to compel that are based on GEO's Offset

24 affirmative defense are moot and should be disregarded.

25

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS                    32                ATTORNEY GENERAL OF WASHINGTON
                                                              Civil Rights Unit
                                                          800 Fifth Avenue, Suite 2000
                                                            Seattle, WA  98104-3188
                                                               (206) 464-7744

**3.** **Washington's Reply**

In light of GEO's dismissal of its offset affirmative defense, Washington respectfully requests this Court grant the Motion to Compel GEO's financial information and documents on the basis of Washington's unjust enrichment claim alone.

Dated this 18th day of September, 2018

Respectfully submitted,

BOB FERGUSON
Attorney General of Washington

s/ *Andrea Brenneke*
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
larondb@atg.wa.gov
marshac@atg.wa.gov
andreab3@atg.wa.gov

s/*Joan K. Mell*
Joan K. Mell, WSBA No. 21319
III Branches Law, PLLC
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
Telephone: (253)566-2510
Facsimilie: (281)664-4643
joan@3brancheslaw.com

**NORTON ROSE FULBRIGHT US LLP**

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

33

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**NORTON ROSE FULBRIGHT US LLP**
Andrea L. D'Ambra
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
andrea.dambra@nortonrosefulbright.com

Charles A. Deacon
300 Convent St.
San Antonio, Texas 78205
Telephone: (210) 270-7133
Facsimile: (210) 270-7205
charlie.deacon@nortonrosefulbright.com

Mark Emery
799 9th Street NW, Suite 1000
Washington, DC 20001-4501
Telephone: (202) 662-0210
Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

**GREENBERG TRAURIG, LLP**
Scott Schipma
2101 L Street, N.W.
Washington, DC  20037
Telephone: (202) 331-3141
schipma@gtlaw.com

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

34

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**CERTIFICATION**

2       I certify that the full response by the responding party has been included in this

3   submission, and that prior to making this submission the parties conferred to attempt to resolve

4   this discovery dispute in accordance with LCR 37(a).

5   Dated: September 18, 2018

6                                                           *s/ Andrea Brenneke*
                                                            ANDREA BRENNEKE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6

7   Dated: September 18, 2018

                              *s/Andrea Brenneke*
8                              ANDREA BRENNEKE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LCR 37 EXPEDITED JOINT DISCOVERY
MOTION TO COMPEL DEFENDANT GEO'S
FINANCIAL DOCUMENTS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744