1

2

THE HONORABLE ROBERT J. BRYAN

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

10

STATE OF WASHINGTON,

Plaintiff,

11

12

v.

13

THE GEO GROUP, INC.,

14

Defendant.

15

16

Case No.: 3:17-cv-05806-RJB

DECLARATION OF JOAN K. MELL
ATTACHING PUBLIC RECORDS FROM
THE GOVERNOR'S OFFICE AND
COMMUNICATIONS FROM L&I

17

I, Joan K. Mell, make the following statement under oath subject to the penalty of perjury

18

19

pursuant to the laws of the United States and the State of Washington:

20

1.  I am the attorney for The GEO Group, Inc. in the above-captioned matter.  I am over the age of

21

eighteen (18), and I am competent to testify in this matter.

22

23

2.  Attached at Bates Nos. 5-45 are true and correct copies of documents received in response to a

Public Records Request submitted to Governor Inslee's office.

24

25

3.  Attached also at Bates Nos. 1-4 are true and correct copies of a Public Records Request

26

submitted to the Department of Labor and Industries ("L&I") and the corresponding

27

communications back from L&I delaying its response to the public records request.

28

29

30

31

DECLARATION OF JOAN K. MELL ATTACHING DOCUMENTS FROM
THE GOVERNOR'S OFFICE
AND PRR COMMUNICATIONS FROM L&I -
3:17-cv-05806-RJB                    1 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

4. I have also attached at Bates Nos. 46-62 excerpted deposition testimony and exhibits from L&I's speaking agent 02/24/18 testifying about L&I's lack of jurisdiction over NWDC.

5. On or about Friday September 28, 2018, I spoke with Tammy Fellin about identifying the assistant attorney general who was advising L&I at the March 11, 2014 meeting and corresponding decision making regarding L&I jurisdiction over the NWDC at that time, and who would be her representative now. She indicated she would get back to me. I have not received a response as of Monday October 1, 2018 before the scheduling hearing.

6. I have also spoken with Nicholas Brown asking him to authenticate the PRR documents and affirm by way of a declaration that the Governor's Office and L&I concluded that Washington State had no jurisdiction to enforce the Minimum Wage Act against GEO for the detainee participants in the Voluntary Work Program when the Governor's Office received a request for L&I investigation in 2014. Mr. Brown is formulating his testimony and indicated he would get back with me later this week.

Dated this 1st day of October, 2018 at Fircrest, WA.

III Branches Law, PLLC

_____
Joan K. Mell, WSBA #21319
Attorney for The Geo Group, Inc.

DECLARATION OF JOAN K. MELL ATTACHING DOCUMENTS FROM
THE GOVERNOR'S OFFICE
AND PRR COMMUNICATIONS FROM L&I -
3:17-cv-05806-RJB                    2 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

**CERTIFICATE OF SERVICE**

I, Joseph Fonseca, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On October 1, 2018, I electronically filed the above Declaration of Joan K. Mell, with the Clerk of the Court using the CM/ECF system and served via Email to the following:

Office of the Attorney General
La Rond Baker, WSBA No. 43610
Marsha Chien, WSBA No. 47020
Andrea Brenneke, WSBA No. 22027
Eric A. Mentzer, WSBA No. 21243
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
LaRondB@atg.wa.gov
MarshaC@atg.wa.gov
andreab@atg.wa.gov
EricM@atg.wa.gov

Norton Rose Fulbright US LLP
Charles A. Deacon (Pro Hac Vice)
300 Convent St.
San Antonio, TX 78205
charlie.deacon@nortonrosefulbright.com

Norton Rose Fulbright US LLP
Mark Emery (Pro Hav Vice)
799 9th St. NW, Suite 1000
Washington, D.C. 20001-4501
mark.emery@nortonrosefulbright.com

Norton Rose Fulbright US LLP
Andrea D'Ambra (Pro Hac Vice)
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com

Greenberg Traurig, LLP
Scott Schipma (Pro Hac Vice)
2101 L Street, NW
Washington, D.C. 20037
schipmas@gtlaw.com

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 1st day of October, 2018 at Fircrest, Washington.

_____
Joseph Fonseca, Paralegal

DECLARATION OF JOAN K. MELL ATTACHING DOCUMENTS FROM
THE GOVERNOR'S OFFICE
AND PRR COMMUNICATIONS FROM L&I -
3:17-cv-05806-RJB                     3 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

Department of Labor and Industries
Public Records Unit
PO Box 44632
Olympia WA 98504-4632

Questions? Call 360-902-5556



## Request for Public Records

Email request to: **PublicRecords@Lni.wa.gov**
Or
Fax request to: 360-902-5529

**Requestor Information:**
* Required field

| | |
|---|---|
| Representing/On behalf of*: | |
| Requestor name*: | JOAN MELL |
| Company name: | UBI #: |
| Mailing address: 1019 Regents Blvd. Ste 204 | |
| City: Fircrest | State: WA    Zip code: 92466 |
| Phone number*: 253 566 2510    Fax number: | Email: joan@3brancheslaw.com |

**Requesting records on:**

☐ **Workplace Safety and Inspection records**

| Company name: | | UBI #: | |
|---|---|---|---|
| Date of Incident: | | Inspection #: | |
| Was there a fatality? ☐ Yes ☐ No | Is this in litigation? ☐ Yes ☐ No | Are you appealing? ☐ Yes ☐ No | Date of appeal hearing: |
| ☐ I need the complete inspection file. | | ☐ I need a copy of the complaint(s) only. | |
| ☐ I need the citation(s) only. | | ☐ I need (other): | |

☐ **Construction Trades records**

| ☐ Contractor Registration | ☐ Plumber Certification | ☐ Electrical License/Permit | ☐ Elevator License/Inspection |
|---|---|---|---|
| Company name & UBI #: | | Description of records you need: | |

☐ **Employment Standards Wage Complaint** (such as wage & overtime)    ☐ **Prevailing Wage Complaint**

| Company name: | UBI #: | Approximate date: |
|---|---|---|

☐ **DOSH Discrimination Complaint** (for reporting a hazard)    ☐ **Industrial Insurance Discrimination Complaint** (for filing a claim)

| Company name/Complainant name: | UBI #/Complaint #: | Approximate date: |
|---|---|---|

☐ **Employer Audit Records**    ☐ **Fraud Investigation Records**

| Company name/Injured Worker name: | UBI #/Claim #: | Approximate date: |
|---|---|---|

☒ **Other records** (Give a brief description of the records you need.)

documents regarding L&I jurisdiction over the NWDC in Tacoma.
all documents regarding the jurisdiction of the different L&I
programs at the NW Detention Center to respond to the Governor's
Inquiry as referenced in the attached memos.
all documents about the NWDC $ per day voluntary work program

I chose to inspect the records at no charge before selecting paper copies. ☒Yes  ☐ No
Please note - the review of the records will be held at L&I's main office in Tumwater. *Photocopies may be charged at 15 cents per copy.*

*By signing below I certify that I will not use the requested records for commercial purposes in the event that a list of individuals is included in the material provided, as per RCW 42.56.070(8). (This statute does not apply to lists of businesses.) The Department of Labor and Industries defines commercial purpose as communication with the individuals named in the record for the purpose of facilitating profit-expecting activity.*

| Date 8-13-18 | Name (please print) Joan K Mell | Signature |
|---|---|---|

F101-009-000 Request for Public Records 03-2013

Saenz, Kenya V (LNI)

| | |
|---|---|
| From: | Leland, Maggie (LNI) |
| Sent: | Thursday, March 13, 2014 12:20 PM |
| To: | Soiza, Anne M (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI); Puente Jr., David (LNI); Korzenko, John G (LNI); Johnson, David C (LNI); Saenz, Kenya V (LNI) |
| Cc: | Sharma, Suchi (LNI); Fellin, Tammy (LNI) |
| Subject: | RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection |

This message has been archived. View the original item

Anne:

Tammy, Suchi, and I are getting info together on the jurisdiction of the different L&I programs at the NW Detention Center in order to respond to the Governor's inquiry. We got information from the Industrial Insurance division that the Geo

38


EXHIBIT
6
Cant
PENGAD 800-631-6599

GEO-STATE231536

| | |
|---|---|
| **From:** | Joan Mell |
| **To:** | LNI RE Public Records Mailbox |
| **Subject:** | Internet Site Inquiry - Public Records Request RCW 42.56 |
| **Date:** | Monday, August 13, 2018 3:28:21 PM |
| **Attachments:** | 2018_08_13_15_26_54.pdf |

Joan K. Mell
III Branches Law, PLLC
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com

GEO-STATE231537

From: **Chastain, Laurel K. (LNI)** ISHA235@LNI.WA.GOV
Subject: Public records request 125171
Date: September 28, 2018 at 4:59 PM
To: JOAN@3BRANCHESLAW.COM



Request ID number:          125171
Subject:          See your attached request

Dear Joan K. Mell:

In reference to the request identified above, we have determined that in order to locate the materials requested we will require additional time to respond to you. Your new estimated response date is October 19, 2018.

Sincerely,

# Laurel Chastain

Form and Record Analyst
Public Records | Labor & Industries (L&I)
Laurel.Chastain@lni.wa.gov | 360-902-4937
PublicRecords@lni.wa.gov | 360-902-5556 | 360-902-5529(fax)
**L&I's Public Records fee schedule:** WAC 296-06-120
Submit public records request online at www.lni.wa.gov/publicrecords



125171-
Request.pdf

GEO-STATE231538



JAY INSLEE
Governor

**STATE OF WASHINGTON**
OFFICE OF THE GOVERNOR
P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov

### REQUEST FOR PUBLIC RECORDS

DATE OF REQUEST _8-13-18_

REQUESTER'S NAME _Joan Mell_ PHONE NUMBER _253 566 2510_

ADDRESS _1019 Regents Blvd Ste 204_

_Fircrest WA 98466_

Description of Records: _All communications in native format_
_that correspond with the attached email. All_
_documents on h & I jurisdiction at the NWDC_
_to include all information on the "different_
_h & I programs at the NW Detention Center"_
_All documents regarding any inquiry by_
_the Governor about state jurisdiction over_
_the NWDC._

_____ I want to inspect the public records.

__X__ I want copies of the public records. I prefer to receive them in the following format
(describe): _digital_

I certify that the information obtained through this request for public records will not be used for commercial purposes. I understand charges may apply to records provided in response to my request and I confirm that I will pay for those charges.

_____
Signature

GEO-STATE231539

Saenz, Kenya V (LNI)

| | |
|---|---|
| From: | Leland, Maggie (LNI) |
| Sent: | Thursday, March 13, 2014 12:20 PM |
| To: | Soiza, Anne M (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI); Puente Jr., David (LNI); Korzenko, John G (LNI); Johnson, David C (LNI); Saenz, Kenya V (LNI) |
| Cc: | Sharma, Suchi (LNI); Fellin, Tammy (LNI) |
| Subject: | RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection |

This message has been archived. View the original item

Anne:

Tammy, Suchi, and I are getting info together on the jurisdiction of the different L&I programs at the NW Detention Center in order to respond to the Governor's inquiry.  We got information from the Industrial Insurance division that the Geo



38

GEO-STATE231540

From: **Wonhoff, Taylor (GOV)** taylor.wonhoff@gov.wa.gov
Subject: RE: Public Disclosure Request RCW 42.56
Date: August 20, 2018 at 9:20 AM
To: Joan Mell joan@3brancheslaw.com
Cc: Beatty, Susan (GOV) Susan.Beatty@gov.wa.gov

TW

Hi Joan,

I'm writing to acknowledge receipt of your request for public records.  We are in the process of pulling responsive files.  I expect that we will be able to get you your files in 3-4 weeks.

