UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON,

　　　　　　　Plaintiff,

　　v.

THE GEO GROUP, INC.,

　　　　　　　Defendant.

CASE NO. 3:17-cv-05806-RJB

ORDER ON DEFENDANT THE GEO GROUP, INC.'S MOTION FOR RELIEF FROM DEADLINES AND MOTION TO COMPEL, AND PLAINTIFF THE STATE OF WASHINGTON'S MOTION TO COMPEL

　　　　BEFORE THE COURT are two motions filed by Defendant The GEO Group, Inc., a Motion for Relief From Deadlines (Dkt. 111), and a Motion to Compel (Dkt. 113). Also before the Court is Plaintiff the State of Washington's Motion to Compel (Dkt. 126). The Court has reviewed the entirety of the record and heard oral argument on October 1, 2018.

**A. GEO's Motion for Relief from Deadlines (Dkt. 111).**

　　　　Having visited—and revisited—the discovery deadline for GEO's production to the State on at least two prior occasions, the parties and the Court are familiar with the lengthy procedural

history. The back and forth was at least in part precipitated because of complications involving ICE review of some discovery prior to its production to the State by GEO. *See* Dkts. 86, 96. As relevant here, the current Court-imposed deadline is as follows: "All discovery submitted with GEO's first request for review by ICE, but not part of the resubmission, shall be produced by Friday, July 27, 2018." Dkt. 86 at 13, ¶4. Further, GEO must produce "all discovery resubmitted for review by ICE, and thereafter approved by ICE for production," by Friday, August 31, 2018." *Id*.

GEO seeks to modify the deadline as follows:

(1) GEO to produce all discovery resubmitted for review by ICE, and thereafter approved by ICE for production by November 5, 2018;

(2) To the extent ICE prohibits GEO from producing discovery, GEO must produce a discovery log documenting redaction by November 12, 2018.

Dkt. 111-1; Dkt. 116 at 7.

According to GEO: it has produced over 28,000 documents to the State; approximately 3,000 documents have been submitted to ICE for review; GEO received 518 documents as reviewed by ICE on September 5, 2018, and GEO produced the discovery to the State "during the week of September 10, 2018." Dkt. 111 at FN 5; Dkt. 116 at 4, 5. GEO also represents that it has recently submitted approximately additional documents for ICE review, due to several unintentional errors in GEO's discovery triage. *Id*. at 5.

The State opposes GEO's motion to compel because the State needs the withheld documents to effectively litigate the case, especially in light of discovery deadlines. Dkt. 115 at 2 (citing Sept. 20, 2018 expert disclosure deadline; Oct. 25, 2018 discovery motions deadline; November 16, 2018 discovery cutoff). The State urges the Court to "stand by its Order requiring production of the withheld documents." *Id*. at 3. The State notes that even if GEO is given

additional time, there is no guarantee it can meet its new deadline, because production is contingent on ICE. *Id*. at 4. The "repeated invitation to ICE—a nonparty—to participate in the discovery process is causing indefinite delay that now prejudices [the State's] ability to litigate this case and meet deadlines[,]" the State contends. Dkt. 121 at 1. GEO has used ICE as a shield, the State contends, by recently "submitting to ICE categories of documents that do not seem to fall within the review criteria articulated in this Court's Orders[.]"

GEO's motion IS HEREBY DENIED. Extending the deadline is an exercise in futility, because ICE, which must review withheld documents prior to their production, is not a party to the case. If the Court were to extend the deadline as requested to November 5, 2018, GEO could wait until then to produce the discovery. But as the State emphasizes, ICE is not subject to deadlines imposed on the parties. However, ordering GEO to immediately produce the withheld discovery, as the State urges, could cause collateral problems, as previously briefed at length.

Nevertheless, the Court now makes the following order to expedite orderly completion of discovery.

It is HEREBY ORDERED: On a rolling basis, GEO SHALL (1) produce all discovery necessarily subject to a review by ICE within three (3) days of receipt from ICE, except discovery ICE prohibits GEO from producing; and (2) for discovery ICE prohibits GEO from producing, GEO must update its discovery log documenting items withheld and produce the discovery log to the State within five (5) days of receipt of notice of such prohibition from ICE.

If GEO has used its submissions to ICE to delay production of discovery that does not fit within categories previously identified by the Court and does not require ICE review, GEO SHALL IMMEDIATELY produce this discovery.

This Order makes no findings or further orders about deadlines.

