The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON,

                    Plaintiff,

      v.

THE GEO GROUP, INC.,

                 Defendant.

Case No: 3:17-cv-05806-RJB

**DEFENDANT GEO GROUP'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION**

NOTE ON MOTION CALENDAR:
November 30, 2018

ORAL ARGUMENT REQUESTED

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND AND FACTS ................................................................................................. 2

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.    The Supremacy Clause Bars State Laws That Discriminate Against the Federal
          Government or Those with Whom it Deals, Including Federal Contractors ..................... 6

    II.   Application of the State's Minimum Wage Law to GEO With Respect to Immigration
          Detainees at the NWDC Would Violate the Supremacy Clause's Intergovernmental
          Immunity Doctrine ......................................................................................................... 8

    III.  The Ninth Circuit Decision in *Boeing* Shows That The Intergovernmental Immunity
          Doctrine Prohibits the State's Attempt to Apply its Minimum Wage Law to GEO and
          Federal Immigration Detainees ................................................................................... 10

CONCLUSION ....................................................................................................................... 12

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT**
**ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    i

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# TABLE OF AUTHORITIES

**Cases**

*Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017)............................................................ 4

*BFI Med. Waste Sys., Inc. v. Whatcom County*, 756 F. Supp. 480 (W.D. Wash. 1991), *aff'd*, 983 F.2d 911 (9th Cir. 1992) .............................................................................................. 5

*Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ........................................... passim

*City of Country Club Hills v. U. S. Dep't of H.U.D.*, No. 99 C 7139, 2001 U.S. Dist. LEXIS 14649 (N.D. Ill. Set. 17, 2001) ................................................................................. 2

*Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989)............................................... 9

*Doe v. United States*, 831 F.3d 309 (5th Cir. 2016)........................................................... 5

*M'Culloch v. Maryland*, 17 U.S. 316 (1819)................................................................... 6, 8

*Moses Lake Homes, Inc. v. Grant Cty.*, 365 U.S. 744 (1961)............................................. 7

*North Dakota v. United States*, 495 U.S. 423 (1990) ............................................... 2, 7, 12

*Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376 (1960)........................... 7, 8

*United States v. California,* 314 F. Supp. 3d 1077 (E.D. Cal. 2018)................................. 9

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010)........................................ 8

*Washington v United States*, 480 U.S. 536 (1983) ......................................................... 7


**Statutes**

6 U.S.C. § 251................................................................................................................... 5

8 U.S.C. § 1103(a)(11)(A)............................................................................................. 5, 6

8 U.S.C. § 1231(g)........................................................................................................ 3, 5


**Other Authorities**

DEPARTMENT OF HOMELAND SECURITY DELEGATION OF AUTHORITY TO THE ASSISTANT SECRETARY FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, DELEGATION NO. 7030.2, March 1, 2003 ................................................................................................. 5

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, 2011 OPERATIONS MANUAL ICE PERFORMANCE-BASED NATIONAL DETENTION STANDARDS 2011, https://www.ice.gov/detention-standards/2011.......................................................... 3


**Rules**

FED. R. CIV. P. 56(a) ...................................................................................................... 4

RCW 49.46.010(3)(k) ................................................................................................... 1, 3

RCW 49.46.020 .............................................................................................................. 3

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**

CASE NO. 3:17-CV-05806-RJB                                                    ii

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Defendant The GEO Group, Inc. ("GEO") respectfully moves for summary judgment on the First Cause of Action alleged in Plaintiff's complaint, which seeks (1) a declaratory judgment that GEO must pay state minimum wages to federal immigration detainees pursuant to the Washington Minimum Wage Act, and (2) seeks to enjoin GEO from paying such federal detainees less than the minimum wages required by that Act.

