**CHIEN DECLARATION**

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Plaintiff,<br><br>            v.<br><br>THE GEO GROUP, INC.,<br><br>                 Defendant. | (UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON AT TACOMA)<br><br>Case No.3:17-cv-05806 |

**EXPERT REPORT OF DAVID LEWIN, Ph.D.**

**SEPTEMBER 20, 2018**

**TABLE OF CONTENTS**

I.    QUALIFICATIONS ..................................................................1

II.   CASE BACKGROUND ............................................................4

III.  TASK ADDRESSED ................................................................4

IV.  SUMMARY OF OPINIONS .....................................................5

V.    ANALYTICAL BASES OF OPINIONS ......................................5

VI.      CONCLUSION ...................................................................13

## I.      QUALIFICATIONS

1.  I am the Neil H. Jacoby Professor Emeritus of Management, Human Resources and Organizational Behavior in the Anderson School of Management at the University of California at Los Angeles (UCLA). I am also a Managing Director of the Berkeley Research Group (BRG). My primary area of specialization is human resource management and employment relations. I have published more than 20 books and more than 150 articles in such journals as *Industrial and Labor Relations Review*, *Human Resource Management*, *Industrial Relations*, *British Journal of Industrial Relations*, *The Review of Economics and Statistics*, *Journal of Conflict Resolution*, *Labor History*, *Harvard Business Review*, and *California Management Review*. Among my books are *Human Resource Management: An Economic Approach*, *The Human Resource Management Handbook*, *Contemporary Issues in Employment Relations*, *Advances in Industrial and Labor Relations*, *Volume 24*, *The Oxford Handbook of Participation in Organizations*, and *Handbook of Qualitative Research Methods on Human Resource Management: Innovative Techniques*.

2.  I have held research grants from the National Science Foundation, Ford Foundation, National Institute for Dispute Resolution, Society for Human Resource Management, Human Resource Planning Society, and the U.S. Department of Labor.  I previously served as President of the Labor and Employment Relations Association (LERA), President of the University Council on Industrial Relations and Human Resource Programs (UCIRHRP), Director of the UCLA Human Resources Round Table, Director of the UCLA Institute of Industrial Relations, Senior Associate Dean for the UCLA Anderson School MBA Program, Faculty Director of the Columbia Business School Ph.D. Program, Faculty Director of the Columbia Business School Human Resources Research Center, and Co-Chair of Los Angeles Mayor Riordan's Task Force on General Manager Compensation and Performance Evaluation. In 1995, I was elected a Fellow of the National Academy of Human Resources. I am senior editor of *Advances in Industrial and Labor Relations* and a member of the editorial boards of *Industrial Relations*, *California Management Review, Journal of Change Management,* and *Work, Organization and Employment*. In 1996 and 1999, respectively, I co-chaired the first and second National Conferences on Innovative Teaching in Human

1

Resources and Industrial Relations.  In 2002, I received the Pericles Award from the Society for Human Resource Management (SHRM) for outstanding contributions toward advancing the practice of human resource management.

3. I have taught numerous MBA and Ph.D. courses at the Columbia University Graduate School of Business, on whose faculty I served for 20 years, and at the UCLA Anderson School of Management, on whose faculty I have served for 28 years. These courses include Human Resource Management; Managing Employee Relations; Managing & Leading Organizations; Leadership Foundations; Regulation of the Employment Relationship; Labor Market Analysis; Pay & Rewards in Organizations; and Research Methods.

4. I have consulted widely with business, government and voluntary organizations in the U.S. and abroad. I served for many years as Faculty Director of the UCLA Anderson School Advanced Program in Human Resource Management and as Faculty Director of the Columbia University Graduate School of Business Senior Executive Program. Further, I served for eight years as a Director of K-Swiss, Inc. and member of the Board's Compensation and Stock Options Committee and the Governance Committee. I presently serve as a Director of the National Academy of Human Resources, a member of The Conference Board's Evidence-Based Human Resources Advisory Panel, and Co-Chair of the Labor and Employment Relations Association Strategic Thinking Committee. I previously served as a member of the Research Advisory Board of World at Work, Inc. (formerly The American Compensation Association).

5. I hold a Ph.D. degree in Management with a specialization in human resource management and industrial relations as well as an MBA degree and a BS degree with a specialization in accounting. I received extensive training during the course of my Ph.D. studies in primary research methods (*i.e.,* experimental designs, observational and participant-observation research methods, interviewing, and survey design and analysis), secondary research methods (*i.e.,* the use of published databases and reference sources in conducting research), and quantitative research methods (*i.e.,* probability theory, univariate statistics and multivariate statistics). I have taught primary research methods courses to Ph.D. students at

2

Columbia Business School and the UCLA Anderson School; and I have written extensively about the topics of human resource strategy, human resource management and business performance, employment relations, job/work design, hiring and selection, compensation and rewards, performance management and evaluation, and discipline and due process.

6.  I have served as a consulting and testifying expert in litigation for 39 years (1979-2018), having been retained on 375 occasions. Of these cases, I served as an expert for defendants 222 times, for plaintiffs 152 times, and jointly for plaintiff and defendant once. In these cases, I have rendered deposition testimony on 116 occasions and trial testimony on 59 occasions. My testimony has been rendered in federal, state and local courts across the country, administrative law courts, U.S. Tax Court, and arbitration hearings.

7.  The subject matter of the cases in which I have been retained is as follows: 1) human resource management practices, including hiring, transfer, demotion, discipline, training and performance management; 2) wages and hours, including off-the-clock work, managerial and employee misclassification, overtime, waiting time, and meal and rest breaks; 3) independent contractor versus employee status; 4) wrongful termination and retaliation; 5) age, race, gender, religious, national origin and disability discrimination; 6) executive compensation, including executive contracts, incentive compensation, and stock option usage and backdating; 7) employee compensation, including bonus, commission and piece-rate pay systems and practices; and 8) corporate governance, including the roles of board members and executive officers.

8.  BRG is being compensated for my time at a rate of $750 per hour.  My curriculum vita is attached as Exhibit 1. A list of my deposition and trial testimony rendered during the past five years is attached as Exhibit 2. A list of the documents I received thus far in this matter is attached as Exhibit 3.  I reserve the right to add to this list as more information becomes available to me.

## II.      CASE BACKGROUND

9.  It is my understanding that the State of Washington has brought a lawsuit against The GEO Group, Inc. ("GEO") alleging that the company is required to pay minimum wages to detainees in the custody of the Federal government who voluntarily participate in a program at the Northwest Detention Center (NWDC) located in Tacoma, Washington.[1] The State of Washington also alleges that detainees who participate in such program are employees of GEO[2] and, correspondingly, that GEO is the employer of these detainees.[3]

10. It is my further understanding that since 2004, GEO has contracted with the U.S. Immigration and Customs Enforcement ("ICE"), an entity within the U.S. Department of Homeland Security (DHS), to operate the NWDC that temporarily houses federal immigration detainees who are in ICE's custody. According to this contract, GEO must offer a voluntary work program (VWP) to detainees. The program provides detainees an opportunity to occupy their time and to learn potentially transferable skills while awaiting deportation or release. The detainees individually decide whether or not to participate in this program. For those who participate, they are paid $1.00 per day for the work they perform. This rate is set via a Federal Statute and Federal Standards, and the ICE reimburses GEO for each payment at this rate that GEO then makes to detainees.[4]

## III.     TASK ADDRESSED

11. Counsel for defendant has asked me to render opinions about 1) whether NWDC detainees who participate in the VWP are employees of GEO, and 2) whether the work that those NWDC detainees perform should be compensated at the minimum wage rate specified by the State of Washington.

---

[1] State of Washington v. The GEO Group, Inc., *Complaint,* September 20, 2017.
[2] The complaint states, "Each year Washington sets an hourly minimum wage, and employees protected by Washington's minimum wage laws must be paid at least the set hourly minimum wage," *Ibid,* p. 1.
[3] State of Washington v. The GEO Group, Inc., "…GEO is an 'employer' violating the minimum wage law by paying detainees who participate in the federally mandated VWP $1 per day, rather than the state minimum wage," *GEO's Notice of Removal from Federal Court,* p. 4.
[4] State of Washington v. The GEO Group, Inc., *GEO's Notice of Removal to Federal Court,* p. 2.

## IV.    SUMMARY OF OPINIONS

12.  In my opinion, 1) detainees in the custody of the Federal government who participate in activities under the VWP are not employees of GEO, and 2) the activities that ICE detainees participate in under the VWP are not undertaken as part of an employment relationship and therefore are not subject to the minimum wage rate specified by the State of Washington. The analytical bases of my opinions are elaborated below in Section V.

## V.    ANALYTICAL BASES OF OPINIONS

### a. *Employment Relationship*

13.  For an employment or employer/employee relationship to exist, a company (or other organization) first formally hires an employee and then determines the work that an employee will perform, evaluates the employee's performance, determines the compensation to be paid to an employee, supervises/manages the employee, and further specifies any other terms and conditions of employment.[5] Based on my vast research, teaching and consulting experience regarding employment, employment relationships, and human resource management,[6] virtually none of these practices occurred in the matter at hand. Furthermore and also based on my experience, I've never heard of any detainee who is in Federal or State detention being labeled an employee or alleged to be an employee.

14. Administration of the VWP for detainees in the custody of ICE is governed by its contract with GEO and applicable federal statutes, regulations and policies.[7] This point is supported by the declaration of Mr. Tae E. Johnson, Assistant Director, Custody Management Division,

---

[5] See, for example, D. Lewin and D.J.B. Mitchell. (1995). *Human Resource Management: An Economic Approach,* 2nd Ed. Cincinnati, OH: Southwestern.
[6] Regarding research, see D. Lewin, D.J.B. Mitchell and M.A. Zaidi. (1997). *The Human Resource Management Handbook, Parts I-III.* Greenwich, CT: JAI Press. Regarding teaching, I have taught a course on Human Resource Management to degree program students at Columbia University and UCLA for more than four decades. Regarding consulting, I have consulted with and advised many companies, non-profit organizations, and government agencies about employment policies and practices. These government agencies included the New York City Police Department and the New York Rikers Island Prison system.
[7] See *Award/Contract* between ICE and GEO, September 28, 2015, GEO-State 036825.

