The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.

CIVIL ACTION NO. 3:17-cv-05806-RJB

WASHINGTON'S RESPONSE TO DEFENDANT THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR: November 30, 2018

ORAL ARGUMENT REQUESTED

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | LEGAL STANDARD | 3 |
| IV. | ARGUMENT | 3 |
| | A. Intergovernmental Immunity Does Not Bar Washington's Minimum Wage Claim | 3 |
| |     1. Washington's Minimum Wage Laws Do Not Directly Regulate Federal Entities or Endeavors | 4 |
| |     2. Washington's Minimum Wage Laws Do Not Discriminate Against the Federal Government or Federal Contractors | 6 |
| |         a. Washington's minimum wage laws are generally applicable to all private employers – not just federal contractors | 7 |
| |         b. Washington's minimum wage laws do not target federal contractors or meddle in federal activities | 9 |
| | B. Washington Disputes That Northwest Detention Center Is a Federal Detention Facility | 9 |
| V. | CONCLUSION | 11 |

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES
## Cases

*Alabama v. King & Boozer,* 314 U.S. 1 (1941) .................................................................. 8

*Blackburn v. United States,* 100 F.3d 1426 (9th Cir. 1996) ................................................ 4

*Boeing Co. v. Movassaghi,* 786 F.3d 832 (9th Cir. 2014) .............................................. 5, 9

*Bordell v. Gen. Elec. Co.*, 164 A.D. 2d 497 (N.Y. App. Div. 1990) ................................... 5

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .................................................................... 3

*Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008) .................................................... 3

*Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588 (Wash. 2006) ............................... 7

*Doe v. United States*, 831 F.3d 309 (5th Cir. 2016) .......................................................... 11

*Helvering v. Gerhardt*, 304 U.S. 405 (1938) ....................................................................... 4

*In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892 (N.D. Cal. 2007) ............................................................................................................................ 6, 7, 8

*M'Culloch v. Maryland*, 17 U.S. 316 (1819) ....................................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 3

*North Dakota v. United States*, 495 U.S. 423 (1990) ................................................. passim

*Penn Dairies, Inc. v. Milk Control Comm'n of Pa.*, 318 U.S. 261 (1943) ........................... 8

*Phillips Chem Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376 (1960) .................................. 7

*South Carolina v. Baker*, 485 U.S. 505 (1988) .................................................................... 4

*U.S. Postal Serv. v. City of Berkeley*, No. C 16-04815-WHA, 2018 WL 2188853 (N.D. Cal. May, 14, 2018) ........................................................................................................... 8

*United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018) ............................... 6, 9

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010) .................................... 3, 4, 6

*United States v. City of Detroit*, 355 U.S. 466 (1958) ........................................................ 8

*United States v. County of Fresno*, 429 U.S. 452 (1977) ................................................ 4, 6

*Washington v. United States*, 460 U.S. 536 (1983) ......................................................... 6, 8

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**Statutes**

Wash. Rev. Code § 49.46.010(3)(a)-(p) ............................................................................... 7

Wash. Rev. Code § 49.46.010(3)(k) ..................................................................................... 8

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 3

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

Once again, The GEO Group, Inc. ("GEO") attempts to escape the straightforward application of Washington's minimum wage laws by shrouding itself in the cloak of the federal government. This time, GEO argues that intergovernmental immunity requires Washington to exempt the Northwest Detention Center ("NWDC") – a privately owned, for-profit detention facility – from its minimum wage requirements. This argument is strained at best, and ignores basic facts about Washington's minimum wage laws and NWDC.

Intergovernmental immunity does not invalidate Washington's minimum wage laws, which are longstanding laws of general application that do not target the federal government or its contractors. Nor is the application of Washington's statutory exemption for detention facilities operated by a state, county, or municipal government discriminatory against the federal government or private detention contractors: Washington's minimum wage laws do not extend to federally owned facilities but do apply to all *private* employers regardless with whom they contract. And even if intergovernmental immunity was possibly at issue in this case – and it is not – GEO's motion should also be denied because it relies on contested facts that must be construed in light most favorable to Washington, including GEO's contention that NWDC is a "federal" detention facility. GEO has admitted, and the record clearly shows, that NWDC is a private, non-governmental facility. GEO's motion should be denied.

