UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE GEO GROUP, INC.,<br><br>　　　　　　Defendant. | CASE NO. 3:17-cv-05806-RJB<br><br>ORDER DENYING DEFENDANT THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION |

THIS MATTER comes before the Court on Defendant The GEO Group, Inc.'s Motion for Summary Judgment on Plaintiff's First Cause of Action. Dkt. 149. The Court has reviewed the motion, Plaintiff's Response (Dkt. 155), Defendant's Reply (Dkt. 161), and the remainder of the file herein. Oral argument is unnecessary. W.D.Wash.LCR 7(b)(4).

Defendant has invoked the doctrine of intergovernmental immunity, arguing that finding for Plaintiff on the First Cause of Action impermissibly discriminates against Defendant, a Federal Government contractor, in violation of the Supremacy Clause. U.S. Const. art. VI, cl. 2

ORDER - 1

("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land"). The First Cause of Action seeks declaratory relief that the Washington Minimum Wage Act (MWA) applies to the compensation of certain immigration detainees at the Northwest Detention Center (NWDC), and injunctive relief, that Defendant be enjoined from compensating detainees below the prevailing minimum wage. Dkt. 1 at 6, 7.

I. BACKGROUND.

**A. Judicial estoppel.**

First, as a housekeeping matter, the Court must clarify its prior Order on GEO's Motion to Dismiss. *See* Dkt 29 at 17. The Order remarked that, "it is plain that the definition [of 'employee'] excepts residents of "state . . . detention" facilities, not federal facilities . . . The [NWDC] is a federal detention facility and thus does not fall under the exception." *Id*. The Order attempted to make the point that, based on the pleadings, the NWDC is not a state detention facility, but in so doing, the Court arguably inartfully mischaracterized the NWDC. The words used were not intended to be a finding of fact regarding the nature of Defendant's facility, except to point out that the referenced statutory exception does not apply. The NWDC is better characterized as a private facility that detains federal detainees under a contract with the Federal Government. *See* Dkt. 19 at 47. As raised by Defendant, Dkt. 149 at 7, judicial estoppel does not apply.

**B. Facts.**

The facts necessary to resolving this motion are agreed.

Defendant is a private corporation that has owned and operated the NWDC, a 1,575 bed detention facility, since 2005 under a contract with Immigration and Customs Enforcement (ICE). Dkt. 19 at 47, 49. Defendant is obligated to provide "detention management services" for

detainees awaiting resolution of immigration matters, operating the NWDC under certain standards and policies, including the Performance-Based Detention Standards (PBNDS). *Id*. at 49, 86. *See* 8 U.S.C. § 1231(g). The PBNDS require Defendant to implement a Voluntary Work Program (VWP), under which detainees perform a variety of tasks. Dkt. 156 at 10, 11; 2011 PBNDS, § 5.8,Voluntary Work Program, available online at http://www.ice.gov/detention-standards/2011/ (last accessed Dec. 3, 2018). Detainee VWP participants receive $1 per day, a disbursement the parties characterize as an allowance (Defendant) or compensation (Plaintiff). Defendant must "perform in accordance with the most current version of [ ] constraints . . . includ[ing] . . . all applicable federal, state and local labor laws and codes[.]" *Id*. at 47, 48.

### C. Procedure.

In two prior motions to dismiss filed by Defendant, the Court denied dismissal. Dkt. 29 at 8-12; Dkt. 58 at 5. Neither motion to dismiss raised intergovernmental immunity. On November 8, 2018, Defendant filed the instant motion, which was ripe for consideration on November 30, 2018. The dispositive motions deadline is April 3, 2019, and trial is set for July 1, 2019. Dkts. 137, 149.

## I. LEGAL STANDARDS.

### A. Motion for Summary Judgment.

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. The Minimum Wage Act.**

The legislature for the State of Washington has "endeavore[e]d . . . to establish a minimum wage for employees of this state to encourage employment opportunities within the state." RCW 49.46.005. The protections and benefits of the MWA are directed at employees; the statute applies indirectly to employers. *See id*. First effective in 1975, the MWA guarantees

persons who are "employees" certain minimum wage protections. RCW 49.46.902, 1975 1st ex.s. c 289 § 5. By statute, an "employee" is "any individual employed by an employer" in the State of Washington. Exceptions apply, including, "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution[.]" RCW 49.60.010(3)(k). Considerations in determining employment relationships are set out in case law. *See, e.g., Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 870 (2012); *Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 196-97 (2014).

### C. Intergovernmental immunity generally.

The doctrine of governmental immunity is rooted in the Supremacy Clause, which guarantees that "the activities of the Federal Government [be] free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). "Courts take 'a functional approach to claims of governmental immunity, accommodating [ ] the full range of each sovereign's legislative authority.'" *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010), citing *North Dakota v. United States*, 496 U.S. 423, 435 (1990). State laws are invalid if they either "regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (internal quotations and citations omitted). Defendant's motion has advanced the second theory, that the MWA discriminates against Defendant.

"The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *North Dakota*, 495 U.S. at 437-38. "A state or local law discriminates against the federal government if it treats someone else better than it treats the government." *Boeing*, 768 F.3d at 842. "Since a regulation imposed on one who deals with the [Federal] Government has as much potential to obstruct the governmental

functions as a regulation imposed on the Government itself . . . the regulation [must] be . . . imposed on some basis unrelated to the object's status as a Government contractor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State." *Id*. at 438.

II.     DISCUSSION.

In light of the background and applicable standards, the Court observes the following.

