The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON,

             Plaintiff,

     v.

THE GEO GROUP, INC.,

             Defendant.

CIVIL ACTION NO. 3:17-cv-05806-RJB

WASHINGTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE DEFENSES

NOTE ON MOTION CALENDAR: May 3, 2019

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF UNDISPUTED FACTS ....................................................... 2

   A.   GEO Pays Detainee Workers $1 Per Day for Work Performed at the NWDC ........ 2

   B.   The Attorney General's Office Challenged GEO's Labor Practices at the NWDC After Learning About Them During Community Outreach Meetings ........ 3

III. PROCEDURAL BACKGROUND ...................................................................... 4

IV.  SUMMARY JUDGMENT STANDARD ............................................................ 6

V.   ARGUMENT ...................................................................................................... 6

   A.   Washington Is Entitled to Summary Judgment on GEO's Affirmative Defense of Laches ...................................................................................................... 6

      1.   State Enforcement Actions in the Public Interest Are Not Subject to Laches ........................................................................................................ 7

      2.   The Undisputed Facts Foreclose a Laches Defense, Even if That Defense Were Available ......................................................................................... 8

         a.   Washington Did Not Know, and Could Not Reasonably Have Discovered, GEO's Minimum Wage Violations Before March 2014 ........ 9

         b.   Washington Did Not Unreasonably Delay in Filing Its Claims ................ 9

         c.   GEO Was Not Prejudiced by any Delay in Enforcing the Law .............. 11

   B.   Washington Is Entitled to Summary Judgment on GEO's Affirmative Defense of Unclean Hands ........................................................................................... 12

      1.   Unclean Hands Must Arise Out of a Previous Transaction Between the Same Two Parties .................................................................................... 13

      2.   Washington Had No Involvement in GEO's Employment Transaction With Detainee Workers at the NWDC, Nor Can It Be Accused of Misconduct Related to GEO's Payment Practices ............................................. 14

      3.   Washington's Unrelated Payment Practices Regarding Incarcerated Workers Have No Bearing on GEO's Unclean Hands Defense ..................... 15

      4.   Washington's Discretionary Decision to Bring This Enforcement Action Does Not Make it "Political" or Give Rise to Unclean Hands ........................ 16

   C.   Washington Is Entitled to Summary Judgment on GEO's Affirmative Defenses of Failure to Join Additional Governmental Parties ................................ 17

WASHINGTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
GEO'S AFFIRMATIVE DEFENSES

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1

VI.  CONCLUSION ........................................................................................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WASHINGTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
GEO'S AFFIRMATIVE DEFENSES

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

# TABLE OF AUTHORITIES

## **Cases**

*Assocs. Hous. Fin. L.L.C. v. Stredwick*, 83 P.3d 1032 (Wash. Ct. App. 2004) .............. 8, 10, 11

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273 (1983)........................ 7

*Boardman v. Inslee*, 354 F. Supp. 3d 1232 (W.D. Wash. 2019) ................................. 6

*Brost v. L.A.N.D., Inc.*, 680 P.2d 453 (Wash. Ct. App. 1984)................................. 9, 10

*Carrillo v. City of Ocean Shores*, 94 P.3d 961 (Wash. Ct. App. 2004).................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................... 6

*City of Mercer Island v. Steinmann*, 513 P.2d 80 (Wash. Ct. App. 1973)................................. 7

*City of Seattle v. McKenna*, 259 P.3d 1087 (Wash. 2011) ....................................... 16

*Crodle v. Dodge*, 168 P. 986 (Wash. 1917)................................................. 9

*Davidson v. Washington*, 802 P.2d 1374 (Wash. 1991) ...................................... 10, 11

*Edison Oyster Co. v. Pioneer Oyster Co.*, 157 P.2d 302 (Wash. 1945) .................................... 11

*Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221 (9th Cir. 2012)...................... 10

*Glob. Neighborhood v. Respect Wash.*, 434 P.3d 1024 (Wash. Ct. App. 2019)....................... 10

*Guar. Tr. Co. of N.Y. v. United States.*, 304 U.S. 126 (1938)........................................... 7

*Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 177 P.3d 755 (Wash. Ct. App. 2008)................................................. 10

*Henderson v. United States*, 135 S. Ct. 1780 (2015) ........................................... 13

*Hunter v. Hunter*, 758 P.2d 1019 (Wash. Ct. App. 1988) ................................. 10, 12

*Illinois v. Kentucky*, 500 U.S. 380 (1991)............................................... 8

*In re Estate of Tuott*, 606 P.2d 706 (Wash. Ct. App. 1980) ..................................... 11

*J.L. Cooper & Co. v. Anchor Sec. Co.*, 113 P.2d 845 (Wash. 1941)...................... 13, 14, 16, 17

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ............................ 8

*Koho v. Forest Labs., Inc.*, 17 F. Supp. 3d 1109 (W.D. Wash. 2014)........................................ 6

*Krechman v. County of Riverside*, 723 F.3d 1104 (9th Cir. 2013) ............................................ 6

WASHINGTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
GEO'S AFFIRMATIVE DEFENSES

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

*Lopp v. Peninsula Sch. Dist. No. 401*, 585 P.2d 801 (Wash. 1978) ............................................ 8

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................. 6

*McKelvie v. Hackney*, 360 P.2d 746 (Wash. 1961) ............................................................. 13, 15

*Neighbors & Friends of Viretta Park v. Miller*, 940 P.2d 286 (Wash. Ct. App. 1997)............. 11

*Sun Life Assurance Co. of Can. v. Lee*, 200 Wash. App. 1023, 2017 WL 3485058
  (Wash. Ct. App. 2017)........................................................................................................ 15

