1

2                                                          The Honorable Robert J. Bryan

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
8                                 AT TACOMA

9

STATE OF WASHINGTON,                    | Case No. 3:17-cv-05806-RJB
10
               Plaintiffs,              | **DEFENDANT'S OPPOSITION TO**
11                                      | **WASHINGTON'S MOTION FOR**
         v.                             | **PARTIAL SUMMARY JUDGMENT ON**
12                                      | **THE GEO GROUP, INC.'S**
THE GEO GROUP, INC.,                    | **AFFIRMATIVE DEFENSES**
13
               Defendant.               | **ORAL ARGUMENT REQUESTED**
14

15                                  **INTRODUCTION**

16          In addition to being premature—with fact discovery not set to close for nearly two months—

17   the State of Washington's ("State") motion for partial summary judgment should be denied because

18   genuine issues of material fact exist as to each affirmative defense the State has challenged.

19          The fact discovery deadline is June 21, 2019.  (Order, Dkt. # 171.)  More than two months

20   before that deadline—and while The GEO Group, Inc. ("GEO") is actively seeking more discovery

21   from the State—the State filed its motion for summary judgment as to GEO's affirmative defenses of

22   laches, unclean hands, and failure to join necessary parties.  The State's motion should be denied as

23   premature because discovery is ongoing, GEO is presently analyzing the adequacy of the State's

24   discovery, GEO plans to depose the State's agencies that were compelled to produce documents in

25   this case, and the State continues to produce relevant evidence *since* filing its motion.  And

26   specifically, in rejecting the State's prior motion to strike these affirmative defenses, the Court held

PAGE 1 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1  that GEO is entitled to "the chance to develop its evidence about why the general rule precluding

2  equitable relief should not apply," further demonstrating why GEO should be given a full opportunity

3  to gather facts essential to its affirmative defenses before the close of discovery.  (*See* Order, Dkt. #

4  44 at p. 10.)

5        Further, based on the record evidence to date, genuine disputes of material fact exist for each

6  of GEO's challenged affirmative defenses. Even the evidence submitted by the State shows that it

7  was aware of the $1 per day policy in the Voluntary Work Program ("VWP") at the Northwest

8  Detention Center ("NWDC") by at least March 2014, but delayed bringing suit until September 2017.

9  Record evidence also shows that the State knew about the VWP as early as 2009, but did nothing for

10 several years.  Those facts are material to GEO's laches defense and GEO should be allowed to seek

11 further discovery to prove that defense.  Similarly, the State pays inmates approximately 35 cents per

12 hour—similar to the $1 payment in the VWP—so that conduct and the State's reasoning for those

13 payments is relevant to GEO's unclean hands defense, and GEO should be allowed to further

14 investigate those facts.  And for GEO's defenses of failure to join certain governmental entities, the

15 record shows that GEO has been contractually bound by the U.S. Immigration and Customs

16 Enforcement ("ICE") to pay the $1 per day to detainees at NWDC, which shows why ICE and the

17 Department of Homeland Security ("DHS") are necessary to this litigation.  Accordingly, even if this

18 Court considers the merits of the State's premature motion, the Court should deny the motion because

19 the State is not entitled to judgment as a matter of law.

## BACKGROUND

**I.     This Court compelled the State to provide discovery from additional agencies that is relevant to GEO's affirmative defenses.**

23 GEO diligently sought discovery from the State regarding GEO's affirmative defenses, and filed a

24 motion to compel when the State limited its discovery obligations to the Attorney General's Office

25 only. (*See* Mot. to Compel, Dkt. # 131, at pp. 1-6.)  GEO explained that the State's refusal to provide

26 documents and information from other state agencies, including the Department of Labor &

PAGE 2 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1   Industries ("L&I") (the agency that investigated the VWP), the Department of Corrections ("DOC")
2   (the agency that manages the State's own inmate work programs), the Department of Social and
3   Health Services ("DSHS") (the agency that manages the State's rehabilitation and resident programs),
4   and the Governor's Office, was improper because those agencies held information relevant to GEO's
5   affirmative defenses. (*Id.* at p. 6.) The Court agreed, and ordered the State to provide responsive
6   information from those agencies. (Order, Dkt. # 133, at p. 6.)

7   **II.      GEO's discovery on its affirmative defenses is not complete.**

8          On March 29, 2019, GEO and the State held a telephone conference to discuss a number of
9   open discovery issues. (Armstrong Decl. ¶ 2, Ex. 1.) During that call, the State represented that it
10  had collected all responsive discovery from the agencies identified in GEO's motion to compel, and
11  expected to complete its production by the end of April. (*Id.*, Ex. 1.) GEO also advised the State that
12  it intended to reopen the Rule 30(b)(6) deposition of the State in light of the Court's ruling to include
13  the additional agencies. (*Id.*) The State indicated that it was amenable to depositions of the other
14  agencies, but would oppose GEO reopening the deposition of the Attorney General's Office. (*Id.*)
15  GEO still intends to take those depositions. (*Id.* ¶ 2.)

