The Honorable Robert J. Bryan

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No. 3:17-cv-05806-RJB<br><br>**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND METADATA**<br><br>**NOTE ON MOTION CALENDAR: JUNE 14, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION AND RELIEF REQUESTED

On October 2, 2018, the Court ordered the State of Washington (the "State") to produce relevant, responsive, and non-privileged information from its agencies and from all divisions of its Attorney General's Office.  (Dkt. # 133 ("MTC Order").)  The MTC Order also required the State to provide complete and unaltered native metadata for all of its productions.  Instead of complying with the MTC Order, the State has continued to provide incomplete—and sometimes inaccurate—metadata, and has refused to provide more than token discovery from its agencies.  The State is also withholding documents on privilege grounds supported by incomplete privilege logs.

The GEO Group, Inc. ("GEO") asks this Court, for a second time, to compel the State to comply with its basic discovery obligations by providing GEO with complete and accurate metadata and by producing relevant, non-privileged documents it has already been ordered to produce. Specifically, GEO asks the Court to order the State to produce:

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 1

1       1.      Relevant information from its agencies, including information about the State's use of
2   work programs, including why it pays some (but not all) work program participants market wages,
3   whether the participants are volunteers, the hours worked, duties performed, and pay rates for
4   participants, and the State's use of contractors to assist in the operation of work programs; and the
5   State's assessment of federal and/or state law as it relates to the operation of work programs, including
6   the use of contractors;

7       2.      Accurate and complete metadata for all of its productions, including custodian and
8   author information, dates of creation and modification, and file path; and

9       3.      Documents on the common interest privilege log that are missing date, author, sender,
10  recipient, or subject matter information, and communications between third parties for which no basis
11  for common interest privilege exists.

### COMPLIANCE WITH LCR 26

Counsel for GEO (Shannon Armstrong and Kristin Asai) conferred with counsel for the State
(La Rond Baker and Lane Polozola) by telephone on May 24, 2019, in a good faith effort to resolve
this dispute, but could not reach agreement.

### BACKGROUND

**I.      The Court ordered the State to produce agency documents and metadata.**

GEO served its first set of requests for production ("RFP(s)") on January 11, 2018, its second
set on July 2, 2018, and its third set on May 17, 2019.  (Decl. of Shannon Armstrong in Supp. of Mot.
to Compel ("Armstrong Decl."), Exs. 1-3.)  GEO's RFPs request, *inter alia*, information related to the
State's operation of work programs at State facilities (*see, e.g.*, RFP Nos. 46, 51–62), the State's
investigation into GEO's Northwest Detention Center ("NWDC") (*see, e.g.*, RFP No. 44), documents
supporting or relating to the State's unjust enrichment claim (*see, e.g.*, RFP Nos. 2, 43, 45–47, 49–50,
65–66), the State's application of state minimum wage laws to federal detainees (*see, e.g.*, RFP Nos. 5,
9, 23, 32–33), and communications with individuals identified as having information relating to the
case (*see, e.g.*, RFP No. 48).  (*Id.*)

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 2

1   The State's failure to comply with GEO's RFPs is described in GEO's prior motion to compel,

2   as well as this Court's October 2, 2018 order granting that motion. (*See* Dkt. # 113; Dkt. # 133.)  The

3   MTC Order required the State to produce "all relevant, responsive, non-privileged information held by

4   all divisions of the AGO and agencies of the State."  (Dkt. # 133 at p. 7.)  GEO specifically requested,

5   and the Court ordered, the State to provide responsive information from the Department of Labor and

6   Industries ("L&I"), Department of Corrections ("DOC"), Department of Social and Health Services

7   ("DSHS"), and the Governor's Office ("GO").  (*Id.* at pp. 4-7.)  The MTC Order also required the

8   State to "produce metadata in native format, without summarizing or otherwise manipulating the

9   information."  (*Id.* at pp. 7-8.)

