The Honorable Robert J. Bryan

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON, | Case No. 3:17-cv-05806-RJB |
| Plaintiff, | **THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON** |
| v. | |
| THE GEO GROUP, INC., | **NOTE ON MOTION CALENDAR: JULY 26, 2019** |
| Defendant. | |
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated, | **ORAL ARGUMENT REQUESTED** Case No. 3:17-cv-05769-RJB |
| Plaintiffs/Counter Defendants, | |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant/Counter Claimant. | |

## INTRODUCTION

Using novel legal theories rejected by other courts, the State of Washington ("State") seeks to hold The GEO Group, Inc. ("GEO") responsible for simply performing work it is directed to do under its contracts with the federal government. The State alleges that GEO violates state law by not treating detainees participating in the Voluntary Work Program ("VWP") at the Northwest Detention Center ("NWDC") as employees and by not paying VWP participants

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 1

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

more than $1/day. But the State engages in similar conduct in its own detention facilities, (*see Malone v. Ferguson*, Case No. 19-cv-05574 (W.D. Wash.)) and the undisputed record evidence shows that the State's claims are barred in full by derivative sovereign immunity and federal preemption. And the State's individual claims—for violation of the Washington Minimum Wage Act ("WMWA") and unjust enrichment—also fail as a matter of law.[1]

Derivative sovereign immunity bars the State from bringing claims against GEO that it could not bring against the federal government. GEO is entitled to that immunity here because the conduct challenged by the State was "authorized and directed by the Government of the United States" and GEO "simply performed as the Government directed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940)).[2] GEO undisputedly operates the VWP at NWDC pursuant to the specific authorization and direction of the federal government, specifically the U.S. Department of Homeland Security ("DHS") and its agency Immigration and Customs Enforcement ("ICE"). ICE authorizes GEO's payment of $1/day to detainees for participating in the VWP, and prohibits GEO from treating detainees as employees. By following ICE's direction, GEO is entitled to the same immunity as the federal government.

The State's claims are also preempted because its interpretation of Washington law squarely conflicts with federal law and makes it impossible for GEO to comply with both. The State seeks to hold GEO liable for failing to treat VWP participants as employees under the WMWA, and for being unjustly enriched by failing to pay detainees the "fair market value" of their labor. Federal law, however, expressly prohibits GEO from hiring detainees and treating them as employees. Thus, GEO would have to violate federal law to comply with the State's

---

[1] Due to the current dispositive motion deadline, GEO moves only against the State's claims and expressly reserves its rights to make similar arguments in the consolidated *Nwauzor* action based on additional evidence obtained during discovery in that case.

[2] This Court considered whether derivative sovereign immunity applied in the consolidated case, but held that the issue could not be decided on the pleadings alone. *Nwauzor v. The GEO Grp., Inc.*, No. 3:17-CV-05769-RJB, 2018 WL 4150909, at *1 (W.D. Wash. Aug. 6, 2018).

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 2

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

interpretation of Washington law. Further, the State's interpretation of Washington law presents an obstacle to existing federal law because it undermines Congressional intent by creating an inconsistent national policy on the employment of unauthorized aliens.

The State's attempt to expand the WMWA to apply to federal detainees should also be rejected. Participants in the VWP are not employees as a matter of law under the economic-dependence test applied to the WMWA. The Washington Supreme Court has held that the Fair Labor Standards Act's ("FLSA") economic dependence test is the relevant standard for determining whether a plaintiff is an employee under the WMWA. And in applying the FLSA's economic-dependence test, appellate courts across the country have repeatedly recognized that immigration and pretrial detainees are not employees of the facility where they are in custody because the "economic realities" facing detainees are completely different from a free-market worker. The Washington Court of Appeals has similarly held that voluntary participation in a residential work program—doing almost exactly the same tasks as the VWP participants here—does not qualify as employment under the WMWA.

Finally, the State's unjust enrichment claim fails on the law and the facts. Legally, the detainees (and the State acting on their behalf) have an adequate remedy at law either under the WMWA or contract. Either the detainees are employees under the WMWA and have an adequate remedy under that law, or they are not employees under the WMWA and their adequate remedy at law is through the express contracts they signed prior to participating in the VWP. Factually, the record shows that the VWP is voluntary by its express terms and detainees could have no reasonable expectation of payment of more than $1/day for their participation.

Even if the State's unjust enrichment claim survives, the Court should grant summary judgment precluding the State from seeking disgorgement because that is not available in a claim based on unpaid services. When a plaintiff seeks to recover in unjust enrichment for personal services, the proper remedy is the reasonable value of the services rendered, not the

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 3

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

disgorgement of profits. Accordingly, GEO respectfully asks this Court to grant summary judgment to GEO on all the State's claims.

**STATEMENT OF UNDISPUTED FACTS**

**I.      GEO operates the NWDC under contracts with ICE.**

The United States Congress delegated to DHS, and its agency ICE, the authority to detain aliens the United States has placed into removal proceedings. 8 U.S.C. §§ 1103, 1226, 1231; (Martin Decl. ¶ 5.) To accomplish this mission, Congress further delegated to ICE the authority to use private contractors to operate facilities. *See*, *e.g.*, 8 U.S.C. §§ 1103(a)(11), 1231(a)(2), (g); (Martin Decl. ¶¶ 5-6.) At all relevant times, GEO has operated the NWDC under direct contracts with ICE (or its predecessor agency, Immigration and Nationalization Service ("INS"). (Martin Decl. ¶ 8.)

Beginning in 2005, GEO operated the NWDC under INS contract ACL-2-C-0004 ("2002 ICE Contract").[3] (Martin Decl. ¶ 9, Ex. 1, 2002 ICE Contract.) Starting on October 24, 2009, GEO operated the NWDC pursuant to ICE contract HSCEDM-10-D-00001 ("2009 ICE Contract"). (*Id.* ¶ 10, Ex. 2, 2009 ICE Contract.) From September 28, 2015 through the present, GEO has operated the NWDC under ICE contract HSCEDM-15-D-00015 ("2015 NWDC Contract"). (*Id.* ¶ 11, Ex. 3, 2015 ICE Contract.)

**II.     The ICE contracts mandate that GEO provide a VWP at the NWDC.**

ICE requires GEO to provide detainees the ability to participate in a VWP at the NWDC. (Martin Decl. ¶¶ 19-20.) For example, Section IX of the 2015 ICE Contract directs GEO to "manage a detainee work program," stating in relevant part:

<u>**IX. MANAGE A DETAINEE WORK PROGRAM**</u>

> Detainee labor shall be used in accordance with the detainee work plan developed by [GEO], and will adhere to the ICE PBNDS on Voluntary Work Program. The detainee work plan must be voluntary, and may include

---

[3] GEO's performance under this contract began in 2005 when it acquired the contract awardee, Correctional Services Corp.

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 4

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

work or program assignments for industrial, maintenance, custodial, service, or other jobs. The detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations.

. . . .

