The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | PLAINTIFF STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND DEFENDANT THE GEO GROUP, INC.'S PREEMPTION DEFENSE |
| THE GEO GROUP, INC., | |
| Defendant. | |
| | NOTE ON MOTION CALENDAR: JULY 26, 2019 |
| | ORAL ARGUMENT REQUESTED |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 2

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2

   A.  The NWDC Is a Privately Owned and Operated Detention Facility ........................ 2

   B.  GEO's Contract Requires It to Provide Detention Services in Accordance With ICE Detention Standards and State Law ............................................... 3

   C.  GEO Operates the Voluntary Work Program According to Policies and Payment Rates That GEO Developed ............................................................... 3

   D.  Detainee Workers Perform a Wide Range of Work at the NWDC .......................... 5

      1.  GEO Hires, Assigns, Trains, Manages, and Terminates Detainee Workers According to Its Company Policies ...................................... 5

      2.  Detainee Workers Prepare and Serve all Meals for the Detainee Population ....................................................................................... 7

      3.  Detainee Workers Wash all Detainee Clothing, Bedding, and Laundry from the Medical Unit ....................................................... 9

      4.  Detainee Workers Perform Janitorial Functions in the Secure Part of the NWDC ...................................................................... 10

      5.  Detainee Workers Operate the NWDC's Barbershop ................................... 11

      6.  Detainee Workers Perform Ad Hoc Facility Maintenance ............................ 12

III. SUMMARY JUDGMENT STANDARD ........................................................... 13

IV. ARGUMENT ..................................................................................................... 13

   A.  GEO Has an Employee-Employer Relationship With Detainee Workers ............... 14

      1.  Detainee Labor at the NWDC Is Employment Under the Regulatory Factors ............................................................................ 15

         a.  GEO exerts complete control over detainee workers ............................... 15

         b.  GEO supervises detainee workers' performance in the NWDC ............... 17

         c.  GEO has the authority to determine the pay rates of detainee workers .... 18

         d.  GEO can hire and fire detainee workers and modify the VWP's working conditions ........................................................... 18

         e.  GEO prepares and administers detainee workers payroll ........................ 20

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

2.   GEO Is an Employer of Detainee Workers Under Functional Factors ............ 20

B.   Summary Judgment Should Issue Against GEO's Preemption Defense................ 23

V.   CONCLUSION ........................................................................................................ 24

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1

## TABLE OF AUTHORITIES

2

### Cases

3

*Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289 (Wash. 2012) ..................... 13, 14

4

*Becerra v. Expert Janitorial, LLC*, 332 P.3d 415 (Wash. 2014) ......................................... 14, 15

5

*Berry v. Transdev Services, Inc.*, No. C15-01299-RAJ, 2017 WL 1364658 (W.D. Wash.
   Apr. 14, 2017) ........................................................................................................................ 17, 23

6

*Boardman v. Inslee*, 354 F. Supp. 3d 1232 (W.D. Wash. 2019) ............................................... 13

7

*Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) ............................ 21

8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 13

9

*Chicanos Por La Causa v. Napolitano*, 558 F.3d 856 (9th Cir. 2009) ..................................... 24

10

*Hill v. Xerox Bus. Servs., LLC*, 426 P.3d 703
   (Wash. 2018) ............................................................................................................................... 14

11

*Krechman v. County of Riverside*, 723 F.3d 1104 (9th Cir. 2013) ........................................... 13

12

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ................................................................... 13

13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................... 13

14

*Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748 (9th Cir. 1979) ................................ 14

15

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ........................................................ 22

16

*Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997) ................................................ 16, 21, 22, 23

17

### Statutes

18

Wash. Rev. Code § 49.46.005 ..................................................................................................... 14

19

Wash. Rev. Code § 49.46.020(1) ................................................................................................. 14

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

## I.    INTRODUCTION

Defendant, The GEO Group, Inc. (GEO), is a private, for-profit corporation specializing in private detention facilities. It operates the Northwest Detention Center (NWDC), in Tacoma, Washington, on the backs of civil detainees awaiting their immigration proceedings. The detainees—who have no other way to earn income—work in the kitchen to prepare and provide three daily meals for up to 1,575 detainees; wash the clothes and bedding of all detainees who reside in the facility; provide barbering services to detainees; clean the restrooms and common areas of the living units; buff floors and paint; and otherwise maintain the facility. GEO controls, supervises, and benefits from its large-scale detainee workforce. Based on the law and the overwhelming, undisputed evidence GEO is in a textbook employment relationship with its detainee workers. Yet, GEO pays detainee workers only $1 per day, regardless of the length of their shift. That is a violation of Washington's Minimum Wage Act (MWA) that is not preempted by federal law. The Court should dismiss GEO's preemption defense and grant summary judgment on Washington's MWA claim.[1]

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The NWDC Is a Privately Owned and Operated Detention Facility

GEO has operated the NWDC in Tacoma, Washington since November 2005. *See* Declaration of La Rond Baker in Support of Plaintiff State of Washington's Motion for Summary Judgment on Minimum Wage Act Claim and Defendant GEO's Preemption Defense (Baker Decl.) ¶ 3, Ex. A (Responses to Requests for Admissions (RFAs) 1-2); *id.* ¶ 4, Ex. B at 3. GEO owns and operates the NWDC. *See id.* ¶ 3, Ex. A (RFAs 1-6). At the NWDC, GEO contracts with U.S. Immigration and Customs Enforcement (ICE) to provide "detention management services," including daily bed space for up to 1,575 immigrant detainees.[2] *Id.* ¶ 5, Ex. C (GEO-ICE Contract) at 45. *See also id.* ¶ 6, Ex. D at 1.

---

[1] Washington conferred with *Nwazour v. Geo Group, Inc.* who did not object to the filing of this motion.
[2] The NWDC opened in April 2004, "with 500 contractual beds[.]" *See* Baker Decl. ¶ 6, Ex. D at 1. GEO has periodically increased the NWDC's capacity. *Id.* In July 2006, GEO raised the NWDC's capacity from 500 to 800

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

**B.    GEO's Contract Requires It to Provide Detention Services in Accordance With ICE Detention Standards and State Law**

Pursuant to its 2015 detention contract with ICE (the GEO-ICE Contract), GEO is required to "perform in accordance with" specific "statutory, regulatory, policy, and operational" constraints, including the ICE/DHS Performance Based National Detention Standards (PBNDS) and applicable federal, state, and local laws—including "state and local labor laws[.]"*Id.* ¶ 5, Ex. C at 43-44. "Should a conflict exist between any of these standards," GEO must comply with "the most stringent" law or standard.[3] *Id.* at 52.

The GEO-ICE contract addresses GEO's management of a detainee work program at the NWDC. *Id.* at 82. It explains that "[d]etainee labor shall be used in accordance with the detainee work plan developed by the Contractor," and will adhere to the PBNDS on Voluntary Work Program.[4] *Id.* The contract further requires that the detainee work program not conflict with any other requirements of the contract and must comply with all applicable laws. *Id.*

**C.    GEO Operates the Voluntary Work Program According to Policies and Payment Rates That GEO Developed**

Approximately 470 detainees work in the NWDC each day. *Id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 157:6-9). GEO utilizes this detainee labor through the Voluntary Work Program (VWP). GEO is responsible for development and administration of the VWP. *Id.* 11, Ex. I; ECF 91 ¶ 12 (Decl. of Assistant Director, Custody Management Division, Enforcement and Removal Operations for ICE, Tae Johnson) (affirming that VWP work plan and policies are

---

beds. *Id.* In January 2008, GEO grew the NWDC's capacity to 1,000 beds. *Id.* In October 2009, GEO again renovated the facility to increase its capacity "to 1,575 [beds] as it currently stands." *Id.*; *see also id.* ¶ 5, Ex. C at 2. As GEO increased the NWDC's capacity, it has also increased the number of detainee workers it utilizes to operate the NWDC. *Id.* ¶ 8, Ex. F (Deposition Transcript of William McHatton (McHatton Dep) 35:13-36:3); *id.* ¶ 9, Ex. G (Deposition Transcript of Bertha Henderson (Henderson Dep.) 61:25-63:12).

