The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

10 | STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB

11 | Plaintiff, | PLAINTIFF STATE OF

12 | v. | WASHINGTON'S RESPONSE TO DEFENDANT THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

13 | THE GEO GROUP, INC., |

14 | Defendant. | NOTED ON MOTION CALENDAR: July 26, 2019

15 | | ORAL ARGUMENT REQUESTED

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.   INTRODUCTION .......................................................................................................... 1

II.  LEGAL STANDARD ................................................................................................... 2

III. ARGUMENT ............................................................................................................... 2

   A.  GEO Is Not Immune Because ICE Does Not Dictate How Much GEO Can
       Pay Detainee-Workers ........................................................................................ 3

       1.  The GEO-ICE Contract Does Not Prohibit GEO from Paying More Than
           $1 Per Day to Detainee-Workers ................................................................. 4

       2.  GEO Can Change the GEO-ICE Contract—and Has Done So In The Past ...... 7

       3.  The GEO-ICE Contract's Prohibition on Using Detainee-Workers to
           Perform Contractor Responsibilities Does Not Grant GEO Immunity ............. 8

   B.  Washington's MWA Is Not Preempted ................................................................ 9

   C.  Under Washington's MWA, GEO Is an Employer and the Detainee-Workers
       Are Its Employees ............................................................................................ 12

   D.  Regardless of whether this Court determines GEO violated the MWA, the
       Law and Facts Entitle Washington to a Trial on its Unjust Enrichment Claim ....... 17

       1.  Washington has no alternative, adequate remedy at law ................................ 18

       2.  The VWP Agreements pose no barrier to Washington's unjust
           enrichment claim ...................................................................................... 20

       3.  Detainee-workers are not "volunteers," and the facts about their reasons
           for working are disputed .......................................................................... 21

   E.  Washington May Recover the Full Benefit by which GEO Was Unjustly
       Enriched, including Disgorgement of Profits ........................................................ 23

IV.  CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1 (Wash. Ct. App. 2016) .................. 20

*Alvarado Guevara v. INS*, 902 F.2d 394 (5th Cir. 1990) .......................................................... 14

*Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289 (Wash. 2012) ........................... 15

*Becerra v. Expert Janitorial, LLC*, 332 P.3d 415 (Wash. 2014) .............................................. 15

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015) .................. 3, 9

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ............................................................... 3

*Carranza v. Dovex Fruit Co.*, 416 P.3d 1205 (Wash. 2018) ..................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 2

*Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97 (Wash. 1943) ............................................ 18

*Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856 (9th Cir. 2009) ......................... 9, 10

*Cox v. O'Brien*, 206 P.3d 682 (Wash. Ct. App. 2009) ............................................................... 23

*Crow Tribe of Indians v. Racicot*, 87 F.3d 1039 (9th Cir. 1996) ............................................... 6

*David v. Signal Int'l, LLC*, 257 F.R.D. 114 (E.D. La. 2009) .................................................... 11

*Dep't of Labor & Indus. v. Common Carriers, Inc.*, 762 P.2d 348 (Wash. 1988) ................... 13

*Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473 (Wash. Ct. App. 2007) ....................................... 18

*Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582 (Wash. 2000) ....................................... 12

*Ellenburg v. Larson Fruit Co., Inc.*, 835 P.2d 225 (Wash. Ct. App. 1992) ............................. 21

*Heaton v. Imus*, 608 P.2d 631 (Wash. 1980) ...................................................................... 21, 23

*Hendryx v. Turner*, 187 P. 372 (Wash. 1920) .......................................................................... 21

*Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108 (Wash. 2004) ........................................ 16, 21

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) ........................................... 11

*In re Adbox, Inc.*, 488 F.3d 838 (9th Cir. 2007) ...................................................................... 20

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 17-5217, 2019 WL
   2552955 (D.C. Cir. June 21, 2019) .......................................................................................... 3

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

*Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir. 2007) ................................................... 10

*Inniss v. Tandy Corp.*, 7 P.3d 807 (Wash. 2000) ........................................................................ 13

*Kerr v. King County*, 259 P.2d 398 (Wash. 1953) ...................................................................... 23

*Lafley v. Seadrunar Recycling, LLC*, No. 57851-1-I, 2007 WL 1464433 (Wash. Ct. App. May 21, 2007) .............................................................................................................................. 17

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013) ............................ 11

*Lucas v. Jerusalem Café, LLC*, 721 F.3d 927 (8th Cir. 2013) ..................................................... 11

*Lynch v. Deaconess Med. Ctr.*, 776 P.2d 681 (Wash. 1989) ....................................................... 18

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219 (2d Cir. 2006) ................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 2

*Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) .......................................... 14

*Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056 (9th Cir. 2005) ........................................................................................................................................ 23

*Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) ................................................................................................................... 3

*Osborn v. Boeing*, 309 F.2d 99 (9th Cir. 1962) ......................................................................... 22

*Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) ..................................... 13

*Paradise Valley Investigation & Patrol Servs., Inc. v. U.S. Dist. Ct.*, 521 F.2d 1342 (9th Cir. 1975) .................................................................................................................................. 19

*Rocha v. King County*, 435 P.3d 325 (Wash. Ct. App. 2019) ................................................... 16

*Salim v. Mitchell*, 268 F. Supp. 3d 1132 (E.D. Wash. 2017) ...................................................... 3

*Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126 (Wash. 2000), *amended by* 1 P.3d 578 (Wash. 2000) ....................................................................................... 18, 21

*SEC. v. Rind*, 991 F.2d 1486 (9th Cir. 1993) ............................................................................. 19

*Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) ............................................................ 14

*Town Concrete Pipe of Wash., Inc. v. Redford*, 717 P.2d 1384 (Wash. Ct. App. 1986) ........... 18

*Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997) ............................................................ 14

*Watkins v. Restorative Care Ctr., Inc.*, 831 P.2d 1085 (Wash. Ct. App. 1992) ........................ 20

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

*Whyte v. Suffolk Cty. Sheriff's Dep't*, No. 16-P-751, 2017 WL 2274618 (Mass. App. Ct. May 24, 2017) ................................................................................................................ 14

*Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940) ................................................. 3

*Young v. Young*, 191 P.3d 1258 (Wash. 2008) ................................................... 18, 23

## Statutes

29 U.S.C. § 202(a) ...................................................................................................... 13

29 U.S.C. § 218(a) ...................................................................................................... 12

8 U.S.C. § 1226(a) ........................................................................................................ 8

8 U.S.C. § 1324a(a) .................................................................................................... 10

Colo. Rev. Stat. § 8-6-101 .......................................................................................... 13

Mass. Gen. Laws ch. 151, §§ 1, 2 .............................................................................. 13

Wash. Rev. Code § 49.46.005(1) .......................................................................... 13, 14

Wash. Rev. Code § 49.46.010(3)(d) ........................................................................... 16

Wash. Rev. Code § 49.46.090(1) ................................................................................ 16

## Rules

Fed. R. Civ. P. 56(a) ..................................................................................................... 2

Fed. R. Civ. P. 8(c)(1) ................................................................................................ 20

## Regulations

8 C.F.R. § 274a.12(c) .................................................................................................... 9

## Other Authorities

Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #48: Application of U.S. Labor Laws to Immigrant Workers* (July 2008), https://www.dol.gov/whd/regs/compliance/whdfs48.htm ..................................... 11

Wash. State Dep't of Labor & Indus. Emp't Standards, *Minimum Wage Act Applicability, Administrative Policy ES.A.1* (July 15, 2014), https://www.lni.wa.gov/WorkplaceRights/files/policies/esa1.pdf ....................... 16

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

# I.     INTRODUCTION

Having already filed three dispositive motions in this matter, The GEO Group, Inc. (GEO) now moves one additional time for summary judgment in an attempt to avoid a straightforward application of Washington law. GEO's fourth dispositive motion argues that derivative sovereign immunity and preemption shield GEO from any liability for its practice of paying detainee-workers $1 per day. Not only that, GEO argues that it can continue paying workers only $1 per day because detainee-workers agreed to it. None of GEO's arguments are persuasive—and several have already been rejected by this Court.

