The Honorable Robert J. Bryan

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>    Defendant. | Case No. 3:17-cv-05806-RJB<br><br>**DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE**<br><br>**ORAL ARGUMENT REQUESTED** |
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs/Counter Defendants,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>    Defendant/Counter Claimant. | Case No. 3:17-cv-05769-RJB |

## INTRODUCTION

As set forth in The GEO Group, Inc.'s ("GEO") motion for summary judgment (Dkt. # 245)[1], the detainees who participated in the voluntary work program ("VWP") at the Northwest

---

[1] GEO expressly incorporates by reference its arguments and evidence in support of its motion for summary judgment establishing that the State's claims are preempted and the detainees are not employees as a matter of law.

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 1

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

Detention Center ("NWDC") cannot be employees of GEO as a matter of law because their relationship is custodial, not employment-based, and GEO is prohibited from treating them as employees under federal law. But even if this Court proceeds to analyze the fundamental question raised by the State of Washington's ("State") motion for partial summary judgment— whether detainees who participate in a VWP are employees of that detention facility under the multi-factor test for the Washington Minimum Wage Act ("WMWA")—the State's motion still fails because numerous factual disputes exist as to each of the factors. For example, Immigration and Customs Enforcement ("ICE") mandates that GEO provide a VWP for the detainees, and dictates the conditions, pay, and amount of supervision in that program. GEO's supervision over the detainees is indicative of their status as detainees in a secure, government-regulated detention facility, not as employees of GEO. GEO also does not control the detainees' pay rates or payroll. Thus, the State has failed to establish the absence of genuine factual disputes about the detainees' relationship with GEO.

And as further described in GEO's motion for summary judgment, the State's claims are preempted because its interpretation of Washington law squarely conflicts with federal law and makes it impossible for GEO to comply with both. Accordingly, the Court should deny the State's motion in its entirety.

## MATERIAL FACTS RELEVANT TO THE STATE'S MOTION

### I.    The ICE contracts dictate GEO's operation of the NWDC.

Congress delegated to the Department of Homeland Security ("DHS"), and its agency ICE, the authority to detain aliens that the United States has placed into removal proceedings. 8 U.S.C. §§ 1103, 1226, 1231; (*see also* Martin Decl., Dkt. # 246, ¶ 5.) To accomplish this mission, Congress further delegated to ICE the authority to use private contractors to operate facilities. *See*, *e.g.*, 8 U.S.C. §§ 1103(a)(11), 1231(a)(2), (g); (Dkt. # 246 ¶¶ 5-6). At all relevant times, GEO has operated the NWDC in compliance with the terms of direct contracts with ICE

///

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 2

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    (or its predecessor agency, the Immigration and Nationalization Service ("INS")). (Dkt. # 246 ¶

2    8.)

3      Beginning in 2005, GEO operated the NWDC under INS contract ACL-2-C-0004 ("2002

4    ICE Contract").[2] (Dkt. # 246 ¶ 9; Dkt. # 246-1.) Starting on October 24, 2009, GEO operated the

5    NWDC pursuant to ICE contract HSCEDM-10-D-00001 ("2009 ICE Contract"). (Dkt. # 246 ¶

6    10; Dkt. # 246-2.) From September 28, 2015 through the present, GEO has operated the NWDC

7    under ICE contract HSCEDM-15-D-00015 ("2015 NWDC Contract"). (Dkt. # 246 ¶ 11; Dkt. #

8    246-3.)

9    **II. The ICE contracts prohibit detainees at the NWDC from being employees of GEO**.

10     Detainees are not permitted to be employees of GEO under the ICE contracts. (Dkt. # 246

11   ¶¶ 26-30; Dkt. # 246-1, 2002 ICE Contract at Ch. 4, pp. 40-41; Dkt. # 246-2, 2009 ICE Contract

12   at §§ III(B), p. 69, IV(E), p. 77; Dkt. # 246-3, 2015 ICE Contract at §§ III(B), p. 63, IV(F), pp.

13   70-71.) The 2015 ICE Contract defines a GEO employee as "[a]n Employee of [GEO] hired to

14   perform a variety of detailed services under this contract." (Dkt. # 246-3, 2015 ICE Contract at §

15   I(F)(14), p. 47.) A detainee, however, is defined as "[a]ny person confined under the auspices

16   and the authority of any Federal agency. Many of those being detained may have substantial and

17   varied criminal histories." (*Id.* at § I(F)(20), p. 47; *see also* Dkt. # 246-2, 2009 ICE Contract at §

18   I(14) and (20), p. 51; Dkt. # 246-1, 2002 ICE Contract at § I(B), p. 18.) With respect to the

19   VWP, the ICE contracts specifically state that: "Detainees shall not be used to perform the

20   responsibilities or duties of an employee of [GEO]." (Dkt. # 246-3, 2015 ICE Contract at § IX, p.

21   82; *see also* Dkt. # 246-2, 2009 ICE Contract at § IX, p. 89 (same); Dkt. # 246-1, 2002 ICE

22   Contract at Ch. 6(C), p. 46 (identifying detainees as "volunteers").)

23     Additionally, the 2015 ICE Contract requires that any person employed by GEO be a

24   United States citizen or lawful permanent resident. Specifically, ICE requires the following

25   ――――――――――――――――――

26   [2] GEO's performance under this contract began in 2005 when it acquired the contract awardee, Correctional Services Corp.

