The Honorable Robert J. Bryan

1
2
3
4
5
6                 UNITED STATES DISTRICT COURT
7               WESTERN DISTRICT OF WASHINGTON
                           AT TACOMA
8
9   STATE OF WASHINGTON,                    Civil Action No. 17-5806 RJB

10                        Plaintiff,

11          v.                              **STATEMENT OF INTEREST OF THE
                                            UNITED STATES**
12   THE GEO GROUP, INC.,

13                        Defendant.

14

15

16
17
18
19
20
21
22
23
24
25
26

STATEMENT OF INTEREST OF THE UNITED STATES
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1   The United States submits this Statement of Interest to address an aggressive and legally

2   unjustified effort by the State of Washington to interfere with federal immigration enforcement.[1]

3   The State of Washington excludes its state inmates from the minimum wage—and according to

4   state policy documents, pays them as little as thirty-four to sixty-five cents an hour—yet it seeks

5   to impose the state minimum wage of $12 per hour for individuals in federal immigration

6   detention.  This is a quintessential violation of intergovernmental immunity principles.  Federal

7   contractors, including the GEO Group, operate residential facilities for immigration detainees on

8   behalf of U.S. Immigration and Customs Enforcement "(ICE)".  Under a Voluntary Work

9   Program specifically authorized (and required) by ICE, the GEO Group allows detainees in its

10  facilities to perform work.  Although the GEO Group's contract with ICE specifies that the federal

11  government will pay GEO $1 a day for work performed by detainees, Washington wants GEO to

12  pay much more.  The State insists that these federal immigration detainees are "employees" under

13  state law, even though it simultaneously *exempts* similarly-situated detainees in state facilities

14  from the minimum wage.  Basic constitutional principles prevent a State from interfering with the

15  federal government's activities in the way Washington is trying to do here.

16  The United States has a strong interest in countering discriminatory state efforts to regulate

17  federal contractors, in the proper application of the Supremacy Clause, and in the foundational

18  principles that protect the Federal Government from unlawful state interference.  The United

19  States accordingly submits that the doctrine of intergovernmental immunity precludes application

20  of Washington's Minimum Wage Act ("MWA"), RCW 49.46.0001 *et seq.* (2019), to the GEO

21  Group, Inc. ("GEO"), a federal contractor, because the MWA unlawfully discriminates against

22  "the Federal Government and those with whom it deals."  *North Dakota v. United States*, 495

23  U.S. 423, 438 (1990).  Specifically, the State exempts its detainees from the minimum wage, yet

24  seeks to impose that wage on federal detention operations.  Further, the MWA exempts state and

25

26

---

[1] 28 U.S.C. § 517 authorizes the Attorney General to attend to the interests of the United States as a non-party in a suit pending in a court of the United States.

STATEMENT OF INTEREST OF THE UNITED STATES-1
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    private corporations with whom the State of Washington contracts—but not the Federal

2    Government and those with whom it contracts—from paying minimum wage to institutionalized

3    persons for their work.  Intergovernmental immunity bars application of the statute to GEO.

4         The United States recognizes that the Court rejected GEO's intergovernmental immunity

5    argument at an earlier stage of the litigation (albeit without the benefit of the United States'

6    views).  Given the importance of this matter and the issues it raises under the Supremacy Clause,

7    however, the United States respectfully urges the Court to find that the doctrine of

8    intergovernmental immunity bars the State of Washington from enforcing the MWA against

9    GEO.[2]

10                              **BACKGROUND**

11        Congress authorizes DHS to pay an "allowance[] (at such rate as may be specified from

12   time to time in the appropriation Act involved) to aliens, while held in custody under the

13   immigration laws, for work performed."  8 U.S.C. § 1555(d).  In 1979, Congress appropriated

14   funds to provide for "payment of allowances (at a rate not in excess of $1 per day) to aliens, while

15   held in custody under the immigration laws, for work performed."  Appropriations Act for Fiscal

16   Year 1979, Pub. L. No. 95-431, tit. II, 92 Stat. 1021 (1978).  Since 1979, Congress has not directly

17   appropriated funds to pay the allowances, nor has it set a rate different than the $1 per day rate set

18   in that Act.  *See* Declaration of Tae Johnson ("Johnson Decl.") ¶ 13, ECF No. 91.  The work

19   program created by this law has been known as the "Voluntary Work Program," and ICE detention

20   standards require it to be offered by detention facilities and provide that "compensation is at least

21   $1.00 (USD) per day."  *See* 2011 Operations Manual ICE Performance-Based National Detention

22   Standards (PBNDS), Part 5.8, VI.C, https://www.ice.gov/doclib/detention-standards/2011/5-

23   8.pdf.

