1

The Honorable Robert J. Bryan

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

10  STATE OF WASHINGTON,

11              Plaintiff,

12      v.

13  THE GEO GROUP, INC.,

14              Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

CIVIL ACTION NO. 3:17-cv-05806-RJB

STATE OF WASHINGTON'S
RESPONSE TO GEO'S MOTION
FOR RECONSIDERATION AND
UNITED STATES' STATEMENT
OF INTEREST

HEARING DATE:
September 12, 2019, at 9:30 a.m.

ORAL ARGUMENT REQUESTED

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

1

**TABLE OF CONTENTS**

2   I.   INTRODUCTION.................................................................................................. 1

3   II.   ARGUMENT ........................................................................................................ 1

4   A.   GEO's Motion for Reconsideration Should Be Denied Because Derivative
         Sovereign Immunity Does Not Apply and GEO Concedes That It May Pay
5        More Than $1 Per Day................................................................................. 2

6        1.   Derivative sovereign immunity does not apply because GEO's
              discretionary decision to pay detainees $1 per day was not directed by the
7             federal government, exceeded its authority, and violated ICE's explicit
              instructions ........................................................................................... 2

8        2.   Preemption does not bar the State's claims because there is no actual
9             conflict between Washington's MWA and IRCA.................................... 7

10       3.   Analysis under Washington's MWA is not altered just because GEO's
              employees work in a detention setting .................................................. 10

11
    B.   Intergovernmental Immunity Does Not Preclude Enforcement of
12       Washington's Longstanding and Generally Applicable MWA............................ 11

13       1.   The United States' belated "Statement of Interest" should not be
              considered because it is untimely and a procedurally improper request for
14            reconsideration ................................................................................... 11

15       2.   The federal government exaggerates and ignores the record when it
              claims that GEO's paying more than $1 per day will "interfere with
16            federal immigration enforcement" ....................................................... 13

17       3.   Washington law does not discriminate against the federal government or
              its contractors ..................................................................................... 15

18
         a.   The nondiscrimination rule does not bar enforcement of neutral laws
19            imposed on a basis unrelated to one's status as a federal contractor........ 15

20       b.   The United States invites a false comparison in order to argue an
              overly broad view of intergovernmental immunity ................................. 18

21
         c.   The government institution exemption does not extend to private,
22            corporate operators and does not discriminate against GEO or other
              private federal contractors ..................................................................... 19

23
         d.   The United States' remaining arguments do not support
24            intergovernmental immunity................................................................... 23

25   III.   CONCLUSION .................................................................................................. 24

26

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009)...................................... 5

*Agredano v. U.S. Customs Service*, 223 F. App'x 558 (9th Cir. 2007) ...................................... 6

*Alvarado Guevara v. INS*, 902 F.2d 394 (5th Cir. 1990)........................................................... 10

*Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ......................................................... 17

*Boyle v. United Techs. Corp.*, 487 U.S. at 524 ........................................................................ 4

*Butters v. Vance Int'l Inc.*, 225 F.3d 462 (4th Cir. 2000) ......................................................... 5

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015) ...................... 4

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ....................................................... 3, 4, 6

*Casteel v. Charter Commc'ns, Inc.*, No. C13-5520 RJB, 2014 WL 6751219 (W.D.
    Wash. Dec. 1, 2014) ....................................................................................................... 1, 2, 12

*Columbia Cmty. Bank v. Newman Park, LLC*, 304 P.3d 472 (Wash. 2013) .............................. 8

*David v. Signal Int'l, LLC*, 257 F.R.D. 114 (E.D. La. 2009)....................................................... 9

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989).................................................... 17, 22

*Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582 (Wash. 2000)........................................ 20

*Gomez v. Campbell-Ewald*, 768 F.3d 871 (9th Cir. 2014) ........................................................ 6

*Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187 (D. Mass. 2008)............................ 4

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002)............................................. 9

*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008)................................... 5

*In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326 (4th Cir. 2014)............................................. 3, 4

*In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892 (N.D. Cal.
    2007)........................................................................................................... 16, 17, 19, 23

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019) ....... 5, 6

*Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir. 2007) ................................................... 7

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013)............................ 9

*LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695 (D. Minn. 2018)................. 12

*Lucas v. Jerusalem Café, LLC*, 721 F.3d 927 (8th Cir. 2013) ................................................ 9

*M'Culloch v. Maryland*, 17 U.S. 316 (1819) ................................................................. 17, 22

*Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009) ............................................................................................................................ 1

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018) ............................................... 9

*Myers v. United States*, 323 F.2d 580 (9th Cir. 1963) ....................................................... 6

*North Dakota v. United States*, 495 U.S. 423 (1990) ............................................... passim

*Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) .......................... 10

*United States ex rel. Gudur v. Deloitte Consulting, LLP*, 512 F. Supp. 2d 920 (S.D. Tex. 2007) ........................................................................................................................ 12

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ..................................... 16, 17, 22

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010) ..................................... 15, 16

*United States v. County of Fresno*, 429 U.S. 452 (1977) ................................................. 16

*Wash. Dep't of Revenue v. Puget Sound Power & Light Co.*, 694 P.2d 7 (Wash. 1985) ........... 8

*Washington v. United States*, 460 U.S. 536 (1983) .......................................................... 16

*Yearsley v. W.A. Constr. Co.*, 309 U.S. 18 (1940) ............................................................ 2

*Young v. Young*, 191 P.3d 1258 (Wash. 2008) ................................................................. 8

### Statutes

28 U.S.C. § 517 .................................................................................................................. 11

29 U.S.C. § 218(a) ............................................................................................................. 10

Wash. Rev. Code § 49.46.005(1) ....................................................................................... 10

Wash. Rev. Code § 49.46.010(3)(k) ................................................................. 18, 19, 20, 24

Wash. Rev. Code § 70.48.210(4) ....................................................................................... 20

Wash. Rev. Code § 71.05.020(21) ..................................................................................... 21

Wash. Rev. Code § 71.05.320(1)(a) ................................................................................... 21

Wash. Rev. Code § 72.09.015(6) ................................................................................... 20, 21

Wash. Rev. Code § 72.65.020(1)(c) ................................................................................... 21

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   Wash. Rev. Code § 72.68.012 ................................................................. 20

2   Wash. Rev. Code § 72.68.040 ........................................................... 20, 21

3   **Rules**

4   Local Rules W.D. Wash. LCR 7(h) ......................................................... 11

5   Local Rules W.D. Wash. LCR 7(h)(1) ............................................ 1, 12, 13, 15

6   **Regulations**

7   8 C.F.R. § 274a.12(c)(8) ......................................................................... 8

8   8 C.F.R. § 274a.12(c)(9) ......................................................................... 8

9   8 C.F.R. § 274a.12(c)(10) ....................................................................... 8

10  8 C.F.R. § 274a.12(c)(19) ....................................................................... 8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S RESPONSE TO           iv           ATTORNEY GENERAL OF WASHINGTON
GEO'S MOTION FOR RECONSIDERATION                         Civil Rights Division
AND UNITED STATES' STATEMENT OF                          800 Fifth Avenue, Suite 2000
INTEREST                                                 Seattle, WA  98104-3188
                                                         (206) 464-7744

# I.      INTRODUCTION

Washington respectfully urges the Court to decline invitations by GEO and the United States to reconsider its rulings. In GEO's case, its motion for reconsideration nowhere demonstrates "manifest error" in the Court's recent summary judgment order on derivative sovereign immunity, preemption, and Washington's Minimum Wage Act (MWA) claim. GEO merely disagrees with the Court's conclusions, the binding Ninth Circuit and Supreme Court precedent the Court correctly applied to GEO's immunity and preemption defenses, and the economic dependence test GEO itself argued applies to the MWA claim. The United States, in a separate "Statement of Interest," asks the Court to reconsider and reverse its December 2018 ruling rejecting GEO's attempt to invoke intergovernmental immunity—based on the same arguments GEO presented more than eight months ago. Even if the United States had submitted a timely brief, which it did not, its arguments nowhere demonstrate manifest error in the Court's prior decisions sufficient to warrant reconsideration. The Court should deny GEO's motion for reconsideration and reject again the arguments in the United States' Statement of Interest.

