The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON, | Case No. 3:17-cv-05806-RJB |
| Plaintiff, | **DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER** |
| v. | |
| THE GEO GROUP, INC., | **HEARING DATE:** |
| Defendant. | Date: September 12, 2019 at 9:30 a.m. |
| | **ORAL ARGUMENT REQUESTED** |

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 1

50105250;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

The GEO Group, Inc. ("GEO") files this reply to the Response filed by the State of Washington (the "State") ("Pl. Resp."), Dkt. 297, to GEO's Motion for Reconsideration ("Def. Mot."), Dkt. 289.

## INTRODUCTION

GEO submits this reply for four purposes. First, GEO reiterates the Court's "manifest error" in basing its derivative sovereign immunity ("DSI") ruling on *Cabalce v. Thomas E. Blanchard & Assoc., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). The State's Response only solidifies this point. Second, the State's preemption response not only confirms GEO's motion, but exposes and crystallizes the State's pervasive efforts to directly regulate GEO and ICE in violation of intergovernmental immunity principles, the subject of GEO's third argument. Finally, in support of the United States' Statement of Interest ("SOI"), GEO provides the Court testimony and evidence from the recent 30(b)(6) depositions of the Washington Governors' Office and Department of Labor & Industries ("L&I"). This key evidence exposes the longstanding legal analysis and view of the State that it did not have jurisdiction over GEO and the NWDC and the attempted exercise of such would implicate intergovernmental immunity.

**I. GEO Is Entitled to Derivative Sovereign Immunity Under *Yearsley/Campbell-Ewald***

The State's Response merely confirms the Court's Order on DSI was "manifest error" because its reliance on *Cabalce* is a "complete disregard of the controlling law." The State simply cannot repair the fundamental flaws in *Cabalce's* unsupported DSI standard.

**A. The MWA is not "applicable" and Federal Immigration Laws and ICE Contracts are the "Most Stringent" Standards**

The State begins by acknowledging *Yearsley* and *Campbell-Ewald*'s *controlling* Supreme Court DSI standard – that federal contractors are derivatively immune from liability unless they "exceed[] [their] authority" or the authority "was not validly conferred." *Yearsley v. W.A. Constr. Co.*, 309 U.S. 18, 20-21 (1940); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). The State then attempts to argue GEO remains barred regardless of the

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 2

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

50105250;1

applicable standard. There is a reason the State did not make this argument in its original Response to GEO's motion for summary judgment.

The State argues the ICE Contracts require GEO to comply with "*applicable* federal, state, and local laws and standards" (emphasis added) and where federal and state or local laws conflict, they must apply the "most stringent" standard. Therefore, GEO's failure to treat the VWP detainees as "employees" under the MWA - "applicable" state law, according to the State – is evidence GEO "exceed[ed] [its] authority" and not entitled to DSI.

This argument fails. First, as stated in the SOI, if the term "applicable" is to mean anything, it must at a minimum exclude laws that are invalid as applied to the circumstances of the contract. Indeed, even without that term, references to state or federal law in contracts are presumed to refer only to valid laws. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 469 (2015). The MWA is invalid as applied to GEO for several reasons. One, Federal law precludes GEO from treating the detainees as employees, which – as a matter of preemption – bars the detainees from being "employee[s]" legally entitled to a minimum wage under the MWA or a fair market wage under unjust enrichment principles. Two, both intergovernmental immunity prongs require this result. *See* SOI at 6-16; *infra* at 8-11.

