THE HONORABLE ROBERT J. BRYAN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON, | Case No.: 3:17-cv-05806-RJB |
| Plaintiff, | |
| | DECLARATION OF JOAN K. MELL |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | |

I, Joan K. Mell, make the following statement under oath subject to the penalty of perjury pursuant to the laws of the United States and the State of Washington:

1.    I am an attorney for The GEO Group Inc. in the above-entitled matter. I am over the age of eighteen (18) and competent to testify in this matter.

2.    At oral argument on Thursday September 12, 2019, the Court asked questions of GEO specific to its decision to reconsider the application of intergovernmental immunity in light of the federal government's statements of interest filed in these proceedings that cite to recent caselaw.

3.    The information attached responds directly to the questions asked at the hearing as to the discriminatory treatment of ICE's VWP at the NWDC from other programs operated by the state and other local jurisdictions with the support of its private contractors using detainee labor to

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

operate those facilities at sub minimum wages.  GEO has filed separately the Declaration of Julie Williams that describes the Pierce County Jail, and the Declaration of James Kelly that describes SCORE.  Mr. Chen's testimony describes his sub minimum work while incarcerated by Washington State to include in out-of-state facilities where Washington held him in custody.  Finally, Exhibit B is the sex offenders' lawsuit that describes the Sex Offender Treatment Center conditions.

4.      Attached to this declaration are true and correct copies of the following exhibits:

**EXHIBIT A:**  April 25, 2018 Chao Chen Deposition Transcript Excerpts.

**EXHIBIT B:** *Malone et al. v. Ferguson et al.*, WAWD ECF Case No.: 3:19-cv-05574-RBL-TLF Complaint at Dkt. 1.

5.      GEO supports ICE/DOJ's conclusions that intergovernmental immunity applies and similarly urges the Court to dismiss this lawsuit.

Dated this 13th day of September, 2019 at Fircrest, WA.

III Branches Law, PLLC

_____
Joan K. Mell, WSBA No. 21319
Attorney for The GEO Group, Inc.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

**CERTIFICATE OF SERVICE**

I, Joseph Fonseca, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action.  On September 13, 2019, I electronically filed the above Declaration of Joan K. Mell, with the Clerk of the Court using the CM/ECF system to the following:

Office of the Attorney General
Marsha Chien, WSBA No. 47020
Andrea Brenneke, WSBA No. 22027
Lane Polozola
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
MarshaC@atg.wa.gov
andreab@atg.wa.gov
lane.Polozola@atg.wa.gov

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 13th day of September, 2019 at Fircrest, Washington.

Joseph Fonseca, Paralegal

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

EXHIBIT A

1          THE UNITED STATES DISTRICT COURT

2       WESTERN DISTRICT OF WASHINGTON AT TACOMA

3    _____

4   CHAO CHEN, individually and     )
    on behalf of all those          )   No. 3:17-cv-05769-RJB
5   similarly situated,             )
                                    )
6               Plaintiff,          )
                                    )
7   v.                              )
                                    )
8   THE GEO GROUP, INC., a          )
    Florida corporation,            )
9                                   )
                Defendant.          )
10
    _____
11
              DEPOSITION UPON ORAL EXAMINATION OF
12                        CHAO X. CHEN
                        April 25th, 2018
13                     Fircrest, Washington
    _____
14

15

16

17

18

19

20

21

22

23
        Taken Before:
24
        Laura A. Gjuka, CCR #2057
25      Certified Shorthand Reporter

```
 1                     A P P E A R A N C E S

 2        For the Plaintiffs:
               JAMAL WHITEHEAD
 3             Schroeter Goldmark Bender
               500 Central Building
 4             810 Third Avenue
               Seattle, WA 98104
 5             206-622-8000
               whitehead@sgb-law.com
 6
               DEVIN T. THERIOT-ORR
 7             Sunbird Law
               1000 Fourth Avenue
 8             Suite 3200
               Seattle, WA 98154
 9             206-962-5052
               devin@sunbird.law
10
               ANDREW FREE
11             Attorney at Law
               PO Box 90568
12             Nashville, TN 37209
               andrew@immigrationcivilrights.com
13             844-321-3221

14
          For the Defendant:
15             CHARLES A. DEACON
               Norton Rose Fulbright
16             300 Convent Street
               Suite 2100
17             San Antonio, TX 78205-3792
               210-270-7133
18             charlie.deacon@nortonrosefulbright.com

19             JOAN K. MELL
               III Branches Law, PLLC
20             1019 Regents Boulevard
               Suite 204
21             Fircrest, WA 98466
               253-566-2510
22             Joan@3brancheslaw.com

23        Also Present:
               DAVE HANSEN
24             Sound Vision Video Production
               4821 North 14th Street
25             Tacoma, Washington, 98406
```

1                         EXAMINATION INDEX

2      EXAMINATION BY:                              PAGE NO.

3       Mr. Deacon                                     6

4

5                          EXHIBIT INDEX

6      EXHIBIT NO.        DESCRIPTION                 PAGE NO.

7      Exhibit No. 2      4 pages, Record of            135
                          Deportable/Inadmissible Alien,
8                         10/21/14 - CONFIDENTIAL

9      Exhibit No. 4      1 page, Detainee Request Form, 136
                          10/25/14 - CONFIDENTIAL
10

       Exhibit No. 5      1 page, Volunteer Work Program 138
11                        Agreement, 10/22/14 -
                          CONFIDENTIAL
12

       Exhibit No. 6      6 pages, Record of Persons      139
13                        Transferred, 10/21/14;
                          Booking/Release Report -
14                        CONFIDENTIAL

15     Exhibit No. 7      1 page, NWDC Orientation        142
                          Checklist & Property Receipt,
16                        10/22/14 - CONFIDENTIAL

