1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

STATE OF WASHINGTON,

            Plaintiff,

    v.

THE GEO GROUP, INC.,

            Defendant.

CIVIL ACTION NO. 3:17-cv-05806-RJB

STATE OF WASHINGTON'S
RESPONSE TO THE COURT'S
PROPOSED ORDER GRANTING
SUMMARY JUDGMENT OF
DISMISSAL (ECF NO. 306)

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 1

       A.   The Court's Proposed Ruling Dismissing Washington's MWA Claim
            Contains Significant Errors of Law ............................................................. 2

            1.   *North Dakota*'s "Functional Approach" Forecloses the Overbroad View
                 of Intergovernmental Immunity Articulated in the Court's Proposed
                 Order.................................................................................................... 3

            2.   The Proper Comparator Under *North Dakota* and *Dawson* Is a Similarly
                 Situated Private Contractor—Not the State Government ................................. 5

            3.   The Ninth Circuit's Decision in *United States v. California* Also Shows
                 that Intergovernmental Immunity Does Not Apply Here................................... 9

       B.   The Court's Proposed Order Dismisses Washington's MWA Claim Without a
            Sufficient Factual Record ......................................................................... 11

            1.   The Proposed Order, Like GEO, Relies on Incomplete and Inaccurate
                 Facts About State-Contracted Detention............................................ 11

            2.   The Proposed Order Will Have Significant Consequences that the Court
                 Fails to Consider................................................................................ 14

       C.   The Court's Proposed Order Would Improperly Dismiss Washington's Unjust
            Enrichment Claim ...................................................................................... 16

            1.   The Court's Proposed Dismissal of Washington's Unjust Enrichment
                 Claim Would Constitute Procedural Error ......................................... 16

            2.   The Court's Proposed Order Substantively Errs in Conflating the Unjust
                 Enrichment and MWA Claims ........................................................... 19

                 a.   The unjust enrichment and statutory MWA claims are legally
                      distinct......................................................................................... 19

                 b.   The unjust enrichment claim relies on different facts than the MWA
                      claim—facts that are either disputed or have been resolved in favor
                      of Washington ............................................................................. 22

III.   CONCLUSION ..................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)................................................... 16, 18

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ......................... 21

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12 (Wash. Ct. App. 1991)............... 19

*Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ........................................ 10

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989) ......................................... 7

*Dawson v. Steager*, 139 S. Ct. 698 (2019)..................................................... 7, 8

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ......................................... 11

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) .......................................... 12

*In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892 (N.D. Cal. 2007)................................................................................ 4

*Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) ....................... 21

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018)................................... 21

*Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) .................................. 18

*North Dakota v. United States*, 495 U.S. 423 (1990) ................................ 3, 4, 5, 6

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641 (9th Cir. 1981)................................................................................... 18

*Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866 (9th Cir. 1985) .......... 18

*U.S. Postal Serv. v. City of Berkeley*, No. C16-04815 WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018)................................................................... 4, 5

*Washington v. United States*, 460 U.S. 536 (1983) ............................................ 4

*Young v. Young*, 191 P.3d 1258 (Wash. 2008) ............................................. 19, 20

**Statutes**

Wash. Rev. Code. § 72.68.040 ............................................................. 13

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................ 18

STATE OF WASHINGTON'S RESPONSE
TO THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

Fed. R. Civ. P. 56(d) .................................................................................................. 19

Fed. R. Civ. P. 56(f) ............................................................................................. 16, 18

Fed. R. Civ. P. 56(f)(3) .......................................................................................... 18

STATE OF WASHINGTON'S RESPONSE
TO THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

# I.    INTRODUCTION

Washington submits this response to the Proposed Order and the Court's invitation to the parties to "respond to point out errors" in the Proposed Order, including issues "regarding the record." ECF Nos. 306; 306-1. Respectfully, the Court's Proposed Order contains important errors of law, relies on alleged facts not in the record, and is premised on an overbroad view of intergovernmental immunity that is unsupported by the cases cited. If issued, the Proposed Order will have significant ramifications that extend far beyond this case: It stands to exempt government contractors from neutral, generally applicable laws and taxes to which they have long been subject, and that, like Washington's Minimum Wage Act (MWA), are in no way discriminatory. It also would dismiss the stand-alone unjust enrichment claim in this case on grounds that are contrary to well-established law and overwhelming record evidence, effectively eliminating the only mechanism available to remedy the injustice to detainee workers at the NWDC. The Proposed Order should not be entered and the case should remain set for trial in March 2020.[1]

# II.    ARGUMENT

In 2018, the Court rejected dismissal based on intergovernmental immunity after properly comparing GEO with similarly situated entities, i.e., other private contractors. *See* ECF No. 162 at 9. The Court correctly concluded that intergovernmental immunity cannot bar Washington's neutral and generally applicable MWA because the treatment of private contractors under Washington's MWA is the same, regardless of whether those contractors deal with the federal or state government. *Id*. There is no discrimination or unfair treatment against the federal government or its contractors under the MWA, as both the federal and Washington governments face the same choice: use government facilities and be exempt from Washington's

---

[1] Because the Proposed Order reflects the Court's reliance on extra-record facts that are not accurate, *see* ECF No. 306-1 at 8 n.3, and because the Court explicitly seeks "to give the parties more opportunity for input," ECF No. 306 at 1, Washington concurrently submits declarations it was able to secure in this short briefing window that are intended to address the Court's newly raised factual questions.

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    MWA, or use private contractors and comply with it. None of the cases issued since the Court's

2    2018 order, nor the selective facts GEO raised during and after oral argument, change that

3    analysis.

4         The Court's proposed dismissal of the entire case, including Washington's unjust

5    enrichment claim, also constitutes manifest error because *no* party sought such relief or set forth

6    the elements of the unjust enrichment claim in any briefing regarding intergovernmental

7    immunity. The one sentence dismissing it contains legal and factual errors and inadequate

8    specificity to constitute proper notice or enable Washington to formulate a considered response.

9    Accordingly, the Court should decline to issue the Proposed Order and should allow both claims

10   to proceed to trial.

