The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No.: 3:17-cv-05806-RJB<br><br>**DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF GREGORY BINGHAM**<br><br>**NOTE ON MOTION CALENDAR:**<br>Date: November 22, 2019 |

The GEO Group, Inc. ("GEO") respectfully submits this memorandum in opposition to the State of Washington's ("Washington" or the "State") untimely motion to exclude the expert testimony of Gregory Bingham (Dkt. 331).

**INTRODUCTION**

Washington's motion to exclude the testimony of GEO's expert, Gregory Bingham, should be denied as untimely, as it was filed *over four months* after the deadline for motions to exclude expert testimony. Washington's failure to request a modification of the scheduling order and/or to re-open the long expired deadline demonstrates the utter failure by Washington to establish the good cause necessary for obtaining such relief.

In the event the Court decides to evaluate Washington's motion on the merits, it should nonetheless be denied because Mr. Bingham's testimony is proper: it does not contain legal opinions, it is reliable, and it will assist the jury in digesting the complexities of the government



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

contracting procurement process – which is wholly relevant to the claims and defenses in the case, most notably GEO's derivative sovereign immunity defense.

**ARGUMENT**

**A. The State's Motion is Untimely and Must Be Denied.**

1. The Deadline For Motions to Exclude Expert Testimony Passed Four Months Ago

LCR 16(b)(4) provides that, "Unless otherwise ordered by the court, parties shall file any motion to exclude expert testimony for failure to satisfy Daubert v. Merrell Dow Pharmaceuticals, Inc. and its progeny not later than the deadline to file dispositive motions." Pursuant to the controlling Scheduling Order (Dkt. No. 171), the deadline to file dispositive motions in this case was **July 2, 2019**. Thus because the dispositive motion deadline lapsed *over four months ago*, the instant motion is indisputably untimely.[1]

2. Washington Failed to Demonstrate the Good Cause Necessary to Warrant Consideration of its Untimely Motion

FRCP 6(b)(1)(B) provides that "[w]hen an act... must be done within a specified time, the court may, for good cause, extend the time... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, however, Washington not only filed its motion to exclude expert testimony four months after the applicable deadline, but also failed to seek leave of court to do so on the basis of Rule 6(b)(1)(B). In fact, Washington has made no effort whatsoever to demonstrate "good cause" or "excusable neglect" for its failure to timely file the instant motion. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, C14-5880JLR, 2015 WL 12930131, at *1 (W.D. Wash. Dec. 10, 2015).

---

[1] GEO presumes that the motion to exclude its expert, Mr. Bingham, is a *Daubert* motion and not a motion in limine. Local Rule 7(d)(4) clearly requires all motions in limine to include a certification that the movant has conferred in good faith, and also requires all motions in limine to be filed "as one motion." Should the State argue in their reply that this motion should be considered as a motion in limine, it has lost the opportunity to bring additional motions in limine and has failed to follow the conferral procedures in the Local Rules, subjecting them to the sanctions of this Court, as noted in Local Rule 11.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Yet, Washington did exactly that by filing its motion in an untimely manner without seeking the court's permission to do so. In fact, Washington seeks to deflect the issue by vaguely acknowledging the untimeliness of this motion in a cursory footnote, stating that Washington "seeks to exclude Mr. Bingham's testimony at this stage because expert disclosure deadlines in the *Nwauzor* case passed in September and October 2019, and GEO's counsel previously indicated that he would potentially be disclosed as an expert in that case as well." (Dkt. No. 331 at 7, FN 1). This does not constitute a proper request to reopen motion deadlines, nor should the Court treat it as one.[2] Accordingly, its motion should be either stricken or denied. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.* at *1 ("The Ninth Circuit has determined that it is appropriate to either strike or deny a motion as untimely where it is filed after the deadline without an accompanying request to modify the scheduling order.") (collecting cases).

Consideration of the instant motion would be especially inequitable here since Washington had all of the information it needed to seek a timely modification of the pretrial schedule in accordance with this Court's local rules. According to Mr. Polozola's Declaration, Washington became aware of the possibility that Mr. Bingham might submit an expert report in the *Nwauzor* case on May 23, 2019 – roughly six weeks before the deadline for motions to exclude expert testimony in this case. (Dkt. 332 at ¶ 5). This provided Washington with ample time to follow LCR 7(j)[3], which directs parties to file motions for relief from a deadline "sufficiently in advance of the deadline to allow the court to rule on the motion prior to the

---

[2] Additionally, Washington supports its "excuse" with an unverified declaration statement from its own counsel regarding a nebulous "conversation" with GEO's prior counsel. While GEO denies Washington's representations regarding the substance of any conversation on this topic – even if the conversation took place exactly as alleged, it is not clear how this conversation in any way excuses Washington's failure to abide by the scheduling order's deadlines in this case.

