The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

10

STATE OF WASHINGTON,

CIVIL ACTION NO. 3:17-cv-05806-RJB

11

           Plaintiff,

12

     v.

STATE OF WASHINGTON'S
MOTIONS IN LIMINE

13

THE GEO GROUP, INC.,

NOTE ON MOTION CALENDAR:
MARCH 27, 2020

14

           Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

1

## I.      INTRODUCTION

The State of Washington (Washington) brings this action against The GEO Group, Inc. (GEO) in its *parens patriae* capacity to ensure that, as a publicly-traded, for-profit corporation doing business in Washington, it complies with the Minimum Wage Act (MWA), and disgorges the benefits it received from its practice of paying detainee-workers only $1 per day for work performed. In its proposed pretrial statement, discovery, and papers, GEO has raised numerous arguments that lack any probative value as to the question of whether GEO should be paying detainee-workers the minimum or fair wage for work performed. Washington therefore seeks to exclude the following evidence or argument as irrelevant, prejudicial, waived, or related to already-dismissed defenses: (1) that Washington's action is politically motivated, (2) that detainee-workers are volunteers or agreed to their wages, (3) that detainee-workers lack legal immigration status or authorization to work, (4) that detainee-workers are criminals, (5) that Washington delayed in enforcing the MWA against GEO, (6) that Washington does not pay the minimum wage to its own inmates or detainees, (7) that GEO's contract with ICE requires GEO to pay detainee-workers $1 per day, (8) that the NWDC should be referred to by its new name, (9) witnesses that were not timely disclosed; and (10) that the government facilities or residential exemptions of the MWA apply.[1] All should be excluded during both the jury trial on the MWA and the bench trial on unjust enrichment.[2]

## II.      ARGUMENT

A court may exclude evidence *in limine* pursuant to the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 (1984). "A district court is accorded wide discretion in

---

[1] Pursuant to LCR 7(d)(4), GEO and Washington met and conferred telephonically on March 9th and 11th, 2020. GEO believes Washington's earlier motion to exclude expert testimony now bars Washington from filing any further motion *in limine*. Washington disagrees. The Local Rules treat motions challenging expert testimony as separate from other motions *in limine*. *Cf.* LCR 16(b)(4) with LCR 7(d)(4). As such, "good cause" exists for Washington to have filed its motion to exclude expert testimony separately. *See also Bancroft v. Minnesota Life Ins. Co.*, 329 F.Supp.3d 1236, 1247-48 (W.D. Wash. 2018), *aff'd* 783 F.App'x 763 (9th Cir. 2019) (recognizing a motion to exclude experts may be segregated from all other motions *in limine*). Since the parties were unable to reach agreement, Washington timely files this motion *in limine*.

[2] The State also joins all motions *in limine* filed by the Private Plaintiffs in *Nwazour v. The GEO Group, Inc.*, No. 3:17-cv-05769-RJB.

STATE OF WASHINGTON'S MOTIONS IN
LIMINE

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    determining the admissibility of evidence under the Federal Rules. Assessing the probative value
2    of [the proffered evidence], and weighing any factors counseling against admissibility is a matter
3    first for the district court's sound judgment". *United States v. Abel*, 469 U.S. 45, 54 (1984).

### III.    MOTIONS IN LIMINE

5    **1.    Exclude All Evidence or Argument Regarding the State's Prosecutorial Discretion**

6            In both discovery and dispositive motions briefing, GEO suggests that this prosecution
7    is politically motivated. *See* GEO's Mot. to Dismiss, ECF No. 10 at 32 (alleging that "[t]he
8    current Attorney General's political interest [is] in anti-Trump rhetoric"); GEO's Rule 30(b)(6)
9    Subpoena to Bob Ferguson, ECF No. 101-1 at 10 (seeking testimony about Attorney General's
10   communications with his campaign about the litigation). Washington's reasons for enforcing its
11   state laws against GEO does not have any probative value in determining whether GEO violated
12   state law. Arguments about the State's exercise of prosecutorial discretion, and any related
13   evidence, should be excluded as irrelevant and prejudicial.[3]

14           GEO did not plead a defense of selective or vindictive prosecution. Even if it had, such
15   issues would be for the Court to evaluate as a matter of law, not for the jury to consider as a
16   matter of fact. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (claims of selective or
17   vindictive prosecution do not constitute "a defense on the merits . . . but an independent assertion
18   that the prosecutor has brought the charge for reasons forbidden by the Constitution");
19   *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he district court's motion *in*
20   *limine* [ruling] was correct because the defense of selective prosecution is a matter that is
21   independent of defendant's guilt or innocence, so it is not a matter for the jury."). District courts
22   routinely bar evidence of prosecutorial motivation to the jury.[4]

23
24           [3] In particular, GEO should be barred from calling Colleen Melody as a witness. Ms. Melody is an attorney at the Attorney General's Office and is supervising the litigation team in this matter. Not only will testimony from Ms. Melody likely invade privileged work product, nothing that Ms. Melody testified to at GEO's Rule 30(b)(6) deposition relates to the relevant topics at trial.
25           [4] *See, e.g.*, *United States v. Avery*, No. CR 11-00405 MMM, 2011 WL 13136810, at *2 (C.D. Cal. Dec. 15, 2011); *United States v. Fieger*, No. 07-CR-20414, 2008 WL 996401, at *1-2 (E.D. Mich. Apr. 8, 2008); *United States v. Stewart*, No. 03 CR. 717(MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004).
26

