The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | STATE OF WASHINGTON'S RESPONSE TO GEO'S MOTIONS IN LIMINE |
| THE GEO GROUP, INC., | |
| Defendant. | NOTE ON MOTION CALENDAR: MARCH 27, 2020 |

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

GEO and its practice of paying $1 per day to individuals working at the Northwest Detention Center (NWDC) are the focus of this lawsuit. GEO purports to agree, but nonetheless seeks to exclude six categories of relevant, admissible evidence regarding a host of issues that will help the jury and the Court understand GEO, its labor practices, and the nature of Washington's lawsuit to enforce state law.[1] Those categories include the basic reasons why individuals at NWDC choose to work, the nuts-and-bolts of GEO's decisions regarding the detainee pay rate, GEO's ability to seek reimbursement for detainee wages through its contract with ICE, and the availability of Tacoma-area workers to do the same jobs that the detainees currently perform. Evidence regarding these issues is relevant to each of Washington's two claims and is admissible. Excluding it, as GEO requests, would prevent Washington, as a plaintiff, from presenting a complete and accurate view of GEO's labor practices at the NWDC and instead allow GEO to artificially present a skewed version of the work program at the heart of this case. GEO's Motions in Limine (MILs) should be denied.

## II. ARGUMENT

**A. GEO's MIL No. 1: The Court Should Deny GEO's Request to Preclude Evidence or Argument Regarding the Availability of Tacoma-Area Workers to Work at the NWDC**

Washington brought this action against GEO to enforce the Washington Minimum Wage Act (MWA) and to remedy the unjust enrichment that has resulted from GEO's longstanding failure to pay fair and adequate wages to individuals detained at the NWDC. *See* ECF No. 1-1 ¶ 1.1. As Washington explained when it filed this lawsuit, the enforcement of minimum wage laws is of "vital and imminent concern to the people of Washington as the minimum wage laws protect Washington workers and create employment opportunities." *Id.* ¶ 1.2. Indeed, Washington filed

---

[1] Washington responds to GEO's MILs Nos. 1-5, and 8, because they relate directly to Washington's Minimum Wage Act and unjust enrichment claims. GEO's MILs Nos. 6, 7, and 9 address witnesses and evidence disclosed in the *Nwauzor* case. Accordingly, the *Nwauzor* plaintiffs will respond to GEO's MILS Nos. 6, 7, and 9, and Washington joins Private Plaintiffs' responses on those motions.

WASHINGTON'S RESPONSE TO GEO'S  
MOTIONS IN LIMINE

1

ATTORNEY GENERAL OF WASHINGTON  
Civil Rights Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104-3188  
(206) 464-7744

this action in its *parens patriae* capacity to protect the health, safety, and well-being of its residents, which includes "protecting its residents from harms to their own and Washington's economic health." *Id.* ¶ 3.3; *see* ECF No. 29 at 15 ("In sum, Plaintiff [State of Washington] has authority to bring this case as *parens patriae*."). In short, this case was filed to protect the rights of detainees in Washington who are laboring for only $1 per day *and* the community affected by GEO's practices, including individuals in the Tacoma area who are being deprived of jobs through GEO's use of underpaid detainee labor. Washington has been clear about this throughout the litigation. *See, e.g.*, ECF No. 1-1 at ¶¶ 1.1-1.2, 3.3; ECF No. 17 at 1-2; ECF No. 183 at 1; ECF No. 308 at 23.

Notwithstanding Washington's law enforcement role in this case, which GEO challenged in an early motion to dismiss for lack of standing and continues to claim to dispute as to the unjust enrichment claim, GEO seeks to preclude any evidence or argument that "VWP positions should have or could have been filled by non-detainee Washington citizens or residents." ECF No. 355 at 2-3. GEO offers three bases for its request: Relevance, confusion and prejudice, and Washington's allegedly conflicting statements made at a deposition. None are persuasive.

