The Honorable Robert J. Bryan

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
8 **AT TACOMA**

9 | STATE OF WASHINGTON, | Case No. 3:17-cv-05806-RJB |

10 | Plaintiff, |

11 | v. | **DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF STATE OF WASHINGTON'S MOTIONS IN LIMINE** |

12 | THE GEO GROUP, INC., |

13 | Defendant. | **NOTE ON MOTION CALENDAR:** March 27, 2020 |

14

15 | | ORAL ARGUMENT REQUESTED |

16

17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB)

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1

## TABLE OF CONTENTS

2   I.     THE STATE'S MOTION IS PROCEDURALLY BARRED. ........................................1

3   II.    THE NORTHWEST ICE PROCESSING CENTER ("NWIPC")................................2

4   III.   EVIDENCE OF STATE WORK PROGRAMS. ....................................................2

5   IV.    PRIOR STATEMENTS BY THE STATE ABOUT THE APPLICABILITY OF

6          THE WMWA. ..............................................................................................6

7   V.     COLLEEN MELODY'S TESTIMONY. ...........................................................7

8   VI.    EVIDENCE THAT DETAINEES VOLUNTEER FOR THE VWP. ...........................8

9   VII.   TESTIMONY FROM DAN RAGSDALE, BRIAN EVANS, JULIE WILLIAMS,

10         LYNNE BUCHANAN, AND DAVID JOHNSON. ...............................................9

11         1.     L&I Employees (Lynne Buchanan and David Johnson) ........................10

12         2.     GEO Employees (Dan Ragsdale and Brian Evans)...............................11

13  VIII.  EXEMPTIONS TO THE WMWA......................................................................12

14  IX.    WORK AUTHORIZATION OF DETAINEES.......................................................15

15  X.     CRIMINAL HISTORY OF DETAINEES. .........................................................15

16  XI.    GEO'S PAYMENT OF $1/DAY TO DETAINEES................................................17

17  XII.   THE STATE'S MOTIVATIONS FOR THIS LAWSUIT. .......................................17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB)

52367959;3

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Defendant The GEO Group, Inc. ("<u>Defendant</u>" or "<u>GEO</u>"), by and through its undersigned counsel, hereby submits its Opposition to Plaintiff State of Washington's Motions in Limine. Dkt. No. 357.

## I.       The State's Motion is Procedurally Barred.

As an initial matter, GEO notes that the State's Motion in Limine ("<u>Motion</u>") was filed in violation of this Court's Local Rules and should be stricken in its entirety. Indeed, while the State now argues that the Motion is their first motion in limine, the record indicates that the State already filed its single motion in limine under the Rules. *See* Dkt No. 343; LCR 16(b)(4).

As background, the State's *Daubert* motions were due July 2, 2019. Dkt. No 171; LCR 16(b)(4). Four months after this deadline, the State filed a motion to exclude the expert testimony of Gregory Bingham. Dkt. No. 331. GEO alerted the Court that, unless the motion was intended to be filed under LCR 7(d)(4), governing motions in limine, the motion was untimely. Dkt No. 337. In its ruling on the State's motion to exclude, the Court concluded that the motion was timely because "[m]otions *in limine* are due by February 5, 2020." Dkt. No. 343 at 1. The Court explicitly stated that LCR 7(d)(4), the Rule governing motions in limine, had not <u>yet</u> been violated. *Id.* The Court went on to exclude significant portions of Mr. Bingham's testimony. *Id.* Because LCR 7(d)(4) requires all motions in limine to be filed as a single motion (absent good cause) and because the State has not shown good cause,[1] its instant Motion should be denied in its entirety. The State has already filed its single motion in limine, for which it was afforded significant relief. When the State filed that prior motion and did not raise any other issues for trial, it made a conscious decision regarding litigation strategy. It should not be permitted to now flaunt the Rules and change that strategy. This is particularly true where, as here, the State has not shown good cause. Furthermore, because of the unique posture of this case, if the State's current Motion is

---

[1] The State's only effort to establish good cause appears in a footnote, where it argues that its prior motion to exclude expert testimony, filed four months after the LCR16(b)(4) deadline, was a "separate" motion. The State cites to *Bancroft v. Minnesota Life Ins. Co.*, 783 F. App'x 763 (9th Cir. 2019), in support of its position. *Bancoft* affirmed a summary judgment ruling on grounds unrelated to this lawsuit and has no bearing on whether a party may bring multiple motions in limine in violation of the Local Rules. *Id.*

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 1

52367959;3

considered, the State will effectively have not two, but three, bites at the apple, as it will also reap the benefits of any motions in limine advanced by the Private Plaintiffs which will apply with equal force during the joint liability trial.[2]

## II.    The Northwest ICE Processing Center ("NWIPC").

The State moves to prohibit GEO from using the name of its facility, the Northwest ICE Processing Center, in this proceeding in favor of a prior name of the facility. The State claims that if GEO is allowed to use the name of the facility, as it appears on GEO's building, it will be confusing and prejudicial to jurors. The State's position is wholly without merit and the Motion should be denied. The facility at issue is currently named the "Northwest ICE Processing Center." There is simply no justification for restricting the use of the facility's name. Indeed, the facility's name – Northwest Ice Processing Center –  is widely recognized, such that the City of Tacoma has dedicated an entire page of its website to the NWIPC—by name.[3] The webpage includes answers to frequently asked questions about the NWIPC and refers to the center by its name. Included in those questions is information about this lawsuit. Certainly, the City of Tacoma has no concerns about confusing the general public by using the actual name of the facility. Nor should this Court. Further, there is absolutely no prejudice to the State if GEO is permitted to use the facility's current name. Accordingly, the State's eighth Motion in Limine should be denied.[4]

## III.    Evidence of State Work Programs.

In support of its opposition to summary judgment, the State submitted no less than six declarations describing work programs at civil and criminal detention facilities across the State of Washington. *See* Dkt. Nos. 308-315. Thereafter, this Court ruled that the issue of whether GEO is

---

[2] GEO notes that the State and Private Plaintiffs (collectively, the "Plaintiffs") have the same interest in the joint liability trial and as a result have acted in a unified manner in the pretrial conferences. Despite this, the State and Private Plaintiffs have filed separate motions in limine, totaling 35 pages, the majority of which address the joint liability trial. It is clear that the Plaintiffs' combined 22 motions in limine, spanning 35 pages, do not comply with the goals or spirit of LCR7(d)(4).

