1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS |
| THE GEO GROUP, INC., | |
| Defendant. | NOTE ON MOTION CALENDAR: September 4, 2020 |

STATE OF WASHINGTON'S MOTION TO
COMPEL PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

# I.     INTRODUCTION

The State of Washington (Washington) respectfully seeks an order compelling The GEO Group, Inc. (GEO) to produce corporate financial documents estimating the market value of work detainees perform in its Voluntary Work Program (VWP) at the Northwest Detention Center (NWDC).[1] Washington seeks GEO's calculations of the cost of complying with Plaintiff's detainee labor demands at the NWDC and an un-redacted portion of GEO's May 30, 2018 letter in which GEO discloses that financial analysis to ICE. *See* ECF No. 362-1 (GEO's Letter to ICE) ("We have conducted an estimation of the costs necessary to achieve compliance with the Plaintiffs."). The portions of GEO's Letter to ICE that include GEO's request for an "equitable adjustment" from ICE for the legal costs of defending this and private plaintiffs' Washington Minimum Wage Act and Unjust Enrichment lawsuits, as well as two similar detainee wage cases in other states, are not at issue and are excluded from evidence at trial.

The information Washington seeks has long been known to GEO, should have been produced after this Court and the Ninth Circuit required GEO to respond to discovery requests related to its finances, and is not protected by any privilege. Good cause exists for considering this motion because, while GEO has repeatedly argued it only calculated legal fees and cumulative damages *as alleged by the Plaintiffs* in the pending detainee wage litigation, GEO's late-disclosed witness—its Chief Financial Officer, Brian Evans—recently explained in a Court-ordered deposition that GEO, in fact, made its own, independent calculations in valuing detainee labor at the NWDC and included those calculations in GEO's Letter to ICE as the cost of complying with Plaintiffs' detainee wage demands.

---

[1] Washington certifies pursuant to LCR 37(a) that it has made repeated requests for the documents, the parties have engaged in discovery conferences in an effort to resolve the dispute, and Washington's attempts to resolve this dispute without judicial intervention have been unsuccessful. *See* Declaration of Andrea Brenneke in Support of Motion to Compel Partially Unredacted Letter and Related Financial Calculations (Brenneke Decl.) ¶¶ 4, 7-8, 10-15, 18-19, 25-26.

STATE OF WASHINGTON'S MOTION TO
COMPEL PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   Washington's Pursuit of GEO's Financial Information Re: NWDC and Its VWP**

In September 2018, Washington filed a motion to compel the production of GEO's financial information, statements, and documents regarding the NWDC and its VWP to ascertain the value of detainee labor and the benefit GEO retained from it, from 2005 to the present. *See* ECF No. 126 at 15-17, 26-28. A month later, the Court granted Washington's motion to compel in part, and ordered GEO to produce financial information related to the NWDC and its VWP. *See* ECF No. 133 at 9-10; *see also* ECF No. 144 at 2 (denying GEO's motion for reconsideration and explaining the records were discoverable).

Despite the Court's orders, GEO refused to produce the financial information and instead petitioned the Ninth Circuit Court of Appeals in January 2019 for a Writ of Mandamus to order the district court to vacate its discovery order. *See* ECF No. 166. Washington prevailed and GEO's Petition for Writ of Mandamus was denied in September 2019. *See* ECF No. 296. After the Ninth Circuit's decision, Washington requested that GEO finally produce its responsive financial documents on or before November 21, 2019. ECF No. 336. GEO produced additional financial information but never produced GEO's Letter to ICE or any of its underlying analysis. Brenneke Decl. ¶¶ 11-12.

**B.   Washington's Specific Requests for GEO's Letter to ICE and Its Underlying Calculations**

Washington obtained GEO's Letter to ICE through a third party's Freedom of Information Act (FOIA) request. Brenneke Decl. ¶ 5; GEO's Letter to ICE, ECF No. 362-1. In GEO's Letter to ICE, GEO's Chief Executive Officer told ICE's Deputy Director that "[w]e have conducted an estimation of the costs necessary to achieve compliance with the Plaintiffs" in the Minimum Wage/Unjust Enrichment lawsuits cases regarding the NWDC in Tacoma, Washington, as well as GEO's facilities in Colorado and California. *See* GEO's Letter to ICE,

STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  ECF No. 362-1. The paragraph that immediately follows that statement is redacted. *Id.*; Brenneke

2  Decl. ¶ 6.

3          Washington produced to GEO the FOIA documents, including GEO's Letter to ICE, in

4  June 2019, though GEO had never produced its own letter in discovery. Brenneke Decl. ¶ 5. On

5  June 5, 2019, Washington also requested that GEO produce an unredacted version of GEO's

6  Letter to ICE as responsive to Washington's discovery requests, including RFP No. 12 seeking

7  communications between GEO and ICE about the NWDC contracts. Brenneke Decl. ¶ 7, Ex. A.

