The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>　　Defendant. | Case No. 3:17-cv-05806-RJB<br><br>**DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS**<br><br>**NOTE ON MOTION CALENDAR:**<br>September 4, 2020 |

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB)

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................2

   A. PROCEDURAL HISTORY. ...............................................................................2

   B. DISCOVERY. ..................................................................................................3

   C. BRIAN EVANS' TESTIMONY. ........................................................................4

III. THE STATE CANNOT ESTABLISH GOOD CAUSE......................................6

IV. COMMON INTEREST PRIVILEGE....................................................................9

V. TIMELINESS OF RESPONSE ...........................................................................12

VI. CONCLUSION......................................................................................................12

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB)

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4

Defendant The GEO Group, Inc. ("Defendant" or "GEO"), by and through its undersigned counsel, hereby submits its Opposition to Plaintiff State of Washington's Motion to Compel Partially Unredacted Letter and Related Financial Calculations. ECF 396.[1]

## I. INTRODUCTION

The State has unreasonably delayed bringing this motion. Despite raising the issue over a year ago, now, months after this case was finalized for trial—the exhibit lists are finalized, and motions in limine have been decided—the State now seeks to use the delay of trial due to COVID-19 to reopen discovery to compel the production of Exhibit 365[2] in an unredacted form. ECF 396. These dilatory tactics should not be rewarded. Even if the timing and procedure of the State's motion were not improper, Exhibit 365 is not relevant to the State's case.[3] Exhibit 365 is a letter from GEO, to ICE, the entity with whom it contracts for the Northwest ICE Processing Center ("NWIPC") asking for legal assistance with this very case. As part of the letter, GEO provided an estimate of the potential costs to ICE if this case, and many others across the country, are successful. ECF 362-1. Certainly, a document requesting legal assistance has no place in this case. As such, the subject letter is currently excluded from trial under two separate orders granting GEO's motions in limine. ECF 375 (GEO's Motion Nos. 3 & 5). Furthermore, the State's claims that the letter is relevant are baseless. It is unreasonable for the State to argue that in order to prove its claim for damages, it needs discovery about GEO's assessment of the claims filed against it— which would not exist without the lawsuit. Accordingly, the Court should deny the State's request for an unredacted version of Exhibit 365 which contains a rough estimate of the aggregate

---

[1] While styled as a motion to compel, the State seeks relief from the discovery deadlines entered into this case and its Motion is therefore brought under LCR 7(d)(2) as a motion for relief from deadlines.

[2] Indeed, even if unredacted, Exhibit 365 was squarely excluded by this Court's ruling on GEO's motion in limine number 3. ECF 397-10 (April 13, 2020 Transcript at 10-11) ("Motion in limine No. 3 is for exclusion of evidence related to GEO's legal fees, including any request for compensation for legal fees sent to ICE. That motion is granted. I don't know what kind of a side issue that might be, but it is not something that we need to get into.").

[3] Exhibit 365 was submitted to this Court in opposition to GEO's motion in limine. It can be found at ECF 362-1.

---

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 1

54381952;4

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

potential cost to ICE if the actions that have been filed against GEO across the country are successful.

## II. BACKGROUND

### A. Procedural History.

This Court already excluded the evidence that is the subject of this motion. Following conferral with the State about excluding Exhibit 365 and related correspondence, GEO brought Motion in Limine No. 3 to exclude the exact information contained in Exhibit 365. ECF 355 at 6. In the State's Opposition to GEO's Motion in Limine No. 3, the State placed Exhibit 365 squarely before this Court for consideration, arguing that the document was relevant to their claims. ECF 361 at 7; ECF 362-1. The State did not provide any other documents that it would seek to use if the Motion in Limine were granted in GEO's favor. On April 13, 2020, with full knowledge of Exhibit 365 and its contents, this Court granted GEO's motion, stating: "Motion in limine No. 3 is for exclusion of evidence related to GEO's legal fees, including any request for compensation for legal fees sent to ICE. That motion is granted. I don't know what kind of a side issue that might be, but it is not something that we need to get into." ECF 397-10 (April 13, 2020 Transcript at 10-11).[4] The State did not seek clarification or reconsideration of the Court's Order as would have been required by the Local Rules. *See* LCR 7(h)(2) ("The motion shall be filed within fourteen days after the order to which it relates is filed.").

