1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

The Honorable Robert J. Bryan
Hearing Date: September 25, 2020

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

STATE OF WASHINGTON,

                     Plaintiff,

v.

THE GEO GROUP, INC.,

                     Defendant.

Case No.: 3:17-cv-05806-RJB

DECLARATION OF JOAN K. MELL IN SUPPRT OF DEFENDANT AND COUNTER PLAINTIFF THE GEO GROUP. INC.'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT WITHOUT FULL PAGE REDACTIONS FOR USE AT TRIAL

**NOTE ON MOTION CALENDAR:**
September 25, 2020

      I, Joan K. Mell, make the following statement under oath subject to the penalty of perjury pursuant to the laws of the United States and the State of Washington:

1.      I am the attorney for The GEO Group, Inc. in the above-captioned matter.  I am over the age of eighteen (18), and I am competent to testify in this matter.

2.      Attached are true and correct copies of the following documents:

**EXHIBIT 1:** Excerpted Deposition Transcript of Colleen Melody Unit Chief Civil Rights Unit.

DECLARATION OF JOAN K. MELL IN SUPPRT OF DEFENDANT AND COUNTER PLAINTIFF THE GEO GROUP. INC.'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT WITHOUT FULL PAGE REDACTIONS FOR USE AT TRIAL Case No.3:17-cv-05806-RJB-1 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

**EXHIBIT 2:** Washington State Budget 2015 and 2020; E-mail Regarding Cy Pres distributions.

**EXHIBIT 3:** Excerpted Deposition Transcript of Joshua Grice Employment Standards Program Manager for Fraud Prevention and Labor Standards With the Department of Labor and Industries (30(b)(6) designee.

**EXHIBIT 4:** AAG Time Sheets.

**EXHIBIT 5:** Exemption Log Reference ID 3.

**EXHIBIT 6:** September 18, 2017 Fellin e-mail forwarding Baker's e-mail with Baker memo.

Dated this 4th day of September, 2020 at Hamilton, MT.

III Branches Law, PLLC

_____

Joan K. Mell, WSBA No. 21319
Attorney for The GEO Group, Inc.,

DECLARATION OF JOAN K. MELL IN SUPPRT OF DEFENDANT AND COUNTER PLAINTIFF THE GEO GROUP. INC.'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT WITHOUT FULL PAGE REDACTIONS FOR USE AT TRIAL Case No.3:17-cv-05806-RJB-2 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

**CERTIFICATE OF SERVICE**

I Kristi Rigsby, hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 4th day of September, 2020 at Fircrest, Washington.

_____

Kristi Rigsby, Legal Assistant

DECLARATION OF JOAN K. MELL IN SUPPRT OF DEFENDANT AND COUNTER PLAINTIFF THE GEO GROUP. INC.'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT WITHOUT FULL PAGE REDACTIONS FOR USE AT TRIAL Case No.3:17-cv-05806-RJB-3 of 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

# Exhibit 1



1      UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON

3   ─────────────────────────────────────────

4   STATE OF WASHINGTON,                )
                                        )   No. 17-cv-05806-RJB
5                   Plaintiff,          )
                                        )
6            vs.                        )
                                        )
7   THE GEO GROUP, INC.,                )
                                        )
8                   Defendant.          )
                                        )
9                                       )

10  ─────────────────────────────────────────

11      30(b)(6) DEPOSITION UPON ORAL EXAMINATION OF
                    COLLEEN MELODY
12                  August 10, 2018
                 Fircrest, Washington
13  ─────────────────────────────────────────

14

15

16

17

18

19

20

21

22

23      Taken Before:

24      Laura A. Gjuka, CCR #2057
25      Certified Shorthand Reporter

```
1          BE IT REMEMBERED that on the 10th of August,
2     2018, 9:06 a.m., at 1019 Regents Boulevard, Fircrest,
3     Washington, before LAURA A. GJUKA, CCR# 2057, Washington
4     State Certified Court Reporter residing at University
5     Place, authorized to administer oaths and affirmations
6     pursuant to RCW 5.28.010.
7               WHEREUPON the following proceedings were had,
8     to wit:
9                         * * * * * *
10
11    COLLEEN MELODY, having been first duly sworn by
12                    the Court Reporter, was examined and
13                    testified as follows:
14
15                         EXAMINATION
16    BY MS. MELL:
17    Q  State your name for the record.
18    A  Colleen Melody.
19    Q  What's your address?
20    A  My business address is ███████████████████
21    ███████████████
22    Q  Okay.  What's your personal address?
23               MS. CHIEN:  Objection.  Is there a reason
24    you need her personal address?
25               MS. MELL:  Not if you're going to accept
```

30(b)(6) Deposition of Melody Colleen 08-10-2018

```
 1        service if I need to --
 2                      THE WITNESS:  Yes, we accept service
 3        through our --
 4                      MS. CHIEN:  Through the business address.
 5        BY MS. MELL:
 6    Q   When you say "we accept service," if you're not there
 7        and I need to subpoena you, the Attorney General's
 8        office will accept service for you?
 9    A   Yeah.
10                      MS. CHIEN:  Yes.
11        BY MS. MELL:
12    Q   Okay.  And your phone number?
13    A   █████████████████
14    Q   And that's work?
15    A   That's my direct line at work.
16    Q   What is your position?
17    A   I'm a unit chief for the civil rights unit at the
18        Washington State Attorney General's Office.
19    Q   How many people are in the civil rights unit?
20    A   Thirteen.
21    Q   And who are those people comprised of?  I don't need to
22        know their names, I just need to know what they do.
23    A   They're attorneys and support staff that include
24        investigator, paralegal, legal assistant, staff members.
25    Q   Who is the investigator?
```

1          that commonly come up at these outreach meetings that
2          are sometimes connected to and sometimes wholly
3          unconnected to the Northwest Detention Center.
4     BY MS. MELL:
5     Q   Is there a standing outreach meeting for the Northwest
6          Detention Center?
7     A   No.   That our office is involved in, no.
8     Q   So what outside attorneys have you had an outreach
9          meeting with specific to this matter?
10                 MS. CHIEN:   Objection, work product and
11          common interest privilege.   You can answer to the extent
12          not privileged.
13                 THE WITNESS:   I don't know that we have
14          had an outreach meeting specific to the Northwest
15          Detention Center where our attorneys have sought out or
16          created a meeting specific to this matter, at least
17          before the investigation started.   Certainly once we
18          started investigating we were asking more specific
19          questions about the practices at NWDC.   But prior to
20          that we wouldn't have had specific outreach meetings
21          about NWDC.   We do take meetings with groups, as part of
22          their portfolio, represent or advocate for the rights of
23          immigrants and also the rights of workers, and in those
24          outreach meetings NW comes up a fair amount.
25     BY MS. MELL:

1   Q  Okay.  So with regard to this case, who did you meet

2      with prior to opening the matter?

3             MS. CHIEN:  Objection, work product and

4      common interest.  You can answer to the extent not

5      privileged.

6             THE WITNESS:  So prior to opening this

7      case, we didn't have a case to meet with them about.  We

8      would have done outreach meetings that would have

9      invited them to share with us issues of concern in the

10     areas in which they work.

