The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>     Defendant. | CIVIL ACTION NO. 3:17-cv-05806-RJB<br><br>STATE OF WASHINGTON'S REPLY IN SUPPORT OF MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS<br><br>NOTE ON MOTION CALENDAR:<br>September 4, 2020 |

REPLY IN SUPPORT OF STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# I. INTRODUCTION

Nothing in GEO's belated opposition cures the fact that GEO has withheld responsive, non-privileged financial discovery for years, notwithstanding orders of this Court and the Ninth Circuit. GEO's own calculations of the value of work detainees perform at the NWDC is financial information Washington has long sought. GEO again seeks to avoid producing th information by accusing Washington of delay, downplaying the testimony of its own Chief Financial Officer (CFO), whom GEO disclosed for the first time six months after discovery closed, and asserting the information is not relevant or responsive to Washington's requests for all documents containing "valuation of the work performed [in] the Voluntary Work Program at the NWDC from 2005 to present" or "per diem rate calculations and models" involving the VWP and labor costs at the NWDC. Because good cause exists for Washington's motion, the Court should once again order GEO to produce the requested financial documents: GEO's underlying financial calculations of the value of detainee work at the NWDC and a partially un-redacted form of GEO's Letter to ICE in which those calculations were disclosed.

# II. ARGUMENT

**A. New Evidence Obtained in CFO Brian Evans' Deposition Constitutes Good Cause**

GEO's primary response is to blame Washington for the timing of this dispute, ECF No. 401 at 3, 5, 6, 8-9, and ignore that GEO had been ordered to produce this financial information long ago. *See* ECF No. 133; ECF No. 296; ECF No. 336. There is good cause for the Court to consider Washington's motion now because new evidence was revealed in the recent court-ordered deposition of GEO's late-disclosed witness, CFO Brian Evans.[1] *See* ECF No. 396 at 6-8. *See also* Fed. R. Civ. P. 16(b)(4); *Jasnosz v. J.D. Ott Co.*, No. C09-09552JLR, 2011 WL 3563345, at *3 (W.D. Wash. Aug. 12, 2011) (new evidence is good cause to modify schedule).

In Mr. Evans' June 2020 deposition, Washington first learned of the CFO's personal

---

[1] Since GEO had not disclosed Mr. Evans as a person with knowledge until the parties' exchanged pretrial statements more than six months after discovery closed, the Court ordered that Mr. Evans could only be named as a trial witness if Washington was given a chance to depose him. ECF No. 396 ¶ 22, Ex. J at 9:25-10:7.

involvement in conducting a financial analysis relevant to Washington's unjust enrichment claim. Previously, GEO had failed to disclose that the calculations existed and obfuscated the truth of what was redacted when Washington independently discovered the existence of GEO's Letter to ICE and produced it to GEO near the close of discovery.[2] ECF No. 396 at 3-5; ECF No. 171. GEO had represented that GEO's Letter to ICE only "estimates legal costs for defending various lawsuits," and that the redacted portion of the letter at issue here was not GEO's own analysis, but "a summary of the relief *requested by Plaintiffs* (in the aggregate)." ECF No. 396 at 4; ECF No. 397 ¶ 15, Ex. F (emphasis added). Washington could not test these representations, as GEO had failed to disclose Mr. Evans during discovery. ECF No. 357 at 17.

In deposition, Mr. Evans directly contradicted GEO's prior representations that GEO's Letter to ICE contained no relevant information. *First,* Mr. Evans testified that he, and the team he supervised, calculated the value of detainee labor at the NWDC and the two other facilities with detainee labor claims; they calculated the amount it would cost if the work now done by detainees for $1 a day "was all done by civilian employees," paid at prevailing wage. ECF No. 397 ¶ 23, Ex. K at 114:19-117:7; 101:20-23; 116:3-117:7; 117:21-118:22. In particular, Mr. Evans' financial analysis considered what it would take, in a facility of the size of the NWDC, to employ full-time workers from the community to conduct the work presently done in the VWP by detainees, and applied wage determination job descriptions and rates to that work. *Id.* at 110:8-113:16. *Second*, Mr. Evans testified that this financial analysis was included in GEO's Letter to ICE, which GEO's Chief Executive Officer communicated to ICE as the cost of complying with Plaintiffs' detainee wage demands, *id.* at 114:19-116:2, following the sentence: "We have conducted an estimation of the costs necessary to achieve compliance with the plaintiffs." *Id*. at 116:14-117:3. *Third,* Mr. Evans clarified that the redacted content includes data

