| | |
|---|---|
| | The Honorable Robert J. Bryan |

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 3:17-cv-05806-RJB<br><br>STATE OF WASHINGTON'S OPPOSITION TO THE GEO GROUP, INC.'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT WITHOUT FULL PAGE REDACTIONS FOR USE AT TRIAL<br><br>NOTE ON MOTION CALENDAR:<br>September 25, 2020 |

WASHINGTON'S OPPOSITION TO GEO'S
MOTION FOR IN CAMERA REVIEW AND
TO ORDER THE STATE FILE GEO'S
EXHIBIT 231 IN NATIVE FORMAT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## I. INTRODUCTION

GEO's attempt to obtain Washington's privileged and confidential attorney work product should be rejected. Although GEO has known about the so-called "NWDC Memo" since at least April 2019, when Washington disclosed it in a privilege log, GEO only now seeks to compel it because GEO is following through on its litigation threat first-made in January 2020—that it would seek to obtain the NWDC Memo in retaliation for Washington seeking to compel GEO to produce responsive financial information. *See* ECF Nos. 396, 409. There is no good cause or justifiable reason to consider GEO's current motion.

Even if its motion is considered, the NWDC Memo is attorney client privileged and work product in its purest form: It is a legal analysis prepared by Assistant Attorneys General (AAGs), provided internally to other senior attorneys in the Office of the Attorney General (AGO) and to a client of the AGO, the Department of Labor & Industries (L&I), which has authority to enforce the Minimum Wage Act and must consider the same legal issues identified in the NWDC Memo. The Court should deny GEO's attempt to obtain Washington's privileged and confidential legal analysis that is irrelevant to the facts at issue more than a year after discovery ended.

## II. PROCEDURAL BACKGROUND

**A. The Court Repeatedly Rejects GEO's Arguments That Washington's Alleged Political Motivations Are Relevant to Its Defense**

The Court is familiar with this case and its history: Washington seeks a declaration that GEO must comply with the MWA and disgorge its unjust gains from paying detainee workers $1 per day for work performed at the Northwest Detention Center (NWDC). Discovery closed on June 21, 2019, *see* ECF No. 171, and the case is set for a bifurcated trial, pending availability to hold a jury trial on the MWA claim in light of the COVID-19 pandemic, to be followed by a bench trial on Washington's unjust enrichment claim. *See* ECF No. 388.

Throughout the three years of litigation, GEO has repeatedly accused Washington of pursuing a politically motivated enforcement action. *See* ECF No. 10 at 32 (alleging that "[t]he

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  current Attorney General's political interest [is] in anti-Trump rhetoric"); ECF No. 188 at 11 (arguing entitlement to unclean hands where "[t]he State's decision to wait until a claim against GEO was politically beneficial calls into question the State's motivations and ability to recover in equity"). In short, GEO's argument is that Washington's position as to whether the MWA applied to the NWDC changed in 2017 for political reasons and that L&I's differing position in 2014 proves it. *Id.* As part of these efforts, GEO has repeatedly referred the Court to the same set of L&I email communications from 2014 indicating that L&I employees mistakenly determined, in response to a technical question from the Governor's Office and outside advocates, that they would not be able to enforce the MWA as applied to detainees at NWDC. *See* ECF No. 403 at 5; *see* also, ECF No. 131 (attaching 2014 emails from L&I); ECF No. 183 at 8-9 (recapping 2014 emails); ECF No. 188 at 7, 11 (citing same to support unclean hands and laches arguments); ECF No. 300 (attaching 2014 L&I emails).

However, the Court repeatedly and rightfully has refused to consider GEO's arguments regarding Washington's reasons for filing this lawsuit or L&I's prior emails as a defense to Washington's claims. After explicit consideration of the L&I emails, the Court dismissed GEO's defenses of laches and unclean hands, reasoning that, even if L&I did know about GEO's MWA practices in 2014, a three year delay in filing this enforcement action does not defeat Washington's claims. *See* ECF No. 202. Six months later, the Court similarly rejected GEO's attempt to reopen discovery against state agencies, including L&I, based on similar arguments. *See* ECF No. 322, 326. And, finally, in January 2020, the Court granted Washington's motions in limine (MILs) to exclude evidence of the AGO's prosecutorial discretion as well as L&I's prior history of enforcement at the NWDC. *See* ECF Nos. 357, 374; Declaration of Marsha Chien in Support of State of Washington's Opposition to GEO's Motion for In Camera Review (Chien Decl.) ¶ 3, Ex. A at 6:23-7:1 (transcript excerpts of the Apr. 13, 2020 hearing on MILs).

