The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
|---|---|
| Plaintiff, | STATE OF WASHINGTON'S RESPONSE TO GEO'S MOTION FOR RECONSIDERATION OF ORDER (ECF No. 409) |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | NOTE ON MOTION CALENDAR: October 22, 2020 |

STATE OF WASHINGTON'S RESPONSE TO
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## I. INTRODUCTION

The Court should reject GEO's seventh motion for reconsideration and reaffirm its order that GEO produce (1) a partially unredacted form of GEO's Letter to ICE, and (2) GEO's underlying calculations of the value of detainee work at the NWDC. The Court rightly and squarely found that "the subject material is within the scope of discoverable information" and that "[d]efendant has not established any privilege protecting the subject material from disclosure." ECF No. 409 at 1. Nothing in GEO's motion for reconsideration, ECF No. 419, adds any newly discovered evidence or legal authority that could not have been submitted earlier, let alone reveals manifest error in the Court's rulings. *See* LCR 7(h). GEO merely disagrees with the Court's conclusion and again tries to justify its continued withholding of documents in defiance of court orders. The Court should deny GEO's motion.

## II. ARGUMENT

Motions for reconsideration are "disfavored" and will ordinarily be denied absent a showing of "manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCR 7(h)(1); *see also Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir.2009). Manifest error is a "plain and indisputable" error that amounts to a "complete disregard of the controlling law or the credible evidence in the record." *Casteel v. Charter Commc'ns Inc.*, No. C13-5520 RJB, 2014 WL 6751219, at *1 (W.D. Wash. Dec. 1, 2014). As the Court has recognized, "[r]econsideration is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.* (citation omitted). Reconsideration is not a proper method to seek a "second bite at the apple"—particularly when based on "evidence and legal arguments that could have been presented at the time of the challenged decision." *Id.*

Here, GEO's motion is just that. In its original response brief, GEO challenged Washington's motion to compel by arguing that Washington could not establish good cause and

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1 | that its financial documents were protected by the common interest privilege. GEO argued that it had a "shared commercial interest with ICE," and as part of its obligations in dealing with ICE, "GEO sought legal assistance from ICE" and provided an assessment of costs for replacing detainee labor "so that ICE could make an informed decision about taking on the defense of this case." ECF No. 401 at 13. Having failed to convince the Court that its financial documents were protected under the common interest doctrine, GEO now seeks reconsideration by arguing: (1) the Court erred by "not addressing" the work product doctrine; (2) the Court "disregarded" the testimony of Brian Evans, GEO's CFO, and controlling law that GEO did not cite; and (3) the Court erred by "not addressing the issues before it" because the Court cited Federal Rule of Civil Procedure 26(e) as the basis for ordering GEO to produce the requested financial documents.[1] ECF No. 419 at 2-7. In these arguments, GEO fails to raise new evidence or authority that it could not have presented earlier, submits a new declaration that should be stricken, and fails to identify any error, much less manifest error, in the Court's ruling.

A. **The Court Properly Addressed GEO's Arguments Based on Review of the Record**

The Court correctly found that "Defendant has not established any privilege protecting the subject material from disclosure." ECF No. 409 at 1. In its motion, GEO nonetheless claims the Court erred by "not addressing the work product doctrine with specificity." ECF No. 419 at 2. GEO also argues the Court "failed to consider credible evidence in the record," and "disregarded Brian Evans' testimony that the calculations were part of privileged conversations and work product—failing to even mention his testimony." ECF No. 419 at 2.

GEO's argument does not identify manifest error. For one, the case GEO cites, *United States v. Sanmina Corp.*, nowhere articulates a requirement that courts must include specific findings in their discovery rulings. *See* 968 F.3d 1107, 1120 (9th Cir. 2020). Moreover, contrary to GEO's suggestions, the Court's Order stated that all arguments were considered,

---

[1] Notably, the Court ordered to produce these documents on or before October 2. ECF No. 415. GEO still has not produced them and, without seeking or obtaining a stay, again simply ignores the Court's order.

