The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

| | |
|---|---|
| STATE OF WASHINGTON, | Case No.: 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | |
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated, | Case No.: 3:17-cv-05769-RJB |
| | **THE GEO GROUP, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| Plaintiff, | |
| v. | |
| THE GEO GROUP, INC., a Florida corporation, | **NOTE ON MOTION CALENDAR:** Date: June 10, 2021 |
| Defendant. | |

10

11

12

13

14

15

16

17

18

19

20

21

22        The GEO Group, Inc. ("<u>GEO</u>"), pursuant to Fed. R. Civ. P. 50, hereby files its Motion for

23 Judgment as a Matter of Law and Memorandum of Law in Support against Plaintiffs State of

24 Washington ("<u>State</u>") and Nwauzor et al. ("<u>Private Plaintiffs</u>") (collectively "<u>Plaintiffs</u>").   As

25 grounds therefore, GEO states as follows:

26                          I.        **INTRODUCTION**

27        The central issue in this case is whether the Washington Minimum Wage Act ("<u>WMWA</u>")

applies to individuals detained by U.S. Immigration and Customs Enforcement ("ICE") at GEO's Tacoma facility, the Northwest Ice Processing Center ("NWIPC"), when they participate in the Voluntary Work Program ("VWP").  Plaintiffs have failed to meet their burden during trial and judgment should be entered in GEO's favor as a matter of law. There is no legally sufficient evidentiary basis for a reasonable jury to find that the detainees who participate in the VWP are employees under the WMWA.  Further, there is no factual dispute as to the facts that establish GEO's sovereign immunity affirmative defenses.

Accordingly, for all of these reasons and as set forth more fully below, this Court should grant GEO's motion for judgment as a matter of law and enter judgment in favor of GEO and against Plaintiffs.

## II.   LEGAL STANDARD

Judgment as a matter of law is appropriate as to a particular issue when "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1). The existence of "some alleged factual dispute between the parties" or a "'scintilla of evidence' will not defeat a properly supported motion" for judgment as a matter of law. *Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1194 (W.D. Wash. 2018) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). In deciding a motion for judgment as a matter of law, "the court should review all of the evidence in the record" and "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (quotations omitted).

## III.   ARGUMENT

## A.   WMWA DOES NOT APPLY TO DETAINEES PARTICIPATING IN THE VWP.

### 1.   As a Matter of Law There Is No Employer-Employee Relationship Between a Detention Facility and Detainees.

Every Federal Circuit Court that has addressed this issue has found that persons in detention are not "employees" of the facility where they are detained.  Most recently, as set forth

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 2

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   in GEO's Notice of Supplemental Authority [SOW ECF 439], the Fourth Circuit found that the

2   same ICE-mandated VWP at issue in this case did not create an employment relationship subject

3   to the Fair Labor Standards Act and the New Mexico Minimum Wage Act. *Ndambi v. CoreCivic,*

4   *Inc.*, 990 F.3d 369, 372-73 (4th Cir. 2021). In *Ndambi*, the Fourth Circuit affirmed the dismissal

5   of an action alleging that ICE detainees held in a private detention facility were entitled to Federal

6   and New Mexico minimum wage. *Id.* at 375 The court explained:

> The FLSA was enacted to protect workers who operate within "the traditional
> employment paradigm." . . . Persons in custodial detention—such as appellants—
> are not in an employer-employee relationship but in a detainer-detainee relationship
> that falls outside that paradigm. There are many crucial differences between these
> two relationships. In the later relationship, individuals are under the control and
> supervision of the detention facility, which is simply not comparable to the "free
> labor situation of true employment." . . . Those in custodial detention, unlike
> workers in a free labor market, "certainly are not free to walk off the job site and
> look for other work." . . . **Put simply, "there is *too much* control to classify the
> [detainer-detainee] relationship as one of employment**."

*Id.* at 372 (internal citations and parentheticals omitted, emphasis added).

    The Fourth Circuit noted another critical difference in the relationship between detainees

and a facility, which is equally applicable to this case: "unlike workers in a free labor market who

use their wages to maintain their 'standard of living' and 'general well-being,' 29 U.S.C. §202(a),

detainees in a custodial institution are entitled to the provision of food, shelter, medicine, and other

necessities." *Id.* at 373. The court also observed that "[e]ach circuit to address the issue—whether

the litigants sought FLSA application for inmates, or pretrial detainees, or civil detainees—has

concluded that the FLSA's protections do not extend to the custodial context generally." *Id.* at

373-74 (collecting cases from the First, Second, Third, Fifth, Sixth Seventh, Eighth Ninth, Tenth,

Eleventh and D.C. Circuits). *See also Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395-97 (5th Cir.

1990) (holding that detainee volunteers are not employees because they are "removed from

American industry"); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015)

(holding that immigration detainees are not "employees" under state minimum wage law because

"like prisoners, [the detainees] do not use their wages to provide for themselves, [so] the purposes

of the [law] are not served by including them in the definition of employee").

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 3

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    The same conclusion applies under the WMWA.  Indeed, the Washington Court of Appeals

2    has held that patients in a private rehabilitation facility who participated in a voluntary work

3    program—like the detainees here—are not employees under the WMWA because they signed an

4    application agreeing they "will receive no monetary gain," worked with "no promise or

5    expectation of compensation," and volunteered for their own purposes. *Lafley v. SeaDruNar*

6    *Recycling, L.L.C.*, 138 Wash. App. 1047, 2007 WL 1464433, at *1-4 ( Wash. Ct. App. 2007)

7    (unpublished); *see also Calhoun v State*, 193 P.3d 188, 192-93 (Wash. Ct. App. 2008) (finding

8    that a civilly committed individual was not an "employee" who could bring a claim for

9    discrimination under Washington law using the WMWA definition of "employee").

10    The evidence presented at trial has uniformly established that the detainees at GEO's

11    Tacoma facility are subject to supervision and control all the time—regardless of whether they

12    chose to participate in the VWP. *E.g.*, Trial Tr., June 7, 2021, Tracy 10:5-16.  Similarly, there is

13    no dispute that GEO provides detainees with shelter, food, clothing, medicine and other

14    necessities. *E.g.*, Trial Tr., June 3, 2021, Medina-Lara 141:18-142:4.  Detainees are not using

15    money from the VWP to maintain their well-being in the way that employees use their wages.  As

16    courts around the country have found, as a matter of law, the detainees ICE houses at GEO's

17    facilities are not in an employment relationship with GEO.

