The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

STATE OF WASHINGTON,

          Plaintiff,

    v.

THE GEO GROUP, INC.,

          Defendant.

CIVIL ACTION NO. 17-cv-05806-RJB

**PLAINTIFF STATE OF WASHINGTON'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON GEO'S DEFENSES**

NOTE ON MOTION CALENDAR:
June 14, 2021

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1
## I.      INTRODUCTION

In clear conflict with the parties' agreed facts and the unrebutted trial testimony in this case, Defendant The GEO Group, Inc. (GEO) seeks to have the jury instructed on four defenses: (1) the residential exemption to the Minimum Wage Act (MWA), (2) the government-operated facility exemption to the MWA, (3) derivative sovereign immunity, and (4) intergovernmental immunity defenses. *See* ECF No. 378-1, Def's Proposed Instruction Nos. 16-20.[1] However, even if any of these defenses were properly preserved in Washington's case, GEO failed to present sufficient evidence at trial upon with a jury could find in its favor. Accordingly, Washington is entitled to judgment as a matter of law on each of these defenses.

The *Nwauzor* plaintiffs have separately moved for judgment as a matter of law on the MWA claim as well as GEO's defenses. Washington joins that motion in full. Washington directs this briefing at GEO's defenses because of the complete lack of support they find in either the law or the facts as established over the last two weeks. The Court should reject GEO's request that the jury be instructed contrary to the law and the facts as they were agreed to by the parties and established at trial.

## II.      ARGUMENT

After a party "has been fully heard on an issue during a jury trial," the Court "may grant a motion for judgment as a matter of law against the party on a claim or defense . . . ." Fed. R. Civ. P. 50(a)(1)(B). The Court "may direct the entry of judgment as a matter of law" where the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 325 F. Supp. 3d 1116, 1118 (W.D. Wash. 2018) (internal quotations omitted). The Court views "the trial evidence in the light most favorable to the non-moving party," *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017), and "[a] directed verdict must be entered where there is no

---

[1] *See also* GEO's Trial Brief, ECF No. 386 at 8-21 (briefing these defenses); ECF No. 477 (seeking judgment as a matter of law on each defense).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   substantial evidence to support the claim," *Eko Brands*, 325 F. Supp. 3d at 1118 (quoting

2   *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975)) (internal quotations

3   omitted). GEO has failed to present evidence to support the residential and government-operated

4   facility exemptions to the Minimum Wage Act (MWA), derivative sovereign immunity, or

5   intergovernmental immunity defenses, and instructing the jury on these defenses would conflict

6   with the parties' agreed facts and two weeks of unrebutted trial testimony. The Court should

7   grant judgment as a matter of law against GEO on each of those defenses.

8   **A.      Washington Is Entitled to Judgment as a Matter of Law on the Residential**
9   **          Exemption to the MWA**

10          The Residential Exemption of the MWA applies to workers whose job duties require that

11   they live at the place of employment, or who work "on call." Wash. Rev. Code § 49.46.010(3)(j).

12   As a threshold matter, GEO's belated attempt to assert the Residential Exemption is untimely

13   and waived because GEO failed to plead and assert it in a timely manner. *Mitchell v. PEMCO*

14   *Mut. Ins. Co.*, 142 P.3d 623, 625 (Wash. Ct. App. 2006) (describing MWA exemption as an

15   affirmative defense); *David v. Bankers Life & Cas. Co.*, No. C14-766RSL, 2018 WL 3105985,

16   at *4 (W.D. Wash. June 25, 2018) (examining MWA exemptions as affirmative defenses). Even

17   if it were not waived, GEO has failed to carry its burden of proof at trial that it applies.

18          The Residential Exemption may be satisfied in one of two ways, and GEO bore the

19   burden to prove that either clause applies to the NWDC. As this Court has recognized, the first

20   clause of the Residential Exemption applies to individuals whose "duties require that he or she

21   reside or sleep at the place of his or her employment." *Nwauzor*, ECF No. 280 at 12 (quoting

22   Wash. Rev. Code § 49.46.010(3)(j)). Here, GEO has presented no evidence at trial that the

23   detainee workers' job duties require them to sleep or reside at the NWDC. To the contrary, the

24   parties' Agreed Facts *stipulate* that the detainees are held at the NWDC pending resolution of

25   their immigration status and are not permitted to leave the facility until an immigration judge

26   orders the detainees released or deported. Trial Exhibit (Ex.) 609 (Agreed Facts 2, 10). It is the

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   detainees' detention, rather than their job duties, that leads those detained to "reside or sleep" at

