The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

STATE OF WASHINGTON,

Case No. 3:17-cv-05806-RJB

10

Plaintiff,

11

v.

12

THE GEO GROUP, INC.,

13

Defendant.

14

UGOCHUKWU GOODLUCK
NWAUZOR, FERNANDO AGUIRRE-
URBINA, individually and on behalf of all
those similarly situated,

Case No.: 3:17-cv-05769-RJB

15

16

**THE GEO GROUP, INC.'S RULE 50(b)
MOTION FOR JUDGMENT AS A
MATTER OF LAW**

17

Plaintiff,

18

v.

**NOTE ON MOTION CALENDAR:**

19

THE GEO GROUP, INC., a Florida
corporation,

August 6, 2021

20

Defendant.

**ORAL ARGUMENT REQUESTED**

21

22

23

24

25

26

27

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

**I.**   INTRODUCTION ................................................................................. 1

  **1.**   The Evidence at Trial Did Not Support a Finding by the Jury that the Federal Detainee Workers Were GEO Employees under the Provisions of the WMWA. ... 1

  **2.**   Ninth Circuit Precedent Clearly Calls for a Finding by this Court that the Federal Detainee Workers Are Not "Employees" under the Provisions of the WMWA...... 2

  **3.**   A Recent Fourth Circuit Court of Appeals Ruling, Citing Nearly Every Other Federal Judicial Circuit in the United States, including the Ninth Circuit, Addresses Each and Every Argument Presented by Plaintiffs and Squarely Rejects Them, Unequivocally, One by One ........................................................................... 3

**II.**   ARGUMENT ........................................................................................8

  **A.**   WMWA DOES NOT APPLY TO DETAINEES PARTICIPATING IN THE VWP ............................................................................9

    1.   As a Matter of Law, Federal Detainees at NWIPC Are Not Employees. .... 9

    2.   Detainees Are Not Employees under the Resident Exception to the WMWA. ...........................................................................12

  **B.**   INTERGOVERNMENTAL IMMUNITY APPLIES TO GEO. ...........................13

    1.   Misapplying WMWA Would Directly Regulate and Substantially Interfere with Federal Operations..........................................................14

    2.   Misapplying WMWA Would Discriminate Against the Federal Government and GEO...........................................................................17

  **C.**   DERIVATIVE SOVEREIGN IMMUNITY APPLIES TO GEO. .......................20

  **D.**   FEDERAL LAW PREEMPTS WMWA. ....................................................22

CONCLUSION .................................................................................................24

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – i

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1

2

## <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4

5

<u>Page</u>

6

*Alvarado Guevara v. INS*, 902 F.2d 394 (1990) .......................................................23

7

*Anderson v. State, Dep't of Soc. & Health Servs.*, 115 Wash. App. 452 (2003).....................9

8

*Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851 (2012)............................13

9

*Arizona v. United States*, 567 U.S. 387 (2012)........................................................22

10

*Baggett v. Bullitt*, 377 U.S. 360 (1964)...............................................................11

11

*Berrocal v. Fernandez*, 121 P.3d 82 (Wash. 2005) ..................................................13

12

*Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996)........................................14

13

*Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ............................................8, 14, 15

14

*Bordell v. Gen. Elec. Co.*, 164 A.D.2d 497 (N.Y. App. Div. 1990) ................................14

15

*Calhoun v State*, 193 P.3d 188 (Wash. Ct. App. 2008) ............................................9

16

*Calhoun v. State*, 146 Wash. App. 877 (2008) .....................................................8

17

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ............................................20, 21, 22

18

*Clark v. Martinez*, 543 U.S. 371 (2005) ..............................................................11, 12

19

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ....................................23

20

*Dawson v. Steager,* 139 S. Ct. 698 (2019)............................................................18

21

*Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320 (9th Cir. 1991) .............................10

22

*Goodyear Atomic Corp. v. Miller,* 486 U.S. 174 (1988) ...........................................14

23

*Hale v State of Ariz.*, 967 F.2d 1356 (9th Cir. 1992) .............................................10

24

*Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993) ...................................................3, 10

25

*Hancock v. Train*, 426 U.S. 167 (1976)..............................................................15, 16

26

*Hoffman Plastic Compounds, Inc., v. N.L.R.B.*, 535 U.S. 137 (2002)..............................22, 23

27

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – ii

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019) .......20

*Lafley v. SeaDruNar Recycling, L.L.C.*,
    138 Wash. App. 1047, 2007 WL 1464433 (Wash. Ct. App. 2007).....................................9

*Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959 (W.D. Ky. 1993)....................14

*McCulloch v. Maryland*, 17 U.S. .......................................................................................13, 14

*Morgan v. MacDonald*, 41 F.3d 1291 (9th Cir. 1994)..............................................2, 8, 10, 11

*Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021) .............................3, 4, 5, 6, 7, 8, 11

*Park v. Choe*, No. C06-5456RJB, 2007 WL 2677135 (W.D. Wash. Sept. 10, 2007).............13

*Reeves v. Sanderson Plm'g Prods., Inc.*, 530 U.S. 133 (2000)...................................................8

*Strain v. W. Travel, Inc.*, 70 P.3d 158 (Wash. Ct. App. 2003) ................................................13

*Thomas v. Cannon*, 289 F. Supp. 3d 1182 (W.D. Wash. 2018)..................................................8

*United States v. California*, 921 F.3d 865 (9th Cir. 2019)................................8, 14, 15, 17, 19

*Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) ..........................................................20

**Statutes**

8 U.S.C.
    § 1182(a)(6)(C) ......................................................................................................................23
    § 1231(g)(1) ...........................................................................................................................21
    § 1324a(a) ................................................................................................................................
    § 1324a(a)(1)(A) ...................................................................................................................22
    § 1324a(h)(2) .........................................................................................................................22
    § 1555(d) .........................................................................................................................18, 23

RCW
    49.46.010..........................................................................................................................11, 22
    49.46.010(3)(d)......................................................................................................................17
    49.46.010(3)(j).......................................................................................................................12
    49.46.010(3)(k).................................................................................................................8, 17
    49.46.010(4)...........................................................................................................................15
    49.46.010(5)(j).......................................................................................................................13
    49.46.020................................................................................................................................16
    49.46.040(3)...........................................................................................................................16
    49.46.090................................................................................................................................22
    49.48.030................................................................................................................................22

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – iii

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

## Other Authorities

*Applicability of Employer Sanctions*, 1992 WL 1369347 ................................................23, 24

*Cost*, BLACK'S LAW DICTIONARY (11th ed. 2019)....................................................21

Detention Services (Denver AOR), SAM.GOV, https://bit.ly/3ifhnel (last visited July 15, 2021) ................................................................................................15, 21

*DOD Request for Alien Labor*, 1992 WL 13694023 ......................................23, 24

Fed. R. Civ. P. 50(a)(1).............................................................................................8

Fed. R. Civ. P. 50(b) .................................................................................................8

Press Release, House Appropriations Committee, Appropriations Committee Releases Fiscal Year 2022 Homeland Security Funding Bill, *available at* https://bit.ly/3raEUkM (last visited July 15, 2021)................................................................................................18

Staff of H. Comm. on Appropriations, 117th Cong., 1st Sess., Draft Appropriations Bill, *available at* https://bit.ly/3wJSSLJ (last visited July 15, 2021)..........................................18

*U.S. Citizenship & Immigration Servs.*, OMB No. 1615-0047, Employment Eligibility Verification (2018)..................................................................................................22, 23

.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – iv

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Pursuant to Fed. R. Civ. P. 50(b), The GEO Group, Inc. ("<u>GEO</u>"), renews its motion for judgment as a matter of law against Plaintiffs. As grounds, GEO states the following:

## I.   **INTRODUCTION**

The Court and the jury have now heard all of the Plaintiffs' evidence, and there can be no doubt that they failed as a matter of law and of fact to demonstrate that the participation of federal immigration detainees in the Voluntary Work Program ("VWP") mandated by U.S. Immigration and Customs Enforcement ("ICE") is employment under the Washington Minimum Wage Act ("WMWA") and that the federal detainee workers were entitled to be paid minimum wages under that Act. Defendant wants to now focus on three salient points:

1)  The evidence presented by Plaintiffs at trial did not support a finding by the jury that the federal detainee workers were "employees" of GEO for purposes of applying the provisions of the WMWA;

2)  Ninth Circuit precedent clearly calls for a finding by this Court that the federal detainee workers are not "employees" under the provisions of the WMWA; and

3)   A recent Fourth Circuit Court of Appeals ruling, citing nearly every other federal judicial Circuit in the United States, including the Ninth Circuit, addresses each and every argument presented by Plaintiffs and squarely rejects them, unequivocally, one by one.

