1

The Honorable Robert J. Bryan

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

10

STATE OF WASHINGTON,

CIVIL ACTION NO. 3:17-cv-05806-RJB

11

Plaintiff,

12

v.

**PLAINTIFF STATE OF**
**WASHINGTON'S RESPONSE TO**
**THE GEO GROUP, INC.'S RULE**
**50(b) MOTION FOR JUDGMENT**
**AS A MATTER OF LAW**

13

THE GEO GROUP, INC.,

14

Defendant.

NOTE ON MOTION CALENDAR:
August 6, 2021

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ..................................................................................................... 2

    A.  None of GEO's Threshold Arguments Entitle GEO to Judgment as a Matter of Law ....................................................................................................... 2

        1.  Uncontroverted evidence at trial shows GEO permits detainees to work .......... 2

        2.  Contrary to GEO's argument, the Ninth Circuit rejects a categorical exclusion from minimum wage laws for inmate labor ...................................... 3

        3.  This Court is bound by Ninth Circuit precedent—not the Fourth Circuit ......... 6

    B.  GEO Employs Detainee Workers and Nothing Exempts GEO From Paying the Minimum Wage ....................................................................................... 8

        1.  GEO employs detainee workers ..................................................................... 8

        2.  The MWA's residential exemption does not apply ......................................... 10

    C.  Intergovernmental Immunity Does Not Apply ......................................................... 11

        1.  The MWA does not directly regulate the federal government ......................... 11

        2.  The MWA does not "discriminate" against federal contractors ...................... 14

    D.  Derivative Sovereign Immunity Does Not Apply Because GEO Sets Detainees' Rate of Pay—Not ICE ............................................................... 19

    E.  The MWA Is Not Preempted ......................................................................... 22

III.  CONCLUSION .............................................................................................. 24

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

**TABLE OF AUTHORITIES**

2

**<u>Cases</u>**

3

*Alvarado Guevara v. INS,*
    902 F.2d 394 (5th Cir. 1990) ................................................................................. 8

4

*Anderson v. Dep't of Soc. & Health Servs.,*
    63 P.3d 134 (Wash. App. Ct. 2003) ....................................................................... 9

5

6

*Arizona v. United States,*
    567 U.S. 387 (2012) .............................................................................................. 23

7

*Baker v. McNeil Island Corr. Ctr.,*
    859 F.2d 124 (9th Cir. 1988) .................................................................................. 7

8

9

*Barnett v. Young Men's Christian Ass'n, Inc.,*
    175 F.3d 1023, No. 98-3625, 1999 WL 110547 (8th Cir. 1999)............................ 7

10

*Berrocal v. Fernandez,*
    121 P.3d 82 (Wash. 2005) ..................................................................................... 11

11

12

*Blackburn v. United States,*
    100 F.3d 1426 (9th Cir. 1996) .............................................................................. 11

13

*Boeing Co. v. Movassaghi,*
    768 F.3d 832 (9th Cir. 2014) ................................................................................ 13

14

15

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.,*
    797 F.3d 720 (9th Cir. 2015) .......................................................................... 19, 21

16

*Calhoun v. Washington,*
    193 P.3d 188 (Wash. Ct. App. 2008), *as amended* (Oct. 28, 2008) .................... 8, 9

17

18

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016)............................................................................................... 20

19

*Carter v. Dutchess Cmty. Coll.,*
    735 F.2d 8 (2d Cir. 1984) .................................................................................... 4, 5

20

21

*Castle v. Eurofresh, Inc.,*
    731 F.3d 901 (9th Cir. 2013) ........................................................................ 5, 7, 10

22

*Chamber of Com. v. Whiting,*
    563 U.S. 582 (2011)............................................................................................... 22

23

24

*Coupar v. U.S. Dep't of Labor,*
    105 F.3d 1263 (9th Cir. 1997) ................................................................................ 5

25

*David v. Signal Int'l, LLC,*
    257 F.R.D. 114 (E.D. La. 2009) ........................................................................... 24

26

*Dep't of Labor & Indus. v. Lanier Brugh*,
   147 P.3d 588 (Wash. Ct. App. 2006).................................................................. 4

*Drinkwitz v. Alliant Techsystems, Inc.*,
   996 P.2d 582 (Wash. 2000) ............................................................................ 3, 9

*Fong v. United States*,
   149 U.S. 698 (1893)............................................................................................ 5

*Gilbreath v. Cutter Biological, Inc.*,
   931 F.2d 1320 (9th Cir. 1991) ........................................................................... 7

*Graves v. New York ex rel. O'Keefe*,
   306 U.S. 466 (1939)......................................................................................... 12

*Hale v. Arizona*,
   993 F.2d 1387 (9th Cir. 1993) .................................................................. passim

*Henthorn v. U.S. Dep't of Navy*,
   29 F.3d 682 (D.C. Cir. 1994)......................................................................... 7, 8

*Hydrick v. Hunter*,
   500 F.3d 978 (9th Cir. 2007) ............................................................................ 5

*In re KBR, Inc., Burn Pit Litigation*,
   744 F.3d 326 (4th Cir. 2014) ........................................................................... 19

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.*,
   633 F. Supp. 2d 892 (N.D. Cal. 2007) ...................................................... 14, 19

*In re: U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019)........................................................................... 20

*Incalza v. Fendi N. Am., Inc.*,
   479 F.3d 1005 (9th Cir. 2007) .................................................................. 22, 24

*Inniss v. Tandy Corp.*,
   7 P.3d 807 (Wash. 2000) ................................................................................... 4

*Lafley v. SeaDruNar Recycling, LLC*,
   138 Wash. App. 1047, No. 57851-1-I, 2007 WL 1464433 (Wash. Ct. App. 2007)........... 8, 9

*Lamonica v. Safe Hurricane Shutters, Inc.*,
   711 F.3d 1299 (11th Cir. 2013) ...................................................................... 24

*Lucas v. Jerusalem Cafe, LLC*,
   721 F.3d 927 (8th Cir. 2013) ........................................................................... 24

*Morgan v. MacDonald*,
   41 F.3d 1291 (9th Cir. 1994) ............................................................................ 5

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) ........................................................................ 22

*Ndambi v. Corecivic, Inc.*,
990 F.3d 369 (4th Cir. 2020) ........................................................................... 6

*North Dakota v. United States*,
495 U.S. 423 (1990) ...................................................................... 11, 12, 14, 15

*Penn Dairies v. Milk Control Comm'n*,
318 U.S. 261 (1943) ...................................................................................... 12

*RUI One Corp. v. City of Berkeley*,
371 F.3d 1137 (9th Cir. 2004) ....................................................................... 23

*Ry. Mail Ass'n v. Corsi*,
326 U.S. 88 (1945) ........................................................................................ 12

*South Carolina v. Baker*,
485 U.S. 505 (1988) ...................................................................................... 11

*U.S. Postal Serv. v. City of Berkeley*,
No. C16-04815 WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018) ................ 15

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ............................................................... 14, 15, 17

*United States v. County of Fresno*,
429 U.S. 452 (1977) ...................................................................................... 11

*United States v. New Mexico*,
455 U.S. 720 (1982) ...................................................................................... 12

*United States v. Nixon*,
839 F.3d 885 (9th Cir. 2016) ......................................................................... 23

*Vanskike v. Peters*,
974 F.2d 806 (7th Cir. 1992) ........................................................................... 4

