The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

STATE OF WASHINGTON,

10

Plaintiff,

11

v.

12

THE GEO GROUP, INC.,

13

Defendant.

Case No. 3:17-cv-05806-RJB

**THE GEO GROUP, INC.'S RESPONSE TO THE STATE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**NOTE ON MOTION CALENDAR:**

August 6, 2021

**ORAL ARGUMENT REQUESTED**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1

**TABLE OF CONTENTS**

2

                                                                              <u>Page</u>

3    PRELIMINARY STATEMENT...................................................................................... 1

4    ARGUMENT ..............................................................................................................2

5    I.     The State's Detention Facilities and the NWIPC Facility Are Similarly Situated...............4

6    II.    The State's Special Commitment Center and Other State Institutions Are Similarly
7           Situated to the NWIPC.................................................................................8

8    III.   The WMWA Treats the NWIPC Less Favorably than It Treats Similarly Situated State
9           Detention Facilities. .................................................................................13

10   IV.    Even If Private State Contractors Were the Proper Comparator, the WMWA Violates
11          Intergovernmental Immunity.........................................................................15

12   V.     Even If the WMWA Were Facially Neutral, Intergovernmental Immunity Would
13          Still Require Judgment in Favor of GEO. ...........................................................17

14   CONCLUSION.............................................................................................................18

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                          i

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

*Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ........................5, 7, 9, 17

*Dawson v. Steager*, 139 S. Ct. 698 (2019)...........................................4, 7, 11, 15, 16

*Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991)...........................5, 6

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) .................................. 5, 7

*Hancock v. Train*, 426 U.S. 167 (1976).......................................................5

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ........................... 12

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 633 F. Supp. 2d 892 (N.D. Cal. 2007)............10

*Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982)....................................6

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ................................6, 12

*Miller v. Dukakis*, 961 F.2d 7 (1st Cir. 1992) .............................................6, 8

*Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021) ..............................6, 18

*North Dakota v. United States*, 495 U.S. 423 (1990) ...............................4, 5, 10, 14, 15

*Sanders v. Hayden*, 544 F.3d 812 (7th Cir. 2008) .......................................6, 8

*U.S. Postal Serv. v. City of Berkeley*, No. C16-04815 WHA,
    2018 WL 2188853 (N.D. Cal. May 14, 2018) ...................................10

*United States v. California*, 921 F.3d 865 (9th Cir. 2019)...........................3, 5

*United States v. Texas*, No. 3:21-cv-173 (W.D. Tex).....................................7

*Washington* v. *United States*, 460 U.S. 536 (1983) ...................................10, 15

*Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013)................................6, 8

**Statutes**

RCW
    49.46.010............................................................................14
    49.46.010(1)........................................................................18
    49.46.010(3)........................................................................14
    49.46.010(3)(c).....................................................................18
    49.46.010(3)(d).....................................................................14
    49.46.010(3)(k) ..................................................... 5, 10, 11, 14, 16, 18
    49.46.020............................................................................14

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

ii

1

**Legislative Authorities**

2   EHB 1090, 67th Legis. Reg. Sess., 2021 Wash. Sess. Laws, ch. 30 § 3(b)...........................16, 17

3   ES.A.1 ...............................................................................................................................16, 17

4   S.B. 990, 2007 Reg. Sess., ch. 729, § 2 (Cal. 2007) ......................................................................17

5   **Other Authorities**

6   THE FEDERALIST NO. 23 ....................................................................................................................12

7
8   Letter from the Hon. Merrick B. Garland, Att'y Gen. of the U.S., to the Hon. Greg Abbott,
        Governor of Tex. (July 29, 2021), available at https://cnn.it/3zSOVGp .........................2, 7
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

iii

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

**PRELIMINARY STATEMENT**

One and a half months ago, this Court directed the jury's attention to two questions: 1) Whether GEO employed detainee workers at the Northwest ICE Processing Center ("NWIPC") under the provisions of the Washington Minimum Wage Act ("WMWA"); and 2) whether the WMWA discriminates against GEO. Ct.'s Instrs. to the Jury, Dkt. 492 at 25 (June 17, 2021) ("Jury Instrs."). The Court instructed the jury, "If you answer[ ] 'no' to Question 1, go no further and advise the Court that you are ready to return to the Courtroom." *Id.* The State has chosen in its motion to skip right over the first of the two questions, but we reemphasize that the answer to the first question the jury was asked to consider is, under established law and binding precedent, a resounding "No" and that this case should "go no further."

The State's motion focuses on one, and only one issue, namely, the issue presented in the Court's second question to the jury: whether the State's attempt to apply the WMWA to federal detainees at the NWIPC discriminates against  federally mandated operations at the NWIPC in violation of the doctrine of intergovernmental immunity. *See* Pl. State of Wash.'s Renewed Mot. for J. as a Matter of L., Dkt. 498 (July 15, 2021) ("SOW Rule 50(b) Mot."). This Court need not reach that issue, however, for the reasons set forth in The GEO Group, Inc.'s Rule 50(b) Motion for Judgment as a Matter of Law, Dkt. 503 (July 15, 2021) ("GEO Rule 50(b) Mot.").

- <u>First</u>, as required by uniform federal precedent, including settled Ninth Circuit precedent, the WMWA is simply inapplicable to on-site work by detainees held in custody and who participate in a Voluntary Work Program ("VWP") created and controlled by the Federal Government. Federal detainees who volunteer to participate in the VWP rather than to remain idle do not, as a matter of law, qualify as "employees" entitled to the benefits of the WMWA. *Id.* at 6–17 (citing cases).

- <u>Second</u>, even if the WMWA applied to persons held in custodial detention, it would not apply to federal detainees at the NWIPC because GEO has no choice whether to "permit" detainees "to work" by providing a VWP—the program is mandated by the ICE-GEO contract and GEO has no authority whatsoever to *not* permit detainees to work by participating in the VWP. *Id.* at 6–7.

