The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| STATE OF WASHINGTON, | CIVIL ACTION NO. 3:17-cv-05806-RJB |
| Plaintiff, | **REPLY IN SUPPORT OF** |
| v. | **PLAINTIFF STATE OF** |
| | **WASHINGTON'S RENEWED** |
| THE GEO GROUP, INC., | **MOTION FOR JUDGMENT AS A** |
| | **MATTER OF LAW** |
| Defendant. | NOTE ON MOTION CALENDAR: |
| | August 6, 2021 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# I.   INTRODUCTION

GEO agrees with Washington: "[N]o material factual issues regarding intergovernmental immunity remain for a jury to decide." GEO's Response, ECF No. 509 at 15. Although GEO urges the Court not to reach the immunity issue by referring back to its cross-motion on MWA liability, the evidence presented at trial precludes such an outcome. *See* Wash. Resp., ECF No. 507. GEO clearly permits detainees to work and no statutory exemption applies. *Id.* Not only must the Court consider Washington's renewed motion, dismissal of GEO's intergovernmental immunity defense is required—since the MWA treats private companies the same regardless of who they do business with, GEO is not immune from the MWA as a matter of law.

# II.   ARGUMENT

The MWA is a neutral state law that existed long before GEO or the NWDC. Although the MWA contains an exemption for individuals held in state, county and local institutions, given how that provision defines the "favored class," the proper comparator to GEO for intergovernmental immunity purposes is a state contractor rather than the state government itself. GEO makes two arguments in response. Neither entitles it to immunity.

First, GEO again seeks to equate itself with the federal government. But GEO is not the federal government and is not entitled to the same scope of immunity as the federal government. It is entitled to intergovernmental immunity *only* if it can show that Washington's MWA discriminates against it, or treats it less favorably than similarly situated entities, because it contracts with the federal government. To hold otherwise and grant GEO immunity merely because it does business with the federal government would collapse the direct regulation and discrimination prongs of intergovernmental immunity and effectively create a general federal contractor immunity—an immunity that the Supreme Court rejected nearly a century ago. Second, GEO believes the MWA runs afoul of intergovernmental immunity because, according to GEO, it exempts state contractors, but not federal contractors. But GEO misreads the plain language of the MWA. The relevant exemption is explicitly limited to individuals held in

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   government-operated facilities. Nowhere does the MWA exempt private contractors—let alone
2   provide special treatment to state contractors specifically. Since GEO did not—and cannot--
3   offer any evidence at trial of state contractors being treated better, GEO's intergovernmental
4   immunity defense based on discrimination must fail as a matter of law.

5   **A.    The MWA Is a Neutral, Generally-Applicable State Law and GEO Is Not Entitled
6           to Special Treatment**

7           As Washington argued in its motion, the MWA is a decades-old neutral law that nowhere
8   singles out the federal government or its contractors for more stringent enforcement.  Although
9   the MWA contains an exemption for government-operated institutions, the MWA does *not*
10  exempt private contractors at all—let alone private contractors based on who they do business
11  with. In fact, this Court already recognized the MWA is a facially-neutral state law when it
12  denied GEO's first motion for summary judgment. *See* ECF No. 162 at 6 ("At its core, and by
13  design, the MWA protects employees and prospective employees in Washington generally,
14  placing private firms that contract with the federal government on equal footing with all other
15  private entities."). Nothing about the MWA's plain language has changed since the Court
16  correctly reached that conclusion.

