The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>　　　　Defendant. | Case No. 3:17-cv-05806-RJB |
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>　　　　Defendant. | Case No.: 3:17-cv-05769-RJB<br><br>**THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>August 6, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................2

I.  Applying the WMWA to NWIPC Would Unconstitutionally Discriminate Against the Federal Government and GEO. ..........................................................2

II. Detainee Participants in the VWP Are Not Employees Under the WMWA. ......6

    A.  FLSA Precedent Is Authoritative in This Case. ...........................................6

    B.  No Ninth Circuit Case Has Retreated from *Morgan*. ..................................8

    C.  *Ndambi* Is on All Fours with This Case. ....................................................10

CONCLUSION ........................................................................................................................11

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

i

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

*Anfinson v. FedEx Ground Package Sys., Inc.*,
    281 P.3d 289 (Wash. 2012) ................................................................................ 6

*Anderson v. State, Dep't of Soc. & Health Servs.*, 115 Wash. App. 452 (2003) .................... 6

*Bally v. Ocean Transp. Servs., LLC,* 136 Wash. App. 1052, 2007 WL 214573 (2007) .......... 6

*Becerra v. Expert Janitorial, LLC*, 332 P.3d 415 (Wash. 2014) ........................................... 6

*Calhoun v State*, 193 P.3d 188 (Wash. Ct. App. 2008) .............................................. 7

*Castle v. Eurofresh, Inc.*, 731 F.3d 901 (9th Cir. 2013) .............................................. 8, 9, 11

*Chelan Cnty. Deputy Sheriffs' Assn v. Chelan Cnty.*, 745 P.2d 1 (Wash. 1987) ................... 7

*Cooper v. Alsco, Inc.*, 376 P.3d 382 (Wash. 2016) ................................................... 6

*Dawson v. Steager*, 139 S. Ct. 698 (2019) ......................................................... 1, 3, 4

*Fong v. United States*, 149 U.S. 698 (1893) ........................................................ 10

*Hale v. Arizona*, 967 F.2d 1356 (9th Cir. 1992) ..................................................... 8

*Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993) ..................................................... 8, 9

*Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007) .................................................. 10

*Inniss v. Tandy Corp.*, 7 P.3d 807 (Wash. 2000) .................................................... 7

*In re Kirkland*, 915 F.2d 1236 (9th Cir. 1990) ..................................................... 6

*Lafley v. SeaDruNar Recycling, L.L.C.*,
    138 Wash. App. 1047, 2007 WL 1464433 (2007) ................................................. 7

*Miller v. Farmer Bros. Co.*, 150 P.3d 598 (Wash. Ct. App. 2007) ......................................... 6

*Morgan v. MacDonald*, 41 F.3d 1291 (9th Cir. 1994) ........................................... 8, 9, 10, 11

*Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021) ................................ 1, 2, 9, 10, 11

*Sattler v. Consol. Food Mgmt.*, 93 Wash. App. 1052 (Wash. Ct. App. 1999) ...................... 6

*Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 1 P.3d 578 (Wash. 2000) ........................... 6

*Stahl v. Delicor of Puget Sound, Inc.*, 148 Wash. 2d 876, 64 P.3d 10 (Wash. 2003) ............. 6

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

ii

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

*United States v. California*, 921 F.3d 865 (9th Cir. 2019)...................................................... 1, 3

*Weeks v. Chief of Wash. State Patrol*, 639 P.2d 732 (Wash. 1982)......................................... 6

**Other Authorities**

29 U.S.C. § 202(a) – (b)................................................................................................................ 7

RCW 49.46.010(3)(k) ............................................................................................................. 3, 4

RCW 49.46.005(3).......................................................................................................................... 7

Answering Br. of Defendant-Appellee California, *United States v. California*,
   No. 18-16496, 2018 WL 5880015 (9th Cir. Nov. 5, 2018) ................................................ 3

