UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

_____

UGOCHUKWO GOODLUCK NWAUZOR, )
et al., )
                           )
          Plaintiffs,      ) 3:17-cv-05769-RJB
                           ) 3:17-cv-05806-RJB
v.                         )
                           ) Tacoma, Washington
THE GEO GROUP, INC.,       )
                           ) June 17, 2021
          Defendant.       )
_____) Jury Trial
                           )
STATE OF WASHINGTON,       ) 9:00 a.m.
                           )
          Plaintiff,       )
                           )
v.                         )
                           )
THE GEO GROUP, INC.,       )
                           )
          Defendant.       )
                           )
_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE ROBERT J. BRYAN
UNITED STATES DISTRICT JUDGE
_____

P r o c e e d i n g s   s t e n o g r a p h i c a l l y   r e p o r t e d   a n d   t r a n s c r i b e d
W i t h   c o m p u t e r - a i d e d   t e c h n o l o g y

1
                        APPEARANCES
2

3    For the Plaintiff        JAMAL N. WHITEHEAD
     Nwauzor, et al.:         ADAM J. BERGER
4                             Schroeter Goldmark & Bender
                              810 Third Avenue
5                             Suite 500
                              Seattle, Washington
6

7
     For the Plaintiff        ANDREA BRENNEKE
8    State of Washington:     LANE POLOZOLA
                              MARSHA J. CHIEN
9                             800 Fifth Avenue
                              Suite 2000
10                            Seattle, Washington

11

12   For the Defendant        LAWRENCE D. SILVERMAN
     The GEO Group:           ADRIENNE SCHEFFEY
13                            Akerman LLP
                              1900 Sixteenth Street
14                            Suite 1700
                              Denver, Colorado
15
                              JOAN K. MELL
16                            III Branches Law PLLC
                              1019 Regents Boulevard
17                            Suite 204
                              Fircrest, Washington
18

19

20

21

22

23

24

25

```
 1                                    MORNING SESSION

 2                                    JUNE 17, 2021

 3      (The following occurred outside the presence of the jury.)

 4           THE COURT:  Have you all had a chance to read the

 5      latest from the jury?

 6           MS. MELL:  Yes, Your Honor.

 7           THE COURT:  The appropriate thing for me to do in the

 8      face of this note is to ask the jury back into the courtroom

 9      with the typical questions when a jury might be hung, in part

10      or wholly, and ask them if there is a reasonable possibility

11      that they reach a verdict -- that they could reach a verdict

12      within a reasonable time on either or both interrogatories

13      submitted to the jury and hear their response, and then send

14      them back to deliberate and we will discuss their response.

15         That's what I propose to do, unless someone has a comment.

16           MS. MELL:  It would be GEO's position the jury has

17      expressed, after two and a half days of deliberation, that it

18      is, in fact, in conflict and cannot reach a decision, and the

19      verdict should be -- the decision of the jury should be

20      declared hung at this point, without further deliberation.

21           THE COURT:  Well, it is premature in light of their

22      indication that they are uncertain about reaching a

23      conclusion, at least on one point.  I think your suggestion

24      is premature.

25         Any other comment?
```

1          All right.  Bring the jury in, please.

2              THE CLERK:  I am sending them a quick message that we

3      are bringing them back into the courtroom.

4          Just a moment.  I miscounted.  I think there are only

5      eight.  Looks like Juror 8 -- Juror 8, maybe your video is

6      off.  Can you turn your video on, please?  I have sent a

7      message to Juror 8 to turn her video on.

8          (The following occurred in the presence of the jury.)

9              THE COURT:  Ladies and gentlemen, I have called you

10     back into the courtroom to find out whether you have a

11     reasonable probability of reaching a verdict on one or both

12     questions or interrogatories submitted to you.

13         Because you are in the process of deliberating, it is

14     essential that you give no indication about how the

15     deliberations are going and must not make any remark here in

16     the courtroom that may adversely affect the rights of any

17     party or that may disclose your opinion of the case or the

18     opinions of any members of the jury.

