UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | C17-5806RJB |
| UGOCHUKWU GOODLUCK NWAUZOR, on behalf of all those similarly situated, and FERNANDO AGUIRRE-URBINA, individually,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant | C17-5769 RJB<br><br>ORDER ON MOTIONS FOR JUDGMENT AS A MATTER OF LAW |

THIS MATTER comes before the Court on the Plaintiff State of Washington's Renewed Motion for Judgment as a Matter of Law (filed in *Washington v. The GEO Group, Inc.,* U.S. District Court for the Western District of Washington case number 17-5806, Dkt. 498) and

ORDER - 1

Defendant The GEO Group, Inc.'s ("GEO") Rule 50(b) Motion for Judgment as a Matter of Law, (filed in *Washington v. The GEO Group, Inc.,* U.S. District Court for the Western District of Washington case number 17-5806, Dkt. 503 and in *Nwauzor v. The GEO Group,* U.S. District Court for the Western District of Washington case number 17-5769, Dkt. 394). The Court has considered the pleadings filed regarding the motions, testimony heard and other evidence presented during the 11-day trial, and the remaining record, and, on August 17, 2021, the argument of counsel.

These two consolidated cases arise from Plaintiffs' claims that GEO failed to pay immigration detainees in its Voluntary Work Program ("VWP") the Washington minimum wage at its Northwest Detention Center, now renamed Northwest ICE Processing Center. One case, *Nwauzor,* case number 17-5769, is a class action. The other case is brought by the State of Washington. *State,* case number 17-5806.

On August 6, 2018, the class was certified and the class defined as "[a]ll civil immigration detainees who participated in the Voluntary Work Program at the Northwest Detention Center at any time between September 26, 2014, and the date of final judgment in this matter." *Nwauzor,* case number 17-5769, Dkt. 114, at 4. On June 1, 2021, trial began. After an 11-day trial, jury deliberations over three days, and a declaration from the jury that they could not agree on a verdict, a mistrial was declared on June 17, 2021. *State,* case number 17-5806, Dkt. 487; *Nwauzor,* case number 17-5769, Dkt. 376.

On August 16, 2021, GEO's Rule 50(b) Motion for Judgment as a Matter of Law was denied on all issues except as to the discrimination portion of GEO's intergovernmental immunity defense. *State,* case number 17-5806, Dkt. 529; *Nwauzor,* case number 17-5769, Dkt. 417. The issue, which is raised in both the State's and GEO's motions, is ripe for decision.

## FEDERAL RULE CIVIL PROCEDURE 50

ORDER - 2

Pursuant to Fed. R. Civ. P. 50(a)(1),

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Under Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." According to Rule 50(b)(3), the court may "direct the entry of judgment as a matter of law in ruling on the renewed motion."

The State argues in its Rule 50(b) motion that the Court should dismiss GEO's intergovernmental immunity defense because GEO failed to carry its burden that the Washington Minimum Wage Act, RCW 49.46, *et. seq.*, ("MWA") is discriminatory as applied and even if GEO could be compared to state-owned and state-operated facilities, it failed to show that state-owned and state-operated facilities are similarly situated to GEO. *State,* case number 17-5806, Dkts. 498 and 512. GEO opposes the motion. *State*, case number 17-5806, Dkt. 509.

In its Rule 50(b) motions, GEO argues that the MWA impermissibly discriminates against the federal government and GEO because the plain language of the MWA exempts detainees of "state, county or municipal" facilities, benefitting "state, county or municipal" governmental entities, but not the federal government or those with whom it deals (GEO). *State,* case number 17-5806, Dkts. 503 and 513; *Nwauzor,* case number 17-5769, Dkts. 394 and 402 (*citing* RCW 49.46.010(3)(k)). GEO further maintains that the MWA also discriminates against it because it categorically exempts "individuals engaged in the activities of an educational, charitable, religious, state, or local governmental body or agency, or nonprofit organization . . .

