The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>　　　Defendant. | Case No. 3:17-cv-05806-RJB<br><br>**THE GEO GROUP, INC.'S RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL**<br><br>**NOTE ON MOTION CALENDAR:**<br>Date: September 24, 2021 |

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL
(3:17-CV-05806-RJB) – PAGE 1

60045097;5

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

I. INTRODUCTION

The State has filed four overlapping motions in limine that request exclusion of evidence based exclusively on claims of relevance.[1] As a whole, the State's motions do not provide any supportable basis for excluding evidence. Rather, the State's motions seek to exclude evidence that is relevant to whether detainees should be considered employees by claiming it is inconsistent with the State's theory of the case. Certainly, the State's theory does not control the inquiry as to whether evidence is relevant and the State cannot exclude evidence just because it makes it harder for it to prove its case. As described in detail below, the evidence the State seeks to exclude is probative of the issues before the jury and critical to GEO's ability to present a full defense to the claims against it. There is no legal basis for the State's motions and therefore they should each be denied.

II. STATE'S MIL 1: EVIDENCE THAT OTHER FACILITIES WITHIN THE STATE OPERATE WORK PROGRAMS.

The State's entire theory of the case is as follows: GEO is a for-profit company that uses detainee labor to save money and not for any other reason. Through this narrative, the State works to prey upon the sympathies of the jurors by turning the case into a narrative of extortion, not a reasoned assessment of whether detainees in the custody of the federal government, participating in a government-sanctioned program, fit within the paradigm of employment. Implicit in this theory is that the Voluntary Work Program ("VWP") is GEO's creation, thought up for the exclusive purpose of supporting the labor needs at the Northwest ICE Processing Center ("NWIPC").

Because the State wants jurors to believe this program is unique to GEO, and that GEO's primary motivation in implementing such a program is greed, the State wishes to exclude any evidence that these programs are an industry standard utilized at many other facilities to decrease

---

[1] The State's motions were scattered and repetitive, often addressing the same subject in multiple motions, or addressing witnesses unrelated to the topics that the state seeks to exclude. GEO has attempted to organize its response to minimize confusion.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 2

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

idleness and boost morale. This evidence is directly relevant to, and in contradiction of, the State's theory regarding GEO's alleged motivation for use of detainee labor.

The State's theory relies upon irrelevant and improper propensity evidence to create a false narrative about GEO's purported motive. Specifically, the State plans to introduce evidence that GEO's other services at the detention center (i.e., food and housing accommodations) are cheap and inadequate and that, as a result, the jury should find that the stipend for the VWP is also inadequate. Certainly, the State's argument should not come in at all, as it clearly violates FRE 404 which prohibits the use of character evidence to demonstrate propensity. GEO has moved the Court to exclude the argument that underlies this improper propensity evidence. Should the Court grant GEO's motions in limine as to GEO's profits and other conditions of confinement, the State's motion should largely be a non-issue. The State's motion, however, presumes that it will be permitted to introduce this improper argument and evidence. Thus, the State's MIL #1 is no more than an attempted preemptive maneuver to exclude GEO's valid and permissible rebuttal evidence demonstrating that work programs are commonplace in the detention and correctional contexts[2] and thus not used for the purpose which Plaintiffs argue.

GEO is entitled to introduce rebuttal evidence as to why the VWP exists. Even absent the State questioning GEO's character, it is relevant to the jury that detainees in work programs across the State are not considered employees because of a general understanding by the public and legislators that there is a difference between employment and staying busy while detained. Likewise, it helps the jury understand why such a program exists and whether it is intended to be akin to employment. This evidence is clearly relevant to the jury's determination of whether detainees at the NWIPC are "employees." Additionally, as explained above, if the State is allowed to introduce any evidence or argument that the VWP is anything other than a

---

[2] The State's arbitrary conclusion that GEO's NWIPC is not part of the detention and correctional industry lacks support. Clearly, GEO provides detention services for the federal government. Over 60% of the people detained are there because of their past criminal acts. Trial Trans. June 8, 2021 at 178:20-25, 179:1-9. Among other things, GEO is required to comply with the American Correctional Association's standards at the NWIPC. Dkt. 91.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 3

60045097;5

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

government program created by ICE to provide opportunities for detainees to stay busy, the State should not be permitted to impugn GEO's character and also prevent it from rebutting that evidence. Accordingly, the State's motion should be denied.

