The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 3:17-cv-05806-RJB<br><br>**PLAINTIFF STATE OF WASHINGTON'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>NOTE ON MOTION CALENDAR:<br>October 25, 2021 |

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## I. INTRODUCTION

Washington moves for judgment as a matter of law on its claim under the Minimum Wage Act (MWA) and Defendant's remaining affirmative defense of derivative sovereign immunity (DSI defense).[1] Despite having another bite at the apple, Defendant The GEO Group, Inc. (GEO) has again failed to present evidence sufficient to rebut Washington's claim under the MWA or meet its burden to establish derivate sovereign immunity.

The overwhelming, undisputed evidence at trial proves that GEO permits detainees to work, which is dispositive of Washington's MWA claim. As Ryan Kimble, GEO's Business Manager for the Northwest Detention Center, plainly testified: "Q. GEO permits detainees to work at the Northwest Detention Center, correct? A. Yes, as part of the VWP." 10/18/21 Trial Tr. 174:4-8. A reasonable jury could not find otherwise, and Washington is entitled to judgment as a matter of law on its Minimum Wage Act claim.

Further, while GEO again seeks to have the jury instructed on the DSI defense, *see* ECF No. 378-1, Def's Proposed Instruction No. 18[2], such an instruction would be in clear conflict with the parties' agreed facts and the unrebutted trial testimony in this case. GEO has now failed twice to present sufficient evidence at trial upon which a jury could find in its favor on a DSI defense. During the first trial, Washington moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). ECF No. 481 at 5-8. The Court advised the parties that Plaintiffs' "requests for judgment" on "particular . . . defenses" would "be resolved in the jury instruction process." 6/14/21 Trial Tr. 66:1-3. The Court ultimately declined to issue an instruction on derivative sovereign immunity, finding GEO's defense was insufficient as a matter of law. *Id*. at 67:11-13 ("It is clear from the evidence, in my judgment, that the defendant is not entitled to

---

[1] "All affirmative defenses have been definitively eliminated from the case by court rulings with the exception of derivative sovereign immunity" which "is an available affirmative defense, *if proven*." Pretrial Order for Second Trial, ECF No. 579 at 7 (emphasis added).

[2] *See also* GEO's Trial Brief, ECF No. 386 at 20-21 (briefing this defense); ECF Nos. 477, 480, and 503 (seeking judgment as a matter of law on this defense); ECF No. 547 at 4, 6 (indicating GEO's intent to pursue derivative sovereign immunity defense).

PLAINTIFF STATE OF WASHINGTON'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

instructions on derivative sovereign immunity . . . . ."). Nothing has changed at the second trial. The evidence is the same, and the Court should now grant Washington's motion for judgment as a matter of law to fully and definitively dispose of the failed DSI defense.

## II.  ARGUMENT

After a party "has been fully heard on an issue during a jury trial," the Court "may grant a motion for judgment as a matter of law against the party on a claim or defense . . . ." Fed. R. Civ. P. 50(a)(1)(B). The Court "may direct the entry of judgment as a matter of law" where the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 325 F. Supp. 3d 1116, 1118 (W.D. Wash. 2018) (internal quotations omitted). The Court views "the trial evidence in the light most favorable to the non-moving party," *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017), and "[a] directed verdict must be entered where there is no substantial evidence to support the claim." *Eko Brands*, 325 F. Supp. 3d at 1118 (quoting *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975)) (internal quotations omitted). GEO has failed to present evidence to rebut Washington's MWA claim or to support its DSI defense, and instructing the jury on either the MWA claim or DSI defense would conflict with the parties' agreed facts and two weeks of unrebutted trial testimony. The Court should grant judgment as a matter of law against GEO on the MWA claim and DSI defense.

