The Honorable Robert J. Bryan

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

8

9  | STATE OF WASHINGTON,

10 |         Plaintiff,

11 | v.

12 | THE GEO GROUP, INC.,

13 |         Defendant.

Case No.: 3:17-cv-05806-RJB

14 | UGOCHUKWU GOODLUCK
NWAUZOR, FERNANDO AGUIRRE-
15 | URBINA, individually and on behalf of all
those similarly situated,
16 |

Case No.: 3:17-cv-05769-RJB

**THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER
OF LAW**

17 |         Plaintiff,

18 | v.

19 | THE GEO GROUP, INC., a Florida
corporation,

20 |         Defendant.

**NOTE ON MOTION CALENDAR:**
Date: November 26, 2021

21

22     The GEO Group, Inc. ("GEO"), pursuant to Fed. R. Civ. P. 50, hereby files its Renewed

23 Motion for Judgment as a Matter of Law and Memorandum of Law in Support against Plaintiffs

24 State of Washington ("State") and Nwauzor et al. ("Private Plaintiffs") (collectively "Plaintiffs") as

25 related to Phase I of trial. As grounds therefore, GEO states as follows:

26                    **I.      LEGAL STANDARD**

27     Judgment as a matter of law is appropriate as to a particular issue when "a reasonable jury

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 1

60666948;3

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1  would not have a legally sufficient evidentiary basis" to find for the nonmoving party. Fed. R. Civ.

2  P. 50(a)(1). The existence of "some alleged factual dispute between the parties" or a "'scintilla of

3  evidence' will not defeat a properly supported motion" for judgment as a matter of law. *Thomas*

4  *v. Cannon*, 289 F. Supp. 3d 1182, 1194 (W.D. Wash. 2018) (citing *Anderson v. Liberty Lobby,*

5  *Inc.*, 477 U.S. 242, 247-48 (1986)). In deciding a motion for judgment as a matter of law, "the

6  court should review all of the evidence in the record" and "should give credence to the evidence

7  favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted

8  and unimpeached[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)

9  (quotations omitted).

### III.   ARGUMENT

**A.   WMWA DOES NOT APPLY TO DETAINEES PARTICIPATING IN THE VWP.**

> **1.   As a Matter of Law There Is No Employer-Employee Relationship Between a Detention Facility and Detainees Where Detainees Work is Limited to Inside the Facility.**

Every Federal Circuit Court that has addressed this issue has found that persons in detention are not "employees" of the facility where they are detained and performing facility-based work. Most recently, the Fourth Circuit found that the same ICE-mandated VWP at issue in this case did not create an employment relationship subject to the Fair Labor Standards Act and the New Mexico Minimum Wage Act. *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372-73 (4th Cir. 2021). In *Ndambi*, the Fourth Circuit affirmed the dismissal of an action alleging that ICE detainees held in a private detention facility were entitled to Federal and New Mexico minimum wage. *Id.* at 375.[1] The *Ndambi* Court explained that "The FLSA was enacted to protect workers who operate

---

[1] The court also observed that "[e]ach circuit to address the issue—whether the litigants sought FLSA application for inmates, or pretrial detainees, or civil detainees—has concluded that the FLSA's protections do not extend to the custodial context generally." *Id.* at 373-74 (collecting cases from the First, Second, Third, Fifth, Sixth Seventh, Eighth Ninth, Tenth, Eleventh and D.C. Circuits). *See also Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395-97 (5th Cir. 1990) (holding that detainee volunteers are not employees because they are "removed from American industry"); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (holding that immigration detainees are not "employees" under state minimum wage law because "like prisoners, [the

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 2

60666948;3

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

within 'the traditional employment paradigm.' . . . Persons in custodial detention . . . are not in an employer-employee relationship but in a detainer-detainee relationship that falls outside that paradigm." *Id.* at 372.

This Court has in part aligned itself with the reasoning of *Ndambi*, indicating that detainees simply do not fall within a "traditional" definition of employment. Tr. Trans 10/19/21 (Ruling on GEO's Oral 50a Motion). To that end, the Court must use a different set of standards to assess whether detained people can be considered "employees."

Using the Fourth Circuit's guidance, this Court should have instructed the jury to consider additional factors that clarify the meaning of the statutory definitions or even the standard economic realities test. First, as noted by the Fourth Circuit, **"there is *too much* control to classify the [detainer-detainee] relationship as one of employment**." *Id.* at 372 (internal citations and parentheticals omitted, emphasis added); *see also Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992) ("But here we are coming at the definition of "employee" from the opposite direction: there is obviously enough control over the prisoner; the problematic point is that there is too much control to classify the relationship as one of employment."); *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993) (same). This framework and analysis was fully applicable in the case before the Court.

The unrebutted evidence presented at trial has uniformly established that the detainees at GEO's Tacoma facility are subject to supervision and control all the time—regardless of whether they choose to participate in the VWP. *See e.g.,* Tr. Trans. 10/20/21 Pg. 64 (Testimony of Bertha Henderson); 10/15/21 Pg. 112; 10/20/21 Pg. 6464 (Testimony of Bertha Henderson); (Testimony of David Tracy); 10/21/21 Pg. 152 (Testimony of Marc Johnson). There is no conflicting evidence, and therefore, no reasonable jury could find in favor of Plaintiffs on this theory.

Next, the Fourth Circuit noted another critical difference in the relationship between

---

detainees] do not use their wages to provide for themselves, [so] the purposes of the [law] are not served by including them in the definition of employee").

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 3

60666948;3

AKERMAN LLP

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

detainees and a facility, which is equally applicable to this case: "unlike workers in a free labor market who use their wages to maintain their 'standard of living' and 'general well-being,' 29 U.S.C. §202(a), detainees in a custodial institution are entitled to the provision of food, shelter, medicine, and other necessities." *Id.* at 373; *See also Hale v. State of Ariz.*, 993 F.2d 1387, 1396 (9th Cir. 1993) ("We agree with Arizona that the problem of substandard living conditions, which is the primary concern of the FLSA, does not apply to prisoners, for whom clothing, shelter, and food are provided by the prison."). Similarly, there is no dispute that detainees at the NWICP are entitled to shelter, food, clothing, medicine and other necessities from GEO; indeed, there is no dispute that GEO provides such items. Exhibit 609 (Stipulated Fact 4); Tr. Trans 10/20/21 Pg. 22 (Testimony of Henderson).