Thanks,
Tip

**TAYLOR "TIP" WONHOFF**
Deputy General Counsel | Office of Governor Jay Inslee
Preferred gender pronouns: he/him/his
Desk: 360.902.4132 | Cell: 360.280.9776
www.governor.wa.gov | taylor.wonhoff@gov.wa.gov
*Email communications with state employees are public records and may be subject to disclosure, pursuant to Ch. 42.56 RCW.*

    

**From:** Joan Mell <joan@3brancheslaw.com>
**Sent:** Monday, August 13, 2018 2:47 PM
**To:** GOV mi Public Disclosure <publicdisclosure@gov.wa.gov>
**Subject:** Public Disclosure Request RCW 42.56


Joan K. Mell
III Branches Law, PLLC
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com


GEO-STATE231541

From: **Wonhoff, Taylor (GOV)** taylor.wonhoff@gov.wa.gov  
Subject: RE: Public Disclosure Request RCW 42.56
Date: September 17, 2018 at 1:50 PM
To: Joan Mell joan@3brancheslaw.com
Cc: Beatty, Susan (GOV) Susan.Beatty@gov.wa.gov

Hi Joan,

I've completed collection of responsive files, and I think we have about 50 responsive documents to send you. I've put them on a disc and we will get that out to you in today's mail. If you have any thoughts or concerns about this disclosure, please reach out. I'll now close out your request. Thanks for your patience,
Tip

**TAYLOR "TIP" WONHOFF**
Deputy General Counsel | Office of Governor Jay Inslee
Preferred gender pronouns: he/him/his
Desk: 360.902.4132 | Cell: 360.280.9776
www.governor.wa.gov | taylor.wonhoff@gov.wa.gov
*Email communications with state employees are public records and may be subject to disclosure, pursuant to Ch. 42.56 RCW.*

     

**From:** Wonhoff, Taylor (GOV)
**Sent:** Monday, August 20, 2018 9:20 AM
**To:** 'Joan Mell' <joan@3brancheslaw.com>
**Cc:** Beatty, Susan (GOV) (Susan.Beatty@gov.wa.gov) <Susan.Beatty@gov.wa.gov>
**Subject:** RE: Public Disclosure Request RCW 42.56

Hi Joan,

I'm writing to acknowledge receipt of your request for public records. We are in the process of pulling responsive files. I expect that we will be able to get you your files in 3-4 weeks.

Thanks,
Tip

**TAYLOR "TIP" WONHOFF**
Deputy General Counsel | Office of Governor Jay Inslee
Preferred gender pronouns: he/him/his
Desk: 360.902.4132 | Cell: 360.280.9776
www.governor.wa.gov | taylor.wonhoff@gov.wa.gov
*Email communications with state employees are public records and may be subject to disclosure, pursuant to Ch. 42.56 RCW.*

     

**From:** Joan Mell <joan@3brancheslaw.com>

**Sent:** Monday, August 13, 2018 2:47 PM
**To:** GOV mi Public Disclosure <publicdisclosure@gov.wa.gov>
**Subject:** Public Disclosure Request RCW 42.56


Joan K. Mell
III Branches Law, PLLC
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com

GEO-STATE231543

| | |
|---|---|
| **From:** | Wonhoff, Taylor (GOV)NICK (GOV)B |
| **To:** | Brown, Nicholas (GOV) |
| **Date:** | Mar 11, 2014 at 8:47 AM |
| **Subject:** | RE: TIME SENSITIVE: Need assistance on ending detention center hunger strikeN=Wonhoff, Taylor (G |

Okay, no problem.

**From:** Brown, Nicholas (GOV)
**Sent:** Tuesday, March 11, 2014 8:48 AM
**To:** Wonhoff, Taylor (GOV)
**Subject:** Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike

Not off the top oft head.

Sent from my iPhone

On Mar 11, 2014, at 8:46 AM, "Wonhoff, Taylor (GOV)"
<taylor.wonhoff@gov.wa.gov> wrote:

> Do you already have a contact there?
>
> **From:** Brown, Nicholas (GOV)
> **Sent:** Tuesday, March 11, 2014 8:46 AM
> **To:** Wonhoff, Taylor (GOV)
> **Subject:** Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike
>
> Thanks.  Might be easiest just to connect with one of the AAGs for L&I as well.
>
> Sent from my iPhone
>
> On Mar 11, 2014, at 8:44 AM, "Wonhoff, Taylor (GOV)"
> <taylor.wonhoff@gov.wa.gov> wrote:
>
>> Will look at it right away.
>>
>> **From:** Brown, Nicholas (GOV)
>> **Sent:** Tuesday, March 11, 2014 8:44 AM
>> **To:** Wonhoff, Taylor (GOV)
>> **Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention

GEO-STATE231544

center hunger strike

See below.  Unusual question.  Can you review this?  I'm assuming that they're really off base here, but haven't given it much thought.  Thanks.

Sent from my iPhone

Begin forwarded message:

> **From:** Angelica Chazaro <achazaro@gmail.com>
> **Date:** March 11, 2014, 8:18:43 AM PDT
> **To:** "Brown, Nicholas (GOV)"
> <Nicholas.Brown@gov.wa.gov>
> **Subject: Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>
> Hi Nick,
>
> Thanks for your quick response. We think that WA State law may apply because the facility, although it holds federal detainees, is privately run by the Geo Group. We think there is at least an argument for jurisdiction, and would ask that L&I investigate accordingly. Thanks for any help you can provide.
>
> Best,
> Angelica Chazaro
>
>
> On Tue, Mar 11, 2014 at 6:48 AM, Brown, Nicholas (GOV) <Nicholas.Brown@gov.wa.gov> wrote:
> Professor Chazaro,
>
> I'm out of the office his morning, but will look into this.  However, the first question I have is what jurisdiction L&I has in federally run prison facilities.  I imagine it's rather limited, as are the labor rights of inmates generally.

But I will review this today.  Thank you for contacting me.

Nick

Sent from my iPhone

On Mar 11, 2014, at 12:11 AM, "Angelica Chazaro" <achazaro@gmail.com> wrote:

Dear Nicholas,

I'm a law professor at UW who is supporting the on-going hunger strike at the Northwest Detention Center in Tacoma, a federal immigration detention facility run by the Geo Group, a private prison company. I got your contact info from my former colleague, Jorge Baron at the Northwest Immigrant Rights Project.

As the strike enters its fifth day tomorrow, we're trying to achieve a swift resolution for the hunger strikers. One of their demands is increased pay for the work they perform in the facility - they currently get paid $1 a day. We believe the conditions of their work may violate Washington wage and hour laws, and we are asking that Governor Inslee intervene by having L&I begin an investigation into the labor conditions at the privately-run facility. Could Governor Inslee make a commitment to having L&I

GEO-STATE231546

investigate?

You can reach me by e-mail at
achazaro@gmail.com or by phone
at 646-496-5724. Thanks for any
help you can provide.

Best, Angelica Chazaro

GEO-STATE231547

| | |
|---|---|
| **From:** | Wonhoff, Taylor (GOV) |
| **To:** | Brown, Nicholas (GOV)團磩替ꜣ祝ᛯ蔺ᶇ盰ℵ |
| **Date:** | Mar 11, 2014 at 11:04 AM |
| **Subject:** | RE: TIME SENSITIVE: Need assistance on ending detention center hunger strike |

360-902-4132

**From:** Brown, Nicholas (GOV)
**Sent:** Tuesday, March 11, 2014 11:04 AM
**To:** Wonhoff, Taylor (GOV)
**Subject:** Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike

What's your number?

Sent from my iPhone

On Mar 11, 2014, at 9:02 AM, "Wonhoff, Taylor (GOV)"
<taylor.wonhoff@gov.wa.gov> wrote:

> I just spoke with an L&I AAG Section Leader.  When you get back to the office,
> let's chat about this.

> **From:** Brown, Nicholas (GOV)
> **Sent:** Tuesday, March 11, 2014 8:44 AM
> **To:** Wonhoff, Taylor (GOV)
> **Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention center
> hunger strike

> See below.  Unusual question.  Can you review this?  I'm assuming that
> they're really off base here, but haven't given it much thought.  Thanks.

> Sent from my iPhone

> Begin forwarded message:

>> **From:** Angelica Chazaro <achazaro@gmail.com>
>> **Date:** March 11, 2014, 8:18:43 AM PDT
>> **To:** "Brown, Nicholas (GOV)"
>> <Nicholas.Brown@gov.wa.gov>
>> **Subject: Re: TIME SENSITIVE: Need assistance on ending
>> detention center hunger strike**

GEO-STATE231548

Hi Nick,

Thanks for your quick response. We think that WA State law may apply because the facility, although it holds federal detainees, is privately run by the Geo Group. We think there is at least an argument for jurisdiction, and would ask that L&I investigate accordingly. Thanks for any help you can provide.

Best,
Angelica Chazaro

On Tue, Mar 11, 2014 at 6:48 AM, Brown, Nicholas (GOV)
<Nicholas.Brown@gov.wa.gov> wrote:
Professor Chazaro,

I'm out of the office his morning, but will look into this. However, the first question I have is what jurisdiction L&I has in federally run prison facilities. I imagine it's rather limited, as are the labor rights of inmates generally.

But I will review this today. Thank you for contacting me.

Nick

Sent from my iPhone

On Mar 11, 2014, at 12:11 AM, "Angelica Chazaro"
<achazaro@gmail.com> wrote:

> Dear Nicholas,
>
> I'm a law professor at UW who is supporting the on-going hunger strike at the Northwest Detention Center in Tacoma, a federal immigration detention facility run by the Geo Group, a private prison company. I got your contact info from my former colleague, Jorge Baron at the Northwest Immigrant Rights Project.

GEO-STATE231549

As the strike enters its fifth day tomorrow, we're trying to achieve a swift resolution for the hunger strikers. One of their demands is increased pay for the work they perform in the facility - they currently get paid $1 a day. We believe the conditions of their work may violate Washington wage and hour laws, and we are asking that Governor Inslee intervene by having L&I begin an investigation into the labor conditions at the privately-run facility. Could Governor Inslee make a commitment to having L&I investigate?

You can reach me by e-mail at achazaro@gmail.com or by phone at 646-496-5724. Thanks for any help you can provide.

Best, Angelica Chazaro

031001F*ÿÿÿÿÿÿÿÿÿÿÿ¾(

GEO-STATE231550

| | |
|---|---|
| **From:** | Mullins, Sandy (GOV) |
| **To:** | Uy, Stephen (GOV)02 |
| **CC:** | Kerins Aisling (GOV) |
| **Date:** | Mar 11, 2014 at 8:08 AM |
| **Subject:** | Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike>Uy, Stephen |

I'm checking to see if L&I has jurisdiction. I'll also contact GEO, Angelica and Northwest Immigrant Advocacy Project to see if we can offer them some from DOC negotiators since it looks like this is going to continue. CA prison system had a hunger strike last year that lasted for almost 50 days until they started force feeding.