**B. GEO's Motion to Compel (Dkt. 113).**

GEO's Motion to Compel raises three primary issues: (1) whether the Attorney General's Office (AGO) should be compelled to produce discovery of State of Washington agencies; (2) whether the AGO should be compelled to produce discovery from certain and/or all divisions within the AGO; and (3) whether the AGO should be compelled to produce metadata in its possession. Dkt. 113 at 2, 3.

### 1. Discovery from State of Washington agencies.

The parties disagree about whether the AGO should be responsible to produce discovery held by State of Washington agencies. Dkt. 113 at 7-11. GEO seeks discovery from State agencies, such as the Department of Labor and Industries (L&I), the Department of Corrections (DOC), the Department of Social and Health Services (DHS), and the Governor's Office because of its relevance to GEO's defenses of unclean hands and laches. *Id*. GEO posits that the State, which has leveled allegations that GEO violates the State Minimum Wage Act (MWA), also operates its institutions at sub-minimum pay rates. *Id*. The State has wrongfully delayed bringing this enforcement action, GEO maintains, because, as discovery on State agencies will show, the State has long-known of GEO's Volunteer Work Program (VWP). *Id*.

GEO contends that the AGO has actual control over information held by state agencies because of the AGO's requisite relationship with them and statutory power to represent them. Dkt. 113 at 8, 9. By enforcing the MWA, GEO argues, the State has an obligation to produce discovery on behalf of L&I, the State agency charged with enforcing the MWA. *Id*. at 10.

The State maintains that the AGO does not control the documents of State agencies. Dkt. 118 at 4-7. The State agencies are not parties to this lawsuit, the State argues, because the AGO initiated this lawsuit as *parens patriae*, so "the AGO has no more way of compelling production

from L&I and DOC than GEO." Dkt. 118 at 5. GEO should seek the discovery directly from the third-party State agencies themselves, the State argues, because the State agencies are better positioned to respond to the discovery requests, and forcing the AGO to produce discovery for State agencies would impose an unfair burden on the AGO that sets bad precedent, because the AGO would be forced to produce discovery for 26 cabinets and 230 boards and commissions. *Id*. at 8-10.

The parties' disagreement boils down to their respective views about whether State agencies should be viewed as a part of, not separate from, the plaintiff, the State of Washington. The parties cite authority of varying persuasiveness, none of it binding. *See* Dkt. 113 at 7-9, citing *Wilson v. State of Washington*, No. C16-5366 BHS, 2017 WL 518615, at *3 (W.D.Wash. Feb. 8, 2017), *State v. Reed*, 429 P.2d 870, 872 (1967); and Dkt. 118 at 4, citing to *United States v. Am. Express Co.*, No. 1:10-cv-04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011); *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05-2182, slip op. at 8 (D.D.C.May 8, 2007). In this Court's view, where the plaintiff is the State of Washington, discovery addressed to the State of Washington includes its agencies. Because the AGO is the law firm to the State of Washington, the AGO should respond to and produce discovery on behalf of the State of Washington, including its agencies. This view should not be construed as a finding for any other purposes.

At oral argument, the State repeatedly referenced the "*Amtrak* case," *New York ex. rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 265 (N.D.N.Y. 2006), which the State relies on for the proposition that "[j]ust as a law firm does not subject all its clients to party discovery when it sues on behalf of only one client, the AGO cannot subject all state agencies to party discovery when it sues on behalf of one client—here, Washington residents." Dkt. 118 at 5. *Amtrak* addressed the issue of whether discovery could be compelled from the Office of the State

Comptroller for the State of New York. *Id*. at 261. In *Amtrak*, like in this case, the State was the named plaintiff, but in holding that discovery served on the Office of the Comptroller need not be compelled, the court reasoned that the State was a nominal party in what was, effectively, an enforcement action on behalf of another agency, the Department of Transportation. Unlike *Amtrak*, this case is not an enforcement action by an individual agency pleaded with the State of Washington as a nominal party, but rather, the AGO has explicitly brought this case as *parens patriae* on behalf of the State of Washington. Further, *Amtrak* relied heavily analyzing the Constitution for the State of New York, a different state.

On this issue, GEO's motion is HEREBY GRANTED. The AGO, on behalf of the plaintiff, SHALL produce all relevant, responsive, non-privileged information held by the State of Washington, including its agencies. This Order makes no findings as to the merits of specific discovery requests.

### 2. Discovery within divisions of the AGO.

GEO asserts that discovery outside of the CRU, but within the AGO, is "likely" to contain discovery relevant to GEO's affirmative defense. Dkt. 113 at 11. According to GEO, the State previously represented that it searched the entire AGO for responsive discovery, but more recently the State has argued that combing AGO files would be of "no value" because all AGO discovery would be privileged, which, GEO argues, suggests that the State has not searched all AGO divisions. *Id*. at 11, 12.