## INTRODUCTION

GEO operates the Northwest Detention Center ("NWDC"), where it houses federal immigration detainees under the authority of the federal government and pursuant to a contract with U.S. Customs and Immigration Enforcement ("ICE").  Plaintiff State of Washington seeks to apply its state minimum wage law to the Voluntary Work Program ("VWP") at NWDC, claiming that federal immigration detainees who participate in that program are "employees" for purposes of the minimum wage law.  *See* Complaint, ECF 1-1, ¶¶ 5.1-5.6, citing RCW 49.46.020.  As the Court has already recognized, however, *see* ECF 29 at 16-17, Washington's minimum wage law is expressly inapplicable to state, county and municipal prisons and detention facilities, because it excludes residents and inmates at such facilities from the definition of "employee."  *See* RCW 49.46.010(3)(k).  Thus, allowing Plaintiff to pursue its First Cause of Acton against GEO will require this Court to endorse a discriminatory application of Washington's minimum wage law, to the detriment of a federal program and the federal contractor carrying it out.  Such a discriminatory application of Washington's minimum wage law violates the Supremacy Clause of the U.S. Constitution, and GEO is therefore entitled to summary judgment on the State's First Cause of Action.[1]

---

[1] The doctrine of "intergovernmental immunity" upon which this motion rests is distinct from the

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                     1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## BACKGROUND AND FACTS

As both the Supreme Court and the Ninth Circuit have long recognized, the Supremacy Clause prohibits states from enacting or implementing laws that "discriminate[] against the Federal Government or those with whom it deals." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990)). The State's attempt to apply its minimum wage law to GEO, in the face of an express statutory exception for comparable state and local detention facilities, violates this constitutional principle. GEO is fully entitled to assert this constitutional violation: "[w]hen the state law is discriminatory, a private entity with which the federal government deals can assert immunity." *Boeing,* 768 F.3d at 842 (citing *North Dakota,* 495 U.S. at 435). *Boeing,* like this case, involved a state's attempt to enforce a discriminatory law against a federal contractor performing work for the government on property the contractor owned. *See id.* at 835-36. The Ninth Circuit held that application of the discriminatory state law invalid. The same result is required here.

The facts material to this motion are few, undisputed, and generally admitted by the State. GEO operates the NWDC under a contract with ICE, and has done so since 2005. Complaint, ECF 1-1, ¶ 3.10; ECF 19 (current ICE-GEO contract). GEO's contract with ICE to

doctrine of preemption, though both are rooted in the Supremacy Clause. As explained below, intergovernmental immunity invalidates discriminatory state laws regardless of whether any federal law expressly or impliedly conflicts with the state law. Preemption, by contrast, requires a conflict between federal and state law. *See, e.g., City of Country Club Hills v. U. S. Dep't of H.U.D.*, No. 99 C 7139, 2001 U.S. Dist. LEXIS 14649, *10 (N.D. Ill. Set. 17, 2001) (citing *North Dakota v. United States,* 495 U.S. 423, 434 (1990)) ("State and local law may run afoul of the Supremacy Clause by one of two ways: (1) the law may conflict with and therefore be preempted by congressional command or (2) the law may directly regulate or discriminate against the federal government in violation of the intergovernmental immunity doctrine.").

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT**
**ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                           2

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    operate NWDC implements statutory authority requiring that the federal government "shall

2    arrange for appropriate places of detention for aliens detained pending removal or a decision on

3    removal."  *See* 8 U.S.C. § 1231(g).  As provided in that statute, federal alien detention facilities

4    may be either "Government" facilities or "rental" facilities like GEO's NWDC.  *Id.*  At all such

5    facilities – whether operated directly by ICE, or by an ICE contractor like GEO – the conditions

6    under which aliens are held as federal detainees are identical, set forth in ICE's National

7    Detention Standards (NDS).  *See* Declaration of Tae Johnson, ECF 91, ¶10 ("Johnson Decl.").

8    The NDS prescribe comprehensive and detailed requirements for GEO to follow with respect to

9    all aspects of NWDC's operations.  *See, e.g.*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

10   2011 OPERATIONS MANUAL ICE PERFORMANCE-BASED NATIONAL DETENTION STANDARDS

11   2011, https://www.ice.gov/detention-standards/2011.

12          The State's complaint asserts in its First Cause of Action that GEO violates the State's

13   minimum wage law, specifically RCW 49.46.020, "when it pays detainees who work at NWDC

14   $1 per day instead of the hourly minimum wage."  Complaint, ECF 1-1, ¶ 5.6.  RCW 49.46.020

15   requires every "employer" to pay a specified minimum wage to "each of his or her employees."

16   However, the minimum wage law provides a definition of "employee" that specifically excludes

17   "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention,

18   treatment or rehabilitative institution."  RCW 49.46.010(3)(k).  Thus, the State seeks to impose a

19   statutory obligation to pay federal immigration detainees minimum wages that are expressly

20   inapplicable to individuals who are similarly situated except for one thing – they are being held

21   in detention under state, county or municipal authority, rather than under the federal authority set

22   forth in 8 U.S.C. § 1231(g).