Enforcement and Removal Operations (ERO) of ICE and the Department of Homeland Security (DHS).[8] Moreover, the State of Washington appears to recognize and agree with this arrangement, to wit, "GEO contracts with ICE for the detention of adult civil detainees…[and adheres to] ICE's 2011 Performance Based National Detention Standards."[9] Therefore, GEO neither determines detainee work activities nor the compensation paid to detainees for such work.

15. Still further, the Contract for NWDC includes a detailed Statement of Work that requires that "[d]etainee labor shall be used in accordance with the detainee work plan developed by the Contractor, and will adhere to the ICE PBNDS on Voluntary Work Program. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service, or other jobs. The detainee work program shall not conflict with any other requirements of the contract…It will be the sole responsibility of ICE to determine whether a detainee will be allowed to perform on voluntary work details and at what classification levels"[10] Clearly, ICE retains control over decision-making about who can work in the VWP. In addition, the human resource management practices pertaining to the work performed by NWDC detainees are defined and fully explicated by ICE in the aforementioned PBNDS. Hence, GEO does not specify or control these practices, as would normally be the case with an employer. GEO is simply the intermediary between ICE and the detainees and thereby facilitates this voluntary work.

16. To more fully grasp the extent to which GEO does not determine or control the human resource management practices applicable to detainees of the NWDC who participate in the VWP, consider the following excerpts from the 2011 ICE performance-based national detention standards governing the VWP:

> I. *"Purpose and Scope*
> *This detention standard provides detainees opportunities to work and earn money while confined, subject to the number of work opportunities*

---

[8] *Declaration of Tae E. Johnson*, August 3, 2018, especially pp. 4-8.
[9] *Complaint,* p. 4. See also *Declaration of Tae E. Johnson,* pp. 4-5.
[10] *Award/Contract between ICE and GEO,* p. 82.

*available and within the constraints of the safety, security and good order of the facility.*"[11]

II.  *"Expected Outcomes*
*Detainees shall be able to volunteer for work assignments but otherwise shall not be required to work, except to do personal housekeeping.*"[12]

V.  *"Expected Practices*

A. *Voluntary Work Program.*
*Detainees shall be provided the opportunity to participate in a voluntary work program. The detainee's classification level shall determine the type of work assignment for which he/she is eligible. Generally, high custody detainees shall not be given work opportunities outside their housing units/living areas….*"[13]

D.  "*Detainee Selection*
*The facility administrator shall develop site-specific rules for selecting work detail volunteers. These site-specific rules shall be recorded in a facility procedure that shall include a voluntary work program agreement. The voluntary work program agreement shall document the facility's program and shall be in compliance with this detention standard. The primary factors in hiring a detainee, as a worker shall be his/her classification level and the specific requirements of the job emphasis in original).*"[14]

K.  "*Compensation*
*Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is at least $1.00 (USD) per day. The facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.*"[15]

---

[11] U.S. Immigration and Customs Enforcement, *Performance-Based National Detention Standards 2011,* p. 405. GEO State 0003001.
[12] *Performance-Based National Detention Standards 2011, p. 405.* Other expected outcomes include increased productivity, decreased idleness, and compliance with all federal safety and discrimination regulations.
[13] *Performance-Based National Detention Standards 2011.,* p. 406. This section also includes a requirement that detainees maintain a neat and orderly living area.
[14] *Performance-Based National Detention Standards 2011, p. 406.*
[15] *Performance-Based National Detention Standards,* p. 407.

7

17. The standards and requirements for detainee participation in the VWP are also governed by
ICE and are communicated to detainees, as illustrated by the following excerpts from ICE's
2016 national detainee handbook:

> *"VOLUNTARY WORK PROGRAM*
> *If your facility has a volunteer work program, you may be able to volunteer to*
> *work. However, many facilities do not allow ICE detainees to participate in their*
> *work programs."[16]*
>
> *"Will I get paid for my Work?*
> *If you participate in the voluntary work program at your facility, you will get…$1*
> *for each day you work, not for each assignment. You will get paid at the end of*
> *every day you work, unless your facility has a different way of paying detainees.*
> *For example, some facilities will pay everything that you are owed before you are*
> *transferred or released. Check your facility's local rules."[17]*
>
> *"How many hours can I work?*
> *You cannot work more than eight hours per day or 40 hours a week."[18]*
>
> *"What are the requirements for the work program?*
> *To take part in this program, you must:*
>   i.  *Sign a voluntary work program statement;*
>   ii. *Complete any work-related training;*
>   iii. *Follow all dress, grooming, and hairstyle requirements for your work*
>        *assignment;*
>   iv. *Work the schedule assigned to you; and*
>   v.  *Do your assigned work satisfactorily."[19]*

18. In addition to ICE-mandated standards and specifications for human resource management
practices applicable to detainees at the NWDC, the NDWC also mandates such standards and

---

[16] U.S., Immigration and Customs Enforcement, Enforcement and Removal Operations, *National Detainee Handbook, Custody Management,* April 2016, p. 12. GEO-State 000462.

[17] *National Detainee Handbook, Custody Management*, p. 12. See also *Deposition of Chou X. Chen,* April 5, 2018. During that deposition, Mr. Chen was asked, "If you are housed in a ICE service processing center or Contract Detention Facility, you will be paid $1 per day worked (not per work assignment), correct?" Mr. Chen responded, "Yes, it's on there" (referring to the aforementioned *Handbook).* Next, Mr. Chen was asked, "Is this the Ice detainee - National Detainee Handbook that you received?" Mr. Chen responded, "Yes. Then Mr. Chen was asked, "And this book tells you that you will be paid $1 per day worked, correct?" Mr. Chen responded, "Yes." (p.154). See also *Declaration of Tae E. Johnson,* in which he states, "Per the terms of the contract…the reimbursement for the Voluntary Work Program is $1.00 per day per detainee….ICE reimburses GEO $1 per day per detainee for the VWP…This is the same rate that ICE provides to detainees in its own SPC facilities." (p. 5).

[18] *National Detainee Handbook,* p. 12.

[19] *National Detainee Handbook,* p. 12.

specifications. This is illustrated by the following excerpts from the NWDC VWP agreement and policy:

> *"1.      In order to have a job, you must complete a physical.*
> *2.      Detainees that participate in the Volunteer Work Program are not permitted to work in excess of 8 hours daily, or 40 hours a week. Scheduled days off will be assigned and taken.*
> *3.      Detainees are required to work when scheduled and participate in all work-related training.*
> *4.      Unexcused absence, unsatisfactory work performance, or participation in a serious infraction, e.g. fighting, is cause for removal from a work assignment. Workers are expected to be ready for work at the required time.*
> *5.      Theft or possession of contraband obtained as an opportunity of a work assignment is cause for removal from a work assignment.*
> *6.      Detainees must adhere to all safety regulations and to all medical and grooming standards associated with a work assignment.*
> *7.      Compensation shall be $1.00 per day.*
> *8.      Primary factors that impact hiring are classification level, attitude, behavior, and physical ability to perform the job.*
> *9.      Volunteering detainees will not be denied work based on race, religion, sex, physical or mental handicaps or national origin."*[20]

19. Similar standards and specifications are contained in ICE's PBNDS, as illustrated by the following excerpts:

> 1. *"This detention standard provides detainees opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility."*
> 2. *"Detainees shall be provided the opportunity to participate in a voluntary work program."*
> 3. *"Detainees shall be able to volunteer for work assignments but otherwise shall not be required to work, except to do personal housekeeping."*
> 4. *"The detainee's classification level shall determine the type of work assignment for which he/she is eligible."*
> 5. *"The normal scheduled workday for a detainee…is a maximum of 8 hours."*
> 6. *"Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is…$1.00 (USD) per day."*

---

[20] *Volunteer Work Program Agreement*, p. 1. GEO-State 003479.

7. *"The facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.* [21]

20. Furthermore, the ICE PBNDS contains other specifications and standards for the VWP pertaining to the following:

 1. Detainee selection
 2. Detainee work responsibilities
 3. Number of work details in a day
 4. Detainees with disabilities
 5. Prohibition of discrimination
 6. Training and safety
 7. Removal of detainees from work[22]

21. In my experience and according to the professional literature in human resource management, job definitions are typically determined by the organization - company, non-profit entity, public agency - that seeks to hire people to perform those jobs or, in other words, to employee people to perform the jobs.[23] In this instance GEO did not determine or specify the aforementioned job descriptions, which indicates once again that GEO is not the employer of people - detainees - who filled those jobs.