## II. BACKGROUND

GEO, a for-profit corporation, has operated the NWDC since November 2005. *See* Baker Decl. ¶ 3, Ex. A (GEO's response to Request for Admissions 2). GEO owns the physical facility that houses NWDC as well as the property on which it sits. *See* Baker Decl. ¶ 3, Ex. A (GEO's response to Requests for Admissions 1-6). There, GEO provides U.S. Immigration Customs and Enforcement ("ICE") "detention management services including the facility, detention officers, management personnel, supervision, manpower, training, certifications, licenses, drug testing, relief officer(s), uniforms, equipment, and supplies . . . and vehicles necessary to provide

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

detention management and transportation services." GEO-ICE Contract, ECF 19 at 48. GEO also operates a Voluntary Work Program ("VWP") at NWDC, where GEO pays detainee workers either $1 per day or food for work performed. *See* Baker Decl. ¶ 3, Ex. A (GEO's response to Request for Admissions 1). When GEO provides detentions services to ICE at NWDC, ICE requires GEO to comply with all applicable state and local laws – including state and local labor laws. GEO-ICE Contract, ECF 19 at 48; Johnson Decl., ECF 91 ¶ 14 (confirming this contract requirement on behalf of ICE's Custody Management Division).

As a private contractor, GEO retains significant discretion in how it operates the NWDC. *See id.* ¶ 12. In contrast to federal facilities wherein ICE administers its own VWP, GEO manages the VWP at NWDC according to a program "developed by the Contractor, in this case GEO." *Id.* In addition, the GEO-ICE contract permits GEO to seek approval to house both ICE and non-ICE detainees, and to charge a "separate bed day rate" to different agencies for which it provides detention services. GEO-ICE Contract, ECF 19 at 53.

On September 20, 2017, Washington sued GEO for its failure to pay detainee workers Washington's minimum wage.[1] ECF 1-1 at 2-8. On October 16, 2017, GEO filed its first motion to dismiss, arguing that Washington's claims were preempted. ECF 10. This Court denied the motion in its entirety. ECF 29. On March 20, 2018, GEO again moved to dismiss Washington's claims, arguing that relief could not be afforded without joining ICE and that Washington's claims were barred by sovereign immunity. ECF 51 at 9-10. This Court again rejected GEO's arguments, holding that ICE was not a necessary or indispensable party, and that sovereign immunity did not bar Washington's claims. ECF 58 at 12.

GEO now asks this Court a third time to allow GEO to continue paying detainee-workers $1 per day because of GEO's proximity to a federal agency. GEO moves for partial summary

---

[1] Washington also brought a claim for unjust enrichment that is not at issue in GEO's Motion for Summary Judgment on Plaintiffs' First Cause of Action, ECF 149.

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

judgment, arguing that Washington's minimum wage claim is barred by the doctrine of intergovernmental immunity. *See* ECF 149 at 6-10.

## III. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party, with all inferences drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088 (9th Cir. 2008).

## IV. ARGUMENT

Intergovernmental immunity is no bar to Washington's minimum wage claim because Washington law does not target or discriminate against the federal government or federal contractors. The state law exemption for government-owned detention facilities in no way changes this result. At minimum, the Court should deny GEO's motion because the foundational facts of whether NWDC is a "federal" facility are vigorously contested.

### A. Intergovernmental Immunity Does Not Bar Washington's Minimum Wage Claim

The doctrine of intergovernmental immunity stems from *M'Culloch v. Maryland*, which established that the states have no power, by taxation or otherwise, to control, regulate or limit the federal government. 17 U.S. 316, 326-30 (1819). Courts take "a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority." *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990)). Under the functional approach, whatever burdens are imposed on the federal government by a neutral state law "are but normal incidents of the organization within the same territory of two governments" and will not run

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

afoul of intergovernmental immunity. *North Dakota*, 495 U.S. at 435 (citing *Helvering v. Gerhardt*, 304 U.S. 405, 422 (1938)). As such, "[a] state regulation is invalid only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota*, 495 U.S. at 435 (citing *South Carolina v. Baker*, 485 U.S. 505, 523 (1988)); *United States v. County of Fresno*, 429 U.S. 452, 460 (1977)).

As GEO does not argue that Washington's minimum wage laws directly regulate the federal government, presumably the sole basis for GEO's motion is that Washington's minimum wage laws are discriminatory. That argument ignores the longstanding operation of Washington's generally applicable minimum wage laws, which in no way target the federal government or its contractors. Instead, Washington's laws require all private employers in Washington – including GEO – to pay their employees the minimum wage regardless of any association with the federal government.

1. **Washington's Minimum Wage Laws Do Not Directly Regulate Federal Entities or Endeavors**

By failing to brief the argument that Washington's minimum wage laws directly regulate federal entities or endeavors, GEO has waived it. However, even if GEO claims that it has not waived the argument that Washington's minimum wage laws directly regulates the federal government, such an argument would fail. Courts find that the application of a state law is barred by intergovernmental immunity only where there is "direct and intrusive regulation by the State of the Federal Government." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). *See City of Arcata*, 629 F.3d at 991 (noting that impermissible regulation occurs where local laws "seek to directly regulate the conduct of agents of the federal government").