First, the MWA is imposed equally on other similarly situated constituents of the State. *See North Dakota* 495 U.S. at 438. When creating the MWA, the legislature invoked its police power to care for the health, safety, and welfare for the people of the State of Washington generally, and stated its intent to "endeavor[]. . . to establish a minimum wage for employees of this state to encourage employment opportunities within the state." RCW 49.46.005. At its core, and by design, the MWA protects employees and prospective employees in Washington generally, placing private firms that contract with the Federal Government on equal footing with all other private entities. The MWA expressly excludes as employees, "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution," but, importantly, this exclusion does not extend to residents, inmates or patients of private entities, which, again, remain on equal footing. If the word "federal" was added to the subsection (3)(k) exception (e.g., "state, county, municipal or federal . . . institution"), the MWA exception still would not apply to residents of a private institution, like the NWDC. It therefore cannot be said that the MWA "meddl[es] with federal government activities indirectly by singling out for regulation those who deal with the government." *In re Nat'l Sec. Agency Telecommunications Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007). *Compare to, e.g., Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 814 (1989) (state tax on federal retirement benefits discriminates against Federal Government); *City of Arcata*, 629 F.3d at 988,

ORDER - 6

991 (municipal ordinances prohibiting federal government employees or agents from engaging in military recruitment activities targeting minors discriminates against the Federal Government).

Second, there is no showing that the MWA is imposed against Defendant on any basis related to its status as a Federal Government contractor. *See North Dakota*, 495 U.S. at 438. The state minimum wage arguably relates indirectly to federal government activities—the Federal Government and its contractors may employ persons within the State of Washington—but the MWA does not regulate the Federal Government directly, and, in fact, imposes no duty on the Federal Government itself.

For this reason, this case is distinguishable from *Boeing*, the case upon which Defendant most heavily relies. In *Boeing*, the court analyzed a State of California regulation directed at a single location, Santa Susa Field Laboratory, a former NASA test site targeted "because of the radioactive pollution created by federal activity on the site." *Boeing*, 768 F.3d at 842. The state regulation imposed a "more stringent cleanup standard than generally applicable under state environmental laws[,]" *id*., whereas in this case, the MWA *is* the generally applicable law. Furthermore, unlike the State of California, the State of Washington has not imposed other regulations or laws directed only to the Federal Government or its contractor more stringent than a generally applicable law.

Instead, this case can be better analogized to cases where courts upheld generally applicable state laws or regulations because they did not impermissibly discriminate against the Federal Government or its contractors, which is to say, the laws or regulations did not "directly obstruct the activities of the Federal Government." *City of Arcata*, 629 F.3d at 991. *See, e.g., North Dakota* 495 U.S. at 441 (state liquor regulations laws indirectly affecting the Federal Government's liquor costs); *In re Nat'l Sec. Agency Telecommunications Records Litig.*, 633 F.

Supp.2d at 903-04 (state law regulating public utilities); *United States v. California*, 314 F.Supp.3d 1077, 1093 (E.D.Cal. 2018) (state bill directing its Attorney General to review and report on conditions of confinement for detainees held at county, local, and private detention facilities); *Student Loan Servicing All. v. D.C.*, 2018 WL 6082963, at *31 (D.D.C. Nov. 21, 2018) (state licensing scheme for student loan providers).

Third, the MWA leaves open the question, and places no limitation on, whether Congress *could* decree that detainees must be compensated at a certain wage. And, in fact, as discussed in a prior order, at intermittent times in the past, Congress has done so. *See preemption discussion*. Dkt. 29 at 5-12. Such is the nature of a system organized with two overlapping governments.

Fourth, Defendant's argument that it should be treated the same as the Federal Government is not convincing, because the MWA applies the same to all private employees. The MWA, which was enacted long before Defendant contracted with ICE for detention services, generally applies to "employees." *See Anfinson*, 174 Wn.2d at 870; *Becerra*, 181 Wn.2d at 196-97.

Fifth, a key question in this case is how to interpret the clause requiring Defendant to "all perform in accordance with the most current version of [ ] constraints . . . includ[ing] . . . all applicable federal, state and local labor laws and codes[.]" Dkt. 19 at 47, 48. Under this clause, even if the MWA had the effect of discriminating against the Federal Government, the Federal Government and Defendant arguably waived any objection to the MWA, and agreed to be bound by it. Also, a question remains: Is this clause "applicable" to the MWA? Notably, Defendant has not addressed the waiver issue here.

Relatedly, Defendant emphasizes that the MWA applies equally to Defendant as a government contractor and to the Federal Government. This argument is far too broad, and

ORDER - 8

overlooks the Federal Government's discretion to decide whether to extend its cloak of sovereign immunity to contractors, e.g., by terms of a contract.

<u>Sixth</u>, if the MWA applies here, it may not affect the Federal Government at all. Whether the Federal Government (ICE) must reimburse Defendant for VWP compensation is between Defendant and ICE. The State is not involved in the source of funding VWP compensation, whether under the MWA or not.

<u>In summary</u>, the burden placed on Defendant by the MWA, which is neutral on its face, is "but [a] normal incident of the organization within the same territory of two governments." *North Dakota*, 495 U.S. at 435. The MWA does not discriminate against the Federal Government or Defendant, but instead, affects Defendant only incidentally to "a broad, neutrally applicable rule." *City of Arcata*, 629 F.3d at 991. The doctrine of intergovernmental immunity does not shield Defendant from application of the MWA. Defendant's motion for summary judgment for dismissal should be denied.

Whether the MWA actually applies here remains to be seen.

* * *

THEREFORE, it is HEREBY ORDERED that Defendant The GEO Group, Inc.'s Motion for Summary Judgment on Plaintiff's First Cause of Action (Dkt. 149) is DENIED.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 10th day of December, 2018.

ROBERT J. BRYAN
United States District Judge

ORDER - 9