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ............... 6

*U.S. Bank Nat'l Ass'n v. Plumb*, No. 34615-3-III, 2017 WL 6388982 (Wash. Ct. App.
  Dec. 14, 2017), *review denied*, 414 P.3d 577 (2018) ........................................................... 12

*Washington v. LG Elecs., Inc.*, 375 P.3d 636 (Wash. 2016).................................................... 7, 8

## Statutes

Wash. Rev. Code 49.46.010(3)(k)                                                                    15

WASHINGTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
GEO'S AFFIRMATIVE DEFENSES

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

# I.     INTRODUCTION

Since 2005, the GEO Group, Inc. (GEO) has owned and operated the Northwest Detention Center (NWDC)—a private detention facility—in Tacoma, Washington. During this time GEO has routinely paid detainee workers $1 per day for work that allows GEO to meet its contractual requirements to keep the NWDC operational. This practice violates Washington's minimum wage laws and has allowed GEO to unjustly enrich itself. Washington brought this suit to remedy state-law violations that impact thousands of Washington workers each year and to require GEO to disgorge its ill-gotten gains.

In response to Washington's claims, GEO asserted thirteen purported affirmative defenses—including laches and unclean hands. Washington moved to strike those defenses, and the Court denied that motion without prejudice due to a reluctance to strike the defenses at the pleading stage and prior to discovery. Washington also moved to strike GEO's affirmative defenses alleging failure to join the Department of Homeland Security, U.S. Immigration & Customs Enforcement (ICE) and the Washington State Department of Labor & Industries (Labor & Industries). The Court denied that motion until such time as GEO squarely raised those defenses on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(7).

The parties have now engaged in discovery for over a year, and GEO's evidence and admissions establish facts fatal to its laches and unclean hands defenses. The parties have also litigated the Rule 12(b)(7) issues. Based on these undisputed facts and the Court's prior rulings and orders, Washington now moves for partial summary judgment against those four defenses.

As to laches, the evidence shows that Washington timely brought suit four months after opening its investigation, and at most three-and-one-half years after first learning of the $1 per day practice. GEO was not materially prejudiced by any delay, but rather benefitted by its ability to continue violating the law. As to unclean hands, the undisputed evidence shows that Washington could not have engaged in any misconduct because it was neither a party to, nor transactant of, GEO's decision to pay detainee-workers $1 per day. And GEO agrees that it never

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    requested or received any determination that state minimum wage laws are somehow

2    inapplicable to detainee workers. GEO's only complaints of "misconduct"—that Washington's

3    lawsuit is politically motivated and that Washington also operates work programs that pay below

4    minimum wage—have nothing to do with, let alone prove, an unclean hands defense. Finally, as

5    to an alleged failure to join required parties, GEO lost its Rule 12(b)(7) motion with respect to

6    the Department of Homeland Security and ICE. ECF No. 58. GEO elected to bring no motion

7    related to Labor & Industries in the time provided by the Court's scheduling order, and has

8    waived that defense.

9         Partial summary judgment is now proper on four of GEO's deficient affirmative defenses

10   to simplify the case, narrow the issues for trial, and conserve judicial resources.

11                **II.     STATEMENT OF UNDISPUTED FACTS**

12   **A.     GEO Pays Detainee Workers $1 Per Day for Work Performed at the NWDC**

13        GEO, a private for-profit corporation, has operated the NWDC since November 2005.

14   *See* ECF No. 156 at 8 (Response to Request for Admissions (RFA) 2). GEO owns the NWDC's

15   physical facility as well as the property on which it sits. *See* ECF No. 156 at 8-9 (RFAs 1-6). At

16   the NWDC, GEO provides ICE "detention management services" defined to include "the

17   facility, detention officers, management personnel, supervision, manpower, training,

18   certifications, licenses, drug testing, relief officer(s), uniforms, equipment, and supplies . . . and

19   vehicles necessary to provide detention management and transportation services." ECF No. 19

20   at 49 (GEO-ICE Contract). Under the terms of its contract, when GEO provides detention

21   services to ICE at the NWDC, ICE requires GEO to comply with all applicable state and local

22   laws—including state and local labor laws. ECF No. 19 at 48 (GEO-ICE Contract); ECF No. 91,

23   ¶ 14 (Johnson Decl.) (confirming, on behalf of ICE's Custody Management Division, GEO's

24   contractual requirement to comply with state and local laws).

25        At the NWDC, GEO operates a Voluntary Work Program (VWP) where GEO pays

26   detainee workers $1 per day for work they perform in the facility. *See* ECF No. 156 at 10

WASHINGTON'S MOTION FOR PARTIAL        2        ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT ON GEO'S                   Civil Rights Division
AFFIRMATIVE DEFENSES                        800 Fifth Avenue, Suite 2000
                                     Seattle, WA  98104-3188
                                     (206) 464-7744

1   (RFA 7); Declaration of La Rond Baker (Baker Decl.) ¶ 3, Ex. A (Responses to Washington's

2   Second Set of RFAs) (RFA 73). GEO organizes and manages the VWP at the NWDC according

3   to a program "developed by the Contractor, in this case GEO." ECF No. 91, ¶ 12 (Johnson Decl.).