16  **III.     The State filed its motion for summary judgment before the close of discovery.**

17         The State filed its present motion for summary judgment on April 11, 2019. (Dkt. # 183). On
18  April 12, 2019, the State produced 91 documents from the additional agencies. (Armstrong Decl. 3.)
19  On April 18, 2019, the State produced 154 documents from those agencies. (*Id.*) To date, the State
20  has not confirmed that its production is complete. (*Id.*)

21                                        **LEGAL STANDARD**

22         Summary judgment is appropriate only when "there is no genuine dispute as to any material
23  fact." Fed. R. Civ. P. 56(a). "The party moving for summary judgment has the initial burden to show
24  the absence of a genuine issue concerning any material fact." *Weyerhaeuser Corp. v. Fireman's*
25  *Fund Ins. Corp.*, No. C06-1189MJP, 2007 WL 1417295, at *1 (W.D. Wash. May 11, 2007). "On a
26  motion for summary judgment, the court is constrained to draw all inferences from the admissible

PAGE 3 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone: 503.243.2300

1   evidence in the light most favorable to the non-moving party." *Smith v. Ardew Wood Products, Ltd.*,

2   No. C07-5641 FDB, 2009 WL 36882, at *1 (W.D. Wash. Jan. 5, 2009).  To defeat summary

3   judgment, the nonmoving party need only produce evidence of a genuine dispute of material fact that

4   could satisfy its burden at trial.  *Sonner v. Schwabe N. Am., Inc*., 911 F.3d 989, 992 (9th Cir. 2018).

5          In addition, a court should deny a motion for summary judgment as premature if the

6   nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts

7   essential to justify its opposition[.]"  Fed. R. Civ. P. 56(d); *Madison Dev. Grp. LLC v. Singelyn*, No.

8   C17-1585-JCC, 2018 WL 1994141, at *2 (W.D. Wash. Apr. 27, 2018) (denying motion as premature

9   when the plaintiff's counsel submitted a declaration noting that the allotted time for discovery has not

10  passed and additional discovery is necessary for the claims).  When the non-moving party submits

11  such a declaration, a court should deny the motion or grant additional time, so the parties can

12  complete discovery.  *See TMJ Inc., v. Nippon Tr. Bank*, 16 F. App'x 795, 796 (9th Cir. 2001)

13  (holding court abused its discretion by refusing to allow the plaintiff additional time to complete

14  discovery when several months remained before the discovery deadline).

15                                            **ARGUMENT**

16  **I.      The State's motion is premature.**

17         This Court should deny the State's motion at the outset because it is premature, and discovery

18  remains ongoing.  *See Geurin v. Winston Industries, Inc*., 316 F.3d 879, 884 (9th Cir. 2002)

19  (reversing partial summary judgment on defendant's affirmative defense where discovery was still

20  open); *Madison Dev. Grp. LLC*, 2018 WL 1994141, at *2 (denyingmotion as premature); *Smith v.

21  Ardew Wood Products, Ltd*., No. C07-5641 FDB, 2008 WL 2275541, at *2–3 (W.D. Wash. June 3,

22  2008) (denying motion for partial summary judgment as premature, and noting "a defendant is

23  entitled to shepherd evidence and attempt to prove" its affirmative defenses).

24         Here, discovery remains open until June 21, 2019, and GEO intends to conduct several

25  depositions that are relevant to its affirmative defenses.  (Armstrong Decl. ¶ 2.)  GEO anticipates that

26  these depositions will establish the nature and extent of the State's knowledge of the VWP, the

PAGE 4 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    reasonableness of the State's delay, and the State's own use of work programs that do not comply

2    with minimum wage.  (*Id.*)  In addition, the State continues to produce documents from other

3    agencies that may be relevant to GEO's defenses, including the 4,691 pages produced since it filed its

4    motion.  (*Id.* ¶ 3.)  GEO is also analyzing the State's discovery responses and production to determine

5    what additional material it needs to support its defenses.  (*Id.* ¶ 2.)  Accordingly, pursuant to Rule

6    56(d), GEO should be given the opportunity to complete the discovery necessary to support its

7    defenses.