10  **II.     The State has not complied with the MTC Order.**

11          **A.     The State has failed to produce agency documents and provide accurate metadata.**

12          Over the last eight months, GEO repeatedly requested that the State comply with the MTC

13  Order by producing agency documents and complete metadata.  (Armstrong Decl., Exs. 4-9.)  To date,

14  the State has produced a mere 178 documents from DOC, and those documents are limited to State-led

15  work programs that the State has cherry-picked from a broader set of programs it runs.  (*See*

16  Armstrong Decl., Ex. 9 at p. 6.)  As far as GEO can tell, the State has also produced only *two*

17  documents from L&I, and *three* documents from DSHS.  (*Id.* ¶ 2.)  The State has refused to produce

18  other information relating to the State's operation of work programs, or the State's use of contractors

19  to assist the State in running such work programs.  (*Id.*, Ex. 9 at pp. 4-7.)  Additionally, the State

20  appears to have significantly restricted the production of documents dated between 2005 and 2014,

21  despite the State's agreement to produce documents from this date range.  (*Id.*, Ex. 9 at pp. 5-6; Ex. 7

22  at p. 2.)

23          Further complicating matters is the State's incomplete, and often inaccurate, metadata.  Many

24  of the metadata fields appear to have been overwritten with data related to the State's *collection*,

25  instead of reflecting true information about the document itself.  For instance, the File Path field often

26  displays a State staging folder (i.e. "F:\Lit\ECLIPSE\Images\CRU\TheGEOGroup"), instead of the

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 3

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

file's original location.  (*See id.*, Ex. 9 at p. 8; *id.*, Ex. 14.)  Often, the custodian information merely identifies an agency instead of an individual.  (*Id.*, Ex. 9.)  And many of the State's documents are missing author or custodian information, do not indicate the dates they were created or modified, or the metadata appears inaccurate.  (*Id.*)  For instance, one document produced by the State has a master date of 1979, when it is a pleading from 2017.  (*Id.* at pp. 5-6.)  Another document has a master date of 1998 but contains financial data from 2010 and 2011.  (*Id.*)  Other documents contain conflicting "Created Date" and "Mail Sent Date" fields.  (*Id.* at p. 8.)  The result is a jumble of documents that cannot be meaningfully analyzed according to authorship, possession, dissemination, or date.

**B.      The State has failed to provide adequate privilege logs.**

On November 30, 2018, the State produced its deliberative process and common interest privilege logs.  (Ex. 6 at p. 1.)  Of the 493 entries in the common interest log, only 14 identified an underlying privilege.  (*Id.* at p. 2.)  The log also failed to explain the alleged common interest among the parties and was missing basic information regarding various documents' authors, recipients, dates, and subject matter.  (*Id.* at pp. 1–2.)

In response to GEO identifying the above deficiencies, the State produced a supplemental common interest privilege log on April 26, 2019.  (*See id.*, Ex. 10.)  The State's supplemental privilege log continues to omit basic information necessary to assess the State's claim of privilege, including entries with missing dates, authors, recipients, and subject matter.  (*See id.*)

**III.      The State fails to provide relevant information and complete metadata.**

GEO sent a letter to the State on May 14, 2019, identifying the above deficiencies in the State's production.  (*See generally*, Ex. 9.)  In that letter, GEO explained that the following categories of information are relevant to the elements of the State's unjust enrichment claim and GEO's pending preemption arguments:

- How the State uses contractors to carry out any of its work programs;

- Whether participants in labor programs at the State's facilities are deemed volunteers;

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

- Whether participants in labor programs at the State's facilities have a reasonable expectation of receiving market wages;

- How the State pays participants in labor programs at State facilities;

- The hours worked and duties performed by participants in labor programs at State facilities, and their pay rates;

- The State's interpretations of federal and state wage laws as they apply to government contractors; and

- Why the State pays some participants in labor programs at State facilities market wages while others are paid far less.

(*Id.* at p. 5.)

The State argued that these issues are not relevant to its unjust enrichment claim and not proportional to the needs of the case. (*Id.*, Ex. 11.)  The State, however, never explained why it is incapable of providing complete and accurate metadata.  Instead, the State asserted that custodian information is unavailable because State agencies "utilize shared drives for document maintenance," without explaining how shared drives alter or remove the otherwise commonplace metadata.  (*Id.* at p. 3.)  The State also refused to remedy the deficiencies in its common interest privilege log, including the missing dates, authors, senders, recipients, and subject matter descriptions.  (*Id.* at p. 2.)