It will be the sole responsibility of ICE to determine whether a detainee will be allowed to perform on voluntary work details and at what classification level. All detainees shall be searched when they are returned from work details.

(Martin Decl., Ex. 3, 2015 ICE Contract at § IX, p. 82 (emphasis added); *see also id.*, Ex. 2, 2009 ICE Contract at § IX, p. 89; *id.*, Ex. 1, 2002 ICE Contract at Ch. 6(C), p. 46.)

**III.    The ICE contracts mandate that GEO perform all services related to the VWP in accordance with the applicable ICE Performance-Based National Detention Standards.**

The ICE contracts mandate that GEO perform services at the NWDC in accordance with ICE's Performance Based National Detention Standards ("PBNDS"). In 2000, INS adopted the original detention standards. (Martin Decl. ¶ 14.) ICE promulgated subsequent versions of the PBNDS in 2008, and 2011 (as updated in 2016). (*Id.* ¶ 15.) The 2002 ICE Contract, the 2009 ICE Contract, and the 2015 ICE Contract each incorporated the applicable standards above. (*Id.* ¶¶ 13, 18-23, 36, 39-41; Decl. of Shannon Armstrong in Supp. of GEO's Mot. for Summ. J. ("Armstrong Decl."), Ex. 15, Bingham Dep. at 123:11-14).[4]

The PBNDS provides detainees "opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety security and good order of the facility." (*See* Martin Decl. ¶ 15; Armstrong Decl., Ex. 14, 2011 PBNDS at pp. 81-84.) Specifically, the PBNDS state that the expected outcomes and practices of the VWP are:

- Detainees shall be able to volunteer for work assignments, but otherwise shall not be required to work, except to do personal housekeeping.

- Essential operation and services shall be enhanced through detainee productivity.

---

[4] The 2009 NWDC Contract was modified (PCC017) on May 23, 2013 to incorporate the 2011 PBNDS. The modification required GEO to comply with the 2011 PBNDS within 30 days.

THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-RJB ) - PAGE 5

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

- The negative impact of confinement shall be reduced through less idleness, improved morale, and fewer disciplinary incidents.

- Detainees are required to work according to a schedule, but shall not be permitted to work in excess of 8 hours daily, 40 hours weekly.

- Detainees shall receive compensation of $1.00 per day for work completed in accordance with the facility's standard policy.

- Detainees may be removed from a work detail for unsatisfactory performance, disruptive behavior, inability to physically perform the job, or safety concerns, among other things.

(*Id.*) The 2000 INS Detention Standards state essentially the same outcomes and practices for the VWP as set forth above. (Martin Decl. ¶ 14). The 2011 PBNDS slightly modified the compensation for work performed by detainees in the VWP by setting a floor of at least $1/day. (*Id.* ¶ 15; Armstrong Decl., Ex. 14, 2011 PBNDS at p. 83.)

Additionally, ICE employs a contracting officer's representative ("COR") who works full-time at the NWDC. (*Id.* ¶ 18) The COR's primary duty is to monitor GEO's performance to ensure that all of the technical requirements under the contracts are met by the delivery date or within the period of performance, and at the price or within the estimated cost stipulated in the contracts. (*Id.*)

**IV.     The ICE contracts prohibit detainees at the NWDC from being employees of GEO**.

Detainees are not permitted to be employees of GEO under the ICE contracts. (Martin Decl. ¶¶ 26-30, Ex. 1, 2002 ICE Contract at Chapter 4, pp. 40-41; *id.*, Ex. 2, 2009 ICE Contract at §§ III(B), p. 69, IV(E), p. 77; *id.*, Ex. 3, 2015 ICE Contract at §§ III(B), p. 63, IV(F), pp. 70-71.) The 2015 ICE Contract defines a GEO employee as "[a]n Employee of [GEO] hired to perform a variety of detailed services under this contract." (*Id.*, Ex. 3, 2015 ICE Contract at § I(F)(14), p. 47.) A detainee, however, is defined as "[a]ny person confined under the auspices and the authority of any Federal agency. Many of those being detained may have substantial and varied criminal histories." (*Id.* at § I(F)(20), p. 47; *see also id.*, Ex. 2, 2009 ICE Contract at § I(14) and (20), p. 51; *id.*, Ex. 1, 2002 ICE Contract at § I(B), p. 18.) With respect to the VWP, the ICE contracts

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 6

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    specifically state that: "*Detainees shall not be used to perform the responsibilities or duties of an*

2    *employee of [GEO]*." (*Id.*, Ex. 3, 2015 ICE Contract at § IX, p. 82 (emphasis added); *see also id.*,

3    Ex. 2, 2009 ICE Contract at § IX, p. 89 (same); *id.*, Ex. 1, 2002 ICE Contract at Ch. 6(C), p. 46

4    (identifying detainees as "volunteers").)

5           Additionally, the 2015 ICE Contract requires that any person employed by GEO be a

6    United States citizen or lawful permanent resident. Specifically, ICE requires the following

7    minimum personnel qualification standards for GEO employees in Section III (Personnel) of the

8    contract:

9                    **B. Minimum Personnel Qualification Standards**

10                  [GEO] shall agree that each person employed by the firm or any
11                  subcontractor(s) shall have a social security card issued and approved by
                    the Social Security Administration **and shall be a United States citizen or**
12                  **a person lawfully admitted into the United States for permanent**
                    **residence**, have resided in the U.S. for the last five years . . . , possess a
13                  high school diploma or equivalent (GED), and obtain a favorable Suitability
                    for Employment determination. Each employee of [GEO] and of any
14                  subcontractor(s) must complete and sign a Form I-9, "Employment
                    Eligibility Verification," before commencing work. [GEO] shall retain the
15                  original Form I-9 and shall furnish the COR with a copy of the Form I-9
                    before the employee commences work. [GEO] shall be responsible for acts
16                  and omissions of its employees and of any subcontractor(s) and their
17                  employees.

18   (Martin Decl., Ex. 3, 2015 ICE Contract at § III(B), p. 63 (emphasis added); *see also id.*, Ex. 2,

19   2009 ICE Contract at § III(B), p. 69 (same); *id.*, Ex. 1, 2002 ICE Contract at § 4(D), p. 41

20   (providing employee requirements).)

21          Additionally, the ICE contracts require each GEO employee to be vetted by DHS and

22   specifically prohibit GEO from employing illegal or undocumented aliens. Specifically, Section

23   IV (Background and Clearance Procedures) of the 2015 ICE Contract provides, in relevant part,

24   the following mandate for employee eligibility:

25

26

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 7

**F. EMPLOYEE ELIGIBILITY**

[GEO] will agree that each employee working on this contract will successfully pass the DHS Employment Eligibility Verification (E-Verify) program operated by the USCIS to establish work authorization.
. . . .
[GEO] must agree that each employee working on this contract will have a Social Security Card issued and approved by the Social Security Administration. [GEO] shall be responsible to the Government for acts and omissions of his own employees and for any Subcontractor(s) and their employees.