[3] GEO recently affirmed its legal obligations to comply with "local, state, or federal law" in a certificate of compliance that it provided to the City of Tacoma. *Id.* ¶ 10, Ex. H (Certificate of Compliance dated March 6, 2017).

[4] The Voluntary Work Program policy is part of GEO's "Policy and Procedure Manual" chapter on "Detainee Services and Programs," No. 5.1.2 (VWP Policy). *Id.* ¶ 11, Ex. I.

---

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    developed and managed by GEO). *See also* Baker Decl. ¶ 8, Ex. F (McHatton Dep. 12:10-13,

2    16:6-9, 16:18-17:1, 17:5-10, 18:5-10) (GEO's former Associate Warden for Security

3    explaining that he—not ICE—drafted GEO's VWP policy for the NWDC).

4         The VWP provides detainees opportunities to work and earn money while detained. *Id.*

5    ¶ 11, Ex. I (VWP Policy). The money detainee workers "earn[] through the program . . . allows

6    [them] to buy commissary goods, and pay for phone calls, etc." ECF 91, ¶ 11. According to

7    GEO's policy, detainees are "required to work as scheduled." Baker Decl. ¶ 11, Ex. I at 4. The

8    "normal schedule workday for a detainee employed full-time is a maximum of 8 hours" and

9    "40 hours weekly." *Id.* "Unexcused absences from work or unsatisfactory work performance

10   may result in removal from the voluntary work program." *Id.*; *see id.* at 4-5 (noting that

11   "[d]isruptive behavior" or "[p]hysical inability to perform all functions required by the job"

12   may also result in removal "for cause"). *See also id.* ¶ 14, Ex. L.

13        The GEO-ICE contract requires the VWP to comply with the PBNDS. *Id.* ¶ 5, Ex. C at

14   82. The PBNDS, in turn, provides that "[d]etainees shall receive monetary compensation for

15   work completed" of "at least $1.00 (USD) per day." *Id.* ¶ 16, Ex. N (PBNDS 5.8(V)(K)). GEO

16   has the option to pay detainee workers more than $1 per day. *Id.* ¶ 17, Ex. O (GEO's Responses

17   to Washington's Second RFAs (RFA 67)) (admitting "that GEO has the option to pay more

18   than $1 per day to detainee workers for work performed in the VWP"); *id.* ¶ 18, Ex. P at 2

19   (NWDC leadership confirming that the PBNDS "doesn't say that we don't have the option to

20   pay more [than $1.00 per day] if we like"); *id.* ¶ 19, Ex. Q (ICE confirming that "there is no

21   maximum" rate of compensation in the VWP); *id.* ¶ 20, Ex. R (minutes of May 2012 meeting

22   of NWDC leadership stating "Payment for kitchen workers are flexible under the new

23   PBNDS"). Yet, except in limited circumstances, GEO chooses to pay detainee workers $1 per

24   day for their labor. *Id.* ¶ 21, Ex. S (VWP Agreement).

25        GEO acknowledges that it has periodically exercised its authority to pay detainee

26   workers more than $1 per day when GEO determined that the circumstances warranted it. *See*,

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

4

*e.g.*, *id.* ¶ 17, Ex. O (RFAs 58-59) (more than $1 per day when detainees worked more than one "detail" per day); *id.* (RFAs 56, 60) (payment of more than $1 per day, including payments of $5 per day). GEO also periodically provided detainee workers with extra compensation in the form of extra food. *id.* (RFAs 71-72). GEO has offered detainee workers greater meal portions if they work in the kitchen and sometimes sack lunches or snacks if they participate in overnight cleaning crews. *See id.* ¶ 22, Ex. T (Deposition Transcript of Bruce Scott (Scott Dep.) 130:3-132:4); *id.* ¶ 23, Ex. U (Henderson Dep. 74:5-10; 94:9-21). [5]

**D.     Detainee Workers Perform a Wide Range of Work at the NWDC**

**1.     GEO Hires, Assigns, Trains, Manages, and Terminates Detainee Workers According to Its Company Policies**

GEO maintains a Classifications Department consisting of two GEO officers. *See id.* ¶ 25, Ex. W (Singleton Dep. 15:4-18). Together, they manage the VWP and are responsible for hiring and assigning detainee workers to positions. *See id.* (Singleton Dep. 21:3-14); *id.* ¶ 11, Ex. I (VWP Policy at 3) (discussing the factors GEO's "work program supervisor" will consider when "hiring a detainee as a worker"). GEO maintains detainee job description forms that specify the "work duties," "normal work hours," "training requirements," and other details of available positions. *Id.* ¶ 26, Ex. X (detainee job descriptions).

There is a variety of detainee jobs at the NWDC including the kitchen and janitorial jobs that are performed inside and outside the detainees' living units. *See id.* ¶ 27, Ex. Y (chart listing number of detainee workers by position); *see also id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 150:4-152:19) (explaining how to read chart). Janitorial jobs are available the kitchen, laundry, recreation areas, intake, visitation rooms, barber shop, medical unit, as well as the main hallway, also known as the "Grey Mile." *See id.* ¶ 26, Ex. X (detainee job descriptions for

---

[5] *Id.* ¶ 24, Ex. V (Declarations of John Patrick Griffin (Griffin Decl.), Brian Strong (Strong Decl.), Sean McCreery (McCreery Decl.), Orlando Zavalza Marquez (Marquez Decl.), Manuel Riveron Pina (Pina Decl.), Jesus Lopez Paez (Paez Decl.), Noe Baltazar Noe, Karla Gomez de Soto, Judith Chavez Ortiz).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

"Cook/Prep/Server," "Dishwasher/Pots & Pans," "Laundry Worker," "Barber," "Barbershop Cleaner," "Pod Porter," and "Medical Cleaning"); *id.* ¶ 13, Ex. K (Singleton Dep. 61:5-16). *See also id.* ¶¶ 28-37, Exs. Z-AI (photos of kitchen, laundry, barbershop, Grey Mile, law library, recreation area, intake, medical area, visiting area, and detainee living areas). Detainees may also staff "temporary work details that occasionally arise" and which can last "from several hours to several days[.]" *Id.* ¶ 11, Ex. I at 2. If a job is available, the detainee worker will sign a "Voluntary Work Agreement" and job description, which informs the detainee worker of their responsibilities.[6] *See id.* ¶ 21, Ex. S; *id.* ¶ 22, Ex. T (Scott Dep. 93:12-24).

Once hired, GEO provides detainee workers with all equipment, materials, and personal protective equipment necessary for the VWP job. *See id.* ¶ 39, Ex. AK (Personal Protective Equipment Policy); *id.* ¶ 23, Ex. U (Henderson Dep. 158:7-17); *id.* ¶ 40, Ex. AL (photographs showing materials and tools GEO provides to detainee workers). GEO officers train detainee workers on all applicable health and safety regulations and supervise the detainee workers' performance. *Id.* ¶ 39, Ex. AK. *See, e.g., id.* ¶ 41, Ex. AM at 5-9 (Housing Unit Officer Post Order); *id.* ¶ 42, Ex. AN; *id.* ¶ 22, Ex. T (Scott Dep. 148:14-150:8); *id.* ¶ 23, Ex. U (Henderson Dep. 118:25-119:10, 136:10-137:7). GEO's policies specify the conditions under which a detainee worker may be "removed from a work detail for cause." *Id.* ¶ 11, Ex. I at 4 (VWP Policy); *see also id.* ¶ 26, Ex. X (specifying on-the-job conduct that may result in "TERMINATION," including "Failure to follow Safety Procedures," "Failure to follow . . . Instructions," "Unexcused absenteeism," and "Unsatisfactory work performance").