*First*, GEO argues that derivative sovereign immunity bars Washington's claims because its conduct was "authorized and directed by the Government of the United States." ECF 245 at 2. GEO's argument is disingenuous. Washington challenges not the existence of the Voluntary Work Program (VWP), but GEO's decision to pay detainee-workers well below the state minimum wage. Since GEO has the discretion to set detainee-worker pay above $1 per day, and has at times exercised that discretion, it is not immune from suit.

*Second*, GEO argues that the Immigration Reform and Control Act (IRCA) preempts Washington's laws. GEO's argument fails because GEO can, in fact, comply with both IRCA and Washington's Minimum Wage Act (MWA) by either employing detainee-workers who are work-authorized or hiring non-detained workers in the Pierce County community. Indeed, this Court rejected GEO's same conflict preemption argument at the pleading stage because it "relie[d] on factual determinations about the status of detainees" that were not yet settled. ECF 29 at 11. More than a year-and-a-half of discovery later, GEO has still not proffered any factual evidence to overcome the presumption against preemption.

*Third*, GEO suggests detainee-workers cannot be employees under Washington's MWA because courts in other states have determined detainees are not employees under the Fair Labor Standards Act (FLSA) and other state laws. However, Washington does not seek to enforce the FLSA or the Colorado or Massachusetts wage statutes. Washington seeks to enforce its own

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    state law, which contains a uniquely broad purpose. Given that GEO dictates detainee-workers'

2    assignments, sets their pay, and supervises their work, there can be no question that detainee-

3    workers are employees entitled to the minimum wage.

4        *Fourth*, GEO argues Washington's unjust enrichment claim is precluded because some

5    of the individual detainees have adequate remedies at law. As has been the case throughout this

6    litigation, GEO misunderstands Washington's interest as *parens patriae*. Washington's interests

7    include the physical and economic well-being of *both* detainee-workers *and* Washington

8    resident-workers. The MWA and unjust enrichment claims are each necessary for Washington

9    to obtain complete and adequate relief.

## II.    LEGAL STANDARD

11        Summary judgment is proper where "the movant shows that there is no genuine issue as

12    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

13    56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

14    of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing whether a party has met

15    its burden, the underlying evidence must be viewed in the light most favorable to the non-moving

16    party, with all inferences drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v.*

17    *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    ARGUMENT

19        GEO's request for summary judgment should be denied. Not only does GEO rehash

20    already-dismissed arguments and rely on strained readings of the law, the motion ignores the

21    basic, undisputed facts: GEO uses detainee-workers to prepare meals, launder linens, cut hair,

22    and clean the Northwest Detention Center (NWDC); GEO pays detainee-workers $1 per day for

23    that work; and the GEO-ICE contract requires GEO to comply with state labor laws. Neither

24    immunity nor preemption can save GEO from liability. GEO must pay workers the state

25    minimum wage, and must disgorge profits it wrongly obtained by choosing not to pay a fair

26    wage for close to fifteen years.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**A.      GEO Is Not Immune Because ICE Does Not Dictate How Much GEO Can Pay Detainee-Workers**

Derivative sovereign immunity is no bar to Washington's claims. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), held that "[g]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." The Court cautioned, however, that such immunity is not absolute and will not attach where a contractor's discretionary actions created the contested issue. *Id.* (rejecting claim of derivative sovereign immunity where contractor sent text messages to unconsenting recipients even though it was instructed to send messages only to individuals who had "opted in").

A contractor may avail itself of derivative sovereign immunity where: (1) the government authorizes the contractor's actions; and (2) the government validly conferred that authorization, meaning it acted within its constitutional power. *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20-21 (1940); *Campbell-Ewald Co.*, 136 S. Ct. at 673. This is consistent with the Ninth Circuit's longstanding rule that "derivative sovereign immunity . . . is limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). Indeed, when a contractor fails to follow "the Government's explicit instructions, derivative sovereign immunity does not shield the contractor from liability." *Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2018 WL 4057814, at *3 (C.D. Cal. Aug. 22, 2018) (explaining that any immunity for failure to pay minimum wage to detainee-workers depends on "[h]ow much discretion GEO had, if any, in implementing the Work Program"). *See also In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 17-5217, 2019 WL 2552955, at *18 (D.C. Cir. June 21, 2019) (affirming that derivative sovereign immunity is unavailable where federal entity did not explicitly direct contractor to engage in the contested activity); *Salim v. Mitchell*, 268 F. Supp. 3d 1132, 1149-50 (E.D. Wash. 2017) (rejecting derivative sovereign immunity claim at summary judgment where

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

"[t]he factual record would support finding that Defendants had a role in the design of the Program . . . and exercised some discretion in the application of the Program"). Here, GEO cannot avail itself of immunity because its own discretionary actions violated the government's explicit instructions and gave rise to the specific claims at issue.

1.    **The GEO-ICE Contract Does Not Prohibit GEO from Paying More Than $1 Per Day to Detainee-Workers**

GEO's assertion of derivative sovereign immunity is wholly premised on the assertion that the "ICE contracts dictate that GEO pay detainees $1/day for work in the VWP." *See* ECF 245 at 8. But GEO's position is contradicted by actual language of the GEO-ICE Contracts, the ICE/DHS Performance-Based National Detention Standards (PBNDS), and GEO's own admission that it has the option to pay more than $1 per day to detainees.

While ICE requires GEO operate a VWP, ICE nowhere dictates the types of jobs detainee-workers must be assigned. *See generally* ECF 253-14 (PBNDS 5.8). ICE certainly did not direct GEO to skirt Washington's labor laws, nor did it dictate that GEO use detainee-workers to perform labor critical to the NWDC's operations. *Id.* Most importantly, ICE did not tell GEO that it must pay detainee-workers only $1 per day for their labor. *See* T. Johnson Decl., ECF 91 ¶¶ 8, 12, 13 (affirming that the GEO-ICE contract "do[es] not designate *how* a contractor is to perform the work" but rather establishes expected outcomes, that GEO maintains discretion in developing and implementing the VWP, and that "detainees who participate in the VWP shall receive no less than $1 per day for their participation") (emphasis in original). Instead, ICE's explicit instruction is for GEO to comply with Washington's labor laws—including Washington's MWA. ECF 19 at 48 (requiring GEO to comply with "state and local labor laws"); 86 (requiring GEO to develop a VWP that complies "with all applicable laws and regulations").