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 3

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

minimum personnel qualification standards for GEO employees in Section III (Personnel) of the contract:

**B. Minimum Personnel Qualification Standards**

[GEO] shall agree that each person employed by the firm or any subcontractor(s) shall have a social security card issued and approved by the Social Security Administration **and shall be a United States citizen or a person lawfully admitted into the United States for permanent residence**, have resided in the U.S. for the last five years . . . , possess a high school diploma or equivalent (GED), and obtain a favorable Suitability for Employment determination. Each employee of [GEO] and of any subcontractor(s) must complete and sign a Form I-9, "Employment Eligibility Verification," before commencing work. [GEO] shall retain the original Form I-9 and shall furnish the COR with a copy of the Form I-9 before the employee commences work. [GEO] shall be responsible for acts and omissions of its employees and of any subcontractor(s) and their employees.

(Dkt. # 246-3, 2015 ICE Contract at § III(B), p. 63 (emphasis added); *see also* Dkt. # 246-2, 2009 ICE Contract at § III(B), p. 69 (same); Dkt. # 246-1, 2002 ICE Contract at § 4(D), p. 41 (providing employee requirements).)

Additionally, the ICE contracts require each GEO employee to be vetted by DHS and, in accordance with general federal law, *see* 8 U.S.C. §§ 1324a(a)(1)(A), 1324a(a)(4), specifically prohibit GEO from employing illegal or undocumented aliens. Specifically, Section IV (Background and Clearance Procedures) of the 2015 ICE Contract provides, in relevant part, the following mandate for employee eligibility:

**F. EMPLOYEE ELIGIBILITY**

[GEO] will agree that each employee working on this contract will successfully pass the DHS Employment Eligibility Verification (E-Verify) program operated by the USCIS to establish work authorization.

. . . .

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 4

> [GEO] must agree that each employee working on this contract will have a Social Security Card issued and approved by the Social Security Administration. [GEO] shall be responsible to the Government for acts and omissions of his own employees and for any Subcontractor(s) and their employees.
>
> Subject to existing laws, regulations and/or other provisions of this contract, **illegal or undocumented aliens will not be employed by [GEO], or with this contract**. [GEO] will ensure that this provision is expressly incorporated into any and all Subcontracts or subordinate agreements issued in support of this contract.

(Dkt. # 246-3, 2015 ICE Contract at § IV(F), pp. 70-71 (emphasis added); *see also* Dkt. # 246-2, 2009 ICE Contract § IV(E), p. 77 ("Subject to existing law, regulations and/or other provisions of this contract, illegal or undocumented aliens will not be employed by [GEO], or with this contract."); Dkt. # 246-1, 2002 ICE Contract at § 4(D), p. 41 (providing employee requirements).)

## III.    The ICE contracts mandate that GEO provide a VWP at the NWDC.

ICE requires GEO to provide detainees the opportunity to participate in a VWP at the NWDC. (Dkt. # 246 ¶¶ 19-20.) For example, Section IX of the 2015 ICE Contract directs GEO to "manage a detainee work program," stating in relevant part:

> ### IX. MANAGE A DETAINEE WORK PROGRAM
>
> Detainee labor shall be used in accordance with the detainee work plan developed by [GEO], and will adhere to the ICE PBNDS on Voluntary Work Program. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service, or other jobs. The detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations.
> . . . .
>
> It will be the sole responsibility of ICE to determine whether a detainee will be allowed to perform on voluntary work details and at what classification level. All detainees shall be searched when they are returned from work details.

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 5

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

(Dkt. # 246-3, 2015 ICE Contract at § IX, p. 82 (emphasis added); *see also* Dkt. # 246-2, 2009 ICE Contract at § IX, p. 89; Dkt. # 246-1, 2002 ICE Contract at Ch. 6(C), p. 46.)

**IV.     The ICE contracts mandate that GEO provide direct supervision of the detainees at all times, including during the VWP.**

ICE requires GEO to provide "direct supervision" of "all detainees in all areas" and "during all phases of activity in a detention facility." (Dkt. # 246-3, 2015 ICE Contract at pp. 50, 78; Dkt. # 246-2, 2009 ICE Contract at pp. 51, 84; *see also* Dkt. # 246-1, 2002 ICE Contract at p. 18 (requiring GEO officers to supervise detainees "during all phases of activity in a detention facility").) "Direct supervision" means "[a] method of detainee management that ensures continuing direct contact between detainees and staff . . . [and] frequent, non-scheduled observation of and personal interaction with detainees." (Dkt. # 246-3, 2015 ICE Contract at p. 47; Dkt. # 246-2, 2009 ICE Contract at p. 51.) Consistent with that required level of supervision, ICE requires GEO to "monitor and control" detainees while they are participating in the VWP. (Dkt. # 246-3, 2015 ICE Contract at p. 82; *see also* Dkt. # 246-2, 2009 ICE Contract at p. 89; *see also* Dkt. # 246-1, 2002 ICE Contract at p. 46 ("[GEO] shall provide direct supervision of detainees at all times while performing [VWP] activities.").)

**V.     The ICE contracts mandate that GEO perform all services related to the VWP in accordance with the applicable Performance-Based National Detention Standards.**

The ICE contracts mandate that GEO perform services at the NWDC in accordance with ICE's Performance Based National Detention Standards ("PBNDS"). In 2000, INS adopted the original detention standards. (Dkt. # 246 ¶ 14.) ICE promulgated subsequent versions of the PBNDS in 2008 and 2011 (as updated in 2016). (*Id.* ¶ 15.) The 2002 ICE Contract, the 2009 ICE Contract, and the 2015 ICE Contract each incorporated the applicable standards above. (*Id.* ¶¶ 13, 18-23, 36, 39-41; Dkt. # 248-2 at 123:11-14.)[3]

---

[3] The 2009 NWDC Contract was modified (PCC017) on May 23, 2013 to incorporate the 2011 PBNDS. The modification required GEO to comply with the 2011 PBNDS within 30 days.