24   _____

25        [2] Although the Court ruled on intergovernmental immunity at an earlier stage of the
     litigation, the Court is free to reconsider that issue at "'any time before the entry of judgment.'"
26   *City of Los Angeles, Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001)
     (emphasis in original) (quoting *United States* v. *Houser*, 804 F.2d 565, 567 (9th Cir. 1986)).

STATEMENT OF INTEREST OF THE UNITED STATES-2
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    GEO operates the Northwest Detention Center in Tacoma, Washington under contract

2    with United States Immigration and Customs Enforcement ("ICE").  Johnson Decl. ¶ 8, ECF No.

3    91.  The Northwest Detention Center houses aliens ICE has arrested on probable cause to believe

4    that they are removable from the United States under federal immigration law.  *Id.* ¶ 10; *see also*

5    8 U.S.C. §§ 1182(a) (classes of inadmissible aliens), 1225(b) (detention of aliens applying for

6    admission), 1226 (detention of aliens pending removal proceedings), 1227(a) (classes of

7    deportable aliens), and 1231(a) (detention of aliens ordered removed).  Through its contracts, ICE

8    requires that all facilities where such individuals are detained on its behalf adhere to certain

9    standards and operate in accordance with certain specifications, including the requirement to

10   provide a Voluntary Work Program for detainees.  *Id.* ¶¶ 10-11.  ICE's purpose in requiring a

11   Voluntary Work Program is to decrease detainee idleness, improve detainee morale, and reduce

12   disciplinary incidents.  *Id.* ¶ 11.  At the Northwest Detention Center, detainees participating in

13   that program must receive at least $1 per day for their voluntary work.  *Id.* ¶ 13.

14   This work program operates similarly to the program Washington State operates at its own

15   detention facilities.  Residents of those State-managed facilities are exempted from the MWA.

16   *See* RCW 49.46.010(3)(k) (exempting any "[a]ny resident, inmate, or patient of a state, county,

17   or municipal correctional, detention, treatment or rehabilitative institution").  And Washington

18   operates a work program that pays wages well below minimum wage—at rates that State policy

19   documents indicate range from $55 per month (which is around 35 cents per hour for four 40 hour

20   weeks of work) for certain work programs, to an hourly wage ranging from 65 cents to $2.70

21   under another program.  Offender Work Program Policies 700.100 & 710.400, *available at*

22   https://www.doc.wa.gov/information/policies/default.aspx?show=700.

23   The State of Washington filed this action in state court in September 2017, alleging that

24   GEO violated the MWA and was unjustly enriched by compensating civil immigration detainees

25   housed at its facilities $1 per day for their work.  *See* Complaint ¶ 1.4, ECF No. 1-1.  GEO timely

26   removed the action to this Court.  *See* Notice of Removal, ECF No. 1.

STATEMENT OF INTEREST OF THE UNITED STATES-3
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    In November 2018, GEO moved for summary judgment on Washington's cause of action
2    under the MWA, arguing that the doctrine of intergovernmental immunity barred Washington's
3    claim.  Def.'s Mot. for Summ. J. on Pl.'s First Cause of Action ("Mot. for Summ. J."), ECF No.
4    149.  The Court denied GEO's motion, concluding that the MWA "does not discriminate against
5    the Federal Government" because it "is neutral on its face."  Order Den. Def.'s Mot. for Summ.
6    J. on Pl.'s First Cause of Action ("Order Den. Def.'s MSJ") 9, ECF No. 162.  In denying GEO's
7    motion to reconsider that decision, the Court tacitly recognized that the MWA does not apply to
8    state detainees, distinguishing the detainees at issue here from state detainees on the ground that
9    they "are not residents of a 'state, county, or municipal [...] institution'" and "are not 'state
10   inmates.'"  Order Den. Def.'s Mot. for Reconsideration of Order Den. Mot. for Summ. J. on First
11   Cause of Action 2, ECF. No. 165 (alteration in original).  On August 6, 2019, the Court issued an
12   order on the Parties' Cross Motions for Summary Judgment, which, *inter alia*, granted the State's
13   motion to dismiss GEO's preemption defense.  Order on Cross Mots. for Summ. J. 1-2, ECF No.
14   288.