# II.      ARGUMENT

Motions for reconsideration are "disfavored" and will ordinarily be denied absent a showing of "manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1); *see also Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law."). Manifest error is a "plain and indisputable" error that amounts to a "complete disregard of the controlling law or the credible evidence in the record." *Casteel v. Charter Commc'ns, Inc.*, No. C13-5520 RJB, 2014 WL 6751219, at *1 (W.D. Wash. Dec. 1, 2014). As the Court has recognized, "[r]econsideration is an extraordinary remedy, to be used sparingly in the interests

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  of finality and conservation of judicial resources." *Id.* (citing *Kona Enters., Inc. v. Estate of*

2  *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). A request for reconsideration is not a proper method

3  to seek a "second bite at the apple"—particularly when the request is based on "evidence and

4  legal arguments that could have been presented at the time of the challenged decision." *Id.*

5        Neither GEO nor the United States have identified any error, much less manifest error,

6  in the Court's prior summary judgment rulings. Each request for reconsideration should be

7  rejected.

8  **A.**    **GEO's Motion for Reconsideration Should Be Denied Because Derivative Sovereign**

9          **Immunity Does Not Apply and GEO Concedes That It May Pay More Than $1 Per**
        **Day**

10        **1.**    **Derivative sovereign immunity does not apply because GEO's discretionary**

11             **decision to pay detainees $1 per day was not directed by the federal**
           **government, exceeded its authority, and violated ICE's explicit instructions**

12        GEO's motion for reconsideration does not argue that this Court actually erred, but that

13  the *Ninth Circuit* manifestly erred in articulating the derivative sovereign immunity standard in

14  *Cabalce v. Thomas E. Blanchard & Associates, Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). *See* ECF

15  No. 289 at 2. Even under the pre-*Cabalce* cases, however, GEO is not entitled to derivative

16  sovereign immunity because it exceeded its authority under the plain terms of its federal contract.

17  Moreover, the Court should decline GEO's invitation to overturn binding Ninth Circuit

18  precedent in *Cabalce*, which is in fact consistent with the Supreme Court's prior precedent on

19  derivative sovereign immunity. Each issue is addressed below.

20        First, setting aside GEO's disagreement with *Cabalce*, GEO is liable for state law

21  violations under *Yearsley* and *Campbell-Ewald*. In *Yearsley*, the Supreme Court recognized

22  federal contractors are derivatively immune from liability unless the federal contractor

23  "exceeded [its] authority" or that the authority "was not validly conferred." *Yearsley v. W.A.*

24  *Constr. Co.*, 309 U.S. 18, 21 (1940). Similarly, in *Campbell-Ewald*, the Supreme Court held

25  derivative sovereign immunity does not shield a contractor from suit when the contractor violates

26

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   "the Government's explicit instructions." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672

2   (2016). Here, GEO does just that. While GEO is required to operate a VWP and ICE agrees to

3   reimburse GEO $1 per day for detainee work performed, the GEO-ICE contract also explicitly

4   requires GEO perform in accordance with all applicable federal, state and local labor laws. *See*

5   ECF No. 246-3 at 43-44; ECF No. 246-2 at 18-19. The contract also instructs GEO to comply

6   with the "most stringent" of any conflicting federal, state, or local standards—an unambiguous

7   directive that speaks to the precise circumstance here but which GEO (and the United States)

8   entirely ignore in their briefing. ECF No. 246-3 at 52. *See Campbell-Ewald*, 136 S. Ct. at 673 n.7

9   ("Critical [to the contractor's avoidance of liability] in *Yearsley* was . . . the contractor's

10   performance in compliance with *all* federal directions.") (emphasis added); *In re KBR, Inc., Burn*

11   *Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) ("[S]taying within the thematic umbrella of the work

12   that the government authorized is not enough to render the contractor's activities 'the act[s] of

13   the government'") (citation omitted). By refusing to pay detainees the minimum wage, GEO

14   both exceeds the authority conferred to it and violates the federal government's explicit

15   instructions. In other words, even under the cases GEO cites, derivative sovereign immunity

16   does not apply.

17       Second, there is no question that GEO is liable under *Cabalce*. ICE provides GEO broad

18   discretion to operate and manage the VWP. *See* ECF No. 253-14 (PBNDS 5.8) (nowhere

19   dictating the types of jobs detainee-workers must be assigned); ECF No. 91 (T. Johnson Decl.)

20   ¶¶ 8, 12, 13 (affirming that the GEO-ICE contract "do[es] not designate *how* a contractor is to

21   perform the work" and that GEO maintains discretion in developing and implementing the

22   VWP). ICE nowhere authorizes or directs that GEO pay detainee-workers only $1 per day for

23   their labor. *Id.* That decision is made by GEO alone. As the State observed in its response to

24   summary judgment, ECF No. 266 at 11, the record shows that GEO not only has the option to

25   pay more than $1 per day to detainee-workers for work performed, *see* ECF No. 253-15

26   (RFA 67), but GEO has in fact paid detainees more than $1 per day. ECF No. 253-15 (RFAs 56,

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

58-60, 71-72). Under *Cabalce*, these admissions are dispositive. 797 F.3d at 732 ("[D]erivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'") (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)).

Although GEO disagrees with *Cabalce's* holding that *Yearsley* is limited to cases in which a contractor "had no discretion in the design process," the *Cabalce* decision simply interprets *Yearsley's* own language that immunity applies only if the private contractor's conduct was "authorized and directed by the Government." *Cabalce*, 797 F.3d at 732. Neither the Supreme Court nor any other circuit has overturned or distinguished *Cabalce's* articulation of derivative sovereign immunity. *See Campbell-Ewald*, 136 S. Ct. at 672 (reviewing a Ninth Circuit derivative sovereign immunity decision post-*Cabalce* and nowhere suggesting *Cabalce* was wrongly decided). Indeed, the Fourth Circuit, like the Ninth Circuit, also considers the private contractor's "discretion" important when conducting a *Yearsley* analysis. In *In re KBR, Inc., Burn Pit Litigation*, the Fourth Circuit held derivative sovereign immunity would not apply "if [the private contractor] enjoyed some discretion in how to perform its contractually authorized responsibilities." 744 F.3d at 346. Instead, immunity would shield the private waste management contractor only if "the military dictated exactly how [the contractor] should undertake its waste management and water treatment tasks." *Id.*