Second, the State argues the ICE Contracts require, in the case of conflict, application of the most stringent standard." One, there is no conflict. The MWA is not and cannot be an "applicable" state or local law. Two, through this lawsuit, the State seeks a court order declaring the VWP participants "employees" pursuant to the MWA and entitled to minimum wage. To be clear, the Complaint's "PRAYER FOR RELIEF" "prays" that the Court "*[d]eclare that detainees who work at NWDC are 'employees' as defined by RCW 40.46.010(3)*" (emphasis added). Yet the IRCA's prohibition against employing non-work authorized individuals and the ICE Contracts specifically preclude GEO from treating the detainees as employees. Contrary to its prior assertions, the State is not requesting the Court order GEO pay more than $1/day because the ICE Contracts state GEO shall pay the detainees "at least $1/day." Make no mistake the State seeks a court order declaring they are

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 3

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

50105250;1

1  "employees" under the MWA because that is the only way GEO would be legally bound to
2  pay minimum wage. For the avoidance of doubt, Paragraph 4.6 of the Complaint alleges -
3  "***Detainees are 'employees' protected by Washington's minimum wage laws***" (emphasis
4  added). The IRCA and ICE Contracts explicitly forbid treating the detainees as employees.
5  The State has it backwards - and hence the reason the State did not make this argument in its
6  original Response. As such, the "most stringent" standards here come from the IRCA and the
7  ICE Contracts.

8        **B.**    ***Cabalce*** **is inconsistent with** ***Yearlsey/Campbell-Ewald*** **and no other cases support** ***Cabalce*****'s "discretion in the design process" DSI standard**
9

10  The State's attempt to resuscitate *Cabalce* falls short. The State notes "ICE provides
11  GEO broad discretion to operate and manage the VWP." This is inapposite vis-à-vis detainee
12  pay. The ICE Contracts direct GEO to pay "at least $1/day." As long as GEO pays at least
13  $1/day, it does not exceed its authority. The State remarks "ICE nowhere authorizes or
14  directs that GEO pay detainee-workers only $1 per day for their labor." It is a question of
15  "exceeding the authority." Exceeding would be payment of less than $1/day. The ICE
16  Contracts explicitly authorize the payment of $1 per day. The inquiry ends there.

17  The State's legal arguments are each unpersuasive, and in the case of *In re KBR, Inc.,*
18  *Burn Pit Litigation* (hereafter, "*Burn Pit*"), incorrect. The State fails to justify *Cabalce's*
19  erroneous "discretion in the design process" standard. Again, *Cabalce* relies on cases
20  analyzing the "discretionary function exemption" under the FTCA. Before *Cabalce*, the
21  Ninth Circuit in *Campbell-Ewald* cautioned against relying on *Boyle* in the DSI context. *See*
22  *Campbell-Ewald*, 768 F.3d at 881. *Campbell-Ewald* said *Boyle*'s broader applicability is
23  "rooted in pre-emption principles and not in any widely available immunity or defense." *Id*.
24  *Campbell-Ewald* even noted *Boyle* "itself includes footnotes emphasizing the displacement
25  question and indicating that it should not be construed as broad immunity precedent." *Id*. No
26  two ways about it - *Cabalce's* "discretion in the design process" standard has no place in DSI
27  jurisprudence under *Yearsley* and *Campbell-Ewald*. It makes sense the Supreme Court did

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

50105250;1

not mention *Cabalce* since it is completely inapposite in light of *Campbell-Ewald*'s affirmation of *Yearsley*'s clear DSI standard.

Lastly, the State's portrayal of the DSI analysis in *Burn Pit* is wrong. The State claims the Fourth Circuit considers a "private contractor's 'discretion' important when conducting a *Yearsley* analysis." Pl. Resp. at 4. This has no citation to *Burn Pit*. The State then represents *Burn Pit*'s *Yearsley*'s DSI holding as follows: "[D]erivative sovereign immunity [does] not apply 'if [the private contractor] enjoyed some discretion in how to perform its contractually authorized responsibilities'" *Id*. This is <u>not</u> *Burn Pit*'s analysis of DSI under *Yearsley*.

The State's language actually comes from *Burn Pit*'s discussion of whether the contractor's activities constituted "discretionary functions" under the FTCA. The actual unabridged quote from *Burn Pit* provides, "By contrast, if [the private contractor] enjoyed some discretion in how to perform its contractually authorized responsibilities, ***the discretionary function exception*** would apply, and [the private contractor] could be liable." *Burn Pit*, 744 F.3d at 346. Compare the quotes – the State <u>added</u> DSI at the beginning and cut off the quote right before the court stated the FTCA's discretionary function exception.