17
       Exhibit No. 8      22 pages, National Detainee     145
18                        Handbook

19     Exhibit No. 9      35 pages, NWDC Detainee Handbook, 157
                          Revised 3/1/10
20

       Exhibit No. 10     6 pages, Performance-Based      162
21                        National Detention Standards 2011
                          Inspection Worksheet -
22                        CONFIDENTIAL

23     Exhibit No. 17     5 pages, Serious Infraction     131
                          Report, 10/19/08
24

25

1                              EXHIBIT INDEX (Continued)

2            EXHIBIT NO.        DESCRIPTION                       PAGE NO.

3            Exhibit No. 18     1 page, Grays Harbor College,        174
                                Stafford Creek Campus,
4                               Certificate of Completion

5            Exhibit No. 19     1 page, DOC Order of Release,        176
                                7/13/14
6
             Exhibit No. 20     25 pages, Trust Account Statement    176
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          BE IT REMEMBERED that on the 25th of April,

2     2018, 8:58 a.m., at 1019 Regents Boulevard, Fircrest,

3     Washington, before LAURA A. GJUKA, CCR# 2057, Washington

4     State Certified Court Reporter residing at University

5     Place, authorized to administer oaths and affirmations

6     pursuant to RCW 5.28.010.

7          WHEREUPON the following proceedings were had,

8     to wit:

9                         * * * * * *

10          VIDEOGRAPHER:  This is a video-recorded

11     deposition.  Today's date is April 25th, 2018.  The time

12     is 8:58.  My name is Dave Hansen.  I'm subcontracted by

13     Sound Vision Video Production, 4821 North 14th Street,

14     Tacoma, Washington, 98406.  The phone number is

15     (253) 905-4941.  The deposition today is being held at

16     1019 Regents Boulevard, Fircrest, Washington.

17          The case is Chen versus GEO Group.  Present for the

18     plaintiff are Jamal Whitehead, Andrew Free, and

19     Devin Theriot-Orr.  Present for the defense and noticing

20     the deposition is Charles Deacon.  Also present for the

21     defense is Joan Mell.  The witness is Chao Chen.  Court

22     reporter, Laura Gjuka, will now swear in the witness.

23

24     CHAO X. CHEN,   having been first duly sworn by

25               the Court Reporter, was examined and

```
 1                        testified as follows:

 2

 3                             EXAMINATION

 4      BY MR. DEACON:

 5   Q  Mr. Chen, my name is Charlie Deacon, and I'm here

 6      representing The GEO Group, a party that you've sued.

 7      Do you understand that?

 8   A  Yes.

 9   Q  Okay.  Could you please state your name for the record,

10      your full name.

11   A  My last name is Chen, C-h-e-n, first name, C-h-a-o.

12   Q  Do you have any --

13   A  Middle name X-i-n-g.

14   Q  Mr. Chen, you're wearing a t-shirt that says, "Employees

15      make all the difference."  When did you get that

16      t-shirt?

17   A  It's from -- when did I get it?

18   Q  What?

19   A  Can you repeat the question?

20   Q  When did you get it?

21   A  I've been having it for a while.

22   Q  How long is "a while"?

23   A  I would say a couple months.

24   Q  Where did you get it?

25   A  It's from my sister.
```

1    Q   Okay.  Mr. Chen, how long have you spent in total in

2        confinement -- whether it's at jail, prison, detention

3        center -- how long?

4    A   I would say maybe 15 years.

5    Q   Okay.  In those 15 years, were you ever paid minimum

6        wage?

7    A   No.

8    Q   All right.  And where have you been confined?  I know

9        you've been at Northwest Detention Center, and you were

10       at a prison here in the state of Washington, correct?

11   A   Yes.

12   Q   Do you remember what the name of that prison is?

13   A   Stafford Creek Correctional Center.

14   Q   Stafford Creek?  Okay.

15   A   Correctional center.

16   Q   And did you work when you were at Stafford Creek

17       Detention Center?

18   A   Yes.

19   Q   And what did you do at Stafford Creek Detention Center?

20   A   Porter jobs.  Porter.

21   Q   Porter?  And what was your job there?  What did you do?

22   A   Cleaning the bathrooms.

23   Q   Cleaning the bathrooms?

24   A   Yes.

25   Q   In what area?

```
 1        A   In the --
 2                        MR. WHITEHEAD:  Objection, vague,
 3            ambiguous.
 4                        MR. DEACON:  You can say "form."  I'll ask
 5            you if I need more.
 6                        MR. WHITEHEAD:  Counsel, that's not
 7            accurate.  I can state my objection concisely.  I can't
 8            do anything that would suggest an answer, but I can
 9            certainly state what the form is in terms of the problem
10            to give you an opportunity to correct the form of your
11            question.
12            BY MR. DEACON:
13        Q   What bathrooms did you clean?
14        A   In the unit.
15        Q   Okay.  In your unit?
16        A   Yes.
17        Q   Okay.  And how big was your unit?
18        A   Bigger than here.
19        Q   Bigger than this room we're in right now?
20        A   Yes.  Yes.
21        Q   How many inmates were in your unit?
22        A   I would say hundred -- more than 130 something.
23        Q   130-something inmates in your unit?
24        A   Yes.
25        Q   How many porters were cleaning the bathrooms?
```

1          MR. WHITEHEAD:  Objection, calls for

2     speculation.

3     BY MR. DEACON:

4   Q  Do you know how many porters were cleaning the

5     bathrooms?

6   A  I would say four.

7   Q  Four?

8   A  I would say four.

9   Q  Okay.  And you were one of the four?

10  A  Yes.

11  Q  How many hours -- did you work every day?

12  A  Yes.

13  Q  Okay.  And how many hours a day would you work?

14  A  About two hours maybe.

15  Q  Two hours every day?

16  A  Yeah.

17  Q  How much were you paid for those two hours?

18  A  I believe it's 20 -- 20-something cents an hour.

19  Q  20-something cents an hour?

20  A  Yes.

21  Q  And that's from the state of Washington?

22  A  Yes.

23  Q  So for two hours you made 40 cents?

24  A  Yes.

25  Q  Okay.  And was that paid into an account for you to use?

1    A   Yes.

2    Q   What did you use the money for?

3    A   For commissary items.

4    Q   Why did you work -- did you have to work when you were

5        in prison?