11   **A.    The Court's Proposed Ruling Dismissing Washington's MWA Claim Contains**

12   **Significant Errors of Law**

13        A proper analysis compels the result the Court reached the first time it considered

14   intergovernmental immunity: Washington's MWA does not discriminate against the federal

15   government or its contractors. ECF No. 162 at 9. The Court's Proposed Order, in contrast,

16   contains multiple errors of law, including: (1) the inaccurate application of the Supreme Court's

17   "functional approach," as set forth in *North Dakota v. United States*, 495 U.S. 423 (1990); (2)

18   the use of an improper comparator under *Dawson v. Steager,* 139 S. Ct. 698 (2019), and other

19   authority, when analyzing whether treatment of GEO is discriminatory; and (3) a misapplication

20   of *United States v. California*, 921 F.3d 865 (9th Cir. 2019), which squarely held that federal

21   contractors like GEO can lawfully be subject to neutral and generally applicable state laws—

22   even in the operation of an immigration detention facility. Each error is addressed below.

23

24

25

26

STATE OF WASHINGTON'S RESPONSE TO          2          ATTORNEY GENERAL OF WASHINGTON
THE COURT'S PROPOSED ORDER                            Civil Rights Division
GRANTING SUMMARY JUDGMENT OF                          800 Fifth Avenue, Suite 2000
DISMISSAL                                            Seattle, WA  98104-3188
                                                     (206) 464-7744

1.   ***North Dakota*'s "Functional Approach" Forecloses the Overbroad View of Intergovernmental Immunity Articulated in the Court's Proposed Order**

First, the Court references the "functional approach" to intergovernmental immunity but does not cite or address the key case that explained that approach, *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990). *See* ECF No. 306-1 at 5. Instead, the Proposed Order misapprehends the "functional approach" and fails to appreciate that the Supreme Court explicitly authorizes states to enforce neutral, non-discriminatory laws against private contractors that do business with the federal government.

The Supreme Court in *North Dakota* recognized that the correct approach to claims of intergovernmental immunity is a "functional approach" that "accomodate[s] the full range of each sovereign's legislative authority." 495 U.S. at 434-35. In contrast to prior modes of analysis, the Supreme Court's "functional approach" recognizes that state laws may impose burdens on the federal government without raising constitutional concerns as long as they regulate federal suppliers or contractors in a non-discriminatory manner. *Id.* Such burdens, the Supreme Court explained, "are but normal incidents of the organization within the same territory of two governments." *Id.* at 435 (internal citations omitted). *North Dakota* described the required approach as "functional" in the course of rejecting a more absolute rule: that any regulation that implicates the federal government is unconstitutional. *Id.* at 434.

Properly understood, the functional approach recognizes that (1) neutral, generally applicable laws apply to private businesses like GEO even when they deal with the federal government; and (2) the fact such laws impose costs on the contractor and, indirectly, the United States, does not make them discriminatory or otherwise unconstitutional—even where an economic burden may result. Indeed, the *North Dakota* Court made clear: A state law does not run afoul of intergovernmental immunity merely because a generally applicable state regulation "make[s] it more costly for the Government to do its business." 495 U.S. at 434 (describing that theory as "thoroughly repudiated") (citing cases). Likewise, the Court explained that a law does

3

1   not implicate intergovernmental immunity where it "is imposed on some basis unrelated to the

2   object's status as a [federal] Government contractor" and is "imposed equally on other similarly

3   situated constituents of the State." *Id*. at 438.

4         Applying these principles, the *North Dakota* Court upheld state laws that regulated

5   federal government suppliers (and all other liquor retailers in the state) as part of a statewide

6   regulatory regime that served legitimate state interests. *Id.* at 438-39. The state laws placed no

7   discriminatory burdens upon the federal government by requiring its out-of-state suppliers to

8   comply with the labeling requirements. *Id.* Other courts applying this approach have correctly

9   recognized the same essential aspects of the functional approach, rejecting overbroad

10  intergovernmental immunity claims that sought exemptions for private companies or others with

11  whom the federal government dealt based on their relationship with the federal government

12  rather than the discriminatory nature of the regulatory regime. *See*, *e.g.*, *Washington v. United

13  States*, 460 U.S. 536, 545 (1983) (upholding state tax law where "[t]he tax on federal contractors

14  is part of the same structure, and imposed at the same rate, as the tax on the transactions of

15  private landowners and contractors"); *U.S. Postal Serv. v. City of Berkeley*, No. C16-04815

16  WHA, 2018 WL 2188853, at *3 (N.D. Cal. May 14, 2018) (finding no discriminatory treatment

17  of the federal government or those with whom it dealt (potential buyers of a post office building)

18  where city's historic district designation, which was "imposed equally on other similarly situated

19  constituents of the State," limited government's options for selling or renovating an old post

20  office); *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 904 (N.D. Cal.

21  2007) (rejecting intergovernmental immunity claim where laws at issue "regulate equally all

22  public utilities, making no distinction based on the government's involvement").

23        Here, the Proposed Order misunderstands the analysis required by *North Dakota*, which

24  directs courts to focus on the terms of the challenged state law. Instead of doing that, the

25  Proposed Order applies the "functional approach" by selecting one GEO facility and one State

26  facility and purporting to inquire about what is "actually happening" at each of them.

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

ECF No. 306-1 at 7.[2] That is not the correct mode of analysis. Courts applying the functional approach ask whether the state law itself is discriminatory—they do not conduct a selective comparison of what is "actually happening" on the ground at two dissimilar institutions. *See*, *e.g.*, *North Dakota*, 495 U.S. at 435 (courts must examine "the entire regulatory system" for discrimination and not focus on particular claims "in isolation"); *California*, 921 F.3d at 872-73 (analyzing what requirements relevant legal provisions imposed upon facilities holding immigration detainees and other facilities); *Berkeley*, 2018 WL 2188853, at *4 (rejecting United States' reliance on fact that Postal Service was only entity currently affected by neutral ordinance as basis for asserting that ordinance was discriminatory, calling such a "sweeping theory" unsupported and explaining that under that theory, "it would be virtually impossible to impose any regulation—no matter how objective or sincerely neutral—on a group of constituents that happened to include the federal government or those with whom it deals"); *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 904 (rejecting attempt to focus on the individual investigation as "treat[ing] the Government differently" because "the regulatory regime as whole treats any unauthorized disclosure the same"). The Court's Proposed Order, therefore, conflicts with the analysis that the Supreme Court requires. The Proposed Order should not issue.

### 2. The Proper Comparator Under *North Dakota* and *Dawson* Is a Similarly Situated Private Contractor—Not the State Government

The second fundamental flaw in the Proposed Order is its assumption that the proper comparison for intergovernmental immunity purposes should be between the State and GEO. *See* ECF No. 306-1 at 7-8. That is incorrect as a matter of law.