[3] LCR 7(j) further provides that in the event of a "true, unforeseen emergency" that was not known in advance of the deadline (which this is not), Washington should have conferred with GEO or sought a telephonic motion pursuant to LCR 7(i) to raise the issue with the Court. Here, Washington did neither.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

deadline." Washington is no doubt aware of these requirements (as evidenced by the prior Motion for Relief from Deadlines it filed in this very case, Dkt. No. 86) but inexplicably chose to ignore them here. At no time in the six weeks after the May 23, 2019 conversation cited in Mr. Polozola's declaration did Washington attempt to verify whether GEO intended to submit Mr. Bingham as an expert in the *Nwauzor* case, nor did it file a motion for relief from deadlines. Instead, Washington simply allowed the deadline to lapse without taking any action, despite having the information, time and opportunity to do so.

Thus, procedurally, Washington's motion fails in three different ways. First and foremost, the motion was filed four months after the July 2, 2019 deadline for motions to exclude expert testimony. Second, Washington omitted a necessary request to modify the scheduling order. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 610 n.7 ("Had the scheduling order simply barred further motions after the cut-off date, the district court could have denied any late-filed motions solely on that ground, absent a request to modify the order."). Third, because Washington could have, but declined to move for relief from deadlines in advance of the July 2, 2019 deadline, it cannot establish the good cause or excusable neglect necessary for consideration of a motion filed after the relevant deadline. *See Heggem v. Snohomish Cty. Corr.*, No. C11-1333 RSM, 2015 U.S. Dist. LEXIS 48354 (W.D. Wash. Apr. 3, 2015) (a motion filed after the relevant deadline cannot be considered absent a showing of good cause). For each of these reasons, the Court should either strike or deny Washington's motion to exclude the testimony of Gregory Bingham.

**B. The Motion To Exclude Should Be Denied on the Merits Because Mr. Bingham's Opinions Are Both Proper and Admissible.**

In the event the Court elects to review the merits of the instant motion, it should nonetheless be denied. Washington incorrectly argues that Mr. Bingham's testimony should be excluded because his opinions: (1) are not sufficiently helpful or reliable to warrant admission under FRE 702; and (2) constitute improper legal conclusions on issues of contract interpretation. GEO addresses each argument in turn.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1. <u>Mr. Bingham is an Expert in the Area of Government Contracts and Properly Opines on Government Contracting Industry Custom and Practice</u>

Federal Rule of Evidence 702 governs the admissibility of opinions offered by a witness "qualified as an expert by knowledge, skill, experience, training, or education." Such testimony must be "reliable" in the sense that it has "a reliable basis in the knowledge and experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quotation marks omitted). The reliability inquiry is a "flexible one," which the district judge has "broad latitude" to shape. *Id.* Here, Mr. Bingham easily satisfies the flexible reliability standard.

a. Mr. Bingham's Opinions Are Reliable.

As an initial matter, the State seeks to exclude Mr. Bingam's expert report as unreliable, by applying the standard utilized for experts on scientific topics. *See* ECF 331 at 9. That standard is wholly inapplicable here. Instead, "[w]here expert opinion is proffered on a non-scientific topic, the court's reliability analysis focuses on the personal knowledge or experience of the witness rather than scientific methodology." *Greenlake Condo. Ass'n v. Allstate Ins. Co.*, No. C14-1860 BJR, 2016 WL 4498251, at *2 (W.D. Wash. Feb. 5, 2016). Courts will consider an expert to be qualified based upon "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because the Rule "contemplates a broad conception of expert qualifications," only a "minimal foundation of knowledge, skill, and experience" is required. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). A "lack of particularized expertise goes to the weight of [the] testimony, not its admissibility." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993); *Easton v. Asplundh Tree Experts*, Co., No. C16-1694RSM, 2017 WL 4005833, at *3 (W.D. Wash. Sept. 12, 2017).