STATE OF WASHINGTON'S MOTIONS IN                    2                    ATTORNEY GENERAL OF WASHINGTON
LIMINE                                                                          Civil Rights Division
                                                                          800 Fifth Avenue, Suite 2000
                                                                          Seattle, WA 98104-3188
                                                                          (206) 464-7744

1    This makes sense, because Washington's reasons for prosecuting GEO is not probative

2    of any liability issues set for trial. *See United States v. Smith*, No. 06 CR 682-4,9, 2008 WL

3    11438034, at *3 (N.D. Ill. Jan. 23, 2008) ("Evidence or arguments relating exclusively to the

4    decision to prosecute Defendants is not probative to the guilt or innocence of Defendants and is

5    therefore not relevant under the Federal Rules of Evidence."); *United States v. Lopez*, 854

6    F. Supp. 57, 60 (D.P.R. 1994) (evidence "claiming selective prosecution, which involved various

7    claims regarding defendant's influence in the selection of the next U.S. Attorney for Puerto Rico,

8    has no bearing whatsoever on whether defendant committed the crimes alleged"); *United States*

9    *v. Napper*, 553 F. Supp. 231, 232 (E.D.N.Y. 1982) (defendant may not argue that "prosecution

10   was selectively brought as part of a concentrated government effort to suppress the activities of

11   the . . . religious organization commonly known as the Black Hebrews"). While GEO is free to

12   attack Washington's evidence as to whether GEO employs detainee-workers or unjustly benefits

13   from its labor practices, speculation about Washington's decisions regarding who to prosecute

14   and for what acts are not relevant. *Burke v. City of Santa Monica*, No. CV 09–02259 MMM

15   (PLAx), 2011 WL 13213593, at *30-31 (C.D. Cal. Jan. 10, 2011) (excluding, as "entirely

16   speculative," testimony about "the prosecutor's reasons for dropping the criminal charges").

17        Finally, even if Washington's motivations for bringing this case against GEO were

18   relevant—and they are not—the Court may exclude evidence if its probative value is outweighed

19   by its tendency to confuse the issues, mislead the jury, and waste time. Fed. R. Evid. 403.

20   Arguments as to the State's reasons for enforcing the law against GEO will only confuse the

21   issues. It is well-settled that exercises of prosecutorial discretion are not justiciable (except in

22   limited circumstances not remotely applicable here). *Wayte v. United States*, 470 U.S. 598, 607

23   (1985); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system . . . the

24   decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely

25   in [the prosecutor's] discretion."). Such factors as the strength of the case, the prosecution's

26   general deterrence value, Washington's enforcement priorities, and the case's relationship to

1  Washington's overall enforcement plan "are not readily susceptible to the kind of analysis the

2  courts are competent to undertake." *Wayte*, 470 U.S. at 607. In fact, examining the basis of a

3  prosecution threatens to chill law enforcement by subjecting the prosecutor's motives and

4  decision making to outside inquiry, and may undermine prosecutorial effectiveness. *Id. See also*

5  *United States v. Mosky*, No. 89 CR 669, 1990 WL 70832, at *1 (N.D. Ill. May 7, 1990) (barring

6  defendants from commenting on the government's decisions about who to prosecute because

7  such argument "would interfere with the government's wide discretion"). The Court should

8  exclude all evidence related to Washington's motivations for enforcing the MWA against GEO.

9
   **2.      Exclude All Evidence or Argument that the Detainee-Workers are "Volunteers" or**
10 **           Agreed to be Paid Only $1 Per Day**

11         Although the "Voluntary Work Program Agreement" is relevant and admissible to

12 establish the background context for the work program, GEO has repeatedly gone a step further

13 and offered it as evidence that detainee-workers need not be paid the minimum wage because

14 they "volunteer" to participate in the NWDC work program and agree to their payment of $1 per

15 day. *See, e.g.,* GEO's Mot. for Summ. J., ECF No. 245 at 10, 21. Whether GEO characterizes

16 the detainee-workers as "volunteers" or requires them to sign an agreement that they will be paid

17 $1 per day is irrelevant to the question of whether they are employees under the MWA, because

18 the law forecloses GEO from using volunteers or inviting "waivers" of employee's statutory

19 right to the minimum wage. And, because GEO's "volunteer" and "waiver" defenses are

20 foreclosed as a matter of law, any such evidence or argument would be far more prejudicial than

21 probative. *See Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 890 (N.D. Cal. 2016)

22 (excluding any argument that the parties' agreements gave rise to a waiver of plaintiffs'

23 minimum wage claims); *Cougill v. Prospect Mortg., LLC*, No. 1:13cv1433 (JCC/TRJ), 2014 WL

24 348539, at *2 (E.D. Va. Jan. 31, 2014) (same).