First, evidence and argument regarding GEO's practices, including who would do the work if not detained individuals, are relevant to both of Washington's claims. As a government plaintiff tasked with enforcing state law, Washington is entitled to present its case, including by explaining to the jury and the Court why and how Washington's enforcement action differs from the Private Plaintiffs' lawsuit.[2] That is relevant background and context that the factfinder will need to know to understand the cases at hand. Moreover, evidence that the work done at the NWDC could also be done by outside workers in the Tacoma area is relevant to whether the work detainees do is, in fact, "work" subject to the MWA, rather than some other type of activity that is dissimilar to jobs non-detained individuals in the Tacoma area community perform for

---

[2] Additionally, to the extent GEO is permitted to offer evidence of Washington's prosecutorial discretion or "political motivations," Washington must also be allowed to respond, and demonstrate, how GEO's actions impact its own operations and the larger community.

pay. And, of course, for Washington's unjust enrichment claim, showing the impact of GEO's labor practices on the detainees, GEO, and the community goes directly to liability because it is relevant to the benefit GEO obtained at the expense of others and the unjust nature of GEO's practices. *See Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).

Furthermore, GEO has argued previously that it is not allowed to "employ" detainees under the terms of the ICE-GEO Contract and that detainees are not work authorized. Washington seeks to exclude such evidence because it is contrary to law, confusing, and irrelevant. ECF No. 357 at 6-8, 14-15. But if GEO's evidence is allowed by the Court, Washington must be able to address GEO's arguments by showing that GEO need not rely on detainees at all. There are individuals in the community other than detainees, such as existing GEO staff and other individuals in the community, who are unquestionably work-authorized and who, under the terms of the ICE-GEO Contract, could do the same jobs that detainee workers now perform. The evidence that Tacoma workers are interested in, and available for, the type of work GEO offers is relevant to GEO's proposed "contract terms" and "work authorization" defenses, because it will be introduced to counter positions GEO may take.

Second, GEO suggests that the introduction of testimony regarding how non-detained individuals could fill jobs at NWDC would be confusing and prejudicial. Not so. Introduction of this limited evidence will provide context for the jury (on the MWA claim) and the Court (on the unjust enrichment claim) in understanding why GEO's labor practices constitute "work" that triggers statutory and common law liability. To suggest that this is confusing is a red herring; jurors are more than capable of understanding that if underpaid laborers are no longer available to perform work at the NWDC, other individuals (like those in the Tacoma community) would need to do so for the minimum wage or more. Nor is it prejudicial for GEO to have to face the factual reality of its use of underpaid labor to accomplish hundreds-of-thousands of hours of necessary work each year. It is a matter of fact that if individuals detained at the NWDC did not do the work that GEO relies upon to keep the facility operating, *someone* would have to do that

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    work. In deciding whether this is an employment relationship, and whether GEO operates its
2    work program on fair terms, both jurors and the Court should understand that important context.

3         Finally, GEO seeks to bar Washington from presenting its case as it chooses by
4    suggesting that Washington, in prior deposition statements, somehow took positions contrary to
5    evidence GEO now seeks to exclude. Again, GEO is wrong. The Attorney General's Office
6    representative testifying—the Civil Rights Division Chief overseeing the litigation team on this
7    case—explained that Washington's position was not that detained individuals *should* do the
8    work instead of Tacoma workers; instead, "whoever" GEO chose to do the work should be paid
9    the minimum wage. *See* ECF No. 355 at 3 (quoting Melody Dep. at 143:10-19). Nothing in the
10   testimony GEO cites suggests that testimony from a separate witness—Robbin Gard,[3] of
11   Washington's Employment Services Department—is irrelevant or inconsistent. To the contrary,
12   Mr. Gard will testify based on his personal experience about unemployment in Tacoma and how
13   individuals in certain job classifications were available and looking for work during a period
14   when GEO made the choice to pay individuals $1 per day while detained at the NWDC. That
15   proposed testimony is consistent, relevant, and admissible.