[3] *See*  https://www.cityoftacoma.org/whats_going_on/northwest_ice_processing_center_information__faqs  (last visited March 19, 2020).

[4] During conferral with the State, GEO stated that it was amenable to a jury instruction that the NWIPC and the Northwest Detention Center ("NWDC") are one in the same, to eliminate any potential confusion. GEO remains open to this agreement, but simply cannot agree to exclude the use of the correct name of the facility.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 2

52367959;3

entitled to intergovernmental immunity for its operation of the Voluntary Work Program ("VWP") at the NWIPC could not be resolved as a matter of law because issues of fact remain about work programs in the State of Washington. SOW Dkt. No. 322. Incredulously, the State now seeks to preclude the *same* evidence it relied upon at summary judgment from consideration at trial on the basis that it is now somehow irrelevant. To the contrary, this evidence is at the heart of GEO's intergovernmental immunity defense and thus inherently relevant for trial.

The State's argument for exclusion rests on their continued flawed construction of intergovernmental immunity. The State argues that because GEO is a private contractor of the federal government, it is not entitled to intergovernmental immunity. Dkt. No. 357 at 14. As part of this argument, the State *once again* provides an inaccurate chart that concedes that the federal government (and its detainees) are not subject to the Washington Minimum Wage Act ("WMWA" or the "Act"), but inexplicably separates GEO into a separate category under "Private Contract Facility." The State cites absolutely no legal support for its definition of the favored class (and accompanying chart).[5] This is likely because the State's argument is inconsistent with WMWA as well as contrary to controlling Ninth Circuit and Supreme Court law.

Binding Ninth Circuit precedent makes clear that in the context of federal immigration detention centers, <u>federal government contractors are treated the same as the federal government itself for purposes of intergovernmental immunity</u>.[6] *United States v. California*, 921 F.3d 865, 879 (9th Cir. 2019); *see also Boeing v. Movassaghi*, 768 F.3d 832, 842-43 (9th Cir. 2014) ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis . . . When the state law is discriminatory, a private entity with which the federal government deals can assert immunity."). Thus, GEO steps into the shoes of

---

[5] In its briefing, the State did not identify an exemption from the definition of "employee," or any other definition in the WMWA, that differentiates between public and private entities.

[6] It is worth noting that ICE "neither constructs nor operates its own detention facilities." *See* Dec. of Barnacle, Ex. A, ¶ 52. And, even if this Court were to adopt the State's interpretation of the law, direct regulation of ICE by precluding it from operating in Washington in the same manner in which it is authorized by the federal government to operate in other states, would violate the Supremacy Clause as a matter of law—even without discriminatory treatment. *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) ("[U]nder the intergovernmental immunity component of the Supremacy Clause . . . states may not directly regulate the Federal Government's operations . . .").

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 3

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

the federal government for purposes of intergovernmental immunity.[7] *California*, 921 F.3d at 879; *see also Boeing*, 768 F.3d at 842-43. This clear principle has been recognized by both the United States in its Statement of Interest filed in this matter (Dkt. No. 290 at 5-6) and this Court, (Proposed Order, Dkt. No. 306-1 at 7). Yet, the State remarkably continues to advance its flawed analysis, failing to even mention the controlling precedent herein. As this Court previously explained, the State's "argument overlooks the law that federal governmental contractors are treated the same as the federal government for purposes of immunity analysis." Dkt. No. 306-1 at 7. If the State's chart is revised to be consistent with controlling precedent, so that GEO and the federal government are properly considered the same, under the State's own rationale, federal detainees within the NWIPC are exempt from the WMWA:

|  | Government Institution **or** Private Contract Facility |
|---|---|
| Federal Detainees[8] | Yes |
| State Detainees | Yes |

Were the State to nevertheless argue that federal detainees are treated differently than those in state custody for purposes of the WMWA, the principles of intergovernmental immunity would govern whether the disparate treatment is a violation of the Supremacy Clause.

The Supreme Court recently clarified that "[w]hether a State treats similarly situated state and federal employees differently depends on how the State has defined the favored class." *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019) (emphasis added). Under the WMWA the definition of employer is the same for all entities, public or private. RCW 49.46.010(4).[9] Thus, it is not the

---

[7] It is worth noting here too that ICE "neither constructs nor operates its own detention facilities." See Exhibit A, ¶ 52. Thus, this principle is of paramount importance in the context of immigration detention. And, even if this Court were to adopt the State's interpretation of the law, it would amount to direct regulation of ICE by precluding it from exercising its congressionally-authorized discretion to collaborate with private contractors. This construction would violate the Supremacy Clause as a matter of law—even without discriminatory treatment. *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) ("[U]nder the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations or property.").

[8] The State's chart is silent about which portion of the WMWA exempts federal detainees from coverage.