8  On June 10, 2019, GEO refused, claiming it had already complied with RFP No. 12. GEO did

9  not produce a privilege log, identify with particularity any responsive documents that existed, or

10  assert any privileges with regard to withheld documents or GEO's Letter to ICE. Brenneke Decl.

11  ¶ 8, Ex. B.

12          On December 13, 2019, Washington sent a letter regarding various deficiencies in GEO's

13  post-Mandamus production of financial documents and specifically followed up on its effort to

14  obtain an unredacted version of GEO's Letter to ICE and its underlying calculations. Brenneke

15  Decl. ¶ 12, Ex. C. On December 31, 2019, after GEO's new counsel revealed they were unaware

16  of GEO's Letter to ICE, Washington provided the bates number and forwarded the prior email

17  exchange with a renewed request for the document and the underlying calculations. Brenneke

18  Decl. ¶¶ 13-14, Exs. D, E.

19          GEO responded on January 8, 2020, again refused to produce the documents, and

20  represented that GEO's Letter to ICE "estimates legal costs for defending various lawsuits" and

21  that the redacted portion of the letter at issue here simply "provides a summary of the relief

22  requested by Plaintiffs (in the aggregate)." Brenneke Decl. ¶ 15, Ex. F.

23          At the pretrial conference held on January 10, 2020, Washington requested the Court's

24  intervention with regard to the production of a partially unredacted version of GEO's Letter to

25  ICE and its underlying calculations. After a limited presentation of the nature of the discovery

26

STATE OF WASHINGTON'S MOTION TO
COMPEL PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

dispute, the Court requested the parties "make a motion" if no agreement could be reached. *See* Brenneke Decl. ¶ 17, Ex. G at 53:3-56:4.

On January 15, 2020, Washington again sought agreement and requested that GEO's counsel produce GEO's Letter to ICE, noting that it is not privileged in any way. *See* Brenneke Decl. ¶ 18, Ex. H. GEO responded on January 17, 2020, and refused to produce the document, asserting "the document is not relevant to the State's case and is not broken down or limited to the Northwest ICE Processing Center. Furthermore, the document is not relevant to the State's claims that GEO was unjustly enriched, as it simply states the status of the costs of litigation and the costs that ICE *could* incur nationwide if litigation were to change its operating practices." *See* Brenneke Decl. ¶ 19, Ex. I. GEO did not assert a privilege against production of the unredacted letter, but suggested ICE would need to review it before any future production. *Id.* Given GEO's representations about the content of the letter, Washington set aside its pursuit of a motion to compel at that time, and both parties engaged in pretrial preparations and briefing. *See* Brenneke Decl. ¶ 20.

Defendant GEO filed a motion in limine (MIL) to exclude all evidence of GEO's attorneys' fees and costs of litigation. ECF No. 355 at 6. In response, Washington did not object to exclusion of evidence of GEO's litigation costs, ECF No. 361 at 5, but noted that some financial documents that include requests for reimbursement may *also* include redacted information that is relevant to Washington's claims. ECF No. 361 at 6. As an example, Washington cited to GEO's Letter to ICE to distinguish the portion of that letter that references the calculations of what it would cost to comply with Plaintiffs' fair wage demands (assumed, at the time, to be the value of paying detainees at minimum wage). *Id.*; GEO's Letter to ICE, ECF No. 362-1.

On April 13, 2020, the Court granted GEO's MIL "for exclusion of evidence related to GEO's legal fees, including any request for compensation for legal fees sent to ICE." *See* ECF No. 374 (incorporating the Court's MIL rulings made during the MIL hearing); Brenneke

STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Decl. ¶ 21, Ex. J at 11:3-5. The Court did not exclude Trial Exhibit 365 specifically, nor did it reach the aspect of GEO's Letter to ICE in which GEO discloses its financial calculation of the amount it would take to come into compliance with Plaintiffs' fair wage demands at issue here. *Id.*

## C.  New Evidence From GEO's Chief Financial Officer Brian Evans

Simultaneously, the Court denied Washington's MIL to exclude the testimony of a late-noted witness, GEO's Chief Financial Officer Brian Evans, with the proviso that Washington be permitted to depose him. Brenneke Decl. ¶ 22, Ex. J at 9:25-10:7. On June 11, 2020, Washington deposed Mr. Evans, and he provided new information related to GEO's Letter to ICE. Brenneke Decl. ¶ 23, Ex. K at 114:19-117:7. Mr. Evans testified that it was George Zoley, the current Chairman and CEO of GEO, who signed the letter, that Mr. Evans reviewed the letter, and that he conducted the financial analysis that was shared with ICE. *Id.* at 114:19-116:2.