As is their pattern in this case, the State once again brings a motion under the assumption that the Local Rules and case deadlines apply to everyone except the State. This motion is untimely and should not be considered for that reason alone. Indeed, the State has a history of flaunting the deadlines and Local Rules in this case. For example, the State filed their *Daubert* motion to exclude the testimony of Gregory Bingham, ECF 331, over four months late without consequence—successfully limiting the scope of Gregory Bingham's testimony such that GEO cannot use it at trial to its prejudice. The Court reasoned that the State's filing was permissible

---

[4] The Court also granted GEO's Motion in Limine No. 5 to exclude evidence of other lawsuits. ECF 375.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 2

54381952;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

because it could be construed as the State's *single* motion in limine as permitted by LCR 16(b)(4). ECF 343 at 2. Yet, the State was not held to this ruling. In April, the State improperly filed excess motions in limine, in direct contravention of the Local Rules. ECF 357; LCR 7(d)(4). Despite the Court's acknowledgement of the State's improper filing, it ruled that there was no prejudice to GEO in considering the State's motions, but went on to exclude Julie Williams, a witness that GEO sought to produce at trial. ECF 397-10 (April 13, 2020 Transcript at 5, 6). To obtain this result, the State argued Ms. Williams was disclosed in September 2019 "long after the close of discovery." ECF 357 at 18. Despite arguing that September 2019 was "long after the close of discovery" when doing so was beneficial to the State, now, a year later, the State seeks to modify the case schedule to permit an untimely motion to remove redactions from a document that it has had for well over a year, since well before the close of discovery, and which this Court has already excluded as not relevant to the claims and defenses at issue. This untimely request is improper.

**B.   Discovery.**

Discovery in the State's case ended over a year ago on June 21, 2019; all discovery motions were due by June 21, 2019. ECF 171. As the State itself concedes, it has been in possession of the document it seeks in an unredacted format, Exhibit 365, since before the close of discovery. ECF 397 ¶ 7. On June 5, 2019, within the discovery window (and with time to extend if necessary) the State raised the issue of Exhibit 365 with GEO's counsel. ECF 397-2 at 3. On June 10, 2019, GEO expressed its unequivocal intent not to produce Exhibit 365 as not responsive to the State's Request for Production 12. *Id.* at 2. The State never sought to extend discovery to file a motion related to Exhibit 365. Nor did it file a motion within the discovery limits. To the contrary, the State opposed additional discovery at each opportunity—never once raising the issue of the instant letter.[5] Thus, to argue now that modifying the case schedule is appropriate is disingenuous.

---

[5] For example, two months prior to the end of discovery, the State filed a motion for summary judgment. ECF 183. GEO opposed, asking the Court to delay ruling until discovery was closed, pursuant to Rule 56(d). ECF 188. GEO explained that discovery was ongoing from the State and that it needed that discovery to respond. *Id*. The Court denied GEO's motion under Rule 56(d), noting in part that discovery had been ongoing for a year and a half and that "extensive discovery has already taken place." ECF 202. GEO filed a motion to reconsider which the Court also denied.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 3

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4

In addition to its June 5, 2019 email, the State raised its intention to seek an unredacted copy of Exhibit 365 at the January 10, 2020 pretrial conference before this Court. ECF 397-7 (Trans. Of January 10, 2020 Hearing at 54-55). At that time, the State represented it had already conferred with GEO about the document. *Id.* The Court instructed the State to file a motion. ECF 397-7 (Trans. Of January 10, 2020 Hearing at 55). The State did not do so. Thereafter, Brian Evans' deposition was taken by the State on June 11, 2020. Over two months elapsed before the State brought the instant motion.

**C.     Brian Evans' Testimony.**

Mr. Evans' testimony about the letter did not provide a new basis for removing redactions.[6] If anything, it only bolstered GEO's basis for redaction, as Mr. Evans clarified that all communications about the calculations therein were in the presence of counsel and related to discussions about currently pending litigation with legal counsel:

> Q. Have you ever been involved in any conversation in-person or in writing about whether GEO should be paying Washington minimum wage for detainee labor?
>
> A. You know, just as in my role as a CFO in part of our meetings with the CEO **and the general counsel** discussing these cases, so that's **part of the legal discussions that we've had as a company**.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> A: I was just saying **the context of what I've discussed but it's always been with general counsel present**.
>
> Q. Have you ever had any internal discussion or analysis with regard to GEO's minimum wage applications that took place outside of the presence of your counsel?
>
> A: **I don't believe so.**
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

ECF Nos. 209, 211. The State continued to oppose any efforts to conduct additional discovery. *Nwauzor* ECF 195 at 6 (arguing "enough is enough" and that the discovery cut-off should apply).