11       So, for example, when we take outreach meetings at

12     the request of Disability Rights Washington, we invite

13     them to tell us the issues of concern to Disability

14     Rights Washington, and then we talk with them to see if

15     there is any role that the State may have in improving

16     conditions for people with disabilities in Washington

17     state.  So it's not an outreach meeting about the

18     Northwest Detention Center, it's an outreach meeting

19     about the work of the organization with whom we're

20     meeting.

21     BY MS. MELL:

22   Q  All right.  Who did you meet with and have any

23     communications with about minimum wages at the Northwest

24     Detention Center prior to opening a number in

25     Timekeeping in this case?

A    We met with lots of organizations about concerns about
       labor practices at the Northwest Detention Center or
       those concerns were raised as part of the meeting.  They
       include legal aid organizations in Washington that
       represent detainees or former detainees or their
       families, or they advocate for detention condition
       improvements.  So those would be the Northwest Justice
       Project, Columbia Legal Services, Disability Rights
       Washington, the ACLU of Washington, the Northwest
       Immigrants Right Project.  And attorneys in the private
       bar who, either just as a private representational
       matter or through their membership in the American
       Immigration Law Association, represent people who are
       current or former detainees at NWDC.
            On the nonlegal side, there are a number of groups
       that raise concerns about the Northwest Detention
       Center, including One America, the Northwest Detention
       Center Resistance, and the UW and Seattle U Human Rights
       Clinics, which do legal and nonlegal work.  We've met
       with Consejo Latino, the Commission on Hispanic Affairs,
       the Washington State Human Rights Commission, the
       Washington Defender Association Immigration Project, and
       probably a number of others.  It's a large detention
       facility in Tacoma, and it affects a lot of folks in
       Washington State.

**Exhibit 2**

CERTIFICATION OF ENROLLMENT

**ENGROSSED SUBSTITUTE SENATE BILL 6052**

64th Legislature
2015 3rd Special Session

Passed by the Senate June 29, 2015
  Yeas 38  Nays 10

_____
**President of the Senate**

Passed by the House June 29, 2015
  Yeas 90  Nays 8

_____
**Speaker of the House of Representatives**

Approved

_____
**Governor of the State of Washington**

CERTIFICATE

I, Hunter G. Goodman, Secretary of the Senate of the State of Washington, do hereby certify that the attached is **ENGROSSED SUBSTITUTE SENATE BILL 6052** as passed by Senate and the House of Representatives on the dates hereon set forth.

_____
                              **Secretary**

FILED

Secretary of State
State of Washington

## ENGROSSED SUBSTITUTE SENATE BILL 6052

Passed Legislature - 2015 3rd Special Session

**State of Washington**      **64th Legislature**    **2015 2nd Special Session**

**By** Senate Ways & Means (originally sponsored by Senator Hill)

READ FIRST TIME 06/27/15.

1     AN ACT Relating to fiscal matters; amending RCW 28B.15.069,
2  28B.50.140, 28B.115.070, 28C.04.535, 38.52.540, 41.26.802, 41.60.050,
3  43.08.190, 43.09.475, 43.43.839, 43.79.480, 43.101.200, 43.101.220,
4  43.155.050,   43.320.110,   43.325.040,   43.330.250,   43.350.070,
5  46.66.080, 61.24.172, 66.08.170, 69.50.540, 70.96A.350, 74.13.621,
6  77.12.203, 82.08.160, 82.08.170, 83.100.230, 86.26.007, 88.02.650,
7  and 86.26.007; amending 2014 c 221 ss 924, 925, 101, 102, 105, 107,
8  108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 122,
9  125, 126, 127, 129, 130, 134, 135, 136, 140, 141, 143, 146, 148, 201,
10  202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 216,
11  217, 218, 219, 220, 221, 222, 301, 302, 303, 304, 305, 306, 307, 308,
12  309, 310, 311, 401, 402, 501, 502, 503, 504, 505, 506, 507, 508, 509,
13  511, 512, 513, 514, 515, 604, 605, 606, 607, 608, 609, 610, 611, 612,
14  614, 615, 616, 617, 619, 701, 704, 706, 708, 709, 710, 711, 801, 802,
15  803, 804, and 805 (uncodified); amending 2013 2nd sp.s. c 4 ss 712
16  and 718 (uncodified); reenacting and amending RCW 41.50.110 and
17  70.105D.070; adding new sections to 2015 1st sp.s. c 10 (uncodified);
18  creating new sections; repealing 2015 1st sp. sess. c 10 s 501
19  (uncodified); repealing 2014 c 221 s 707 (uncodified); making
20  appropriations; providing an effective date; providing expiration
21  dates; and declaring an emergency.

22  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

1    (b) Assess (i) whether the bundled rates result in payment of
2  fees by ratepayers for services that they may not receive or need,
3  and (ii) the amount of such excess payments; and
4    (c) Assess whether ordinances establishing bundled rates result
5  in de facto regulation of commercial source-separated recycling
6  collection services by local governments in violation of state law.

7  <u>NEW SECTION.</u>  **Sec. 125.  FOR THE CITIZENS' COMMISSION ON SALARIES**
8  **FOR ELECTED OFFICIALS**
9  General Fund—State Appropriation (FY 2016). . . . . . . . . $146,000
10  General Fund—State Appropriation (FY 2017). . . . . . . . . $185,000
11      TOTAL APPROPRIATION. . . . . . . . . . . . . . $331,000

12  <u>NEW SECTION.</u>  **Sec. 126.  FOR THE ATTORNEY GENERAL**
13  General Fund—State Appropriation (FY 2016). . . . . . . . $11,408,000
14  General Fund—State Appropriation (FY 2017). . . . . . . . $11,740,000
15  General Fund—Federal Appropriation. . . . . . . . . . . $6,930,000
16  New Motor Vehicle Arbitration Account—State
17    Appropriation. . . . . . . . . . . . . . . . . . . $1,039,000
18  Legal Services Revolving Account—State
19    Appropriation. . . . . . . . . . . . . . . . . . $225,029,000
20  Tobacco Prevention and Control Account—State
21    Appropriation. . . . . . . . . . . . . . . . . . . . $273,000
22  Medicaid Fraud Penalty Account—State Appropriation. . . . $3,065,000
23  Public Services Revolving Account—State
24    Appropriation. . . . . . . . . . . . . . . . . . . $2,217,000
25  Child Rescue Fund—State Appropriation. . . . . . . . . . . $500,000
26      TOTAL APPROPRIATION. . . . . . . . . . . . . $262,201,000

27  The appropriations in this section are subject to the following
28  conditions and limitations:
29  (1) The attorney general shall report each fiscal year on actual
30  legal services expenditures and actual attorney staffing levels for
31  each agency receiving legal services. The report shall be submitted
32  to the office of financial management and the fiscal committees of
33  the senate and house of representatives no later than ninety days
34  after the end of each fiscal year. As part of its by agency report to
35  the legislative fiscal committees and the office of financial
36  management, the office of the attorney general shall include
37  information detailing the agency's expenditures for its agency-wide

1  overhead and a breakdown by division of division administration
2  expenses.

3      (2) Prior to entering into any negotiated settlement of a claim
4  against the state that exceeds five million dollars, the attorney
5  general shall notify the director of financial management and the
6  chairs of the senate committee on ways and means and the house of
7  representatives committee on appropriations.