---

[2] GEO notes that the FOIA document has Bates Stamp numbers from 2018, falsely implying Washington possessed the document for a year before production. ECF No. 401 at 9 n.8. As explained before, Washington did not itself make the FOIA request, but provided GEO's Letter to ICE to GEO on June 4, 2019 after receiving it from a third party, and produced the full set of FOIA documents within the discovery period. ECF No. 397 ¶¶ 5, 7.

1 for the three facilities facing litigation, including the NWDC. *Id*. at 116:14-117:3.

2     On August 3, 2020, after receiving the deposition transcript to confirm this new evidence, Washington revived its request for a partially un-redacted copy of GEO's Letter to ICE and the underlying financial calculations. ECF No. 397 ¶ 24, Ex. L. At the LCR 37 conference on August 7, 2020, GEO again refused to produce the documents and, for the first time, asserted privilege. ECF No. 397 ¶¶ 25-28. Washington filed its motion less than two weeks later.

    Mr. Evans' testimony confirms that GEO withheld responsive discovery previously ordered to be produced and directly contradicts GEO's prior representations in LCR 37 conferences upon which Washington relied to hold off in seeking a motion to compel. *See* ECF No. 396 at 5; ECF No. 397 ¶ 20. Good cause exists to consider Washington's motion now.

**B.     GEO's Calculations Are Relevant to Washington's Unjust Enrichment Claim**

    Having shown good cause, the Court should order GEO to produce the partially un-redacted GEO's Letter to ICE and its underlying financial analysis because they are relevant to Washington's unjust enrichment claim, are responsive to Washington's discovery requests, and should have been produced in accordance with the Court's prior orders. *See* ECF No. 133; ECF No. 296; ECF No. 336. GEO's arguments that the redacted analysis in GEO's Letter to ICE "is not relevant to the State's (discovery) requests," "is based upon a *hypothetical cost* if litigation nationwide were to be successful," *see* ECF No. 401 at 8 (emphasis added), and that there was no "valuation of work performed" by detainee workers, ECF No. 401 at 10, are meritless.

    *First*, GEO concedes its CFO's admission that "there was some analysis done at some point regarding. . . advising the government on the cost of what the labor would look like, potentially, if it was all done by civilian employees." ECF No. 401 at 7. As such, GEO cannot escape the fact that it that undertook a financial analysis of the market value of detainee work performed in the VWP from the perspective of calculating the *replacement cost* of that work were it to be done by civilian employees paid prevailing wages. This analysis is an element of Washington's unjust enrichment claim, as well as the fair market value approach to calculating

REPLY IN SUPPORT OF STATE OF WASHINGTON'S MOTION TO COMPEL PARTIALLY UNREDACTED LETTER AND RELATED FINANCIAL CALCULATIONS

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  its remedy. *Young v. Young*, 191 P.3d 1258, 1262, 1265 (Wash. 2008). Further, the financial analysis is responsive to Washington's discovery. *See, e.g.,* ECF No. 133 at 9-10 (RFP No. 43 requires GEO to produce "documents that contain financial analysis, financial models, … and valuation of the work performed, or other assessments of the VWP at the NWDC.")