**B.    The NWDC Memo at Issue**

GEO nevertheless seeks the so-called "NWDC Memo" to continue its arguments that

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

this action is politically motivated. ECF No. 403 at 5, 9. AAGs drafted the NWDC Memo, which analyses legal claims and strategy relating to enforcement of the MWA against GEO for work detainees perform while held at the NWDC. Chien Decl. ¶ 4. The NWDC Memo was drafted in the summer of 2017 in anticipation of this litigation, filed shortly thereafter, on September 20, 2017, and in consultation with AAGs that represent L&I. *Id.* ¶ 5. After it was completed, the NWDC Memo was provided to senior officials in the AGO, and three days before the complaint was filed, one of the AAGs litigating this case provided it to Tammy Fellin of L&I. *Id.* ¶ 6, Ex. B. L&I enforces the MWA, is a client of the AGO, and needed to understand the legal analysis supporting MWA enforcement in federal immigration detention centers as the issue had, as GEO repeatedly points out, previously come up in 2014. *Id.* Afterwards, the NWDC Memo was used by L&I employees tasked with enforcing the MWA to understand their ability to enforce the MWA against GEO. *See* ECF No. 300 at 101; *see* Chien Decl. ¶ 7, Ex. C (Grice Dep.) at 91:4-6, 98:18-25, 99:23-100:1 (recognizing that the NWDC Memo provides legal advice as to how the MWA may apply at the NWDC and that L&I staff utilized that advice in 2018 when considering issues related to MWA enforcement at NWDC).

GEO now seeks to compel the NWDC Memo, wildly assuming that it was drafted "to convince the . . . media and the public why the AG should take it upon himself to sue GEO using public resources." ECF No. 403 at 11. Not so—and GEO knows it. Washington provided a privilege log to GEO on April 26, 2019, Chien Decl. ¶ 8, Ex. D. The documents Washington listed on its log included, among others, internal communications between AAGs within the AGO regarding the legal analysis on issues in this case for more than one month before this case was filed, including not only AAGs from the Civil Rights Division, but AAGs who regularly advise L&I, as well. Additionally, the privilege log specifically identified the NWDC Memo and email between AAG La Rond Baker and Tammy Fellin of L&I that is the subject of GEO's motion.[1] *See id.* (privilege log sent Apr. 26, 2019).

---

[1] The log inadvertently identified the documents as being dated 9-19-2017 rather than 9-18-2017.

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

After receiving the privilege log, GEO followed up with Washington's counsel raising perceived concerns with the privilege log and other agency discovery issues, including questions seeking additional information about the log entries for the NWDC Memo and associated emails. *See* ECF No. 216-9 (May 14, 2019 letter from S. Armstrong to L. Baker) at 2-3. In response, on May 20, 2019, Washington clarified that the privilege log entries GEO asked about referred to "legal memos regarding the Northwest Detention Center that were drafted by Assistant Attorneys General, provided to leadership in the Attorney General's Office, housed in the shared drive of the Attorney General's Office and withheld on the basis of attorney-client privileged." ECF No. 216-11 (May 20, 2019 letter from L. Baker to S. Armstrong).

Shortly after, on May 24, 2019, GEO moved to compel discovery related to L&I, including certain challenges to Washington's common interest entries on its privilege logs. ECF No. 215. GEO nowhere identified the NWDC Memo in that motion or challenged Washington's privilege designation, despite having Washington's privilege log and discussing the specific entries for the NWDC Memo before filing. *Id.*; Chien Decl. ¶ 9. Washington opposed the motion, arguing the information requested, including Washington's interpretation of federal and/or state wage laws, was not responsive to any RFP GEO had issued and not relevant. ECF No. 219 at 8. The Court agreed and denied GEO's motion, recognizing that GEO "failed to identify a specific response for production to which the State did not respond" and finding that GEO failed to demonstrate that the requested discovery was relevant and proportional to the needs of the case. ECF No. 243 at 5-6. Although GEO filed a Public Record Request (PRR) with L&I and obtained a redacted version of the NWDC Memo in August 2019, discovery closed in both this case and the related *Nwauzor* action without GEO raising the NWDC Memo again.