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

explicitly noting its review and familiarity "with documents filed in support of and in opposition to the motion." ECF No. 409 at 1. Further, the Court specifically relied on the testimony of Mr. Evans as a basis for its order that GEO produce "[t]he underlying financial calculations, spreadsheets and analysis of the information included in GEO's Letter to ICE . . . *as testified to by Brian Evans, CFO.*" ECF No. 409 at 2 (emphasis added). Nothing about the form of the Court's Order demonstrates "manifest error" warranting reconsideration.

**B.     The Court Properly Concluded That No Work Product or Privilege Applies**

GEO's motion also fails to identify any "manifest error" as to the Court's substantive ruling because (1) GEO did not establish that the work product doctrine applies at all, and even if it had, (2) GEO waived that protection. The Court did not commit "manifest error."

**1.     The Documents at Issue Are Not Attorney Work Product**

To be protected under the work product doctrine, documents must meet a two part test: be "prepared in anticipation of litigation or for trial," and be prepared "by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3)(A); *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case" and "rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). "The primary purpose of the work-product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *See Sanmina Corp.*, 968 F.3d at 1119 (citing *Admiral Ins. Co. v. U.S. Dist. Court of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). Therefore, even if GEO's attorneys requested CFO Brian Evans to undertake certain financial calculations, ECF No. 419 at 3, to benefit from the work product protections, GEO also would have to establish that the calculations were "prepared in anticipation of litigation or for trial" against Washington, which GEO has failed to do. Fed. R. Civ. P. 26(b)(3)(A).

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

While it previously focused on the common interest doctrine, ECF No. 401, GEO now concedes the letter and financial calculation documents had non-litigation purposes but nonetheless asserts that they are protected from disclosure by claiming they are protected as "dual purpose documents," i.e., that they were produced both in anticipation of litigation and to satisfy separate business purposes. ECF No. 419 at 2 (citing *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)). GEO did not previously make that argument or cite the "controlling law" (*Grand Jury Subpoena*) it now says the Court ignored, *cf.* ECF No. 401, and that alone should result in denial of GEO's motion.

"Dual purpose" documents may retain work product protection against disclosure of attorney mental processes if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *Grand Jury Subpoena*, 357 F.3d at 907 (emphasis added). The "because of" standard "considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *Id*. at 908 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). It applies to documents where "*their litigation purpose* so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *Id*. at 910 (emphasis added).

In contrast to *Grand Jury Subpoena* and the *Adlman* case cited therein, there is no evidence the redacted portion of the GEO Letter to ICE and the underlying financial calculation were done "because of litigation," reveal any attorney legal advice or mental impressions, or were produced at the direction of the attorney as a part of GEO's litigation defense. *Cf. Grand Jury Subpoena*, 357 F.3d at 909 (Investigator/environmental consultant directed to assess liability and prepare document as part of litigation defense); *Adlman*, 134 F.3d at 1195 (Memo prepared by an accountant/lawyer to evaluate tax implications of a proposed merger and assist

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

in making business decision was also "because of litigation" in that it was "prepared for an attorney assessing the likely result of an expected litigation" and "reveal[s] mental impressions, conclusions, opinions or theories concerning the litigation").

Here, GEO's business purpose of the calculation and letter at issue is clear, but evidence of any litigation purpose, or attorney mental impressions regarding the litigation, are absent. Although GEO now asserts that the calculations were performed by its CFO, Brian Evans, as "GEO's very assessment of this case" brought by Washington, and the other detainee class actions against GEO, ECF No. 419 at 5, the direct evidence is to the contrary. GEO nowhere cites evidence in the record now, or that it timely presented to the Court, that show GEO's Letter to ICE or the underlying calculations were, in fact, prepared in anticipation of litigation or trial, or would be used in settlement, or litigation against Washington.