18    **2.    The Evidence Establishes That the Detainees Are Not Employees Under the**
           **Modified Economic Dependence Test Applicable to Detention.**

19

20    The appropriate test for employment in a custodial detention is the modified economic

21    dependence test that was applied by the *Ndambi* Court and utilized in *Matherly v. Andrews*, 859

22    F.3d 264, 278 (4th Cir. 2017); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (same); *Miller*

23    *v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *see also* SOW ECF 378 at 21-22, Nwauzor ECF

24    274.  Specifically, the elements to determine whether a civilly detained individual at the NWIPC

25    is an "employee" are:

26    (1)  Whether the detainee is working to turn a profit for GEO;

27    (2)  Whether GEO and the detainee have an opportunity for a bargained-for mutual

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 4

58563710;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   economic gain as is present in a traditional employee-employee relationship;

2       (3)  Whether GEO provides the detainee with food, shelter, and clothing that employees

3   would otherwise need to purchase in a true employment situation.

4   The evidence at trial establishes that detainees are not employees under this test.

5       First, the voluntary work program does not create profit at the NWIPC.  Trial Tr., June 9,

6   2021, Evans 118:2-4, 122:22-25.  To the contrary, as a standard aspect of federal contracting,

7   GEO's contract with ICE includes a margin on the cost of each person it employs.  *Id.* at 42:11-

8   43:3.  If GEO employed more full-time janitors or food service workers, it would actually increase

9   its margin, that is, it would make a greater profit.  *Id.*  Instead, the purpose of the VWP is to reduce

10  the negative impact of confinement "through decreased idleness, improved morale and fewer

11  disciplinary incidents."  (Ex. 17, PBNDS 2011 Section 5.8).  GEO does not operate the VWP in

12  order to profit; it does so because it is required to do so by ICE.

13      Second, there is no opportunity for bargained-for mutual economic gain.  All VWP

14  participants receive $1 per day.  Detainees cannot earn more by working harder or doing their tasks

15  better.  They cannot deal at arms' length with GEO or look for other work because ICE has

16  detained them at the NWIPC.  Detainees can chose to volunteer or not and can select the position

17  they would like to do, but they cannot bargain for a different economic gain than the $1 stipend.

18      Third, GEO provides the detainees with food, shelter, clothing, toiletries and medical care.

19  Trial Tr., June 3, 2021, Medina-Lara 141:18-142:4; Trial Tr., June 9, 2021, Nwauzor 164:22-

20  165:12, 169:14-21; Trial Tr., June 7, 2021, Johnson 108:1-10 (toiletries)).

21      Under the modified economic dependence test, which should be applied to custodial

22  detention, a reasonable jury would not have a legally sufficient evidentiary basis to find that the

23  detainees in the VWP are employees under the WMWA.

24      **3.    The Evidence Establishes That the Detainees Are Not Employees Under the**
        ***Anfinson* Test.**

25

26      In the alternative, although GEO disputes that the test adopted by this Court should apply,

27  even under the test set forth in the Court's jury instructions, the evidence does not support a finding

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 5

58563710;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   that the detainees are employees.

2          The Washington Supreme Court has rejected the argument that the right to control an

3   individual is the key consideration in determining whether an employment relationship exists.

4   *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 299 (Wash. 2012). In concluding that

5   the right-to-control test was inapplicable, the Washington Supreme Court explained that

6   "minimum wage laws have a remedial purpose of protecting against the evils and dangers resulting

7   from wages too low to buy the bare necessities of life and from long hours of work injurious to

8   health." *Id.* (quotations omitted). Instead - in non-detention contexts - courts utilize the economic-

9   dependence test to determine whether an individual is an employee. *Id.* The economic-dependence

10  test is not comprised of set factors that must be met. Rather, it is a flexible framework that allows

11  a court to evaluate the relationship based upon the "'circumstances of the whole activity.'" *Becerra*

12  *v. Expert Janitorial, LLC*, 309 P.3d 711, 717 (Wash. Ct. App. 2013), *aff'd*, 181 Wash. 2d 186

13  (2014) (*quoting Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

14         In assessing whether an individual is an employee, a critical consideration is the

15  "fundamental nature" of the activity and relationship. *Rocha v. King Cnty.*, 435 P.3d 325, 332-33

16  (Wash. Ct. App. 2019), *rev'd sub nom*; *see also Bednarczyk v. King Cnty.*, 448 P.3d 64 (Wash.

17  2019). "The economic reality test offers a way to think about the subject and not an algorithm.

18  That's why toting up a score is not enough."  *Espinoza v. MH Janitorial Servs. LLC*, 11 Wash.

19  App. 2d 1007, 2019 WL 5697886, at *5 (Wash. Ct. App. 2019) (citation omitted). Instead, the fact

20  finder must consider not only the enumerated factors, but also the "true nature of the relationship."

21  *Dawson v. Nat'l Collegiate Athletic Ass'n*, 250 F. Supp. 3d 401, 405 (N.D. Cal. 2017), *aff'd*, 932

22  F.3d 905 (9th Cir. 2019) (citations omitted) (holding that in the context of student athletes, the

23  focus was on the "true nature of the relationship" and, therefore, student athletes were not

24  "employees" under the FLSA). As set forth in *Becerra*, the "circumstances of the whole activity"

25  must be analyzed. 309 P.3d at 717 (citations omitted).

26         Under the Court's articulation of this test, there is not legally sufficient evidentiary basis

27  to find that the detainees participating in the VWP are employees.

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 6

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

**a.     The nature and degree of control of the detainees by GEO.**  Because the detainees housed by GEO are in custody, they are constantly under GEO's "control" whether they are participating in the VWP or not.  Trial Tr., June 7, 2021, Tracy 10:5-16. This factor, therefore, holds little or no weight under the facts of this case.