2   the NWDC. *Id.*

3          Nor does the second clause of the Residential Exemption apply, *i.e.*, the clause applicable

4   to workers "who otherwise spend[] a substantial portion of his or her work time subject to call,

5   and not engaged in the performance of active duties." Again, GEO presented no evidence at trial

6   that detainee workers spend work time "on call" and not engaged in the assigned kitchen,

7   laundry, or janitorial duties. Indeed, detainee workers are assigned to specific shifts. *See, e.g.*,

8   Testimony of Alisha Singleton, 6/2/21 Trial Tr. 54:1-58:7 (testifying about Exhibit 309 and

9   different shifts worked by detainee workers on different details); Ex. 309 (work rosters);

10  Testimony of William McHatton, 6/2/21 Trial Tr. 142:3-20 (testifying about Ex. 83),

11  150:21-152:4 (testifying about Ex. 91); Ex. 83 (Cook/Prep/Service job description setting forth

12  "Normal Work Hours" as "Breakfast, Lunch, Dinner" and stating that "shift will be assigned by

13  Food Service Manager"); Ex. 91 (Pod Porter Job Description setting forth shift hours for variety

14  of pod cleaner jobs). Since all the trial evidence was consistent that detainees reside and sleep at

15  the NWDC due to their immigration cases, not because of work, and do not spend a substantial

16  portion of their work time subject to call, GEO cannot claim they are now exempt. *See also*

17  *Nwauzor*, ECF No. 280 at 12 (Court's Order rejecting GEO's motion for summary judgment on

18  the residential exemption).

19
**B.     Washington Is Entitled to Judgment as a Matter of Law on the Government-**
20  **        Operated Facility Exemption to the MWA**

21         GEO asserted in its recent JMOL motion that "detainees are not employees" under

22  Wash. Rev. Code § 49.46.010(3)(k), the provision exempting "state, county, or municipal"

23  detention facilities. GEO introduced zero evidence at trial that it is a government-operated

24  facility because it is not, as all parties stipulated in the first Agreed Fact for trial. Agreed Fact 1.

25  The jury should not be instructed on a defense that is contrary to well-established facts.

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

First, the Court should reject GEO's recent suggestion to disregard the MWA's express language or fashion a new "civil detention" test based on non-Washington authority. *See* ECF No. 477 at 10-11. As the Court knows, the Government-Operated Facility Exemption is narrow one, and has already been held inapplicable to GEO in this case. *See* ECF No. 29 at 17 (applying the Government-Operated Facility Exemption to NWDC detainees would "move[] beyond interpretation to legislation"); ECF No. 162 at 6-9; *Nwauzor*, ECF No. 280 at 13. The material facts relevant to this determination have not changed now that GEO has had the chance to prove its defenses at trial: The NWDC is still not a "state county, or municipal . . . facility." GEO is ineligible for this exemption as a matter of law, so there should be no jury instruction that suggests otherwise.

Second, GEO separately seeks a jury instruction using a "modified economic dependence test" that excludes "civilly detained individual[s]" from the definition of employees. *See* ECF No. 378-1, Def.'s Proposed Instruction No. 20 ("'Employee'—Detained Individuals"). GEO's "civilly detained individual" test, however, rewrites the plain and clear language of the MWA to add an exemption that is apparently specific to this case. The Court should decline to issue such an instruction, and should instead stick with established Washington law that "an employee includes any individual permitted to work by an employer" save for the narrow and specific exemptions codified by lawmakers. *Becerra*, 332 P.3d at 420; *see Rocha*, 460 P.3d 624, 2020 WL 1809610, at *4. As a matter of law, GEO is not entitled to the Government-Operated Facility Exemption or its newly minted "civilly detained individuals" exemption.

## C.   Washington Is Entitled to Judgment as a Matter of Law on Derivative Sovereign Immunity

The Court has already ruled against GEO on its claim of entitlement to derivative sovereign immunity. ECF No. 288 at 9; ECF No. 302. Nothing has changed since the Court issued those decisions. Based on the Agreed Facts and undisputed trial testimony, Washington is entitled to judgment as a matter of law on GEO's defense of derivative sovereign immunity.