**1.     The Evidence at Trial Did Not Support a Finding by the Jury that the Federal Detainee Workers Were GEO Employees under the Provisions of the WMWA.**

Plaintiffs focused squarely on the Court's first Question to the jury, namely, whether the federal detainee workers were employed by GEO in accordance with the provisions of the WMWA. Over and over, Plaintiffs repeated their mantra that the detainees were "taken advantage of" by a profit-making company who employed them without regard for their right to minimum wages under State law. Over and over, Plaintiffs repeated the definition of "employ" under the Act, *i.e.*, "includes to permit to work" as though it were self-evident that GEO somehow had "permitted" the federal detainees to work at the facility, like the detainees and GEO had somehow bargained for such permission and struck a deal, albeit one that deprived the detainees of their rightful wages. But the evidence was clearly contrary to this tiresome contention.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 1

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

What the evidence showed was that GEO operates a federal immigration processing center for the United State federal government pursuant to a contract, and that contract is governed by the Performance Based National Detention Standards ("PBNDS"), and that among the many operational requirements of that contract is a mandate that GEO provide all detainees with the opportunity (but not the obligation) to participate in a Voluntary Work Program ("VWP") that pays participating detainee workers $1 per day. At no point was any evidence presented that showed or even suggested that GEO had the ability to "permit" a detainee to work or not to work. The VWP does not provide GEO with such authority. The work is not within GEO's remit to permit or deny – it is the detainees' unilateral choice whether or not to participate in the program and to be paid the federally established daily rate of pay, subject only to loss of such participatory right due to disciplinary or health-related reasons.

Since the evidence at trial clearly showed that GEO did not, in fact, "permit" any federal detainee to work at the facility, the way, say, a store owner might permit a new hire to work behind the counter after interviewing several candidates and selecting one over others, it is clear that GEO did not "employ" federal detainee workers at the facility as that term is defined under the WMWA.

**2.      Ninth Circuit Precedent Clearly Calls for a Finding by this Court that the Federal Detainee Workers Are Not "Employees" under the Provisions of the WMWA.**

In *Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994), the Court said that, "In dismissing the inmates' claims, we adhered to the "economic reality" standard long used to determine whether an employer-employee relationship exists under the FLSA." Rejecting "the four-factor test from *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)," and relying instead on "the broad principles enunciated in *Hale*," the Court concluded that Morgan (the Plaintiff) "cannot be considered an employee under the FLSA. Like the inmates in Hale, Morgan worked for a program established by the prison and operated under the direction of prison officials". That is precisely the situation in the case before this Court – the federal detainee workers worked in a program established by the federal government for its immigration processing centers and operated under the direction of facility officials. The *Morgan* Court held that "Morgan was in no sense free to bargain with would-be employers for the sale of his labor;

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 2

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

his work at the prison was merely an incident of his incarceration." That is precisely the situation in the case before this Court – the federal detainee workers were in no sense free to bargain with GEO or the federal government for the "sale of their labor"; their work at the Center "was merely an incident of their" confinement. The *Morgan* Court noted that "Morgan and the prison didn't contract with one another for mutual economic gain, as would be the case in a true employment relationship; their affiliation was "penological, not pecuniary." *Hale v. Arizona*, 993 F.2d 1387, 1395 (9th Cir. 1993). To hone the fine point, that is precisely the situation in the case before this Court – the federal detainee workers did not contract with GEO or the federal government for mutual economic gain; their affiliation was custodial, not pecuniary.

**3.    A Recent Fourth Circuit Court of Appeals Ruling, Citing Nearly Every Other Federal Judicial Circuit in the United States, including the Ninth Circuit, Addresses Each and Every Argument Presented by Plaintiffs and Squarely Rejects Them, Unequivocally, One by One.**

In the case, *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372-73 (4th Cir. 2021), Circuit Judge Wilkinson summarized the Appellate Court's Finding this way:

> Appellants are former Immigration and Customs Enforcement civil detainees who allege that they are owed wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., for work performed while detained. The district court dismissed the case on the grounds that this circuit and others have declined to extend the FLSA to custodial settings. For the reasons that follow, we think that task is best left to Congress and thus affirm.

The *Ndambi* case is squarely on point with the case before this Court and the ruling was handed down on March 5, 2021.[1] The plaintiffs in *Ndambi* were federal detainees who sought minimum wages under state of New Mexico minimum wage laws and the FLSA for work performed in a Voluntary Work Program provided at a federal immigration processing center operated by a private for-profit operator in New Mexico. All of the arguments made by the Plaintiffs before this Court were made in the *Ndambi* case by similarly situated plaintiffs. Every single argument was soundly rejected by the District Court Judge and the Court of Appeals.

---

[1] Of course, this Court did not have the benefit of *Ndambi* when it declined to grant GEO's Motion for Summary Judgment in 2020. *Ndambi* is a completely new legal development.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 3

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Demonstrating just how on point the *Ndambi* case is, Judge Wilkinson laid out the facts as follows:

> The contract also requires CoreCivic [the for-profit private operator] to operate Cibola in accordance with ICE's Performance-Based National Detention Standards (PBNDS). These standards mandate that CoreCivic offer and manage a Voluntary Work Program (VWP) for detainees. The VWP aims to "reduce[]" the "negative impact of confinement . . . through decreased idleness, improved morale and fewer disciplinary incidents," while also providing detainees "opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility." As its name suggests, the program is voluntary, although selection and continued participation depend on a detainee's classification level, attitude, and behavior. Work assignments include "preparing and serving meals, cleaning the facilities, performing other janitorial tasks, performing laundry services, and operating the library and the barber shop." CoreCivic sometimes hires community members of Cibola County to perform the same or similar work. Detainees are not permitted to "work in excess of 8 hours daily, 40 hours weekly." Appellants participated in Cibola's VWP by working as janitors and in the library and kitchen. For this work, they were compensated between $1.00 a day and $15.00 a week, which is markedly below the federally- and state-mandated minimum wages for covered employees but satisfies the pay required by the VWP standards. Appellants further allege that because CoreCivic failed to provide them "with adequate facilities and basic necessities," they "used their wages to purchase items, such as phone calls, food, and toiletries, that met their basic needs."

This characterization of the case should sound strikingly familiar to this Court. And the arguments made by the Plaintiffs and rejected by the Court in the *Ndambi* case are, in every important and relevant way, the same as those made by the Plaintiffs in the case before this Court.

In his opinion, Judge Wilkinson summarizes what the trial court Judge found in the *Ndambi* case:

> The trial court thus concluded that appellants were not "employees" as contemplated by the FLSA or NMMWA and were therefore not entitled to federal or state-mandated minimum wages. "The economic reality of the Plaintiffs' situation," the court noted, "is almost identical to a prison inmate and does not share commonality with that of a traditional employer-employee relationship." The court then dismissed appellants' unjust enrichment claim as contingent on the success of their FLSA claim.