*W. Coast Hotel Co. v. Parrish*,
300 U.S. 379 (1937) ........................................................................................ 3

*Washington v. United States*,
460 U.S. 536 (1983) ...................................................................................... 15

*Watson v. Graves*,
909 F.2d 1549 (5th Cir. 1990) ...................................................................... 4, 5

*Williams v. Coleman*,
536 F. App'x 694 (9th Cir. 2013) ..................................................................... 7

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1 | *Williamson v. Gen. Dynamics Corp.*,
      208 F.3d 1144 (9th Cir. 2000) ............................................................................ 23

2

3 | *Yearsley v. W.A. Ross Const. Co.*,
      309 U.S. 18 (1940) ............................................................................................ 20

4 | **Statutes**

5 | 8 U.S.C. § 1324a(h)(2) ......................................................................................... 22

6 | 8 U.S.C. § 1555(d) ................................................................................................ 23

7 | 29 U.S.C. § 202 ...................................................................................................... 4

8 | Wash. Rev. Code § 49.46.005(1) .......................................................................... 3

9 | Wash. Rev. Code § 49.46.010(2) .......................................................................... 2

10 | Wash. Rev. Code § 49.46.010(3)(j) .................................................................... 10

11 | Wash. Rev. Code § 49.46.010(3)(k) ................................................................ 9, 15

12 | Wash. Rev. Code § 49.46.020(3)(d) ...................................................................... 3

13 | **Regulations**

14 | 8 C.F.R. § 274a.12(c)(8) ...................................................................................... 24

15 | 8 C.F.R. § 274a.12(c)(9) ...................................................................................... 24

16 | 8 C.F.R. § 274a.12(c)(10) .................................................................................... 24

17 | 8 C.F.R. § 274a.12(c)(19) .................................................................................... 24

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

v

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# I.   INTRODUCTION

GEO adopts the kitchen-sink approach to its Rule 50(b) motion and seeks judgment on all legal and factual issues. The Court should reject GEO's motion in its entirety. Washington's Minimum Wage Act (MWA) is clear—if a private employer "permit[s] [an individual] to work," it must pay them the minimum wage. The evidence at trial more than demonstrated GEO permits detainees to work at the Northwest Detention Center (NWDC). GEO incorrectly asserts a recent Fourth Circuit decision considering a different state's minimum wage law somehow creates a rule that *no* state's minimum wage law can apply in the custodial context, but the *Ndambi* decision directly conflicts with binding Ninth Circuit precedent. In *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993) (en banc), the Ninth Circuit specifically refused to adopt a categorical exemption to minimum wage laws simply because an individual is in prison or other custody.

Aside from its heavy reliance on one inapplicable and out-of-circuit case, GEO again asserts a myriad of exemptions and immunities which do not apply to GEO's operation of the NWDC and which have largely been rejected by the Court. First, the residential exemption does not apply because it is not the detainees' job duties that require them to reside or sleep at the NWDC—the detainees' detention stems from their pending immigration cases. Second, GEO does not benefit from intergovernmental immunity because the MWA neither directly regulates the federal government nor discriminates against federal contractors. Instead, the MWA is a neutrally-applicable law that applies to private employers—not the federal government—and it applies regardless of whether the private contractor contracts with the federal government, state government, or no other entity at all. GEO's excessively broad assertion of intergovernmental immunity would excuse GEO from complying with all state law simply because it holds a federal contract. Intergovernmental immunity nowhere requires such special treatment. Third, derivative sovereign immunity offers GEO no protection because GEO's payment of $1 per day is not mandated by the federal government. According to the GEO-ICE contract, as well as a slew of evidence at trial, it is GEO that sets the detainee rate of pay, it is GEO that is required to follow

state law, and it is GEO alone that has chosen to pay detainees subminimum wages. Fourth, the MWA is not preempted by the Immigration Reform and Control Act (IRCA) and GEO has failed to identify any comprehensive act of Congress that displaces it. The MWA also does not stand as a barrier to the accomplishment Congressional objectives, so obstacle preemption does not apply. GEO *already* permits detainees to work at the NWDC at a massive scale. If GEO now claims that is unlawful because of IRCA's prohibition against hiring undocumented workers, GEO can comply with IRCA *as well as* the MWA, by either hiring work authorized detainees or replacing detainees with Tacoma area workers to complete its contract.

Since the evidence at trial clearly shows GEO employs detainee workers, and none of GEO's asserted legal defenses are applicable, the Court should deny GEO's Rule 50(b) motion.

## II.   ARGUMENT

### A.   None of GEO's Threshold Arguments Entitle GEO to Judgment as a Matter of Law

#### 1.   Uncontroverted evidence at trial shows GEO permits detainees to work

The MWA defines "employ" as including "to permit to work." *See* Wash. Rev. Code § 49.46.010(2). Given the uncontroverted evidence that GEO "permit[s [detainees] to work," GEO now argues that it only "provide[s] all detainees with the opportunity (but not obligation) to participate" in a work program. *See* ECF No. 503 at 7. GEO's argument is a distinction without any legal difference.

GEO points to evidence that ICE requires it to operate a work program as part of its contract and the PBNDS. ECF No. 503 at 7. But *why* an employer permits work is immaterial to the legal issue that must be decided: *does* GEO permit detainees to work? Wash. Rev. Code § 49.46.010(2). As trial evidence shows, the answer is indisputably yes. GEO operates the work program, establishes detainee job descriptions, determines the number of detainees for each job and shift, handles requests to work, assigns particular workers to particular jobs and shifts, supervises their work, terminates workers, and maintains payroll. *See* Trial Tr. June 2 49:22–

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

66:17 (Singleton) (GEO Classification Officer describing work program components)[1]. While GEO argues it is "the detainees' unilateral choice whether or not to participate in the program," *see* ECF No. 503 at 7, all employees in Washington make a "choice" whether to work or not. GEO's argument regarding "choice" simply repackages its prior assertions of the "volunteer exemption." Under the MWA, only "educational, charitable, religious, state or local governmental body or agency or nonprofit organization[s]" are eligible to accept volunteer labor. Wash. Rev. Code § 49.46.020(3)(d). As this Court concluded in declining to provide a jury instruction on volunteers, GEO is a for-profit company and cannot qualify for the exemption.

Since the undisputed evidence at trial clearly showed that GEO permits detainees to work, and *even GEO admits* that the evidence at trial shows it provides detainees the "opportunity" to work, the Court should deny GEO's request for judgment as a matter of law.

### 2. Contrary to GEO's argument, the Ninth Circuit rejects a categorical exclusion from minimum wage laws for inmate labor

GEO argues Ninth Circuit precedent applying the Federal Labor Standards Act (FLSA) preclude a finding that detainee workers are employees under the MWA. That is flatly wrong.