- <u>Third</u>, the WMWA's residential exemption applies to operations at the NWIPC, as ICE

conditions participation in the VWP on being a resident at the NWIPC. *Id.* at 17–18.

- <u>Fourth</u>, applying the WMWA to federal detainees at the NWIPC would constitute direct state regulation of the ICE-mandated VWP in violation of the Supremacy Clause. *Id.* at 18–22. Attorney General Merrick Garland just last week reaffirmed the Statement of Interest filed by the Department of Justice ("DOJ") in this case, *e.g.*, Dkt. 290 at 5–6 (Aug. 20, 2019) ("DOJ SOI"), maintaining that private contractors engaged by the Federal Government to perform federal functions must be treated the same as the Federal Government itself under the intergovernmental immunity doctrine. Letter from the Hon. Merrick B. Garland, Att'y Gen. of the U.S., to the Hon. Greg Abbott, Governor of Tex. (July 29, 2021), available at https://cnn.it/3zSOVGp ("Garland Letter").

- <u>Fifth</u>, GEO is protected by derivative sovereign immunity against liability for its compliance with the ICE-initiated contractual requirements that "[d]etainees shall not be used to perform the responsibilities or duties of an employee of [GEO]," and that, in paying participants in the VWP, GEO "shall not exceed [the actual cost of $1.00 per day per detainee] without prior approval by the Contracting Officer." GEO Rule 50(b) Mot., Dkt. 503 at 25–27.

- And <u>sixth</u>, even if it otherwise applied, the WMWA is preempted by federal law. *Id.* at 27–29.

For each of these reasons, GEO is entitled to judgment in its favor, and the Court therefore need not decide whether application of the WMWA to federal detainees at the NWIPC violates the intergovernmental immunity doctrine by discriminating against federally mandated detention operations. But if the Court does reach this question, binding precedent requires the Court to hold, as a matter of law, that the WMWA cannot be constitutionally applied to operations at the NWIPC.

## ARGUMENT

The central legal issue dividing the parties on the State's motion is whether state-operated detention facilities are a proper comparator to a privately operated federal detention facility—here, the NWIPC—for purposes of determining whether applying the WMWA to detainees held at the NWIPC would discriminate against the federally mandated detention operations there, in violation of the intergovernmental immunity doctrine. The State admits that the record establishes the WMWA "exempts Washington's prisons, rehabilitation centers, and the [Special Commitment Center ("SCC")]

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                            2

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

from its requirements," but argues that such facilities are not "proper comparators" to the NWIPC because, unlike the NWIPC, none of Washington's state or local detention facilities are operated by a private contractor. SOW Rule 50(b) Mot., Dkt. 498 at 8.

The State's argument is foreclosed by the Ninth Circuit's binding precedent of *United States v. California*, 921 F.3d 865 (9th Cir. 2019). In that case, the Court of Appeals squarely held, for purposes of determining whether a California law impermissibly discriminated against an ICE facility operated by GEO, that the proper comparators for the facility were "California's state and local detention facilities." *Id.* at 885. The Ninth Circuit did not distinguish between detention facilities operated by the State itself or its municipal subdivisions and federal detention facilities operated by private contractors, and the Court made clear that California could not constitutionally impose requirements on GEO's facility that did not apply to detention facilities operated by state or local government entities. *Id.* at 884–85. To the extent the challenged state law imposed an inspection regime on GEO's facility that was "distinct from any other inspection requirements imposed by California law" on state and local detention facilities, *id.* at 885, the Court held that it "discriminates against and impermissibly burdens the federal government, and so is unlawful under the doctrine of intergovernmental immunity." *Id.* at 873. This ruling is precisely on point and is binding precedent for this case—the application of the WMWA to federal detainees held at the NWIPC but not to detainees held at state or local facilities "discriminates against and impermissibly burdens the federal government, and so is unlawful under the doctrine of intergovernmental immunity," *id.* at 873.

Moreover, the State has admitted that the state-operated facilities would be the proper comparator to the NWIPC "were GEO the federal government." SOW Rule 50(b) Mot., Dkt. 498 at 8. This admission is fatal to the State's case, for the Ninth Circuit in *California* squarely held that "[f]or purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself." *California*, 921 F.3d 865, 882 n.7. These holdings foreclose the State's contention that its own state and local detention facilities are not comparable to the NWIPC, and they require entry of judgment for GEO on its intergovernmental immunity defense. The State has no answer to *California*—indeed, it does not even cite it in its Rule 50(b) motion.

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

3

1    This Court recognized two years ago that, in light of the binding authority of *California* and

2    *Dawson v. Steager*, 139 S. Ct. 698 (2019), intergovernmental immunity against discriminatory

3    regulation of federal operations may doom Plaintiffs' case. Prop. Order Granting Summ. J. of

4    Dismissal, Dkt. 306-1 (Sept. 24, 2019) ("Prop Order"). The Court, however, did not then enter

5    judgment, but instead sought additional evidence that "the state's civil detainees and ICE's civil

6    detainees" or "the State's Civil Commitment Center and the Northwest Detention Center" are similarly

7    situated. Order, Dkt. 322 at 1–2 (Oct. 9, 2019). As explained below, the evidence submitted at trial

8    demonstrates beyond all doubt that the State's civil detainees and ICE's civil detainees, and the State's

9    Civil Commitment Center and the NWIPC are similarly situated, and there can be no question that the

10   State's detention facilities, which are exempt from the WMWA, are treated more favorably than the

11   NWIPC. Indeed, in the Court's final jury instructions, the Court correctly determined that the

12   "Minimum Wage Act discriminates against the Federal Government or its contractors" if it "treat[s]

13   GEO less favorably than similarly situated State employers are treated." Jury Instrs., Dkt. 492 at 19

14   (June 17, 2021). The State now seeks a directed verdict, arguing (correctly) that "[w]hether IGI shields

15   GEO from [liability] is a question of law—not fact." SOW Rule 50(b) Mot. at 13. But *California* and

16   *Dawson* require judgment as a matter of law in *GEO's* favor, as do a host of other authorities, including

17   the State's primary case, *North Dakota v. United States*, 495 U.S. 423 (1990). The State's motion

18   should be denied, and judgment should be entered in GEO's favor.