17          GEO nonetheless makes a sweeping claim of equivalence with the federal government
18  in its zeal to obtain immunity from all state regulation. *See* ECF No. 509 at 10 (claiming
19  intergovernmental immunity cases "uniformly treat the Federal Government's private
20  contractors as the Federal government itself"); *id.* (arguing "private government contractors
21  stand in the shoes of the Government itself"); *id.* at 11 ("[T]here is no basis in fact or in law to
22  treat the Federal Government's contractor any differently [than the Federal Government]"). The
23  problem with GEO's theory is that the Supreme Court "decisively rejected" it nearly a century
24  ago. *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990) (reviewing the history of the
25  doctrine); *South Carolina v. Baker*, 485 U.S. 505, 520 (1988) (explaining that the theory of
26  "general immunity" for federal contractors "has been thoroughly repudiated by modern

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    intergovernmental immunity" case law); *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 481-

2    82 (1939) (theory that government immunity extends to "contractor engaged in carrying out a

3    government project" has been subjected to "ultimate repudiation" by Supreme Court). In fact,

4    state laws have been upheld against intergovernmental immunity challenges where the property

5    and employees are private. *See, e.g., United States v. New Mexico*, 455 U.S. 720, 734-35 (1982)

6    ("[I]mmunity cannot be conferred simply because the State is levying the tax on the use of federal

7    property in private hands . . . even if the private entity is using the Government property to

8    provide the United States with goods") (citation omitted).

9         Contrary to GEO's claims of wholesale immunity from state regulation, the Supreme

10   Court's decision in *North Dakota* provides the controlling analytical framework for today's

11   construction of intergovernmental immunity. Under that established formulation of

12   intergovernmental immunity, federal contractors like GEO may be subject to state and local

13   regulation as long as the state regulation is "imposed equally on other similarly situated

14   constituents." *North Dakota*, 495 U.S. at 435. *See also Washington v. United States*, 460 U.S.

15   536, 545 (1983) (upholding state tax law where "[t]he tax on federal contractors is part of the

16   same structure, and imposed at the same rate, as the tax on the transactions of private landowners

17   and contractors").[1]

18   _____

19        [1] Despite relying on *McCullough v. Maryland*, 17 U.S. 316, 317-318 (1819), a tax case,
     GEO nevertheless suggests tax cases like *Washington* and *New Mexico* come from some "distinct
20   doctrine" unrelated to the regulatory context here. *See* ECF No. 509 at 13. GEO's attempt to
     slice the tax cases out of the intergovernmental immunity canon, however, finds no support in
21   the Supremacy Clause itself, and the Supreme Court has criticized the types of "excessively
     delicate distinctions" among immunity cases that GEO urges. *New Mexico*, 455 U.S. at 730.
22   Instead, the Supreme Court relies interchangeably on tax and regulatory precedents—often in
     the same breath. *Penn Dairies v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 270-71 (1943)
23   ("The trend of our decisions is not to extend governmental immunity from state taxation and
     regulation beyond the national government itself and governmental functions performed by its
24   officers and agents.") (emphasis added); *see also Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 95 (1945)
     ("Government immunity from state tax and regulatory provisions does not extend beyond the
25   federal government itself and its governmental functions."); *see also North Dakota*, 495 U.S. at
     434-37 (citing cases about both "regulations and taxes").

26

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1      In sum, GEO is not entitled to the special treatment afforded to the federal government.

2   It is immune only if state law discriminates against because it deals with the federal government.

3   Because the MWA is a neutral law that is generally applicable to all private employers—and

4   certainly contains no language that imposes more stringent legal obligations on GEO than other

5   private businesses not doing business with the federal government—the Court should dismiss as

6   a matter of law GEO's assertion of intergovernmental immunity.

7   **B.     The Proper Comparator to GEO Is a State Contractor; Neither *Dawson, California,***
        ***Boeing,* or *Ndambi* Suggest Otherwise**

8

9      Of course, after rejecting GEO's overly broad assertion that it *is* the federal government,

10   the key question then is whether the MWA is "imposed equally on other similarly situated

11   constituents of the State." *North Dakota*, 495 U.S. at 438-39. Because GEO is a private company

12   and claims it is being discriminated against because of its contract with the federal government,

13   the proper comparator is a private company that contracts with the state—not the state

14   government itself. None of the cases GEO cites suggest otherwise.