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

iii

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

## INTRODUCTION

Shortly after the Ninth Circuit decided *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the Supreme Court decided *Dawson v. Steager*, 139 S. Ct. 698 (2019), and the United States filed its Statements of Interest, *see* Dkt. 290 & 298, this Court issued a proposed order granting GEO's motion for summary judgment based on its intergovernmental immunity defense. *See* Dkt. 306-1. In the proposed order, the Court recognized that *California* and *Dawson* "make it clear" that the Court's previous ruling rejecting GEO's summary judgment motion based on the intergovernmental defense was "in error." *Id*. at 5. The Court recognized that "[i]t is obvious" that the Washington Minimum Wage Act ("WMWA"), to the extent it requires GEO to pay minimum wage to Northwest ICE Processing Center ("NWIPC") detainees, places "an economic burden [on GEO] not borne by the state, county or municipal detention institutions" that operate work programs that are exempt from the WMWA. *Id*. at 7. The Court correctly rejected the State's argument that GEO is not similarly situated, explaining that "federal contractors are treated the same as the federal government for purposes of immunity analysis." *Id*. That conclusion is indisputably correct, for that is precisely what *California* held. *See* 921 F.3d at 882 n.7 ("For purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself.").

While the Court ultimately decided not to enter the proposed order in 2019, we respectfully submit that its analysis was entirely correct, and judgment in favor of GEO on its discrimination-based intergovernmental immunity defense is compelled by *California* and *Dawson*.

Judgment in favor of GEO is required as a matter of law for a second reason. "What [plaintiffs] propose is a fundamental alteration of what it means to be an 'employee.'" *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021). So declared a unanimous Fourth Circuit panel just months ago in rejecting federal and state minimum wage claims in a case that is on all fours with this one. The plaintiffs in *Ndambi* were federal immigration detainees in a privately owned and operated detention facility under contract with ICE. They claimed entitlement to minimum wages under FLSA and New Mexico's minimum wage law for their work in an ICE-mandated

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

1

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

voluntary work program that is identical to the Voluntary Work Program ("VWP") at issue here. The Fourth Circuit held that their minimum wage claims were categorically barred because, as detainees working in a custodial detention facility, they are not *and cannot be* employees. "The FSLA," the court of appeals held, "was enacted to protect workers who operate within 'the traditional employment paradigm.' Persons in custodial detention—such as [plaintiff-detainees]— are not in an employer-employee relationship but in a detainer-detainee relationship that falls outside that paradigm." *Id.* at 372 (citation omitted).

The *Ndambi* court emphasized the daunting weight of authority against which the detainee-plaintiffs were contending: "Our circuit is hardly alone in refusing to expand the act to custodial detentions. Each circuit to address the issue—whether the litigants sought FLSA application for inmates, or pretrial detainees, or civil detainees—has concluded that the FLSA's protections do not extend to the custodial context generally." *Id.* at 373. The court then cited no fewer than 15 cases from 11 different circuits, including two cases from the Ninth Circuit. *Id.* at 373–74. As the court noted, "[s]uch a weight of authority is not easily dismissed." *Id.* at 374. And this was an understatement, for there are literally scores of final federal court decisions rejecting federal and state minimum wage claims for facility-based work by custodial detainees, both prisoners and non-criminal detainees, and precisely zero final decisions that go the other way.

This is the weight of authority that plaintiffs here urge this Court to dismiss and to venture, alone, into conflict with. Plaintiff's arguments supporting their invitation are meritless, as we have demonstrated in our previous briefing and do again in the pages that follow.

## ARGUMENT

### I. Applying the WMWA to NWIPC Would Unconstitutionally Discriminate Against the Federal Government and GEO.

The State's and Plaintiffs' proposed (mis)application of the MWA would unconstitutionally discriminate against the federal government by granting a preferential exemption to state detention facilities while not affording that same preference to federal ones. *See* The GEO Grp., Inc.'s R. 50(b) Mot. for J. as a Matter of Law., Dkt. 503/Dkt. 394 at 17–20 (July

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB   2

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

15, 2021) ("GEO Mot."). We have argued these principles in detail in our brief in opposition to the State's Rule 50(b) motion, and so will confine our briefing here to certain important responsive points. *See* The GEO Group, Inc.'s Resp. to the State's Renewed Mot. for J. as a Matter of Law, Dkt. 509 at 2–18 (Aug. 2, 2021).