19         I am going to ask your presiding juror if there is a

20     reasonable probability of the jury reaching a verdict within

21     a reasonable time as to one or both of the claims or the

22     questions that was put to the jury.  I would ask your

23     presiding juror to restrict her answer to "yes" or "no" when

24     I ask her this question and not say anything else.

25         For the record here, who is your presiding juror?

1      Juror No. 6, Ms. McDonald-Poper, is there a reasonable

2  probability of the jury reaching a verdict within a

3  reasonable time as to one or both of the issues presented to

4  the jury?

5      JUROR 6:  No.

6      THE COURT:  I am going to ask the jury if you all

7  agree with the presiding juror's response to my question.

8     Again, I would ask you to just indicate that you agree

9  with her statement or you disagree.

10     Ms. Rickabaugh?

11      JUROR 1:  I disagree, Your Honor.

12      THE COURT:  Ms. Membreno?

13      JUROR 2:  I disagree.

14      THE COURT:  Ms. Tooley?

15      JUROR 3:  I feel like I am not understanding that

16  question.  I'm sorry, but I didn't think -- sorry.  Can I

17  have somebody explain that to me again?

18      THE COURT:  All right, Mr. Monta?

19      JUROR 4:  I am confused, too, because there are two

20  parts to what we are doing here.  There is question --

21      THE COURT:  This question is whether you agree with

22  your presiding juror's statement to the Court, which was that

23  she felt there was no possibility that the jury could reach a

24  verdict within a reasonable time on either or both of the

25  questions presented to the jury.

```
1              JUROR 4:   I disagree.

2              THE COURT:  All right.  Ms. Farney?

3              JUROR 7:   I disagree.

4              THE COURT:  And Ms. Burton?

5              JUROR 8:   I disagree.

6              THE COURT:  Mr. Swessel?  Mr. Swessel, Juror No. 9,

7    do I have your name wrong?

8              JUROR 9:   Yes, I agree with her.

9              THE COURT:  All right.  Thank you.  You may retire,

10   and I would ask you to continue your deliberations.

11             THE CLERK:  Judge Bryan, just for the record, I

12   believe Juror 5 was not asked whether he agreed.

13             THE COURT:  I'm sorry.  Mr. Crosley.

14             JUROR NO 5:   I agree.

15             THE COURT:  All right.  Thank you.  I would ask you

16   to retire, continue your deliberations, and I will discuss

17   the status of the case with counsel.  In the meantime, don't

18   stop working on the case and your deliberations.  You may be

19   excused again.

20    (The following occurred outside the presence of the jury.)

21             THE COURT:  At this point in the trial, I have never

22   seen such a split about whether they agree with the presiding

23   juror.  Usually they are all, with maybe one disagreement,

24   they are all of a mind.

25             MS. MELL:  Your Honor, did you get an answer from
```

1  No. 3?  I am not sure we got an answer from each of the

2  jurors.  I don't think you went back to No. 3.

3          THE COURT:  I did not go back to No. 3.

4          THE CLERK:  She misunderstood the question.

5          THE COURT:  Didn't understand the question.

6          MS. MELL:  Just moved on.

7          THE COURT:  I moved on, yeah.  I think the thing to

8  do is let them cook, see if they can come up with an answer

9  to either question.  Obviously some of them thought it was

10  worth another try, or a continuing try.  I don't think there

11  is anything more to be done at this point.

12      Hearing nothing, we will see if they can come up with a

13  result on either question.

14          MS. MELL:  Your Honor, would you be sharing with us

15  any chats that come from the jurors as to how long that

16  reasonable period of time will be, if they ask the Court a

17  question?

18          THE COURT:  Anything they ask me, I will talk to you

19  about before I answer.

20          MS. MELL:  Does the Court have a reasonableness time

21  in its head right now?  Is it just going to see how it goes?

22          THE COURT:  Just see how it goes.  I mean, what is

23  reasonable to me might not be reasonable to the jurors.  They

24  may, in a very short time, feel there is no further benefit

25  from deliberations.  Or on the other hand, they may reopen

1    things, and some of them at least thought they could reach a

2    result on one or both questions.  We need to let them have a

3    chance.  Okay.  Stand by.