ORDER - 3

1  [who] receives reimbursement in lieu of compensation for normally incurred out-of-pocket

2  expenses or receives a nominal amount of compensation per unit of voluntary service rendered."

3  *Id.* (*citing* RCW 49.46.010(3)(d)). The State and class oppose the motion. *State*, case number

4  17-5806, Dkt. 507; *Nwauzor,* case number 17-5769, Dkt. 398.

## DISCUSSION

First, the issue of immunity being a defense, the Court must assume that the Plaintiffs will be successful in demonstrating at trial that GEO's detainee workers are employees under the MWA.

"The doctrine of intergovernmental immunity is derived from the Supremacy Clause, U.S. Const., art. VI, which mandates that 'the activities of the Federal Government are free from regulation by any state.'" *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019)(*quoting Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014)). "The doctrine traces its origins to the Supreme Court's decision in *McCulloch v. Maryland*, which established that 'the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'" *United States v. Washington*, 994 F.3d 994, 1014–15 (9th Cir. 2020)(*quoting McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819)). Accordingly, "state laws are invalid if they regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *California,* at 878. "Over [70] years ago, however, the Supreme Court decisively rejected the argument that <u>any</u> state regulation which indirectly regulates the Federal Government's activity is unconstitutional, and that view has now been thoroughly repudiated." *North Dakota v. U.S.,* 495 U.S. 423, 434 (1990)(*internal quotation marks and citations*

ORDER - 4

*omitted*)(*emphasis added*). "Intergovernmental immunity attaches only to state laws that discriminate against the federal government and burden it in some way." *California,* at 880.

> The doctrine of intergovernmental immunity has been invoked, to give a few examples, to prevent a state from imposing more onerous clean-up standards on a federal hazardous waste site than a non-federal project, to preclude cities from banning only the U.S. military and its agents from recruiting minors, and to foreclose a state from taxing the lessees of federal property while exempting from the tax lessees of state property. Those cases dealt with laws that directly or indirectly affected the operation of a federal program or contract.

*California,* at 880 (*internal citations omitted*). "Since the advent of the doctrine, intergovernmental immunity has attached where a state's discrimination negatively affected federal activities in some way. It is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment." *California,* at 881.

GEO points to *Goodyear Atomic Corporation v. Miller*, 486 U.S. 174 (1988) and to *Boeing v. Movassghi,* 768 F.3d 832 (2014), as well as other cases. *Goodyear* merely stands for the proposition that the intergovernmental immunity defense applies to direct regulation from the state if the entity being regulated is a federal contractor on federally-owned property. *Boeing* extended the defense even where the property was owned, in part, by the contractor, finding that the regulations at issue there were discriminatory because they "single[d] out Boeing, [the federal government], and the site for a substantially more stringent cleanup scheme than that which applie[d] elsewhere in the state." *Id.,* at 942. Neither those cases nor the other cases cited definitively decide the issue here: they did not deal with laws of general applicability that the private contractor agreed to follow by contract on a private contractor-owned and private contractor-operated site. Nor did they deal with anything like the GEO-ICE contract here, where GEO is free to set pay rates at any amount, but not at less than a dollar a day.

What appears clear is that the basic rule of *Boeing* – a state law discriminates against the federal government if it treats someone else better than it treats the government – must be

ORDER - 5

considered with the Supreme Court's *North Dakota* requirements that the question of discrimination cannot be "viewed in isolation," but must be considered "with regard to the economic burdens that result" to the federal government.

The MWA is a neutral law of general application and is being imposed on GEO on a "basis unrelated to [GEO's] status as a Government contractor." *North Dakota, v. U.S.,* 495 U.S. 423, 438 (1990). The MWA is imposed generally on employers in Washington, unrelated to a status as a contractor with federal governmental entities. Indeed, the federal government and GEO contemplated (or should have contemplated) application of the MWA in their contracts. The 2009 Contract and 2015 Contract between GEO and the federal government require that GEO comply with all "applicable federal, state and local labor laws." *State*, case number 17-5806, Dkts. 246-2, at 19 and 58; 246-3, at 46 and 52. Those contracts further provide that "[s]hould a conflict exist between any of these standards, the most stringent shall apply." *State*, case number 17-5806, Dkt. 246-2, at 58 and 246-3, at 52. GEO failed to address these provisions in its briefing.