### A. Testimony of Collen Melody.

Perplexingly, the State attempts to expand the motion in limine regarding testimony about other facilities to its own representative—Collen Melody. In a footnote arguing for exclusion, the State blatantly misrepresents[3] this Court's prior ruling in an attempt to confuse the Court. To be sure, as Ms. Melody is a party representative of the State, the State cannot preclude GEO from calling Ms. Melody. GEO is entitled to call Ms. Melody to the stand to introduce the State's responses provided in discovery—both through interrogatory responses and requests for admission—to authenticate documents produced by the State, and to question Ms. Melody regarding the State's position. Indeed, the State often attempts to expand its position on the WMWA to be something it is not—that is, a "job creation" effort based on the unsupported notion that if the VWP is eliminated, there will be more positions available for Washingtonians. Ms. Melody's sworn 30(b)(6) testimony is critically important on this point, as she stated:

> "Attorney General Ferguson, through the Office of the Attorney General in the civil rights unit, has a position that the jobs being done by detainee workers in the facility is work that's compensable to employees under Washington law. **The position is not that it should be detainees or that it should not be non-detainees doing the work**. **We don't have a position on that.** The position is the people who do the work in the facility, whoever they are, need to be paid minimum wage for that work." Dkt. 365-1, Dec. of Barnacle, Ex. A, Melody Dep., 143:10-19 (emphasis added).

---

[3] The State argues, without basis, that the Court excluded Ms. Melody's testimony in limine. *Washington* Dkt. 545, at n.2. This is blatantly misleading and inaccurate. During the prior hearing on motions in limine, Ms. Chien specifically asked if this court was "ruling on whether GEO can call Collen Melody who was a 30(b)(6) witness for the civil rights division of the State[.]" Transcript of April 13, 2021 hearing at pg. 18:3-5. In response this Court did not exclude Ms. Melody's testimony. To the contrary, it ruled: "I don't recall that her testimony was the subject of a motion in limine . . . I think you are going beyond the motions that were before me. I am not sure I can rule at this point." *Id.* 18:11-21.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 4

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1    Accordingly, there is no basis to exclude Ms. Melody and doing so would be error as it would in

2    effect shield the State from cross-examination as to its position in this lawsuit.

3    It should be noted that GEO cooperated with the State to eliminate witnesses whose

4    testimony was exclusively relevant to the issue of intergovernmental immunity, thereby

5    removing a number of witnesses from its witness list. The only witnesses that remain, including

6    Ms. Melody, are relevant to the jury's determination as to whether detainees are employees.

### III. STATE'S MIL 2: EVIDENCE AND ARGUMENT ABOUT THE DEPARTMENT OF LABOR & INDUSTRIES' HISTORY OF NON-ENFORCEMENT OF THE WMWA AT THE NWIPC IS RELEVANT AND ESSENTIAL TO THE JURY'S UNDERSTANDING OF THE CASE.

The State's request to exclude all documentary and testimonial evidence from the Department of Labor & Industries ("L&I") is based upon a single ground: relevance. This Court already determined that statements made by these witnesses "may be relevant and admissible." ECF No. 374. The Court reiterated this point at trial as to the key exhibits, explaining it did not "rule specifically pretrial on their admissibility." Trial Trans. June 10, 2021 at pg. 32:1. There is no reason for this Court to reconsider its prior orders. Indeed, the State fails to establish that the relevance of L&I's prior enforcement and current guidance is of such little probative value as to justify exclusion. To the contrary, the lack of prior enforcement goes directly to the State's credibility and to the jury's understanding of the GEO-ICE contract.[4]