### A.  Washington Is Entitled to Judgment as a Matter of Law on the Minimum Wage Act Claim

Under the clear language of the MWA, GEO is an employer that must pay its detainee workers the minimum wage. The MWA is clear—and broad—in its definition of "employee." That term is defined as "any individual employed by an employer," save for certain exceptions that "are narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." *See* Wash. Rev. Code § 49.46.010(3); *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 587 (Wash. 2000). The MWA defines

MOTION FOR JUDGMENT AS A
MATTER OF LAW

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  "employ" as "includ[ing] to permit to work." *See* Wash. Rev. Code § 49.46.010(2). Thus, the
2  Washington Supreme Court has explicitly recognized: "'[U]nder the MWA, an employee
3  includes any individual permitted to work by an employer. This is a broad definition.'" *Becerra*
4  *v. Expert Janitorial, LLC*, 332 P.3d 415, 420 (Wash. 2014) (quoting *Anfinson v. FedEx Ground*
5  *Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012)).

6        The overwhelming evidence presented at trial supports but one conclusion: that GEO
7  permits detainees to work. GEO's own employees admit that, flat out. *See, e.g.,* Testimony of
8  Ryan Kimble, 10/18/21 Trial Tr. 174:4-8 ("Q. GEO permits detainees to work at the Northwest
9  Detention Center, correct? A. Yes, as part of the VWP."). *See also*, Testimony of Bertha
10 Henderson, 10/20/21 Trial Tr. 56:10-22 (confirming 32 detainees "permitted to work" breakfast
11 shift, and 33 "permitted to work" on lunch and dinner shifts, consistent with quota she set as
12 FSA). And the overwhelming evidence at trial shows that GEO permits detainees to work at the
13 NWDC, and their relationship bears all of the hallmarks of employment.

14       GEO developed job descriptions that govern each position it has detainees work. *See*
15 Testimony of W. McHatton, 10/13/21 Trial Tr. 177:13-185:21 (GEO's compliance manager
16 developed, without ICE input, job descriptions for "cook/prep/server," "dishwasher," "laundry,"
17 "barber," "barbershop cleaner," and "pod porter"); Testimony of Michael Heye, 10/14/21 Trial
18 Tr. 99:24-101:18; 107:11-13 (created GEO's chart of NWDC detainee work force with 470 work
19 assignments and averages of time detainee worker assignments took to complete, Ex. 20);
20 Testimony of B. Henderson, 10/14/21 Trial Tr. 192:10-15 (GEO's Food Service Administrator
21 determined how many detainee workers would work in the kitchen); 10/14/21 Trial Tr. 197:7-
22 12, 202:1-19 (detainees sign off on kitchen job descriptions before working); Testimony of A.
23 Singleton, 10/13/21 Trial Tr. 91:13-92:9 (detainees sign their job descriptions); Testimony of D.
24 Tracy, 10/15/21 Trial Tr. 130:2-5 (detainees are expected to follow job descriptions); Testimony
25 of M. Johnson, 10/15/21 Trial Tr. 147:3-7 (detainees are trained on job descriptions); Exs. 83,
26

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

84, 85, 88, 89, 91 (GEO's job descriptions for detainee workers); Ex. 20 (NWDC detainee work force chart) .

GEO manages detainees' requests to work and makes job assignments. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 79:1-81:18, 83:7-86:6, 87:11-16, 128:5-7 (GEO staff processed requests to work on a "day-to-day basis"); Testimony of W. McHatton, 10/13/21 Trial Tr. 175:24-176:11 (GEO policy establishes "detainee selection" process for work).

GEO determines the detainee work schedule, shift assignments, and particular tasks on the job. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 88:23-25, 104:3-113:14 (GEO Classification Officer assigned the shifts that GEO assigned the detainees to work); Testimony of W. McHatton, 10/13/21 Trial Tr. 176:12-18, 177:13-21, 178:16-21, 180:1-13, 181:3-15, 182:14-183:6, 183:20-184:10, 184:16-185:19 (GEO set the hours of work for detainees); Testimony of J. Griffin, 10/14/21 Trial Tr. 129:10-19 (GEO cook supervisors decide where in the kitchen detainees work); Testimony of B. Henderson, 10/14/21 Trial Tr. 193:18-194:5 (default schedule for detainee workers in the kitchen is seven days per week, and default for night-cleaning detail is five days per week); Exs. 83, 84, 85, 88, 89, 91 (job descriptions with shift schedules); Ex. 309 (NWDC Detainee Work Rosters Oct 22, 2015) at GEO-State 026951-52 (Kitchen Detail, Dinner Shift: "Detainees scheduled to work need to work their shift!!").