The Fourth Circuit's considerations are supported by State law. The Washington Court of Appeals has held that patients in a private rehabilitation facility who participated in a voluntary work program—like the detainees here—are not employees under the WMWA because they signed an application agreeing they "will receive no monetary gain," worked with "no promise or expectation of compensation," and volunteered for their own purposes. *Lafley v. SeaDruNar Recycling, L.L.C.*, 138 Wash. App. 1047, 2007 WL 1464433, at *1-4 (May 21, 2007) (unpublished); *see also Calhoun v State*, 146 Wash. App. 877, 886-87, 193 P.3d 188 (2008) (finding that a civilly committed individual was not an "employee" who could bring a claim for discrimination under Washington law using the WMWA definition of "employee"). There is no compelling reason to depart from this analysis. Accordingly, as courts around the country have found, as a matter of law and the unrebutted evidence in this case, the detainees ICE houses at the NWIPC are not in an employment relationship with GEO.

>    **2.**    **The Evidence Establishes That the Detainees Are Not Employees Under the Modified Economic Realities Test Applicable to Detention.**

The appropriate test for employment in a custodial detention is the modified economic dependence test that was applied by the *Ndambi* Court and utilized in *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (same); *Miller*

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

*v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *see also* SOW Dkt. 378 at 21-22, Nwauzor Dkt. 274. Specifically, the elements to determine whether a civilly detained individual at the NWIPC is an "employee" are:

> (1) Whether the detainee work program is designed to create goods or sell services for a profit;
>
> (2) Whether GEO and the detainee have an opportunity for a bargained-for mutual economic gain as is present in a traditional employer-employee relationship; and
>
> (3) Whether detainees at the NWIPC are entitled to food, shelter, medicine, and other necessities.

The evidence at trial establishes that detainees are not employees under this test.

First, there has been no evidence that the Voluntary Work Program at the NWIPC was designed to create goods or sell services for a profit. Indeed, there is no evidence that the VWP generates a profit. The only such suggestion came from Counsel's argument, which is not evidence. All testimony has been unrefuted that the program does not generate a profit and that none of the profits in the facility are the result of replacing employees with detainee workers. Tr. Trans. 10/21/21 Pg. 129 (Testimony of Hill). The testimony is also unrebutted that the purpose of the VWP is to reduce the negative impact of confinement "through decreased idleness, improved morale and fewer disciplinary incidents." (Ex. 17, PBNDS 2011 Section 5.8). GEO does not operate, and more importantly did not design, the VWP in order to create goods or sell services for profit; the program was designed by ICE and is implemented and administered by GEO in accordance with ICE's contractual requirements. Plaintiffs cannot prevail on this factor.

Second, the evidence is unrebutted that there is no opportunity for bargained-for mutual economic gain. All VWP participants receive $1 per day. As Mr. Orlando Marquez-Zavalza testified, he had no opportunity to earn more than $1 per day. Tr. Trans. 10/18/21 (Testimony of Marquez). Each detainee agreed. Tr. Trans. 10/19/21 (Testimony of Gomez Soto); 10/15/21 (Testimony of Nwauzor); 10/14/21 (Testimony of Medina-Lara). Accordingly, this testimony is unrebutted in GEO's favor.

---

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 5

60666948;3

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1    <u>Third</u>, the evidence is unrebutted that the detainees are entitled to be provided with food,

2    shelter, clothing, toiletries and medical care. Indeed, GEO in fact provides such items, as has been

3    stipulated to. Exhibit 609 (Stipulated fact #4). Further, testimony makes clear that detainees are

4    entitled to, and moreover receive, three meals with a total of 3,000 calories per day, clean laundry,

5    and housing. *See e.g.,* Tr. Trans. 10/20/21 pg. 22 (Testimony of Henderson); 10/18/21 Pg. 103

6    (Trial testimony of Marquez). The testimony that detainees were not always satisfied with the

7    accommodations is of no moment. *See Ndambi*, 990 F.3d at 373 ("any potential inadequacy of

8    conditions is not appropriately remedied by applying the FLSA wholesale to detainees . . . hinging

9    the FLSA's application on the adequacy of mandated conditions would lead to prolonged litigative

10   uncertainty and leave everyone in limbo.").

11   Thus, there is no legally sufficient evidentiary basis for the jury to find that the detainees

12   in the VWP are employees under the WMWA.

13   **3.     The Evidence Establishes That the Detainees Are Not Employees Under the**
         ***Anfinson* Test.**

14

15   If this Court deems inapplicable the WMWA's categorical exemption of detainees doing

16   facility-based work, then Washington law's general employment test must apply. That test clearly

17   establishes that only a certain subset of those who are "permi[ted] to work" are employees.

18   To that end, the Court must use a different set of standards to assess whether detained

19   people can be considered "employees." It is insufficient to simply ask a jury whether GEO

20   "permitted" detainees to work without any other criteria or standards because the definition is

21   overbroad and vague. Indeed, the correct instruction must draw a distinction between merely a

22   relationship of control and one of employment. For example, over the past two weeks, the Court

23   permitted the Parties to work in its Courtroom—setting the schedules when the Parties could work,

24   providing the equipment and space, and establishing the work rules to be followed by the Parties

25   in the Courtroom. The Court's permission to work did not give rise to an employment relationship,

26   yet under the instruction provided to the jury, there would be no distinction between the Court's

27   permission for the parties to work and the Parties employer's permission for them to participate in

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 6

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1    trial. In other words, a finding that the Parties were employed by the Court would be entirely

2    feasible under the instruction provided to the jury. Thus, the definition is not an adequate

3    instruction for the jury. The statutory definition is ambiguous and must be supplemented.