Sandy

On Mar 11, 2014, at 7:10 AM, "Uy, Stephen (GOV)" <Stephen.Uy@gov.wa.gov> wrote:

FYI

Begin forwarded message:

> **From:** Angelica Chazaro <achazaro@gmail.com>
> **Date:** March 11, 2014 at 12:11:04 AM PDT
> **To:** <Stephen.Uy@gov.wa.gov>
> **Subject: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>
> Dear Stephen,
>
> I'm a law professor at UW who is supporting the on-going
>  hunger strike at the Northwest Detention Center in Tacoma, a federal immigration detention facility run by the Geo Group, a private prison company. I got your contact
>  info from my former colleague, Jorge Baron from the Northwest Immigrant Rights Project.
>
> As the strike enters its fifth day tomorrow, we're trying
>  to achieve a swift resolution for the hunger strikers. One of their demands is increased pay for the work they perform in the facility - they currently get paid $1 a day. We believe the conditions of their work may violate Washington wage and hour laws, and
>  we are asking that Governor Inslee intervene by having L&I begin an investigation into the labor conditions at the privately-run facility. Could Governor Inslee make a commitment to having L&I investigate?
>
> You can reach me by e-mail at
> achazaro@gmail.com or by phone at
> 646-496-5724. Thanks for any help you can provide.

GEO-STATE231551

Best, Angelica Chazaro

with SMTP id 41mr10976293eef.55.1394551143872; Tue, 11 Mar 2014 08:19:03 -0700 (PDT) MIME-Version: 1.0
Received: by 10.14.144.196 with H

GEO-STATE231552

| | |
|---|---|
| **From:** | Fellin, Tammy (LNI)nancing by pl |
| **To:** | Mullins, Sandy (GOV) |
| **Date:** | Mar 11, 2014 at 11:53 AM |
| **Subject:** | Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike |

Sent from my iPhone

Begin forwarded message:

> **From:** "Sharma, Suchi (LNI)" <shav235@LNI.WA.GOV>
> **Date:** March 11, 2014 at 10:57:17 AM PDT
> **To:** "Fellin, Tammy (LNI)" <felu235@LNI.WA.GOV>
> **Subject: RE: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>
> I agree though that we don't have juris in a federal facility.
>
> ---
>
> **From:** Sharma, Suchi (LNI)
> **Sent:** Tuesday, March 11, 2014 10:49 AM
> **To:** Fellin, Tammy (LNI)
> **Subject:** RE: TIME SENSITIVE: Need assistance on ending detention center hunger strike
>
> Probably not.
>
> I doubt whether USDOL will assert jurisdiction over wage and hour complaints here. This is because the FLSA is silent on prison labor, and courts have taken different approaches to whether an inmate is owed federal minimum wage. My understanding is that typically, courts end up looking at the employer-employee relationship between the inmate and the defendant.
>
> Here, the complicating factor is that the inmates are in various stages of deportation proceedings. This facility comes under Homeland Security. The work is called "voluntary work" to be paid at $1 a day. The work policy is here. Their ability to claim FLSA coverage is in itself a question mark.
>
> I can contact Donna Hart at USDOL and confirm if they will accept jurisdiction (likely not). Let me know.
>
> ---
>
> **From:** Fellin, Tammy (LNI)

GEO-STATE231553

**Sent:** Tuesday, March 11, 2014 10:18 AM
**To:** Sharma, Suchi (LNI)
**Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike

Would you agree?

Sent from my iPhone

Begin forwarded message:

> **From:** "Buchanan, Lynne M (LNI)" <bucm235@LNI.WA.GOV>
> **Date:** March 11, 2014 at 9:03:44 AM PDT
> **To:** "Smith, Elizabeth (LNI)" <SMEL235@LNI.WA.GOV>
> **Cc:** "Sacks, Joel (LNI)" <sacj235@LNI.WA.GOV>, "Fellin, Tammy (LNI)" <felu235@LNI.WA.GOV>, "Sams, Stephanie (LNI)" <samm235@LNI.WA.GOV>, "Kaech, Allison (LNI)" <KAEA235@LNI.WA.GOV>, "Walck, Chastity (LNI)" <wach235@LNI.WA.GOV>, "Sharma, Suchi (LNI)" <shav235@LNI.WA.GOV>, "Richardson, Kristi (LNI)" <YEAR235@LNI.WA.GOV>
> **Subject: FW: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>
> Hi Liz,
>
> In response to the question posed by Angelica Chazaro below:
>
> The fact that this is a federal facility, the issue is with the USDOL. Also, inmates are not covered by the minimum wage act; they are not defined as employees. Our law only covers state, county, or municipal correctional institutions employees. Because these are inmates and are in a federal institution, we would have no jurisdiction.
>
> RCW 49.46.010  (3) "Employee" includes any individual employed by an employer but shall not include:
>
>     (k) Any resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution
>
> Thanks,

GEO-STATE231554

Lynne

---

**From:** Fellin, Tammy (LNI)
**Sent:** Tuesday, March 11, 2014 8:33 AM
**To:** Smith, Elizabeth (LNI); Buchanan, Lynne M (LNI)
**Cc:** Sacks, Joel (LNI); Sams, Stephanie (LNI); Kaech, Allison (LNI); Walck, Chastity (LNI); Sharma, Suchi (LNI); Richardson, Kristi (LNI)
**Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike

Liz and Lynne -

Is this an issue that we have jurisdiction over? If you need more info about the facility, we can reach out to Sandy. Please note the sense of urgency.

Tammy

Sent from my iPhone

Begin forwarded message:

> **From:** "Mullins, Sandy (GOV)"
> <sandy.mullins@gov.wa.gov>
> **Date:** March 11, 2014 at 8:02:17 AM PDT
> **To:** "Fellin, Tammy (LNI)"
> <felu235@LNI.WA.GOV>
> **Subject: Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>
> Hi Tammy- can you check and see if this is possible? Not sure if L&I has jurisdiction in a federal contract facility.
>
> Thanks
>
> Sandy
>
> Begin forwarded message:

GEO-STATE231555

**From:** "Uy, Stephen (GOV)"
<Stephen.Uy@gov.wa.gov>
**Date:** March 11, 2014 at 7:10:28 AM PDT
**To:** "Kerins, Aisling (GOV)"
<aisling.kerins@gov.wa.gov>, "Mullins, Sandy
(GOV)" <sandy.mullins@gov.wa.gov>
**Subject: Fwd: TIME SENSITIVE: Need
assistance on ending detention center hunger
strike**

FYI

Begin forwarded message:

> **From:** Angelica Chazaro
> <achazaro@gmail.com>
> **Date:** March 11, 2014 at 12:11:04 AM
> PDT
> **To:** <Stephen.Uy@gov.wa.gov>
> **Subject: TIME SENSITIVE: Need
> assistance on ending detention
> center hunger strike**
>
> Dear Stephen,
>
> I'm a law professor at UW who is
> supporting the on-going hunger strike at
> the Northwest Detention Center in Tacoma,
> a federal immigration detention facility run
> by the Geo Group, a private prison
> company. I got your contact info from my
> former colleague, Jorge Baron from the
> Northwest Immigrant Rights Project.
>
> As the strike enters its fifth day tomorrow,
> we're trying to achieve a swift resolution for
> the hunger strikers. One of their demands
> is increased pay for the work they perform
> in the facility - they currently get paid $1 a
> day. We believe the conditions of their
> work may violate Washington wage and
> hour laws, and we are asking that
> Governor Inslee intervene by having L&I
> begin an investigation into the labor
> conditions at the privately-run facility.

GEO-STATE231556

Could Governor Inslee make a
commitment to having L&I investigate?

You can reach me by e-mail at
achazaro@gmail.com or by phone at 646-
496-5724. Thanks for any help you can
provide.


Best, Angelica Chazaro

GEO-STATE231557

| | |
|---|---|
| **From:** | Fellin, Tammy (LNI) RCW 49.4 |
| **To:** | <u>Mullins, Sandy (GOV)This mail h</u> |
| **Date:** | Mar 11, 2014 at 2:38 PM |
| **Subject:** | Re: TIME SENSITIVE: Need assistance on ending detention center hunger strike |

I think that would apply to the employees (such as correctional officers) but I don't think it's relevant to the inmates. I'll double-check.

Sent from my iPhone

On Mar 11, 2014, at 1:37 PM, "Mullins, Sandy (GOV)" <<u>sandy.mullins@gov.wa.gov</u>> wrote:

> Thank you for this. We are getting some additional requests for us to do something so we might be asking for additional info on that contract facility issue. Apparently the facility was built with some assistance from the state so maybe there is something to that?
>
> **From:** Fellin, Tammy (LNI)
> **Sent:** Tuesday, March 11, 2014 11:53 AM
> **To:** Mullins, Sandy (GOV)
> **Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike
>
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** "Sharma, Suchi (LNI)" <<u>shav235@LNI.WA.GOV</u>>
>> **Date:** March 11, 2014 at 10:57:17 AM PDT
>> **To:** "Fellin, Tammy (LNI)" <<u>felu235@LNI.WA.GOV</u>>
>> **Subject: RE: TIME SENSITIVE: Need assistance on ending detention center hunger strike**
>>
>> I agree though that we don't have juris in a federal facility.
>>
>> **From:** Sharma, Suchi (LNI)
>> **Sent:** Tuesday, March 11, 2014 10:49 AM
>> **To:** Fellin, Tammy (LNI)
>> **Subject:** RE: TIME SENSITIVE: Need assistance on ending detention center hunger strike

GEO-STATE231558

Probably not.

I doubt whether USDOL will assert jurisdiction over wage and hour complaints here. This is because the FLSA is silent on prison labor, and courts have taken different approaches to whether an inmate is owed federal minimum wage. My understanding is that typically, courts end up looking at the employer-employee relationship between the inmate and the defendant.

Here, the complicating factor is that the inmates are in various stages of deportation proceedings. This facility comes under Homeland Security. The work is called "voluntary work" to be paid at $1 a day. The work policy is here. Their ability to claim FLSA coverage is in itself a question mark.

I can contact Donna Hart at USDOL and confirm if they will accept jurisdiction (likely not). Let me know.

---

**From:** Fellin, Tammy (LNI)
**Sent:** Tuesday, March 11, 2014 10:18 AM
**To:** Sharma, Suchi (LNI)
**Subject:** Fwd: TIME SENSITIVE: Need assistance on ending detention center hunger strike

Would you agree?