The State counters that GEO's request is inappropriate, because any discovery that the AGO possesses, if it exists, originates from State agencies themselves, not the AGO. Dkt. 118 at 9. If it exists, the State posits, it would "likely" be protected by attorney-client privilege or work

product doctrine. *Id*. Searching the files of over five-hundred lawyers in twenty-seven (27) divisions would be an undue burden, the State opines. *Id*. at 10.

The State's argument on this issue is not well-taken. The State exaggerates its burden, because, as GEO notes, discovery to be found within the AGO is most likely to be found within just a few divisions of the AGO, such as L&I and DOC. The fact that much of the discovery could fall within a privilege is no answer to the production of discovery that falls outside any privilege. The State should produce a log for privileged material.

On this issue, GEO's motion is GRANTED. The AGO SHALL produce discovery all relevant, responsive, non-privileged information held by all divisions of the AGO and agencies of the State. This Order makes no findings as to the merits of specific discovery requests.

### 3. **Metadata.**

According to GEO, the State has not produced discovery containing metadata of custodian information, which GEO represents is valuable to determining who has access to documents, who uses documents, and has knowledge of documents, regardless of who authored them. Dkt. 113 at 13. GEO contends that this metadata is kept in the ordinary course of business and should be produced, especially because the State has insisted that GEO produce the same information. *Id*. at 12, 13.

The State argues that GEO does not need custodian information and cannot provide authority requiring the State to produce it. Dkt. 118 at 11. Moreover, the State remarks, for much of the discovery produced, individual custodial information can be determined, and "[o]f the remaining documents, . . . more specific custodian information is unavailable." *Id*. at 12.

It is unclear from the State's brief whether it has turned over the metadata in its possession. As to all discovery from AGO divisions, the State should produce metadata in native

format, without summarizing or otherwise manipulating the information. If the State has already produced the metadata consistent with this Order and the spirit of this Order, the State need not reproduce the information.

On this issue, GEO's motion is GRANTED. To the extent that the State possesses metadata for discovery that identifies individual custodians, all discovery produced, both past and prospective, shall contain this metadata and shall be produced without modification.

**C. The State's Motion to Compel (Dkt. 126).**

The State requests simply that GEO be compelled to produce "financial documents" within ten (10) days. Dkt. 126-1. A closer examination of the pleadings reveals a far more complicated request, because "financial documents" implicates multiple interrogatories (ROGS) and requests for production (RFPs) from the State's second round of discovery requests. *See* Dkt. 126 at 5-13. The State's request also has two parts, Part A, discovery pertaining to the State's claim for unjust enrichment (ROG #7 and RFPs ##18, 38-44, 51-55), and Part B, discovery pertaining to GEO's "offset" affirmative defense (ROG #8 and RFP #8). *Id*. 2. Broadly speaking, the State seeks discovery of financial documents both particular to the Northwest Detention Center (NWDC) and general to GEO, a publicly-traded multinational corporation that operates the government program at issue, the Volunteer Work Program, at multiple facilities. *See id*. at 5-13.

**1. Part A: Discovery for the State's unjust enrichment claim (ROG #7 and RFPs ##18, 38-44, 51-55).**

At issue are ROG #7 and RFPs ##18, 38-44, and 51-55, which the parties have quoted in full in their brief. Dkt. 126 at 5-13. Generally speaking, the State's discovery requests are overbroad, complex, and ask for documents that may not be in existence and are not proportional to the needs of the case. The burden and expense of responding to the discovery requests

probably outweighs their likely benefit. Rather than simply denying the State's motion, however, to expedite discovery, the Court chooses to modify the State's discovery requests by eliminating portions of the requests that should not be compelled, as indicated by strikethrough and underlining below. To that extent, the State's Motion to Compel is HEREBY GRANTED IN PART and DENIED IN PART.

The State's discovery requests are HEREBY MODIFIED as follows:

**INTERROGATORY NO. 7**: For each year from 2005 to the present, please identify GEO's profits or losses for the NWDC ~~and the basis for your answer~~ and the source of that information.

~~**REQUEST FOR PRODUCTION NO. 18**: Please produce all documents that are referenced in, support, or that form the basis of Your response to Interrogatory No. 7.~~

**REQUEST FOR PRODUCTION NO. 38**: For each of the years 2005 to the present, please produce all GEO's financial statements, Profit and Loss statements, and budget ~~and budget to actual analysis on a quarterly or annual basis,~~ if any, for the NWDC for each of the years during the relevant time period.