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    3

Importantly, this Court has already expressly ruled that the State's minimum wage law treats operators of state and federal detention facilities differently. *See* Order Denying GEO's Mot. to Dismiss, ECF 29, at 17 ("[I]t is plain that the definition excepts residents of 'state . . . detention' facilities, not federal facilities. The Northwest Detention Center is a federal detention facility and thus does not fall under the exception."). Similarly, the State has emphasized to this Court that its minimum wage law imposes no obligations on state facilities, despite capturing federal facilities within its ambit. *See* State's Response to GEO's Mot. to Dismiss, ECF 17, at 11-12 (arguing that the state-institution exception is "clear on its face.").

In other words, the State seeks to apply its minimum wage law to GEO solely because GEO is operating a *federal* detention facility rather than a state, county or municipal facility. If NWDC were a state, county or municipal facility – and all other facts were the same – the State's minimum wage law would not apply to GEO, because the detainees at the facility would be excluded from the definition of "employee." This discriminatory application of state law, to the detriment of federal activities and contractors who carry them out, is flatly prohibited by the Supremacy Clause.

### STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017) (affirming decision granting summary judgment to federal agency based on a finding of no material dispute about facts and a legal conclusion that federal law preempted state foreclosure law); *BFI Med. Waste Sys., Inc. v. Whatcom County*, 756 F. Supp. 480 (W.D. Wash. 1991), *aff'd*, 983 F.2d 911 (9th

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                4

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Cir. 1992) (granting summary judgment where parties agreed there were no genuine issues of material fact and court concluded that a county ordinance violated the Commerce Clause of the U.S. Constitution).

## ARGUMENT

The detention of aliens who are in the United States pending their removal or a decision on whether they must be removed is exclusively a federal function.  *See, e.g.*, 8 U.S.C. § 1231(g); *Doe v. United States*, 831 F.3d 309, 317 (5th Cir. 2016) (referring to another ICE contractor: "[t]he CCA defendants, in housing alien detainees according to ICE specifications, were performing a federal function").  That federal function, assigned to the Attorney General via 8 U.S.C. § 1231(g), has been delegated to ICE,[2] which fulfills the federal responsibility to detain aliens either at facilities it operates, by contracting with firms like GEO, or by entering into intergovernmental agreements with state or local governments.  *See* Johnson Decl., ECF 91, ¶7; 8 U.S.C. § 1103(a)(11)(A).  Regardless of which arrangement is utilized, detainees are held in federal custody under the terms and conditions prescribed by ICE.  *See Doe*, 831 F.3d at 317 ("ICE promulgates all policies and procedures by which the detention center must operate.").  State, county and municipal authorities have no responsibility or authority to detain aliens awaiting removal or decisions on removal, except to the extent ICE may contract with a state or

---

[2] *See* 6 U.S.C. § 251 (transferring functions performed under the immigration detention and removal program from the Department of Justice's Commissioner of Immigration and Naturalization to the Secretary of Department of Homeland Security (DHS)); DEPARTMENT OF HOMELAND SECURITY DELEGATION OF AUTHORITY TO THE ASSISTANT SECRETARY FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, DELEGATION NO. 7030.2, March 1, 2003 (delegation to ICE of DHS's authority under 6 U.S.C. § 251, including the detention and removal program).

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT**
**ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                                   5

local government to fulfill ICE's legal responsibility to detain such aliens.[3]

Because the State's minimum wage statute discriminates against operators of federal detention facilities, whereas an identically-situated operator of a state, county or municipal detention facility would be exempt from any minimum wage obligation, the Supremacy Clause prohibits the State from enforcing that law against GEO with respect to immigration detainees at NWDC.

## I.    The Supremacy Clause Bars State Laws That Discriminate Against the Federal Government or Those with Whom it Deals, Including Federal Contractors.

From the earliest days of the Republic, beginning with *M'Culloch v. Maryland*, 17 U.S. 316 (1819), the Supreme Court has recognized that the Constitution prohibits state laws that intrude upon or discriminate against federal programs and activities. *M'Culloch* involved a tax Maryland imposed on notes issued by all banks in the state not chartered by its legislature. *See id.* at 317-18. The Court held that Maryland's attempt to collect the tax from the Bank of the United States, which was chartered by Congress, was barred by the Supremacy Clause. *Id.* at 429-35. *M'Culloch* thus struck down a state tax that both applied directly to the federal bank, and discriminated against that bank in favor of banks chartered by the state.