22. Stepping back from these specific illustrations, it is clear that GEO does not establish the human resource management standards and practices for NWDC detainees who participate in the VWP, and thus exercises little to no control over them. Instead, GEO must accept the human resource management standards and practices mandated by ICE and the NWDC. Consequently, GEO does not employ NWDC detainees who participate in the VWP and therefore is not the employer of these detainees.[24] As such, the minimum wage rate mandated by the State of Washington to be paid to "employees" is not applicable to detainees who participate in the VWP or to GEO. Stated differently, GEO has no ability to meaningfully control any of the following, which are in fact controlled by ICE:

---

[21] *Performance-Based National Detention Standards 2011,* pp. 406-407.
[22] *Performance-Based National Detention Standards 2011,* pp. 406-408.
[23] See, as examples, Lewin and Mitchell, *Op. cit.* and Lewin, Mitchell and Zaidi, *Op. cit.*

a) Determinations of detainee eligibility to participate in the VWP

b) The actual selection of detainees who participate in the VWP

c) The establishment of normal work hours for the VWP participants

d) Determinations of pay scales/grades for voluntary work program participants

e) The training provided to VWP participants

f) The causes for termination of VWP participation

23. Consequently, GEO possesses little to none of the control exercised by a typical employer, and the circumstances surrounding the detainees' participation in the VWP are not consistent with those typically associated with an employer-employee relationship. Instead, GEO administers this program at the direction of and under the supervision of ICE, simply passing through to the detainees the reimbursement of $1.00 per day for detainees that elect to participate in the VWP.

a. *The Minimum Wage*

24. The requirement for a minimum hourly wage was first specified in and enacted as part of the 1938 U.S. Fair Labor Standards Act (FLSA). Among other things, that Act defined certain categories of covered employees, which means that it also excluded certain categories of employees from its coverage. Most U.S. states subsequently followed suit and enacted their own minimum wage laws that, in most respects, closely followed the FLSA. Notably, however, none of these laws apply to prisoners or detainees in U.S. Federal and State institutions.[25] The original purpose of minimum wage laws, and still largely their purpose, was to provide covered employees with a standard of living that would allow them to escape poverty and to meet basic sustenance needs for food, clothing and shelter.

25. During the eight decades that have passed since enactment of the FLSA, thousands of articles and numerous books have been written about this law.[26] Much of this literature focuses on

---

[25] See, Lewin and Mitchell, *Human Resource Management: An Economic Approach.,* especially pp. 257-260 and 593-596.

[26] See, as examples, D.H. Autor, A. Manning and C.L. Smith, "The Contribution of the Minimum Wage to U.S. Wage Inequality Over Three Decades: A Reassessment," *American Economic Journal, Applied Economics,* vol. 8, no. 1, 2016, pp. 58-99; D. Neumark, J.M.I Salas and W. Wascher, "More on Recent Evidence on the Effects of

the wage and employment effects of the minimum wage legislation, with the central analytical issue being whether the positive effect of improved wages for covered employees exceeds, equals or falls short of the negative effect of dis-employment and/or lower employment resulting from this legislation. Dis-employment occurs when employers' layoff some employees due to their higher cost, and lower employment occurs when employers hire fewer employees than they otherwise would. In both instances, the increased costs of employees due to their coverage by minimum wage legislation is not offset by increased productivity.

26. While this is an interesting and important debate, it does not directly apply to the matter at hand because, as I have indicated above, no employment relationship exists between detainees in the custody of ICE and GEO. Therefore, the minimum wage requirement does not apply to detainees who are engaged in work activities under the NWDC VWP. Notably, neither ICE nor the State of Washington pay minimum wages to detainees in institutions that are directly operated and managed by ICE and/or the State, respectively.[27]

27. As previously noted, ICE's PBNDS specify that detainees will receive monetary compensation of $1 per day for their voluntary work activities in which they are engaged."[28] This requirement covers both the detainee facilities operated directly by ICE and the agreements that ICE reaches with contractors, such as GEO. Stated another way, nothing in the PBNDS specifies that detainees will receive minimum wages for work performed beyond the $1.00 per day requirement. Regarding the State of Washington, its Minimum Wage Act (MWA) explicitly exempts from coverage residents of state, county or municipal detention institutions.[29] Furthermore, detainees and inmates who are in the custody of the State of Washington Department of Corrections (DOC) are provided "opportunities to support the

Minimum Wages in the United States," *IZA Journal of Labor Policy,* vol. 3, no. 24; Congressional Budget Office (CBO), *The Effects of a Minimum-Wage Increase on Employment and Family Income.* Washington, D.C.: Congress of the United States, February 2014; and E. Jardim, M.C. Long, R. Plotnick, E. van Inwegen, J. Vigdor and H. Wething, "Minimum Wage Increases, Wages, and Low Employment: Evidence from Seattle," National Bureau of Economic Research (NBER) Working Paper No 23532, Issued in June 2017, Revised in May 2018. The last of these studies found that legislatively mandated increases in the minimum wages for covered private sector employees working in the City of Seattle, Washington had net negative effects, meaning that the dis-employment effects of the minimum wage outweighed the income effects of the minimum wage.
[27] See State of Washington Department of Corrections Policy 700.100
[28] *National Detainee Handbook, Custody Management,* p. 12.
[29] Washington Rev. Code, paragraph 49.46.010(3)(k).

daily operation and maintenance" of state facilities, but when those detainees and inmates perform work in conjunction with these opportunities they are compensated at a small fraction - about 32 cents per hour - of the minimum wage that the State of Washington alleges should be paid by GEO to detainees in the NWDC VWP.[30] Hence, the State of Washington is claiming that GEO should pay minimum wages to detainees when the State itself does not do so and does not claim to do so.

## VI.      CONCLUSION

In my opinion, 1) detainees in the custody of the Federal government who participate in activities under the VWP are not employees of GEO, and 2) the activities that ICE detainees participate in under the VWP are not undertaken as part of an employment relationship and therefore are not subject to the minimum wage rate specified by the State of Washington.

28. Should new or additional information germane to my analysis subsequently be provided, I reserve the right to modify or supplement my opinions accordingly.


Respectfully submitted,


_David Lewin_

_____

David Lewin, Ph.D.

September 20, 2018

---

[30] Washington Department of Corrections Policy 700.100; *GEO's Notice of Removal to Federal Court,* p. 1.

Curriculum Vitae



# Exhibit 1

**DAVID LEWIN, PH.D.**
Abridged CV, July 1, 2018

BERKELEY RESEARCH GROUP, LLC
2029 Century Park East, Suite 1250
Los Angeles, CA 90067

810 Seventh Avenue, Suite 4100
New York, NY 10019

Phone: 310.499.4931; Mobile: 310.498.4547; Fax: 310.557.8982
Email: dlewin@thinkbrg.com

## BIO/SUMMARY

David Lewin is a Managing Director of BRG and the Neil H. Jacoby Professor Emeritus of Management, Human Resources and Organizational Behavior at the UCLA Anderson Graduate School of Management. He has provided expert analysis and testimony in numerous labor and employment matters involving issues of no-poaching and non-compete agreements; executive compensation and executive contracts; wrongful termination and retaliation; independent contractor v. employee status; franchisor-franchisee joint employment; managerial and employee misclassification; age, gender, race, disability and religious discrimination; and research methods. In these areas, Dr. Lewin has designed and analyzed data obtained from survey questionnaires, interview protocols, and observational studies as well as from secondary sources. He also consults widely on human resource management issues and practices with companies in the U.S. and abroad. Dr. Lewin has published many books and journal articles. His books include *Human Resource Management: An Economic Approach*; *The Oxford Handbook of Participation in* Organizations; *Contemporary Issues in Employment Relations*; *The Human Resource Management Handbook*; *Advances in Industrial and Labor Relations, Volume 24;* and *Handbook of Qualitative Research Methods on Human Resource Management: Innovative Techniques.* Dr. Lewin serves on the editorial boards of *Industrial Relations*, *California Management Review*, *Journal of Change Management*, and *Work, Organization, and Employment,* and is Senior Editor of *Advances in Industrial and Labor Relations.* He is a Fellow and member of the Board of Directors of the National Academy of Human Resources (NAHR). For eight years he served as a member of the Board of Directors of K-Swiss, Inc. and member of the Board's Compensation and Stock Options Committee and the Board's Governance Committee. He recently served as President of the Labor and Employment Relations Association (LERA). Prior to joining UCLA, Dr. Lewin served as Professor, Director of the PhD Program, Director of the Human Resources Research Center, and Faculty Director of the Senior Executive Program at the Columbia University Graduate School of Business.

## EDUCATION

Ph.D. – 1971, UCLA (Management)
Dissertation Title: Wage Determination in Local Government Employment



MBA – 1967, UCLA

B.S. – 1965 California State University, Los Angeles (Accounting)

**PRESENT POSITIONS**

Neil H. Jacoby Professor Emeritus of Management, Human Resources & Organizational Behavior, UCLA Anderson School of Management

Managing Director, Berkeley Research Group, LLC

Fellow and Member, Board of Directors, National Academy of Human Resources (NAHR)

**CONSULTING RETENTIONS**

Dr. Lewin has consulted widely with companies, non-profit organizations and governments in the areas of organizational change, human resource strategy, leadership development and succession planning, performance management, job/work design, executive and employee compensation, and conflict management. His clients have included Exxon-Mobil, Chevron Overseas Petroleum, IBM, General Motors, Toyota Motor Corporation, Northrop-Grumman, Merck, Oracle, United Airlines, Airlines for America, The New York Times, Princess Cruises, The New York City Police Department, and many others.

**SELECTED EXPERT RETENTIONS**

Dr. Lewin has been retained more than 360 times as an expert in labor and employment litigation. He has submitted written reports and declarations in more than 200 of these cases, rendered deposition testimony in more than 100 of these cases, and testified at trial and arbitration hearings in 57 of these cases. Listed below are some of the cases in which he has been retained as an expert during the past several years.

2018.    HSBC v. Merrill Lynch Mortgage Lending; validity and reliability of USBLS pay data; McKool Smith; plaintiff; New York, NY.

2018.    Cantor Fitzgerald v. Jeffries; executive compensation and labor market competition; Boies, Schiller & Flexner; defendant; New York, NY.

2018.    USA v. Nocito; management services and executive compensation; Evashavik, DiLucente & Tetlow; defendant; Pittsburgh, PA.

2018.    Remis v. Goodwin Procter; employment search mitigation and reputational damage; Goulston & Storrs; defendant; Boston, MA,

2018.    Yoshioka, et al. v. Johnson Controls; wrongful termination and human resource investigation practices; Workman Law Firm; plaintiff; *deposition;* Alameda County, CA.



2018.   Parry, et al. v. Farmers Insurance Exchange; independent contractor v. employee status; Locke Lord; defendant; Los Angeles County, CA.

2018.   Softub v. Dilley; wrongful termination and executive compensation; Nemeck Cole; plaintiff; *deposition;* Los Angeles, CA.