Washington's minimum wage laws do not directly regulate the federal government.[2] This is evidenced by the fact that Washington's minimum wage laws do not purport to require

---

[2] As GEO has strenuously argued, the intergovernmental immunity component of the sovereign immunity doctrine bars Washington from directly regulating the federal government. *See* ECF 149 at 6-8. Due to these core principles of federalism, Washington's minimum wage laws do not regulate the federal government's pay practices

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the federal government to pay Washington's minimum wage to federal employees working in Washington State. Instead, Washington's minimum wage laws regulate all employers – like GEO – that operate in Washington State.

GEO may rely on *Boeing Co. v. Movassaghi*, 786 F.3d 832 (9th Cir. 2014) for the proposition that regulation of GEO may alter the terms of a federal agency's contract, which in turn would constitute impermissible regulation of the federal government. While the proposition is true, that argument holds no water here. Unlike in *Boeing*, GEO's compliance with Washington's minimum wage laws would not alter the performance or terms of the GEO-ICE Contract. *See* 768 F.3d at 840 (finding that California sought to directly regulate the Department of Energy ("DOE") by requiring it to alter its own contract with Boeing and "replac[ing] the federal cleanup standards that Boeing has to meet to discharge its contractual obligation to DOE with the standards chosen by the state"). Here, ICE's contract with GEO grants GEO wide latitude to create and implement a VWP and its governing policies and protocols. *See* GEO-ICE Contract, ECF 19 at 48; Johnson Decl., ECF 91 ¶ 12. Because ICE gave GEO discretion to implement the VWP – including setting the pay for detainee workers – requiring GEO to comply with Washington's minimum wage laws would not alter any aspect of the GEO-ICE Contract or supplant any federal standards imposed by ICE. As such, applying Washington's minimum wage laws to GEO's VWP does not trigger intergovernmental immunity concerns because it is not a direct regulation of a federal entity. *See Bordell v. Gen. Elec. Co.*, 164 A.D. 2d 497, 498 (N.Y. App. Div. 1990) (finding application of a state whistleblower statute to a federal contractor did not constitute direct regulation where "it [did] not . . . require the federal facility to cease or alter its operations in any way"). In fact, the contrary is true, because GEO is required to comply with Washington's minimum wage laws through its contract with ICE. *See* GEO-ICE Contract, ECF

---

at any federal detention facility located in Washington State – *i.e.* the Federal Detention Center, SeaTac which is owned and operated by the Bureau of Prisons. However, NWDC is not a federal facility. It is a private detention facility owned and operated by GEO – a multinational for-profit corporation.

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

19 at 48 (requiring GEO to comply with "[a]pplicable federal, state and local labor laws and codes").

### 2. Washington's Minimum Wage Laws Do Not Discriminate Against the Federal Government or Federal Contractors

Washington's minimum wage laws do not discriminate against the federal government or entities that contract with the federal government.

A "[s]tate does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544-45 (1983). "The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *City of Arcata*, 629 F.3d at 991 (quoting *North Dakota,* 495 U.S. at 437-38). When a state law is alleged to operate discriminatorily, federal courts apply intergovernmental immunity with "restraint," meaning that "[t]he nondiscrimination analysis should not 'look to the most narrow provision addressing the Government or those with whom it deals'" because even "'[a] State provision that appears to treat the Government differently on the most specific level of the analysis may, in its broader regulatory context, not be discriminatory.'" *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903-04 (N.D. Cal. 2007) (quoting *North Dakota*, 495 U.S. at 438). "Applying these principles, the [Supreme] Court has required that regulations be imposed equally on all similarly situated constituents of a state and not based on a constituent's status as a government contractor or supplier." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 903 (citing *County of Fresno*, 429 U.S. at 462-64).

Intergovernmental immunity bars a local government's regulation if: (1) it treats those who work with the federal government differently simply because of their relation to the federal government; or (2) is a "clear attempt to 'meddl[e] with federal government activities indirectly by singling out for regulation those who deal with the government.'" *United States v. California*, 314 F. Supp. 3d 1077, 1096 (E.D. Cal. 2018) (citing *In re Nat'l Sec. Agency Telecomms. Records*

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Litig.*, 633 F. Supp. 2d at 903). *See also Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 383 (1960) (noting that to determine whether a regulation is impermissibly discriminatory, courts first determine how other similarly situated entities are treated). A state law will not implicate intergovernmental immunity where it "is imposed on some basis unrelated to the object's status as a Government contractor" and is "imposed equally on other similarly situated constituents of the State." *North Dakota*, 495 U.S. at 438.