4   Detainee workers at the NWDC prepare and serve food, clean laundry, paint, and clean parts of

5   the facility. *See* Baker Decl. ¶ 3, Ex. A (RFAs 27-35); *id.* (RFAs 23-26); *id.* (RFA 49); *id.* (RFAs

6   37-44). *See also* ECF No. 152-2 (VWP job descriptions). GEO pays detainee workers just $1

7   per day for their labor. ECF No. 156 at 11-12 (RFA 13); ECF 152-2 ("Detainee Job

8   Description[s]" for various "Job Title[s]," "Work Area[s]," and "Work Hours"). GEO chooses

9   to pay detainee workers $1 per day for their labor even though GEO has the option to pay

10  detainee workers more than $1 per day. Baker Decl. ¶ 3, Ex. A (RFA 67) (responding "Admit"

11  to "Please admit that GEO has the option to pay more than $1/day to detainee-workers for work

12  performed in the [Voluntary Work Program] at the NWDC.").

13
14  **B.      The Attorney General's Office Challenged GEO's Labor Practices at the NWDC
         After Learning About Them During Community Outreach Meetings**

15      In March 2014, during detainee hunger strikes at the NWDC, law professors,

16  immigration lawyers, and immigrant-rights advocates contacted the Governor's Office about

17  GEO's practice of paying detainee workers $1 per day for work performed at the NWDC. ECF

18  No. 131 at 33-40. At that time, the Governor's Office and Labor & Industries discussed the

19  applicability of Washington's minimum wage to detainee workers at the NWDC. *Id.* at 22-32.

20  Internal communications between Labor & Industries employees from that time period reflect

21  their mistaken belief that the NWDC is "a federal facility" that "comes under Homeland

22  Security." *Id.* at 22. Based on this mistaken understanding of the facility's ownership and

23  operation, in April 2014, Labor & Industries communicated to the Governor's Office a

24  conclusion that Labor & Industries did not have jurisdiction over the NWDC because it was "the

25  federal government or its instrumentalit[y.]" *Id.* at 44. There is no evidence that this internal

26  conclusion was shared with GEO or anyone else outside of state government. To the contrary,

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

GEO admits that no Washington entity ever "informed GEO that Washington lacked authority to enforce minimum wage laws with regard to work at the NWDC," and that GEO never "ask[ed] Washington, or any of its departments or agencies, whether Washington has jurisdiction" over detainee work at the NWDC. Baker Decl. ¶ 3, Ex. A (RFAs 74-77).

A year later, in 2015, the Washington State Office of the Attorney General established the Civil Rights Unit to protect the civil rights of the people of the State of Washington. *See* Baker Decl. ¶ 4, Ex. B (Washington 30(b)(6) Dep. Tr.) at 16:9-17:3. The Civil Rights Unit regularly performs outreach to communities across Washington State. *Id.* Between 2015 and 2017, during outreach meetings, various legal aid groups, private attorneys, immigrant-rights groups, human-rights groups, and impacted Washingtonians raised concerns about conditions at the NWDC—including but not limited to GEO's labor practices regarding detainees. *Id*. at 18:1-21:5. In May 2017, the Civil Rights Unit opened an investigation into GEO's labor practices and developed evidence that it pays detainee workers $1 per day to perform many of the day-to-day tasks necessary to run the facility. *Id.* at 83:22-84:11; ECF No. 16-1 at 45. Four months after opening its investigation—on September 20, 2017—Washington filed this law enforcement action against GEO for failure to pay detainee workers Washington's minimum wage and for unjust enrichment. ECF No. 1-1 at 2-8.

### III.    PROCEDURAL BACKGROUND

On December 20, 2017, GEO filed its Answer and asserted thirteen purported affirmative defenses. ECF No. 34 (GEO's Answer). Washington moved to strike eleven of the affirmative defenses. ECF No. 37. The Court granted in part and denied in part Washington's motion, striking several defenses but denying the motion without prejudice as to others. Four of the affirmative defenses that remain following the Order on Washington's motion to strike include: (1) laches (predicated on the State of Washington's purported delay in enforcing its minimum wage laws); (2) unclean hands (predicated on Washington's operation of work programs that pay inmates and detainees below the minimum wage  and  the Attorney General's alleged

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

political motivations in bringing this suit); (3) failure to join Labor & Industries as an allegedly required plaintiff; and (4) failure to join the Department of Homeland Security and ICE as allegedly required defendants. ECF No. 44 at 12-15. In denying without prejudice Washington's motion to strike the laches defense, the Court found that Washington "has correctly identified a general rule" that laches should not bar government enforcement activities, but because no discovery had occurred "there [was] ample reason to hedge at th[at] stage of the litigation." *Id.* at 10. Similarly, the Court held that Washington had not yet established a "sufficient basis" to strike the unclean hands defense "now as a matter of law." *Id.* at 12. Finally, the Court held that GEO would need to raise its failure-to-join defenses through a Rule 12(b)(7) motion. *Id.* at 11.

In the intervening year since the Court's ruling, the parties have engaged in substantial discovery, including on GEO's remaining affirmative defenses. GEO propounded—and Washington answered—23 Interrogatories, 66 Requests for Production, and 46 Requests for Admissions. *See* ECF Nos. 127-2, 127-4, 156; Baker Decl. ¶ 3, Ex. A, ¶ 5, Ex. C (Responses to Washington's First Interrogatories). GEO took a full-day Federal Rule of Civil Procedure 30(b)(6) deposition of Washington. ECF No. 102-1; Baker Decl. ¶ 4. And during the past year, the parties have produced a substantial amount of documents responsive to discovery requests and deposed witnesses. *See* ECF No. 85, ¶ 3 (D'Ambra Decl.) (noting that GEO produced over 30,000 pages of documents as of July 6, 2018); Baker Decl. ¶¶ 4, 6-10 (affirming that 30(b)(6) depositions have been taken by each party, GEO provided three individual GEO witnesses for depositions, and Washington has produced 21,971 pages of documents). This includes a complete production of all responsive and non-privileged documents GEO requested from the Governor's Office and Labor & Industries. Baker Decl. ¶ 10. The factual record related to laches and unclean hands is fully developed, and the legal status of other, allegedly required parties is clear. Washington now moves for summary judgment to narrow the issues for trial.