8    **II.      The State is not entitled to summary judgment on GEO's equitable defenses of laches
9             and unclean hands.**

10       Even if this Court considers the merits of the State's motion, the State is not entitled to

11   summary judgment on GEO's laches and unclean hands defenses because the Court already rejected

12   the State's argument that those defenses cannot apply to the State, and because the record shows a

13   genuine factual dispute on each of those defenses.  Accordingly, the Court should deny the State's

14   motion for partial summary judgment on those defenses.

15       **A.      Summary judgment is inappropriate for GEO's laches defense.**

16           **1.      Laches applies to the State's claims.**

17       GEO should be allowed to proceed with its laches defense because record evidence shows

18   that the State unreasonably delayed bringing this lawsuit to GEO's detriment.  Laches, which stems

19   from the concept of estoppel, requires a defendant to establish: "(1) knowledge by plaintiff of facts

20   constituting a cause of action or a reasonable opportunity to discover such facts; (2) unreasonable

21   delay by plaintiff in commencing an action; and (3) damage to defendant resulting from the delay in

22   bringing the action."  *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn.

23   App. 56, 76–78 (2012).

24       Contrary to the State's argument, a laches defense is available to GEO because the

25   Washington Supreme Court rejected the State's argument that state enforcement actions in the public

26   interested are not subject to laches.  (*See* Pl.'s Motion for Partial Summ. J., Dkt. # 183 ("Motion"), at

PAGE 5 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone: 503.243.2300

1    p. 12).  In *Lopp v. Peninsula School District Number 401*, 90 Wn.2d 754, 759 (1978), the

2    Washington Supreme Court noted that "laches can sometimes be a bar even in a public interest

3    lawsuit."  The court explained that whether an action involves a "public concern" or "public right" is

4    merely one factor to consider in assessing whether laches should apply.  *Id.* at 758-59.  "Other

5    factors include the circumstances, if any, justifying the delay, the relief demanded, and the question

6    of whether the rights of defendant or other persons, such as the public, will be prejudiced by the

7    maintenance of the suit."  *Id.* at 759.  Thus, as this Court already held, the State's unjust enrichment

8    claim is not categorically immune from laches.[1]  (Order, Dkt. # 44, at p. 10) (noting laches may be

9    less likely when applied to municipality, but can apply when "clearly necessary to prevent obvious

10   injustice").

11              **2.     There is a genuine issue of fact regarding whether the State's three-year
                         delay in bringing this suit was reasonable.**

12

13          Even under the State's view of the facts, a genuine factual dispute exists about whether the

14   State's over three year delay—which exceeds the applicable statute of limitations for unjust

15   enrichment—was unreasonable.  Reasonableness is a quintessential question of fact dependent upon

16   all the circumstances that is ill-suited to summary judgment.  *See Langley v. Geico Gen. Ins. Co.*, No.

17   1:14-CV-3069-SMJ, 2015 WL 3402895, at *2 (E.D. Wash. May 26, 2015) ("Reasonableness is a

18   question of fact . . . and "should be determined as a matter of law only in the 'clearest cases.'");

19   *Dougherty v. Amica Mut. Ins. Co.*, No. C13-113-MJP, 2013 WL 12107632, at *2 (W.D. Wash. Sept.

20   25, 2013) ("'Reasonableness' is a question of fact dependent on the circumstances.").

21          The State concedes that it knew of the VWP and its $1 per day provisions by at least 2014 and

22   does not dispute that it filed the lawsuit "three-and-one-half" years later.  (Motion at pp. 8-9, 14.).

23   However, a genuine dispute exists as to whether the State knew of the VWP much earlier.  In 2009,

24
     _____
25   [1] Although the State cites *State v. LG Elecs., Inc.*, 186 Wn.2d 1, 12 (2016), to show that laches cannot
     apply to the State, that case actually addresses the statute of limitations and only mentions laches in
26   its passing description of the "age-old" *nullum tempus* doctrine.

PAGE 6 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

1  GEO's counsel, Joan Mell, provided a member of the State legislature with a Detainee Handbook

2  about the NWDC.  (Armstrong Decl., Ex. 2.)  That handbook outlines the terms of the VWP,

3  including the $1 per day component.  (*Id.* at p. 13.)  In 2014, the State (through L&I and other

4  agencies) began actively investigating GEO's payment of $1 per day to detainees.  (Motion at pp. 8-

5  9.)  The record shows that private citizens asked the State to investigate potential claims against GEO

6  arising from the VWP.  (*See* Mell Decl., Dkt. # 131 at pp. 5, 9.)  And in March 2014, a law professor

7  notified the State of the potential claims and that the State likely had jurisdiction over GEO.  (*Id.* at

8  pp. 14, 33-34.)  At that time, the State determined that it did not have jurisdiction because the VWP

9  involves federal inmates, and assumed the United States Department of Labor would also decline to

10  exercise jurisdiction over GEO.  (*Id.* at p. 22.)  GEO was also aware of the State's investigation in

11  2014, as a member of Washington's House of Representatives contacted GEO's counsel about L&I's

12  investigation into the $1 per day aspect of the VWP.  (Armstrong Decl., Ex. 3.)