**STANDARDS**

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  A party may also move for an order compelling disclosure.  Fed. R. Civ. P. 37(a)(1).  If the discovery sought is relevant, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Wilson v. Washington*, No. C16-5366 BHS, 2017 WL 518615, at *1 (W.D. Wash. Feb. 8, 2017).

///

///

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 5

**ARGUMENT**

**I.      The State must produce relevant agency documents.**

Agency discovery is directly relevant to the elements the State must prove as part of its unjust enrichment claim.  Contrary to the State's position, the discovery sought by GEO is not only relevant to the now-dismissed affirmative defenses, it is also directly relevant to GEO's remaining defenses and the State's unjust enrichment claim.  The State, therefore, has no basis to continue to refuse to provide relevant discovery to GEO.

First, the discovery sought by GEO is relevant to the elements the State must prove for its unjust enrichment claim.  To prove unjust enrichment, the State must show that: (1) GEO received a benefit; (2) the received benefit is at the plaintiff's expense; and (3) "the circumstances make it unjust for the defendant to retain the benefit without payment."  *Young v. Young*, 164 Wn.2d 477, 484–85, (2008) (also noting "the plaintiff cannot be a mere volunteer").  No unjust enrichment exists when a benefit is conferred without a reasonable expectation of compensation.  *See, e.g.*, 25 WASH. PRAC., CONTRACT L. & PRAC. § 18.303.08 (3d ed.) ("[E]ven when a person has received a benefit from another, he or she is only liable to pay for it when the circumstances are such that between the two, it is 'unjust' to retain it without paying restitution."); *Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 102 & n.6 (9th Cir. 1962) (noting that under Washington law "an obligation to pay, ordinarily, will not be implied in fact or by law if it is clear that there was indeed no expectation of payment"); *Kerr v. King Cty.*, 42 Wn.2d 845, 854 (1953) (noting no unjust enrichment when "there was no expectation on the part of the respondents that they would be *paid* for their overtime").  As such, evidence showing whether a payment should be expected in the industry is relevant to whether it is "unjust."  *See Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1578 (Fed. Cir. 1984) (affirming dismissal of unjust enrichment claim in part because providing that service for free was "common practice in the [relevant] industry").

Because the State must prove that GEO's conduct was unjust, each of the categories of information GEO seeks here remains relevant.  For example, information about whether participants in

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 6

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

the State's work programs are considered volunteers and whether they expect to be paid minimum wage are relevant to show the industry practice and whether the detainees who participated in the VWP should have expected minimum wage.  How the State pays participants of its own work programs, and the hours, duties, and pay rates for those participants, is also relevant to show the reasonable expectation for detainees in a similar work program.  In addition, the hours, duties, and pay rates for participants in the State's programs are relevant to determine the reasonable rate of pay for detainees in the VWP.  The State admits that it pays some (but not all) work program participants minimum wage.  (*See* Armstrong Decl., Ex. 12 at pp. 4-5.)  As such, the State's calculation and justification for those different pay rates is relevant to whether GEO's payment is "unjust."

Second, the discovery sought by GEO is relevant to its preemption defense.  For example, GEO will show that treating detainees as employees would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  (*See* Dkt. # 29 at p. 11 (noting whether hiring detainees is a violation of federal law depends on "factual determinations about the status of detainees").)  In connection with that defense, GEO seeks relevant information about how the State applies minimum wage or other state laws to work program participants with similar legal status.  In addition, how the State uses private contractors to carry out any of its work programs, and the State's understanding or application of state minimum wage law to persons lacking federal work status are relevant to show how the State handles the conflict.  Although the State asserts that preemption is a purely legal issue and those facts have no bearing on preemption (*see* Armstrong Decl., Ex. 11 at p. 4), this Court held the exact opposite.  In its Order regarding GEO's motion to dismiss, the Court held that conflict and obstacle preemption involved fact issues that precluded assessment at the pleadings stage. (Dkt. # 29 at p. 11.)  The State should therefore be compelled to produce the information relevant to those facts so GEO can prepare its preemption defenses for trial.