Subject to existing laws, regulations and/or other provisions of this contract, **illegal or undocumented aliens will not be employed by [GEO], or with this contract**. [GEO] will ensure that this provision is expressly incorporated into any and all Subcontracts or subordinate agreements issued in support of this contract.

(Martin Decl., Ex. 3, 2015 ICE Contract at § IV(F), pp. 70-71 (emphasis added); *see also id.*, Ex. 2, 2009 ICE Contract § IV(E), p. 77 ("Subject to existing law, regulations and/or other provisions of this contract, illegal or undocumented aliens will not be employed by [GEO], or with this contract."); *id.*, Ex. 1, 2002 ICE Contract at § 4(D), p. 41 (providing employee requirements).)

**V.    The ICE contracts dictate that GEO pay detainees $1/day for work in the VWP.**

The 2002 ICE Contract does not expressly state the compensation for detainees participating in the VWP, but does so via incorporation of the 2000 INS Detention Standards. Those standards state that payment to detainees in the VWP "is $1.00 per day, to be paid daily." (Martin Decl. ¶ 32.). As noted above, the 2002 ICE Contract required compliance with the 2000 INS Detention Standards.

The 2009 ICE Contract includes specific Contract Line Item Numbers ("CLINs") for the VWP. (*Id.* ¶ 35.) These CLINs state:

Detainee Volunteer Wages for Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. [GEO] shall not exceed the quantity shown without prior approval by the Contracting Officer.

The amount shown next to the CLINs is $114,975.00. (*Id.*, Ex. 2, 2009 ICE Contract at pp. 6-13.)

THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-RJB ) - PAGE 8

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

The 2015 ICE Contract contains the same language as the 2009 ICE Contract with respect to detainee wages. The CLINs in the 2015 ICE Contract state:

> Detainee Volunteer Wages for Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. [GEO] shall not exceed the quantity shown without prior approval by the Contracting Officer."

(Martin Decl. ¶ 42, Ex. 3, 2015 ICE Contract at pp. 5-38.) The amount shown next to the CLINs is also $114,975.00. (*Id.*) The term "reimbursement" in both the 2009 and 2015 CLINs refers to ICE's obligation to make payments to GEO, and the term "actual cost" in these CLINs refers to the amount GEO would pay detainees for participation in the VWP. (*Id.*; Armstrong Decl., Ex. 15, Bingham Dep. at 48:21-49:9, 74:9-22, 81:9-22; 124:2-21.) GEO was only reimbursed for its payments to detainees after ICE reviewed and approved of the payments. (Martin Decl. ¶ 46.)

## VI.   ICE approved the NWDC Detainee Handbooks and Work Plans that confirm detainees are paid $1/day for participating in the VWP.

ICE issues a National Detainee Handbook with which GEO is required to comply. (*Id.* ¶ 16.) Additionally, ICE requires that GEO issue detainee handbooks specific to the NWDC. (*Id.* ¶ 17.) ICE reviews and approves all of the Detainee Handbooks for the NWDC. (Martin Decl. ¶¶ 16-17, 33-34, 37-38, 43.) The relevant section of the Detainee Handbook provides:

> **Voluntary Work Program**
> Every effort will be made to provide you an opportunity to participate in the voluntary work program. Wages are $1.00 per day. Ordinarily you will not be permitted to work more than eight hours per day or 40 hours per week. Wages earned are calculated and credited to your account, daily.

(Martin Decl., Ex. 10, 2007 NWDC Detainee Handbook at p. 11; *see also* Exs. 4-6, Nat'l and NWDC Detainee Handbooks.)

Similarly, the ICE Contracts mandate that GEO develop a detainee work plan that governs the VWP. (*See e.g.*, Martin Decl., Ex. 3, 2015 ICE Contract at § IX, p. 82 ("Detainee labor shall be used in accordance with the detainee work plan developed by [GEO].").) ICE has reviewed and approved the detainee work plans ("VWP Work Plan") for the NWDC governing

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 9

1    the VWP. The VWP Work Plan states, in relevant part, that "[d]etainees receive monetary

2    compensation for work performed. The stipend is $1.00 per day, regardless of the number of

3    details performed, and will be paid on a daily basis." (Martin Decl. ¶¶ 22-23, 38, 44; *see also*

4    Exs. 7-9, VWP Work Plans.)

5    **VII.    Each participant in the VWP signs an agreement setting their compensation at
              $1/day.**

6

7            Each detainee participating in the VWP receives and signs a "Voluntary Work Program

8    Agreement" ("VWP Agreement"). (*See* Singleton Decl. ¶¶ 3, 8; Ex. 13, VWP Agreement;

     Armstrong Decl., Ex. 16, Henderson Dep. at 85:16-86:5, 139:20-25; *Id.* Ex. 17, 30(b)(6) Kimble

9    Dep. at 46:20-25; *Id.* Ex. 18, Singleton Dep. at 86:19-87:5.) That VWP Agreement provides that

10   "[c]ompensation shall be $1.00 per day" and that the detainee is "volunteering to work and [has]

11   not been threatened, coerced or intimidated into participation." (Singleton Decl., Ex. 13, VWP

12   Agreement.) Although the specific text of the VWP Agreement has changed over time, each

13   version stated that a detainee who chooses to participate in the VWP will be paid $1/day. (*Id.* ¶ 4.)

14   GEO uses the VWP Agreement so that detainees understand the requirements to participate in the

15   VWP (e.g. detainees must obtain a physical in advance), the expectations of the program (e.g. that

16   theft is cause for removal from a work assignment), and the compensation they will receive

17   ($1/day). (*Id.*)

18           Only detainees who have signed the VWP Agreement may participate in the VWP. (*Id.* ¶¶

19   7-8.) Since 2005, every detainee who has worked at NWDC through the VWP has signed a VWP

20   Agreement. (*Id.* ¶¶ 2-3, 8.) ICE has reviewed and approved these agreements. (Martin Decl. ¶¶ 48-

21   49, Ex. 12, excerpts of ICE Inspection Results at p. 41.)

22

23   **VIII.   ICE's inspections of the NWDC confirm that GEO's administration of the VWP
               complies with the ICE contracts and the PBNDS.**

24

25           ICE regularly inspects the NWDC for compliance with the ICE contracts and the PBNDS,

26   including GEO's compliance with the VWP objectives, protocols, and payments. (Martin Decl. ¶¶

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 10

1   47-49.) ICE's inspections confirm that GEO has met its requirements for administering the VWP

2   under both the ICE contracts and the PBNDS. (*Id.*) Specifically, ICE has determined that the

3   detainees' compensation of $1/day for participation in the VWP at the NWDC meets the PBNDS

4   standard. (*Id.*; *see also* Martin Decl., Ex. 12, excerpts of ICE Inspection Results.)