Detainee workers are paid the day after the work is performed. *See id.* ¶ 3, Ex. A (RFA 7) (affirming that GEO deposits $1 per day into the NWDC Detainee Trust Account

---

[6] Since the end of 2018, GEO has had a difficult time getting enough detainees to work in the kitchen for various reasons, including that "it might be too much work," or "[the dollar a day is] not enough[.]" *Id.* ¶ 9, Ex. G (Henderson Dep. 38:1-39:9). When the VWP is short staffed, GEO employees go to detainee living areas to recruit workers. *Id.* ¶ 8, Ex. F (McHatton Dep. at 85:12-25); *id.* ¶ 38, Ex. AJ (Jaramillo Dep. 30:20-32:8).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

after a detainee earns the $1 by working in the VWP); *id.* ¶ 13, Ex. K (Singleton Dep. 219:16-220:1); *id.* ¶ 43, Ex. AO (Kimble 38:25-39:5); *id.* ¶ 44, Ex AP (daily worker pay sheet).

### 2. Detainee Workers Prepare and Serve all Meals for the Detainee Population

The NWDC kitchen prepares three meals per day for approximately 1,575 detainees housed in the facility. *Id.* ¶ 17, Ex. O (RFAs 27-30); *id.* ¶ 9, Ex. G (Henderson Dep. 35:2-22), *id.* ¶ 23, Ex. U (Henderson Dep. 72:12-19). The kitchen is required to comply with GEO's corporate food service policies, the PBNDS, and food safety requirements. *id.* ¶ 45, Ex. AQ (Food Service Operations Procedure 4.3.1); *id.* ¶ 46, Ex. AR (Food Service Management Procedure 8.1.1-A); *id.* ¶ 47, Ex. AS (PBNDS, 4.1 Food Service); *id.* ¶ 48, Ex. AT (Health Inspection); *id.* ¶ 23, Ex. U (Henderson Dep. 27:15-29:15, 31:3-13).

Detainee workers are an essential component of the food services operation staffing plan. *Id.* ¶ 23, Ex. U (Henderson Dep. 203:18-204:2). GEO's staffing model currently provides for thirteen full time GEO kitchen staff: a Food Service Administrator; an assistant administrator; one clerk; and ten Cook Supervisors. *Id.* ¶ 9, Ex. G (Henderson Dep. 37:3-12). It also includes nearly one hundred detainee workers each day assigned to specific shifts: twenty-five to thirty workers for each meal—breakfast shift from 4:00-9:00 a.m., lunch shift from 10:00 a.m.-3:00 p.m., and dinner shift from 4:00-9:00 p.m.—plus ten to twelve workers on the night cleaning crew. *Id.* (Henderson Dep. 37:15-25); *id.* ¶ 23, Ex. U (Henderson Dep. 41:5-42:19). *See also id.* ¶ 24, Ex. V (Marquez Decl. ¶ 10; McCreery Decl. ¶ 6; Pina Decl. ¶ 6). Kitchen workers are scheduled for a seven-day work week but a detainee can ask GEO for one or two days off per week. *Id.* ¶ 23, Ex. U (Henderson Dep. 43:12-44:4). The night cleaning crew works five days per week on shifts that usually run from 9:30 p.m.-12:30 a.m. *Id.* ¶ 9, Ex. G (Henderson Dep. 35:21-36:1, 165:18-166:3); *id.* ¶ 23, Ex. U (Henderson Dep. 43:6-10)

Detainees work in all areas of the kitchen and "assist with prepping, serving and cleaning." *Id.* ¶ 9, Ex. G (Henderson Dep. 35:2-13, 20-22); *id.* ¶ 26, Ex. X (Cook/Prep/Server job description providing that kitchen workers may "[a]ssist in the setup of the food line,"

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

"[a]ssist in the serving of the meal," and "assist in the preparation of all food products"). *See also id.* ¶ 24, Ex. V (Pina Decl. ¶ 8). Although detainees can express interest in particular jobs within the kitchen, GEO staff have discretion and control over detainee work assignments. *Id.* ¶ 23, Ex. U (Henderson Dep. 134:11-135:8). For example, at lunch and dinner, detainee workers cut cabbages, vegetables, and potatoes; prepare salads; cook rice and beans; slice meat; and place food on plates. *Id.* (Henderson Dep. 123:6-128:3). In addition to food prep and meal service, GEO assigns detainee workers to "[c]lean off trays of all debris[;]" "[e]mpty trash cans[;]" "[i]nventory cups and sporks after each meal[.]" *Id.* ¶ 26, Ex. X (Dishwasher/Pots & Pans job description). *See also id.* ¶ 50, Ex. AV (photos of detainees working in the kitchen).

Before their first day of work in the kitchen, detainee workers are required to sign the detainee job description, the VWP agreement, hygiene and grooming standards, and kitchen worker rules and regulations. *Id.* ¶ 23, Ex. U (Henderson Dep. 139:20-140:6). Detainees workers are also required to complete Kitchen Worker Orientation training performed by GEO staff regarding kitchen expectations, standards and procedures, hazardous chemical safety training, and required personal protective equipment before detainee workers can begin working in the kitchen. *Id.* ¶ 42, Ex. AN. Other training (e.g. meat cutter machine equipment training) are ongoing and required only before using the particular equipment. *Id.* ¶ 23, Ex. U (Henderson Dep. 136:10-137:15, 138:10-140:6).

Finally, GEO requires kitchen workers to wear a "white uniform," and provides them with "hair nets," "beard guards" and "slip-resistant boots." *Id.* (Henderson Dep. 118:22-119:10, 158:7-17). GEO also provides detainee workers with "chemicals and equipment," as well as "protective equipment, goggles, [and] gloves." *Id.* (Henderson Dep. 118:22-119:10). GEO's staff enforce the uniform requirements and ensure the use of protective equipment.[7] *Id.* (Henderson Dep. 119:6-10); *id.* ¶ 52, Ex. AX (Detainee kitchen worker grooming standards).

---

[7] The uniforms and boots are shared, *id.* ¶ 23, Ex. U (Henderson Dep. 155:2-14), and though detainees put their feet in plastic bags before putting on the boots, there have been complaints of fungus from the rubber boots. *Id.* ¶ 51, Ex. AW; *id.* ¶ 9, Ex. G (Henderson Dep 155:15-156:25).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

8

### 3. Detainee Workers Wash all Detainee Clothing, Bedding, and Laundry from the Medical Unit

Consistent with the PBNDS, it is the policy of NWDC "to provide a facility laundry and to ensure that each detainee's uniform, personal clothing, and linens are thoroughly cleaned and disinfected." *Id.* ¶ 53, Ex. AY at 1 (Laundry Services Procedure); *see id.* ¶ 54, Ex. AZ at 5; *id.* ¶ 8, Ex. F (McHatton Dep. 142:4-24). *See also id.* ¶ 55, Ex. BA (H. West Memo regarding compliance issues); *id.* ¶ 56, Ex. F (McHatton Dep. 146:18-152:1). To achieve those ends, detainee workers at the NWDC work in the laundry under the supervision of a GEO officer. *Id.* ¶ 17, Ex. O (RFAs 23-26); *id.* ¶ 57, Ex. BC (identifying "supervisor" for laundry jobs/program as "Laundry Officer"); *id.* ¶ 53, Ex. AY at 2 (GEO laundry staff responsible for "[s]upervision of detainee workers while in performance of assigned laundry duties").