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   GEO nevertheless cites the "CLIN 3" line items from the 2009 and 2015 contracts[1] as

2   evidence that it lacks discretion to pay more than $1 per day. ECF 245 at 8-9. Those line items

3   address the "Detainee Volunteer Wages for Detainee Work Program" by setting forth the amount

4   that ICE will reimburse GEO: "Reimbursement for this line item will be at the actual cost of

5   $1.00 per day per detainee. [GEO] shall not exceed the quantity shown without prior approval

6   by the Contracting Officer." ECF 246-3 at 5; ECF 246-2 at 7. Those line items nowhere state

7   that GEO must pay detainees any particular wage, much less *limit* GEO to paying only $1 per

8   day to detainee-workers. Nor does GEO cite any other contractual provision as establishing a

9   ceiling on what GEO may pay detainee-workers. *See* ECF 245 at 8-9.

10   The only other "evidence" GEO cites for the hard $1 limit is testimony from its own

11   "government contracts" expert, Gregory Bingham. *Id.* Despite purporting to have no opinion on

12   contract interpretation, Mr. Bingham proceeded to interpret the CLIN 3 provision as strictly

13   limiting GEO to paying $1 per day. *Compare* Chien Decl. ¶ 3, Ex. A. (Bingham Dep. 158:13-

14   15) ("I'm not here to interpret the contract and I offer no opinions in my report on the

15   interpretation of the contract"), *with id.* (Bingham Dep. 125:20-21) ("A. I think the contract

16   limits them to paying them the actual cost of $1 per day."), *id.* (Bingham Dep. 48:21-49:9)

17   (explaining that he "*think[s] people would interpret that* or would operationalize that as that is

18   what they needed to do is pay them a dollar a day . . . ") (emphasis added), *id.* (Bingham Dep.

19   81:13-14) ("CLIN 3 indicates that GEO is limited to paying the detainees $1 per day"), *id.*

20   (Bingham Dep. 126:15-23) ("Well, I mean, CLIN 3 is very clear that it's exactly a dollar.

21   [PBNDS] can be a dollar or more. .  .  . The way to interpret those consistently would be

22

23   [1] GEO acknowledges that the 2002 contract "does not expressly state the compensation for detainees
24   participating in the VWP." ECF 245 at 8. Indeed, it nowhere limits the amount GEO is to pay detainees. ECF 246-
1 (2002 Contract) at 7-9 (line items that nowhere reflect detainee wage limitations). Nor does the 2002 GEO-ICE
Contract expressly incorporate the $1 per day wage GEO cites from the INS Detention Standard. *See* ECF 246-1 at
25   23 (noting which standards are incorporated), 46 ("Detainee Labor" section lacking any reference to INS Detention
Standards). To the contrary, the 2002 Contract makes clear that "all services and programs must comply with the
[statement of work], and all applicable state and local laws . . . " *Id.* at 24. And like the 2009 and 2015 contracts,
26   the 2002 contract required GEO to apply the "most stringent" standard in the event of a conflict. *Id.*

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   exactly $1. That comports with CLIN 33[sic] and it comports with PBNDS"). Mr. Bingham's

2   opinion, which merely parrots GEO's legal position, is not permissible expert evidence. *See*

3   *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not

4   proper for issues of law" including "[t]he interpretation of a contract").

5          In any event, and contrary to GEO's (and Mr. Bingham's) position, the contract language

6   plainly governs only what ICE must pay GEO—not what GEO must pay detainees. Nothing else

7   in the record shows that GEO is limited to paying only $1 per day to detainee-workers. Instead,

8   the record shows that GEO knows it can pay detainees more than $1 per day under the GEO-

9   ICE Contracts and the PBNDS, the current version of which provides that "[d]etainees shall

10  receive monetary compensation for work completed" of "at least $1.00 per day." ECF 253-14

11  (PBNDS 5.8(V)(K)). GEO admitted in discovery responses, for example, that it "has the option

12  to pay more than $1/day to detainee-workers for work performed." ECF 253-15 (RFA No. 67).

13  Mr. Bingham was forced to admit at deposition that his view of the contract "is not consistent"

14  with GEO's binding discovery admission. Chien Decl. ¶ 3, Ex. A (Bingham Dep. 131:2-13).

15         Moreover, GEO admits that it actually *has* paid detainees more than $1 per day (both in

16  additional monetary compensation and additional food) for work in the VWP under the GEO-

17  ICE Contract. *See* ECF 253-15 (RFAs 56, 58-60, 71-72) (admitting GEO has paid more than $1

18  to detainee-workers who worked a barber shop shift, or who worked more than one kitchen

19  shift); ECF 253-20 (Scott Dep. 130:3-132:4) (confirming GEO provided detainee-workers "extra

20  snacks because they [were] working late night"); ECF 253-21 (Henderson Dep. 74:5-10) ("The

21  kitchen workers do get a little extra [food] for working in the kitchen along with their dollar a

22  day"); *see also* ECF 253-22 (declarations regarding payment practices under VWP). GEO's own

23  officials have acknowledged that they can pay more than $1 per day. *See* ECF 253-16 at 2

24  (NWDC leadership confirming that the PBNDS "doesn't say that we don't have the option to

25  pay more [than $1.00 per day] if we like"); ECF 253-18 (minutes of May 2012 meeting of

26  NWDC leadership stating, "Payment for kitchen workers are flexible under the new PBNDS").

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    And, of course, ICE has told GEO that "there is no maximum" rate of compensation for VWP

2    participants. *See* ECF 253-17.

3         Consistent with all of this, the GEO-ICE Contracts make clear that in providing services

4    to ICE, GEO is expected to "perform in accordance with" specific "statutory, regulatory, policy,

5    and operational" constraints, including "[a]pplicable federal, state and local labor laws and

6    codes." ECF 246-3 at 43-44; ECF 246-2 at 18-19. The GEO-ICE Contracts further explain that

7    "[a]ll services must comply with the Performance Work Statement (PWS) and all applicable

8    federal, state, and local laws and standards[,]" ECF 246-3 at 52, and clarify that to the extent a

9    conflict exists, "the most stringent [standard] shall apply." *Id.*; *see also* ECF 246-2 at 58 (same).

10        **2.    GEO Can Change the GEO-ICE Contract—and Has Done So In The Past**

11        GEO attempts argue for immunity by referencing ICE's general position of power vis-à-

12   vis GEO in the contracting process—but that argument falls flat. While the ICE Contracting

13   Officer is the only person "*authorized to approve* changes in any of the requirements" under the

14   contract, *see* ECF 245 at 11 (emphasis added), GEO's suggestion that it can never obtain changes

15   to the contract conflicts with the plain terms of the contract, GEO's own expert testimony, and

16   GEO's past practice of seeking and obtaining contract modifications.

17        In particular, nothing in the GEO-ICE Contract's language prevents GEO from seeking

18   and obtaining modifications or requesting equitable adjustments. To the contrary, the GEO-ICE

19   Contract explicitly contemplates that GEO can seek and obtain modifications. *See* ECF 246-3 at

20   101 (Section H.3) ("The Contractor, in connection with any proposal he/she makes for a contract

21   modification, shall furnish a price breakdown . . ."); *id.* at 97 (Section G.1.1) (noting that all

22   modifications must be in writing, signed, and approved by the ICE Contracting Officer). The

23   unremarkable contract provision GEO cites simply recognizes that, within ICE, it is the

24   Contracting Officer and no one else (i.e., the Contracting Officer's Representative) who may

25   approve changes to the GEO-ICE Contract. *See* ECF 246-3 at 97 (Section G.1.1).