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 6

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

The PBNDS provide that detainees should be given "opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety security and good order of the facility." (*See* Dkt. # 246 ¶ 15; Dkt. # 248-1, 2011 PBNDS at pp. 81-84.) Specifically, the PBNDS state that the expected outcomes and practices of the VWP are:

- Detainees shall be able to volunteer for work assignments, but otherwise shall not be required to work, except to do personal housekeeping.

- Essential operation and services shall be enhanced through detainee productivity.

- The negative impact of confinement shall be reduced through less idleness, improved morale, and fewer disciplinary incidents.

- Detainees are required to work according to a schedule, but shall not be permitted to work in excess of 8 hours daily, 40 hours weekly.

- Detainees shall receive compensation of $1.00 per day for work completed in accordance with the facility's standard policy.

- Detainees may be removed from a work detail for unsatisfactory performance, disruptive behavior, inability to physically perform the job, or safety concerns, among other things.

(*Id.*) The 2000 INS Detention Standards state essentially the same outcomes and practices for the VWP. (Dkt. # 246 ¶ 14). The 2011 PBNDS slightly modified the compensation for work performed by detainees in the VWP by setting a floor of at least $1/day. (*Id.* ¶ 15; Dkt. # 248-1, 2011 PBNDS at p. 83.)

The PBNDS also require that GEO provide supervision of all detainees who participate in the VWP. (Dkt. # 248-1 at pp. 83-85; *see also* Decl. of Shannon Armstrong in Supp. of Def.'s Opp'n to Mot. for Summ. J. ("Suppl. Armstrong Decl."), Ex. 26 at § 2.4, p. 3 ("Each facility shall ensure that it maintains sufficient supervision of detainees").) For example, the PBNDS require GEO to assess detainees' language skills before joining the VWP so the detainees "are able to communicate with supervising staff effectively and in a manner that does not compromise safety and security." (Dkt. # 248-1 at p. 83.) For detainees participating in the VWP, the PBNDS

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 7

require that the detainees not leave an assignment without permission, and "exercise care in performing assigned work, using safety equipment and taking other precautions in accordance with the work supervisor's instructions." (*Id.* at p. 84.)

## VI.    The ICE contracts mandate that GEO pay $1/day to the detainees in the VWP.

Since 2005, ICE (or INS) mandated the $1/day payment for detainee participants of the VWP.  First, the 2000 INS Detention Standards incorporated into the 2002 ICE Contract set the payment as "$1.00 per day, to be paid daily." (Dkt. # 246 ¶ 32.) Then, the specific Contract Line Item Numbers for the 2009 ICE Contract provided: "Detainee Volunteer Wages for Detainee Work Program. *Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. [GEO] shall not exceed the quantity shown without prior approval by the Contracting Officer.*" (*Id.* ¶ 35; Dkt. # 246-2, 2009 ICE Contract at pp. 6-13.) The 2015 ICE Contract contains the same language. (Dkt. # 246 ¶ 42; Dkt. # 246-3, 2015 ICE Contract at pp. 5-38.)

## VII.   ICE approved the NWDC detainee handbooks and work plans that confirm detainees are paid $1/day for participating in the VWP.

ICE issues a National Detainee Handbook with which GEO is required to comply. (Dkt. # 246 ¶ 16.) ICE also requires that GEO issue detainee handbooks specific to the NWDC. (*Id.* ¶ 17.) ICE reviews and approves all the detainee handbooks for the NWDC. (*Id.* ¶¶ 16-17, 33-34, 37-38, 43.) The relevant section of the detainee handbook for NWDC provides:

> **Voluntary Work Program**
>
> Every effort will be made to provide you an opportunity to participate in the voluntary work program. **Wages are $1.00 per day.** Ordinarily you will not be permitted to work more than eight hours per day or 40 hours per week. Wages earned are calculated and credited to your account, daily.

(Dkt. # 246-12, 2007 NWDC Detainee Handbook at p. 11 (emphasis added); *see also* Exs. 4-6, Nat'l and NWDC Detainee Handbooks.)

///

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 8

Similarly, the ICE Contracts mandate that GEO develop a detainee work plan that governs the VWP. (*See e.g.*, Dkt. # 246-3, 2015 ICE Contract at § IX, p. 82 ("Detainee labor shall be used in accordance with the detainee work plan developed by [GEO].").) ICE has reviewed and approved the detainee work plans for the NWDC governing the VWP. Those work plans state, in relevant part, that "[d]etainees receive monetary compensation for work performed. *The stipend is $1.00 per day, regardless of the number of details performed, and will be paid on a daily basis*." (Dkt. # 246 ¶¶ 22-23, 38, 44; *see also* Exs. 7-9, VWP Work Plans.)

Each detainee participating in the VWP receives and signs a "Voluntary Work Program Agreement" that provides "[c]ompensation shall be $1.00 per day" and that the detainee is "volunteering to work and [has] not been threatened, coerced or intimidated into participation." (See Dkt. # 247-1; Singleton Decl., Dkt. # 247, ¶¶ 3, 8; Dkt. # 248-3 at 85:16-86:5, 139:20-25; Dkt. # 248-4 at 46:20-25; Dkt. # 248-5 at 86:19-87:5.) ICE has reviewed GEO's payment of $1/day to participants in the VWP at NWDC and confirmed that it complies with GEO's contract and its PBNDS obligations.  (Dkt. # 246 ¶¶ 47-49; Dkt. # 250-7, excerpts of ICE Inspection Results.)

**VIII.   ICE is the only party able to change the requirements in the ICE contracts.**

GEO does not have the ability to unilaterally change any of the requirements in the ICE contracts. On the contrary, ICE reserved the exclusive right to change requirements in the ICE contracts in Section G.1.1 of the 2015 ICE Contract:

> The Contracting Officer (CO) is the only person authorized to approve changes in any of the requirements under this contract. Notwithstanding any clause contained elsewhere in this contract, the said authority remains with the Contracting Officer.