15                                      **DISCUSSION**

16   This case presents a compelling example of a State discriminating against the Federal
17   Government and those with whom it deals.  When a resident of a *state* detention facility performs
18   work, Washington allows itself to pay that resident less than the minimum wage.  But when a
19   resident of a detention facility operated for the Federal Government by a *federal contractor*
20   performs work, Washington insists that the federal contractor pay the resident the full state
21   minimum wage.  Under the longstanding doctrine of intergovernmental immunity, Washington's
22   approach can be justified only if significant differences between the two classes justify the
23   differential treatment.  But there are no such significant differences here, because work is
24   permitted under both the federal immigration detention scheme and the state detention scheme.
25   While Congress has authorized DHS to use private contractors to conduct these detention
26   operations, "[f]or purposes of intergovernmental immunity, federal contractors are treated the

STATEMENT OF INTEREST OF THE UNITED STATES-4
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1   same as the federal government itself," *United States v. California*, 921 F.3d 865, 882 n.7 (9th

2   Cir. 2019), and the relevant question is whether federal detention contractors are similarly situated

3   to state detention facilities for purposes of the MWA.  By requiring federal detention contractors

4   to pay the minimum wage but relieving similarly-situated state facilities from that obligation, the

5   State accordingly runs afoul of basic principles of intergovernmental immunity that have shielded

6   federal activities from state interference since the Founding.

7         Like preemption, intergovernmental immunity is grounded in the Supremacy Clause.  *See*

8   *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019) ("The doctrine of intergovernmental

9   immunity is derived from the Supremacy Clause, which mandates that the activities of the Federal

10   Government are free from regulation by any state.") (citation and internal quotation marks

11   omitted); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the

12   Supremacy Clause, from which our pre-emption doctrine is derived, '"any state law, however

13   clearly within a State's acknowledged power, which interferes with or is contrary to federal law,

14   must yield."'") (citation omitted).  Under the intergovernmental immunity doctrine, state laws

15   that "discriminate [ ] against the Federal Government or those with whom it deals" "are invalid."

16   *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (quoting *North Dakota,* 495 U.S. at

17   435 (alteration in original)).  "'A state or local law discriminates against the federal government

18   if it treats someone else better than it treats the government.'" *Movassaghi*, 768 F.3d at 842

19   (quoting *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010)) (internal quotation

20   marks omitted).

21         As with preemption, the intergovernmental immunity doctrine is critically important to

22   the Federal Government's ability to function free from improper interference by the states.

23   *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 128 (1993) ("The purpose of the

24   intergovernmental immunity doctrine is to protect the rights of the Federal Sovereign against state

25   interference.").  Such interference, as here, can occur when state legislation treats the Federal

26   Government or its contractors, *i.e.*, "those with whom it deals," less favorably than comparable

STATEMENT OF INTEREST OF THE UNITED STATES-5
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    state entities—particularly when the federal contractors' efforts are in service of a federal policy

2    to which the State is opposed.  *See, e.g.*, *Movassaghi*, 768 F.3d at 842-43 ("Boeing cannot be

3    subjected to discriminatory regulations because it contracted with the federal government. . . .  SB

4    990 discriminates . . . against Boeing as a federal contractor.  Therefore, it is invalid under the

5    doctrine of intergovernmental immunity.").  Thus, "when [a] state law is discriminatory, a private

6    entity with which the federal government deals can assert immunity."  *Id.*  at 842.[3]

7
**I.      The Doctrine of Intergovernmental Immunity Bars Washington's Attempt to Apply
8            the MWA against Federal Contractors.**

9            Washington's attempt to enforce its minimum wage law against GEO unconstitutionally

10   discriminates against a federal contractor for work performed in support of the Federal