Third, GEO's suggestion that the *Cabalce* court erred by relying on a government contractor defense case, *In re Hanford Nuclear Reservation Litigation*, overlooks the shared origin of both defenses. The Supreme Court established the government contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), based principally on *Yearsley's* holding that a contractor's immunity should be derivative. *See Boyle*, 487 U.S. at 524 (Brennan, J., dissenting) (criticizing the majority's reliance on *Yearsley* as a "slender reed on which to base so drastic a departure from precedent"); *see also Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 197 n.8 (D. Mass. 2008) ("*Boyle* expands and elaborates *Yearsley* but does not

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   set forth a separate doctrine. The *Boyle* court simply extended immunity from performance

2   contracts in *Yearsley* to procurement contracts (as in *Boyle*).”). Since derivative sovereign

3   immunity and the government contractor defense overlap, *Cabalce*’s citation to *In re Hanford*

4   *Nuclear Reservation Litigation* makes sense. The *Hanford* court also referred to “no discretion

5   in the design process” while analyzing *Yearsley*, the exact case GEO asks the Court to apply

6   here. 534 F.3d at 1001. The defenses are not “manifestly different,” as GEO argues.

7          Fourth, GEO’s citations to out-of-circuit case law do not save its argument.[1] ECF No. 289

8   at 3. The D.C. Circuit case, in fact, *supports* the State’s claim for liability. In *In re U.S. Office of*

9   *Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019), the D.C.

10  Circuit refused to apply derivative sovereign immunity where, like here, the federal contractor’s

11  contractual obligations required it to adhere to specific legal standards. In rejecting the claim of

12  immunity where those standards were allegedly breached, the D.C. Circuit specifically noted the

13  federal contractor’s “inability to point to a contractual provision or other [government] direction

14  authorizing or directing [the conduct] over which [] [p]laintiffs [were] suing.” *Id.* at 70. The

15  same is true here, as the ICE-GEO contract requires GEO to comply with applicable state labor

16  laws, including the “most stringent” among competing standards. *See* ECF No. 246-3 at 43-44,

17  52; ECF No. 246-2 at 18-19. Although GEO half-heartedly cites to two other contract provisions,

18  one prohibiting GEO from using detainees to fulfill contractual obligations, ECF No. 246-3 at

19  82, and another requiring to GEO employ only U.S. citizens or legal permanent residents as

20  employees, *id.* at 63, neither provision authorizes or directs GEO to ignore state law generally

21  or Washington’s Minimum Wage Act (MWA) in particular.

22  ───────────────

23          [1] In *Butters v. Vance International Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), the Fourth Circuit extended
    derivative sovereign immunity to private agents of a foreign government after determining a private contractor’s
    discriminatory decision not to promote a female security guard stemmed from Saudi Arabia’s orders, not the private

24  contractor’s own decision. Here, it is undisputed that neither ICE nor the GEO-ICE contract *ordered* GEO to violate
    Washington’s MWA. In *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009), the plaintiffs

25  “attack[ed] the entire [federally-mandated dredging] project” and “d[id] not . . . allege that the [contractors]
    exceeded their authority or in any way deviated from Congress’s direction or expectations.” Here, the State does
    not challenge the existence of immigration detention, but only GEO’s violation of the MWA when it does business

26  in Washington.

STATE OF WASHINGTON’S RESPONSE TO
GEO’S MOTION FOR RECONSIDERATION
AND UNITED STATES’ STATEMENT OF
INTEREST

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    GEO's citations to pre-*Cabalce*, Ninth Circuit decisions fare no better. None suggests

2    *Cabalce* represents a departure from Ninth Circuit precedent. In *Myers v. United States*, 323 F.2d

3    580, 583 (9th Cir. 1963), derivative sovereign immunity applied only to the extent that the work

4    performed by the contractor was done "in conformity with the terms of said contract," but

5    liability attached for acts "over and beyond acts required to be performed" or acts "not in

6    conformity" with the contract. In *Agredano v. U.S. Customs Service*, 223 F. App'x 558, 559

7    (9th Cir. 2007), derivative sovereign immunity applied where there was no evidence the

8    contractor breached the terms of its contract. In *Gomez v. Campbell-Ewald*, the Ninth Circuit

9    found *Yearsley* inapplicable and "decline[d] the invitation to craft a new immunity doctrine or

10   extend an existing one." 768 F.3d 871, 880 (9th Cir. 2014). The Ninth Circuit specifically

11   cautioned that immunity "comes at a great cost" because, where immunity lies, "[a]n injured

12   party with an otherwise meritorious tort claim is denied compensation," which "contravenes the

13   basic tenet that individuals be held accountable for their wrongful conduct." *Gomez*, 768 F.3d at

14   882 (citing *Westfall v. Erwin,* 484 U.S. 292, 295 (1988)). While the Supreme Court later

15   disagreed with the characterization of *Yearsley* as a "narrow rule," it still emphasized that

16   derivative sovereign immunity is "not absolute" and refused to apply it to a contractor that did

17   not—as required for immunity—"simply perform[] as the [g]overnment directed." *See*

18   *Campbell-Ewald*, 136 S. Ct. at 672-73. Here, GEO did not simply perform as directed by the

19   government. To the contrary, GEO's conduct failed to conform to the explicit terms of the GEO-

20   ICE contract.

21        Finally, the silence of the United States' belated Statement of Interest on the topic of

22   derivative sovereign immunity is telling. Although the United States suggests in passing that

23   Washington's MWA is "invalid," *see* ECF No. 290 at 16, its brief focuses on intergovernmental

24   immunity. The United States is careful not to suggest that it directed, authorized, or instructed

25   GEO to violate Washington's MWA. *Cf. In re U.S. Office of Pers. Mgmt. Data Sec. Breach*

26   *Litig.*, 928 F.3d at 68 n.4 (observing the federal government had not endorsed defendant's

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   assertion of derivative sovereign immunity). Since the intergovernmental immunity argument

2   fails for reasons discussed below, and the GEO-ICE contract explicitly requires GEO to comply

3   with state labor laws, the Court correctly denied GEO's motion for summary judgment. As the

4   Court succinctly stated in its order, "GEO has not shown that it was directed to pay participants

5   in the VWP only a $1 for the relevant period." ECF No. 288 at 9.

6       **2.      Preemption does not bar the State's claims because there is no actual conflict
7              between Washington's MWA and IRCA**

8       GEO next argues the Court erred by "ignor[ing]" the "impossibility" of GEO having an

9   employment relationship with detainees under state law while complying with the Immigration

10  Reform and Control Act (IRCA), and by failing to discuss *Hoffman Plastic Compounds, Inc. v.*

11  *NLRB*, 535 U.S. 137 (2002). Neither argument is persuasive.

12      First, GEO's IRCA argument is—and has always been—fundamentally flawed. Neither

13  this lawsuit nor Washington's MWA seeks to require GEO to employ detainees at all.

14  Washington's MWA only requires that, where GEO chooses to employ workers, whether

15  detainees or non-detainees from the surrounding Tacoma area, that GEO pay them at least the

16  minimum wage. In suggesting that it need not comply with state labor laws when relying on

17  unauthorized workers, GEO's argument actually encourages the employment of unauthorized

18  workers, undermines IRCA's purpose, and stands in direct conflict with Ninth Circuit law. *See*

19  *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (IRCA does not preempt a

20  California labor law forbidding employers from terminating an employee without good cause,

21  even an immigrant employee who temporarily lost legal work status).