While *Cabalce* perhaps failed to track the "discretion in the design process" language back to *Hanford*'s dicta regarding the FTCA/discretionary function exemption and *Boyle*'s similar dissent, the State's position appears misguided. And, for the avoidance of doubt, *Burn Pit*'s actual DSI holding – found a page before – affirms *Yearsley*'s clear standard – "[a]ccordingly, as *Yearsley* and *Myers* show, [the private contractor] is entitled to derivative sovereign immunity only if it adhered to the terms of its contract with the government." *Id*. at 345.

C. ***Boyle*, *Hanford*, and the government contractor defense have no place in the *Yearsley*/*Campbell-Ewald* DSI analysis**

The State's attempt to blur the line between DSI and the government contractor defense ("<u>GCD</u>") shows its confusion about both. Sovereign immunity shields the federal government from suit without its express permission. The FTCA waives sovereign immunity

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 5

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

for specific types of lawsuits. The FTCA includes certain exceptions to its waiver provisions – one being the "discretionary function exemption," which restores immunity for federal entities and employees exercising or performing or failing to exercise or perform discretionary functions.

The GCD - developed in *Boyle*, discussed in *Hanford* - extends the FTCA's "discretionary function exemption" to federal contractors exercising similar discretion performing their federal government contracts. Determining the contractor's "discretion" is a critical element of the GCD. Outside of the FTCA context, "discretion" is inapposite to *Yearsley*'s DSI test. Under *Cabalce*, the mere presence of "discretion in the design process," regardless if the contractor "exceeded authority," eliminates DSI. This runs afoul of *Yearsley* and *Campbell-Ewald* and is precisely why the two concepts to <u>not</u> overlap, *Cabalce*'s citation to *Hanford* does <u>not</u> make sense, and the defenses <u>are</u> "manifestly different."

### D.   All cases follow *Yearsley*/*Campbell-Ewald*; no cases follow *Cabalce*

The State's attempt to distinguish the out-of-circuit cases cited in the Motion misses the mark. Noticeably missing from the analysis is the DSI standard adopted in each of the cases. Again, with the exception of *Cabalce* (and its progeny), <u>all</u> courts addressing DSI since *Yearsley* follow *Yearsley*. This is true of the Fourth Circuit in *Butters v. Vance International, Inc.*, the Fifth Circuit in *Ackerson v. Bean Dredging, LLC*, and the single post-*Cabalce* out-of-circuit case in Plaintiff's Response – *In re U.S. Office of Personnel Mgmt. Data Security Breach Lit.*, 928 F.3d 42 (D.C. Cir. 2019) (hereafter, "*Data Security*").

The State's continued reliance on *Data Security* is puzzling - considering it not only supports the *Yearsley*/*Campbell-Ewald* DSI standard (with no reference to *Cabalce*'s "discretion in the design process"), but also supports a finding of DSI in this case. In *Data Security*, the D.C. Circuit, citing *Campbell-Ewald*, held, "[t]o claim immunity, [the contractor] had to establish 'compliance with all federal directions' pertaining to its relevant conduct...'" *Data Security*, 928 F.3d at 70. The State cites a passage that suggests GEO cannot point to any provision or direction in the ICE Contracts that authorizes or directs not

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 6

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

treating VWP participants as "employees" under the MWA or paying $1 per day for VWP work, as opposed the MWA's minimum wage. However, the ICE Contracts and IRCA explicitly authorize and direct both actions. The ICE Contracts and IRCA specifically prohibit GEO from treating the detainees as employees. The ICE Contracts also authorize and direct GEO to pay "at least $1 per day" for VWP work. Again, when compared to a state's general minimum wage laws, these are clearly the "most stringent" standards.

There is nothing "half-hearted" about these contractual provisions or federal directions. Rather, GEO treating detainees as "employees" under the MWA is a breach of both ICE Contracts and federal law. The ICE Contracts direct GEO to pay at least $1 per day. Actually paying $1 per day is <u>cannot</u> outside the scope of the authority granted.