6    A   Yes.

7    Q   Did they require you to work?

8    A   Yes.

9    Q   Okay.  So it wasn't voluntary?

10   A   No.

11   Q   All right.  Everybody had to work --

12              MR. WHITEHEAD:  Objection, calls for

13       speculation.

14       BY MR. DEACON:

15   Q   -- to your knowledge?

16              THE WITNESS:  Everybody have to be

17       programmed.  You either have to work or schooling.

18       BY MR. DEACON:

19   Q   Work or schooling?

20   A   Yes.

21   Q   Did you go to school sometimes so you didn't have to

22       work?

23   A   I do both.

24   Q   You do both?

25   A   Yes.

```
 1    A   I would say from between September/October of 2002 until
 2        the day I was released.
 3    Q   So are you saying that you weren't sent to any other
 4        facilities while you were in custody of the state of
 5        Washington?
 6    A   No, I was transferred to out of state also.
 7    Q   Okay.  That's what I'm asking about.  Where were you
 8        transferred out of state?
 9    A   I was -- Arizona.
10    Q   Okay.  How long were you in Arizona?
11    A   About 18 months.
12    Q   When was that?
13    A   2007.
14    Q   2007?
15    A   2007.
16    Q   And so in 2007 you were in a facility in Arizona for
17        about 18 months?
18    A   Right.
19    Q   What was the name of that facility?
20    A   Florence, I think.  Florence.  Florence.
21    Q   Florence?
22    A   F-l-o-r-e-n-c-e, I believe.
23    Q   Florence?
24    A   Yes.
25    Q   And do you know who operated Florence?
```

```
 1    A   I think could be CCA.

 2    Q   CCA?

 3    A   Yeah, could be CCA.

 4    Q   CCA operated the detention center for the state of

 5        Washington?

 6                    MR. WHITEHEAD:  Objection, misstates prior

 7        testimony.

 8        BY MR. DEACON:

 9    Q   Do you know if they were the operator of Florence

10        Detention Center?

11    A   No, I don't.

12    Q   Why did you say CCA?

13    A   Because the handbook says CCA.

14    Q   Okay.  So you got a handbook while you were there that

15        said CCA?

16    A   No.  Because when I was at Stafford Creek, they were

17        doing -- somebody came into -- into the prison at

18        Stafford Creek, they gave us introduction, it said CCA,

19        and then our state.  That's all I know.

20    Q   Okay.  Do you still have that handbook?

21    A   I don't -- I'm not -- I don't know.  I don't know if I

22        have.

23    Q   Where would you have it if you had it?

24    A   If I would have, should be at my house --

25    Q   Okay.
```

1    A   -- if I have.

2    Q   You produced a handbook that you received from

3        Immigration Custom Enforcement when you were placed at

4        Northwest Detention Center, and you also produced a

5        handbook that you received from The GEO Group at

6        Northwest Detention Center.

7            Do you have other handbooks from other locations

8        like those?

9    A   I might.

10   Q   Okay.  Will you agree to go look and provide those to

11       your attorneys if you have them?

12   A   I would definitely try.

13   Q   Okay.  And you'll do that after your deposition?

14   A   Yes, I will -- I would -- I will try to look for it.

15   Q   Thank you.

16   A   If I still have or if I have.

17   Q   Right.  Now, when you were at the Arizona facility for

18       18 months, did you work while you were there?

19   A   In Arizona?

20   Q   Yes.

21   A   Yes.

22   Q   What did you do in Arizona?

23   A   Porter.

24   Q   Also a porter?

25   A   Yes.

1   Q   And as a porter what things did you do?

2   A   My position was sweeping and mopping the stairs and

3       upper-tier hallway.

4   Q   Did you work every day?

5   A   Yes.

6   Q   And how long would it take you to mop and sweep the

7       stairs?

8   A   Thirty to an hour.

9   Q   And you did that every day?

10  A   Yes.

11  Q   How much were you paid when you did that, or were you

12      required to do it?

13  A   I was paid.  I was paid.

14  Q   Okay.  Were you required to work when you were at the

15      Arizona facility?

16  A   That, I'm not sure.

17  Q   Okay.  How much were you paid when you were working as a

18      porter at the Arizona facility?

19  A   I'm not quite sure, but I will say $2 per day.

20  Q   $2 per day?

21  A   Per day.

22  Q   And did you --

23  A   Can I add something to it?

24  Q   Yes.

25  A   Then later on, it was a dollar per day.

1    Q   A dollar per day?

2    A   Yeah, afterward.

3    Q   Okay.  Why did it change, if you know --

4    A   I do not know.

5    Q   Okay.  Did you work any less to get the dollar a day

6        versus the $2 a day?

7    A   No.

8    Q   Okay.  How long were you paid $2 a day?

9    A   I don't remember.

10   Q   Okay.  Do you know approximately when the change went

11       from $2 a day to $1 a day?

12   A   No, I don't.

13   Q   Did you ever file a claim against SSA or whoever

14       operated the Arizona facility for minimum wage?

15   A   No.

16   Q   Did you ever file a claim against the state of

17       Washington for the work you performed at Stafford Creek

18       Detention Center for minimum wage?

19   A   No.

20   Q   Where else have you been confined, other than the three

21       you just told me about and Northwest Detention Center?

22   A   There was another place in Arizona also.

23   Q   Okay.

24   A   I cannot remember.  I believe it's Red Rock.  It's

25       called Red Rock.

1    Q   Red Rock?

2    A   Yes.

3    Q   Okay.   When were you at Red Rock?

4    A   Same time.

5    Q   Same time?

6    A   Yeah, after Florence.

7    Q   After Florence?

8    A   Yeah, between 18 months period.

9    Q   Okay.  Was that in addition to the 18 months or part of

10       the 18 months?