For intergovernmental immunity purposes, the proper comparator for GEO, a private contractor that deals with the federal government, is a similarly situated private contractor that

---

[2] Additional facts regarding programming at the Special Commitment Center, the comparator offered by the Proposed Order, ECF No. 306-1 at 8 nn.2-3, are provided in Section II(B).

STATE OF WASHINGTON'S RESPONSE TO THE COURT'S PROPOSED ORDER GRANTING SUMMARY JUDGMENT OF DISMISSAL

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  deals with the state government. Another way to consider this point is set forth in the following

2  chart showing to whom the Washington MWA applies:

**Does the Washington State Minimum Wage Apply?**

|  | Government Institution | Private Contract Facility |
|---|---|---|
| **Federal Detainees** | No | Yes |
| **State Detainees** | No | Yes |

8  As the chart illustrates, the treatment under the MWA is the same for the federal and state

9  governments (MWA does not apply); and for private contractors regardless of with whom they

10  deal (MWA does apply). There is no difference based on one's status as a federal contractor.

11  *North Dakota, Dawson,* and other authority analyzing claims of intergovernmental

12  immunity confirm that the analysis must focus on whether GEO, a private contractor that deals

13  with the federal government, is treated differently than a similarly situated private contractor that

14  deals with the state government—not whether a private contractor is treated differently than the

15  State itself. In particular, *North Dakota* makes clear that the question is whether the state

16  regulation is imposed on a basis unrelated to the entity's status as a federal contractor. *North*

17  *Dakota*, 495 U.S. at 438. There is no intergovernmental immunity issue if the entity would be

18  subject to the regulation, or if the burden is the same, regardless of its status as a federal

19  contractor. *Id.*

20  Here, that is unquestionably the case. The MWA applies to GEO based on its status as

21  an employer in Washington, not its status as a federal contractor. There are no heightened

22  requirements or specialized burdens imposed upon GEO because of its relationship with the

23  federal government. In other words, it is not "more expensive" for GEO to run a private detention

24  facility for the federal government than it would be to run a private detention facility for

25  Washington's state government. *Cf.* ECF No. 306-1 at 8. Instead, both governments face the

26  same choice: Use their own facilities to hold detainees and avoid the application of the MWA,

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   or use a contractor's facility in Washington to hold detainees and *comply with the MWA.* In

2   arguing to the contrary, GEO and the United States conflate the lack of special treatment with

3   discrimination.[3] But intergovernmental immunity does not oblige the Court to confer special

4   treatment upon GEO, treatment which other private businesses in Washington—even those who

5   deal with *state* government—do not receive.

6         The Supreme Court's recent decision in *Dawson v. Steager* supports Washington's

7   position about the appropriate comparator to GEO. In *Dawson*, a state exempted some of its

8   constituents—retirees who received state retirement benefits—from certain state income

9   taxation on those benefits, but did not exempt from taxation *similarly situated retirees* who

10   received federal retirement benefits. 139 S. Ct. at 703-04. The treatment of retirees differed

11   depending on whether they collected benefits from the federal or state government—the

12   "similarly situated" entity to Mr. Dawson, a former U.S. Marshal, was another retiree who had

13   performed the same or similar job for the state government. *Id.* ("[e]veryone accepts the trial

14   court's factual finding that there aren't any 'significant differences' between Mr. Dawson's

15   former job responsibilities and those of the tax-exempt state law enforcement retirees. Given all

16   this, we have little difficulty concluding that West Virginia's law unlawfully 'discriminate[s]'

17   against Mr. Dawson 'because of the source of [his] pay or compensation'") (citation omitted).

18   *See also Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 817 (1989) (holding the Michigan

19   Income Tax Act violates principles of intergovernmental tax immunity by favoring retired state

20   and local government employees over retired federal employees). In both cases, the proper

21   comparison was between an individual who dealt with the federal government and an individual

22   who dealt with the state government. Nowhere did the Supreme Court in *Dawson* or *Davis*

23

24

---

25   [3] Washington reiterates both its objection to the United States' Statement of Interest and Supplemental
    Statement of Interest, which were untimely, and its objection to GEO's argument made only in reply that
26   Washington's enforcement of the MWA constitutes "direct regulation" for intergovernmental immunity purposes
    *See* ECF Nos. 290, 298, 299.

STATE OF WASHINGTON'S RESPONSE TO        7        ATTORNEY GENERAL OF WASHINGTON
THE COURT'S PROPOSED ORDER                         Civil Rights Division
GRANTING SUMMARY JUDGMENT OF                   800 Fifth Avenue, Suite 2000
DISMISSAL                                     Seattle, WA  98104-3188
                                          (206) 464-7744

1  suggest that the proper comparison is between an individual taxpayer and the *state government*

2  *itself*.

3       *Dawson's* focus on the scope of any legislative exemption further supports Washington

4  here. In analyzing the scope of the tax exemption at issue in that case, the Supreme Court

5  recognized that the "breadth or narrowness of a state tax exemption" is relevant to determining

6  the scope of any corresponding immunity. *Dawson*, 139 S. Ct. at 704. The Court explained that

7  "if a State exempts from taxation all state employees, it must likewise exempt all federal

8  employees. Conversely, if the State decides to exempt only a narrow subset of [state employees,

9  i.e.,] retirees, the State can comply with [intergovernmental tax immunity principles] by

10 exempting *only* the comparable class of federal retirees." *Id.* Thus, under *Dawson*'s

11 straightforward analysis, there is no intergovernmental immunity problem here. As Washington

12 explained (and the Court appears to agree), private contractors dealing with Washington are not

13 exempt under Washington's MWA; therefore, they need not be exempt when they deal with the

14 federal government. The scope of the exemption corresponds to any potential immunity here—

15 and there is no basis to extend the scope of immunity beyond the scope of the MWA's exemption

16 for *government* institutions. Unlike *Dawson*, no discrimination exists because GEO, as a private

17 company doing business in Washington, is treated the same under state law whether it deals with

18 the federal or state government (or any other government entity). *See* ECF No. 155

19 (Washington's brief addressing MWA exemption for government institutions in detail).

20      In short, the Proposed Order is incorrect where it states that the "lesson" from *Dawson*

21 is that the Court "must determine whether the State is treating a similarly situated federal entity

22 differently than it is treating itself, and if it is doing so, whether the difference is discriminatory

23 against the federal governments and its contractors." ECF No. 306-1 at 6. Instead, *Dawson*

24 supports Washington's analysis and the Court's original ruling, requiring the comparison to

25 focus on whether GEO (a private company doing business with the federal government) is

26

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

8

1    treated differently from other similarly situated entities (private companies doing business with

2    the state). Since it is not, *Dawson* provides no support to the Court's Proposed Order.