Here, Mr. Bingham's opinions are not scientific in nature and his reliability is therefore assessed by his personal experience in the field. There is no question Mr. Bingham has extensive federal procurement and government contracts experience. Mr. Bingham has over 32



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

years of experience in the field of government contracting matters, advising hundreds of clients on a variety of government contracting issues relevant to this case –such as: procurement, FAR requirements, reimbursements, contract administration, and accounting processes and procedures. ECF 332-1, 4. Furthermore, he is a professor at George Washington University and teaches courses on government contracts and pricing. (Bingham Dep. 17:18-23). And, he has been testifying on the topic of government contracting and procurement since 1994, and routinely consults with clients about government contracts procurement, compliance, and administration matters. (Bingham Dep. 19:4-22). While the State attempts to undercut his experience by focusing on the fact that he has less experience regarding the narrow subset of government contracts related to the detention setting, this lack of "particularized" experience does not undermine his broader experience. This is particularly true where there is no material difference in the overall federal procurement or government contracting process between federal detention and other industries that regularly contract with the United States. The overall contracting process and form of contracts is the same, regardless of the specific industry. Mr. Bingham's broader experience focuses on the key issues upon which he opines: the procurement process, general types of government contracts (from sealed bid to fixed fee), post-execution modifications, audits, invoicing and pricing. Regardless of whether the experience is specific to detention issues, Mr. Bingham's accounting experience goes to the issues at the heart of this case: "I have quite a lot of experience in . . . educating and training contractors on how to properly charge their labor and . . . assisting in the accounting operations of government contractors in properly accounting for labor costs." (Bingham Dep. 30:16-21). Accordingly, because Mr. Bingham has extensive experience in the government contracting field, and his experience is directly tied to the key issues in this case – for example, the solicitation, execution and operation of GEO's contract with ICE related to the Northwest Detention Center (the "ICE Contract") and the pricing and reimbursement process related to ICE's mandated Voluntary Work Program ("VWP"), his opinions are reliable and should not be



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

excluded. *See Greenlake Condo. Ass'n*, 2016 WL 4498251, at *3 (finding an architect with 35 years of experience could serve as an expert in building envelope investigations).

b. Mr. Bingham's Opinions are Relevant to GEO's Intergovernmental Immunity and Derivative Sovereign Immunity Defenses *and* the Unjust Enrichment Claims.

The State attempts to challenge the relevance of Mr. Bingham's opinions by arguing that they will not assist the jury in deciding any issue of consequence. This argument falls flat. "In terms of relevancy, the 'central concern' of Rule 702 is whether expert testimony is helpful to the jury." *Dickinson v. City of Kent*, No. C06-1215RSL, 2007 WL 4420931, at *1 (W.D. Wash. Dec. 14, 2007). There is no question that Mr. Bingham's testimony, which breaks down the contract's highly technical components and contemplated billing and reimbursement procedures –both generally and specifically with respect to the VWP – would be helpful to the jury.

Contrary to the State's assertion that intergovernmental immunity has been "rejected repeatedly," this Court instead has ruled that it did not have an appropriate record upon which to rule on intergovernmental immunity at a summary judgment posture. To that end, the Court explicitly stated that the reason it was denying GEO's motion was because there were factual issues in dispute, but that "[t]he application of the defense of intergovernmental immunity remains an undecided issue." ECF 322, 2. Thus, the State misstates the status of the intergovernmental immunity defense. Insofar as the State implies that the opinion is inconsistent with the Court's view of intergovernmental immunity, "[j]udges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998). Accordingly, because the opinion is clearly relevant to intergovernmental immunity – from both a discriminatory and, perhaps even more, "direct regulation" perspective – and would provide helpful information to a person who is unfamiliar with government contracts, it is unlikely to confuse the jury.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Moreover, it is indisputable that Mr. Bingham's expert opinions regarding the bid, solicitation, and Contract Line Item (referred to as a CLIN) structure of the ICE Contract, particularly as they relate to the VWP, are directly relevant to GEO's derivative sovereign immunity defense. As highlighted in prior briefing in this case, a federal government contractor is entitled to derivative sovereign immunity where the acts in question do not "exceed[] [the] authority" granted under the federal contract and where that authority has been "validly conferred". *See Yearsley v. W. A. Ross Construction Co.*, 309 U.S. 18, 20 (1940); *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, 136 S. Ct. 663 (2016). Mr. Bingham's expert opinions are crucial to assist the factfinder's overall understanding of the complex nature, scope and verbiage of the ICE Contract and to assist in their ability to determine whether GEO is entitled to derivative sovereign immunity based on the Supreme Court's above referenced standard. Moreover, to the extent the State intends to continue its misguided reliance on *Cabalce v. Thomas E. Blanchard & Associates, Inc.*, 797 F.3d 720, 732 (9th Cir. 2015), Mr. Bingham's opinions are clearly relevant to GEO's supposed "discretion in the design process" of the VWP. And, contrary to the State's blanket assertions, GEO's derivative sovereign immunity defense is alive and well – just because the Court denied summary judgment does not take the issue off the table at trial.