25         As a matter of Washington law, individuals cannot "volunteer" for a for-profit company.

26 Under the MWA, only "educational, charitable, religious, state or local governmental body or

STATE OF WASHINGTON'S MOTIONS IN
LIMINE                                      4        ATTORNEY GENERAL OF WASHINGTON
                                                             Civil Rights Division
                                                          800 Fifth Avenue, Suite 2000
                                                           Seattle, WA  98104-3188
                                                               (206) 464-7744

1    agency, or nonprofit organization[s]" are eligible to accept volunteer labor. Wash. Rev. Code §

2    49.46.010(3)(d). Indeed, GEO's argument that detainee-workers agreed to volunteer and be paid

3    less than the minimum wage is expressly precluded by statute. Wash. Rev. Code § 49.46.090(1)

4    ("Any agreement between [an] employee and [an] employer allowing the employee to receive

5    less than what is due . . . shall be no defense" to a minimum wage claim). While employers can

6    negotiate or bargain to pay rates in excess of the state minimum wage, "employees and

7    employers may not bargain away these minimum requirements[.]" *Hisle v. Todd Pac. Shipyards*

8    *Corp.*, 93 P.3d 108, 112-13 (Wash. 2004). *See also Becerra*, 332 P.3d at 420  ("The parties'

9    characterization of their employment relationship is not determinative."); *Barrentine v.*

10   *Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (observing that rights under the

11   federal minimum wage law similarly "cannot be abridged by contract or otherwise because this

12   would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to

13   effectuate") (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

14        In addition to being irrelevant, evidence and argument aimed at volunteer status or waiver

15   will be highly prejudicial. *See Rasberry v. Columbia Cty, Arkansas*, 385 F. Supp. 3d 792, 796

16   (W.D. Ark. 2019) (reasoning that the probative value of any argument that workers agreed they

17   were exempt from minimum wage laws was outweighed by the danger of undue prejudice). In

18   the employment context, ordinary people, who are generally unaware of the full extent of the

19   rights and protections under federal and state employment laws, place undue importance on

20   signed contracts and verbal agreements or understandings regardless of the legality of such

21   agreements. There is a high risk that the jury could view, for example, the signed Volunteer

22   Work Program Agreement as binding, even if given an instruction to the contrary (which will be

23   necessary). This risk would be compounded if GEO were allowed to sway the jury by improper

24   evidence or argument that detainee-workers are "volunteers" or "agreed" to be paid $1 per day.

25   Any suggestion to the jury of waiver—whether couched as volunteerism, agreement, contract, a

26   bargained-for deal, or otherwise—will only serve to confuse the jury and increase the risk of

1  jury nullification. Any argument or evidence that the detainee-workers were "volunteers" or

2  agreed to their pay rate or failed to complain about pay is improper and should be excluded.

3  **3.    Exclude All Evidence or Argument Regarding the Work Authorization and/or**

4  **Immigration Status of Detainee-Workers, Including Inflammatory Labels**

5          Since the start of this litigation, GEO has repeatedly argued that detainee-workers cannot

6  be paid the minimum wage because all detainee-workers are undocumented and lack work

7  authorization. ECF Nos. 10 at 20, 245 at 16. While the NWDC is an immigration detention

8  facility, any evidence or argument suggesting the MWA does not apply *because* the detainee-

9  workers are undocumented or lack work authorization is improper.

10         As a matter of law, the immigration status or work authorization of detainee-workers is

11 not relevant to the MWA claim, the unjust enrichment claim, or defenses in this case. The MWA

12 requires employers to pay employees the minimum wage for work performed—period. Wash.

13 Rev. Code § 49.46.010(3) (defining "employee" as "*any individual* employed by an employer").

14 No exception applies based on immigration status or work authorization. *Id.*; *see also Bailon v.*

15 *Seok AM No. 1 Corp.*, No. C09-05483JRC, 2009 WL 4884340, at *2-3 (W.D. Wash. Dec. 9,

16 2009) (finding immigration status irrelevant to workers' entitlement to protection under

17 Washington Minimum Wage Act); *Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2009

18 WL 2058145, at *2 (E.D. Wash. July 15, 2009) (immigration status irrelevant to claims for wages

19 owed under Washington wage laws). *See also* U.S. Dep't of Labor, Wage & Hour Div*., Fact*

20 *Sheet #48: Application of U.S. Labor Laws to Immigrant Workers: Effect of Hoffman Plastics*

21 *decision   on   laws   enforced   by   the   Wage   and   Hour   Division* (July   2008),

22 https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs48.pdf (declaring   the   U.S.

23 Department of Labor will enforce federal minimum wage laws "without regard to whether an

24 employee is documented or undocumented").

25         In fact, courts that have addressed the question of whether a worker has the right to either

26 a federal or state minimum wage when they lack immigration status or work authorization have

STATE OF WASHINGTON'S MOTIONS IN
LIMINE

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  uniformly concluded that they do.[5] In *Lucas v. Jerusalem Café, LLC*, 721 F.3d 927, 935 (8th

2  Cir. 2013), for example, the Eighth Circuit affirmed the district court's decision to suppress

3  reference to the immigration status of plaintiffs bringing federal minimum wage and overtime

4  claims. In doing so, the *Lucas* court observed, "[h]olding employers who violate federal

5  immigration law and the federal employment law liable for both violations advances the purpose

6  of federal immigration policy by 'offsetting what is perhaps the most attractive feature of

7  [unauthorized] workers—their willingness to work for less than the minimum wage." (citations

8  and quotations omitted). *See also U.S. Dep't of Labor v. EL Tequila, LLC*, No. 12-CV-588-JED-

9  PJC, 2015 WL 12999709, at *1 (N.D. Okla. July 10, 2015) (granting U.S. Department of Labor's

10  motion *in limine* excluding all testimony and evidence of workers' immigration status).

11      Nor does Washington's unjust enrichment claim require inquiry into detainee-workers'

12  immigration status. *See Sanchez v. Creekstone  Farms Premium Beef, LLC*, Case No. 11-4037-

13  KGG, 2011 WL 5900959 (D. Kan., Nov.  23, 2011) (barring discovery into immigration status

14  of plaintiffs bringing unjust enrichment claim against employer). Instead, an unjust enrichment

15  analysis focuses on whether GEO received an unjust benefit in relying on woefully underpaid

16  detainee workers. *See Young v. Young*, 191 P.3d 1258 (Wash. 2008).