16        In sum, GEO's MIL No. 1 should be denied.

**B.   GEO's MIL No. 2: The Court Should Reject GEO's Strawman "Forced Work" Motion**

19        GEO next seeks to preclude evidence or argument that individuals detained at the NWDC
20   are "forced or coerced to work" on the ground that any such evidence relates only to human
21   trafficking claims not at issue in this lawsuit. ECF No. 355 at 4. To clarify, Washington does not
22   intend to argue or offer a "forced work" or trafficking claim; it did not plead that claim and has
23   never pursued that claim in this case. Nevertheless, Washington may offer evidence of the

---

[3] GEO further suggests that Mr. Gard should be precluded from testifying as an expert. Mr. Gard will not be called as an expert, but instead as a fact witness to testify about his job and personal experiences.

reasons why detainees work at the NWDC. That evidence is squarely relevant to the MWA claim to be tried to the jury and the unjust enrichment claim to be tried to the Court.[4]

Although GEO argues that "an individual's self-described motivation for performing work is not relevant to whether he or she is an employee," ECF No. 355 at 5, GEO repeatedly refers to the work program as the "Voluntary Work Program" and has indicated in its pleadings, pretrial statement, and deposition designations that it seeks to argue detainees are merely "volunteers" who do not work for the pay but rather for the opportunity to get out of their pods. GEO has also indicated that it will rely on the purpose of the VWP of "reducing detainee idleness" as part of its defense. Given GEO's chosen name for its work program and the trial arguments it plans to proffer, Washington must be able to respond with argument that detainees cannot "volunteer" at a "for-profit" company, as well as evidence of why detainees sign up for work at the NWDC, *i.e.*, to make money so they may call their families, pay for basic commissary goods, and pay legal bills, etc.

Ultimately, Washington will not argue detainees worked "under threat of harm" or "threat of legal process." *Cf.* ECF No. 355 at 5. GEO's motion, however, should be denied insofar as it extends to evidence regarding the general reasons detainees choose to work, such as "the cost of commissary items," the cost of phone calls, the cost of an immigration lawyer, and the need to purchase food, personal hygiene items, and other "basic need[]" items that GEO does not provide. That evidence is relevant and admissible.

C.   **GEO's MIL No. 3: The Court Should Deny GEO's Overbroad "Legal Fees" Motion**

GEO also seeks to exclude all evidence of GEO's past and future attorneys' fees spent in connection with this matter. To be clear, Washington does not seek to introduce evidence of GEO's attorneys' fees. However, Washington opposes MIL No. 3 to the extent GEO may use it

---

[4] GEO's second MIL does not address Washington's unjust enrichment claim. Its motion should therefore be limited to the MWA jury trial phase.

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  as a backdoor to excluding otherwise relevant documents merely because they refer in passing
2  to legal fees. That would be improper and turn the standard for excluding evidence on its head.

3        In particular, the Court should reject any argument that excluding evidence of legal fees
4  requires the Court to exclude all "requests made to ICE for reimbursement." ECF No. 355 at 6.
5  GEO's requests for reimbursements to ICE include far more than references to attorneys' fees,
6  and GEO does not dispute that those documents are centrally relevant to GEO's ability to choose
7  the rate of pay for detainee work. For example, GEO's June 1, 2018, letter to ICE, which
8  Washington identified on its trial exhibit list, outlines GEO's "estimation of the costs necessary
9  to achieve compliance with the Plaintiffs [in this and other related matters]" while also referring,
10 in passing, to the costs of defending these lawsuits. Declaration of Lane Polozola in Support of
11 Washington's Response to GEO's Motions in Limine (Polozola Decl.) ¶ 2, Ex. A (Trial Ex. 365).
12 This evidence is relevant because it not only shows GEO has already done the calculation
13 necessary to pay workers the minimum wage, but also suggests GEO is financially able to pay
14 workers the minimum wage. Further, evidence of on-going negotiations between GEO and ICE
15 undermines GEO's derivative sovereign immunity defense that ICE somehow limits GEO to the
16 reimbursement rate set forth in the GEO-ICE Contract. Since this evidence is relevant to both
17 Washington's statutory and common-law claims and clearly outweighs any prejudice to GEO,
18 GEO's request for reimbursement and other evidence that may reference the general profits and
19 reimbursements associated with running the NWDC should not be excluded.[5]

20
21 **D.    GEO's MIL No. 4: The Court Should Not Categorically Preclude Evidence of GEO's "Size, Profitability, Financial Status, or Overall Wealth"**

22       The Court also should reject GEO's motion "to exclude all evidence or argument related
23 to GEO's size, profitability, financial status, or overall wealth" for "both the State's unjust
24 enrichment trial and the joint minimum wage liability trial[.]" ECF No. 355 at 2, 6. The

---

[5] Alternatively, Washington agrees to redact from Exhibit 365 the following phrase that is specific to attorney fees and costs: "is likely to cost $15-20 million."

profitability and financial status of GEO and the NWDC is relevant to both claims, which are separate and legally independent.