[9] For the avoidance of doubt, the WMWA's definition of "employer" does not distinguish between public and private employers. Nor does the detainee exception distinguish between facilities where the state engages a contractor and those where it does not. Certainly, the detainee exception would be superfluous if both the state and federal governments were exempt from the WMWA's definition of employer. The legislative history of the WMWA solidifies this point. While the definition of "employer" has not changed since 1961, the exceptions to the definition of

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 4

52367959;3

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

"employer" or operator of the detention facility that defines the "favored class" for purposes of intergovernmental immunity analysis. Instead, it is the definition of "employee" that controls. The Washington legislature has defined the class of individuals exempted from the WMWA as "[a]ny resident, inmate, or patient of a state . . . correctional, detention, treatment or rehabilitative institution[.]" RWC § 49.46.010(3)(k) (the "detainee exception"). Accordingly, the "favored class" as defined in the WMWA consists of state detainees who are exempted from the coverage of the Act. Thus, here, the proper comparison to the federal government's detainees, held at the NWIPC, is any resident, inmate, or patient of a state detention, treatment, correctional, or rehabilitative institution.[10] If the federal government (and by extension GEO) is not afforded the same exemptions as the state, the WMWA violates the principle of intergovernmental immunity. Accordingly, GEO will introduce evidence that there are individuals in Washington who: (i) are in State custody (both criminal and civil); (ii) participate in work programs; and (iii) are not paid minimum wage under the WMWA. Through evidence of sub-minimum wage work performed by those in State custody, GEO will establish its defense of intergovernmental immunity. Thus, this evidence is not only relevant to GEO's intergovernmental immunity defense, but it rests at its core.

Additionally, evidence of what the State pays its detainees—and the benefits it derives from the operation of those programs—is also relevant to GEO's defense to the State's unjust enrichment claim. To establish its case for unjust enrichment, the State must show:

1. That the State of Washington conferred a benefit upon GEO through the VWP operated at the Northwest ICE Processing Center;

2. That GEO obtained and appreciated that benefit at the State of Washington's expense; and

3. That the circumstances would make it unjust or inequitable for GEO to retain the benefit without paying its value to the State of Washington.

---

"employee" have. Previously, there was a specific exception for those individuals employed by the United States (i.e. the federal government), that was later removed. *See* Exs. B and C.

[10] The WMWA is silent as to the potential "employer" of these detainees, in that it does not draw a distinction between private and governmental entities. Likewise, the WMWA is silent as to who owns or operates the facility in which the individuals are housed.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 5

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

*See Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258, 1262 (2008); *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash.App. 151, 160, 810 P.2d 12 (1991). The State's practice of paying detainees in its own facilities sub-minimum wages is relevant to whether the circumstances make it unjust for GEO to do the same. Indeed, if it is not unjust for the State to offer work programs for detainees at sub-minimum wages, it certainly is not unjust for federal detainees to participate in similar programs. Further, this evidence is relevant to whether GEO obtained detainee labor at the State's expense. If the State had provided services to ICE, in GEO's place, undoubtedly it would have paid the federal ICE detainees consistent (at sub-minimum wages) with other detainees within the State. Thus, evidence of other work programs is probative of whether GEO appreciated a benefit at the State's expense. For these reasons, the State's <u>sixth</u> Motion in Limine regarding evidence of State work programs should be denied in its entirety.

## IV.   **Prior Statements by the State About the Applicability of the WMWA.**

The State's position in this lawsuit is that detainees at the NWIPC fit within the statutory definition of "employee" under the WMWA. Unsurprisingly, it now seeks to exclude statements made by individuals who worked for the Washington Department of Labor and Industries ("<u>L&I</u>") that undermine its position. But, there is no rule of evidence that justifies excluding statements merely because they conflict with a party's trial strategy. To the contrary, a party's credibility is an issue that is always before the jury. *See e.g., Conan v. City of Fontana*, 2017 WL 7795953, at *2 (C.D. Cal. Oct. 16, 2017). Among others, the State seeks to exclude the following statements made by L&I:

- "[I]nmates [at the NWIPC] are not covered by the minimum wage act; they are not defined as employees." See Ex. D (WA00009253).

- "As for jobs that are given to the inmates or residents [of the NWIPC] at these low rates, it is outside of L&I's jurisdiction to investigate because they are working for the facility, regardless that it is operated by a corporation. It is still under the jurisdiction of the prison system. . ."

- "For wage and hour purposes, L&I des not have any jurisdiction over the federal government or its instrumentalities. This would include the detainees and work performed by Geo Group [sic] and its employees under contract with the federal government."

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 6

52367959;3

These statements by L&I, the State of Washington division tasked with enforcing the WMWA, are directly relevant to whether NWIPC detainees are employees. Indeed, if the State itself has previously concluded these individuals are not employees, that conclusion and the supporting reasoning bear directly on the issue of whether detainees should be classified as employees.

Additionally, as part of its unjust enrichment claim, the State must establish that the circumstances surrounding GEO's payment of less than minimum wage to detainees participating in the VWP at the NWIPC were unjust. Certainly, the fact that no detainees ever filed wage complaints, and the fact that to-date, L&I *still* has not made a determination that the WMWA applies to detainees at the NWIPC are relevant to that consideration. *See* Ex. E, Grice Dep. 42:14-16 (L&I has never received a complaint from a detainee at the NWIPC); 18:1-7 (L&I has never made a determination about whether detainees at the NWIPC fall within the detainee exception to the WMWA); Ex. F, Grice Dep. 43:21-22 (same). Thus, the State's <u>fifth</u> Motion in Limine should be denied.