Mr. Evans further testified that he oversaw the calculation of the costs that would be incurred if Plaintiffs prevailed in the detainee wage lawsuits regarding the NWDC and the two other facilities facing similar litigation. For the financial calculation, Mr. Evans explained that he assumed an operation and policy change: that the labor now done by detainees in the VWP for $1 a day "was all done by civilian employees"—paid at prevailing wage. *See id.* at 101:20-23; 116:3-117:7; 117:21-118:22. Mr. Evans testified that he considered what it would take, in a facility of the size of the NWDC, to employ full-time workers from the community to conduct the work presently done in the VWP by detainees, and applied wage determination job descriptions and rates to that work. *Id.* at 110:8-113:16. At the deposition, without access to an unredacted version of GEO's Letter to ICE, or the underlying calculations, Mr. Evans could not remember the final precise numbers, but he estimated that the annual cost of complying with prevailing wage rates for work currently done by detainee workers at the NWDC facility would be between $4 million and $6-7 million. *Id.* at 107:21-109:11.

STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1       Mr. Evans also confirmed that GEO disclosed this financial analysis in the redacted

2  portion of GEO's Letter to ICE, following the sentence: "We have conducted an estimation of

3  the costs necessary to achieve compliance with the plaintiffs." *Id*. at 116:14-117:3. He clarified

4  the redacted content includes data for the three facilities facing litigation, including the NWDC,

5  but possibly also includes an estimate for all ICE facilities. *Id*. at 116:14-117:3.

6       Based upon Mr. Evans's testimony, on August 3, 2020, Washington renewed its efforts

7  to obtain a partially unredacted copy of GEO's Letter to ICE and the underlying calculations.

8  Brenneke Decl. ¶ 24, Ex. L. During a LCR 37 conference on August 7, 2020, GEO again refused

9  to produce these documents, referred Washington back to GEO's January 17, 2020 email,

10  claimed that the redacted portion is not NWDC-specific, and asserted work product, common

11  interest, and attorney client privileges. Brenneke Decl. ¶¶ 25-28.

12            **III.    ARGUMENT**

13       There is good cause for the Court to modify the case schedule for the limited purpose of

14  compelling the requested discovery based, in part, on new evidence obtained by a newly

15  identified corporate witness in a court-ordered deposition taken after the discovery period.

16  GEO's Letter to ICE, and the underlying financial analysis on which it is based, is relevant to

17  Washington's Unjust Enrichment claim, is responsive to Washington's longstanding discovery

18  requests, and Washington has been diligent in pursuing such evidence throughout the litigation.

19  Finally, GEO has no privilege or other basis to withhold such discovery, which should have been

20  identified and produced long ago.

21  **A.    This Court Should Modify the Case Schedule Because Washington Demonstrates**

22         **Good Cause**

23       A court may, in its discretion, modify a case schedule for "good cause." Fed. R. Civ. P.

24  16(b)(4); LCR 16(b)(4). What constitutes good cause "necessarily varies with the circumstances

25  of each case," but is usually warranted where 1) the moving party has been diligent in its efforts

26  to obtain the discovery it requires during the discovery period and 2) the discovery of new

STATE OF WASHINGTON'S MOTION TO
COMPILE PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

6

1    evidence, which could not have been discovered earlier, necessitates a modification of the case

2    schedule. *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

3    *Procedure: Civil* § 1522.2 (2d ed. 1990); *See also, Jasnosz v. J.D. Ott Co.*, No. C09-09552JLR,

4    2011 WL 3563345, at *3 (W.D. Wash. Aug. 12, 2011) (explaining that the discovery of new

5    evidence is good cause to modify a case schedule).