[6] The State misrepresents Mr. Evans testimony to confuse this Court. The exhibit at issue here, Exhibit 365, was not introduced until page 114 of the deposition. Yet, the State misleadingly cites to testimony from prior to the exhibit's introduction and improperly characterizes that testimony as related to the document the State seeks to unseal. This Court should not entertain such blatant misrepresentations.

| DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 4 | **AKERMAN LLP** 1900 Sixteenth Street, Suite 1700 Denver, Colorado 80202 Telephone: 303-260-7712 |
|---|---|

54381952;4

> Q. Yeah, I'm just wondering within your executive team meetings or other meetings, have you had conversations about your obligations to comply with Washington Minimum Wage Law **where counsel wasn't present**?
>
> A. **No.** Not that I'm aware of.
>
> Ex. A (Evans Dep. 124:5-24; 125:1-11) (emphasis added).

Despite this unequivocal statement, counsel for the State continued to push the witness for additional information over GEO's counsel's objections to the disclosure of privileged information. Even so, the additional information Mr. Evans provided about his privileged conversations with legal counsel about pending litigation did not involve relevant information or the types of analysis the State now seeks. Mr. Evans did not conduct an analysis of the financial benefit to GEO of detainee labor:

> Q. What I'm asking, you, Mr. Evans, is have you ever conducted an analysis of what financial benefit detainee labor provides to GEO and its bottom line?
>
> A: **I don't believe so**. I think in connection with these lawsuits, there has been an evaluation of what it would cost the government if they were to change the program. But I'm not sure if that's -- was part of the -- is, you know, privileged or whatnot, but there was some analysis done at some point regarding, you know, advising the government on the cost of what the labor would look like, potentially, if it was all done by civilian employees.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q. Do you have access to those records of what the analysis was and what the cost would be to staff at the prevailing wage rates?
>
> A. I do not.
>
> ECF 399 at 4; 6 (Evans Dep. 101:11-23; 106:15-18) (emphasis added).

Mr. Evans also did not conduct an analysis of the value of detainee labor, but simply a guess of potential costs to ICE if Plaintiffs were to prevail and the Voluntary Work Program were to be eliminated:

> Q. And by that, the value of the labor that you would need to be paying for at the minimum wage level or the prevailing wage level?
>
> A: No, the value that the government is going to have to pay to have their policy changed, if it's changed by the Courts or they change it, whatever, but the change in the policy to no longer have a Voluntary Work Program, what it would cost at a certain number of facilities. As I said, I don't know if it's just the four listed here or the three listed here or all of the ICE facilities.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 5

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4

ECF 399 at 17-18 (Evans Dep. 117:21-23-118:1-9).

Further, Mr. Evans did not conduct any analysis into the NWIPC individually. Despite Mr. Evans' clear statement that he did not know which facilities were included in the calculation, the State misrepresents Mr. Evans' testimony, arguing that he "testified that he oversaw the calculation of the costs that would be incurred if Plaintiffs prevailed in the detainee wage lawsuits <u>regarding the NWDC and the two other facilities facing similar litigation</u>." ECF 396 at 6 (emphasis added). Mr. Evans did provide this testimony. Instead he explained on more than one occasion that he did not know if the amount was for four facilities, or all ICE facilities. ECF 399 at 17-18 (Evans Dep. 117:21-23; 118:1-9) ("Yes, as I said, and I don't recall how many facilities, it was just these specific or if, as I said before, it was for -- if we included all ICE facilities."). Indeed, the State was already aware that the numbers were not broken down by facility and that they included an aggregate that applied to every facility across the country. ECF 397-7 at 5 (January 10, 2020 Hearing Transcript) ("Counsel just represented that she thinks it is broken down by state. It is not. It is an aggregate of a number that applies to every facility across the country.").[7] Mr. Evans' testimony therefore adds nothing new. This is particularly true where he was not given an opportunity to review the document in its unredacted form prior to providing testimony about the redacted documents.