8      (3) The attorney general shall annually report to the fiscal
9  committees of the legislature all new *cy pres* awards and settlements
10  and all new accounts, disclosing their intended uses, balances, the
11  nature of the claim or account, proposals, and intended timeframes
12  for the expenditure of each amount. The report shall be distributed
13  electronically and posted on the attorney general's web site. The
14  report shall not be printed on paper or distributed physically.

15      (4) $2,228,000 of the public service revolving account—state
16  appropriation is provided solely for the work of the public counsel
17  section of the office of the attorney general.

18      (5) $353,000 of the general fund—state appropriation for fiscal
19  year 2016 and $353,000 of the general fund—state appropriation for
20  fiscal year 2017 are provided solely for a grant to the Washington
21  coalition of crime victim advocates to provide training,
22  certification, and technical assistance for crime victim service
23  center advocates.

24      (6) $1,196,000 of the legal services revolving fund—state
25  appropriation is provided solely for the implementation of chapter
26  70, Laws of 2015 (Second Substitute Senate Bill No. 5052) (cannabis
27  patient protection).

28      (7) $14,000 of the legal services revolving account—state
29  appropriation is provided solely for implementation of chapter 240,
30  Laws of 2015 (Substitute Senate Bill No. 5740) (extended foster
31  care).

32      (8) $182,000 of the legal services revolving account—state
33  appropriation is provided solely for implementation of chapter 274,
34  Laws of 2015 (Engrossed Substitute House Bill No. 1449) (oil
35  transportation safety).

36      (9) $71,000 of the legal services revolving account—state
37  appropriation is provided solely for implementation of Engrossed
38  Second Substitute House Bill No. 1472 (chemical action plans), Second
39  Substitute Senate Bill No. 5056 (safer chemicals/action plans),

1    Substitute Senate Bill No. 6131 (safer chemicals), or any of these.
2    If none of these bills are enacted by July 10, 2015, the amount
3    provided in this subsection shall lapse.
4       (10) Pursuant to chapter 247, Laws of 2015 (Second Substitute
5    House Bill No. 1281) (sexual exploitation of a minor), the office of
6    the attorney general may expend $500,000 from the child rescue fund—
7    state appropriation, or an amount not to exceed actual revenues into
8    the account.

9    <u>NEW SECTION.</u> **Sec. 127.** **FOR THE CASELOAD FORECAST COUNCIL**
10   General Fund—State Appropriation (FY 2016). . . . . . . . $1,378,000
11   General Fund—State Appropriation (FY 2017). . . . . . . . $1,454,000
12       TOTAL APPROPRIATION. . . . . . . . . . . . . . $2,832,000

13   The appropriations in this section are subject to the following
14   conditions and limitations: $55,000 of the general fund—state
15   appropriation for fiscal year 2016 and $55,000 of the general fund—
16   state appropriation for fiscal year 2017 are provided solely for
17   Substitute Senate Bill No. 5999 (caseload forecast council). If the
18   bill is not enacted by July 10, 2015, the amounts provided in this
19   subsection shall lapse.

20   <u>NEW SECTION.</u> **Sec. 128.** **FOR THE DEPARTMENT OF COMMERCE**
21   General Fund—State Appropriation (FY 2016). . . . . . . . $60,162,000
22   General Fund—State Appropriation (FY 2017). . . . . . . . $61,103,000
23   General Fund—Federal Appropriation. . . . . . . . . . . $264,872,000
24   General Fund—Private/Local Appropriation. . . . . . . . $8,149,000
25   Public Works Assistance Account—State
26      Appropriation. . . . . . . . . . . . . . . . . . . $7,905,000
27   Drinking Water Assistance Administrative
28      Account—State Appropriation. . . . . . . . . . . . . . $487,000
29   Lead Paint Account—State Appropriation. . . . . . . . . . $181,000
30   Building Code Council Account—State Appropriation. . . . . $15,000
31   Home Security Fund Account—State Appropriation. . . . . $26,493,000
32   Affordable Housing for All Account—State
33      Appropriation. . . . . . . . . . . . . . . . . . . $12,023,000
34   Financial Fraud and Identity Theft Crimes
35      Investigation and Prosecution Account—State
36      Appropriation. . . . . . . . . . . . . . . . . . . $1,776,000
37   Low-Income Weatherization and Structural

CERTIFICATION OF ENROLLMENT

**ENGROSSED SUBSTITUTE HOUSE BILL 1109**

66th Legislature
2019 Regular Session

Passed by the House April 28, 2019
  Yeas 57   Nays 41

_____
**Speaker of the House of Representatives**

Passed by the Senate April 28, 2019
  Yeas 27   Nays 21

_____
**President of the Senate**

Approved

_____
**Governor of the State of Washington**

CERTIFICATE

I, Bernard Dean, Chief Clerk of the House of Representatives of the State of Washington, do hereby certify that the attached is **ENGROSSED SUBSTITUTE HOUSE BILL 1109** as passed by the House of Representatives and the Senate on the dates hereon set forth.

_____
                                        **Chief Clerk**

FILED

Secretary of State
State of Washington

1  The appropriations in this section are subject to the following
2  conditions and limitations:

3  (1) $1,585,000 of the performance audit of government account—
4  state appropriation is provided solely for staff and related costs to
5  verify the accuracy of reported school district data submitted for
6  state funding purposes; conduct school district program audits of
7  state-funded public school programs; establish the specific amount of
8  state funding adjustments whenever audit exceptions occur and the
9  amount is not firmly established in the course of regular public
10 school audits; and to assist the state special education safety net
11 committee when requested.

12 (2) Within existing resources of the performance audits of
13 government account, the state auditor's office shall conduct a
14 performance audit or accountability audit of Washington charter
15 public schools to satisfy the requirement to contract for an
16 independent performance audit pursuant to RCW 28A.710.030(2).

17 (3) The state auditor must conduct a performance and
18 accountability audit of practices related to awarding, tracking, and
19 reporting contracts with outside entities and contracts between the
20 University of Washington and affiliated entities. Utilizing the
21 information gathered under section 606(1)(z) of this act, similar
22 provisions from prior biennia, and best practices in contract
23 management and oversight, the auditor must recommend a plan to make
24 contract information, including those for contracted services and
25 consulting, available in a centralized and searchable form. The
26 recommendations of the auditor must be reported to the fiscal
27 committees of the legislature and the office of financial management
28 no later than December 30, 2020.

29 <u>NEW SECTION.</u>  **Sec. 126.  FOR THE CITIZENS' COMMISSION ON SALARIES**
30 **FOR ELECTED OFFICIALS**
31 General Fund—State Appropriation (FY 2020). . . . . . . . .  $226,000
32 General Fund—State Appropriation (FY 2021). . . . . . . . .  $243,000
33 Pension Funding Stabilization Account—State Appropriation. .  $30,000
34      TOTAL APPROPRIATION. . . . . . . . . . . . . . . . .  $499,000