*Second*, GEO's suggestion that the analysis is only "hypothetical" should also fail. ECF No. 401 at 10. Mr. Evans testified that the financial calculations done in 2018 involved an adjusted model of the per diem rates GEO would charge ICE if detainee workers were replaced with civilian employees. ECF No. 397 ¶ 23, Ex. K at 102:19-23. The Court has compelled GEO to produce all documents related to "per diem rate calculations and models related to GEO Group's NWDC Contract(s) from 2005 to the present, including . . . 'Voluntary Work Program' costs and expenses; labor costs and payroll expenses (excluding Voluntary Work Program)". ECF No. 133 at 10 (RFP No. 52, as modified). Therefore, while these revised per diem rate calculations have not been implemented, they have been calculated, and should be produced.

*Finally*, GEO attempts to avoid its discovery obligations by asserting that the redacted portion of GEO's Letter to ICE contains only aggregated data not delineated by facility. *See, e.g.,* ECF No. 401 at 3-4, 8. Even if true, that financial information, and how GEO calculated it, is relevant because the aggregated data *contains* the NWDC data GEO has been ordered to produce regarding valuation of detainee labor and per diem rate calculations and models. The Court should compel it, as well as the financial calculations related to the NWDC itself.

**C.     The Court Has Not Excluded GEO's Calculations of the Value of Detainee Labor**

GEO also stretches the Court's Orders regarding GEO's motions in limine (MIL) in an attempt to gloss over its own discovery failure. GEO's MIL No. 3 sought to exclude all evidence of GEO's attorneys' fees and costs of litigation. ECF No. 355 at 6. Washington did not oppose the request regarding fees and costs, ECF No 361 at 6-7, and the Court granted GEO's MIL No. 3 "for exclusion of evidence related to GEO's legal fees, including any request for compensation for legal fees sent to ICE." *See* ECF No. 374; ECF No. 397 ¶ 21, Ex. J at 11:3-5. The Court did

REPLY IN SUPPORT OF STATE OF
WASHINGTON'S MOTION TO COMPEL
PARTIALLY UNREDACTED LETTER AND
RELATED FINANCIAL CALCULATIONS

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

not, however, exclude evidence related to GEO's calculations of the value of work performed. *Id*. Washington raised concern that GEO may try to use this ruling to exclude otherwise relevant evidence, such as GEO's Letter to ICE, *see* ECF No. 361 at 6-7, but the Court did not reach that, stating it "[didn't] know what kind of side issue that might be, but it is not something that we need to get into." ECF No. 397 ¶ 21, Ex. J at 11:5-8. Similarly, GEO's MIL No. 5, to exclude evidence that GEO is involved in other lawsuits, was presented by GEO without mention of GEO's Letter to ICE. *See* ECF No. 355 at 8. Again, the Court granted the general motion, subject to offers of proof, without reaching this dispute. ECF No. 397 ¶ 21, Ex. J at 11:23-25. In short, the Court has never ruled on the admissibility of GEO's underlying financial calculation to come into compliance with Plaintiffs' fair wage demands or the portion of GEO's Letter to ICE at issue here. ECF No. 397 ¶ 21, Ex. J at 11.

### D. No Privilege Exists for Financial Calculations GEO Provided to ICE

GEO has not established any privilege to bar production of a partially un-redacted version of GEO's Letter to ICE or the underlying financial calculations. GEO admits it did not previously claim this information as privileged or provide a privilege log; it merely says it had no such obligation. ECF No. 401 at 10. GEO nonetheless attempts to avoid the glaring absence of a necessary element for all claims of privilege—the work product or communications of an attorney—by claiming GEO's Letter to ICE is "a letter to ICE, its client, with whom it discussed this lawsuit." ECF No 401 at 11. While the financial calculations may have been generated because of a communication between GEO's counsel and its CFO, and the content of those conversations may be privileged, *cf.* ECF No. 401 at 13, the calculations are not. Work-product privilege does not allow withholding of "relevant and non-privileged facts [that] remain hidden in an attorney's file." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). And when GEO *disclosed* the calculations to ICE, a third party, it lost any alleged privilege. *See* ECF No. 396 at 10-12.