C. **GEO's Reasons for Seeking to Compel the NWDC Memo Now**

GEO next raised the issue of the NWDC Memo to Washington over six months later on January 17, 2020. As part of communications regarding Washington's request for GEO's Letter to ICE and related financial calculations, GEO asserted, for the first time, a challenge to

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Washington's privilege designations of the NWDC Memo in an attempt to dissuade Washington from filing its own motion to compel. Specifically, GEO's counsel stated, in an email about GEO's financial materials, including the GEO Letter to ICE at issue in Washington's recent motion: "*Please know that should the State file a motion seeking to unredact the letter to ICE, GEO will likewise move to unredact the attached document*." ECF No. 397-9 at 2; *see* Chien Decl. ¶ 10, Ex. E (Jan. 17, 2020 email from GEO counsel, attaching the NWDC Memo as Wonhoff Ex. 263) (emphasis added).

On August 20, 2020, Washington moved to compel GEO to produce its Letter to ICE and the underlying financial calculations upon which it was based. ECF Nos. 396, 405. The Court granted Washington's motion on September 14, 2020, noting that the timing of Washington's motion was "well explained in Plaintiff's pleadings and are justified by the circumstances presented." ECF No. 409 at 2. Two weeks after Washington moved to compel production of this financial information, GEO filed its motion to compel an unredacted NWDC memo. *See* ECF No. 396, 403. Prior to filing the instant motion, GEO did not contact Washington to meet and confer pursuant to LCR 37.

### III. ARGUMENT

Washington respectfully requests that the Court deny GEO's motion. First, GEO was not merely dilatory and its motion is not merely late. The motion was—according to GEO's own counsel—filed not because the information is needed, but solely in response to Washington separately seeking GEO's financial documents. Because it is a retaliatory litigation tactic and GEO does not even attempt to establish good cause for consideration of its belated motion, the Court should deny it summarily. Even if the Court does consider GEO's motion, however, the NWDC Memo GEO seeks is privileged, constitutes attorney work product, and is not relevant. Nothing in GEO's motion warrants an order modifying the case schedule and requiring production of the unredacted NWDC Memo.

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

### A. No Good Cause Exists to Consider GEO's Motion at This Stage of the Case

GEO's motion should be denied because it is untimely and no good cause exists to consider it. A court may, in its discretion, consider a motion out of time for "good cause." Fed. R. Civ. P. 16(b)(4); LCR 16(b)(6). Good cause may exist, as it did in Washington's recent motion to compel, where new evidence is discovered that could not reasonably have been discovered earlier. *See* ECF No. 396. It does *not* exist, however, due to a party's tactical decision to refrain from seeking the relief at issue until years or months later. *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570RSL, 2014 WL 2573290, at *4 (W.D. Wash. June 9, 2014); *see Jasnosz v. J.D. Ott Co.*, No. C09-09552JLR, 2011 WL 3563345, at *3 (W.D. Wash. Aug. 12, 2011) (recognizing lack of good cause where moving party "provided no explanation as to why he had not brought a motion to compel within the time limits provided").

Here, GEO nowhere argues that there is good cause—or any justifiable reason—for the timing of its motion. *Cf.* ECF No. 403. Nor could it: GEO was not diligent in pursing the relief it now seeks. It could easily have filed the instant motion long ago if it believed that it had a basis to obtain the NWDC Memo in discovery. As detailed above, GEO and Washington discussed the privileged nature of the NWDC Memo in May 2019, before the close of discovery. *See* ECF Nos. 216-9, 216-11. Yet, GEO did not challenge the privilege designation of, or seek to compel, the NWDC Memo. Moreover, as GEO's motion makes clear, GEO separately obtained the redacted NWDC memo and accompanying email via PRR to L&I. *See* ECF No. 300 at 101-13 (attaching Wonhoff Ex. 263, marked Aug. 22, 2019). GEO not only used the redacted NWDC Memo and L&I emails at length in depositions of L&I representatives, *see* ECF No. 300 at 50-55, GEO filed a brief making the same accusations against the AGO it now presents here. *See, e.g.*, ECF No. 299 at 11-13 (Sept. 10, 2019); ECF No. 300 at 47 (Sept. 10, 2019) (deposition testimony of L&I representative on Sept. 5, 2019 about NWDC Memo); *see id.* at 101-13. Yet GEO offers no explanation why, despite having the document, knowledge about its basic contents, and a privilege log identifying it as privileged more than a year ago,