Instead, GEO provides a *new* declaration, that contains only inadmissible hearsay statements of an unknown "client" witness, to argue that the calculations were done at the direction of counsel and "in connection with" settlement discussions in a different case.[2] *See* ECF No 419 at 3-4 (citing Declaration of Adrienne Scheffey); ECF No. 420 at 2 ("I had discussions with my client. . . and confirmed that the underlying calculations were created in connection with settlement discussions and a corresponding settlement conference in *Menocal v. GEO*[.]"). And, in the late afternoon of October 16, 2020, on Washington's deadline for filing this brief, GEO filed so-called "Supplemental Authority," in the form of an October 1, 2020 *Menocal v. GEO* court hearing transcript. ECF No. 422 (admitting "the Court ordered GEO to produce the letter unredacted" and discussing calculations related to the settlement of the *Menocal* case.)[3] None of GEO's arguments or this so-called "evidence" saves its position.

First, Mr. Evans has the first-hand knowledge of what he did and why. Mr. Evans'

---

[2] Inexplicably, GEO also states that the State "requested that GEO speak with ICE to try and receive a potential settlement." ECF No. 419 at 5 n.2. GEO's statement is both false and, unsurprisingly, unsupported by any email or sworn declaration. Washington has never requested GEO speak with ICE about settlement.

[3] If the Court intends to rely upon the "Supplemental Authority," Washington requests an opportunity to address it substantively.

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

testimony cited by GEO reveals no substantive connection between the calculations, and GEO's Letter to ICE, and the litigation of the minimum wage and unjust enrichment claims brought by the plaintiffs in this or the other detainee wage cases. *See* ECF No. 419; ECF No. 401 at 6-7. The undisputed evidence is to the contrary. Mr. Evans *did not* calculate the past minimum wage or fair wage that would be owed to detainees for work actually performed by detainees in the VWP, as would be required for settlement or in preparation for litigation or trial of the detainee wage cases, but instead calculated what it would cost to comply with prevailing wage requirements through a civilian labor force *moving forward*.

In part because the VWP promotes participation over efficient staffing, Mr. Evans stated that the approach to the calculations did not look to the VWP, the subject of the present litigation, but used a staffing model instead. "[T]his is an institutional setting, it's a thousand or 1,500 bed facility, you have a kitchen that's so big, you need to feed so many meals, you have so much laundry to process or whatever the other areas are that the Voluntary Work Program covers, and you would just evaluate this is the work that needs to be done, what do we think we need to do that, *sort of exclusive of what really happens over [at] the VWP*." ECF No. 399 at 12-13 (emphasis added).

Second, Mr. Evans clearly testified that the calculations were undertaken as part of GEO's ongoing and potential future relationship with ICE, i.e., to provide notice to ICE that in the future, GEO would be seeking to have the federal government pay for any additional labor costs that would arise *after* the litigation if GEO lost, or if it changed its staffing plan and hired civilians instead of detainee workers. The calculations reveal no attorney mental impressions or strategy about the detainee wage litigation itself. Mr. Evans made it clear that his analysis was about "what the government could owe us" and was *not* undertaken in relation to litigation or settlement of detainee wage litigation or claims that GEO unjustly benefits from detainee labor:

> Q. What I'm asking, you, Mr. Evans, is have you ever conducted an analysis of what financial benefit detainee labor provides to GEO and its bottom line?

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

| | |
|---|---|
| 1 | MS. MELL: Object to the form. |
| 2 | THE WITNESS: I don't believe so. I think in connection with these lawsuits, *there has been an evaluation of what it would cost the government if they were to change the program*. But I'm not sure if that's -- was part of the -- is, you know, privileged or whatnot, but *there was some analysis done at some point regarding, you know, advising the government on the cost of what the labor would look like, potentially, if it was all done by civilian employees. But that's not an analysis of the benefit to the GEO Group. That's just an analysis of what the additional amount of funds would be that the government would have to pay*. And I'm not really sure if it was even that. *It may have been more to calculate what the government could owe us*, we believe, if the Court decided unfavorably against us, because we have a claim -- we believe, under the laws against the federal government for implementing their program. |
| | BY MS. BRENNEKE: |
| | Q. Can you say more about that? |
| | A. No, it is just that straightforward. If for some reason the plaintiffs are successful in their claim, then *we're going to make a claim against the federal government for whatever we have to ostensibly reimburse the participants in the Voluntary Work Program for whatever wage, you know, is determined to be the appropriate amount or whatever the damages are*. That is going to be a requirement that the government pay us. And *then ultimately we'll modify our contract and they'll pay us on a prospective basis for all of those people being employed as regular civilian employees and we'll charge them additional cost, profit, for that fee.* |