**b.     The degree of supervision, direct or indirect, of work by detainees.** Detainees at the NWIPC are always supervised—that is the nature of detention.  As Officer Menza explained when asked if he was supervising workers, "I really didn't need to supervise them.  My job was more the safety and security.  They kind of knew what to do. They would do it on their own."  Trial Tr., June 4, 2021, Menza 120:20-121:3.  Similarly, when asked whether officers oversee the work being done by detainees in the VWP, Officer Tracy explained: "Just monitoring detainees, whether they are in the program or not, that's the main job as an officer or sergeant, just monitoring the safety and security of the building, the detainees, the officers. . . . Just because someone is cleaning, you can't pay more attention to them than anybody else in the building."  Trial Tr., June 7, 2021, Tracy 9:15-20, 10:2-4. While it is true that GEO supervises the work of detainees, it also supervises everything that detainees do.  *Id.* at 11:4-5 ("[We are] monitoring detainees while they are cleaning, while they are sleeping, while they are eating."); *see also* Trial Tr., June 7, 2021, Heye 131:18-132:8 ("I don't directly supervise.  When you are in the pod, you are supervising everybody.  You take rounds, meaning you walk around, talk with detainees."). This factor, therefore, has no relevance.

**c.     Whether GEO had the power to determine the pay rates and the methods of payment of the detainees.**  The evidence at trial has shown that the rate of payment in the VWP program is set by the PBNDS, which GEO is contractually bound to follow.  Trial Ex. 17, PBNDS 2011 Section 5.8.   The rate is confirmed by the contract between ICE and GEO which states that the "actual rate" is one-dollar per day. Trial Ex. 129 GEO-State 0366829, Trial Tr., June 8, 2021, Scott 11:24-12:13:25.

**d.     Whether GEO had the right, directly or indirectly, to hire, fire, or modify the employment conditions of detainees.**  GEO is required to offer VWP positions to every detainee,

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 7

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   regardless of their prior experience or skill.  There is no interview or selection process.  Trial Tr.,

2   June 3, 2021, Henderson 208:12-209:1; Trial Tr., June 3, 2021, Medina-Lara 135:7-13; Trial Tr.,

3   June 9, 2021, Nwauzor 161:24-25; Trial Tr., June 7, 2021, Heye 127:9-15.

4       Likewise, although the disciplinary process mandated by ICE and the PBNDS indicates

5   that a detainee will lose his or her VWP position for infractions such as stealing or failing to follow

6   safety protocols, detainees are not fired for doing their tasks badly. Trial Tr., June 2, 2021,

7   McHatton 173:20-175:8; Trial Tr., June 4, 2021, DeLaCruz 98:18-25, 99:3-4, 107:17-23; Trial

8   Tr., June 7, 2021, Tracy 25:6-26:21.  Instead, if a detainee did not do their task satisfactorily, an

9   officer would ask the detainee to complete the work, and if they would not, ask them to resign by

10  signing a refusal to work form.  Trial Tr., June 2, 2021, Singleton 78:13-18).  However, if a

11  detainee did not want to do one task in the kitchen like panning up food, but would do another

12  such as stirring soup, they would not be removed from their VWP position.  Trial Tr., June 4, 2021,

13  Henderson 8:10-14.

14      **e.**     **Whether GEO prepared payroll and the payments to the detainees under the**

15  **VWP.**  GEO puts the VWP payments into detainees' trust accounts.  Trial Tr., June 9, 2021, Hill

16  22:8-12. ICE, then, reimburses GEO for those payments. *Id.* at 22:18-21. GEO did not do

17  "payroll," which involves calculating hours and withholding taxes and other amounts. Trial Tr.,

18  June 3, 2021, Medina-Lara 139:18-19).

19      **f.**     **Whether GEO provided all necessary equipment and supplies necessary to the**

20  **VWP.**  This factor has no relevance in a detention context. GEO provides <u>everything</u> to the

21  detainees in its care—not just equipment and supplies for the VWP tasks but shelter, food, clothing,

22  and toiletries.  Trial Tr., June 3, 2021, Medina-Lara 141:18-142:4.

23      **g.**     **The degree of permanence in the working relationship in the VWP.**  The

24  evidence at trial has established that detainees are held at the NWIPC for an average of about two

25  months.  Trial Tr., June 8, 2021, Scott 32:8-11 (average length of stay 71 days).  In addition,

26  detainees can and do choose to quit a volunteer position they do not want to do.  *E.g.*, Trial Tr.,

27  June 4, 2021, Marquez 186:3-5; Trial Tr., June 7, 2021, Gomez-Sotelo 64:6-9.

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 8

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   Detainees also miss days in order to work on their immigration cases, receive medical care,

2   or participate in other activities, without any consequences. Trial Tr., June 4, 2021, Henderson

3   7:21-8:1; Trial Tr., June 4, 2021, Menza 161:17-21).   As Ms. Singleton explained:   "They

4   [detainees] can request the job, they can refuse the job.  They can send a request five minutes later

5   for the same job and get reassigned to the same job.  There was no accountability for them if they

6   worked or didn't work.  They worked if they wanted to." Trial Tr., June 2, 2021, Singleton 97:21-

7   25.  There is therefore no permanence in the VWP positions.

8   **h.**      **Whether the service rendered by the detainees through the VWP is an integral**

9   **part of GEO's business.**   GEO is in the business of providing secure detention.  Trial Tr., June 8,

10   2021, Evans 17:18-21 (stating that detention officer's "main responsibility is safety, security and

11   direct supervision of the detainees, to provide that safe, secure environment").   Detainees do not

12   do this.  The PBNDS requires that GEO offer a VWP and indicates that those tasks should include

13   "essential operations and services."  Trial Ex. 17, PBNDS Section 5.  Although detainees help with

14   cleaning, laundering, and preparing food, it is also the case that those tasks can and sometimes are

15   done by GEO officers without detainee help. Trial Tr., June 4, 2021, Henderson 37:13-16; Trial

16   Tr. June 4, 2021, DeLaCruz 106:10-14; Trial Tr., June 4, 2021, Menza 153:20-21.

17   **i.**      **The detainees' dependence upon GEO for income**.  Again, this factor does not

18   make sense in a detention context because detainees cannot leave ICE's custody to seek income

19   outside of the facility.  Notwithstanding, do not need income to provide for their own shelter, food,

20   clothing, medical care, or entertainment in the NWIPC. Trial Tr., June 3, 2021, Medina-Lara

21   141:18-142:4. Detainees can spend money on phone calls and commissary snacks, but they do not

22   <u>need</u> income for any reason.  Further, several former detainees who have testified, received more

23   money from family, friends, or organizations outside the facility than from the VWP.  Trial Tr.,

24   June 3, 2021, Medina-Lara 126:10-14; Trial Tr., June 7, 2021 Gomez-Sotelo 56:11-17.

25   Considering the evidence in the context of detention as it must be applied, a reasonable

26   jury could not find that the "fundamental nature" of the activity and relationship between detainees

27   volunteering in the VWP and GEO is one of employment subject to the WMWA.  *See Rocha*, 435

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 9

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

P.3d at 332-3.