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), held that "[g]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." That immunity, however, does not attach where a contractor's discretionary actions created the contested issue. *Id.* at 673-74. Instead, derivative sovereign immunity is limited to cases in which a contractor "had no discretion in the design process and completely followed government specifications." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)); *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 346 (4th Cir. 2014) (holding derivative sovereign immunity would not apply "if [the private contractor] enjoyed some discretion in how to perform its contractually authorized responsibilities"). Indeed, when a contractor fails to follow "the Government's explicit instructions, derivative sovereign immunity does not shield the contractor from liability." *Novoa v. GEO Grp., Inc.*, No. EDCV 17 2514 JGB (SHKx), 2018 WL 4057814, at *3 (C.D. Cal. Aug. 22, 2018) (explaining that any immunity for failure to pay minimum wage to detainee-workers depends on "[h]ow much discretion GEO had, if any, in implementing the Work Program"). Here, the Agreed Facts and trial evidence prove as a matter of law that GEO cannot avail itself of immunity, for two key reasons.

First, GEO violates the government's explicit instructions to follow state labor laws by paying detainee workers only $1 per day for work performed. While GEO agreed in its contract with ICE offer a work program and ICE agrees to reimburse GEO $1 per day for detainee work performed, the GEO-ICE contract also explicitly requires GEO to perform in accordance with all applicable federal, state and local labor laws. Ex. 129 at GEO-State 036868; Testimony of Bruce Scott, 6/7/21 Trial Tr. 159:25-160:23; Ex. 609 (Agreed Facts) ¶ 5. The contract also instructs GEO to comply with the "most stringent" of any conflicting federal, state, or local standards—an unambiguous directive that speaks to the precise circumstance here. Ex. 129 at

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

GEO-State 036876; Testimony of Bruce Scott, 6/7/21 Trial Tr. 160:24-161:19. By refusing to pay detainees the minimum wage, GEO violates the federal government's explicit instructions.

Second, GEO—and GEO alone—makes the decision to pay detainee workers only $1 per day. As is clear from the actual language of the GEO-ICE contracts, the ICE/DHS PBNDS, GEO's own admissions in this litigation, and the undisputed testimony at trial, ICE nowhere limits GEO to paying detainee-workers only $1 per day for their labor. Ex. 609 (Agreed Facts) ¶¶ 15, 17-18; Testimony of A. Singleton, 6/2/21 Trial Tr. 86:19-90:2; Ex. 14 ("The new standards . . . [s]tate[] that compensation is now at least $1.00 however doesn't say we don't have the option to pay more if we like."). Although a "CLIN 3" line item from the GEO-ICE contract sets forth the amount that ICE agreed to reimburse GEO for the work program, the CLIN 3 line item nowhere states that GEO must pay detainee workers any particular wage, much less *limit* GEO to paying only $1 per day to detainee workers. *See* Ex. 129 at GEO-State 036833.

Were there any doubt, GEO not only acknowledges it can pay detainees more than $1 per day under the GEO-ICE Contracts and the PBNDS, GEO actually *has* paid detainee workers more than $1 per day for work performed by detainee workers. Testimony of John Patrick Griffin, 6/3/21 Trial Tr. 68:4-5; Testimony of A. Singleton, 6/2/21 Trial Tr. 82:23-84:25, 91:11-92:11; Ex. 115 at GEO-State 104148-149. In a memo, GEO's Classifications Department informed the Associate Warden that the PBNDS "doesn't say that we don't have the option to pay more [than $1.00 per day] if we like." Ex. 14. And, of course, ICE has explicitly told GEO that "there is no maximum" rate of compensation for detainee workers. Ex. 364 at GEO-State 283813.

Although GEO-ICE contract provisions prohibit GEO from using detainees to fulfill contractual obligations, Ex. 129 at 82, and requires GEO employ only U.S. citizens or legal permanent residents as employees, *id.* at 63, neither provision authorizes or directs GEO to ignore state law generally or the MWA in particular. Indeed, the undisputed facts at trial show that some detainee workers are lawfully admitted residents with work authorization. Testimony

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  of Jose Medina-Lara, 6/3/21 Trial Tr. 135:21-136:1; Testimony of Christopher Strawn 158:12-
2  159:12. Notably, GEO could comply with both GEO-ICE contract provisions, and state law, by
3  hiring non-detained Washingtonians from the Pierce County labor pool who need jobs and
4  paying them the minimum wage. Given the many options that allow GEO to comply with both
5  state and federal law, these provisions in the GEO-ICE Contract cannot plausibly be construed
6  as a "government specification" that GEO violate Washington's labor laws. *Cf. Cabalce*, 797
7  F.3d at 732.

8          In sum, GEO did not simply perform as directed by the federal government and the Court
9  was correct when it previously held that "GEO has not shown that it was directed to pay
10 participants in the VWP only a $1 for the relevant period." ECF No. 288 at 9. Since the
11 discretionary choices at the heart of this lawsuit were made by GEO and not the federal
12 government, *see Cabalce*, 797 F.3d at 732, derivative sovereign immunity does not apply, GEO
13 has failed to meet its burden of proof at trial, and Washington is entitled to judgment as a matter
14 of law on this defense.