Again, this characterization of what the Federal Trial Judge did in the *Ndambi* case could not be more on point or more dispositive of how the issues of the case before this Court should be properly framed and understood.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 4

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Judge Wilkinson writes in the Court's de novo review of the lower Court's ruling that:

> The FLSA was enacted to protect workers who operate within "the traditional employment paradigm." Harker, 990 F.2d at 133. Persons in custodial detention—such as appellants—are not in an employer-employee relationship but in a detainer-detainee relationship that falls outside that paradigm. There are many crucial differences between these two relationships. In the latter relationship, individuals are under the control and supervision of the detention facility, which is simply not comparable to the "free labor situation of true employment." Id. Those in custodial detention, unlike workers in a free labor market, "certainly are not free to walk off the job site and look for other work." Id.; *see also id.* ("When a shift ends, inmates do not leave DOC supervision, but rather proceed to the next part of their regimented day."); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991). Put simply, "there is too much control to classify the [detainer-detainee] relationship as one of employment." *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992).
>
> It is for that reason that the mere voluntariness of participating in a work program or the transfer of money between a detainee and detainer does not manufacture a bargained-for exchange of labor. There is an "exchange" in the normal sense of the word when money moves from CoreCivic's pockets to those of the detainees, but that exchange is not "bargained-for." Those in custodial detention "do not deal at arms' length." *Harker*, 990 F.2d at 133; *see also* Alvarado Guevara, 902 F.2d at 396. While a detainee may choose whether or not to participate in a voluntary work program, they have that opportunity "solely at the prerogative" of the custodian. *Harker*, 990 F.2d at 133; see also *Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994) ("[The inmate] was in no sense free to bargain with would-be employers for the sale of his labor; his work at the prison was merely an incident of his incarceration."). Such is the case here with the detainees' participation in the VWP.

And in response to a point raised by the Plaintiffs in the case before this Court regarding the alleged need of detainees to work in order to supplement their allegedly poor nutrition, Judge Wilkinson writes:

> Moreover, unlike workers in a free labor market who use their wages to maintain their "standard of living" and "general well-being," 29 U.S.C. § 202(a), detainees in a custodial institution are entitled to the provision of food, shelter, medicine, and other necessities. See *Harker*, 990 F.2d at 133; *Vanskike*, 974 F.2d at 810–11; *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992). Like the inmates in *Harker*, CoreCivic is both morally and legally bound to meet detainees' basic needs, further undermining appellants' claim that the FLSA is applicable. In an effort to blunt this point, appellants contest the adequacy of the food and other necessities that CoreCivic is contractually obligated to provide. But any potential inadequacy of conditions is not appropriately remedied by applying the FLSA wholesale to detainees. As the Seventh Circuit noted, it "is the jail's constitutional obligation to provide [a detainee] with his basic needs, including adequate food and drinkable water. When the jail fails to do so,

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 5

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1

it is that failure that must be remedied (the Constitution demands it); it does not entitle him to receive minimum wage under the FLSA." *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015). Such a conclusion makes good sense. Hinging the FLSA's application on the adequacy of mandated conditions would lead to prolonged litigative uncertainty and leave everyone in limbo.

2

3

4

Finally, GEO directs this Court's attention to the following lengthy citation from Judge

5

Wilkinson's well-reasoned and well-articulated decision:

6

Our circuit is hardly alone in refusing to expand the Act to custodial detentions. Each circuit to address the issue—whether the litigants sought FLSA application for inmates, or pretrial detainees, or civil detainees—has concluded that the FLSA's protections do not extend to the custodial context generally. See, e.g., *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (inmate labor); *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005) (same); *Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997) (same); *Danneskjold v. Hausrath*, 82 F.3d 37, 43–44 (2d Cir. 1996) (same); *Abdullah v. Myers*, 52 F.3d 324, at *1 (6th Cir. 1995) (same); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994) (same); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 686–87 (D.C. Cir. 1994) (same); *Franks v. Okla. State Indus.*, 7 F.3d 971, 973 (10th Cir. 1993) (same); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (same); see also *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) (pre-trial detainee labor); *Tourscher v. McCullough*, 184 F.3d 236, 243–44 (3d Cir. 1999) (same); *Villarreal v. Woodham*, 113 F.3d 202, 206–07 (11th Cir. 1997) (same); see also *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (civil detainee labor); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013) (same).

7

8

9

10

11

12

13

14

15

16

Such a weight of authority is not easily dismissed. Failing in their distinction between criminal and civil detainment, appellants highlight that they are being detained for immigration purposes, noting that "[c]ivil immigration detention is not punitive or corrective." J.A. 10. But the fact that appellants are being held specifically for immigration purposes does not alter our analysis. Neither *Harker* nor *Matherly* turned on the reason for the custodial detention but rather the fact of it. Appellants are detained pending administrative immigration proceedings and cannot leave the facility without authorization from ICE. As explained above, the custodial detention context is inconsistent with the free labor market envisioned by the FLSA, and the amassed authority of our sister circuits demonstrates that logic applies to institutional confinements generally. See, e.g.,*Miller*, 961 F.2d at 9 (civil detainee); *Villarreal*, 113 F.3d at 206 (pretrial detainee).

17

18

19

20

21

22

23

Indeed, to find that detention for immigration purposes could render a detainee an "employee" for purposes of the FLSA would create a split with the Fifth Circuit, which has addressed this issue head-on. See *Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) (per curiam). Considering the Act's purpose, the Fifth Circuit found that "current and former alien detainees of the INS whom Defendants employed in grounds maintenance, cooking, laundry and other services at the rate of one dollar ($1.00) per day" were not "employees" for purposes of the FLSA. Id. at 395–96. Thus, to hold with appellants would require

24

25

26

27

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 6

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

us to not only contravene our own precedent but would also create a conflict in a context where uniformity is favored.

Appellants argue finally that the FLSA's aim of combatting unfair competition in the marketplace is implicated because the detention facility happens to be operated by a for-profit, private entity. See 29 U.S.C. § 202(a). But whatever merit this observation possesses as a matter of policy cannot dictate its adoption as a proposition of law. Other circuits have held that the nonemployee-status of detainees is not altered by the private, for-profit nature of the detention facility. See, e.g., *Bennett*, 395 F.3d at 409 ("The Fair Labor Standards Act is intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one."). While detentions may well have an incidental monetary aspect, their aims are not primarily economic ones. "The purpose of [appellants'] detention is to ensure their presence during the administrative process and, if necessary, to ensure their availability for removal from the United States." (Appellants' Class Action Complaint). The fact that CoreCivic would have to hire non detainees for such work without detainees' participation does not eliminate the non-pecuniary goals of the VWP. As with the work programs in *Harker* and *Matherly*, the VWP's aim of reducing the "negative impact of confinement . . . through decreased idleness, improved morale and fewer disciplinary incidents" remains intact. (Voluntary Work Program pamphlet); see also *Abdullah*, 52 F.3d at *1 ("The fact that the prison in which Abdullah is incarcerated is managed by a private contractor does not render the interest served by providing work for the inmates into a pecuniary rather than a rehabilitative one. Under either scenario [whether the institution is public or private], services not performed by prisoners would have to be obtained at a greater expense.").

Our point is emphatically not one of advocacy for any method of detention or custody. It is simply not within this court's authority to amend statutes from the bench. The FLSA was a congressional creation, and its expansion is a matter for Congress as well. What appellants propose is a fundamental alteration of what it means to be an "employee." Appellants are not employees in the free labor market contemplation of the Act, and we are powerless to make them so. If Congress wishes to apply the FLSA to custodial detentions, it is certainly free to do so. But the corollary is that courts are not.

For the foregoing reasons, we affirm the judgment.

This is a powerful *tour de force*, one that cites controlling precedent in nearly every judicial circuit in the country, and touches on every aspect and every argument made by the Plaintiffs in the case before this Court. Of note is Judge Wilkinson's final point about the opinion not being one that stands for or against a federal program that pays immigrant detainees $1 per day for their participation in a federally mandated program provided by a contractually bound private operator. It is simply, but emphatically, a ruling that upholds the foundations of constitutional law that stand on the rock-hard proposition that States do not control or govern how federal programs are to be

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 7

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1   run, either by the federal government directly or through its contracted operator.