As an initial matter, the purpose of Washington's MWA is substantially broader than the purpose of FLSA. Washington first adopted a minimum wage law in 1913, a full twenty-five years before Congress enacted FLSA. *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000); *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 386 (1937). While Washington's current minimum wage statute was modeled on FLSA, they are "not identical." *Id.* Washington's Legislature declared that minimum wage laws are necessary not only to protect "the health, safety and the general welfare of the citizens of this state," but also to "encourage employment opportunities within the state." Wash. Rev. Code § 49.46.005(1). This latter purpose – the prevention of predatory labor practices to encourage maximum employment opportunities for state residents – is wholly missing from FLSA's more limited scope. *See*

---

[1] Relevant portions of the trial transcript have been attached to the Declaration of Marsha Chien in Support of Plaintiff's Response to GEO's Rule 50(b) Motion ¶ 3, Exs. A–P.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

29 U.S.C. § 202 (declaring the purpose of FLSA is to maintain "the minimum standard of living necessary for health, efficiency, and general well-being of workers"). As such, federal law is only "persuasive authority" when construing the MWA, and only then for provisions that are similar to FLSA. *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000) (courts "may consider" federal interpretations of "comparable provisions"); *see also Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588, 594 (Wash. Ct. App. 2006) (FLSA did not preempt state minimum wage laws nor preclude private companies from paying more than the federal minimum wage).

Even if cases applying FLSA were authoritative, GEO's motion is still misplaced. Recognizing the "'striking breadth' of FLSA's definition of 'employee,'" as well as the Supreme Court's pronouncement "that that term reaches some parties who may not traditionally be thought of as employees at all," the Ninth Circuit explicitly stated: "[W]e cannot agree that the FLSA categorically excludes all labor of any inmate." *See Hale v. Arizona*, 993 F.2d 1387, 1393 (9th Cir. 1993) (en banc).[2] *See also Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990) (finding FLSA coverage for prisoners working for third-party); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12–13 (2d Cir. 1984) (same); *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992) ("We do not question the conclusions of *Carter*, *Watson* and *Hale* that prisoners are not categorically excluded from the FLSA's coverage simply because they are prisoners.").

In *Hale*, the Ninth Circuit held that certain Arizona state prisoners were not "employees" under FLSA, but left open the possibility of coverage under different facts. 993 F.2d at 1389–90. The prisoners in *Hale* were held in a state-run facility and required by law to work as part of their prison term. *Id*. The court held that the usual standard for determining "employee" status—the economic reality test described in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983)—was inapplicable "in the case of prisoners who work for a

---

[2] GEO suggests that citation to the *Hale* en banc decision should somehow change the Court's previous reliance on *Hale*. ECF No. 503 at 15 n.4. That is not true. Both the Ninth Circuit's original decision, as well as the en banc decision, left open the possibility that FLSA could apply to incarcerated inmates. *See Hale v. Arizona*, 967 F.2d 1356, 1362-63 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993). For purposes of clarity, Washington cites only the en banc decision here.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

prison-structured [labor] program because they have to." *Hale*, 993 F.2d at 1394. Since "the economic reality of the relationship" "is penological, not pecuniary," FLSA did not apply. *Id*. at 1395. Although GEO misleadingly cites *Morgan v. MacDonald* to suggest otherwise, ECF No. 503 at 16 n.4, *Morgan* simply applied *Hale* and concluded FLSA does not apply where the work "stem[s] primarily from their status as incarcerated individuals" and is *required* by Nevada statute. 41 F.3d 1291, 1293 (9th Cir. 1994). *See also Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (holding that "an inmate's legal obligation to work" is the "one factor that triggers application of the *Hale* rule," diverging from the standard "economic reality" test); *Coupar v. U.S. Dep't of Labor*, 105 F.3d 1263, 1265 (9th Cir. 1997) (holding that an inmate's obligation to work pursuant to a prison work program "brings him within the rule of *Hale*"). Thus, absent a "legal obligation to work," FLSA's protections apply *even* in a prisoner/detainee context.

In the civil immigration detention context applicable here, there is no "penological" aspect to the detainee workers' detention. *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007) ("[C]ivilly detained persons must be afforded 'more considerate treatment and conditions of confinement than criminals whose confinement are designed to punish.'"); *see Fong v. United States*, 149 U.S. 698, 730 (1893) ("The order of deportation is not a punishment for crime."). Further, as GEO itself admits, the detainees have no legal obligation to work, and the work they perform is voluntary in nature. *Accord* ECF No. 503 at 7 (detainees have "the opportunity (but not the obligation) to participate in a [work program]"). The labor detainees perform and the money they earn belongs to them—not the NWDC. *See Watson*, 909 F.2d at 1556 (finding inmates to be "employees" under FLSA because they were not required to work as part of their sentences and because the labor they performed did not "belong" to the jail); *see also Dutchess Cmty. Coll.*, 735 F.2d at 13–14 (prisoner working as a teaching assistant at community college which paid him wages directly could be FLSA "employee"). As testified to at trial, detainees used the money they earn to pay legal fees, support their families, and buy items to improve their standard of living and general well-being within the NWDC, *see, e.g.,* Trial Tr. June 3 107:10–

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

16 (Medina Lara); Trial Tr. June 7 (Gomez Soto) 48:11–21; Trial Tr. June 4 168:13–15 (Marquez); Trial Tr. June 9 136:7–23 (Nwauzor)—nothing is deducted from these wages, not legal financial obligations or any other deduction. *See* Trial Tr. June 4 44:6–8 (Singleton).

In sum, the evidence at trial shows detainee workers are "employees" under the MWA and would be "employees" under FLSA, too. Nothing in the Ninth Circuit cannon should convince the Court otherwise.

### 3.    This Court is bound by Ninth Circuit precedent—not the Fourth Circuit

To circumvent Ninth Circuit precedent, GEO relies wholesale on the Fourth Circuit to make its argument. But *Ndambi v. Corecivic, Inc.*, did not involve Washington's MWA. Instead, it considered New Mexico's minimum wage law and there—unlike here—plaintiffs stipulated that New Mexico's minimum wage law mirrored FLSA. 990 F.3d 369, 371 n.1 (4th Cir. 2020). There is no such stipulation here and, as discussed, Washington's MWA has meaningful differences from FLSA and must be construed on its own.

Even further, *Ndambi* is inconsistent with Ninth Circuit precedent—and it is Ninth Circuit precedent that is binding. In *Ndambi*, the Fourth Circuit concluded that FLSA does not apply in the custodial context—whether the workers are inmates, pretrial detainees, or civil detainees. 990 F.3d at 373. *Ndambi's* reasoning was that the custodial context "falls outside the traditional employment paradigm," so "the mere voluntariness of participating in a work program or the transfer of money between a detainee and detainer does not manufacture a bargained-for exchange of labor." *Id.* In other words, the *Ndambi* court came to a dramatically different conclusion than the Ninth Circuit in *Hale*—which held the *voluntariness* of the work program is exactly what determines whether FLSA applies, not the custodial context. As discussed above, the Ninth Circuit in *Hale* refused to create a categorical exemption to FLSA's definition of "employee" because none exists in the statute. *See* 993 F.2d at 1393 ("[W]e are constrained not to hold as a matter of law that prisoners may *never* be 'employees' of a prison") (emphasis in original). As such, the *Hale* court explicitly recognized that inmates could be

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

"employees", but not where the inmate is legally obligated to work as part of his criminal sentence. *Id.*; *see also Castle*, 731 F.3d at 907; *Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124, 127–28 (9th Cir. 1988) (allowing that in connection with Title VII, a statute with a similar definition of "employee," that prisoners may have an employment relationship with a prison).