19   **I.      The State's Detention Facilities and the NWIPC Facility Are Similarly Situated.**

20
21   As this Court observed two years ago: "The lesson of *Dawson v. Steager* ... is that to decide an

22   intergovernmental immunity case, the Court must determine whether the state is treating a similarly

23   situated federal entity differently than it is treating itself, and if it is doing so, whether the difference

24   is discriminatory against the federal government *and its contractors*." Prop. Order, Dkt. 306-1 at 6

25   (emphasis added). It is clear that the State's detention facilities and the NWIPC facility are similarly

26   situated as a matter of law. First, the text of the WMWA itself establishes that, for purposes of the

27   State's minimum wage, prison and civil detention operations are similarly situated, for subsection (k)

28   specifically includes both criminal and civil detention institutions in its exemption for employers of

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                                    4

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

"[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution." RCW 49.46.010(3)(k). And the exemption is on its face a blanket one: it applies to "*any*" detainee in the custody of "a state, county, or municipal … detention ... institution," without distinction between institutions operated by the state or local government itself and those operated by a private contractor.

Second, controlling caselaw confirms this understanding of the Federal Government's intergovernmental immunity from discriminatory state regulation. *California* is squarely on point. In that case, the state imposed an inspection regime on ICE facilities *operated by private contractors* in California. 921 F.3d at 882, n.7. In analyzing the discrimination prong of intergovernmental immunity, the Court compared the regulation of federal immigration detention facilities to the regulation of state "prisons and detainment facilities," including specifically "state and local detention facilities." *Id.* at 882, 884. The court's only reference to the private ownership/operation of federal detention facilities was to dismiss it as irrelevant: "For purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself." 921 F.3d 865, 882 n.7. The Ninth Circuit's statement equating the Federal Government with its private contractors is a familiar feature of intergovernmental immunity cases. *See, e.g.*, *North Dakota*, 495 U.S. at 438 ("Since a regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself, the Court has required that the regulation be one that is imposed on some basis unrelated to the object's status as a Government contractor or supplier."); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis on this ground."); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988) ("[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation."); *Hancock v. Train*, 426 U.S. 167, 172–73, 174 n.23 (1976) (equating contractor and government agencies that operated federal energy facilities); *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 440 (9th Cir. 1991) ("[I]nterference occurs when, as here, the state

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

5

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

requires a contractor with the federal government to comply with its licensing laws even if that requirement is not enforced until after performance has begun."). The State cites no case, and we are aware of none, decided by any federal court that has drawn a distinction between the federal government and its private contractors for purposes of determining discrimination under the intergovernmental immunity doctrine.

Further confirming this point is the recent case of *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021). In *Ndambi*, former detainees of a privately operated ICE detention facility claimed that they were entitled under New Mexico law to payment of minimum wage for their work in a voluntary work program materially indistinguishable from the VWP at the NWIPC. In rejecting the claim, the Fourth Circuit held that all "custodial" detainees are categorically similarly situated for purposes of minimum-wage laws; it made no distinction between detainees held in state-operated facilities and those held in privately operated federal facilities. *Id.* at 373–74. The Court specifically placed state detainees in the category of "custodial" detainees, *id.* (citing *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992); *Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013)). And it included federal civil immigration detainees in the same category. *Id.* Here again, federal law sees no distinction between civil detainees held in state custody and ICE's detainees held in a privately operated federal facility.

The intergovernmental immunity cases uniformly treat the Federal Government's private contractors as the Federal Government itself for a reason: in the performance of delegated federal functions, private government contractors stand in the shoes of the Government itself, subject to its supervision and control. In such circumstances, the contractor is a mere "instrument employed by the government of the Union to carry its powers into execution." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436–37 (1819); *see also Lewis v. United States*, 680 F.2d 1239, 1242 (9th Cir. 1982) (an "entity [that] performs an important governmental function" is "a federal instrumentality"). Certainly, GEO is the instrument of the Federal Government in the operation of federal civil immigration detention facilities. It was the Federal Government that assigned and transported the detainees to the NWIPC, and it is only under federal law that they may be involuntarily detained there. GEO has no

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                               6

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

authority over the detainees but delegated federal authority—and it has no discretion regarding the performance of its federal functions. GEO has no discretion at all, for example, as to whether it provides a VWP for detainees, nor as to how the VWP is to be administered under applicable federal detention standards. The State concedes that the WMWA would not apply to the Federal Government if it operated the VWP, *see* SOW Rule 50(b) Mot., Dkt. 498 at 8–9, and there is no basis in fact or in law to treat the Federal Government's contractor any differently with respect to the operation of that program.