15      First, recognizing that this Court previously acknowledged that the proper comparator is

16   a state contractor, *see* ECF No. 162, GEO argues the Supreme Court's 2019 decision in *Dawson*

17   *v. Steager* somehow changes the intergovernmental immunity analysis. *Dawson* does no such

18   thing. In *Dawson*, a retired U.S. Marshal challenged a state law that exempted state law

19   enforcement retirees from certain state income taxes, but not similarly-situated federal law

20   enforcement retirees. 139 S. Ct. 698, 703-04 (2019). In concluding the state tax violated

21   intergovernmental immunity, *Dawson* simply made clear that the question of whether a state law

22   discriminates "depends on how the State has defined the favored class." *Id.* (additional citation

23   omitted). In other words, "if a State exempts from taxation all state employees, it must likewise

24   exempt all federal employees. Conversely, if the State decides to exempt only a narrow subset

25   of state retirees, the State can . . . exempt only the comparable class of federal retirees." *Id. See*

26   *also United States v. Nye County*, 178 F.3d 1080, 1084 (9th Cir. 1999) (concluding, where

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    intergovernmental immunity is concerned, the "wording of [a state law] is significant.")

2        Here, GEO's intergovernmental immunity claim fails under *Dawson.* The MWA

3    exempts "any resident, inmate, or patient of a state, county, or municipal correctional, detention,

4    treatment or rehabilitative institution." Wash. Rev. Code § 49.46.010(3)(k). As such,

5    intergovernmental immunity principles require *at most* that the MWA's exemption be extended

6    residents, inmates, or patients of *federal* correctional, detention, or rehabilitative institutions.[2]

7    *See Dawson*, 139 S. Ct. at 703. It is undisputed, though, that the NWDC is not a federal facility

8    owned or even operated by the federal government—the NWDC is a private institution owned

9    and operated by GEO. *See* ECF No. 162 at 2 ("The NWDC is better characterized as a *private*

10   facility that detains federal detainees under a contract with the Federal Government."). Under

11   *Dawson*, that should be the end of the analysis. GEO is not entitled to immunity.

12       Second, GEO's reliance on *United States v. California* is misplaced. *See* 921 F.3d 865,

13   872 (9th Cir. 2019), *cert. denied* 141 S. Ct. 124 (2020). Indeed, *California* shows why

14   intergovernmental immunity does not apply here at all. In *California*, the state passed a set of

15   statutes that were "expressly designed to protect its residents from federal immigration

16   enforcement." *Id*. Even though the California statutes "single[d] out federal activities," the Ninth

17   Circuit nevertheless rejected all of the United States' assertions of intergovernmental immunity

18   except one. *Id.* Specifically, the Ninth Circuit upheld state law provisions that extended generally

19   applicable prison inspection regulations to the contracted civil immigration detention context,

20   whether the facilities were run by private or public contractors like local governments. *Id.* In so

21   doing, the Ninth Circuit recognized that states retain "the general authority to ensure the health

22   and welfare of inmates and detainees in facilities within [their] borders." 921 F.3d at 886. The

23

24       [2] GEO states that it is "aware of no[] [case] . . . that has drawn a distinction between the
25   federal government and its private contractors" for purposes of intergovernmental immunity's
     discrimination prong. But *Dawson* itself instructs that result, where, as here, Washington "has
26   defined the [public and private] class[es]" differently within the law that GEO challenges. *See
     Dawson*, 139 S. Ct. at 705.

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

only provision of state law the Ninth Circuit held likely unlawful was a provision that required state investigators to examine the "circumstances surrounding [immigration detainees'] apprehension and transfer" to California, which was a "novel requirement, apparently distinct from any other inspection requirements imposed by California law." *Id*. at 885.