Although state detention facilities are categorically exempt under the WMWA while federal facilities like NWIPC are not, the State and Plaintiffs argue that there is no unconstitutional discrimination against the federal government because state-operated detention facilities are the wrong comparator for a *privately operated* federal facility. *See* Pl. State of Wash.'s Resp. to The GEO Grp., Inc.'s Rule 50(b) Mot. for J. as a Matter of Law, Dkt. 507 at 14–17 ("SOW Resp.") (Aug. 2, 2021); Pls.' Opp. to Def.'s R. 50(b) Mot. for J. as a Matter of Law, Dkt. 398 at 15–18 (Aug. 2, 2021) ("*Nwauzor* Resp."). But (as the Court understood in its aforementioned Proposed Order) the Ninth Circuit already decided this question in *United States v. California*, 921 F.3d 865 (9th Cir. 2019), determining that the proper comparator to assess the obligations imposed by California on "facilities with which the federal government contracts" were California's own state-operated detention facilities. *Id.* at 883 & n.7; *see also* Answering Br. of Defendant-Appellee California, *United States v. California*, No. 18-16496, 2018 WL 5880015, at *22 (9th Cir. Nov. 5, 2018) (expressly acknowledging that the county facilities at issue were operated by the "State's own political subdivisions"). The Ninth Circuit squarely held that a California law that treated privately operated ICE facilities worse than "California's state and local detention facilities" was unconstitutionally discriminatory under intergovernmental immunity doctrine, *California* at 885, and it did not matter that the federal government's functions were performed by a private contractor, *id.* at 883 n.7 (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988)). Neither the State nor Plaintiffs offer any answer to *California*'s dispositive holding.

Likewise, the State and Plaintiffs do not even cite the most recent Supreme Court decision to address intergovernmental immunity, *Dawson v. Steager*, 139 S. Ct. 698 (2019). It is clear why *Dawson* unanimously rejected the remaining arguments the State and Plaintiffs make. The State argues that Section 49.46.010(3)(k) does not exempt privately operated state facilities

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

3

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

(conveniently, there are none) from paying the minimum wage to "resident[s], inmate[s], or patient[s]" who participate in work programs; it only exempts "government-owned and -operated" facilities (there are many). *See* SOW Resp, Dkt. 507. at 15–16. But Section 49.46010(3)(k) on its face plainly applies to privately operated state or local detention facilities, as the State remains the custodian of those individuals, no matter whether they are physically detained in a private or public facility. But, in all events, it does not matter. As *Dawson* explains, the State's argument "mistakes the nature of [the] inquiry." 139 S. Ct. at 705. "[T]he relevant question isn't whether" federal facilities "are similarly situated to state" facilities that "*don't* receive a . . . benefit; the relevant question is whether they are similarly situated to those [that] *do*." *Id.* Because the State indisputably exempts its own detention facilities, but not similarly situated federal ones like the NWIPC, application of the WMWA to NWIPC is barred by intergovernmental immunity. The fact that the NWIPC is operated by a private contractor does not remove the discrimination—as the *California* case makes clear, discrimination against the federal government's private contractor under the facts of this case is the same as discrimination against the federal government directly and cannot clear the bar against discriminatory treatment of the federal government *or its contractors*.

Both the State and Plaintiffs assert that there are different government interests served by *state* work programs that justify their proposed differential treatment under the MWA. *Id.* at 706. But, here too, *Dawson* rejected a similar argument. *See id.* (rejecting West Virginia's "reasons" for treating state and federal retirees differently). Because the State "extends a special . . .benefit" to state facilities, while it "categorically denies that same benefit" to federal facilities, it is unconstitutionally discriminatory without regard to the reasons why it wishes to benefit its own facilities. *Id.*

At bottom, the analysis of GEO's discrimination-based intergovernmental immunity defense is quite straightforward, and the Court well captured it in its Proposed Order two years ago:

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

4

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

> Both the State and GEO operate detention facilities for civilly detained individuals. Both operate Voluntary Work Programs. Neither follows the Minimum Wage Act. The State now urges that GEO be required to pay the state minimum wage to GEO detainees, but does not propose to pay the state minimum wage to its own detainees.
>
> The State's request, if granted, would discriminate against GEO (and through GEO, against the United States) by creating an economic burden on GEO, a government contractor, that is not placed on the State. In the end, if the State is permitted to enforce the Minimum Wage Act against GEO, the cost of civil detention under federal law would be higher than the cost of civil detention under the laws of the State of Washington. This the State cannot do.