4                              (Recessed.)

5      (The following occurred outside the presence of the jury.)

6          THE COURT:  All right.  I have received a second

7    epistle from the jury.  I think the appropriate thing for me

8    to do is to ask the presiding juror if they can reach a

9    verdict, as their letter indicates, on one interrogatory, but

10   whether she thinks they are totally hung on the other

11   interrogatory, and then poll the jury as to whether they

12   agree with her again, and then if they are all in agreement,

13   I would ask the foreman to fill in the verdict form with

14   anything they have agreed on and return to court to take the

15   verdict on one issue, if that is a proper thing to do.

16         MS. MELL:  GEO would disagree with that.  The two are

17   linked, and you get a misperception on the verdict because I

18   think their answer to 1 depends on 2.  I think that's what

19   their information has provided to us.  I think it would be

20   error to force them to come to a decision on 1 when they are

21   hung on 2, when they are clearly hung on the whole thing

22   because they can't get the answer they want combined.

23         MS. CHIEN:  We disagree with GEO's position.  We

24   think a partial verdict is worthwhile, and we can deal with

25   the consequences of a partial verdict after trial.  They are

1    not linked, whether they are an employee and the
2    intergovernmental immunity question is very distinct.  There
3    is value in having a partial verdict.
4         THE COURT:  We don't know what they are going to do.
5    We won't know how to handle it until we know what they are
6    going to do.
7         MS. MELL:  It would be very prejudicial for GEO to
8    have a decision that was based on the inability to decide 1
9    and have it used against GEO as if it's a conclusion that
10   accurately reflects what they would do on 1 if they can't
11   decide on 2.  There is a nexus there, and they have said so.
12        THE COURT:  Bring the jury back.
13        THE CLERK:  The jurors have returned.
14      (The following occurred in the presence of the jury.)
15        THE COURT:  All right.  Let me remind you of the
16   instruction I gave you earlier.  That is, you are only to
17   respond to the questions I directly ask with a "yes" or "no"
18   answer.  I will address the question first to the presiding
19   juror.  It is my understanding -- well, let me strike that
20   and start again.
21      Ms. McDonald-Poper, is there a reasonable probability of
22   the jury reaching a verdict within a reasonable time on both
23   claims?
24        JUROR 6:  No, Your Honor.
25        THE COURT:  Let me ask the jurors if you agree with

1    your presiding juror's statement.  If you would raise your

2    hands if you agree.  All right.  It appears that they all

3    agree.

4        Second question:  Is there a reasonable probability of the

5    jury reaching a verdict within a reasonable time as to one of

6    the two questions put to the jury?  That question again is to

7    you, Ms. McDonald-Poper.

8            JUROR 6:  I believe it is --

9            THE COURT:  The answer to the question is "yes" or

10   "no."

11           JUROR 6:  Yes.

12           THE COURT:  All right.  I would ask the jury again if

13   you agree with your presiding juror's statement.  Raise your

14   hands if you agree.  Not all agree.  At least two jurors did

15   not agree.

16       I would ask you to return to the jury room and continue

17   your deliberations.  If you reach a verdict on one of the two

18   questions, you should fill in the verdict form and report to

19   the Court that you have a verdict on that question, if not on

20   both.

21       All right.  Thank you.  You may be excused to continue

22   your deliberations.

23    (The following occurred outside the presence of the jury.)

24           THE COURT:  They are not agreeing with each other

25   very well.  In her note to the Court, the presiding juror

1    said, "We all agree we could reach agreement on one

2    question."  Now, it appears maybe they can't.  We will see

3    how far they can go.

4          MS. MELL:  Your Honor, can we make a record on the

5    "no" votes on that?  Does the record --

6          THE COURT:  On the what?

7          MS. MELL:  Can we please create a record on that

8    polling of the questions there in terms of the jurors

9    responding "no"?  I think you said two --

10         THE COURT:  I had the jurors respond by raising their

11   hands.  I saw two hands that did not agree with the

12   foreperson.  I saw hands.  I didn't make a specific count.