"A state does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *California,* at 881. GEO asserts that the exceptions in both RCW 49.46.010(3)(k), for "any resident, inmate or patient of a state, county or municipal correctional, detention, treatment or rehabilitation facility" and in RCW 49.46.010(3)(d) for "individuals engaged in the activities of an educational, charitable, religious, state, or local governmental body or agency, or nonprofit organization where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously . . . " result in others being treated better than they are being treated. GEO has failed to show that it is similarly situated to the State or to any of these other entities such that the State "is treating someone else better than it treats them." *Id.* It is a private

ORDER - 6

company and not a governmental entity and is not sufficiently similar to the State or the State's detention activities to trigger further comparison. GEO is not a "educational, charitable, religious . . . or nonprofit organization." Immunity defenses should not be a way to avoid a neutral law, but to avoid unfair treatment. There is no showing that the MWA is not being "imposed equally on other similarly situated constituents of the State." *North Dakota,* at 438. The MWA is imposed on all private and public non-exempt entities.

While GEO maintains that application of the MWA to participants in the VWP will end up costing the federal government money, they fail to point to evidence to support this contention. Their supposition is speculative, at best. Here, there is no showing of any economic burden on the federal government by applying the MWA to GEO. The evidence at trial clearly demonstrated that the only economic impact on GEO, by application of the MWA, would be on GEO's profits, and that there would be no economic impact on the federal government; that GEO's profits would be burdened is not sufficient to justify immunity.

In other words, GEO is not entitled to the special treatment of discrimination immunity only because it contracts with the federal government. Immunity only attaches if there is a relationship, or nexus, between the state law at issue, and an economic, or other, burden on the federal government. Here, the evidence at trial was clear: any possible economic burden on the federal government is speculative and was not proven. GEO is not entitled to the special treatment it requests.

Another thought – presumably, GEO's non-detainee employees are covered by the MWA. Should not detainee employees be treated equally?

To permit GEO to wield the intergovernmental immunity defense here would be to provide GEO with an unwarranted windfall – an excuse to ignore a generally applied law. GEO is not entitled to the exemption it seeks.

ORDER - 7

1   The State's Rule 50 motion (Dkt. 498) should be granted and the remaining issue in
2   GEO's Rule 50 motions – the discrimination portion of GEO's intergovernmental immunity
3   defense – (*State,* case number 17-5806, Dkt. 503; *Nwauzor,* case number 17-5769, Dkt. 394)
4   should be denied.  The parties should prepare to go to trial on October 12, 2021 on the remaining
5   issues.

   It appears clear to the Court that it erred in submitting to the jury Instruction #17 and the
Verdict Form, which covered the discrimination prong of the intergovernmental immunity
defense.  This Order corrects that error.

## ORDER

**IT IS ORDERED THAT:**

- The State of Washington's Renewed Motion for Judgment as a Matter of Law (filed in *Washington v. The GEO Group, Inc.,* U.S. District Court for the Western District of Washington case number 17-5806, Dkt. 498) **IS GRANTED**; and

- The GEO Group, Inc.'s Rule 50(b) Motion for Judgment as a Matter of Law (filed in *Washington v. The GEO Group, Inc.,* U.S. District Court for the Western District of Washington case number 17-5806, Dkt. 503 and in *Nwauzor v. The GEO Group,* U.S. District Court for the Western District of Washington case number 17-5769, Dkt. 394) as to the remaining claim of the discrimination portion of GEO's intergovernmental immunity defense **IS DENIED.**

/ / /
/ / /
/ / /
/ / /
/ / /

ORDER - 8

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 19th day of August, 2021.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge

ORDER - 9