This Court highlighted the relevance of this testimony in its recent Order granting the State's Rule 50(b) motion. In granting the State's motion, this Court questioned GEO for not addressing the issue of whether the WMWA was "applicable" such that it would be considered an "applicable" state law with which it was required to comply pursuant to its contract with ICE. Dkt. 491 at 6. GEO's answer is that the WMWA was not an "applicable" law contemplated at the time of the contract because, *inter alia*, at the time the contract was entered into, the State (the very entity that could enforce applicable State law) did not believe the WMWA was

---

[4] This same reasoning applies to the Governor's prior non-enforcement of the WMWA and Mr. Wonhoff whose testimony the State seeks to exclude in its MIL #1.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 5

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

applicable to detainees. While the Court chastised GEO in its Order on GEO's post-trial motions for not adequately raising this contract provision, during trial this Court ruled that the same evidence (the applicability of the law at the time the contract was signed) was inadmissible. The Court's most recent ruling makes plain that the information about the applicable law at the time the contract was entered into is highly relevant and that GEO should have been permitted to introduce this key evidence. To that end, the Court prohibited the L&I's witnesses from answering any questions that would have shed light on this important issue, including, but not limited to, the following:

- "Have you made any determinations as to the applicability [of the WMWA] to detainees at the Northwest ICE Processing Center?" Trial Trans. June 11, 2021 at pg. 145 (sustaining objection based upon motion in limine).

- "From 2004 to date, has L&I made a determination as to the applicability of the Minimum Wage Act to detainees at the Northwest ICE Processing Center?" Trial Trans. June 11, 2021 at pg. 146 (sustaining objection based upon motion in limine).

- "Has the Department of Labor & Industries ever made a determination that the Minimum Wage Act applies to the Northwest ICE Processing Center for the detainees participating in the voluntary work program based on legal advice from the AG's office?" Trial Trans. June 11, 2021 at pg. 147 (sustaining objection based upon motion in limine).

- "Ms. Fellin, the facility administrator at the Northwest ICE Processing Center was asked whether or not there is a document of any kind indicating that the Minimum Wage Act does not apply to detainees at the [NWIPC]. You authored such a document, didn't you?" Trial Trans. June 10, 2021 at pg. 57 (sustaining objection on relevance grounds).

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 6

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1
2
3
- "Did you have knowledge of the State's position on the application of the Minimum Wage Act to GEO that you chose not to share with GEO?" Trial Trans. June 01, 2021 at pg. 67:25-68:1 (sustaining objection on relevance grounds).

4
5
6
7
8
9
10
Had GEO been permitted to introduce testimony responsive to the above-listed questions (among others) it could have more clearly demonstrated the absurdity of a factual finding that GEO's contract could or should be interpreted to require the payment of minimum wages to detainees. Surely, it strains credulity that, for the purposes of their contract, GEO and ICE would have come to the conclusion that the WMWA was applicable to detainees in 2015 when the State and the agency in charge of enforcing the WMWA—L&I—did not believe the law to be applicable to detainees.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
Furthermore, contrary to the State's misrepresentations at trial, these were not simply "internal" discussions that did not ultimately get released to the public, but instead were part of a response to a University of Washington law professor, Angelica Chazaro, who explicitly demanded that the Governor and L&I investigate whether the VWP was in violation of the WMWA.[5] *See* Exhibit A (GEO's trial exhibit A-008, March 11, 2014 email to Governor's Office at 11:00 a.m.). As a result of the back and forth communications with Ms. Chazaro, L&I reached a conclusion that it did not have "jurisdiction of Geo Group [sic] detainees." *See* Exhibit B (GEO's trial exhibits A-004; A-002). Indeed, Ms. Fellin, a witness GEO will call to the stand at the retrial, described the email as a way to understand "the department's authority moving forward." *Id.* She explained that the "department's understanding" was that L&I "does not have any jurisdiction over . . . the detainees and work performed by Geo Group [sic] and its employees under contract with the federal government." *Id.* This position was reached a full year before GEO entered into the relevant GEO-ICE contract. Additionally, L&I continued to take this position in responding to inquiries from the public—making plain that its determination that

---

[5] Ms. Chazaro was the representative of many of the detainees at the time. See Biography, *available at* https://www.law.uw.edu/directory/faculty/chazaro-angelica (last visited September 19, 2021).