GEO provides detainee workers with uniforms, personal protective equipment, and the supplies and equipment necessary to do their jobs. *See* Testimony of W. McHatton, 10/13/21 Trial Tr. 186:4-11 (GEO provides "brooms, mop[s], buffers, wax applications" for floor detail); Testimony of M. Heye, 10/14/21 Trial Tr. 96:5-8 (pod officer supplies equipment for detainees to clean pods); Testimony of J. Griffin, 10/14/21 Trial Tr. 149:14-22 (same for kitchen workers); Testimony of D. Tracy, 10/15/21 Trial Tr. 113:5-6, 115:13-116:5, 117:25-118:7, 125:14-19, 128:24-129:5 (same for detainee workers in the laundry and pods); Testimony of M. Johnson, 10/15/21 Trial Tr. 140:18-20 (same); Ex. 352 (equipment supply closet); Ex. 353 (kitchen work uniform).

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

GEO trains detainee workers. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 92:15-19 (GEO officers and supervisors train detainee workers); Testimony of W. McHatton, 10/13/21 Trial Tr. 186:21-187:10 (same); Testimony of M. Heye, 10/14/21 Trial Tr. 96:1-4 (same); Testimony of J. Griffin, 10/14/21 Trial Tr. 133:19-21 (same); Testimony of B. Henderson, 10/14/21 Trial Tr. 188:23-189:19, 196:8-199:3, 201:19-24 (same); Testimony of D. Tracy, 10/5/21 Trial Tr. 128:24-129:1 (same); Testimony of M. Johnson, 10/15/21 Trial Tr. 147:3-15 (same); Ex. 5 (GEO Kitchen Worker Orientation Checklist).

GEO supervises detainee workers. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 113:17-114:3 (GEO officers evaluate detainee workers as to whether or not their work is satisfactory); Testimony of W. McHatton, 10/13/21 Trial Tr. 186:21-188:22 ("all GEO staff" supervise detainee workers); Testimony of M. Heye, 10/14/21 Trial Tr. 96:9-15 (GEO officers directed detainees to finish their work if they did an incomplete job); Testimony of J. Griffin, 10/14/21 Trial Tr. 128:11-129:9, 130:17-21, 136:1-3, 160:10-24 (GEO staff supervised kitchen workers); Testimony of B. Henderson, 10/14/21 Trial Tr. 188:23-189:19 (same); 10/20/21 Trial Tr. 69:23-70:9 (GEO officers are supervisors and detainee workers "assist us in our daily tasks"; Testimony of D. Tracy, 10/15/21 Trial Tr. 110:19-23, 115:7-116:3, 116:10-117:24, 122:3-5, 122:6-17 (GEO officer describing his supervision of detainee workers in living areas, laundry, on paint duty, and on floor duty); Testimony of M. Johnson, 10/15/21 Trial Tr. 135:13-15, 137:3-22, 138:3-139:1, 142:23-25, 146:9-147:2 (GEO officer describing his supervision of detainee workers); Ex. 141 (post order).

GEO maintains detailed records of work, maintains a payroll, and pays detainee workers for their work. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 94:10-18, 119:10-12, 130:1-10 ("when [detainee workers] complete the job, [GEO] then pay[s] them for the works that they have now completed"); Testimony of R. Kimble, 10/18/21 Trial Tr. 139:13-140:15 (GEO pays the detainee workers through direct deposits in the Keefe banking system); Ex. 57 (NWDC

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

detainee worker paysheets from 5/9/13); Ex. 408 at GEO-State 189008 (pay sheet signed by Mr. Marquez); Ex. 534 ("PAYROLL" transactions for 8/1/2017).