4         To determine the boundaries of that subset, the Washington Supreme Court has rejected

5    the argument that the right to control an individual is the key consideration in determining whether

6    an employment relationship exists. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash.2d

7    851, 870, 281 P.3d 289 (2012). In concluding that the right-to-control test was inapplicable, the

8    Washington Supreme Court explained that "minimum wage laws have a remedial purpose of

9    protecting against the evils and dangers resulting from wages too low to buy the bare necessities

10   of life and from long hours of work injurious to health." *Id.* (quotations omitted). Instead - in non-

11   detention contexts - courts utilize the economic-dependence test to determine whether an

12   individual is an employee. *Id.* The economic-dependence test is not comprised of set factors that

13   must be met. Rather, it is a flexible framework that allows a court to evaluate the relationship based

14   upon the "'circumstances of the whole activity.'" *Becerra v. Expert Janitorial, LLC*, 176 Wash.

15   App. 694, 708, 309 P.3d 711 (2013), *aff'd*, 181 Wash.2d 186 (2014) (quoting *Rutherford Food

16   Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

17        In assessing whether an individual is an employee, a critical consideration is the

18   "fundamental nature" of the activity and relationship. *Rocha v. King Cnty.*, 7 Wash. App. 2d 647,

19   658, 435 P.3d 325 (2019), *aff'd,* 195 Wash.2d 412 (2020). "The economic reality test offers a way

20   to think about the subject and not an algorithm. That's why toting up a score is not enough."

21   *Espinoza v. MH Janitorial Servs. LLC*, 11 Wash. App. 2d 1007, 2019 WL 5697886, at *5 (Nov.

22   4, 2019) (unpublished) (citation omitted). Instead, the fact finder must consider not only the

23   enumerated factors, but also the "true nature of the relationship." *Dawson v. Nat'l Collegiate

24   Athletic Ass'n*, 250 F. Supp. 3d 401, 405 (N.D. Cal. 2017), *aff'd*, 932 F.3d 905 (9th Cir. 2019)

25   (citations omitted) (holding that in the context of student athletes, the focus was on the "true nature

26   of the relationship" and, therefore, student athletes were not "employees" under the FLSA). As set

27   forth in *Becerra*, the "circumstances of the whole activity" must be analyzed. 176 Wash. App. at

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 7

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1   708 (citations omitted).

2          Under the Court's articulation of this test, there is not a legally sufficient evidentiary basis

3   to find that the detainees participating in the VWP are employees.

4          **a.      The nature and degree of control of the detainees by GEO.** Because the

5   detainees housed by GEO are in custody, it is undisputed that they are constantly under GEO's

6   "control" whether they are participating in the VWP or not. This factor, therefore, is not dispositive

7   under *Hale*, 993 F.2d at 1394.

8          **b.      The degree of supervision, direct or indirect, of work by detainees.** Detainees

9   at the NWIPC are always supervised—that is the nature of detention. This factor, therefore, has no

10  relevance. Tr. Trans. 10/20/21 pg. 64 (Henderson); 10/15/21 pg. 112 (Tracy); 10/15/21 pg. 138,

11  143 (Johnson).

12         **c.      Whether GEO had the power to determine the pay rates and the methods of**

13  **payment of the detainees.** The evidence at trial has shown that the rate of payment in the VWP

14  program is set by the PBNDS, which GEO is contractually bound to follow. Trial Ex. 17, PBNDS

15  2011 Section 5.8.  The rate is confirmed by the contract between ICE and GEO. The rate GEO

16  must pay is a *minimum* of $1 per day, which GEO complied with at all times. Plaintiffs have failed

17  to point to any evidence that ICE directed GEO to pay the state's minimum wage to detainees, let

18  alone expected the same. The fact that ICE included in its contract an express $1 per day limit on

19  what ICE will reimburse GEO for payments made to VWP detainees necessarily means that ICE

20  did not believe or expect GEO would be required to pay them the state's minimum wage (any other

21  construction of the contract would be absurd as it would lead to an unreasonable result that ICE

22  would award, and GEO would accept, a contract that requires the contractor to fund millions of

23  dollars in wages each year out of its own pocket without reimbursement).

24         **d.      Whether GEO had the right, directly or indirectly, to hire, fire, or modify the**

25  **employment conditions of detainees.** GEO is required to offer VWP positions to every detainee,

26  regardless of their prior experience or skill. There is no interview or selection process. Likewise,

27  although the disciplinary process mandated by ICE and the PBNDS indicates that a detainee will

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 8

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

lose his or her VWP position for infractions such as stealing or failing to follow safety protocols, this is not "hiring" or "firing" in the plain meaning of the words. Even if it is, evidence on this factor alone is insufficient, as a matter of law, to establish that detainees are "employees" under the MWA.

**e.      Whether GEO prepared payroll and the payments to the detainees under the VWP.** GEO puts the VWP payments into detainees' trust accounts. ICE, then, reimburses GEO for those payments. *See e.g.*, Tr. Trans 10/18/21 Pg. 117, 120,122, 170 (Kimble). Plaintiffs did not introduce any evidence that GEO controlled or processed "payroll," which involves calculating hours and withholding taxes and other amounts. Indeed, the issue is unrebutted that all detainee payments were simply made through a passthrough process in the Keefe proprietary account system.

**f.      Whether GEO provided all necessary equipment and supplies necessary to the VWP.** This factor has no relevance in a detention context. GEO provides <u>everything</u> to the detainees in its care—not just equipment and supplies for the VWP tasks but shelter, food, clothing, and toiletries. Plaintiffs ability to establish some evidence on this factor is insufficient to establish detainees are employees under the MWA, but instead establishes further that the level of control over the facility makes plain there is *too much* control for an employer-employee relationship.