Sent from my iPhone

Begin forwarded message:

> **From:** "Buchanan, Lynne M (LNI)"
> <bucm235@LNI.WA.GOV>
> **Date:** March 11, 2014 at 9:03:44 AM PDT
> **To:** "Smith, Elizabeth (LNI)"
> <SMEL235@LNI.WA.GOV>
> **Cc:** "Sacks, Joel (LNI)"
> <sacj235@LNI.WA.GOV>, "Fellin, Tammy
> (LNI)" <felu235@LNI.WA.GOV>, "Sams,
> Stephanie (LNI)" <samm235@LNI.WA.GOV>,
> "Kaech, Allison (LNI)"
> <KAEA235@LNI.WA.GOV>, "Walck, Chastity

GEO-STATE231559

(LNI)" <wach235@LNI.WA.GOV>, "Sharma,
Suchi (LNI)" <shav235@LNI.WA.GOV>,
"Richardson, Kristi (LNI)"
<YEAR235@LNI.WA.GOV>
**Subject: FW: TIME SENSITIVE: Need
assistance on ending detention center hunger
strike**

Hi Liz,

In response to the question posed by Angelica
Chazaro below:

The fact that this is a federal facility, the issue is with
the USDOL.  Also, inmates are not covered by the
minimum wage act; they are not defined as
employees.  Our law only covers state, county, or
municipal correctional institutions employees.
Because these are inmates and are in a federal
institution, we would have no jurisdiction.

RCW 49.46.010  (3) "Employee" includes any
individual employed by an employer but shall not
include:

    (k) Any resident, inmate, or patient of a state,
county, or municipal correctional, detention,
treatment or rehabilitative institution

Thanks,

Lynne

_____

**From:** Fellin, Tammy (LNI)
**Sent:** Tuesday, March 11, 2014 8:33 AM
**To:** Smith, Elizabeth (LNI); Buchanan, Lynne M (LNI)
**Cc:** Sacks, Joel (LNI); Sams, Stephanie (LNI); Kaech,
Allison (LNI); Walck, Chastity (LNI); Sharma, Suchi
(LNI); Richardson, Kristi (LNI)
**Subject:** Fwd: TIME SENSITIVE: Need assistance on
ending detention center hunger strike

Liz and Lynne -

GEO-STATE231560

Is this an issue that we have jurisdiction over? If you need more info about the facility, we can reach out to Sandy. Please note the sense of urgency.

Tammy

Sent from my iPhone

Begin forwarded message:

> **From:** "Mullins, Sandy (GOV)"
> <sandy.mullins@gov.wa.gov>
> **Date:** March 11, 2014 at 8:02:17 AM
> PDT
> **To:** "Fellin, Tammy (LNI)"
> <felu235@LNI.WA.GOV>
> **Subject: Fwd: TIME SENSITIVE:
> Need assistance on ending detention
> center hunger strike**
>
> Hi Tammy- can you check and see if
> this is possible? Not sure if L&I has
> jurisdiction in a federal contract
> facility.
>
> Thanks
>
> Sandy
>
> Begin forwarded message:
>
> **From:** "Uy, Stephen (GOV)"
> <Stephen.Uy@gov.wa.gov>
> **Date:** March 11, 2014 at 7:10:28 AM
> PDT
> **To:** "Kerins, Aisling (GOV)"
> <aisling.kerins@gov.wa.gov>,
> "Mullins, Sandy (GOV)"
> <sandy.mullins@gov.wa.gov>
> **Subject: Fwd: TIME SENSITIVE:
> Need assistance on ending detention**

GEO-STATE231561

**center hunger strike**

FYI

Begin forwarded message:

> **From:** Angelica Chazaro
> <achazaro@gmail.com>
> **Date:** March 11, 2014 at
> 12:11:04 AM PDT
> **To:**
> <Stephen.Uy@gov.wa.gov>
> **Subject: TIME
> SENSITIVE: Need
> assistance on ending
> detention center hunger
> strike**
>
> Dear Stephen,
>
> I'm a law professor at UW
> who is supporting the on-
> going hunger strike at the
> Northwest Detention Center
> in Tacoma, a federal
> immigration detention facility
> run by the Geo Group, a
> private prison company. I got
> your contact info from my
> former colleague, Jorge
> Baron from the Northwest
> Immigrant Rights Project.
>
> As the strike enters its fifth
> day tomorrow, we're trying to
> achieve a swift resolution for
> the hunger strikers. One of
> their demands is increased
> pay for the work they
> perform in the facility - they
> currently get paid $1 a day.
> We believe the conditions of
> their work may violate
> Washington wage and hour
> laws, and we are asking that
> Governor Inslee intervene by

GEO-STATE231562

having L&I begin an investigation into the labor conditions at the privately-run facility. Could Governor Inslee make a commitment to having L&I investigate?

You can reach me by e-mail at achazaro@gmail.com or by phone at 646-496-5724. Thanks for any help you can provide.

Best, Angelica Chazaro

GEO-STATE231563

MELL, 2018-124
PRR.000001

| From: | Brown, Nicholas (GOV) |
|---|---|
| To: | Mullins, Sandy (GOV); Wicker, Kelly (GOV); Kerins, Aisling (GOV) |
| Cc: | Westbrook, David (GOV); Davis, RaShelle (GOV); Wonhoff, Taylor (GOV) |
| Subject: | RE: NWDC contacts |
| Date: | Tuesday, March 11, 2014 8:06:57 PM |
| Attachments: | ~WRD000.jpg |

NB

**From:** Mullins, Sandy (GOV)
**Sent:** Tuesday, March 11, 2014 6:28 PM
**To:** Wicker, Kelly (GOV); Kerins, Aisling (GOV); Brown, Nicholas (GOV)
**Cc:** Westbrook, David (GOV); Davis, RaShelle (GOV)
**Subject:** FW: NWDC contacts

FYI

**From:** Angelica Chazaro [mailto:achazaro@gmail.com]
**Sent:** Tuesday, March 11, 2014 3:14 PM
**To:** Mullins, Sandy (GOV); Devon Knowles
**Subject:** Fwd: NWDC contacts

Dear Sandy,

Thanks for reaching out to me regarding the hunger strikers. I spoke to Jorge Baron, and he indicated he'd spoken to you and passed on your contact info.

As we work to resolve the hunger strike, we'd love to be able to announce any support we could receive from the Governor's office, whether on the L&I front or any other. Please call me any time with any updates you might have. I'm available by phone at 646 496 5724. We are expecting hundreds of supporters at a rally starting at 6 p.m. at the detention tonight, and I'd love to hear from you before then if possible. We also extend an invitation to the Governor's office to join us at the rally.

Our legal team has been analyzing the issue of whether the Washington Minimum Wage Act applies to work done by detainees, and I'm attaching a summary of the research below, in case it's helpful on your end. I've cc.ed Devon Knowles, the attorney who coordinated the research, in case you have any specific questions for her.

Thanks for your partnership on this matter.

Research:

Both the plain language of the relevant statutes and analogous case law establish that the Washington Minimum Wage Act (MWA) should apply to detainee labor performed for GEO Group at the Northwest Detention Center (NWDC).

GEO-STATE231564

- Individuals detained at the NWDC are "employees" as defined in RCW 49.46.010. Such individuals do not fall under the exception in RCW 49.46.010(3)(k) excluding "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution" as the NWDC is neither owned nor operated by Washington State, Pierce County, or the City of Tacoma.

- GEO Group is a corporation and is therefore considered an "employer" under the WMA. Additionally, employer exemptions under the MWA "will be 'narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation.'" *Stahl v. Delicor of Pudget Sound, Inc.*, 148 Wn.2d 876, 881, 64 P.3d 10 (2003) (quoting *Drinkwitz v. Alliant Techsystems, Inc.* 140 Wn.2d 291, 301, 996 P.2d 582 (2000)).

- The contract between the federal government and GEO Group is covered by the Service Contract Act (SCA), 41 U.S.C. § 6702, and is required to include provisions specifying the minimum wage to be paid to each employee "in accordance with the prevailing rates in the locality[.]" The SCA prohibits contractors from paying employees less than the federal minimum wage. 41 U.S.C. § 6704.

- Washington State Department of Labor and Industries has the authority to enforce the WMA vis-à-vis employers providing services pursuant to the SCA. *Dep't of Labor and Industries v. Lanier Brugh*, 135 Wn. App. 808, 147 P.3d 588 (2006), *review denied*, 161 Wn.2d 1025, 169 P.3d 831 (2007) (finding that the SCA does not preempt the overtime wage provisions of the MWA and such provisions applicable to truck drivers employed by private companies contracting mail services through USPS).

Best,

Angelica Chazaro


---------- Forwarded message ----------
From: **Jorge Baron** <jorge@nwirp.org>
Date: Tue, Mar 11, 2014 at 1:54 PM
Subject: NWDC contacts
To: sandy.mullins@gov.wa.gov

Sandy,

Nice talking to you today.  As I mentioned, here is the contact information we discussed.  I have the full contact information for the ICE Field Office Director (listed below) but I only

GEO-STATE231565

MELL, 2018-124
PRR.000003

have the name and main number for the "warden" of the detention center.  His name is Lowell Clark and the main number for the facility is 253-396-1611.

I'm also sending you here the link to the GEO Group listing for the facility: http://geogroup.com/Maps/LocationDetails/52

Finally, I mentioned that a state agency had been involved in the financing of the project.  This was the Washington Economic Development Finance Authority.  I'm copying below the relevant portion of the News Tribune article and the link to the full story. One point I would highlight is that the private contractor at the time argued that the state should help it with the financing required to build the facility because it would create local jobs and so it would seem odd for it to now say that it should not have to comply with state labor laws.

Let me know if I can provide any other info that might be useful.

Jorge

Contact info for the ICE field office director:

Nathalie R. Asher
Alaska, Oregon and Washington
Seattle Field Office Director
ICE/ERO
206.835.0058 (o)
206.786.6858 (c)
nathalie.r.asher@dhs.gov


Tacoma News Tribune Article from 2012: http://www.thenewstribune.com/2012/09/09/2284287/part-i-a-rare-look-inside-tacomas.html

Excerpt:

**FINANCING THE PROJECT**

When a multi-million dollar private prison contractor started building an immigration detention center in Tacoma in 2003, it did so with the help of a state financing authority primarily started to encourage manufacturing jobs for Washington businesses.

It also solicited the assistance of Tacoma City Councilman Kevin Phelps, who – acting on his own without council approval – helped the prison contractor meet a state eligibility requirement to obtain that financing by pledging the city's "continued support" for the detention center project in a letter.

In the end, the Washington Economic Development Finance Authority – created by the Legislature in 1989 "to act as a financial conduit" for small and medium-sized businesses "that cannot readily obtain needed capital" – issued $57 million of nonrecourse revenue bonds to finance the Florida-based Correctional Services Corp.'s construction of the Northwest Detention

GEO-STATE231566

MELL, 2018-124
PRR.000004

Center.

A 1999 change in state law had expanded the authority's mission to include financing projects within federally designated enterprise and empowerment zones such as Tacoma's port area, which was then within a state "community enterprise zone."

---

**"You may wonder how we can finance (this)"** (p. 1)

Letter from WEDFA executive director Jonathan Hayes to governor's office, explaining how recent law change allows state-aided financing for detention center.

---

WEDFA, as the state financing agency is known, walked away from the deal richer. It garnered about $204,000 in transaction fees for brokering the 10-year bond issue for the detention center project.

The unfunded state agency, which operates under the governor's office, relies on transaction fees to cover its annual budget of about $275,000 a year. WEDFA uses such revenues to pay its two-member staff's salaries and benefits, and to cover other agency expenses.