~~**REQUEST FOR PRODUCTION NO. 39**: To the extent not previously produced, please produce GEO's U.S. Corrections & Detention Division financial statements, Profit and Loss statements, budget, and budget to actual analysis on a quarterly or annual basis for each of the years during the relevant time period.~~

**REQUEST FOR PRODUCTION NO. 40**: To the extent not previously produced, and to the extent they exist, please produce the NWDC's financial statements, Profit and Loss statements, and budget, ~~and budget to actual analysis on a quarterly or annual basis from 2005 to present,~~ including all documents that set forth the detailed operating costs of the facility, Voluntary Work Program costs, labor costs, and payroll expenses as well as all details of revenue, contract payments and reimbursements for the NWDC.

~~**REQUEST FOR PRODUCTION NO. 41**: To the extent not previously produced, please produce all documents that contain financial performance analysis, financial models, financial evaluations, analysis of profits earned, or other assessments of the performance of the NWDC contract(s) with ICE.~~

**REQUEST FOR PRODUCTION NO. 42**: To the extent not previously produced, and to the extent they exist, please produce all documents related to the profit or loss of the NWDC's Voluntary Work Program, including budget, ~~and budget to actual analysis on a quarterly or annual basis~~ from 2005 to the present, and all documents that set forth the detailed operating costs of the Voluntary Work Program, as well as revenues, payments and reimbursements received.

**REQUEST FOR PRODUCTION NO. 43**: To the extent not previously produced, and to the extent they exist, please produce all documents that contain financial analysis, financial models, analysis of

profits earned, valuation of the work performed, or other assessments of the Voluntary Work Program at the NWDC from 200~~5~~ to present.

**REQUEST FOR PRODUCTION NO. 44**: ~~To the extent not previously produced, please produce all documents that contain financial analysis, financial models, analysis of profits earned, valuation of the work performed, or other assessments of the Voluntary Work Program within the GEO Group from 2005 to the present.~~

**REQUEST FOR PRODUCTION NO. 51**: Please produce all documents, to the extent they exist, containing financial performance analyses, financial models, or other financial evaluations prepared ~~in connection with~~ or for the purpose of GEO Group's offer(s) and bid(s), and negotiations related to amendment(s) and renewal(s), of contracts related to the NWDC from 2005 - present.

**REQUEST FOR PRODUCTION NO. 52**: To the extent not previously produced, and to the extent they exist, please produce any per diem rate calculations and models related to GEO Group's NWDC Contract(s) from 2005 to present, including, but not limited to, the following factors: "Voluntary Work Program" costs and expenses; labor costs and payroll expenses (excluding Voluntary Work Program); expected and guaranteed occupancy; all other costs of providing services (including food, medical, building operations, etc.); desired margins.

**REQUEST FOR PRODUCTION NO. 53**: ~~To the extent not previously produced, please produce any calculations concerning overhead and other costs allocated to the NWDC Contracts in evaluating profitability and the per diem rates as well as the methodology used to allocate such costs, including any changes in methodology.~~

**REQUEST FOR PRODUCTION NO. 54**: ~~To the extent not previously produced, please produce all documents that contain any analyses of the NWDC Contract costs, and categorization of those costs as variable or fixed, during the relevant period and any changes to allocation of costs in between categories.~~

**REQUEST FOR PRODUCTION NO. 55**: ~~To the extent not previously produced, please produce any documents or information related to assumptions made in determining the contractually negotiated per diem rate(s) and calculations for the NWDC Contracts.~~

## 2. **Bifurcation.**

As an alternative to producing financials discovery now, GEO has requested bifurcation under Rule 42(b), which allows for bifurcation to promote "convenience, to avoid prejudice, or to expedite and economize." According to GEO, the financials discovery is only necessary if and when a trier of fact finds GEO liable, but liability is doubtful, GEO continues, with a high risk that the State could misuse the information and a high cost to GEO. Dkt. 126 at 25. However, at least for the State's unjust enrichment claim, separating liability from any remedy could prove

impractical. Both sides have alleged equitable theories of recovery, with overlap between liability and remedy. Further, even if theoretically possible to bifurcate, GEO has presented no compelling basis for bifurcation specific to this case, and offers no explanation for why the existing protective order fails to alleviate its concerns. The request to bifurcate is DENIED WITHOUT PREJUDICE.

### 3. Part B: GEO's "offset" affirmative defense (ROG #8 and RFP #8).

GEO has withdrawn its "offset" affirmative defense. Therefore, as to Part B (ROG #8 and RFP #8), the State's motion to compel is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is also directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 2nd day of October, 2018.

ROBERT J. BRYAN
United States District Judge