In the many years since, the Supreme Court and lower courts have built on the principles articulated in *M'Culloch* to develop what has come to be known as the doctrine of "intergovernmental immunity." Those cases make clear that the doctrine extends well beyond state tax laws, and can invalidate any state law "if it regulates the United States directly or

---

[3] *See* 8 U.S.C. § 1103(a)(11)(A) (authorizing Attorney General to enter an agreement with a state or political subdivision of a state "for necessary clothing, medical care, necessary guard hire, and the housing, care, and security of persons detained by the [Immigration and Naturalization] Service pursuant to Federal law").

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    6

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. at 435 (evaluating whether a North Dakota law regulating the sale of liquor on military bases violated the intergovernmental immunity doctrine).

Equally clear is that those who contract with the federal government are well within the category of "those with whom [the government] deals" for purposes of the intergovernmental immunity doctrine.   As the Ninth Circuit explained in *Boeing*, "[t]he federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis on this ground," 768 F.3d at 842, *i.e.,* on the ground that the California law at issue "discriminates against the federal government and against Boeing as a federal contractor." *Id.* at 843; *see id.* at 842 ("When the state law is discriminatory, a private entity with which the federal government deals can assert immunity.") (citing *North Dakota,* 495 U.S. at 435).

In short, for purposes of the Supremacy Clause, the discriminatory application of state law to federal contractors is treated the same as discriminatory application of state law directly to the federal government.  *See Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376 (1960) (holding, on Supremacy Clause grounds, that a Texas tax that discriminated against firms that leased property from the federal government could not be collected from those lessees); *Moses Lake Homes, Inc. v. Grant County*, 365 U.S. 744, 751 (1961) ("If anything is settled law, it is that the State may not discriminate against the Federal Government or its lessees."); *see also Washington v. United States*, 480 U.S. 536 (1983) (evaluating whether intergovernmental immunity doctrine barred a Washington state tax that federal construction contractors claimed discriminated against them).

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    7

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

## II.    Application of the State's Minimum Wage Law to GEO With Respect to Immigration Detainees at the NWDC Would Violate the Supremacy Clause's Intergovernmental Immunity Doctrine.

In *Phillips*, the Supreme Court instructed that "a State may not single out those who deal with the government, in one capacity or another, for a tax burden not imposed on others similarly situated." 361 U.S. at 383. The same principle controls here, because applying the State's minimum wage law to GEO would impose a financial burden on "those who deal with the government" that is not imposed on "others similarly situated." Here, there is no question that applying the minimum wage law to detainees at GEO's NWDC would discriminate by imposing a financial burden greater than that imposed on state, county and municipal detention facilities– all of which are exempt from the application of state minimum wage requirements in identical circumstances. *See Phillips,* 361 U.S. at 385 ("[I]t does not seem too much to require that the State treat those who deal with the [Federal] Government as well as it treats those with whom it deals itself.").

The result is not affected because the financial burden on GEO arises from a minimum wage law rather than a tax law. As noted previously, the intergovernmental immunity doctrine extends to discriminatory state laws of all types, not just state tax laws. *See, e.g., United States v. City of Arcata,* 629 F.3d 986 (9th Cir. 2010) (invalidating laws prohibiting military recruitment activities aimed at minors). If anything, the constitutional prohibition on discriminatory state laws applies with even greater force in a case like this one, because in the state tax cases, challengers seek to negate an essential attribute of state sovereignty. The power to tax is vital to a state's existence, *see, e.g., M'Culloch,* 17 U.S. at 428 ("[T]he power of taxing the people and their property, is essential to the very existence of government."), whereas the

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    8

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

minimum wage law involved here is a mere regulatory enactment that the State itself has already waived as to state, county and municipal detention centers.