2017.  Waymo v. Uber, Ottomotto, LLC, and Otto Trucking, LLC; employee vetting and trade sercret protections; Boies, Schiller & Flexner and Morrison & Foerster; defendant; San Francksco, CA.

2017.   Live Nation and Insomniac Holdings v. Simon Rust Lamb; organizational analysis and evolution; Paul Hastings; plaintiff; San Mateo, CA.

2017.  Wergechik v. Anaheim Arena Management, Anaheim Ducks Hockey Club; gender discrimination, wrongful termination and retaliation; Sheppard Mullin; defendant; *deposition; Orange* County, CA.

2017.   Cone v. Causeway Capital Management; wrongful termination and executive compensation; Irell & Manella; plaintiff; report; *deposition*; Los Angeles, CA.

2017.   Fiber Systems International v. Dabrowski; Executive Contract Non-Compete Provision; Paul Hastings; plaintiff; Collins County, TX.

2017.   Ehmann, et al. v. Medflow, Inc.; executive compensation and organizational governance; Condon, Tobin, Sladek & Thornton; defendant; Mecklenburg County, NC.

2017.   OFCCP v. Laboratory Corporation of America/San Diego; Gender and Race Discrimination in Employment and Pay; Dykema, Cox & Smith; defendant; Dallas, TX.

2016.   Jimmy John's Overtime Litigation; managerial misclassification and franchisor-franchisee joint employer; Outten & Golden; plaintiff; report; *deposition*; Chicago, IL.

2016.   SuperShuttle v. State of California EDD; independent contractor v. employee status; Marron & Associates; plaintiff; report; *deposition*; **trial testimony**; Sacramento, CA.

2016.   Berger v. Kargo Global, Inc.; executive compensation and wrongful termination; Sullivan & Cromwell; defendant; report; **arbitration testimony**; New York, NY.

2016.   Peabody Coal Company Creditor v. Debtors; executive compensation in bankruptcy proceeding; Morrison & Foerster; plaintiff; New York, NY.

2016.   Trowbridge v. Valero Energy Corporation; gender discrimination and executive compensation; Pillsbury Winthrop; report; Washington, DC.

2016.   Spector v. Tide Point Capital Management; executive compensation and phantom stock; Proskauer Rose; defendant; New York, NY.

2016.   Lyft v. VanderZanden; breach of executive employment contract; Paul Hastings; defendant; report; San Francisco, CA.



2016.  Jacobs v. Las Vegas Sands Corporation; reputational damage and labor market analysis; Mayer Brown; defendant; rebuttal report; Clark County, NV.

2016.  Wells, et al. v. Regents of the University of California; age and race discrimination; Gordon & Rees; defendant; report; San Francisco, CA.

2016.  Sabine Oil and Gas Corporation, Creditors v. Debtors; executive compensation in bankruptcy proceeding; Ropes & Gray; plaintiff; New York, NY.

2016.  Rock v. NCAA; student-athlete grants-in-aid and survey research; Hagens, Berman, Sobol & Shapiro; plaintiff; report; *deposition*; Indianapolis, IN.

2016.  United Farmers Agents Association (UFAA) v. Farmers, Inc.; no cause termination provision in agents' agreement; Hinshaw Culbertson and Tharpe & Howell; defendant; report; **trial testimony**; Los Angeles, CA.

2015.  Romero, et al. v. Allstate Insurance Company; validity of release in re independent contractor v. employee status; Kirkland & Ellis; defendant; report; *deposition*; Chicago, IL.

2015.  Pao v. Kleiner, Perkins, Caufield & Byers (KPCB); gender discrimination, retaliation and damages; Orrick, Herrington & Sutcliffe; defendant; report; *deposition*; **trial testimony**; San Francisco, CA.

2015.  Chambers, et al. v. National Company for Life and Health Insurance (NACOLAH); survey research methodology; Hagens, Berman, Sobol & Shapiro; plaintiff; report; *deposition*; Des Moines, IA.

2015.  Rocky Mountain Holdings v. Blue Cross Blue Shield of Arizona; corporate governance and headquarters location; Jenner & Block; defendant; report; *deposition*; Phoenix, AZ.

2014.  DJC Investments v. U.S.A.; management services fees and executive compensation; Meadows Collier and Eller & Detrich; plaintiff; report; Dallas, TX.

2014.  Janvey, Receiver for Stanford International Bank v. Giusti; executive compensation; Stanley, Frank & Rose; defendant; report*; deposition;* Houston, TX.

2014.  Hurd v. American Income Life Insurance Company; disability discrimination and wrongful termination; Barger & Wolen and Dentons US; defendant; report; Los Angeles, CA.

2014.  DeMenno-Kerdoon v. Bruce DeMenno and Steve Kerdoon; executive compensation; Latham & Watkins; plaintiff; Los Angeles, CA.

2014.  Flemma v Halliburton Energy Services; wrongful termination and retaliatory discharge; Rodey, Dickason, Sloan, Akin & Robb; defendant; *deposition;* Albuquerque, NM.

2013.  High Tech Employee Antitrust Litigation (Adobe Systems, Inc.); no-poaching agreements and compensation suppression; Jones Day; defendant; report; *deposition*; San Francisco, CA.

2013.  Thornhill v. Wilson; executive compensation; Munger, Tolles & Olson and Rick Edwards, Inc.; defendant; Los Angeles, CA.



2013.   Parmenter v. Farmers Insurance Group, Inc.; wrongful termination; Tharpe & Howell; defendant; report; **trial testimony**; Los Angeles, CA.

2013.   Securities Investor Protection Corporation, Irving Picard, Trustee v. Bernard L. Madoff Investment Securities; executive compensation; Baker & Hostetler; plaintiff; report; New York, NY.

2013.   U.S. ex rel. Leveski v. ITT Educational Services; enrollment counselor and financial aid advisor compensation and DOE funding; Gibson, Dunn & Crutcher; defendant; report; Lafayette, IN.

2013.   Roth v. Roth & World Oil Corp.; executive compensation; Munger, Tolles & Olson and Gibson, Dunn & Crutcher; defendant; Los Angeles, CA.

2013.   Small v. University Medical Center of Southern Nevada; meal and rest breaks; Tostrud Law Group and Glancy, Binkow & Goldberg; plaintiff; Las Vegas, NV.

2013. De La Rosa v. White Memorial Medical Center and Adventist Health Care/West; wrongful termination; Moore McLennan; defendant; report; *deposition*; **trial testimony**; Los Angeles, CA.

2012. Microsoft and SAP v. DataTern, Inc.; survey design and analysis; McCarter English; defendant; New York, NY.

2012.   SEC v. Landan and Mercury Interactive, Inc.; stock option backdating; Sullivan & Worcester, Orrick, Herrington & Sutcliffe, Sherman & Sterling, and Law Offices of KC Maxwell; defendant; report; *deposition*; San Jose, CA.

2012.   Pexa v. Farmers Insurance Group, Inc.; independent contractor versus employee status; Dowling Aaron, Inc. and Barger & Wolen; defendant; report; **trial testimony**; Sacramento, CA.

2012. Truong, et al. v. Allstate Insurance Company; incentive compensation and performance management; Modrall, Sperling, Roehl, Harris & Sisk; defendant; Albuquerque, NM.

2011.   Shin v. Farmers Insurance Group, Inc.; independent contractor versus employee status; Locke Lord; defendant; Los Angeles, CA.

2011.   Fallon v. Fallon; divorce proceeding and management control; Baker & Hostetler; defendant, Santa Ana, CA.

2011.   Robles v. Tuesday Morning, Inc.; exempt, non-exempt status; Fulbright & Jaworski; defendant; report; **trial testimony**; San Rafael, CA.

2011.   Glover-Hale, Khan, Montoya, Taylor, et al. v. Autozone, Inc.; exempt, non-exempt status; Keller Rohrback; plaintiff; Prescott, AZ

2011.   Ellis, Wilkerson, et al. v. Les Schwab Tire Company of Portland, Inc.; exempt, non-exempt status; Perkins Coie and Winterbauer & Diamond; defendant; Multnomah County, OR.

2011.   Garcia, et al. v. Oracle Corporation; exempt, non-exempt status; Goldstein, Demchak, Baller, Borgen & Dardarian; plaintiff; Alameda County, CA.



2011.   <u>Narayan, et. al. v. EGL, Inc. and CEVA Freight, LCC</u>; independent contractor versus employee status; Hinton, Alpert & Kaufmann, Altshuler Berzon, & Patten, Faith & Sandford; plaintiff; declaration; *deposition*; San Jose, CA.

2011.   <u>Frazier v. Roll International Corporation</u>; employee termination and human resource management practices; **arbitration testimony**; Roll Law Group; defendant; Bakersfield, CA.

2011.   <u>Ross v. Atmel Corporation</u>; executive termination and stock option compensation; Morrison & Foerster; defendant; *deposition*; Santa Clara, CA.

2010.   <u>Soutas v. Tuesday Morning, Inc</u>.; exempt, non-exempt status; Fulbright & Jaworski; defendant; report; **trial testimony**; San Mateo, CA.

2010.   <u>McInerney, Zand, et. al. v. Heartland Payment Systems</u>; compensation and expense reimbursement; Gordon & Rees; defendant; San Francisco, CA.

2010.   <u>Greenspan, Trustee of People's Choice Home Loan, Inc. v. Kornswiet, et al</u>.; executive compensation; Kirkland & Ellis; defendant; Santa Ana, CA.

2010.   <u>Johnson, et. al. v. California Pizza Kitchen</u> (consolidated cases); hours shaving; Loeb & Loeb and Jones Day; defendant; report; *deposition;* Los Angeles, CA.

2010.   <u>Baylor v. National Basketball Association (NBS) & Los Angeles Clippers</u>; age discrimination and wrongful termination; Manatt, Phelps & Phillips and Proskauer Rose; defendant; Los Angeles, CA.