GEO argues that Washington's minimum wage exemption for "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution" is discriminatory against the federal government and federal contractors. *See* ECF 149 at 1, 3-4, 9-12. GEO's argument misses the mark.

      **a.    Washington's minimum wage laws are generally applicable to all private employers – not just federal contractors**

GEO makes much of Washington's minimum wage exemption for detainees in government-owned institutions, arguing that that its detention business constitutes "identical circumstances" and application of Washington's minimum wage law to detainee workers at NWDC is discriminatory against GEO because of its status as a federal contractor. ECF 149 at 11. That is flatly wrong.

Washington's minimum wage exemption for detainee workers in governmental detention facilities is not discriminatory against GEO because of its relationship to the federal government.

*First*, Washington's minimum wage laws do not treat GEO – or any federal contractor – differently than any other private Washington employer. Instead, and unless included in an express statutory exemption, all private employers across the state are subject to Washington's minimum wage laws. *See* Wash. Rev. Code § 49.46.010(3)(a)-(p) (enumerating limited exceptions to minimum wage requirements); *Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588, 592-95 (Wash. 2006) (applying Washington's minimum wage laws to federal contractor).

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

State regulations that apply across-the-board to businesses regardless of whether they hold a federal contract have repeatedly been upheld against constitutional challenge. *See, e.g.*, *Washington*, 460 U.S. at 545 (upholding state law where "[t]he tax on federal contractors is part of the same structure, and imposed at the same rate, as the tax on the transactions of private landowners and contractors"); *North Dakota*, 495 U.S. at 437 ("price control regulations and taxes imposed on Government contractors . . . have repeatedly been upheld against constitutional challenge") (citing *United States v. City of Detroit*, 355 U.S. 466, 472-74 (1958)); *Penn Dairies, Inc. v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 279-80 (1943); *Alabama v. King & Boozer*, 314 U.S. 1, 8 (1941)). *See also U.S. Postal Serv. v. City of Berkeley*, No. C 16-04815-WHA, 2018 WL 2188853, at * 3 (N.D. Cal. May, 14, 2018) (finding no discriminatory treatment of the federal government where city's historic district designation – that was "imposed equally on other similarly situated constituents of the State" – limited government's options for selling or renovating an old post office). This is because such laws "are but normal incidents of the organization within the same territory of two governments." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 903-04 (quoting *North Dakota,* 495 U.S. at 435).

*Second*, Washington law exempts detainees workers in government detention facilities from the minimum wage. *See* Wash. Rev. Code § 49.46.010(3)(k). Washington law does not afford the same exemption to private entities operating detention facilities. GEO is not a unit of government. It is a private business operating a detention facility for monetary gain. Unlike a government-owned detention facility, GEO must follow Washington's minimum wage laws because no exception applies to it. This is true regardless of whether GEO chooses to detain people pursuant to a contract with ICE or another entity.

As Washington's minimum wage laws apply to all private employers equally, they do not target GEO as a federal contractor nor trigger intergovernmental immunity concerns.

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### b. Washington's minimum wage laws do not target federal contractors or meddle in federal activities

The case that GEO relies upon most heavily, *Boeing*, provides no support for its argument that Washington's law is discriminatory. *See* ECF 149 at 10-12 (citing *Boeing Co.*, 768 F.3d 832 (9th Cir. 2014)). In *Boeing*, the Ninth Circuit held that California's site-specific regulations governing radioactive cleanup at Santa Susana Field Laboratory were impermissibly discriminatory and triggered intergovernmental immunity. 768 F.3d at 842-43. The court found the radioactive cleanup regulations discriminatory because they were passed over and above the state's generally applicable environmental laws in order to target a specific property that the federal government had contaminated. *Id.* at 841. The result of California's additional layer of regulation specific to the Santa Susana Field Laboratory was that federal actions taken on that property – either directly or through the contract with Boeing – were subject to differential treatment and more intense regulation than any other property in California. *Id.*

Washington's minimum wage laws do not single out the federal government or any specific federal contractor for that kind of differential treatment. *See United States v. California*, 314 F. Supp. 3d 1077, 1093 (E.D. Cal. 2018) (holding that state regulations imposed on private detention facilities that contract with the federal government do not trigger intergovernmental immunity concerns). Simply put, application of Washington's minimum wage laws in no way interferes or meddles with federal interests including the GEO-ICE Contract. *See supra* at 5-6 (noting that ICE gave GEO the discretion to structure detainee worker pay in the VWP).