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Boardman v. Inslee*, 354 F. Supp. 3d 1232, 1239 (W.D. Wash. 2019) (citing Fed. R. Civ. P. 56(c)). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim or defense in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Koho v. Forest Labs., Inc.*, 17 F. Supp. 3d 1109, 1119-20 (W.D. Wash. 2014) (granting summary judgment against affirmative defenses). There is no genuine issue of fact for trial where the record—taken as a whole—could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Krechman v. County of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013). To defeat summary judgment, however, the nonmoving party must produce significant probative evidence and may not merely state that it will discredit the moving party's evidence at trial. *Matsushita*, 475 U.S. at 586 (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) (affirming that conclusory non-specific statements in affidavits are insufficient, and "missing facts" will not be "presumed").

# V.   ARGUMENT

**A.   Washington Is Entitled to Summary Judgment on GEO's Affirmative Defense of Laches**

GEO pleads that Washington "unreasonably delayed in requesting relief, and its purported lack of diligence and activity in stating or making a legal claim—to the prejudice of

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

GEO—means Washington's claims are barred by the affirmative defense of laches." ECF No. 34 ¶ 8.4. But GEO's defense is unsupported by the law or the evidence. The law does not permit a laches defense to government actions, like this one, that seek to protect the public interest because barring such claims would work a harm upon the citizenry on whose behalf the government acts. Even if the law permitted a laches defense here, the undisputed facts demonstrate that GEO was not materially prejudiced by Washington's timely action.

**1.     State Enforcement Actions in the Public Interest Are Not Subject to Laches**

It is well-settled that when the government brings suit on behalf of the public, as opposed to acting in its proprietary capacity or on behalf of individuals, the government is not subject to the defense of laches. *See Guar. Tr. Co. of N.Y. v. United States.*, 304 U.S. 126, 132 (1938) ("[T]hat the sovereign is exempt from the consequences of its laches . . . [is rooted] in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers" and "is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments.") (internal citations omitted). *See also Washington v. LG Elecs., Inc.*, 375 P.3d 636, 642 (Wash. 2016) (noting that laches is not imputable to sovereigns); *City of Mercer Island v. Steinmann*, 513 P.2d 80, 82-83 (Wash. Ct. App. 1973) (observing a governmental entity acting in "its governmental capacity," and not its "proprietary capacity," cannot be precluded from enforcing its laws even "if its officers have remained inactive in the face of such violations"). "[C]ourts adopted the rule, not on the theory that an 'impeccable' sovereign could not be guilty of laches, but because of the public policies served by the doctrine." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 294 (1983) (O'Connor, J., dissenting) ("The public interest in preserving public rights and property from injury and loss attributable to the negligence of public officers and agents, through whom the public must act, justified a special rule for the sovereign.")

Thus, "the laches defense is generally inapplicable against a State," particularly where, as here, Washington sues in the public interest to enforce its minimum wage laws and correct

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the resulting unjust enrichment. *Illinois v. Kentucky*, 500 U.S. 380, 388 (1991). *See also LG Elecs., Inc.*, 375 P.3d at 642 (affirming that claims brought by the attorney general acting "in the name of or for the benefit of the state" are not subject to time limits). The presumption that laches does not apply to sovereigns is founded on considerations of public policy that demand protections so that "while the sovereign [is] engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants." *Id.* "Washington file[d] this action against [GEO] to enforce Washington's minimum wage laws and to remedy the unjust enrichment that results" pursuant to Washington's "quasi-sovereign interest in protecting the health, safety, and well-being of its residents[.]" ECF No. 1-1 (Complaint) ¶¶ 1.1, 3.3. Accordingly, as a matter of law, the affirmative defense of laches is unavailable to GEO, and summary judgment should be granted in favor of Washington.

## 2.   The Undisputed Facts Foreclose a Laches Defense, Even if That Defense Were Available

Even if laches were available in this case—and it is not—the undisputed facts prevent GEO from meeting any element of the defense.[1]

To prove laches, GEO must show that (1) Washington knew—or could have reasonably discovered—the facts constituting a cause of action; (2) Washington unreasonably delayed filing the action; and (3) GEO was materially prejudiced by the delay. *Assocs. Hous. Fin. L.L.C. v. Stredwick*, 83 P.3d 1032, 1037 (Wash. Ct. App. 2004) (citing *Somsak v. Criton Techs./Heath Tecna, Inc.*, 52 P.3d 43, 48 (Wash. Ct. App. 2002)). "[T]he application of laches is on a case-by-case basis, and in each case the public interest should be balanced against the harm caused by the delay in bringing the suit." *Lopp v. Peninsula Sch. Dist. No. 401*, 585 P.2d 801, 804 (Wash. 1978) (noting that the public interest nature of the lawsuit is another factor to be considered by the court in determining whether the doctrine of laches should be applied). Further, "[i]t is only

---

[1] Further, if available, laches would apply only to Washington's unjust enrichment claim, not its claim for declaratory and injunctive relief under the Washington Minimum Wage Act, as laches is generally not a bar to prospective injunctive relief. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002).

appropriate to apply laches when a party, knowing his rights, takes no steps to enforce them[.]" *Brost v. L.A.N.D., Inc.*, 680 P.2d 453, 456 (Wash. Ct. App. 1984). *See also Crodle v. Dodge*, 168 P. 986, 990 (Wash. 1917).