13      The State appears to argue that its delay was reasonable as a matter of law because it was

14  genuinely mistaken about whether it could exercise jurisdiction over GEO.  (Motion at pp. 8-9.)  As

15  such, the State admits that its delay is due to its own error.  But even the basis for the State's delay is

16  likely disputed because GEO has not been given the opportunity to take discovery on that assertion.

17  What is more, the record evidence shows that a law professor provided the State with a

18  comprehensive analysis in 2014 that is consistent with its arguments now; so, at a minimum, a

19  question of fact exists regarding whether the State's delay was reasonable.  (*See* Mell Decl., Dkt. #

20  131, at pp. 14, 33-34.)

21      In addition to the cause of the delay, a factual dispute exists about whether the length of the

22  delay was reasonable.  In discussing the reasonableness of its delay, the State argues that laches

23  should not apply before expiration of the applicable limitations period.  (Motion at p. 15).  Here, the

24  relevant statute of limitations is three years.  *Davenport v. Washington Educ. Ass'n*, 147 Wn. App.

25  704, 737–38 (2008).  The State admits that the shortest period of time it delayed suit is "three-and-

26  one-half years," so even under its own calculation of the delay, the State is outside the presumption

PAGE 7 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

1    period for reasonable delay.  (*See* Motion at p. 14.)  Although the State argues that the Court found

2    this action was "timely filed" as a matter of law, that is incorrect.  (*See id.* at p. 15.)  Instead, the

3    Court held that the statute of limitations did not apply because the State is pursuing a "quasi-

4    sovereign" interest, but laches could be the appropriate vehicle for challenging the State's claims.

5    (*See* Order, Dkt. # 44, at pp. 9-10.)

6                    **3.    Factual issues exist about the prejudice to GEO due to the State's delay.**

7                    Summary judgment is also inappropriate because a factual dispute exists about whether GEO

8    has been prejudiced by the State's unreasonable delay in asserting its claims.  The State's motion

9    does not fully address the type of prejudice that laches aims to prevent.  "Courts have recognized two

10   chief forms of prejudice in the laches context—evidentiary and expectations-based."  *Danjaq LLC v.*

11   *Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001).  The former contemplates the loss of evidence or

12   degradation of witnesses' memories.  The latter focuses upon whether the defendant "took actions or

13   suffered consequences that it would not have, had the plaintiff brought suit promptly."  *Id.*; *see*

14   *Hunter v. Hunter*, 52 Wn. App. 265, 271 (1988) (confirming that prejudice exists where a party

15   changes position such that it would be "inequitable to allow [the other party] to enforce [its] claim").[2]

16   These positional consequences can encompass "economic prejudice" resulting from the delay.  *See*

17   *Danjaq LLC*, 263 F.3d at 956; *Evergreen Safety Council v. RSA Network, Inc.*, No. C09-1643-RSM,

18   2011 WL 2462303, at *3 (W.D. Wash. June 17, 2011); *Lopp*, 90 Wn.2d at 759–60 ("Damage to

19   defendant can arise either from acquiescence in the act about which plaintiff complains or from a

20   change of conditions.").

21                    As to evidentiary prejudice, particularly the availability of witnesses, "the inquiry is not

22   whether *some* witnesses might be available—it is whether the absence of other witnesses . . . will

23   [cause] prejudice[.]"  *Danjaq LLC*, 263 F.3d at 956.  In assessing evidentiary prejudice, the State

24   ───────────────────────

25   [2] The State cites *Hunter* for the proposition that GEO cannot establish prejudice merely by "having to do now what [it] was legally obligated to do" already.  (Motion at p. 17.)  In fact, *Hunter* confirms that prejudice exists where a party changes position such that it would be "inequitable to allow [the other party] to enforce [its] claim."  52 Wn. App. at 271.

26

PAGE 8 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

1    focuses exclusively on *GEO's* potential witnesses.  (Motion at pp. 16-17.)  The State says *nothing*

2    about the impact of this delay on the availability of the *State's* relevant witnesses.  The State is still

3    producing documents from its relevant agencies, so GEO has not had time to evaluate which

4    witnesses have enough historical information about the State's delays.  GEO also has not had the

5    opportunity to question State witnesses regarding the quality of their memories of the underlying

6    events, specifically regarding the circumstances of the State learning of the VWP at NWDC.