The State may not refuse to produce relevant documents based on an unknown burden.  First, the State waived its objection as to any burden in producing these records by not raising it until November 30, 2018—months beyond the 30 day deadline for responses and objections stated by Rules

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 7

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    33 and 34.  (*See* Ex. 12 at pp. 3, 6); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468,

2    1473 (9th Cir. 1992) ("[F]ailure to object to discovery requests within the time required constitutes

3    a waiver of any objection."); *Putterman v. Supreme Chain Logistics, Ltd.*, No. C18-376RSM, 2018

4    WL 6179325, at *4 (W.D. Wash. Nov. 27, 2018) (refusing to allow plaintiff to argue new objections

5    not previously raised in her original responses to requests for production); *Ghorbanian v. Guardian*

6    *Life Ins. Co. of Am.*, No. C14-1396RSM, 2016 WL 1077251, at *3 (W.D. Wash. Mar. 18, 2016)

7    (noting objections to ESI discovery not timely raised in specific objections are deemed waived).

8            Second, the State's objection on burden grounds is too vague to relieve it of its obligation to

9    produce relevant documents.  A party asserting an objection to discovery bears the burden to

10   demonstrate that the request is unduly burdensome.  *Microsoft Corp. v. Hertz*, No. C04-2219C, 2006

11   WL 1515602, at *2 (W.D. Wash. 2006); *see Wilson*, 2017 WL 518615, at *3-4 ("[T]he Court will

12   typically not relieve a party of its discovery obligations . . . absent some evidence that specifies, in

13   detail, the likely cost of production and how the propounded discovery would be overly

14   burdensome.").  Here, the State has never explained why producing documents from its agencies is

15   unduly burdensome.  In fact, the State's assertion that all agency documents are in shared folders

16   should streamline its collection and production process because all agency documents are in the same

17   place.

18           This Court already ordered the State to produce relevant documents from its agencies, and it

19   has no basis to continue to withhold relevant information.  Accordingly, this Court should compel the

20   State to fully produce relevant agency documents.

21   **II.      The State must produce complete and accurate metadata.**

22           As this Court already held, the State is required "produce metadata in native format, without

23   summarizing or otherwise manipulating the information."  (Dkt. # 133 at pp. 7-8.)  The State's

24   production, however, continues to be deficient because it does not include basic metadata ordered by

25   this Court.  The State has failed to explain what metadata exists in the shared drives of its agencies,

26   and has not explained why metadata has been lost or overwritten in the collection process.  With

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 8

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1   discovery closing in one month, this Court should again compel the State to produce the native

2   metadata immediately.

3          To comply with Rule 34, a competent collection will preserve the original metadata associated

4   with a document as it was kept in the ordinary course of business.  *See, e.g.*, *Leidig v. Buzzfeed, Inc.*,

5   No. 16 CIV 542 (VM), 2017 WL 6512353, at *10-13 (S.D.N.Y. Dec. 19, 2017) (finding plaintiff had a

6   duty to preserve metadata associated with his documents); Hon. Joy Flowers Conti and Richard N.

7   Lettieri, *E-Discovery Ethics: Emerging Standards of Technological Competence*, FED. LAW.,

8   October/November 2015 ("*E-Discovery Ethics*"), at 28, 32 ("Proper collection methods" should be

9   employed to preserve the integrity of an electronic document, including the metadata fields associated

10  with that document).  Courts have long held that to meet this requirement, parties should produce

11  custodian information.  *See Hullinger v. Anand*, No. CV 15-7185 SJO, 2016 WL 7444620, at *9, *15

12  (C.D. Cal. Aug. 19, 2016) (ordering production of custodian information); *City of Colton v. Am.*

13  *Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) (identifying "custodian information"

14  as "basic identifying metadata fields . . . all of which would be readily apparent if the ESI was

15  produced as kept in the usual course of business").  This is because documents kept in the usual course

16  of business should "at a minimum" identify the origin or "provenance" of a document, and provide

17  "context as to their meaning."  *City of Colton*, 277 F.R.D. at 585.