5   **IX.    ICE is the only party able to change the requirements in the ICE contracts.**

6           GEO does not have the ability to unilaterally change any of the requirements in the ICE

7   contracts. On the contrary, ICE reserved the exclusive right to change requirements in the ICE

8   contracts. Specifically, Section G.1.1 of the 2015 ICE Contract provides:

9           The Contracting Officer (CO) is the only person authorized to approve
            changes in any of the requirements under this contract. Notwithstanding any
10          clause contained elsewhere in this contract, the said authority remains with
            the Contracting Officer.
11

12  (Martin Decl., Ex. 3, 2015 ICE Contract at § G.1.1, p. 97; *see also id.*, Ex. 2, 2009 ICE Contract

13  at § G.1.1, p. 23; Martin Decl. ¶ 45.)

14                          **SUMMARY JUDGMENT STANDARD**

15          Summary judgment is proper when the pleadings, documents, and affidavits show that

16  there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

17  matter of law. Fed. R. Civ. P. 56(a). Summary judgment should be granted when the nonmoving

18  party fails to make a sufficient showing on an essential element of a claim on which it has the

19  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). A genuine dispute exists

20  where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

21  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might

22  affect the outcome of the suit under the governing law." *Id.* But factual disputes that are irrelevant

23  or unnecessary may not be considered or provide a basis to deny summary judgment. *Id*.

24  Similarly, "[a] non-movant's bald assertions or a mere scintilla of evidence in his favor are both

25  insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir.

26  2009).

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 11

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1

**ARGUMENT**

2

**I.     GEO is immune from the State's claims because ICE prohibits GEO from treating participants in the VWP as employees and dictates detainees are paid $1/day.**

3

4          Since 2005, GEO has administered the VWP at the NWDC pursuant to the authorization

5   and direction of the United States. Pursuant to the ICE Contracts, applicable federal standards, the

6   NWDC Detainee Handbooks, and the VWP Work Plans, GEO is immune from the State's claims

7   for two independent reasons: (1) ICE prohibits detainees participating in the VWP from being

8   employees of GEO; and (2) ICE specifically authorizes GEO to pay detainees $1/day for work in

9   the VWP.

10         A contractor is entitled to derivative sovereign immunity when it performs work

11  "authorized and directed by the Government of the United States" and the contractor "simply

12  performed as the Government directed." *Campbell-Ewald Co.*, 136 S. Ct. at 673 (citing *Yearsley*,

13  309 U.S. at 20-21). In *Campbell-Ewald*, the Court considered whether a private marketing agency

14  was entitled to derivative immunity from suit under the Telephone Consumer Protection Act for

15  sending unconsented text messages to young adults on behalf of, and based on, a contract with the

16  U.S. Navy. *Id.* at 667, 672. The Court held that qualified derivative immunity is available unless

17  the contractor "violates both federal law and the government's explicit instructions." *Id.* at 672-73

18  (analyzing whether the contractor's conduct violated "clearly established" federal requirements or

19  "explicit" directions from the federal government). In reaching its decision, the Court rejected the

20  Ninth Circuit's "narrow rule" limiting the doctrine to specific types of cases, and noted that the

21  "[c]ritical" factor for immunity is "the contractor's performance in compliance with all federal

22  directions." *Id.* at 673 n.7. Thus, although immunity was potentially available to the contractor,

23  the Court agreed summary judgment was not proper because the record showed that the Navy

24  explicitly directed the contractor to send messages only to individuals who had consented to

25  receive them, so the contractor had not "complied with the Navy's instructions" as required for

26  immunity. *Id.* at 674.

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 12

Applying *Campbell-Ewald* here, GEO is entitled to derivative sovereign immunity because the State's core allegations—that detainees are GEO employees and must be paid more than $1/day—are contrary to express directions to GEO from the federal government. The 2015 ICE Contract mandates that GEO provide a VWP at the NWDC, and directs that "[d]etainee labor shall be used in accordance with the detainee work plan developed by [GEO], and will adhere to the ICE PBNDS on Voluntary Work Program." (Martin Decl., Ex. 3, 2015 ICE Contract at § IX, p. 82; *see also id.*, Ex. 2, 2009 ICE Contract at § IX, p. 89 (same); *id.*, Ex. 1, 2002 ICE Contract at Ch. 6(C), p. 46 ("The contractor shall provide work opportunities for detainee volunteers subject to the approval of the INS.")[5]

At the outset, the ICE Contracts expressly prohibit GEO from employing detainees at the NWDC. (Martin Decl., Ex. 3, 2015 ICE Contract at §§ III(B), p. 63, IV(F), pp. 70-71; *Id.*, Ex. 2, 2009 ICE Contract at §§ III(B), p. 69, IV(E), p. 77; *Id.* ¶¶ 26-30.) For example, the 2015 ICE Contract dictates that detainees participating in the VWP are not employees of GEO, stating the "*[d]etainees shall not be used to perform the responsibilities or duties of an employee of [GEO].*" (Martin Decl., Ex. 3, 2015 ICE Contract at § IX, p. 82 (emphasis added).) The 2009 ICE Contract contains identical language, and the 2002 ICE Contract expressly provides that all detainees are "volunteers." (Martin Decl., Ex. 2, 2009 ICE Contract at § IX, p. 89; *id.*, Ex. 1, 2002 ICE Contract at Ch. 6(C), p. 46.) Additionally, ICE requires that all GEO employees be "a United States citizen or a person lawfully admitted," which, as a matter of law, does not include the detainees at the NWDC because their lack of citizenship or permanent resident status is the reason they are detained within the NWDC. (Martin Decl., Ex. 3, 2015 ICE Contract at § III(B), p. 63); *id.*, Ex. 2, 2009 ICE Contract at § III(B), p. 69; *id.*, Ex. 1, 2002 ICE Contract at § 4(D), p. 41.) Similarly, ICE prohibits GEO from employing any "illegal or undocumented aliens," which again includes the detainees

[5] ICE—not GEO—has the exclusive right to change any requirements in the ICE contracts. (Martin Decl. ¶ 45; *id.*, Ex. 3, 2015 ICE Contract at § G.1.1, p. 97; *id.*, Ex. 2, 2009 ICE Contract at § G.1.1, p. 23.)

THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-RJB ) - PAGE 13

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    while they are housed at the NWDC. (*Id.*, Ex. 3, 2015 ICE Contract at § IV(F); *id.*, Ex. 2, 2009 ICE

2    Contract at § IV(E); *id.*, Ex. 2, 2009 ICE Contract at § 4(D).)

3          Accordingly, ICE has authorized and directed that GEO offer a VWP at the NWDC to

4    provide detainees the opportunity to work, but has also directed that detainees are not, and cannot

5    be, employees of GEO. As a result, GEO is immune from the State's claims, which are premised on

6    the notion that GEO violated state law by not treating detainees participating in the VWP as

7    employees. GEO is following the express direction and authorization of ICE that it *cannot* treat

8    detainees participating in the VWP as employees.