The number of laundry workers has increased over time, as the detainee population at the NWDC has increased, and now includes between four and eight detainee workers for each shift. *See id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 55:13-56:2, 57:19-22). Laundry workers receive $1 per day for their work, but in the past certain workers received food as additional compensation. *Id.* ¶ 59, Ex. BE (authorizing "a candy bar" to be offered "above the $1.00 a day worker pay"). Laundry shifts are approximately six-hours, and laundry workers "probably worked the longest" hours of any detainees. *Id.* ¶ 8, Ex. F (McHatton Dep. 108:14-18).

GEO requires detainee workers assigned to the laundry sort, wash, dry, and fold the clothing, bedding, and towels used in the NWDC, and clean the parts of the NWDC dedicated to laundry work. *Id.* ¶ 17, Ex. O (RFAs 23-26); *id.* ¶ 26, Ex. X (GEO's "laundry worker" detainee job description identifying duties for laundry workers as to "[w]ash, dry and fold clothing, bedding and towels," and "load and unload washing machines," "load and unload dryers," "fold clothing, bedding and towels," "mop floors," "wipe down and clean laundry area," "remove trash bags from garbage cans" and "other duties as assigned"). Once the laundry is washed and dried, female laundry workers fold and prepare the laundry for

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

distribution. *See, e.g.*, *id.* ¶ 13, Ex. K (Singleton Dep. 102:2-7) (noting that females detainee workers fold laundry for "detainee population"); *id.* (Singleton Dep. 104:9-105:10) (female workers fold laundry after it is brought down to pod unit). Before beginning work as a laundry worker, detainees must complete laundry training, which a GEO officer provides, that covers physical safety measures including procedures for cleaning laundry from the medical units. *See id.* ¶ 60, Ex. BF (NWDC Laundry Training form); *id.* ¶ 22, Ex. T (Scott Dep. 36:4-13).

### 4.    Detainee Workers Perform Janitorial Functions in the Secure Part of the NWDC

The majority of work opportunities in the VWP are janitorial. *See id.* ¶ 26, Ex. X; *id.* ¶ 27, Ex. Y (identifying the number of available work opportunities). These janitorial positions are both inside and outside of the detainee living areas. *Id. See id.* ¶ 61, Ex. BG (housekeeping plan directing GEO officers to utilize detainee labor to clean and maintain the facility according to a schedule and particular cleaning protocols); *id.* ¶ 8, Ex. F (McHatton Dep. 153:21-158:4).

The "pod porter" position is the most prevalent of the VWP work opportunities. *See id.* ¶ 26, Ex. X (pod porter job descriptions); *id.* ¶ 27, Ex. Y (chart identifying more than 300 daily pod porter positions in the VWP); *id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 150:4-152:19) (explaining that pod porter figures in chart are per unit, per day). Pod porters perform janitorial work inside the detainee living units and are responsible for cleaning toilets, sinks, and showers; sweeping and mopping the floors; distributing and collecting food trays; distributing laundry and commissary; and performing general upkeep in the common areas. *See id.* ¶ 17, Ex. O (RFA 39); *id.* ¶ 26, Ex. X (pod porter job descriptions); *id.* ¶ 13, Ex. K (Singleton Dep. 139:9-140:4). Pod porters do not leave their living areas to perform their tasks and their work is overseen by the GEO officer responsible for the living unit. *Id.* ¶ 8, Ex. F (McHatton Dep. 28:22-29:4); *id.* ¶ 13, Ex. K (Singleton Dep. 147:18-23); *id.* ¶ 38, Ex. AJ (Deposition Transcript of Leonardo Jaramillo (Jaramillo Dep.) 26:22-27:18). The equipment that pod porters use to perform their tasks is stored in closets within the living unit. *Id.* ¶ 41, Ex. AM at 10-12; *id.* ¶ 8. GEO sets a specific

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

schedule governing when each pod porter must accomplish their assigned tasks—*i.e.* grave cleaners work after 11:30 p.m., day cleaners work between 7:30 a.m. and 3:00 p.m., and bathroom cleaners are to clean the toilets and sinks at 11:00 a.m. and 11:30 p.m. each day. *Id.* ¶ 26, Ex. X (pod porter job description). *See also id.* ¶ 25, Ex. W (Singleton Dep. 140:22-147:23).

Detainee workers also perform general janitorial work outside of their living units in the following positions offered by GEO: Medical Cleaners, Recreation Area Cleaners, Law Library Cleaner, Intake and Visitation Cleaners. *id.* ¶ 17, Ex. O (RFAs 41, 43); *id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 97:10-98:16). In these janitorial positions, detainee workers sweep floors, empty trash receptacles, wipe down and disinfect surfaces, and straighten up any misplaced chairs or objects. *Id.* ¶ 26, Ex. X. The detainee workers assigned to janitorial positions work exclusively in the secure parts of the facility. *Id.* ¶ 8, Ex. F (McHatton Dep. 145:15-146:8; 153:21-158:4). Their duties are substantially similar to the work performed by non-detained janitors who work in the non-secure part of the facility. *Id.* ¶ 62, Ex. BH; *id.* ¶ 22, Ex. T (Scott Dep. 99:7-101:20).

### 5. Detainee Workers Operate the NWDC's Barbershop

GEO provides detainees with personal grooming services at the NWDC barbershop. *See id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 85:17-23). Detainees work the day shift as barbers and are also responsible for cleaning the barbershop. *Id.* ¶ 26, Ex. X (barber job description, barbershop cleaner job description). Detainee workers shave and cut detainees' hair. *See id* ¶ 22, Ex. T (Scott Dep. 38:9-39:4).

GEO also assigns detainee workers to be barbershop cleaners, with responsibility for keeping the barbershop hygienic and for cleaning and oiling clippers, storing combs in a sanitized solution, sweeping floors, and cleaning the sinks and chairs after the barbers complete their work. *Id.* ¶ 26, Ex. X (barbershop cleaner job description); *id.* ¶ 63, Ex. BI. According to the post order for the NWDC Barbershop, the regular barbershop schedule includes detainee barbers working from 7:30 a.m. to 10:30 a.m., when the barbershop closes and the cleaners arrive to clean and sanitize all tools and the barbershop. *Id.* ¶ 64, Ex. BJ at 4. There are six to

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

eight barbers at any given time, who can be scheduled as needed. *Id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 86:12-20). Only detainee workers cut hair in the barbershop. *Id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 182:3-5); *id.* ¶ 64, Ex. BJ at 4. Detainee workers who work in the barbershop are typically paid $1 per day, but in the past have been able to earn more than $1 per day by working additional details on top of their barbershop duties. *Id.* ¶ 66, Ex. BL; *id.* ¶ 8, Ex. F (McHatton Dep. 78:7-16); *id.* ¶ 56, Ex. BB (McHatton Dep. 90:21-24).