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    GEO's "government contracts" expert, Mr. Bingham, acknowledged as much. *See* Chien

2    Decl. ¶ 3, Ex. A (Bingham Dep. 96:9-23) (recognizing process for parties to negotiate over

3    contract modifications), *id.* (Bingham Dep. 97:21-98:1) ("I know of no limitations on GEO to

4    request a change to the contract."), *id.* (Bingham Dep. 118:7) ("Both parties can change the

5    contract."), *id.* (Bingham Dep. 151:16-152:5) (acknowledging that GEO can request

6    modifications to reflect updated wage rates for employees). And of course, GEO's history of

7    seeking and obtaining contract modifications further shows that GEO can obtain changes to the

8    GEO-ICE Contract. *See*, *e.g.*, *id.* ¶ 4, Ex. B (request for equitable adjustment), *id.* ¶ 5, Ex. C

9    (contract modifications re: employee wage determinations).

10   ### 3.    The GEO-ICE Contract's Prohibition on Using Detainee-Workers to
11   Perform Contractor Responsibilities Does Not Grant GEO Immunity

12   Finally, GEO relies upon a provision in the GEO-ICE contract that bars GEO from

13   utilizing detainee labor to complete duties meant to be performed by GEO employees to argue

14   that detainee-workers cannot possibly be employees for purposes of Washington's MWA. *See*

15   ECF 245 at 13. GEO's argument is unavailing. The undisputed facts show that GEO is violating

16   that prohibition. As GEO itself admits, GEO uses detainee-workers to complete its own

17   contractual duties. *Compare* ECF 246-3 (GEO-ICE Contract) at 57-58, 83 (listing GEO's

18   responsibilities as ensuring the facility is "clean and vermin/pest free"; laundering, changing,

19   and distributing linens; and preparing meals), *with* ECF 253-15 (RFAs 23-44) (confirming the

20   VWP jobs available at the NWDC include cleaning common areas, doing laundry, and preparing

21   food). To the extent GEO argues that no detainee can work lawfully at the NWDC because ICE

22   requires that GEO employ only U.S. citizens and persons "lawfully admitted," ECF 245 at 13,

23   GEO provides no evidence that all detainees would be disqualified. Not every detainee is "illegal

24   or undocumented." *Cf.* ECF 245 at 7. Detainees are held at the NWDC *pending* a determination

25   on their immigration status and may be authorized to work notwithstanding detention. *See*

26   8 U.S.C. § 1226(a) (authorizing detention "pending decision on *whether* the alien" is removable)

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    (emphasis added); 8 C.F.R. § 274a.12(c) (work authorization continues during "any period when

2    an administrative appeal or judicial review of an application or petition is pending"). In fact,

3    discovery in this matter revealed at least one detainee-worker in the VWP who was work-

4    authorized while working at the NWDC. *See* Chien Decl. ¶ 6, Ex. D (notice approving

5    application for employment authorization). Lastly, of course, GEO could avoid this problem

6    entirely by hiring non-detained Washingtonians from the Pierce County labor pool who need

7    jobs. Chien Decl. ¶ 7, Ex. E (Washington's expert opinion that GEO's labor practices cost the

8    private-sector labor pool over a hundred full-time jobs each year).

9         In other words, given the many options that allow GEO to comply with both state and

10   federal law, a single provision in the GEO-ICE Contract cannot plausibly be construed as a

11   "government specification" that GEO violate Washington's labor laws. *Cf. Cabalce*, 797 F.3d

12   at 732. Although GEO argues that in paying $1 per day it has "acted pursuant to the specific

13   direction of ICE, as expressed in the ICE Contracts, and the applicable PBNDS standards," *see*

14   ECF 245 at 14, a full review of the record shows otherwise. Since the discretionary choices at

15   the heart of this lawsuit were made by GEO and not the federal government, *see Cabalce*,

16   797 F.3d at 732, derivative sovereign immunity is no bar to Washington's claims.

17   **B.    Washington's MWA Is Not Preempted**

18        Conflict or obstacle preemption exists only where: (1) "compliance with both federal and

19   state regulations is a physical impossibility," and (2) where the challenged state law "stands as

20   an obstacle to the accomplishment and execution of the full purposes and objectives of

21   Congress[.]" *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009).

22   There must be an actual, non-hypothetical conflict. *Id*. Here, there is no such thing.

23        As an initial matter, compliance with both federal and state laws in this matter is not

24   impossible. GEO itself admits that it can pay more than $1 per day to detainee-workers, and has

25   done so in the past. *See* ECF 253-15 (RFAs 56-60, 67). ICE agrees. *See* ECF 253-17 ("According

26   to the standard there is a minimum compensation of a $1.00 however; there is no maximum.")

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Further, GEO's compliance with Washington's MWA does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chicanos Por La Causa*, 558 F.3d at 863. GEO points to no federal statute that would prohibit GEO from paying detainee-workers or Pierce County residents the minimum wage, and its very contract with ICE expressly requires it to comply with all state labor laws. ECF 16-1 at 44; ECF 19 at 47-48. As this Court correctly explained, "if [Washington's minimum wage law] applies here, it may not affect the Federal Government at all[.]"[2] ECF 162 at 9. *See also* ECF 162 at 8 (noting that the GEO-ICE contractual requirement arguably constitutes waiver of any objection to the Washington minimum wage).

Attempting to gin up a conflict between federal and state law, GEO argues that IRCA bars GEO from paying detainee-workers the minimum wage or the fair market value of their labor because the detainee-workers are not work-authorized. *See* ECF 245 at 16. Even setting aside GEO's erroneous assumption that none of the detainee-workers are work-authorized, GEO's argument reaches too far. IRCA only prohibits employers from knowingly hiring or recruiting unauthorized aliens to work. 8 U.S.C. § 1324a(a). IRCA does not displace all fifty states' minimum wage laws or other generally applicable state labor protections. As the Ninth Circuit has held, states can enforce generally applicable regulations that protect workers without violating IRCA. *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (holding IRCA does not preempt California law forbidding employers from terminating an employee without good cause, even an immigrant employee who temporarily lost legal work status); *see also Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 237 (2d Cir. 2006) (holding IRCA does not preempt established state workers' compensation law). Indeed, the federal government explicitly requires that workers be paid the federal minimum wage for work actually performed regardless of their work authorization. *See* Wage & Hour Div., U.S. Dep't of Labor, *Fact*

---

[2] Further, ICE has not asserted an interest in this matter. Instead, ICE has refused to even provide testimony from its agents—even when GEO requested that it do so. *See* ECF 253-87 (rejecting GEO's request for ICE testimony in this matter); ECF 253-88 (revoking testimony of former ICE agent as unauthorized).

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    *Sheet #48: Application of U.S. Labor Laws to Immigrant Workers* (July 2008),

2    https://www.dol.gov/whd/regs/compliance/whdfs48.htm (declaring that the U.S. Department of

3    Labor will enforce federal minimum wage laws "without regard to whether an employee is

4    documented or undocumented"). This Court has already held, after reviewing IRCA and other

5    federal provisions, that "[t]here is no showing that Congress intended . . . to preempt state law

6    as to detainee wages." ECF 29 at 11. That conclusion remains correct. GEO's contention that it

7    is in an "impossible bind" rings hollow.