(Dkt. # 246  ¶ 45; Dkt. # 246-3, 2015 ICE Contract at § G.1.1, p. 97; *see also* Dkt. # 246-2, 2009 ICE Contract at § G.1.1, p. 23.)

///

///

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 9

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1

## STANDARDS

2
3
4
5
6
7
8
9
10
11

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to cite to specific material in the record that shows the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Once the moving party has satisfied that burden, the nonmoving party need only demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. As part of that process, a court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Krechman v. Cty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013).

12

## ARGUMENT

13
14

**I.      The State failed to meet its burden to prove that GEO has an "employee-employer relationship" with the detainees.**

15
16
17
18
19
20
21
22
23
24
25
26

The State is not entitled to summary judgment on its minimum wage claim at the outset because—as demonstrated in GEO's motion for summary judgment—the detainees at NWDC are not employees as a matter of law based on their custodial (not employment) relationship with GEO. But even if the Court considers the relevant factors under the economic-dependence test to determine whether the detainees are "employees" under the WMWA, the State is not entitled to summary judgment because numerous material factual disputes exist as to the nature of the detainees' relationship with GEO. *See Anfinson v. FedEx Ground Package Sys., Inc*., 174 Wn.2d 851, 871 (2012) (holding that a plaintiff must establish that it meets both the plain language of the WMWA and the economic-dependence test for employee status). For example, the VWP is a voluntary program, GEO does not "hire" or "fire" detainees like in a free-market employment relationship, GEO does not set the detainees' pay rates, and GEO does not administer the detainees' payroll. Instead, ICE mandates the existence of the VWP, the level of supervision

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 10

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

over the detainees in the VWP, and their pay rates. Accordingly, the State has failed to prove an absence of material factual dispute and its motion should be denied.

**A.       Detainees are not "employees" under the WMWA as a matter of law.**

As set forth in more detail in GEO's motion for summary judgment, the reality of the detainees' relationship with GEO is involuntary detention, not employment, so they cannot be "employees" under the WMWA as a matter of law. *See, e.g.*, *Villarreal v. Woodham*, 113 F.3d 202, 206–07 (11th Cir. 1997) (holding pretrial detainee's relationship with detention facility was custodial; "[t]here was no bargained-for exchange of labor which occurs in a true employer-employee relationship"); *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395–97 (5th Cir. 1990) (holding that detainee volunteers are not employees because they are "removed from American industry"); *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (holding that immigration detainees are not "employees" under state minimum wage law because "like prisoners, [the detainees] do not use their wages to provide for themselves, [so] the purposes of the [law] are not served by including them in the definition of employee"). Indeed, the Washington Court of Appeals held that patients in a private rehabilitation facility who participated in a voluntary work program—like the detainees here—are not employees under the WMWA because they signed an application agreeing they "will receive no monetary gain," worked with "no promise or expectation of compensation," and volunteered for their own purposes. *Lafley v. SeaDruNar Recycling, L.L.C.*, 138 Wn. App. 1047, 2007 WL 1464433, at *1-4 (2007) (unpublished). Thus, like other persons participating in a work program while detained, the detainees here cannot be deemed employees because they are outside the traditional employment industry, and provided volunteer services as part of their custodial environment.

Moreover, the detainees cannot be employees as a matter of law because the ICE contracts *explicitly prohibit* GEO from employing them. (*See, e.g.*, Dkt. # 246-3, 2015 ICE Contract at § IX, p. 82; Dkt. # 248-1, 2011 PBNDS at § 5.8.) Accordingly, the State's motion seeking to hold that the detainees are employees of GEO should be denied.

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 11

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

**B.      Fact issues preclude summary judgment for the State about the nature of the relationship between the detainees and GEO.**

Even if this Court looks beyond the fundamental custodial relationship between GEO and the detainees and considers the multi-factor test for employee status under the WMWA, a genuine factual dispute exists as to nearly every factor that prevents the Court from granting summary judgment to the State. Specifically, record evidence shows that ICE set the payment and custodial conditions for the detainees, and that GEO does not control the detainees' participation in the VWP, their pay rates, or their payroll. Thus, numerous factual disputes exist about whether the detainees are employees or (more accurately) mere volunteers in a detention-based work program.

Whether a person is an "employee" under the WMWA is a fact-intensive inquiry that analyzes "the circumstances of the whole activity" between the parties. *Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 194, 198 (2014). To make that determination, a court should consider five formal factors: (1) the nature and degree of control of the workers; (2) the degree of supervision of the work; (3) the power to determine pay rates or the methods of payment of the workers; (4) the right to hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and the payment of wages. *Id.* at 196–97. In addition, courts may also consider eight common law factors, which include whether: (1) the work was a "specialty job on the production line"; (2) the responsibility under the contracts between a labor contractor and an employer pass to another without "material changes"; (3) the "premises and equipment" of the employer are used for the work; (4) the employees had a "business organization that could or did shift as a unit from one [worksite] to another"; (5) the work was "piecework" and not work that required "initiative, judgment or foresight"; (6) the employee had an "opportunity for profit or loss depending upon [its] managerial skill"; (7) there was "permanence [in] the working relationship"; and (8) "the service rendered is an integral part of the alleged employer's business." *Id.* at 197.

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 12

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    When material questions of fact exist as to any of these factors, summary judgment must

2    be denied. *Id.* at 199 (reversing grant of summary judgment based on factual questions that

3    needed to be resolved). As the Ninth Circuit observed, when a multi-factor test is involved—like

4    the determination of employee status—a factual question likely exists and "the trier of fact

5    [should] play[] the principal part." *Narayan v. EGL, Inc.*, 616 F.3d 895, 901 (9th Cir. 2010)

6    (reversing summary judgment and holding that factual dispute precluded judgment on whether

7    the plaintiff was an employee); *see also Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748,

8    755 (9th Cir. 1979) (same); *David v. Bankers Life & Cas. Co.*, No. C14-766RSL, 2018 WL

9    3105985, at *3-4 (W.D. Wash. June 25, 2018) (denying summary judgment when a factual issue

10   existed about the degree of control).