11   Government's enforcement of federal immigration law.  Under the MWA, all employers in the

12   State are required to pay their "employees" a minimum wage specified by the statute.  RCW

13   49.46.020.  But not every person permitted or paid to work is classified as an "employee" under

14   the MWA.  *See* RCW 49.46.010.  As relevant here, the definition of "employee[s]" subject to the

15   MWA excludes "[a]ny resident, inmate, or patient of *a state, county, or municipal* correctional,

16   detention, treatment or rehabilitative institution."  RCW 49.46.010(3)(k) (emphasis added).  The

17   law does not similarly exclude those who are in federal custody and who the Federal Government

18   does not treat as employees, however, and does not exclude residents of equivalent facilities that

19   house federal inmates, whether operated by the Federal Government or its contractors.  *See id.*

20

21

22

23          [3] Congress provided for a detention scheme that utilizes private contractors and provides
     for a detainee work program subject to a federally-set allowance rather than a wage subject to
24   federal or other minimum wage laws.  *See* 8 U.S.C. § 1555(d) & 8 U.S.C. § 1231(g).  In addition
     to violating principles of intergovernmental immunity, a State's imposition of the state minimum
25   wage law on such a scheme would be preempted to the extent it poses an "obstacle to the
     accomplishment and execution of the full purposes of Congress."  *Arizona v. United States*, 567
26   U.S. 387, 399 (2012); *see Crosby v. National Foreign Trade Council*, 530 U.S. 363, 380 (2000)
     (statutory scheme "drawn not only to bar what they prohibit but to allow what they permit").

STATEMENT OF INTEREST OF THE UNITED STATES-6
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

Thus, as written (assuming *arguendo* it is otherwise applicable), the MWA requires the Federal Government and its contractors to pay minimum wage to individuals in federal custody who are not employees under federal law, but does not require the state and its contractors to pay minimum wage to individuals in State custody, who it deems not to be employees. The MWA thus unconstitutionally discriminates against the Federal Government—and the contractors who operate facilities that house federal detainees. *See Movassaghi*, 768 F.3d at 839.

The State basically concedes most of this. In response to GEO's previous motion asserting intergovernmental immunity, see Def.'s Mot. for Summ. J., ECF No. 149, the State effectively agreed that the statute would be unconstitutional if applied as written to require federally-owned facilities to pay the state minimum wage. Pl.'s Resp. to Def.'s Mot. for Summ. J. 1, ECF No. 155. The State thus took the position that—notwithstanding the statutory language— "Washington's minimum wage laws do not extend to federally owned facilities," *id.*, because "the intergovernmental immunity component of sovereign immunity doctrine bars Washington from directly regulating the Federal Government." *Id.* at 4 n.2. Recognizing "these core principles of federalism," the State explicitly recognized, as it must, that "Washington's minimum wage laws do not regulate the federal government's pay practices at any federal detention facility located in Washington State." *Id.* at 4-5 n.2.

In the State's view, however, the fact that GEO is a private contractor makes all the difference. The State emphasized (and this Court agreed) that the minimum wage law applies generally to all private entities and thus does not target GEO because of its status as a contractor for the Federal Government.[4] Order Den. Def.'s MSJ 6-8, ECF No. 162 (citing *North Dakota,*

---

[4] Regardless of whether the statutory *text* targets GEO because it is a federal contractor, this *lawsuit*, through which the State seeks to impose liability on a federal contractor for its actions

STATEMENT OF INTEREST OF THE UNITED STATES-7
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

495 U.S. at 438); *id.* at 8.  This is wrong for two reasons.  First, even generally applicable laws are invalid if they treat the state or its associates better than the Federal Government and those with whom it deals.  Second, the State's own interpretation of the MWA makes clear that it is not generally applicable to all private corporations, but rather specifically exempts private corporations from paying minimum wage to individuals detained under *state* law.

### A.  Generally Applicable Laws that Privilege the State and Those with Whom It Deals over the Federal Government and Those with Whom It Deals Are Invalid.

The Supreme Court has made clear that the intergovernmental immunity doctrine requires invalidation of otherwise generally applicable state laws that treat the state and those with whom it deals better than the Federal Government and those with whom it deals.  *See Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989).