22      As the Court correctly concluded, GEO's payment of the minimum wage presents no

23  obstacle or conflict with IRCA. ECF No. 288 at 11; *see also Incalza*, 479 F.3d at 1013 (rejecting

24  conflict preemption argument because "it was possible for [defendant] to obey federal law . . .

25  without creating a conflict with state law" by suspending the employee as he adjusted his

26  immigration status instead of terminating him). GEO could undoubtedly comply with IRCA,

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

administer a Voluntary Work Program, and abide by Washington's MWA by hiring work-authorized detainees or Tacoma-area residents and paying them the minimum wage. As to the detainees, they may be legal permanent residents, asylum seekers, grantees of Deferred Action for Childhood Arrivals (DACA), or have other immigration statuses that similarly authorize them to work or provide eligibility for work authorization. *See* 8 C.F.R. §§ 274a.12(c)(8), (9), (10), (19). Not only did the State provide evidence of a NWDC detainee's work authorization in response to GEO's summary judgment motion, *see* ECF No. 268-4, GEO admitted in reply that some detainees at the NWDC, for example, are legal permanent residents (and therefore work authorized). *See* ECF No. 273 at 3 (citing TRAC Immigration, Immigration and Customs Enforcement Detainees (Dec. 2018), https://trac.syr.edu/phptools/immigration/detention/ and identifying at least eleven detainees at the time to be legal permanent residents). In other words, it is possible for GEO to comply with all of its obligations simultaneously, and the Court was correct when it concluded that GEO "has failed to show that paying the detainees minimum wage 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ECF 288 at 11.

To the extent GEO suggests preemption also bars the State's unjust enrichment claim, *see* ECF No. 289 at 6 (referencing unjust enrichment), GEO's suggestion is flatly wrong. The State's unjust enrichment claim does not depend on whether detainees are deemed GEO employees under state law. Three elements are necessary for unjust enrichment: (1) the defendant receives a benefit; (2) the received benefit is at the plaintiff's expense; and (3) the circumstances make it unjust for the defendant to retain the benefit. *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). None of these elements require the workers to be employees. In fact, courts routinely recognize unjust enrichment claims outside of any employment context at all. *See, e.g., Columbia Cmty. Bank v. Newman Park, LLC*, 304 P.3d 472, 476 (Wash. 2013) (ordering equitable subrogation to a lender in a loan transaction to prevent unjust enrichment); *Wash. Dep't of Revenue v. Puget Sound Power & Light Co.*, 694 P.2d 7, 15 (Wash. 1985) (Dore,

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  J., concurring) (recognizing an unjust enrichment if utility company were allowed to keep

2  dividends received from abandoned utility deposits). *Cf. Menocal v. GEO Grp., Inc.*, 882 F.3d

3  905, 926 (10th Cir. 2018) (upholding unjust enrichment class action brought by detainee workers

4  against GEO where Colorado Minimum Wage Act was found to be inapplicable).

5       Second, the Court's omission of *Hoffman Plastic* in its summary judgment order is

6  understandable. GEO itself nowhere cited *Hoffman Plastic* in its reply. *See* ECF No. 273.

7  Further, as the State argued previously, *Hoffman Plastic* does not support the argument that the

8  MWA stands as an obstacle to any federal objective. *See* ECF No. 266 at 16. In *Hoffman Plastic*,

9  the Supreme Court declined to award back pay for "work not performed," *i.e.*, from the date of

10  the workers' illegal termination for collectively bargaining under the National Labor Relations

11  Act to the date the employer discovered the workers were unauthorized to work. 535 U.S. at 149.

12  Every court that has considered the argument that *Hoffman Plastic* also bars minimum wage

13  claims for work actually performed has squarely rejected it. *See Lucas v. Jerusalem Café, LLC*,

14  721 F.3d 927, 935 (8th Cir. 2013) (recognizing unauthorized aliens' minimum wage claim and

15  noting that *Hoffman Plastic* does not exclude unauthorized workers from all statutory

16  protections); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013)

17  ("[E]ven after *Hoffman*, we maintain that '[b]y reducing the incentive to hire such workers the

18  [federal minimum wage act's] coverage of undocumented aliens helps discourage illegal

19  immigration and is thus fully consistent with the objectives of the IRCA."); *see also David v.*

20  *Signal Int'l, LLC*, 257 F.R.D. 114, 124 (E.D. La. 2009) ("*Hoffman Plastic* does not control

21  plaintiffs' claims for unpaid minimum and overtime wages for work already performed"); *id.* at

22  123 n.32 (listing cases holding that claims for work already performed did not conflict with

23  federal immigration law). Clearly, *Hoffman Plastic*, a case regarding the appropriate remedy for

24  National Labor Relations Act violations, does not preclude a State from seeking a declaration on

25  liability that its generally applicable labor laws apply to work performed in the state.

26       Since Washington's claims are not preempted, the Court did not commit manifest error.

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 3.   Analysis under Washington's MWA is not altered just because GEO's employees work in a detention setting

GEO next argues the Court "manifestly err[ed]" in rejecting its contention that the MWA does not apply due to the "custodial nature of detention." *See* ECF No. 289 at 6. GEO's argument fails because it wholly duplicates arguments the Court has already considered and is inconsistent with GEO's own argument that the economic dependence test (rather than some other detention-specific analysis) applies in this case. *See* ECF No. 245 at 18.

GEO's entire argument on reconsideration rests on a single case that it has repeatedly cited in several of its failed dispositive motions: *Alvarado Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990), which considered a different law's application to a federally-owned and operated detention facility. As this Court previously recognized, *Alvarado* is not binding precedent. ECF No. 29 at 18 (Order on GEO's Mot. to Dismiss). *Alvarado* nowhere addressed a privately-owned and operated detention facility, the Washington's MWA, or the MWA's broader purpose of preventing predatory labor practices to encourage maximum employment opportunities for state residents. *See* Wash. Rev. Code § 49.46.005(1). Indeed, the Fair Labor Standards Act—the statute at issue in *Alvarado*—itself recognizes state minimum wage laws will differ from its own provisions. *See* 29 U.S.C. § 218(a) (directing that "[n]o provision of [the FLSA] or any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter"); *Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990) (affirming that "the purpose behind the FLSA is to establish a national *floor* under which wage protections cannot drop, not to establish absolute uniformity in minimum wage . . . standards nationwide"). "[E]xtending the logic of *Alvarado* to interpret [Washington's MWA] . . . moves beyond interpretation to legislation" and this Court should again "respectfully decline the invitation to add to the statute." ECF No. 29 at 18. Since GEO cites no case suggesting the Washington minimum wage analysis differs in the private detention context, the Court did not manifestly err.

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1        In sum, GEO's motion nowhere demonstrates manifest error or otherwise presents new

2  law or facts that could not have been presented before. The Court should accordingly deny

3  GEO's motion for reconsideration.

4
    **B.**    **Intergovernmental Immunity Does Not Preclude Enforcement of Washington's**
5            **Longstanding and Generally Applicable MWA**

6        The Court should likewise decline to reconsider its prior decisions holding that GEO is

7  not entitled to intergovernmental immunity. *See* ECF Nos. 162, 165. The Court correctly applied

8  governing law, and the United States' brief adds no weight to the faulty arguments GEO

9  previously raised. Intergovernmental immunity does not bar Washington from enforcing its

10  longstanding and neutral MWA against GEO, a private, for-profit employer in Washington.