Finally, the State's arguments related to the Ninth Circuit cases suffer a similar fate. The State's assertion that neither *Myers v. United States* nor *Agredano v. U.S. Customs Service* suggest *Cabalce* "represents a departure from Ninth Circuit precedent" is flat wrong. The State's selected quotes mirror *Yearsley* and *Campbell-Ewald's* strictures – DSI is proper where the contractor does not "exceed the authority" granted in its contract with the federal government (*e.g.*, "conform with the terms of said contract," "no evidence the contractor breached the terms of its contract"). Again, so long as the contractor remains within these bounds, the concept of "discretion in the design process" is completely irrelevant. *Cabalce* strays from this controlling Supreme Court precedent and adds an inappropriate "no discretion" requirement into the equation. This is a <u>complete</u> departure from not only controlling Supreme Court precedent, but pre-*Cabalce* Ninth Circuit precedent, as well.

Finally, the State's treatment of the Ninth Circuit's *Campbell-Ewald* decision fares no better. While it is accurate the Ninth Circuit sought to limit *Yearsley*'s holding to its unique facts, it is undisputed - and the State admits - the Supreme Court disagreed and propelled *Campbell-Ewald* to the forefront of DSI jurisprudence. Not surprisingly, the State ignores the Ninth Circuit's warnings from *Campbell-Ewald* that *Boyle* and its progeny for "should not be construed as broad immunity precedent." *See Campbell-Ewald,* 768 F.3d at 881; *supra at 4.*

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 7

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

50105250;1

Finally, the United States more than "suggests" the MWA is "invalid" – its discussion of "applicable" laws speaks directly to the State's new theory regarding GEO's DSI disqualification under the proper *Yearsley*/*Campbell-Ewald* standard. As noted by the United States, "applicable" can only relate to valid laws – which cannot be the MWA or state unjust enrichment laws in light of the ICE Contracts, IRCA, and both intergovernmental immunity prongs. *See* SOI at 15-16; *infra* at 2-3

## II. Preemption Not Only Bars the State's Claims, the Conflict Exposes the State's Direct Regulation of a Federal Activity

The State avers in its Response "***[n]either this lawsuit nor Washington's MWA seeks to require GEO to employ detainees at all.***" Pl. Resp., 7:12-13 (emphasis added). This lawsuit seeks a **court order** declaring the VWP participants "employees" under RCW 40.46.010(3) and legally entitled to minimum wage. *See supra* at 3. Seeking an order declaring the VWP participants "employees" is indistinguishable from requiring GEO "to employ" these detainees. The ICE Contracts and IRCA prohibit precisely what this lawsuit seeks.

The State then claims GEO can "undoubtedly comply with IRCA, administer a [VWP], and abide by [the MWA] by hiring work-authorized detainees or Tacoma-area residents and paying them the minimum wage." This suggestion seeks to directly regulate the ICE Contracts' specific VWP requirements - that the program be available to all detainees to decrease idleness, improve morale, and reduce disciplinary incidents. ECF 253-14 (PBNDS, 5.8 Voluntary Work Program, Part II); Dkt. 245, 5:17-6:8. Through this formulation, the State seeks to fundamentally alter the contractually mandated nature and purpose of the VWP - a prohibited "direct regulation" of a "federal activity" under intergovernmental immunity principles. *See Hancock v. Train*, 426 U.S. 167, 179 (1976); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988). It also appears the State - through its suggestion of a *lawful* VWP comprising of only those detainees who are actually work authorized - tacitly admits preemption is appropriate to the extent any of the VWP participants are not work authorized.

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 8

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

It cannot be disputed a significant majority of the VWP participants are not work authorized - their lack of citizenship or permanent resident status is the reason they are detained within the NWDC in the first place. Dkt, 245, 13:18-14:2. At a minimum, the State itself admits preemption is appropriate for the non-work authorized VWP participants.