11   A   Part of it.

12   Q   Okay.  Do you know who operated the Red Rock center in

13       Arizona?

14   A   No.

15   Q   Do you know if CCA was involved at all?

16   A   I'm not sure.

17   Q   You don't know?

18   A   I'm not sure.

19   Q   Did you work when you were at the Red Rock --

20   A   Yes.

21   Q   -- detention center?  Were you required to work?

22   A   I'm not sure.

23   Q   What did you do at Red Rock?

24   A   Porter.

25   Q   And as a porter, what was your task?

1    A   Cleaning, sweeping, and mopping.

2    Q   Was there a particular area that you swept and mopped?

3    A   No.

4    Q   Anywhere in the facility?

5    A   It's inside the pod.

6    Q   Okay.  Inside the pod?  And were other inmates inside

7        that pod with you?

8    A   Yes.

9    Q   How many inmates approximately were in your pod?

10   A   That, I can't say.  I don't remember.

11   Q   Okay.  Do you remember how many porters there were

12       working in your pod?

13   A   No, I don't.  I don't remember.

14   Q   You were not alone?

15   A   No.

16   Q   And how much were you paid at Red Rock per hour or per

17       day?

18   A   $2 a day.

19   Q   $2 a day?

20   A   $2 a day.

21   Q   Did you ever file a claim against whoever operated the

22       Red Rock facility for failure to pay minimum wage?

23   A   No.

24   Q   Did you -- were you ever confined in any other center

25       outside of the state of Washington other than those two

EXHIBIT B

_____ FILED _____ LODGED
_____ RECEIVED

JUN 24 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CALVIN MALONE; GEORGE O.
MITCHELL; JONATHAN PARSONS;
RICHARD JACKSON; JAMES TURNER et
al.

Plaintiffs;

Vs

ROBERT W. FERGUSON, ATTORNEY
GENERAL OF WASHINGTON; CHERYL
STRANGE, SECRETARY OF THE
DEPARTMENT OF SOCIAL HEALTH
SERVICES; and DAVID FLYNN, CEO OF
THE SPECIAL COMMITMENT CENTER; et
al.

Defendants.

No. **CV19 5574** RBL-TLF

**CLASS ACTION COMPLAINT**

FOR INJUNCTION PEALTIES,
CIVIL PENALTIES, DISGORGMENT,
RESTITUTION, REPARATION
DAMAGES,  AND OTHER RELIEF
UNDER VIOLATIONS OF;
CIVIL RIGHTS 42 USC § 1983;
THE FAIR LABOR STANDARDS ACT;
WASHINGTON MINIMUM WAGE LAW;
and 14TH AMENDMENT

COMES NOW Pro se Plaintiffs Calvin Malone, George O. Mitchell, Richard Jackson, Jonathan

Parsons and James Turner currently detainees at the Special Commitment Center, (henceforth

SCC), on McNeil Island, Pierce County, Washington State, to rectify long standing violations of

minimum wage laws, and address infringement on Plaintiff's civil rights, and address violations

of due process and equal protection.

## I. INTRODUCTION

1.1     The Plaintiffs file this action against Defendants, Robert W. Ferguson, Washington State

Attorney General, Cheryl Strange, Secretary of the State of Washington Department of

Social Health Services, (hence forth DSHS), and David Flynn, CEO, of the Special

Plaintiffs Calvin Malone,  George O. Mitchell,
Richard Jackson, Jonathan Parsons James Turner
P.O Box 88600
Steilacoom, WA 98388

Ex 282

Commitment Center, to enforce minimum wage laws and to remedy the unjust enrichment that results from Defendant's long standing failure to adequately pay civil detainees for their work at the SCC. As a direct and proximate cause of these violations to the Plaintiff's rights, Calvin Malone, George O. Mitchell, Richard Jackson, Jonathan Parsons and James Turner also state and allege violations of due process and equal protection as incorporated under the 14th Amendment to the U.S. Constitution.

1.2   The enforcement of minimum wage laws is of vital and imminent concern to the Plaintiffs as the minimum wage laws protect them and create future employment opportunities for eventual transition back into the community.

1.3   Each year Washington state sets an hourly minimum wage, and those individuals protected by Washington's minimum wage laws must be paid at least the set hourly minimum wage. At the bare minimum the Plaintiffs are entitled to Federal minimum wages under the Fair Labor Standards Act, (hence forth FLSA) which does not expressly exempt mental health patients or other persons in state custody.

## II. JURISDICTION

2.1   At all times relevant hereto, Plaintiffs are residents of Pierce County, Washington State.

2.2   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1342 (a) (3), as Plaintiffs allege, pursuant to 42 U.S.C. §1983, that Defendants, under color of state law, have deprived the Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution.

Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the Plaintiffs' state law claims in which they allege that the Defendants deprived them of their rights under Article I, sections 3, and 5 of the Washington Constitution and under Chapters RCW 71.09, Such claims are so related to the §1983 claims that they form part of the same case and controversy.

2.3    Accordingly, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343(1), (3), and (4). Additionally the Plaintiffs seek to invoke the Supplemental and Pendent Jurisdiction of this Court for all violations of Washington State statutory law, and official policies, as the violations arise from the same nucleus of conduct which have violated the Federally protected rights of the Plaintiffs, and the laws of the United States 28 U.S.C. §1367.

2.4    The violations alleged herein have been and are being committed in whole or in part and Defendants directly or indirectly responsible, have or had influence over, or control of or manage(d), or operate(d), or have/had oversight of the Special Commitment Center and all residents involuntarily committed therein.

### III. VENUE

3.1    Venue is proper in the District Court of the State of Washington in and for the County of Pierce because the Special Commitment Center is located on McNeil Island, in Pierce County in Washington State and the Plaintiffs and Defendants reside within the geographical jurisdiction of the above-entitled Court. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) as all substantial parts of the events and omissions giving rise to the claims herein occurred in this district.