3          **3.      The Ninth Circuit's Decision in *United States v. California* Also Shows that
4                    Intergovernmental Immunity Does Not Apply Here**

5          Respectfully, the Court additionally errs by relying on *United States v. California* to hold

6    that private contractors are equivalents of the federal government. ECF No. 306-1 at 7. That

7    decision is clear that neutral and generally applicable rules, like Washington's MWA, apply to

8    federal contractors—even if they run an immigration facility that holds federal detainees.

9          In *California*, the Ninth Circuit analyzed the United States' intergovernmental immunity

10   challenges to three separate California statutes: AB450, which established employer notice

11   requirements before federal inspections; AB103, which imposed inspection requirements on

12   facilities that house federal civil immigration detainees; and SB54, which limited cooperation

13   between state/local law enforcement and federal immigration officials. 921 F.3d at 872-73. The

14   Ninth Circuit rejected the United States' claims of intergovernmental immunity as to all three

15   statutes, with the single exemption of one subsection in AB103, and even then, only to the extent

16   that it "d[id] not merely replicate" the generally applicable inspection requirements for all other

17   detention facilities. *Id.* at 883. The only intergovernmental immunity issue existed where that

18   subsection imposed unique, heightened, and specialized requirements on "federal operations—

19   and *only* federal operations." *Id*. at 882-83.

20         The Court's holding exemplifies the "functional" approach required by *North Dakota*.

21   Specifically, the Ninth Circuit *rejected* the United States' intergovernmental immunity challenge

22   to the whole of AB103, which imposed regulatory inspection requirements on all facilities

23   housing immigration detainees, because most of those requirements were the same as the

24   requirements placed on other detention facilities under California law. In other words, to the

25   extent the state's inspection requirements were neutral and generally applicable—not specialized

26   and heightened burdens placed only on the institutions housing federal immigration detainees—

STATE OF WASHINGTON'S RESPONSE TO                    9                    ATTORNEY GENERAL OF WASHINGTON
THE COURT'S PROPOSED ORDER                                                      Civil Rights Division
GRANTING SUMMARY JUDGMENT OF                                                 800 Fifth Avenue, Suite 2000
DISMISSAL                                                                     Seattle, WA  98104-3188
                                                                                  (206) 464-7744

they posed no intergovernmental immunity problem, even if those facilities were run by federal contractors. *California*, 921 F.3d at 882-83. The only portion of AB103 the Court struck down was a single subsection that imposed heightened requirements *only* on institutions holding federal detainees—requirements above and beyond the general inspection scheme for other facilities, or in other words, a "specialized burden" on those facilities holding federal detainees. *Id. California's* analysis is therefore no different from the Ninth Circuit's decision in *Boeing*, which this Court previously distinguished, where the Ninth Circuit struck down specialized and heightened requirements imposed on a specific federal cleanup project being completed by a contractor. *See Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) (state regulation that imposed heightened environmental cleanup standards at a single location subjected to cleanup by federal contractor).

The *California* holding, like the holding in *Boeing*, shows why intergovernmental immunity does not apply here. Unlike those cases, Washington's MWA applies equally to all private employers in Washington. It imposes no specialized or heightened burden solely on federal contractors based on their status as federal contractors. It is accordingly like the portions of AB103 that the Ninth Circuit upheld in *California*. The fact that the Ninth Circuit recognized that federal contractors may benefit from the doctrine of intergovernmental immunity when faced with a targeted, discriminatory law—a point not in dispute—does not change this fundamental principle. Courts have long recognized that contractors may benefit from an intergovernmental immunity challenge where the subject law is discriminatory and imposed based on one's status as a federal contractor. *See North Dakota*, 495 U.S. at 434-45; *Boeing*, 768 F.3d at 842. That point, however, does not support the Court's conclusion here that federal contractors are equivalent to the federal government and exempt from even non-discriminatory laws.

In fact, the Ninth Circuit's suggestion that "federal contractors are treated the same as the federal government itself" for purposes of intergovernmental immunity is expressly limited

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

by the supporting citation, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988). *California*, 921 F.3d at 882 n.7. In *Goodyear*, a "direct state regulation" case, regulation of the federal contractor was deemed to be regulation of the federal government directly because the contractor was performing a federal function *within* a federally owned facility. 486 U.S. at 180-81 (contractor performed at a "federally owned nuclear production facility"). That is certainly not the case here, where GEO alone owns the NWDC. ECF No. 253-1 at 5 (RFA 1). To hold otherwise would misread *California* and contravene well-established Supreme Court authority, including *Goodyear* and *North Dakota*. Indeed, such a ruling is foreclosed by *California*'s binding holding that a state properly regulated institutions where federal civil immigration detainees were held so long as it did not impose a specialized and unique burden on those facilities.

## B. The Court's Proposed Order Dismisses Washington's MWA Claim Without a Sufficient Factual Record

### 1. The Proposed Order, Like GEO, Relies on Incomplete and Inaccurate Facts About State-Contracted Detention

In proposing to dismiss Washington's MWA claim, the Court assumes facts not in evidence and rules without the benefit of critical facts; specifically, the fact that similarly situated private contractors in Washington must—and do—comply with Washington's MWA.

As an initial matter, the Court's reliance on allegations contained in complaints filed in other actions—apparently to conclude that "facts are not in issue" in this case, ECF No. 306-1 at 8 n.3—respectfully, is improper. Allegations in *Malone v. Ferguson*, No. 19-5574 (W.D. Wash. June 24, 2019), and *Lough v. Ferguson*, No. 19-5543 (W.D. Wash. June 14, 2019), are no substitute for facts that the record in this case may or "may not reflect." *Cf.* ECF No. 306-1 at 8 n.3. GEO's counsel inexplicably filed the *Malone* complaint after oral argument and the Court correctly declined to consider it. Regardless, neither complaint suggests Washington's MWA discriminates against the federal government. Both *Malone* and *Lough* are at the pleading stage and challenge the state government's failure to pay the minimum wage at its Special