In addition, Mr. Bingam's report is relevant to the State's unjust enrichment claim. The elements of unjust enrichment are: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1017 (W.D. Wash. 2019). Where a contractual relationship underscores an unjust enrichment claim, the expectations under the contract are relevant to whether the "circumstances make it unjust for defendant to retain the benefit" without payment. *Id.* Under the State's theory, GEO obtained a benefit (to which it was not entitled to retain) from the VWP work. As GEO has argued that the VWP's operation and $1/day payment structure were and remain explicitly authorized by the ICE Contract (and by extension the Federal Government), the contract's terms and



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

contemplated billing,reimbursement, modification, and oversight structure are the exact "circumstances" a jury will need to assess. Accordingly, Mr. Bingham's testimony will help the trier of fact understand the circumstances under which GEO solicited, contracted, and operated the VWP.

There is no question government contracts are complex, dense, utilize uncommon verbiage, and often hard for a layperson to understand. And, the average person is not aware of the procurement process for government contracts—the very process by which expectations for each party are determined at the outset. Nor is the average juror equipped to parse through contract terms to determine their importance or relevance to the overall contract. Thus, Mr. Bingham's testimony will provide critical background for the jury and will allow a jury to assess whether the ICE Contract itself weighs against a finding of unjust enrichment.

Finally, the State's conjured conflict between Mr. Bingham's testimony and GEO's RFA responses does not create a basis for exclusion. Mr. Bingham concluded, based upon the terms of the ICE Contract itself, as well as the bidding process, the billing and reimbursement structure of the parties, and ICE's failure to exercise any of its contractual rights to reduce the payment to GEO or terminate, that the ICE Contract contemplated a $1.00 per day pass-through reimbursement. ECF 332-1, 3. The RFA in question does not ask about the reimbursement term, nor does it ask about whether GEO was "contractually permitted" to pay more than $1.00 per day. Instead, it vaguely asks GEO to admit it had the "option" to pay more than $1.00 per day. *See* ECF 253-15 at 22 (RFA 67). This vague RFA does not undermine or counter Mr. Bingham's testimony about the terms of the ICE Contract itself. And, insofar as the two sources are in conflict, the conflict goes to the weight, not the admissibility of the opinion. Additionally, the State's argument appears to rest on an assumption that the State will introduce RFA No. 67 as part of its case. As the State also argues that Mr. Bingham's testimony addresses that same issue, the State appears to concede that his report and testimony is relevant to the issues that will be placed before the jury.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

2. Neither Mr. Bingham's Expert Report nor Deposition Testimony Offer Improper Legal Conclusions

As a general rule, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter*, 373 F.3d at 1016 (internal citations and quotation marks omitted); *see also* Fed.R.Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue"). Furthermore, case law is clear that an expert opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Hangarter*, 373 F.3d at 1016 (quoting FRE 704(a)); *U.S. v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) ("Generally, experts may testify as to their opinions on ultimate issues to be decided by the trier of fact"). "[T]estimony 'embracing' the ultimate issue of fact is admissible, while testimony flatly stating a conclusion of law is not." *Kohler Co. v. Watts Water Tech., Inc*, No. CV 06-0143-AG(VBKX)) 2009 WL 4263556, at *3 (C D. Cal., Mar. 17, 2009) (explaining the limitations of *McHugh* and *Crow Tribe*). Mr. Bingham's report offers an opinion on the typicality of the ICE Contract and its component parts in light of his vast experience with federal government contracts and the procurement and operational processes related thereto, the scope of work to be performed by GEO under the ICE Contract and the accounting procedures contemplated and implemented with respect to the VWP. It does not opine on the ultimate legal issue of whether GEO must comply with Washington's Minimum Wage Act or whether GEO was unjustly enriched.