17      Even if the immigration status or work authorization of detainee-workers were relevant,

18  it should still be excluded as unfairly prejudicial, including any related labels like "illegal aliens"

19  or similarly inflammatory terms. *See, e.g., Palma v. Safe Hurricane Shelters, Inc.*, No. 07-22913-

20  cv-AMS, 2011 WL 6030073, at *1 (S.D. Fla. Oct. 24, 2011) (prohibiting testimony regarding

21  plaintiffs' immigration status given the prejudicial effect on the jury); *Romero v. Prindle Hill*

22  *Constr. LLC*, No. 3:14cv01835(SALM), 2017 WL 3390242, at *3 (D. Conn. Aug. 7, 2017)

23

24  [5] *See, e.g., Lucas v. Jerusalem Café, LLC*, 721 F.3d 927, 935 (8th Cir. 2013); *Patel v. Quality Inn S., Inc.*, 846 F.2d 700, 706 (11th Cir. 1988); *Singh v. Jutla & C.D. & R's Oil Inc.*, 214 F. Supp. 2d 1056, 1062 (N.D. Cal. 2002); *Chellen v. John Pickle Co.*, 446 F. Supp. 2d 1247, 1276 (N.D. Okla. 2006); *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1235 (D. Colo. 2012) ("[T]he weight of authority clearly holds that a plaintiff's immigration status is irrelevant in a[] [federal minimum wage] action."); *see also Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 464 (S.D.N.Y. 2013) (barring discovery into immigration status of plaintiffs bringing federal and state minimum wage claims as irrelevant).

25

26

STATE OF WASHINGTON'S MOTIONS IN LIMINE                    7                    ATTORNEY GENERAL OF WASHINGTON
                                                                                Civil Rights Division
                                                                                800 Fifth Avenue, Suite 2000
                                                                                Seattle, WA  98104-3188
                                                                                (206) 464-7744

(excluding evidence of plaintiffs' immigration status because it would have a "chilling effect" on the pursuit of such actions by others). In the employment context, there is a high risk that ordinary people would not know that our laws extend equally to undocumented immigrants as citizens. Similarly, the jury is highly likely to confuse the issues if evidence suggests that detainee-workers are likely to have violated separate immigration laws that are not at issue in this case. GEO should be barred from arguing that the MWA does not apply because detainee-workers lack immigration status or work authorization, or use of related inflammatory labels.

**4.  Exclude All Evidence or Argument as to the Detainee-Workers' Criminal Histories**

In prior briefing, GEO has attempted to insert the criminal histories of detainee-workers into this case to suggest the MWA does not or should not apply. *See, e.g.*, ECF No. 23 at 9 ("The majority of detainees have criminal histories that include past periods of confinement where they did not earn competitive wages either"). At trial, any inquiry into the detainee-workers' criminal histories, even if only for impeachment, should be barred as irrelevant[6] and unduly prejudicial.

First, it is undisputed that the detainees held at the NWDC are not being detained pursuant to a criminal conviction—or even criminal charges. Instead, detention at the NWDC is a civil matter. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1065 (9th Cir. 2015) (observing that immigration detention is "civil, i.e., non-punitive" and that immigrants detained are "awaiting the conclusion of administrative and judicial proceedings that will determine whether they may remain in this country"), *overruled on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See also Hydrick v. Hunter,* 500 F.3d 978, 989 (9th Cir. 2007) ("[C]ivilly detained persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"); *see also Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893) ("The order of deportation is not a punishment for crime."). Because detainees in this case are not held at the NWDC as punishment for a crime,

---

[6] Indeed, criminal history is not a defense to the application of the Minimum Wage Act. All employees are covered by Washington's law unless a specific exemption applies; there are no exceptions for those who have previously been convicted of a crime. *See* Wash. Rev. Code § 49.46.010(3).

1  any effort to tarnish their reputation by connecting immigration detention and criminal conduct

2  in general, or to one detainee in particular, is improper, highly prejudicial, and irrelevant to the

3  question of whether they performed work covered by the MWA.

4  Second, Federal Rule of Evidence 404(b)(1) provides that use of evidence of a crime,

5  wrong, or other act is not admissible to prove a person's character in order to show action in

6  conformity therewith. Besides using alleged criminal history as a character attack, GEO has no

7  other basis to admit evidence of detainees' criminal history. GEO has not—and cannot—meet

8  the standards required by Federal Rule of Evidence 404(b)(2).

9  Finally, even if GEO seeks to use a detainee-worker's prior criminal conviction as

10  impeachment, the prejudice and confusion to the jury outweighs any probative value. *See* Fed.

11  R. Evid. 609 advisory committee's note to 1990 amendment (explaining amendments were

12  necessary "to protect all litigants from the unfair use of prior convictions"). It will already be

13  necessary to explain to the jurors the nature of civil detention and the fundamental difference

14  between the NWDC and a criminal jail or prison. If GEO is allowed to explore the criminal

15  history of detainees, it is highly likely to introduce juror confusion regarding that important legal

16  distinction. The result will be that ordinary people may assume that the detainee-workers are

17  criminals and undeserving of the minimum wage. Since examination into detainee-workers'

18  criminal histories is not probative and only prejudicial, it should be excluded.