### 1. The Profitability and Financial Status of GEO and the NWDC Are Relevant to Washington's Unjust Enrichment Claim

As a key initial matter, GEO is mistaken on the applicable law when it conflates Washington's MWA and unjust enrichment claims. *See id.* at 1 (arguing that the unjust enrichment claim somehow "hinges on" the MWA claim).[6] That is incorrect—the common law claim is not dependent in any way on whether or not GEO "employs" workers under the MWA, and the Court has already recognized as much. *See* ECF No. 353 at 6 (ordering that Washington's unjust enrichment bench trial will proceed regardless of outcome of MWA jury trial phase). Washington's unjust enrichment claim instead requires the Court to consider whether GEO received a benefit, the benefit was at the plaintiff's expense (or stated alternatively, there is "an appreciation or knowledge by the defendant of the benefit"), and the circumstances make it unjust for GEO to retain the benefit. *Young*, 191 P.3d at 1262-63. As such, proof of unjust enrichment requires evidence of all aspects of GEO's labor practices at NWDC, including the financial and operational benefits to GEO of its pay practices and the profits GEO makes at the NWDC from this practice. Washington must be allowed to present all of this evidence to establish liability on its unjust enrichment claim.

GEO's (and the NWDC's) financial status and profits are also relevant to inform the Court's determination of the proper remedy for unjust enrichment. *See* ECF No. 288 at 14 (denying GEO's Motion for Summary Judgment on the same issue). As the Court explained, "[i]n an action for unjust enrichment in Washington, a court, 'reviewing the complex factual

---

[6] The Court should also disregard the hearsay evidence upon which GEO's MIL No. 4 appears to based. *See* ECF No. 355 at 1. GEO improperly relies on its counsel's incomplete and misleading quotations from Washington's expert report, instead of providing the Court with actual report of Washington's economics expert, Peter Nickerson, Ph.D, that GEO cites. *See id.*; ECF No. 356 at 1-2. Washington objects to this and, to provide a factual record for the Court's consideration of GEO's motion, submits the report (without appendices) to the Court. *See* Polozola Decl.¶ 3, Ex. B.

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  matters involved in the case, has tremendous discretion to fashion a remedy to do substantial justice to the parties and put an end to the litigation.'" *Id.* (citation omitted). This evidence is plainly relevant and must be admitted at trial so that the Court may determine "which remedy, disgorgement of profits or reasonable value of services rendered, would 'do substantial justice to the parties.'" *Id.* at 14.

Washington should be permitted to present all relevant financial evidence to support the Court in determining unjust enrichment liability and in fashioning a just remedy. Relevant financial evidence includes NWDC-specific budget and profit summaries, the ICE-GEO contract and contract pricing proposals, and spreadsheets, as well as GEO's corporate disclosures. It also includes the reasonable value of services rendered by the workers detained at the NWDC, as Washington's economics expert has calculated the "fair wage" based upon two recognized market-based measures: Washington's Minimum Wage yearly tables and prevailing wages. *See* Polozola Decl., ¶ 3, Ex. B (Nickerson Report) at 1-17, 17-18 (Fair Wage Analysis). In addition to fair wages, Washington is entitled to present evidence of the benefit GEO received by not paying those fair wages. *See id.* at 18-19 (Unjust Enrichment, Part 1). Finally, Washington is entitled to introduce evidence of the profits GEO earned by paying detainee workers $1 per day instead of a fair wage to show the injustice of GEO retaining that profit without disgorgement and as measure of disgorgement. *See id.* at 19-21 (Unjust Enrichment, Part 2). In short, the Court should allow all financial evidence of the benefits to GEO of its labor practices, the injustice of GEO retaining those benefits without disgorgement, and the measures of disgorgement.