## V.    <u>Colleen Melody's Testimony.</u>

In her 30(b)(6) deposition, Colleen Melody testified that "detainees sleep and live [at the NWIPC] while they are detained by the immigration statutes" Exhibit G, Melody, 30(b)(6) Washington Attorney General, 150:7-9. There is simply no reason to exclude this testimony from Ms. Melody, the State's 30(b)(6) representative. This testimony goes to the heart of whether detainees are "employees" under the WMWA. RWC § 49.46.010(3)(j) (the "<u>resident exception</u>"). GEO intends to introduce Ms. Melody's concession at trial. Certainly, there is nothing prejudicial about the State's concession. Additionally, in her deposition, Ms. Melody testified about the limits on the damages the State seeks for its unjust enrichment claim, clarifying that they do not intend to argue that other Washington residents should have been given the opportunity to apply for and perform the VWP positions—as articulated in more detail in GEO's Motion in Limine. This too is relevant testimony. The testimony is not, in any way, prejudicial or confusing under Federal Rule of Evidence 403. Finally, Ms. Melody provided testimony about the State's operation of detainee sub-minimum wage work programs, which is relevant to GEO's intergovernmental immunity

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 7

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    defense—discussed *supra* in Section III. Accordingly, the State's request (made in footnote 3 of its

2    Motion) to exclude the testimony of Ms. Melody should be denied.

3                        **VI.    Evidence that Detainees Volunteer for the VWP.**

4            The voluntary nature of the VWP goes to the heart of whether detainees are employees

5    under the WMWA and therefore its relevance outweighs any prejudice to the State. [11] FRE 403. As

6    GEO has previously argued, the fact that the VWP is entirely voluntary goes directly to the

7    *Anfinson* factors. *See* Dkt. No. 270 at 11; *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash.

8    2d 851, 870 (2012). *Anfinson* instructs that whether an employee-employer relationship exists

9    depends upon the circumstances of the whole activity. *Id.* at 869. While there is no exclusive set of

10   factors to consider, two factors that are commonly considered are permanence and control. Clearly,

11   whether a detainee is a volunteer participant goes directly to those two factors. Because detainees

12   are volunteers, GEO has no control over what tasks they choose to perform or if they choose to

13   participate at all. Nor can GEO control whether detainees continue to volunteer, what positions

14   detainees volunteer for, or if the detainee will consistently show up for each shift. In addition,

15   because the VWP is purely voluntary, GEO has no control over the quality of a detainee's

16   participation or whether more highly skilled detainees volunteer for positions requiring higher

17   levels of skill. Likewise, because the VWP is voluntary, detainees are free to set their own

18   schedule. For these same reasons, the voluntary nature of the program goes to the permanence of

19   the relationship. Because detainees can volunteer one day and change their mind the next they are

20   not "permanent" fixtures in GEO's business, and by extension cannot be considered employees

21   under *Anfinson*.

22           Additionally, the "fundamental nature" of the activity is relevant to whether an employee-

23   employer relationship exists. *Rocha v. King Cty.*, 435 P.3d 325, 333 (Wash. Ct. App.), *review*

24   *granted sub nom. Bednarczyk v. King Cty.*, 193 Wash. 2d 1017, 448 P.3d 64 (2019). The *Rocha*

25   court concluded that despite the State's control over jurors, they were not employees for purposes

26

27   [11] Indeed, the State's argument that the VWP agreement will be unduly prejudicial is undercut by its own admission
     that the agreement is "relevant and admissible to establish the background context for the work program."

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 8
52367959;3

of the WMWA because the fundamental nature of jury service was a civic duty—not an employer-employee relationship. *Id.* Here, the "fundamental nature" of the detainee's relationship with GEO is not employment, but rather a custodial relationship. The ability to perform tasks on a voluntary basis exists not for employment (and the ability to purchase the necessities), but rather to avoid idleness, decrease disciplinary issues, and instead provide detainees with an opportunity to feel productive and useful. Indeed, directly analogous case law, addressing civilly detained individuals in the State of Washington's Special Commitment Center on McNeil Island ("SCC"), makes clear that where a detention facility operates a voluntary program for its residents as part of their custodial detention programming, the detainees are not employees. *Calhoun v. State*, 146 Wash. App. 877, 886 (2008), as amended (Oct. 28, 2008). Establishing that the NWIPC's VWP is the same as in *Calhoun* (including that the program is voluntary) is a key issue for trial.

Finally, evidence that detainees volunteered to participate in the VWP with the knowledge that they would be paid $1 per day is directly relevant to GEO's defense to the State's unjust enrichment claims as it demonstrates that participating detainees had no expectation that they would be paid more than $1 per day.  This is certainly relevant to whether the circumstances surrounding GEO's payment of less than minimum wage to detainees participating in the VWP at the NWIPC were unjust. Therefore, the relevance of the voluntariness of the VWP outweighs any perceived prejudice identified by the State. Accordingly, the State's <u>second</u> Motion in Limine should be denied.

**VII.   <u>Testimony from Dan Ragsdale, Brian Evans, Julie Williams, Lynne Buchanan, and David Johnson.</u>**

Under Fed. R. Civ. P. 37(c)(1), a court may exclude witnesses that were not disclosed under Rule 26. But, Rule 37 sanctions are expressly limited—the sanction of exclusion may not be imposed where a party's failure to disclose the witness was harmless or substantially justified. Fed. R. Civ. P. 37; *De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2007 WL 9717728, at *2 (E.D. Wash. June 7, 2007). Where a party knows of the "identities and importance of these witnesses for many months" the failure to disclose the witnesses in formal Rule 26 disclosures is harmless.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 9

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

*Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*, No. 2:17-CV-00209-SMJ, 2019 WL 7816836, at *3 (E.D. Wash. July 12, 2019) (declining to exclude witnesses not disclosed in formal Rule 26 disclosures). Likewise, a party is typically not required to supplement its disclosures to include information "otherwise made known to the parties during the discovery process or in writing." Fed. R. CIv. P. 26(e)(1); *De La O,* 2007 WL 9717728, at *2. Here, the individuals that the State seeks to exclude were known to it through the course of discovery. Thus, any failure to formally disclose the witnesses in Rule 26 disclosures was harmless.