6          Here, both circumstances apply. *First,* Washington diligently pursued its financial

7    discovery during the discovery period and GEO consistently refused to produce it, even

8    petitioning for a Writ of Mandamus to escape this Court's orders to compel. Since learning of

9    the existence of GEO's Letter to ICE on its own, Washington has been diligent in its efforts to

10    obtain an unredacted version as well as its underlying calculations. Any delay in seeking GEO's

11    Letter to ICE is thus one attributable to GEO: GEO never produced GEO's Letter to ICE nor

12    identified it in any privilege log, nor did GEO identify Mr. Evans as a person with knowledge or

13    trial witness until *after* the discovery period had closed. *Second,* good cause exists because of

14    new information obtained during a Court-ordered deposition post-discovery. Mr. Evans's

15    testimony confirmed that GEO in fact calculated the costs of replacing detainee labor with

16    civilian employees at the NWDC. Prior to Mr. Evan's post-discovery deposition, Washington

17    had no way of knowing *how* GEO had calculated compliance with Plaintiffs' wage demands at

18    the NWDC, and instead relied on its counsel's misstatements regarding the same. All of this

19    constitutes new evidence that justifies modifying the case schedule to allow discovery of the

20    partially unredacted letter and its underlying calculations.

21
    **B.**    **GEO Should Have Produced a Partially Unredacted Version of GEO's Letter to**
22          **ICE, and Its Underlying Financial Calculations, Under this Court's Prior Orders**

23          The Court previously found GEO's financial information to be discoverable and relevant

24    to Washington's claim for unjust enrichment, and ordered GEO to produce documents

25    responsive to Washington's discovery requests. *See* ECF No. 133. For example, this Court

26    ordered GEO to comply with Washington's RFP No. 43 (as modified), and to produce "all

STATE OF WASHINGTON'S MOTION TO
COMPEL PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

documents that contain financial analysis, financial models, analysis of profits earned, and *valuation of the work performed, or other assessments of the VWP at the NWDC from 2005 to present,"* ECF No. 133 at 9-10 (emphasis added). The financial information sought here is exactly that: GEO's financial analysis of the market value of detainee work performed in the VWP and an assessment of the monetary value and cost of that work were it to be done by civilian employees paid prevailing wages. The redacted estimates—and the calculations underlying those estimates—are relevant to proving Washington's unjust enrichment claim and calculating its remedy. *See Young v. Young*, 191 P.3d 1258, 1262, 1265 (Wash. 2008) (owner "must disgorge the entire value of the benefit she received as determined by either the *fair market value of the services rendered* or the amount the [labor] enhanced the value" of the business) (emphasis added).

In addition, the Court ordered GEO to comply with Washington's RFP No. 52, which seeks all documents related to "per diem rate calculations and models related to GEO Group's NWDC Contract(s) from 2005 to the present, including . . . 'Voluntary Work Program' costs and expenses; labor costs and payroll expenses (excluding Voluntary Work Program); . . . and all other costs of providing services." ECF No. 133 at 10, RFP No. 52 (as modified). Mr. Evans testified that if detainee workers were replaced with civilian employees, GEO would not take on that additional cost, but would instead adjust the per diem, bill ICE higher rates, and receive reimbursements. Brenneke Decl. ¶ 23, Ex. K at 102:19-23 ("[W]e'll modify our contract and [ICE]'ll pay us on a prospective basis for all of those people being employed as regular civilian employees and we'll charge them additional cost, profit, for that fee.") As such, the documents at issue are directly responsive to RFP 52, as well.

Finally, to the extent GEO is likely to attack Washington's economic expert's analysis of unjust enrichment at trial, which includes calculations of the market value of detainee labor at the NWDC calculated on the basis of the prevailing wage, Washington is entitled to evidence

STATE OF WASHINGTON'S MOTION TO
COMPEL PARTIALLY UNREDACTED
LETTER AND RELATED FINANCIAL
CALCULATIONS

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   of how GEO approached the exact same analysis. GEO will undoubtedly question Washington's

2   expert's financial analysis. Washington must be able to do the same at trial.

### C.   No Privilege Exists Preventing Production of a Partially Unredacted Version of GEO's Letter or the Underlying Calculations

5        GEO cannot establish any attorney-client privilege or common interest privilege that

6   would prevent production of a partially unredacted version of GEO's Letter to ICE or the

7   underlying calculations. Attorney-client privilege protects confidential communications between

8   an attorney and client for the purposes of obtaining legal advice, *In re Grand Jury Investigation*,

9   974 F.2d 1068, 1070 (9th Cir. 1992), and the party asserting the attorney-client privilege has the

10   burden of establishing the privilege. *Id*. at 1070-71. Likewise, "the work product doctrine is a

11   'qualified privilege' that protects 'certain materials prepared by an attorney acting for his client

12   in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)

13   (quoting *United States v. Nobles*, 422 U.S. 225, 237-38 (1975)). "Both privileges may be

14   waived." *Id*. The "common interest" doctrine provides an exception to the waiver of the attorney-

15   client privilege, allowing "attorneys for different clients pursuing a common legal strategy to

16   communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).