### III. <u>THE STATE CANNOT ESTABLISH GOOD CAUSE</u>

Under LCR 16(b)(6) "[a] schedule may be modified only for good cause and with the judge's consent. Mere failure to complete discovery within the time allowed does not constitute good cause for an extension or continuance." As this Court has previously explained, "[f]or purposes of Rule 16, 'good cause' means the scheduling deadlines cannot be met despite the party's diligence . . . . The pretrial schedule may be modified if it cannot reasonably be met despite

---

[7] If this Court were to perform an *in camera* review it would reveal that the amount in the letter is not facility-specific, but instead refers to all ICE facilities nationwide. GEO is amenable to this solution but does not believe it is necessary.

| | |
|---|---|
| DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 6 | **AKERMAN LLP**<br>1900 Sixteenth Street, Suite 1700<br>Denver, Colorado 80202<br>Telephone: 303-260-7712 |

54381952;4

the diligence of the party seeking the extension. **If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted**." *Paz v. City of Aberdeen*, No. C13-5104 RJB, 2013 WL 6163016, at *2 (W.D. Wash. Nov. 25, 2013) (emphasis added). Here, because the State was not diligent, it cannot show good cause. The State has been aware of the document in question since *at the latest* June 5, 2019.[8] On June 10, 2019, GEO stated its position that the document was not responsive to the State's discovery requests. Discovery was open and motions could still be timely brought. Inexplicably, the State did not bring a motion to compel. Yet again, six months later, on January 10, 2020, this Court instructed the State to file a motion if it sought to remove the redactions from Exhibit 365. The State did not do so. Instead, it waited over eight months to file the present motion. In so doing, it ensured GEO could not adjust its strategy, exhibits, or motions in limine to address the new information. There was no reason the State could not have filed this motion earlier other than to preclude GEO from adjusting its litigation strategy to address any ruling. Accordingly, because the State has been aware of this document and GEO's intent to stand by the redactions for well over a year, the State cannot show "good cause for failing to complete discovery, [] when the burdens of which it now complains were largely anticipated in advance." *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570RSL, 2014 WL 2573290, at *4 (W.D. Wash. June 9, 2014).

Moreover, even if the State were not dilatory, the document the State seeks to compel is not relevant to their previously propounded discovery. In support of its motion, the State argues that the letter to ICE is responsive to Request for Production No. 43. ECF 396 at 8. That request seeks:

> "To the extent not previously produced and to the extent they exist, please produce all documents that contain financial analysis, financial models, analysis of profits earned, valuation of the work performed, or other assessments of the Voluntary Work Program at the NWDC from 2005 to present."
>
> ECF 133 at 9-10.

---

[8] Conspicuously absent from the State's Declaration and Motion is the date that the State first came into possession of the FOIA documents. The FOIA documents themselves are stamped with a bates stamp beginning "2018" but were not produced to GEO until June 2019. ECF 362-1.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 7

54381952;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

As is clear from the face of the document and Mr. Evans' testimony that the letter at issue does not contain an analysis of the profits earned, a valuation of the work performed, or an assessment of the Voluntary Work Program as it stands at the NWIPC. Rather, it "implore[s] DOJ to take over the defense of these lawsuits and reimburse GEO for its costs." In so doing, it advises ICE of the potential cost were the lawsuits to be successful *across the country*. It does not provide any information that is specific to the NWIPC or the claims in this case. Further, the information is wholly speculative as it estimates what could happen if the Plaintiffs across the country are successful, therefore it cannot be considered to be a "valuation of the work performed." Thus, it is not responsive to RFP 43.

The State also argues that the letter from GEO to ICE, seeking legal assistance in this case, is relevant to RFP 52, which sought documents related to:

> "[The] per diem rate calculations and models related to GEO Group's NWDC Contract(s) from 2005 to the present, including . . . 'Voluntary Work Program' costs and expenses; labor costs and payroll expenses (excluding Voluntary Work Program); . . . and all other costs of providing services."
>
> ECF 133 at 10

Exhibit 365 is likewise not responsive to RFP 52. The letter seeking a reimbursement of legal costs and assistance with GEO's legal defense is not related to GEO's current or past contracts with ICE. Instead, it is based upon a hypothetical cost if litigation nationwide were to be successful. Additionally, there can be no argument the calculations constitute GEO's present "labor costs and payroll expenses" as the very reason the suit is before this Court is because the State and GEO believe that the Voluntary Work Program Stipend should be set at different rates. In short, the redacted portion of the letter is not relevant to the State's previously propounded discovery requests. Because it is not relevant to the State's requests, the State's claims related to privilege logs are without merit as only relevant documents must be logged. Should the Court determine at this belated stage that the document is relevant, then GEO will properly log its privileges.