35 <u>NEW SECTION.</u>  **Sec. 127.  FOR THE ATTORNEY GENERAL**
36 General Fund—State Appropriation (FY 2020). . . . . . . .  $14,972,000
37 General Fund—State Appropriation (FY 2021). . . . . . . .  $14,940,000

```
 1   General Fund—Federal Appropriation. . . . . . . . . . . $15,992,000
 2   Public Service Revolving Account—State Appropriation. . .  $4,195,000
 3   New Motor Vehicle Arbitration Account—State
 4       Appropriation. . . . . . . . . . . . . . . . . . . .  $1,693,000
 5   Medicaid Fraud Penalty Account—State Appropriation. . . .  $5,556,000
 6   Child Rescue Fund—State Appropriation. . . . . . . . . . .  $500,000
 7   Legal Services Revolving Account—State Appropriation. . $276,544,000
 8   Local Government Archives Account—State Appropriation. . . .  $348,000
 9   Local Government Archives Account—Local. . . . . . . . . .  $330,000
10   Pension Funding Stabilization Account—State Appropriation. $1,602,000
11   Tobacco Prevention and Control Account—State
12       Appropriation. . . . . . . . . . . . . . . . . . . . .  $273,000
13           TOTAL APPROPRIATION. . . . . . . . . . . . . . $336,945,000
```

14   The appropriations in this section are subject to the following
15   conditions and limitations:

16   (1) The attorney general shall report each fiscal year on actual
17   legal services expenditures and actual attorney staffing levels for
18   each agency receiving legal services. The report shall be submitted
19   to the office of financial management and the fiscal committees of
20   the senate and house of representatives no later than ninety days
21   after the end of each fiscal year. As part of its by agency report to
22   the legislative fiscal committees and the office of financial
23   management, the office of the attorney general shall include
24   information detailing the agency's expenditures for its agency-wide
25   overhead and a breakdown by division of division administration
26   expenses.

27   (2) Prior to entering into any negotiated settlement of a claim
28   against the state that exceeds five million dollars, the attorney
29   general shall notify the director of financial management and the
30   chairs of the senate committee on ways and means and the house of
31   representatives committee on appropriations.

32   (3) The attorney general shall annually report to the fiscal
33   committees of the legislature all new cy pres awards and settlements
34   and all new accounts, disclosing their intended uses, balances, the
35   nature of the claim or account, proposals, and intended timeframes
36   for the expenditure of each amount. The report shall be distributed
37   electronically and posted on the attorney general's web site. The
38   report shall not be printed on paper or distributed physically.

1     (4) $58,000 of the general fund—state appropriation for fiscal
2  year 2020 and $58,000 of the general fund—state appropriation for
3  fiscal year 2021 are provided solely for implementation of Second
4  Substitute House Bill No. 1166 (sexual assault kits). If the bill is
5  not enacted by June 30, 2019, the amounts provided in this subsection
6  shall lapse.

7     (5) $63,000 of the legal services revolving account—state
8  appropriation is provided solely for implementation of Substitute
9  House Bill No. 1399 (paid family and medical leave). If the bill is
10  not enacted by June 30, 2019, the amount provided in this subsection
11  shall lapse.

12     (6) $44,000 of the legal services revolving account—state
13  appropriation is provided solely for implementation of Engrossed
14  Second Substitute House Bill No. 1224 (rx drug cost transparency). If
15  the bill is not enacted by June 30, 2019, the amount provided in this
16  subsection shall lapse.

17     (7) $79,000 of the legal services revolving account—state
18  appropriation is provided solely for implementation of House Bill No.
19  2052 (marijuana product testing). If the bill is not enacted by June
20  30, 2019, the amount provided in this subsection shall lapse.

21     (8) $330,000 of the local government archives account—local
22  appropriation is provided solely for implementation of Engrossed
23  Substitute House Bill No. 1667 (public records request admin). If the
24  bill is not enacted by June 30, 2019, the amount provided in this
25  subsection shall lapse.

26     (9) $161,000 of the general fund—state appropriation for fiscal
27  year 2020 and $161,000 of the general fund—state appropriation for
28  fiscal year 2021 are provided solely for the civil rights unit to
29  provide additional services in defense and protection of civil and
30  constitutional rights for people in Washington.

31     (10) $88,000 of the general fund—state appropriation for fiscal
32  year 2020, $85,000 of the general fund—state appropriation for fiscal
33  year 2021, and $344,000 of the legal services revolving account—state
34  appropriation are provided solely for implementation of Substitute
35  Senate Bill No. 5297 (assistant AG bargaining). If the bill is not
36  enacted by June 30, 2019, the amounts provided in this subsection
37  shall lapse.

38     (11) $700,000 of the legal services revolving account—state
39  appropriation is provided solely for implementation of Engrossed

1   Second Substitute Senate Bill No. 5497 (immigrants in the workplace).
2   If the bill is not enacted by June 30, 2019, the amount provided in
3   this subsection shall lapse.

4       (12) $592,000 of the public service revolving account—state
5   appropriation and $47,000 of the legal services revolving account—
6   state appropriation are provided solely for implementation of
7   Engrossed Second Substitute Senate Bill No. 5116 (clean energy). If
8   the bill is not enacted by June 30, 2019, the amounts provided in
9   this subsection shall lapse.

10      (13) $108,000 of the legal services revolving account—state
11  appropriation is provided solely for implementation of Engrossed
12  Second Substitute Senate Bill No. 5740 (retirement savings program).
13  If the bill is not enacted by June 30, 2019, the amount provided in
14  this subsection shall lapse.

15      (14) $200,000 of the general fund—state appropriation for fiscal
16  year 2020 is provided solely for a work group to study and institute
17  a statewide program for receiving reports and other information for
18  the public regarding potential self-harm, potential harm, or criminal
19  acts including but not limited to sexual abuse, assault, or rape. Out
20  of this amount:

21      (a) The work group must review the aspects of similar programs in
22  Arizona, Michigan, Colorado, Idaho, Nevada, Oregon, Utah, Wisconsin,
23  and Wyoming; and must incorporate the most applicable aspects of
24  those programs to the program proposal;

25      (b) The program proposal must include a plan to implement a
26  twenty-four hour hotline or app for receiving such reports and
27  information; and

28      (c) The program proposal and recommendations must be submitted to
29  legislative fiscal committees by July 31, 2020.

30      (15) $75,000 of the general fund—state appropriation for fiscal
31  year 2020 is provided solely for the attorney general to develop an
32  implementation plan to collect and disseminate data on the use of
33  force by public law enforcement agencies and private security
34  services.

35      (a) The plan must identify how to effectively collect data on the
36  occasions of justifiable homicide or uses of deadly force by a public
37  officer, peace officer, or person aiding under RCW 9A.16.040 by all
38  general authority Washington law enforcement agencies and the
39  department of corrections. The plan must address any necessary

1  statutory changes, possible methods of collection, and any other
2  needs that must be addressed to collect the following information:
3      (i) The number of tort claims filed and moneys paid in use of
4  force cases;
5      (ii) The number of incidents in which peace officers discharged
6  firearms at citizens;
7      (iii) The demographic characteristics of the officers and
8  citizens involved in each incident, including sex, age, race, and
9  ethnicity;
10     (iv) The agency or agencies employing the involved officers and
11 location of each incident;
12     (v) The particular weapon or weapons used by peace officers and
13 citizens; and
14     (vi) The injuries, if any, suffered by officers and citizens.
15     (b) The implementation plan must also identify how to effectively
16 collect data on the occasions of the use of force requiring the
17 discharge of a firearm by any private security guard employed by any
18 private security company licensed under chapter 18.170 RCW. The plan
19 must address any necessary statutory changes, possible methods of
20 collection, and any other needs that must be addressed to collect the
21 following information:
22     (i) The number of incidents in which security guards discharged
23 firearms at citizens;
24     (ii) The demographic characteristics of the security guards and
25 citizens involved in each incident, including sex, age, race, and
26 ethnicity;
27     (iii) The company employing the involved security guards and the
28 location of each incident;
29     (iv) The particular weapon or weapons used by security guards and
30 citizens; and
31     (v) The injuries, if any, suffered by security guards and
32 citizens.
33     (c) The attorney general must compile reports received pursuant
34 to this subsection and make public the data collected.
35     (d) The department of licensing, department of corrections,
36 Washington state patrol, and criminal justice training commission
37 must assist the attorney general as necessary to complete the
38 implementation plan.
39     (16) $4,220,000 of the general fund—federal appropriation and
40 $1,407,000 of the medicaid fraud penalty account—state appropriation