The cases GEO cites to evoke the work product privilege, and sidestep its disclosure to a third party, are unpersuasive. Instead, they affirm that protected work product be of an *attorney*

REPLY IN SUPPORT OF STATE OF
WASHINGTON'S MOTION TO COMPEL
PARTIALLY UNREDACTED LETTER AND
RELATED FINANCIAL CALCULATIONS

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  prepared "in anticipation of litigation" and that the disclosure be to *seek legal advice*. *See, e.g.,*
2  *Hausman v. Holland Am. Line-U.S.A.*, No. CV11-1308 BJR, 2015 WL 8327934, at *1 (W.D.
3  Wash. Dec. 9, 2015) ("work-product doctrine … serves to protect written materials that lawyers
4  prepare in anticipation of litigation") (quotation omitted); *In re Superior Nat'l Ins. Grp.*, 518
5  B.R. 562, 577 (Bankr. C.D. Cal. 2014) (common interest in bankruptcy preserves privilege if
6  "sharing was necessary to accomplish the privilege holder's purpose in seeking legal advice");
7  *Microban Sys., Inc. v. Skagit Nw. Holdings, Inc.*, No. C15-932-MJP, 2016 WL 7839220, at *1
8  (W.D. Wash. Aug. 17, 2016) (common interest over attorney opinion and advice pursuant to
9  confidentiality agreement). GEO fails to prove the calculations were *attorney* work product,
10 prepared in anticipation of litigation, or shared to seek legal advice with the expectation of
11 confidentiality. Instead, GEO's letter and calculations were a business strategy to notify ICE of
12 GEO's future contract position if litigation fails, ECF No. 401 at 13, and GEO's one-way effort
13 to plea for ICE's involvement. *Id*.

     GEO also fails to establish evidence of a common defense strategy required to invoke the common interest doctrine, which allows "attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018). This privilege fails at the outset because there is no communication between an *attorney* and a party with a common interest. Also, contrary to GEO's assertion, ECF No. 401 at 11, the Court's prior rulings are *consistent* with binding authority cited by Washington that common interest communications must be in accordance with an agreement or joint defense strategy. ECF No. 243 at 6-7; ECF No. 396 at 10. GEO's privilege fails for lack of evidence of a joint strategy in accordance with a written or unwritten agreement between GEO and ICE in May 2018.

### III.  CONCLUSION

     For the foregoing reasons, Washington requests that the Court order GEO to produce a partially un-redacted version of the GEO Letter to ICE and its underlying financial calculations.

REPLY IN SUPPORT OF STATE OF
WASHINGTON'S MOTION TO COMPEL
PARTIALLY UNREDACTED LETTER AND
RELATED FINANCIAL CALCULATIONS

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    Dated this 4th day of September 2020.

2                                           Respectfully submitted,

3                                           ROBERT W. FERGUSON
                                            Attorney General of Washington
4

5                                           s/ *Andrea Brenneke*
                                            MARSHA CHIEN, WSBA No. 47020
6                                           ANDREA BRENNEKE, WSBA No. 22027
                                            LANE POLOZOLA, WSBA No. 50138
7                                           PATRICIO A. MARQUEZ, WSBA No. 47693
                                            Assistant Attorneys General
8                                           Office of the Attorney General
                                            800 Fifth Avenue, Suite 2000
9                                           Seattle, WA 98104
                                            (206) 464-7744
10
                                            marsha.chien@atg.wa.gov
11                                          andrea.brenneke@atg.wa.gov
                                            lane.polozola@atg.wa.gov
12                                          patricio.marquez@atg.wa.gov

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 4th day of September 2020 in Seattle, Washington.

CAITILIN HALL
Legal Assistant

REPLY IN SUPPORT OF STATE OF
WASHINGTON'S MOTION TO COMPEL
PARTIALLY UNREDACTED LETTER AND
RELATED FINANCIAL CALCULATIONS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744