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1 | GEO waited until now to file the instant motion.

Although it is clear GEO does not require the unredacted NWDC Memo for its defense, the Court need not guess about why GEO filed the instant motion now. On January 17, 2020, GEO explicitly threatened to bring this motion if, and only if, Washington sought the Court's involvement in requiring GEO to produce relevant and responsive financial information that GEO was withholding. *See* Chien Decl. ¶ 10, Ex. E (GEO's Jan. 17, 2020 email). Since Washington filed its recent and successful motion seeking GEO's financial materials based on newly obtained deposition testimony from GEO's CFO, GEO appears to want to follow through on its threat. GEO's own motion suggests that it was filed not because GEO truly needs the NWDC memo, but is in fact a response to Washington's own motion seeking GEO's financial information. *See* ECF No. 403 at 2 (asking the Court consider its request "should this Court find it appropriate to reopen discovery in response to the State's recently filed motion.").

But Washington's motion did not seek to re-open discovery. Nor did the Court order the re-opening of discovery. The Court limited its order to compelling GEO to produce certain documents no later than September 18, 2020, as a supplement to GEO's prior productions. ECF No. 409 at 2. Unlike the "circumstances presented" in Washington's motion, which warranted relief, *id.*, no new evidence exists to warrant consideration of GEO's untimely motion here. GEO repeatedly made the decision that it did not in fact need the unredacted NWDC Memo. The Court should therefore reject GEO's litigation tactic and deny GEO's motion for lack of good cause.

**B.     The NWDC Memo Is Attorney-Client Privileged and Attorney Work Product**

Even if the Court does consider GEO's motion, Washington respectfully urges the Court to deny it. The NWDC Memo exemplifies the type of document that is protected by the attorney-client privilege and attorney work product protections: It is a legal analysis prepared by Assistant Attorneys General regarding the application of the MWA to detainee work at the NWDC, prepared in anticipation of litigation, and shared with a client agency to provide legal advice and inform their dual enforcement of the MWA.

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1. **The NWDC Memo Is an Attorney-Client Privileged Communication**

Attorney-client privilege protects confidential communications between an attorney and client for the purposes of obtaining legal advice. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends[.]" *Id.* As such, the attorney-client privilege protects the "two-way street" of confidential communications between attorneys and clients, *United States v. Bauer*, 132 F.3d 504, 507-08 (9th Cir. 1997), and necessarily includes communications containing "an attorney's advice." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) ("[I]t is widely accepted that the privilege encompasses not only (qualifying) communications *from* the *client* to her attorney but also communications *from* the *attorney* to her client in the course of providing legal advice.").

As relevant here, the attorney-client privilege extends to governmental agencies and government employees who receive advice from government lawyers,[2] where the government shows that the "documents involved the provision of specifically legal advice or that they were intended to be confidential and were kept confidential." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1086-87 (N.D. Cal. 2015) (citations omitted). The privilege applies when legal advice is sought or provided "from a professional legal advisor in [her] capacity as such." *Chen*, 99 F.3d at 1501. A government agency's legal analysis memoranda, and the legal advice contained within it, "embody the quintessential type of attorney-client communications meant to be protected by the attorney-client privilege."

---

[2] GEO's citation to the Rule of Professional Conduct 1.13(h) to suggest otherwise is inapposite. *See* ECF No. 403 at 8. RPC 1.13(h) identifies the government client for lawyers who are not a public officer or employee. All of the AAGs referenced here are public officers or employees.