ECF No. 397 ¶ 23, Ex. K at 101:11-102:23 (emphasis added). Mr. Evans further testified that this financial analysis was included in GEO's Letter to ICE, which GEO's Chief Executive Officer communicated to ICE as the cost of complying with plaintiffs' detainee wage demands, *Id*. at 114:19-116:2, following the sentence: "We have conducted an estimation of the costs necessary to achieve compliance with the plaintiffs." *Id*. at 116:14-117:3. The purpose of the calculation, and that part of GEO's Letter to ICE, is "informational … to make ICE aware of the potential value of what was being brought forward here by plaintiffs to the government. … the value that the government is going to have to pay to have their policy changed … to no longer have a Voluntary Work Program," *Id*. at 116:16-117:6.

Nothing about the letter to ICE or Mr. Evans' analysis constitutes work product, even in part. GEO, to try shore up its prior showing, and erase the contrary testimony from Mr. Evans,

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

submits a *new* declaration from counsel to argue that the "information at issue is clearly work product" because the calculations were done at the direction of counsel and for settlement purposes in *Menocal*. This is *new* factual evidence that is improper on a motion for reconsideration. GEO nowhere explains why it could not have submitted this declaration before. *See* LCR 7(h)(1). Even if it had, the declaration contains an out of court statement of an unnamed witness offered for the truth of what is asserted and, as such, should be stricken as inadmissible hearsay. Fed. R. Evid. 801. Finally, the truth of the assertion itself makes no sense and fails to show that the documents are work product prepared for litigation or settlement of this case: the calculation of the cost of future-looking operational and staffing changes has nothing to do with the settlement of *Menocal* or other detainee wage cases, which seek disgorgement of unjust enrichment and payment of back minimum wages. The same analysis appears to apply to the late-filed "Supplemental Authority." Even with this "new evidence," the Court did not err, and need not reconsider its Order.

### 2. GEO Waived Any Work Product Protection That May Have Existed

Even if there had been some litigation purpose and work product privilege to protect the underlying financial calculations, which there was not, GEO waived it long ago. Disclosing work product to a third party waives the protection "where such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Sanmina Corp.*, 968 F.3d at 1121 (citations and quotations omitted). Under this standard, "the voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material." *Id*.

Here, GEO three times waived any work product protection regarding its calculations and communications with ICE. *First*, GEO's CEO—a non-lawyer—sent the results of the calculation to ICE in GEO's Letter to ICE, a plain business communication, without marking it confidential or work product protected. *Second,* GEO waived any protection when it allowed Mr. Evans to testify at length about the underlying financial calculations contained in GEO's

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  Letter to ICE, and the estimated costs of employing a civilian workforce in lieu of detainee labor,
2  ECF No. 399 at 8-9, in his deposition with Washington, GEO's litigation adversary. *Third*, GEO
3  failed to claim any work product protection or privilege with regard to these documents on its
4  privilege log, and produced in discovery a prior letter it wrote to ICE seeking equitable
5  adjustment for legal costs expended in the detainee wage litigation without redactions. *See* ECF
6  No. 387 (Brenneke Decl. ¶ 28). GEO does not seriously address the waiver issue in its motion
7  for reconsideration, but the waivers show that there was no manifest error in the Court's
8  conclusion.

To the extent GEO cites ICE's Statement of Interest filed in August 2019 as evidence of GEO's common interest with ICE and defense against waiver, ECF No. 419 at 9 n.3, GEO has failed to produce evidence of any common defense strategy or agreement with ICE that was in effect on May 30, 2018, when the non-confidential disclosure of its financial calculations were made in GEO's Letter to ICE. Such an agreement or common defense strategy is required to invoke the common interest doctrine. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018). *See also*, ECF No. 243 at 6-7; ECF No. 396 at 10. GEO's "common interest" privilege argument fails. GEO waived any work product protection for GEO's Letter to ICE and underlying calculations.