**4.      Detainees Are Not Employees Under the Resident Exception to the WMWA.**

The WMWA explicitly provides that the definition of "[e]mployee … shall not include": "(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties." RCW § 49.46.010(3)(j) (hereinafter the "resident exception").  In interpreting its statutory language,[1] the Supreme Court of Washington held that "[t]he plain language of RCW 49.46.010(5)(j) excludes two categories of workers from the MWA's definition of 'employee': (1) those individuals who reside or sleep at their place of employment and (2) those individuals who otherwise spend a substantial portion of work time subject to call, and not engaged in the performance of active duties." *Berrocal v. Fernandez*, 121 P.3d 82, 88 (Wash. 2005); *see also Strain v. W. Travel, Inc.*, 70 P.3d 158, 162 (Wash. Ct. App. 2003) ("The statute is plain: employees required to sleep at their places of employment are exempt from coverage under the MWA.").

At issue in this case is Plaintiffs' participation in the VWP at the NWIPC. The VWP is a program that exists solely to provide "detainees opportunities to work and earn money while confined . . . ." Trial Ex. 17 PBNDS § 5.8.  Evidence at trial uniformly establishes that all participants in the VWP are detained and cannot leave the facility. *E.g.* Trial Tr., June 2, 2021, Singleton, 98:8-10 (agreeing that detainees cannot leave the grounds of the facility based on ICE's determination).  Further, no one who is not detained at the NWIPC can participate in the program. Thus by definition, VWP "jobs" require that individuals reside or sleep at the place of his or her "employment."  As such, detainees are specifically exempted from the definition of "employees" under the WMWA,

**5.      Detainees Are Not Employees Under the Detainee Exception to the WMWA.**

In addition to the exception for individuals who sleep or reside at their workplace, the

---

[1] The same language in the present statute was previously located at RCW § 49.46.010(5)(j).

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 10

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   WMWA exempts from the definition of employee "[a]ny resident, inmate, or patient of a state,

2   county, or municipal correctional, detention, treatment or rehabilitative institution[.]" RCW §

3   49.46.010(3)(k) (hereinafter "detainee exception"). This exemption, in its most natural reading,

4   excludes those who are in government custody from the definition of employee.

5          The exceptions to the definition of "employee" describe certain individuals who are exempt

6   from the definition of employee—not certain types of entities that are not considered employers.

7   Indeed, the definition of "employer" is expansive, covering nearly any entity, individual, or "group

8   of persons," limited only by whether they are acting "directly or indirectly in the interest of an

9   employer in relation to an employee." RCW § 49.46.010(4). By that definition, the federal

10  government (and GEO) certainly fall under the definition of "employer." But, that does not mean

11  every individual who acts at the direction of, or participates in a program of, the federal

12  government or State is also necessarily an "employee." For example, the State could run a

13  detention facility using the labor of individuals who are neither residents nor inmates of the facility.

14  Those individuals would be subject to minimum wage as they would not fall within any exception.

15  By contrast, individuals who are in the custody of the State, and reside at the facility would not be

16  employees as they are explicitly exempted under the statute's resident and detainee exceptions.

17         There is no dispute in the evidence at trial that the detainees residing at the NWIPC are

18  held in the custody of the federal government. *E.g.* Trial Tr. June 2, 2021, Singleton 98:8-10.  The

19  NWIPC is located within the State of Washington. As residents of a "detention" facility, detainees

20  are exempted from the definition of employee, so long as that detention facility is a "state, county,

21  or municipal . . . institution." RCW § 49.46.010(3)(k). The statute does not define "state" and

22  therefore, this Court may look to the word's common usage in the dictionary. Black's Law

23  Dictionary defines "state" as the "political system of a body of people who are politically

24  organized; the system of rules by which jurisdiction and authority are exercised over such a body

25  of people." *State*, Black's Law Dictionary (11th ed. 2019). The federal government (and by

26  extension ICE) certainly falls within the definition of "state" contained in Black's Law Dictionary.

27  The federal government is a political system that exercises jurisdiction over the United States. The

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 11

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

State of Washington also falls within the definition of "state," as a political system within Washington's geographic boundaries.[2] The NWIPC is also within the geographic boundaries of Washington, making it arguably, a state institution under the detainee exception. Therefore, the plain language of the detainee exception removes individuals in the custody of the federal government, the state government, and its local subdivisions from the definition of "employee" under the WMWA.

**B.    THE EVIDENCE ESTABLISHES GEO'S IMMUNITY DEFENSES.**

    **1.    GEO Is Treated the Same as the Federal Government for Purposes of Intergovernmental Immunity.**

Under the intergovernmental immunity doctrine, "a state regulation is invalid only if it [1] regulates the United States directly or [2] discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). Because "a [state] regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself," intergovernmental immunity may apply to state regulation that affects government contractors. *See id.* at 438; *see also Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis on [the grounds of discrimination]. When the state law is discriminatory, a private entity with which the federal government deals can assert immunity.").

It is without dispute in the Ninth Circuit that GEO is treated the same as the federal government for purposes of intergovernmental immunity.  "For purposes of intergovernmental

---

[2] Importantly, the word "state" is not capitalized in RCW 49.46.10(3)(k) and as such should not be construed as a proper noun referring to a specific state. Furthermore, when the legislature wants to refer specifically to Washington State, it knows how to do so. *See e.g.*, RCW § 49.12.121(1) ("The department may at any time inquire into wages, hours, and conditions of labor of minors employed in any trade, business, or occupation in the state of Washington and may adopt special rules for the protection of the safety, health, and welfare of minor employees.) (emphasis added); RCW § 49.48.210 (11)(b) ("'Employer' means the state of Washington or a county or city, and any of its agencies, institutions, boards, or commissions") (emphasis added).

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 12

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

immunity, federal contractors are treated the same as the federal government itself," particularly in the context of immigration contractors. *United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019).[3]

The evidence at trial has been undisputed that GEO operates the NWIPC as a federal detention facility under a contract with ICE.  Trial Tr., June 8, 2021, Scott 173:19-174:1.  Further, the contract between ICE and GEO requires GEO to operate the VWP.  Trial Ex. 129 GEO-State 036906; Trial Tr., June 8, 2021, Scott 7:22-8:8; Trial Tr., June 9, 2021, Hill 44:25-45:4.  Because GEO performs a federal function at the NWIPC, there is no question that intergovernmental immunity applies to its actions the same as it applies to the federal government.