15
16 **D.     Washington Is Entitled to Judgment as a Matter of Law on Intergovernmental
          Immunity**

17         Finally, following a full opportunity to present evidence at trial, GEO has failed to put
18 forward evidence sufficient to allow the jury to rule in its favor on intergovernmental immunity.
19 Intergovernmental immunity applies to a state regulation "*only* if it regulates the United States
20 directly or discriminates against the Federal Government or those with whom it deals." *North*
21 *Dakota v. United States*, 495 U.S. 423, 435 (1990) (citing *South Carolina v. Baker*, 485 U.S.
22 505, 523 (1988)) (emphasis added). Based on the undisputed testimony of GEO employees as
23 well as state government witnesses, GEO's intergovernmental immunity arguments fail as a
24 matter of law and should not be put to a jury.

25         First, on the "direct regulation" prong, the question is whether the MWA directly
26 regulates the federal government. GEO is a for-profit corporation, not the federal government,

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   and neither the MWA nor its application to GEO regulates the federal government's "operations

2   or property." *See North Dakota v. United States*, 495 U.S. at 434-38 (no direct regulation where

3   law operated against federal contractor rather than the federal government); *see Nwauzor*, ECF

4   No. 280 at 16-17 (holding that GEO failed to show that the MWA regulates the United States

5   directly); *see also* ECF No. 162 at 7 (explaining that "the MWA does not regulate the Federal

6   Government directly, and, in fact, imposes no duty on the Federal Government itself"). Insofar

7   as GEO seeks to equate itself with the federal government, the Court has already rejected that

8   contention. *Nwazour,* ECF No. 280 at 16. GEO's "direct regulation" intergovernmental

9   immunity defense fails as a matter of law and should not be put before the jury.

10      Second, applying the MWA to detainee workers at the NWDC does not mean that the

11   MWA discriminates against the federal government or GEO. It simply means that GEO is subject

12   to the same law as other private employers. As the Court knows, a state law does not implicate

13   intergovernmental immunity where the state regulation "is imposed on some basis unrelated to

14   the object's status as a federal Government contractor" and is "imposed equally on other

15   similarly situated constituents of the State." *North Dakota*, 495 U.S. at 438. Intergovernmental

16   immunity "prevents states from … singling out for regulation those who deal with the

17   government," but does not prohibit the enforcement of *neutral* state laws against federal

18   contractors. *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 904 (N.D.

19   Cal. 2007) (rejecting intergovernmental immunity claim where laws at issue "regulate equally

20   all public utilities, making no distinction based on the government's involvement").

21      Under controlling Supreme Court case law, a state law does not run afoul of

22   intergovernmental immunity even if a generally applicable state regulation may "make it more

23   costly for the Government to do its business." *Id.* at 434 (describing that theory as "thoroughly

24   repudiated") (citing cases). Instead, state laws may impose burdens on federal contractors (and,

25   indirectly, on the federal government) without raising constitutional concerns as long as they

26   regulate federal contractors in a non-discriminatory manner. *See, e.g., Washington v. United*

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*States*, 460 U.S. 536, 545 (1983) (upholding state tax law where "[t]he tax on federal contractors is part of the same structure, and imposed at the same rate, as the tax on the transactions of private landowners and contractors"); *U.S. Postal Serv. v. City of Berkeley*, No. C 16-04815 WHA, 2018 WL 2188853, at *3 (N.D. Cal. May 14, 2018) (finding no discriminatory treatment of potential buyers of a federal post office building where city's land-use restriction was "imposed equally on other similarly situated constituents of the State").

Here, intergovernmental immunity does not apply because the MWA is a neutral state law that applies equally to all similarly situated constituents in Washington—just as the Court has previously held. ECF No. 162 at 6 ("At its core, and by design, the MWA protects employees and prospective employees generally, placing private firms that contract with the federal government on equal footing with all other private entities."). Though the MWA may or may not indirectly economically burden the federal government, it does not single out or discriminate against GEO based on its status as a federal contractor. *See* ECF No. 162 at 6 ("[T]he MWA is imposed equally on other similarly situated constituents of the State."). Washington's claim simply requires that GEO, like any other private employer, pay the minimum wage.