2       We respectfully ask the Court to enter judgment against Plaintiffs as a matter of law.[2]

3                           **II.   ARGUMENT**

4       Under both Washington state law, *see, e.g.*, *Calhoun v. State*, 146 Wash. App. 877, 886

5   (2008) (pretrial detainees are not "employee[s] for purposes of chapter 49.60 RCW"), and

6   controlling federal law, *see, e.g.*, *Morgan*, 41 F.3d at 1293—indeed, again, under every federal

7   court of appeals to consider the question, including the Ninth Circuit—on-site work programs for

8   lawfully confined individuals like the VWP do not give rise to an employer-employee relationship.

9   *See, e.g.*, *Ndambi*, 990 F.3d at 372-73. But even if participants in the VWP could be deemed

10  employees under the WMWA, Plaintiffs' case still fails as a matter of law because the Constitution

11  forecloses application of a law that directly regulates the Federal Government, in violation of

12  intergovernmental immunity doctrine, by purporting to regulate GEO's execution of its contractual

13  duties to the Federal Government*, see, e.g.*, *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839-40 (9th

14  Cir. 2014) (where, as here, a state law "regulate[s] what the federal contractors had to do or how

15  they did it pursuant to their contracts," it "directly interferes with the functions of the federal

16  government" by "mandat[ing] the ways in which [a contractor] renders services that the federal

17  government hired [the contractor] to perform"). Washington's law also unconstitutionally violates

18  intergovernmental immunity doctrine by discriminating against Federal operations in favor of

19  comparable state operations. It is undisputed that the WMWA does not require payment of

20  minimum wage to individuals incarcerated in Washington state and local detention facilities. *See*

21  RCW 49.46.010(3)(k). And the Ninth Circuit has squarely held that, for purposes of discrimination

22  analysis under intergovernmental immunity doctrine, the proper comparators for immigration

23  facilities like the Northwest ICE Processing Center ("NWIPC") are state and local detention

24

25  ─────────────────

26  [2] Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1). A mere "'scintilla of evidence'" is insufficient, *Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1194 (W.D. Wash. 2018) (citation omitted), and the Court credits "'evidence
27  supporting the moving party that is uncontradicted and unimpeached,'" as well as "'evidence favoring the nonmovant.'" *Reeves v. Sanderson Plm'g Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). Judgment may be granted on "a renewed motion as a matter of law." Fed. R. Civ. P. 50(b).

─────────────────

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 8                                    COOPER & KIRK, PLLC
                                                              1523 New Hampshire Ave., NW
                                                              Washington, DC 20036
                                                              (202) 220-9600

facilities. *United States v. California*, 921 F.3d 865, 885 (9th Cir. 2019) (invalidating California statute to the extent it treated state and local detention facilities different from ICE facilities operated under contract to the Federal Government).

## A.     WMWA DOES NOT APPLY TO DETAINEES PARTICIPATING IN THE VWP.

### 1.     As a Matter of Law, Federal Detainees at NWIPC Are Not Employees.

As a matter of law, WMWA simply does not include VWP activity within its scope. [3]

Washington law consistently deems work by an individual where he is lawfully confined not to be employment. *See Calhoun v State*, 193 P.3d 188, 192-93 (Wash. Ct. App. 2008) (denying that civilly committed individual was an "employee" who could bring a claim under Washington's law against discrimination when such definitions are silent but may be interpreted in light of WMWA definition of "employee" and similar federal exemptions); *Lafley v. SeaDruNar Recycling, L.L.C.*, 138 Wash. App. 1047, 2007 WL 1464433, at *1-4 (Wash. Ct. App. 2007) (unpublished) (holding that patients in a private rehabilitation facility who participated in a voluntary work program—like the detainees here—are not employees under the WMWA). There is no principled reason to extend WMWA to activity at a site of confinement under federal law.

Even if these cases did not, as they do, conclusively establish that WMWA does not apply at a site of lawful confinement, they establish at very least that WMWA follows FLSA on this issue. Indeed, where a state labor statute is silent, FLSA presumptively guides the interpretation of WMWA. *E.g.*, *Anderson v. State, Dep't of Soc. & Health Servs.*, 115 Wash. App. 452, 455 (2003). And Plaintiffs have no authority by which to distinguish WMWA from FLSA regarding activity at federal immigration detention site—nor any authority to distinguish WMWA from FLSA regarding *any* activity at a site of lawful confinement. Under this presumption alone—and certainly under the positive confirmation in Washington cases—FLSA case-law is authoritative and dispositive here.

---

[3] In the Order on GEO's Motion to Dismiss Complaint, *SOW*, Dkt. 29 at 17–18 (Dec. 6, 2017), the Court declined to read RCW 49.46.010(3)(k) to refer to federal facilities, but did not directly address GEO's argument that "the State deliberately omitted federal detainees from the statutory exception." It ruled only that "it is plausible that the Plaintiff, arguably, comes within the definition of 'employee,' and is not subject to any existing statutory exception." *Id.*

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 9

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1    It has long been established in the Ninth Circuit that work at an institution of confinement

2    does not constitute employment. In *MacDonald*, 41 F.3d at 1293, the Court held that the Fair Labor

3    Standards Act ("FLSA") did not apply to an inmate who "worked for a program established by the

4    prison and operated under the direction of prison officials." It was immaterial in *Morgan* that the

5    prison did not run day-to-day operations, and it was immaterial that the work was not punishment.

6    *Id.* at 1293 &  n.5. What did matter was that work in the programs by individuals confined therein

7    "stemmed primarily from their status as incarcerated criminals." *Id.* at 1293. Yet, the *Morgan*

8    ruling made clear that the confined individuals' status was significant not because the work

9    constituted punishment; it did not. Indeed, the purposes of the program were to "occupy idle

10   prisoners, reduce disciplinary problems, nurture a sense of responsibility, and provide valuable

11   skills and job training." *Id.* Still, work in these programs "essentially belong[ed]" to the

12   confinement facility because (1) the program was under the direction of government officials, (2)

13   a confined individual was "in no sense free to bargain with would-be employers for the sale of his

14   labor," but was "merely an incident of his incarceration," and (3) the individual and the institution

15   did not "contract with one another for mutual economic gain." *Id.*

16   *Morgan* controls this case.[4] Here, as in *Morgan*, government officials (in ICE) have

17   contracted the day-to-day operation of the program (the VWP) to a contractor (GEO), but they

18   retain direction over the program. *E.g.*, Trial Tr., June 8, 2021, Scott 9:2–11:1.  Here, as in *Morgan*,

19   the confined individuals [NWIPC detainees] were in no sense free to bargain with ICE or GEO for

20   the sale of their labor, which is merely an incident of their detention. And here, as in *Morgan*,

21   neither ICE nor GEO bargained with participants in the VWP for mutual economic gain. That

22

23

24   [4] In the Order, *supra* note 1, the Court cited *Hale v State of Ariz.*, 967 F.2d 1356, 1362-63 (9th Cir. 1992), *on reh'g*,
     993 F.2d 1387 (9th Cir. 1993) for the proposition that the Ninth Circuit has "le[ft] open the possibility that FLSA
     could apply to incarcerated inmates." But the *Hale* panel decision was overturned by the Court en banc because it
25   erroneously narrowed the plurality opinion in *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1328, 1330–31 (9th
     Cir. 1991), which excluded a category of work from the definition of employment, even while opting for "case-by-
26   case" development over immediate proclamation that "a prison may *never* be an 'employer; of an inmate laborer.'"
     (emphasis in original). The en banc Court went further than *Gilbreath*, establishing a second category of prison
     employment that does not constitute employment. *See, e.g.*, *Hale v. Arizona*, 993 F.2d 1387, 1389 (9th Cir. 1993) (en
27   banc). Then, *Morgan* distilled the en banc *Hale* opinion into a test that plainly disposes of the category of work in
     confinement that NWIPC detainees perform in the VWP, as argued in this brief.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 10

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1   holds true even though in *Morgan*, participation in some work or training program was required,

2   41 F.3d at 1293, whereas here no work or training was required: the terms of the VWP are still

3   take-or-leave, not bargained-for nor for mutual gain. Instead, the VWP, like the programs in

4   *Morgan* were to occupy idle prisoners, reduce disciplinary problems, nurture a sense of

5   responsibility, and provide valuable skills and job training. *See, e.g.*, Trial Tr., June 9, 2021, Evans,

6   83: 15–19; Trial Tr., June 14, 2021, Scott 46:24–25; Trial Tr., June 8, 2021, Scott, 65:24-25, 66:1;

7   Trial Tr., June 4, 2021, Henderson 10:23–11:1; Trial Tr. June 8, 2021, Scott, 46:34–47:1; Trial

8   Tr., June 8, 2021, Scott 19:2–8; Trial Tr., June 14, 2021, Ragsdale 14:16–18. Under *Morgan*,

9   therefore, the detainees who worked at NWIPC are not employees.