GEO nevertheless suggests *Ndambi* relied on Ninth Circuit case law for its conclusion that FLSA does not apply to civil detainees. But even a quick review of *Ndambi* reveals the only published Ninth Circuit decision *Ndambi* cited involved prisoners convicted of a crime. *See Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (plurality) (observing the prison work program would otherwise be considered slavery if it did not apply to persons "duly tried, convicted, sentenced and imprisoned for crime in accordance with law"). Notably, the portion *Gilbreath* cited by GEO, that FLSA can never apply to prison inmates, was not joined by either the concurring or dissenting judges. *Id.* at 1329 (Rymer, J., concurring) (applying *Bonnette* economic realities test to determine "employee"); *id.* at 1334 (Nelson, J., dissenting) (concluding prison inmates were employees given FLSA's broad purpose). While *Ndambi* also cites a Ninth Circuit case involving a civil detainee, that one-page, unpublished memorandum involved an appeal by a pro se litigant whose "amended complaint did not contain[] enough facts to state a claim." *See Williams v. Coleman*, 536 F. App'x 694, 694 (9th Cir. 2013). *Ndambi* nowhere acknowledges *Hale*'s much narrower holding.

Indeed, despite GEO's suggestion that there is a "uniform precedent across the federal circuits," ECF No. 503 at 16, the Ninth Circuit is not alone in refusing to adopt a categorical exemption to FLSA for those in the prison/detention context. For example, in *Henthorn v. U.S. Department of Navy*, 29 F.3d 682, 687 (D.C. Cir. 1994), the D.C. Circuit explicitly recognized a federal prisoner may allege a FLSA claim if "[their] work was performed without legal compulsion and that [their] compensation was set and paid by a source other than the Bureau of Prisons itself." Likewise, in *Barnett v. Young Men's Christian Ass'n, Inc.*, 175 F.3d 1023, No. 98-3625, 1999 WL 110547, at *2 (8th Cir. 1999), the Eighth Circuit held a prison inmate stated

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

a FLSA claim, where the claim was "brought against a private entity . . . and not against a branch or representative of the county, state, or federal government." *Cf. Alvarado Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990) (considering FLSA's application to a federally owned and operated detention facility—and not a privately owned and operated detention facility).

Therefore, even if FLSA case law were persuasive, *Ndambi* conflicts with Ninth Circuit precedent and GEO's motion should be denied. Trial testimony establishes that the NWDC houses civil detainees who are not required to work. Trial Tr. June 2 118:15–20 (McHatton); Trial Tr. June 7 17:17–24 (Tracy) ("They don't have to work if they don't want to. It's voluntary."). As such, GEO's work program serves no penological purpose, and FLSA would apply. *See Hale*, 993 F.2d at 1397. As established at trial, GEO sets the detainee pay rate and pays the detainee workers at the NWDC. GEO is a for-profit company that relies on detainees to run its business, yet chooses to pay them only $1 per day—sometimes $5 if GEO really needs workers. *See* Trial Tr. June 2 84:5–10, 90:1–92:8 (Singleton); Trial Tr. June 3 68:4–23 (Griffin). *Hale* left open the possibility of FLSA applying in the detention context for circumstances just like this. *Hale*, 993 F.3d at 1397; *see also Henthorn*, 29 F.3d at 685.

**B.     GEO Employs Detainee Workers and Nothing Exempts GEO From Paying the Minimum Wage**

      **1.     GEO employs detainee workers**

As discussed above, the MWA requires employers pay the minimum wage when it permits individuals to work. Despite the MWA's broad scope, GEO argues detainee workers cannot be employees as a matter of law. Not so.

GEO first cites *Calhoun v. Washington*, 193 P.3d 188, 192–93 (Wash. Ct. App. 2008), *as amended* (Oct. 28, 2008) and *Lafley v. SeaDruNar Recycling, LLC*, 138 Wash. App. 1047, No. 57851-1-I, 2007 WL 1464433, at *1–4 (Wash. Ct. App. 2007) (unpublished), to suggest the MWA cannot apply to any person who is "lawfully confined." GEO's argument is misplaced. In *Calhoun*, the state appellate court did not rule on application of the MWA at all, but instead considered a Washington Law Against Discrimination claim brought under Washington Revised

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Code 49.60 by a detainee held at a facility owned and operated by a state agency. *Calhoun*, 193 P.3d at 192. Further, in its analysis, the court noted the MWA's exemption for "a resident, inmate or patient of a *state, county, or municipal* correctional, detention, treatment, or rehabilitative institution" clearly would apply to MWA claims at that state government institution. *See id.* (*citing* Wash. Rev. Code § 49.46.030(3)(k)) (emphasis added).

Likewise, *Lafley*, 2007 WL 1464433, at *3, an unpublished opinion that lacks precedential value, does not save GEO's argument. In *Lafley*, the state court of appeals held Washington's MWA did not apply to work conducted as part of a drug and alcohol treatment center's rehabilitative program. There, to overcome their addictions, residents worked as part of "work therapy." *Id.* Unlike in *Lafley*, GEO's work program is not part of any treatment plan at all—it does not promote future job opportunities by providing assistance in "fulfilling community service requirements," or in "obtaining reference letters," and nothing at trial showed that the work program is an "integral part of rehabilitation." 2007 WL 1464433, at *2, 4. So, *Lafley*'s reasoning does not excuse GEO from its MWA obligations.

GEO further argues the "FLSA presumptively guides interpretation of the Washington MWA" where the MWA is silent about the issue of employment in confinement. ECF No. 503 at 14. This argument misses the mark in two ways. First, GEO's argument that FLSA-case law is "authoritative" is disingenuous. As discussed above, the purpose of Washington's MWA is substantially broader than FLSA. *See supra* at 3–4. Although GEO cites *Anderson v. Department of Social and Health Services*, the state appellate court there considered FLSA "persuasive" authority, not "authoritative." 63 P.3d 134, 135 (Wash. App. Ct. 2003),

Second, while Washington's current MWA was modeled on FLSA, they are "not identical." *Drinkwitz*, 996 P.2d at 586. Indeed, the MWA contains a precisely-drawn exemption for inmates detained in government institutions that the FLSA does not. As such, the statute is in no way "silent," but rather speaks specifically to inmate work and exempts only work done in state, county, and local *institutions*. Wash. Rev. Code § 49.46.010(3)(k). The undisputed

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

evidence establishes that NWDC is not a government—it is a privately-owned and operated facility. *See* Trial Tr. June 2 117:24–25 (McHatton). To avoid this straightforward application of the MWA, GEO suggests Washington "either intended that federal detainees should be excluded from the application of RCW 49.46.020(3)(k) or did not include them there because it never intended . . . to regulate federal detainees under [the MWA] at all," claiming it would be constitutionally improper to do so. *See* ECF No. 503 at 16–17. To the contrary, the Washington Legislature exempted work at government *institutions* to which the MWA would otherwise apply, irrespective of the type of governmental *authority* under which the workers were detained or incarcerated (federal or state). And assuming the MWA exemption explicitly included federal institutions alongside state, county or municipal institutions, the detainees at the NWDC would still not be exempt because they are not held at a federal facility at all.

In sum, GEO employs detainees under the MWA and the government institution exemption does not apply to a privately owned and operated facility. Since *Hale* remains the "leading case in our circuit," not *Ndambi,* and no law requires detainees to work, the Court should reject GEO's invitation to enter judgment as a matter of law. *Castle*, 731 F.3d at 908.