The Department of Justice affirmed this position in the Statement of Interest that it filed in this Court two years ago, noting that the appropriate "inquiry looks to 'how the State has defined the favored class,'" observing that "[t]he 'favored class' in these circumstances are entities that conduct state detention operations," and denying that there is any "relevant basis on which to distinguish entities that conduct federal detention operations—whether owned by the federal government or by one of its contractors—from state detention facilities for purposes of Washington's minimum wage law." DOJ SOI, Dkt. 290 at 14 (quoting *Dawson*, 139 S. Ct. at 705). DOJ reaffirmed this understanding of intergovernmental immunity again just last week in a letter to Texas Governor Greg Abbott dated July 29, 2021, concerning an Executive Order to limit who may provide transportation services to undocumented persons in the State of Texas. Attorney General Garland, said this:

> … Texas cannot regulate the operations of private parties performing tasks on behalf of the United States. *See Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 181 (1988) ("[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation."); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014) (holding unconstitutional a state law that "directly interfere[d] with the functions of the federal government" by "mandat[ing] the ways in which [a contractor] renders services that the federal government hired [it] to perform").

Garland Letter at 2. The United States has since filed suit and sought a temporary restraining order against Texas to enforce these principles of intergovernmental immunity. *See United States v. Texas*, No. 3:21-cv-173 (W.D. Tex.), ECF Nos. 1, 3.

Any question regarding the current Administration's position with respect to the ability of the State of Washington to limit or otherwise regulate the Federal Government's exclusive jurisdiction over

the administration of its immigration laws and policies, or the performance of its contractors in fulfilling the requirements of contracts effecting the same, has been unequivocally settled in favor of GEO's position in this case.

## II.    The State's Special Commitment Center and Other State Institutions Are Similarly Situated to the NWIPC.

The SCC and the NWIPC are similarly situated as a matter of law. Like the NWIPC, the SCC houses civilly detained individuals and provides voluntary opportunities to work on-site for sub-minimum-wage payment, *see, e.g.*, Kane Decl., Ex. A, Trial Tr., June 11, 2021, Eagle, 37:12–23, 54:2–3); Ex. B, Trial Ex. A-014, 2. As noted above, in *California* the Ninth Circuit compared "private locked detention facilities" directly to state "prisons and detainment facilities" and "state and local detention facilities." 921 F.3d at 882, 884. And in *Ndambi*, the Court of Appeals deemed privately operated civil immigration facilities to be similarly situated to the state-operated detention centers in *Sanders*, *Miller*, and *Williams*. In all three cases, those detention centers were state-operated detention centers for sexually violent persons—exactly like the SCC. *See Sanders*, 544 F.3d at 813–14; *Miller*, 961 F.2d at 8; *Williams*, 536 F. App'x 694.

Likewise, the State's Correctional Industries program and the NWIPC are also similarly situated. Like the NWIPC, Correctional Industries offers inmates a "work program that allow[s] detained individuals to stay busy," Kane Decl., Ex. C, Trial Tr., June 10, 2021, Sytsma, 131:15–18, including by working in laundry and food service, *see, e.g.*, SOW Rule 50(b) Mot., Dkt. 498 at 10; Kane Decl., Ex. C, Trial Tr., June 10, 2021, Sytsma, 133:2–5, 140:15–25; Ex. A, Trial Tr., June 11, 2021, Sytsma, 6:24–7:4, 7:25–8:7, 8:20–22, 17:21–25; 21:23–22:2. Again, *California* simply does not distinguish state-operated prisons from privately operated federal detention facilities for purposes of intergovernmental immunity, and *Ndambi* does not distinguish any custodial institutions from others for purposes of determining whether work performed by detainees at any custodial institution constitutes employment that is subject to minimum-wage laws.

Disregarding these dispositive authorities, the State still seeks to distinguish the NWIPC from state-operated detention facilities on the ground that the NWIPC is operated by GEO, rather than by

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

8

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1    the Federal Government itself. *E.g.*, SOW Rule 50(b) Mot., Dkt. 498 at 13. But this distinction was

2    immaterial not only in *California* and *Ndambi*, but in other controlling cases as well. For example, in

3    *Boeing* , the state "applie[d] more stringent requirements to [the site of a cleanup of federal pollution]

4    than to non-federal facilities because it require[d] cleanup to a standard suitable for subsistence

5    farming, rather than for the site's reasonably foreseeable future use." 768 F.3d at 842. A private

6    contractor, Boeing, was hired by the Federal Government to perform the cleanup, *id.* at 834, 836, but

7    "[t]he federal government's decision to hire Boeing to perform the cleanup rather than using federal

8    employees" had no bearing on the Ninth Circuit's intergovernmental immunity analysis. *See id.* at

9    842. What mattered was that Boeing was "subjected to discriminatory regulations," *id.* at 842–43,

10   because it "contracted with the federal government for the nuclear research and now the cleanup of

11   radioactive contamination," *id*. In the same way here, GEO is being subjected to the State's

12   discriminatory minimum-wage regulations because it contracted with the Federal Government to

13   provide for federal immigration detention services and to provide the Federal Government's

14   contractually mandated VWP. The private-contractor status of GEO should "not affect [the Court's]

15   immunity analysis on this ground," *id.* at 842. Indeed, the evidence is clear that the programs for civilly

16   detained individuals are materially indistinguishable: in both the SCC and the NWIPC, detainees help

17   cook, clean, and otherwise contribute to their communal living in exchange for a nominal stipend.

18   Kane Decl., Ex. A, Trial Tr., June 11, 2021, Eagle, 37:21–23; 56:21–57:4, 60:7–11; 65: 4–8; 65:19–

19   24; Ragsdale, 167:17–168:3, 168:4–7; Ex. D, June 4, 2021, Henderson, 31: 15–17. GEO follows the

20   instructions of the Federal Government with respect to the VWP. *E.g., id.*, Ex. E, Trial Tr., June 8,

21   2021, Scott, 9:2–10:21. Neither program is influenced in any way by whether the program is operated

22   by a private or government entity.

23        Far from undermining the conclusion that privately operated federal detention facilities and

24   state-operated detention facilities are similarly situated, the State's cases *reinforce* it.[1] According to

---

[1] Other than providing this support for *GEO's* position, the four cases are inapt, as none of them involves any exemption, much less any exemption comparable to this case.