Here, the MWA is not a novel requirement or one that imposes heightened regulations on federal contractors; in fact, it does not target immigration facilities at all. Again, Washington's MWA applies equally to all private employers in Washington. So, enforcing the generally applicable MWA against a private contractor at the NWDC is a much easier case than upholding the portions of state law that the Ninth Circuit affirmed in *California*. While GEO makes much of the fact that *California* identified state and local detention facilities as comparators in its analysis, that comparison made sense as the defendant in *California* was the federal government itself—not GEO or any other private contractor. *Id*. Since it was the federal government that claimed discriminatory treatment —and the law at issue applied to *all* detention facilities, whether publicly or privately operated, *California* understandably identified state and local detention facilities as comparators. Here, where GEO is the defendant and the MWA applies to private entities only, it makes no sense to compare it to state facilities.

To the extent GEO argues a *California* footnote means federal contractors are equivalent to the federal government, GEO's argument is disingenuous. The California law at issue did not "impose an inspection regime on ICE facilities *operated by private contractors*," as GEO suggests ECF No. 509 at 9 (emphasis in original). Instead, it imposed an inspection regime on *all* contracted immigration facilities, whether operated by county governments or private contractors. *Id*. at 875 (quoting state law as covering "county, local, or private locked detention facilities in which noncitizens are being housed or detained for purposes of civil immigration proceedings"). As such, *California*'s analysis grappled with whether a state could directly target federal activities—not whether federal contractors are interchangeable with the federal government. *Id*. Further, the Ninth Circuit's footnote that "federal contractors are treated the

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    same as the federal government itself" for purposes of intergovernmental immunity is expressly

2    limited by the supporting citation, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988).

3    *California*, 921 F.3d at 882 n.7. In *Goodyear*, a regulation of the federal contractor was deemed

4    to be regulation of the federal government directly because the contractor was performing a

5    federal function within a federally owned facility. 486 U.S. at 180- 81 (contractor performed at

6    a "federally owned nuclear production facility"). That is certainly not the case here, where GEO

7    alone owns the NWDC. To hold otherwise would collapse the direct regulation and

8    discrimination prongs of intergovernmental immunity and contravene Supreme Court authority,

9    including *Goodyear* and *North Dakota*. Indeed, such a ruling is foreclosed by *California's* own

10   holding that a state properly regulated institutions where federal civil immigration detainees

11   were held so long as it did not impose a specialized and unique burden on those facilities.

12        Third, neither *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), nor Attorney

13   General Merrick Garland's recent letter to the Governor of Texas, saves GEO's argument. In

14   *Boeing*, the Ninth Circuit held that California's site-specific regulations governing radioactive

15   clean up at Santa Susana Field Laboratory triggered intergovernmental immunity under both the

16   "direct regulation" prong and the discrimination prong. 768 F.3d at 842-43. There, the

17   radioactive cleanup regulations were discriminatory because they "single[d] out Boeing, [the

18   federal government], and the [Santa Susana Field Laboratory] site for a substantially more

19   stringent cleanup scheme than that which applies elsewhere in the State." *Id.* at 942. The result

20   of California's additional layer of heightened regulation specific to the Santa Susana Field

21   Laboratory was that federal actions taken on that property—either directly or through the

22   contract with Boeing—were subject to differential treatment and more intense regulation than

23   any other property in California. *Id.* That is the opposite of the MWA here, which is generally

24   applicable and treats GEO like all other private employers in the State of Washington.

25        Relatedly, GEO's reference to Attorney General Garland's letter is misleading. That

26   letter was written in response to Governor Abbott's Executive Order prohibiting private actors

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  from providing ground transportation to migrants leaving U.S. Customs and Border Patrol

2  stations. While Attorney General Garland certainly cites *Boeing*, he did not, as GEO suggests,

3  "reaffirm[] the Statement of Interest filed . . . in this case"—let alone reference this case at all.