Dkt. 306-1 at 8.

In addition to the Court's Proposed Order of September 24, 2019, this Court also framed the issue correctly this past June in the Instruction 17 that was provided to the jurors at trial, which reads in pertinent part:

> It is an affirmative defense to Plaintiffs' claims if the Minimum Wage Act discriminates against the Federal Government or its contractors. Discrimination here means to treat GEO less favorably than similarly situated State employers are treated. Exempt from the Minimum Wage Act are any resident, inmate or patient of a state, country or municipal correctional, detention, treatment or rehabilitation institution.
>
> As applied here, the question raised by this defense is whether the provision in the Minimum Wage Act exempting residents, inmates or patients of a state, county, or municipal, correctional, detention, treatment or rehabilitation institutions allows the State to avoid paying the minimum wage to its detainees, when the exemption does not allow GEO to avoid paying the minimum wage to its detainees, and the State, and its work programs and its detainees are similarly situated to GEO, its Voluntary Work Program, and its detainees.

Dkt. 492 at 19.

While we maintain that this is an issue of law for the Court to decide, this portion of Instruction 17 is a fair representation of the law as articulated in the binding Ninth Circuit decision in *California* and, importantly, incorporates the salient point that GEO's affirmative defense of discrimination is made by looking to the impact of the alleged discriminatory impact of the State's application of its Minimum Wage Act "against the federal government *or its contractors*."

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

5

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

1    The Court's legal reasoning in its Proposed Order and in its Instruction 17 was entirely correct, and we respectfully submit that *California* and *Dawson* require the Court to adopt it now, grant judgment to GEO, and dismiss this case.

## II. Detainee Participants in the VWP Are Not Employees Under the WMWA.

### A. FLSA Precedent Is Authoritative in This Case.

The Washington Supreme Court's controlling precedent makes clear that "[t]he Washington] legislature's nearly verbatim adoption in the MWA of the FLSA language with respect to the definition of 'employee' evidences legislative intent to adopt the federal standards[.]" *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 298 (Wash. 2012) (emphasis added); *see also In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990) ("When interpreting state law, a federal court is bound by the decision of the highest state court."). To that end, the Washington Supreme Court has instructed that the WMWA's definition of employee "carries the same construction as the federal law and the same interpretation as federal case law." *Anfinson*, 281 P.3d at 298. This Court, in interpreting the definition of "employee" in the WMWA, is bound by the canons of statutory interpretation to give the term the "same construction as the federal law," which in this case is federal case law interpreting the FLSA.

As Plaintiffs themselves admit, "Washington's current minimum wage statute was modeled on FLSA." SOW Resp. at 9; *accord, e.g.*, *Cooper v. Alsco, Inc.*, 376 P.3d 382, 386 n.5 (Wash. 2016); *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 417 (Wash. 2014); *Stahl v. Delicor of Puget Sound, Inc.*, 64 P.3d 10, 14 (Wash. 2003); *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 1 P.3d 578, 578–79 (Wash. 2000); *Weeks v. Chief of Wash. State Patrol*, 639 P.2d 732, 734 (Wash. 1982); *Bally v. Ocean Transp. Servs., LLC,* 136 Wash. App. 1052, 2007 WL 214573, *2 (2007); *Anderson v. State, Dep't of Soc. & Health Servs.*, 115 Wash. App. 452, 455 (2003). Unsurprisingly, Washington courts routinely consult FLSA caselaw for guidance on how to interpret the WMWA, *see id.*, particularly when on-point caselaw from Washington courts is lacking, *e.g.*, *Miller v. Farmer Bros. Co.*, 150 P.3d 598, 601–02 (Wash. Ct. App. 2007); *Sattler v. Consol. Food Mgmt.*, 93 Wash. App. 1052 (1999). And time and again—including every case cited above—Washington