13         MS. SCHEFFEY:  I would like to put on the record --

14         THE COURT:  I'm sorry, I am having a hard time

15   hearing you, Ms. Scheffey.

16         MS. SCHEFFEY:  Let's see if this makes it any better.

17   Can you hear me now?

18         THE COURT:  I can hear you.  I could hear you better

19   if you speak a little louder.

20         MS. SCHEFFEY:  Thank you.  I just wanted to make a

21   record that in the question we received at 10:18, the

22   question prior to this one, they noted that some of the

23   jurors would change their answer to Question 1 if they have

24   to decide Question 2.  I think if they are going to submit a

25   partial verdict, we have to make sure that answer would

1   remain unanimous if they were to have to answer Question 2,

2   because the jurors have indicated they are interrelated and

3   their answers to the two questions are co-dependent on one

4   another.

5          MR. WHITEHEAD:  I would object to the

6   characterization of the email.  The email speaks for itself.

7   I think that misrepresents the question from the jury

8   earlier.

9          THE COURT:  At this point, the answer is:  Take it to

10   the circuit.

11      Okay.  We will see if they come up with anything else.

12   Isn't this fun?  Okay.  Thank you very much.  We will be

13   awaiting some further response.

14          MS. BRENNEKE:  Thank you, Your Honor.

15                          (Recessed.)

16    (The following occurred outside the presence of the jury.)

17          THE COURT:  I have received and read Ms. Mell's

18   motion for a mistrial.  I don't want to start a long

19   discussion about this.  I understand your position.  Any

20   plaintiffs' lawyer want to make a response?

21          MS. CHIEN:  Your Honor --

22          THE COURT:  Pardon me.

23          MS. CHIEN:  Your Honor, we haven't had a chance to

24   review the motion.  We would oppose GEO's motion.  Obviously

25   we think partial verdict, there is case law to support that

1    we can provide to the Court, partial verdicts are acceptable.

2    Nothing in the briefing we have been able to see so far

3    suggests otherwise.

4         MR. WHITEHEAD:  Your Honor, I don't have anything

5    further to add.  Strikes me as premature.  We don't know what

6    the jury is going to do just yet.

7         THE COURT:  We don't.  I think it would be premature

8    to order a mistrial until we hear what they have to say.

9    They have not been announced hung yet by the Court.

10        It appears to me in light of what has gone on this morning

11   so far that I should again ask them if there is a reasonable

12   possibility that they can reach a verdict within a reasonable

13   time on either or both questions submitted to the jury, and

14   find out if they are hung or not hung or partly hung.

15        If they are, if they now all agree that there is no

16   probability they can reach a verdict on either question, I

17   would be inclined to declare them hung and go from there.

18   Let's see what they have to say.

19        MS. MELL:  Your Honor, just one cautionary response

20   to that.  It would be GEO's suggestion that in doing that

21   polling, the Court is cautious not to suggest to the jurors

22   that there is some ability to bifurcate those questions and

23   answer them independently.  That would be GEO's issue and

24   exception with proceeding in the exact same manner as the

25   Court asked it previously because there was -- I believe the

1  way the Court asked the question and sent them back to the

2  jury, it would suggest, contrary to this case law, that there

3  could be an answer to one question, and then answer the

4  second question, when they are indeed interrelated and a

5  nexus sufficient between the two of them that it necessarily

6  is a mistrial if they can't reach unanimity on the second.

7         THE COURT:  I hear you.  The motion is denied without

8  prejudice to raise it further.

9      Bring the jury in, Tyler.

10     (The following occurred in the presence of the jury.)

11        THE COURT:  Okay, folks, I have called you back again

12 to find out whether you have a reasonable probability of

13 reaching a verdict within a reasonable time on either or both

14 issues presented to you.

15     I will again ask that question to your foreman,

16 Ms. McDonald-Poper.  So the question to you:  Is there a

17 reasonable probability of the jury reaching a verdict within

18 a reasonable time as to one or both of the questions

19 submitted?