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 7

60045097;5

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

the WMWA did not apply to GEO detainees was not simply an internal discussion, but a formal and public position of the department. *See* e.g. Exhibit C (June 4, 2014 email responding to a public inquiry as to the payment of minimum wage to detainees in the VWP, advising the individual that the VWP stipend was "outside of L&I's jurisdiction to investigate because they are working for the facility, regardless that it is owned and operated by a corporation.").

Likewise, L&I shared its position that it lacked jurisdiction over the NWIPC not only with advocates for detainees, but also with *GEO's own employees*. Indeed, shortly before the instant lawsuit was brought, employees of the NWIPC filed various complaints with L&I regarding allegations of state minimum wage violations. *See* Exhibit D (email to David Johnson regarding 20 complaints from GEO employees). L&I took the position (based upon prior legal advice) that it had "no jurisdiction to enforce either the industrial welfare act or the minimum wage act against [GEO]" because doing so would violate the supremacy clause. *Id.* In other words, not only did the State not previously enforce the WMWA as to detainees, but it also did not enforce various provisions of the Act as to the unionized workforce at the NWIPC.[6] *See e.g.,* Exhibit E (May 2016 email from David Johnson). Thus, this position was made clear to not only advocates at the NWIPC, but also to GEO's own detention officers and other employees, who are entitled to rely on such communications. *Id.*

While GEO was prohibited from introducing this highly probative evidence, Plaintiffs and the State were unfairly permitted to point to the <u>*absence of any document*</u> showing L&I's prior position. At trial, Plaintiffs implied to the jury that the document from Ms. Fellin to the Governor's Office (for the purpose of declining a request by Ms. Chazaro, the detainee's then-

---

[6] Because this Court did not have this information before it in deciding the Rule 50 motions (due to the evidentiary rulings at trial), it relied upon a wholly inaccurate assumption in dismissing GEO's intergovernmental immunity defense. This Court assumed in its order that "presumably, GEO's non-detainee employees are covered by the MWA. Should not detainee employees be treated equally?" Dkt. 419 at 8. This faulty assumption resulted in a faulty conclusion. Indeed, treating the two groups "equally" is exactly what L&I has historically done by concluding it lacked jurisdiction over either group. *See e.g.,* Exhibit D.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 8

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

representative, to enforce the WMWA as to NWIPC detainees) did not exist. They peppered GEO's representative with questions about this issue, asking him to identify a document showing that GEO "does not need to comply with state minimum wage laws for the voluntary work program" and arguing that "if there was that sort of document, I mean that's a document we should have seen by now at trial [.]" Trial Trans. June 8, 2021 at pg. 65:5-16. This is a clear and improper manipulation of the Court's evidentiary rulings. On retrial, GEO must be permitted to introduce this critical evidence that the jury deserves to consider.

It is also inaccurate for the State to argue that GEO "flouted" the Court's rulings at trial. As this Court made clear in its pretrial rulings, the issues the State raises were only tentative rulings subject to the evidence that came in at trial. Trial Trans. June 10, 2021 at pg. 32:1. Furthermore, the State opened the door to the evidence when it raised, in its own opening statement, that the GEO-ICE contract required GEO to comply with "local labor laws" and argued that GEO should have paid minimum wages to detainees as a result. Trial Trans. June 2, 2021, at pg. 15:8-10. Private Plaintiffs made the same assertion in their opening statement. *Id*. at 21:12-17. Private Plaintiffs' statement went a step further, by discussing at length the investigation they undertook before filing the complaints in this case. Trial Trans. June 2, 2021, at 25-28. "Before we decided to come to you, the jury, we had to determine a few things for ourselves . . . we looked closely at the wording of GEO's contract with ICE, and we found a few things. . . GEO must follow all applicable federal, state, and local laws, including employment laws." Trial Trans. June 2, 2021 at 27:12-19. As trial continued, Plaintiffs emphasized this theme throughout the presentation of their case. Because Plaintiffs opened the door, GEO was entitled to rebut the State's arguments and introduce evidence that the State itself had taken actions previously that were inconsistent with their new enforcement theory. Accordingly, there is no merit to the contention that GEO "flouted" pretrial rulings; instead, the range of permissible evidence evolved as the case was presented.