And, if necessary, GEO fires detainee workers. *See* Testimony of A. Singleton, 10/13/21 Trial Tr. 114:3-115:18 (GEO officers would "have [detainees] removed from the job" if they did not do the job correctly); Testimony of W. McHatton, 10/13/21 Trial Tr. 188:23-190:19 (detainees "could lose their job for not following safety regulations"); Testimony of J. Griffin, 10/14/21 Trial Tr. 160:25-161:19 (detainees could be "suspended for a week, or permanently" if they didn't do their job properly); Testimony of B. Henderson, 10/14/21 Trial Tr. 204:19-205:4, 205:19-207:10 (if a detainee violates provisions of the kitchen handbook "I could remove them"), 10/20/21 Trial Tr. 36:7-13 (detainees removed from kitchen for violation of rules re: "stealing" and "fighting"); Testimony of D. Tracy, 10/15/21 Trial Tr. 125:20-126:3 (detainee workers can be "terminated" for "excessive absenteeism," "misconduct," "theft," or "unsatisfactory work performance"); Testimony of M. Johnson, 10/15/21 Trial Tr. 148:4-19 (same); Ex. 51 (Kitchen out-count sheet, "Fired"); Ex. 137 (GEO infraction and disciplinary sanctions policy).

GEO attempts to escape liability by arguing that it is ICE, rather than GEO, that permits detainees to work, but the GEO-ICE contract and the facts in evidence prove otherwise. The contract reflects that ICE contracted *with GEO* to create and "manage a detainee work program" at the NWDC in which "[d]etainee labor shall be used in accordance with the detainee work plan developed by the *Contractor*," not the other way around. *See* Exhibit 129 at GEO-State 036906 ("IX. Manage A Detainee Work Program") (emphasis added). And the evidence shows that it was GEO that built the work program from the ground up, and continues to manage and operate it, *without* ICE involvement. On behalf of GEO, former Associate Warden of Security Bill McHatton created all of the job descriptions for the jobs that GEO—not ICE—decided it would have detainees do. *See* Testimony of W. McHatton, 10/13/21 Trial Tr. Nor did ICE sign off on those job descriptions. *See, e.g., id*. at 182:5-7 (testifying that job description "did not need to be

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

signed off by ICE"). Alisha Singleton—the Classification Officer who managed GEO's detainee work program for fifteen years—testified that she and her department assigned detainee workers to the various jobs and maintained detailed work schedules and rosters at the center without any involvement by ICE. Testimony of A. Singleton, 10/13/21 Trial Tr. 83:1-6 ("Q. Did ICE decide which detainees would be assigned to which job? A. No. Q. What role, if any, did ICE have in assigning jobs to detainee workers? A. They had no role."), 87:22-88:1 ("Q. Does ICE ever tell you how to make these work rosters? A. No. Q. You did that independently as part of your management of the Detainee Work Program? A. Correct."). In fact, she never worked with anyone from ICE in connection with managing the detainee work program. *See id*. at 129:16-18 ("Q. Did you ever work with an ICE official to manage the work program? A. No."). Similarly, Classification Officer Michael Heye testified that GEO uses background packets of information from ICE to assess detainee security levels, but GEO makes the classification on its own, with no interaction from ICE. Testimony of M. Heye, 10/14/21 Trial Tr. 99:3-20. Simply put, the evidence is clear that GEO developed and managed the detainee work program and permitted detainees to work there.

Since no exemption applies, and the unrebutted evidence is that GEO permits detainee workers to work, a reasonable jury could not find in GEO's favor, and against Washington, on the MWA claim.

**B.  Washington Is Entitled to Judgment as a Matter of Law on Derivative Sovereign Immunity**

Based on the evidence in the first trial, the Court ruled against GEO on its claim of entitlement to derivative sovereign immunity, consistent with its prior rulings in this case. ECF No. 288 at 9; ECF No. 302; 6/14/21 Trial Tr. 67:11-13 ("It is clear from the evidence, in my judgment, that the defendant is not entitled to instructions on derivative sovereign immunity . . . ."). It declined to issue an instruction on derivative sovereign immunity because GEO's defense was insufficient as a matter of law. *Id*. at 67:11-13 ("It is clear from the evidence, in my

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    judgment, that the defendant is not entitled to instructions on derivative sovereign immunity . . .
2    . .").