**g.      The degree of permanence in the working relationship in the VWP.** The evidence at trial has established that detainees are held at the NWIPC for an average of about three months. Tr. Trans 10/15/21 pg. 36 (Strawn). In addition, detainees can and do choose to quit a volunteer position they do not want to do. Detainees also miss days in order to work on their immigration cases, receive medical care, or participate in other activities, without any consequences. *See e.g.,* Tr. Trans. 10/15/21 Pg. 129-30 ("[I]f they are cleaning something or cleaning the showers and their family calls or the game is on, whatever they have, if they have an attorney visit or medical appointment. We are not going to tell them they are not allowed to go do that because there is two shower stalls left to clean. They are going to do what they need to do and come back and clean afterward."). This evidence is unrebutted and Plaintiffs have failed to

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 9

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1    establish any semblance of evidence that would establish there is permanence in the VWP

2    positions.

3         **h.      Whether the service rendered by the detainees through the VWP is an integral**

4    **part of GEO's business.** The business of GEO at the NWIPC is providing secure detention

5    services to a federal governmental agency. Detainees do not do this. The PBNDS require that GEO

6    implement and administer a VWP and indicates that the tasks made available in that Program

7    should include "essential operations and services." Trial Ex. 17, PBNDS Section 5. There is no

8    evidence that detainees are integral to GEO's business of providing detention management

9    services in any manner not mandated by the terms of its contract with respect to detainee programs.

10        **i.      The detainees' dependence upon GEO for income.** Again, this factor does not

11   make sense in a detention context because detainees cannot leave ICE's custody to seek income

12   outside of the facility. Nevertheless, detainees do not need income to provide for their own shelter,

13   food, clothing, medical care, or entertainment in the NWIPC. Exhibit 609 (Stipulated Fact #4). All

14   of the former detainees have testified that they received more money from family, friends, or

15   organizations outside the facility than from the VWP. Tr. Trans. 10/18/21 (Testimony of Marquez).

16   Each detainee agreed. Tr. Trans. 10/19/21 (Testimony of Gomez Soto); 10/15/21 (Testimony of

17   Nwauzor); 10/14/21 (Testimony of Medina-Lara).

18        Considering the evidence in the context of detention as it must be applied, no reasonable

19   jury could find that the "fundamental nature" of the activity and relationship between detainees

20   volunteering in the VWP and GEO is one of employment subject to the WMWA. *See Rocha*, 7

21   Wash. App. 2d at 658.

22        **4.      Detainees Are Not Employees Under the Resident Exception to the WMWA.**

23        The WMWA explicitly provides that the definition of "[e]mployee … shall not include":

24   "(j) Any individual whose duties require that he or she reside or sleep at the place of his or her

25   employment or who otherwise spends a substantial portion of his or her work time subject to call,

26   and not engaged in the performance of active duties." RCW 49.46.010(3)(j) (hereinafter the

27

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 10

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

"resident exception"). In interpreting its statutory language,[2] the Supreme Court of Washington held that "[t]he plain language of RCW 49.46.010(5)(j) excludes two categories of workers from the MWA's definition of 'employee': (1) those individuals who reside or sleep at their place of employment and (2) those individuals who otherwise spend a substantial portion of work time subject to call, and not engaged in the performance of active duties." *Berrocal v. Fernandez*, 155 Wash.2d 585, 598, 121 P.3d 82 (2005); *see also Strain v. W. Travel, Inc.*, 117 Wash. App. 251, 257, 70 P.3d 158 (2003) ("The statute is plain: employees required to sleep at their places of employment are exempt from coverage under the MWA.").

At issue in this case is Plaintiffs' participation in the VWP at the NWIPC. The VWP is a program that exists solely to provide "detainees opportunities to work and earn money while confined . . . ". Trial Ex. 17 PBNDS § 5.8. Evidence at trial uniformly establishes that ICE has made it a requirement that an individual be detained as a prerequisite to participating in the program. To that end, detainees must live and sleep at the facility such that they are available to participate in VWP positions around the clock or when they become available off the waitlist. Thus by definition, VWP "jobs" require that individuals reside or sleep at the place of his or her "employment." Accordingly, detainees are specifically exempted from the definition of "employees" under the WMWA,

**5.      Detainees Are Not Employees Under the Detainee Exception to the WMWA.**

In addition to the exception for individuals who sleep or reside at their workplace, the WMWA exempts from the definition of employee "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution[.]" RCW 49.46.010(3)(k) (hereinafter "detainee exception"). This exemption, in its most natural reading, excludes those who are in government custody from the definition of employee.

The exceptions to the definition of "employee" describe certain individuals who are exempt

---

[2] The same language in the present statute was previously located at RCW 49.46.010(5)(j).

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 11

60666948;3

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1    from the definition of employee. By contrast, the definition of "employer" might be read as

2    expansive, covering nearly any entity, individual, or "group of persons," limited only by whether

3    they are acting "directly or indirectly in the interest of an employer in relation to an employee."

4    RCW 49.46.010(4). By that definition, the federal government (and GEO) might fall under the

5    definition of "employer." But that would not mean every individual who acts at the direction of,

6    or participates in a program of, the federal government or State is also necessarily an "employee."

7    For example, the State could run a detention facility using the labor of individuals who are neither

8    residents nor inmates of the facility. Those individuals would be subject to minimum wage as they

9    would not fall within any exception. By contrast, individuals who are in the custody of the State,

10   and reside at the facility would not be employees as they are explicitly exempted under the statute's

11   resident and detainee exceptions.

12         There is no dispute in the evidence at trial that the detainees residing at the NWIPC are

13   held in the custody of the federal government. The NWIPC is located within the State of

14   Washington. As residents of a "detention" facility, detainees are exempted from the definition of

15   employee, so long as that detention facility is a "state, county, or municipal . . . institution." RCW

16   49.46.010(3)(k). The statute does not define "state" and therefore, this Court may look to the

17   word's common usage in the dictionary. Black's Law Dictionary defines "state" as the "political

18   system of a body of people who are politically organized; the system of rules by which jurisdiction

19   and authority are exercised over such a body of people." *State*, Black's Law Dictionary (11th ed.