"The apparent benefit to the state is the $200,000 for the authority and possibly the jobs this facility created," said John Rose, a municipal bond expert who retired five years ago as president of the Seattle Northwest Securities Corp.

"The question you have to ask is whether these jobs and the economic activity from this project would have happened anyway, without the state's financing."

They almost certainly would have. Well before the bond deal closed, CSC already had won a lucrative federal contract to build the facility in Tacoma. The publicly traded company, which reported revenues of $136 million for 2003, could have sought to obtain a private loan or self-financed the construction by issuing its own bonds on the industrial bond market.

Or, CSC could have applied for a loan to build the federally-utilized facility through the federal government, which receives extremely low interest rates.

Instead, the company utilized the state authority to obtain a low-interest, fixed-rate loan over a relatively long term – 10 years. The loan's favorable terms saved the company about $564,000 in debt payments it would have paid through private financing, WEDFA estimated at the time.

The way nonrecourse bonds work, the state isn't on the hook for repayment of the bond debt,

GEO-STATE231567

MELL, 2018-124
PRR.000005

which runs through 2014. Underwriters and investors hold that risk.

CSC couldn't land such a sweet deal without getting a government to issue the bonds. The company had applied for the special bond financing in late 2002. CSC wanted the loan to cover construction and land costs for a 156,000-square-foot facility to house up to 500 illegal immigrants on part of the 16-acre East J Street site. The company had optioned to buy the property for $3.95 million.

The detention center project met the state authority's criteria for financing in part, said Jonathan Hayes, WEDFA's executive director at the time, because it would create an estimated 134 jobs.

As it turned out, only about 45 jobs initially were created. Most of the 190 employees at the new detention center transferred from existing jobs at the old INS facility in Seattle.

WEDFA officials later decided that CSC's lucrative contract, combined with favorable trends that foretold of strong demand for the detention center, posed little risk of default for bond underwriters or investors.

For each detainee up to 350, INS would pay the contractor $162 per day. Beyond 350, the INS would pay $25 per detainee up to the maximum capacity of 500.

The federal government also guaranteed CSC that its 500-bed facility would be at least half-full with immigrant detainees at all times.

With the federal Patriot Act enacted following the 9/11 terrorist attacks, the newly-minted Homeland Security Department's Bureau of Immigration and Customs Enforcement– one of the successors to the INS – expected to ramp up its deportation efforts.

Even under conservative estimates, CSC stood to clear up to $12.5 million per year from the facility after expenses – more than enough to meet its debt service obligations under a 10-year repayment plan.

Before the WEDFA board voted on the financing proposal, Hayes noted the detention center "will be welcomed by the community in which it will be located."

CSC's application cited Tacoma's support for the project – a requirement for WEDFA financing. The application included a copy of the City Council's resolution from three years earlier that backed the project, and a more current letter requested in January 2003 from Councilman Phelps.

"This letter is to confirm the City of Tacoma's continued support for the construction and operation of the new facility," Phelps' letter, written on his council letterhead, stated in part.

The letter was sent at a time when the political winds had shifted in Tacoma. By then, Bill Baarsma, who wasn't in office in 2000 when the council approved the resolution, had been elected mayor. Baarsma vehemently opposed the detention center and didn't know Phelps had

GEO-STATE231568

MELL, 2018-124
PRR.000006

sent the letter on the city's behalf until The News Tribune recently showed him a copy of it.

"My hunch is when I became the Mayor of Tacoma and I was not going to support this ill-conceived project, (CSC) probably went directly to the councilman who was a known booster to get what it needed," Baarsma said.

"This is an example of freelancing by a council member that would never happen today," Baarsma added. "It's unbelievable."

Phelps said he was aware of Baarsma's opposition to the detention center, but he didn't run his letter by the full council, which by then included four new members. Had he done so, Phelps said, Baarsma likely "would be in the minority position" anyway.

"It wouldn't have been hard for me to put together five votes on something," he said.

Phelps added that he views what he wrote as accurate and reflective of the city's position at the time, because the council had never taken any action reversing the council's 2000 resolution.

"There was a formal action – this city came out in support of that (project) – and it hadn't changed, the best that I know, at the time when the request for the letter came in," he said.

In April 2003, WEDFA's board voted 8 to 1, with one abstention, to finance CSC's project. With state-aided financing firmly in place, a construction crew that had gathered on Tacoma's Tideflats a few weeks earlier started building the private detention center.

Read more here: http://www.thenewstribune.com/2012/09/09/2284287/part-i-a-rare-look-inside-tacomas.html#storylink=cpy

Jorge L. Barón  |  Executive Director  |  Northwest Immigrant Rights Project
615 Second Ave., Suite 400, Seattle, WA 98104  |  email: jorge@nwirp.org
Direct: (206) 957-8609  |  Fax: (206) 587-4025  |  www.nwirp.org
*Join us in celebrating 30 years of defending immigrant rights at NWIRP's 30th Anniversary Gala on Friday, May 9th in the Skybridge of the Washington State Convention Center!*

GEO-STATE231569



City of Seattle
Ed Murray, Mayor

# Seattle LGBT Commission

**RECEIVED**

MAR 20 2014

Office of the Governor

**COMMISSIONERS**

Bridge Joyce
CO-CHAIR
Joey Hunziker
CO-CHAIR
NaaSira Adeeba
Luzviminda Carpenter
David Howenstine
Mitchell Hunter
Aric Lane
Mac McGregor
Sabina Neem

Governor Jay Inslee
Office of the Governor
P.O. Box 40002
Olympia, WA 98504-0002

Re: Request ICE to initiate negotiations and end threats of force-feeding; initiate investigation by Labor & Industry of detainee pay at the Northwest Detention Center

Governor Inslee:

We are writing to you on behalf of the Seattle LGBT Commission to request that you ask Immigration and Customs Enforcement (ICE) to initiate accountable negotiations with detainees at the Northwest Detention Center and that your office recommend an investigation by Washington State Department of Labor & Industry into the $1 d a-day pay rate that detainees receive for work done at the Northwest Detention Center.

On March 7th, immigrant detainees at the Northwest Detention Center began a hunger strike to protest inhumane treatment and deportations. According to their lawyer, Sandy Restrepo, detainees are paid only $1 for a full day's work, the food provided is inadequate, and detainees and their families are paying exorbitantly high commissary costs. Detainees that are on hunger strike have been threatened with force-feeding, a practice prohibited by the World Medical Association, and condemned by the International Red Cross and the United Nations.

These detainees along with a number of prominent civil rights groups including National Council of La Raza, Northwest Immigrant Rights Project, National Center for Transgender Equality, and Witness for Peace Northwest demand an end to the unprecedented numbers of deportations under the Obama administration. Nearly 2 million people have been deported - more people than under all previous presidents combined.

As hunger-strikers at the Northwest Detention center face increasing pressure, reports of retaliation and threats of force feeding, these civil rights leaders need your protection. We call on your leadership to strongly request ICE to immediately end threats of force-feeding and begin accountable negotiations with the detainees.

We also support the detainees in their demands that work done in the detention center be protected by Washington State wage and hour laws, like all other employees in the state. We request that your administration takes this opportunity to address a fundamental unfairness by initiating an investigation by Washington State Department of Labor & Industry.

As a commission, our commitment to support LGBTQ immigrants compels us to support demands for fair wages and humane treatment. These issues impact members of Seattle's LGBTQ communities, as LGBTQ immigrants are disproportionally targeted by police, and are at greater risk of detention. Many LGBTQ people in detention are fleeing violence and persecution in their countries of origin. They are particularly vulnerable to prolonged

1

GEO-STATE231570

detention and abuse- including physical and sexual abuse, denial of medical services (including transgender specific health care), solitary confinement/ administrative segregation or being placed intentionally in harm's way, and having their cases dismissed if they do not conform to stereotypes about what it means to be gay or lesbian.

On these issues, relief delayed is relief denied to too many families in Washington State. As the national leader in fair wages and a strong supporter of human rights, Washington is uniquely suited to lead the country in addressing these harms.

Thank you for consideration in this matter,

Respectfully,

Bridge Joyce, Co-Chair
Seattle LGBT Commission

*Joey Hunziker*
Joey Hunziker, Co-Chair
Seattle LGBT Commission

cc: Patty Lally, Acting Director, Seattle Office for Civil Rights
Ed Murray, Mayor, City of Seattle
City Council Members
Natalie Asher, Assistant Director, Operations Support
Daniel Ragsdale, Deputy Director

2

GEO-STATE231571



# City of Seattle

Seattle Office for Civil Rights
810 Third Avenue, Suite 750
Seattle, WA 98104-1627



Presort
First Class Mail
ComBasPrice

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 98104 $ 000.48⁰
02 1W
0001371105 MAR 19 2014

Governor Jay Inslee
Office of the Governor
P.O. Box 40002
Olympia, WA 98504-0002

98504$0002

GEO-STATE231572

| | |
|---|---|
| **From:** | govswebmail@iq.wa.gov (imailagent)48:<=> |
| **To:** | Mullins, Sandy (GOV)N |
| **CC:** | paulette.avalos@gov.wa.gov |
| **Date:** | Mar 30, 2014 at 3:35 PM |
| **Subject:** | Response 1021081 – Seattle LGBT Commission (Intranet Quorum IMA00378012) |
| **AttachmentList:** | 2 |

Generated from CSU
IQ – Intranet Quorum
WF#: 1021081

# Office of the Governor
Mail Stop: 40002

Created on 3/30/2014 3:33:31 PM

## REFERRAL DIRECTIONS

Referred To:  **Sandy Mullins - Executive Policy Office**

Routing
Instructions:

Action:  Respond as you deem appropriate (letter;

CC's:  paulette.avalos@gov.wa.gov

Message:  Requests that the Governor ask ICE to initiate accountable negotiations with detainees at the Northwest Detention Center and that our office recommend that LNI investigate the $1 a-day pay rate that detainees receive for work done at the Center.

Referral Date:  March 30, 2014

Due Back:  **4/14/2014 3:29:47 PM**

Send Questions
and Response To:  Phil DuBois – govswebmail@iq.wa.gov

## CONTACT INFORMATION

From:  Bridge Joyce
Co-Chair
Seattle LGBT Commission
810 3rd Avenue, Suite 750
Seattle, WA 98104-1627

Phone(s):
Business:

GEO-STATE231573

Cell:
Home:
Fax:

Contact Date:      03/20/2014
Contact Type:

GEO-STATE231574

| From: | Fellin, Tammy (LNI) |
|---|---|
| To: | Mullins, Sandy (GOV)投二枚ノ再竹心両竹蔥院 |
| Date: | Apr 14, 2014 at 6:13 PM |
| Subject: | RE: NWDC contacts |
| AttachmentList: | 1 |

Dear Sandy,

This email is a follow-up to our discussion on March 11 regarding L&I's jurisdiction of Geo Group detainees. I haven't heard any more about this situation, so hope this clarification is still timely. At least this way we all know the department's authority moving forward.
In our previous phone call, I promised to follow-up on:

- Whether L&I was in the Tacoma Detention Center facility on March 12
- Whether the complaint about work performed by Geo Group employees or INS detainees
- Whether INS detainees fall under L&I's jurisdiction for workers compensation, workplace health and safety issues, and wage and hour issues

*Was L&I onsite at the Tacoma Detention Center on March 12?*
An L&I safety and health inspector was at the facility on March 11, not March 12 . And, as identified below, this was handled by a safety and health inspector in a very routine way. It was no related to the hunger strike.