Nor is it relevant whether minimum wage payments to detainees at GEO's NWDC will be reimbursed by ICE. As the court recently recognized in *United States v. California,* 314 F. Supp. 3d 1077 (E.D. Cal. 2018), the anti-discrimination requirement of the intergovernmental immunity doctrine "protects private entities and individuals even when the burdens imposed upon them are not then passed on to the Federal Government." *Id.* (citing *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 814-815 (1989)); *see id.* at 1096 (applying that principle to find likely invalid a discriminatory state law that burdened only private employers dealing with the federal government, not the government itself). In *Davis,* the Court held the intergovernmental immunity doctrine barred a Michigan income tax scheme under which retirement benefits paid to federal retirees were taxed but those paid to state retirees were exempt. *See* 489 U.S. at 814-17. In so holding, the Court did not suggest that taxing the federal retirees burdened the federal government. Nonetheless, the Court made clear that "private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign can[] themselves receive the protection of the constitutional doctrine [of intergovernmental immunity]." *Id.* at 814.

Applying these settled principles of intergovernmental immunity, the State's minimum wage law cannot be applied to require operators of federal detention facilities like GEO to pay state minimum wages to immigration detainees. Doing so would impose a financial burden on contractors acting on behalf of the federal government which the State does not impose on otherwise similarly-situated operators of state, county and municipal detention facilities. Such

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                                                                            9

1  discriminatory application of state law is forbidden by the Supremacy Clause's

2  intergovernmental immunity doctrine.[4]

### III.  The Ninth Circuit Decision in *Boeing* Shows That The Intergovernmental Immunity Doctrine Prohibits the State's Attempt to Apply its Minimum Wage Law to GEO and Federal Immigration Detainees.

The Ninth Circuit's application of intergovernmental immunity in *Boeing* confirms that

the doctrine bars the State from applying its minimum wage law to detainees at GEO's NWDC,

and that GEO is entitled to summary judgment on the Complaint's First Cause of Action.  Even a

cursory review of *Boeing* confirms that the principle the Ninth Circuit applied in that case also

controls here:  the state statute "discriminates against the federal government and against Boeing

as a federal contractor.  Therefore, it is invalid under the doctrine of intergovernmental

immunity."  768 F.3d at 843.

At issue in *Boeing* was a California statute ("S.B. 900") that imposed a clean-up standard

for radioactive pollution at a particular site, the "Santa Susana" site, which was more stringent

than the cleanup standard the federal government determined was appropriate.  768 F.3d at 837,

839-40.  When S.B. 900 was passed, Boeing owned virtually the entire Santa Susana site,

consisting of 2000-plus acres, which Boeing's predecessors had owned or occupied since 1947.

---

[4] Notably, *California* involved a state law ("AB 450") addressing immigrant employment.  The court found the law discriminatory under the intergovernmental immunity doctrine because it fined private employers who acquiesced in federal immigration investigations but not employers who resisted such federal investigations.  314 F. Supp. 3d at 1096.  The government argued that the doctrine "typically" applied to "laws that imposed burdens on entities contracting with, or supplying something to, the Federal Government, thus 'dealing' with the United States in an economic sense."  *Id.*  But the court found that in applying the doctrine to state laws that discriminate against federal activities, the term "deal" was not so circumscribed.  *Id.* ("Given that immigration enforcement is the province of the Federal Government, it demands no stretch of reason to see that [AB 450], in effect, targets the operations of *federal* immigration enforcement").

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Id.* at 834-35.  Beginning in the 1950's, a small portion of the site was leased to the U.S. Department of Energy (DOE), where it built and operated 16 nuclear reactors and over 200 facilities for nuclear research.  *Id.* at 835.  NASA also used a portion of the site for rocket testing. *Id.*  Both DOE and NASA contracted with Boeing and its predecessors to assist in nuclear and rocket research.  *Id.*  Those activities had ended entirely by 2006, leaving "a terrible environmental mess."  *Id.* at 835-36.  Subsequent operations at the site were limited to trying to clean it up.  *Id.* at 836.  DOE supervised cleanup of radioactive contamination, and contracted with Boeing to perform the necessary work.  *Id.*  A DOE environmental assessment established a cleanup standard for radioactive contamination that was less stringent than that required by S.B. 900.  *Id.*