2010.   <u>Nichols v. The Management Company</u>; exempt, non-exempt status; Rutan & Tucker; defendant; *deposition;* San Francisco, CA.

2010.   <u>Novartis Wage and Hour Litigation</u>; exempt, non-exempt status; Kaye Scholer and Cravath, Swaine & Moore; defendant; report; New York, NY.


## SELECTED PUBLICATIONS

*Books:*

1. Lewin, D. and Gollan, P.J. (Eds.), <u>Advances in Industrial and Labor Relations: Shifts in Workplace Voice, Justice, Negotiations and Conflict Resolution in Contemporary Workplaces</u>, Volume 24. Emerald, 264 pp., 2017.

2. Lewin, D., Townsend, K. and Loudoun, R. (Eds.), *Handbook of Qualitative Research Methods on HRM: Innovative Techniques.* Cheltenham, UK: Edward Elgar, 2016.

3. Lewin, D. and Gollan, P.J. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 21. Emerald, 176 pp., 2015.

4. Lewin, D. and Gollan, P.J. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 20. Emerald, 285pp., 2012.



5. Lewin, D. and Gollan, P.J. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 18. Emerald, 260pp., 2011.

6. Wilkinson, A., Marchington, M., Gollan, P.J. and Lewin, D., (Eds.). <u>The Oxford Handbook of Participation in Organizations</u>. Oxford, UK: Oxford University Press, 624 pp., 2010.

7. Lewin, D. Kaufman, B.E. and Gollan, P.J. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 17. Emerald, 255 pp., 2010.

8. Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 16. Emerald, 210 pp., 2009.

9. Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 15. Elsevier, 391 pp., 2007.

10.   Lewin, D. (Ed.). <u>Contemporary Issues in Employment Relations</u>. Champaign, IL: Labor and Employment Relations Association, 309 pp., 2006.

11.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 14. Elsevier, 323pp, 2005.

12.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 13. Elsevier, 273 pp., 2004.

13.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 12, Elsevier, 269 pp., 2003.

14.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 11, Elsevier-Science, 213 pp., 2002.

15.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 10, Elsevier-Science, 233 pp., 2001.

16.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 9, JAI Press Inc., 252 pp., 1999.

17.   Lewin, D. and Kaufman, B.E. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 8, JAI Press Inc., 224 pp., 1998.

18.   Lewin, D., Mitchell, D.J.B. and Zaidi, M.A. (Eds.), <u>The Human Resource Management Handbook: Part I, Part II, Part III</u>, JAI Press Inc., 869 pp., 1997.

19.   Lewin, D., Kaufman, B.E. and Sockell, D. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 7, JAI Press Inc., 286 pp., 1996.

20.   Lewin, D. and Mitchell, D.J.B., <u>Human Resource Management: An Economic Approach</u>, 2nd Ed. South-Western, 1995.

7



21.    Lewin, D. and Sockell, D. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 6, JAI Press Inc., 236 pp., 1994.

22.    Mitchell, D.J.B. and Lewin, D. (Eds.), <u>International Perspectives and Challenges in</u> <u>Human Resource</u> <u>Management</u>, UCLA Institute of Industrial Relations, 294 pp., 1994.

23.    Lewin, D., Sherer, P. and Mitchell, O. (Eds.), <u>Research Frontiers in Industrial Relations</u> <u>and Human</u> <u>Resources</u>, Industrial Relations Research Association, 625 pp., 1992.

24.    Sockell, D., Lewin, D. and Lipsky, D.B. (Eds.), <u>Advances in Industrial and Labor</u> <u>Relations</u>, Volume 5, JAI Press Inc., 317 pp., 1991.

25.    Lewin, D. and Peterson, R.B., <u>The Modern Grievance Procedure in the United States</u>, Quorum Books, 289 pp., 1988.

26.    Lewin, D., Feuille, P., Kochan, T.A. and Delaney, J.T. (Eds.), <u>Public Sector Labor</u> <u>Relations: Analysis</u> <u>and Readings</u>, 3rd Ed., Lexington Books, 648 pp., 1988.

27.    Lewin, D., Lipsky, D. and Sockell, D. (Eds.), <u>Advances in Industrial and Labor</u> <u>Relations</u>, Volume 4, JAI Press Inc., 251 pp., 1987.

28.    Lewin, D. and Lipsky, D. (Eds.), <u>Advances in Industrial and Labor Relations</u>, Volume 3, JAI Press Inc., 316 pp., 1986.

29.    Lewin, D., Chamberlain, N. and Cullen, D., <u>The Labor Sector</u>, 3rd Ed., McGraw-Hill, 669 pp., 1980.

30.    Lewin, D. Horton, R. and Kuhn, J., <u>Collective Bargaining and Manpower Utilization in</u> <u>Big City</u> <u>Governments</u>, Allenheld Osmun, 155 pp., 1979.

31.    Lewin, D., Horton, R., Schick, B. and Brecher, C., <u>The Urban Labor Market; Institutions, Information,</u> <u>Linkages</u>, Praeger, 155 pp., 1974.


*Chapters in Books*:

1.  Lewin, D. and Lee, S.H., "Korean Public Sector Employment Relations," pp. 125-1411 in <u>The Evolution of</u> <u>Korean Employment and Industrial Relations</u>, Lee, Y.M. and Kaufman, B.E. (Eds.), Cheltenham, UK: Edward Elgar, 2018.

2.  Lewin, D., "The Development of Leadership Capability in Modern Organizations: The Role of the HR Executive," pp. 205-208 in <u>Three: The Human Resources Emerging Executive</u>, Ziskin, I. (Ed.), Hoboken, NJ: Wiley, 2015.

3.  Lewin, D., "The Intersection of ADR and NER: A Conceptual Analysis and FedEx Case," pp. 341-365 in <u>Voice and Involvement at Work: Experience with Non-Union Representation</u>, Gollan, P.J., Kaufman, B.E., Taras, D. and Wilkinson, A. (Eds.), London: Routledge, 2014.



4.   Lewin, D. "Collective Bargaining and Grievance Procedures," pp. 116-134 in The Oxford Handbook of Conflict Management in Organizations, Roche, W.K., Teague, P. and Colvin, A. (Eds.), Oxford, UK: Oxford University Press, 2014.

5.   Lewin, D., "Individual Voice: Grievance and Other Procedures," pp. 281-297 in The Handbook of Research on Employee Voice, Wilkinson, A., Donaghey, J., Dundon, T. and Freeman, R.B. (Eds.), London, UK: Edward Elgar, 2014.

6.   Lewin, D., "Effects of Deep Recession on Public Sector, Pay, Benefits and Employment," pp. 13-40 in Public Jobs and Political Agendas: The Public Sector in an Era of Economic Stress, Mitchell, D.J.B. (Ed.), Champaign, IL: Labor and Employment Relations Association, 2012.

7.   Lewin, D., "High Performance Human Resources (HPHR)," pp. 11-29 in The Future of Employment Relations, Townsend, K. and Wilkinson, A. (Eds.), London, UK: Palgrave, 2011.

8.   Lewin, D., Wilkinson, A., Marchington, M. and Gollan, P.J., "Conceptualizing Employee Participation in Organizations," pp. 3-25 in The Oxford Handbook of Participation in Organizations, Wilkinson, A., Marchington, M., Gollan, P.J. and Lewin, D. (Eds.), Oxford, UK: Oxford University Press, 2010.

9.   Lewin, D. "Employee Voice and Mutual Gains," pp. 427-452 in Wilkinson, A., Marchington, M. & Gollan, P. (Eds.). The Oxford Handbook of Participation in Organizations, Wilkinson, A., Marchington, M., Gollan, P. and Lewin, D. (Eds.), Oxford, UK: Oxford University Press, 2010.

10.    Lewin, D. "Public Sector Compensation: The Management of Change," pp. 135-156 in Managing Change in Public Services, Todnem, R. and Macleod, C. (Eds.), Edinburgh, Scotland: Routledge, 2009.

11.    Lewin, D. "Human Resources Management in the 21st Century," pp. 56-64 in 21st Century Management: A Reference Handbook, Wankel, C. (Ed.), Thousand Oaks, CA: Sage, 2008.

12. Lewin, D. "Conflict Resolution," pp. 447-467 in Handbook of Industrial and Employment Relations, Bacon, N., Blyton, P., Fiorito, J. and Heery, E. (Eds.), Thousand Oaks, CA, Sage, 2008.

13.    Lewin, D. and Levine, D.I., "The New 'Managerial Misclassification Challenge to Old Wage and Hour Law: or What is Managerial Work?," pp. 189-222 in Lewin, D. (Ed.), Contemporary Issues in Employment Relations, Lewin, D. (Ed.), Chicago, IL: Labor and Employment Relations Association, 2006.

14. Lewin, D. "Contract Administration," pp. 72-74 in The Blackwell Encyclopedia of Management: Human Resource Management, Cartwright, S. (Ed.), London, UK: Blackwell, 2005.

15. Lewin, D., "The Dual Theory of Human Resource Management and Business Performance: Lessons for HR Executives," pp. 285-292 in The Future of Human Resource Management, M. Losey, M., Meisinger, S. and Ulrich, D. (Eds.), New York: Wiley, 2005.

16.    Lewin, D., "Dispute Resolution in Nonunion Organizations: Key Empirical Findings," pp. 379-403 in Alternative Dispute Resolution in The Employment Arena, Estreicher, S. & Sherwin, D. (Eds.), NewYork: Kluwer, 2004.



17.   Lewin, D., "Human Resource Management and Business Performance: Lessons For the 21st Century," pp. 91-98 in Human Resources in the 21st Century, Effron, M., Gandossy, R. and Goldsmith, M. (Eds.), New York: Wiley, 2003.

18. Lewin, D., Kaufman, B.E., and Fossum, J., "Nonunion Employee Involvement and Participation Programs: The Role of Employee Representation and the Impact of the NLRA," pp. 259-286 in Nonunion Employee Representation: Analysis and Evidence, Kaufman, B.E. and Taras, D.G. (Eds.), New York: Myron D. Sharpe, 2000.