## B. Washington Disputes That NWDC Is a Federal Detention Facility

Alternatively, the Court should deny summary judgment because, at minimum, GEO's attempt to rebrand NWDC as a "federal" detention facility conflicts with the record and GEO's own admissions.

GEO admits that it owns both NWDC and the property on which it sits. Baker Decl. ¶ 3 (GEO's response to Requests for Admissions 1-6). And ICE admits that NWDC is a privately

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 | owned facility that ICE contracts with for bed space to house immigrant detainees. Johnson
2 | Decl., ECF 91 ¶¶ 7-8. Despite these clean, admitted facts, GEO now argues that because GEO
3 | contracts with the federal government for bed space at NWDC that NWDC is a "*federal*
4 | *detention facility.*" ECF at 149 at 4. GEO's argument relies on deeply disputed facts that must
5 | be viewed in the light most favorable to Washington. The Court should reject GEO's
6 | recharacterization for at least four reasons.

*First*, GEO's argument that NWDC is a federal facility because it contracts to detain federal immigrant detainees ignores a critical fact – that GEO has the option and authority to house other detainees, federal or not, at the facility. This means that even under GEO's logic, NWDC is not strictly limited to federal detainees. *See* GEO-ICE Contract, ECF 19 at 53. Although the NWDC currently houses federal immigration detainees, GEO explicitly reserves the option to detain prisoners or inmates from government entities other than ICE. *Id.* The fact that GEO, a private for-profit company, can seek to house other detainees for pay at its facilities undercuts GEO's argument that its federal contract magically transforms NWDC into a federal property.

*Second*, regardless of whether GEO would like NWDC to be considered a "federal" facility, ICE itself differentiates between private facilities like the NWDC and its own federal facilities. As ICE's Assistant Director of Customs, Tae Johnson, declared, Services Processing Centers are federally owned and operated immigration detention centers. *See* Johnson Decl., ECF 91 ¶ 12. The NWDC, however, is not a Service Processing Center. *Id.* The NWDC is a Contract Detention Facility – a privately owned and operated facility that provides detention services to ICE pursuant to a performance-based contract. *Id.* The fact that ICE does not consider NWDC to be a federal immigration detention facility cuts deeply against GEO's rebranding effort.

*Third*, GEO's reliance on dicta in a Fifth Circuit case does not require this Court to find otherwise. In *Doe v. United States*, the Fifth Circuit passingly refers to Corrections Corporation

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of America's practice of providing contract detention services to ICE as "performing a federal function." 831 F.3d 309, 317 (5th Cir. 2016). However, the *Doe* case itself affirms that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing in public contracts." *Id.* at 316. GEO has presented no other case that support its labeling NWDC a federal facility and *Doe* helps Washington, not GEO, here.

*Fourth*, to the extent GEO relies on an early order from this Court describing the NWDC as "a federal detention facility," GEO's argument fails. ECF 149 at 4, 7, 12 (citing ECF 29 at 17). This Court has repeatedly found – including it its Order denying GEO's motion to dismiss Washington's claims for failure to join ICE – that "GEO is a private corporation that has owned and operated the Northwest Detention Center (NWDC), a 1,575 bed detention facility, since 2005." ECF 58 at 2. *See also* ECF 86 at 6 (noting that neither GEO nor NWDC is a federal entity); ECF 133 at 8 (noting that GEO is a "publicly-traded multinational corporation"). This Court's early and passing description of NWDC as a federal facility does not alter the facts, admitted by GEO, that NWDC is privately owned. *See* Baker Decl. ¶ 3, Ex. A (GEO's responses to Requests for Admissions).

In sum, NWDC's status as a private facility is not altered by GEO's business decision to contract with ICE for detention services, and GEO's effort to characterize NWDC as a "federal" facility raises a deeply disputed fact issue that must be viewed in light most favorable to Washington.

V. CONCLUSION

For the foregoing reasons, this Court should deny GEO's Motion for Summary Judgment on Plaintiff's First Cause of Action.

DATED this 26th day of November, 2018.

Respectfully submitted,

WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

BOB FERGUSON
Attorney General of Washington

s/ *La Rond Baker*
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
larondb@atg.wa.gov
marshac@atg.wa.gov
andreab3@atg.wa.gov

WASHINGTON'S RESPONSE TO THE GEO
GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

November 26, 2018

                                  s/*Caitilin Hall*
                                  CAITILIN HALL, Legal Assistant

WASHINGTON'S RESPONSE TO THE
GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492