### a.   Washington Did Not Know, and Could Not Reasonably Have Discovered, GEO's Minimum Wage Violations Before March 2014

In March 2014, local law professors and immigration lawyers advised the Governor's Office that detainees were engaged in a hunger strike protesting conditions and practices at the NWDC, including GEO's practice of paying detainee workers $1 per day for work performed, and inquired whether Labor & Industries could investigate for possible violations of Washington's wage and hour laws.[2] ECF No. 131 at 25-26. Due to a mistaken belief that the NWDC is "a federal facility," Labor & Industries took no enforcement action at that time. *Id.* at 22. That mistaken understanding—which was never shared with GEO—was corrected in September 2017, when the Washington State Office of the Attorney General filed suit to enforce state labor laws. For purposes of laches, the first arguable date that Washington could reasonably have discovered GEO's non-compliance with Washington's minimum wage laws was March 2014, three-and-one-half years before suit was filed.

### b.   Washington Did Not Unreasonably Delay in Filing Its Claims

Washington filed suit four months after opening its investigation into GEO's labor practices regarding the VWP. Baker Decl. ¶ 4, Ex. B (Washington 30(b)(6) Dep. Tr.) at 83:22-84:11; ECF No. 16-1 at 45; ECF No. 1-1 at 2-8. It is difficult to imagine a more expedient pursuit of a cause of action.

But even if the Court measures the timeliness of Washington's suit from March 2014, when the Governor's Office and Labor & Industries were first alerted that the NWDC detainee-workers were paid $1 per day, a delay of only three-and-one-half years is not unreasonable for

---

[2] There is no evidence that Washington had knowledge of GEO's practice of paying detainees $1 per day prior to that time.

9

1   purposes of laches. *See, e.g., Davidson v. Washington*, 802 P.2d 1374, 1381 (Wash. 1991)

2   (applying laches to plaintiffs' attempt to reclaim shoreland from the State after a sixty-seven

3   year delay); *Hunter v. Hunter*, 758 P.2d 1019, 1023 (Wash. Ct. App. 1988) (rejecting laches after

4   finding seven-year delay not unreasonable).

5        In determining the reasonableness of a delay, courts look to the cause of the delay.

6   *Stredwick*, 83 P.3d at 1037. *"*Delay has been held permissible for a variety of reasons, such as

7   when . . . it is 'used to evaluate and prepare a complicated claim[.]'" *Evergreen Safety Council*

8   *v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (internal quotation omitted). If Labor

9   & Industries' employees' reaction to the 2014 inquiries reveals anything, it is that determining

10  the applicability of Washington's minimum wage laws inside the NWDC required a complex

11  assessment of the factual and legal contours of GEO's relationship with ICE. Undoubtedly, the

12  Court has also gained an appreciation of the complexity of the issues, now having evaluated

13  GEO's repeated attempt to conflate itself with the federal government. *See generally* ECF Nos.

14  29, 32, 44, 58, 165.

15       Finally, "[a]bsent unusual circumstances, the doctrine of laches should not be invoked to

16  bar an action short of the applicable statute of limitation." *Glob. Neighborhood v. Respect Wash.*,

17  434 P.3d 1024, 1040 (Wash. Ct. App. 2019). *See also Harmony at Madrona Park Owners Ass'n*

18  *v. Madison Harmony Dev., Inc.*, 177 P.3d 755, 763-64 (Wash. Ct. App. 2008); *Carrillo v. City*

19  *of Ocean Shores*, 94 P.3d 961, 970 (Wash. Ct. App. 2004); *Brost*, 680 P.2d at 456. The Court

20  has already ruled that Washington's claim was timely filed. ECF No. 44 at 9 (holding that

21  Washington's claims are not subject to a statute of limitations). Barring a claim under laches

22  after, at most, a three-and-a-half year delay would be legally incongruent with the Court's prior

23  rulings that this same action is timely. And there are no other "highly unusual circumstances" to

24  justify application of the extraordinary remedy of laches. *Carrillo*, 94 P.3d at 970. *See also*

25  *Hunter*, 758 P.2d at 1023.

26

WASHINGTON'S MOTION FOR PARTIAL      10      ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT ON GEO'S               Civil Rights Division
AFFIRMATIVE DEFENSES                    800 Fifth Avenue, Suite 2000
                                      Seattle, WA  98104-3188
                                      (206) 464-7744

c.     **GEO Was Not Prejudiced by any Delay in Enforcing the Law**

"The defense of laches protects defendants who are injured by a plaintiff's delay in bringing an action." *Stredwick*, 83 P.3d at 1037 (citing *Washington ex rel. Peninsula Neighborhood Ass'n v. Wash. State Dep't of Transp.*, 12 P.3d 134, 141 (Wash. 2000)). This "is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; . . . and other circumstances covering prejudice to an adverse party . . . [where] such delay in enforcing one's rights as works disadvantage to another." *Edison Oyster Co. v. Pioneer Oyster Co.*, 157 P.2d 302, 308 (Wash. 1945). *See also In re Estate of Tuott*, 606 P.2d 706, 707 (Wash. Ct. App. 1980). GEO cannot establish that it was prejudiced by any delay in Washington enforcing its minimum wage laws.

First, the doctrine of laches recognizes evidentiary prejudice arising from the loss of defense evidence due to a plaintiff's delay. *See Davidson*, 802 P.2d at 1382 (citing *Hinchman v. Kelley*, 54 F. 63 (9th Cir. 1893) and *Anderson v. Anderson*, 585 P.2d 938 (Haw. 1978)); *Neighbors & Friends of Viretta Park v. Miller*, 940 P.2d 286, 295 (Wash. Ct. App. 1997).