7            The State's decision to delay suit has also caused positional or "economic" prejudice to GEO

8    because the State unreasonably claims disgorgement covering the entire time of the VWP.  But the

9    State knew of the program by at least 2009 and delayed in exercising its rights while GEO continued

10   to renew its contract with ICE containing the VWP directive.  Whether intentionally or by

11   inadvertence, the State's failure to pursue its present claims earlier has caused economic prejudice

12   sufficient to support laches as a matter of law.  *See Evergreen Safety Council*, 2011 WL 2462303, at

13   *3 ("If Evergreen were to be found liable, the potential damages would be significantly greater as a

14   result of the nearly ten-year period that RSA waited to bring its claims.").  Thus, GEO's laches

15   defense is supported by record evidence and will be further bolstered by discovery that GEO obtains

16   prior to the discovery deadline.

17       **B.    Summary judgment is inappropriate for GEO's unclean hands defense.**

18           Equity does not allow the State to conceal its conduct in paying inmates less than minimum

19   wage while seeking a money award based on almost identical allegations against GEO.  "Equity will

20   not interfere on behalf of a party whose conduct in connection with the subject-matter or transaction

21   in litigation has been unconscientious, unjust, or marked by the want of good faith, and will not

22   afford him any remedy."  *Income Inv'rs v. Shelton*, 3 Wn.2d 599, 601–02 (1940).  Unclean hands is a

23   defense to any party seeking equitable relief, as such relief is unavailable to a party "whose conduct

24   has been unconscionable."  *Matthews v. Island Landmarks*, 193 Wn. App. 1014, at *8 (2016) (citing

25   *Portion Pack, Inc., v. Bond*, 44 Wn.2d 161, 170 (1954)).  The defense is premised upon the maxim

26   that "equity will not aid an applicant in securing or protecting gains from wrongdoing or in escaping

PAGE 9 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    its consequences." *State v. Barajas-Verduzco*, 198 Wn. App. 1072, at *6 (2017).  "The application of

2    the unclean hands doctrine raises primarily a question of fact."  *Dollar Sys., Inc. v. Avcar Leasing*

3    *Sys.*, Inc., 890 F.2d 165, 173 (9th Cir. 1989) (applying California law).

4         The State's primary argument against GEO's unclean hands defense is that the State "was not

5    a party to, or transactant in, its contractual dealings with ICE or decision to pay detainees $1 per

6    day," and therefore the State's conduct—even if inequitable—is irrelevant.  (*See* Motion at p. 18.)

7    The State is correct that the act creating unclean hands must generally relate to the "same transaction

8    or controversy."  *Nw. Mut. Life Ins. Co. v. Koch*, No. CC08-5394BHS, 2010 WL 519727, at *3

9    (W.D. Wash. Feb. 10, 2010).  But the relevant "controversy" extends to the relationship between the

10    parties and the scope of the transactions between them.  *See id.* (finding that fraud on interrelated, but

11    unintegrated, contracts was sufficient to establish fraud as to the larger controversy arising from the

12    relationship between the parties as insurer and insured).

13         Here, the State is standing in the shoes of the detainees to seek a money award for the

14    difference between what the detainees were paid and what they allegedly should have been paid.

15    Although the State may be seeking relief "beyond" that available to those individuals, the State's

16    unjust enrichment claim necessarily requires it to assert the interests of the individuals who allegedly

17    conferred the enrichment, i.e. the detainees.  This principle is well-established where L&I exercises

18    its jurisdiction to enforce the wage laws, as the State attempts to do in this case.  *See Morrison v.*

19    *Basin Asphalt Co.*, 131 Wn. App. 158, 165–66 (2005) (noting L&I "stands in the shoes of employees

20    and acts in a representative capacity on their behalf by virtue of its de jure authority under RCW

21    49.48.040(1)(b)").  Thus, the State cannot seek a money award from the custodial detention

22    "transactions" while simultaneously disclaiming any connection to them.

23         As to whether the State's "conduct in connection with the subject-matter or transaction in

24    litigation has been unconscientious, unjust, or marked by the want of good faith," the State offers no

25    substantive defense of its decision to pay its own inmates far below the minimum wage levels.

26    *Income Inv'rs*, 3 Wn.2d at 601–02.  The State compensates its Class III offenders at a maximum rate

PAGE 10 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

of $55 per month, or roughly 35 cents per hour for a 40-hour work week.  *See* Wash. DOC Policy 700.100.  Because the State seeks to prove that GEO's similar compensation decisions were "unjust," the State's own conduct is relevant to that determination.