18         The State has offered no justification for its inability to supply GEO with complete and

19  accurate metadata.  Its argument that "State agencies use shared drives" does not explain why

20  documents within those shared drives cannot hold accurate metadata, including creation/modification

21  dates and author information.  Neither does the use of shared drives explain why the State wrote over

22  the relevant metadata with file path and date information relating to collection of the documents for

23  litigation, instead of the documents' original shared folder(s).  Finally, GEO notes that the metadata it

24  seeks is the same metadata the State requested and which GEO consistently produces.  (*See* Dkt. # 133

25  at p. 7.)

26

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 9

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    Again, the State's burden argument cannot excuse its obligation to produce full and accurate

2    metadata. (*See* Ex. 12 at p. 6.)  The State already waived that objection and its conclusory assertion is

3    not supported by the record.  With mere weeks until the close of discovery, GEO continues to be

4    prejudiced by the State's failure to produce metadata, as it makes it impossible to meaningfully

5    analyze the State's documents by authorship, possession, dissemination, or date.  Without metadata,

6    GEO cannot determine who had access to what information when, or identify fact witnesses for

7    deposition.  The State should be ordered to produce full and accurate metadata.

8    **III.    The State has failed to establish its common interest privilege beyond its co-counsel in**
         **related cases, so all other withheld documents should be produced.**

9

10    In addition to the other production deficiencies, the State has produced a common interest

11    privilege log that is insufficient on its face.  GEO does not challenge the State's assertion of a common

12    interest with counsel from related class actions against GEO.  However, the State's common interest

13    privilege log purports to invoke privilege for communications with unknown third parties and fails to

14    provide basic information that is necessary for GEO to assess the State's privilege.  Because the

15    State's privilege log is deficient, this Court should find that the State has not satisfied its burden and

16    either (a) order the State to immediately produce an updated privilege log that GEO can review and

17    then file a further motion to compel, or (b) order the State to produce each document for which the

18    State has failed to meet its burden.

19    "The party asserting [a] privilege or protection from disclosure bears the burden of proving the

20    privilege's or protection's applicability to the given documents." *MKB Constructors v. Am. Zurich Ins.*

21    *Co.*, No. C13-0611JLR, 2014 WL 2526901, at *10 (W.D. Wash. May 27, 2014).  A privilege log

22    "must enable other parties to assess the claim of privilege or protection." *Id.*  For instance, a privilege

23    log should identify: (1) the attorney and client involved; (2) the nature of the document; (3) all persons

24    or entities shown on the document to have received or sent the document; (4), all persons or entities

25    known to have been furnished the document or informed of its substance; and (5) the date of the

26    document.  *Id.*; *see also Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 247 (S.D.

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 10

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

W. Va. 2014) ("A privilege log [is sufficient] . . . if it identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject and the privilege asserted"). Conversely, a log missing the author, recipient, and date is inadequate. *MKB Constructors*, 2014 WL 2526901, at *10.

When common interest protection is alleged, a party must establish an underlying privilege, as well as a legally protectable common interest. *See, e.g., Waymo LLC v. Uber Techs., Inc.*, No. 1-cv-00939-WHA, 2017 WL 2485382, at *7 (N.D. Cal. June 5, 2017) ("The common interest/joint defense doctrine does not make a document or communication privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest."). Further, the party invoking common interest protection must explain how the senders and recipients shared a protectable legal interest, not merely a shared desire for the same outcome. *See Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception."). If a party fails to meet its obligation to produce an adequate privilege log, it has waived the privilege. *See Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) ("Plaintiff has waived any privilege or protection . . . based on the log's untimeliness and deficiencies").

Here, the State's privilege log lacks the basic information like date, recipient, author, or subject matter that is necessary to invoke privilege. Exhibit 10 is a copy of the State's current common interest privilege log, which contains 487 entries. That log includes the following deficiencies:

- 178 entries are tagged as email attachments and contain no information regarding the author or the subject matter of the document;

- 82 entries do not have date information;

- 184 entries do not contain a subject description;

- 29 entries include redacted filenames; and

- 31 entries have redacted subject information.

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 11

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

1    By failing to include this basic information, the State has waived its right to claim privilege over these

2    documents.