9          An additional, independent basis for immunity is that ICE has authorized and directed GEO

10   to pay detainees $1/day for work in the VWP. The 2015 and 2009 ICE Contracts expressly direct

11   GEO to pay detainees participating in the VWP $1/day: "Reimbursement for [the VWP] will be at

12   the *actual cost* of $1.00 per day per detainee. [GEO] *shall not exceed* the quantity shown without

13   prior approval by the Contracting Officer." (Martin Decl., Ex. 3, 2015 ICE Contract at 5-38; *id.*, Ex.

14   2, 2009 ICE Contract at 6-13; *id.* ¶¶ 35, 42 (emphasis added).) The $1/day compensation is also

15   incorporated in the documents ICE directed GEO to create to administer the VWP at the NWDC—

16   and that ICE approved. (*See* Martin Decl. ¶¶ 16-17, 33-34, 37-38, 43.) For example, GEO's

17   Detainee Handbooks for the NWDC, all directed and approved by ICE, expressly provide that

18   "[w]ages are $1.00 per day" for detainees participating in the VWP. (Martin Decl., Ex. 10 at p. 11,

19   2007 NWDC Detainee Handbook; *see also* Exs. 6 & 11 at p. 15, NWDC Detainee Handbooks.)

20   And the VWP Work Plans—directed and approved by ICE—also provides that "[t]he stipend is

21   $1.00 per day, regardless of the number of details performed . . . ." (*Id.*, Exs. 7-9 at p. 4, VWP

22   Work Plans.)

23         In paying detainees participating in the VWP $1/day, GEO has acted pursuant to the specific

24   direction of ICE, as expressed in the ICE Contracts, the applicable PBNDS standards[6], the NWDC

25   _____

26   [6] Initially, the PBNDS provided that compensation for the VWP is only $1/day. (Martin Decl. ¶¶
     14-15.) In 2011, the PBNDS changed slightly to state that "Detainees shall receive compensation
     of at least $1.00 per day for work completed in accordance with the facility's standard policy."

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 14

1

2

3

4

5

6

7

Handbooks, and VWP Work Plans. ICE has confirmed that GEO's practice of paying detainees $1/day for participation in the VWP is in compliance with the current PBNDS standards and ICE Contracts. (Martin Decl. ¶¶ 46-49; Ex. 12, excerpts of ICE Inspection Results; *see also* Armstrong Decl., Ex. 15, Bingham Dep. at 51:12-18, 128:13-16 (opining that contract is unambiguous and paying more would be a breach of the contract).) Thus, GEO's payment of $1/day is authorized and directed by ICE, and GEO is entitled to derivative sovereign immunity against the State's claims, which are premised on the assertion that GEO must pay the detainees more than $1/day.

8

9

10

11

Accordingly, for two distinct, independent reasons, GEO is entitled to derivative sovereign immunity, and all of the State's claims against it should be dismissed as a matter of law because they arise from the State's core claim that GEO violated state law by not treating detainees as employees and not paying detainees participating in the VWP more than $1/day.

12

**II.     The State's claims are preempted by federal law.**

13

14

15

16

17

"[S]tate laws are preempted . . . where compliance with both federal and state regulations is a physical impossibility, and [in] those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citations and quotation marks omitted). Both forms of preemption—impossibility and obstacle—independently bar the State's claims.[7]

18

19

20

21

22

23

24

25

26

(Armstrong Decl., Ex. 14, 2011 PBNDS at p. 83; Martin Decl. ¶ 15.) Nothing about that change affected the mandatory directive in GEO's contracts with ICE directing payment of $1/day. (*See, e.g.*, Martin Decl., Ex. 3, 2015 ICE Contract at pp. 5-38; *id.*, Ex. 2, 2009 ICE Contract at pp. 6-13.) At most, the change set a floor for compensation of $1/day, and allowed for a hypothetical circumstance when more compensation is permissible if otherwise authorized by the contracts.
[7] Because the Ninth Circuit has held that preemption based on compliance with federal government contracts "is only available to contractors who design and manufacture military equipment," *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015), GEO does not discuss the preemptive force of GEO's contracts here. GEO reserves the right to argue, in future proceedings, that the government-contractor-preemption defense applies to non-military contractors and bars the State's or the Nwauzor class's claims. Similarly, because this Court has held that ICE's VWP policies do not have "the legal force to preempt state law" (Dkt. # 29 at p. 10), GEO does not argue here that such policies—such as the PBNDS requirements that GEO offer the VWP and pay $1 per day—preempt the State's claims, but reserves the right to do so in future proceedings, just as it reserves the right to argue that 8 U.S.C. § 1555(d) preempts state law on detainee wages as a matter of field, impossibility, and obstacle preemption (*see id.* at p. 9).

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 15

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    First, if the State's interpretation of state law is correct—which GEO disputes, *see infra* at

2    pp. 18-21—it would be impossible for GEO to comply with both federal and state law. Under the

3    Immigration Reform and Control Act ("IRCA"), "[i]t is unlawful for a person or other entity . . . to

4    hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien

5    is an unauthorized alien (as defined in subsection (h)(3)) with respect to such employment."

6    8 U.S.C. § 1324a(a)(1)(A). The same prohibition extends to knowingly "obtain[ing] the labor" of

7    an unauthorized alien as an independent contractor. *See id.* § 1324a(a)(4). An "unauthorized alien"

8    "means, with respect to the employment of an alien at a particular time, that the alien is not at that

9    time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so

10   employed by this chapter or by the Attorney General." *Id.* § 1324a(h)(3). It would therefore be a

11   violation of federal law for GEO to hire NWDC detainees in any employment capacity.

12   Yet, the State's claims are premised on GEO's ability to do exactly what federal law

13   prohibits. The State seeks to hold GEO liable for not treating the NWDC detainees as "employees"

14   under the WMWA, but IRCA expressly forbids GEO from "hir[ing]" the detainees "for

15   employment." *See* 8 U.S.C. § 1324a(a)(1)(A); 8 C.F.R. § 274a.1(f), (h). Likewise, the State seeks

16   to hold GEO liable under state unjust enrichment law for not paying the detainees the "fair market

17   value" of their labor (Dkt. # 17 at p. 22), but the detainees are only entitled to "fair market value"

18   if they are employees or independent contractors competing in an open labor market, which IRCA

19   forecloses. These conflicts are not just a matter of whether to label the detainees "employees";

20   IRCA forbids GEO from *treating* the detainees as employees and *according* them the very rights

21   and privileges that the State demands. The State's claims, if accepted, thus put GEO in an

22   impossible bind: it must either (1) treat the detainees as employees entitled to minimum or "fair

23   market value" wages, thus violating IRCA and potentially subjecting itself to criminal penalties,

24   *see* 8 U.S.C. § 1324a(f); or (2) it must decline to treat detainees in this way, thus violating state

25   law. "When federal law forbids an action that state law requires, the state law is without effect."

26   *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 486 (2013) (quotation marks omitted).

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 16

1    Second, the State's claims are independently barred by obstacle preemption. "Congress

2    enacted IRCA as a comprehensive framework for combating the employment of illegal aliens."