### 6.    Detainee Workers Perform Ad Hoc Facility Maintenance

Detainees may also volunteer for "temporary work details" that can last "from several hours to several days[.]" *Id.* ¶ 11, Ex. I at 2 (VWP Policy). *See also id.* ¶ 22, Ex. T (Scott Dep. 83:1-84:11); *id.* ¶ 67, Ex. BM at 2 ("painting: housing unit interior walls"); *id.* ¶ 68, Ex. BN (facility jobs available, including painters); *id.* ¶ 17, Ex. O (RFAs 47, 49) ("strip, wax, and buff the floors"); *id.* ¶ 68, Ex. BO (Deposition Transcript of Ryan Kimble (Kimble Dep.) 108:5-109:4) (cleaning and maintenance of the recreation yards); *id.* ¶ 13, Ex. K (Singleton 131:8-12) (paint detail is "one of those irregular details" that "occurs on a periodic basis"). No job descriptions exist for these "as-needed jobs." *Id.* ¶ 22, Ex. F (McHatton Dep. 47:12-73:21).

As an example of a temporary work detail, GEO may assign detainee workers to paint walls within the unit and in all communal areas when a wall has a scratch or other eyesore. *Id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 174:9-14); *id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 107:16-108:7); *id.* ¶ 24, Ex. V (Marquez Decl. ¶ 17). GEO may also assign detainee workers to sweep, mop, and buff the floors. *Id.* ¶ 38, Ex. AJ (Jaramillo Dep. 14:20-20:20). Other times GEO may assign detainee workers to use machinery and chemicals to strip and wax the floors. *Id.* ¶ 22, Ex. T (Scott Dep. 53:24-54:2); *id.* ¶ 24, Ex. V (Paez ¶¶ 22-23). Since common-area maintenance must happen when there is less foot traffic in the hallways, the detainee workers assigned to these temporary work details often work during counts and/or at night. *Id.* ¶ 8, Ex. F (McHatton Dep. 53:8-21); *id.* ¶ 12, Ex.J (GEO 30(b)(6) Dep. 175:19-176:1). GEO's detention officers train detainee workers on the materials, cleaning chemicals, and personal protective

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1   equipment. *Id.* ¶ 22, Ex. T (Scott Dep. 30:3-31:9); *id.* ¶ 38, Ex. AJ (Jaramillo Dep. 52:23-
2   53:16). However, GEO also chooses detainee workers who have prior experience performing
3   these tasks. *Id.* ¶ 38, Ex. AJ (Jaramillo Dep. 19:5-17); *id.* ¶ 22, Ex. T (Scott Dep. 38:9-39:4).

4   ### III.     SUMMARY JUDGMENT STANDARD

5           Summary judgment is proper "if the pleadings, the discovery and disclosure materials
6   on file, and any affidavits show that there is no genuine issue as to any material fact and that
7   the movant is entitled to judgment as a matter of law." *Boardman v. Inslee*, 354 F. Supp. 3d
8   1232, 1239 (W.D. Wash. 2019) (citing Fed. R. Civ. P. 56(c)). The moving party is entitled to
9   judgment as a matter of law when the nonmoving party fails to make a sufficient showing on
10  an essential element of a claim or defense in the case for which it bears the burden of proof.
11  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial
12  where the record—taken as a whole—could not lead a rational trier of fact to find for the
13  nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
14  The Court will "view the evidence in the light most favorable to the nonmoving party . . . and
15  draw all reasonable inferences in that party's favor." *Krechman v. County of Riverside*, 723
16  F.3d 1104, 1109 (9th Cir. 2013). To defeat summary judgment, the nonmoving party must
17  produce significant probative evidence and not merely state that it will discredit the evidence
18  at trial. *Matsushita*, 475 U.S. at 586. *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-
19  89 (1990) (affirming that conclusory non-specific statements in affidavits are insufficient).

20  ### IV.     ARGUMENT

21          Minimum wage laws serve a remedial purpose of "insur[ing] that every person whose
22  employment contemplated compensation should not be compelled to sell his services for less
23  than the prescribed minimum wage[.]" *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d
24  289, 299 (Wash. 2012) (citing *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152 (1947)).
25  Washington's MWA is no exception. To achieve its purpose of providing robust workplace
26  coverage, Washington law demands that courts "liberally construe the provisions of the MWA

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

. . . in favor of workers' protections and their right to be paid a minimum wage for each hour worked." *Hill v. Xerox Bus. Servs., LLC*, 426 P.3d 703, 709 (Wash. 2018) (citing *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 420 (Wash. 2014)). *See also* Wash. Rev. Code § 49.46.005. The MWA covers detainee workers, and GEO violates the MWA hundreds of times a day.

**A.     GEO Has an Employee-Employer Relationship With Detainee Workers**

Washington's MWA requires employers to pay their "employees" the state minimum wage. Wash. Rev. Code § 49.46.020(1). "Employee" is broadly defined and "includes any individual permitted to work by an employer." *Becerra*, 332 P.3d at 420 (quoting *Anfinson*, 281 P.3d at 297). Precedent requires that the MWA "be liberally construed [in favor of the employee] and that its exceptions be narrowly confined." *See Hill*, 426 P.3d at 709 (quoting *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 42 P.3d 1265, 1257 (Wash. 2002) (alteration in original)).

Whether parties are in an employment relationship is not determined by any labels used by the parties to describe their relationship. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)). Instead, in determining whether a defendant is an "employer" for purposes of the wage and employment statutes, Washington courts use a test that evaluates the employment relationship based "upon the circumstances of the whole activity," *Becerra*, 332 P.3d at 421 (applying test to determine whether an employment relationship existed in a joint employer context). *See also Anfinson*, 281 P.3d at 297 (applying a similar test to determine whether an employment relationship existed in an independent contractor context). The *Becerra* test includes "13 nonexclusive factors" including five "formal or regulatory" factors and eight common law or "functional" factors, including the *Anfinson* factors. *Becerra*, 332 P.3d at 420-21. *See also* ECF 162 at 5. "These factors are not exclusive and are not to be applied mechanically or in a particular order." *Becerra*, 332 P.3d at 420-21. Instead, "[t]he determination of the relationship

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

does not depend on such isolated factors." *Id.* at 421 (citing *Rutherford,* 331 U.S. at 730). Put another way, the test "offers a way to think about the subject and not an algorithm." *Becerra*, 332 P.3d at 421.

### 1. Detainee Labor at the NWDC Is Employment Under the Regulatory Factors

The five formal or regulatory factors are: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly to hire, fire, or modify the employment conditions; and (5) preparation of payroll and payment of wages. *Becerra*, 332 P.3d at 420 (citing *Torres-Lopez v. May*, 111 F.3d 633, 639-40 (9th Cir. 1997). Based on the undisputed facts, each of the regulatory factors weighs in favor of the conclusion that Washington's MWA protects detainee workers.

### a. GEO exerts complete control over detainee workers

GEO exerts complete control over when, where, and how detainee workers perform their duties in the NWDC. GEO staff develop job descriptions, determine staffing levels, and assign detainee workers to specific shifts for all work performed in the detention center. For example, detainee workers work three shifts in the kitchen—*i.e.* breakfast, lunch, and dinner—and the times of these shifts are set by GEO. *See* Baker Decl. ¶ 23, Ex. U (Henderson Dep. 42:13-19). These shifts typically last approximately six hours and need to be worked seven days a week. *Id. See also id.* ¶ 70, Ex. BP (memorandum requiring all full-time detainee kitchen workers to work seven days a week unless pre-approved). The Cook Supervisor and the Assistant Food Service Manager, "[d]irect[] work, provides training and performs inspections of work performed by detainee food service staff." *Id.* ¶ 71, Ex. BQ. *See also id.* ¶ 72, Ex. BR; *id.* ¶ 9, Ex. G (Henderson Dep. 112:20-113:6).