8        GEO's citation to *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 149-50

9    (2002), does not save its argument. In *Hoffman Plastic*, the Supreme Court declined to award

10   back pay for "work not performed," i.e., from the date of the workers' illegal termination for

11   collectively bargaining under the National Labor Relations Act to the date the employer

12   discovered the workers were unauthorized to work. 535 U.S. at 149. Courts have consistently

13   refused to extend *Hoffman* to suggest unauthorized workers are not entitled to the minimum

14   wage for work actually performed. *See Lucas v. Jerusalem Café, LLC*, 721 F.3d 927, 935 (8th

15   Cir. 2013) (recognizing unauthorized aliens' minimum wage claim and noting that *Hoffman* does

16   not stand for the proposition that unauthorized workers were excluded from all statutory

17   protections); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013)

18   ("[E]ven after *Hoffman*, we maintain that '[b]y reducing the incentive to hire such workers the

19   [federal minimum wage act's] coverage of undocumented aliens helps discourage illegal

20   immigration and is thus fully consistent with the objectives of the IRCA"); *see also David v.*

21   *Signal Int'l, LLC*, 257 F.R.D. 114, 124 (E.D. La. 2009) ("*Hoffman Plastic* does not control

22   plaintiffs' claims for unpaid minimum and overtime wages for work already performed"); *id.* at

23   123 n.32 (listing cases holding that claims for work already performed did not conflict with

24   federal immigration law).

25        Even more to the point, GEO can easily comply with both IRCA and Washington's

26   minimum wage law by employing detainee-workers who are authorized to work, or by hiring

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    non-detained, work-authorized employees from the Pierce County community (as it does with

2    its security officers). In other words, Washington does not seek—as GEO contends—to "dictate

3    the employment status of unauthorized aliens via minimum wage laws." ECF 245 at 17.

4    Washington simply seeks to require that GEO pay the minimum wage for work performed. Since

5    compliance with federal and state laws is not physically impossible and does not stand in the

6    way of congressional intent, obstacle preemption does not bar Washington's claims.

7    **C.    Under Washington's MWA, GEO Is an Employer and the Detainee-Workers Are**

8    **Its Employees**

9        GEO next claims that, even if it is not immune and Washington's claims are not

10   preempted, detainee-workers are not "employees" under Washington's MWA. In making this

11   argument, GEO concedes that the economic-dependence test determines whether an employer-

12   employee relationship exists under Washington's MWA. ECF 245 at 18. However, GEO fails to

13   actually apply the economic-dependence test in its motion—or even identify any of the relevant

14   factors. Instead, GEO relies on out-of-circuit cases, the Federal Labor Standards Act (FLSA),

15   and the minimum wage laws of other states to argue detainee-workers in the NWDC cannot be

16   employees under Washington's MWA. None of GEO's arguments are persuasive or new. *See*

17   GEO's Mot. to Dismiss, ECF 10 at 24-26; *see also* Order Denying GEO's Mot. to Dismiss,

18   ECF 29 at 18 ("Neither *Menocal, Whyte,* nor *Alvarado* is binding precedent, and in this Court's

19   view, extending the logic of *Alvarado* to interpret this State's statutory exception to include

20   federal detainees moves beyond interpretation to legislation.").

21       While Washington's MWA was modeled on the FLSA, they are "not identical."

22   *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). The FLSA itself

23   recognizes state minimum wage laws will differ from the federal provisions. *See* 29

24   U.S.C. § 218(a) (directing that "[n]o provision of [the FLSA] or of any order thereunder shall

25   excuse noncompliance with any Federal or State law or municipal ordinance establishing a

26   minimum wage higher than the minimum wage established under this chapter"); *Pac. Merch.*

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    *Shipping Assoc. v. Aubry,* 918 F.2d 1409, 1425 (9th Cir. 1990) (affirming that "the purpose

2    behind the FLSA is to establish a national *floor* under which wage protections cannot drop, not

3    to establish absolute uniformity in minimum wage . . . standards nationwide") (emphasis in

4    original). As such, federal law serves only as "persuasive authority" when construing

5    Washington's MWA, and only then for provisions that are similar to those found in the FLSA.

6    *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000) (Washington courts "may consider" federal

7    interpretations of "comparable provisions"); *see also Carranza v. Dovex Fruit Co.*, 416 P.3d

8    1205, 1210, 1213 (Wash. 2018) (observing Washington's "long and proud history of being a

9    pioneer in the protection of employee rights," and holding the MWA departs from the FLSA

10   interpretations and provides piece-rate workers a per hour right to the minimum wage) (citation

11   omitted). *Cf. Dep't of Labor & Indus. v. Common Carriers, Inc.*, 762 P.2d 348, 349-50 (Wash.

12   1988) (holding that the FLSA did not preempt state wage laws and requiring federal contractor

13   to comply with Washington's MWA).

14        Most importantly, the purpose of Washington's MWA is substantially broader than that

15   of the FLSA and other states' minimum wage laws. Washington's Legislature declared the

16   minimum wage necessary not only to protect "the health, safety and the general welfare of the

17   citizens of this state," but also to "encourage employment opportunities within the state." Wash.

18   Rev. Code § 49.46.005(1). This latter purpose—prevention of predatory labor practices and

19   encouragement of maximum employment opportunities for state residents—is wholly missing

20   from the FLSA and other states' laws. *See* 29 U.S.C. § 202(a) (declaring the purpose of the FLSA

21   is to ensure the free flow of goods in commerce and maintain "the minimum standard of living

22   necessary for health, efficiency, and general well-being of workers"); Colo. Rev. Stat. § 8-6-101

23   (declaring workers must "be protected from conditions of labor that have a pernicious effect on

24   their health and morals"); Mass. Gen. Laws ch. 151, §§ 1, 2 (lacking any declaration of

25   legislative purpose while prohibiting the "oppressive and unreasonable wage" that is "less than

26   sufficient to meet the minimum cost of living necessary for health").

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1     As a result, none of the out-of-circuit cases GEO cites are applicable. In *Alvarado*

2 *Guevara v. INS*, the Fifth Circuit held that detainee-workers held in a federally owned and

3 operated detention facility were not protected by the FLSA's minimum wage provisions.

4 902 F.2d 394, 396 (5th Cir. 1990). However, to reach this holding, the *Alvarado* court relied

5 upon the conclusion that "[t]he congressional motive for enacting the FLSA . . . was to protect

6 the 'standard of living' and 'general well-being' of the worker in American industry" and did

7 not include an express inclusion or exemption regarding incarcerated individuals. *Id.* The Third

8 and Eleventh Circuits similarly exempted pretrial detainees based on the FLSA's purpose to

9 protect the standard of living of the American worker. *See Villarreal v. Woodham*, 113 F.3d 202,

10 206-07 (11th Cir. 1997) (refusing to consider a pre-trial detainee to be an employee because the

11 correctional facility meets his "everyday needs"); *Tourscher v. McCullough*, 184 F.3d 236,

12 243-44 (3d Cir. 1999) (agreeing with the *Villarreal* rationale). Statutory purpose has similarly

13 limited courts applying other minimum wage laws. In *Whyte v. Suffolk County Sheriff's*

14 *Department*, No. 16-P-751, 2017 WL 2274618, at *1-2 (Mass. App. Ct. May 24, 2017)

15 (unpublished), the intermediate state court dismissed the minimum wage claim against the

16 sheriff's office detaining him under contract with ICE because it determined that the purpose of

17 Massachusetts' minimum wage laws was almost identical to that of the FLSA. In *Menocal v.*

18 *GEO Group, Inc.*, the district court found that detainee-workers were not "employees" under the

19 Colorado Minimum Wage Act because the purpose of that statute is to "supply the necessary

20 cost of living and to maintain the health of the workers." 113 F. Supp. 3d 1125, 1129-32

21 (D. Colo. 2015) (finding that the Colorado's minimum-wage protections only covered four

22 limited categories of employees).