11       **A.    The VWP is voluntary, so a question of fact exists about GEO's control over

12       the detainees' participation in the VWP.**

13       The State's assertion that "GEO exerts complete control over when, where, and how

14   detainee workers perform their duties in the NWDC" is contradicted by the record. (*See* Dkt. #

15   251 at p. 18.) Because a genuine factual dispute exists, summary judgment is improper.

16       As a matter of policy, all detainees participating in the VWP sign an agreement

17   confirming that their participation is voluntary. (*See* Dkt. # 247 & 247-1.) The VWP is also

18   voluntary in practice because detainees elect whether they want to work on a particular day, and

19   are permitted to leave a shift early or arrive late without discipline. (Dkt. # 248-7 at 62:16-63:6;

20   Dkt. # 248-4 at 37:6-9; Dkt. # 248-6 at 43:19-44:1; Dkt. # 248-5 at 195:20-196:22, 200:21-

21   201:13; Suppl. Armstrong Decl., Ex. 21 ("Jaramillo Dep.") at 45:2-13.) If a detainee wants to

22   stop his or her participation in the VWP, they complete a form and are removed from the list.

23   (Jaramillo Dep. at 45:19-46:4.) If a detainee later elects to rejoin the VWP, he or she need only

24   submit another request to the classification officer to be added back to the list.  (*Id.* at 46:5-12.)

25   To the extent that GEO sets the detainees' work schedule, that is mandated by ICE through the

26   contracts and the PBNDS to ensure safety and security of the facility. (Dkt. # 248-1, 2011

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 13

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1   PBNDS at pp. 83-85.) GEO, however, does not force detainees to participate and they are

2   allowed to come and go as they please. (*See, e.g.*, Suppl. Armstrong Decl., Ex. 22 ("Menza

3   Dep.") at 51:23-52:8.) Thus, a question of fact exists about whether GEO exerts any control over

4   the detainees' participation in the voluntary program.

5          **B.**    **GEO's supervision of detainees is mandated by its detention obligations, so a**

6                 **question of fact exists about whether GEO has any non-custodial supervision of the detainees.**

7       GEO's supervision of the detainees in the VWP is evidence of their custodial

8   relationship, not an employment relationship. As the Ninth Circuit explained, the supervision

9   factor fails to capture the true nature of the relationship in a custodial/detention situation because

10   it "presuppose[s] a free labor situation." *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir.

11   1993). In a detention situation, the detention facility's control "does not stem from any

12   remunerative relationship or bargained-for exchange of labor for consideration, but from

13   incarceration itself . . . control over his work is merely incidental to that general control." *Id.*

14   That is precisely what exists here.

15       As the State admits, "supervising detainee workers is a substantial part of GEO officers'

16   duties." (Dkt. # 251 at p. 20.) Indeed, supervising detainees is the *entire purpose* of GEO's

17   custodial relationship with those detainees and is contractually mandated by ICE. Under its

18   contracts, ICE requires GEO to provide direct supervision of "all detainees in all areas" and

19   "during all phases of activity in a detention facility." (Dkt. # 246-3, 2015 ICE Contract at pp. 50,

20   78; Dkt. # 246-2, 2009 ICE Contract at pp. 51, 84; *see also* Dkt. # 246-1, 2002 ICE Contract at p.

21   18 (requiring GEO officers to supervise detainees "during all phases of activity in a detention

22   facility").) As to the VWP, ICE specifically requires GEO to "monitor and control" detainees

23   while they are participating in the VWP. (Dkt. # 246-3, 2015 ICE Contract at p. 82; *see also* Dkt.

24   # 246-2, 2009 ICE Contract at p. 89; *see also* Dkt. # 246-1, 2002 ICE Contract at p. 46 ("[GEO]

25   shall provide direct supervision of detainees at all times while performing [VWP] activities.").)

26   In other words, ICE requires GEO to maintain constant supervision over the detainees, and that

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 14

1   detention-based supervision continues while detainees are participating in the VWP. (Jaramillo

2   Dep. at 56:21-57:12.) Because GEO's supervision of the detainees is inherent and required in its

3   entire operation of the NWDC, that supervision is not probative of an employment relationship

4   with the detainees. *See Hale*, 993 F.2d at 1395 (holding prisoners are not employees of their

5   prison); *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004) (noting that airline's

6   supervision and control of ground handlers was not evidence of an employment relationship

7   when it was done to ensure compliance with safety and security regulations).

8       **C.   ICE mandates the detainees' pay rate of $1/day, so GEO has no authority to
9            determine any pay rates.**

10      Contrary to the State's argument, GEO does not have "authority to set the rates it will pay

11  detainee workers for work they perform in the NWDC," so a factual dispute exists. (*See* Dkt. #

12  251 at p. 21.) The record shows that ICE set the $1/day pay rate for detainees in the VWP and

13  prohibited GEO from changing that compensation without ICE's express permission.

14  Specifically, GEO's contracts with ICE provide that "Detainee Volunteer Wages" for the VWP

15  shall be "*the actual cost of $1.00 per day per detainee*" and GEO "*shall not exceed the quantity*

16  *shown without prior approval*" from ICE. (*See* Dkt. # 246 Decl. ¶¶ 35, 42; Dkt. # 246-2, 2009

17  ICE Contract at pp. 6-13; Dkt. # 246-3, 2015 ICE Contract at pp. 5-38.) In addition, the

18  applicable detention standards, ICE-approved detainee handbooks, and ICE-approved work plans

19  mandate that detainees shall receive $1/day for participation in the VWP at the NWDC. (*See,*

20  *e.g.*, Dkt. # 246 ¶¶ 16-17, 22-23, 32-34, 37-38, 43-44; Dkt. # 250-5 at p. 11 ("Wages are $1.00

21  per day."); Dkt. # 250-2 at p. 4 ("The stipend is $1.00 per day[.]").