In *Davis*, a state law taxed federal employee retirement benefits, but not similar state employee retirement benefits.  *Id.* at 805-06.  Like the MWA, the text of the law was generally applicable, except that it provided a specific exception for the state that did not apply to the Federal Government:  "Th[e] statute defines taxable income in a manner that excludes all retirement benefits received from the State or its political subdivisions, but includes most other forms of retirement benefits," including federal retirement benefits.  *Davis*, 489 U.S. at 806.  "The

---

in administering a federal contract, undoubtedly does.  It is precisely to prevent this type of interference with the Federal Government's effective execution of federal law, whether on its own or through contractors, that the intergovernmental immunity doctrine exists.  *See, e.g.*, *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 608 (1973) ("The doctrine of intergovernmental immunity enunciated in *McCulloch v. Maryland*, 4 Wheat. 316, 4 L. Ed. 579 (1819), however it may have evolved since that decision, requires at least that the United States be immune from discriminatory treatment by a State which in some manner interferes with the execution of federal laws.").

STATEMENT OF INTEREST OF THE UNITED STATES-8
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1  effect of this definition is that the retirement benefits of retired state employees are exempt from

2  state taxation while the benefits received by retired federal employees are not." *Id.*

3      The Court held the law invalid under the intergovernmental immunity doctrine because

4  the state was unable to justify the distinction between the two classes of retirees. *Id.* at 814-17.

5  Although federal employees were not targeted specifically by the state law, the statute singled out

6  the state for preferential treatment and did not extend that preferential treatment to the Federal

7  Government and its employees. *Id*. at 806; *cf.* RCW 49.46.010(3)(k).  Thus, intergovernmental

8  immunity applied in *Davis* because—notwithstanding the statute's general applicability—the

9

10  state tax system "discriminate[d] in favor of retired state employees and against retired federal

11  employees." *Davis*, 489 U.S. at 814.

12      Importantly, the burden of the challenged statute in *Davis* did not fall directly on the

13  Federal Government.  Instead, the tax was levied on retired federal employees.  But this did not

14  prevent the intergovernmental immunity doctrine from invalidating the state law.  *See Davis*, 489

15  U.S. at 814 ("[I]t does not follow that private entities or individuals who are subjected to

16  discriminatory taxation on account of their dealings with a sovereign cannot themselves receive

17

18  the protection of the constitutional doctrine.  Indeed, all precedent is to the contrary.").[5]

19      But it did not matter that the burden of the law did not fall directly on the Federal

20  Government.  Nor did it matter that the law at issue was generally applicable to everyone except

21  employees of the State.  All that mattered in *Davis* was the law treated associates of the State

22  better than it treated associates of the Federal Government.  *Davis*, 489 U.S. at 806; *see Phillips*

23

24      [5] Accordingly, the United States respectfully notes that this Court's observation that
25  whether or not the MWA applies here "may not affect the Federal Government at all" because
ICE need not reimburse GEO for the moneys used to compensate the detainees in the Voluntary
26  Work Program, Order Den. Def.'s MSJ 9, ECF No. 162, has no bearing on whether the
intergovernmental immunity doctrine applies.

STATEMENT OF INTEREST OF THE UNITED STATES-9
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1   *Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960) ("[I]t does not seem too much

2   to require that the State treat those who deal with the Government as well as it treats those with

3   whom it deals itself.").

4   Here, as in *Davis*, there is little question that the MWA treats the Federal Government and

5   its contractors worse than the State.[6]  Washington's own relevant Administrative Policy states

6   that "[r]esidents, inmates, or patients of *state, county or municipal* correctional, detention,

7   treatment or rehabilitative institution[s] [are] not . . . required to be paid minimum wage if they

8   perform work directly for, and at, the institution's premises where they are incarcerated, and

9   remain under the direct supervision and control of the institution."  State of Washington

10  Department of Labor Industries Employment Standards Administrative Policy: Minimum Wage

11  Act Applicability (2014) ("Administrative Policy") 5, ECF 160-1 (emphasis added).  There is no

12  equivalent exemption for residents, inmates, or patients of federal facilities.  Thus, under the

13  MWA's own terms, state and local detention facilities, regardless of who owns and operates them,

14  need not pay detainees minimum wage for work, while federal facilities, whether operated by the

15  Federal Government itself or a federal contractor, must.[7]  Such discriminatory treatment is barred

16

17

18  _____

19  [6] The United States respectfully notes that this Court's observation that "the MWA leaves
20  open the question, and places no limitation on, whether Congress *could* decree that detainees must
    be compensated at a certain wage," Order Den. Def.'s MSJ 8, ECF No. 162, has no bearing on
21  the question of whether the State's discriminatory attempt to apply its law to GEO in this case is
    barred by intergovernmental immunity.  The fact that the MWA discriminates in favor of the State
22  and does not extend a similar benefit to the Federal Government and those with whom it deals is
    enough to trigger the intergovernmental immunity doctrine.