11
          **1.**    **The United States' belated "Statement of Interest" should not be considered**
12                **because it is untimely and a procedurally improper request for**
                **reconsideration**

13        As a threshold matter, the Court should decline to consider the United States' filing at

14  all. The federal government's brief is untimely and procedurally improper given that there is no

15  pending motion on the issue of intergovernmental immunity. Even worse, the United States fails

16  to address the requisite standard for motions for reconsideration, despite its explicit argument

17  (ECF No. 190 at 2) that the Court should "reconsider" its prior rulings. *See* Local Rules W.D.

18  Wash. LCR 7(h). Under the circumstances, the Statement of Interest provides no reason to

19  reconsider the Court's prior rulings.

20        Even accepting that the United States may appear in cases to represent its interests

21  pursuant to 28 U.S.C. § 517, that authorization nowhere grants the federal government

22  permission to ignore case schedules or Local Rules. Nor does it authorize the federal government

23  to place an unnecessary burden on the Court by filing what is effectively an untimely second

24  motion for reconsideration that reiterates GEO's previously rejected arguments. *Compare* ECF

25  No. 290 (United States' Statement of Interest), *with* ECF Nos. 149 (GEO Mot. for Summ. J. re:

26  Intergovernmental Immunity), 161-1 (GEO Reply), 164 (GEO Mot. for Reconsideration). Cases

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

addressing other "Statements of Interest" make clear that the Court need not consider such filings when they are belated or repetitive. *See, e.g.*, *LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703-04 (D. Minn. 2018) (declining to consider U.S. Statement of Interest filed two and a half months after briefing was completed because Department of Justice's delay was "unjustified" and the parties had already "fully and thoroughly" briefed the issue); *United States ex rel. Gudur v. Deloitte Consulting, LLP*, 512 F. Supp. 2d 920, 928 (S.D. Tex. 2007) (striking Statement of Interest filed after the summary judgment briefing deadline had passed where United States made "no attempt" to show "good cause for its untimely filing").

Further, the Court is not obligated to reconsider interlocutory rulings anytime a party files an untimely brief, to say nothing of a belated non-party filing that does not relate to a pending motion.[2] While the Court has authority to reconsider interlocutory rulings, it has simultaneously recognized that "[r]econsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Casteel*, 2014 WL 6751219, at *1 (citing *Kona*, 229 F.3d at 890). Local Rule 7(h) regarding motions for reconsideration exists to address the appropriate circumstances for such an extraordinary remedy. And that rule is clear: Motions for reconsideration are "disfavored" and subject to a strict standard, requiring a showing of manifest error or presentation of law or facts that could not have been presented earlier. *See* Local Rules W.D. Wash. LCR 7(h)(1). Requests for reconsiderations are not intended to provide a "second [or, as here, third] bite at the apple" and "should not be used to ask a court to rethink what the court had already thought through[.]" *Casteel*, 2014 WL 6751219, at *1.

The United States' filing disregards the Court's case schedule, the fact that the United States never sought to intervene and is not a necessary party, and well-established rules regarding

---

[2] To this point, the Court has previously rejected GEO's attempts to re-argue issues in subsequent briefing on the ground that doing so constituted, in effect, an untimely motion for reconsideration. *See* ECF No. 202 at 10 (Order granting Washington's Mot. for Partial Summ. J.) (rejecting GEO's arguments, which merely recycled assertions from previously denied motion to dismiss, as an untimely request for reconsideration).

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

motions for reconsideration. The United States knew of this lawsuit at the outset when GEO sought unsuccessfully to require Washington to join the United States as a "necessary party" and when it filed a declaration with regard to the ICE-GEO contract. *See*, *e.g.*, ECF No. 58 (Order denying GEO's Mot. to Dismiss for Failure to Join, filed April 26, 2018); ECF No. 52, Ex. A (letter to Department of Justice, dated March 7, 2018, regarding litigation at issue); ECF No. 91 (T. Johnson Decl., filed August 2018). For reasons only it can know, the United States declined to participate in GEO's 2018 briefing on intergovernmental immunity. Now, having belatedly decided to become involved, the federal government does not attempt to show good cause for the untimeliness of its filing. Further, despite its explicit request for the Court to "reconsider" its prior denial of GEO's summary judgment motion on intergovernmental immunity, the United States nowhere asserts that the Court committed manifest error or presents law or facts that could not have been presented earlier. *See* Local Rules W.D. Wash. LCR 7(h)(1). To the contrary, the United States presents the same arguments the Court previously, and correctly, rejected. Under these circumstances, the Court need not and should not reconsider its prior intergovernmental immunity ruling.

### 2. The federal government exaggerates and ignores the record when it claims that GEO's paying more than $1 per day will "interfere with federal immigration enforcement"

In addition to the improper nature of the federal government's filing, its brief mistakenly contends that Washington's enforcement of the MWA is an effort to "interfere with federal immigration enforcement." ECF No. 290 at 2. Despite that alarmist contention, however, the federal government's brief nowhere explains how requiring GEO to pay more than $1 per day to detainee workers—as GEO admits it has the option to do and has done in the past—will interfere with federal immigration enforcement efforts.[3] Tellingly on this point, the federal

---

[3] Instead, the United States makes vague references to its interests in countering what it believes to be "discriminatory state efforts to regulate federal contractors," "the proper application of the Supremacy Clause," and "the foundational principles that protect the Federal Government from unlawful state interference." ECF No. 290 at 1.

STATE OF WASHINGTON'S RESPONSE TO GEO'S MOTION FOR RECONSIDERATION AND UNITED STATES' STATEMENT OF INTEREST

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   government nowhere asserts that GEO is in any way prohibited from paying more than $1 per

2   day under any applicable authority or the ICE-GEO Contract. That silence is striking, but not

3   surprising.

4          The governing federal detention standards, the 2011 PBNDS (which the United States

5   cites), make clear that contractors can pay detainees more than $1 per day. *See* ECF No. 290 at

6   2-3 (citing PBNDS 5.8, which requires contractors to pay "*at least* $1" per day to detainees

7   participating in the contractor's VWP, but nowhere citing provisions that limit payment to $1

8   per day) (emphasis added); *id.* at 3 (citing T. Johnson Decl. (ECF No. 91) ¶ 13, which

9   acknowledges that GEO must pay detainees "no less than" $1 per day per the PBNDS). The

10  federal government likewise carefully avoids asserting that the ICE-GEO Contract limits GEO

11  to paying only $1 per day, arguing only that ICE requires GEO to have a VWP and that the

12  federal government is required to reimburse GEO for only $1 per day of detainee work. *See* ECF

13  No. 290 at 2-3. This silence on the core question is telling, and consistent with ICE's own

14  position that GEO can pay detainee-workers more than $1 per day in operating the VWP. *See*

15  ECF No. 253-17. It is also consistent with GEO's admission that it "has the option" of paying

16  detainees more than $1 per day and has done so in the past. ECF No. 253-15 at (RFA 67

17  (admitting that GEO has the option to pay more than $1 per day to detainee workers for work

18  performed in the VWP); *id.* (RFAs 58-59) (more than $1 per day when detainees worked more

19  than one "detail" per day); *id.* (RFAs 56, 60) (payment of more than $1 per day, including

20  payments of $5 per day).