**III. The State's Application of the MWA and State Unjust Enrichment Laws is a Prohibited "Direct Regulation" Pursuant to Intergovernmental Immunity**

GEO agrees with and supports the SOI's intergovernmental immunity challenge.[1] The State's proposed application of the MWA and state unjust enrichment laws to the VWP participants (and suggestion GEO limit the VWP to "work authorized" detainees and hire Tacoma-area residents) is a form of prohibited "direct regulation" of a federal activity.

Intergovernmental immunity is grounded in the Supremacy Clause, which mandates that the activities of the "Federal Government are free from regulation by any state." *Boeing v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014). "Accordingly, state laws are invalid if they 'regulate the United States directly . . .'" *Id*. (quoting *North Dakota v. U.S.*, 319 U.S. 423, 435 (1990)). In *Hancock v. Train*, the Supreme Court found federal functions shielded from direct state regulation, even where the federal function is carried out by a private contractor. *See* 426 U.S. at 181. Then in *U.S. v. California*, the Ninth Circuit declared the INA's use of "both federal facilities *and* nonfederal facilities with which the federal government contracts" (emphasis in original) for the detention of civil immigration detainees to be an "exclusively" "federal activity." *California*, 921 F.3d at 882, n. 7. Importantly, the court also held, "[f]or intergovernmental immunity, federal contractors are treated the same as the federal government itself." *Id*.; *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988); *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 438-41 (9th Cir. 1991); *Boeing*, 768 F.3d at 839. As

---

[1] The State asserts the United States' SOI is not relevant to this motion for reconsideration, but it fundamentally misunderstands the nature of DSI. As its name suggests, DSI clothes a contractor with the immunity that applies to the Federal Government (i.e., it is *derivative*), and the United States' SOI explains why the United States – and, therefore, it's contractor via DSI – is entitled to intergovernmental immunity from the State's MWA claim. The SOI is intertwined with GEO's assertion of derivative sovereign immunity because it explains one of the *sources* of that immunity: intergovernmental immunity.

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 9

50105250;1

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 9

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

50105250;1

such, the State's prior acknowledgement that the MWA – "notwithstanding the statutory language" – cannot be applied to a federally operated facility because of intergovernmental immunity, admits the MWA also cannot be applied to GEO.  Dkt. 155, n. 2 at 4:25.

*California* made clear intergovernmental immunity is implicated where a state law "directly or indirectly" affects the operation of a federal program or contract. *See* 921 F.2d at 880. And "affects" is broadly construed. In *M'Culloch v. Maryland*, the Supreme Court established that "the states have no power, by taxation or otherwise, to *retard, impede, burden, or in any manner control*, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *Id*. (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)). (emphasis in original)  The Supreme Court in *Goodyear* more recently held that state efforts "to dictate the manner in which [a] federal function is carried out" constitutes "direct regulation" and cannot withstand intergovernmental immunity scrutiny. 486 U.S. at 181, n. 3.

The Ninth Circuit's decision in *Boeing v. Movassaghi* is germane to the State's attempt to directly regulate the VWP. The *Boeing* court determined California SB 990 - which sought to regulate Boeing's environmental cleanup activities governed by Boeing's contract with the Department of Energy ("DOE") - constituted an invalid direct regulation of a federal contractor's activities under its federal contract. *See* 768 F.3d at 839-40.

*Boeing*'s factors for determining improper direct regulation are instructive. The court found SB 990 affected nearly all of Boeing's and the DOE's decisions with regard to the cleanup, the required environmental sampling, the cleanup procedures used, and the time and money spent. SB 990 "mandated the ways in which Boeing render[ed] services that the [DOE] hired [it] to perform." *Id*. It effectively "over[ode] federal decisions" regarding decontamination measures and ultimately "regulat[ed] not only [Boeing] but the effective terms of the federal contract itself." *Id*.