## IV. PARTIES

### PLAINTIFFS

4.1   Calvin Malone, George O. Mitchell, Richard Jackson, Jonathan Parsons and James Turner are wards of the State and as such are residents of the Special Commitment Center and bring this class action on behalf of themselves and other SCC residents located in Pierce County, McNeil Island P.O Box 88600 Steilacoom Washington 98388.

### DEFENDANTSS

4.2   Defendant Robert Ferguson is the Attorney General for the State of Washington has the responsibility to assure that the Laws of Washington and The U.S. Constitution are applied equally to all Washington citizens including the plaintiffs, and has the duty to use the AG Office to protect the citizens and wards of the state from illegal infringements.

4.3   Defendant Cheryl Strange is the Secretary of DSHS which is a Washington State agency that controls and has the responsibility of operating the SCC and has the duty to require all branches of DSHS, to include SCC, to follow state and federal law as they apply to residents who are civilly detained and under the care of the state and has the responsibility to oversee the manner in which the operation of DSHS facilities are conducted which include the SCC.

4.3   Defendant David Flynn is the CEO of SCC which is under the direct supervision of DSHS and is the facility that currently detains and is directly responsible for the care and well-being of the Plaintiffs and has the duty to require staff and SCC policy to align and follow state and federal law when applied to residents under the care of the state and the manner in which the SCC is operated.

## V. ALLEGATIONS

5.1   Defendants relies upon detainee labor to operate SCC and thereby benefit from unjust enrichment.

5.2   Defendants are aware that the hourly wage for the Plaintiffs and all SCC residents was reduced the from $7.16 in 2008 to the current hourly rate of $1.00 to $3.00 without adequate notice or offering the mechanism for the Plaintiffs to have a chance to take advantage of their right to due process protections .

5.3   From 2008 to February 2018 gratuity pay was offered to SCC residents in lieu of  Federal minimum wage for participation in the SCC Vocational Training Program which was established and operated in name only as a means to rationalize the reduction in wage. This training program had no instruction or instructors, no syllabus, and no certification of completion. It was created to justify reducing the minimum wage for SCC residents.

5.4   Since 2008 to 2019 it is estimated that SCC residents lost millions of dollars in unpaid wages which at a minimum was the difference from the prevailing federal minimum wage and what they were actually paid. Each Plaintiff was underpaid tens of thousands of dollars which markedly enriched the Defendants. This practice is ongoing.

5.5   On a monthly income ranging from $30 to $200 the Plaintiffs are required to pay for all of their personal necessities including their own clothing, shoes, hygiene items and cosmetics, electronics, books, religious items, coffee and refreshments. The Plaintiffs are also expected to save money for eventual release rent and other living expenses which only adds to the pressure to work at any job for any amount.  Under the pressure of

necessity residents are thereby coerced to work or risk the very real possibility of not

having basic essentials as well as a few luxuries which is equivalent to forced labor,

coercion, or indentured servitude.

5.6    Defendant Bob W. Ferguson filed a lawsuit in District Court in Pierce County on

September 20, 2017 against The GEO Group, Inc. (hence forth GEO), a Florida-based

company and the second-largest private prison provider in the country, for not    paying

detainee workers minimum wage, netting the company millions in ill-gotten profits. The

state's lawsuit asks the court to order the company to give up these profits. (*State of*

*Washington v. The Geo Group, Inc. No. 17-2-11422-2*). This action by the Plaintiffs is

based on same arguments as that lawsuit.

5.7    The aforementioned  lawsuit accuses GEO of violating Washington's minimum wage

laws. These laws are broadly written and meant to protect as many workers as

possible. RCW 49.46.010(k) exempts the following from protections from Washington's

minimum wage laws: "Any resident, inmate, or patient of a state, county, or municipal

correctional, detention, treatment or rehabilitative institution." The State of

Washington wants to have it both  ways  by  requiring  private  companies  to  pay

minimum wages to detainees within the State but exempting the State from paying

the Plaintiffs who are detainees in a  treatment  facility  for  the  same  services  that  the

Plaintiffs provide.

5.8    Defendant Robert Ferguson acts in bad faith to enforce the State minimum wage, because

state law expressly excepts residents at SCC from the same protections the Defendant is

seeking for detainees at the GEO Group run facility.

5.9     The Plaintiffs are civil detainees with the same rights and privileges as Washington citizens and therefore protected under federal laws governing equal protection with the same rights as similarly situated persons. The Department of Social Health Services, (hence forth DSHS), under the direction and control of Defendant Cheryl Strange is the Washington State bureau that oversees several agencies including Western State Hospital and SCC. Residents at Western State Hospital are also in a treatment facility and currently paid an hourly state wage of $11.50 and above.

5.10    Plaintiffs also argue that Washington State and SCC unjustly enriched itself, meaning it profited by its illegal actions exploiting the residents by reducing their pay rate and then paying them far below minimum wage and thereby diverting funds that would normally be used for resident wages to pay staff overtime, to operate the facility and to reduce the annual budgetary cost.

5.11    Plaintiffs also state that for some work, SCC does not provide appropriate working gear and that has caused detainees physical pain, injury, discomfort, and additional expenditure.

5.12    Records indicate that the average cost to detain each resident at SCC is approximately $182,000 a year. A greater percentage of that amount go toward wages for staff. The funds saved by reducing resident wages by more than half was diverted mainly to wages and overtime for SCC staff.

5.13    Wages for SCC residents was reduced from $7.16 an hour in 2008 to the current rate ranging from $1.00 an hour to $3.00 an hour in response to budget cuts during the budget crisis beginning in 2008 but not currently in effect anymore.