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Commitment Center. Even if the facts alleged in *Malone* and *Lough* are true, the Special Commitment Center is a government owned and operated facility that provides mental health treatment and rehabilitation for civilly committed sex offenders in Washington, and is statutorily exempt from Washington's MWA. Declaration of Byron Eagle in Support of Washington's Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Eagle Decl.) ¶ 3; Declaration of Sean Murphy in Support of Washington's Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Murphy Decl.) ¶ 4. The Special Commitment Center is not a proper comparator to the Northwest Detention Center, a facility privately owned and operated by GEO.[4]

A proper comparison for purposes of the intergovernmental immunity analysis would be privately owned and operated facilities with which the State contracts, such as facilities where residents are sent *after* their commitment at the Special Commitment Center. The Assistant Secretary of the Department of Social and Health Services (DSHS) explains that, after completing required treatment and being deemed safe to house outside of the Special Commitment Center, DSHS places residents in residential facility programs, operated either directly by DSHS or by a private contractor. Murphy Decl. ¶ 4. Where the facility is run by a private contractor, residents have vocational opportunities that the contractor provides support in finding and maintaining. *Id.* ¶¶ 8, 12-13. Washington's MWA applies when residents work in community-based jobs while housed in a facility run by a private contractor. *Id.* ¶¶ 11-13. In other words, Washington's MWA treats private detention providers the same—requiring that their residents make minimum wage for work performed—regardless of whether the contractor deals with the federal or state government.

---

[4] Even more, if the Court could properly compare private contractors to the state government, the Special Commitment Center, which provides mental health treatment and rehabilitation to sex offenders, is still not similarly situated to GEO, which provides no such services. *See Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (observing that the purpose of immigration detention is to protect the public and to ensure the immigrant's appearance at hearings, nowhere referring to rehabilitation).

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Similarly, when the Washington Department of Corrections (DOC) relies on private

2    contractors in Washington for services, those private contractors must also pay the minimum

3    wage. As DOC's Work Release Administrator submits in his declaration, state inmates nearing

4    the end of their sentence may be assigned to work-release facilities, three of which are state-run

5    and nine of which are run with assistance from private contractors. Declaration of Theodore

6    Lewis in Support of Washington's Response to the Court's Proposed Order Granting Summary

7    Judgment of Dismissal (Lewis Decl.) ¶ 4. If the state inmate is assigned to a private facility and

8    works within that private work-release facility, such as in food service, state inmates are

9    employed by the contractor and paid the minimum wage, and sometimes more. Lewis Decl. ¶ 6.

10    Neither GEO's citation to its own contract with DOC, or vague reference to other private

11    contracts with DOC in oral argument, render GEO immune. DOC contracted with GEO pursuant

12    to its authority under Wash. Rev. Code. § 72.68.040, which authorizes the detention of state

13    inmates *outside* the State of Washington. DOC never relied on GEO's services in Michigan

14    pursuant to that contract. Declaration of Debra Eisen in Support of State of Washington's

15    Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Eisen

16    Decl.) ¶¶ 5-6. The GEO-DOC contract was executed so that DOC may have access to extra bed

17    space in the event that both DOC was not able to place inmates in their own facilities or other

18    governmental facilities, which never transpired. Eisen Decl. ¶ 7. Although the never-used GEO-

19    DOC contract contemplated the payment of wages below Washington's minimum wage, that

20    makes sense as Washington's MWA could not apply in Michigan. And just as Washington

21    cannot enforce the MWA outside of Washington for state detainees, it also cannot enforce the

22    MWA outside of Washington for federal detainees, with the result that treatment of out-of-state

23    contractors is exactly equal:

24

25

26

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

13

**Does the Washington State Minimum Wage Apply?**

|  | Government Institution | Private Contract Facility In-State | Private Contract Facility Out-of-State |
|---|---|---|---|
| **Federal Detainees** | No | Yes | No |
| **State Detainees** | No | Yes | No |

## 2.   The Proposed Order Will Have Significant Consequences that the Court Fails to Consider

Finally, the problem with providing private contractors the exact same intergovernmental immunity defense as the federal government, as the Court proposes to do here, is evident through real-world examples. Given the clear differences between government institutions and private businesses, a myriad of generally applicable state laws treat government entities differently than private businesses.

For example, the Washington Department of Labor & Industries (L&I) enforces the Washington Industrial Safety and Health Act of 1973 (WISHA). Declaration of Lezlie A. Perrin in Support of Washington's Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Perrin Decl.) ¶ 3. Although the federal government is exempt from WISHA, L&I's Department of Occupational Safety and Health routinely inspects private contractors operating businesses on federal land or in federal buildings.[5] Perrin Decl. ¶ 4, Ex. A (observing that L&I's authority to investigate federal contractors on federally owned or leased land for failure to comply with WISHA regulations has long been recognized, including the example of private security contractors at the federal courthouse in Tacoma). In suggesting that federal contractors must be treated exactly the same as the federal government, the Court's Proposed Order undermines the applicability of such basic regulations and could exempt private businesses  from a myriad of laws designed to protect Washington residents in the workplace.

---

[5] L&I also reviews complaints of workplace safety within state DOC facilities, including of state inmates in their work programs. Perrin Decl. ¶ 5.

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Consideration of Washington's generally applicable tax statutes leads to the same conclusion. Washington's tax statutes treat governments (both federal and state) differently than private contractors. Declaration of Kathy Oline in Support of Washington's Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Oline Decl.) ¶ 3; Declaration of Mark Mullin in Support of Washington's Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Mullin Decl. ) ¶ 3. As the Assistant Director of Legislation and Policy for the Washington Department of Revenue explains, private contractors (whether they contract with the federal government, state government, or both) are subject to tax statutes that the federal and state government are exempt from. Mullin Decl. ¶ 3 For example, private contractors that own taxable real property, like GEO or Boeing, are subject to real estate taxes—unlike state and federal governments that own real property and are exempt. *Id.* ¶¶ 3-4. Private contractors are also subject to other taxes that, again, the state and federal governments do not pay. *Id.* ¶¶ 5-7. Given the number of for-profit companies performing federal contracts in Washington, a rule that equates some or all of them with the federal government, and thereby exempts them from generally applicable tax statues, could implicate hundreds of millions of dollars in annual state revenue. Oline Decl. ¶¶ 5-18.

In sum, the implication of the Court's proposed analysis is that private businesses could be rendered exempt from all generally applicable state laws and taxes simply by virtue of a contract with the federal government, with devastating consequences. *Id.* at ¶¶ 13-19. Under *North Dakota*, this cannot be. Intergovernmental immunity simply prohibits Washington from discriminating against private businesses because they are in contract with the federal government, but it does not require Washington to treat private businesses with federal contracts better than other private businesses that do business in the state. Because similarly situated private businesses in Washington must comply with Washington's MWA whether they contract with the state or not, so too must GEO.