Washington argues that Mr. Bingham's opinion is improper expert testimony insofar as he offers his opinion that HSCEDM-15-R-00001 (and CLIN 0003) contemplated a specific payment structure, a pass through reimbursement of $1 per day, for the VWP. Mr. Bingham's report begins by explaining that based upon his 32 years of experience with federal government contracts, there is a specific procurement process through which the Government operates,



AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

wherein the Government and the contractor exchange information which typically results in clear and objective contractual requirements. ECF 332-1, pg. 3-7. Based upon this extensive understanding of the procurement process, Mr. Bingham reviewed the following sentence from the Government's 2015 solicitation documents: "Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. Contractor shall not exceed the amount shown without prior approval by the Contracting officer." ECF 332-1, pg 11. Based upon this term, the standard process for government contracting, and those terms ultimately proposed by GEO in response to the solicitation, Mr. Bingham reached the conclusion that: "there appears to have been no ambiguity about the Voluntary Work Program and the expected rate of reimbursement." *Id.*at 11; *see also id* at 13 ("it appears that both parties expected GEO to pay detainees $1.00 per day and invoice ICE at the same rate."). As support, Mr. Bingham reviewed ICE's form G-504, the bids, the ultimate proposal, a number of invoices, as well as the fact that ICE had not taken any action since execution of the contract to indicate GEO's failure to comply with the contact as related to the VWP. *Id* at 13, fn 31. This opinion is fully within the scope of permissible testimony. Mr. Bingam's opinion does not purport to instruct the jury on the applicable law, nor does it tell the jury what conclusion it should reach as to the key legal issues: whether the VWP participants are employees under Washington law and therefore entitled to minimum wage and/or whether GEO is unjustly enriched by the VWP. Rather, the opinion offered by Mr. Bingham is about his understanding of common standards and practices in government contracting, and how those practices are reflected in the ICE contract and the procurement and operational processes related thereto, merely assists the jury in deciding liability. *See e.g., Hangarter*, 373 F.3d at 1016 ("While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)"). Instead, Mr. Bingham's report serves the purpose of breaking down key aspects of the government contracting process and the contracts at issue in this case, so that the import of those contract terms can be assessed by a jury.



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Yet, rather than address the actual opinion provided in Mr. Bingham's report, the State points to isolated (and out of context) excerpts from Mr. Bingham's deposition that were the result of extensive questioning from the State specifically attempting to elicit contract interpretations. See ECF 331 at 5-6. In fact, reviewing the relevant sections of the deposition, Mr. Bingham consistently noted that he believed the questioning, at times, sought an interpretation of the contract beyond his expertise. *See e.g.* (Bingham Dep 128-129). In response, the State *explicitly* stated "[o]kay.· I'm not asking you to reach a legal conclusion, to be clear. . ." (Bingham Dep 129:17-18). And, immediately following the testimony cited by the State for the position that Mr. Bingham offered a legal position, he clarified that despite answering the questions posed in the deposition "as I said, I'm not here to interpret the contract and I offer no opinions in my report on interpretation of the contract." (Bingham Dep. 158:12-15). Indeed, none of the opinions the State objects to appear in the report, but rather, were the result of the State's own line of questioning that went outside of the scope of Mr. Bingham's report. Further, Mr. Bingham's expert opinion about what is and is not permitted or contemplated under the ICE Contract is not an impermissible legal opinion as it merely provides context about how the billing and reimbursement, CLIN structure, and the oversight built into the ICE Contract indicate the likely mutual understanding regarding the administration of the VWP. And, to the extent any specific line in Mr. Bingham's deposition is objectionable to the Court, that issue should not be resolved at this stage nor in such an obtuse manner (blanket exclusion of Mr. Bingham). Instead, should the State have concerns over that type of testimony being offered at trial, those concerns should be reserved for the specific line of questioning at trial and any objections raised at that point.

**CONCLUSION**

For the foregoing reasons, Washington's motion to exclude the testimony of Gregory Bingham should be denied.

///

///



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Respectfully submitted, this 20th day of November, 2019.

By: *s/ Colin L. Barnacle*
**AKERMAN LLP**
Colin L. Barnacle (Admitted *pro hac vice*)
Christopher J. Eby (Admitted *pro hac vice*)
Ashley E. Calhoun (Admitted *pro hac vice*)
Adrienne Scheffey (Admitted *pro hac vice*)
Allison N. Angel (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: colin.barnacle@akerman.com
Email: christopher.eby@akerman.com
Email: ashley.calhoun@akerman.com
Email: adrienne.scheffey@akerman.com
Email: allison.angel@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone: (253) 566-2510
Facsimile: (281) 664-4643
Email: joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

**PROOF OF SERVICE**

I hereby certify on the 20th day of November, 2019, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF GREGORY BINGHAM** via the Court's CM/ECF system on the following:

Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
OFFICE OF THE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff*

*s/ Nick Mangels*
Nick Mangels



**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712