19
20
**5.  Exclude All Evidence or Argument Regarding Prior History of L&I Enforcement at the NWDC or Other Institutions**

21  GEO will seek to introduce argument and evidence regarding prior enforcement of the

22  MWA—or lack of enforcement—by Washington's Department of Labor & Industries (L&I)

23  against GEO and other private companies.[7] But any such argument or evidence is within

24
25
26

[7] In particular, Washington seeks to exclude the following witnesses GEO has identified regarding prior enforcement of the MWA at NWDC or lack thereof as well as prior detainee complaints: Grice (L&I), Fellin (L&I), Buchannan (L&I), Perrin (L&I), and Johnson (L&I). Washington also seeks to exclude exhibits that relate only to L&I's internal knowledge or deliberations about the MWA: Exs. A-1–A-5, A-8, A-105–A-110, and A-115–A-118.

1   Washington's prosecutorial discretion, *see infra* at 2, irrelevant to the liability issue before the

2   jury and, even if deemed relevant, would present a serious risk of prejudice to Washington,

3   confusion of the issues, misleading the jury, and wasting time. Fed. R. Evid. 402, 403.

4   　　　First, the Court previously dismissed GEO's laches and unclean hands defenses, which

5   were based on GEO's contentions related to L&I's alleged knowledge of the GEO Voluntary

6   Work Program, failure to take enforcement action, and Washington's alleged failure to enforce

7   the MWA against other entities operating a sub-minimum wage work program. *See* ECF No.

8   202 at 7 (dismissing GEO's laches defense "because the State's case resulted from 'a proper

9   exercise of governmental duties'") (citation omitted); *id.* at 9 (dismissing GEO's unclean hands

10  defense). These dismissals are binding and GEO should not be allowed to introduce evidence

11  designed to revive dismissed defenses.

12  　　　Second, argument or evidence regarding L&I's prior enforcement, or lack thereof,

13  against GEO of the MWA is irrelevant. As explained above, the jury will be tasked with

14  determining whether GEO employed detainee workers. When L&I first learned of detainee

15  workers making $1 per day at NWDC, whether L&I has ever enforced the MWA against GEO

16  in the past, and internal discussions L&I may have had about NWDC in years past is not relevant

17  to the liability issue of whether, based on state law and the relationship between detainee workers

18  and GEO, GEO is required to pay minimum wage. Nor would any such argument or evidence

19  be relevant to any remaining defense GEO is permitted to press at trial.

20  　　　Third, argument or evidence regarding L&I's prior enforcement, or lack of enforcement,

21  of the MWA against other private companies is likewise irrelevant and therefore not admissible.

22  Fed. R. Evid. 402. That activity has no bearing on whether GEO employs detainee workers for

23  purposes of the MWA. GEO has nonetheless noted previously that some State entities, like

24  mental health institutions, pay sub-minimum wages to patients as authorized by L&I pursuant to

25  a separate MWA exception. But the existence of sub-minimum wage certificates to other

26

STATE OF WASHINGTON'S MOTIONS IN
LIMINE
　　　　　　　　　　　　　　　10
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

entities—and it is undisputed that GEO does not have any such certificate—has no bearing on whether GEO employs detainee workers for purposes of the MWA.

In light of the fact that argument and evidence regarding L&I's prior enforcement of the MWA against GEO or any other entity, is irrelevant, admitting it will likely result in a significant waste of time. More importantly, introduction of such extraneous and complex material is likely to confuse the jury and prejudice Washington by implying that L&I's enforcement decisions in the past should, somehow, allow GEO to escape accountability today. The Court already rejected that argument when it dismissed GEO's laches and unclean hands defenses, and GEO should not be permitted to press them again at trial.

**6.      Exclude All Evidence of Work Programs at State and Local Government Facilities**

Based on GEO's pre-trial statement and prior arguments, it is clear that GEO will attempt to convert the upcoming trial into a distracting sideshow about at least a dozen of Washington's own institutions rather than GEO's practices at NWDC. In particular, GEO has identified hundreds of exhibits and thirteen witnesses with evidence of, and argument regarding, how Washington State or local government prisons, jails, hospitals, or detention facilities treat their residents, use work programs, and pay sub-minimum wages to certain work program participants—in addition to how L&I has historically enforced the MWA.[8] The Court should bar GEO from doing so. Any such evidence or argument is irrelevant to the liability questions properly put to the jury and, if admitted, would risk significant prejudice, confuse the issues, mislead the jury, and waste time by creating a "trial within a trial." *See* Fed. R. Evid. 402, 403.

First, no part of Washington's MWA claim against GEO involves consideration of how

---

[8] Specifically, Washington seeks to exclude thirteen witnesses GEO identified in its pretrial statement—Taylor Wonhoff (Governor's Office), Colleen Melody (Attorney General's Office), Byron Eagle (DSHS), Sean Murphy (DSHS), Julie Williams (Pierce County), Sarah Syysma (Department of Corrections), Debra Eisen (Department of Corrections), Christina Wells (DSHS), Josh Grice (L&I), Tammy Fellin (L&I), Lynne Buchannan (L&I), Leslie Perrin (L&I), and David Johnson (L&I)—as witnesses it will or may call based on knowledge relevant to State or local facilities or the State's enforcement of the MWA. Washington also seeks to exclude the following proposed exhibits: Exhibits A-14–A-104, A-111–A-114, A-119–A-217, A-224–A-227, A-230, and A-232–A-233, each of which is relevant only to activities in State or local facilities.