**2.    The Profitability and Financial Status of GEO and the NWDC Are Relevant to Washington's Minimum Wage Act Claim**

Evidence of GEO's financial status, benefit, and profits is also directly relevant to Washington's MWA claim and GEO's asserted defenses. The MWA question for the jury is whether GEO "permits" detainees "to work," and thereby "employs" them. *See* Wash Rev. Code. § 49.46.010(2) (defining "employ" as "includ[ing] to permit to work"); *Becerra v. Expert*

WASHINGTON'S RESPONSE TO GEO'S MOTIONS IN LIMINE
8
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Janitorial, LLC*, 332 P.3d 415, 420 (Wash. 2014) ("'Employee' is broadly defined. '[U]nder the MWA, an employee includes any individual permitted to work by an employer. This is a broad definition.'") (quoting *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012)). This will require the jury to use common sense by considering and applying the terms "permit," "work," "employer," and "employee" to the circumstances at hand. *See* Wash. Rev. Code § 49.46.010(2)-(3). And to that point, whether an employer gains and retains a financial benefit from the services of its workforce are obvious and common sense indicators of whether an employer-employee relationship exists, rather than some sort of other arrangement. Evidence of GEO's financial status is relevant to Washington's MWA claim under the straightforward statutory terms of the MWA.

The totality of the circumstances approach courts take in considering the nature of employment relationships supports this conclusion. As the court knows, federal courts interpreting the FLSA and Washington courts interpreting the MWA have adopted the overarching "economic reality" test as the mechanism by which to evaluate employee status based "upon the circumstances of the whole activity." *Becerra,* 332 P.3d at 421 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)); *see generally Anfinson*, 281 P.3d at 298 (adopting totality of circumstances approach in independent contractor context).[7] With use of the economic realities test, whether parties are in an employment relationship is determined by the totality of the circumstances, and not by any formal labels used by the parties to describe their relationship. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (citing *Rutherford*, 331 U.S. at 729). Therefore, it will be necessary to admit evidence regarding the circumstances of the detainee work at issue here, including GEO's

---

[7] Similarly, the totality of the circumstances approach is used to analyze whether types of activity, like preliminary or postliminary wait time, constitute "work" in established employment relationships, including consideration of the economic and financial reality of that activity, or "the degree to which the employer actually benefits from the wait time." *See Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1054 (W.D. Wash. 2011); *see also Chelan Cty. Deputy Sheriffs' Ass'n v. Chelan County*, 745 P.2d 1, 6 (Wash. 1987).

financial benefits and profits arising from it, in deciding whether GEO permits detainees to work and therefore employs them.

To be sure, courts have recognized competing multi-factor tests to guide evaluation of the "economic reality" of employment relationships depending on the particular context. *See Anfinson*, 281 P.3d at 299, 302 ("Under the MWA, the correct inquiry into whether a worker is an employee covered by the act or an independent contractor not covered by the act is 'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'"); 6A Wash. Pattern Jury Inst. Civ. 330.90 (7th ed. 2019) (WPI) ("Employee Versus Independent Contractor (Minimum Wage Act)") (using six-part, non-exclusive, multi-factor test based on *Anfinson*); *Becerra*, 332 P.3d at 421 (using thirteen-part, non-exclusive, multi-factor test to determine MWA obligations for joint employers); WPI 330.91 ("Joint Employer Status (Minimum Wage Act)"); *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1147 (9th Cir. 2017) (adopting "primary beneficiary" test in the student intern context, with factors addressing the relative benefits of the work to the employer or the student, which "best captures the Supreme Court's economic realities test in the student/employee context," to decide if student interns should be treated as employees under the FLSA).