### 1. L&I Employees (Lynne Buchanan and David Johnson).

GEO's failure to supplement its disclosures to include Lynne Buchannan and David Johnson was harmless. During the discovery process, the State disclosed emails that were responsive to GEO's discovery requests. A number of those emails were authored by Ms. Buchanan and Mr. Johnson. Subsequently, the emails authored by Ms. Buchanan and Mr. Johnson were frequently used in depositions. Indeed, Ms. Buchanan's emails were utilized in the 30(b)(6) depositions of Collen Melody (taken August 10, 2018), the 30(b)(6) deposition of Joshua Grice (taken September 5, 2019), and in GEO's briefing to the Court (Dkt. No. 300). Similarly, Mr. Johnson's emails were used in the 30(b)(6) depositions of Collen Melody (taken August 10, 2018), the 30(b)(6) deposition of Joshua Grice (taken September 5, 2019), the 30(b)(6) deposition of Taylor Wonhoff (taken August 22, 2019), and in GEO's briefing to the Court (Dkt. No. 300). Furthermore, in Mr. Grice's deposition as the designee for L&I, he provided testimony about Ms. Buchanan's emails. *See* Ex. F. Thus, Ms. Buchanan and Mr. Johnson were adequately disclosed through other discovery sources. *Johnson v. Albertsons, LLC*, No. 2:18-CV-01678-RAJ, 2020 WL 816015, at *3 (W.D. Wash. Feb. 19, 2020) ("Failure to disclose a witness is harmless where the witness's identity, position, location, and the subject of the information he possesses are made known to the opposing party well ahead of the discovery deadline.").

Furthermore, the failure to place Ms. Buchanan and Mr. Johnson on Rule 26 disclosures was harmless. The State is and has been well aware of what information Ms. Buchanan and Mr. Johnson have as it relates to this case. And, even if given the chance, the State would not have

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 10

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

conducted depositions of Ms. Buchanan and Mr. Johnson as it represents L&I and can contact either individual at any time. Indeed, the State did not articulate any prejudice or harm in its Motion. Accordingly, there is no basis to exclude either Ms. Buchanan or Mr. Johnson. And, if this Court were to exclude Ms. Buchanan and/or Mr. Johnson, the State should be prohibited from providing any explanation or context for the emails sent by Ms. Buchanan and Mr. Johnson as Mr. Grice, L&I's 30(b)(6) witness, admitted he never spoke to either witness in preparation for his 30(b)(6) deposition. Should the Court exclude these witnesses, their emails should stand on their own for the jury, without further context from the State. If context or explanation is needed, it should come only through the testimony of Ms. Buchanan and Mr. Johnson.

### 2. GEO Employees (Dan Ragsdale and Brian Evans).

The State also moves to exclude Dan Ragsdale and Brian Evans on the basis that they are "late-breaking witnesses." Dkt. 357 at 17. Yet, the State has long been aware of Mr. Ragsdale and was provided the opportunity to depose him, but never did. *See* Ex. H (letter from Armstrong). Because the State was provided an opportunity to depose Mr. Ragsdale, but did not do so, it cannot now allege that he should be excluded. *Johnson*, 2020 WL 816015, at *3 (failure to disclose is harmless where a party "could have deposed [the witness] but chose not to.") Accordingly, the State has not provided any basis to exclude Mr. Ragsdale.

During the discovery period in this case, the parties disputed the scope of financial documents that were relevant to the State's case. Following appellate proceedings, the Ninth Circuit set forth the appropriate limits on the State's discovery into GEO's financial information. Thereafter, GEO diligently worked to collect these documents and provide the same to the State. At the time of the Ninth Circuit Order, discovery was closed. Because the window to disclose witnesses had already closed at the time Mr. Evans became relevant, GEO's failure to identify him in a Rule 26 disclosure is substantially justified. Mr. Evans, GEO's Chief Financial Officer, was integral to these collection efforts and is the individual who is the most knowledgeable about those documents. He is *the* person within GEO who is qualified to testify about the documents the State intends to use to present its damages case. Without Mr. Evans, any individual who the State seeks

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 11

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

to have testify about many of the trial exhibits will lack holistic knowledge of what each document signifies. Additionally – and importantly – the State was previously made aware of Mr. Evans' importance to the financial information it sought. During GEO's 30(b)(6) deposition, Chuck Hill made clear that he spoke with Mr. Evans to obtain the relevant information for the deposition. *See* Ex. I, Hill 30(b)(6) Dep. 69:17-25; 70. He also testified that Mr. Evans himself created certain financial documents about which the State was inquiring. *Id.* 69:25. Thus, GEO's failure to disclose Mr. Evans was harmless. Furthermore, if the Court has any lingering questions about the potential prejudice to the State, GEO is willing to make Mr. Evans available for a remote deposition prior to trial. This opportunity would remedy any alleged prejudice the State may face. To that end, Mr. Evans should not be excluded. Accordingly, the State's <u>ninth</u> Motion in Limine should be denied in full.