17   However, for the common interest exception to apply, "there must be 'an on-going and joint

18   effort to set up a common defense strategy.'" *Regents of Univ. of Cal. v. Affymetrix, Inc*.,

19   326 F.R.D. 275, 279 (S.D. Cal. 2018) (*quoting United States ex rel. Burroughs v. DeNardi Corp*.,

20   167 F.R.D. 680, 685 (S.D. Cal. 1996). There must be some form of agreement—whether written

21   or unwritten. *Pac. Pictures Corp*., 679 F.3d at 1129.

22        GEO can satisfy none of these standards—and indeed, never identified GEO's Letter to

23   ICE or the underlying calculations with regard to compliance with detainee wage demands on a

24   privilege log or previously claimed that they were privileged.[2] Brenneke Decl. ¶ 27. Instead, for

---

25        [2] Even when GEO moved in limine to exclude evidence of its attorneys' fees and costs of the litigation, it

26   did not claim privilege, but relied solely on an argument that such evidence is not relevant to the claims at issue in this case. *See* ECF No. 355 at 5.

the first time on August 7, 2020, GEO asserted the redacted portions of GEO's Letter to ICE are protected from disclosure by the "attorney client" privilege and "work product" privilege, claiming Mr. Evans conducted the underlying damages analysis at the direction of GEO's inside (and possibly outside) counsel, for the sole purpose of writing the letter, and that the "whole letter was written by counsel" for the purpose of seeking legal intervention from ICE. *See* Brenneke Decl. ¶ 26.

GEO's privilege arguments fail. First, the letter itself, and the financial calculations disclosed in it, are not attorney-client privileged because they are not communications between attorney and client at all. Instead, the letter is signed by GEO's CEO, who sent it to a high ranking, third party, government official at ICE.[3] Nor are the letter and the calculations work product privileged, as the underlying calculations were not done by an attorney, but by GEO's CFO, and were not done "in anticipation of litigation," but as part of GEO's request to ICE for intervention in this and other detainee labor litigation. Even if there had been some attorney-client or work product privilege, GEO waived it when Mr. Evans testified about the underlying financial calculations contained in GEO's Letter to ICE at length in his deposition. Sharing attorney-client communications with a third party "destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).

To the extent GEO asserts a "common interest" privilege between GEO, ICE and the DOJ in relation to the litigation that justifies GEO's refusal to produce an unredacted version of GEO's Letter to ICE, *see* Brenneke Decl. ¶ 26, GEO's argument still fails, as GEO cannot meet the threshold of establishing a common interest agreement. GEO admits there is no written common interest agreement with ICE. *See id*. Further, GEO's Letter to ICE is not a

---

[3] Notably, GEO produced a different letter in discovery that was sent by its executive to ICE on February 14, 2018. In it, GEO requested an equitable adjustment and intervention in this lawsuit and the other detainee wage litigation and detailed the attorneys' fees and costs expended in the litigation to date. That letter was produced in discovery by GEO without any redactions or claims of privilege. Brenneke Decl. ¶ 28.

1   communication between GEO and ICE's lawyers, but a communication between an executive

2   and a government official. Finally, the letter itself is a request that ICE *become* involved in this

3   litigation, revealing that neither GEO nor ICE recognized *any* common interest in the litigation

4   as of May 30, 2018, the date of the letter. Nor can GEO establish that at the time of the letter

5   there was any joint legal strategy with ICE in this litigation, as the letter itself reveals ICE was

6   not even involved.

7                               **IV.     CONCLUSION**

8          For the foregoing reasons, Washington respectfully requests that the Court grant its

9   motion to compel and require GEO to produce a partially unredacted version of the GEO Letter

10  to ICE and its underlying calculations.

11

12          Dated this 20th day of August 2020.

13                                          Respectfully submitted,

14                                          ROBERT W. FERGUSON
                                            Attorney General of Washington
15

16                                          s/ *Andrea Brenneke*
17                                          MARSHA CHIEN, WSBA No. 47020
                                            ANDREA BRENNEKE, WSBA No. 22027
18                                          LANE POLOZOLA, WSBA No. 50138
                                            PATRICIO A. MARQUEZ, WSBA No. 47693
19                                          Assistant Attorneys General
                                            Office of the Attorney General
20                                          800 Fifth Avenue, Suite 2000
                                            Seattle, WA 98104
21                                          (206) 464-7744
22                                          marsha.chien@atg.wa.gov
                                            andrea.brenneke@atg.wa.gov
23                                          lane.polozola@atg.wa.gov
                                            patricio.marquez@atg.wa.gov
24

25

26

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this August 20, 2020 in Seattle, Washington.

                                            CAITILIN HALL
                                            Legal Assistant

STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744