Additionally, Brian Evans' testimony does not constitute newly discovered evidence. Mr. Evans provided his best guess as to what he remembered comprised the redacted portion of the

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 8

54381952;4

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

letter, explaining he didn't "recall how many facilities, it was just these specific or if, as I said before, it was for -- if we included all ICE facilities. And it was -- it was from our perspective, to let them know what costs they would be incurring if the plaintiffs were to prevail[.]" He also unambiguously stated that all conversations about the calculations were had in the presence of counsel. Plaintiffs have previously been informed that the numbers were not specific to the NWIPC, thus Mr. Evans' testimony does not add anything new.

At bottom, the State seeks an estimate of the cost to the government (and GEO) should the instant case (and the others around the country) be successful. The State does not seek financial records or analysis conducted by GEO in the regular course of business. It does not seek information limited to this case or the NWIPC. Nor does it seek analysis of the value of labor performed by the detainees across the country. Rather, the State seeks the analysis performed by GEO's counsel of the potential costs to ICE if the pending class actions nationwide are successful. That information is not relevant to the State's prior requests or this case and would serve only to confuse and prejudice the jury. Thus, the State cannot establish good cause and its' motion should be denied.

### IV.     COMMON INTEREST PRIVILEGE

This Court has previously addressed the common interest privilege in this case, finding that the State was entitled to claim a common interest with *unnamed* "human rights advocates" and "detainees." ECF 243. In so holding, the Court did not require the State to demonstrate a written agreement, much less identify the specific parties with whom the State claimed a common interest. *Id.* Despite prevailing on this issue previously, the State now seeks an inconsistent ruling here—asking GEO to provide an unredacted copy of a letter to ICE, its client, with whom it discussed this lawsuit.[9]

---

[9] To the extent the State's motion seeks documents beyond the letter which Mr. Evans testified were created at the direction of counsel, and that this Court reopens discovery and orders production of the same (to the extent they exist), GEO reserves the right to raise additional privileges as to those documents which are not currently before it and have not been assessed by GEO.

| | |
|---|---|
| DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 9 | **AKERMAN LLP**<br>1900 Sixteenth Street, Suite 1700<br>Denver, Colorado 80202<br>Telephone: 303-260-7712 |

54381952;4

The work product doctrine "reflects the strong public policy against invading the privacy of an attorney's course of preparation" *Hausman v. Holland Am. Line-U.S.A.*, No. CV11-1308 BJR, 2015 WL 8327934, at *1 (W.D. Wash. Dec. 9, 2015) (quotations omitted) "The work-product doctrine, therefore, serves to protect "written materials that lawyers prepare in anticipation of litigation." *Id* (citations omitted). Voluntary disclosure of work-product to a third party does not automatically waive the work-product *W. Challenger, LLC v. DNV GL Grp.*, No. C16-0915-JCC, 2017 WL 5009977, at *2 (W.D. Wash. Nov. 2, 2017) (citing Wright, Miller, Kane & Marcus, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.)); *see also Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) ("the work product privilege is not automatically waived by any disclosure to third persons."). Two parties may share documents covered by the work product doctrine where they have shared interests. *In re Superior Nat. Ins. Gr.*, 518 B.R. at 577. "[T]he shared interest may be only financial or commercial in nature," and no waiver will occur so long as there is a reasonable basis for believing that the common interest recipient will keep the disclosed material confidential." *Id.*

"Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). "The common interest privilege may be used to protect work-product that is disclosed to third parties." *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL 196713, at *2 (W.D. Wash. Jan. 14, 2015). As is applicable here, the "common interest doctrine would preserve privilege if the documents were shared with the expectation of confidentiality and sharing was necessary to accomplish the privilege holder's purpose in seeking legal advice*." In re Superior Nat. Ins. Gr.*, 518 B.R. 562, 577 (Bankr. C.D. Cal. 2014). In this District, "[t]he common interest privilege applies where: (1) the communication was made by separate parties in the course of a matter of common interest; (2) the communication was designed to further that effort; and (3) the privilege has not been waived." *Microban Sys., Inc. v. Skagit Nw. Holdings, Inc.*, No. C15-932-MJP, 2016 WL 7839220, at *1 (W.D. Wash. Aug. 17, 2016).

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 10

54381952;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Here, GEO has a shared commercial interest with ICE. GEO's Contract with ICE requires it to obtain approval prior to incurring additional costs under its contract with ICE. ECF No. 246-3 (Ex. 3, Contract attached to SMJ, at 52). Further, GEO has an obligation to notify ICE of any litigation and cooperate with the "Government legal staff and/or the United States Attorney" regarding the requests about any litigation. ECF No. 246-3 (Ex. 3, Contract attached to SMJ, at 53) In addition, F.A.R. 52.233-1 also requires that GEO submit any request for additional payment to the government. *See also* 41 U.S.C. § 7103(a).