1  are provided solely for additional staffing and program operations in
2  the medicaid fraud control division.
3      (17) $4,292,000 of the legal services revolving account—state
4  appropriation is provided solely for child welfare and permanency
5  staff.
6      (18) $141,000 of the legal services revolving account—state
7  appropriation is provided solely for implementation of Engrossed
8  Substitute Senate Bill No. 5035 (prevailing wage laws). If the bill
9  is not enacted by June 30, 2019, the amount provided in this
10 subsection shall lapse.

11 <u>NEW SECTION.</u>  **Sec. 128.**  **FOR THE CASELOAD FORECAST COUNCIL**
12 General Fund—State Appropriation (FY 2020). . . . . . . . $1,907,000
13 General Fund—State Appropriation (FY 2021). . . . . . . . $1,922,000
14 Pension Funding Stabilization Account—State Appropriation. . $168,000
15     TOTAL APPROPRIATION. . . . . . . . . . . . . . . . $3,997,000

16     The appropriations within this section are subject to the
17 following conditions and limitations: $43,000 of the general fund—
18 state appropriation for fiscal year 2020 and $27,000 of the general
19 fund—state appropriation for fiscal year 2021 are provided solely for
20 the caseload forecast council to provide information, data analysis,
21 and other necessary assistance upon the request of the task force
22 established in section 952 of this act.

23 <u>NEW SECTION.</u>  **Sec. 129.**  **FOR THE DEPARTMENT OF COMMERCE**
24 General Fund—State Appropriation (FY 2020). . . . . . . . $94,046,000
25 General Fund—State Appropriation (FY 2021). . . . . . . . $92,285,000
26 General Fund—Federal Appropriation. . . . . . . . . . . $327,876,000
27 General Fund—Private/Local Appropriation. . . . . . . . . $9,107,000
28 Public Works Assistance Account—State Appropriation. . . . $8,207,000
29 Lead Paint Account—State Appropriation. . . . . . . . . . . $251,000
30 Building Code Council Account—State Appropriation. . . . . . $16,000
31 Liquor Excise Tax Account—State Appropriation. . . . . . $1,291,000
32 Economic Development Strategic Reserve Account—State
33     Appropriation. . . . . . . . . . . . . . . . . . . $5,000,000
34 Home Security Fund Account—State Appropriation. . . . . . $60,422,000
35 Energy Freedom Account—State Appropriation. . . . . . . . . . $5,000
36 Affordable Housing for All Account—State Appropriation. . $13,895,000

From: **Esquibel, Shane (ATG)** ShaneE@ATG.WA.GOV
Subject: RE: Cy Pres
Date: March 20, 2019 at 4:45 PM
To: **Murray, Julie** Julie.Murray@leg.wa.gov, **Webb, Mike (ATG)** MikeW@ATG.WA.GOV
Cc: **Scott, Sarian** Sarian.Scott@leg.wa.gov



Hi Julie,

We distributed only one cy pres award since 2016. The AGO received $390,000 and retained $90,000 as costs and fees because we were on the executive committee of the multistate settlement. The $300,000 was awarded to the Washington State Housing Finance Commission to fund housing counselors. As you know, housing counselors have been underfunded for years out of the FFA Account since foreclosures started going down around 2014.

Here's the details of the award.

      a.   Name of the settlement: *The State of Alabama et al. v. PHH Mortgage Corp.*
      b.   Case number of the settlement, 1:18-cv-00009 (TFH
      c.   Purpose/reason for the settlement/case, loan servicing violations
      d.   The date of the settlement, May 10, 2018 and
      e.   The date the funds were receipted by the AGO. May 18, 2018.

We held a public announcement along with the Washington Housing Finance Commissioners, Representative Tina Orwall, and counselors around the state. Here's the Twitter announcement. https://twitter.com/AGOWA/status/1017435155458285568

While it is not cy pres, we thought we would also share this recovery that went to the Washington State Department of Health in August 2018. This was result of a multistate action with Washington, California, and Texas. All three states agreed to send their share of the recovery to their respective health departments that administer breast cancer and cervical cancer screenings for uninsured and underinsured women, since the deceptive conduct involved a sham charity that led donors it was providing mammograms for underinsured and uninsured women. You can read more details here: https://www.atg.wa.gov/news/news-releases/ag-recovers-500k-donated-washingtonians-bankrupt-sham-charity

Thanks
Shane

**From:** Murray, Julie <Julie.Murray@leg.wa.gov>
**Sent:** Wednesday, March 20, 2019 10:26 AM
**To:** Esquibel, Shane (ATG) <ShaneE@ATG.WA.GOV>; Webb, Mike (ATG) <MikeW@ATG.WA.GOV>
**Cc:** Scott, Sarian <Sarian.Scott@leg.wa.gov>
**Subject:** Cy Pres

Hi Shane and Mike –

I was asked for a copy of the 2017 and 2018 Cy Pres report.  Went to your website and it was last updated 3 years ago.  Do you have reports to share?  Maybe I went to the wrong link.  Thanks

https://www.atg.wa.gov/cy-pres-awards-and-grants

Julie Murray
Senior Budget Counsel
Senate Ways & Means Committee
360-786-7711

# Exhibit 3

1               UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
2                       AT TACOMA

3   _____

    STATE OF WASHINGTON,           )
4                                  )
              Plaintiff,           )
5                                  )
        vs.                        )   NO. 3:17-CV-05806-RJB
6                                  )
    THE GEO GROUP, Inc.,           )
7                                  )
              Defendant.           )
8   _____

9   VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF JOSHUA GRICE

10  _____

    APPEARANCES:
11
        FOR THE PLAINTIFF:      MR. JAMES S. MILLS
12                              MR. LANE POLOZOLA
                                ASSISTANT ATTORNEYS GENERAL
13                              800 Fifth Avenue, Ste. 2000
                                Olympia, WA  98104-3188
14
        FOR THE DEFENDANT:      MS. JOAN MELL
15                              III Branches Law
                                1019 Regents Blvd., Suite 204
16                              Fircrest, WA  98466

17                              MS. ASHLEY E. CALHOUN
                                AKERMAN, LLP
18                              1900 Sixteenth Stret
                                Suite 1700
19                              Denver, CO  80202