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*CP Salmon Corp. v. Pritzker*, 238 F. Supp. 3d 1165, 1174 (D. Alaska 2017). "To conclude otherwise would only serve to chill agency attorneys from providing candid advice to agency decision-makers for fear that anything they communicate in an internal legal memorandum would later be subject to disclosure." *Id.*

In the Ninth Circuit, an eight-part test establishes attorney-client privilege:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Washington meets each of these elements establishing the NWDC Memo as an attorney-client privileged communication.

*First*, the NWDC Memo conveys legal advice: It is a legal analysis prepared by AAGs regarding enforceability of the MWA as applied to the NWDC. *Second*, the advice was prepared by AAGs assigned to the Civil Rights Division, in consultation with AAGs assigned to the L&I Division, all of whom are attorneys acting in their official capacities on behalf of the State. *See* Chien Decl. ¶ 8; Ex. D (privilege log documenting CRD AAGs communications re: NWDC Memo in August 2017 with James Mills, L&I AAG). *Third*, the NWDC Memo relates to, and contains, legal advice regarding the application of the MWA to detainee labor at the NWDC, communicated to L&I given the agency's enforcement work. Chien Decl. ¶¶ 5-6. *Fourth*, the information conveyed in the NWDC Memo was made in confidence, as evidenced by the privilege notice on the Memo, in the file name of the document, and in the accompanying notice of privilege and confidentiality in the transmission email. *See* ECF No. 403 at 17; Chien Decl. ¶ 6 (showing the NWDC Memo is marked "ATTORNEY CLIENT PRIVILEGED COMMUNICATIONS" and "CONFIDENTIAL"). *Fifth*, the communication is from an AAG in the Attorney General's Office and was provided to one of its client agencies, L&I. ECF No. 403 at 17; Chien Decl. ¶ 5-6. *Sixth*, the client agency has asserted that the NWDC Memo is protected by the attorney-client privilege and redacted it in response to a PRR. *See* ECF No. 403

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

at 17-28. *Seventh*, the attorney-client privilege is, therefore, claimed by both the legal advisors, the AAGs, on the privilege log, and by the client, L&I, through its redactions and in response to a PRR. *Id*. *Eighth*, and finally, the privilege has not been waived: L&I used the NWDC Memo internally when using it to determine how to consider certain complaints, and neither L&I nor the AGO have waived the privilege by sharing it outside the agency.

GEO nevertheless asserts the attorney-client privilege never existed, or has been waived by AAGs providing the legal advice memo to a client agency, L&I, without establishing any evidence that the AAGs or L&I shared it with a third party.[3] ECF 403 at 10. Sharing attorney-client communications with an outside third party "destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). Here, the NWDC Memo retains its privilege, because it was provided in confidence, marked "attorney-client privileged," and that privilege has been maintained by both the AGO and L&I thereafter, even in response to PRRs. *See Martin*, 278 F.3d at 999; *cf. United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009) (communications were not "made in confidence," but for the purpose of disclosure to outside auditors); *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (communication related to appraisal and value of easement and for submission to the IRS was not made for the purpose of providing legal advice). As a legal matter, there also is no possibility of waiver, as lower level employees cannot waive the attorney-client privilege. "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by

---

[3] Even if the Court concluded that the specific AAGs that drafted the NWDC Memo waived attorney-client privilege in disclosing it to L&I, the memo is still protected under the common interest doctrine, which is an exception to waiver and allows "attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Here, there is an on-going and joint effort between AAGs in the Civil Rights Division and L&I Divisions of the AGO to develop a common legal strategy regarding enforcement of the MWA at the NWDC. Indeed, as shown by L&I's PRR responses to GEO's request, all AAGs and the L&I staff involved agreed to hold all the legal strategy contained in the NWDC Memo confidential. Contrary to GEO's assertions otherwise, *see* ECF No. 403 at 10-11, *Sanders v. Washington* directly supports application of the common interest doctrine here. 240 P.3d 120, 127, 133-34 (Wash. 2010) (concluding AGO could claim documents were privileged "even if it shared them with other agencies" under the common interest doctrine).

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

its officers and directors." *Chen*, 99 F.3d at 1502 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). Finally, GEO's "sword-shield" argument is similarly unpersuasive. Washington has *not* put its own legal advice at issue and does *not* rely on the memo to prove its claims. To the contrary, GEO, and only GEO, seeks to use the NWDC Memo so that it can argue this enforcement action is "politically motivated." *See* ECF No. 403 at 9.