**C.   GEO's Argument That the Court Did Not Address the Issues Before It Is Unfounded and Does Not Demonstrate Manifest Error**

Finally, GEO takes exception to the Court's citation of Fed. R. Civ. P. 26(e) as the basis for ordering GEO to produce the requested documents. GEO reads the Court's reference to Rule 26(e) to mean that the Court did not consider whether the documents were responsive to prior Requests for Production. *Id.* And from there, GEO argues that the Court erred by not giving GEO an opportunity to respond about the discoverability of GEO's Letter to ICE or GEO's underlying

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

financial calculations under Rule 26(e). *See* ECF No. 419 at 6-7 (criticizing the Court for referring to Fed. R. Civ. P. 26(e) *sua sponte*). GEO's arguments are misplaced.

As a threshold matter, the Court's reference to Rule 26(e) and 26(b)(1) does not indicate that the Court failed to consider the parties' extensive briefing on whether the documents were responsive to Washington's longstanding Requests for Production (and subject to prior orders requiring disclosure). Rule 26(e) specifically requires a party who has "responded to a[]. . . request for production" to timely supplement its production "as ordered by the court." Fed. R. Civ. P. 26(e). In light of that Rule, the Court's reference to Rule 26(e) does not mean that the Court failed to consider and resolve GEO's arguments about whether the documents are responsive to Washington's RFPs and subject to the Court's prior orders requiring disclosure.

To the contrary, the Court's reference to Federal Rule of Civil Procedure 26(b)(1) and (e) makes complete sense as the parties briefed both the issue of whether the compelled documents fell within the general scope of discovery, the essential inquiry required by Federal Rule of Civil Procedure 26, *and* whether they were responsive to Washington's specific discovery requests. As the Court knows, the order at issue here, ECF No. 409, is the latest in a series of orders by this Court and Ninth Circuit in which the parties briefed the relevance of financial documents to Washington's claims. *See* ECF No. 133; ECF No. 296; ECF No. 336. As such, Washington specifically relied upon these prior orders compelling the production of GEO's financial documents to argue in its motion that both the letter and GEO's calculations are within the scope of discovery and responsive to Washington's particular discovery requests. *See* ECF No. 396 at 8-10 ("The Court previously found GEO's financial information to be discoverable and relevant to Washington's claim for unjust enrichment, and ordered GEO to produce documents responsive to Washington's discovery requests."). Likewise, in opposition, GEO attempted to make the case that the documents are not relevant, are outside the scope of discovery, and not included in Washington's particular discovery requests. ECF No. 401 at 9-11

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

("[T]he document the State seeks to compel is not relevant to their previously propounded discovery.").

Given this history, GEO's suggestion that it did not have the opportunity to argue "whether the documents were more broadly considered within the possible scope of discovery under Fed. R. Civ. P. Rule 26(b)(1)" is simply not true. ECF No. 419 at 6.[4] There is no surprise, or anything improper, about the Court ruling on issues thoroughly (and repeatedly) briefed by the parties in this and previous motions, and there is no manifest error in how it handled this routine discovery matter.

### III. CONCLUSION

For the foregoing reasons, Washington requests that the Court deny GEO's Motion for Reconsideration.

Dated this 16th day of October 2020.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington


s/ *Andrea Brenneke*
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO A. MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

---

[4] Nor does GEO's passing citation to a case involving a bankruptcy judge's refusal to recuse himself, a decision affirmed by the Ninth Circuit, save its argument for reconsideration or relate, in any way, to the situation here. *Cf. In re Marshall*, 721 F.3d 1032, 1045 (9th Cir. 2013).

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 16th day of October 2020 in Seattle, Washington.

CAITILIN HALL
Legal Assistant

STATE OF WASHINGTON'S RESPONSE
GEO'S MOTION FOR RECONSIDERATION
OF ORDER (ECF No. 409)

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744