### 2. GEO Is Entitled to Intergovernmental Immunity Because the WMWA Attempts to Directly Regulate the Federal Government.

Under the Direct Regulation prong of intergovernmental immunity, the Court must ask: Does the WMWA substantially interfere with the federal government's operations or property? *See, e.g.*, <u>Blackburn v. United States</u>, 100 F.3d 1426, 1435 (9th Cir. 1996).  If the answer is "yes," the WMWA directly regulates the federal government, and the WMWA is invalid unless Congress "clearly and unambiguously" authorized Washington to exercise authority over the pay rates and other conditions of confinement of ICE detainees.[4] *Boeing*, 768 F.3d at 840.

To the extent that Plaintiffs dispute GEO's argument above that the WMWA does not apply to federal detention, they necessarily acknowledge that the WMWA directly regulates the federal

---

[3] *See also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988) (applying intergovernmental immunity to private contractors "authorized by statute to carry out a federal mission"); *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 960 (W.D. Ky. 1993) (assessing a federal contractor's intergovernmental immunity defense where private plaintiffs sought to enforce state tort law claims of negligence); *Bordell v. Gen. Elec. Co.*, 164 A.D.2d 497, 498 (N.Y. App. Div. 1990) (applying the doctrine of intergovernmental immunity where a federal contractor, General Electric Company, was sued by a former employee for wrongful discharge).

[4] GEO maintains its position that the exception in RCW § 49.46.010(3)(k) should include federal facilities. The argument in this section assumes that the Court disagrees, but it is not a waiver of GEO's position.

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 13

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    government's operations. *Id.* at 840 (finding that the bill at issue directly interfered with "the

2    functions of the federal government . . . [by] mandat[ing] the ways in which Boeing renders

3    services that the federal government hired Boeing to perform"). And, the federal government has

4    not "clearly and unambiguously" authorized Washington to exercise authority over the pay rates

5    and conditions of confinement of ICE detainees. *Id.*

6        In *Blackburn,* the Ninth Circuit concluded that a law, which was neutral on its face,

7    impermissibly regulated the federal government's operations. 100 F.3d at 1435.  At issue was a

8    law requiring placement of warning signs and safety ropes near certain bodies of water. *Id.* at n.3.

9    Under the law, which did not provide an exception for the federal government, Yosemite National

10   Park would have been required to change its operations by placing signs and ropes throughout the

11   park. *Id.* at 1435. The Ninth Circuit found that this regulation, though not explicitly targeted at the

12   federal government, was a "direct and intrusive regulation by the State of the Federal

13   Government's operation of its property at Yosemite." *Id.* Accordingly, the court concluded that

14   applying the state law to the federal government would run afoul of the Supremacy Clause. *Id.*

15       Similarly, in *Boeing,* a California law implemented regulations regarding the cleanup of

16   toxic substances. *Boeing*, 768 F.3d at 839. The law permitted a state agency to "compel a

17   responsible party or parties" to take certain remedial actions related to toxic waste cleanup. *Id.* The

18   federal government hired Boeing, a contractor, to perform its cleanup work in California. Boeing

19   filed suit challenging the law. *Id.* Boeing argued that while the regulation did not explicitly name

20   the federal government as a "responsible party," its application was clear: the federal government

21   was certainly a "responsible party" as defined in the statute—if not the responsible party. *Id.*

22   Because the federal government (and by extension Boeing) fell within the definitions in the state

23   statute, Boeing argued that the state law directly interfered with the functions of the federal

24   government by "mandat[ing] the ways in which Boeing render[ed] services that the federal

25   government hired Boeing to perform." *Id.* at 840. In so doing, the state law impermissibly

26   attempted to supplant the standards chosen by the federal government with those chosen by the

27   state. *Id.* The Ninth Circuit agreed and concluded that the statute directly regulated the federal

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 14

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1 government in violation of the Supremacy Clause. *Id.* at 840.

2   Similar to *Blackburn* and *Boeing*, the WMWA here directly regulates the federal

3 government and, by extension, GEO. The WMWA defines "employer" so broadly as to include

4 nearly any entity, individual, or "group of persons," limited only by whether they are acting

5 "directly or indirectly in the interest of an employer in relation to an employee." RCW §

6 49.46.010(4). The federal government (and, by extension, its contractor GEO) falls squarely within

7 this definition, just as the federal government (and Boeing) fell within the definition of

8 "responsible party" in *Boeing*. There is no exception in the WMWA for individuals under the

9 jurisdiction, or employ, of the federal government. Thus, as in *Boeing*, the regulation

10 impermissibly "mandates the ways in which [GEO] renders services that the federal government"

11 hired it to perform. *Boeing*, 768 F.3d at 840. The WMWA directly regulates the federal

12 government by mandating the amount the government and its contractor must pay—and to whom.

13 Specifically, here, Plaintiffs seek to utilize its provisions to classify VWP workers as "employees."

14 But this would subject the VWP, a federal operation, to the control of the state, first regarding a

15 fundamental element—the amount paid to volunteers—and second regarding the program's very

16 nature—volunteering or employment. Dramatically increasing the cost of the VWP and

17 transforming it into an employment program would substantially interfere with the federal

18 government's VWP.

19   And more broadly, it would substantially interfere with federal detention. Such regulatory

20 legislation, the federal government (and GEO) would face both an economic and operational

21 burden. There is no question that the difference between $1 a day and minimum wage is significant.

22 Indeed, Mr. Evans testified that the cost of paying VWP participants at NWIPC minimum wage

23 would be millions of dollars each year. Trial Tr., June 9, 2021, Evans 113:7-20. Should the

24 WMWA apply, that would result in a significant shortfall in the allocated budget for the VWP

25 program. *See* Ex. 129 GEO-State 036682 (showing budgeted amount of $114,975).  If GEO were

26 required to expend millions of dollars more, it would seek an equitable adjustment from ICE and

27 Mr. Evans testified that he expected that ICE would adjust the contract to cover the additional

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 15

58563710;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    expense.  Trial Tr., June 9, 2021, Evans 114:5-9.  In other words, if federal contractors are required

2    to provide a VWP program (by their contract with ICE and the PBNDS) and pay minimum wage

3    to participants in the program, contracts will be repriced and detention will become more expensive

4    for the federal government.