At trial, GEO has suggested that the MWA discriminates against GEO because it exempts the Special Commitment Center, Washington State prisons, and State rehabilitative centers and psychiatric hospitals from its requirements. But state and other publicly run institutions are not similarly-situated employers. The proper comparators for state-run facilities are federally-run facilities, and the undisputed trial testimony shows that Washington does not apply the MWA to federal installations. Testimony of Joshua Grice, 6/11/21 Trial Tr. 150:23-151:3. Likewise, the proper comparator for GEO, a private contractor that deals with the federal government, is a similarly situated private contractor that deals with the state government—but not the *state government itself*. Another way to consider this point is set forth in the following chart showing to whom the Washington MWA applies:

1

**Does the Washington State Minimum Wage Apply?**

| | Government Institution | Private Contract Facility |
|---|---|---|
| **Federal Detainees** | No | Yes |
| **State Detainees** | No | Yes |

As the chart illustrates, the treatment under the MWA is the same for the federal and state governments (MWA does not apply); and for private contractors regardless of with whom they deal (MWA does apply). There is no difference based on one's status as a federal contractor. Indeed, this is exactly what the Court recognized when it first denied GEO's intergovernmental immunity summary judgment motion. ECF No. 162 at 6 (noting that "private entities" like GEO are not covered under Wash. Rev. Code § 49.46.010(3)(k) and remain on "equal footing" regardless of whether they are dealing with the federal or state governments).

GEO likely ignores the proper comparators because it knew it would be unable to—and, in fact, did not—present *any* evidence at trial of any private facilities in Washington that contract with the State to provide civil detention services but do not pay the minimum wage. Instead, the state witnesses testified regarding *state run* programs that have very different missions than making a profit. Testimony of Sarah Sytsma, Trial Tr. 6/11/21, 12:19-23 ("We train our incarcerated with job skills and we promote positive work ethic, meaning we provide training programs, not only in technical skills but soft skills training as well."); Testimony of Christina Wells, Trial Tr. 6/11/21, 108:20-109:7, 110:20-111:11 ("Developmental Disabilities Administration" houses "individuals that are diagnosed with an intellectual disability, so they need help in their day-to-day care, washing, bathing, dressing, toothbrushing, cooking, those kinds of things. . . . "[O]ur job is to train and make them as independent as possible[.]").

In light of the obvious differences between the state programs and the NWIPC, GEO has offered its own expired contract with the Department of Corrections as a comparator, the GEO-DOC contract was never utilized by DOC and only authorized the detention of state inmates

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    *outside* the State of Washington, where Washington's MWA could never have applied.

2    Testimony of Debra Eisen, Trial Tr. 6/10/21, 72:4-73:11, 83:10-12, 89:15-18, 104:11-22; ECF

3    No. 312, ¶¶ 5-8 (Declaration of DOC Contracts Administrator). *Nwazour*, ECF No. 280 at 18

4    (questioning whether an out-of-state contract is "sufficiently similar" for intergovernmental

5    immunity purposes).

6          To the extent that GEO quotes a footnote from a Ninth Circuit decision to argue that

7    "federal contractors are treated the same as the federal government itself" for purposes of

8    intergovernmental immunity, *United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019),

9    that proposition is expressly limited by the very holding of that case, which *allowed* neutral state

10   laws to apply to immigration detention facilities. It is also limited by the supporting citation,

11   *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988). In *Goodyear*, a "direct state

12   regulation" case, regulation of the federal contractor was deemed to be regulation of the federal

13   government directly because the contractor was performing a federal function *within* a federally

14   owned facility. 486 U.S. at 180-81 (contractor performed at a "federally owned nuclear

15   production facility"). That is certainly not the case here, where GEO alone owns the NWDC,

16   ECF No. 253-1 at 5 (RFA 1), and the MWA is not regulating any federal function.

17         In short, GEO has produced no evidence that would allow a jury to find in its favor on

18   intergovernmental immunity. Judgment should be entered against it as a matter of law and the

19   jury should not receive any instruction on this defense.

20   ### III.    CONCLUSION

21         GEO has failed to present sufficient evidence upon which the jury could find in its favor,

22   and the Court should grant judgment as a matter of law against it on the residential and

23   government-operated facility exemptions to the Minimum Wage Act, derivative sovereign

24   immunity, and intergovernmental immunity defenses.

25         DATED this 14th day of June 2021.

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington

s/ *Marsha Chien*
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

12

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that the foregoing document was electronically filed with the United

3  States District Court using the CM/ECF system. I certify that all participants in the case are

4  registered CM/ECF users and that service will be accomplished by the CM/ECF system

5

6      Dated this 14th day of June 2021.

7

8      _____
CAITILIN HALL

9      Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW ON GEO'S
DEFENSES

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744