10          And *Morgan* is not an outlier. As detailed at length above, *Ndambi* both collects cases from

11   every other circuit to address this issue and affirms their uniform holding in line with *Morgan*.

12   Indeed, *Ndambi* held that the same ICE-mandated VWP at issue in this case did not create an

13   employment relationship subject to FLSA *or the provisions of the New Mexico Minimum Wage*

14   *Act*, as it was indisputable that state law tracks federal law regarding work at a site of confinement

15   under federal law. 990 F.3d at 371 n.1.

16          In line with this *uniform* precedent across the federal circuits, WMWA *explicitly* excludes

17   "[a]ny resident, inmate, or patient of a … correctional, detention, treatment or rehabilitative

18   institution" from the definition of employee. RCW 49.46.010. Plaintiffs have stressed that this

19   exempts only "state, county, municipal" detainees, but even if the explicit exemption is limited to

20   detainees in custody of Washington and its subdivisions, it is simply not reasonable to think that

21   WMWA targets federal detainees for a benefit that it denies similarly situated State detainees.

22   Rather, it seems clear that the State never intended to regulate federal detainees under WMWA.

23          In any event, even if the State's interpretation in this litigation were plausible, the

24   constitutional-avoidance canon of statutory interpretation  mandates that "[w]hen deciding which

25   of two plausible statutory constructions to adopt, a court must consider the necessary consequences

26   of its choice. If one of them would raise a multitude of constitutional problems, the other should

27   prevail." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005); *accord Baggett v. Bullitt*, 377 U.S. 360,

    375 (1964) (applying canon to interpretation of state statute). And it is certainly *plausible* that

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 11

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Washington either intended that federal detainees should be excluded from the application of section 49.46.010(3)(k) or did not include them there because it never intended or thought that the State had the authority to regulate federal detainees under the WMWA at all. As explained below, reading the WMWA as the State proposes would regulate federal detention (*see infra* section B.2), discriminate against the Federal Government in its imposition of the minimum wage with respect to federal, but not State, local or municipal, detainees (*see infra* section B.3), hold a federal contractor liable for actions taken in connection with a federal contract (*see infra* section B.4), and contradict or impede federal legislative acts, schemes, and objectives (*see infra* section C). In other words, the State's interpretation of the WMWA raises a multitude of very serious constitutional problems. Under *Clark* and its doctrine of constitutional avoidance, therefore, GEO's plausible alternative interpretations "should prevail." *Clark*, 543 U.S. at 381. As a matter of law, WMWA does not apply to federal detainees.

It is undisputed, of course, that the alleged employees in this case are federal detainees. Indeed, the evidence presented at trial uniformly established that the detainees at GEO's Tacoma facility are subject to ICE supervision and control all the time—regardless of whether they chose to participate in the VWP. *E.g.*, Trial Tr., June 7, 2021, Tracy 10:5-16. Nor is there any dispute that GEO provides detainees with shelter, food, clothing, medicine and other necessities. *E.g.*, Trial Tr., June 3, 2021, Medina-Lara 141:18-142:4. In short, the detainees at NWIPC are situated in precisely the same way that federal courts have consistently deemed to be outside the employment relationship. Thus, under *Morgan* and *Ndambi* and under *Clark*'s doctrine of constitutional avoidance, as a matter of law, the WMWA does not require GEO to pay the rate prescribed by the WMWA to participants in the VWP at NWIPC.

### 2.     Detainees Are Not Employees under the Resident Exception to the WMWA.

WMWA also explicitly provides that the definition of "'[e]mployee'… shall not include'": "(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties." RCW 49.46.010(3)(j) (the "Resident

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 12

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Exception"). In interpreting this statutory language,[5] the Supreme Court of Washington held that

> [t]he plain language … excludes two categories of workers from the MWA's definition of 'employee': (1) those individuals who reside or sleep at their place of employment and (2) those individuals who otherwise spend a substantial portion of work time subject to call, and not engaged in the performance of active duties.

*Berrocal v. Fernandez*, 121 P.3d 82, 88 (Wash. 2005) (internal citation omitted).

Certainly, ICE detainees, including VWP participants reside and sleep at the place of VWP work (*e.g.* Trial Tr., June 2, 2021, Singleton, 98:8-10 (agreeing that detainees cannot leave the grounds of the facility based on ICE's determination)). And it is indisputably a requirement of the VWP program that participants reside and sleep at NWIPC. Trial Ex. 17 PBNDS § 5.8. It is immaterial that the duty to reside and sleep at NWIPC is not the central duty of a VWP role—just as this Court previously found that it was immaterial that a caregiver's duty to sleep at the facility was not central to her job duties of cooking, cleaning, and doing laundry. *Park v. Choe*, No. C06-5456RJB, 2007 WL 2677135, at *6 (W.D. Wash. Sept. 10, 2007). Instead, what matters is that NWIPC VWP participants must "sleep at their place of employment." *Berrocal*, 121 P.3d at 87; *accord Strain v. W. Travel, Inc.*, 70 P.3d 158, 162 (Wash. Ct. App. 2003) ("The statute is plain: employees required to sleep at their places of employment are exempt from coverage under the MWA."). As was true in *Park*, it is of no moment whether this Court could imagine a different way to operate the business. Thus, RCW 49.46.010(3)(j) exempts NWIPC detainees.[6]

## B. INTERGOVERNMENTAL IMMUNITY APPLIES TO GEO.

Under the intergovernmental immunity doctrine, a state regulation that "retard[s], impede[s], burden[s], or in any manner control[s], the operations" of the Federal Government is

---

[5] The same exact language in the present statute was previously located at RCW 49.46.010(5)(j).

[6] At summary judgment, this Court applied the multi-factor test in *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851 (2012) in determining whether NWIPC VWP participants are employees. *See Nwauzor* Dkt. 280 at 13–15 (Apr. 7, 2020). In the final jury instructions, however, the Court deliberately declined to submit those factors to the jury. *See, e.g.*, *Nwauzor* Dkt. 381 at 15–18 (June 17, 2021). Because the Court appears to deem these factors irrelevant, we do not analyze them here, but as established in our Rule 50(a) motion for judgment as a matter of law, *Nwauzor* Dkt. 366 at 5–10 (June 10, 2021), the *Anfinson* test dispositively yields that participants in the NWIPC VWP are not employees. Also not submitted to the jury, Dkt. 381 at 15–18, the *Ndambi-Matherly* test also disposes of this case, for reasons explained in our Rule 50(a) motion, Dkt. 280 at 4–5.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 13

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

unconstitutional. *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819). In the Ninth Circuit, "[f]or purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself," particularly in the context of immigration contractors. *United States v. California*, 921 F.3d 865, 883 n. 7 (9th Cir. 2019).[7] The evidence at trial has been undisputed that GEO operates the NWIPC as a federal detention facility under contract with ICE. Trial Tr., June 8, 2021, Scott 173:19-174:1. Further, the contract between ICE and GEO requires GEO to operate the VWP. Trial Ex. 129 GEO-State 036906; Trial Tr., June 8, 2021, Scott 7:22-8:8; Trial Tr., June 9, 2021, Hill 44:25-45:4. Because GEO performs a federal function at the NWIPC, intergovernmental immunity applies to its actions just as it applies to the Federal Government.