### 2. The MWA's residential exemption does not apply

GEO again asserts the residential exemption to the MWA despite conceding that "the duty to reside and sleep at the NWDC is not the central duty of a VWP role." ECF 503 at 18. GEO's assertion again must fail. Although GEO wishes that the MWA exempted anyone who must sleep at their place of employment, the exemption's plain language is: "any individual *whose duties require* that he or she reside or sleep at the place of his or her employment." Wash. Rev. Code § 49.46.010(3)(j) (emphasis added). Since it is the detainees' detention pending resolution of their immigration status, rather than their job duties, that leads them to "sleep" at the NWDC, detainees are not exempt under the MWA. *See Nwauzor* Order, ECF No. 280 at 12 (rejecting assertion of the residential exemption given the phrase "whose duties require"); ECF No. 500-1 (Trial Tr. June 14 67:11–20) (concluding the residential exemption is inapplicable).

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

While GEO cites to *Berrocal v. Fernandez*, 121 P.3d 82, 84–86 (Wash. 2005) to suggest otherwise, GEO's citation to *Berrocal* is inapposite. *Berrocal* considered a separate modifying phrase (i.e., "not engaged in the performance of active duties") and its effect on the exemption as a whole. *Id.* at 85–86. At no point did *Berrocal* address the qualifier at issue here ("whose duties require that he or she reside or sleep at the place of his or her employment"). Further, in *Berrocal*, two sheepherders willingly engaged in a contract of employment which required that they live on the ranch to be available twenty-four hours a day, seven days a week, to care for the sheep. Here, detainees did not choose work that required that they reside and live at the NWDC, nor did they remain on call 24/7. Instead, the undisputed evidence is that they worked defined shifts. *See* Trial Ex. 309 (Work Roster assigning detainee to jobs and shifts). Finally, GEO waived this affirmative defense by failing to plead it, so GEO cannot now claim that it is exempt.

## C.    Intergovernmental Immunity Does Not Apply

Intergovernmental immunity is no bar to Washington's claims. Intergovernmental immunity applies to a state regulation "only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (citing *South Carolina v. Baker*, 485 U.S. 505, 523 (1988)); *United States v. County of Fresno*, 429 U.S. 452, 464 (1977). Since neither prong applies, the Court should reject GEO's assertions of intergovernmental immunity.

### 1.    The MWA does not directly regulate the federal government

Intergovernmental immunity's direct regulation prong precludes application of a state law only where there is "direct and intrusive regulation by the State of the Federal Government." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). In other words, the prohibition applies only to regulation of the federal government—not private contractors and suppliers. *North Dakota*, 495 U.S. at 434–37 (plurality). *See also South Carolina*, 485 U.S. at 520 (explaining that the theory of "general immunity" for federal contractors "has been thoroughly repudiated by modern intergovernmental immunity case law"); *Graves v. New York ex rel.*

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  *O'Keefe*, 306 U.S. 466, 481–82 (1939) (theory that government immunity extends to "contractor

2  engaged in carrying out a government project" has been "rejected" by the Supreme Court).

3      In *North Dakota*, the Supreme Court observed: "There is no claim in this case, nor could

4  there be, that North Dakota regulates the Federal Government directly. Both the reporting

5  requirement and the labeling regulation operate against suppliers, not the Government, and

6  concerns about direct interference with the Federal Government therefore are not implicated."

7  495 U.S. at 436–37 (internal citations omitted). *See also United States v. New Mexico*, 455 U.S.

8  720, 734–35 (1982) (explaining that the Supremacy Clause "prevent[s] the States from laying

9  demands directly on the Federal Government," but not on "a contractor providing services to the

10  government."); *Penn Dairies v. Milk Control Comm'n*, 318 U.S. 261, 270–71 (1943) (dairy

11  providing milk to U.S. military not immune from state price regulations because "those who

12  contract to furnish supplies or render services to the government are not [government] agencies

13  and do not perform governmental functions") (collecting cases)); *Ry. Mail Ass'n v. Corsi*, 326

14  U.S. 88, 95 (1945) (private organization not immune from state labor regulations).

15      Here, there is neither direct regulation of the federal government nor does it substantially

16  interfere with a federal operation. GEO is a for-profit corporation that both owns and operates

17  the NWDC. GEO is not the federal government, and neither the MWA nor its application to

18  GEO at NWDC directly regulates the federal government's "operations or property." *See*

19  *Nwauzor*, ECF No. 280 at 16–17 (holding that GEO failed to show that the MWA regulates the

20  United States directly); *see also* ECF No. 162 at 7 (explaining that "the MWA does not regulate

21  the Federal Government directly, and, in fact, imposes no duty on the Federal Government

22  itself"). Although GEO suggests paying the minimum wage would cost the federal government

23  millions of dollars, GEO's profit margin makes clear that GEO—not the federal government—

24  could cover the increased cost for paying detainees the minimum wage. Trial Tr. June 8  102:12–

25  103:1 (Kimble); Trial Tr. June 9 113:4–114:4 (Evans) (indicating GEO generally makes $18–20

26  million in operating margin for NWDC per year, while paying the minimum wage would only

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   increase costs by less than $4 million). Indeed, even if GEO attempted to pass on the cost to the

2   federal government, whether that would happen is speculative, and ICE rejected GEO's request

3   for "an equitable adjustment" to cover costs related to the State's MWA claim. *See* Trial Ex.

4   365A (letter from GEO CEO requesting equitable adjustment); Trial Tr. June 9  80:19–81:23

5   (Evans) (GEO CFO acknowledging that GEO would have to seek an equitable adjustment before

6   it could pass increased costs on to ICE, and that he "really [didn't] know how it would work

7   out"); *id.* at 84:10–17 (DOJ denied request to take over defense of lawsuits and reimburse GEO

8   for attorneys' fees). Even if application of the MWA would require a system to track the hours

9   worked by each detainee or a streamlining of positions, as GEO speculates, such burdens fall on

10  GEO, not the federal government. *See* Trial Ex. 17 (PBNDS 5.8) (identifying the contractor as

11  the entity responsibility for management of the work program); Trial Tr. June 2 100:2–14

12  (Singleton) (testifying that she managed the work program without a single conversation with

13  ICE. In other words, the MWA does not require the federal government to pay the minimum

14  wage to federal employees nor does it substantially interfere with a federal operation. Instead,

15  the MWA simply regulates private employers like GEO that operate a business in Washington.

16      GEO's reliance on *Blackburn* and *Boeing* do not save its argument. In *Blackburn*, the

17  state law sought to directly regulate federal land, i.e., Yosemite National Park. 100 F.3d at 1435.

18  Unlike in *Blackburn,* GEO owns the NWDC as well as the land it sits on. In *Boeing Co. v.*

19  *Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014), California sought to directly regulate the U.S.

20  Department of Energy (DOE) by targeting a specific location and requiring it to alter its contract

21  with Boeing and "replace[] the federal cleanup standards . . . with the standards chosen by the

22  state." Here, unlike in *Boeing*, the MWA does not mention the federal government at all. As

23  such, GEO's compliance with the MWA does not alter the performance or terms of the GEO-

24  ICE Contract. ICE gave GEO discretion to implement the work program, including setting the

25  pay for detainee workers. *See* Trial Ex. 17 (PBNDS 5.8). Requiring GEO to comply with

26  Washington's MWA does not alter any aspect of the GEO-ICE Contract or supplant any federal

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

standards imposed by ICE. In fact, the contrary is true as the GEO-ICE contract requires GEO comply with the MWA. *See* Trial Ex. 129 at 44 (GEO-ICE Contract) (requiring GEO to comply with "[a]pplicable federal, state and local labor laws and codes").