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                                                   9

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

the State, *North Dakota v. United States* establishes that "GEO's proper comparator is a private corporation that *contracts* with the state—not the *state government itself*." SOW Rule 50(b) Mot., Dkt. 498 at 8. But the State has it precisely backward: in *North Dakota*, the Supreme Court deemed the appropriate class of comparison to be "liquor retailers in the State," including the Federal Government's military bases, "like the civilian retailers in the State." 495 U.S. at 439. Likewise, in *U.S. Postal Serv. v. City of Berkeley*, the Court compared the U.S. Postal Service to "all the property owners in the affected area." *see* No. C16-04815 WHA, 2018 WL 2188853, at *4 (N.D. Cal. May 14, 2018). In both cases, it made no difference at all to the Court that one entity was privately operated and another was publicly operated. The State also cites *Washington* v. *United States*, 460 U.S. 536, 545 (1983). But *Washington* turns on intergovernmental *tax* immunity, *see id.*, which is a distinct doctrine, *see Boeing*, 768 F.3d at 839 (deeming cases that "discuss generally applicable state tax laws" to be "inapposite" for determining the applicability of intergovernmental regulation immunity), and nothing in *Washington* excludes State actors from the taxes applied without exemption in that case. Finally, the State cites *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 633 F. Supp. 2d 892, 904 (N.D. Cal. 2007), which does not involve federal contractors at all and, again, does not deny that state actors may be comparators for purposes of intergovernmental discrimination. In this light, it should make no difference here that one detention facility is privately operated and another is publicly operated. Instead, as the Federal Government has insisted, and the State itself has admitted, the "discrimination [prong of intergovernmental immunity] allows contractors to be treated like the federal government." *The GEO Grp., Inc. v. Inslee*, 3:21-cv-05313-BHS, Dkt. 53 at 9 (July 16, 2021); *accord, e.g.*, DOJ SOI, Dkt. 290 at 6–7, 12.

The State also attempts to distinguish the State's voluntary work programs on the basis of their rehabilitative and educational purposes. *See* SOW Rule 50(b) Mot., Dkt. 498 at 9–12. But again, the WMWA *categorically* exempts employers who "permit to work" "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution" without regard to the purpose of the program. RCW 49.46.010(3)(k). Although it includes work for the purposes of "vocational rehabilitation, reentry training, or education for the benefit of the detainees

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

10

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

themselves," it nowhere limits the exemption as the State now tries to do. SOW Rule 50(b) Mot., Dkt. 498 at 11. This litigation-inspired, litigant-created limitation fails, for under *Dawson* a court must look at the *statutory text* to delineate the two groups that are purportedly treated differently. "While the State was free to draw whatever classifications it wished," it cannot now, in litigation, reform "the statute it enacted" to reflect "some sort of proxy for a lawful classification hidden behind it." 139 S. Ct. at 706. Because the statutory text exempts all state detention facilities that permit custodial detainees to work, regardless of the purposes of the work, all such entities—including SCC and Correctional Industries—are similarly situated to the NWIPC regardless of the purposes of the custodial work programs that they operate.

For the same reason, the State's other attempts to distinguish the SCC from the NWIPC also fail. RCW 49.46.010(3)(k) does not exempt employers on the grounds that they house sexually dangerous persons, that they offer treatment for those with sexually violent tendencies, that they manage work with clinical case managers, or that the work program involves training in job skills, including interviewing skills. *Cf.* SOW Rule 50(b) Mot., Dkt. 498 at 11–12. Instead, RCW 49.46.010(3)(k) exempts employers of state, county, and municipal detainees categorically. Whether the residents of the SCC are given electrical training or asked to break rocks, the SCC's exemption from the WMWA is the same under the plain language of the statute. Moreover, as discussed above, *California* and *Ndambi* independently establish that, in the contexts of civil immigration detention and custodial detention, the State's distinctions are too fine to refute the similar situations of the SCC and the NWIPC.

Accordingly, no material factual issues regarding intergovernmental immunity remain for a jury to decide. Whatever gaps existed previously, the Court now has a dispositive evidentiary record on the only comparators that it permitted into evidence. At trial, plaintiffs argued that GEO's undisputed status as a private contractor was *the* distinguishing characteristic. Plaintiffs did not put any other facts before the jury that GEO disputed when comparing the VWP to state-operated voluntary work programs. But whether GEO's private status is a distinguishing characteristic is a purely legal question, not a question of fact for the jury. It is for this Court to decide whether, under

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

11

controlling authorities, private contractors performing federal sovereign functions are exempt from paying the State's minimum wage for detainee work, just as the federal government would be (by the State's own admission) if it performed those functions itself. By excluding facilities holding federal detainees from the exemption, the WMWA discriminated against the Federal Government—whether or not it chose to perform its detention functions through a private contractor—in violation of intergovernmental immunity doctrine.

To be clear, the limited scope of comparison in these cases—seeking *similar*, not *identical*, situations—is as fitting as it is binding: intergovernmental immunity is not a fingerprint-matching exercise, but a constitutional allocation to the Federal Government of broad categories of action—those involved in federal operations—so as to ensure the Federal Government's freedom to achieve its objectives. *See generally* THE FEDERALIST NO. 23 ("[T]he absurdity must continually stare us in the face of confiding to a government, the direction of the most essential national interests, without daring to trust it with the authorities which are indispensable to their proper and efficient management."). As DOJ has advised the Court in the Statement of Interest that it filed in this case, "the intergovernmental immunity doctrine is critically important to the Federal Government's ability to function free from improper interference by the states." DOJ SOI, Dkt. 290 at 6 (citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 128 (1993) ("The purpose of the intergovernmental immunity doctrine is to protect the rights of the Federal Sovereign against state interference.")). For this reason, "[t]he [Supreme Court] has always shown a just anxiety to prevent any conflict between the federal and state powers; to construe both so as to avoid an interference, if possible, and to preserve that harmony of action in both, on which the prosperity and happiness of all depend." *McCulloch*, 17 U.S. at 338.