4  ECF No. 509 at 6. Indeed, a state law that impairs the federal government's ability to transport

5  migrants interferes with federal immigration authority much more directly than the MWA, which

6  is not specific to any one business, industry, or practice. While the United States previously

7  contended that Washington's enforcement of the MWA is an effort to interfere with federal

8  immigration authority, *see generally* ECF No. 298, that Statement of Interest nowhere explained

9  how so. *See* ECF No. 297 at 13-14. It is simply not credible to suggest that GEO's compliance

10  with the federal government's own standards and representations allowing payment of more than

11  $1 per day interferes with or burdens federal immigration enforcement efforts.

12       Fourth, GEO cites *Ndambi* to argue all custodial detainees, regardless of whether

13  detainees are held in public or private facilities, "are categorically similarly situated." *See* ECF

14  No. 509 at 10. But *Ndambi* is not an intergovernmental immunity case at all, nor were any of the

15  cases *Ndambi* relied upon. *See Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021); *see also*

16  *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir.

17  1992); *Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013). *Ndambi*, as well as *Sanders,*

18  *Miller*, and *Williams*, all grappled with whether civil detainees are employees for purposes of

19  the specific minimum wage laws applicable to those plaintiffs. Although the Fourth Circuit

20  ultimately concluded civil detainees are not employees under New Mexico's minimum wage

21  law, *Ndambi* does not purport to interpret Washington law and, in any event, does not govern

22  Washington law and stands in direct tension with binding Ninth Circuit precedent. ECF No. 507

23  at 6-8; *see also Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993).

24       In sum, this case is unlike those in which federal employees or contractors were singled

25  out or subjected to heightened regulatory requirements. ECF No. 162 at 6-7 (distinguishing

26  *Boeing*). Enforcement of the MWA here in no way interferes or meddles with federal interests

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

or even the GEO-ICE Contract. *See* ECF No. 507 at 24-26 (observing that ICE gave GEO the discretion to structure detainee worker pay). Indeed, applying intergovernmental immunity here would allow GEO to receive special treatment that no other private company is afforded simply because it contracts with the federal government. That is clearly not the law. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007). Washington should be awarded judgment under Rule 50(b) because GEO did not—and cannot—show that it is being discriminated against for intergovernmental immunity purposes.

## C.  Since the MWA Nowhere Exempts Private Contractors, the State Government Cannot Be the Proper Comparator

GEO next attempts to interpret state law in a way that *would* render the state government the proper comparator. Under *Dawson,* the *only* way the state government itself could be considered GEO's comparator is if the MWA were read to exempt private contractors that do business with the state. Although GEO's second argument forwards precisely such a reading, GEO's interpretation of the MWA exemption is absurd.

GEO argues that the MWA exemption must also apply to private facilities because it makes no "distinction between institutions operated by the state and those operated by a private contractor." ECF No. 509 at 9. Specifically, GEO argues the MWA exemption refers to "any" state or local government detention facility, so, it must exempt all detention facilities associated with state government, including those operated by private contractors. *See* ECF No. 509 at 19. But GEO is wrong. The MWA *does* distinguish between institutions run by the state and a private contractor *by omitting private facilities* from its exemption altogether. In fact, the Washington Legislature is quite capable of identifying when it seeks to refer to private detention facilities. *See, e.g.,* Wash. Rev. Code § 72.68.040 (referring to "private correctional entity"); Wash. Rev. Code § 72.68.110 (same); Wash. Rev. Code § 72.68.010 (same). Since the MWA nowhere exempts private correctional or detention facilities, even if they contract with the State, intergovernmental immunity does not require Washington to extend its exemption to GEO.

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1        In an attempt at misdirection, GEO suggests Washington *does* rely on private contractors

2    to run its work programs and argues that GEO itself would qualify for the MWA exemption if it

3    were running such a work program. ECF No. 509 at 19. GEO's argument is a red herring.[3] Not

4    only did GEO fail to present a shred of evidence of any such state contractor at trial, GEO does

5    not point to a comparative state contractor even now in its response. Regardless, even if one did

6    exist, the MWA exemption would not apply. Again, the Washington Legislature exempted work

7    at government *institutions* to which the MWA would otherwise apply, irrespective of the type of

8    governmental *authority* under which the workers were detained or incarcerated (federal or state).