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

6

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

courts have conformed their interpretation of the WMWA to persuasive authority under FLSA. That includes the only case cited by the Plaintiffs for the proposition that FLSA is "only 'persuasive authority,'" *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000). SOW Resp., Dkt. 507 at 10. And when Washington lower courts have failed to apply FLSA caselaw correctly, the Washington Supreme Court has not hesitated to overrule those decisions to bring state labor law in line with federal law. *See Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan County*, 745 P.2d 1, 7 & n.4 (Wash. 1987).

Plaintiffs invite this Court to disregard binding Washington Supreme Court case law which explicitly found that the proper statutory construction of the definition of "employee" in the WMWA incorporates federal case law into its definitions. The only reasoning Plaintiffs provide as a basis for disregarding controlling precedent is that during the early years of the last century, FLSA did not exist and because FLSA does not explicitly reference a purpose to "encourage employment opportunities within the state." SOW Resp., Dkt. 507 at 9. These are thin reeds, made still thinner by FLSA's express identification of the employment-encouraging purpose of "eliminat[ing] the conditions" that cause "an unfair method of competition in commerce." 29 U.S.C. § 202(a)–(b). And Plaintiffs studiously ignore the WMWA's stated purpose to "conform to modern fair labor standards," RCW 49.46.005(3), especially those established in FLSA. Indeed, from a history more than three times longer than the "full twenty-five years" that the WMWA preexisted FLSA, *see* SOW Resp., Dkt. 507 at 9, Plaintiffs have not identified any case in which the statutes' slightly different formulations of purpose have led to a difference in interpreting the two statutes. Nor have Plaintiffs identified any case in which a Washington court has departed from a FLSA standard.

Washington case law strongly supports the proposition that detainees participating in the VWP at the NWIPC are not employees under the WMWA. *See, e.g.*, *Calhoun v State*, 193 P.3d 188, 192–93 (Wash. Ct. App. 2008) and *Lafley v. SeaDruNar Recycling, L.L.C.*, 138 Wash. App. 1047, 2007 WL 1464433, at *1- 4 (2007) (unpublished). But insofar as this case is one of first impression under the WMWA, this Court should look to FSLA cases for authoritative guidance.

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

7

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

### B. No Ninth Circuit Case Has Retreated from *Morgan*.

Plaintiffs would have this Court construe Ninth Circuit precedent according to the panel opinion in *Hale v. Arizona*, 967 F.2d 1356, (9th Cir. 1992), a decision that the en banc Court reheard and overruled, 993 F.2d 1387 (9th Cir. 1993) (en banc). *See* SOW Resp., Dkt. 507 at 10 n.2. But in *Morgan v. MacDonald*, 41 F.3d 1291 (9th Cir. 1994), the Ninth Circuit authoritatively interpreted the en banc decision in *Hale*, and that interpretation—not Plaintiffs' preference for the vacated *Hale* panel opinion, *see* SOW Resp., Dkt. 507 at 10 n.2—binds this Court.

*Morgan* holds that "FLSA is inapplicable" whenever "the economic reality of [the individual's] work . . . clearly indicates that his labor 'belonged to the institution.'" 41 F.3d at 1293 (quoting *Hale*, 993 F.2d at 1395). And the economic realities dictate that labor "belongs" to an institution rather than the laborer when (1) the work takes place in a program established and operated by the custodial institution; (2) the laborer is not "free to bargain with would-be employers for the sale of his labor"; and (3) the parties "didn't contract with one another for mutual economic gain." *See id.* As established in our opening brief, GEO Mot., Dkt. 503/Dkt. 394 at 15–16, there is no question that each of these conditions is met in this case, and Plaintiffs have not argued to the contrary.

Plaintiffs nowhere deny these dispositive points. Indeed, they barely mention *Morgan*, dismissing it as "nothing more than an application of the rule in *Hale*." *Nwauzor* Resp., Dkt. 398 at 16; *accord* SOW Resp., Dkt. 5007 at 10. *Morgan* is binding precedent on its own terms, but stressing its harmony with *Hale* does not help Plaintiffs: *Morgan* also establishes that *Hale* is not restricted in the way that Plaintiffs wish to restrict it.