20        JUROR 6:  Yes.

21        THE COURT:  All right.  I would ask if that is the

22 case, that you return to the jury room and continue your

23 deliberations.

24     Thank you.

25    (The following occurred outside the presence of the jury.)

```
 1          THE COURT:  Okay.  You may be excused.
 2          THE CLERK:  The jurors have left this courtroom.
 3          THE COURT:  Sounds to me like they are making
 4  progress.  God knows how or what.  I had a doctor's
 5  appointment at 12:40.  I think I better cancel it and stick
 6  with them on this deal.  Too many exhibits, too much
 7  information, and I am also afraid we didn't explain it to
 8  them in an easy way for them to decide things.  Maybe they
 9  are making progress after all this without a dynamite
10  instruction.  We will see what happens.
11                        (Recessed.)
12   (The following occurred outside the presence of the jury.)
13          THE COURT:  Are all counsel present that need to be?
14  The jury has told Tyler that they are hung on both issues.  I
15  guess we have to go through it again.  I will ask them if
16  there is any chance they'd reach a verdict.  This time, I
17  will poll the entire panel, assuming that's what the
18  foreperson tells me.
19      You can bring the jury in.
20      (The following occurred in the presence of the jury.)
21          THE COURT:  All the jury appears to be present.  I am
22  going to go through the same exercise that we went through
23  before, and ask the foreman:  Is there a reasonable
24  probability that the jury can reach a verdict within a
25  reasonable time on either or both of the questions presented?
```

1    JUROR 6:  No, Your Honor, we cannot.

2    THE COURT:  All right.  I am going to poll the jury

3  and ask you again if you agree with the answer the foreman

4  just gave me.

5      Ms. Rickabaugh?

6    JUROR 1:  I agree, Your Honor.

7    THE COURT:  Ms. Membreno?

8    JUROR 2:  I agree.

9    THE COURT:  Ms. Tooley?

10    JUROR 3:  I agree.

11    THE COURT:  Where are you?  There you are.

12      Mr. Monta?

13    JUROR 4:  Agree.

14    THE COURT:  Mr. Crosley?

15    JUROR 5:  Agree.

16    THE COURT:  Ms. Farney?

17    JUROR 7:  Agree.

18    THE COURT:  Ms. Burton?

19    JUROR 8:  Agree.

20    THE COURT:  Mr. Swessel?

21    JUROR 9:  I agree.

22    THE COURT:  All right.  It appears that the jury is

23  unanimous in their responses.

24      I am going to excuse you for just a minute.  I will get

25  right back to you after I discuss your responses with

1  counsel.

2     You can excuse the jury, Tyler, for just a minute.

3     (The following occurred outside the presence of the jury.)

4        THE COURT:  I think it is time to call a mistrial.

5  Any objection to that?

6        MS. CHIEN:  We object.  The State's position is the

7  Court, parties, and jurors' expectation is this trial would

8  go on through next week.  Allowing the jury to deliberate a

9  little bit further, at least through the end of this week, we

10 think is appropriate.

11       MS. MELL:  No objection, Your Honor.  This -- a

12 mistrial should be entered.  They are a hung jury.

13       THE COURT:  Any other comments?

14       MR. WHITEHEAD:  Your Honor, we would object and also

15 wonder about the jury instruction regarding a deadlocked

16 jury, is that something the Court would still entertain?

17       THE COURT:  As you probably are aware, the idea of a

18 dynamite instruction is one that should rarely, if ever, be

19 given.  I guess I don't believe in giving that instruction.

20 I have it marked in the state pattern jury instruction.  The

21 one the State proposes is Washington Pattern Instruction

22 1.12, but it appears to me that it would not be appropriate

23 to give that instruction.

24    The jury has struggled with this, obviously.  They have

25 been out for basically two days, over a three-day span.  They

1  appear unanimous in their view that they are deadlocked.  I

2  think it would be unfair to the jury to carry this further.