Finally, the State's argument that GEO's questions created an "air of suspicion" about the State do not provide a basis for excluding relevant and critical evidence. Indeed, the reason news

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 9

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

1  publications and the jury may have been suspicious of the State is likely because the State is, in

2  fact, withholding critical evidence that would impact its credibility in this case. As the parties

3  and this Court know, prior to the creation of the Wing Luke Division of the Attorney General's

4  Office under Attorney General Bob Ferguson, no one in the AG's office nor L&I had *ever*

5  concluded that detainees at the NWIPC were "employees" under the WMWA. This is not

6  because no one had looked into it. L&I had previously determined that detainees were outside of

7  its jurisdiction, and thus not subject to the WMWA. *See* Exhibit A. In fact, on at least two

8  occasions legal memoranda were drafted regarding the subject. Exhibit F (redacted AG memos).

9  While the memoranda are redacted, neither led to an enforcement action by the AG, or a formal

10  AG opinion. What the emails attaching the memoranda make clear is that the most recent

11  memorandum was inconsistent with prior legal guidance. *Id.* (August 2018 email from David

12  Johnson). To date, the AG has issued no such opinion and L&I has not changed its enforcement

13  position.

14  In addition to the formal memoranda, the AG provided advice to L&I on this very issue

15  in 2014. At that time, it found that Exhibit G (email from Ms. Sharma stating she has asked the

16  AAG to look into jurisdiction over the NWIPC); Exhibit H (email to Ms. Sharma stating that the

17  AAG "believes it would be most likely that the Geo Group [sic] would be acting as ICE's agent,

18  and that the federal government would be considered the employer in these circumstances.").

19  Plaintiffs' opening statement that implied they had investigated the applicability of the WMWA

20  directly implicated the prior statements by L&I, by implying that evidence contrary to their

21  position did not exist. Plaintiffs can't, on one hand, claim they conducted intensive research on

22  the issue of whether State law was applicable to GEO's contract with ICE, and on the other hand,

23  shield the exact ***opposite*** conclusion by the State: that the WMWA did not apply to the GEO/ICE

24  contract.

25  While this Court has ruled that the State is entitled to change its mind over time, this does

26  not mean that the State does not have to *explain* such critical changes in enforcement

27  determinations and policy to a jury, particularly where, as here, the conflicting determinations

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 10

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

were made under the same Attorney General. The Attorney General arguably has a right to institute enforcement actions for the State. R.C.W. 43.10.030. This authority does not absolve it from the requirement that it be required to explain the reasoning for its enforcement in the proceedings it instituted—particularly where the enforcement is novel or inconsistent with the actions, not only of prior Attorneys General, but the opinions of its own representatives. Such considerations go directly to the State's credibility that the WMWA has applied to detainees since 2004,[7] as well as Private Plaintiffs' arguments that GEO should have contemplated application of the WMWA going back to 2014, a time when the state itself was reaching a different conclusion.

In a civil case, a state agency cannot avail itself of the principles of prosecutorial discretion that exist in the criminal context. *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990) ("An individual's challenge to the government's exercise of discretion in the context of civil administrative action is not as narrowly circumscribed as a challenge to the government's exercise of prosecutorial discretion in the context of criminal proceedings."). Instead, "a civil administrative challenge to the propriety of government agency conduct questions the fairness and consistency of discretion in the implementation of general government policy. Agency policy must be implemented and rules enforced consistently and predictably." *Id*. Here, the issue is an agency policy that must be enforced consistently and predictably. The AG has not issued a formal opinion, did not inform GEO of its interpretation prior to filing suit, and has not otherwise provided a position that can be challenged through the traditional methods for agency review. As this is GEO's opportunity to respond to the State's allegations, it is entitled to do so by raising questions about the credibility of the State's position. There is no authority to support the position that a civil litigant must bring a vindictive prosecution defense in order to question the state's prior non-enforcement. Nor is there any legal support that a State can hide

---

[7] Certainly, if the State had wanted to avoid presenting this argument, it could have narrowed its claim to only the time where only the present Attorney General was in office. It chose not to do so.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 11

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

1  behind the lack of such a defense to avoid its own prior admissions. Accordingly, the State's

2  motions to exclude testimony and evidence from L&I should be denied.