3          Again in this second trial, GEO has introduced no evidence from which a jury could
4    render a verdict in GEO's favor. GEO admits it has the option to pay more than $1 per day to
5    detainee workers under its contract with ICE. Court's Preliminary Instructions to the Jury, ECF
6    No. 582 at 18 (Instruction No. 15, Agreed Facts) ¶¶ 15. And because GEO's failure to comply
7    with the Washington Minimum Wage is a discretionary business decision it has elected to make,
8    GEO has not and cannot make out a DSI defense. Nothing has changed since the Court declined
9    to instruct the jury on the DSI defense at the first trial. In addition to again declining to instruct
10   the jury on this defense, the Court should also dismiss the DSI defense at this time.

11         Washington is entitled to judgment as a matter of law on GEO's defense of derivative
12   sovereign immunity. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672
13   (2016), held that "[g]overnment contractors obtain certain immunity in connection with work
14   which they do pursuant to their contractual undertakings with the United States." That immunity,
15   however, does not attach where a contractor's discretionary actions created the contested issue.
16   *Id.* at 673-74. Instead, derivative sovereign immunity is limited to cases in which a contractor
17   "had no discretion in the design process and completely followed government specifications."
18   *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In
19   re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)); *see also In re KBR,
20   Inc., Burn Pit Litig.*, 744 F.3d 326, 346 (4th Cir. 2014) (holding derivative sovereign immunity
21   would not apply "if [the private contractor] enjoyed some discretion in how to perform its
22   contractually authorized responsibilities"). Indeed, when a contractor fails to follow "the
23   Government's explicit instructions, derivative sovereign immunity does not shield the contractor
24   from liability." *Novoa v. GEO Grp., Inc.*, No. EDCV 17 2514 JGB (SHKx), 2018 WL 4057814,
25   at *3 (C.D. Cal. Aug. 22, 2018) (explaining that any immunity for failure to pay minimum wage
26   to detainee-workers depends on "[h]ow much discretion GEO had, if any, in implementing the

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Work Program"). Here, the Agreed Facts and trial evidence prove as a matter of law that GEO cannot avail itself of immunity, for two key reasons.

First, GEO violates the government's explicit instructions to follow state labor laws by paying detainee workers only $1 per day for work performed. While GEO agreed in its contract with ICE to offer a work program and ICE agrees to reimburse GEO $1 per day for detainee work performed, the GEO-ICE contract also explicitly requires GEO to perform in accordance with all applicable federal, state and local labor laws. Ex. 129 at 82, GEO-State 036868; Testimony of B. Scott, 10/18/21 Trial Tr. 23:24-24:7, 24:22-25:24; Court's Preliminary Instructions to the Jury, ECF No. 582 at 18 (Instruction No. 15, Agreed Facts) ¶ 5; 10/13/21 Trial Tr. 21:6-24:17 (giving Instruction No. 15 to jury). The contract also instructs GEO to comply with the "most stringent" of any conflicting federal, state, or local standards—an unambiguous directive that speaks to the precise circumstance here. Ex. 129 at GEO-State 036876; Testimony of B. Scott, 10/18/21 Trial Tr. 35:6-36:4. By refusing to pay detainees the Washington minimum wage, GEO violates the federal government's explicit instructions.

Second, GEO—and GEO alone—makes the decision to pay detainee workers only $1 per day. As is clear from the actual language of the GEO-ICE contracts, the ICE/DHS PBNDS, GEO's own admissions in this litigation, and the undisputed testimony at trial, ICE nowhere limits GEO to paying detainee-workers only $1 per day for their labor. Court's Preliminary Instructions to the Jury, ECF No. 582 at 18 (Instruction No. 15, Agreed Facts) ¶¶ 15 ("GEO has the option to pay more than $1/day to detainee-workers for work performed in the VWP at the Center."), 17-18; 10/13/21 Trial Tr. 21:6-24:17 (giving Instruction No. 15 to jury); 10/14/21 Trial Tr. 37:4-14 ("The agreed facts are part of the evidence in the case."); Testimony of A. Singleton, 10/13/21 Trial Tr. 132:9-135:22; Ex. 14 ("The new standards . . . [s]tate[] that compensation is now at least $1.00 however doesn't say we don't have the option to pay more if we like."). Although a "CLIN 3" line item from the GEO-ICE contract sets forth the amount that ICE agreed to reimburse GEO for the work program, the CLIN 3 line item nowhere states

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

that GEO must pay detainee workers any particular wage, much less *limit* GEO to paying only $1 per day to detainee workers. *See* Ex. 129 at GEO-State 036833.