20   2019). The federal government (and by extension ICE) certainly falls within the definition of

21   "state" contained in Black's Law Dictionary. The federal government is a political system that

22   exercises jurisdiction over the United States. The State of Washington also falls within the

23   definition of "state," as a political system within Washington's geographic boundaries.[3] The

24

25   ---

     [3] Importantly, the word "state" is not capitalized in RCW 49.46.10(3)(k) and as such should not
26   be construed as a proper noun referring to a specific state. Furthermore, when the legislature wants
     to refer specifically to Washington State, it knows how to do so. *See e.g.*, RCW 49.12.121(1) ("The
27   department may at any time inquire into wages, hours, and conditions of labor of minors employed
     in any trade, business, or occupation in the state of Washington and may adopt special rules for

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 12

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1   NWIPC is also within the geographic boundaries of Washington, making it arguably, a state

2   institution under the detainee exception. Therefore, the plain language of the detainee exception

3   removes individuals in the custody of the federal government, the state government, and its local

4   subdivisions from the definition of "employee" under the WMWA.

5        **6.**     **Even if detainees are "employees" under the MWA, GEO is not their**
    **Employer.**

6        Even if, contrary to *Anfinson*, employment status under the WMWA depended on one

7   question alone—whether a person is "permit[ted] to work"—still, the WMWA would not be

8   applicable in this case. The undisputed evidence makes plain that it is ICE, not GEO, that controls

9   whether detainees may volunteer, or work, in the facility. The contract unambiguously states that

10  "It will be the sole responsibility of ICE to determine whether a detainee will be allowed to perform

11  on voluntary work details and at what classification level." Exhibit 129, pg. 82. To that end, GEO

12  cannot be considered to be the detainees' "employer" under the undisputed evidence. As Mr. Hill

13  testified, it is ICE, not GEO that has the sole responsibility for permitting detainees to work in the

14  VWP. Tr. Trans October 21, 2021, pg. 126. Without ICE permission, there would be no VWP at

15  the Center. Mr. Evans echoed this sentiment, explaining: "The government establishes the

16  program, permits the detainees to volunteer and work in the facility and the government

17  remunerates them a dollar a day for that participation. Because the government is slow to pay and

18  there is a delay in the payment process, we pay first on behalf of the government and they

19  reimburse us for that on a monthly basis." Tr. Trans. 10/19/21 Pg. 50.

20  **B.**     **THE EVIDENCE ESTABLISHES GEO'S IMMUNITY DEFENSES.** [4]

21       **1.**     **GEO Is Entitled to Derivative Sovereign Immunity.**

22  _____

23  the protection of the safety, health, and welfare of minor employees.) (emphasis added); RCW
24  49.48.210 (11)(b) ("'Employer' means the state of Washington or a county or city, and any of its
    agencies, institutions, boards, or commissions") (emphasis added).

25  [4] GEO re-asserts that it is entitled to its direct-regulation and discriminatory-regulation
26  intergovernmental immunity defenses, as stated in previous Rule 50 motions. *See* Trial Tr. ,
    10/19/21, 122:24– 123:18, State Dkt. 503, 509, 513, 584; Trial Tr., Oct. 18, 2021 at 40; Trial Tr.,
27  Oct. 18, 2021 at 127; Trial Tr., McHatton, Oct. 14, 2021 at 16; Trial Tr., Oct. 14, 2021 at 13-14.

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 13

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1    GEO is entitled to derivative sovereign immunity because it operates the VWP pursuant to

2    its contract with ICE. All testimony that has been introduced in this action has made clear that all

3    of GEO's actions related to the VWP were authorized, directed, and expected by ICE. Tr. Trans.

4    10/21/21 pg. 184 (ICE has full authority over everything in the facility and directs Mr. Scott what

5    to do weekly); 10/18/21 pg. 168 (ICE directed GEO to develop a work plan for the VWP, its

6    design, and its procedures according to the PBNDS); 10/18/21 pg. 170 (GEO-ICE contract

7    authorizes GEO to pay detainees $1 per day in the VWP. That was mandated by the COR as well.

8    She looks at the documentation every month and would deny it or request explanation if it was not

9    authorized.). There has been no evidence to the contrary. Instead, the Plaintiffs' case rests on a

10   tenuous reading of a single phrase in the contract ("applicable federal, state and local labor laws

11   and codes") which they claim means the parties intended for detainees to be classified as

12   "employees' under the MWA. *See* Exhibit 129; Tr. Trans. 10/13/21 (Plaintiffs' opening

13   statements). This argument lacks any support, as Plaintiffs have failed to elicit testimony, or

14   otherwise introduce documentary evidence, that would indicate GEO or ICE had an understanding

15   in 2015, at the time they entered into the contract, that detainees could or should be classified as

16   "employees" under the MWA or that they should be paid anything more than the minimum

17   payment of $1 per day.

18   Indeed, the federal government itself has made clear that the term "all applicable . . . state"

19   laws <u>does not include</u> the Minimum Wage Act. Dkt. 290 (Statement of Interest of United States);

20   *accord* Trial Tr., 10/21/21, Scott, 27:18–28:12 (ICE is aware of the lawsuit and has not instructed

21   or directed GEO to pay the Washington Minimum Wage). GEO shares this understanding. Tr.

22   Trans. 10/21/21 Testimony of Bruce Scott at 90 ("My understanding is that ICE has said that the

23   Washington State Minimum Wage Act does not apply to the contract facility or the voluntary work

24   program."). A third party, such as the State or former detainees, cannot come in and change the

25   meaning of the contract where the parties are in full accord.