*Was the complaint about work performed by Geo Group employees or INS detainees?*
The inspector was at the Tacoma Detention Center to investigate a safety and health complaint file by a Geo Group employee and did not involve work performed by the detainees. It also did not involve any issues related to the hunger strike.

*Do INS detainees fall under L&I's jurisdiction for workers compensation?*
INS detainees are under federal custody and are not considered covered workers under Washington's Industrial Insurance laws. The Geo Group, as a private sector employer, does have an L&I workers compensation account covering Geo Group's employees.

*Do INS detainees fall under L&I's jurisdiction for workplace safety and health issues?*
INS detainees are under federal custody  and L&I does not have jurisdiction over any related safety and health conditions.  L&I does has jurisdiction over the Geo Group as a private sector employer in the state of Washington.

*Do INS detainees fall under L&I's jurisdiction for wage and hour issues?*
For wage and hour purposes, L&I does not have any jurisdiction over the federal government or its instrumentalities. This would include the detainees and work performed by Geo Group and its employees under contract with the federal government.

I hope this clarifies our jurisdiction in this matter. Please let me know if you have additional questions.

Tammy

**From:** Fellin, Tammy (LNI)
**Sent:** Wednesday, March 12, 2014 1:28 PM
**To:** Mullins, Sandy (GOV)
**Subject:** RE: NWDC contacts

Sandy –

One quick update from us while we work on the other follow-up items I mentioned yesterday. Our safety and health inspector was at the facility yesterday. The complaint she was there to inspect was related to detention center officers, not work performed by the detainees. This was apparently a pretty routine issue for our staff unrelated to the hunger strike.

Tammy

**From:** Mullins, Sandy (GOV)
**Sent:** Tuesday, March 11, 2014 3:27 PM
**To:** Fellin, Tammy (LNI)
**Subject:** FW: NWDC contacts

More info

**From:** Angelica Chazaro [mailto:achazaro@gmail.com]
**Sent:** Tuesday, March 11, 2014 3:14 PM
**To:** Mullins, Sandy (GOV); Devon Knowles
**Subject:** Fwd: NWDC contacts

Dear Sandy,

GEO-STATE231575

Thanks for reaching out to me regarding the hunger strikers. I spoke to Jorge Baron, and he indicated he'd spoken to you and passed on your contact info.

As we work to resolve the hunger strike, we'd love to be able to announce any support we could receive from the Governor's office, whether on the L&I front or any other. Please call me any time with any updates you might have. I'm available by phone at 646.496.5724. We are expecting hundreds of supporters at a rally starting at 6 p.m. at the detention tonight, and I'd love to hear from you before then if possible. We also extend an invitation to the Governor's office to join us at the rally.

Our legal team has been analyzing the issue of whether the Washington Minimum Wage Act applies to work done by detainees, and I'm attaching a summary of the research below, in case it's helpful on your end. I've cc.ed Devon Knowles, the attorney who coordinated the research, in case you have any specific questions for her.

Thanks for your partnership on this matter.

Research:

Both the plain language of the relevant statutes and analogous case law establish that the Washington Minimum Wage Act (MWA) should apply to detainee labor performed for GEO Group at the Northwest Detention Center (NWDC).

· Individuals detained at the NWDC are "employees" as defined in RCW 49.46.010. Such individuals do not fall under the exception in RCW 49.46.010(3)(k) excluding "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution" as the NWDC is neither owned nor operated by Washington State, Pierce County, or the City of Tacoma.

· GEO Group is a corporation and is therefore considered an "employer" under the WMA. Additionally, employer exemptions under the MWA "will be 'narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation.'" *Stahl v. Delicor of Pudget Sound, Inc.*, 148 Wn.2d 876, 881, 64 P.3d 10 (2003) (quoting *Drinkwitz v. Alliant Techsystems, Inc.* 140 Wn.2d 291, 301, 996 P.2d 582 (2000)).

· The contract between the federal government and GEO Group is covered by the Service Contract Act (SCA), 41 U.S.C. § 6702, and is required to include provisions specifying the minimum wage to be paid to each employee "in accordance with the prevailing rates in the locality[.]" The SCA prohibits contractors from paying employees less than the federal minimum wage. 41 U.S.C. § 6704.

· Washington State Department of Labor and Industries has the authority to enforce the WMA vis-à-vis employers providing services pursuant to the SCA. *Dep't of Labor and Industries v. Lanier Brugh*, 135 Wn. App. 808, 147 P.3d 588 (2006), *review denied*, 161 Wn.2d 1025, 169 P.3d 831 (2007) (finding that the SCA does not preempt the overtime wage provisions of the MWA and such provisions applicable to truck drivers employed by private companies contracting mail services through USPS).

Best,

Angelica Chazaro

---------- Forwarded message ----------
From: **Jorge Baron** <jorge@nwirp.org>
Date: Tue, Mar 11, 2014 at 1:54 PM
Subject: NWDC contacts
To: sandy.mullins@gov.wa.gov

Sandy,

Nice talking to you today.  As I mentioned, here is the contact information we discussed.  I have the full contact information for the ICE Field Office Director (listed below) but I only have the name and main number for the "warden" of the detention center.  His name is Lowell Clark and the main number for the facility is 253-396-1611.

I'm also sending you here the link to the GEO Group listing for the facility: http://geogroup.com/Maps/LocationDetails/52

Finally, I mentioned that a state agency had been involved in the financing of the project.  This was the Washington Economic Development Finance Authority.  I'm copying below the relevant portion of the News Tribune article and the link to the full story. One point I would highlight is that the private contractor at the time argued that the state should help it with the financing required to build the facility because it would create local jobs and so it would seem odd for it to now say that it should not have to comply with state labor laws.

GEO-STATE231576

Let me know if I can provide any other info that might be useful.

Jorge

Contact info for the ICE field office director:

Nathalie R. Asher
Alaska, Oregon and Washington
Seattle Field Office Director
ICE/ERO
206.835.0058 (o)
206.786.6858 (c)
nathalie.r.asher@dhs.gov


Tacoma News Tribune Article from 2012: http://www.thenewstribune.com/2012/09/09/2284287/part-i-a-rare-look-inside-tacomas.html

Excerpt:

**FINANCING THE PROJECT**

When a multi-million dollar private prison contractor started building an immigration detention center in Tacoma in 2003, it did so with the help of a state financing authority primarily started to encourage manufacturing jobs for Washington businesses.

It also solicited the assistance of Tacoma City Councilman Kevin Phelps, who – acting on his own without council approval – helped the prison contractor meet a state eligibility requirement to obtain that financing by pledging the city's "continued support" for the detention center project in a letter.

In the end, the Washington Economic Development Finance Authority – created by the Legislature in 1989 "to act as a financial conduit" for small and medium-sized businesses "that cannot readily obtain needed capital" – issued $57 million of nonrecourse revenue bonds to finance the Florida-based Correctional Services Corp.'s construction of the Northwest Detention Center.

A 1999 change in state law had expanded the authority's mission to include financing projects within federally designated enterprise and empowerment zones such as Tacoma's port area, which was then within a state "community enterprise zone."

**"You may wonder how we can finance (this)"** (o_1)

Letter from WEDFA executive director Jonathan Hayes to governor's office, explaining how recent law change allows state-aided financing for detention center.

WEDFA, as the state financing agency is known, walked away from the deal richer. It garnered about $204,000 in transaction fees for brokering the 10-year bond issue for the detention center project.

The unfunded state agency, which operates under the governor's office, relies on transaction fees to cover its annual budget of about $275,000 a year. WEDFA uses such revenues to pay its two-member staff's salaries and benefits, and to cover other agency expenses.

"The apparent benefit to the state is the $200,000 for the authority and possibly the jobs this facility created," said John Rose, a municipal bond expert who retired five years ago as president of the Seattle Northwest Securities Corp.

GEO-STATE231577

"The question you have to ask is whether these jobs and the economic activity from this project would have happened anyway, without the state's financing."

They almost certainly would have. Well before the bond deal closed, CSC already had won a lucrative federal contract to build the facility in Tacoma. The publicly traded company, which reported revenues of $136 million for 2003, could have sought to obtain a private loan or self-financed the construction by issuing its own bonds on the industrial bond market.

Or, CSC could have applied for a loan to build the federally-utilized facility through the federal government, which receives extremely low interest rates.

Instead, the company utilized the state authority to obtain a low-interest, fixed-rate loan over a relatively long term – 10 years. The loan's favorable terms saved the company about $564,000 in debt payments it would have paid through private financing, WEDFA estimated at the time.

The way nonrecourse bonds work, the state isn't on the hook for repayment of the bond debt, which runs through 2014. Underwriters and investors hold that risk.

CSC couldn't land such a sweet deal without getting a government to issue the bonds. The company had applied for the special bond financing in late 2002. CSC wanted the loan to cover construction and land costs for a 156,000-square-foot facility to house up to 500 illegal immigrants on part of the 16-acre East J Street site. The company had optioned to buy the property for $3.95 million.

The detention center project met the state authority's criteria for financing in part, said Jonathan Hayes, WEDFA's executive director at the time, because it would create an estimated 134 jobs.

As it turned out, only about 45 jobs initially were created. Most of the 190 employees at the new detention center transferred from existing jobs at the old INS facility in Seattle.

WEDFA officials later decided that CSC's lucrative contract, combined with favorable trends that foretold of strong demand for the detention center, posed little risk of default for bond underwriters or investors.

For each detainee up to 350, INS would pay the contractor $162 per day. Beyond 350, the INS would pay $25 per detainee up to the maximum capacity of 500.

The federal government also guaranteed CSC that its 500-bed facility would be at least half-full with immigrant detainees at all times.

With the federal Patriot Act enacted following the 9/11 terrorist attacks, the newly-minted Homeland Security Department's Bureau of Immigration and Customs Enforcement– one of the successors to the INS -- expected to ramp up its deportation efforts.

Even under conservative estimates, CSC stood to clear up to $12.5 million per year from the facility after expenses – more than enough to meet its debt service obligations under a 10-year repayment plan.

Before the WEDFA board voted on the financing proposal, Hayes noted the detention center "will be welcomed by the community in which it will be located."

CSC's application cited Tacoma's support for the project – a requirement for WEDFA financing. The application included a copy of the City Council's resolution from three years earlier that backed the project, and a more current letter requested in January 2003 from Councilman Phelps.

"This letter is to confirm the City of Tacoma's continued support for the construction and operation of the new facility," Phelps' letter, written on his council letterhead, stated in part.

The letter was sent at a time when the political winds had shifted in Tacoma. By then, Bill Baarsma, who wasn't in office in 2000 when the council approved the resolution, had been elected mayor. Baarsma vehemently opposed the detention center and didn't know Phelps had sent the letter on

GEO-STATE231578

the city's behalf until The News Tribune recently showed him a copy of it.

"My hunch is when I became the Mayor of Tacoma and I was not going to support this ill-conceived project, (CSC) probably went directly to the councilman who was a known booster to get what it needed," Baarsma said.