Boeing challenged application of the S.B. 900 radioactive contamination cleanup standard as preempted by federal law governing nuclear safety, and alternatively as invalid under the intergovernmental immunity doctrine.  The district court agreed with both arguments, *see id.* at 838, but the Ninth Circuit addressed only intergovernmental immunity.  *Id.* at 839-43.  With respect to the anti-discrimination requirement of that doctrine, the Court of Appeals held that "SB 900 . . .violates intergovernmental immunity because it discriminates against the federal government and Boeing as a federal contractor."  *Id.* at 842.  The Ninth Circuit rested that conclusion on facts that were, in all material respects, analogous to those in the present case. First, the California law in *Boeing,* like the State law here, clearly discriminated against a federal activity – there the cleanup of environmental contamination being supervised by DOE, and here the operation of a detention facility for federal immigration detainees in ICE's custody.  Second, the discriminatory law in *Boeing,* like the one in this case, applied to a federal contractor

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    11

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

carrying out a federal function, rather than directly to any conduct of a federal official or employee. *Boeing* thus faithfully applied the requirement imposed by the Supremacy Clause that "state laws are invalid if they . . . 'discriminate against the Federal Government or those with whom it deals.'" *Id.* at 839 (quoting *North Dakota*, 495 U.S. at 435). That requirement applies equally here, to both invalidate the State's attempt to apply its minimum wage law to GEO and require that summary judgement be granted in GEO's favor on the Complaint's First Cause of Action.

## CONCLUSION

This Court previously ruled that the State minimum wage law exempts residents of State detention facilities, but applies to residents of federal detention facilities. *See* Order Denying GEO's Mot. to Dismiss, ECF 29, at 17. As explained above, that ruling compels a finding that the application of such a discriminatory state law to GEO's operation of a federal detention facility is forbidden by the Supremacy Clause's intergovernmental immunity doctrine. As a result, the Court should grant GEO's motion for summary judgment on the Complaint's First Cause of Action.

/ / /

/ / /

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    12

1  Dated: November 8, 2018

2                                          *s/Douglas E. Smith*
                                        **LITTLER MENDELSON**
3                                       Douglas E. Smith, WSBA #17319
                                        William J. Kim, WSBA #46792
4                                       One Union Square
                                        600 University Street
5                                       Suite 3200
                                        Seattle, WA 98101
6                                       Telephone: (206) 623-3300
                                        Facsimile:  (206) 447-6965
7
                                        **NORTON ROSE FULBRIGHT US LLP**
8                                       Andrea L D'Ambra
                                        1301 Avenue of the Americas
9                                       New York, NY 10019
                                        Telephone: (212) 318-3000
10                                      Facsimile:  (212) 318-3400

11                                      **NORTON ROSE FULBRIGHT US LLP**
                                        Charles A. Deacon
12                                      300 Convent St.
                                        San Antonio, Texas 78205
13                                      Telephone: (210) 270-7133
                                        Facsimile:  (210) 270-7205
14                                      charlie.deacon@nortonrosefulbright.com

15                                      **NORTON ROSE FULBRIGHT US LLP**
                                        Mark Emery
16                                      799 9th Street NW, Suite 1000
                                        Washington, DC  20001-4501
17                                      Telephone: (202) 662-0210
                                        Facsimile: (202) 662-4643
18                                      mark.emery@nortonrosefulbright.com

19                                      **GREENBERG TRAURIG LLP**
                                        Scott A. Schipma
20                                      2101 L St. NW, Suite 1000
                                        Washington, DC 20037
21                                      Telephone: (202) 331-3141

22                                      ATTORNEYS FOR DEFENDANT THE GEO
                                        GROUP, INC

23

24

25

26

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                    13

## CERTIFICATE OF SERVICE

I am a resident of the State of Washington. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One Union Square, 600 University Street, Suite 3200, Seattle, Washington 98101.  I hereby certify that on November 8, 2018, I served the foregoing **DEFENDANT GEO'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION** on all attorneys of record via:

| ☒ | **ELECTRONICALLY FILING** the foregoing document(s) via the United States District Court for the Western District of Washington's E-Filing System. |
| --- | --- |

I declare under the penalty of perjury under the laws of the State of Washington that the above is true and correct.

Executed on November 8, 2018, at Seattle, Washington.

*s/ Liana Natividad*
Liana Natividad
lnatividad@littler.com
**LITTLER MENDELSON, P.C.**

FIRMWIDE:160020482.1 059218.1371

**DEF GEO'S MOTION FOR SUMMARY JUDGMENT
ON PLF'S FIRST CAUSE OF ACTION**
CASE NO. 3:17-CV-05806-RJB                                     14

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300