19.  Lewin, D. and Kaufman, B.E., "Exemplars of Contemporary Industrial Relations Research: Introduction to Volume 9," pp. 1-21 in Advances in Industrial and Labor Relations, Volume 9, Lewin, D. and Kaufman, B.E. (Eds.), Greenwich, CT: JAI Press Inc., 1999.

20. Lewin, D., "Theoretical and Empirical Research on the Grievance Procedure and Arbitration: A Critical Review," pp. 137-186 in Employment Dispute Resolution and Worker Rights in the Changing Workplace, Eaton, A. and Keefe, J. (Eds.), Madison, WI: Industrial Relations Research Association, 1999.

21. Lewin, D. and Stephenson, K.A., "Work Force Diversity: Micro- and Macro-Level Implications of Network Analysis," pp. 34-73 in New Dimensions of Work Force Diversity, Jain, H. and Verma, A. (Eds.), University of Toronto Press, 1997.

22. Lewin, D., Mitchell, D.J.B. and Zaidi, M.A., "Separating Ideas and Bubbles in Human Resource Management," pp. 1-31 in The Human Resource Management Handbook: Part I, Lewin, D., Mitchell, D.J.B. and Zaidi, M.A. (Eds.) Greenwich, CT: JAI Press Inc., 1997.

23. Lewin, D., Mitchell, D.J.B. and Zaidi, M.A., "Human Resource Management: Key Themes and Integration," pp. 289-322 in The Human Resource Management Handbook: Part I, Lewin, D., Mitchell, D.J.B. and Zaidi, M.A. (Eds.), Greenwich, CT: JAI Press Inc., 1997.

24. Lewin, D., "Workplace Dispute Resolution," pp. 197-218 in The Human Resource Management Handbook: Part II, Lewin, D., Mitchell, D.J.B. and Zaidi, M.A. (Eds.), Greenwich, CT: JAI Press Inc., 1997.

25. Lewin, D., "Contract Administration," pp. 61-62 in The Blackwell Dictionary of Human Resource Management, Peters, L.H., Youngblood, S.A. and Greer, C.R. (Eds.), Oxford, England: Basil Blackwell, 1997.

26. Lewin, D. and Sabater, J.M., "Corporate Philanthropy and Business Performance," pp. 105-126 in Corporate Philanthropy at the Crossroads, Burlingame, D. and Young, D.R. (Eds.), Indiana University Press, 1996.

27. Kaufman, B.E., Lewin, D. and Adams, R.G., "Work-Force Governance," pp. 404-424 in Handbook of Human Resources Management, Ferris, G.R., Rosen, S.D. and Barnum, D.T. (Eds.), Blackwell, 1995.

28. Lewin, D., "Internal Challenges to the American Human Resource Management Function," pp. 1-31 in International Perspectives and Challenges in Human Resource Management, Mitchell, D.J.B. and Lewin, D. (Eds.), Harvard University Press, 1994.



29. Lewin, D., "Explicit Individual Contracting in the Labor Market," pp. 401-428 in Labor Economics and Industrial Relations, Kerr, C. And Staudohar, P.D. (Eds.), Harvard University Press, 1994.

30. Lewin, D. and Sherer, P.D., "Does Strategic Choice Explain Senior Executives' Preferences on Employee Voice and Representation?", pp. 235-263 in Employee Representation: Alternatives and Future Directions, Kleiner, M.M. and Kaufman, B.E. (Eds.), Industrial Relations Research Association, 1993.

31. Lewin, D., Mitchell, O.S. and Sherer, P.D., "Industrial Relations and Human Resources: Introduction and Overview," pp. 1-39 in Research Frontiers in Industrial Relations and Human Resources, Lewin, D., Mitchell, O.S. and Sherer, P.D. (Eds.), Industrial Relations Research Association, 1992.

32. Lewin, D., "Work Organisation, Labour-Management Relations and Participation Practices in United States Enterprises: A Critique and Assessment," pp. 197-221 in New Directions in Work Organisation: The Industrial Relations Response, Sherer, P.D. and Tergeist, P. (Eds.), Paris: Organization for Economic Cooperation and Development, 1992.

33. Lewin, D., "Comments on The Decline of Fringe-Benefit Coverage in the 1980s," pp. 139-143 in Structural Changes in U.S. Labor Markets: Causes & Consequences, Eberts, R.W. and Groshen, E.L. (Eds.), M.E. Sharpe, 1991.

34. Lewin, D., "The Contemporary Human Resource Management Challenge to Industrial Relations," pp. 82-99 in The Future of Industrial Relations, Katz, H.C. (Ed.), ILR Press, Cornell University, 1991.

35. Lewin, D., "Analyzing the Transformation: A Research Perspective," pp. 202-218 in Reflections on the Transformation of Industrial Relations, Chelius, J. and Dworkin, J. (Eds.), IMLR Press/Rutgers University and The Scarecrow Press, Inc., 1990.

36. Mitchell, D.J.B., Lewin, D. and Lawler, E.E. III, "Alternative Pay Systems, Firm Performance, and Productivity," pp. 15-94 in Paying for Productivity: A Look at the Evidence, Blinder, A.S. (Ed.), The Brookings Institution, 1990.

37. Lewin, D. and Horton, R.D., "Human Resources Management," pp. 267-306 in The Two New Yorks: State-City Relations in the Changing Federal System, Benjamin, G. and Brecher, C. (Eds.), Russell Sage Foundation,1988.

38. Ichniowski, C. and Lewin, D., "Grievance Procedures and Firm Performance," pp. 159-193 in Human Resources and Performance of the Firm, Kleiner, M.M., Block, R.N., Roomkin, M. and Salsburg, S.W. (Eds.), Industrial Relations Research Association, 1987.

39. Lewin, D., "Industrial Relations as a Strategic Variable," pp. 1-41 in Human Resources and the Performance of the Firm, Kleiner, M.M., Block, R., Roomkin, M. and Salsburg, S.W. (Eds.), Industrial Relations Research Association, 1987.

40. Lewin, D., "The Labor Board's Impact on Employment, Society, and the National Economy: Commentary," pp. 57-60 in American Labor Policy, Morris, C. (Ed.), Bureau of National Affairs, 1987.



41. Lewin, D., "Technological Change in the Public Sector: The Case of Sanitation Service," pp. 281-309 in Workers, Managers, and Technological Change: Emerging Patterns of Labor Relations, Cornfield, D. (Ed.), Plenum, 1987.

42. Lewin, D., "Conflict Resolution in the Nonunion High Technology Firm," pp. 137-155 in Human Resources in High Technology Firms, Kleingartner, A. and Anderson, C. (Eds.),
 D.C. Heath, 1986.

43. Lewin, D., "Public Employee Unionism in the 1980s: An Analysis of Transformation," pp. 241-264 in Unions in Transition, Lipset, S. (Ed.), Institute for Contemporary Studies, 1986.

44. Lewin, D. and Katz, H.C., "Payment Determination in Municipal Building Departments Under Unionism and Civil Service," pp. 90- 121 in Municipal Labor Markets, Hirsch, W. and Rufolo, A. (Eds.), Institute of Industrial Relations, UCLA, 1983.

45. Lewin, D., "Public Sector Collective Bargaining and the Right to Strike," pp. 145-163 in Public Employee Unions: A Study  of the Crisis in Public Sector Labor Relations, Chickering, L. (Ed.), Institute for Contemporary Studies, 1976.

46. Lewin, D., "The Employer Probe: Employer Utilization of Labor Market Information," pp. 63-72 in The Labor Market: An Information System, Yavitz, B. and Morse, D. (Eds.), Praeger, 1973.


*Professional Journal Articles:*

1.  Eash D., Lewin, D. and Wazzan, C.P., "Anti-Poaching Collusion in the Contemporary Labor Market: Evidence, Analysis and Implications," *Employee Relations Law Journal,* 43, pp. 50-71, 2017.

2.  Lewin, D., "Resolving Workplace Conflicts Through Litigation: Evidence, Analysis and Implications," Advances in Industrial and Labor Relations, *Managing and Resolving Workplace Conflict*, 22, pp. 31-67, 2016.

3.  Lewin, D. and Gollan, P.J. "Introduction," in Advances in Industrial and Labor Relations, 21, ix-xii, 2015.

4.  Lewin, D., "The Idea and Practice of Contract in U.S. Employment Relations: Analysis and Policy," Perspectives on Work, 17, pp. 30-35, Summer 2013/Winter 2014.

5.  Lewin, D. and Gollan, P.J. "Employee Representation in the Non-Union Firm: An Overview," Industrial Relations, 53, 1S, pp. 173-193, Winter 2013.

6.  Lewin, D., Keefe, J.H. and Kochan, T.A. "The New Great Debate About Unionism and Collective Bargaining in U.S. State and Local Governments," Industrial and Labor Relations Review, 65, 4, pp. 749-778, Fall 2012.

7.  Lewin, D., Kaufman, B.E. and Gollan, P.J., "Introduction," in Advances in Industrial and Labor Relations, 17, ix-xii, 2010.



8.  Lewin, D. and Kaufman, B.E., "Introduction," in Advances in Industrial and Labor Relations, 16, ix-x, 2009.

9.  Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 15, ix-xv, 2007.

10. Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 14, pp. ix-xiv, 2005.

11. Lewin, D., "Unionism and Employment Conflict Resolution: Rethinking Collective Voice and its Consequences," Journal of Labor Research, 26, pp. 209-239, Spring 2005.

12. Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 13, pp. ix-x, 2004.

13. Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 12, pp. 1-5, 2003.

14. Lewin, D., "Incentive Compensation in the Public Sector: Evidence and Potential," Journal of Labor Research, 24, 4, pp. 597-619, 2003.

15. Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 11, pp. ix-x, 2002.