Here, GEO has not claimed, and there is no evidence that, key witnesses are unavailable now who would have been available in the past. To the contrary, GEO has proffered witnesses with knowledge for deposition, several of whose employment with GEO spans most or all of the time period during which GEO has operated the NWDC, such as:

- **Alisha Singleton**, Classification Officer, who has worked for GEO at the NWDC since 2005, Baker Decl. ¶ 7, Ex. E (Singleton Dep. Tr.) at 11;

- **Bertha Henderson**, Food Service Manager, who has worked at the NWDC since 2007, Baker Decl. ¶ 8, Ex. F (Henderson Dep. Tr.) at 18-19;

- **William McHatton**, who worked for GEO at the NWDC from February 9, 2004 through August 28, 2018 as the Associate Warden and Compliance Officer, Baker Decl. ¶ 9, Ex. G (McHatton Dep. Tr.) at 11; and

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

- **Ryan Kimble,** who has worked at the NWDC since 2013 and has been employed by GEO since 2008, and who served as a 30(b)(6) witness for the company, Baker Decl. ¶ 6, Ex. D (GEO 30(b)(6) Dep. Tr.) at 18-20.

Nor has GEO claimed that key documents are missing or lost as a result of the timing of Washington's suit. Instead, GEO has provided Washington with extensive document productions relating to GEO's labor practices regarding detainee workers at the NWDC, including documents dating back to 2005. *See, e.g.*, ECF No. 85 at 2 (D'Ambra Decl.).

Second, as a matter of law, GEO cannot show prejudice if the only source of such prejudice is GEO's development of an expectation that it can continue to violate the law indefinitely. *See Hunter*, 758 P.2d at 1023 (holding a delay of seven years did not bar an action to recover child support because defendant could not "be said to be 'damaged' simply by having to do now what he was legally obligated to do years ago"). Rather than give rise to any prejudice, the evidence shows only that GEO *benefited* from any delay by continuing to profit from utilizing detainee labor to operate its for-profit detention center. These circumstances do not meet the prejudice element of laches. *See U.S. Bank Nat'l Ass'n v. Plumb*, No. 34615-3-III, 2017 WL 6388982, at *3 (Wash. Ct. App. Dec. 14, 2017), *review denied*, 414 P.3d 577 (2018) (rejecting laches argument where plaintiffs' purported delay in bringing their suit benefited the defendants by allowing them to live in their home without making loan payments).

Accordingly, summary judgment should be granted in favor of Washington on GEO's affirmative defense of laches.

**B.     Washington Is Entitled to Summary Judgment on GEO's Affirmative Defense of Unclean Hands**

GEO asserts that Washington "has unclean hands and is acting in bad faith." ECF No. 34, ¶ 8.9. The undisputed evidence shows that Washington did not engage in any transaction with GEO involving detainee labor at the NWDC, and committed no misconduct in bringing this straightforward law enforcement action.

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

### 1.   Unclean Hands Must Arise Out of a Previous Transaction Between the Same Two Parties

2

3   The unclean hands doctrine proscribes equitable relief when—but only when—an

4   individual's misconduct has immediate and necessary relation to the equity that he seeks. *J.L.*

5   *Cooper & Co. v. Anchor Sec. Co.*, 113 P.2d 845, 857 (Wash. 1941). *See also Henderson v. United*

6   *States*, 135 S. Ct. 1780, 1783 n.1 (2015) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*,

7   290 U.S. 240, 245 (1933)). "[T]he rule that [a] plaintiff seeking relief in equity must come into

8   court with clean hands has reference only to relation between parties" and must "aris[e] out of

9   transaction" that is at issue in the litigation. *J.L. Cooper & Co.*, 113 P.2d at 858. Thus, courts of

10   equity will "refuse relief, even in cases of equitable right, [only] if the applicant has been guilty

11   of fraud or misconduct in or about the matter in respect to which he seeks relief." *Id.* Indeed,

12   "[t]he authorities are in accord that the 'clean hands' principle does not repel a sinner from courts

13   of equity nor does it disqualify any claimant . . . who has not dealt unjustly *in the very transaction*

14   *concerning which he complains.*" *McKelvie v. Hackney*, 360 P.2d 746, 752 (Wash. 1961).

15   GEO cannot establish an unclean hands defense because Washington was not a party to,

16   or transactant in, its contractual dealings with ICE or decision to pay detainees $1 per day.

17   Washington sues purely as government enforcer of the state's minimum wage laws and to

18   reverse GEO's resulting unjust enrichment. While a state engaged in contractual or other

19   dealings with a party, in its proprietary capacity, may conceivably subject itself to an unclean

20   hands defense, that cannot be the case here, where Washington is an outsider to all practices and

21   transactions regarding the NWDC. Neither do GEO's extraneous complaints against

22   Washington—that (1) "the State's lawsuit is motivated by improper political purposes rather

23   than as an honest enforcement action," or (2) "the Washington Department of Corrections

24   ('DOC') runs work programs that pay below the state minimum wage"—have anything to do

25   with, let alone prove, an unclean hands defense. ECF No. 40 at 23-24.