The State's attempt to minimize the significance of its conduct is meritless.  Even if the State's actions are exempt from the minimum wage laws, the State's decision to pay only 35 cents per hour is relevant to rebut the State's argument that GEO's similar payments are "unjust."  Further, the State's payment decisions are relevant to its assessment of the value of the services provided by inmates, which is critical to the market value of inmate/detainee services at issue in this case.  *See Air Serv Corp. v. Flight Servs. & Sys., Inc.*, 199 Wn. App. 1011, 2017 WL 2345701 at *1 (2017) (noting market value typically determines proper amount of disgorgement).

In addition, the State's delay in initiating this litigation notwithstanding its knowledge of the underlying facts further supports GEO's unclean hands defense.  *See Granite State Ins. Co. v. Integrity Structures, LLC*, No. C14-5085BHS, 2015 WL 136006, at *14 (W.D. Wash. Jan. 9, 2015) (noting unclean hands requires: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act") (quoting *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 340 (1989)).  As explained above, the State was aware of the VWP since at least 2009, investigated potential claims in 2014, yet waited over three years to bring those claims.  The State's decision to wait until a claim against GEO was politically beneficial calls into question the State's motivations and ability to recover in equity.

III.     **Summary judgment is inappropriate on GEO's defenses of failure to join government parties.**

Finally, the State is not entitled to summary judgment on GEO's defenses of failure to join indispensable parties because the record shows that ICE and DHS are necessary because they have protectable interests at issue in this case.  *See E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779

PAGE 11 – DEFENDANT'S OPPOSITION TO WASHINGTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE DEFENSES (3:17-CV-05806-RJB)

1   (9th Cir. 2005) (noting a party is necessary if their "joinder in the action is desirable" in the interests

2   of just adjudication, or when "persons having an interest in the controversy, and who ought to be

3   made parties, in order that the court may act").

4        A.    **GEO's contract with ICE requires payment of $1 per day in accordance with federal guidelines.**

5

6        The United States Congress has delegated the authority to detain aliens the United States has

7   placed into removal proceedings to DHS, and its agency ICE.  *See* 8 U.S.C. §§ 1103, 1226, 1231.  To

8   accomplish this mission, ICE uses facilities owned by ICE and other facilities owned and operated by

9   contractors.  Congress has delegated to federal agencies, particularly DHS, the authority to use

10  private contractors to operate these detention facilities.  *See*, *e.g.*, 8 U.S.C. §§ 1103(a)(11),

11  1231(a)(2), (g).

12       GEO's operation of the NWDC beginning in 2005 was governed by contract ACL-2-C-004

13  ("2002 NWDC Contract").[3]  (Armstrong Decl., Ex 4.)  The 2002 NWDC Contract governed GEO's

14  performance at NWDC through approximately October 16, 2009 when HSCEDM-09-R-00003

15  ("2009 NWDC Contract") was awarded.  (*See id.*, Ex. 5.)  The 2009 NWDC Contract ran through

16  approximately September 28, 2015 when HSCEDM-15-D-00015 ("2015 NWDC Contract") was

17  awarded.  (*See* Mell Decl., Dkt. # 19, at p. 5.)  The 2015 NWDC Contract runs through the present.

18  (*Id.*)  ICE ensures its custodial supervision obligations are met by adopting standards and the use of

19  audits and inspections to ensure that facilities implement and adhere to ICE's contractual

20  requirements and detention standards.  (*See id.* at pp. 123-28.)  All detention processing centers,

21  whether operated directly by ICE, or on a contract basis, must adhere to ICE's Performance Based

22  National Detention Standards ("PBNDS").  (*See, e.g.*, *id.* at pp. 49, 363, 365-66.)  The Court

23  previously recognized this fact in noting that GEO-ICE contract attached to the pleadings

24  incorporated the PBNDS.  (Order, Dkt. # 58, at p. 5.)

25

26  [3] While the 2002 NWDC Contract was awarded in 2002, GEO's performance under this contract did not start until 2005 when it acquired the awardee of the 2002 NWDC Contract, Correctional Services Corp.

PAGE 12 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    In 2000, INS adopted its original Detention Standards.  ICE promulgated subsequent versions

2    of the PBNDS in 2008, and 2011 (as updated in 2016).[4]  ICE also issues a Detainee Handbook, which

3    is updated on a regular basis and is given to each detainee.  The 2002, 2009 and 2015 NWDC

4    Contracts specifically direct GEO to comply with the applicable INS Detention Standards and

5    PBNDS.  (*See, e.g.*, Armstrong Decl., Ex. 4 at p. 2; *id.*, Ex. 5 at pp. 8-11; Mell Decl., Dkt. # 19, at p.

6    pp. 49, 363, 365-66.)