3          To be clear, GEO is not contesting the existence of a common interest between the State and

4    counsel in related class actions against GEO.  GEO, however, purports to protect communications with

5    over a dozen individuals that have no ascertainable common interest with the State, including "TSA

6    Standard PC User," "US Courts," "ME12414," "alegonza75@gmail.com," and individuals working

7    for "aijustice.org" and "nwirp.org."[1]  (*Id.*)  Without the information identified above, the State's

8    privilege log fails to carry its burden to establish privilege, so this Court should compel the State to

9    produce the documents that are inadequately logged.  *See Loop AI Labs Inc*., 2016 WL 2908415, at *3

10   (compelling the plaintiff to produce responsive documents withheld on privilege grounds based on

11   inadequate privilege log).  Alternatively, the Court should order the State to provide an updated

12   common interest privilege log and give GEO the opportunity to challenge the entries if the information

13   remains deficient.

## CONCLUSION

15         For the reasons stated above, the Court should grant GEO's motion to compel, and order the

16   State to produce:

17         (1)       Relevant information from all agencies, including L&I, DOC, DSHS, and GO, for the

18   following categories:

19              (a)       the State's use of work programs at its correctional or rehabilitation facilities,

20   including why it pays some (but not all) work program participants market wages, whether the

21   participants are volunteers, the hours worked, duties performed, and pay rates for participants, and the

22   State's use of contractors to assist in the operation of work programs;

23              (b)       the State's assessment of federal and/or state law as it relates to the operation of

24   work programs, including the use of contractors;

---

[1] GEO offers these entries as an example and not a complete list of every recipient or sender GEO views as having no common interest with the State.

1

     (2)     Accurate and complete metadata for all of its productions, including custodian and

2

author information, dates of creation and modification, and file path, without modification; and

3

     (3)     Logged documents on the common interest privilege log that are missing date, author,

4

sender, recipient, or subject matter information, and communications between third parties for which

5

no basis for common interest privilege exists.

6

     Dated:  May 24, 2019

7

                         HOLLAND & KNIGHT LLP

8

9

                       By:   *s/ Kristin M. Asai*

10

                           J. Matthew Donohue, WSB # 52455
matt.donohue@hklaw.com

11

                           Shannon Armstrong, WSB # 45947
shannon.armstrong@hklaw.com

12

                           Kristin M. Asai, WSB # 49511
kristin.asai@hklaw.com

13

                           2300 US Bancorp Tower
111 SW Fifth Avenue

14

                           Portland, OR 97204
Telephone: 503.243.2300

15

                           Fax: 503.241.8014

16

                           Carolyn Short (admitted *pro hac vice*)
carolyn.short@hklaw.com

17

                           Holland & Knight LLP
Cira Center, 2929 Arch Street, Suite 800

18

                           Philadelphia, PA 19104
Telephone: 215.252.9535
Fax: 215.867.6070

19

                           *Attorneys for Defendant*

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND METADATA
(3:17-CV-05806-RJB) - PAGE 13

1

CERTIFICATE OF SERVICE

2

    I hereby certify that I caused the foregoing DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND METADATA to be served on the following person[s]:

3

4

La Rond Baker
Marsha Chien

5

Andrea Brenneke
Lane Polozola
Office of the Attorney General

6

800 Fifth Avenue, Suite 2000
Seattle, WA 98104

7

larondb@atg.wa.gov
marshac@atg.wa.gov

8

andreab3@atg.wa.gov
lane.polozola@atg.wa.gov

9

10

*Attorneys for Plaintiff*

by causing the document to be delivered by the following indicated method or methods:

11

☑    by CM/ECF electronically mailed notice from the Court on the date set forth below.

12

13

☐    by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

14

15

☐    by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

16

17

☐    by sending full, true, and correct copies thereof, via overnight courier in sealed, prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or their attorneys, on the date set forth below.

18

19

☐    by faxing full, true, and correct copies thereof to the fax machines which are the last-known fax numbers for the parties' and/or attorneys' offices, on the date set forth below.

20

DATED May 24, 2019.

21

*s/ Kristin M. Asai*
Kristin M. Asai

22

23

24

25

26

CERTIFICATE OF SERVICE - PAGE 1

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300