3    *Arizona*, 567 U.S. at 404 (quotation marks omitted). As the Supreme Court detailed in *Arizona*,

4    Section 1324a(a) is part of that comprehensive framework. *See id.* The State asks this Court to

5    essentially award backpay to the detainees via *parens patriae* standing, but the Supreme Court has

6    already held that "awarding backpay to illegal aliens runs counter to policies underlying IRCA,"

7    "trivializes the immigration laws," and "condones and encourages future violations." *Hoffman*

8    *Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 149–50 (2002).

9    Moreover, by forcing GEO to treat unauthorized aliens as employees for purposes of state

10   law, the State's claims would permit all fifty states to dictate the employment status of unauthorized

11   aliens via minimum wage laws, unjust enrichment laws, and other employment regulations. The

12   result would be an inconsistent national policy on the employment of unauthorized aliens, contrary

13   to Congress's "comprehensive framework for combating" such employment. *Arizona*, 567 U.S. at

14   404. Indeed, *the State itself has argued* that the laws it seeks to enforce here would influence

15   whether employers would hire unauthorized aliens. (*See* Dkt. # 17 at p. 16.) It would be just as

16   absurd to permit States to dictate the employment status of unauthorized aliens in federal custody as

17   it would be to permit States to dictate the employment status of convicted felons in federal prisons.

18   Even if these laws do not contradict Congress's goal of prohibiting the employment of

19   unauthorized aliens (which they clearly do, by forcing employers to treat such aliens as employees,

20   *see Hoffman*, 535 U.S. at 149–50), "[a] state law also is pre-empted if it interferes with the *methods*

21   by which the federal statute was designed to reach that goal." *Gade v. Nat'l Solid Wastes Mgmt.*

22   *Ass'n*, 505 U.S. 88, 103 (1992) (plurality) (emphasis added). That is why the Supreme Court in

23   *Arizona* held the state law preempted even though it "attempt[ed] to achieve one of the same goals

24   as federal law—the deterrence of unlawful employment." 567 U.S. at 406. In the same way,

25   Washington laws—as interpreted by the State—"would interfere with the careful balance struck by

26   Congress with respect to unauthorized employment of aliens" even if it *disincentivized* the

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 17

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

employment of unauthorized aliens. *Id.* And, of course, because application of Washington's laws actually *undermines* Congress's framework, it is an even greater obstacle, and it cannot stand.

### III.   The WMWA does not apply to detainees participating in the VWP at the NWDC.

Even if GEO were not immune from suit here and the State's claims were not preempted, GEO is entitled to summary judgment on the State's minimum wage claims because detainees do not satisfy the economic dependence test under the WMWA. The Washington Supreme Court has explicitly held that the WMWA's definition of employee "incorporates the economic-dependence test developed by the federal courts in interpreting the FLSA." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 871 (2012). In *Anfinson*, the court explained that it had "repeatedly recognized that the [W]MWA is based on the Fair Labor Standards Act of 1938" and, as a result, "when a state statute is taken substantially verbatim from a federal statute, it carries the same construction as the federal law and the same interpretation as federal case law." *Id.* at 868 (internal quotations omitted). Thus, to establish an employer/employee relationship under the WMWA, a plaintiff must satisfy both the plain language of the WMWA and the FLSA's economic-dependence test. Under that test, also known as the economic realities test, a plaintiff must establish that he or she is dependent upon the business to which he or she renders service. *Id.* at 869. And although courts have identified numerous factors for this inquiry, "[t]he determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity." *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 198 (2014) (internal quotations omitted).

Courts applying the economic dependence test to voluntary work programs have found that immigration detainees are not employees. For example, the only federal appellate court to address the question directly has held that a detainee participating in a $1/day voluntary work program is not an employee under the FLSA. *See Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395–97 (5th Cir. 1990) (noting the FLSA is meant "to protect the standard of living and general well-being of the worker in American industry," and because detainee volunteers are "removed

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 18

from American industry" they are "not within the group that Congress sought to protect by enacting the FLSA"). Similarly, in *Whyte v. Suffolk County Sheriff's Dep't*, the Massachusetts Court of Appeals found that its state wage laws (similarly modeled after the FLSA) did not apply to detainees participating in a voluntary work program. No. 16-P-751, 2017 WL 2274618, at *1-2 (Mass. App. Ct. May 24, 2017). The court explained that the detainees' economic reality did not implicate the primary goals of wage laws: "ensuring a basic standard of living and preventing wage structures from being undermined by unfair competition in the marketplace." *Id.* at *1. And the District of Colorado rejected virtually identical claims against GEO, holding that "because immigration detainees, like prisoners, do not use their wages to provide for themselves, the purposes of the [state minimum wage law] are not served by including them in the definition of employee." *Menocal v. GEO Group, Inc*., 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015).

Federal appellate courts across the country have also held that similarly-situated pretrial detainees are not employees under the FLSA's economic dependence test. *See Tourscher v. McCullough*, 184 F.3d 236, 243–44 (3d Cir. 1999) (applying economic realities test in holding that the plaintiff's "employment bears no indicia of traditional free-market employment [thus the] minimum wage requirements of the FLSA do not apply to [the plaintiff] or other similarly situated pretrial detainees"); *Villarreal v. Woodham*, 113 F.3d 202, 206–07 (11th Cir. 1997) (holding pretrial detainee's relationship with detention facility was custodial not an employment relationship, and "[t]here was no bargained-for exchange of labor which occurs in a true employer-employee relationship"). In *Villarreal*, 113 F.3d at 207, the Eleventh Circuit explained:

> [f]ocusing on the economic reality of the situation in its entirety, we conclude that [the plaintiff] is not an 'employee' under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets [the plaintiff's] needs, his 'standard of living' is protected.

And finally, Washington courts have rejected similar WMWA claims under the FLSA's economic-dependence test. For example, in *Lafley v. SeaDruNar Recycling, L.L.C.*, the

THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-RJB ) - PAGE 19

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

Washington Court of Appeals considered whether patients in a private drug and alcohol rehabilitation program were employees under the WMWA. 138 Wn. App. 1047, 2007 WL 1464433, at *1 (2007) (unpublished). Patients performed various jobs at the rehabilitation facility, including cooking, laundry, cleaning, and building maintenance, for approximately 40 hours per week. *Id.* To participate in the work program, patients submitted an application agreeing they "will receive no monetary gain for this volunteer service" and that they agree to follow all applicable rules, regulations and safety procedures. *Id.* at *2. In affirming the trial court's dismissal of the plaintiff's claims under the WMWA on summary judgment, the court found that the patients "had no express or implied agreement with the Recycling Center that they would be compensated for participating in work therapy at the Recycling Center." *Id.* at *4. Applying the economic dependence test, the court explained that because the plaintiff established "no promise or expectation of compensation for the time she spent at the Recycling Center and because [plaintiff] volunteered for her own purposes . . . she was not an 'employee.'" *Id.* at * 4; *see also Rocha v. King County*, 7 Wn. App. 2d 647, 658 (2019) (holding jurors were not employees under WMWA, noting that despite plaintiffs' focus on the degree of control, "even considering the economic-dependence test, [it] does not transform the fundamental nature of jury service as a civic duty").