GEO also requires detainee workers performing other tasks in the VWP to work daily shifts. *See id.* ¶ 58, Ex. BD (30(b)(6) Dep. 54:18-59:3) (noting daily shifts of detainee workers in the laundry); *id.* ¶ 22, Ex. T (Scott Dep. 38:9-14); *id.* ¶ 26, Ex. X (barber and barbershop

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

1   Cleaner job descriptions) (noting six to eight detainee worker barbers cut hair from 7:30-10:30

2   a.m.); *id.* (medical cleaning job description assigning workers to the day shift). Even the work

3   performed by pod porters in the living units is rigidly scheduled. *See id.* (pod porter job

4   description) (requiring detainee workers to daily clean the showers at 11:00 a.m., 4:00 p.m.,

5   and 9:30 p.m. daily, and bathrooms toilets at 11:00 a.m. and 11:30 p.m.).

6        GEO also exerts control over how detainee work will be performed. GEO requires

7   detainee workers to undergo extensive training prior to performing certain jobs, including

8   working in the kitchen and the barbershop. *See id.* ¶ 22, Ex. T (Scott Dep. 37:6-38:3); *id.* ¶ 42,

9   Ex. AN (training protocols for detainee kitchen workers regarding use of chemicals, kitchen

10  equipment safety, food handling, and sanitation guidelines); *id.* ¶ 63, Ex. BI (directing detainee

11  barbers to perform and document sanitation inspections and disinfect barbershop tools); *id.* ¶

12  60, Ex. BF (training detainee laundry workers to safely handle soiled laundry and laundry from

13  medical units, and procedures for exchanging uniforms, linen, and towels). GEO provides

14  detainees workers detailed directions regarding the type of chemicals and cleaning tools to use

15  when cleaning the NWDC. *See id.* ¶ 61, Ex. BG (housekeeping plan describing "cleaners and

16  disinfectants used" for specific tasks). *See also id.* ¶ 67, Ex. BM (directing the use of detainee

17  workers to "deep clean" the kitchen). Further, for certain positions, GEO requires detainee

18  workers to wear uniforms, hair restraints, and sets targets for detainee workers' personal

19  hygiene—*e.g.* daily showers, weekly hair washing, use of deodorant, and nails clean and well-

20  trimmed. *Id.* ¶ 52, Ex. AX (kitchen grooming standards).

21        The undisputed evidence shows that GEO's level of control over detainee workers is

22  extensive and warrants a conclusion that GEO is an employer of detainee workers for purposes

23  of Washington's minimum wage laws. *See Torres-Lopez*, 111 F.3d at 642 (finding sufficient

24  control where employer "exercised significant control" including setting the work schedule,

25  determining the number of workers needed, and inspecting all work performed); *Berry v.*

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

*Transdev Services, Inc.*, No. C15-01299-RAJ, 2017 WL 1364658, at *4-5 (W.D. Wash. Apr. 14, 2017) (finding sufficient control where an employer dictated how duties were performed).

### b.   GEO supervises detainee workers' performance in the NWDC

GEO supervises detainee workers' performance of all jobs in the NWDC, and supervising detainee workers is a substantial part of GEO officers' duties. Baker Decl. ¶ 8, Ex. F (McHatton Dep. 28:22-29:4); *id.* ¶ 38, Ex. AJ (Jaramillo Dep. 46:16-23, 71:6-24) (affirming that ICE has no role in supervising detainee workers in the VWP). Indeed, when GEO officers are hired to work at the NWDC they are trained on how to oversee detainee workers. *Id.* ¶ 8, Ex. F (McHatton Dep. 23:18-24:23). GEO enforces its training, productivity, job safety protocols, and other VWP policies through officers whose primary role is to provide supervision to detainees and detainee workers. *See id.* ¶ 26, Ex. X (noting that detainee workers will be fired for absenteeism and poor work performance). *See also id.* ¶¶ 65, 73, Exs. BK, BS, (post orders that incorporate training GEO officers to oversee detainee workers); *id.* ¶ 45, Ex. AQ at 2 (noting that GEO still "will instruct newly assigned detainee workers in the rules and procedures of the food service department"); *id.* ¶ 23, Ex. U (Henderson Dep. 26:13-17), *id.* ¶ 9, Ex. G (Henderson Dep. 117:25-118:19) (affirming that the GEO Cook Supervisors are responsible for developing the detainee food service work force); *id.* ¶ 8, Ex. F (McHatton Dep. 74:17-22) (affirming that GEO officers supervise detainee workers in the laundry); *id.* ¶ 28, Ex. AJ (Jaramillo Dep. 34:5-35:5, 52:23-53:16; 30:20-33:7) (affirming that GEO officers supervise detainee workers who paint or buff and wax floors); *id.* ¶ 8, Ex. F (McHatton Dep. 28:22-29:4) (noting that detainee workers were trained by the GEO officers).[8]

The undisputed evidence—including GEO's own training materials—shows that GEO closely supervises detainees performing work in the NWDC.

---

[8] *See also* ¶ 24, Ex. V (Brian Strong Decl. ¶¶ 2-14) (GEO officers are responsible for supervising detainee workers in the kitchen); *id.* (Griffin Decl. ¶¶ 3, 7-13) (affirming that GEO employees supervise detainee workers in the kitchen); *id.* (McCreery Decl. ¶ 4; Griffin Decl. ¶ 3).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

c.      **GEO has the authority to determine the pay rates of detainee workers**

GEO has authority to set the rates it will pay detainee workers for work they perform in the NWDC. *See id.* ¶ 16, Ex. N (PBNDS 5.8(V) (affirming that "[d]etainees shall receive monetary compensation for work completed in accordance with the facility's standard policy" but "at least $1 per day"); *id.* ¶ 19, Ex. Q (ICE affirming that there is no cap for what GEO can pay detainee workers). Currently GEO pays detainee workers $1 per day, but it admits that it has the option to pay more. *Id.* ¶ 17, Ex. O (RFA 67). *See also id.* ¶ 19, Ex. Q.

Further, GEO's ability to pay more than $1 per day is evidenced by the fact that GEO has occasionally paid detainee workers—including before implementation of the 2011 PBNDS—$5 per day.[9] *See id.* ¶ 17, Ex. O (RFA 60); *id.* ¶ 13, Ex. K (Singleton Dep. 31:10-20), *id.* ¶ 25, Ex. W (Singleton Dep. 227:24-228:4) (confirming kitchen workers got paid $5 per day in 2009); *id.* ¶ 77, Ex. BW (pay sheet memorializing $5 per day pay to detainee workers); *id.* ¶ 78, Ex. BX (pay sheet memorializing $5 per day pay to detainee workers); *id.* ¶ 23, Ex. U (Henderson Dep. 166:15-168:23); *id.* ¶ 9, Ex. G (Henderson Dep. 182:21-186:25).

GEO's admissions, the applicable detention standards, emails from ICE, and GEO's past practices make it clear that GEO sets the pay rates for detainee workers.

d.      **GEO can hire and fire detainee workers and modify the VWP's working conditions**

GEO is responsible for hiring and firing detainee workers in the VWP. *See id.* ¶ 16, Ex. N (PBNDS 5.8(V)(D)(1)-(4)) (assigning GEO responsibility for developing site-specific rules for selecting detainee workers). Detainees seeking to participate in the VWP notify GEO of their interest through an electronic "kite."[10] *See id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 22:23-

---

[9] GEO has also supplemented detainee pay with non-monetary benefits—*i.e.* payment in food. *See id.* ¶ 17, Ex. O (RFAs 71-72); *id.* ¶ 74, Ex. BT (noting that detainee workers are unwilling to work unless they continue to receive sack lunches on top of their $1 payment); *id.* ¶ 75, Ex. BU (allowing for sack lunches for detainee workers who work at night); *id.* ¶ 76, Ex. BV (noting that kitchen workers want to change shifts so that they can receive chicken thighs); Ex. 121 (noting that laundry workers received candy bars in addition to their $1 payment).