23     In contrast, the broad remedial purpose of Washington's MWA counsels a finding that

24 detainee-workers are GEO's employees. *See* Wash. Rev. Code § 49.46.005(1). As the

25 Washington Supreme Court has held, the relevant inquiry under the Washington MWA is

26 "whether as a matter of economic reality, the worker is economically dependent upon the alleged

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    employer *or is instead in business for himself.*" *Anfinson v. FedEx Ground Package Sys., Inc.*,

2    281 P.3d 289, 871 (Wash. 2012) (emphasis added). Although GEO omits the italicized portion

3    of the test in its motion, *see* ECF 245 at 18, the last clause is important. Courts consider thirteen

4    nonexclusive factors when applying the economic-dependence test: (1) nature and degree of

5    control of the workers; (2) degree of supervision of work; (3) the power to determine pay rates

6    or the methods of payment of the workers; (4) the right to hire, fire, or modify workers'

7    employment conditions; (5) preparation of payroll and payment of wages; (6) whether the work

8    was a "specialty job on the production line"; (7) whether responsibility under the contracts

9    between a labor contractor and an employer pass from one labor contractor to another; (8)

10   whether the employer's premises and equipment are used for work; (9) whether the employees

11   had a business that could shift as a unit from one worksite to another; (10) whether the services

12   rendered requires a special skill; (11) whether the employee had an opportunity for profit or loss

13   depending upon managerial skill; (12) whether there was permanence in the working

14   relationship; and (13) whether the service rendered is an integral part of the alleged employer's

15   business. *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 421 (Wash. 2014). Applying the

16   economic-dependence test and considering the factors above, there can be no question that

17   detainee-workers are GEO employees entitled to the minimum wage. *See* State's Mot. for

18   Summ. J., ECF 251.

19        To the extent GEO purports to apply the economic-dependence test, it does so in one

20   paragraph that makes three points. ECF 245 at 20-21. None holds water. First, GEO argues

21   detainee-workers are not "economically dependent on the wages earned by the VWP to ensure

22   their standard of living." *Id.* at 21. Yet, GEO's argument is not related to any of the thirteen

23   factors in the economic-dependence test, which measures whether an employee depends for all

24   his income on the employer, or is instead in business for himself. *Anfinson*, 281 P.3d at 871.

25   Even if GEO provides detainee-workers "all necessary essentials," which Washington does not

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 concede, GEO cannot argue that the detainee-workers buffing GEO's floors, working in GEO's

2 kitchens, and washing GEO's linens, are in business for themselves.

3      Second, as a matter of law, detainee-workers cannot "volunteer" for a for-profit

4 company. Under the MWA, only "educational, charitable, religious, state or local governmental

5 body or agency, or nonprofit organization[s]" are eligible to accept volunteer labor. Wash. Rev.

6 Code § 49.46.010(3)(d); *see also* Wash. State Dep't of Labor & Indus. Emp't Standards,

7 *Minimum Wage Act Applicability, Administrative Policy ES.A.1* (July 15, 2014) at 6(d),

8 https://www.lni.wa.gov/WorkplaceRights/files/policies/esa1.pdf ("**Volunteers are not allowed**

9 **in a 'for-profit' business**." (emphasis in original)).

10      Third, GEO's reliance on the detainee-workers signing a "Volunteer Work Agreement"

11 to argue detainee-workers had no reasonable expectation of compensation beyond a $1 per day

12 is also foreclosed by state law. While employers can negotiate or bargain to pay rates in excess

13 of the state minimum wage, "employees and employers may not bargain away these minimum

14 requirements." *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 112-14 (Wash. 2004) (holding

15 nonnegotiable state rights under the state minimum wage are not preempted by federal law).

16 Indeed, the precise contract-law defense that GEO attempts to raise here is precluded expressly

17 by statute. Wash. Rev. Code § 49.46.090(1) ("Any agreement between [an] employee and [an]

18 employer allowing the employee to receive less than what is due . . . shall be no defense" to a

19 minimum wage claim).

20      GEO's economic-dependence cases do not help its argument. In *Rocha v. King County*,

21 435 P.3d 325, 333 (Wash. Ct. App. 2019), the state court of appeals held jurors had no right to

22 the minimum wage because of the unique nature of jury service as a civic duty.[3] Here, none of

23

24    [3] The *Rocha* plaintiffs appealed the intermediate court of appeals' decision. *See* Pet. for Review,
*Bednarczyk v. King County*, No. 51823-6-II, https://www.courts.wa.gov/content/petitions/96990-

25 6%20Petition%20for%20Review.pdf. Now styled as *Bednarczyk v. King County,* Sup. Ct. Cause No. 96990-6, the
Washington Supreme Court granted plaintiffs' petition for review on July 9, 2019. *See* Wash. Courts, Petitions for

26 Review, https://www.courts.wa.gov/appellate_trial_courts/supreme/index.cfm?fa=atc_supreme.currentPetitions
(listing *Bednarczyk* petition for review as granted).

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the detainee-workers' jobs, from cleaning the pods to preparing the food, can be characterized as a "civic duty." In *Lafley v. Seadrunar Recycling, LLC*, No. 57851-1-I, 2007 WL 1464433, at *3 (Wash. Ct. App. May 21, 2007), an unpublished opinion that lacks precedential value, the state court of appeals held the Washington's minimum wage law did not apply to work conducted as part of a drug and alcohol treatment center's rehabilitative work therapy program. GEO's claim that the VWP likewise operates primarily "for [detainees'] benefit," ECF 245 at 20, is absurd. GEO uses hundreds of detainee-workers each day to help GEO meet its own core functions and audit standards. ECF 253-25 (indicating the number of detainee-workers in the VWP); *see also* ECF 246-3 (GEO-ICE Contract) at 57-58, 83 (listing GEO's contract responsibilities); ECF 253-15 (RFAs 23-44) (confirming the VWP jobs available at the NWDC are the same as GEO's contract responsibilities). Unlike the rehabilitation program in *Lafley*, GEO does not promote future job opportunities by providing assistance in "fulfilling community service requirements," or in "obtaining reference letters," and there is no record evidence that the VWP is an "integral part of rehabilitation" or "drug and alcohol treatment." 2007 WL 1464433, at *2, 4.

In sum, the undisputed facts are that GEO paid its detainees workers only $1 per day— well below the statutory minimum wage—regardless of how many hours they worked. Washington law bars any attempt by GEO to contract out of its worker protections and has deemed such contracts invalid and no defense from claims to recover unpaid monies. GEO must be held responsible for violating Washington's minimum wage law.

**D.     Regardless of whether this Court determines GEO violated the MWA, the Law and Facts Entitle Washington to a Trial on its Unjust Enrichment Claim**

GEO's motion for summary judgment on Washington's unjust enrichment claim fails because: (1) Washington has no alternative remedy at law; (2) detainee-workers cannot be "volunteers" as a matter of law and, at a minimum, material facts are disputed about the

PLAINTIFF STATE OF WASHINGTON'S                                    17
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   voluntariness of their work; and (3) the proper measure of GEO's unjust enrichment remedy is

2   fact-based,  disputed, and turns on the Court's own discretion.