22      The State's evidence that GEO "occasionally paid detainee workers . . . $5 per day"

23  does not demonstrate that GEO has authority over the detainees' pay rates. (*See* Dkt. # 251 at p.

24  21.) Rather, the only time GEO paid more than $1/day was with ICE's express permission. (*See*

25  Dkt. # 253-15 at p. 22; Suppl. Armstrong Decl., Ex. 23 ("Hill Dep.") at 227:12-228:18.)

26  Without that express permission, GEO lacks the authority to unilaterally change the $1/day

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 15

1  compensation mandate. (Dkt. # 246 ¶ 45; Dkt. # 246-3, 2015 ICE Contract at § G.1.1, p. 97; *see*

2  *also* Dkt. # 246-2, 2009 ICE Contract at § G.1.1, p. 23.) Thus, the State has failed to meet its

3  burden to show that there is no genuine factual dispute that GEO has authority to determine the

4  detainees' pay rates. To the contrary, there can be no genuine factual dispute that GEO has *no*

5  such authority.

**D.    The VWP is a voluntary program with no free-market hiring requirements, so GEO has no authority to hire or fire detainees.**

8       Contrary to the State's assertion, GEO does not "hire" or "fire" detainees as part of the

9  VWP because it is not a free-market employment relationship. (*See* Dkt. # 251 at p. 21.) Rather,

10  detainees merely choose whether they want to participate in the VWP, and sign up with the

11  classification officer. (Dkt. # 248-7 at 61:22-62:2; Dkt. # 248-5 at 169:19-171:2.) Detainees elect

12  whether to work on a particular day and which jobs they prefer. (*Id.*) Any detainee who meets

13  the basic requirements for a particular position fills out an application and is put on the job roster

14  for that position. (Dkt. # 248-5 at 80:7-12, 82:17-23, 156:6-22; Dkt. # 248-6 at 39:17-25, 156:16-

15  157:4; Suppl. Armstrong Decl., Ex. 22, Menza Dep. at 69:6-11, 97:3-10.) Thus, no competitive

16  hiring process exists.

17       Similarly, detainees are not "fired" because the VWP is a voluntary program. Detainees

18  could leave a shift early or arrive late without discipline. (Dkt. # 248-7 at 62:16-63:6; Dkt. # 248-

19  4 at 37:6-9; Dkt. # 248-6 at 43:19-44:1; Dkt. # 248-5 at 195:20-196:22, 200:21-201:13; Suppl.

20  Armstrong Decl., Ex. 21, Jaramillo Dep. at 45:2-13; *id.*, Ex. 22, Menza Dep. at 51:23-52:8.) If a

21  detainee wants to stop his or her participation in the VWP, they complete a form and are

22  removed from the list, but can later rejoin by submitting another request. (Suppl. Armstrong

23  Decl., Ex. 21, Jaramillo Dep. at 45:19-46:12.)

24       The State argues that GEO has authority to hire and fire because detainees "notify GEO

25  of their interest through an electronic 'kite'" and "GEO may remove detainee workers from a

26  work detail." (Dkt. # 251 at pp. 21-22.) The State is wrong. As the evidence cited by the State

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 16

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

makes clear, the detainees send their "kites" to ICE requesting participation in the VWP, and GEO simply adds their name to the list for their requested position. (Dkt. # 253-56 at 22:23-24:21.) In addition, ICE requires GEO to give the detainees the ability to participate in the VWP, and authorizes GEO to remove detainees from a work detail for unsatisfactory performance, disruptive behavior, inability to physically perform the job, or safety concerns, among other things. (Dkt. # 248-1, 2011 PBNDS at pp. 81-84.) But ICE retained for itself "the sole responsibility . . . to determine whether a detainee will be allowed to perform on voluntary work details and at what classification level." (Dkt. # 246-3, 2015 ICE Contract at § IX, p. 82); *see also* Dkt. # 246-2, 2009 ICE Contract at § IX, p. 89; Dkt. # 246-1, 2002 ICE Contract at Ch. 6(C), p. 46.) Thus, GEO does not "fire" detainees in the sense of a free-market employment relationship. Based on these factual issues about GEO's authority to hire or fire detainees in the VWP, GEO, not the State, is entitled to summary judgment.

> **E.** **Payment for the VWP is administered by a third party, so a factual question exists about GEO's authority over the detainees' payroll.**

Contrary to the State's assertion, GEO does not prepare or administer the payments to detainees. (*See* Dkt. # 251 at p. 23.) As such, a factual dispute exists that precludes summary judgment. For example, the record shows that detainees complete a form indicating that they participated in the VWP on a particular day, and then GEO manually enters that information into a third party banking system through Keefe that handles the detainees' commissary accounts. (Dkt. # 253-41 at 37:17-38:24; Suppl. Armstrong Decl., Ex. 25, Kimble Dep. at 67:19-68:7.) The State's reference to a "key" banking system is the result of a typographical error in the transcript that the witness later clarified as "Keefe," a third party that administers the detainees' commissary accounts. (*Id.*; *see also* Suppl. Armstrong Decl., Ex. 24 ("Scott Dep.") at 155:21-156:6.) Indeed, the spreadsheet of purported payroll that the State cites in its motion (Ex. CE, Dkt. # 254-58) is from Keefe's records. (Dkt. # 253-41 at 38:5-24; Suppl. Armstrong Decl., Ex.