23
    [7] Washington state law expressly allows private contractors to operate "state, county or
24  municipal correctional, detention, treatment or rehabilitative institution[s]" in a variety of
    circumstances.  *See, e.g.*, RCW 72.09.015(6) ("Correctional facility' means a facility or institution
25  operated directly *or by contract* by the secretary for the purposes of incarcerating adults…")
    (emphasis added); RCW 70.48.210(4) (local special detention facility "may be operated by a
26  noncorrectional agency *or by noncorrectional personnel by contract* with the governing unit")

STATEMENT OF INTEREST OF THE UNITED STATES-10
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    by intergovernmental immunity.  *See Dumas*, 361 U.S. at 379 (holding that statute "discriminates

2    unconstitutionally against the United States and its lessees" because it "imposes a distinctly lesser

3    burden on similarly situated lessees of exempt property owned by the State and its political

4    subdivisions").[8]

5         The State's litigation concession that the MWA—notwithstanding its plain terms—does

6    not apply to federally owned facilities does not change this conclusion.  For one, the law as written

7    plainly discriminates against federally managed detention facilities, casting doubt on the post-hoc

8    effort to reform a state statute through a litigation concession.  Moreover, as noted, "[f]or purposes

9    of intergovernmental immunity, federal contractors are treated the same as the federal government

10   itself," *California*, 921 F.3d at 882 n.7, and the relevant inquiry is whether the federal contractor

11   is similarly situated to the state facility for purposes of the MWA. The need to compare the

12

13

14   (emphasis added); RCW 71.05.020(21) ("Evaluation and treatment facility" includes "any facility
     which can provide directly, *or by direct arrangement with other public or private agencies*,

15   emergency evaluation and treatment") (emphasis added); RCW 71.05.320(1)(a) (court may

16   remand certain individuals to "custody of the department of social and health services *or to a
     facility certified for ninety day treatment . . . for a further period of . . . treatment*") (emphasis

17   added).

18        [8] In its Opposition to GEO's motion, the State focused on the MWA's applicability to
     private corporations generally, rather than addressing the specific statutory provision relevant

19   here, which exempts residents of state institutions.  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 7-
     8, ECF No. 155.  That was wrong. To be sure, the *North Dakota* Court instructed that the "broader

20   regulatory context" must be considered in determining whether the intergovernmental immunity
     doctrine applies.  *North Dakota*, 495 U.S. at 438.  But it did so in the course of explaining that the

21   doctrine did not apply in that case—notwithstanding that the challenged state law treated the
     Federal Government differently from other actors—because in the context of the broader statutory

22   scheme the challenged state law was actually *favorable* to the Federal Government.  *Id.* at 438-
     39.  Here, by contrast, the relevant state law provision, both when considered on its own *and* when

23   considered as part of the broader statutory scheme, discriminates in favor of the State and against
     the Federal Government and other actors.  This renders application of the MWA to GEO—which,

24   as a federal contractor, is one with whom the federal government "deals," see, for example,
     *Movassaghi*, 768 F.3d at 842-43—unconstitutional under the intergovernmental immunity

25   doctrine, *see North Dakota*, 495 U.S. at 438 (intergovernmental immunity doctrine bars state laws

26   that discriminate against the "Federal Government and those with whom it deals").