21         The record in this case renders the United States' "interference" accusation meritless. It

22  is not credible to suggest that GEO's compliance with the federal government's own standards

23  and representations allowing payment of more than $1 per day interferes with or burdens federal

24  immigration enforcement efforts. Washington's enforcement of a neutral law against a private

25  company does not interfere with federal immigration enforcement efforts.

26

**3.     Washington law does not discriminate against the federal government or its contractors**

While the Court need not consider it, the federal government's expansive interpretation of intergovernmental immunity also fails on the merits. Washington's MWA does not target or discriminate against the federal government or its contractors. GEO, like all other private contractors and employers, must pay the minimum wage. Washington's brief argued that point last year, *see* ECF No. 155, and the Court recognized that the MWA neither discriminates against GEO based on its status as a federal contractor nor "meddles with" the federal government's activities by singling out a federal contractor. ECF No. 162 at 6-9 (ruling that the Minimum Wage Act is imposed equally on other similarly situated Washington constituents and that there is no showing that the MWA is "imposed against Defendant on any basis related to its status as a Federal Government contractor").

Nothing in the United States' filing demonstrates error in the Court's conclusion, much less "manifest error." *See* Local Rules W.D. Wash. LCR 7(h)(1). To the contrary, the federal government relies on arguments the Court already addressed. Like GEO, the United States urges an expansive interpretation that seeks special treatment for GEO to allow it to avoid rules that apply to all similarly situated private companies. The Court should once again decline the invitation to re-write the law of intergovernmental immunity.

**a.     The nondiscrimination rule does not bar enforcement of neutral laws imposed on a basis unrelated to one's status as a federal contractor**

As a starting point, the Supreme Court has "decisively rejected the argument[,]" which the federal government implicitly presses here, "that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional." *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990) (internal citation omitted). Courts take "a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority." *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (quoting

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    *North Dakota*, 495 U.S. at 435). The Supreme Court has used restraint in applying

2    intergovernmental immunity, recognizing that whatever burdens are imposed on the federal

3    government by a neutral state law "are but normal incidents of the organization within the same

4    territory of two governments." *North Dakota*, 495 U.S. at 435 (citing *Helvering v. Gerhardt*, 304

5    U.S. 405, 422 (1938)).

6           Consistent with these underlying principles, "[a] state regulation is invalid *only* if it

7    regulates the United States directly or discriminates against the Federal Government or those

8    with whom it deals." *North Dakota*, 495 U.S. at 435 (citing *South Carolina v. Baker*, 485 U.S.

9    505, 523 (1988)) (emphasis added); *United States v. County of Fresno*, 429 U.S. 452, 464 (1977).

10   A "[s]tate does not discriminate against the Federal Government and those with whom it deals

11   unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S.

12   536, 544-45 (1983). To this end, the Supreme Court has clarified that a state law does not

13   implicate intergovernmental immunity where it "is imposed on some basis unrelated to the

14   object's status as a [federal] Government contractor" and is "imposed equally on other *similarly*

15   *situated constituents* of the State."[4] *North Dakota*, 495 U.S. at 438 (emphasis added); *see also*

16   *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007)

17   (citing *County of Fresno*, 429 U.S. at 462-64) ("Applying these principles, the [Supreme] Court

18   has required that regulations be imposed equally on all similarly situated constituents of a state

19   and not based on a constituent's status as a government contractor or supplier.").

20          Courts have thus stated succinctly: "The nondiscrimination rule prevents states from

21   meddling with federal government activities indirectly by singling out for regulation those who

22   deal with the government. The rule does not, however, oblige special treatment." *In re Nat'l Sec.*

23   *Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 903. Nor does it prohibit enforcement of

---

24          [4] This rule "finds its reason in the principle that the States may not directly obstruct the activities of the
     Federal Government." *City of Arcata*, 629 F.3d at 991 (quoting *North Dakota,* 495 U.S. at 437-38); *see also United*

25   *States v. California*, 921 F.3d 865, 881 (9th Cir. 2019) ("[T]he United States' position that no obstruction is required
     in intergovernmental immunity cases ignores the origins of the doctrine and the occasions in which it has been

26   applied.").

STATE OF WASHINGTON'S RESPONSE TO                      16              ATTORNEY GENERAL OF WASHINGTON
GEO'S MOTION FOR RECONSIDERATION                                                  Civil Rights Division
AND UNITED STATES' STATEMENT OF                                            800 Fifth Avenue, Suite 2000
INTEREST                                                                    Seattle, WA 98104-3188
                                                                               (206) 464-7744

neutral state laws against contractors "with whom" the federal government deals. *See North Dakota*, 495 U.S. at 436-39 (rejecting intergovernmental immunity challenge to state liquor control regulations that applied to out-of-state suppliers providing liquor to the federal government in North Dakota because regulations did not discriminate against the federal government or those with whom it deals); *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 904 (rejecting intergovernmental immunity claim where laws at issue "regulate equally all public utilities, making no distinction based on the government's involvement" and rejecting attempt to focus on the individual investigation as "treat[ing] the government differently" because "the regulatory regime as a whole treats any unauthorized disclosure the same").

As the Court recognized in its 2018 ruling, GEO is subject to a neutral state law requirement to pay its employees a minimum wage. ECF No. 162 at 6 ("At its core, and by design, the MWA protects employees and prospective employees generally, placing private firms that contract with the Federal Government on equal footing with all other private entities."). That conclusion is correct. GEO must comply with that requirement like all other private entities, regardless of their line of business, absent an applicable exception. Because Washington's MWA, either facially or as applied, does not single out GEO or federal contractors for worse treatment, it is unlike the scenarios in which claims of intergovernmental immunity have been upheld, where the challenged laws regulated the federal government directly, or clearly "meddled with" its activities by singling its contractors out for special, and unfair, treatment. *See*, *e.g.*, *M'Culloch v. Maryland*, 17 U.S. 316, 436 (1819) (state effort to tax Bank of the United States); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 814 (1989) (state tax on federal retirements benefits discriminates against federal government); *California*, 921 F.3d at 882 (state regulation was targeted "exclusively to federal conduct," because it applied only to "facilities in which noncitizens were being housed or detained for purposes of civil immigration proceedings"); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) (state regulation

17

that imposed heightened environmental cleanup standards at a single location subjected to cleanup by federal contractor); *City of Arcata*, 629 F.3d at 991-92 (municipal ordinances that prohibited federal government employees or agents from recruiting minors for military service discriminates against the federal government).

### b.   The United States invites a false comparison in order to argue an overly broad view of intergovernmental immunity

To avoid this straightforward conclusion, the United States invites the Court to engage in a false comparison of dissimilar entities: state government and its publicly run institutions, like prisons and treatment centers, with private companies that own and operate detention facilities for profit. That is a false comparison and one the Court properly rejected. Supreme Court precedent dictates that the relevant question is whether Washington law discriminates against GEO based on its status as a federal contractor and thereby meddles with or obstructs the federal government's activities. *See North Dakota*, 495 U.S. at 436-39. That necessarily requires consideration of how the MWA treats private companies, like GEO—and whether there is discrimination based on their status as a federal contractor.[5] There is not.