The State's claims that detainees in federal custody are legally entitled to a minimum or fair-market wage is a similar direct intrusion into GEO's management of a federal function

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 10

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

pursuant to the ICE Contracts. Not only does it seek to override ICE's decision and the IRCA's requirement to forbid GEO from treating the detainees as employees, it threatens to make authorized contractual obligations declared a violation of state law. It is indisputable that paying the VWP participants $1 per day is authorized under the ICE Contract. It is axiomatic that payment of $1 per day pursuant to a provision that requires the payment of at least $1 per day is compliant. The State seeks to directly regulate this through its lawsuit by obtaining a court order declaring the VWP participants "employees" entitled to a minimum or fair-market wage. Like *Boeing*, this threatens to fundamentally alter the time and money spent related to the VWP. This would alter the pricing of the ICE Contracts and significantly increase the cost of the VWP to ICE itself.

And it does not stop there. According to the State, GEO can comply with all of these competing state and federal requirements by simply hiring only "work authorized detainees or Tacoma-area residents and paying them the minimum wage." Pl. Resp. at 7-8. ICE's purpose in requiring the VWP is to decrease detainee idleness, improve detainee morale, and reduce disciplinary incidents. ECF 253-14 (PBNDS, 5.8 Voluntary Work Program, Part II); Dkt. 245, 5:17-6:8. The State's proposed solution obliterates the very purpose of the VWP. Again, like *Boeing*, the State's actions here threaten to "regulat[e] not only [Boeing] but the effective terms of the federal contract itself." *Boeing,* 768 F.3d at 839-40.

### IV. Governor's Office and L&I Recent Depositions and Washington Department of Corrections Contract Confirm Both Intergovernmental Immunity Prongs

Rule 30(b)(6) depositions occurring concurrently with the ongoing briefing reveal that in 2014, the Governor's Office, L&I, and the Attorney General's Office – the office prosecuting this case – concluded the MWA does not apply to the VWP. L&I wrote the Governor's Office and stated its opinion on the exact matter now before the Court:

> *Do INS detainees fall under L&I's jurisdiction for wage and hour issues?*
> For wage and hour purposes, L&I does not have any jurisdiction over the federal government or its instrumentalities. This would include the detainees and work performed by GEO Group and its employees under contract with the federal government.

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 11

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Ex. 271[2] (italics in original); L&I Dep. 61:14-25, 139:12-140:1, 143:14-18. This conclusion was reached after two months of robust research, consultation, and evaluation. <u>First</u>, the Governor's Office asked L&I if the MWA applied to NWDC detainees. L&I Dep. 37:16-20. <u>Then</u>, L&I – taking this "very seriously" – formed its opinion after (1) evaluating legal authorities and (2) consulting with two different Attorneys General and staff/program experts. Exs. 271, 276, 286, 290, L&I Dep. 33:7-17, 35:6-7, 35:7-23, 47:12-15, 63:11-12, 37:3-8, 93:12-16, 94:2-95:3, 114:13-23, 115:21-121:25, 212:25-213:6, 227:25-228:21. <u>Meanwhile</u>, the Governor's Office conducted independent research and agreed with L&I's conclusion. Exs. 265-267, Gov. Dep. 57:13-18, 62:2-6, 108:4-9, 112:20-113:24, 115:23-24, 116:14-15, 117:7-119:11, 127:9-19, 128:12-18, 133:18-134:18, 135:11-20, 144:10-145:8. All of this is documented in communications within and among the Governor's Office, L&I, and the Attorney General's Office. Exs. 264-276, 286, 290-294, 297.[3] In 2015, Washington's Dept. of Corrections ("<u>DOC</u>") contracted with GEO for the detention of State inmates. Dkt. 107-7 (DOC Contract No. K10825). The contract required an inmate work program – paid at the rate of $2.00/day. Here, DOC did not apply the MWA to a *private* detention contractor. And the contract was "[a]pproved as to form" by the "WA Assistant Attorney General." Subminimum wage rates for detainees are consistent with state policy. Exs. C, D. The State is estopped from denying the discriminatory treatment of GEO in this action.