5.14    Since 2008 the State and Federal minimum Wage have gone up considerably and in increments and so have the prices for goods and services while at the same time wages at SCC went down incrementally since 2008 and has remained static for several years with most SCC residents earning an average of $2.50 per hour for their labor regardless of the number of hours worked.

5.15    The SCC established an indigent rate of just over $40 a month. Wages and hours for SCC workers were set so that the majority of workers earned wages well above $40 a month. In this way the SCC would not be obligated to provide clothing, shoes, hygiene, electronics and other essentials to workers but only to those few who earn less than $40. In comparison state prisoners are issued these essentials regardless and on a regular bases. Detainees at the Western State Hospital are issued essentials such as  clothing, shoes, hygiene, electronics regularly. Plaintiffs have not been given the opportunity to take advantage of "State issue" because they work and are paid for jobs that save the state thousands of dollars a month. This saving is generated by reduced resident wages and not having to provide clothing, shoes, or hygiene items and other essentials.

5.16    Plaintiffs as SCC residents try to save funds for eventual release back into the community. If released into the community to a Less Restrictive Alternative, (LRA), rent,

CIVIL RIGHTS COMPLAINT
CLASS ACTION

8

Plaintiffs Calvin Malone,  George O. Mitchell,
Richard Jackson, Jonathan Parsons James Turner
P.O Box 88600
Steilacoom, WA 98388

utilities, and food are paid for as part of the SCC program. After months or after two to three years the resident is released "unconditionally" and has to fend for himself. Occasionally SCC residents are released unconditionally without any assistance and have to rely on their savings to start a new life. Most do not have enough resources or savings due to the gratuity pay offered at SCC and end up homeless.

5.17    Plaintiffs are "employees" protected by Washington's minimum wage laws.

5.18    Plaintiffs are "employees" protected by Federal minimum wages laws under the Fair Labor Standards Act.

5.19    Defendants are an "employers" for purposes of Washington's minimum wage laws.

5.20    Defendants are an "employers" for purposes of Federal minimum wages laws under the Fair Labor Standards Act.

5.21    Defendants do not pay detainee workers the state minimum wage for work they perform at the SCC.

5.22    Since 2008, Defendants received and continues to receive the benefit of having necessary work done at the SCC without bearing the financial burden of paying the minimum wage to those who perform such work.

5.23    Plaintiffs perform a wide range of work at SCC including preparing, cooking, and serving food to the detainee population; operating SCC's laundry service; cleaning living areas

and bathrooms; and regularly painting walls and buffing floors; operating the recreation center; cleaning hazardous material including feces and other body fluids; assisting handicap residents with access to facilities; electrical wiring; building construction, heating and air repair, plumbing and other facility maintenance; upkeep facility grounds and landscaping.

## VI. FIRST CAUSE OF ACTION

### (Violation of Washington's Minimum Wage Law)

6.1   Plaintiff realleges and incorporates by reference herein all the allegations of paragraphs 1.1 through 5.21.

6.2   RCW 49.46.020 requires every employer to pay the hourly minimum wage "to each of his or her employees" who is covered by Washington's minimum wage laws.

6.3   Detainees including the Plaintiffs work for Defendants and perform many of the functions necessary to keep SCC operational including preparing, cooking, and    serving food to the detainee population; operating SCC's laundry service; cleaning living areas and bathrooms; and regularly painting walls and buffing floors; operating the recreation center; cleaning hazardous material including feces and other body fluids; assisting handicap residents with access to facilities; facility maintenance;  and maintaining garden plots.

6.4   Defendants pay Plaintiffs an average of  $2.50 per hour for work performed at SCC.

6.5   The current hourly minimum wage in Washington is about $11.50 per hour.

Plaintiffs Calvin Malone,  George O. Mitchell,
Richard Jackson, Jonathan Parsons James Turner
P.O Box 88600
Steilacoom, WA 98388

6.6     Defendants violates RCW 49.46.020 when it pays Plaintiffs who work at various jobs at
        SCC about $2.50 per hour instead of the hourly minimum wage.

## VII. SECOND CAUSE OF ACTION

(Violation of Fair Labor Standards Act  Federal  Minimum Wage Law)

7.1     Plaintiff realleges and incorporates by reference herein all the allegations of
        paragraphs 1.1 through 5.21.

7.2     Fair Labor Standards Act, (FLSA)  requires every employer to pay the hourly national
        minimum wage  "to each of his or her employees".

7.3     Plaintiffs are "employees" protected by Federal  minimum wages laws under the Fair
        Labor Standards Act.

7.4     The FLSA applies to public employers, including state agencies.

7.5     Detainees including the Plaintiffs   work for Defendants and perform many of the
        functions necessary to keep SCC operational including preparing, cooking, and serving
        food to the detainee population; operating SCC's laundry service; cleaning living areas
        and bathrooms; and regularly painting walls and buffing floors; operating the recreation
        center; cleaning hazardous material including feces and other body fluids; assisting
        handicap residents with access to facilities; facility maintenance;  and maintaining garden
        plots.

CIVIL RIGHTS COMPLAINT                                11                    Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                                                Richard Jackson, Jonathan Parsons James Turner
                                                                            P.O Box 88600
                                                                            Steilacoom, WA 98388

7.6    Defendants pay Plaintiffs an average of  $2.50 per hour for work performed at SCC.

7.7    The current hourly Federal  minimum wage is now about $7.25 per hour.

7.8    Defendants violate the Fair Labor Standards Act  which sets  Federal  Minimum Wage
       Law when Defendants pay Plaintiffs who work at various jobs at SCC about $2.50 per
       hour instead of the hourly Federal minimum wage.

## VIII. THIRD CAUSE OF ACTION

(Unjust Enrichment)

8.1    Plaintiff realleges and incorporates by reference herein all the allegations of
       paragraphs 1.1 through 5.21.

8.2    Defendants operate and oversees SCC with a budget of over forty million dollars serving
       less than 200 residents.

8.3    Defendants utilize Plaintiff labor to operate SCC.

8.4    Defendants do not pay adequate compensation to Plaintiffs for their work.

8.5    Defendants benefit via unjust enrichment by retaining the difference between the average
       of $2.50 per hour that it pays the Plaintiff and the fair wage that it should pay for work
       performed at SCC.

CIVIL RIGHTS COMPLAINT                        12                  Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                                     Richard Jackson, Jonathan Parsons James Turner
                                                                              P.O Box 88600
                                                                            Steilacoom, WA 98388

8.6     It is unjust for the Defendants to retain the benefit gained from its practice of failing to pay adequate compensation to Plaintiffs for the work they perform at SCC.

## IX. FOURTH CAUSE OF ACTION

(Violation of 14th Amendment - Substantive Due Process)

9.1     Plaintiff realleges and incorporates by reference herein all the allegations of paragraphs 1.1 through 5.21

9.2     Defendants reduced wages without SCC resident's knowledge and without their input in direct violation of the Due Process Clause of the Fourteenth Amendment. The degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing validity of a administrative decision - making any negative impact on the Plaintiffs an issue from a due process standpoint.

9.3     The reduction of wages effectively altered the quality of life at SCC for the Plaintiffs by creating an undue financial burden on the Plaintiffs and the Plaintiff's ability to financially manage their lives in the past, present and future.

9.4     Substantive due process deals with the fairness of any action taken by the government insofar as they impact an individual's life, liberty, or property. This may involve particular laws passed by the government. The government cannot arbitrarily deprive the Plaintiffs of life, liberty, or property. The touchstone of due process is protection of the individual against arbitrary action of government. *Dent v. West Virginia, 109 U.S. 114, 123 (1889)*. In this instance the Defendants perpetrate and continue to support an illegal policy of paying Plaintiffs wages far below state or federal minimum wage standards.

CIVIL RIGHTS COMPLAINT                    13                    Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                                   Richard Jackson, Jonathan Parsons James Turner
                                                               P.O Box 88600
                                                               Steilacoom, WA 98388

## X. FIFTH CAUSE OF ACTION

(Violation of 14th Amendment - Equal Protection)

10.1    Plaintiff realleges and incorporates by reference herein all the allegations of
paragraphs 1.1 through 5.21

10.2    The Equal Protection Clause of the 14th Amendment requires states to treat similarly
situated people alike. It prohibits a state from denying any person within it jurisdiction
the equal protection of the law.

10.3    Plaintiffs are civil detainees being held at the SCC under the care auspices of DSHS of
Washington State and are referred to as "residents" not inmates or prisoner.

10.4    Patients at Western State Hospital are civil detainees being held at the facility under the
care auspices of DSHS of Washington State and are referred to as "residents" not inmates
or prisoner.

10.5    Residents at the Western State Hospital are paid $11.00 an hour to perform the same
duties as the Plaintiffs as SCC residents perform but who are paid an average of $2.50 per
hour.

10.6    Plaintiffs as residents of the SCC are similarly situated as residents of Western State
Hospital and other DSHS detention centers and as such should be treated similarly as
described by law.

CIVIL RIGHTS COMPLAINT                          14                    Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                                         Richard Jackson, Jonathan Parsons James Turner
                                                                     P.O Box 88600
                                                                     Steilacoom, WA 98388

10.7   Plaintiffs as residents of the Special Commitment Center for sexually violent predators are being discriminated against and thereby unjustly treated due to their status in society or due to the isolated location on McNeil Island or both. No other explanation has been offered to justify the disparity in wages compared to residents at the Western State Hospital.

## XI. ARGUMENT: MINIMUM WAGE

## FEDERAL LAW

11.1   The Fair Labor Standards Act (FLSA) sets a national minimum wage that presently is $7.25 per hour. The FLSA applies to public employers, including state agencies. *See* 29 U.S.C. § 216(b). The FLSA does not expressly exempt mental health patients, prisoners, or other persons in state custody. *See* 29 U.S.C § 213.

11.2   In determining whether an employment relationship exists sufficient to trigger the application of FLSA, courts examine the "economic reality" of the relationship between the alleged employer and employee. Typically, this analysis includes examination of the extent to which the "employer" controls the fundamentals of employment, including the ability to hire and fire, establish work schedules, determine the rate and method of pay, and maintain employment records. *Hale v. Arizona,* 993 F.2d 1387, 1394 (9th Cir. 1993).

11.3   Applying this economic reality test to patient workers at a psychiatric institution, a federal district court some years ago ruled that the FLSA applied and guaranteed the workers payment at the federal minimum wage. *Souder v. Brennan,* 367 F. Supp. 808, 813 (D.D.C. 1973) ("Economic reality is the test of employment and the reality is that

15

many of the patient-workers perform work for which they are in no way handicapped and from which the institution derives full economic benefit.")

11.4   This case does support an argument that the Plaintiffs as SCC resident workers are "employees" under FLSA; the residents are physically capable of working, and the work they do certainly benefits the institution.  The residents further can point to the fact that they interview for their jobs at the SCC, that the hiring process is competitive, at least among residents, and that they may choose not to work at all.

## STATE LAW

11.5   Washington's Minimum Wage Act (*RCW 49.46*) requires employers within the state to pay employees a minimum hourly wage that, since 2000, has been indexed to the inflation rate. *See RCW 49.46.020(4).*  Significantly, however, the act specifically excludes from the "employees" entitled to receive the minimum wage "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution…." *RCW 49.46.010(5)(k).* There is no case law interpreting this unambiguous language. This can be interpreted as: "Do as I say and not as I do". Plaintiff's counsel, Washington State Attorney General Robert Ferguson when commenting on this case, stated on the Attorney General's website in reference to the GEO Group lawsuit:

> *"A multi-billion dollar corporation is trying to get away with paying its workers $1 per day," Ferguson said. "That shouldn't happen in America, and I will not tolerate it happening in Washington. For-profit companies cannot exploit Washington workers."*

11.6    Given that position and in on its face, the Defendants are exploiting the Plaintiff's need to provide essentials while under the care of the SCC and DSHS. Washington's Minimum Wage Act (*RCW 49.46.010(5)(k)*) is fundamentally unconstitutional because this law is not applied equally to similarly situated persons. Residents at the SCC and housed at the Secure Community Transition Facility, (SCTF), also on McNeil Island earn $7.16 an hour for exactly the same work that SCC residents perform but who are paid an average of $2.50 and hour. Residents detained at the DSHS Western State Hospital earn $11.00 an hour and more for exactly the same work that SCC residents perform but who are paid an average of $2.50 and hour.

## XII. CONCLUSION

12.1    It is an undisputed fact that wages for residents at SCC was reduced without due process, *Mathews v. Eldridge*, 424 U.S. 319 (1976). This standard is applicable to civilly confined detainees under the Fourteenth Amendment is at least coextensive with that applicable to prisoners under the Eighth Amendment. The Plaintiffs, like the patient workers in *Souder v. Brennan*, should be entitled to FLSA minimum wages because the work they perform benefits the institution, the DSHS, and the State of Washington, in the same way that Washington State's Attorney General formally charged the GEO Group, Inc. for failing to pay detainees a minimum wage. *Washington v. GEO Group, Inc. Case No. 3:17-cv-05806-RJB*. SCC residents, like the patient workers in the Western State Hospital, which is operated by DSHS as is SCC, should be entitled to the same wages and rights as similarly situated persons. The SCC program should be subjected to penalties under FLSA for failing to adhere to *The Fair Labor Standards Act*. Therefore, the Plaintiffs seek to rectify this egregious policy and ask the Court to mandate that the wage

CIVIL RIGHTS COMPLAINT
CLASS ACTION

17

Plaintiffs Calvin Malone, George O. Mitchell,
Richard Jackson, Jonathan Parsons James Turner
P.O Box 88600
Steilacoom, WA 98388

rate for SCC residents be increased at a minimum to an amount equal to or just above the federal minimum wage. The Plaintiffs also ask for reimbursement for all past wages withheld from them illegally over the course of several years in the amounts based on hours worked.

## XII1. PRAYER FOR RELIEF

13.1    Wherefore, the State of Washington prays that the Court:

13.2    Declare that Plaintiffs who work at SCC are "employees" as defined by RCW 49.46.010(3);

13.3    Declare that Defendants are an "employer" of Plaintiff who have or had jobs at SCC as defined by RCW 49.46.010(4);

13.4    Declare that Defendants and must comply with RCW 49.46.020 for work performed by Plaintiffs at the SCC;

13.5    Enjoin Defendants from paying detainees less than the minimum wage for work performed at the SCC;

13.6    Find and declare that Defendants has been unjustly enriched by its practice of failing to adequately pay Plaintiffs as workers for their labor at the SCC;

13.7    Order Defendants to disgorge the amount by which it has been unjustly enriched and pay the Plaintiffs the amount of past wages due minus amount already paid;

CIVIL RIGHTS COMPLAINT
CLASS ACTION

18

Plaintiffs Calvin Malone, George O. Mitchell,
Richard Jackson, Jonathan Parsons James Turner
P.O Box 88600
Steilacoom, WA 98388

13.8    That the Court order and prohibit the Defendants from retaliation against Plaintiffs for exercising their right to access the Court in this action, including such retaliation such as arbitrary transfers within SCC, unwarranted confiscation of legal paperwork, confiscation of computer, and denial of privileges or the appearance of retaliation.

13.9    For judgment in Plaintiff's favor against Defendants adjudging Plaintiffs to have a valid complaint of a violation of the Plaintiff's fourteenth Amendment Due Process Rights;

13.10   For judgment in Plaintiff's favor against Defendants adjudging Plaintiffs to have a valid complaint of a violation of the Plaintiff's Eight Amendment right to be free of Cruel and Unusual Punishment, and Deliberate Indifference;

13.11   For judgment in Plaintiff's favor against Defendants adjudging Plaintiffs to have a valid complaint of a violation of 42 U.S.C. § 1983;

13.12   Court to order a trial by jury.

13.13   An award of reasonable legal fees and costs that the Plaintiffs incurs in connection with this action; and

13.14   Award such additional relief as the interests of justice may require.

CIVIL RIGHTS COMPLAINT                               19                    Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                                               Richard Jackson, Jonathan Parsons James Turner
                                                                           P.O Box 88600
                                                                           Steilacoom, WA 98388

1  Plaintiffs Calvin Malone; George Mitchell; Richard Jackson, Jonathan Parsons, and James

2  Turner certify under penalty of perjury under the laws of the State of Washington  that the

3  foregoing is true and correct.

4

5  DATED this 20th day of June 2019.

6

7

8  CALVIN MALONE                          GEORGE MITCHELL
   P.O. BOX 88600                         P.O. BOX 88600
9  STEILACOOM, WA 98388                   STEILACOOM, WA 98388
   TEL: 253-617-6274 or 253-617-6275      TEL: 253-617-6274 or 253-617-6275
10

11

12 RICHARD JACKSON                        JONATHAN PARSONS
13 P.O. BOX 88600                         P.O. BOX 88600
   STEILACOOM, WA 98388                   STEILACOOM, WA 98388
14 TEL: 253-512-6541 or 253-512-6542      TEL: 253-512-6537 or 253-512-6538

15

16

17                                        JAMES TURNER
                                          P.O. BOX 88600
18                                        STEILACOOM, WA 98388
                                          TEL: 253-512-6535 or 253-512-6536
19

20

21

22

23

24

25

CIVIL RIGHTS COMPLAINT                    20              Plaintiffs Calvin Malone,  George O. Mitchell,
CLASS ACTION                                              Richard Jackson, Jonathan Parsons James Turner
                                                          P.O Box 88600
                                                          Steilacoom, WA 98388