STATE OF WASHINGTON'S RESPONSE TO THE COURT'S PROPOSED ORDER GRANTING SUMMARY JUDGMENT OF DISMISSAL

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

C.   **The Court's Proposed Order Would Improperly Dismiss Washington's Unjust Enrichment Claim**

The Court's Proposed Order summarily proposes to dismiss Washington's unjust enrichment claim, as a result of its intergovernmental immunity analysis, despite GEO never seeking such relief. In so doing, the Court mistakenly conflates the State's separate and alternative claims and treats unjust enrichment as if it were dependent on, or derivative of, the MWA. *See* ECF No. 306-1 at 8. It is not. Washington's retrospective unjust enrichment claim involves entirely different elements than the standards at issue in its future-looking, statutory, MWA claim. *Sua sponte* dismissal of Washington's unjust enrichment cause of action on the sole basis that its MWA claim is purportedly barred by intergovernmental immunity would constitute reversible error.

1.   **The Court's Proposed Dismissal of Washington's Unjust Enrichment Claim Would Constitute Procedural Error**

A Court commits procedural error in dismissing a claim on summary judgment in the absence of a motion from the defendant if there is not sufficient notice or opportunity to be heard on the relevant evidence and law. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014); Fed. R. Civ. P. 56(f). That rule applies in three ways here.

First, there has been no motion, or briefing, applying intergovernmental immunity to Washington's unjust enrichment claim. GEO moved for summary judgment in 2018 on grounds of intergovernmental immunity *with regard to Washington's MWA claim only*. *See* ECF No. 149 at 1, 15 ("Defendant GEO's Motion for Summary Judgment on Plaintiff's First Cause of Action" explicitly sought "summary judgment on the Complaint's First Cause of Action"). As such, all of the briefing filed by the parties in relation to that motion, as well as the order denying the motion, pertained exclusively to the MWA claim. *See id.*; Washington's Resp. to GEO's Mot. for Summ. J., ECF No. 155 at 7 ("Intergovernmental immunity is no bar to Washington's minimum wage claim…"); GEO's Reply in Supp. of Mot. for Summ. J. on Pl.'s First Cause of

STATE OF WASHINGTON'S RESPONSE TO THE COURT'S PROPOSED ORDER GRANTING SUMMARY JUDGMENT OF DISMISSAL

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  Action, ECF No. 160; Order Denying Def. The GEO Group, Inc.'s Mot. for Summ. J. on Pl.'s

2  First Cause of Action, ECF No.162 ; GEO's Mot. for Recons. of Order Denying Mot. for Summ.

3  J. on First Cause of Action, ECF No. 164 ; Order Denying GEO's Mot. for Recons. of Order on

4  First Cause of Action, ECF No. 165.

5      Although the United States recently filed a Statement of Interest asserting

6  intergovernmental immunity, the United States likewise only claimed that defense precluded

7  Washington's MWA claim against GEO. ECF No. 290 at 2 ("The United States accordingly

8  submits that the doctrine of intergovernmental immunity precludes application of Washington's

9  Minimum Wage Act . . . to the GEO Group, Inc. . . ."). Thus, the subsequent briefing on

10  intergovernmental immunity focused on the MWA claim alone.  *See* Washington's Resp. to

11  GEO's Mot. for Recons. and United States' Statement of Interest, ECF No. 297 at 11-24; United

12  States' Suppl. Statement of Interest in Reply to Washington's Resp., ECF No. 298. *But see*

13  GEO's Reply Supporting Recons. of Summ. J. Order, ECF No. 299 at 9.

14      Only on Reply in the most recent round of briefing did GEO even reference "unjust

15  enrichment," and then only in a heading and two off-hand references to the "fair-market wage."

16  ECF No. 299 at 9 (titling Section III of its brief as "The State's Application of the MWA and

17  State Unjust Enrichment Laws is a Prohibited 'Direct Regulation' Pursuant to Intergovernmental

18  Immunity"); ECF No. 299 at 10-11 (twice referencing the "fair-market wage" in an argument

19  that "the MWA . . . cannot be applied to GEO"). GEO advanced no argument for the application

20  of intergovernmental immunity to the actual elements of Washington's unjust enrichment claim

21  at oral argument, nor did the Court ask any questions about it. *See* Declaration of Marsha Chien

22  in Support of Washington's Response to the Court's Proposed Order Granting Summary

23  Judgment (Chien Decl.) ¶ 3, Ex. A (transcript of September 12, 2019 oral argument). Because

24  GEO only suggested, for the first time on reply and without actual briefing, that

25  intergovernmental immunity applies to the State's unjust enrichment claim, the State has not had

26  a meaningful opportunity to respond.

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Second, the Court has not provided the State sufficient notice to dismiss the unjust

2    enrichment claim. Under Federal Rule of Civil Procedure 56(f), "the court may . . . consider

3    summary judgment on its own," but it may do so only "after identifying for the parties material

4    facts that may not be genuinely in dispute," and "[a]fter giving notice and a reasonable time to

5    respond." "Where the district court grants summary judgment in the absence of a formal

6    motion," the Ninth Circuit will "review the record closely to ensure that the party against whom

7    judgment was entered had a full and fair opportunity to develop and present facts and legal

8    arguments in support of its position." *Portsmouth Square Inc. v. S'holders Protective Comm.*,

9    770 F.2d 866, 869 (9th Cir. 1985) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.

10   1982)); *see also Albino*, 747 F.3d at 1176 (quoting *Buckingham v. United States*, 998 F.2d 735,

11   742 (9th Cir. 1993)) ("Reasonable notice implies adequate time to develop the facts on which

12   the litigant will depend to oppose summary judgment."); *Norse v. City of Santa Cruz*, 629 F.3d

13   966, 971-72 (9th Cir. 2010); *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662

14   F.2d 641, 645 (9th Cir. 1981).

15   Here, the Court provided the State only ten days to respond to a Proposed Order that

16   provides little to no reasoning for dismissing the unjust enrichment claim. In its entirety, the

17   Proposed Order declares, without legal citation, that Washington's unjust enrichment claim "is

18   based on the failure to pay" the minimum wage, "so the unjust enrichment claim fails as well."

19   ECF No. 306-1 at 8. The analysis for dismissal is likely sparse because the Court has not

20   benefited from full briefing by the parties. Under these circumstances and until the Court more

21   completely gives notice of its factual and legal basis for proposing to dismiss the unjust

22   enrichment claim, Washington has not had reasonable notice or opportunity to be heard.

23   *Compare* ECF No. 306-1 at 8, *with* Fed. R. Civ. P. 56(a), (f)(3) (specifying that summary

24   judgment rules apply to "each claim," and requiring court considering summary judgment on its

25   own to first "identify[] for the parties material facts that may not be genuinely in dispute" as to

26   each claim).

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      Third and finally, the Ninth Circuit recently denied GEO's Petition for Mandamus, ECF

2   No. 296, and GEO must now provide the State all of the financial documents and information

3   compelled by this Court as relevant to the unjust enrichment claim. ECF No. 133. Thus, at a

4   minimum, the Court should correct its procedural error and decline to enter judgment on

5   Washington's unjust enrichment claim until after GEO produces the additional evidence that

6   Washington may use to prove unjust enrichment and avoid summary judgment. *See* Fed. R. Civ.

7   P. 56(d) (allowing the court to defer consideration of a dispositive motion so that a nonmovant

8   can take discovery); Declaration of Andrea Brenneke in Support of State of Washington's

9   Response to the Court's Proposed Order Granting Summary Judgment of Dismissal (Brenneke

10  Decl.) ¶¶ 3-9 (confirming GEO's failure to produce evidence regarding unjust enrichment

11  ordered by this Court and the Ninth Circuit).

12
13      **2.    The Court's Proposed Order Substantively Errs in Conflating the Unjust
           Enrichment and MWA Claims**

14      Even assuming *arguendo* that it is procedurally proper to dismiss Washington's entire

15  case, the only "material fact" the Court noted in its single-sentence explanation for dismissing

16  the unjust enrichment cause of action—that "[t]he State's demand for damages for unjust

17  enrichment is based on the failure to pay the State of Washington's Minimum Wage act wages,"

18  ECF No. 306-1 at 8—is incorrect as a matter of law and factually disputed.

19          **a.    The unjust enrichment and statutory MWA claims are legally distinct**

20      First, Washington's common law cause of action for unjust enrichment is a well-

21  established, stand-alone claim, independent of any state statute or contract; indeed, unjust

22  enrichment "is founded on notions of justice and equity." *Young v. Young*, 191 P.3d 1258, 1263

23  (Wash. 2008). In Washington, unjust enrichment occurs "when one retains money or benefits

24  which in justice and equity belong to another." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*,

25  810 P.2d 12, 18 (Wash. Ct. App. 1991). "Unjust enrichment is the method of recovery for the

26  value of the benefit retained absent any contractual relationship because notions of fairness and

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   justice require it." *Young*, 191 P.3d at 1262. Three elements must be established in order to

2   sustain a claim based on unjust enrichment: (1) the defendant receives a benefit; (2) the received

3   benefit is at the plaintiff's expense (or stated alternatively, there is "an appreciation or knowledge

4   by the defendant of the benefit"; and (3) the circumstances make it unjust for the defendant to

5   retain the benefit. *Id*. (*citing Bailie Commc'ns, Ltd.*, 810 P.2d at 18).

6       Washington pleaded its unjust enrichment claim separate and apart from the MWA claim.

7   In its Complaint, Washington set forth its Second Cause of Action, unjust enrichment, and its

8   related prayer for disgorgement to request that this Court use its equitable powers on behalf of

9   the public interest to divest GEO of the amount by which it has been unjustly enriched as a result

10  of utilizing detainee labor to operate the NWDC without paying adequate compensation. *See*

11  ECF No. 1-1 (Compl. ¶¶ 6.1-6.6, 7.5-7.6). While Washington's Complaint also alleges facts and

12  claims related to the MWA and its first cause of action, the State need not succeed on a MWA

13  claim as a condition precedent to, or element of, its unjust enrichment claim and second cause

14  of action. *Id*. The Court itself has recognized that the State's unjust enrichment claim, and the

15  disgorgement remedy it seeks, are separate and distinct from its MWA claim and injunctive relief

16  remedy. After extensive motions practice, this Court granted Washington's Motion to Compel

17  GEO's financial records that were sought specifically because the *financial benefit* GEO

18  received from detainee labor is relevant to the State's unjust enrichment liability claim, as well

19  as the disgorgement remedy. *See* ECF No. 133 (Order); ECF No. 126 (Joint LCR 37 Motion);

20  ECF No. 142 (Mot. for Recons.); ECF No. 145 (Mot. for Certification of Interlocutory Appeal);

21  ECF No. 146 (Resp. to Mot. for Certification of Interlocutory Appeal); ECF No. 157 (Order

22  Denying Mot. for Certification of Interlocutory Appeal). The Ninth Circuit Court of Appeals,

23  after briefing and argument, upheld that ruling and denied GEO's Petition for Mandamus. ECF

24  No. 296 (Order).

25      In the Ninth Circuit, because a plaintiff may bring alternative claims and causes of action

26  arising out of a common nucleus of facts, courts should not dismiss claims brought for unjust

1    enrichment as duplicative or superfluous of other claims. *Astiana v. Hain Celestial Grp., Inc.*,

2    783 F.3d 753, 762-63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)). In fact, courts routinely

3    recognize that claims for unjust enrichment exist separate and apart from minimum wage act or

4    other statutory claims. For example, the district court that addressed similar claims brought by

5    Colorado immigration detainees against GEO, and dismissed the GEO detainees' Colorado

6    minimum wage act claim because of the narrow purpose of the Colorado statute, refused to

7    dismiss Plaintiffs' unjust enrichment claim. *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125,

8    1133 (D. Colo. 2015). In so doing, the court noted that, though the minimum wage act claim "is

9    dismissed and not available," "Plaintiffs are permitted to plead in the alternative," as "the

10   remedies sought by the [minimum wage] claim and the unjust enrichment claim are different,

11   and the unjust enrichment claim is not duplicative." *Id.*; *see also Menocal v. GEO Grp., Inc.*,

12   882 F.3d 905, 925-26 (10th Cir. 2018) (upholding unjust enrichment class action brought by

13   detainee workers against GEO); *Astiana*, 783 F.3d at 762 (reversible error to construe "quasi-

14   contract" cause of action as "duplicative or superfluous to [plaintiff's] other claims").

15          Of course, it makes sense that neither the United States nor GEO briefed that

16   Washington's unjust enrichment claim should be barred by intergovernmental immunity.

17   Intergovernmental immunity cannot apply to Washington's common law claim of unjust

18   enrichment as it is generally applicable and has no defined categories capable of discriminatory

19   application. Indeed, as the Court has noted, civil detainees of Washington's Special Commitment

20   Center have brought unjust enrichment claims against the State challenging their pay for work

21   inside that government institution. ECF No. 306-1 at 8 n.3. Even if the Court continues to

22   improperly compare GEO to State institutions, instead of similarly situated private contractors,

23   intergovernmental immunity does not apply. There can be no claim of discrimination with regard

24   to the application of the unjust enrichment cause of action.

25

26

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**b.     The unjust enrichment claim relies on different facts than the MWA claim—facts that are either disputed or have been resolved in favor of Washington**

Because none of the elements of an unjust enrichment claim requires proof of a MWA violation, it would be an error of law for the Court to dismiss Washington's unjust enrichment claim on the mistaken grounds that its claim is "*based on* the failure to pay the State of Washington's Minimum Wage Act wages." *Cf.* ECF No. 306-1 at 8 (emphasis added). GEO's decision to pay $1 per day and not statutory minimum wages is an undisputed fact that *supports* the State's unjust enrichment claim, but the claim itself is *based on* completely different facts. Namely, the State's unjust enrichment claim is based on the facts that GEO utilizes detainee labor to operate NWDC, a for-profit business; does not pay a fair wage to detainees for their work; benefits by retaining the difference between the $1 per day that it pays detainees and the fair wage that it should pay for work performed at NWDC; and that it is unjust for GEO to retain the benefit gained from its practice of failing to pay adequate compensation to detainees for the work they perform at NWDC. ECF No. 1-1 (Compl. ¶¶ 6.1-6.6).

Record evidence, most of which is undisputed, supports each of the elements of unjust enrichment. GEO benefits from detainee labor at the NWDC, both operationally and financially. GEO staffs its kitchen, laundry, janitorial, and barbershop with detainee-workers, who work shifts throughout the day and the evening. *See* ECF No. 251 at 3-16. Hundreds of detainees work in the NWDC every day, at specific locations and in assigned shifts that last from half an hour to six hours at a time. ECF No. 251 at 3; ECF No. 253-10 (GEO 30(b)(6) Dep. 150:2-24, 157:6-9); ECF No. 253-25 (table of daily jobs and hours worked broken down by pod/living area and the locations outside the housing units where detainees work). GEO gains an operational benefit by using detainee-workers to complete its own contractual duties under the GEO-ICE contract and meet its audit standards. *Compare* ECF No. 246-3 (GEO-ICE Contract) at 57-58, 83 (listing GEO's contract responsibilities of ensuring the facility is "clean and vermin/pest free;" laundering, changing, and distributing linens; and preparing meals), *with* ECF No. 253-15 (RFAs

STATE OF WASHINGTON'S RESPONSE TO THE COURT'S PROPOSED ORDER GRANTING SUMMARY JUDGMENT OF DISMISSAL

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

23-44) (confirming the VWP jobs are the same work as GEO's contract responsibilities of cleaning common areas, doing laundry, and preparing food).

Given its practice of leveraging relatively large numbers of detainee workers, and paying them $1 per day, instead of paying a prevailing wage to work-eligible detainees or Tacoma-area residents who also could do the work, GEO benefits financially from detainee labor. Although Washington still lacks complete information about the full amount of financial benefit GEO has received from detainee labor at the NWDC, *see* ECF Nos. 133, 296, the undisputed evidence in the record is that NWDC has been exceptionally profitable from 2005-present, exceeding the margin of profit built into the ICE-GEO contract. Critically, the undisputed evidence shows that GEO would have profited even if GEO had paid the minimum wage or a fair wage to detainee workers. *See* ECF No. 268-5 (Washington's expert report and supplemental expert report with appendices). In addition, there is record evidence that GEO benefits at the expense of detainee workers who earn less than fair wages, only $1/day, but perform work anyway because it provides the only opportunity to earn money needed to stay in touch with loved ones and to supplement the limited food and personal hygiene rations they receive. *See* ECF Nos. 268-6 to 268-11.

In sum, Washington's unjust enrichment claim is separate and apart from its MWA claim and requires the parties to present evidence that addresses the core questions posed by the Court and that lie at the heart of this litigation: "But what of GEO's detainees?  . . . Is GEO unfairly profiting by misuse of the Voluntary Work Program?" ECF No. 306-1 at 9. This Court, sitting in equity in *this* litigation, has the authority to answer these questions, determine if GEO has benefitted from detainee labor, and if so, decide if it is unjust for GEO to keep that benefit without disgorgement. Rather than summarily dismiss the unjust enrichment claim, the Court should properly adjudicate it following the presentation of evidence at trial.

STATE OF WASHINGTON'S RESPONSE TO
THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

### III.    CONCLUSION

2        The Court should decline to enter its Proposed Order. It contains important errors of law

3   and improperly dismisses the case. Instead, the Court should leave its prior order denying GEO

4   summary judgment based on intergovernmental immunity undisturbed. In the alternative, the

5   Court should decline to reach the unjust enrichment claim.

6        Dated this 4th day of October 2019.

7                                                    Respectfully submitted,

8                                                    ROBERT FERGUSON
                                                     Attorney General of Washington
9

10                                                   s/ *Marsha Chien*
                                                     MARSHA CHIEN, WSBA No. 47020
11                                                   ANDREA BRENNEKE, WSBA No. 22027
                                                     LANE POLOZOLA, WSBA No. 50138
12                                                   PATRICIO A. MARQUEZ, WSBA No. 47693
                                                     Assistant Attorneys General
13                                                   Office of the Attorney General
                                                     800 Fifth Avenue, Suite 2000
14                                                   Seattle, WA 98104
                                                     (206) 464-7744
15                                                   marsha.chien@atg.wa.gov
                                                     andrea.brenneke@atg.wa.gov
16                                                   lane.polozola@atg.wa.gov
                                                     patricio.marquez@atg.wa.gov
17

18

19

20

21

22

23

24

25

26

1

## CERTIFICATE OF SERVICE

2      I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6

7   Dated this 4th day of October 2019 in Seattle, Washington.

8                                          s/ *Caitilin Hall*
                                          Caitilin Hall
9                                          Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S RESPONSE
TO THE COURT'S PROPOSED ORDER
GRANTING SUMMARY JUDGMENT OF
DISMISSAL

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492