1 inmates or residents of unrelated State and local governmental facilities are treated. The MWA

2 question at issue before the jury is straightforward—whether GEO "permits" detainees "to

3 work," and thereby "employs" them. *See* Wash Rev. Code. § 49.46.010(2) (defining "employ"

4 as "includ[ing] to permit work"); *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 420 (Wash.

5 2014) ("'Employee' is broadly defined. '[U]nder the MWA, an employee includes any

6 individual permitted to work by an employer. This is a broad definition.'") (quoting *Anfson v.*

7 *FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012). Because the MWA inquiry

8 is about GEO and its own labor practices, the Court previously dismissed GEO's unclean hands

9 defense, by which GEO sought to rely on Washington inmates' participation in government-run

10 work programs to argue that it was being treated unfairly by being held to a different standard

11 than government-run institutions. ECF No. 202 at 9. Because the NWDC detainee workers'

12 employment status under the MWA does not hinge on whether other state or local detention

13 facilities, hospitals, or prisons pay their residents the minimum wage, evidence of those

14 facilities' practices is irrelevant and inadmissible. Fed. R. Evid. 402. If admitted, it is highly

15 likely to prejudice Washington, confuse the issues, mislead the jury during the MWA liability

16 phase, and waste time by allowing GEO to proffer "what about the State?" arguments, when the

17 sole issue for the jury is whether GEO has complied with the MWA.

18 　　　Likewise, no part of the State's unjust enrichment claim against GEO involves

19 consideration of how inmates or residents of unrelated State and local governmental facilities

20 are treated. To the contrary, that claim requires the Court to consider whether GEO received a

21 benefit, the benefit was at the plaintiff's expense (or stated alternatively, there is "an appreciation

22 or knowledge by the defendant of the benefit"), and the circumstances make it unjust for GEO

23 to retain the benefit. *Young v. Young*, 191 P.3d 1258, 1263 (Wash. 2008). That claim is based on

24 GEO's labor practices at NWDC, not the State's or local government's practices elsewhere. And

25 as with Washington's MWA claims, allowing GEO to pursue a "trial within a trial" will waste a

26 significant amount of time and confuse the issues. *See* Fed. R. Evid. 403.

1    Nor does GEO's claim of intergovernmental immunity render evidence related to the

2    practices of Washington's *government-owned and operated facilities* any more relevant or any

3    less prejudicial. Under the intergovernmental immunity doctrine, a "state regulation is invalid

4    *only* if it regulates the United States directly or discriminates against the Federal Government or

5    those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990)

6    (emphasis added). As such, courts focus on the terms of the challenged state law—and do not

7    conduct a fact-specific inquiry about whether every other entity follows the law or has ever been

8    subjected to enforcement. *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d

9    892, 904 (N.D. Cal. 2007) (rejecting intergovernmental immunity where laws at issue "regulate

10   equally all public utilities, making no distinction based on the government's involvement" and

11   rejecting attempt to focus on individual investigation as treating the government differently).

12   Argument and evidence of what any particular Washington state or local facility does, as

13   both a factual and legal matter, is irrelevant. The key reason is that government-owned facilities

14   are not private contractors like GEO. For intergovernmental immunity purposes, the proper

15   comparator for GEO, a private contractor that deals with the federal government, is a similarly

16   situated private contractor that deals with the state government. The proper comparison is set

17   forth in the following chart showing to whom the Washington MWA applies:

18   **Does the Washington State Minimum Wage Apply?**

| | Government Institution | Private Contract Facility |
|---|---|---|
| **Federal Detainees** | No | Yes |
| **State Detainees** | No | Yes |

21   State and local government facilities are not proper comparators under the governing legal

22   framework for purposes of intergovernmental immunity.

23   Any evidence or argument regarding other, non-NWDC detention facilities must

24   threrefore be limited to proper comparators—private contractors providing detention services at

25   their own facilities within Washington. But GEO has no such evidence because no such evidence

26   exists. Despite ample discovery, GEO has never identified such a comparator, *i.e.*, another

STATE OF WASHINGTON'S MOTIONS IN
LIMINE

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

private contractor that owns and operates a facility within Washington where the residents work for less than minimum wage. To the contrary, GEO has mistakenly pointed to *government* facilities like the Special Commitment Center (SCC), the Pierce County Jail, and the South Correctional Entity Regional Jail (SCORE), and indicated that intends to do so at trial as well. *See*, *e.g.*, ECF Nos. 299, 303-05. Each of those entities, however, is a *government facility* that falls within the terms of an express MWA statutory exception. As a result, argument or evidence regarding those government facilities is entirely irrelevant. All such evidence and argument will waste days or weeks of trial time, is almost certain to confuse the jury, and should be excluded.

GEO may also try to introduce evidence that certain services at government institutions are provided by private companies, such as food services by Aramark Correctional Services LLC. But that evidence is also irrelevant, confusing, and prejudicial, because none of the private companies GEO cites own and operate a detention facility in Washington, like GEO does, and are not proper comparators for intergovernmental immunity purposes. GEO has also referred to a never used and now-expired contract between Washington and GEO for the potential holding of prisoners outside of Washington. *See* ECF 299 at 12 (citing ECF No. 107-7)). But that, too, is non-comparable, as that expired contract did not apply to a Washington facility at all.

Ultimately, any evidence or argument related to how Washington or local government prisons, jails, hospitals, or detention facilities treat their inmates or residents, use work programs, and pay sub-minimum wages to certain work program participants is irrelevant. Furthermore, it is likely to result in significant prejudice to Washington, confuse the issues and mislead the jury, and waste an extraordinary amount of time by allowing GEO to conduct a "trial within a trial" focused on distracting and complex issues other than its own conduct at the NWDC.

**7.      Exclude All Evidence or Argument Suggesting the ICE-GEO Contract Requires GEO Pay Only $1 Per Day**

GEO may attempt to argue and/or introduce testimony suggesting that the ICE-GEO Contract, or other evidence, somehow limits GEO to paying only $1 per day, and further, that

STATE OF WASHINGTON'S MOTIONS IN LIMINE

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the ICE-GEO Contract somehow overrides, or preempts, application of the MWA. To avoid the introduction of irrelevant and highly prejudicial evidence or argument, the Court should prohibit GEO from introducing any evidence or testimony to that effect.

First, GEO's own binding discovery admissions render inadmissible any evidence or argument that it is limited to paying detainee workers $1 per day. GEO admitted, in response to Request for Admission No. 67, that it "has the option to pay more than $1/day to detainee-workers for work performed in the VWP at the NWDC." *See* ECF No. 253-15 at 22. Thus, because "[e]vidence inconsistent with a Rule 36 admission is properly excluded," GEO must not be permitted to argue or introduce evidence that it was limited, by the ICE-GEO Contract or otherwise, to paying detainee workers $1 per day. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985). The Court recognized this point previously in precluding much of the proposed testimony from GEO's "government contracts" expert Gregory Bingham, ECF No. 343 at 3, and should extend that holding to any further argument or other evidence GEO seeks to offer that is inconsistent with its binding discovery admissions.

Second, absent clear limiting instructions from the Court, presentation of the contract between GEO and the federal government to the jury poses a significant risk that jurors may believe that the ICE-GEO Contract somehow overrides, or controls, application of the MWA to GEO. But GEO's preemption defense, which raised the legal issue of how federal law relates to Washington's MWA, has been dismissed. *See* ECF Nos. 29 at 5-12; 288 at 11. There is no legal basis for asserting at this stage that the ICE-GEO Contract overrides the MWA or exempts GEO from complying with its wage payment provisions. To avoid that significant risk of confusion and prejudice to Washington, GEO should be prohibited from arguing or eliciting testimony that suggests the ICE-GEO Contract, in any way, precludes application of the MWA to GEO.

**8.      Exclude Any Reference to the NWDC as the "Northwest ICE Processing Center"**

In its proposed pretrial statement, GEO proposes the NWDC be referred to as the "Northwest ICE Processing Center" or "NWIPC." Referring to the NWDC as the NWIPC will

STATE OF WASHINGTON'S MOTIONS IN
LIMINE                                                     15                    ATTORNEY GENERAL OF WASHINGTON
                                                                                        Civil Rights Division
                                                                                      800 Fifth Avenue, Suite 2000
                                                                                        Seattle, WA  98104-3188
                                                                                            (206) 464-7744

only cause confusion and be prejudicial. GEO—not ICE—renamed the NWDC as the NWIPC only six months ago. All of the discovery conducted in this case, therefore, refers to the Tacoma facility as the NWDC, its name for almost fifteen years, from 2005 until September 2019. Indeed, ICE still refers to the facility as the NWDC. *See* US Immigration and Customs Enforcement, Detention Facilities: Tacoma Northwest Detention Center (available at www.ice.gov/detention-facility/tacoma-northwest-detention-center). Allowing GEO to refer to the NWDC as the NWIPC will only confuse the jurors, who will not understand the relevant documents and may believe the facility is now (or always was) an ICE facility, when the facility, in fact, remains privately-owned and operated. To minimize confusion, the Court should bar GEO from referring to the NWDC as the "Northwest ICE Processing Center" or "NWIPC."

**9.      Exclude All Witnesses Not Previously Disclosed**

In its proposed pretrial statement, GEO identified five witnesses (Dan Ragsdale, Brian Evans, Julie Williams, Lynne Buchanan, and David Johnson) that GEO never previously disclosed in either action. All should be excluded. *See* Fed. R. Civ. Proc. 37(c)(1) ("If a party fails to … identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that… witness to supply evidence…at a trial, unless the failure was substantially justified").

There is no possible justification for GEO's failure to disclose the five witnesses until one month before trial and long after discovery has closed. Washington filed this lawsuit in September 2017. According to publicly available information, Ragsdale and Evans are GEO's Executive Vice President and Chief Financial Officer, who have worked in those positions for the entirety of this lawsuit. GEO could have—and should have—identified them as relevant witnesses in its disclosures. Indeed, Washington specifically sought discovery regarding GEO's contracts and finances; yet, GEO delayed providing financial information even after its petition for a writ of mandamus to the Ninth Circuit was rejected. *See* ECF No. 336. GEO cannot now offer late-breaking witnesses who will offer up an unexamined version of GEO's finances.

STATE OF WASHINGTON'S MOTIONS IN
LIMINE

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   Similarly, GEO never identified Williams, Buchanan, or Johnson as a possible witnesses.

2   Although GEO submitted Williams' declaration in support of a motion for reconsideration, *see*

3   ECF No. 304, that filing did not occur until September 19, 2019, long after the close of discovery

4   on June 21, 2019, and months after Washington had any opportunity to depose her.[9] GEO also

5   never identified Buchanan or Johnson, who are current and/or former L&I employees. Although

6   GEO vaguely included a placeholder "Representatives of [L&I]" in its disclosures, GEO never

7   supplemented to identify either L&I employee. Since L&I employs more than 2,000 people,

8   GEO's placeholder hardly suffices to provide the notice required by the Federal Rules of Civil

9   Procedure. The Court should exclude the five witnesses, none of whom were timely disclosed.

10
11  **10.   Exclude Argument and Evidence Related to the "Government-owned Facility" and "Residential" Exemptions to the MWA**

12   In its pretrial statement, GEO asserts two affirmative defenses that detainee workers are

13  not "employees" under the MWA: (1) the detainee workers are "detainees of a state detention

14  facility, as enumerated in RCW § 49.46.0[1]0(3)(k)" (referred to as the "government-owned

15  facility exemption") and (2) the detainee workers "[s]leep and reside at their place of work," as

16  enumerated in RCW § 49.46.010(3)(j) (referred to as the "residential exemption"). GEO should

17  be barred from proffering evidence or argument that it is entitled to either exemption.

18   First, the Court previously and correctly ruled that the government-owned facility

19  exemption does not apply here. *See* ECF No. 29 at 17 (concluding the government-owned facility

20  exemption did not apply to the NWDC); *see also* ECF No. 162 (clarifying ECF No. 29). Even

21  more, GEO explicitly waived the government-owned facility exemption as an affirmative

22  defense in response to Washington's discovery requests. *See* ECF 181-4 at 25 ("RFA NO. 79:

23  Please admit that the NWDC does not detain "any resident, inmate, or patient of a state, county,

24  or municipal correctional, detention, treatment or rehabilitative institution," as defined in RCW

25
26  [9] Ms. Williams' testimony is also irrelevant. GEO proposes that Ms. Williams testify about her employment with Pierce County Jail, a government entity whose detention facilities are not relevant comparators in any intergovernmental immunity defense. *Infra* at 12.

1  49.46.010(3)(k). RESPONSE TO NO. 79: Admit."). It cannot now, on the eve of trial, make a

2  180-degree turn in position. *See C.I.T. Corp.*, 776 F.2d at 869-70  ("Evidence inconsistent with

3  a Rule 36 admission is properly excluded.").

4      Second, GEO also should be precluded from introducing any argument or evidence

5  related to the residential exemption because, not only does the defense lack merit, that defense

6  was not previously asserted and was thereby waived. *See* ECF 34 (GEO's Answer). An

7  employer's assertion that its workers are "exempt employees" under the MWA is an "affirmative

8  defense." *Mitchell v PEMCO Mut. Ins. Co.*, 142 P.3d 623, 625 (Wash. Ct. App. 2006). Indeed,

9  GEO's pretrial statement identifies it as such. As with all affirmative defenses, the employer

10  bears the burdens of both "assert[ing]" and "proving" applicability of the exemption. *Drinkwitz*

11  *v. Alliant Techsys., Inc.*, 996 P.2d 582, 587 (Wash. 2000). Affirmative defenses not raised in the

12  defendant's answer are waived. Fed. R. Civ. P. 8(c), 12(b), 12(g); *Magana v. Com. of the N.*

13  *Mariana Islands*, 107 F.3d 1436, 1445 (9th Cir. 1997) (minimum wage exemption under FLSA

14  is an "affirmative defense that must be pleaded and proved by the defendant," and "district court

15  erred by allowing the Defendant to raise the [waived] defense in a motion for summary

16  judgment"); *see also Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 825 (9th Cir.

17  2011) (California overtime exemption is an affirmative defense that must be pled and proved by

18  the employer); *Helton v. Factor 5, Inc*., 26 F. Supp. 3d 913, 920–21 (N.D. Cal. 2014) (prohibiting

19  defendants' FLSA exemption defense due to delay in raising it and prejudice to plaintiffs who

20  had no opportunity to conduct discovery on the issue). GEO failed to assert the residential

21  exemption at any point in Washington's case, and Washington no longer has an opportunity to

22  conduct discovery on the issue.

23      All evidence and argument related to the "government-owned facility" and "residential"

24  exemptions should be excluded.

25              **IV.    CONCLUSION**

26  Washington respectfully asks the Court to grant its motions *in limine*.

1   Dated this 12th day of March 2020.

2                              Respectfully submitted,

3                              ROBERT FERGUSON
                               Attorney General of Washington
4

5                              s/ *Marsha Chien*
                               MARSHA CHIEN, WSBA No. 47020
6                              ANDREA BRENNEKE, WSBA No. 22027
                               LANE POLOZOLA, WSBA No. 50138
7                              PATRICIO A. MARQUEZ, WSBA No. 47693
                               Assistant Attorneys General
8                              Office of the Attorney General
                               800 Fifth Avenue, Suite 2000
9                              Seattle, WA 98104
                               (206) 464-7744
10                             marsha.chien@atg.wa.gov
                               andrea.brenneke@atg.wa.gov
11                             lane.polozola@atg.wa.gov
                               patricio.marquez@atg.wa.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S MOTIONS IN
LIMINE                                      19                    ATTORNEY GENERAL OF WASHINGTON
                                                                       Civil Rights Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                      Seattle, WA  98104-3188
                                                                          (206) 464-7744

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing document was electronically filed with the United

3 States District Court using the CM/ECF system. I certify that all participants in the case are

4 registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5 system.

6          Dated this 12th day of March 2020, in Seattle, Washington.

7

8                                        s/ *Anna Alfonso*_____
                                         ANNA ALFONSO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S MOTIONS IN
LIMINE