But here, the proper question for a jury is a straightforward one—whether GEO permits individuals at the NWDC to work. None of the context-specific multi-factor tests noted above are directly applicable to the context here. Nonetheless, GEO, in its proposed jury instructions, advocates for use of a specific multi-factor test from the joint-employer and independent contractor contexts. Washington disagrees that GEO's proposed multi-factor test is applicable here or appropriate to submit to the jury—and will address that issue at the appropriate time. But however the Court ultimately decides to instruct the jury, GEO's enormous financial benefit from detainee work is relevant and admissible. That is because one of the recognized factors in the economic reality test, in multiple contexts (and even in GEO's proposed instruction), is "whether 'the service rendered is an *integral* part of the alleged employer's business[.]'" *See*

*Becerra*, 332 P.3d at 421 (quoting *Real*, 603 F.2d at 754) (emphasis added); WPI 330.90 ("Employee Versus Independent Contractor (Minimum Wage Act)"). That means that evidence of GEO's business operations and detainee workers' labor, together with the financial status, benefits, and profits of those operations and labor, is relevant to the core issue of whether GEO employed detainee workers under the MWA. This requires that Washington be permitted to introduce evidence of the ICE-GEO contract, including the pricing equation and bed-day rate formula that establishes the framework by which GEO is paid and earns profit on its detention management services, together with its NWDC budgets and financial summaries.

Ultimately, Washington should be allowed to present evidence in its liability case to enable the jurors to conduct a complete and fact-specific analysis of the workers' relationship with GEO. This case is unlike those GEO cites where evidence of the size and profitability of a defendant is not relevant or is intended only to inflame or "distract" the jury from the real issues in the case. *See* ECF No. 355 at 7. To the contrary, Washington will need to present evidence that the services workers render are "an integral part of [GEO's] business," and that they perform cooking, cleaning, and laundry work that is critical to the core operations of the NWDC. *See, e.g., Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 996 (9th Cir. 2014) (the work drivers perform, the pickup and delivery of packages, is central to FedEx's core business); *Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 492 (N.D. Cal. 2017) (finding the home delivery work plaintiffs performed "undoubtedly an integral part" of defendant's regular business); *Berry v. Transdev Servs., Inc.*, No. C15-01299-RAJ, 2017 WL 1364658, at *5 (W.D. Wash. Apr. 14, 2017) (finding workers' labor to be integral to an employer's business model because the employer "cannot fulfill its contractual obligations" unless workers performed their duties).[8]

---

[8] *See also Walling v. Portland Terminal Co.*, 330 U.S. 148, 153 (1947) (holding that individuals training as railroad brakemen were not employed based, in part, on "unchallenged findings here that the railroads receive no 'immediate advantage' from any work done by the trainees"); *Benjamin*, 877 F.3d at 1147 (finding students to be the "primary beneficiaries" of internships and not employees); *Chelan Cty. Deputy Sheriffs' Ass'n*, 745 P.2d at 6-7 (analyzing if employee's availability during on-call time is predominantly for the employer's or the employee's benefit and therefore whether it constitutes work under MWA).

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE
11
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Detainee labor is integral to GEO's operations because GEO earns a sizeable profit from its
2  NWDC contract and detainees who, working side by side with Tacoma-based employees,
3  perform many of the core functions required by GEO under the scope of work and terms of the
4  ICE-GEO contract: providing a clean place for detainees to be held, feeding the detainees, and
5  doing their laundry, among other things. GEO secured the contract, fulfills those obligations,
6  and enjoys profits, by using the labor of detained individuals making less than the minimum
7  wage side by side with other, Tacoma-based employees who earn a fair wage. The totality of the
8  evidence about that economic reality is relevant and admissible.

9  Finally, while the Court may exclude relevant evidence if its probative value is outweighed by its tendency to confuse the issues, mislead the jury, and waste time, Fed. R. Evid. 403, the contrary is true here. Limiting admissible financial status, benefit, and profit evidence would allow GEO to paint a one-sided picture of its contract with ICE without full evidence of the financial benefits to GEO from its use of detainee labor to fulfill contract obligations. This would be misleading to the jury and prejudicial to Washington. Washington is entitled to present its theory of the case based on all of the relevant evidence available to show that detainee-labor is indeed "work." Wash. Rev. Code § 49.46.010(2).

For all of these reasons, Plaintiffs must be permitted to present evidence during both the jury and bench trials that GEO permits detainee workers to work alongside its regular employees as a core part of its business model, and that it enjoys substantial financial benefits and profits as a result.

**E.     GEO's MIL No. 5: GEO's "Other Lawsuits" Motion Should Be Denied**

GEO seeks to exclude all evidence about other lawsuits currently pending against GEO in other jurisdictions. Washington does not intend to introduce evidence of other litigation in its case in chief, but may do so to the extent GEO is allowed to open the door by discussing Washington's prosecutorial discretion and/or political motivations for this enforcement action. If GEO is permitted to impugn Washington's motives for engaging in this enforcement action

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE
12
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

now (or question Washington's reasonableness in bringing this case), Washington has the right to introduce evidence of recent litigation against GEO, which speaks to the general public interest in regulating GEO, the widespread nature of its practices, and the timing of this litigation.

Additionally, Washington again objects to the extent GEO attempts to exclude its requests for reimbursements from ICE on this basis. GEO's June 1, 2018, letter to ICE references other similar litigation in Colorado and California, but more importantly, it outlines GEO's "estimation of the costs necessary to achieve compliance with the Plaintiffs [in this and other related matters]." Polozola Decl. ¶ 2, Ex. A (Trial Ex. 365). As discussed above, such evidence is relevant because it not only shows GEO has already done the calculation necessary to pay detainee workers the minimum wage, but also suggests that GEO is financially able to pay detainee workers the minimum wage. Even further, evidence of the on-going negotiation between GEO and ICE undermines GEO's defenses, including its assertion of derivative sovereign immunity, that GEO is somehow limited to the reimbursement set forth in the GEO-ICE Contract. Since it is directly relevant to both claims and defenses, and clearly outweighs any prejudice to GEO that other litigation may exist, GEO's request for reimbursement, and other evidence that may reference other litigation, should not be excluded.[9]

F.  **GEO's MIL No. 8: The Court Should Not Bar Evidence of Pay Rates at Other GEO Facilities**

Finally, in its MIL No. 8, GEO seeks to exclude evidence of "VWP Pay rates at other [GEO] facilities" because "the only facility at issue in this litigation is the [NWDC], [and] evidence about what other facilities do or do not do is not relevant to the claims here." ECF No. 355 at 9. Washington agrees in part and has accordingly moved to preclude GEO from introducing evidence of other facilities (run by Washington or local government entities). *See* ECF No. 357 at 11-14. But as it relates to GEO's other private, civil detention facilities and

---

[9] Alternatively, Washington agrees to redact from Exhibit 365 references to the Colorado and California facilities.

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

instances in which GEO has paid more than $1 per day, GEO is wrong. Evidence that GEO can and does pay more to detainees elsewhere is relevant to rebut GEO's defense, if allowed, that it is limited to paying $1 per day. For both the jury and the Court (in the unjust enrichment phase), such information is necessary to understand that GEO's decision to pay less than the minimum wage is a choice GEO is making rather than a requirement under GEO's contracts with ICE or any federal law. GEO could pay more and has done so on occasion at the NWDC and elsewhere. Evidence that GEO knows of that option and has exercised it in the past is accordingly both relevant and admissible.

### III.   CONCLUSION

Washington respectfully asks the Court to deny GEO's Motions in Limine.

Dated this 23rd day of March 2020.

Respectfully submitted,

        ROBERT FERGUSON
        Attorney General of Washington

        s/ *Lane Polozola*
        MARSHA CHIEN, WSBA No. 47020
        ANDREA BRENNEKE, WSBA No. 22027
        LANE POLOZOLA, WSBA No. 50138
        PATRICIO A. MARQUEZ, WSBA No. 47693
        Assistant Attorneys General
        Office of the Attorney General
        800 Fifth Avenue, Suite 2000
        Seattle, WA 98104
        (206) 464-7744
        marsha.chien@atg.wa.gov
        andrea.brenneke@atg.wa.gov
        lane.polozola@atg.wa.gov
        patricio.marquez@atg.wa.gov

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated this 23rd day of March 2020, in Seattle, Washington.

*[signature]*

CAITILIN HALL
Legal Assistant

WASHINGTON'S RESPONSE TO GEO'S
MOTIONS IN LIMINE

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744