## VIII.   Exemptions to the WMWA.

The State now argues, for the first time, that GEO should not be permitted to introduce evidence of the "detainee exception"[12] found in 49.46.10(3)(k) or the "resident exception" found in 49.46.10(3)(j) on the basis that the exceptions were not pled with sufficient specificity. The State's argument that GEO has not adequately pled, and put it on notice, that the exemptions of the WMWA will be at issue in the upcoming trial stretches credulity. In response to the State's Complaint, GEO filed a motion to dismiss for failure to state a claim that argued, in depth, that "Washington has expressly ***excluded*** persons detained in state facilities from the category of 'employees' protected by the MWA," citing exclusions to the definition of employee. Dkt. No. 18 at 10; *see also* Dkt. No. 10 at 24-28. The Court denied GEO's motion to dismiss ruling that "[at] least based on the pleadings, it is plausible that the Plaintiff, arguably, comes within the State definition of 'employee,' and is not subject to any existing statutory exception." Dkt. No. 29 at

---

[12] The State misleadingly refers to this exception as the "government owned facility" exemption, despite the fact that none of those words, let alone in that order, appear in the text of the statute.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 12

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

18.[13] Following the Court's Order, GEO filed its Answer which again alleged the failure to state a claim for which relief may be granted. Dkt. No. 34 at ¶ 8.1. Additionally, GEO pled a counterclaim for affirmative relief in the form a declaratory judgment that "detainees are not GEO's 'employees' and GEO is not their 'employer' with respect to participation in the Voluntary Work Program." *Id*. at ¶¶ 12.13, 12.1. At that point, GEO put the State on notice that, in addition to its defenses, it would be making an *affirmative claim* that detainees are not employees under the entirety of the WMWA.[14] The State and GEO both filed motions to dismiss. In the motion to dismiss briefing, the State sought to dismiss GEO's counterclaim for declaratory relief on the basis that GEO's claim was a "'mirror image' of Washington's minimum wage claim" and that "GEO's counterclaim regarding its employer-employee relationship with detainee-workers is a legal issue that will be resolved during the course of resolving Washington's claims," clearly indicating that the State understood the exceptions to the WMWA to be incorporated in both claims. Dkt. No. 37 at 13-14. The Court denied the State's motion to dismiss GEO's claim for declaratory relief under the WMWA on the basis that the "counterclaims go to the heart of Defendant's view of Plaintiff's claims." Dkt. No. 44 at 7. The pleadings and briefing in this case make clear that the exceptions to the WMWA have been at issue since GEO's initial motion to dismiss. Thus, the record is clear that GEO's pleadings met the requirements of Fed. R. Civ. P. 8(c). The State was adequately provided notice of GEO's contentions and has not been prejudiced.[15] *Wyshak v. City Nat'l Bank*, 607 F.2d

---

[13] The State grossly mischaracterizes this holding as conclusively determining that the detainee exception does not apply in this case. To the contrary, the issue has yet to be decided on its merits.

[14] In support of its Motion, the State mentions the parties unfiled pre-trial motion which is in the process of being refined through conferral. At this time, GEO has listed these exceptions as affirmative defenses in its pretrial order in an effort to streamline the trial process. Certainly, GEO is willing to list its claims in the pretrial brief in the affirmative instead. If it is ordered that the exceptions may not be presented as defenses, which it should not be, GEO will seek to present its case on the applicability of the WMWA, including the exemptions under which detainees may fall, prior to or concurrently with the State and Private Plaintiffs' case. In doing so, GEO will also reserve the opportunity to move for a directed verdict prior to the presentation of its defenses.

[15] The State's mention of GEO's requests for admission is of no consequence. In its request for admission, State did not ask for GEO's legal positon in this lawsuit. Rather, it asked GEO to admit, that at the time of the admissions, GEO did not detain any individuals described in 49.46.10(3)(k). At the time GEO responded to the State's request, no court or administrative body had determined as a matter of law that GEO's detainees fall within the detainee exception to the minimum wage. Thus, GEO did not have a fact upon which it could rely to conclusively determine that detainees fit within the WMWA's detainee exception. GEO is seeking such a legal determination here. Unless and until this Court or another administrative or judicial body provides GEO with a determination, GEO rests on its belief that the detainee

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 13

52367959;3

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."). On this basis alone the State's Motion should be denied.

In any event, if the record is not a sufficient basis to deny the State's Motion, well-settled Ninth Circuit precedent makes clear that the failure to allege an affirmative defense, without any showing of prejudice to the Plaintiff, is not grounds for waiver. *Lowerison v. Yavno*, 26 F. App'x 720, 722 (9th Cir. 2002) ("Affirmative defenses are not waived even if they are first raised in pretrial dispositive motions, if the plaintiff is not unfairly surprised or prejudiced"); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (finding employer did not waive its defense by failing to plead it until the summary judgment phase); *Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) ("The defendant should be permitted to raise its policy exclusions defense in a motion for summary judgment, whether or not it was specifically pleaded as an affirmative defense, at least where no prejudice results to the plaintiff."); *Olson v. Snohomish Cty. Pub. Transp. Ben. Area*, No. C03-3841RSM, 2005 WL 2573328, at *2 (W.D. Wash. Oct. 12, 2005). Indeed, even where an affirmative defense is raised after discovery is closed, at the summary judgment phase, the defense is still not automatically waived. *Healy*, 679 F.2d at 804. The State does not allege any prejudice, nor does any exist. *See e.g. K Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, No. CV1208997MMMSHX, 2013 WL 12131715, at *13 (C.D. Cal. Nov. 7, 2013) (finding no prejudice where Plaintiff was aware of the arguments not pled in advance of trial). Thus, GEO's defenses cannot be deemed waived.

Finally, GEO's claim for declaratory relief under the WMWA has not yet been assessed on the merits. Surely, a motion in limine is not the proper procedural vehicle for the State to seek a

exception applies to the WMWA, not an objective fact. Insofar as the request was seeking a legal opinion from GEO, it is an improper admission that should be excluded from trial. Requests for admission can only be used to resolve factual issues and they "cannot be used to compel an admission of a conclusion of law." *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999); *see also Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2015 WL 11256313, at *3 (W.D. Wash. Nov. 23, 2015) (requests that plainly call for a legal conclusion are inappropriate); *Chef'n Corp. v. Progressive Int'l Corp.*, No. C14-68 RAJ, 2015 WL 11234157, at *4 (W.D. Wash. July 6, 2015) ("As a preliminary matter, RFAs may not be used to compel an admission of a conclusion of law.").

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 14

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1  ruling on the merits of GEO's declaratory judgment claim. Accordingly, the State's <u>tenth</u> Motion in
2  Limine should be denied.

3              **IX.    <u>Work Authorization of Detainees.</u>**

4              The State moves to prevent GEO from introducing evidence of the work authorization
5  status of detainees while simultaneously seeking to introduce testimony of Chris Strawn that
6  detainees are able to obtain work authorization while detained. The State has also listed a number
7  of work authorization forms on its proposed exhibits. Surely, there is no basis for excluding
8  evidence solely based upon the party who will introduce it. For this reason alone, the State's
9  Motion should fail. Additionally, evidence about work authorization is relevant to GEO's
10 derivative sovereign immunity defense. GEO's contract with ICE sets forth specific work
11 authorization requirements for all GEO employees. To the extent the detainees do not fall within
12 those requirements, that is relevant to GEO's defense. Thus, the State's <u>third</u> Motion in Limine
13 should be denied in full.

14             **X.    <u>Criminal History of Detainees.</u>**

15             GEO has proposed a limited use of Plaintiff Aguirre Urbina's criminal history at trial. As an
16 initial matter, GEO seeks an opportunity to question Mr. Aguirre Urbina outside of the presence of
17 the jury, prior to his testimony, so that the Court can make a finding as to his competence to testify
18 prior to his testimony. FRE 601 (state law controls competence determinations); *State v.*
19 *Brousseau*, 172 Wash. 2d 331, 337, 259 P.3d 209, 212 (2011) (trial judge should determine the
20 witnesses competency prior to the witness testifying at trial). GEO seeks this relief because Mr.
21 Aguirre Urbina has previously sworn, under penalty of perjury, that on occasion he has been
22 controlled by voices in his head—which he describes as "the enemy." Ex. J (Exhibit 22).
23 According to Mr. Aguirre Urbina, "the enemy" has been responsible for his actions in prior court
24 proceedings. *Id.* And, he has sought to have his prior admissions in sworn proceedings revoked
25 based upon his mental health. Accordingly, GEO seeks the opportunity to have the Court rule upon
26 his competence to testify at trial to preserve the ruling for the record in the event that Mr. Aguirre
27 Urbina later raises concerns related to his competence.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 15

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Next, GEO proposed that because qualification for certain positions in the VWP vary based upon an individual's criminal history, GEO be permitted to introduce evidence that Mr. Aguirre-Urbina has a criminal record that did not allow him to be classified as a "low" offender for purposes of VWP positions. GEO does not seek to introduce evidence of Mr. Aguirre Urbina's specific bad acts or convictions. Rather, GEO seeks to provide an explanation to the jury about why Mr. Aguirre Urbina was ineligible for certain VWP positions. In the absence of this opportunity, the State will be able to exploit GEO's forced silence to imply that GEO limited the positions for which Mr. Aguirre Urbina could apply based upon a lack of actual voluntariness of the VWP or GEO's preferences, when in reality it is an issue of ICE-mandated facility security. As the elements of voluntariness and control are directly relevant to whether detainees are employees under *Anfinson*, this limitation would be highly prejudicial to GEO. Thus, GEO should be permitted to introduce limited evidence of Mr. Aguirre Urbina's criminal history. Because GEO's proposed compromise strikes a balance between relevance and potential prejudice of criminal convictions, this compromise would not violate FRE 403 or FRE 609.

In this same vein, there are a number of circumstances where the State may open the door to Mr. Aguirre Urbina's criminal history. For example, if the State argues that Mr. Aguirre Urbina meets all qualifications under GEO's contract with ICE to be an employee—GEO should be allowed to introduce evidence that Mr. Aguirre Urbina has a criminal history that would preclude him from employment at GEO. Likewise, if Plaintiffs introduce testimony of Chris Strawn describing the reasons that detainees are held in the NWIPC, GEO should be able to inquire whether a criminal history could be a factor in an individual's detention. Likewise, if Plaintiffs offer testimony of Chris Strawn that detainees could receive work authorization, GEO should be permitted to ask if Mr. Aguirre Urbina would be eligible given his criminal history.

Finally, Mr. Aguirre Urbina also swore, under penalty of perjury, that he is receiving treatment at the NWIPC for his mental health, and that he now "feels much better." GEO should be able to introduce this sworn testimony as impeachment testimony, should Mr. Aguirre Urbina deny that he receives treatment at the NWIPC. Ex. J (Exhibit 22). Accordingly, the State's <u>fourth</u> Motion

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 16

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

52367959;3

in Limine should be denied in part, subject to the proposal offered herein.

## XI.     GEO's Payment of $1/day to Detainees.

The State moves to exclude all evidence that GEO's contract with ICE permits it to pay $1 per day to detainees on the basis that such information is irrelevant and prejudicial. To the contrary, the fact that GEO pays $1 per day to detainees, consistent with its contractual requirements, is relevant to both its defense to the State's unjust enrichment claim, to whether GEO has the right to control the rate of pay to detainees under the *Anfinson* test, and to providing the jury with the information it needs to determine whether detainees are employees.

GEO will present evidence to the jury that detainees are not employees under the *Anfinson* test because the fundamental purpose of the VWP is to provide individuals with tasks to stave off boredom and idleness while detained—not to create employment opportunities. As part of its presentation, GEO will explain that the ICE contract permits it to pay detainees $1 per day. And, to avoid confusion that the VWP is meant to create an employment relationship, the ICE contract specifically mandates that GEO not treat detainees as employees.[16] These two contractual provisions combined are highly probative of whether GEO has control over detainees' pay under *Anfinson*. And, GEO will present evidence that it complies with both provisions. In fact, contrary to the State's position, it would be highly prejudicial for the State to be able to present a case where they will explain, repeatedly, that GEO pays $1 per day to detainees without permitting GEO to provide an explanation of its motivations for doing so and explanation that $1 per day is in compliance with the ICE contract. Likewise, this evidence will be used as a defense to the State's unjust enrichment claim, as GEO can demonstrate that there was no expectation that detainees would be paid more than $1 per day, under its contract with ICE and the VWP agreements. Accordingly, the State's <u>seventh</u> Motion in Limine should be denied in full.

## XII.     The State's Motivations for this Lawsuit.

---

[16] In its Motion, the State incorrectly asserts that: "There is no legal basis for asserting at this stage that the ICE-GEO Contract overrides the MWA or exempts GEO from complying with its wage payment provisions." Dkt No. 357 at 16. This is simply not true; as laid out in detail in GEO's Motion for Summary Judgment in the *Nwauzor* action, the contract makes clear through numerous provisions that detainees may not be classified as employees.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 17

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

As the State explained in its Motion, GEO "is free to attack Washington's evidence as to whether GEO employs detainee-workers or <u>unjustly benefits</u> from its labor practices." Dkt. No. 357 at 4 (emphasis added). However, the State asks this Court to limit the introduction of evidence about the State's motivations for bringing the lawsuit, including what it believes to be unjust about GEO's practices. *Id.* In support of its Motion, the State cites to cases that are not relevant here, each of which addresses the defense of selective prosecution in a criminal case under Fed. R. Crim. P 12. They do not provide any support in a civil case. In contrast, here, GEO is free to introduce evidence of the State's motivation for bringing its lawsuit and potential bias. *Mitchell v. City of Tukwila*, No. C12-238RSL, 2013 WL 6631791, at *1 (W.D. Wash. Dec. 17, 2013) (denying motion exclude evidence of a plaintiff's motivation for filing his lawsuit). In return, the State can provide its own evidence about its motives—leaving the jury to determine the State's credibility.

To be sure, a Plaintiff's motivation for bringing a lawsuit is relevant to bias and credibility. *See e.g., Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 WL 7795953, at *2 (C.D. Cal. Oct. 16, 2017). The State is not excluded from this general rule. Indeed, the State's decision to enforce the WMWA as to GEO goes directly to the heart of its unjust enrichment claims, which are allegedly rooted in protecting the people of the State of Washington. The fact that the State previously condoned the payment of less than minimum wage to NWIPC detainees – and never put GEO on notice of any contrary treatment – but has now changed course, bears directly on whether there was an expectation that GEO would act differently than it did—a key element of unjust enrichment. Further, the State's current motivations and the reason and impetus for the "change" are directly relevant to whether the circumstances surrounding GEO's operation of the VWP are unjust. This evidence also goes directly to the State's bias insofar as it establishes that the State's enforcement of the WMWA is inconsistent with its prior choices. Indeed, this information is exactly what jurors should be permitted to consider. *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987) ("The jurors, as sole triers of fact and credibility, were entitled to hear the evidence and decide the extent of that bias."). Cross-examination is an effective tool for any prejudice the State may face. Accordingly, the State's <u>first</u> Motion in Limine should be denied.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 18

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    Respectfully submitted, this 23rd day of March, 2020.

2                                    By: *s/ Colin L. Barnacle*
                                     **AKERMAN LLP**
3                                    Colin L. Barnacle (Admitted *pro hac vice*)
                                     Christopher J. Eby (Admitted *pro hac vice*)
4                                    Ashley E. Calhoun (Admitted *pro hac vice*)
                                     Adrienne Scheffey (Admitted *pro hac vice*)
5                                    1900 Sixteenth Street, Suite 1700
                                     Denver, Colorado 80202
6                                    Telephone:  (303) 260-7712
                                     Facsimile:  (303) 260-7714
7                                    Email: colin.barnacle@akerman.com
                                     Email: christopher.eby@akerman.com
8                                    Email: ashley.calhoun@akerman.com
                                     Email: adrienne.scheffey@akerman.com
9
10
                                     By: *s/ Joan K. Mell*
11                                   **III BRANCHES LAW, PLLC**
                                     Joan K. Mell, WSBA #21319
12                                   1019 Regents Boulevard, Suite 204
                                     Fircrest, Washington 98466
13                                   Telephone: (253) 566-2510
                                     Facsimile:  (281) 664-4643
14                                   Email: joan@3brancheslaw.com
15
16                                   *Attorneys for Defendant The GEO Group, Inc.*
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE
(3:17-CV-05806-RJB) – PAGE 19

52367959;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PROOF OF SERVICE**

I hereby certify on the 23rd day of March, 2020, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF STATE OF WASHINGTON'S MOTIONS IN LIMINE** via the Court's CM/ECF system on the following:

Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
OFFICE OF THE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff*

*s/ Nick Mangels*
Nick Mangels

PROOF OF SERVICE
(3:17-CV-05806-RJB) – PAGE 20

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

52367959;3