As part of these obligations and in connection with the myriad of cases filed across the country, GEO sought legal assistance from ICE. In so doing, GEO's legal team worked with Mr. Evans, its CFO, to provide a rough estimate of the potential costs to ICE if the plaintiffs across the country are successful so that that ICE could make an informed decision about taking on the defense of the case. Those calculations were created at the direction of counsel for a common interest of GEO and ICE: assessing potential costs to both if the Plaintiffs across the country are successful in their litigation. There can be no question that the letter which contained GEO's counsel's opinion of the potential costs associated with this case is work product. *W. Challenger, LLC*, 2017 WL 5009977, at *2. Simply disclosing GEO's opinion as to the estimated costs to ICE, GEO's client, did not destroy the work-product privilege. *Id.*; *see also Microban Sys., Inc*, 2016 WL 7839220, at *1 ("At the time of the communications, the interests of both Microban and Barr were aligned in attempt to determine the value of Microban's intellectual property, and to determine whether litigation would be required to secure the full value of those rights."). There can be no question that the letter at issue sought legal assistance with the instant case and others around the country. GEO asked the Department of Justice to take over defense of the cases. The fact that the DOJ is not a private law firm does not change the nature of the communication. Nor does the fact that the DOJ declined intervene. Indeed, permitting the State to access GEO's assessment of the claims pending against it for use at trial would be contrary to the underlying public policy of the work product doctrine. Additionally, the privilege has not been waived as GEO has objected to the production of the redacted portion of Exhibit 365 each time the issue was raised. Accordingly,

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 11

54381952;4

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

GEO's assessment of the case for purposes of seeking legal counsel should remain redacted. Indeed, if a party cannot seek legal assistance under the cloak of confidentiality, it would be detrimental to a fulsome conversation about the pros and cons of representation.

## V. TIMELINESS OF RESPONSE

On September 1, 2020, the State filed its Reply in Support of the instant motion arguing that GEO's instant response is untimely under Rule 7(d)(3). ECF 400. The State argued its motion was noted under Rule 7(d)(3). Nothing in the State's initial motion so indicated. Indeed, the Motion itself seeks "relief from a deadline" to reopen discovery. Without this Court's ruling on whether it is appropriate to now change the discovery deadline in this case, the State would be without a remedy. As Local Rule 16(b)(3) makes clear, any motion to compel discovery "shall be filed and served on or before the discovery deadline." Because discovery has long since passed, and because the State's motion explicitly seeks to "modify the case schedule," GEO construed the State's motion as a motion for relief from a deadline noted under Rule 7(d)(2), as required by the Local Rules. ECF 396 at 7. The Local Rules state that motions under Rule 7(d)(2) must be noted for consideration "*no earlier than* the second Friday after filing." LCR 7(d)(2) (emphasis added). Rule 7(d)(2) further states that any opposition motions must be filed no later than the "*Wednesday before the noting date.*" LCR 7(d)(2) (emphasis added). Thus the instant motion is timely filed under Rule 7(d)(2). Had the State conferred with GEO about the same to clear up any confusion, GEO would have been more than amenable to the State's extension that they now seek in their Reply, ECF 400. Accordingly, should the Court find it appropriate to grant the State an extension until September 8, 2020 to file what will now be its second reply brief, GEO does not object.

## VI. CONCLUSION

For the foregoing reasons, the State's motion to reopen discovery and unredact Exhibit 365, ECF 396, for use at trial should be denied.

---

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 12

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4

Respectfully submitted, this 2nd day of September, 2020.

By: *s/ Adrienne Scheffey*
**AKERMAN LLP**
Colin L. Barnacle (Admitted *pro hac vice*)
Christopher J. Eby (Admitted *pro hac vice*)
Adrienne Scheffey (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: colin.barnacle@akerman.com
Email: christopher.eby@akerman.com
Email: adrienne.scheffey@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone: (253) 566-2510
Facsimile: (281) 664-4643
Email: joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS – (3:17-CV-05806-RJB) – PAGE 13

54381952;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

**PROOF OF SERVICE**

I hereby certify on the 2nd day of September, 2020, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFF STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS** via the Court's CM/ECF system on the following:

Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
OFFICE OF THE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff*

> *s/ Toni Domres*
> Toni Domres

PROOF OF SERVICE
(3:17-CV-05806-RJB) – PAGE 14

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

54381952;4