20      ALSO PRESENT:           MELODY SORENSEN, VIDEOGRAPHER

21

22

23  Thursday, September 5, 2019
    Olympia, Washington
24

25

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1              BE IT REMEMBERED that on Thursday, September 5,
 2    2019, at 9:39 a.m. at 7273 Linderson Way, Tumwater,
 3    Washington, before DIXIE J. CATTELL, Certified Court
 4    Reporter, appeared JOSHUA GRICE, the witness herein;
 5              WHEREUPON, the following proceedings were had,
 6    to wit:
 7              THE VIDEOGRAPHER:  We are now on the record.
 8    This is the video-recorded 30(b)(6) deposition of Josh
 9    Grice.  Today's date is September 5, 2019, and the time is
10    now 9:39 a.m.  My name is Melody Sorensen.  I'm
11    subcontracted by Sound Vision Video Production, 4821 North
12    14th Street, Tacoma, Washington.  This deposition is being
13    held at 7273 Linderson Way Southwest, Tumwater, Washington.
14         The case is the State of Washington versus The GEO
15    Group, Inc.  Present for the plaintiff is James Mills and
16    Lane Polozola.  Present for the defendants and giving
17    notice to this deposition is Joan Mell and Ashley Calhoun.
18         The court reporter is Dixie Cattell, who will now
19    swear in the witness.
20  JOSHUA GRICE,                    having been first duly sworn,
21                          testified as follows:
22                          EXAMINATION
23  BY MS. MELL:
24  Q  State your name for the record.
25  A  Joshua Grice.
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

1   Q   Mr. Grice, what's your position?

2   A   I'm the Employment Standards Program Manager at the

3       Department of Labor and Industries.

4   Q   Employment Standards Program Manager?

5   A   Correct.

6   Q   Okay.  Tell me where that is in the hierarchy at Labor and

7       Industries.

8   A   The Employment Standards Program Manager reports to the

9       Assistant Director for Fraud Prevention and Labor

10      Standards.

11  Q   And who is that?

12  A   Christopher Bowe.

13  Q   Is that B-O-W-E?

14  A   B-O-W-E, yes.

15  Q   Okay.  And his title is what, Assistant Director of. . . ?

16  A   Assistant Director for Fraud Prevention and Labor

17      Standards.

18  Q   Fraud Prevention and Labor. . .

19          Is the Minimum Wage Act considered a labor standard?

20  A   Yes.

21  Q   Okay.  So who does the Assistant Director report to?

22  A   The Assistant Director for Fraud Prevention and Labor

23      Standards reports to the Deputy Director of Labor and

24      Industries, Elizabeth Smith.

25  Q   Who does the Deputy Director report to?

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1      respond to the issues in those complaints.

 2   Q  Were there any meal and rest break complaints by detainees?

 3   A  No.

 4   Q  Were there any Minimum Wage Act complaints by detainees?

 5   A  Not to my knowledge.

 6   Q  Did you look for them?

 7   A  Yes.

 8   Q  Do you know why there aren't any?

 9   A  To my knowledge, no complaints have been filed by detainees

10      held at the Northwest Detention Center.

11   Q  Do you know why detainees don't complain about the minimum

12      wages --

13              MR. MILLS:  Objection.  Calls for speculation.

14          You can answer.

15              MS. MELL:  Let me finish my -- I'll try to give

16      you time, but I do tend to ask slower questions, and I

17      sometimes even pause, so. . .

18              MR. MILLS:  Understood.

19              MS. MELL:  Can you read back the start of it?  I

20      want to reask the question, but I don't remember how --

21              THE COURT REPORTER:  "Do you know why detainees

22      don't complain. . ."

23   Q  (By Ms. Mell)  Okay.  Do you know why detainees have not

24      complained about payments to them in the Voluntary Work

25      Program to the Department of Labor and Industries?
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1      investigators within the Department and the Attorney

 2      General's Office.

 3   Q  Okay.  Who was missing from the discussion in what did

 4      happen?

 5   A  To my knowledge, this was not considered in discussions of

 6      how to utilize that enforcement and investigation resource.

 7   Q  Well, the AG's office was involved, correct?

 8   A  Was involved in what?

 9   Q  In whether or not the Minimum Wage Act applied to

10      detainees.

11   A  The Department did seek advice, as it does with many

12      technical questions, about the applicability of the Minimum

13      Wage Act in this circumstance.

14   Q  So there was -- there was AG advice given at the time,

15      correct?

16   A  There was preliminary advice given in the context of

17      responding to a technical question.

18   Q  Who told you to use the word "preliminary"?  You keep using

19      that word, and I'm just -- did somebody tell you to use it?

20             MR. MILLS:  Object to the form as argumentative.

21        You can answer.

22   A  No.

23   Q  (By Ms. Mell)  Is that a word that you came up with?

24   A  Yes.

25   Q  How did you come up with that word?
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1        filed.
 2   Q   Tammy Fellin didn't tell the Governor that it may not
 3       apply, did she?
 4   A   Would you repeat the question.
 5   Q   Tammy Fellin did not inform the Governor's Office that the
 6       Minimum Wage Act may not apply, did she?
 7   A   My recollection of the response to the Governor's Office is
 8       that Tammy Fellin said that it is unlikely that the
 9       Department would have jurisdiction over that circumstance.
10   Q   You keep putting words in there.  There's no "unlikely" in
11       her communication, is there?
12               MR. MILLS:  Objection.  Argumentative.
13   A   I don't recall specifically what words.
14   Q   (By Ms. Mell)  Well, why don't we pull it out?  It's in
15       your exhibits.  Why don't you find it there?
16   A   Okay.  Can you provide the exhibit number?
17   Q   Sure.  Exhibit 271.  "Do detainees fall under L&I's
18       jurisdiction for wage and hour issues?  For wage and hour
19       purposes L&I does not have any jurisdiction over the
20       Federal Government or its instrumentalities.  This would
21       include the detainees and work performed by GEO and its
22       employees under contract with the Federal Government."
23           There's no couching of any of that instruction, is
24       there?  There's no "may not," there's no "might not,"
25       there's not "preliminary."  She's saying it flat out,
```

```
 1      straight up, it doesn't apply, correct?
 2   A  Tammy's answer, the first sentence of that answer states
 3      the general principle that the Department operated on in
 4      drawing that conclusion, but the full analysis of that
 5      circumstance would have needed to occur as part of a
 6      complaint or investigation.
 7   Q  You didn't answer my question.
 8            MS. MELL:  Move to strike.
 9   Q  (By Ms. Mell)  Is there any couching language that you
10      suggested is in the communication in Tammy Fellin's e-mail
11      to the Governor's Office?
12            MR. MILLS:  Objection as to form.
13   A  The first sentence indicates that for wage and hour
14      purposes, L&I does not have jurisdiction over the Federal
15      Government or its instrumentalities.  That statement
16      acknowledges that -- the general legal principle at work
17      here.
18   Q  (By Ms. Mell)  Does Tammy Fellin tell the Governor's
19      Office, "I hope this clarifies our jurisdiction in this
20      matter, please let me know if you have any additional
21      questions," after telling the Governor's Office's straight
22      up that the Minimum Wage Act doesn't apply to the
23      detainees?
24            MR. MILLS:  Objection as to form.
25          Go ahead.
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
     ROUGH DRAFT
 1           Go ahead.
 2   A  I did not specifically ask the Department for a position
 3      related to this lawsuit.
 4   Q  (By Ms. Mell)  Has the Department taken the position that
 5      the Minimum Wage Act applies to the detainees?
 6              MR. MILLS:  Objection to the extent it calls for
 7      a legal conclusion.
 8          You can answer.
 9   A  The Department presumes that the Minimum Wage Act applies
10      to an employer/employee relationship unless a specific
11      exemption applies to that situation, but the Department has
12      not specifically analyzed or concluded how the Minimum Wage
13      Act would apply to detainees.
14   Q  (By Ms. Mell)  Well, the Department did back in 2014, and
15      it concluded it didn't.  So did the Department change its
16      opinion?
17   A  The Department in 2014 provided its analysis related to a
18      technical inquiry from the Governor's Office, but did not
19      take a position that resulted from a investigation or a
20      complaint.
21   Q  All right.  But it still took a position that the Minimum
22      Wage Act didn't apply in 2014, correct?
23   A  The Department provided that conclusion in response to a
24      technical inquiry from the Governor's Office.
25   Q  Did the -- has the Department at any time changed its
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1        it's a memo from the Attorney General's Office?

 2   A    The relationship between the Department of Labor and

 3        Industries and the Attorney General Office -- Attorney

 4        General's Office involves seeking legal guidance for our

 5        operations.

 6   Q    Okay.  So you're making an assumption?  You don't know that

 7        that's the case?

 8   A    I don't know the specific circumstances that led to this

 9        memo being transmitted to Labor and Industries.

10   Q    Do you even know if the memo gives the Department legal

11        advice?

12   A    I'm not certain the nature of the advice contained in the

13        memo.

14               MR. MILLS:  I'm going to object.  It calls for a

15        legal conclusion and move to strike.

16   Q    (By Ms. Mell)  Okay.  You don't even know if the memo is

17        authored by a lawyer?

18   A    I don't have specific knowledge about the contents of that

19        memo.

20   Q    But you've read it?

21   A    No.

22   Q    Oh, you've never read the memo?

23   A    I've not read that memo specifically.

24   Q    So you've never even seen it?

25   A    I have not read it specifically, no.
```

STATE OF WASHINGTON vs GEO GROUP
Joshua Grice, 09/05/2019

```
 1        regulations against the Federal Government?
 2                MR. MILLS:  Objection.  Legal conclusion.
 3            You can answer.
 4    A   It would generally be the position of the Department that
 5        wage-and-hour requirements, that the Federal Government is
 6        not subject -- federal employees are not subject to state
 7        wage-and-hour requirements.
 8    Q   Okay.  So if -- excuse me.  If a federal employee at the
 9        Northwest Detention Center complained about getting
10        sub-minimum wages, the Department would decline to
11        investigate that complaint?
12                MR. MILLS:  Objection.  Lack of foundation;
13        calls for speculation; legal conclusion.
14            You can answer.
15    A   When the Department receives a complaint from a federal
16        employee according to its standard work process, that
17        complaint would typically not be accepted.
18    Q   (By Ms. Mell)  How would it be communicated to the
19        employee?
20    A   The employee would receive likely a phone call and a letter
21        detailing the Department's finding.
22    Q   And what would the letter contain?  Is it there analysis
23        that says it doesn't apply?
24    A   The letter would contain the Department's determination
25        that the complaint could not be accepted.
```

```
 1      relates to detainees and, in fact, did?

 2                  MR. MILLS:  Objection; calls for speculation.

 3      Mischaracterizes the testimony.

 4             You can answer.

 5   A  The Department would have to analyze -- fully analyze the

 6      circumstances of the employee filing the complaint in order

 7      to determine whether it had jurisdiction.

 8   Q  (By Ms. Mell)  So does the Department assume that a

 9      complainant is an employee?

10   A  The Department would undertake an analysis to determine

11      whether an employer/employee relationship existed in order

12      to determine whether it could accept a complaint under the

13      Wage Payment Act.

14   Q  And Tammy Fellin said that the Department doesn't have

15      jurisdiction over federal employees, correct?

16   A  Tammy provided information in response to the Governor's

17      inquiry that L&I's jurisdiction may be limited or may not

18      be applicable to federal detainees -- to detainees at the

19      Northwest Detention Center.

20                  MS. MELL:  Move to strike.

21   Q  That's not a correct answer, is it?

22                  MR. MILLS:  Objection.  Argumentative.

23   Q  (By Ms. Mell)  Would you agree that there was no "may not"

24      in Tammy's advice?

25                  MR. MILLS:  Asked and answered.
```

# Exhibit 4

| Last Name | First Name | Client | Rep Cat | Docket Number | Case | hours | date | decription |
|---|---|---|---|---|---|---|---|---|
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 1.4 | 5/4/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.9 | 5/4/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/4/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/9/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/9/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/9/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/9/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/9/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 5/9/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/9/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 5/9/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/10/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/11/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/11/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/11/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/11/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/11/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 3.1 | 5/17/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/17/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 3.5 | 5/17/2017 | **2b** |
| Melody | Colleen | Civil Rights Division | General | 10759047 | NWDC | 1 | 5/17/2017 | **2b** |
| Melody | Colleen | Civil Rights Division | General | 10759047 | NWDC | 2.5 | 5/17/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 5/18/2017 | **2b** |
| Melody | Colleen | Civil Rights Division | General | 10759047 | NWDC | 3.5 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 5/18/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 1 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/18/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 5/18/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/19/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 5/19/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 5/22/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 5/22/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/23/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 5/23/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.7 | 5/23/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 5/23/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 5/23/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 5/23/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.6 | 5/24/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 5/24/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/2/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.9 | 6/2/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 6/2/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 6/5/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 6/8/2017 | **2b** |
| Melody | Colleen | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/8/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 1.2 | 6/8/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/8/2017 | **2b** |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 6/15/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/16/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/16/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/16/2017 | **2b** |
| Melody | Colleen | Civil Rights Division | General | 10759047 | NWDC | 1.75 | 6/20/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/20/2017 | **2b** |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/20/2017 | **2b** |

JM-13724
PRR-2018-0870

| Last Name | First Name | Client | Rep Cat | Docket Number | Case | hours | date | decription |
|---|---|---|---|---|---|---|---|---|
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/20/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.4 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/21/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 6/22/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/22/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/22/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.2 | 6/22/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/26/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/26/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 6/26/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/28/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/28/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 6/29/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/29/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 6/29/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 6/30/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 6/30/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 7/3/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.6 | 7/6/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 7/6/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 7/6/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 7/11/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 7/13/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 7/17/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 1 | 7/18/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 7/19/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 3.5 | 7/20/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 7/20/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 7/20/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 7/20/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.5 | 7/20/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 7/20/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 3 | 7/21/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.9 | 7/21/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1.8 | 7/21/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 0.8 | 7/23/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 2.5 | 7/24/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.4 | 7/24/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 2.5 | 7/25/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 3.2 | 7/26/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 7/26/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.4 | 7/27/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 2.5 | 7/27/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 7/27/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 7/28/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 3.5 | 7/28/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 3.3 | 7/31/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.4 | 7/31/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 0.1 | 7/31/2017 | 2b |
| Marquez | Patricio | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 7/31/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1.5 | 7/31/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 1 | 7/31/2017 | 2b |
| Chien | Marsha | Civil Rights Division | General | 10759047 | NWDC | 0.3 | 8/1/2017 | 2b |
| Baker | La Rond | Civil Rights Division | General | 10759047 | NWDC | 2 | 8/1/2017 | 2b |

JM-13725
PRR-2018-0870

# Exhibit 5

| | EXEMPTION SECTION | |
|---|---|---|
| **Reference ID** | **Exemption** | **Explanation of the Exemption** |
| 1 | Accident Investigation Reports (Non-Party-of-Interest) RCW 49.17.260 and RCW 42.56.070(1) | Investigations of industrial catastrophes, hospitalizations for injuries, and fatalities occurring in a workplace are confidential and are only available to parties noted in this state law, which includes the injured worker, the employer, and the family of the deceased worker. |
| 2 | Applicant Information RCW 42.56.250(2) | All applications for public employment, including the names of applicants, resumes, and other related materials and information submitted with respect to an applicant for public agency employment are exempt and shall not be open to public inspection or copying. |
| 3 | Attorney-Client Work Product/Privileged Information RCW 42.56.290 and RCW 5.60.060(2)(a) | Communications between Department of Labor & Industries and the Attorney General's Office for the purpose of gathering information to obtain legal advice or to convey attorney-client communications is confidential and shall not be open to public inspection and copying.   Including, but not limited to records prepared, collected, or assembled in litigation or in anticipation of litigation such as drafts, notes, memoranda, or research reflecting the opinions or mental impressions of an attorney or attorney's agent. |
| 4 | Autopsies or Post Mortems RCW 68.50.105 | Reports and records of autopsies or post mortems are confidential. Only family members, the attending physician, and others noted in this state law may receive copies. |
| 5 | Business Records (Private Employer) RCW 51.16.070(2) | Business records kept by an employer and provided to the agency during an audit, are confidential unless the employer authorizes their release. |
| 6 | Claim File Records and Information Confidential RCW 51.28.070 and RCW 51.36.110(1) | Information contained in the claim files and records of injured workers are confidential and shall not be open to public inspection and copying.  Disclosure of claim records or information obtained by the department of labor and industries is prohibited. |
| 7 | Complainant Information (DOSH) RCW 49.17.110 | Under state law, to protect the identity of an individual who has reported a violation of a workplace law or standard and has asked to remain anonymous, we have redacted all information that could identify them. |
| 8 | Complainant/Witness Information (Non-DOSH) RCW 42.56.240(2) | Information revealing the identity of persons who are witnesses to, victims of a crime or who file complaints with an investigative agency is exempt from release; when  disclosure would endanger any person's life, physical safety, or property. Therefore, we have redacted all information that could identify them. |
| 9 | Confidential License Plate RCW 46.08.066(2) and RCW 42.56.230 (7) | Information that is deemed confidential has been redacted that would identify the use of confidential license plates on other vehicles owned or operated by the state of Washington by any officer or employee of the state for investigative or undercover work of a state law enforcement agency. |
| 10 | Consultation Reports (DOSH) RCW 49.17.250(3) | Employer-requested consultation and training services are confidential and are not open to public inspection or copying. |
| 11 | Contracts RCW 39.26.030 | Bid submissions and bid evaluations are exempt and shall not be open to public inspection and copying, until the agency announces the apparent successful bidder. |
| 12 | Copyright Infringement/Accurint Report U.S. Code, Title 17, Section 501 | This record is being redacted in compliance with federal copyright laws which state in part, that any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity. This includes Accurint Reports from their secured and copyrighted website. |
| 13 | Crime Victim Identifiers RCW 7.68.140 | Information contained in the claim files and records of victims, under the provisions of this chapter, shall be deemed confidential and shall not be open to public inspection and copying. |
| 14 | Deliberative Process/Draft Documents Not Final RCW 42.56.280 | Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated are exempt and shall not be open to public inspection or copying. |
| 15 | Driver's License Numbers/Identicard numbers RCW 42.56.230(7), RCW 9.35.005, and 18 USC 2721(a)(1) | This personal information is exempt from public inspection including an individual's full name and ID numbers which coincide with personal information from State motor vehicle records |
| 16 | Employment test and interview questions and answers RCW 42.56.250(1) | Employment and licensing test questions, scoring keys and other information used to license, employ, or academically test, are exempt and shall not be open to public inspection and copying. |
| 17 | Family Medical Leave Act (FMLA) RCW 49.78.300(2)(b) | It is unlawful for any person to provide any information in connection with any inquiry or proceeding relating to the rights provided under the Family Medical Leave Act chapter. |
| 18 | Financial Account Information RCW 42.56.230(5) | Credit card numbers, debit card numbers, bank account numbers, card expiration dates, passwords, social security numbers and other bank and financial information are exempt and shall not be open to public inspection or copying. |
| 19 | Health Care Provider Residential Address & Phone Number   RCW 42.56.350(2) | The residential address and telephone number of a health care provider maintained in agency files are exempt and shall not be open to public inspection or copying. |
| 20 | Insurance and Financial Institutions RCW 42.56.400 and RCW 7.68.110 | Information maintained by the board of industrial insurance appeals concerning employers as parties to any settlement, appeal, or other action are exempt and shall not be open to public inspection or copying. |
| 21 | Invasion of Privacy RCW 42.56.050 | Information in this document is exempt from disclosure and shall not be open to public inspection and copying to protect an individual's right to privacy. |
| 22 | Investigations – Pending (DOSH) RCW 42.56.240(1) | Pending investigations are confidential from release until the investigation is finalized. |
| 23 | Labor Information – Statistical Data RCW 43.22.290 | Information gathered for reports by the department for the purpose of compiling labor statistics shall be deemed confidential and no use shall be made of the names of individuals, firms, or corporations supplying the information therefore not open to public inspection and copying. |
| 24 | Law Enforcement Reports RCW 42.56.240(1) | Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies is confidential. |
| 25 | Medical Records – Health Care Information RCW 42.56.360(2), RCW 70.02.005(4) & RCW 70.02.020 | Personal health care records and patient information are exempt from public disclosure and shall not be open to public inspection or copying. |
| 26 | National Provider Data Bank (NPDB) 45 CFR 60.15 | All information in the National Provider Data Bank (NPDB) is considered confidential and shall not be open to public inspection and copying per federal regulations. |
| 27 | Network Security Records RCW 42.56.420(4) | Information regarding telecommunication or computer network security information, such as passwords or security access codes, are exempt and shall not be open to public inspection or copying. |
| 28 | Non-Conviction Data RCW 10.97.060 | These records contain criminal history record information which consists of non-conviction data, which by law, is confidential and shall not be open to public inspection or copying. |

# Exhibit 6

**Rodriguez, Lisa L (LNI)**

| | |
|---|---|
| **From:** | Fellin, Tammy (LNI) |
| **Sent:** | Monday, September 18, 2017 6:27 PM |
| **To:** | Leland, Maggie (LNI); Sacks, Joel (LNI) |
| **Subject:** | Fwd: ATTORNEY-CLIENT PRIVILEGED - NWDC Memo |
| **Attachments:** | 2017-09-18--Attorney Client Privileged NWDC Memo.docx; ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** "Baker, La Rond (ATG)" <LaRondB@ATG.WA.GOV>
> **Date:** September 18, 2017 at 6:08:16 PM PDT
> **To:** "Fellin, Tammy (LNI)" <felu235@LNI.WA.GOV>
> **Subject: ATTORNEY-CLIENT PRIVILEGED - NWDC Memo**
>
> Tammy,
>
> If you have any questions or would like to discuss this further please do not hesitate to give me a call.
>
> Thank you,
> La Rond Baker
> Assistant Attorney General
> Wing Luke Civil Rights Unit
> Office of the Washington Attorney General
> 800 Fifth Avenue, Suite 2000
> Seattle, WA  98104
> 206.516.2999
> 206.464.6451 (fax)

1