### 2. The NWDC Memo Is Attorney Work Product

The "work product doctrine is a 'qualified privilege' that protects 'certain materials prepared by an attorney acting for his client in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *United States v. Nobles*, 422 U.S. 225, 237-38 (1975)). Here, GEO effectively admits that the document it seeks is work product privileged as it recognizes the AAGs prepared the NWDC Memo in anticipation of litigation. ECF No. 403 at 8-10. GEO seeks the NWDC Memo anyway, claiming it is in search of "similar facts" between the 2014 and 2017 analysis. *Id.* GEO's argument is misplaced. While the work-product privilege does not allow withholding of "relevant and non-privileged facts [that] remain hidden in an attorney's file," *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), GEO has provided no evidence that there are any such facts here, as the NWDC Memo is pure legal analysis prepared by attorneys in anticipation of litigation.

Even if the Court found the attorney-client privilege was waived by providing it to a client agency, which it should not, "[o]ne may waive the attorney-client privilege without waiving the work product privilege," because "[t]he work product rule is not based on the confidentiality of the attorney-client relationship, and it does not disappear when the balloon wall of confidentiality is breached unless the breach 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 661 (D. Nev. 2007) (citing Charles A. Wright et al., *Federal Practice and Procedure: Civil* § 2024, 369 & n.52 (2d ed. 1994)); *see also In re EchoStar Commc'ns*,

STATE OF WASHINGTON'S OPPOSITION
TO GEO'S MOTION FOR IN CAMERA
REVIEW AND TO ORDER THE STATE TO
FILE GEO'S EXHIBIT 231 IN NATIVE
FORMAT

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

448 F.3d 1294, 1301 (Fed. Cir. 2006) ("work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege"). As such, the NWDC Memo is work product and it should not be disclosed.

### C. The NWDC Memo Is Neither Relevant nor Responsive

Finally, even if GEO's motion was not procedurally barred and the NWDC Memo was not privileged, the NWDC Memo is not responsive to RFPs GEO issued nor relevant, and if GEO uses it as it says it intends to, will contravene the Court's Orders on Washington's MILs.

*First*, GEO fails to identify a discovery request to which the NWDC memo was responsive and therefore that it should have ever been produced at all. Indeed, this is the same problem with GEO's demands the Court cited the last time it denied GEO's attempt to compel documents related to the "State's assessment of federal and/or state law as it relates to the operation of work programs, including the use of contractors." *See* ECF No. 243 at 5-6 (denying GEO motion to compel additional state agency documents from L&I). *Second*, as the Court held previously, discovery about the State's assessment of federal and/or state law as it relates to the operation of work programs is not relevant and is not proportional to the needs of the case. *Id*. The NWDC Memo nowhere bears on GEO's practices as a factual matter, and it was not communicated to GEO such that GEO could have relied on it in determining whether to pay detainees $1 or more for the work they perform. Indeed, the memo is no more relevant to the claims as "evidence" than the briefs filed on the docket in this case. *Third*, the Court has already barred GEO from presenting evidence or argument regarding the State's prosecutorial discretion, including GEO's assertions that this case is politically motivated, and L&I's prior history of enforcement at the NWDC. *See* ECF No. 357 at 1-4, 10; Chien Decl. ¶ 3, Ex. A (orders on MILs No. 1 and 5). There is no need for GEO to present the unredacted NWDC Memo to argue that which is barred, as GEO proposes in its motion. *See* ECF No. 403 at 5, 9.

### IV. CONCLUSION

For the foregoing reasons, Washington requests that the Court deny GEO's motion.

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Dated this 21st day of September 2020.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington


s/ *Andrea Brenneke*
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO A. MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 21st day of September 2020, in Seattle, Washington.

*[signature]*
CAITILIN HALL
Legal Assistant

STATE OF WASHINGTON'S OPPOSITION TO GEO'S MOTION FOR IN CAMERA REVIEW AND TO ORDER THE STATE TO FILE GEO'S EXHIBIT 231 IN NATIVE FORMAT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744