5         As for the operational burden, requiring the federal government (and GEO) to pay

6    detainees minimum wage would necessitate the implementation of a system to track the hours

7    worked by each detainee which it does not currently do.  Trial Tr., June 4, 2021, Henderson  7:1-

8    3 (detainees do not clock in and out); June 2, 2021 Singleton 61:17-23 (describing pay sheets)). It

9    would also lead to the elimination or consolidation of the many VWP positions which take less

10   than an hour to perform.  (*e.g.* Trial Tr., June 7, 2021, Heye 129:17-19 (in the units, tasks take

11   anywhere from ten minutes, maybe 15 minutes.  Some of them take up to half an hour.").

12        In addition, as Mr. Evans testified, having some detainees receive large amounts of money

13   through the VWP would "destabilize the safety and security of the facility" by "introduc[ing] a

14   level of people who have a bunch of money who are working and those who don't and you are

15   going to create opportunities for abuse within that system . . .  It would be disastrous."  Trial Tr.,

16   June 9, 2021, Evans 83:1-84:1. In order to avoid "creat[ing] a significant disparity within the

17   facility that is going to create issue," GEO would discontinue the VWP rather than pay minimum

18   wage.  *Id.* Furthermore, the undisputed evidence recognizes the positive benefits that come from a

19   detainee work program.  Trial Tr., June 7, 2021, Heye 125:13-23.

20        For this reason, GEO would likely no longer be able to operate the VWP in Washington if

21   it could only do so by paying the minimum wage.  *Id.*   Furthermore, the undisputed evidence

22   recognizes the positive benefits that come from a detainee work program.  By this substantial

23   interference with federal operations, the WMWA directly regulates the federal government and

24   thus conflicts with the Supremacy Clause. GEO is entitled to intergovernmental immunity as a

25   matter of law.

26   ///

27   ///

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 16

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

3.     **GEO Is Entitled to Intergovernmental Immunity Because the WMWA Discriminates Against the Federal Government.**

Under the Discriminatory Treatment prong of intergovernmental immunity, the Court must ask: Does the WMWA discriminate against the federal government or those with whom it deals? *California*, 921 F.3d at 878.  If the Detainee Exception in section 49.46.10(3)(k) applies only to individuals in the State's custody, and not those in federal custody, the provision is discriminatory.[5] *See Dawson v. Steager*, 139 S. Ct. 698 (2019) (finding that when a statute allowed individuals to reduce their taxable income by the amount of state police pensions but did not also exempt federal law enforcement pensions, it was impermissibly discriminatory).  There is no question here that the WMWA, as interpreted by the State, applies to individuals in federal detention but not to individuals in State detention, for example.

As a result of the discriminatory legislation, the federal government (and GEO) would impermissibly face both the economic and operational burdens just discussed, while other similarly situated entities, such as the State, would not. *See e.g.*, *California*, 921 F.3d at 883 ("[A]ny discriminatory burden on the federal government is impermissible[.]").  GEO (and the federal government) would be subject to an economic burden that the State would not be forced to bear. While the federal government would have to reprice contracts or eliminate programs, the State would be free to continue to operate work programs for state detainees at a fraction of the cost.

And if the VWP were to be reduced or eliminated while the same programs continued at State facilities, the federal detainees would suffer from the negative consequences which State detainees would avoid. *E.g.*, Trial Tr., June 4, 2021, Marquez 190:25-191:2 (testifying that he liked staying busy while he was detained). Thus, if the WMWA applies to detainees at the NWIPC, the federal government (and GEO) would be forced to bear yet another discriminatory burden, in

---

[5] If, instead, the Detainee Exception applies to individuals in both the federal government's custody and the State's custody, the Court need not further analyze intergovernmental immunity, as Plaintiffs would be exempted from coverage under the WMWA.

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 17

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

violation of the Supremacy Clause.

No reasonable jury could find that the WMWA does not discriminate against and burden the federal government and GEO. Accordingly, the doctrine of intergovernmental immunity should apply to deny Plaintiffs' WMWA claims.

### 4.  GEO Is Entitled to Derivative Sovereign Immunity.

GEO is entitled to derivative sovereign immunity because it operates the VWP pursuant to its contract with ICE. Government contractors may "obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (internal quotation marks omitted) (*quoting Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943)). A contractor is entitled to derivative sovereign immunity when it performs work "authorized and directed by the Government of the United States" and the contractor "simply performed as the Government directed." *Id.* at 167. In that way, derivative sovereign immunity ensures that "'there is no liability on the part of the contractor' who simply performed as the Government directed." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (*quoting Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940)). Authorization is "validly conferred" on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20 (1940). ICE's authority to contract with GEO is undisputed.

Plaintiffs, here, allege that GEO violated the WMWA by not classifying its detainees as "employees" and paying them minimum wage. Detainees are not permitted to be employees of GEO under the ICE contracts.  Trial Ex. 129 at GEO-State 036886. The 2015 ICE Contract defines a GEO employee as "[a]n Employee of [GEO] hired to perform a variety of detailed services under this contract." *Id.* at GEO-State 036871.  A detainee, however, is defined as "[a]ny person confined under the auspices and the authority of any Federal agency. Many of those being detained may have substantial and varied criminal histories." *Id.* With respect to the VWP, the ICE contracts

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 18

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1  specifically state that: "*Detainees shall not be used to perform the responsibilities or duties of*
2  *an  employee of [GEO]*." *Id.* at GEO-State 036906.

3       Additionally, the 2015 ICE Contract requires that any person employed by GEO be a
4  United States citizen or lawful permanent resident. Specifically, ICE requires the following
5  minimum personnel qualification standards for GEO employees in Section III (Personnel) of the
6  contract:

7      **B. Minimum Personnel Qualification Standards**

8      [GEO] shall agree that each person employed by the firm or any subcontractor(s)
       shall have a social security card issued and approved by the Social Security
9      Administration **and shall be a United States citizen or a person lawfully
       admitted into the United States for permanent residence**, have resided in the
10     U.S. for the last five years . . . , possess a high school diploma or equivalent (GED),
       and obtain a favorable Suitability for Employment determination. Each employee
11     of [GEO] and of any subcontractor(s) must complete and sign a Form I-9,
       "Employment Eligibility Verification," before commencing work. [GEO] shall
12     retain the original Form I-9 and shall furnish the COR with a copy of the Form I-9
       before the employee commences work. [GEO] shall be responsible for acts and
13     omissions of its employees and of any subcontractor(s) and their employees.

14  Trial Ex. 129 GEO-State 036887.

15       Further, the ICE contracts require each GEO employee to be vetted by the Department of
16  Homeland  Security  ("__DHS__")  and  specifically  prohibit  GEO  from  employing  illegal  or
17  undocumented aliens. Specifically, Section IV (Background and Clearance Procedures) of the
18  2015 ICE Contract provides, in relevant part, the following mandate for employee eligibility:

19      **F. EMPLOYEE ELIGIBILITY**

20      [GEO] will agree that each employee working on this contract will successfully
       pass the DHS Employment Eligibility Verification (E-Verify) program operated by
21     the USCIS to establish work authorization.
       . . . .
22     [GEO] must agree that each employee working on this contract will have a Social
       Security Card issued and approved by the Social Security Administration. [GEO]
23     shall be responsible to the Government for acts and omissions of his own employees
       and for any Subcontractor(s) and their employees.
24     Subject to existing laws, regulations and/or other provisions of this contract, **illegal
       or undocumented aliens will not be employed by [GEO], or with this contract**.
25     [GEO] will ensure that this provision is expressly incorporated into any and all
       Subcontracts or subordinate agreements issued in support of this contract.
26

27  Ex. 129 at GEO-State 036894 (emphasis added).

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 19

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    In addition, the plain language of the ICE contracts directs GEO to pay the detainees $1/day

2    for participation in the VWP – and certainly authorizes GEO to do so under the direction of the

3    Government. *cf. Campbell-Ewald Co.*, 136 S. Ct. at 167. The 2015 and 2009 ICE Contracts

4    expressly provide that "Reimbursement for [the VWP] will be at the *actual cost* of $1.00 per day

5    per detainee. [GEO] *shall not exceed* the amount shown without prior approval by the Contracting

6    Officer." Trial Ex. 129 GEO-State 0366829; Trial Tr., June 8, 2021, Scott 11:24-12:13:25. The

7    phrase "actual cost" means the amount GEO actually pays to the detainees, i.e. $1/day. *See Cost*,

8    *Black's Law Dictionary* (11th ed. 2019) ("The amount paid or charged for something; price or

9    expenditure."). In other words, ICE requires GEO to actually pay—and not exceed without ICE's

10   prior approval—the total sum of $1/day per detainee.

11   Thus, because GEO has followed the terms of its contract with the federal government by

12   not treating detainees as "employees" and because Congress authorized ICE to enter into the

13   contract with GEO (8 U.S.C. § 1231(g)(1)), GEO is entitled to derivative sovereign immunity. *See*

14   *Yearsley*, 309 U.S. at 21. Indeed, because "[g]overnment contractors obtain certain immunity *in*

15   *connection with* work which they do pursuant to their contractual undertakings with the United

16   States," <u>Campbell-Ewald Co.</u>, 577 U.S. at 166 (emphasis added) (quoting <u>Brady v. Roosevelt S.S.</u>

17   <u>Co.</u>, 317 U.S. 575, 583 (1943)))—and payment is certainly connected with GEO's operation of

18   the VWP pursuant to its contract with ICE—derivative sovereign immunity would attach even if

19   the pay rate had not been specified by ICE.

20   **C.    WMWA IS PREEMPTED BY FEDERAL LAW.**

21          **1.    Express Preemption.**

22   In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which

23   made it unlawful "to hire, or to recruit or refer for a fee, for employment in the United States an

24   alien knowing the alien is an unauthorized alien … with respect to such employment." 8 U.S.C.

25   § 1324a(a)(1)(A). Under a subsection of the same statute, entitled "Preemption," Congress stated

26   that "[t]he provisions of this section preempt any State or local law imposing civil or criminal

27

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 20

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1  sanctions (other than through licensing and similar laws) upon those who employ, or recruit or

2  refer for a fee for employment, unauthorized aliens." *Id.* § 1324a(h)(2).

3      GEO does not employ the detainees at the NWDC in its custody.  However, under the

4  Plaintiffs' interpretation of the MWA, which would compel GEO, as an alleged "employer," to

5  pay a minimum wage to immigration detainees, the MWA would create a civil sanction against

6  GEO as an entity that "employ[s]" the unauthorized aliens at the NWDC and make GEO allegedly

7  liable to the sanction of  damages for lost wages. Thus, the statute comes within the scope of state

8  laws that are expressly preempted by Congress.

9      **2.    Field Preemption.**

10      Field preemption arises whenever Congress, acting within its powers, occupies the field

11  of law that governs a case. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012); U.S. Const.

12  art. VI, cl. 2. Congress has undoubted power over immigration and has occupied the field of alien

13  employability: aliens cannot be hired by any employer that knows they are illegal. 8 U.S.C.

14  § 1324a(a). This provision, first enacted as part of IRCA, is "a comprehensive scheme prohibiting

15  the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc., v.*

16  *N.L.R.B.*, 535 U.S. 137, 147 (2002). Under IRCA, all job applicants must prove their work

17  eligibility by offering proper documentation. *See U.S. Citizenship & Immigration Servs.*, OMB

18  No. 1615-0047, Employment Eligibility Verification (2018). Indeed, aliens become **inadmissible**

19  to the United States by falsely claiming to be citizens in order to secure jobs, or by misrepresenting

20  any material fact to secure work authorization. 8 U.S.C. § 1182(a)(6)(C). Only aliens who have

21  proper work authorization may be employed, which grants them labor protections such as those

22  created by the FLSA. Plaintiffs' claim is subject to field preemption because their theory would

23  allow states to wholly sidestep IRCA by extending labor laws to cover unemployable aliens.

24  Plaintiffs' claim injects Washington's MWA into the federal system by asserting an employer-

25  employee relationship under state law that cannot exist under federal law. As courts have

26  universally recognized, immigration detainees, like inmates and pretrial detainees, are not subject

27  to the FLSA. *See, e.g.*, *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396-97 (5th Cir. 1990).

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 21

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    Similarly, immigration detention facilities do not violate IRCA when detainees participate in

2    voluntary work programs because such programs are not employment. *Applicability of Employer*

3    *Sanctions*, 1992 WL 1369347, at *2. State law cannot **create** labor benefits that are unrecognized

4    by the FLSA because they are prohibited by IRCA. Holding otherwise would undercut IRCA: it

5    would allow states to authorize alien employment despite Congress's "comprehensive scheme

6    prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds*,

7    535 U.S. at 147.

8         Indeed, Plaintiffs' claim is still more clearly preempted in the detention context because

9    Congress has addressed this very issue: by enacting 8 U.S.C. § 1555(d), Congress arrogated to

10   itself the question of what "allowance" would be paid to immigration detainees. *DOD Request for*

11   *Alien Labor*, 1992 WL 13694023; *Applicability of Employer Sanctions*, 1992 WL 1369347;

12   *Guevara*, 1992 WL 1029, at *2. Detainees who work in voluntary programs like the one ICE

13   requires GEO to operate at NWDC are paid from funds appropriated by Congress and allocated to

14   ICE, which delegates the administration of the VWP to contractors at CDFs like NWDC. While

15   detainees may feel that $1 per day is too low, the relevant fact is that under federal law this payment

16   is an "allowance" paid "for work performed;" it is not a competitive wage. 8 U.S.C. § 1555(d).

17   FLSA precedents underscore this point. *E.g., Alvarado Guevara*, 902 F.2d at 396–97. As

18   discussed, ICE has long relied on that provision to authorize programs, like the VWP, that aim to

19   reduce detainee idleness and reduce operational costs, and has subjected it to specific state laws

20   only. *See* PBNDS, § 5.8, II.1-4; *id.* § 5.8, II.5 (subjecting VWP only to "applicable … state and

21   local **work safety** laws…") (emphasis added). But the agency has never concluded that state

22   minimum wage laws apply; it has considered the rate to be set by Congress. Consequently,

23   Plaintiffs seek to use state law to preempt federal law: adopting the Plaintiffs' interpretation of

24   state labor law will either upend a decades-old Congressional statute regulating immigration

25   detainees or nullify a comprehensive federal ban on employing aliens. Because neither result is

26   constitutional, Plaintiffs' claim is subject to field preemption.

27   ///

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 22

58563710;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

### 3.     Conflict/Obstacle Preemption.

Even when a state law is not subject to express or field preemption, it may still be preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Courts should "examin[e] the federal statute as a whole" and "identify[] its purpose and intended effects" to assess whether state law poses such an obstacle. *Id.* Plaintiffs' claim should be dismissed because it will plainly—and intentionally—stand as an obstacle to Congress's purposes. First, through IRCA, Congress enacted a comprehensive prohibition on alien employment. *Hoffman Plastic Compounds*, 535 U.S. at 147. That prohibition prevents GEO from employing any detainee who lacks work authorization, which plainly includes many, if not all, detainees at NWDC. By granting "backpay" to detainees, however, this Court will "trivialize [federal] immigration laws" by extending employment protections to aliens who are unemployable. *See id.* at 150. Importantly, the amended complaint contains ***no*** allegation that the Plaintiffs were authorized to be GEO's employees under federal law. Therefore, the Court cannot infer authorization to work for GEO. Compelling GEO to treat detainees as "employees" when federal law forbids it creates a direct conflict. It inverts the relationship between state and federal law by allowing state minimum wage law, rather than IRCA, to determine whether an alien can be an employee.

This obstacle becomes still clearer in light of Congress's creation of an allowance for aliens in precisely this context. Through 8 U.S.C. § 1555(d), Congress unambiguously signaled that detainees who perform work may be paid an "allowance" that ***Congress*** sets, thereby leaving no role for state laws or federal contractors to set or adjust the rates of pay for work performed by detainees. Section 1555(d) is the building block for the VWP. ICE has understood that its own authority to pay detainees arises from Congress, and, consistent with FLSA precedents and IRCA, that detainee work does not create an employment relationship with a detention facility. *DOD Request for Alien Labor*, 1992 WL 1369402; *Applicability of Employer Sanctions*, 1992 WL 1369347. PBNDS 5.8's policy that "compensation is at least $1.00 (USD) per day" stems directly

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 23

58563710;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   from the purposes and objectives of Congress. Further, the ICE-GEO contract expressly provides

2   that GEO "shall not exceed" the rate of $1 per day without ICE's approval. But Plaintiffs allege

3   that state law alone creates an employment relationship between detainees and facilities, and

4   determines the rate of pay. This imposition of state law will fundamentally alter the VWP: how it

5   functions, what it costs, and whether ICE can continue to use it as an expected practice in its

6   detention facilities. Thus, state law creates an obstacle to the power of the Attorney General, DHS,

7   and ICE—charged by Congress with the operation of federal immigration detention—to obey state

8   law mandates, at the expense of federal law.

## IV.   CONCLUSION

10      For the above stated reasons, GEO respectfully asks the Court to enter judgment as a matter

11  of law in its favor.

12      Respectfully submitted, this 10th day of June, 2021.

13                                    By: *s/ Adrienne Scheffey*
                                      **AKERMAN LLP**
14                                    Adrienne Scheffey (Admitted *pro hac vice*)
15                                    1900 Sixteenth Street, Suite 1700
                                      Denver, Colorado 80202
16                                    Telephone:  (303) 260-7712
                                      Facsimile:   (303) 260-7714
17                                    Email: adrienne.scheffey@akerman.com

18                                    By: *s/ Lawrence D. Silverman*
19                                    **AKERMAN LLP**
                                      Lawrence D. Silverman (Admitted *pro hac vice*)
20                                    98 Southeast Seventh Street, Suite 1100
                                      Miami, Florida 33161
21                                    Telephone:  (305) 982-5666
22                                    Facsimile:   (305) 374-5905
                                      Email: lawrence.silverman@akerman.com

23

24

25

26

27

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 24

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone:  (253) 566-2510
Facsimile:   (281) 664-4643
Email: joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

---

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 25

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

## PROOF OF SERVICE

I hereby certify on the 10th day of June 2021, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW** via the Court's CM/ECF system on the following:

**OFFICE OF THE ATTORNEY GENERAL**
Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff State of Washington*

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone:      (206) 622-8000
Facsimile:      (206) 682-2305
Email: hberger@sgb-law.com
Email: halm@sgb-law.com
Email: whitehead@sgb-law.com
Email: roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone:      (844) 321-3221
Facsimile:      (615) 829-8959
Email: andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone:      (206) 962-5052
Facsimile:      (206) 681-9663
Email: devin@openskylaw.com

PROOF OF SERVICE
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 26

58563710;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone:      (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs*

*s/ Nick Mangels*
Nick Mangels

DEFENDANT THE GEO GROUP, INC.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 27

58563710;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712