### 1.    Misapplying WMWA Would Directly Regulate and Substantially Interfere with Federal Operations.

Under the Direct Regulation prong of intergovernmental immunity, the Court must ask: Does WMWA regulate federal operations or property such as to cause substantial interference? *See, e.g.*, *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). If so, WMWA is invalid unless Congress "clearly and unambiguously" authorized it. *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014)*.

In *Blackburn*, the challenged law required warning signs and safety ropes near certain bodies of water—including at Yosemite National Park. 100 F.3d at 1435 & n.3. The Ninth Circuit found that this regulation, though not specifically targeted at the Federal Government, was a "direct and intrusive regulation by the State of the Federal Government's operation of its property at Yosemite." *Id.* Accordingly, the court deemed the law to violate the Supremacy Clause. *Id.*

In *Boeing*, a California law established regulations regarding the cleanup of toxic

---

[7] *See also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181, (1988) (applying intergovernmental immunity to private contractors "authorized by statute to carry out a federal mission"); *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 960 (W.D. Ky. 1993) (assessing a federal contractor's intergovernmental immunity defense where private plaintiffs sought to enforce state tort law claims of negligence); *Bordell v. Gen. Elec. Co.*, 164 A.D.2d 497, 498 (N.Y. App. Div. 1990) (applying the doctrine of intergovernmental immunity where a federal contractor, General Electric Company, was sued by a former employee for wrongful discharge).

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 14

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

substances. *Boeing*, 768 F.3d at 839. The law permitted a state agency to "compel a responsible party or parties" to take certain remedial actions related to toxic waste cleanup. *Id.* Boeing—hired by the federal government to perform cleanup work in California—argued that while the regulation did not explicitly name the Federal Government as a "responsible party," the Federal Government was certainly a "responsible party" as defined in the statute. *Id.* Because the Federal Government (and by extension Boeing) fell within the definitions in the state statute, Boeing argued that the state law directly interfered with the functions of the Federal Government by "mandat[ing] the ways in which Boeing render[ed] services that the federal government hired Boeing to perform." *Id.* at 840. In so doing, the state law impermissibly attempted to supplant standards chosen by the Federal Government with those chosen by the state. *Id.* The Ninth Circuit agreed and concluded that the statute directly regulated federal operations—in violation of the Supremacy Clause. *Id.*

Similar to *Blackburn* and *Boeing*, here, the application of WMWA to persons detained at a federal immigration processing center would directly regulate, and substantially interfere with, federal operations. WMWA defines "employer" so broadly as to include nearly any entity, individual, or "group of persons," limited only by whether they are acting "directly or indirectly in the interest of an employer in relation to an employee." RCW § 49.46.010(4). Assuming *arguendo* that WMWA applies to GEO (which it does not), the Federal Government (and by extension, its contractor GEO) falls squarely within this definition, just as the Federal Government (and Boeing) fell within the definition of "responsible party" in *Boeing*. WMWA does not explicitly except individuals under the jurisdiction, or employ, of the Federal Government or a contractor performing a federal function. Thus, as in *Boeing*, the regulation impermissibly "mandates the ways in which [GEO] renders services that the federal government" hired it to perform. *Boeing*, 768 F.3d at 840. In particular, under the State's interpretation, WMWA directly regulates the VWP, a federal operation,[8] mandating how much a participant must be paid. That triggers intergovernmental immunity regardless of whether the Federal Government relies on a contractor to operate the VWP. *See, e.g., Hancock v. Train*, 426 U.S. 167, 172–73, 174 n.23 (1976)

---

[8] *See, e.g., Detention Services (Denver AOR)*, SAM.GOV, https://bit.ly/3ifhnel (last visited July 15, 2021).

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 15

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1  (regulating contractor as the "person" who "operate[d]" the federal facility); *California*, 921 F.3d

2  865, 883 n. 7 ("For purposes of intergovernmental immunity, federal contractors are treated the

3  same as the federal government itself.").

4        Classifying VWP workers as "employees" would subject the VWP, a federal operation, to

5  the control of the state, first regarding a fundamental element—the amount paid to participants in

6  the VWP—and second regarding the program's very nature—voluntary participation or

7  employment. And it would dramatically increase the cost of the VWP and transform it into an

8  employment program, thereby substantially interfering with the Federal Government's program.

9  More broadly, it would substantially interfere with federal detention, inflicting economic and

10  operational burdens on the Federal Government and its contractor, GEO. The difference between

11  $1 per daily shift and minimum wage is significant; paying VWP participants the WMWA

12  minimum wage would cost millions of dollars each year. Trial Tr., June 9, 2021, Evans 113:7-20.

13  Applying WMWA would cause a significant shortfall in the allocated budget for the VWP

14  program. See Ex. 129 GEO-State 036682 (showing budgeted amount of $114,975). If GEO were

15  required to expend millions of dollars more, it would seek an equitable adjustment from ICE, and

16  Mr. Evans testified that he expected that ICE would adjust the contract to cover the additional

17  expense. Trial Tr., June 9, 2021, Evans 114:5-9. In other words, if WMWA requires a VWP

18  operator to pay minimum wage to program participants, contracts will be repriced and detention

19  will become more expensive for the Federal Government, clearly constituting an unconstitutional

20  burden on federal operations by the State.

21        As for the operational burden, requiring the Federal Government (and GEO) to pay

22  detainees minimum wage would necessitate the implementation of a system to track the hours

23  worked by each detainee which it does not currently do. RCW 49.46.040(3); Trial Tr., June 4,

24  2021, Henderson 7:1-3 (detainees do not clock in and out); June 2, 2021 Singleton 61:17-23

25  (describing pay sheets)). It would trigger a responsibility to pay sick leave to VWP participants.

26  RCW 49.46.020. It would also lead to the elimination or consolidation of the many VWP positions

27  which take less than an hour to perform. (*e.g.*, Trial Tr., June 7, 2021, Heye 129:17-19 (" … in the

units, tasks take anywhere from ten minutes, maybe 15 minutes. Some of them take up to half an

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 16

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

hour."). Further, some detainees receiving large payments through the VWP would "destabilize[e] … the safety and security of the facility" by "introduc[ing] a level of people who have a bunch of money who are working and those who don't and you are going to create opportunities for abuse within that system . . . It would be disastrous." Trial Tr., June 9, 2021, Evans 83:1-84:1 Such destabilization would, in turn, increase the Federal Government's cost of the VWP and facility contracts. *Id.* Because applying WMWA to the VWP would directly regulate that federal operation, and substantially interfere both with it and with federal detention more broadly, the Supremacy Clause precludes such application, and GEO is entitled to intergovernmental immunity as a matter of law.

## 2. Misapplying WMWA Would Discriminate Against the Federal Government and GEO.

Under the Discriminatory Treatment prong of intergovernmental immunity, the Court must ask: Does WMWA discriminate against the Federal Government or those with whom it deals? *California*, 921 F.3d at 878.

It plainly does.[9] RCW 49.46.010(3)(k) categorically exempts from entitlement to the Plaintiffs' minimum wage "[a]ny resident, inmate, or patient of a state, county, or municipal … detention … institution" from employee status. GEO houses residents of an institution for federal detention, yet it does not benefit from RCW 49.46.010(3)(k). Moreover, RCW 49.46.010(3)(d) exempts "[a]ny individual engaged in the activities of an educational, charitable, religious, state or local governmental body or agency, or nonprofit organization … [who] receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or receives a nominal amount of compensation per unit of voluntary service rendered." Yet, although NWIPC's VWP participants engage in the activities of a governmental body—ICE's VWP—and receive the services NWPIC provides, as well as a nominal amount of compensation, RCW 49.46.010(3)(d) does not relieve GEO of having to pay these individuals. In both ways, GEO, a federal contractor, is treated less favorably than similarly situated State employers. As a matter of law, therefore,

---

[9] This holds true unless the Court correctly interprets WMWA not to apply in the context of federal detention.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 17

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

GEO is entitled to intergovernmental immunity. *See Dawson v. Steager,* 139 S. Ct. 698 (2019) (finding that a statute allowing individuals to reduce their taxable income by the amount of state police pensions, but not federal law enforcement pensions, was impermissibly discriminatory).

Administrative guidance from the State Department of Labor and Industries ("L&I"), which has authority to implement WMWA, compels the same conclusion. That guidance states:

> Residents, inmates, or patients of a state, county or municipal correctional, detention, treatment or rehabilitative institution assigned by facility officials to work on facility premises *for a private corporation* at rates established and paid for by public funds *are not employees of the private corporation and would not be subject to the MWA*.

*See* Exhibit A, ES.A.1 Minimum Wage Act Applicability, last revised December 29, 2020. The administrative guidance released by the Department of Labor and Industries in December 2020 makes plain that if GEO were operating the Voluntary Work Program for a state, county, or municipal government, it would not have to pay minimum wage: the VWP participants perform work on facility grounds, at rates established and paid for by public funds,[10] and at the direction of facility officials. Nevertheless, because GEO operates the program for the Federal Government, the State argues that the WMWA applies, even though an identical program for the State would not fall within the ambit of the WMWA. This is further discrimination against GEO and it further triggers the discriminatory-treatment theory of intergovernmental immunity.

At trial, GEO introduced unrebutted evidence that the State can and does take full advantage of statutory exceptions to the detriment of the Federal Government and GEO. The testimony of Byron Eagle established that the Special Commitment Center houses civil detainees, who participate in a work program which mirrors the VWP, and receive sub-minimum wages.

| Special Commitment Center | Northwest ICE Processing Center |
|---|---|
| Administrative confinement | Administrative confinement |

---

[10] Congress explicitly designates and appropriates the funding for the Voluntary Work program. 8 U.S.C. 1555(d); *see also* Press Release, House Appropriations Committee, Appropriations Committee Releases Fiscal Year 2022 Homeland Security Funding Bill, *available at* https://bit.ly/3raEUkM (last visited July 15, 2021) (specifically mentioning appropriations to cover the "cost of increasing allowances to detainees who participate in the Voluntary Work Program"); *see also* Staff of H. Comm. on Appropriations, 117th Cong., 1st Sess., Draft Appropriations Bill, *available at* https://bit.ly/3wJSSLJ (last visited July 15, 2021) (Specifically setting the allowance for detainees).

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 18

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

| Subminimum wage stipend | Subminimum wage stipend |
|---|---|
| Tasks include cleaning, laundry, and meal preparation. | Tasks include cleaning, laundry, and meal preparation. |
| Paid employee officers supervise safety and security and work alongside confined individuals. | Paid employee officers supervise safety and security and work alongside confined individuals. |
| Meaningful opportunities | Meaningful opportunities. |

Similarly, Sarah Systma testified about Correctional Industries which pays subminimum wages in prison work programs which can benefit private companies.

| Correctional Industries | Northwest ICE Processing Center |
|---|---|
| Population held under state governmental authority. | Population held under federal governmental authority |
| Subminimum wage "gratuity" | Subminimum wage stipend |
| Tasks include cleaning, laundry, and meal Preparation | Tasks include cleaning, laundry, and meal Preparation |
| Paid employee officers supervise safety and security and work alongside confined individuals. | Paid employee officers supervise safety and security and work alongside confined individuals. |
| Contracts with government contractors as part of the administration of the program | Contracts with government contractors as part of the administration of the program |

As a result of the discriminatory legislation, the federal government (and GEO) would impermissibly face both the economic and operational burdens just discussed, while other similarly situated entities, such as the State, would not. *See e.g.*, *California*, 921 F.3d at 883 ("[A]ny discriminatory burden on the federal government is impermissible[.]"). GEO (and the Federal Government) would be subject to an economic burden that the State would not be forced to bear. While the federal government would have to reprice contracts or eliminate programs, the State would be free to continue to operate work programs for state detainees at a fraction of the cost.

And if the federal government were to reduce or eliminate the VWP while the same programs continued at State facilities, the federal detainees would suffer from the negative consequences which State detainees would avoid. *E.g.*, Trial Tr., June 4, 2021, Marquez 190:25-191:2 (testifying that he liked staying busy while he was detained). Thus, if the WMWA applies to detainees at the NWIPC, the federal government (and GEO) would be forced to bear yet another discriminatory burden, in violation of the Supremacy Clause. As a matter of law, the State treats

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 19

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1   GEO less favorably than it treats similarly situated State employers.

2   **C. DERIVATIVE SOVEREIGN IMMUNITY APPLIES TO GEO.**

3   GEO is entitled to derivative sovereign immunity because it operates the VWP pursuant to

4   its contract with ICE. Government contractors may "obtain certain immunity in connection with

5   work which they do pursuant to their contractual undertakings with the United States." *Campbell-*

6   *Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (internal quotation marks omitted) (quoting *Brady*

7   *v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943)). A contractor is entitled to derivative sovereign

8   immunity when it performs work "authorized and directed by the Government of the United

9   States" and the contractor "simply performed as the Government directed." *Id.* at 673. In that way,

10  derivative sovereign immunity ensures that " 'there is no liability on the part of the contractor'

11  who simply performed as the Government directed." *In re U.S. Office of Pers. Mgmt. Data Sec.*

12  *Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (quoting *Yearsley v. W.A. Ross Constr. Co.*, 309

13  U.S. 18, 21 (1940)). Authorization is "validly conferred" on a contractor if Congress authorized

14  the government agency to perform a task and empowered the agency to delegate that task to the

15  contractor, provided it was within the power of Congress to grant the authorization. *See Yearsley*

16  *v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20 (1940). ICE's authority to contract with GEO is

17  undisputed.

18  Plaintiffs here allege that GEO violated the WMWA by not classifying its detainees as

19  "employees" and paying them minimum wage. Detainees are not permitted to be employees of

20  GEO under the ICE contracts.  Trial Ex. 129 at GEO-State 036886. The 2015 ICE Contract defines

21  a GEO employee as "[a]n Employee of [GEO] hired to perform a variety of detailed services under

22  this contract." *Id.* at GEO-State 036871.  A detainee, however, is defined as "[a]ny person confined

23  under the auspices and the authority of any Federal agency. Many of those being detained may

24  have substantial and varied criminal histories." *Id.* With respect to the VWP, the ICE contracts

25  specifically state that: "*Detainees shall not be used to perform the responsibilities or duties of*

26  *an  employee of [GEO]*." *Id.* at GEO-State 036906.  Additionally, the 2015 ICE Contract requires

27  that any person employed by GEO be a United States citizen or lawful permanent resident. Trial

Ex. 129 GEO-State 036887.  Further, the ICE contracts require each GEO employee to be vetted

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 20

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

by the Department of Homeland Security ("DHS") and specifically prohibit GEO from employing illegal or undocumented aliens. Ex. 129 at GEO-State 036894 (emphasis added).  Finally, the plain language of the ICE contracts directs GEO to pay the detainees $1/day for participation in the VWP—and certainly authorizes GEO to do so under the direction of the Government. *cf. Campbell-Ewald Co.*, 136 S. Ct. at 167. The 2015 and 2009 ICE Contracts expressly provide that "Reimbursement for [the VWP] will be at the actual cost of $1.00 per day per detainee. [GEO] *shall not exceed* the amount shown without prior approval by the Contracting Officer." Trial Ex. 129 GEO-State 0366829; Trial Tr., June 8, 2021, Scott 11:24-12:13:25. The phrase "actual cost" means the amount GEO actually pays to the detainees, *i.e.*, $1/day. *See Cost*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The amount paid or charged for something; price or expenditure."). In other words, the ICE contract establishes a payment of $1/day per detainee per shift as the authorized rate.[11]

Thus, because GEO has followed the terms of its contract with the Federal Government by not treating or classifying detainees as "employees" and because Congress authorized ICE to enter into the contract with GEO (8 U.S.C. § 1231(g)(1)), GEO is entitled to derivative sovereign immunity. *See Yearsley*, 309 U.S. at 21. Indeed, because "[g]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States," *Campbell-Ewald Co.*, 577 U.S. at 166 (emphasis added) (quoting *Brady*, 317 U.S. at 583))—and payment is certainly connected with GEO's operation of the VWP pursuant to its contract with ICE—derivative sovereign immunity would attach even if the pay rate had not been specified by ICE.

In denying GEO's Motion for Judgment as a matter of law at the close of Plaintiff's evidence, the Court stated that GEO's affirmative defenses had not been proven. The essential facts of sovereign immunity have now been proven, and the Plaintiffs have not offered evidence to the contrary. GEO performs work "authorized and directed" by the federal

---

[11] ICE has recently reconfirmed that this is the authorized rate. *See, e.g., Detention Services (Denver AOR)*, SAM.GOV, https://bit.ly/3ifhnel (last visited July 15, 2021).

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 21

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

government and "simply performed as the Government directed" in operating the VWP. *Campbell-Ewald Co.*, 577 U.S. at 167. The contract between GEO and ICE, and the PBNDS which GEO is contractually bound to follow, require all the elements of the VWP which Plaintiffs argue create an employer-employee relationship. The contract, the PBNDS, and GEO's obligations are not disputed in the evidence. To the extent that GEO had some discretion, for example in deciding how many positions to make available in the kitchen, those limited discretionary elements do not change the nature of the relationship between GEO and the detainees participating in the VWP. The evidence also establishes that GEO cannot hire detainees or treat them as employees under the explicit requirements of its contract with ICE. Thus, after the close of the evidence, the Court should find that there is no legally sufficient evidence to counter GEO's sovereign immunity defense.

## D.  FEDERAL LAW PREEMPTS WMWA.

The Immigration Reform and Control Act ("IRCA") makes it unlawful "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien … with respect to such employment." 8 U.S.C. § 1324a(a)(1)(A). Under that statute's "Preemption" subsection, "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." *Id.* § 1324a(h)(2). If WMWA applies to this case, then GEO employs unauthorized aliens, and Washington law would impose sanctions on GEO, *see, e.g.*, RCW 49.46.010, 49.46.090, 49.48.030; 3:17-cv-05769, Dkt. 84 at 5; 3:17-cv-05806, Dkt. 12 at 7. Section 1324a(h)(2) expressly preempts these sanctions.

Even beyond this provision, Congress has preempted state law in the field of alien employability. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (establishing that field preemption arises when Congress occupies the field of law that governs a case.).  In 8 U.S.C. § 1324a(a), Congress enacted "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc., v. N.L.R.B.*, 535 U.S. 137, 147 (2002). And under IRCA, any job applicant must prove work eligibility by offering proper documentation. *See U.S. Citizenship & Immigration Servs.*, OMB No. 1615-0047, Employment

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 22

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1    Eligibility Verification (2018). Indeed, aliens become *inadmissible* to the United States by falsely

2    claiming to be citizens to secure jobs, or by misrepresenting any material fact to secure work

3    authorization. 8 U.S.C. § 1182(a)(6)(C). Finally, Congress has taken control of the "allowance" to

4    be paid to immigration detainees. *E.g.*, *Your CO 243-C Memorandum of November 15, 1991; DOD*

5    *Request for Alien Labor*, 1992 WL 1369402 ("*DOD Request for Alien Labor*"); *The Applicability*

6    *of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, 1992 WL

7    1369347 ("*Applicability of Employer Sanctions*"); *Alvarado Guevara v. INS*, 902 F.2d 394, 396

8    (1990). It is not a competitive wage. 8 U.S.C. § 1555(d). In light of this occupation of the field of

9    alien employability, Plaintiffs' interpretation of WMWA to render participation in the VWP

10   employment and to render the allowance due to detainees a competitive wage must fail.

11       State law is also preempted when it "stands as an obstacle to the accomplishment and

12   execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*,

13   530 U.S. 363, 373 (2000). Courts should "examin[e] the federal statute as a whole" and "identify[]

14   its purpose and intended effects" to assess whether state law poses such an obstacle. *Id.* Plaintiffs'

15   claim should be dismissed because it will plainly—and intentionally—stand as an obstacle to

16   Congress's purposes. First, through IRCA, Congress enacted a comprehensive prohibition on alien

17   employment. *Hoffman Plastic Compounds*, 535 U.S. at 147. That prohibition prevents GEO from

18   employing any detainee who lacks work authorization, which plainly includes many, if not all,

19   detainees at NWDC. By granting "backpay" to detainees, however, this Court will "trivialize[]

20   [federal] immigration laws" by extending state employment protections to aliens who are

21   unemployable under federal law. *See id.* at 150. Importantly, the amended complaint contains ***no***

22   allegation that the Plaintiffs were authorized to be GEO's employees under federal law. Therefore,

23   the Court cannot infer authorization to work for GEO. Compelling GEO to treat detainees as

24   "employees" when federal law forbids such treatment creates a direct conflict. It inverts the

25   relationship between state and federal law by allowing state minimum wage law, rather than IRCA,

26   to determine whether an alien can be an employee.

27       This obstacle is still clearer in light of 8 U.S.C. § 1555(d), in which Congress

     unambiguously signaled that detainees that perform work may be paid an "allowance" that

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 23

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1   *Congress* sets, thereby leaving no role for state laws to set or adjust the rates of pay for work

2   performed by detainees. Section 1555(d) is the building block for the VWP. ICE has understood

3   that its own authority to pay detainees arises from Congress, and, consistent with FLSA precedents

4   and IRCA, that detainee work does not create an employment relationship with a detention facility

5   operator. *DOD Request for Alien Labor*, 1992 WL 1369402; *Applicability of Employer Sanctions*,

6   1992 WL 1369347. PBNDS 5.8's policy that "compensation is at least $1.00 (USD) per day" stems

7   directly from the objectives of Congress. Further, the ICE-GEO contract expressly provides that

8   GEO "shall not exceed" the rate of $1 per day without ICE approval. But Plaintiffs allege that state

9   law creates an employment relationship and determines the rate of pay. This imposition of state

10  law will fundamentally alter the VWP: how it functions, what it costs, and whether ICE can

11  continue to use it as an established practice in its detention facilities. Thus, state law would impede

12  the power of the Attorney General, DHS, and ICE—charged by Congress with the operation of

13  federal immigration detention—by requiring them to obey state law mandates, at the expense of

14  federal law.

## CONCLUSION

16      GEO respectfully asks the Court to enter judgment as a matter of law in its favor.

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 24

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1    Respectfully submitted, this 15th day of July, 2021.

2

3                                          By: */s/ Charles J. Cooper*
                                           Charles J. Cooper,* D.C. Bar No. 248070
4                                          Michael W. Kirk,* D.C. Bar No. 424648
                                           Tiernan Kane,* Ind. Bar No. 36452-71
5                                          Cooper & Kirk, PLLC
                                           1523 New Hampshire Avenue, NW
6                                          Washington, DC 20036
                                           Telephone: (202) 220-9600
7                                          Fax: (202) 220-9601
                                           E-mail: ccooper@cooperkirk.com
8                                          E-mail: mkirk@cooperkirk.com
                                           E-mail: tkane@cooperkirk.com
9

10                                         * *Pro hac vice* applications pending

11

12                                         By: *s/ Joan K. Mell*
                                           **III BRANCHES LAW, PLLC**
13                                         Joan K. Mell, WSBA #21319
                                           1019 Regents Boulevard, Suite 204
14                                         Fircrest, Washington 98466
                                           Telephone:    (253) 566-2510
15                                         Facsimile:    (281) 664-4643
                                           Email: joan@3brancheslaw.com
16

17                                         *Attorneys for Defendant The GEO Group, Inc.*

18

19

20

21

22

23

24

25

26

27

GEO GRP. INC.'S
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB – 25

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

**PROOF OF SERVICE**

I hereby certify on the 15th day of July, 2021, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW** via the Court's CM/ECF system on the following:

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
Email: hberger@sgb-law.com
Email: halm@sgb-law.com
Email: whitehead@sgb-law.com
Email: roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959
Email: andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone: (206) 962-5052
Facsimile: (206) 681-9663
Email: devin@openskylaw.com

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone: (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs*

s/Lynn Brewer
Lynn Brewer