Next, GEO's misleading citation to a footnote in *United States v. California* does not render GEO equivalent to the federal government. ECF No. 503 at 19. In *California*, the Ninth Circuit upheld several California laws that regulated private prisons and detention facilities because they were neutral and generally applicable. 921 F.3d 865, 872–73, 879–85, 891 (9th Cir. 2019). In considering an argument that one of the state laws discriminated against the federal government or its contractors, the Ninth Circuit dropped a note clarifying that—for purposes of the discrimination prong of intergovernmental immunity—federal contractors may be treated like the government *Id*. at 882 n.7. *California* cannot—and nowhere purports to—overrule the many Supreme Court cases that refuse to conflate the federal government with its contractors for purposes of a direct regulation claim.

In sum, GEO is not the federal government. At trial, the Court correctly refused to provide a jury instruction regarding direct regulation. Since MWA does not regulate the federal government, there is no intergovernmental immunity problem.

### 2.    The MWA does not "discriminate" against federal contractors

Nor does the discrimination prong of intergovernmental immunity provide GEO with any cover. The intergovernmental immunity discrimination prong is not a defense where state regulation "is imposed on some basis unrelated to the object's status as a federal Government contractor" and is "imposed equally on other similarly situated constituents of the State." *North Dakota*, 495 U.S. at 438. Intergovernmental immunity "prevents states from . . . singling out for regulation those who deal with the government," but does not prohibit enforcement of neutral state laws against federal contractors. *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 633 F. Supp. 2d 892, 904 (N.D. Cal. 2007) (rejecting immunity defense where laws "regulate equally all public utilities, making no distinction based on the government's involvement").

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

In *North Dakota*, for example, the Supreme Court upheld state laws that regulated federal government suppliers (as well as all other liquor retailers in the state) as part of a statewide regulatory regime that served legitimate state interests. 495 U.S. at 438. The state laws placed no discriminatory burdens upon the federal government by requiring its out-of-state suppliers to comply with the labeling requirements. *Id*. Other courts similarly reject overbroad intergovernmental immunity defenses that seek exemptions for private companies based on their contract with the federal government rather than the discriminatory nature of the regulation. *See, e.g., Washington v. United States*, 460 U.S. 536, 545 (1983) (upholding state tax law where "[t]he tax on federal contractors is part of the same structure, and imposed at the same rate, as the tax on the transactions of private landowners and contractors"); *U.S. Postal Serv. v. City of Berkeley*, No. C16-04815 WHA, 2018 WL 2188853, at *3 (N.D. Cal. May 14, 2018) (finding no discrimination of the federal government or those with whom it dealt, i.e., potential buyers of a post office building, where city's historic district designation, which was "imposed equally on other similarly situated constituents of the State"). *Cf. California*, 921 F.3d at 882 (state regulation was targeted "exclusively to federal conduct," as it applied only to "facilities in which noncitizens were being housed or detained for purposes of civil immigration proceedings").

Here, as in *North Dakota*, *Washington*, and *U.S. Postal Service*, the MWA is a neutral, generally applicable state law that nowhere singles out for regulation those who deal with the federal government—let alone GEO specifically. Although the MWA exempts Government-owned and –operated facilities, it does not exempt any private detention operators regardless of who they do business with. Put another way the MWA does not treat private employers any worse because they hold a contract with the federal government. *See* Wash. Rev. Code § 49.46.010(3)(k). Indeed, this Court already recognized the MWA is a facially neutral state law when it first denied GEO's motion for summary judgment. *See* ECF No. 162 at 6 ("At its core, and by design, the MWA protects employees and prospective employees in Washington generally, placing private firms that contract with the federal government on equal footing with

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   all other private entities."). Though the MWA may indirectly economically burden the federal

2   government (if the federal government accepts any cost GEO attempts to pass on), the MWA

3   does not single out or discriminate against GEO (or any other contractor) based on its status as

4   a federal contractor. *Id.* ("[T]he MWA is imposed equally on other similarly situated constituents

5   of the State."). Applying the MWA to detainee workers at the NWDC simply means that GEO

6   is subject to the same law as other private employers.

7          GEO nevertheless attempts to rely on the Department of Labor & Industries'

8   administrative policy regarding the MWA to assert discrimination. ECF No. 503 at 23 (citing

9   Department of Labor Industries Employment Standards Administrative Policy: MWA

10  Applicability (2020) ("ES.A.1."). But, as is clear from its face, ES.A.1 is not law. *See* Trial Ex.

11  A-321 (also filed at ECF No. 480-1) (including a disclaimer that it is not the law). Even if

12  considered, ES.A.1 merely reiterates the statutory exemption in subsection (3)(k). It states that

13  "residents, inmates or patients of state, county or municipal correctional, detention, treatment,

14  or rehabilitative institution[s] are exempt" from the MWA "if they perform work directly for,

15  and at, the institution's premises where they are incarcerated, and remain under the direct

16  supervision and control of the institution." *Id.* at 6. GEO makes much of the next sentence that

17  says individuals may not be covered if assigned to work with a private corporation—while

18  nonetheless "on prison premises" at a government facility and thus under the direct supervision

19  and control of government officers. *Id.* But that sentence simply makes clear that inmates in a

20  government-owned and -operated facility are exempt from the MWA. Indeed, no evidence at

21  trial was presented that a private work program even exists within a state correctional facility in

22  Washington. Ultimately, nothing in ES.A.1 addresses the circumstance where a private

23  contractor owns and operates a detention facility like the NWDC, much less states that such a

24  facility would be deemed a "state" institution for purposes of the MWA exemption. If anything,

25  the policies show that Washington is uniform in its application of the plain terms of the statute:

26  the MWA exemption applies only to individuals held in government-run facilities.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Realizing there is no state contractor similarly situated to GEO in Washington, let alone one that is excused from paying the minimum wage, GEO again invites the Court to engage in a false comparison of dissimilar entities: state government and its publicly run institutions, like prisons and treatment centers, with private companies that own and operate detention facilities for profit. ECF No. 503 at 13–14 (citing *California*, 921 F.3d at 885). But California does not stand for the legal proposition GEO claims. The Ninth Circuit did not invalidate the California law at issue because "it treated State and local detention facilities different from ICE facilities operated under contract to the Federal Government." *Cf.* ECF No. 503 at 14. To the contrary, *California* upheld all aspects of the California laws at issue which, like the MWA, were generally and broadly applicable. *See California*, 921 F.3d at 872–73, 879–85, 891. The only provision of California law invalidated was a provision of "requiring examination of the circumstances surrounding the apprehension and transfer of immigration detainees," which was "a novel requirement, apparently distinct from any other inspection requirements imposed by California law." *Id.* at 885. The MWA attempts no such targeted enforcement of immigration facilities.

But, even assuming the proper comparator is the state government itself—and it is not—GEO is not entitled to judgment as a matter of law. At trial, the Executive Director of Correctional Industries testified that Washington's DOC work program provides work to those convicted of committing a crime, who are near the end of their prison sentence, as part of vocational and reentry training, and that the pay rate is variable depending on experience. Trial Tr. June 11 12:19–13:24, 19:4–15, 19:23–20:15 (Sytsma), Trial Ex. A-25 at 6 (CI pay rate depends on "differences in difficulty, responsibility, and qualification requirements of the work"). The Special Commitment Center similarly offers work as part of a vocational rehabilitation program, that includes training in how to apply for, interview, and keep a job, and the goal is to give residents necessary skills when they are released into the community. Trial Tr. June 11 95:19–98:12, 99:5–102:8 (Eagle). Not only is the pay variable at the SCC, the work done by residents in treatment involve management and involvement by SCC clinical case

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  managers and is individualized. *Id*. at 99:5–9; Trial Ex. A-14 at 6 (SCC pay rate depends on

2  "behavior levels and treatment phases").

3  In contrast, the unrebutted testimony of present and former GEO witnesses who oversee

4  and operate the NWDC work program is that the mission of the NWDC work program is to

5  fulfill the core operational needs of GEO's NWDC facility itself–in food service, laundry,

6  janitorial, and barbershop services. For example, Bertha Henderson, the Food Service

7  Administrator, determined the number of detainees that would be assigned to the food service

8  department, per shift, based upon the actual needs of the kitchen department—not the detainees'

9  individualized needs. Trial Tr. June 3 159:8–160:15 (Henderson). To support the NWDC laundry

10 services, detainee workers load and unload washers and driers, clean lint traps, help make bed

11 rolls for incoming detainees, collect soiled laundry from the pods, and fold clean laundry. Trial

12 Tr. June 4 129:3–13, 131:13–15, 133:17–134:3, 139:11–23 (Menza). Detainee workers clean the

13 floors, take out the trash, clean showers and toilets, and do all of the janitorial work throughout

14 the secure portions of the facility. *See, e.g.,* Trial Tr. June 7 11:13–12:22 (Tracy); Trial Tr. June

15 2 121:4–6; 134:17–135:5 (McHatton) (testifying detainees work on all secure side of the

16 facility). There was no evidence at trial that NWDC's work program includes any vocational

17 rehabilitation, reentry training, or education for detainees' benefit at all.

|  | **GEO's Work Program** | **Washington DOC's Work Program** | **Special Commitment Center's Work Program** |
|---|---|---|---|
| Owner | Private Company | Government | Government |
| Type of Detention | Civil | Criminal | Civil |
| Individualized Treatment | No | Yes | Yes |
| Reentry Program | No | Yes | Yes |
| Skills-Based Vocational Program | No | Yes | Yes |
| Supervision | Detention Officers | Job Mentors | Recreation Staff, Maintenance Staff, Kitchen Staff |

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

| Wages | $1 per day | Varies depending on job requirements | Varies depending on individualized treatment |

In other words, Washington's work programs are structured as a public good—the work programs reduce recidivism and benefit the inmates and residents themselves by facilitating reentry into the community. GEO's work program, in contrast, benefits only GEO. GEO does not provide any on-going training, interview skills, or individualized treatment. GEO simply identified the jobs that would facilitate its own operation—and regardless of their skill or experience, pays detainees $1 per day. GEO is not similarly-situated to the government and the MWA's different treatment of GEO does not run afoul of intergovernmental immunity.

As the Court previously recognized, this case is unlike those in which federal employees or contractors were singled out and subject to heightened regulatory requirements. ECF No. 162 at 6–7 (distinguishing *Boeing*). Applying immunity here would allow GEO to receive special treatment that no other private company is afforded simply because it contracts with the federal government. That is clearly not the law. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 903 ("This rule does not, however, oblige special treatment."). Since GEO did not—and cannot—show that it is being discriminated against, the Court should enter judgment in favor of Washington. *See* ECF No. 498.

**D.**     **Derivative Sovereign Immunity Does Not Apply Because GEO Sets Detainees' Rate of Pay—Not ICE**

GEO's assertion of derivative sovereign immunity completely disregards binding precedent. In the Ninth Circuit, "derivative sovereign immunity . . . is limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). *See also In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 346 (4th Cir. 2014) (derivative sovereign immunity does not apply "if [the private contractor] enjoyed some discretion in how to perform its contractually authorized responsibilities."). Here, derivative sovereign immunity cannot apply because ICE specifically gave GEO discretion to set detainee pay. *See* Trial Ex. 17

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  (PBNDS 5.8) ("at least $1 per day"), Trial Ex. 65 (GEO's admission that it has the option to pay

2  more than $1 per day).

3       But, GEO's assertion of immunity fares no better even setting aside *Cabalce* and relying

4  on *Yearsley* and *Campbell-Ewald* alone, as GEO suggests. In *Yearsley*, the Supreme Court held

5  contractors are not entitled to immunity where the contractor "exceeded [its] authority." *Yearsley*

6  *v. W.A. Ross Const. Co.*, 309 U.S. 18, 20–21 (1940). In *Campbell-Ewald*, the Supreme Court

7  recognized derivative sovereign immunity does not apply when the contractor violates "the

8  Government's explicit instructions." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 154 (2016).

9  In fact, the *Campbell-Ewald* court explicitly cautioned that immunity will not attach where a

10  contractor's discretionary actions created the contested issue. *Id.* (rejecting claim of derivative

11  sovereign immunity where contractor sent text messages to unconsenting recipients even though

12  it was instructed to send messages only to individuals who had "opted in").

13       Here, GEO both exceeds its authority and violates the federal government's explicit

14  instructions. The GEO-ICE contract requires GEO to perform in accordance with all applicable

15  federal, state and local labor laws. *See* Trial Ex. 129 at 44, 52 (GEO-ICE contract). It further

16  instructs GEO to comply with the "most stringent" of any conflicting federal, state, or local

17  standards—an unambiguous directive that speaks to the precise circumstance here. *Id.* In other

18  words, GEO is not entitled to derivative sovereign immunity because GEO's own actions create

19  the contested issue—it is GEO that chooses not to pay detainees the minimum wage. *See In re:*

20  *U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 68–71 (D.C. Cir. 2019)

21  (refusing to apply immunity where, like here, the federal contractor's contractual obligations

22  required it to adhere to specific legal standards).

23       GEO nevertheless contends that two contract provisions entitle it to immunity: one

24  prohibiting GEO from using detainees to fulfill contractual obligations and another requiring to

25  GEO employ only U.S. citizens or legal permanent residents as employees. Neither provision,

26  however, authorizes or directs GEO to ignore state law generally or Washington's MWA in

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

particular. Indeed, GEO's own witness testified at trial that GEO violates these prohibitions and uses detainee workers to complete its own contractual duties. Trial Tr. June 14 30:7–31:8 (Ragsdale). Further, ICE's requirement that GEO employ U.S. citizens or legal permanent residents nowhere prevents GEO from paying detainees the minimum wage. For example, Jose Medina Lara testified at trial that he was in fact work authorized when GEO paid him only $1 per day for work performed at the NWDC. Trial Tr. June 3 136:21–24 (Medina Lara).

GEO's reliance on CLIN 3, a reimbursement provision, is similarly misplaced. CLIN 3 sets forth ICE's reimbursement to GEO for the work program—it nowhere states that GEO must pay detainees any particular wage, much less limit GEO to paying only $1 per day to detainee workers. In fact, GEO cannot point to any contractual provision that establishes a ceiling on what GEO may pay detainee workers. The evidence at trial showed that ICE explicitly told GEO that "there is no maximum" rate of compensation for detainee workers, *see* Trial Ex. 364, Trial Tr. June 2 187:17–188:6 (McHatton), but that it actually has paid detainees more than $1 per day, *see* Trial Tr. June 2 84:5–10; 90:1–92:8 (Singleton), Trial Tr. June 3 68:4–17 (Griffin); Trial Ex. 14 (confirming that the PBNDS "doesn't say that we don't have the option to pay more [than $1.00 per day] if we like"); Trial Ex. 78 (minutes of May 2012 meeting of NWDC leadership stating, "Payment for kitchen workers are flexible under the new PBNDS").

Although GEO argues that it pays detainees $1 per day at ICE's direction and mandate, ECF No. 503 at 7, 26, the overwhelming evidence at trial shows otherwise.[3] Since the GEO-ICE contract requires GEO to comply with state labor laws and the discretionary choices at the heart of this lawsuit were made by GEO and not the federal government, *see Cabalce*, 797 F.3d at 732, derivative sovereign immunity is no bar to Washington's claims. The Court correctly denied GEO's request for a jury instruction at trial. ECF No. 500-1 (Trial Tr. June 14 67:11–18).

---

[3] GEO's Rule 50(b) motion cites "Detention Services (Denver AOR)" to suggest that ICE authorized the $1 per day rate. It is unclear how a Denver AOR applies in Washington, but should nevertheless not serve as a basis for judgment here as it was never disclosed in discovery, nor presented at trial.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

E.      The MWA Is Not Preempted

GEO's final, last-ditch argument is that the MWA is preempted in three ways. Not so.

First, IRCA does not expressly preempt the MWA. Under a plain reading of IRCA's preemption clause, Congress only intended to preempt state action that would impose sanctions "upon those who employ, or recruit or refer for a fee for employment" undocumented immigrants. 8 U.S.C. § 1324a(h)(2). Here, Washington does not attempt to sanction GEO for employing undocumented workers. Instead, Washington seeks to enforce its state minimum wage, which applies without regard to an employee's immigration status. It is well established that states can enforce generally applicable regulations that protect workers without violating IRCA. *Chamber of Com. v. Whiting*, 563 U.S. 582, 600 (2011) (holding that "IRCA expressly preempts some state powers dealing with the employment of unauthorized aliens and it expressly preserves others" and finding no preemption of an Arizona licensing law targeting employers that hire undocumented workers). *See also Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (holding that IRCA did not state labor law that forbid employers from terminating an employee without good cause even if that law applied to an employer who terminated an immigrant who lost their legal work status). GEO can easily comply with both IRCA and the MWA by employing detainee workers who are authorized to work, or hiring non-detained employees from the local community (as it does with its security officers). If IRCA's preemption clause is read as GEO argues, IRCA would create an incentive for employers to hire undocumented workers so they could pay them substandard wages and ignore all other state labor laws. IRCA does not command this absurd result.

Second, the MWA is not field preempted. Although GEO cites to a loose assortment of statutes and one-off legal opinions, even when taken together, they hardly constitute a regulatory framework so pervasive as to displace state law. *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 733 (9th Cir. 2016) ("[S]tate law is pre-empted . . . if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

room for the States to supplement it.'") (quoting *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 516 (1992)). While the federal government has broad immigration authority, that authority cannot displace every generally applicable state law that touches anyone involved in the immigration system. *Cf. Arizona v. United States*, 567 U.S. 387, 401 (2012) (holding state law that mirrors IRCA is field preempted).

Instead, there is a presumption against preemption in areas traditionally regulated by the States. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). "States possess broad authority under their police powers to regulate the employment relationship to protect workers" and both the Supreme Court and the Ninth Circuit have specifically recognized that "[c]hild labor laws, minimum and other wage laws, laws affecting occupational health and safety . . . are [ ] a few examples.'" *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ((quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)). In fact, not even the federal government believes field preemption applies here, given that ICE's contract with GEO expressly reserves room for the application of state and local laws within contract detention facilities. *See* Trial Ex. 129 at 52. GEO's reliance on both 8 U.S.C. § 1555(d) and an appropriations bill that predate the existence of private immigration detention is equally unavailing. At most, the appropriation sets the amount ICE can reimburse an entity for detainee workers who participate in the detainee work program. It cannot and does not occupy the legislative field of "alien employability." *See United States v. Nixon*, 839 F.3d 885, 887–88 (9th Cir. 2016) (affirming that an appropriations rider simply restricts an agency's ability to use certain funds and does not invalidate existing law).

Third, the MWA does not stand as an obstacle to Congressional objectives. GEO's second citation to 8 U.S.C. § 1555(d)—this time, to suggest obstacle preemption—is unavailing. The MWA nowhere prevents Congress from providing an "allowance" to detainees. Further, while IRCA prohibits the employment of immigrants without work authorization, neither Washington's MWA nor this lawsuit seeks to require GEO to employ detainees who lack work

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   authorization at all. Washington's MWA only requires that, where GEO chooses to employ

2   workers, that GEO pay them at least the minimum wage. *See Incalza*, 479 F.3d at 1013 (rejecting

3   conflict preemption argument because "it was possible for [defendant] to obey federal law . . .

4   without creating a conflict with state law" by suspending the employee as he adjusted his

5   immigration status instead of terminating him). Detainees may be legal permanent residents,

6   asylum seekers, grantees of Deferred Action for Childhood Arrivals (DACA), or have other

7   immigration statuses that similarly authorize them to work or provide eligibility for work

8   authorization. *See* 8 C.F.R. §§ 274a.12(c)(8)–(10), (19). GEO could undoubtedly comply with

9   IRCA, administer a work program, and abide by Washington's MWA by hiring work-authorized

10  detainees or Tacoma-area residents and paying them the minimum wage.

11       To the extent GEO argues detainees are not entitled to back wages for work actually

12  performed, GEO's argument contradicts every court that has considered the issue. *See, e.g.,*

13  *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 935 (8th Cir. 2013) (recognizing minimum wage

14  claim and noting that IRCA does not exclude unauthorized workers from all statutory

15  protections); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013)

16  (observing that "coverage of undocumented aliens [under FLSA] helps discourage illegal

17  immigration and is thus fully consistent with the objectives of the IRCA."); *see also David v.*

18  *Signal Int'l, LLC*, 257 F.R.D. 114, 123-24 (E.D. La. 2009) (listing cases). Regardless, this

19  lawsuit seeks injunctive relief—not back wages. In sum, it is possible for GEO to comply with

20  all of its obligations simultaneously, and GEO has failed to show that paying the detainees

21  minimum wage is preempted in any way.

22              **III.    CONCLUSION**

23       The Court should deny GEO's motion for judgment as a matter of law in its entirety.

24

25

26

1    DATED this 2nd day of August 2021.

2                                    Respectfully submitted,

3                                    ROBERT W. FERGUSON
                                     Attorney General of Washington
4

5                                    s/Marsha Chien
                                     MARSHA CHIEN, WSBA No. 47020
6                                    ANDREA BRENNEKE, WSBA No. 22027
                                     LANE POLOZOLA, WSBA No. 50138
7                                    PATRICIO MARQUEZ, WSBA No. 47693
                                     Assistant Attorneys General
8                                    Office of the Attorney General
                                     800 Fifth Avenue, Suite 2000
9                                    Seattle, WA 98104
                                     (206) 464-7744
10                                   marsha.chien@atg.wa.gov
                                     andrea.brenneke@atg.wa.gov
11                                   lane.polozola@atg.wa.gov
                                     patricio.marquez@atg.wa.gov
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

Dated this 2nd day of August 2021.

CAITILIN HALL
Legal Assistant

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO THE GEO GROUP,
INC.'S RULE 50(b) MOTION FOR
JUDGMENT AS A MATTER OF LAW

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744