In any event, operation of the VWP at the NWIPC is plainly similar to the operation of similar voluntary work programs in detention facilities operated by the State, as the comparison table below shows:

| Special Commitment Center | Northwest ICE Processing Center |
|---|---|
| Administrative confinement | Administrative confinement |
| Subminimum wage stipend | Subminimum wage stipend |
| Tasks include cleaning, laundry, and meal preparation. | Tasks include cleaning, laundry, and meal preparation. |

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

12

| Paid employee officers supervise safety and security and work alongside confined individuals. | Paid employee officers supervise safety and security and work alongside confined individuals. |
| Meaningful work opportunities | Meaningful work opportunities |

| Correctional Industries | Northwest ICE Processing Center |
| --- | --- |
| Population held under state governmental authority. | Population held under federal governmental authority |
| Subminimum wage "gratuity" | Subminimum wage stipend |
| Tasks include cleaning, laundry, and meal preparation. | Tasks include cleaning, laundry, and meal preparation. |
| Paid employee officers supervise safety and security and work alongside confined individuals. | Paid employee officers supervise safety and security and work alongside confined individuals. |

*See, e.g.*, Kane Decl., Ex. C, Trial Tr., June 10, 2021, Eisen, 97: 2–5; Sytsma, 130:25–131:2; 133:2–5, 140:15–25; Ex. A, Trial Tr., June 11, 2021, Sytsma, 6:24–7:2, 7:1–11; 7:25–8:7, 8:20–22, 17:21–25; 21:23–22:2, 22:10–20; Eagle, 37:12–13, 37:21–23, 56:21–57:4, 60:7–11; 65: 4–8; 65:19–24; 75:2–3, 78:19–79:1, 79:2–14; Ragsdale, 167:17–168:3, 168:4–7; Ex. D, June 4, 2021, Henderson, 31: 15–17.

The VWP serves to occupy idle prisoners, reduce disciplinary problems, nurture a sense of responsibility, and engender life and job skills. *See, e.g.*, Kane Decl., Ex. F, Trial Tr., June 9, 2021, Evans, 83:15–19; Ex. G, Trial Tr., June 14, 2021, Scott, 46:23–25; Ex. E, Trial Tr., June 8, 2021, Scott, 65:24–25, 66:1; Ex. D, Trial Tr., June 4, 2021, Henderson, 10:22–11:1; Ex. E, Trial Tr., June 8, 2021, Scott, 19:2–8, 46:24–47:1; Ex. G, Trial Tr., June 14, 2021, Ragsdale, 14:16–18. In every material way, the State's detention facilities and the NWIPC are similarly situated.

### III.    The WMWA Treats the NWIPC Less Favorably than It Treats Similarly Situated State Detention Facilities.

It remains only to determine whether, relative to these similarly situated state detention facilities, the WMWA "treat[s] GEO less favorably." *See* Jury Instrs., Dkt. 492 at 19. The State admits that the WMWA, on its interpretation, requires GEO, but not SCC or Correctional Industries, to pay the minimum wage. *See* SOW Rule 50(b) Mot., Dkt. 498 at 7, 8; *see also* Kane Decl., Ex. A, Trial Tr., June 11, 2021, Eagle, 37:21–23; Ex. C, Trial Tr., June 10, 2021, Sytsma, 132:7–9. Not providing this exemption to GEO is unquestionably less favorable treatment, and, as this Court has correctly noted,

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

13

"it is obvious that if GEO, a federal government contractor, is required to pay its Voluntary Work Program detainees at a higher rate under the Washington Minimum Wage Act than the $1.00 per day it is now paying, it is facing an economic burden not borne by the state, county or municipal detention institutions that operate a Voluntary Work Program and are exempt from the Washington Minimum Wage Act under RCW 49.46.010(3)(k)." Prop. Order, Dkt. 306-1 at 7; *accord* DOJ SOI, Dkt. 290 at 14.

The Court's observation confirms that, as a matter of law, intergovernmental immunity forecloses Plaintiffs' claims against GEO. It is clear from the very face of the WMWA that it requires non-exempt "employer[s]" to pay a certain minimum wage. RCW 49.46.020; *id.* 49.46.010. *See id.* 49.46.010(3). And it is equally clear that the WMWA exempts from this requirement those who "employ" "[a]ny … inmate … of a state, county, or municipal correctional, detention, treatment or rehabilitative institution," as well as employers who provide a nominal amount of compensation per unit of voluntary service in connection with the activities of "an educational, charitable, religious, state or local governmental body or agency." *Id.* 49.46.010(3)(k), (d). GEO would qualify for either exemption if it were "employing" state detainees or providing a nominal amount of compensation per unit of voluntary service rendered in the activity of a state agency. But because GEO is, under the State's interpretation of the WMWA, "employing" federal detainees and providing a nominal amount of compensation per unit of voluntary service rendered in the activity of a federal agency—the VWP— GEO is not exempt from the WMWA. Thus, it is precisely because GEO is engaged in *federal* rather than *state* operations that the State seeks to impose an economic burden not borne by state, county or municipal detention institutions or by employers of individuals providing voluntary service to a state activity. As a matter of law, then, the WMWA treats GEO less favorably than it treats State employers.

Here again, *North Dakota* confirms rather than undermines GEO's case. To be sure, the

statutory scheme in *North Dakota favored* the Federal Government. 495 U.S. at 438–39. Here, by contrast, as DOJ explained in its Statement of Interest, "the relevant state law provision, both when considered on its own and when considered as part of the broader statutory scheme, discriminates in favor of the State and against the Federal Government and other actors." DOJ SOI, Dkt. 290 at 12 n.8. Under *North Dakota*, such a provision is unconstitutional because it "treats someone else better than it treats [those with whom the Government deals]." *See* 495 U.S. at 438 (quoting *Washington*, 460 U.S. at 544–545). The State's contention that the WMWA employment exemption applies to the State's detention facilities but not to the NWIPC is patently discriminatory on its face and cannot withstand scrutiny under the established and binding precedents of intergovernmental immunity.

## IV.   Even If Private State Contractors Were the Proper Comparator, the WMWA Violates Intergovernmental Immunity.

The State asserts that if the State employed private contractors to operate a state detention institution, the contractors would be required by law to pay the State's minimum wage to detainees. *E.g.*, SOW Rule 50(b) Mot., Dkt. 498 at 9 ("[F]or private contractors regardless of with whom they deal," the WMWA "does apply."). Upon what foundation is this assertion made? The WMWA itself, as noted above, categorically exempts "any" state or local government detention facility and other government institutions from its minimum wage requirements with respect to detainees, RCW 49.46.010(3)(k), and thus exempts facilities holding state or local detainees without regard to whether they are operated by the State itself or by private contractors. The State maintains that "none of the State Government-owned and -operated facilities rely on contractors to run their work programs …." SOW Rule 50(b) Mot., Dkt. 498 at 3. Even if the State's factual claim were true (and it is not), the fact remains that the State has not, and cannot, point to any statute or regulation that either prohibits the use of private contractors to operate state or local government detention facilities or requires a private contractor operating a state institution to pay detainees WMWA wages for participating in that institution's voluntary work program. Under *Dawson*, that is the end of the matter. 139 S. Ct. at 706 (a court must look to the text of the state's statutes to determine whether they discriminate, not to

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                                    15

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1  alleged state practice that is not required by the statute). Accordingly, the State's claim that privately

2  contracted operators of state institutions would have to pay minimum wage is wrong as a matter of

3  law.

4      This interpretation is confirmed by the administrative guidance of the Washington Department

5  of Labor and Industries—the agency charged with implementing the WMWA. The Department's

6  guidance makes plain that private corporations operating on-site work programs for detainees in State

7  facilities are exempt from the WMWA:

8      Residents, inmates, or patients of a state, county or municipal correctional, detention,
9      treatment or rehabilitative institution assigned by facility officials to work on facility
10     premises *for a private corporation* at rates established and paid for by public funds *are*
11     *not employees of the private corporation and would not be subject to the MWA.*
12

13 Kane Decl., Ex. H,  Trial Ex. A-321, ES.A.1 Minimum Wage Act Applicability, last revised December

14 29, 2020 (emphases added). The Department's witness at trial, Joshua Grice, confirmed that ES.A.1

15 "codified" the "enforcement policy" of the Department such that "state inmates assigned by prison

16 officials to work on prison premises for a private corporation at rates established and paid for by the

17 state are not employees of the private corporation." *Id.*, Ex. A, Trial Tr., June 11, 2021, Grice, 143:2–

18 9.

19     The State argues, however, that currently "there is no similarly-situated private company doing

20 business with the State at all," SOW Rule 50(b) Mot., Dkt. 498 at 10, but that is immaterial here.

21 Again, under *Dawson*, what matters is that the State's *law*, as written, favors a specified class over a

22 federal contractor. 139 S. Ct. at 706. Whether the State actually chooses to use private contractors is

23 immaterial. Either way, state law establishes that private contractors operating a state detention facility

24 need not pay minimum wage to detainees participating in a voluntary work program, *see* RCW

25 49.46.010(3)(k) (exempting employers of state detainees from requirement to pay minimum wage);

26 EHB 1090, 67th Legis. Reg. Sess., 2021 Wash. Sess. Laws, ch. 30 § 3(b) (authorizing private

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB
16
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1   contractors to hold state detainees); ES.A.1 (state and local detainees working on-site for a private

2   corporation are not employees of the private corporation and are not subject to the WMWA), while

3   private federal contractors like GEO that offer voluntary work programs for federal detainees must,

4   on the State's reading of the WMWA, pay minimum wage to participants in such programs.

5
6   **V.     Even If the WMWA Were Facially Neutral, Intergovernmental Immunity Would Still
        Require Judgment in Favor of GEO.**
7
8           Again and again, the State describes the WMWA as "neutral." On what, exactly, is this based?

9   By the State's own admission, the WMWA requires nothing of state and local government detention

10  facility operators with respect to detainees who participate in voluntary work programs. But the State

11  maintains that the WMWA requires private operators of federal detention facilities to pay state

12  minimum wages to detainee participants in materially indistinguishable federal work programs. Thus,

13  the State's interpretation of the WMWA results in anything but a "neutral" outcome: only private

14  operators of federal institutions are required to pay WMWA wages to detainees who voluntarily

15  participate in a work program.

16          Indeed, even if there were "no similarly-situated private company doing business with the State

17  at all," SOW Rule 50(b) Mot., Dkt. 498 at 10, applying the WMWA to the NWIPC would still present

18  a case of unconstitutional discrimination against GEO on account of its targeted enforcement. In

19  *Boeing*, the State imposed strict cleanup standards for a federal site that was not similarly situated with

20  any other site, in the State's view. *See* S.B. 990, 2007 Reg. Sess., ch. 729, § 2 (Cal. 2007)

21  (enumerating "unique circumstances" such that "a general statute cannot be made applicable"). The

22  Ninth Circuit did not deny that the site was unique and "especially contaminated," nor did it question

23  that the state legislature followed generally applicable procedures in passing the stringent cleanup

24  standards to govern the federal site. Nevertheless, because the provision governed only a single federal

25  site and came to do so by a method not previously used to set cleanup standards—by legislation,

26  instead of administrative consideration of site-specific factors, *see Boeing*, 768 F.3d at 842—the Court

27  held that the State had discriminated against a federal contractor in violation of intergovernmental

28  immunity.

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Here, as in *Boeing*, it matters not at all whether the State deemed that GEO's operation of the NWIPC raises unique issues, nor whether RCW 49.46.010(3)(k) resulted from a generally applicable procedure of lawmaking. What matters instead is that, on the State's interpretation, the WMWA applies only to one federal detention facility—the NWIPC. *See* SOW Rule 50(b) Mot., Dkt. 498 at 8 (denying that the WMWA applies to detainees at a state or local government institution); *id.* at 12 (denying that "there are private companies that contract with the state to run work programs"). Further, it is particularly telling that the State never applied the WMWA against GEO until the Washington Attorney General reinterpreted the law to depart from the previous interpretation of the Department of Labor & Industries, *see* Kane Decl., Ex. A, Trial Tr., June 11, 2021, Grice, 149:18–155:17, the agency charged with implementing the WMWA, *see, e.g.*, RCW 49.46.010(1), 3(c). The fact that this regulation, on the State's reinterpretation, strikes a class of one—a federal contractor in the performance of the federal activity of operating the VWP—and came to do so by a new state governmental process—the intervention of the Attorney General, *see* Kane Decl., Ex. A, Trial Tr., June 11, 2021, Grice, 152:11–153:12—establishes under *Boeing* that the State is discriminating against federal operations, which is barred by intergovernmental immunity.

## CONCLUSION

This Court need not address the sole contention raised in the State's motion, i.e., its claim that the WMWA does not discriminate against GEO, because the law is settled: federal detainees who participate in the VWP at the NWIPC are not, as a matter of established law and controlling precedent, GEO "employees" under the provisions of the WMWA. ICE detainees have a custodial relationship with GEO not a pecuniary one. *See Ndambi*, 990 F.3d at 373–74.

Even if the Court decides to address the State's sole contention that the WMWA does not discriminate against GEO, the answer to that question is equally clear as a matter of established law and controlling precedent—the WMWA does, in fact, and as a matter of law, unconstitutionally discriminate against GEO.

GEO is entitled to judgment as a matter of law in its favor on both questions that this Court presented to the jury this past June. This case has gone far enough—it should "go no further."

GEO'S RESP. TO THE STATE'S
RENEWED MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806-RJB                    18

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1

2

3    Respectfully submitted, this 2nd day of August, 2021.

4

5                                    By: /s/    *Charles J. Cooper*
6                                    Charles J. Cooper,* D.C. Bar No. 248070
7                                    Michael W. Kirk,* D.C. Bar No. 424648
8                                    Tiernan Kane,* Ind. Bar No. 36452-71
9                                    Cooper & Kirk, PLLC
10                                   1523 New Hampshire Avenue, NW
11                                   Washington, DC 20036
12                                   Telephone: (202) 220-9600
13                                   Fax: (202) 220-9601
14                                   E-mail: ccooper@cooperkirk.com
15                                   E-mail: mkirk@cooperkirk.com
16                                   E-mail: tkane@cooperkirk.com
17                                   * Appearing *pro hac vice*
18                                   ** Not admitted to the D.C. Bar
19
20                                   By: /s/ *Adrienne Scheffey*
21                                   Adrienne Scheffey
22                                   **AKERMAN LLP**
23                                   1900 Sixteenth Street, Suite 1700
24                                   Denver, Colorado 80202
25                                   Telephone:    (303) 260-7712
26                                   Facsimile:    (303) 260-7714
27                                   Email: adrienne.scheffey@akerman.com
28
29                                   By: /s/ *Joan K. Mell*
30                                   **III BRANCHES LAW, PLLC**
31                                   Joan K. Mell, WSBA #21319
32                                   1019 Regents Boulevard, Suite 204
33                                   Fircrest, Washington 98466
34                                   Telephone:    (253) 566-2510
35                                   Facsimile:    (281) 664-4643
36                                   Email: joan@3brancheslaw.com
37
38                                   *Attorneys for Defendant The GEO Group, Inc.*

1

## PROOF OF SERVICE

2

I hereby certify on the 2nd day of August, 2021, pursuant to Federal Rule of Civil

3

Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S**

4

**RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW** via the Court's

5

CM/ECF system on the following:

6

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714

7

Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818

8

Rebecca J. Roe, WSBA #7560

9

810 Third Avenue, Suite 500
Seattle, Washington 98104

10

Telephone: (206) 622-8000
Facsimile: (206) 682-2305

11

Email: hberger@sgb-law.com

12

Email: halm@sgb-law.com
Email: whitehead@sgb-law.com

13

Email: roe@sgb-law.com

14

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)

15

P.O. Box 90568
Nashville, Tennessee 37209

16

Telephone: (844) 321-3221
Facsimile: (615) 829-8959

17

Email: andrew@immigrantcivilrights.com

18

**OPEN SKY LAW PLLC**

19

Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100

20

Kent, Washington 98032
Telephone: (206) 962-5052

21

Facsimile: (206) 681-9663
Email: devin@openskylaw.com

22

**MENTER IMMIGRATION LAW, PLLC**

23

Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200

24

Redmond, Washington 98052

25

Telephone: (206) 419-7332
Email: meena@meenamenter.com

26

*Attorneys for Plaintiffs*

27

                                        *s/Lynn Brewer*
                                        Lynn Brewer