9    *See* Wash. Rev. Code § 49.46.030(3)(k). GEO would still be required to pay the minimum wage

10   even if it were employing detainees held under state authority.

11       GEO's reliance on the Department of Labor and Industries' (L&I) Administrative Policy

12   ES.A.1 is also misplaced. ES.A.1 is not the law. *See* Trial Ex. A-321 ("This policy does not

13   replace applicable RCW or WAC standards"); ECF No. 498 at 21. Instead, it reflects "the current

14   opinions of the Department of Labor & Industries." *Id.* As such, under *Dawson*, ES.A.1 is

15   irrelevant to the intergovernmental immunity analysis. As GEO recognizes, "[U]nder *Dawson*,

16   a court must look at the *statutory text* to delineate the two groups that are purportedly treated

17   differently." ECF No. 509 at 15 (emphasis in original). In other words, the MWA's exemption

18   is what controls the analysis—not the opinions and non-binding guidance of L&I.

19       [3] GEO seems to believe its immunity defense requires Washington to prove a negative,

20   i.e., that the State does not do business with private contractors: "[T]he State has not, and cannot,
     point to any statute or regulation that [ ] prohibits the use of private contractors to operate state

21   or local government detention facilities." Setting aside the fact it is GEO's burden to prove
     immunity, GEO's argument is also wrong. Washington *does* ban private contractors from

22   housing individuals in the state. *See* Wash. Rev. Code § 72.68.110 (prohibiting Department of
     Corrections from contracting with private correctional facilities for the transfer or placement of

23   offenders); Wash. Rev. Code § 72.68.040(2); *See* EHB 1090, 67th Leg. Reg. Sess., 2021 Wash.
     Sess. Laws, ch. 30 § 1(3) (barring any business from operating a private detention facility).

24   Although GEO describes EHB 1090 as "authorizing private contractors to hold state detainees,"
     GEO cites narrowly tailored exemptions. As GEO well-knows because it sued to enjoin EHB

25   1090, that statute's overwhelming purpose is to ban private detention facilities in Washington.
     *See GEO v. Inslee*, No. 3:21-cv-05313-BHS (W.D.Wash. 2021).

26

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  In sum, GEO is not being treated less favorably because of its relationship with the

2  federal government. GEO's entitlement to intergovernmental immunity depends on whether the

3  MWA exemption "establishes that private contractors operating a state detention facility need

4  not pay minimum wage to detainees." ECF No. 509 at 20. Since it clearly does no such thing,

5  the Court should enter judgment in favor of Washington.

6  **D.     Even If State-Owned Facilities Could Be a Proper Comparator, None Operate Programs Similarly-Situated to the NWDC's Work Program**

7

8  Finally, even if the Court were to compare GEO to state-owned and -operated

9  institutions, judgment in Washington's favor is still warranted. ECF No. 503 at 13–14 (citing

10  *California*, 921 F.3d at 885). As the trial evidence showed, neither the Department of

11  Corrections' Correctional Industries (CI) division, the Special Commitment Center (SCC), nor

12  the Department of Social and Health Services' rehabilitation centers (which GEO does not even

13  address), are similarly-situated to the NWDC.

14  Every person who works in Washington's CI program has been convicted of committing

15  a crime. ECF No. 508-14 12:19–13:24, 19:4–15, 19:23–20:15 (Sytsma). And, state law requires

16  every person convicted of committing a crime to work. Wash. Rev. Code § 72.09.460; *see also*

17  Trial Tr. June 10 104:3-10 (Eisen). That legal requirement alone makes the CI program different

18  from the NWDC's work program. *See Hale*, 993 2d. at 1394; *see also Castle v. Euofresh, Inc.*,

19  731 F.3d 901, 908 (9th Cir. 2013). Similarly, SCC's program is completely different from

20  GEO's. While detention at SCC is civil in nature, SCC residents work as part of a vocational

21  rehabilitation program. ECF No. 508-15 95:19–98:12, 99:5–102:8 (Eagle). They receive training

22  in how to apply for, interview, and keep a job, as well as meet with a clinician on a regular basis

23  as part of the program. *Id.* In fact, resident pay depends on their "behavior levels and treatment

24  phases." *See* Trial Ex. A-14 at 6.

25  GEO's work program stands in stark contrast. GEO does not provide any on-going

26  training or individualized treatment. GEO simply identifies the jobs that meet its own core

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

operations—and regardless of their skill or experience, pays detainees $1 per day. In other words, GEO's argument that work programs are "not influenced in any way by whether the program is operated by a private or government entity," *see* ECF No. 509 at 13, is belied by their differences:

| | GEO's Work Program | Washington DOC's Work Program | Special Commitment Center's Work Program |
|---|---|---|---|
| Owner | Private Company | Government | Government |
| Type of Detention | Civil | Criminal | Civil |
| Individualized Treatment | No | Yes | Yes |
| Reentry Program | No | Yes | Yes |
| Vocational Training | No | Yes | Yes |
| Supervision | Detention Officers | Job Mentors | Recreation Staff, Maintenance Staff, Kitchen Staff |
| Wages | $1 per day | Varies depending on job requirements | Varies depending on individualized treatment |

Indeed, as the evidence at trial showed, Washington's programs are structured as public goods—they reduce recidivism and benefit the inmates and residents themselves. While GEO makes the point that the MWA categorically exempts all government-run facilities regardless of whether they offer vocational and rehabilitative programming, Washington's argument is not that the vocational programs renders them exempt. Instead, the above comparison bears out why government facilities and GEO's are not similarly situated. GEO is a private company with cost-cutting and profit-maximizing motives that were on clear display at trial. And, GEO has made no effort to structure its work program to include job coaching, training programs, or other individualized supports that would improve detainees' lives or benefit the greater community.

## III.     CONCLUSION

Applying immunity here would allow GEO to receive special treatment that no other private company in the state is afforded simply because it contracts with the federal government. That is clearly not the law. On the issue of intergovernmental immunity's discrimination prong, the Court should enter judgment in favor of Washington.

REPLY IN SUPPORT OF PLAINTIFF
STATE OF WASHINGTON'S RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW
NO. 3:17-cv-05806-RJB

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    DATED this 6th day of August, 2021.

2                                    Respectfully submitted,

3                                    ROBERT W. FERGUSON
4                                    Attorney General of Washington

5                                    *s/ Marsha Chien*
6                                    MARSHA CHIEN, WSBA No. 47020
                                     ANDREA BRENNEKE, WSBA No. 22027
7                                    LANE POLOZOLA, WSBA No. 50138
                                     PATRICIO MARQUEZ, WSBA No. 47693
8                                    Assistant Attorneys General
                                     Office of the Attorney General
9                                    800 Fifth Avenue, Suite 2000
                                     Seattle, WA 98104
10                                   (206) 464-7744
                                     marsha.chien@atg.wa.gov
11                                   andrea.brenneke@atg.wa.gov
                                     lane.polozola@atg.wa.gov
12                                   patricio.marquez@atg.wa.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF PLAINTIFF                    13                ATTORNEY GENERAL OF WASHINGTON
STATE OF WASHINGTON'S RENEWED                                             Civil Rights Division
MOTION FOR JUDGMENT AS A                                              800 Fifth Avenue, Suite 2000
MATTER OF LAW                                                            Seattle, WA  98104
NO. 3:17-cv-05806-RJB                                                     (206) 464-7744

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

DATED this 6th day of August, 2021.

*s/ Anna Alfonso*
ANNA ALFONSO
Legal Assistant

PLAINTIFF STATE OF WASHINGTON'S
RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW
NO. 3:17-cv-05806-RJB

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744