Plaintiffs misread *Hale* to exempt from FLSA only *involuntary* laborers—those who have a "legal obligation to work." SOW Resp., Dkt. 507 at 11 (quoting not *Hale*, but *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013), a case that did not even involve FLSA or the minimum wage). But *Morgan* made clear that any work that is "an incident of [the worker's] incarceration," whether the work is compelled or voluntary, "belongs to the institution." 41 F.3d at 1293. As the *Morgan* Court noted, "The plaintiff in *Hale* who worked as a bookkeeper and office manager did

so as part of a program that *allowed* inmates to run their own businesses while incarcerated." *Id.* (emphasis added). The Fourth Circuit in *Ndambi* addressed this issue head on: "[T]he mere voluntariness of participating in a work program . . . does not manufacture a bargained-for exchange of labor. . . . Those in custodial detention 'do not deal at arms' length.' While a detainee may choose whether or not to participate in a voluntary work program, they have that opportunity 'solely at the prerogative' of the custodian." 990 F.3d at 372 (citations omitted). This general principle—lack of freedom to bargain for sale of labor—not its particular application in *Hale* and *Morgan*—is thus what controls FLSA applicability. Here, even though NWIPC detainees' participation in the VWP is strictly voluntary, there can be no question that they lack the freedom to bargain with GEO for the sale of their labor. Likewise, *Morgan* establishes that "status as incarcerated criminals" was "[d]eterminative in *Hale*," not because such status means that an individual is liable to punishment, but rather because it reflects the "economic reality" under *Morgan*'s three-factor test. Plaintiffs' interpretation of and misplaced reliance on *Hale* is foreclosed by *Morgan*.

Indeed, quite apart from *Morgan*, Plaintiffs' reading of *Hale* is singularly unconvincing. *Hale* establishes that if the purpose of a custodial work program is "penological, not pecuniary," no employment relationship can arise and FLSA does not apply. *Hale*, 993 F.2d at 1394–95. For this reason, *Castle* (which, again, is not a minimum wage case) notes correctly that an inmate's legal obligation to work triggers *Hale,* 731 F.3d at 908. But nowhere in *Hale*, *Castle*, or *Morgan* does one find support for the rule that, *absent* a "legal obligation to work," FLSA's obligations apply. *Contra* SOW Resp., Dkt. 507 at 11; *Nwauzor* Resp., Dkt. 398 at 15. Plaintiffs baselessly misrepresent a *sufficient* condition as a *necessary* one, as *Castle* itself makes plain. That is, *Castle reaffirms Morgan*, maintaining that "in reaching our holding in *Hale*, we first acknowledged the 'general rule' that we must consider the 'economic reality' of a labor relationship when determining whether it is an employment relationship under federal law." 731 F.3d at 906. This "general rule," not Plaintiffs' attempt at a "much narrower holding," SOW Resp., Dkt. 507 at 13, is the law of the Ninth Circuit.

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

9

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

Nor is this law changed by anything in the vacated opinion in *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007) (vacated). That opinion and *Fong v. United States*, 149 U.S. 698, 730 (1893), on which Plaintiffs also rely, SOW Resp. Dkt. 507 at 11; *Nwauzor* Resp., Dkt. 398 at 16, point out that civil detention is not punishment, but no party suggests that the VWP or its stipend is a form of punishment.

C.   *Ndambi* Is on All Fours with This Case.

Plaintiffs cannot and do not deny that *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021), decisively addresses and resolves the central issue in this case in GEO's favor as a matter of law. But they ask the Court to disregard *Ndambi*, initially claiming that it "is inconsistent with Ninth Circuit precedent." SOW Resp., Dkt. 507 at 12. But Plaintiffs are unable to cite any Ninth Circuit precedent that conflicts with the holding of *Ndambi*. And they ultimately admit, at least implicitly, that their argument is not that *Ndambi* conflicts with *Hale*, but merely that *Hale* has "a much narrower holding" than *Ndambi*." SOW Resp., Dkt. 507 at 12–13. In other words, *Ndambi* and *Hale* are entirely compatible, even on the State's interpretation.

*Hale* and *Morgan* establish the elements of the "economic realities" test that *Ndambi* merely reaffirms in applying it in the context of a voluntary work program in a civil immigration detention facility. *Ndambi*, like *Morgan*, considered whether the detained "individuals are under the control and supervision of the detention facility." 990 F.3d at 372. In *Ndambi*, like *Morgan*, detainees were not "free to bargain with would-be employers for the sale of [their] labor." *Id.* at 372–73 (quoting *Morgan*, 41 F.3d 1291 at 1293). Finally, *Ndambi*, like *Morgan*, asked whether there was in fact "a bargained-for exchange of labor." *Id.* at 372. *Ndambi* then reaffirmed the principles the Ninth Circuit adopted in *Morgan*: "the mere voluntariness of participating in a work program or the transfer of money between a detainee and detainer does not manufacture a bargained-for exchange of labor." *Id.*

Plaintiffs nevertheless imply that *Ndambi* did not rely upon Ninth Circuit precedent in concluding that ICE detainees, working in the VWP in a privately operated detention facility, are not employees entitled to minimum wage under federal or state law. *See* SOW Resp. Dkt. 507 at

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB — 10

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

13. But *Ndambi* could not have been clearer in grounding its central holding in the Ninth Circuit's analysis in *Morgan*. *See* 990 F.3d at 373–74. The State criticizes *Ndambi* for not considering the so-called *Bonnette* test, *see* SOW Resp. Dkt. 507 at 13, but the Ninth Circuit in *Morgan* specifically rejected that test in this context. 41 F.3d at 1292–1293; *see Castle*, 731 F.3d at 907.

Most compellingly, Plaintiffs have not identified a single decision from any federal court holding that incarcerated persons participating in a facility-based work program, whether voluntary or compelled, qualify as "employees" entitled under state or federal law to receive minimum wage. On the other side of the ledger, there are more than a hundred final federal court decisions holding that facility-based work by custodial detainees, whether voluntary or compelled, is *not* employment and is not subject to state or federal minimum wage laws. This Court should not accept Plaintiffs' invitation to break new ground contrary to the overwhelming consensus of federal courts, to *Ndambi*'s thoroughly compelling analysis, and to Ninth Circuit precedent under *Hale* and *Morgan*.

## CONCLUSION

For the forgoing reasons, and those stated in our opening brief in support of GEO's Rule 50(b) motion and in our opposition to the State's Rule 50(b) motion, we respectfully submit that the Court should enter judgment in favor of GEO and dismiss this case.

Respectfully submitted, this 6th day of August, 2021.

By: */s/   Charles J. Cooper*
Charles J. Cooper,* D.C. Bar No. 248070
Michael W. Kirk,* D.C. Bar No. 424648
Tiernan Kane,* Ind. Bar No. 36452-71**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
E-mail: ccooper@cooperkirk.com
E-mail: mkirk@cooperkirk.com
E-mail: tkane@cooperkirk.com
* Appearing *pro hac vice*
** Not admitted to the D.C. Bar

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

11

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

By: *s/ Adrienne Scheffey*
Adrienne Scheffey,
**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:    (303) 260-7712
Facsimile:    (303) 260-7714
Email: adrienne.scheffey@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone:    (253) 566-2510
Facsimile:    (281) 664-4643
Email: joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

GEO'S REPLY I.S.O. ITS
RULE 50(B) MOT. FOR J.
AS A MATTER OF LAW
3:17-CV-05806/05769-RJB

12

COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

# PROOF OF SERVICE

I hereby certify on the 6th day of August, 2021, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW** via the Court's CM/ECF system on the following:

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
Email: hberger@sgb-law.com
Email: halm@sgb-law.com
Email: whitehead@sgb-law.com
Email: roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959
Email: andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone: (206) 962-5052
Facsimile: (206) 681-9663
Email: devin@openskylaw.com

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone: (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs*

                          *s/Charles J. Cooper*
                          Charles J. Cooper