3       MS. CHIEN:  Your Honor, you mentioned the state court

4  dynamite instruction.  Have you had an opportunity to review

5  the Ninth Circuit Instruction 3.7 on deadlocked juries as

6  something to consider as well?

7       THE COURT:  I looked at it.  I used to be chair of

8  the committee that drew those instructions.

9       MS. CHIEN:  We think it would be appropriate --

10       THE COURT:  Go ahead.

11       MS. CHIEN:  We think it would be appropriate to

12  provide that instruction, especially given the jury earlier

13  this morning, six out of the nine jurors expressed a

14  possibility of reaching agreement, a short couple hours ago.

15  So we think it would be appropriate for them to continue

16  deliberating, given that.

17       MS. MELL:  GEO would oppose that, given the fact that

18  there was never any unanimity expressed on either one, and

19  they repeatedly had the opportunity to go revisit the

20  questions, and they have clearly indicated unanimously there

21  is no unanimity on either question.

22       THE COURT:  It is my judgment I should not give a

23  dynamite instruction.  I think that would be inappropriate

24  and unfair, particularly not only to the concept of a fair

25  trial, but unfair to the jurors as well.  They have worked

1  long and hard at this and appear deadlocked.  It is my view I

2  should now order a mistrial.

3      I will call the jury back and thank them and rule on that

4  matter.

5      If you will get the jury back in, Tyler.

6          THE CLERK:  They are on their way.

7      (The following occurred in the presence of the jury.)

8          THE CLERK:  They are all present.

9          THE COURT:  Ladies and gentlemen, you have indicated

10 to me that you are deadlocked.  I am satisfied with your

11 showing that that is the case.  I have declared and do

12 declare a mistrial.

13     Jurors want to know at this stage of the game what that

14 means to the case.  What it means is that we will set it for

15 a retrial.  When, I don't know.  We will have another trial

16 on the issues presented.

17     One thing that will happen now is that the lawyers will

18 want to find out what you were thinking about their

19 presentation and about the case.  You should know that you

20 are not required to talk to the lawyers.  If you choose not

21 to and you are approached by anyone, you can tell them you

22 choose not to discuss the matter.  On the other hand, if you

23 are willing to discuss it, you can discuss it.

24     Counsel, I would point out that is a little broader than

25 our typical local rule requires that prevents such contact.

1  But under these circumstances, it may be appropriate.  I

2  would caution counsel not to argue with the jurors about the

3  result of this trial, to treat them, if you wish to contact

4  them, with ultimate respect, and the jury should understand

5  that they are not required to talk to you and just can say so

6  or can -- if a conversation starts, a juror should feel free

7  to stop it if they feel the least bit uncomfortable or

8  desirous of ending the conversation.

9      Ladies and gentlemen, I wanted to tell you also this case

10 was very complicated with all of the exhibits that were

11 filed.  I know you have worked very hard on it. It is not

12 terribly surprising to me that you were unable to all agree

13 on the issues presented.  You certainly have done your duties

14 as jurors in carefully listening and working together very

15 hard over the last three days to try and find a result.

16     The point of me saying that is that I don't want you to

17 feel bad that you are not able to reach a verdict.  It

18 happens.  As a matter of fact, I became a state trial judge

19 in 1967 in August, and I believe it was in September I

20 embarked on trying my first jury case and it resulted in a

21 hung jury.  So it is nothing new, nothing terribly unusual,

22 and we will live through this and go on to the next issues.

23     I want to thank you all for your service.  You can be

24 proud of the work you have done in this case.  Now, you may

25 be excused.  And thank you very much for your service.

```
1    THE CLERK:  I will put them out into a different
2    room.
3      (The following occurred outside the presence of the jury.)
4        THE COURT:  A lot of work down the tube.  I am not
5    sure what you want to do about resetting.  I would think it
6    would make sense to not do that rashly between now and the
7    resetting and think this through, find out from the jurors
8    what they thought.  We can leave it up to a motion to reset
9    or whatever.  I have in the past with cases much more simple
10   than this to say, okay, we will start Monday morning.  I
11   don't think that makes sense in this case with the number of
12   witnesses and so forth and the planning that it takes.
13      Shall we leave it up to a motion to reset?
14        MS. CHIEN:  The State of Washington still has a Phase
15   3 claim on the unjust enrichment claim, which we believe
16   should still proceed regardless of the verdict here.  It is a
17   bench trial.  It is not before a jury.  Our position is we
18   should move forward on the unjust enrichment claim.
19        MS. MELL:  GEO would oppose doing that or setting
20   that at this point.  GEO needs an opportunity to digest this,
21   figure out where we are, communicate with our client, and see
22   where that leaves us with the various parties involved.  It
23   is warranted, at least at this phase, to at least have a
24   conversation and figure it out.
25        THE COURT:  The problem with that, Ms. Chien, is
```

 1   after much work and sweat on the part of the Court and my

 2   court staff, I determined that there was a fact question that

 3   was presentable to a jury on the issue of whether the

 4   detainees are, in fact, employees of GEO.  That still has to

 5   be answered.  I don't know how we can have an unjust

 6   enrichment case without the question being answered.  There

 7   is, I think, a right to a jury trial on that issue.

 8          MS. CHIEN:  Your Honor, I think our position has

 9   always been that the minimum wage claim is separate and

10   distinct from the unjust enrichment claim and does not depend

11   on a finding the detainees are actually employees.  I think

12   it is clear, and I think it makes sense to move forward with

13   the case as is, given the judge has just been able to hear

14   all the evidence presented and it is fresh in the Court's

15   mind that regardless of whether or not the detainees are

16   employees, that GEO has clearly been unjustly enriched by

17   relying on detainees to clean and work the kitchen on 90

18   percent of his facilities without paying them, if not the

19   minimum wage, a wage, a prevailing wage, and profited off

20   that labor.  We believe that claim can move forward separate

21   from any finding on whether or not the detainees are

22   employees.

23          THE COURT:  Ms. Chien, my reaction is negative to

24   your argument.  I'll tell you this, I think what I am going

25   to do is to allow any post-trial motions that you want to

1  make, including motions to have a separate trial on the State
2  claim, as you suggest, and we will consider resetting in
3  response to a motion to reset.
4      I know this case is not likely to find a way to settle,
5  but the ordinary business would indicate that this break is a
6  good time to carefully reexamine your positions in regard to
7  settlement.  We will leave it at that.
8      I will enter an order declaring a mistrial, and we will
9  entertain any post-trial motions or motions regarding a new
10 trial and trial setting under our standard motion practice.
11     Okay.
12         MS. MELL:  Thank you, Your Honor.
13         THE COURT:  Nobody is happy, but nobody lost either.
14 Still live issues.
15     Okay.
16         MR. BERGER:  Your Honor, is it possible to get
17 contact information for the jurors for the purposes of
18 interviewing them, if they wish to speak with us?
19         THE COURT:  Not from me.  I don't have it.
20     Tyler, would you want to check with the jurors to see if
21 their private information could be given out?  I don't know,
22 we used to have phone books, so do the best you can with
23 that.
24         THE CLERK:  I will check on that.  Is it possible to
25 give the jurors the attorneys' information and the jurors can

1    contact them if they choose to?

2          THE COURT:  That would be acceptable to the Court.

3          MR. BERGER:  We would welcome that.

4          THE COURT:  Okay.  Thank you, all.

5          MS. SCHEFFEY:  Thank you.

6          MR. SILVERMAN:  Thank you, Your Honor.

7          MR. BERGER:  Thank you, Your Honor.

8          MS. BRENNEKE:  Thank you, Your Honor.

9          MS. CHIEN:  Thank you.

10                (The proceedings adjourned.)

11

12

13                    C E R T I F I C A T E

14

15

16      I certify that the foregoing is a correct transcript from

17   the record of proceedings in the above-entitled matter.

18

19

20

21   /s/ Angela Nicolavo

22   ANGELA NICOLAVO
     COURT REPORTER
23

24

25