3        **IV.**     **STATES MIL 3: L&I'S GUIDANCE MAY BE ADMISSIBLE AT TRIAL.**

4        Exhibits A-308 and A-321 are not properly the subjects of a motion in limine. The State

5  provides no evidentiary rule supporting either categorical or partial exclusion of the documents.

6  In ESA.1 (A-321), L&I made plain that detainees who perform work for private corporations are

7  not employees, so long as the work is performed at the facility where they are housed and the

8  program is funded by "public funds." *See* Exhibit I. Here, it is clear that GEO's detainees

9  perform work, at the facility, using public funds provided by ICE. Thus, L&I's public guidance

10 continues to affirm that it maintains its position that detainees are not "employees" for purposes

11 of the WMWA. Furthermore, multiple witnesses found it necessary to review the guidance to

12 provide answers as to the scope of L&I's enforcement. It is premature to determine they will not

13 need the same information in the retrial for a wholly permissible purpose. Accordingly, the

14 State's MIL #3 should be denied.

15      **V.**   **STATE'S MIL 4: DR. GEORGE ZOLEY SHOULD BE PERMITTED TO TESTIFY AT TRIAL.**

16

17       The State seeks to exclude Dr. Zoley as a witness on the basis that he was not disclosed

18 in Rule 26 disclosures. However, Plaintiffs fail to make a showing sufficient to justify disclosure

19 of Dr. George Zoley. Under Rule 37, a party may present testimony from a late-disclosed witness

20 where the "disclosure was either substantially justified, harmless, or both." *Wong v. Regents of*

21 *Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). Here, Dr. Zoley's late disclosure was

22 harmless because the State has long known of Dr. Zoley and, importantly, at trial relied

23 extensively upon a letter authored by Dr. Zoley: Exhibit 365A, a redacted copy of which is filed

24 at *Washington* Dkt. 362-1.

25       A year before trial, the state engaged in extensive motions practice as to Exhibit 365A.

26 *See e.g.*, *Washington* Dkt. 396 at 6. In its motions practice, it indicated that it had learned in

27 discovery that Dr. Zoley was the author of Trial Exhibit 365A. In fact, the State successfully

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN
LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL
(3:17-CV-05806-RJB) – PAGE 12

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1  modified the scheduling order to conduct *additional* discovery regarding the letter authored by
2  Dr. Zoley in August of 2020. *Washington* Dkt. 409. Despite the State's efforts to obtain
3  additional discovery, and despite the purported relevance of the letter he authored, they did not
4  seek to depose Dr. Zoley. At that juncture, or indeed, at any point since it determined the letter
5  was going to be a centerpiece of its case, the State could have sought to depose Dr. Zoley, but
6  did not.

7  Before the June 1, 2021 trial, GEO filed a motion in limine to eliminate the use of Exhibit
8  365A at trial because it was irrelevant. *Washington* Dkt. 355 at 6. Specifically, the letter's only
9  connection to this case is an estimation of GEO's legal fees in this matter. The letter seeks
10 reimbursement from ICE for those fees—it does not address facts relevant to the VWP nor any
11 other aspect of this case. *Washington* Dkt. 362-1. This Court granted GEO's motion in limine.
12 Dkt. 397-10 (April 13, 2020 Transcript at 10-11) ("Motion in limine No. 3 is for exclusion of
13 evidence related to GEO's legal fees, including any request for compensation for legal fees sent
14 to ICE. That motion is granted. I don't know what kind of a side issue that might be, but it is not
15 something that we need to get into."). Yet, at the pretrial hearing on the admissibility of exhibits,
16 the State disregarded this Court's prior order, and argued that the letter (which they identified as
17 authored by Dr. Zoley) was relevant and not prejudicial. Hearing Trans. April 28, 2021 pgs. 106-
18 108. As a result, the Court retreated from the clarity of its original ruling on GEO's motion in
19 limine, allowing the State to rely heavily on the letter. At trial, the State identified Dr. Zoley as
20 the author of the letter by name and title. Trial Trans. June 9, 2021 at 70:16-18, 72:16-19, 73:2-6.

21 Thus, the State cannot fairly claim that it was unaware of, or surprised by the disclosure
22 of Dr. Zoley as a witness. In fact, it appears that the State's only stated "prejudice" is that Dr.
23 Zoley has not previously been examined under oath. GEO has no objection to the State taking
24 Dr. Zoley's deposition before trial and Dr. Zoley will make himself available at the State's
25 convenience. Where a party cannot claim surprise, to the extent a sanction is even appropriate, "a
26 sanction less than total exclusion is in order." *Tabbert v. Howmedica Osteonics Corp.*, No. 2:15-
27

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN
LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL
(3:17-CV-05806-RJB) – PAGE 13

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

CV-00039-SMJ, 2017 WL 10316435, at *6 (E.D. Wash. Oct. 18, 2017). Here, the taking of Dr. Zoley's deposition prior to trial is an appropriate remedy that will cure any claimed prejudice.

To be clear, GEO maintains that Exhibit 365A is not relevant to the present case. That said, to the extent the State has long been aware of the letter and its author, GEO should be permitted to put the author of the letter, Dr. Zoley, on the stand. Should this Court grant the State's motion, it would be unduly prejudicial and improper to also permit the state to use Exhibit 365A in the retrial.[8]

In addition to Exhibit 365, at the first trial the State made many sweeping and unsupported comments about GEO's motives in operating the VWP. Many of these comments were not-so thinly-veiled jabs at the leadership of the company. At retrial, it is now clear that should these statements be reiterated, Dr. Zoley, as the Founder and Executive Chairman of the Company, is best suited to address 'the mission, goals, and contracting principles' of GEO. Without this testimony, the State will make allegations about his character that he will be unable to rebut. Thus, his testimony should not be excluded. In sum, Dr. Zoley's disclosure, even if late, was harmless. Further, his testimony is critical for the jury to hear and understand in the upcoming trial. Accordingly, the Court should not exclude Dr. Zoley where the State has long been aware of his relevance to this case.

## VI.   CONCLUSION

In conclusion, GEO respectfully requests that this Court deny the State's Additional Motions in Limine numbered 1 through 4.

///

///

///

///

///

---

[8] If this Court is inclined to exclude Dr. Zoley, it should also exclude the use of Exhibit 365A.

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 14

60045097;5

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

Respectfully submitted this 20th day of September 2021.

**AKERMAN LLP**

By: *s/ Adrienne Scheffey*
Adrienne Scheffey (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: adrienne.scheffey@akerman.com

By: *s/ Rubén Castillo*
Rubén Castillo (Admitted *Pro Hac Vice*)
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: ruben.castillo@akerman.com

By: *s/ Jacqueline M. Arango*
Jacqueline M. Arango (Admitted *Pro Hac Vice*)
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Email: jacqueline.arango@akerman.com

**FOX ROTHSCHILD LLP**

By: *s/ Al Roundtree*
Al Roundtree, #54851
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154
Telephone: (206) 624-3600
Facsimile: (206) 389-1708
Email: aroundtree@foxrothschild.com

*Attorneys for Defendant The GEO Group, Inc.*

RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL (3:17-CV-05806-RJB) – PAGE 15

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5

**PROOF OF SERVICE**

I hereby certify on the 20th day of September, 2021, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S RESPONSE TO PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE IN ADVANCE OF OCTOBER 12 RETRIAL** via the Court's CM/ECF system on the following:

**OFFICE OF THE ATTORNEY GENERAL**

Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff State of Washington*

*s/ Nick Mangels*
Nick Mangels

PROOF OF SERVICE
(3:17-CV-05806-RJB) – PAGE 16

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60045097;5