Were there any doubt, GEO not only acknowledges it can pay detainees more than $1 per day under the GEO-ICE Contracts and the PBNDS, GEO actually *has* paid detainee workers more than $1 per day for work performed by detainee workers. Testimony of A. Singleton, 10/13/21 Trial Tr. 119:13-17, 121:12-125:2; Testimony of B. Henderson, 10/14/21 Trial Tr. 209:5-210:3; Ex. 115 at GEO-State 104148-149; *see also* Testimony of Brian Evans, 10/21/21 Trial Tr. 182:9-15 (payment of detainee wages greater than $1/day in other GEO facilities). In a memo, GEO's NWDC Classifications Department informed the Associate Warden that the PBNDS "doesn't say that we don't have the option to pay more [than $1.00 per day] if we like." Ex. 14. And, of course, ICE has explicitly told GEO that "there is no maximum" rate of compensation for detainee workers. Ex. 364 at GEO-State 283813.

Nor do the GEO-ICE contract provisions that prohibit GEO from using detainees to fulfill contractual obligations, Ex. 129 at GEO-State 0369006, and require GEO to employ only U.S. citizens or legal permanent residents as employees, *id.* at GEO-State 036887, authorize or direct GEO to ignore state law generally or the MWA in particular. Under existing operations, GEO does not check work authorization of detainees who work in the VWP and allow detainees to work in the VWP without work authorization.[3] *See, e.g.,* Testimony of Nwauzor, 10/15/21B Trial Tr. 108:10-13 (obtained work authorization *after* asylum granted and he left NWDC); Testimony of O. Marquez, 10/18/21B Trial Tr. 105:2-9 (same); As such, paying detainee workers in the Voluntary Work Program at the Washington Minimum Wage rate would change nothing about GEO's existing operations or compliance with the provisions of the ICE contract, *except* in bringing GEO in compliance with applicable state law.

---

[3] Even if this requirement were to change, the undisputed facts at trial also show that some detainee workers are lawfully admitted residents with work authorization. Testimony of J. Medina-Lara, 10/14/21 Trial Tr. 54:4-9, 55:15-57:25, 76:19-77:1; Testimony of C. Strawn, 10/15/21 Trial Tr. 43:1-25.

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Notably, GEO could also comply with both GEO-ICE contract provisions, and state law, by hiring non-detained Washingtonians from the Pierce County labor pool who need jobs and paying them the minimum wage. Given the many options that allow GEO to comply with both state and federal law, these provisions in the GEO-ICE Contract cannot plausibly be construed as a "government specification" that GEO violate Washington's labor laws. *Cf. Cabalce*, 797 F.3d at 732.

In sum, GEO did not simply perform as directed by the federal government and the Court was correct when it previously held that "GEO has not shown that it was directed to pay participants in the VWP only a $1 for the relevant period." ECF No. 288 at 9. Since the discretionary choices at the heart of this lawsuit were made by GEO and not the federal government, *see Cabalce*, 797 F.3d at 732, derivative sovereign immunity does not apply, GEO has failed to meet its burden of proof at trial, and Washington is entitled to judgment as a matter of law on this defense.

### III. CONCLUSION

GEO has failed to present sufficient evidence on which the jury could find in its favor, and the Court should grant judgment as a matter of law against it on Washington's claim under the Minimum Wage Act and the DSI defense.

DATED this 25th day of October 2021.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington

s/ *Andrea Brenneke*
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General

| | |
|---|---|
| 1 | 800 Fifth Avenue, Suite 2000 |
| 2 | Seattle, WA 98104 |
| | (206) 464-7744 |
| 3 | marsha.chien@atg.wa.gov |
| | andrea.brenneke@atg.wa.gov |
| 4 | lane.polozola@atg.wa.gov |
| | patricio.marquez@atg.wa.gov |

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

Dated this 25th day of October 2021 in Tacoma, Washington.

CAITILIN HALL
Legal Assistant

PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744