26   Government contractors may "obtain certain immunity in connection with work which they

27   do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v.*

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 14

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1   *Gomez*, 577 U.S. 153, 166 (2016) (internal quotation marks omitted) (quoting *Brady v. Roosevelt*

2   *S.S. Co.*, 317 U.S. 575, 583 (1943)). A contractor is entitled to derivative sovereign immunity

3   when it performs work "authorized and directed by the Government of the United States" and the

4   contractor "simply performed as the Government directed." *Id.* at 167. In that way, derivative

5   sovereign immunity ensures that "'there is no liability on the part of the contractor' who simply

6   performed as the Government directed." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

7   928 F.3d 42, 69 (D.C. Cir. 2019) (quoting *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21

8   (1940)). Authorization is "validly conferred" on a contractor if Congress authorized the

9   government agency to perform a task and empowered the agency to delegate that task to the

10   contractor, provided it was within the power of Congress to grant the authorization. *See Yearsley*

11   *v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20 (1940). ICE's authority to contract with GEO is

12   undisputed.

13        In addition to the fact that both parties agree that the MWA is not an "applicable" law for

14   detainees in the VWP, the parties' other contract terms make clear that GEO did exactly as it was

15   authorized and directed by ICE. Detainees are not permitted to be employees of GEO under the

16   ICE contracts. Trial Ex. 129 at GEO-State 036886. There was no expectation that detainees would

17   be so classified. The 2015 ICE Contract defines a GEO employee as "[a]n Employee of [GEO]

18   hired to perform a variety of detailed services under this contract." *Id.* at GEO-State 036871. A

19   detainee, however, is defined as "[a]ny person confined under the auspices and the authority of any

20   Federal agency. Many of those being detained may have substantial and varied criminal histories."

21   *Id.* With respect to the VWP, the ICE contract specifically states that: "Detainees shall not be used

22   to perform the responsibilities or duties of an employee of [GEO]." *Id.* at GEO-State 036906.

23        Additionally, the 2015 ICE Contract requires that any person employed by GEO be a

24   United States citizen or lawful permanent resident. Specifically, ICE requires the following

25   minimum personnel qualification standards for GEO employees in Section III (Personnel) of the

26   contract:

27

---

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 15

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

**B. Minimum Personnel Qualification Standards**

[GEO] shall agree that each person employed by the firm or any subcontractor(s) shall have a social security card issued and approved by the Social Security Administration **and shall be a United States citizen or a person lawfully admitted into the United States for permanent residence**, have resided in the U.S. for the last five years . . . , possess a high school diploma or equivalent (GED), and obtain a favorable Suitability for Employment determination. Each employee of [GEO] and of any subcontractor(s) must complete and sign a Form I-9, "Employment Eligibility Verification," before commencing work. [GEO] shall retain the original Form I-9 and shall furnish the COR with a copy of the Form I-9 before the employee commences work. [GEO] shall be responsible for acts and omissions of its employees and of any subcontractor(s) and their employees.

Trial Ex. 129 GEO-State 036887.

Further, the ICE contract requires each GEO employee to be vetted by the Department of Homeland Security ("DHS") and specifically prohibits GEO from employing illegal or undocumented aliens. Specifically, Section IV (Background and Clearance Procedures) of the 2015 ICE Contract provides, in relevant part, the following mandate for employee eligibility:

**F. EMPLOYEE ELIGIBILITY**

[GEO] will agree that each employee working on this contract will successfully pass the DHS Employment Eligibility Verification (E-Verify) program operated by the USCIS to establish work authorization.

. . . .

[GEO] must agree that each employee working on this contract will have a Social Security Card issued and approved by the Social Security Administration. [GEO] shall be responsible to the Government for acts and omissions of his own employees and for any Subcontractor(s) and their employees.

Subject to existing laws, regulations and/or other provisions of this contract, **illegal or undocumented aliens will not be employed by [GEO], or with this contract**. [GEO] will ensure that this provision is expressly incorporated into any and all Subcontracts or subordinate agreements issued in support of this contract.

Ex. 129 at GEO-State 036894 (emphasis added).

In addition, the plain language of the ICE contract generally directs GEO to pay the detainees a minimum payment of $1 per day for participation in the VWP – and certainly authorizes GEO to do so under the direction of the Government. *cf. Campbell-Ewald Co.*, 136 S. Ct. at 167. The 2015 and 2009 ICE Contracts expressly provide that "Reimbursement for [the

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 16

AKERMAN LLP

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

VWP] will be at the *actual cost* of $1.00 per day per detainee. [GEO] *shall not exceed* the amount shown without prior approval by the Contracting Officer." Trial Ex. 129 GEO-State 0366829; Trial Tr., June 8, 2021, Scott 11:24-12:13:25. The phrase "actual cost" means the amount GEO actually pays to the detainees, i.e. $1/day. *See Cost, Black's Law Dictionary* (11th ed. 2019) ("The amount paid or charged for something; price or expenditure."). Under this general rule, therefore, ICE authorized GEO to pay detainees $1 per day per detainee, not the state's minimum wage.

Thus, because GEO has followed the terms of its contract with the federal government by not treating detainees as "employees" and because Congress authorized ICE to enter into the contract with GEO (8 U.S.C. § 1231(g)(1)), GEO is entitled to derivative sovereign immunity. *See Yearsley*, 309 U.S. at 21. Indeed, because "[g]overnment contractors obtain certain immunity *in connection with* work which they do pursuant to their contractual undertakings with the United States," *Campbell-Ewald Co.*, 577 U.S. at 166 (emphasis added) (quoting *Brady v. Roosevelt S.S. Co.,* 317 U.S. 575, 583 (1943)))—and payment is certainly connected with GEO's operation of the VWP pursuant to its contract with ICE—derivative sovereign immunity would attach even if the pay rate had not been specified by ICE as a minimum wage of $1 per day, a rate GEO at all times complied with.

As a final point, GEO anticipates that Plaintiffs will argue GEO had discretion under the contract and thereby was not entitled to DSI. In addition to being the wrong standard, this is belied by the evidence at trial. GEO has no discretion to deviate from the ICE standards. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018) ("Recently, the Supreme Court reaffirmed this test and expressly stated that as long as the authorization was validly conferred, 'there is no liability on the part of the contractor' who simply performed as the Government directed.'"); *see also*, Tr. Trans. 10/20/21 Pg. 5 (Henderson); 10/21/21 Pg. 181 (Scott). It is not disputed that ICE standards leave no discretion regarding whether participants in the VWP are permitted to work—it is required that they be permitted to work. *See, e.g.*, Trial Tr., 10/18/21, Scott 40:7–8. Indeed, ICE standards require the stipend rate of at least a dollar a day, Trial Tr., 10/22/21, Evans at 18:24-19:2, and the ICE-GEO contract at issue in this case requires,

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 17

AKERMAN LLP

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1   except in circumstances authorized or directed by ICE, that the payment not exceed a dollar a day,

2   *see* Trial Tr., Oct. 13, 2021, Singleton, at 119; Trial Tr., Oct. 14, 2021, McHatton, at 36; *id.* at 17-

3   18; Trial Tr., Oct. 18, 2021, Scott, at 38; Trial Tr., Oct. 18, 2021, Kimble, at 153-54; *id*. at 170.

## C.   WMWA IS PREEMPTED BY FEDERAL LAW.

### 1.   Express Preemption.

In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which made it unlawful "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien … with respect to such employment." 8 U.S.C. § 1324a(a)(1)(A). Under a subsection of the same statute, entitled "Preemption," Congress stated that "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." *Id.* § 1324a(h)(2).

GEO does not employ the detainees at the NWDC in its custody. However, under the Plaintiffs' interpretation of the MWA, which would compel GEO, as an alleged "employer," to pay a minimum wage to immigration detainees, the MWA would create a civil sanction against GEO as an entity that "employ[s]" the unauthorized aliens at the NWDC and make GEO allegedly liable to the sanction of damages for lost wages. Thus, the statute comes within the scope of state laws that are expressly preempted by Congress.

### 2.   Field Preemption.

Field preemption arises whenever Congress, acting within its powers, occupies the field of law that governs a case. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012); *The GEO Group v. Newsom*, No. 20-56172, slip op. at 20 (9th Cir. 2021); U.S. Const. art. VI, cl. 2. Congress has undoubted power over immigration and has occupied the field of alien employability: aliens cannot be hired by any employer that knows they are illegal. 8 U.S.C. § 1324a(a). This provision, first enacted as part of IRCA, is "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc., v. N.L.R.B.*, 535 U.S. 137, 147 (2002). Under IRCA, all job applicants must prove their work eligibility by offering proper

---

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 18

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

documentation. *See U.S. Citizenship & Immigration Servs.*, OMB No. 1615-0047, Employment Eligibility Verification (2018). Indeed, aliens become ***inadmissible*** to the United States by falsely claiming to be citizens in order to secure jobs, or by misrepresenting any material fact to secure work authorization. 8 U.S.C. § 1182(a)(6)(C). Only aliens who have proper work authorization may be employed, which grants them labor protections such as those created by the FLSA. Plaintiffs' claim is subject to field preemption because their theory would allow states to wholly sidestep IRCA by extending labor laws to cover unemployable aliens. Plaintiffs' claim injects Washington's MWA into the federal system by asserting an employer-employee relationship under state law that cannot exist under federal law. As courts have universally recognized, immigration detainees, like inmates and pretrial detainees, are not subject to the FLSA. *See, e.g.*, *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396-97 (5th Cir. 1990). Similarly, immigration detention facilities do not violate IRCA when detainees participate in voluntary work programs because such programs are not employment. *Applicability of Employer Sanctions*, 1992 WL 1369347, at *2. State law cannot ***create*** labor benefits that are unrecognized by the FLSA because they are prohibited by IRCA. Holding otherwise would undercut IRCA by allowing states to authorize alien employment despite Congress's "comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds*, 535 U.S. at 147.

Indeed, Plaintiffs' claim is still more clearly preempted in the detention context because Congress has addressed this very issue: by enacting 8 U.S.C. § 1555(d), Congress arrogated to itself the question of what "allowance" would be paid to immigration detainees. *DOD Request for Alien Labor*, 1992 WL 1369402; *Applicability of Employer Sanctions*, 1992 WL 1369347; *Guevara v. I.N.S.*, No. 90–1476, 1992 WL 1029, at *2 (Fed. Cir. 1992). Detainees who work in voluntary programs like the one ICE requires GEO to operate at NWIPC are paid from funds appropriated by Congress and allocated to ICE, which delegates the administration of the Voluntary Work Program to contractors at Contract Detention Facilities like NWIPC. While detainees may feel that $1 per day is too low, the relevant fact is that under federal law this payment is an "allowance" paid "for work performed;" it is not a competitive wage. 8 U.S.C. § 1555(d).

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 19

AKERMAN LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1    FLSA precedents underscore this point. *E.g., Alvarado Guevara*, 902 F.2d at 396–97. As

2    discussed, ICE has long relied on that provision to authorize programs, like the VWP, that aim to

3    reduce detainee idleness and reduce operational costs, and has subjected it to specific state laws

4    only. *See* PBNDS, § 5.8, II.1-4; *id.* § 5.8, II.5 (subjecting VWP only to "applicable … state and

5    local **work safety** laws…") (emphasis added). But the agency has never concluded that state

6    minimum wage laws apply; it has considered the rate to be set by Congress. Consequently,

7    Plaintiffs seek to use state law to preempt federal law; adopting the Plaintiffs' interpretation of

8    state labor law will either upend a decades-old Congressional statute regulating immigration

9    detainees or nullify a comprehensive federal ban on employing aliens. Because neither result is

10   constitutional, Plaintiffs' claim is subject to field preemption.

11   **3.      Conflict/Obstacle Preemption.**

12   Even when a state law is not subject to express or field preemption, it may still be

13   preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes

14   and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

15   Courts should "examin[e] the federal statute as a whole" and "identify[] its purpose and intended

16   effects" to assess whether state law poses such an obstacle. *Id.* Plaintiffs' claim should be

17   dismissed because it will plainly—and intentionally—stand as an obstacle to Congress's purposes.

18   First, through IRCA, Congress enacted a comprehensive prohibition on alien employment.

19   *Hoffman Plastic Compounds*, 535 U.S. at 147. That prohibition prevents GEO from employing

20   any detainee who lacks work authorization, which plainly includes many, if not all, detainees at

21   NWIPC. By granting "backpay" to detainees, however, this Court will "trivialize [federal]

22   immigration laws" by extending employment protections to aliens who are unemployable. *See id.*

23   at 150. Importantly, the amended complaint contains ***no*** allegation that the Plaintiffs were

24   authorized to be GEO's employees under federal law. Therefore, the Court cannot infer

25   authorization to work for GEO. Compelling GEO to treat detainees as "employees" when federal

26   law forbids it creates a direct conflict. It inverts the relationship between state and federal law by

27

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 20

AKERMAN LLP

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1    allowing state minimum wage law, rather than IRCA, to determine whether an alien can be an

2    employee.

3          This obstacle becomes still clearer in light of Congress's creation of an allowance for aliens

4    in precisely this context. Through 8 U.S.C. § 1555(d), Congress unambiguously signaled that

5    detainees who perform work may be paid an "allowance" that *Congress* sets, thereby leaving no

6    role for state laws to set or adjust the rates of pay for work performed by detainees. Section 1555(d)

7    is the building block for the VWP. ICE has understood that its own authority to pay detainees

8    arises from Congress, and, consistent with FLSA precedents and IRCA, that detainee work does

9    not create an employment relationship with a detention facility. *DOD Request for Alien Labor*,

10   1992 WL 1369402; *Applicability of Employer Sanctions*, 1992 WL 1369347. PBNDS 5.8's policy

11   that "compensation is at least $1.00 (USD) per day" stems directly from the purposes and

12   objectives of Congress. Further, the ICE-GEO contract expressly provides that GEO "shall not

13   exceed" the rate of $1 per day without ICE's approval; at a minimum, this shows that ICE

14   authorized subminimum wage payments to detainees. But Plaintiffs allege that state law alone

15   creates an employment relationship between detainees and facilities, and determines the rate of

16   pay. This imposition of state law will fundamentally alter the VWP—how it functions, what it

17   costs, and whether ICE can continue to use it as an expected practice in its detention facilities.

18   Thus, state law creates an obstacle to the power of the Attorney General, DHS, and ICE—charged

19   by Congress with the operation of federal immigration detention—in trying to force GEO to obey

20   state law mandates at the expense of federal law. *See* Trial Tr., 10/19/21, 123:19–124:3; SOW Dkt.

21   584 at 4-7 (Oct. 6, 2021).

22                        **IV.   CONCLUSION**

23          For the above stated reasons, GEO respectfully asks the Court to enter judgment as a matter

24   of law in its favor.

25   ///

26   ///

27   ///

---

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 21

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

60666948;3

1

Respectfully submitted, this 11th day of November, 2021.

2

**AKERMAN LLP**

3

By: *s/ Adrienne Scheffey*

4

Adrienne Scheffey (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 950

5

Denver, Colorado 80202
Telephone:  (303) 260-7712

6

Facsimile:   (303) 260-7714
Email: adrienne.scheffey@akerman.com

7

8

By: *s/ Jacqueline M. Arango*
Jacqueline M. Arango (Admitted *Pro Hac Vice*)

9

98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131

10

Telephone:  (305) 374-5600
Facsimile:   (305) 374-5095

11

Email: jacqueline.arango@akerman.com

12

**FOX ROTHSCHILD LLP**

13

14

By: *s/ Al Roundtree*
Al Roundtree, #54851

15

1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154

16

Telephone:  (206) 624-3600
Facsimile:   (206) 389-1708

17

Email: aroundtree@foxrothschild.com

18

**THE GEO GROUP, INC.**

19

20

By: *s/ Wayne H. Calabrese*
Wayne H. Calabrese (Admitted *Pro Hac Vice*)

21

Joseph Negron Jr. (Admitted *Pro Hac Vice*)
4955 Technology Way

22

Boca Raton, Florida 33431
Telephone:  (561) 999-7344

23

Telephone:  (561) 999-7535
Email: wcalabrese@geogroup.com

24

Email: jnegron@geogroup.com

25

*Attorneys for Defendant The GEO Group, Inc.*

26

27

DEFENDANT THE GEO GROUP, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 22

60666948;3

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1

## **PROOF OF SERVICE**

2

I hereby certify on the 11th day of November, 2021, pursuant to Federal Rule of Civil

3

Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S**

4

**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** via the Court's CM/ECF

5

system on the following:

6

**OFFICE OF THE ATTORNEY GENERAL**
Marsha J. Chien

7

Andrea Brenneke
Lane Polozola

8

Patricio A. Marquez
800 Fifth Avenue, Suite 2000

9

Seattle, Washington 98104

10

*Attorneys for Plaintiff State of Washington*

11

**SCHROETER GOLDMARK & BENDER**

12

Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141

13

Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560

14

401 Union Street, Suite 3400
Seattle, Washington 98101

15

Telephone: (206) 622-8000
Facsimile: (206) 682-2305

16

Email: hberger@sgb-law.com

17

Email: halm@sgb-law.com
Email: whitehead@sgb-law.com

18

Email: roe@sgb-law.com

19

**THE LAW OFFICE OF R. ANDREW FREE**

20

Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568

21

Nashville, Tennessee 37209

22

Telephone: (844) 321-3221
Facsimile: (615) 829-8959

23

Email: andrew@immigrantcivilrights.com

24

25

26

27

PROOF OF SERVICE
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 23

60666948;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone:  (206) 962-5052
Facsimile:   (206) 681-9663
Email: devin@opensky.law

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone:  (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs Ugochukwu Nwauzor, et al.*


*s/ Nick Mangels*
Nick Mangels

PROOF OF SERVICE
(3:17-CV-05769-RJB) (3:17-CV-05806-RJB)
PAGE 24

60666948;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712