"This is an example of freelancing by a council member that would never happen today," Baarsma added. "It's unbelievable."

Phelps said he was aware of Baarsma's opposition to the detention center, but he didn't run his letter by the full council, which by then included four new members. Had he done so, Phelps said, Baarsma likely "would be in the minority position" anyway.

"It wouldn't have been hard for me to put together five votes on something," he said.

Phelps added that he views what he wrote as accurate and reflective of the city's position at the time, because the council had never taken any action reversing the council's 2000 resolution.

"There was a formal action – this city came out in support of that (project) – and it hadn't changed, the best that I know, at the time when the request for the letter came in," he said.

In April 2003, WEDFA's board voted 8 to 1, with one abstention, to finance CSC's project. With state-aided financing firmly in place, a construction crew that had gathered on Tacoma's Tideflats a few weeks earlier started building the private detention center.

Read more here: http://www.thenewstribune.com/2012/09/09/2284287/part-i-a-rare-look-inside-tacomas.html#storylink=cpy

Jorge L. Barón  |  Executive Director  |  Northwest Immigrant Rights Project
615 Second Ave., Suite 400, Seattle, WA 98104  |  email: jorge@nwirp.org
Direct: (206) 957-8609  |  Fax: (206) 587-4025  |  www.nwirp.org
*Join us in celebrating 30 years of defending immigrant rights at NWIRP's 30th Anniversary Gala on Friday, May 9th in the Skybridge of the Washington State Convention Center!*

å•@å"@å"@å—
CåŸIå¬ZåⅈⅆⅈⅇⅈåÅ€å½ⅈⅈⅈⅈ½ⅈⅈⅈⅈⅈ½ⅈⅈⅈⅈⅈⅈ⅙⅙⅙⅙⅙⅙ÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÞÞÞÞÞÞÞÞþÿÿÿÿÿûûûûûûûûûûûûûûûûûûûûÞÞ◊◊◊◊◊◊++++◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊ÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÿÞÞÞÞÞÞÞÞÞÿ

GEO-STATE231579

1             BOARD OF INDUSTRIAL INSURANCE APPEALS
               OF THE STATE OF WASHINGTON

2 _____

3 In Re:  GEO CORRECTIONS &                )
       DETENTION, INC.                       )

4                                )
  Corrective Notice of Redetermination     )

5                                )
  No.  316977552                           )

6 _____

7

8

9      30 (b)(6) DEPOSITION UPON ORAL EXAMINATION OF
                 PAMELA I. CANT

10

11 _____

12

13             Tuesday, February 24, 2015
             Tumwater, Washington

14

15                 APPEARANCES

16      For the State:  MR. W. MARTIN NEWMAN
                   Assistant Attorney General

17                   7141 Cleanwater Drive SW #221
                   Tumwater, Washington 98504-0121

18

19 For Geo Corrections:  MS. JOAN K. MELL
                   Attorney at Law

20                   III BRANCHES LAW, PLLC
                   1019 Regents Blvd. Suite 204

21                   Fircrest, Washington 98466

22

       Also Present:  Mr. Bruce A. Scott, Jr.

23

24

25 Reported by Joni Novak, CCR

GEO-STATE231580

1

2

EXAMINATION INDEX

3

EXAMINATION BY:                                               PAGE NO.

4

MS. MELL                                                         3

5

.

6

7

8

9

10

11

12

EXHIBIT INDEX

13

NO.   DESCRIPTION                                            PAGE NO.

14

1     4-page Corrective Notice of Redetermination.             3

15

2     96-page Occupational Safety & Health                    12
16         Administration.

17    3     3-page Occupational Safety & Health              12
           Administration.
18

19    4     7-page Healthcare Wide Hazards.                   12

      5     64-page Washington State Department of Labor      12
20         & Industries Occupational Exposure to
           Bloodborne Pathogens, Chapter 296-823 WAC,
21         January 2013 Edition.

22    6     1-page e-mail.                                     81

23

24

25

GEO-STATE231581

1              BE IT REMEMBERED that on Tuesday, January

2    24, 2015, at 10:00 a.m., at 7141 Cleanwater Drive SW,

3    Tumwater, Washington 98504-0121, before JONI NOVAK, CCR, in

4    and for the State of Washington, appeared PAMELA I. CANT, the

5    witness herein;

6

7              (Exhibit No. 1, marked for identification.)

8

9              WHEREUPON, the following proceedings

10   were had, to wit:

11

12   <u>PAMELA I. CANT,</u>       having been first duly sworn by the

13                  Court Reporter, testified as follows:

14

15                   <u>EXAMINATION</u>

16   <u>BY MS. MELL:</u>

17   Q  State your name for the record.

18   A  Pamela I. Cant.  I can, though, fortunately.

19   Q  What is your title?

20   A  I'm an industrial hygienist for Labor and Industries.

21   Q  How long have you been an industrial hygienist for Labor and

22      Industries?

23   A  Ten years.

24   Q  Where were you before that?

25   A  I was in the Air Force doing the same, as well as public

GEO-STATE231582

1   Q  Do you know whether or not facilities operating under the

2      construct of federal law are covered by this rule?

3   A  I don't believe -- I believe they are covered in that they

4      have the ability to -- they should be following it, but they

5      don't get cited.  But Geo isn't federal.  They're contracted

6      from a federal facility in the state of Washington, so they

7      become a state entity.

8   Q  Say that to me again.  I don't understand what you're saying.

9   A  They're not federal themselves.  They're being contracted out

10     about the federal government to work in the state of

11     Washington with state employees, and I believe they pay worker

12     comp also.  So they're, I believe this has all been figured

13     out prior to this, what they -- how it was to them.  And I

14     would not know so you'll have to ask somebody else about that.

15  Q  Who figured that out?

16  A  I just, I think the attorneys in the beginning.  They had to

17     figure who was, how it applied so.  You could -- I don't know.

18     You'll have to ask.

19  Q  Do you know federal contractors who are exempt from --

20  A  I don't.  Federal contractors are normally not exempt in that

21     context.  But, again, this would not be my area so you'll need

22     to speak with someone else.

23  Q  Do you know whether or not the medical facility is a federal

24     contractor or whether or not it's the federal government?

25  A  What medical?

GEO-STATE231583

```
 1   Q   At Geo.

 2   A   I don't.

 3   Q   Is it your understanding that a federal governmental entity is

 4       exempt from compliance with this rule?

 5   A   Well, that is my understanding.  But, again, I would say I'm

 6       not the expert in that area.  You'll have to speak with

 7       someone else at L&I.

 8   Q   Do you know if there was an actual exposure incident ever at

 9       Geo from a disposable razor?

10   A   I'm just aware of the complaint.

11   Q   Which complaint?

12   A   The complaint of, that was sent to us that someone had been,

13       gotten cut from a razor.

14   Q   Do you know whether or not there was an exposure incident with

15       the incident where someone was cut with a razor?

16   A   You'll have to clarify that.

17   Q   Do you know whether or not there was blood or OPIM on the

18       razor that cut the individual?

19   A   I would say that an exposure event is the cut.  That's the

20       exposure event.  So I'm aware of that.

21   Q   I'm looking down here.  It appears the exposure incident is

22       defined in WAC 296.823.100 to mean "a specific eye, mouth, or

23       other mucus membrane nonintact skin or parenteral contact with

24       blood or other potentially infectious material that results

25       from the performance of an employee's duties."
```

Pamela I. Cant, 2/24/2015 - By Ms. Mell                    25

GEO-STATE231584

```
 1   A  Well, we've already had the mediation, so really nothing

 2      different.

 3   Q  Did you read anything or review anything in --

 4   A  No.

 5   Q  -- preparation for your deposition?

 6   A  Huh-uh.

 7   Q  A that a no?

 8   A  No.  Right, no.

 9   Q  And I'm going to have to ask you to --

10   A  I'm sorry.

11   Q  -- slow down and --

12   A  I'm trying to slow down.

13   Q  -- give me a pause.

14         Are correctional facilities something you have

15      jurisdiction over?

16   A  We do have jurisdiction over the state correction facilities,

17      not the federal ones.

18   Q  Do you have control over the jails?

19   A  Yes.  Jails and that we have jurisdiction, yes.

20   Q  So do you know whether or not the state correctional

21      facilities, the inmates dispose of their razors in

22      contaminated sharps containers?

23   A  I'd say recently I have seen an e-mail that said that they

24      were going to start doing it, I believe.  But that was just

25      one facility so I do not have knowledge of all of them, and --
```

Pamela I. Cant, 2/24/2015 - By Ms. Mell                          42

GEO-STATE231585

1  A  They -- absolutely.  But while it's in the facility, exposure

2     to an employee, then it's still underneath bloodborne

3     pathogens and OSHA.

4  Q  So let me understand exactly where the dividing line is.

5     Physically inside the building versus outside the building?

6  A  Oh, I don't know if you could say that either.

7  Q  How would Geo know?

8  A  Well, Geo would have to get ahold of the state and local

9     jurisdictions for waste and ask them what -- how to deal with

10    it and when to deal with it.

11 Q  When does Labor and Industries consider its jurisdiction

12    eliminated, based on the waste stream?

13 A  I don't know, based on the waste stream.  But once the

14    employee has put it into the waste, it's no longer an exposure

15    to them.  So once the exposure is not there, it's not.

16 Q  So if the employee never puts it in the waste, the detainee

17    does, it's not an issue?

18 A  Well, there again, you get into a very different definition of

19    all kinds of issues that I can't answer.  So detainees are not

20    necessarily always not employees and that's a very different

21    conversation, so I can't answer to that.

22 Q  Is there ever an instance when you have jurisdiction over the

23    detainees?

24 A  I, I can't answer to that.

25 Q  When you say you can't answer to that, is that because you

Pamela I. Cant, 2/24/2015 - By Ms. Mell                          55

GEO-STATE231586

```
 1       just don't know?

 2   A   I don't know.

 3   Q   Did anyone from Labor and Industries make that determination

 4       when inspecting Geo?

 5   A   I'm not sure.

 6   Q   Did you?

 7   A   No.

 8   Q   What is a sharps container?

 9   A   Well, it's kind of defined in the bloodborne pathogen rule.

10   Q   Does Geo use a sharps container?

11   A   I am not aware what they're using.

12   Q   What are the requirements?

13   A   For the sharps container?

14   Q   Yes.

15   A   Closeable, puncture resistant.  It's 140 -- 14060, you must --

16       fifth bullet.  (Witness indicates.)  It's on a copy of that.

17   Q   So the criteria that you rely on to ascertain whether or

18       not a disposable razor has been discarded properly is

19       WAC 296-823-14060?

20   A   Yes.

21   Q   And you would expect the disposable razor to be in a container

22       that is closeable?

23   A   Yes.

24   Q   How do you test whether or not something is puncture

25       resistant?
```

GEO-STATE231587

1   Q   When the inspector was on scene?

2   A   I don't believe on scene.

3   Q   Have you formed an opinion, based on any personal knowledge,

4       that these violations in fact occurred?

5   A   I'm not sure how to answer that.

6   Q   Do you have any personal knowledge --

7   A   That --

8   Q   -- as to whether or not Geo violated any of these rules?

9   A   Well, they're cited so I assume that they violated the rules.

10  Q   So the mere fact of a citation is evidence of a violation, in

11      your opinion?

12  A   I can't speak to that.

13  Q   Do you have any other factual information as to whether or not

14      Geo violated any of the rules?

15  A   I don't know how to answer that, to be honest with you.  It

16      was cited so I assumed it was violated.

17  Q   Do you presume that if a citation has been issued that it is

18      correct?

19  A   I do presume that, yes.

20  Q   What do you believe is the employer's obligation to show if a

21      citation has been issued, if they do not believe it's correct?

22  A   This isn't my area.  I, I can't answer you.

23  Q   Did you provide any information to the investigator and/or

24      inspector so that the inspector could issue the citation?

25  A   We did have a conversation.

Pamela I. Cant, 2/24/2015 - By Ms. Mell                          78

GEO-STATE231588

```
 1    Q   When?

 2    A   During the inspection.

 3    Q   How long was the conversation?

 4    A   Ten minutes.

 5    Q   Who did you speak to?

 6    A   The inspector.

 7    Q   Kenya Saenz?

 8    A   Mm-hmm.

 9    Q   Is that a yes?

10    A   Yes.

11    Q   Why did you have a conversation with Kenya Saenz?

12    A   Just to talk about the inspection.

13    Q   Why?

14    A   Several of our employees, when they are doing citations of

15        bloodborne pathogen, will call me to ask me questions about

16        how they're thinking about it.

17    Q   Did she call you?

18    A   Yes.

19    Q   What did she ask you?

20    A   I don't recall.

21    Q   Do you have any notes?

22    A   No, I don't.

23    Q   Do you have any recollection of why she would have called you?

24    A   She probably called me over the disposable razors, I suspect.

25    Q   Do you remember what you told her?
```

Pamela I. Cant, 2/24/2015 - By Ms. Mell                         79

GEO-STATE231589

```
1    A   I would have told her to cite it.

2    Q   Cite it as what?

3    A   As serious.

4    Q   Why?

5    A   Because bloodborne pathogens are always cited as serious.

6        They're high hazard.

7    Q   So what did she tell you that would have led you to opine that

8        she should cite Geo?

9    A   I suspect the complaint that someone was cut with one.

10   Q   So the mere fact that someone was cut by a disposable razor

11       was sufficient to issue a citation of violation against Geo,

12       in your opinion?

13   A   Well, in my opinion is, you know, her, it is her opinion, and

14       so I do agree with how she cited it.

15   Q   When you were speaking to her on the phone, did you know what

16       she was citing?

17   A   I didn't know how -- all she was gonna cite it.

18   Q   Did you tell her what to cite?

19   A   I don't believe I told her what to cite.

20   Q   If no one had been cut by any disposable razor ever in the

21       facility, would your opinion remain the same, that --

22   A   Yes.

23   Q   -- they should have been cited?

24   A   Yes.

25   Q   Why is that?
```

GEO-STATE231590

```
 1    A   Because there is occupational exposure.

 2    Q   Even though no one, with a hypothetical that no one has been

 3        cut with a disposable razor --

 4    A   Yes.

 5    Q   -- it's considered an occupational exposure?

 6    A   Yes.

 7    Q   Because it's a disposable razor?

 8    A   Because it is a sharp.

 9    Q   Is it your opinion that any item that is sharp should be

10        considered an occupational exposure risk?

11    A   It needs to be assessed, and if there is reason [sic]

12        intent -- anticipated exposure, because someone else is

13        cutting their skin with a sharp, then yes, it would be, need

14        to be assessed as that.  But not all sharps, if there's no

15        occupational exposure.

16                     (Exhibit No. 6 marked for identification.)

17    Q   Showing you what has been marked as Exhibit 6, do you

18        recognize that document?

19    A   Mm-hmm.

20    Q   You do?

21    A   Well, I recognize what -- it's an e-mail.

22    Q   What was the Governor office's involvement in this matter?

23    A   I'm not aware.

24    Q   Do you know anything about this particular e-mail?

25    A   I don't.
```

GEO-STATE231591

```
1   Q   Who is Tammy?

2   A   Our legis -- our legislative director.

3   Q   Who is Suchi?

4   A   She was one of our senior policy people, but she's now, is at

5       the Governor's office.

6   Q   So she works for OFM or does she --

7   A   I'm not sure --

8   Q   -- work for --

9   A   -- where she --

10  Q   -- Insley?

11  A   -- where she went to.

12  Q   Do you know whether or not either one of these individuals was

13      tasked with finding that information as to Geo?

14  A   I am not.

15  Q   Who is Maggie Leland?

16  A   She is the agency's rule cord [sic] -- rules coordinator.

17  Q   Did you ever participate in any conversations as to the

18      application of L&I rules to Geo?

19  A   Yes.  With the co-show (phonetic), as I stated before.

20  Q   Who is that?

21  A   Kenya, I believe.  Kenya.  Her name -- she has an American

22      spelling so you might want to look at it.  Here.  (Witness

23      indicates.)

24  Q   Is that, other than in the ten-minute conversation you had

25      with her, when she was at the facility?
```

GEO-STATE231592

1    A   She wasn't at the facility when I spoke to her.  She was at

2        her office.  I think we talked not too much about everything

3        but how the process would go as, as we went forward with this.

4    Q   So what did you say?

5    A   Well, this was at, at the mediation.  I hadn't talked with her

6        prior to that.  I, I hadn't talked to her after the ten

7        minutes again so.

8    Q   Are you of the opinion that the citation needs to be upheld?

9    A   Yes.

10   Q   Why is that?

11   A   Because it is occupational exposure and it needs to be

12       assessed correctly.

13   Q   Do you know whether or not Geo has correctly assessed it at

14       this time?

15   A   I do not know.

16   Q   Have you participated in any conversations as to whether or

17       not the Governor's office wants disposable razors treated as

18       occupational hazards?

19   A   I have not had that conversation.

20   Q   Have you provided any input on the safety risks associated

21       with the use of disposable razors?

22   A   No.

23   Q   Do you know whether or not anyone has ever contracted a

24       communicable disease from a disposable razor?

25   A   I'm not aware of that.

GEO-STATE231593



Saenz, Kenya V (LNI)

| | |
|---|---|
| **From:** | Leland, Maggie (LNI) |
| **Sent:** | Thursday, March 13, 2014 12:20 PM |
| **To:** | Solza, Anne M (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI); Puente Jr., David (LNI); Korzenko, John G (LNI); Johnson, David C (LNI); Saenz, Kenya V (LNI) |
| **Cc:** | Sharma, Suchi (LNI); Fellin, Tammy (LNI) |
| **Subject:** | RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection |

This message has been archived. View the original item.

Anne:

Tammy, Suchi, and I are getting info together on the jurisdiction of the different L&I programs at the NW Detention Center in order to respond to the Governor's inquiry.  We got information from the Industrial Insurance division that the Geo

GEO-STATE231594

**Wharton, Angela J (LNI)**

| | |
|---|---|
| **From:** | Leland, Maggie (LNI) |
| **Sent:** | Thursday, June 19, 2014 4:53 PM |
| **To:** | Wharton, Angela J (LNI) |
| **Subject:** | FW: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection |

**From:** Leland, Maggie (LNI)
**Sent:** Thursday, March 13, 2014 12:20 PM
**To:** Soiza, Anne M (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI); Puente Jr., David (LNI); Korzenko, John G (LNI); Johnson, David C (LNI); Saenz, Kenya V (LNI)
**Cc:** Sharma, Suchi (LNI); Fellin, Tammy (LNI)
**Subject:** RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection

Anne:

Tammy, Suchi, and I are getting info together on the jurisdiction of the different L&I programs at the NW Detention Center in order to respond to the Governor's inquiry. We got information from the Industrial Insurance division that the Geo Group underwent a corporation restructure effective 1/1/2013 and it now under GEO Corrections & Detention Inc, UBI 603281420. The previous workers comp account 110,843-00 was closed and new account opened, 262,124-00. Per the L&I contractor look up page, it looks there is more than 100 workers. I am not sure that DOSH has this information.

Please keep us posted if an inspection will be opened with the Geo Group.

Thanks

Maggie Leland
Senior Policy Advisor
Governmental Affairs & Policy Division
Department of Labor and Industries
(360)902-4504
maggie.leland@lni.wa.gov

**From:** Soiza, Anne M (LNI)
**Sent:** Wednesday, March 12, 2014 2:32 PM
**To:** Leland, Maggie (LNI)
**Cc:** Sharma, Suchi (LNI); Puente Jr., David (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI); Korzenko, John G (LNI); Johnson, David C (LNI); Saenz, Kenya V (LNI)
**Subject:** RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection
**Importance:** High

Good question. The inspection was tied to the roundtable because the other one, the GEO group acct was closed I heard at this point in time. I assume we did this to enter something into WIN for now. We will look into it.

**From:** Leland, Maggie (LNI)

1

GEO-STATE231595

**Sent:** Wednesday, March 12, 2014 2:27 PM
**To:** Soiza, Anne M (LNI)
**Cc:** Sharma, Suchi (LNI); Puente Jr., David (LNI); Blackwood, Craig S. (LNI); Lundeen, Alan (LNI)
**Subject:** RE: Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection
**Importance:** High


Anne:

The NW Detention Center Roundtable is a non-profit advocacy group (UBI 602956389) .  Is this the employer or is it the Geo Group (UBI 601791682)?

_____

**From:** Soiza, Anne M (LNI)
**Sent:** Wednesday, March 12, 2014 11:04 AM
**To:** Sacks, Joel (LNI); Contris, Kimberly K (LNI)
**Cc:** Leland, Maggie (LNI); Sharma, Suchi (LNI); Puente Jr., David (LNI); Blackwood, Craig S. (LNI); Fischer, Elaine M. (LNI)
**Subject:** Northwest Detention Center-The GEO Group-NWDC Roundtable WA-DOSH Inspection
**Importance:** High


11 AM update: Final for this week

An OSHA referral of an employee complaint was filed with WA-DOSH on 2-20-2014 and evaluated to allege narrow set of serious hazards.  This classification required us to start an inspection by 3-13-2014.

A DOSH inspection was opened today 3/11/2014 of The GEO Group-NW Detention Center Roundtable, UBI 602956389. This is not their first inspection or employee complaint over the years.

The inspection covered these narrow issues and was handled in a very routine manner.  The Detention Center officers were the employees covered by this inspection.  The inspector discovered through employee interviews that an employee was injured through an unprotected exposure to sharps (razor blades) earlier in February.

L&I DOSH staff are not involved in issues regarding the detainees at this time.  If we should get a safety and health work-related complaint during further officer employee interviews we will of course handle it thorough normal policy and procedures.  If this should change regarding potential hazardous work-related exposures to detainees, Craig will let us know.

Next steps are to close the inspection, complete the documentation necessary with results to be issued at a later date.


Anne F. Soiza
Assistant Director
Division of Occupational Safety and Health
Dept. of Labor and Industries
soiz235@lni.wa.gov
360.902.5090

<< OLE Object: Picture (Device Independent Bitmap) >>

*Keep Washington Safe and Working*
Safety - Service - Value

2

GEO-STATE231596