16. Lewin, D. and Kaufman, B.E., "Critical Issues in 21st Century Industrial Relations: Learning From the 21st Century Experience, An Overview," Perspectives on Work, 5, 2, pp. 21-22, 2001.

17. Lewin, D. and Kaufman, B.E., "Introduction," In Advances in Industrial and Labor Relations, 10, pp. ix-x, 2001.

18. Lewin, D., "IR and HR Perspectives on Workplace conflict: What Can Each Learn from the Other," Human Resource Management Review, 11, 4, pp. 453-485, Fall 2001.

19. Lewin, D. and Sandweiss, D., "Interviews with Part-Time MBAs Point the Way for Retaining Executive Track Managers," Employment Relations Today, 7, 1, pp. 35-45, Spring 2000.

20. Lewin, D. and Peterson, R.B., "Research on Unionized Grievance Procedures: Management Issues and Recommendations," Human Resource Management, 39, 4, pp. 395-406, Winter 2000.



21. Lewin, D. and Peterson, R.B., "Behavioral Outcomes of Grievance Activity," Industrial Relations, 38, 4, pp. 554-576, October 1999.

22. Lewin, D. and Kaufman, B.E., "The HR/IR Teaching Conference," Human Resource Management, 38, 2, pp. 159-164, Summer 1999.

23. Lewin, D. and Kaufman, B.E., "Is the NLRA Still Relevant to Today's Economy and Workplace?," Labor Law Journal, 49, 3, pp. 1113-1126, September 1998.

24. Lewin, D. and Kaufman, B.E., "Industrial Relations Theory and Empirical Research," Advances in Industrial and Labor Relations, 8, pp. 1-14, 1998.

25. Lewin, D, and Boroff, K.E., "Loyalty, Voice and Intent to Exit a Union Firm: A Conceptual and Empirical Analysis," Industrial and Labor Relations Review, 51, 1, pp. 50-63, October 1997.

26. Stephenson, K.A. and Lewin, D., "Managing Workforce Diversity: Macro and Micro Level HR Implications of Network Analysis," International Journal of Manpower, 17, 4/5, pp. 168-196, 1996.

27. Lewin, D. and Boroff, K.E., "The Role of Loyalty in Exit and Voice: A Conceptual and Empirical Analysis," Advances in Industrial and Labor Relations, 7, pp. 69-96, 1996.

28. Lewin, D., "Conflict Resolution and Management in Contemporary Work Organizations: Theoretical Perspectives and Empirical Evidence," Research in the Sociology of Organizations, 12, pp. 167- 209, Fall 1993.

29. Lewin, D., "Grievance Procedures in Nonunion Workplaces: An Empirical Analysis of Usage, Dynamics, and Outcomes," Chicago- Kent Law Review, 66, 3, pp. 823-844, 1992.

30. Lewin, D. and Mitchell, D.J.B., "Alternative Approaches to Workplace Flexibility in the U.S.A.," The Work Flexibility Review, 3, pp. 1-20, July 1992.

31. Lewicki, R.J., Weiss, S.E. and Lewin, D., "Models of Conflict, Negotiation and Third Party Intervention: A Review and Synthesis," Journal of Organizational Behavior, 13, pp. 209-252, 1992.

32. McCabe, D.M. and Lewin, D., "Employee Voice: A Human Resource Management Perspective," California Management Review, 34, 3, pp. 112-123, Spring 1992.

33. Lewin, D. and Mitchell, D.J.B., "Systems of Employee Voice: Theoretical and Empirical Perspectives," California Management Review, 34, 3, pp. 95-111, Spring 1992.



34. Lewin, D. and Schecter, S., "Four Factors Lower Disability Rates," Personnel Journal, 47, pp. 99-103, May 1991.

35. Peterson, R.B. and Lewin, D., "The Nonunion Grievance Procedure: A Viable System of Due Process?," Employee Responsibilities and Rights Journal, 3, 1, pp. 1-18, March1990.

36. Peterson, R.B. and Lewin, D., "Institutional Contributions From Studying The Union Grievance Procedure," Work Place Topics, 1, 3, pp. 2-9, December 1989.

37. Lewin, D., "Models of Man in Industrial Relations Research: Why Psychology is not the Sine Qua Non," Industrial and Labor Relations Review, 43, 1, pp. 89-92, October 1989.

38. Lewin, D., "The Future of Employee Involvement/Participation in the United States," Labor Law Journal, 40, pp. 470-475, August 1989.

39. Lewin, D., "Commentary on the Case of the Not-So-Supermarket," Harvard Business Review, 67, 2, pp. 26-27, March-April 1989.

40. Ichniowski, C., Delaney, J.T. and Lewin, D., "The New Human Resource Management in the US Workplaces: Is it Really New and is it Only Nonunion?," Relations Industrielles/Industrial Relations, 44, 1,pp. 97-119, 1989.

41. Lewin, D. and Strauss, G., "Behavioral Research in Industrial Relations: Introduction," Industrial Relations, 27, 1, pp. 1-6, Winter 1988.

42. Koch, M., Lewin, D. and Sockell, D., "The Determinants of Bargaining Structure: A Case Study of AT&T," Advances in Industrial and Labor Relations, 4, pp. 223-251, 1987.

43. Lewin, D., "Dispute Resolution in the Nonunion Firm: A Theoretical and Empirical Analysis," Journal of Conflict Resolution, 31, 3, pp. 465–502, September 1987.

44. Lewin, D. and Lipsky, D.B., "Current Research on Industrial Relations Regulation, Bargaining Theory, Progressive Discipline, and Occupational Influences on Unionism," Advances in Industrial and Labor Relations, 3, pp. 1-19, 1986.

45. Delaney, J.T., Lewin, D. and Sockell, D., "The NLRA at Fifty: A Research Appraisal and Agenda," Industrial and Labor Relations Review, 39, 1, pp. 46-75, October 1985.

46. Lewin, D., "The Effects of Regulation on Public Sector Labor Relations: Theory and Evidence," Journal of Labor Research, 6, 1, pp. 77-95, Winter 1985.

47. Lewin, D., "Empirical Measures of Grievance Procedure Effectiveness," Labor Law Journal, 35, pp. 491-497, August 1984.



48. Lewin, D., "International Labor: Editor's Introduction," <u>The Columbia Journal of World</u> <u>Business</u>, 18, pp. 2-7, Summer 1983.

49. Kuhn, J.W., Lewin, D. and McNulty, P.J., "Neil W. Chamberlain: A Retrospective Analysis of His Scholarly Work and Influence," <u>British Journal of Industrial Relations</u>, 21, pp. 143-160, July 1983.

50. Lewin, D., "Implications of Concession Bargaining: Lessons from the Public Sector, <u>Monthly Labor</u> <u>Review</u>, 106, pp. 33-35, May 1983.

51. Lewin, D. and Feuille, P., "Behavioral Research in Industrial Relations," <u>Industrial and Labor Relations</u> <u>Review</u>, 36, 3, pp. 341- 360, April 1983.

52. Lewin, D., "The Effects of Civil Service Systems and Unionism on Pay Outcomes in the Public Sector," <u>Advances in Industrial and Labor Relations</u>, 1, pp. 131-161, 1983.

53. Lewin, D., "Theoretical Perspectives on the Modern Grievance Procedure," <u>Research in Labor Economics:</u> <u>New Approaches to Labor Unions</u>, Supplement 23, pp. 127-147, 1983.

54. Lewin, D. and Peterson, R.B., "A Model for Measuring Effectiveness of the Grievance Process," <u>Monthly</u> <u>Labor Review</u>, 105, pp. 47-49, April 1982.

55. Feuille, P. and Lewin, D., "Equal Employment Opportunity Bargaining," <u>Industrial Relations</u>, 20, 3, pp. 322-334, Fall 1981.

56. Lewin, D., "Collective Bargaining and the Quality of Work Life," <u>Organizational Dynamics</u>, 10, pp. 37-53, Autumn 1981.

57. Bartel, A. and Lewin, D., "Wages and Unionism in the Public Sector: The Case of Police," <u>The Review</u> <u>of Economics and Statistics</u>, 63, 1, pp. 53-59, February 1981.

58. Lewin, D. and McCormick, M., "Coalition Bargaining in Municipal Government: The New York City Experience," <u>Industrial and Labor Relations Review</u>, 34, 2, pp. 175-90, January 1981.

59. Lewin, D. and Goldenberg, S.B., "Public Sector Unionism in the U.S. and Canada," <u>Industrial Relations</u>, 19, 3, pp. 239-256, Fall 1980.

60. Lewin, D., "The Impact of Unionism on American Business: Evidence for an Assessment," <u>Columbia</u> <u>Journal of World Business</u>, 31, pp. 89-104, Winter 1978.

61. Lewin, D., "Public Sector Labor Relations," <u>Labor History</u>, 18, 1, pp. 133-144, Winter 1977.



62. Lewin, D., "Collective Bargaining Impacts on Personnel Administration in the American Public Sector," Labor Law Journal, 27, pp. 426-436, July 1976.

63. Lewin, D. and Keith, J.H., "Managerial Responses to Perceived Labor Shortages: The Case of Police," Criminology, 14, 1, pp. 65-92, May 1976.

64. Lewin, D., "Local Government Labor Relations in Transition: The Case of Los Angeles," Labor History, 17, 2, pp. 192-213, Spring 1976.

65. Horton, R.D., Lewin, D. and Kuhn, J.W., "Some Impacts of Collective Bargaining on Local Government: A Diversity Thesis," Administration & Society, 7, 4, pp. 497-516, February 1976.

66. Lewin, D. and Horton, R.D., "The Impact of Collective Bargaining on the Merit System in Government," The Arbitration Journal, 30, 3, pp. 199-211, September 1975.

67. Lewin, D., "The Prevailing-Wage Principle and Public Wage Decisions," Public Personnel Management, 3, pp. 473-485, November-December 1974.

68. Fogel, W. and Lewin, D., "Wage Determination in the Public Sector," Industrial and Labor Relations Review, 27, 3, pp. 410-431, April 1974.

69. Lewin, D., "Aspects of Wage Determination in Local Government Employment," Public Administration Review, 34, 2, pp. 149-155, March/April 1974.

70. Lewin, D., "Public Employment Relations: Confronting the Issues," Industrial Relations, 12, 3, pp. 309-321, October 1973.

71. Lewin, D., "Wage Parity and the Supply of Police and Firemen," Industrial Relations, 12, 1, pp. 77-85, February 1973.

# Exhibit 2

## DAVID LEWIN

### DEPOSITION AND TRIAL TESTIMONY, 2014-2018

2014. Janvey, Receiver for Stanford International Bank v. Giusti; executive compensation; Stanley, Frank & Rose; defendant; report; *deposition*; Houston, TX.

2014. Flemma v. Halliburton Energy Services, Inc.; wrongful termination and retaliatory discharge; Rodey, Dickason, Sloan, Akin & Robb; defendant; report; *deposition; Albuquerque, NM.*

2014. Telesys v. In-Room Video and Michael Poole; Executive Compensation; Allan Matkins; defendant; *deposition*; San Francisco, CA.

2014. Parmenter v. Farmers Insurance Group, Inc.; wrongful termination and retaliatory discharge; Tharpe & Howell; defendant; report; **trial testimony**; Los Angeles, CA.

2014. Landan v. Hewlett-Packard; executive compensation; Sullivan & Worcester; plaintiff; report; *deposition*; San Francisco, CA.

2014. AngioScore v. Konstantino, et al.; corporate governance; Wilson Sonsini; defendant; report; *deposition*; Oakland, CA.

2015. Chambers, et al. v. North American Company for Life and Health Insurance (NACOLAH); survey research; Hagens, Berman, Solo & Shapiro; plaintiff; report; *deposition*; Iowa.

2015. Pao v. Kleiner, Perkins, Caufield & Byers; wrongful termination and damages; defendant; Orrick, Herrington & Sutcliffe; report; *deposition*; **trial testimony**; San Francisco, CA.

2015. Romero, et al. v. Allstate Insurance Company; independent contractor versus employee status, release arrangements; defendant; Kirkland & Ellis; report; *deposition*; Chicago, IL.

2015. Blue Cross and Blue Shield of Arizona v. Rocky Mountain Holdings; corporate governance and headquarters location; plaintiff; Jenner & Block; report; *deposition*; Phoenix, AZ.

2015. Rodman, et al. v. Safeway, Inc.; online versus in-store pricing and survey research; defendant; Sheppard, Mullin, Richter & Hampton; report; *deposition*; San Francisco, CA.

2015. Cooner Sales Company, LLC v. New England Wire Technologies Corporation; executive compensation; plaintiff; Arent Fox; report; *deposition*; **arbitration testimony**; Los Angeles, CA.

2016. De La Rosa v. White Memorial Medical Center; employee hiring and discipline; defendant; McCurdy and Leibl; report; *deposition*; **trial testimony**; Los Angeles, CA.

2016. Rock v. NCAA; student-athlete grants-in-aid and survey research; plaintiff; Hagens, Berman, Sobol & Shapiro; report; *deposition*; Los Angeles, CA.

2016. Rogers, et al. v. The Home Depot, et al.; exempt, non-exempt status of sales consultants; plaintiff; Quintilone & Associates; report; *deposition*; Central District, CA.

2016.   Greer v. Dick's Sporting Goods; off-the-clock work and unreimbursed business expenses; plaintiff; Capstone Law; report; *deposition*; Los Angeles, CA.

2016.   Wadler v. Bio-Rad Laboratories; defendant; wrongful termination and damages mitigation; defendant; Latham & Watkins and Quinn Emanuel; report; *deposition;* San Francisco, CA.

2016. United Farmers Agents Association (UFAA) v. Farmers Insurance Group; no-cause termination provision in agents' agreements; defendant; Hinshaw Culbertson and Tharpe & Howell; report; **trial testimony**; Los Angeles,

2016.   SuperShuttle v. State of California EDD; independent contractor v. employee status; plaintiff; Marron & Associates; report; *deposition*; **trial testimony;** Sacramento, CA.

2016.   Berger v. Kargo Global, Inc.; gender discrimination and executive compensation; defendant; Sullivan & Cromwell and Christopher Turcotte, LLP; **arbitration testimony**; New York, NY.

2017.   US Ex Rel Diaz v. Kaplan University, et al; admission advisor compensation and DOE funding; defendant; Gibson Dunn; report; *deposition*; Los Angeles, CA.

2017.   Jimmy John's Overtime Litigation; managerial misclassification and franchisor-franchisee joint employer; plaintiff; Outten & Golden; *deposition*; Chicago, IL.

2017.   Cone v. Causeway Capital Management; wrongful termination and executive compensation; plaintiff; Irell & Manella; report; *deposition*; Los Angeles, CA.

2017.   Dittmar, Tilton, et al. v. Costco Wholesale Corp.; off-the-clock work and missed meal and rest breaks; plaintiff; Capstone Law; report; *deposition;* Los Angeles, CA.

2017.   Wergechik v. Anaheim Arena Management; gender discrimination, wrongful termination, and retaliation; defendant; Sheppard, Mullin, Richter & Hampton; *deposition;* Orange County, CA.

2017.   Cooner Sales Company, LLC v. New England Wire Technologies Corporation; executive compensation; plaintiff; Larson O'Brien; report; *deposition*; **arbitration testimony**; Los Angeles, CA.

2017.   Alcantar v. Hobart Service, Inc.; compensability of driving time for service technicians; plaintiff; Workman Law Firm; report; *deposition*; Central District, CA.

2018.   Softub, Inc. v. Karen Dilley; wrongful termination and executive compensation; plaintiff; Nemecek & Cole; *deposition;* Los Angeles, CA.

2018.   Priority Posting and Publishing v. State of California Franchise Tax Board; executive compensation; Ord & Norman and Brager Tax Law Group; report; *deposition;* San Francisco, CA.

2018.   Yoshioka v. Johnson Controls, Inc.; Wrongful Termination and HR Investigation Practices; Workman Law Firm; report; *deposition;* San Francisco, CA.

2018.   Remis v. Goodwin Procter; Employment Search Mitigation and Reputational Damage; report; **arbitration testimony**; Boston, MA.

*Privileged and Confidential*                                                                           *Draft*

# Exhibit 3

### List of Documents Received

### Legal

1.  Deposition of Chao X. Chen and Exhibits, April 25, 2018.
2.  Deposition of Fernando Aguirre-Urbina and Exhibits, June 11, 2018.
3.  Deposition of Nwauzor Ugochukwu and Exhibits, June 19, 2018.
4.  Deposition of Ryan Kimble and Exhibits, July 9, 2018.
5.  Class Action Complaint for Unpaid Wages and Forced Labor, Menocal et al. v. The GEO Group, Inc., October 22, 2014.
6.  Complaint for Declaratory and Injunctive Relief and Damages, Raul Novoa v. The GEO Group, Inc., December 19, 2017.
7.  Class Action Complaint for Damages, Chao Chen v. The GEO Group, Inc., September 26, 2017.
8.  GEO's Notice of Removal to Federal Court, State of Washington v. The GEO Group, Inc., October 9, 2017.
9.  Declaration of Tae D. Johnson Assistant Director, Custody Management Division, Enforcement and Removal Operations (ERO) United States Immigration and Customs Enforcement (ICE) Department of Homeland Security, State of Washington v. The GEO Group, Inc., August 3, 2018.
10. Complaint and Summons, State of Washington v. The GEO Group, Inc., September 21, 2017.
11. GEO's Answer and Counterclaims, State of Washington v. The GEO Group, Inc., December 20, 2017.
12. Washington's Answer and Affirmative Defenses to GEO's Counterclaims, State of Washington v. The GEO Group, Inc., March 14, 2018.

### Other

13. U.S. Department of Homeland Security, Performance-Based National Detention Standards Inspection Worksheet for Over 72 Hour Facilities, December 1, 2009.
14. U.S. Department of Homeland Security, Performance-Based National Detention Standards Inspection Worksheet for Over 72 Hour Facilities, February 1, 2010.
15. Ice National Detention Standards Compliance Review, April 23, 2011.
16. U.S. Department of Homeland Security, Performance-Based National Detention Standards Inspection Worksheet for Over 72 Hour Facilities, April 19, 2012.
17. U.S. Department of Homeland Security, Performance-Based National Detention Standards 2008 Inspection Worksheet for Over 72 Hour Facilities, May 23, 2013.
18. U.S. Department of Homeland Security, Performance-Based National Detention Standards 2011 Inspection Worksheet for Over 72 Hour Facilities, April 17, 2014.
19. U.S. Department of Homeland Security, Performance-Based National Detention Standards 2011 Inspection Worksheet for Over 72 Hour Facilities, April 16, 2015.
20. U.S. Department of Homeland Security, Performance-Based National Detention Standards 2011 Inspection Worksheet for Over 72 Hour Facilities, April 14, 2016.
21. U.S. Department of Homeland Security, Performance-Based National Detention Standards 2011 Inspection Worksheet for Over 72 Hour Facilities, April 20, 2017.

*Privileged and Confidential*                                                          *Draft*

# Exhibit 3

## List of Documents Received

### <u>Bates Documents</u>

22.  GEO-State 000001 — GEO-State 000003.

23.  GEO-State 000385 — GEO-State 000389.

24.  GEO-State 000462 — GEO-State 000489.

25.  GEO-State 015848 — GEO-State 016032.

26.  GEO-State 019280 — GEO-State 019286.

27.  GEO-State 003479.

28.  GEO-State 036825 — GEO-State 037180.

29.  WA-00000001 — WA-00000115.


\* Facts and data considered in forming my opinion are referenced in the report.