26

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2
**2.    Washington Had No Involvement in GEO's Employment Transaction With Detainee Workers at the NWDC, Nor Can It Be Accused of Misconduct Related to GEO's Payment Practices**

3       The undisputed evidence confirms that Washington was not involved in the transaction

4  between GEO and its payment practices relating to detainee workers and engaged in no

5  misconduct relating to GEO's practice of underpaying detainee workers and GEO's retention of

6  profits from that practice. In particular, GEO has admitted that:

7
8
- GEO is the sole owner and operator of the NWDC, *see* ECF No. 156 at 8-9 (RFAs 1-2);

9
10
- Washington does not own or participate in the operation of the NWDC, *see* ECF No. 156 at 9 (RFA 5);

11
12
13
- Washington never encouraged GEO's VWP payment practices—or its violation of Washington's minimum wage laws—by informing GEO that Washington lacked authority to enforce its minimum wage laws to protect detainee workers participating in the VWP, *see* Baker Decl. ¶ 3, Ex. A (RFA 74);

14
15
- Washington never encouraged GEO's VWP payment practices—or its violation of Washington's minimum wage laws—by informing GEO that Washington's minimum wage laws do not apply to detainee workers, *see id.* (RFA 75);

16
17
- GEO did not rely upon any assessment from Washington regarding the applicability of Washington minimum wage laws to GEO's VWP, *see id.* (RFA 76); and

18
19
20
- Washington never encouraged GEO's VWP payment practices—or its violation of Washington's minimum wage laws—by informing GEO that Washington had no jurisdiction to enforce its minimum wage laws on behalf of detainee workers, *see id.* (RFA 77).

21       Where Washington never communicated with GEO at all about the application of state

22  law to GEO's labor practices, Washington cannot have committed "fraud or misconduct" with

23  respect to those practices. *See J.L. Cooper & Co.*, 113 P.2d at 858. Simply put, there are no

24  factual issues left to determine at trial before judgment should be granted for Washington on

25  GEO's unclean hands defense.

26

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 3. Washington's Unrelated Payment Practices Regarding Incarcerated Workers Have No Bearing on GEO's Unclean Hands Defense

Washington's correctional and detention facilities are operated by the Washington State Department of Corrections (DOC) and the Washington State Department of Social and Health Services (DSHS). In some of these facilities Washington operates work programs wherein participants receive less than Washington's minimum wage for their participation in work programs. Such programs are exempted from Washington's minimum wage laws. *See* Wash. Rev. Code 49.46.010(3)(k) (exempting "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution" from Washington's minimum wage laws). *See also* ECF No. 165.

GEO's assertion that DOC and DSHS run "work programs that pay below the state minimum wage," ECF No. 40 at 23-24, does nothing to support its unclean hands defense. The law is clear that "the 'clean hands' principle does not . . . disqualify any claimant from obtaining relief there who has not dealt unjustly *in the very transaction concerning which he complains*." *McKelvie*, 360 P.2d at 752 (citing *J.L. Cooper & Co.*, 113 P.2d at 858). Once a transactional relationship has been established, the unclean hands doctrine bars a party from recovering in equity when "the conduct of such suitors is unconscionable, i.e. morally reprehensible as to known facts." *Sun Life Assurance Co. of Can. v. Lee*, 200 Wash. App. 1023, 2017 WL 3485058, at *8 (Wash. Ct. App. 2017) (citing *J. L. Cooper & Co.*, 113 P.2d at 848).

Under this well-established law, Washington's practices at state-run institutions cannot support an unclean hands defense against a claim arising from GEO's labor practices regarding detainee workers. GEO puts forth no evidence that its chosen labor practices stem from any transaction with the DOC or DSHS. *McKelvie*, 360 P.2d at 752. Indeed, even if this Court took exception with Washington's payment practices in its state-run institutions, such a concern could not sustain GEO's affirmative defense of unclean hands. This is because the defense of unclean hands requires more than just a general showing that a plaintiff engaged in misconduct tangential

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

to the claim at issue. *See J. L. Cooper & Co.*, 113 P.2d at 858 (rejecting defense of "unclean hands" where purported bad action arose out of an unrelated transaction). GEO must show a factual nexus between the state institutional programs and the NWDC, and it fails to do so on the undisputed record.

### 4. Washington's Discretionary Decision to Bring This Enforcement Action Does Not Make it "Political" or Give Rise to Unclean Hands

GEO has previously claimed that "the State's lawsuit is motivated by improper political purposes rather than as an honest enforcement action[.]" ECF No. 40 at 23-24. Even if this erroneous assertion were correct, it would not support GEO's unclean hands defense. The Washington State Attorney General has authority to enforce state laws and "discretionary authority to act in any court, state or federal, trial or appellate, 'on a matter of public concern.'" *City of Seattle v. McKenna*, 259 P.3d 1087, 1092 (Wash. 2011). Choosing to exercise this authority to protect Washington workers is a decision at the heart of prosecutorial discretion and core to the work of the Office of the Attorney General.

There is no evidence Washington had improper political motives in bringing this case. Instead, the undisputed evidence is that civil prosecutors in the Washington State Attorney General's Office opened the matter, investigated it, and recommended litigation. Baker Decl. ¶ 4, Ex. B (Washington 30(b)(6) Dep. Tr.) at 51:7-52:2; 81:21-25 ("Attorney General Ferguson didn't direct this investigation. The attorneys in the civil rights unit recommended the investigation based on the results of these outreach meetings we've talked about before."); *see also id.* at 98:21-99:3 (testimony by Civil Rights Unit Chief that "Attorney General Ferguson did not approve the opening of the investigation. I do that. So the attorneys recommend an investigation, and they request permission to open the matter through me, with me, and I approved the opening of this investigation. Attorney General Ferguson approved the filing of this lawsuit."). And even if GEO's "improper political motivation" argument were anything more than unsubstantiated rhetoric, it would not establish misconduct related to the transaction

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  at issue in this case—*i.e.* GEO's payment practices at the NWDC—without which GEO cannot

2  establish unclean hands. *See J. L. Cooper & Co.*, 113 P.2d at 858 (affirming that the unclean

3  hands doctrine does not "disqualify any claimant . . . who has not dealt unjustly in the very

4  transaction concerning which he complains").

5      Accordingly, summary judgment should be granted in favor of Washington on GEO's

6  affirmative defense of unclean hands.

7  **C.  Washington Is Entitled to Summary Judgment on GEO's Affirmative Defenses of Failure to Join Additional Governmental Parties**

8  GEO asserts as two of its affirmative defenses that:

9

10  - Washington "has failed to join defendants required by Federal Rule of Civil Procedure 19, namely the Department of Homeland Security and ICE[,]" ECF 34, ¶ 8.6, and

11

12  - Washington "failed to join a plaintiff required by Federal Rule of Civil Procedure 19, namely the Washington Department of Labor and Industries[,]" ECF 34, ¶ 8.5.

13  Washington is entitled to judgment on both defenses. Taking the Department of Homeland

14  Security and ICE first, the Court has already ruled that neither entity is a necessary or

15  indispensable party under Federal Rule of Civil Procedure 19. ECF 58 at 1 (collectively referring

16  to both agencies as "ICE"). The Court found that Rule 19's joinder requirements were not met,

17  *id.* at 10, including finding that "ICE is not a necessary or an indispensable party" because (1)

18  complete relief for Washington's claims can be achieved through the existing parties; (2) "ICE

19  does not have a legally protected interest in this case[;]" and (3) the public rights exception to

20  traditional joinder rules demands that Washington's claims against GEO not be dismissed

21  because the litigation transcends the private interests of the litigants, seeks to vindicate a public

22  right, and does not destroy the legal entitlements of ICE. *Id.* at 7, 11. The undisputed facts in the

23  record only confirm that GEO is the only necessary defendant, as the owner and operator of the

24  NWDC that chooses to pay detainee-workers $1 per day, despite Washington law, its contractual

25  obligation to comply with that law, and its own admission that it could pay more if it wanted to.

26  *See* ECF No. 156 at 8 (RFAs 1-22) (admitting GEO owns and operates the NWDC); ECF No.

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

19 at 48 (GEO-ICE Contract); ECF No. 91, ¶ 14 (Johnson Decl.) (confirming, on behalf of ICE's Custody Management Division, GEO's contractual requirement to comply with state and local laws); Baker Decl. ¶ 3, Ex. A (RFA 67) (admitting that GEO may elect to pay more than $1 per day). Thus, no genuine issue of material fact remains, and the Court should grant summary judgment in favor of Washington on GEO's affirmative defense of failure to join the Department of Homeland Security and ICE.

The same result is required for GEO's defense of failure to join Labor & Industries, for two reasons. First, GEO's deadline to file any motion to join that agency as a party expired on March 20, 2018, over a year ago. ECF No. 39 at 1. The parties have sought modification of the trial and pretrial dates on more than one occasion, but GEO did not seek modification of the deadline to join additional parties. *See, e.g.*, ECF No. 68 (Motion for Relief From Deadline); ECF No. 111 (GEO's Motion for Relief From Deadlines). Thus, GEO has foregone its opportunity to seek joinder of Labor & Industries.

Second, and even if GEO had not waived this defense, Washington has authority to pursue this action without any requirement that Labor & Industries also participate as a plaintiff. As the Court has already ruled, Washington, through its Attorney General, has standing to challenge GEO's labor practices regarding detainee workers at the NWDC in its capacity as *parens patriae*. *See* ECF 29 at 12-15 ("Plaintiff has authority to bring this case as *parens patriae*."). That ruling is dispositive of any claim that Labor & Industries is a necessary or indispensable plaintiff here. And finally, as a practical matter, GEO would gain nothing even if Labor & Industries was added as a plaintiff. Pursuant to this Court's order, Washington has already produced the complete set of discoverable documents and information that GEO requested from Labor & Industries. ECF 133 at 4-6. *See also* Baker Decl. ¶ 10.

Accordingly, based on the case scheduling order, the Court's prior rulings, and the undisputed facts, the Court should grant summary judgment in favor of Washington on GEO's affirmative defenses of failure to join additional governmental parties.

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

## VI.    CONCLUSION

2      For the foregoing reasons this Court should grant Washington's motion for partial

3  summary judgment on GEO's affirmative defenses of laches, unclean hands, failure to join the

4  Department of Homeland Security and ICE, and failure to join the Washington State Department

5  of Labor & Industries.

6

7  Dated this 11th day of April, 2019.

8

9                                    Respectfully submitted,

10                                   BOB FERGUSON
                                     Attorney General of Washington
11

12                                   s/ La Rond Baker
                                     LA ROND BAKER, WSBA No. 43610
13                                   MARSHA CHIEN, WSBA No. 47020
                                     ANDREA BRENNEKE, WSBA No. 22027
14                                   LANE POLOZOLA, WSBA No. 50138
                                     Assistant Attorneys General
15                                   Office of the Attorney General
                                     800 Fifth Avenue, Suite 2000
16                                   Seattle, WA 98104
                                     (206) 464-7744
17                                   larondb@atg.wa.gov
                                     marshac@atg.wa.gov
18                                   andreab3@atg.wa.gov
                                     lane.polozola@atg.wa.gov
19

20

21

22

23

24

25

26

WASHINGTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON GEO'S
AFFIRMATIVE DEFENSES

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that the foregoing document was electronically filed with the United States

3

District Court using the CM/ECF system. I certify that all participants in the case are registered

4

CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

5

April 11th, 2019

6

s/*Caitilin Hall*
CAITILIN HALL
Legal Assistant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WASHINGTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
GEO'S AFFIRMATIVE DEFENSES

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492