7    The applicable detention standards require GEO to provide a VWP and dictate the amount of

8    allowances GEO must pay to detainees who participate in the program.  Under a 1950 law codified at

9    8 U.S.C. § 1555(d), Congress determined how much ICE is authorized to pay as "allowances … to

10   aliens, while held in custody under the immigration laws, for work performed." The amount of the

11   payments was most recently specified in the appropriations act for Fiscal Year 1979, which set it at a

12   maximum of $1 per day. Pub. L. No. 95-431. Congress set this rate in 1979 and has not adjusted it

13   since.  Accordingly, the reimbursement for the VWP has, for decades, been $1.00 per day per

14   detainee.

15   The 2000 INS Detention Standards provide that the payment to detainees under the VWP "is

16   1.00 per day, to be paid daily."  (Armstrong Decl., Ex. 6.)  Similarly, the form INS Detainee

17   Handbook provides that compensation is "$1.00 per day."  (*Id.*)  The 2008 PBNDS provide that for

18   detainees participating in the VWP, "the compensation is $1.00 per day."  (Armstrong Decl., Ex. 7.)

19   The 2009 ICE National Detainee Handbook states "We will make every effort under our purview to

20   ensure that you have an opportunity to participate in a voluntary work program. . . . If you are housed

21   in an ICE Service Processing Center or Contract Detention Facility, you will be paid $1.00 per day

22   worked (not per assignment)."  (Armstrong Decl., Ex. 9 at p. 2.)

23   The 2011 PBNDS changed the language regarding compensation for the VWP slightly to state

24   that "the compensation is at least $1.00 per day."  (Armstrong Decl., Ex. 8.)  This change was not

25

26   [4]  The 2000 standards are located at https://www.ice.gov/detention-standards/2000; 2008 PBNDS are located at https://www.ice.gov/detention-standards/2008; and the 2011 PBNDS are located at https://www.ice.gov/detention-standards/2011).

1   accompanied by any change in Title 8 U.S.C. § 1555(d), which limits ICE's authority to pay

2   allowances for participation in the VWP to $1.00 per day per detainee.

3        The 2009 and 2015 NWDC Contracts include specific Contract Line Item Numbers (CLINs)

4   for the VWP. (*See, e.g.*, Armstrong Decl., Ex. 5 at pp. 3-7; Mell Decl., Dkt. # 19, at pp. 9, 13, 16, 20.)

5   These CLINs state "Stipend for Detainee Work Program—Reimbursement for this line item will be

6   at actual cost of $1.00 per day per detainee. The contractor shall not exceed the quantity shown

7   without prior approval by the Contracting Officer." (*Id.*)  The term "reimbursement" in these CLINs

8   refers to ICE's obligation to make payment to GEO, and the term "actual cost" in these CLINs refers

9   to the amount GEO would pay detainees for participation in the VWP. (*Id.*)  The modification to "at

10   least $1.00 per day" did not alter the contract CLINs in the 2009 and 2015 NWDC Contracts which

11   limit ICE's reimbursement for VWP participation to GEO's actual cost of $1.00 per day per detainee,

12   nor did it direct or require GEO to make payments in excess of $1.00 per day to detainees

13   participating in the VWP.

14        **B.**    **DHS and ICE are necessary parties based on the GEO's contract.**

15        DHS and ICE are necessary parties because the conduct the State challenges in the case is

16   prescribed by the express terms of GEO's contracts with ICE.  At the very least, a factual dispute

17   exists about whether GEO's contracts require GEO to comply with ICE's PBNDS, which includes

18   the $1 per day policy, so summary judgment is inappropriate.  The State, however, argues that DHS

19   and ICE are not necessary parties because complete relief can be achieved without their joinder and

20   ICE has no legally protected interest in the case.  (Motion at pp. 22-23).  That argument ignores the

21   United States Supreme Court's determination that the federal government has an identifiable federal

22   interest in the imposition of liability on a federal contractor under state law.  *See Boyle v. United*

23   *Technologies Corp.*, 487 U.S. 500 (1988).  Thus, imposition of liability under state law claims like

24   those alleged in this case will directly affect the terms of federal contracts because the contractor will

25   either decline to provide the goods or services or will raise its price.  In either event, the federal

26   government's interests are directly affected by the application of the state law.  *Id.* at 507.

PAGE 14 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

In addition, the absence of DHS and ICE as parties to this action will place GEO squarely between a rock and a hard place.  "[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."  *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002).  It follows that if a party were compelled by court order to comply with laws that contradict contractual obligations to a third party who is not joined to the suit, the party would find itself "between the proverbial rock and a hard place."  *Id*. at 1156.  The same logic extends to claims for declaratory relief like the State seeks in this case.  *See Peabody W. Coal Co.*, 400 F.3d at 780 (holding that a signatory to contract is a necessary party because if the plaintiff is victorious in its suit against the defendant, declaratory and injunctive relief could be incomplete unless the third party is bound by res judicata); *Nevada Ass'n Servs., Inc. v. Tumanan*, 2:14-CV-00733-JCM, 2014 WL 3845150, at *3 (D. Nev. Aug. 5, 2014) ("[*Dawavendewa* and *Peabody*] indicate that where a plaintiff seeks injunctive or declaratory relief, and a third-party has an enforceable interest in the subject matter of the dispute, the court cannot grant complete relief in the third party's absence.").

The Court previously addressed *Dawavendewa* and *Peabody* in its order denying GEO's motion to dismiss for failure to join required parties.  (Order, Dkt. # 58, at pp. 5-7.)  The Court considered the language of GEO's NWDC contract, and decided it was reluctant to interpret the contract at that point before the close of discovery.  (*Id*. at p. 6.)  But, as the Court noted, even the current version of GEO's contract with ICE creates an open question regarding whether ICE limits the amounts GEO can pay to detainees who participate in the VWP.  (*Id.* at p. 5.)  This open question requires further discovery and the disposition of numerous questions of fact regarding ICE's interpretation and application of the contract, ICE's financial interest, contract negotiations between GEO and ICE, and ICE's unique interest in ensuring the payment of uniform allowances throughout the federal detention system.  Furthermore, the contracts between GEO and ICE between 2005 and May 23, 2013, in conjunction with the 2000 INS Detention Standards and 2008 PBNDS, required GEO to pay $1.00 per day, no more and no less.  The State's purported interest in vindicating public

PAGE 15 – DEFENDANT'S OPPOSITION TO WASHINGTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE DEFENSES (3:17-CV-05806-RJB)

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    rights in this litigation cannot subvert the federal interests of DHS and ICE to ensure compliance with

2    its contractual directives adopted for the fair and equitable treatment of detainees in custodial

3    supervision throughout the country.  Accordingly, summary judgment is inappropriate on GEO's

4    defense of failure to join necessary parties.

5                                              **CONCLUSION**

6             For the reasons set forth above, the State's motion is premature and does not establish that the

7    State is entitled to judgment as a matter of law on GEO's affirmative defenses.  Accordingly, this

8    Court should deny the State's motion.

9             Dated:  April 29, 2019

10                                                    HOLLAND & KNIGHT LLP

11

12                                    By:   *s/Shannon Armstrong*
                                          J. Matthew Donohue, WSBA # 52455
13                                        matt.donohue@hklaw.com
                                          Shannon Armstrong, WSBA # 45947
14                                        shannon.armstrong@hklaw.com
                                          Kristin M. Asai, WSBA #49511
15                                        kristin.asai@hklaw.com
                                          2300 US Bancorp Tower
16                                        111 SW Fifth Avenue
                                          Portland, OR 97204
17                                        Telephone: 503.243.2300
                                          Fax: 503.241.8014
18
                                          Carolyn Short (admitted *pro hac vice*)
19                                        carolyn.short@hklaw.com
                                          Holland & Knight LLP
20                                        Cira Center, 2929 Arch Street, Suite 800
                                          Philadelphia, PA 19104
21                                        Telephone: 215.252.9535

22                                        *Attorneys for Defendant*

23

24

25

26

PAGE 16 – DEFENDANT'S OPPOSITION TO
WASHINGTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE
DEFENSES (3:17-CV-05806-RJB)

1

CERTIFICATE OF SERVICE

2

     I hereby certify that I caused the foregoing DEFENDANT'S OPPOSITION TO WASHINGTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE GEO GROUP, INC.'S AFFIRMATIVE DEFENSES to be served on the following person[s]:

3

4

La Rond Baker
Marsha Chien

5

Andrea Brenneke
Lane Polozola

6

Office of the Attorney General
800 Fifth Avenue, Suite 2000

7

Seattle, WA 98104
larondb@atg.wa.gov

8

marshac@atg.wa.gov
andreab3@atg.wa.gov

9

lane.polozola@atg.wa.gov

10

Attorneys for Plaintiff

11

by causing the document to be delivered by the following indicated method or methods:

12

☑    by CM/ECF electronically mailed notice from the Court on the date set forth below.

13

☐    by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

14

15

16

☐    by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

17

☐    by sending full, true, and correct copies thereof, via overnight courier in sealed, prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or their attorneys, on the date set forth below.

18

19

☐    by faxing full, true, and correct copies thereof to the fax machines which are the last-known fax numbers for the parties' and/or attorneys' offices, on the date set forth below.

20

    DATED: April 29, 2019.

21

22

*s/ Kristin M. Asai*
_____
Kristin M. Asai

23

24

25

26

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300