Similarly here, detainees participating in the VWP at NWDC do not satisfy the economic dependence test. First, as recognized by the courts in *Alvarado Guevara*, *Whyte*, and *Menocal*, GEO is required to provide for detainees' needs and thus detainees are not economically dependent on the wages earned by the VWP to ensure their standard of living. GEO provides detainees all necessary essentials including housing, food, clothing, bedding, personal hygiene items, and medical care. (Armstrong Decl., Ex. 14, 2011 PBNDS at §§ 4.1-4.5; *see also* Martin Decl., Ex. 12, excerpts of ICE Inspection Results.) Second, detainee participation in the VWP is not at all like traditional free-market employment because they are volunteers for a federally-mandated program designed for their benefit. As stated in the PBNDS, "[d]etainees shall be provided the opportunity to participate in a [VWP]." (Armstrong Decl., Ex. 14, 2011 PBNDS at § 5.8(V)(A).) The ICE

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 20

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

contracts require GEO to implement a VWP and explicitly prohibit GEO from employing detainees. (Martin Decl., Ex. 3, 2015 ICE Contract at § IX, p. 82; Armstrong Decl., Ex. 14, 2011 PBNDS at § 5.8.) Detainees are advised that they can choose to participate in the VWP: the NWDC Detainee Handbook, provided to every detainee, explains that "[e]very effort will be made to provide you with an opportunity to participate in the voluntary work program." (Martin Decl. ¶ 37, Ex. 11, 2015 NWDC Detainee Handbook at p. 15.) Participation in the VWP is not through a competitive hiring process—or even driven by supply and demand—instead any detainee who meets the basic requirements for that particular position can fill out an application and is then put on the job roster for that position. (Armstrong Decl., Ex. 18, Singleton Dep. at 80:7-12, 82:17-23, 156:6-22; *Id.* Ex. 19, Scott Dep. at 39:17-25, 156:16-157:4.) Finally, detainees who participate in the VWP have no reasonable expectation of compensation beyond a $1/day. Detainees who participate in the VWP sign an agreement acknowledging that their participation is voluntary, and agree that their only compensation will be a $1/day. (*See* Singleton Decl. ¶¶ 3-8; Ex. 13, VWP Agreement.) The NWDC Detainee Handbook also confirms the compensation is $1/day. (Martin Decl., Exs. 7-9, VWP Work Plans.) Considering the circumstances and fundamental nature of the VWP, detainees who volunteer to participate in the VWP are not employees under the economic dependence test, and thus the State's claims arising from WMWA fail as a matter of law.

## IV.     GEO is entitled to summary judgment on the State's unjust enrichment claim.

The State's claim for unjust enrichment fails in its entirety for two independent reasons. First, the State may not seek the equitable remedy of unjust enrichment because the detainees— the persons who allegedly conferred a benefit on GEO—already have an adequate remedy at law. Either the detainees are employees under the WMWA and have an adequate remedy under that law, or they are not employees under the WMWA and their adequate remedy at law is through the express contracts they signed prior to participating in the VWP. Second, the State's unjust enrichment claim fails because the VWP is voluntary by its express terms and the detainees could not expect more compensation than the $1/day promised by GEO in the express contracts

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 21

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

detainees signed in order to participate in the VWP. As a result, GEO's conduct is not unjust as a matter of law. Alternatively, if any aspect of the State's unjust enrichment claim remains for trial, GEO is entitled to partial summary judgment precluding the State from obtaining a disgorgement remedy because that remedy is inapplicable to a claim for personal services (like the detainees' participation in the VWP).

**A.      The State cannot establish unjust enrichment because the detainees have an adequate remedy at law through the WMWA or by contract.**

Unjust enrichment is an equitable remedy that is inapplicable when, like here, the aggrieved party has an adequate remedy at law. *See Seattle Prof. Eng'g Employees Ass'n v. Boeing*, 139 Wn.2d 824, 839 (2000) (holding employees not entitled to restitution for alleged unjust enrichment because WMWA provides adequate remedy); *Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 498 (1986) ("Equitable relief is available if there is no adequate remedy at law."). In *Boeing*, a class of employees sued their employer for failing to compensate them for time spent attending mandatory orientation sessions. *Boeing*, 139 Wn.2d at 826. The Washington Supreme Court held that the employees were entitled to compensation through the WMWA, but not through any equitable remedy like unjust enrichment. *Id.* In making that decision, the court explained that Washington's wage statutes (RCW Ch. 49) provide for a number of remedies for an employer's failure to pay compensation, and therefore the employees had an adequate remedy through those statutes. *Id.* at 830-31, 839. As such, the court denied any equitable relief, noting that employees covered by the WMWA "had an adequate remedy under the WMWA," and employees exempt from the WMWA had an adequate remedy at law through related statutes (RCW Ch. 49.52). *Id.* at 838–39.

Similarly here, the State alleges that the WMWA applies to the detainees at NWDC. (Compl. ¶¶ 7.1-7.3.) If the Court agrees and finds the detainees are employees under the WMWA—which GEO disputes, *see supra* pp. 18-21—the State has an adequate remedy at law through the WMWA and the State's unjust enrichment claim must be dismissed.

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 22

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

But if the detainees are not employees under the WMWA, unjust enrichment is still unavailable because the adequate remedy at law is through the individual contracts between GEO and the detainees. "Under Washington law, a party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Plymouth Grain Terminals, LLC v. Lansing Grain Co., LLC,* No. 10-CV-5019-TOR, 2013 WL 12177037, at *11 (E.D. Wash. Dec. 20, 2013) (granting summary judgment on unjust enrichment claim); *see also Mastaba, Inc. v. Lamb Weston Sales, Inc*., 23 F. Supp. 3d 1283, 1295 (E.D. Wash. 2014) (same where contract governed services performed and payment for those services).

The undisputed facts here show that each detainee signed an agreement expressly stating that they would receive $1/day for participation in the VWP at the NWDC. (Singleton Decl. ¶¶ 3, 8.) Specifically, those contracts provide that each detainee's "[c]ompensation shall be $1.00 per day." (*Id.*, Ex. 13, VWP Agreement.) In contravention of the express agreement between GEO and the detainees, the State seeks a judgment declaring that GEO has been unjustly enriched by failing to pay detainees adequate compensation for participation in the VWP at the NWDC. (Compl. ¶ 7.5.) Simply put, the State's claim for unjust enrichment is precluded by the express contracts between GEO and the detainees who chose to participate in the VWP. In conclusion, the State's unjust enrichment claim fails as a matter of law because the claimed injury—failing to pay minimum wage to the detainees participating in the VWP—has an adequate remedy at law through the WMWA or by the express terms of the agreements between GEO and the detainees.

**B.     GEO's conduct is not unjust as a matter of law because all participation in the VWP was voluntary and the detainees did not expect compensation above the $1/day set forth in the express contracts.**

The State's unjust enrichment claim also fails because detainees volunteered for the VWP and could not expect more than the $1/day promised in the VWP agreements. A plaintiff may not claim unjust enrichment if it volunteered its services without an expectation of payment. *See, e.g.*, *Osborn v. Boeing Airplane Co*., 309 F.2d 99, 102 & n.6 (9th Cir. 1962) ("Thus, an

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 23

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    obligation to pay, ordinarily will not be implied in fact or by law if it is clear that there was

2    indeed no expectation of payment"); *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165 (1989)

3    ("First, the enrichment of the defendant must be unjust; and second, the plaintiff cannot be a

4    mere volunteer.").

5         Here, the undisputed record shows that the VWP is voluntary by its express terms. As

6    stated above, detainees choose to participate in the VWP and sign an agreement prior to being

7    assigned work at the NWDC. The VWP Agreement executed by detainees expressly

8    acknowledge that detainees are not forced to participate in the VWP. (Singleton Decl., Ex. 13,

9    VWP Agreement.) Additionally, GEO never forced detainees to participate in the VWP. For

10   example, detainees chose whether they wanted to participate in the VWP generally and whether

11   to work on a particular day. (Armstrong Decl., Ex. 20, Griffin Dep. at 61:22-62:2; *Id.* Ex. 18,

12   Singleton Dep. at 169:19-171:2.) Detainees could leave a shift early or arrive late without

13   discipline. (*Id.*, Ex. 20, Griffin Dep. at 62:16-63:6; *see also Id.* Ex. 17, 30(b)(6) Kimble Dep. at

14   37:6-9; *Id.* Ex. 19, Scott Dep. at 43:19-44:1; *Id.* Ex. 18, Singleton Dep. at 195:20-196:22,

15   200:21-201:13.) Additionally, it is undisputed that detainees received all their housing, food,

16   clothing, etc. from GEO, so they did not need to participate in the VWP to obtain those

17   essentials. (Armstrong Decl., Ex. 14, 2011 PBNDS at §§ 4.1-4.5.) In fact, most detainees

18   participated in the VWP for the opportunity to feel useful and leave their pod, not for the $1

19   compensation. (Armstrong Decl., Ex. 20, Griffin Dep. at 72:21-73:10.)

20        Additionally, detainees could not reasonably expect compensation above the $1/day

21   mandated in the agreements between GEO and detainees participating the VWP at the NWDC.

22   In addition to the agreements, GEO explained to detainees that they would be paid $1/day for

23   participating in the VWP, and each detainee received a Detainee Handbook explaining that

24   compensation would be $1/day for the VWP. (Martin Decl. ¶ 47, Ex. 11, 2015 NWDC Detainee

25   Handbook.) Thus, detainees participating in the VWP understood and expected to receive

26   $1/day.

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 24

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1

**C.      The State cannot recover disgorgement of profits.**

2      Even if some aspect of the State's unjust enrichment claim survives, this Court should

3   preclude the State from seeking disgorgement because that is not available in a claim based on

4   unpaid services. When a plaintiff seeks to recover in unjust enrichment for personal services, the

5   proper remedy is the reasonable value of the services rendered, not the disgorgement of profits.

6   *See, e.g.*, *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056,

7   1076 (9th Cir. 2005) (noting a plaintiff recovers "the reasonable value of the services provided"

8   under Washington law); *Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2016 WL 7508843,

9   at *5 (E.D. Wash. July 8, 2016) (rejecting disgorgement remedy and applying "value-of-services

10   provided" for unjust enrichment claim based on unpaid services); *Kerr v. King County*, 42 Wn.2d

11   845, 854 (1953) (applying reasonable value of services for unjust enrichment claim based on

12   unpaid wages claim). As such, to the extent the State may proceed on its unjust enrichment claim,

13   it may only recover the value of services provided by the detainees, not disgorgement.

14                              **CONCLUSION**

15      This Court should grant summary judgment because GEO is immune from suit based on

16   the derivative sovereign immunity of the federal government that directed GEO not to treat the

17   detainees as employees and to pay $1/day as part of the VWP. Even if the Court finds otherwise,

18   GEO is entitled to summary judgment on all the State's claims because they are preempted by

19   federal law, the detainees are not employees under the WMWA, and the State cannot establish

20   unjust enrichment as a matter of law. Alternatively, if any aspect of the  unjust enrichment claim

21   remains, this Court should preclude the State from seeking a disgorgement remedy.

22      Dated:  July 2, 2019

23                                    HOLLAND & KNIGHT LLP

24

25                              By:   *s/ Shannon Armstrong*
                                     J. Matthew Donohue, WSBA # 52455
26                                   matt.donohue@hklaw.com
                                     Shannon Armstrong, WSBA # 45947

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 25

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

shannon.armstrong@hklaw.com
Kristin M. Asai, WSBA #49511
kristin.asai@hklaw.com
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

Carolyn P. Short (admitted *pro hac vice*)
carolyn.short@hklaw.com
Holland & Knight LLP
Cira Center, 2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215.252.9535
Fax: 215.867.6070

*Attorneys for The GEO Group, Inc.*

THE GEO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST THE STATE OF
WASHINGTON (3:17-CV-05806-RJB; 3:17-CV-05769-
RJB ) - PAGE 26

1

CERTIFICATE OF SERVICE

2

    I hereby certify that I caused the foregoing THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THE STATE OF WASHINGTON to be served on the following person[s]:

3

4

La Rond Baker
Marsha Chien
Andrea Brenneke
Lane Polozola
Patricio Marquez
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
larondb@atg.wa.gov
marshac@atg.wa.gov
andreab3@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

*Attorneys for State of Washington*

5

6

7

8

9

10

11

Devin T. Theriot-Orr
Open Sky Law PLLC
20415 72nd Avenue S, Suite 110
Kent, WA 98032
devin@opensky.law

*Attorneys for Plaintiffs/Counter Defendants*

R. Andrew Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com

*Attorneys for Plaintiffs/Counter Defendants*

12

Jamal N. Whitehead
Adam J. Berger
Lindsay L. Halm
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
whitehead@sgb-law.com
berger@sgb-law.com
halm@sgb-law.com

*Attorneys for Plaintiffs/Counter Defendants*

13

14

15

16

17

Meena Pallipamu Menter
Menter Immigration Law PLLC
8201 164th Avenue NE, Suite 200
Seattle, WA 98052
meena@meenamenter.com

*Attorneys for Plaintiffs/Counter Defendants*

18

by causing the document to be delivered by the following indicated method or methods:

19

☑    by CM/ECF electronically mailed notice from the Court on the date set forth below.

20

☐    by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

21

22

☐    by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

23

24

DATED: July 2, 2019.

*s/ Kristin M. Asai*
Kristin M. Asai

25

26

CERTIFICATE OF SERVICE - PAGE 1

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300