[10] GEO employees occasionally go to detainee living areas to recruit workers. *See id.* ¶ 8, Ex. F (McHatton Dep. at 85:12-25).

---

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

24:16). If there is an opening, GEO will assign the detainee a job pursuant to GEO's policies and procedures. *See id.* ¶ 17, Ex. O (RFA 19) (noting that GEO allows participation in the VWP based on availability of positions); *id.* ¶ 11, Ex. I (VWP Policy); *id.* ¶ 58, Ex. BD (GEO 30(b)(6) Dep. 22:23-25:16); *id.* ¶ 13, Ex. K (Singleton 26:24-27:7). If no job is available when the detainee seeks to work, GEO places the detainee on a waitlist. *See id.* ¶ 13, Ex. K (Singleton Dep. 81:21-82:25); *id.* ¶ 12, Ex. J (GEO 30(b)(6) Dep. 189:13-190:2). For certain positions, GEO requires medical clearance. *See id.* ¶ 79, Ex. BZ; *id.* ¶ 17, Ex. O (RFA 22) (affirming that detainee workers are not allowed to work in the kitchen if they are sick or ill). When hiring detainee workers, GEO sometimes considers whether the detainee worker has performed well in the past, *id.* ¶ 80, Ex. CA, or has prior relevant work experience, *id.* ¶ 38, Ex. AJ (Jaramillo Dep. 19:5-17); *id.* ¶ 22, Ex. T (Scott Dep. 38:9-39:4).

GEO also has the authority to terminate a detainee worker's employment. *Id.* ¶ 11, Ex. I (VWP Policy); *id.* ¶ 16, Ex. N (PBNDS 5.8(V)(L)). Pursuant to GEO's policy, detainee workers are required to work as scheduled by GEO and GEO may remove detainee workers from a work detail for "unsatisfactory performance" or for missing a scheduled shift. *See id.* ¶ 11, Ex. I (VWP Policy); *id.* ¶ 16, Ex. N (PBNDS 5.8(V)(L)(1)) (noting that a detainee worker may be removed from a work detail for unsatisfactory performance). GEO admits that it has terminated detainee workers from VWP positions. *Id.* ¶ 17, Ex. O (RFA 21). *See also id.* ¶ 81. Ex. CB (List of workers removed from kitchen "per IDP sanctions"). If a detainee worker is terminated, GEO may consider a detainee workers' previous refusal to work or past poor performance in determining future employment in the VWP. *See id.* ¶ 82, Ex. CC (Singleton refusing to reassign worker to kitchen who previously failed to work as scheduled); *id.* ¶ 13, Ex. K (Singleton Dep. 115:10-23) (noting that if a detainee worker "stopped working because they received a disciplinary sanction from the kitchen . . . they can't go back").

GEO is also responsible for setting and modifying the working conditions of detainee workers. For example, GEO modifies work conditions by providing accommodations for

PLAINTIFF STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND DEFENDANT THE GEO GROUP, INC.'S PREEMPTION DEFENSE

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

detainee workers who have a "noted disability." *See id.* ¶ 83, Ex. CD; *id.* ¶ 8, Ex. F (McHatton Dep. at 40:21-41:7); *id.* ¶ 56, Ex. BB (McHatton Dep. 117:5-118:11) (noting that GEO altered its usual practices to accommodate a detainee worker who was deaf). GEO also sets the number of available openings for any positions—*i.e.* number of detainee workers per kitchen shift or pod porter positions available per unit. *See id.* ¶ 8, Ex. F (McHatton Dep. at 32:21-35:12).

It is undisputed that GEO has authority hire and fire detainee workers and the authority to set and change the working conditions of the VWP.

### e.  GEO prepares and administers detainee workers payroll

GEO requires detainee workers to sign a VWP agreement before starting work, tracks the work details performed, and then pays detainees through a payroll system called the "key banking system[.]"*Id.* ¶ 21, Ex. S; *id.* ¶ 43, Ex. AO (Kimble Dep. 38:5-39:5); *id.* ¶ 84, Exhibit CE (logging detainee "payroll" transactions); *id.* ¶ 85, Ex. CF (example of work-detail log). GEO electronically deposits detainee workers' pay into their accounts the day after they complete a shift. *See id.* ¶ 3, Ex. A (RFA 7); *id.* ¶ 43, Ex. AO (Kimble 38:25-39:5); *id.* ¶ 13, Ex. K (Singleton Dep. 219:16-220:1). GEO keeps extensive records of which detainee workers worked and the type of work performed. *Id.* ¶ 43, Ex. AO (Kimble 37:17-39:5) (detailing process by which detainee workers are paid); *id.* ¶ 86, Ex. CG (detainee worker sign in sheet). Attendance documents are used to accurately pay detainee workers. *See id.* ¶ 87, Ex. CH.; *id.* ¶ 43, Ex. AO (Kimble 37:-17-39:5).[11] GEO's admissions and the undisputed evidence shows that GEO administers the payroll for detainee workers who participate in the VWP.

### 2.  GEO Is an Employer of Detainee Workers Under Functional Factors

The eight common law or functional factors of the economic reality test are: (1) whether the work was a specialty job on the production line; (2) whether responsibility under

---

[11] GEO also uses this complex payroll system to ensure that it doesn't overpay any detainee workers and to recapture $1 payments to detainee workers who were deemed not to deserve the payment that was processed into their account. *See id.* ¶ 88, Ex. CI (memorandums docking detainee accounts for overpayments); *id.* ¶ 43, AO (Kimble 40:5-41:8) (affirming that GEO recoups any accidental payments made to detainee workers).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1   the contracts between a labor contractor and an employer pass from one labor contractor to

2   another without material changes; (3) whether the premises and equipment of the employer are

3   used for the work; (4) whether the employees had a business organization that could or did

4   shift as a unit from one [worksite] to another; (5) whether the work was "piecework" and not

5   work that required initiative, judgment or foresight; (6) whether the employee had an

6   opportunity for profit or loss depending upon the alleged employee's managerial skill; (7)

7   whether there was permanence in the working relationship; and (8) whether the service

8   rendered is an integral part of the alleged employer's business. Under the applicable factors

9   that are "relevant to this particular situation," *Bonnette v. California Health & Welfare Agency*,

10  704 F.2d 1465, 1470 (9th Cir. 1983), it is clearly evident that GEO is in an employment

11  relationship with detainee workers.

12       *First*, as each position in the NWDC "constitute[s] one small step in the sequence of

13  steps" taken by GEO to operate its private detention facility, each detainee worker's position

14  is akin to a "specialty job on the production line" that operates according to "standard industry

15  practice[.]" *Torres-Lopez*, 111 F.3d at 643 (quoting *Rutherford*, 331 at U.S. at 730). The

16  detainee workers who toil in the kitchen cook, serve, and plate food on an assembly line and

17  in accordance with food health and safety requirements to ensure that GEO can feed the 1,575

18  people who are housed in its facility. *Torres-Lopez*, 111 F.3d at 643. *See also* Baker Decl. ¶

19  42, Ex. AN (kitchen training protocols); *id.* ¶ 28, Ex. Z (photograph of kitchen work areas); *id.*

20  ¶ 48, Ex. AT (food safety inspection results). Detainee workers who cut hair in the barbershop

21  ensure that GEO can meet the health and safety standards required of private detention

22  operators. *See id.* ¶ 63, Ex. BI (guidelines for complying with OSHA standards in the

23  barbershop); *id.* ¶ 64, Ex. BJ (barbershop post-orders). The janitorial and laundry services

24  detainee workers provide likewise allow GEO to meet its contractual obligations and meet

25  industry standards. *Id.* ¶ 55, Ex. BA (H. West Memo regarding compliance issues). The

26  undisputed facts show that this element is met.

1   *Second*, the second non-regulatory factor is inapplicable because the detainee workers

2   are employed directly by GEO without an intermediary labor contractor.

3   *Third*, GEO owns the NWDC and all of the work in the VWP occurs in the secured

4   areas there. *Id.* ¶ 3, Ex. A (RFAs 1-7). All equipment used to perform work in the VWP is

5   provided, owned, and maintained by GEO. *Id.* ¶ 3, Ex. A (RFA 15) (admitting that GEO

6   provides "all tools and equipment used by detainee[] workers who participate in the Voluntary

7   Work Program"). Detainee workers have no control over or financial stake in the NWDC or

8   the equipment used in the VWP. The undisputed facts show that this element is met.

9   *Fourth*, detainee workers do not have a "business organization that could or [does] shift

10   as a unit from one [employer] to another[.]" *Torres-Lopez*, 111 F.3d at 644 (quoting

11   *Rutherford*, 331 U.S. at 730. Instead, detainee workers operate as individual workers in the

12   VWP workforce alone. Detainee workers learn of employment opportunities either through

13   other detainees or from GEO employees and GEO hires detainee workers from the pool of

14   applicants. Baker Decl. ¶ 8, Ex. F (McHatton Dep. at 85:12-25). *See Torres-Lopez*, 111 F.3d

15   at 644 (finding the fourth element of functional factors met where workers "learned by word

16   of mouth" that work was available and the employer selects workers "from the labor pool that

17   showed up"). The undisputed facts show that this element is met.

18   *Fifth*, the work available to detainees in the VWP is more akin to being part of an

19   employer's labor pool than an individual who is working for their own benefit. *Torres-Lopez*,

20   111 F.3d at 644. Although many detainee workers bring skills from outside of the NWDC, the

21   kitchen, laundry, barbershop, and janitorial work they perform is not "an enterprise that

22   actually depend[s] for success upon the initiative, judgment or foresight" of the worker.

23   *Rutherford*, 331 U.S. at 731. The undisputed facts show that this element is met.

24   *Sixth*, detainee workers do not have an "opportunity for profit or loss depending upon

25   [their] managerial skill[.]" *Torres-Lopez*, 111 F.3d at 644 (citing *Real*, 603 F.2d at 754).

26   Detainee workers' ability to profit is capped at $1 per day regardless of initiative they may

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    show or their ability to manage their work or the work of other detainee workers. Baker Decl.

2    ¶ 3, Ex. A (RFA 7). The undisputed facts show that this element is met.

3         *Seventh*, detainee workers have a permanent working relationship with GEO. *See*

4    *Torres-Lopez*, 111 F.3d at 644 (citing *Real*, 603 F.2d at 754). The working relationship

5    between GEO and detainee workers—just as in all at-will employment relationships—will last

6    as long as the detainee workers perform their duties satisfactorily and the detainee decides to

7    continue working. *See* Baker Decl. ¶ 11, Ex. I (VWP Policy); *id.* ¶ 16, Ex. N (PBNDS

8    5.8(V)(L)(1)). The undisputed facts show that this element is met.

9         *Eighth*, the services detainee workers render are "an integral part of [GEO's]

10   business[.]" *Torres-Lopez*, 111 F.3d at 640 (quoting *Real*, 603 F.2d at 754). It is beyond dispute

11   that detainee workers perform work that is critical to the operation of the NWDC. Hundreds of

12   detainee workers cook, clean, and do laundry each day to keep the facility up and running,

13   performing the core tasks integral to GEO's business. *See Berry*, 2017 WL 1364658, at *5

14   (finding workers' labor to be integral to an employer's business model because the employer

15   "cannot fulfill its contractual obligations" unless workers performed their duties).

16        The undisputed record contains overwhelming evidence that detainee workers are in an

17   employment relationship with GEO. The Court should grant summary judgment in favor of

18   Washington's MWA claim.

19   **B.    Summary Judgment Should Issue Against GEO's Preemption Defense**

20        Neither the law nor the undisputed facts support GEO's remaining theory of

21   conflict/obstacle preemption.[12] Conflict/obstacle preemption only exists where: (1)

22   "compliance with both federal and state regulations is a physical impossibility," and (2) where

23   the challenged state law "stands as an obstacle to the accomplishment and execution of the full

24

25

_____

26   [12] The Court has already determined that Washington's claims are not barred by express or field preemption. *See* ECF 29 at 6-10.

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1   purposes and objectives of Congress[.]" *Chicanos Por La Causa v. Napolitano*, 558 F.3d 856,

2   863 (9th Cir. 2009). There must be an actual non-hypothetical conflict. *Id.*

3          *First*, compliance with both federal and state laws at issue in this matter is not

4   impossible. GEO itself admits that it can pay more than $1 per day to detainee workers, and

5   has done so in the past. *See* Baker Decl. ¶ 17, Ex. O (RFAs 56-60, 67). ICE agrees. *See id.* ¶

6   19, Ex. Q. Further, GEO's contract with ICE directs GEO to comply with state and local labor

7   laws, which would include the MWA. ECF 19 at 47-48. *See also* ECF 162 at 8 (noting that the

8   GEO-ICE contractual requirement arguably constitutes waiver of any objection to the MWA).

9          *Second*, there is no evidence that GEO's compliance with the MWA would "stand[] as

10  an obstacle to the accomplishment and execution of the full purposes and objectives of

11  Congress." *Chicanos*, 558 F.3d at 863. GEO can point to no federal statute that would prohibit

12  it from paying detainees the minimum wage and its very contract with ICE expressly requires

13  it to comply with all state labor laws. ECF 16-1 at 44. Indeed, as the Court correctly explained,

14  "if the MWA applies here, it may not affect the Federal Government at all[.]"[13] ECF 162 at 9.

15         Based on the law and the undisputed facts, GEO cannot establish obstacle preemption,

16  and summary judgment should be granted against that defense.

## V.   CONCLUSION

18         The Court should grant summary judgment on its Minimum Wage Act claim and

19  dismiss GEO's conflict preemption defense.

20

21         DATED this 2nd day of July, 2019.

22  \\

23  \\

24  \\

25
    _____

26  [13] Further, ICE has not asserted an interest in this matter. Instead, ICE has refused to even provide testimony from
    its agents—even when GEO itself requests it do so. *See id.* ¶ 89, Ex CJ. (rejecting GEO's request for ICE testimony
    in this matter); *id.* ¶ 90, Ex. CK (revoking testimony from former ICE agent as unauthorized).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

ROBERT FERGUSON
Attorney General of Washington

s/ *La Rond Baker*
LA ROND BAKER, WSBA No. 43610
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO A. MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
larond.baker@atg.wa.gov
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

25

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that the foregoing document was electronically filed with the United

3

States District Court using the CM/ECF system. I certify that all participants in the case are

4

registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5

system.

6

7

DATED this 2nd day of July, 2019

8

                              *s/Caitilin Hall*
                              Caitilin Hall
                              Legal Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR SUMMARY JUDGMENT
ON MINIMUM WAGE ACT CLAIM
AND DEFENDANT THE GEO GROUP,
INC.'S PREEMPTION DEFENSE

26

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492