3          Notably, GEO does not set forth the legal standards that actually govern Washington's

4   unjust enrichment claim. "Unjust enrichment is the method of recovery for the value of the

5   benefit retained absent any contractual relationship because notions of fairness and justice

6   require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Three elements must be

7   established in order to sustain a claim based on unjust enrichment: (1) the defendant receives a

8   benefit; (2) the received benefit is at the plaintiff's expense; and (3) the circumstances make it

9   unjust for the defendant to retain the benefit. *Id.* (citing *Bailie Commc'ns, Ltd. v. Trend Bus. Sys.,*

10  *Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991)). To be clear, "[e]nrichment alone will not trigger

11  the doctrine; the enrichment must be unjust under the circumstances and as between the two

12  parties to the transaction." *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 482 (Wash. Ct. App.

13  2007). *See also Lynch v. Deaconess Med. Ctr.*, 776 P.2d 681, 683 (Wash. 1989); *Chandler v.*

14  *Wash. Toll Bridge Auth.*, 137 P.2d 97, 102 (Wash. 1943) (quoting Restatement (First) of

15  Restitution, § 1(c) (1937)).

16          **1.    Washington has no alternative, adequate remedy at law**

17          While a party cannot bring an equitable unjust enrichment claim if that same party has a

18  valid and adequate claim at law, GEO's own cases make clear that the rule has no applicability

19  where alternative legal claims are either incomplete or inadequate. *See Seattle Prof'l Eng'g*

20  *Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000), *amended by* 1 P.3d 578 (Wash.

21  2000) ("Incompleteness and inadequacy of the legal remedy are what determine the right to the

22  equitable remedy of injunction[.]") (quoting *Phelan v. Smith*, 61 P. 31 (Wash. 1900)); *Town*

23  *Concrete Pipe of Wash., Inc. v. Redford*, 717 P.2d 1384, 1387 (Wash. Ct. App. 1986) ("Equitable

24  relief is available if there is no adequate remedy at law."). The legal remedy of the MWA is

25  critical to Washington's case, but it is not adequate to redress the State's harms fully.

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Contrary to GEO's argument, Washington's interests and claims extend well beyond the

2    interests being pursued by a subset of detainee-workers through the private class action. *See*

3    *Nwauzor*, ECF 114 at 3-4 (defining the *Nwauzor* class to include VWP participants from

4    September 26, 2014, to the present). Washington challenges GEO's conduct since it opened the

5    NWDC in 2005, ECF 1-1 ¶¶ 3.8, 3.10, 4.9, and the unjust enrichment claim covers detainee-

6    workers who are not members of the private class. Washington also seeks to redress harms to

7    the labor market and to non-detained workers, including workers in Pierce County who missed

8    out on job opportunities because GEO wrongly withheld them from the market. *Id.* ¶ 1.2

9    (enforcement action necessary to "protect Washington workers" and "create employment

10   opportunities"); ECF 29 at 12-13 (highlighting alleged harms to "Washington resident-workers"

11   as distinct from harms to "detainee-workers"). Additionally, Washington seeks declaratory and

12   injunctive relief to vindicate its law-enforcement interest and to ensure future compliance with

13   the law, ECF 1-1 ¶¶ 7.1-7.6, as well as disgorgement to deter unlawful conduct. *See, e.g*, *id.*;

14   *SEC. v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993) (noting SEC "seeks disgorgement in order to

15   deprive the wrongdoer of his or her unlawful profits and thereby eliminate the incentive for

16   violating the . . . laws. The theory behind the remedy is deterrence and not compensation."); *see*

17   *also Paradise Valley Investigation & Patrol Servs., Inc. v. U.S. Dist. Ct.*, 521 F.2d 1342, 1342-43

18   (9th Cir. 1975) (government's enforcement action under federal labor law seeking injunctive

19   relief and disgorgement of illegally withheld overtime wages is "a suit in equity" to "vindicate a

20   public, rather than a private, right").

21      Instead of addressing these interests directly, GEO sidesteps them and attempts to recast

22   Washington's case as duplicative of the detainee-workers' claim for back wages—a claim for

23   which GEO concedes there is a remedy at law. ECF 245 at 21. While Washington concurs that

24   the detainee-workers within the statute of limitations period have a valid legal remedy, GEO's

25   effort to similarly limit Washington's claims ignores what the Court has already recognized:

26   Washington's interests as *parens patriae* include the physical and economic well-being of "*both*

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    detainee-workers and Washington resident-workers," and theferore "extend beyond the
2    individual interest of the parties [in the companion case]." ECF 29 at 13 (emphasis added).

3          Because GEO ignores several of Washington's key interests, it is no surprise that GEO
4    fails to identify a valid remedy at law that would address Washington's interests in future
5    compliance with the law, deterrence, and the rights of non-detained Washington workers in the
6    Pierce County labor pool. In declining to dismiss Washington's complaint, the Court explained
7    how Washington's interests, and the corresponding remedies it seeks, are broader than those
8    being litigated by the class plaintiffs. ECF 29 at 13 (Washington's "distinct interest as a
9    sovereign" entitle it to seek different remedies, including injunctive relief, that the private class
10   "could not" seek). Nothing has changed. The MWA and unjust enrichment claims are each
11   necessary for Washington to obtain complete and adequate relief.

12         **2.       The VWP Agreements pose no barrier to Washington's unjust enrichment
13                    claim**

14         Nor does the "VWP Agreement" that GEO makes detainee-workers sign constitute a
15   valid express contract that precludes Washington's unjust enrichment claim. *Cf.* ECF 245 at 23.
16   If the Court considers GEO's argument at all,[4] this contract defense cannot operate against
17   Washington because Washington did not sign the VWP Agreement. *See Watkins v. Restorative*
18   *Care Ctr., Inc.*, 831 P.2d 1085, 1094 (Wash. Ct. App. 1992) ("It would be both unfair and
19   contrary to law" to enforce contract terms against parties "who were strangers to the
20   agreement"); *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 12-13 (Wash. Ct. App.
21   2016) (same). And, even if the detainees' signatures could somehow displace Washington's
22   independent law-enforcement authority, the VWP Agreement is a legally invalid contract. As
23   discussed above, the MWA creates rights that cannot be bargained away. *Boeing*, 991 P.2d

24   ─────────────────────
25         [4] GEO  waived the affirmative contract defenses of "accord and satisfaction," "payment," and "waiver" by
     failing to plead them. *See* ECF 34 ¶¶ 8.1-8.13 (affirmative defenses); Fed. R. Civ. P. 8(c)(1); *In re Adbox, Inc.*, 488
26   F.3d 838, 841 (9th Cir. 2007) (under Rule 8(c), "a defendant's failure to raise an 'affirmative defense' in his answer
     effects a waiver of that defense") (citing *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005)).

PLAINTIFF STATE OF WASHINGTON'S              20        ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO THE GEO GROUP, INC.'S                              Civil Rights Division
MOTION FOR SUMMARY JUDGMENT                                   800 Fifth Avenue, Suite 2000
                                                             Seattle, WA  98104-3188
                                                                   (206) 464-7744

at 1129-30 (Washington law creates "nonnegotiable, substantive rights regarding minimum standards for . . . payment of wages") (citing *United Food & Commercial Workers Union Local 1001 v. Mut. Benefit Life Ins. Co*., 925 P.2d 212, 214-15 (Wash. Ct. App. 1996)). While employers can negotiate pay rates above the minimum wage, "employees and employers may not bargain away these minimum requirements." *Hisle*, 93 P.3d at 112.

Because the VWP Agreements cannot, as matter of law, constitute valid contracts, an action in equity is the appropriate mechanism to challenge GEO's unjust benefit. *See, e.g., Heaton v. Imus*,  608 P.2d 631, 632-33 (Wash. 1980) (recovery to be granted on the basis of quasi contract to prevent unjust enrichment following finding that there was no enforceable contract between the parties); *Hendryx v. Turner*, 187 P. 372, 374 (Wash. 1920) (remanding for trial on implied contract where no legal or binding contract between the parties existed related to care for child). Contract law poses no obstacle to Washington's unjust enrichment claim.

### 3. Detainee-workers are not "volunteers," and the facts about their reasons for working are disputed

GEO asserts that detainee-workers "volunteered [their] services without an expectation of payment," and that most of them did so "for the opportunity to feel useful and leave their pod." ECF 245 at 23-24. The undisputed facts, however, demonstrate that detainee-workers expected and received payment. Based on these facts, and as a matter of law, the detainee-workers are not "volunteers."

In the unjust enrichment context, "volunteer" status is determined in light of "all surrounding circumstances," including "(1) whether the benefits were conferred at the request of the party benefitted, (2) whether the party benefitted knew of the payment, but stood back and let the party make the payment, and (3) whether the benefits were necessary to protect the interest of the party who conferred the benefit or the party who benefitted thereby." *Ellenburg v. Larson Fruit Co., Inc.*, 835 P.2d 225, 251-52 (Wash. Ct. App. 1992) (internal citations omitted). An established expectation of payment will defeat a defense of voluntariness. *Osborn v. Boeing*, 309

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  F.2d 99, 102 (9th Cir. 1962) (quasi-contract action available under Washington law unless "it is

2  clear that there was indeed no expectation of payment").

3        Here, GEO does not dispute that detainee-workers expected payment. ECF 245 at 24

4  ("[D]etainees participating in the VWP understood and expected to receive $1/day."). GEO

5  instead argues that detainees are *limited* to expecting $1 per day. ECF 245 at 24 ("detainees could

6  not reasonably expect compensation above the $1/day"). But the question of voluntariness does

7  not turn on whether the workers acquiesced in the precise *amount* of payment, but rather on

8  whether the workers expected payment *at all*. *Osborn*, 309 F.2d at 103 (unjust enrichment theory

9  will only be foreclosed where facts demonstrate there is "indeed no expectation of payment, that

10  a gratuity was intended to be conferred, that the benefit was conferred officiously, or that the

11  question of payment was left to the unfettered discretion of the recipient"). Because there is no

12  dispute that detainee-workers expected—and received—payment from GEO, they are not

13  volunteers as a matter of law.

14        Finally, and contrary to GEO's assertion, there is overwhelming evidence that detainee-

15  workers performed work in the VWP not "to feel useful," but rather because it provided the only

16  opportunity to earn money needed to stay in touch with loved ones, *see* Chien Decl. ¶¶ 8-13,

17  Exs. F-K (detainee-workers explaining that they participated in the VWP to earn money to buy

18  phone cards and stamps to stay in touch with family), and to supplement the limited food and

19  personal hygiene rations they receive, *see id.* (detainee-workers explaining that they participated

20  in the VWP to be able to buy food and necessary personal products from the Commissary). At

21  minimum, if the Court concludes that the expectation and receipt of payment are not dispositive

22  of "volunteer" status, the disputed facts about why detainees work preclude summary judgment

23  in favor of GEO.

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   **E.    Washington May Recover the Full Benefit by which GEO Was Unjustly Enriched,
         including Disgorgement of Profits**

2

3       "A person has been unjustly enriched when he has profited or enriched himself at another's

4   expense, contrary to equity." *Cox v. O'Brien*, 206 P.3d 682, 688 (Wash. Ct. App. 2009) (citing *Dragt*

5   161 P.3d at 482). In determining the proper amount of disgorgement, courts evaluate the "profit" or

6   "benefit" from the perspective of "the receiver of the benefit." *Young*, 191 P.3d at 1262, 1265. This

7   is a fact-based and equitable determination that is not appropriate for summary judgment because

8   the trial court must "review[] the complex factual matters involved in the case" before exercising

9   its "tremendous discretion to fashion a remedy to do substantial justice to the parties and put an

10  end to the litigation." *Id*. at 1264 (citation omitted). *See also, Heaton*, 608 P.2d at 633–35

11  (remanding for calculation of unjust enrichment including profit).

12      GEO argues that Washington cannot recover wrongfully obtained profits, and is instead

13  limited to the value of unpaid services. ECF 245 at 25. But the Washington State Supreme

14  Court's most recent case on the issue provides that the remedy for unjust enrichment may be

15  measured in one of "two ways:" the fair market value of services rendered *or* the enhanced value

16  to the defendant. *Young*, 191 P.3d at 1263-65. *Young* itself involved unpaid services, and both

17  approaches to remedies were available to those plaintiffs. *Id.* at 1264 ("services" provided by

18  plaintiffs included "dispos[ing] of the debris generated by [property] improvements" and

19  "provid[ing] tools and equipment"). The published cases cited by GEO discussing unpaid

20  services, ECF 245 at 25, preceded the Washington Supreme Court's decision in *Young* and, in

21  any event, do not prohibit consideration of profits. *See, e.g., Metrophones Telecomms., Inc. v.

22  Glob. Crossing Telecomms., Inc.,* 423 F.3d 1056, 1076 (9th Cir. 2005); *Kerr v. King County*,

23  259 P.2d 398, 403 (Wash. 1953). In fact, the Washington Supreme Court has instructed that it is

24  "improper" to apply a "blanket exclusion" of any factor, including "profits," that bears on the

25  overall value of the benefit conferred. *Young*, 191 P.3d 1264 (quoting *A.F.A.B., Inc. v. Town of

26  Old Orchard Beach*, 639 A.2d 103, 106 (Me. 1994) (emphasis omitted)).

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Here, although GEO seeks to preclude Washington from seeking a disgorgement of

2  profits, it admits that one proper measure of the remedy is for Washington to recover "the

3  reasonable value of the services . . . provided by the detainees." ECF 245 at 25. While this

4  admission sets a floor for the remedy phase of trial, GEO's motion should be denied because the

5  law allows for recovery of the full benefits received by GEO—including the profits it gained by

6  underpaying thousands of detainee-workers at the NWDC over a span of nearly fifteen years.

7                                    **IV.    CONCLUSION**

8    For the above reasons, this Court should deny GEO's Motion for Summary Judgment.

9

10    DATED this 22nd day of July, 2019.

11

12                                    Respectfully submitted,

13                                    ROBERT FERGUSON
                                      Attorney General of Washington

14                                    s/ Marsha Chien

15                                    LA ROND BAKER, WSBA No. 43610
                                      MARSHA CHIEN, WSBA No. 47020

16                                    ANDREA BRENNEKE, WSBA No. 22027
                                      LANE POLOZOLA, WSBA No. 50138

17                                    PATRICIO A. MARQUEZ, WSBA No. 47693
                                      Assistant Attorneys General

18                                    Office of the Attorney General
                                      800 Fifth Avenue, Suite 2000

19                                    Seattle, WA 98104
                                      (206) 464-7744

20                                    larond.baker@atg.wa.gov
                                      marsha.chien@atg.wa.gov

21                                    andrea.brenneke@atg.wa.gov
                                      lane.polozola@atg.wa.gov

22                                    patricio.marquez@atg.wa.gov

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6   Dated this 22nd day of July, 2019 in Seattle, Washington.

7                                        _s/ Caitilin Hall_____
                                         Caitilin Hall
8                                        Legal Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492