///

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 17

25, Kimble Dep. at 72:22-73:19.) Thus, at a minimum, a question of fact exists about GEO's role in the detainees' payroll that precludes summary judgment.

### F.    The VWP is required by ICE, so a question of fact exists about whether the detainees' work is integral to GEO's business.

The State is also wrong when it asserts that the services performed by the detainees are "an integral part of [GEO's] business." (Dkt. # 251 at p. 26.) In *Torres-Lopez v. May*, 111 F.3d 633, 641 (9th Cir. 1997), the case relied on by the State, the court explained that when a farmworker performs a routine task that is "an integral phase of the grower's production [the worker] is likely to be dependent on the grower's overall production process." Thus, the court held that the farmworkers' task of harvesting cucumbers was integral to the grower's business because "[u]nless the cucumbers were picked and sent to the cannery, [the grower] would not have been able to realize any of the economic benefits from its substantial investment in growing the cucumbers." *Id.* at 644.

Here, in contrast, the detainees are not performing tasks integral to GEO's business. To be clear, the VWP is not required by GEO's business; it is required by ICE and the PBNDS. (Dkt. # 246 ¶¶ 19-20; Dkt. # 248-1 at pp. 81-84.) Specifically, the 2015 ICE Contract provides that "Detainee labor shall be used in accordance with the detainee work plan developed by [GEO], and will adhere to the ICE PBNDS on Voluntary Work Program." (Dkt. # 246-3, 2015 ICE Contract at § IX, p. 82; *see also* Dkt. # 246-2, 2009 ICE Contract at § IX, p. 89; Dkt. # 246-1, 2002 ICE Contract at Ch. 6(C), p. 46.) In addition, ICE mandates that the VWP shall be used to enhance "[e]ssential operation and services . . . through detainee productivity." (*See* Dkt. # 246 ¶ 15; Dkt. # 248-1, 2011 PBNDS at pp. 81-84.)

But even if the VWP were not required by ICE, the State cites no evidence establishing that the VWP is so integral to GEO's business that it could not operate the NWDC without the detainees. Instead, the record shows that when detainees declined to perform their kitchen duties as part of the VWP, other detainees volunteered to help or GEO staff stepped in to make sure all

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 18

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

meals were delivered. (Suppl. Armstrong Decl., Ex. 21, Jaramillo Dep. at 51:14-52:14.)

Similarly, if detainees did not choose to provide barber services in the VWP on a particular day,

then other detainees simply waited for haircuts. (*Id.*, Ex. 22, Menza Dep. at 31:4-11, 31:21-32:7.)

Thus, unlike the farmworkers who harvested cucumbers that were essential to the cannery

business, GEO could (and did) operate without the assistance of its volunteer detainees. As such,

a question of fact exists that precludes summary judgment as to whether the detainees were

critical to the operation of the NWDC.

### G.     Questions of fact on the remaining functional factors preclude summary judgment on the existence of an employment relationship.

In addition to the above factors, numerous factual issues preclude summary judgment for

the State under the remaining functional factors that should be considered in determining

whether the detainees are "employees" of GEO. First, the detainees are not performing a

"specialty job on the production line" that constitutes a step within the sequence of steps to

create a product for GEO's business. *Cf. Torres-Lopez*, 111 F.3d at 643 (noting the farmworkers

task of harvesting cucumbers was within the sequence of steps to prepare them for processing at

the cannery). Instead, as described above, they are performing voluntary tasks as part of an ICE-

mandated work program to enable them to earn money while confined, decrease idleness, and

improve morale in the facility. (*See, e.g.*, Dkt. # 248-1 at p. 81.)

Second, as the State admits, the detainees are not employed by another contractor that is

passing along their labor to GEO. (*See* Dkt. # 251 at p. 25.)

Third, for the remaining factors, the economic reality of the detainees' custodial situation

creates a question of fact about whether the detainees can be deemed employees or volunteer

detainees in a custodial work program. For example, the detainees' tasks as part of the VWP

occurred within the NWDC and with equipment owned by GEO because of their custodial

situation as immigration detainees. While the detainees are under ICE custody, they have no

option to work outside the confines of the NWDC or to bring their own tools or supplies. Indeed,

DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE (3:17-CV-05806-RJB, 3:17-CV-05769-RJB) - PAGE 19

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1    ICE requires GEO to maintain control of all tools for safety and security purposes. (*See* Dkt. #

2    246-3 at p. 125; Suppl. Armstrong Decl., Ex. 26, PBNDS § 2.14.) Similarly, the detainees have a

3    relative permanence to their situation and cannot shift their work to another worksite because

4    they are detained, not because they are employed by GEO. *See Torres-Lopez*, 111 F.3d at 644

5    (holding that farmworkers lacked "permanence" because they only harvested for the farm

6    business for a handful of days). And although the detainees do not have an "opportunity for

7    profit or loss" based on their skills, their compensation is mandated by ICE, not GEO. (*See, e.g.*,

8    Dkt. # 246-2, 2009 ICE Contract at pp. 6-13; Dkt. # 246-3, 2015 ICE Contract at pp. 5-38.)

9    Accordingly, when all the factors are viewed in context with the detainees' custodial reality, they

10   establish a custodial relationship—and refute an employment relationship—or at least present

11   genuine factual disputes that cannot be determined at summary judgment.

12   **II.      GEO, not the State, is entitled to summary judgment on its preemption defense.**

13          The State's request for summary judgment on GEO's preemption defense rests on a

14   misunderstanding of GEO's arguments and on irrelevant factual assertions. GEO's <u>*actual*</u>

15   preemption arguments are laid out in its motion for summary judgment, Dkt. # 245 at pp. 15–18,

16   and will be further elaborated upon in its forthcoming reply brief. GEO incorporates by reference

17   the arguments and supporting facts in those briefs in opposition to the State's motion.

18   Nonetheless, a few words in response to the State's misconceived preemption arguments are

19   appropriate.

20          First, under the State's interpretation of the WMWA and state unjust enrichment law, it is

21   impossible for GEO to comply with state and federal law. The only way that the WMWA and

22   unjust enrichment laws could require GEO to pay the minimum wage or a "fair market" wage is

23   by forcing GEO to treat the NWDC detainees as employees, which is exactly what federal law

24   prohibits. *See* 8 U.S.C. §§ 1324a(a)(1)(A), 1324a(a)(4). The State asserts that GEO has paid

25   more than $1/day in the past, but GEO never did so on the basis that the detainees were

26   employees, as the State would require GEO to do, and in each instance, GEO was able to pay

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 20

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

more than $1/day only because it first obtained ICE's permission. (*See* Suppl. Armstrong Decl., Ex. 23, Hill Dep. at 227:12-228:18.) When a party needs "the Federal Government's special permission" to take some action in order to comply with state law, the state law is preempted, and that is the case here. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623–24 (2011) (holding that "when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes"). And even if GEO's contract required GEO to comply with the State's interpretation of the WMWA—which it does not, *see* Dkt. # 245 at pp. 18–21—that would not change the fact that the State's interpretation violates the Immigration Reform and Control Act ("IRCA") and is, therefore, preempted.

Second, the Supreme Court has already held that claims like the State's subvert the IRCA. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 149–50 (2002) (holding that claim seeking to award backpay to illegal aliens "runs counter to policies underlying IRCA"). It is self-evident that allowing States to dictate the employment status of unauthorized aliens would stand as an obstacle to IRCA's policy forbidding such employment. That obstacle is independent of whether the Federal Government would have to spend additional money if the State prevails, which is what this Court was addressing when it said application of the WMWA "may not affect the Federal Government at all." (Dkt. # 162 at p. 9.) The State's claims would undermine federal immigration policy, and they are therefore preempted.

## CONCLUSION

This Court should deny the State's motion for summary judgment because the detainees are not employees under the WMWA as a matter of law based on the fundamental economic reality of their custodial situation. At a minimum, genuine factual disputes about each of the relevant factors preclude the Court from granting summary judgment to the State. Finally, GEO, not the State, is entitled to summary judgment on GEO's preemption defense because the record

///

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 21

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

shows that GEO cannot comply with both the State's interpretation of the WMWA and federal law, so the State's claims are preempted.

      Dated:  July 22, 2019

                        HOLLAND & KNIGHT LLP


                    By:    *s/Kristin Asai*
                        J. Matthew Donohue, WSBA # 52455
                        matt.donohue@hklaw.com
                        Shannon Armstrong, WSBA # 45947
                        shannon.armstrong@hklaw.com
                        Kristin M. Asai, WSBA #49511
                        kristin.asai@hklaw.com
                        2300 US Bancorp Tower
                        111 SW Fifth Avenue
                        Portland, OR 97204
                        Telephone: 503.243.2300
                        Fax: 503.241.8014

                        Carolyn P. Short (admitted *pro hac vice*)
                        carolyn.short@hklaw.com
                        Holland & Knight LLP
                        Cira Center, 2929 Arch Street, Suite 800
                        Philadelphia, PA 19104
                        Telephone: 215.252.9535
                        Fax: 215.867.6070

                        *Attorneys for The GEO Group, Inc.*

DEFENDANT'S OPPOSITION TO THE STATE OF
WASHINGTON'S MOTION FOR SUMMARY
JUDGMENT ON MINIMUM WAGE ACT CLAIM
AND PREEMPTION DEFENSE (3:17-CV-05806-RJB,
3:17-CV-05769-RJB) - PAGE 22

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

1

CERTIFICATE OF SERVICE

2

    I hereby certify that I caused the foregoing DEFENDANT'S OPPOSITION TO THE STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT ON MINIMUM WAGE ACT CLAIM AND PREEMPTION DEFENSE to be served on the following person[s]:

3

4

| La Rond Baker | Devin T. Theriot-Orr |
| Marsha Chien | Open Sky Law PLLC |

5

Andrea Brenneke
Lane Polozola
20415 72nd Avenue S, Suite 110
Kent, WA 98032

6

Patricio Marquez
Office of the Attorney General
devin@opensky.law

7

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
*Attorneys for Plaintiffs/Counter Defendants*

8

larondb@atg.wa.gov
marshac@atg.wa.gov
R. Andrew Free
Law Office of R. Andrew Free

9

andreab3@atg.wa.gov
lane.polozola@atg.wa.gov
P.O. Box 90568
Nashville, TN 37209

10

patricio.marquez@atg.wa.gov
andrew@immigrantcivilrights.com

11

*Attorneys for State of Washington*
*Attorneys for Plaintiffs/Counter Defendants*

12

Jamal N. Whitehead
Adam J. Berger
Meena Pallipamu Menter
Menter Immigration Law PLLC

13

Lindsay L. Halm
Schroeter Goldmark & Bender
8201 164th Avenue NE, Suite 200
Seattle, WA 98052

14

810 Third Avenue, Suite 500
Seattle, WA 98104
meena@meenamenter.com

15

whitehead@sgb-law.com
berger@sgb-law.com
*Attorneys for Plaintiffs/Counter Defendants*

16

halm@sgb-law.com

17

*Attorneys for Plaintiffs/Counter Defendants*

18

by causing the document to be delivered by the following indicated method or methods:

19

☑    by CM/ECF electronically mailed notice from the Court on the date set forth below.

20

☐    by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

21

22

☐    by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

23

24

    DATED: July 22, 2019.            *s/Kristin Asai*

25

Kristin M. Asai

26

CERTIFICATE OF SERVICE - PAGE 1

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300