STATEMENT OF INTEREST OF THE UNITED STATES-11
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

U.S. DEPARTMENT OF JUSTICE
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-4537

1    detention roles of the comparative governments, rather than the method implementing that

2    detention role through public ownership of the facility or private contracting, is most critical in

3    these circumstances.  This principle has particular force in the immigration context, where the

4    Ninth Circuit has recognized that the housing of noncitizens "for purposes of civil immigration

5    proceedings" is a quintessential "federal activity." *Id.* at 882; *see also United States v. California*,

6    314 F. Supp. 3d 1077, 1096 (E.D. Cal. 2018) ("Given that immigration enforcement is the

7    province of the Federal Government, it demands no stretch of reason to see that [state laws

8    imposing fines on employers who cooperate with federal immigration officials] in effect, target

9    the operations of <u>federal</u> immigration enforcement."), *rev'd in part on other grounds*, 921 F.3d

10   865.  Indeed, as the Ninth Circuit has noted, "the INA contemplates use of both federal facilities

11   *and* nonfederal facilities with which the federal government contracts" for the purpose of holding

12   noncitizens pending removal proceedings. *California*, 314 F.3d at 882 n.7. Any notion that

13   discrimination against a federal contractor housing federal immigration detainees should be

14   allowed when discrimination against the federal government itself would be prohibited is thus

15   unsupported.  This is all the more true where, as here, the federal contract *requires* the contractor

16   to take the action that is the subject of the state discrimination—here, to offer detainees the

17   opportunity to work for an allowance.  *See, e.g.,* Decl. of Joan K. Mell Attaching GEO-ICE

18   Contract ("GEO-ICE Contract") 371, ECF No. 19 (listing "Voluntary Work Program" on

19   "Performance     Requirements     Summary");     2011     PBNDS,     Part     5.8,     VI.C,

20   https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf ("Detainees shall be provided the

21   opportunity to participate in a voluntary work program"); Johnson Decl. ¶¶ 10-11.

22       The conclusion that intergovernmental immunity prohibits the State from discriminating

23   against federal immigration contractors also applies regardless of whether contractors who own

STATEMENT OF INTEREST OF THE UNITED STATES-12
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

and operate *state* detention facilities are similarly discriminated against under state law. As the Supreme Court explained just last term, the relevant question for purposes of intergovernmental immunity "isn't whether federal [entities] are similarly situated to state [entities] who *don't* receive [the] benefit; the relevant question is whether they are similarly situated to those who *do*." *Dawson v. Steager*, 139 S. Ct. 698, 705–06 (2019).  Thus, as in prior cases, the Court rejected "the State's effort to compare the class of federal [entities] with state [entities] who did *not* benefit from the . . . exemption rather than those who *did*." *Id.* (emphasis added).

This inquiry looks to "how the State has defined the favored class."  *Id.* at 705.  The "favored class" in these circumstances are entities that conduct state detention operations, and there is no relevant basis on which to distinguish entities that conduct federal detention operations—whether owned by the federal government or by one of its contractors—from state detention facilities for purposes of Washington's minimum wage law.  Both house individuals involuntarily and offer them the opportunity to receive compensation for performing various activities during their period of detention for detention management purposes that serve aims distinct from simply providing compensation for work performed.  Accordingly, exempting state detention facilities from having to pay minimum wage while at the same time failing to exempt contractor-owned federal detention facilities (like the Northwest Detention Center) from having to pay minimum wage violates intergovernmental immunity. *See North Dakota*, 495 U.S. at 438 (intergovernmental immunity prohibits a state from "treat[ing] someone else better than" "the Federal Government *and those with whom it deals*") (emphasis added).

STATEMENT OF INTEREST OF THE UNITED STATES-13
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

U.S. DEPARTMENT OF JUSTICE
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-4537

**B.   Under the State's Own Interpretation of the MWA, the Statute Is Not Generally Applicable to All Private Corporations, but Specifically Exempts Companies for Whom State Detainees Work.**

The MWA also is not "generally applicable" to all private entities involved in detention labor, as the State's own Administrative Policy makes clear.  The Administrative Policy explains that "State inmates assigned by prison officials to work on prison premises *for a private corporation* at rates established and paid for by the state are not employees of the private corporation and *would not be subject to the MWA*."  Administrative Policy at 5 (emphasis added). In other words, private contractors *with the State* for the labor of institutionalized persons *are exempt* from the Act, but a private contractor *with DHS* for the detention and labor of institutionalized persons *are covered* by the Act.   Contrary to the State's claims, then, the MWA is not even "generally applicable" and does not "plac[e] private firms that contract with the Federal Government on equal footing with all other private entities."  Order Den. Def.'s MSJ 6, ECF No. 162.  Applying the statute to GEO in these circumstances is unconstitutional.  *See Dumas Indep. Sch. Dist.*, 361 U.S. at 385.

**II.   GEO Did Not Waive Intergovernmental Immunity by Contract.**

In denying GEO's motion for summary judgment, this Court raised the possibility (without deciding the question) that language in the contract between ICE and GEO could be construed as a waiver of intergovernmental immunity.  Order Den. Def.'s MSJ 8, ECF No. 162. It does not.

The Supreme Court has explained that, "[b]ecause of the fundamental importance of the principles shielding federal . . . activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is 'a clear congressional mandate,' 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.'" *Hancock v. Train*, 426 U.S. 167, 167 (1976) (footnotes omitted); *cf. Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 850 (9th Cir. 2012) ("Contrary to the district court's reliance on

STATEMENT OF INTEREST OF THE UNITED STATES-14
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

1    implied waiver, '[a] waiver of sovereign immunity cannot be implied but must be unequivocally

2    expressed.'") (alteration in original).

3         In particular, the Court observed that one provision in the nearly 400-page contract

4    between ICE and GEO includes a nonexclusive list of 25 "constraints" that the contractor "is

5    expected to be knowledgeable of . . . and perform in accordance with the most current versions

6    of," one of which is "[a]pplicable federal, state and local labor laws and codes."  GEO-ICE

7    Contract 48, ECF No. 19.  That language, however, neither mentions the MWA explicitly nor

8    refers to "immunity" or "waiver" of immunity, and thus is not the sort of "clear and

9
10   unambiguous," "unequivocal express[ion]" necessary to constitute a waiver of intergovernmental

11   immunity.

12        While these basic principles alone preclude a finding of waiver based on this provision, it

13   is also inappropriate to construe the phrase "applicable . . . laws" to include the MWA here.  First,

14   similar language in contracts between ICE and its contractors have not been viewed as precluding

15
16   a finding of intergovernmental immunity in the past.  *See California*, 921 F.3d at 885 (enjoining

17   state law "requiring examination of the circumstances surrounding the apprehension and transfer

18   of immigration detainees" on intergovernmental immunity grounds); *id.* at 886 n.10 (noting

19   contract governing immigration detention facility at issue "includes a provision requiring

20   "compl[iance] with all applicable ICE, federal, state and local laws, statutes, regulations, and

21
22   codes.").  Second, if the term "applicable" is to mean anything, it must at a minimum exclude

23   laws that are invalid as applied to the circumstances of the contract.  Indeed, even without that

24   term, references to state or federal law in contracts are presumed to refer only to valid laws.  *See*

25   *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 469, 193 L. Ed. 2d 365 (2015) ("Absent any indication

26   in the contract that this language is meant to refer to *invalid* state law, it presumably takes its

STATEMENT OF INTEREST OF THE UNITED STATES-15
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

ordinary meaning: *valid* state law.").  The MWA is invalid as applied to federal contractors on intergovernmental immunity grounds. *See supra* Part I.  The contract thus cannot be read to include the MWA as among the "constraints," and cannot be read to waive immunity to the MWA or any other invalid or otherwise inapplicable law.

## **CONCLUSION**

For the foregoing reasons, the United States urges the Court to find that the doctrine of intergovernmental immunity bars the State of Washington from enforcing the MWA against GEO.

DATED:  August 20, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ETHAN P. DAVIS
Principal Deputy Assistant Attorney General

CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Director

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Christopher M. Lynch*
CHRISTOPHER M. LYNCH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-4537
Fax: (202) 616-8460
Email: christopher.m.lynch@usdoj.gov

*Counsel for the United States*

STATEMENT OF INTEREST OF THE UNITED STATES-16
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2019, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 20th day of August, 2019.

*/s/ Christopher M. Lynch*
CHRISTOPHER M. LYNCH

STATEMENT OF INTEREST OF THE UNITED STATES-17
*State of Washington v. The Geo Group, Inc.*, No. 3:17-cv-05806-RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L Street, NW**
**Washington, DC 20005**
**Tel: (202) 353-4537**