Here, GEO is treated like all other private companies subject to the MWA and is not entitled to the government-facility exemption at subsection (3)(k) of Washington Revised Code § 49.46.010 (subsection (3)(k)). *See* ECF No. 162 at 2 ("The NWDC is better characterized as a *private* facility that detains federal detainees under a contract with the Federal Government.") (emphasis added); *see also infra* § B(3)(c). Whether the NWDC detains individuals for the federal government or others, or is used for any other purpose, GEO must comply with the MWA like any other private employer and contractor absent an applicable exception. There is no discrimination because GEO is not treated worse than other private businesses because of its

---

[5] To the extent the United States suggests that the Court should compare state institutions with institutions the federal government owns and operates, it proves Washington's point. Those types of facilities are treated equally. All parties agree that the Minimum Wage Act does not apply to the federal government's facilities and none are the subject of any enforcement action.

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST                                    18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   status as a contractor for the federal government—it is being treated the same. As the Court

2   previously recognized, this case is unlike those in which federal employees or contractors were

3   singled out and subject to heightened regulatory requirements. ECF No. 162 at 6-7

4   (distinguishing *Boeing* and *Davis*, which the United States relies upon).

5        Ultimately, the United States' suggestion that GEO is being "discriminated against"

6   relies on an extreme and unsupported view of intergovernmental immunity. What the United

7   States proposes is an interpretation that conflates *discrimination* with the *lack of special*

8   *treatment* of its contractors. In other words, the United States seeks to exempt federal contractors

9   from neutral state laws even where similar private entities are not exempt. That is not what

10  intergovernmental immunity requires. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*,

11  633 F. Supp. 2d at 903 ("The rule does not, however, oblige special treatment."); *see also North*

12  *Dakota*, 495 U.S. at 436-39.

13        **c.**    **The government institution exemption does not extend to private,**

14                **corporate operators and does not discriminate against GEO or other**
               **private federal contractors**

15       The federal government, like GEO last year, also tries to escape the simple conclusion

16  that Washington in no way discriminates against it or GEO by focusing on subsection (3)(k)—

17  the MWA's exemption for individuals in state and local government institutions. Its argument

18  distills to the assertion that the exemption does not treat private contractors that contract with

19  the federal government in Washington equally with private contractors that contract with state

20  or local governments. That interpretation of subsection (3)(k) is wrong and the Court properly

21  rejected it.

22       The language of the exemption clearly applies only to governmentally owned and

23  operated institutions—not privately owned and operated institutions. In particular, it applies to

24  detainees held in state, county, or municipal correctional, detention, treatment or rehabilitative

25  institutions. Wash. Rev. Code § 49.46.010(3)(k). On its face, the exemption does not apply to

26  privately owned and operated institutions, and the United States cites no Washington authority

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  supporting such a construction. Indeed, the United States makes no serious attempt to explain

2  how its proposed construction of state law comports with the exemption's plain language listing

3  only government entities. Nor does it address how its view of the statute is consistent with

4  Washington courts' mandate that exemptions to the MWA must be construed "narrowly" and in

5  favor of the employee. *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 587 (Wash.

6  2000) (en banc) ("Exemptions from remedial legislation, such as the MWA . . . are narrowly

7  construed and applied only to situations which are plainly and unmistakably consistent with the

8  terms and spirit of the legislation."). The plain statutory language and requirement of narrowly

9  construed exemptions compel the conclusion that subsection (3)(k) applies only where the

10  institution at issue is one run by the state, a county, or a municipality—not an institution owned

11  and operated by a private, for-profit contractor merely doing business with a government entity.

12  The United States nonetheless asserts, erroneously, that "Washington state law expressly

13  allows private contractors to operate 'state, county or municipal correctional, detention,

14  treatment or rehabilitative institution[s]." ECF No. 290 at 11 n.7. That point mistakes

15  Washington law and is incorrect. The cited authorities at most support a point not in dispute—

16  that Washington law allows units of government to contract with other units of government or

17  private companies under specific statutorily authorized circumstances.[6] None of the authorities,

18  however, supports the broader conclusion that those private contractors' institutions are deemed

19  *state*, *county*, or *municipal* institutions for MWA purposes and would therefore be exempt from

20  the minimum wage laws if they permitted detainees to work in the state.[7]

21  _____

22  [6] Contrary to the United States' generalized assertions, the Department of Corrections only has authority to contract with other units of government or "private companies *in other states*" to hold convicted felons in "an

23  institution or jail operated by such entity" despite being sentenced to serve their term of incarceration in a "state correctional facility." *See* Wash. Rev. Code § 72.68.040 (emphasis added). The relevant statutory provision nowhere

24  authorizes the Department of Corrections to hold state inmates in private facilities *in* Washington. *Id.*; *see also* Wash. Rev. Code § 72.68.012 ("It is the legislature's intent to clarify the law to reflect that the secretary of corrections has authority to contract with private corporations to house felons *out-of-state*…") (emphasis added).

25  [7] *See* Wash. Rev. Code § 72.09.015(6) (defining "correctional facility" for purposes of the chapter establishing the Department of Corrections, but not "state," "county," or "municipal" "correctional … institutions"

26  as set forth under the MWA); Wash. Rev. Code § 70.48.210(4) (acknowledging that special detention facility can be operated by noncorrectional personnel under contract but nowhere referencing the MWA); Wash. Rev. Code §

STATE OF WASHINGTON'S RESPONSE TO          20          ATTORNEY GENERAL OF WASHINGTON
GEO'S MOTION FOR RECONSIDERATION                              Civil Rights Division
AND UNITED STATES' STATEMENT OF                            800 Fifth Avenue, Suite 2000
INTEREST                                                    Seattle, WA  98104-3188
                                                                (206) 464-7744

1    To the contrary, these and related statutory provisions show that the Washington

2    legislature is quite capable of saying "by contract" when it refers to facilities operated by

3    contract, and referring to "private organizations" when referring to facilities operated under

4    contract with private companies. The legislature has not deemed those institutions "state,"

5    "county," or "municipal" institutions, but has instead distinguished between government-run

6    institutions and those operated under contract. *See* Wash. Rev. Code. §§ 72.68.040 (authorizing

7    Corrections Secretary to contract with the federal government, other state governments, "private

8    companies in other states," or cities and counties for the detention of convicted felons in "an

9    institution or jail operated by such entity" where the individual has been sentenced to a term in

10   a "state correctional institution," making clear that institutions run by "private companies in

11   other states" are not "state correctional institutions") (emphasis added); 72.09.015(6) (referring

12   to facility operated "by contract"); 72.65.020(1)(c) (authorizing confinement of prisoners

13   participating in work release program, when not at work, in *either* a "state correctional

14   institution," "county or city jail," or "any *other* appropriate, supervised facility, after an

15   agreement has been entered into … for the housing of work release prisoners") (emphasis added).

16   It made no such reference or distinction in subsection (3)(k). Instead, that section is limited

17   explicitly to state, county, and municipal institutions, which are different from institutions owned

18   and operated by private companies—just as NWDC is not a "federal" facility merely because it

19   contracts with ICE to detain individuals. A private contractor operating a facility in Washington

20   would be subject to the requirements of the MWA.

21   To be sure, the exemption does not specify that "federal" facilities would also be exempt

22   if operated by the federal government itself. NWDC is not a "federal" facility, however, and all

23   parties agree that the MWA does not apply to the federal government directly. More importantly,

24   that exemption does not explicitly mention "federal" institutions makes sense in light of the

25
26   71.05.020(21) (defining "evaluation and treatment facility" but nowhere referencing the MWA); Wash. Rev. Code
     § 71.05.320(1)(a) (noting that as an alternative to detention, individuals may be remanded to custody of certified
     facility instead of Department of Social and Health Services, but nowhere referring to the MWA).

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST                                    21            ATTORNEY GENERAL OF WASHINGTON
                                                                    Civil Rights Division
                                                                 800 Fifth Avenue, Suite 2000
                                                                  Seattle, WA  98104-3188
                                                                       (206) 464-7744

1    Supremacy Clause and longstanding prohibition on states directly regulating the federal

2    government. *See M'Culloch*, 17 U.S. at 436. Moreover, the United States' brief identifies no

3    instance where Washington has enforced its minimum wage law inside a federal detention

4    facility within the state. On the contrary, Washington has acknowledged that such an

5    enforcement action could not be maintained. This reality—the way Washington's MWA has

6    been applied to government operated facilities since the exemption was included in 1974—

7    shows that the MWA in no way "discriminate[s] against the federal government." *California*,

8    921 F.3d at 880. Instead, the distinction is a public/private one: all operators of private companies

9    and institutions in the state, including GEO, must comply with the MWA absent an applicable

10    exception.

11        The United States' heavy reliance on *Davis v. Michigan Department of Treasury*, a case

12    cited in the parties' prior briefing and addressed by the Court in its 2018 ruling, does not save its

13    argument. *See* ECF No. 162 at 6-7 (holding that this case is not one in which the MWA meddles

14    with federal government activities and distinguishing *Davis*). There, a state exempted some of

15    its constituents—individuals who received state retirement benefits—from state income

16    taxation, but did not exempt similarly situated individuals who received federal retirement

17    benefits. *See Davis*, 489 U.S. at 805-06. It was "undisputed that Michigan's tax system

18    discriminates in favor of retired state employees and against retired federal employees." *Id.* at

19    814. Significantly, though, the comparison at issue was one where the treatment of state

20    constituents differed depending on whether they collected benefits from the federal or state

21    government—*i.e.*, whether they dealt with the federal or state government. The underlying

22    "similarly situated" entity was another private constituent.

23        Unlike *Davis*, no discrimination exists here because subsection (3)(k) does not present a

24    facial "state versus federal" distinction between state constituents. The MWA instead utilizes a

25    distinction between government and private actors, with all private companies treated the same

26    regardless of whom they deal with. Thus, *Davis* actually supports the Court's and Washington's

1  analysis, with the comparison being whether GEO (a private company) is treated differently from

2  other similarly situated constituents depending on whether it contracts with the federal

3  government. It is not. *Davis* thus provides no support to the federal government's expansive

4  reading of intergovernmental immunity here.

5        Finally, the United States has not established any discriminatory treatment to support an

6  *as applied* challenge to the constitutionality subsection (3)(k) based upon this enforcement

7  action. All enforcement actions involve particular violations of the law, and the fact that the

8  "present investigation" happens to be of a federal contractor does not convert the MWA into a

9  statute that "treat[s] the government differently." *In re Nat'l Sec. Agency Telecomms. Records

10 Litig.*, 633 F. Supp. 2d at 904 (quoting *North Dakota*, 495 U.S. at 435)). Further, even if there

11 did exist a comparable state-contracted (privately owned and operated) institution that failed to

12 pay the minimum wage in the state of Washington (which neither GEO nor the United States

13 identified), it would not defeat Washington's claim. It would instead identify another entity that

14 may merit an enforcement inquiry under Washington law.

15           d.    **The United States' remaining arguments do not support**

16                 **intergovernmental immunity**

17       Finally, the United States attempts to rely on the Department of Labor & Industries'

18 administrative policy regarding the MWA. ECF No. 290 (citing Department of Labor Industries

19 Employment Standards Administrative Policy: MWA Applicability (2014) ("Administrative

20 Policy") 5, ECF 160-1)). This is the same argument GEO raised last year, and indeed, the United

21 States cites the docket entry from GEO's prior summary judgment briefing. *See* ECF Nos. 149,

22 161-1. The Court properly rejected that argument, *see* ECF Nos. 162, 165, and the United States

23 does not suggest that the Court committed manifest error in doing so. The Court should decline

24 to reconsider the same argument for a third time.

25        Even if considered, the Labor & Industries administrative policy merely reiterates that

26 the statutory exemption in subsection (3)(k) exists for individuals in government-run facilities.

STATE OF WASHINGTON'S RESPONSE TO          23          ATTORNEY GENERAL OF WASHINGTON
GEO'S MOTION FOR RECONSIDERATION                            Civil Rights Division
AND UNITED STATES' STATEMENT OF                          800 Fifth Avenue, Suite 2000
INTEREST                                                 Seattle, WA  98104-3188
                                                             (206) 464-7744

As the United States notes, the policy is explicit that "[r]esidents, inmates, or patients of *state, county or municipal* [*i.e.*, not private] correctional, detention, treatment or rehabilitative institution[s] [are] not . . . required to be paid minimum wage if they perform work *directly for, and at,* the institution's premises where they are incarcerated, and remain under the direct supervision and control of the institution." *See* ECF No. 160-1 at 5 (emphasis added). That guidance confirms Washington's view of the proper interpretation of the exemption. The federal government makes much of the sentence referring to state inmates in state facilities who might be assigned to work with a private corporation (while nonetheless "on prison premises" and thus under the direct supervision of state officers) through certain Correctional Industries programs. But that again implicates nothing more than the plain language of subsection (3)(k), making clear that inmates in a state correctional facility are exempt from the MWA.

Ultimately, nothing in the administrative policy addresses the circumstance where a private contractor owns and operates a detention facility, like the NWDC, much less states that such a facility would be deemed a "state" institution for purposes of the MWA exemption. If anything, the policies show that Washington is uniform in its application of the plain terms of the statute: the MWA exemption applies only to individuals held in government-run facilities.

## III.   CONCLUSION

For the foregoing reasons, Washington respectfully urges the Court to (1) deny GEO's motion for reconsideration and (2) decline to reconsider its prior rulings rejecting GEO's claims of intergovernmental immunity. Neither GEO nor the United States have demonstrated any error, much less manifest error, in the Court's prior rulings.

Dated this 6th day of September 2019.

//

//

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

24

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

ROBERT FERGUSON
Attorney General of Washington

s/ *Lane Polozola*
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO A. MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

25

1

**CERTIFICATE OF SERVICE**

2         I hereby certify that the foregoing document was electronically filed with the United

3    States District Court using the CM/ECF system. I certify that all participants in the case are

4    registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5    system.

6    Dated this 6th day of September 2019 in Seattle, Washington.

7                                     _s/ Caitilin Hall_____
                                     Caitilin Hall
8                                     Legal Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
AND UNITED STATES' STATEMENT OF
INTEREST

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744