Three years later, in 2017, the facts and/or circumstances had not changed in any way. Gov. Dep. 119:12-120:8, L&I Dep. 86:10-16, 89:16-89:1. Yet, the Attorney General's office unexpectedly provided L&I with new, unsolicited opinion on NWDC. Ex. 263, L&I Dep. 111:8-9, 105:9-15, 106:21-107:22, 111:19-23. This new position was taken by a different set of attorneys in the "relatively new" Civil Rights Division and was first

---

[2] Deposition transcripts and exhibits cited herein are attached to the declaration of Joan K. Mell filed herewith.
[3] There is no question both entities knew the pertinent facts. In 2014, both the Governor's Office and L&I knew the payment rate for the VWP was $1/day (Ex. 266, Gov. Dep. 110:12-24, L&I Dep. 188:16-189:19) and that GEO was a private corporation/contractor (Ex. 297, Gov. Dep. 111:12-14, L&I Dep. 214:15-20). The Governor's Office's "staff took extra steps to fully grasp" the NWDC VWP (Gov. Dep. 143:3-144:9) and L&I had "enough information" to answer to the Governor's Office's question" (L&I Dep. 72:3-13).

DEFENDANT THE GEO GROUP, INC.'S REPLY
SUPPORTING MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 12

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

articulated in a memorandum produced in discovery. Ex. 263, Gov. Dep. 67:24-68:1, 68:22-69:8. Because it was – tellingly – completely redacted prior to production, its details are currently unknown. Ex. 263. But two days after it was sent to L&I, the Attorney General filed this case alleging the MWA applies to NWDC detainees. ECF 1-1.

The 2017 process was wholly different from 2014's robust analysis. In 2017, the Governor's Office conducted no research and there was no outreach to agencies or staff. Gov. Dep. 152:23-153:8. The Governor's Office claims this change in position is not political. Dep. Gov. 58:10-14. There can be no other explanation.

### A. L&I confirms Administrative Policy No. ES.A.1 does not apply to GEO

In its Response, the State argues the exception under ES.A.1 applies to only governmentally owned and operated institutions and not to privately owned and operated institutions. Ex. 287, Resp., 19:13-23:14, Dkt. 297. L&I's testimony reveals the State's flawed position. L&I confirmed inmates assigned to work on prison premises for a private corporation are not employees of the private corporation and would not be subject to the MWA. L&I Dep. 171:11-172:17, 174:25-175:11 (discussing ES.A.1), 184:9-11 (noting provision (k) covering private corporations has been part of the policy since at least July 15, 2014), 184:15-22 (noting L&I has never taken a position inconsistent with the language covering private corporations), 184:25-185:1.

### CONCLUSION

GEO respectfully requests this Court reconsider its prior order and grant GEO's most recent motion for summary judgment (Dkt. 245) on DSI and preemption grounds and its prior motion for summary judgment (Dkt. 149) on intergovernmental immunity grounds.

///
///
///
///
///

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 13

50105250;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Respectfully submitted, this 10th day of September, 2019.

By: *s/ Colin L. Barnacle*
**AKERMAN LLP**
Colin L. Barnacle (Admitted *pro hac vice*)
Christopher J. Eby (Admitted *pro hac vice*)
Ashley E. Calhoun (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  (303) 260-7712
Facsimile:   (303) 260-7714
Email:  colin.barnacle@akerman.com
Email:  christopher.eby@akerman.com
Email:  ashley.calhoun@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone: (253) 566-2510
Facsimile:   (281) 664-4643
Email:  joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

DEFENDANT THE GEO GROUP, INC.'S REPLY SUPPORTING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (3:17-CV-05806-RJB) – PAGE 14

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

50105250;1

# CERTIFICATE OF SERVICE

I, Joseph Fonseca, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On September 10, 2019, I electronically filed the above GEO's Reply Brief In Support of Its Motion For Reconsideration, with the Clerk of the Court using the CM/ECF system to the following:

Office of the Attorney General
Marsha Chien, WSBA No. 47020
Andrea Brenneke, WSBA No. 22027
Lane Polozola
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
MarshaC@atg.wa.gov
andreab@atg.wa.gov
Lane.Polozola@atg.wa.gov

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 10th day of September, 2019 at Fircrest, Washington.

_____
Joseph Fonseca, Paralegal

1 of 1

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph