1

The Honorable Robert J. Bryan

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

10

STATE OF WASHINGTON,

CIVIL ACTION NO. 3:17-cv-05806-RJB

11

Plaintiff,

12

v.

STATE OF WASHINGTON'S
MOTION FOR ATTORNEYS' FEES
AND COSTS

13

THE GEO GROUP, INC.,

14

Defendant.

NOTE ON MOTION CALENDAR:
December 3, 2021

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I.      INTRODUCTION

After a three-week trial, the Court entered judgment in favor of the State of Washington on November 4, 2021. The Court did so after a jury unanimously concluded that Defendant The GEO Group, Inc. (GEO) permits detainees to work and must pay the state minimum wage, and after the Court separately determined that GEO was unjustly enriched in paying detainees only $1 per day for work performed since 2005. Thus, Washington won both of its claims and defeated each of GEO's affirmative defenses, and there is no question that Washington is the prevailing party in this action. Pursuant to Fed. R. Civ. P. 54(d), Washington respectfully moves for an award of reasonable attorneys' fees in the amount of $4,464,722.35 as well as litigation costs and expenses of $219,501.69 in bringing and litigating this action.

## II.      STATEMENT OF FACTS

Washington's lawsuit against GEO has been lengthy and complex. Washington filed suit against GEO in September 2017. ECF No. 1-1. As the Court knows, this case was heavily litigated from its first filing to ECF No. 638 (and counting).

Over the course of four years, the parties briefed eight separate dispositive motions. After defeating GEO's motion to dismiss based on standing and preemption, ECF No. 29, Washington successfully obtained dismissal of the majority of GEO's affirmative defenses, ECF No. 44, ECF No. 531. Washington additionally defeated GEO's motion to dismiss for failure to include a necessary party, ECF No. 58, as well as GEO's numerous motions for summary judgment and related motions based on intergovernmental immunity, *see* ECF No. 149, ECF No. 289, ECF No. 299; ECF No. 320; ECF No. 584. Washington expended considerable resources in opposing GEO's numerous dispositive motions as well as GEO's ten additional motions for reconsiderations or motions for interlocutory appeal throughout the litigation, all but one of which were denied. *See* ECF Nos. 103, 144, 157, 165, 211, 289, 326, 426, 449, 553.

At GEO's request, Washington's Minimum Wage Act claim was consolidated for trial with the *Nwauzor* Private Class Action. Washington's trial team coordinated with the Plaintiffs' Class

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Action trial team to avoid duplication of effort, but both teams were required to participate in

2    discovery in both actions to ensure the separate interests of the parties were met throughout

3    discovery and trial of the case.

4        The parties engaged in extensive written discovery and depositions in this lawsuit and the

5    related *Nwauzor* private class action. Washington obtained and reviewed over 510,000 pages of

6    material, both from GEO and from multiple State agencies. *See* Declaration of Marsha Chien in

7    Support of Plaintiff's Motion for Fees and Costs (Chien Declaration) ¶ 2. Washington contacted,

8    interviewed, and obtained declarations from numerous current and former detainees who worked at

9    the Northwest Detention Center (NWDC) throughout the course of litigation. *Id.* GEO's requests

10   also required Washington to quash deposition notices to the heads of the Attorney General's Office

11   and the Department of Labor & Industries, as well as defend eleven depositions of representatives

12   from four different state agencies, including the Department of Labor & Industries, the Department

13   of Corrections, the Attorney General's Office, and the Department of Social and Health Services.

14   *See* Chien Decl. ¶ 3.

15       GEO's refusal to comply with this Court's discovery orders also required Washington to

16   litigate this case in the Ninth Circuit, where GEO sought and failed to obtain a writ of mandamus

17   to bar discovery of its finances. *Id.* In addition, Washington retained an expert Dr. Peter Nickerson,

18   to evaluate GEO's employment records related to the Voluntary Work Program, calculate the extent

19   of GEO's unjust enrichment, and recalculate it after GEO's eventual production of financial records

20   and native format detainee payroll documents. Dr. Nickerson produced expert reports to disclose

21   his opinions and was deposed by GEO; Washington likewise deposed William Brandt, GEO's

22   expert. *Id.*

23       After the parties prepared exhibit lists, trial briefs, and motions in limine, the case went to

24   trial for the first time on June 1, 2021. To ensure effective presentation in a trial that was conducted

25   exclusively via the Zoom platform, Washington engaged a third-party vendor for technological

26   support. After that two-and-a-half week trial resulted in a mistrial, Washington successfully sought

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  a directed verdict with respect to GEO's intergovernmental immunity defense. *See* ECF No. 531.

2  The parties then exchanged supplemental exhibit lists and supplemental motions in limine, and the

3  case went to trial for a second time on October 12, 2021. After the second trial, which lasted three

4  weeks, the jury came back with a unanimous verdict in favor of Plaintiffs and the Court issued an

5  injunction barring GEO from operating the voluntary work program without paying detainees the

6  minimum wage. Additionally, after hearing the third phase of trial on Washington's independent

7  unjust enrichment claim, the Court issued a judgment for Washington in the amount of $5,950,340.

8  ### III.   ARGUMENT

9  **A.    Washington Is Entitled to Reasonable Attorneys' Fees and Costs**

10          Washington is entitled to an award of reasonable attorneys' fees and costs under

11 Washington law. Wash. Rev. Code § 49.48.030; Wash. Rev. Code § 49.46.090(1). *See also*

12 *Bostain v. Food Exp., Inc.,* 153 P.3d 846, 857 (Wash. 2007) (awarding interstate trucker who

13 prevailed in overtime litigation attorneys' fees and costs under both statutes).

14          Under the Minimum Wage Act, a prevailing party is entitled to its costs and reasonable

15 attorneys' fees:

16          Any employer who pays any employee less than the amounts to which such
            employee is entitled under or by virtue of this chapter, shall be liable to such
17          employee affected for the full amount due to such employee under this
            chapter, less any amount actually paid to such employee by the employer, *and*
18          *for costs and such reasonable attorney's fees as may be allowed by the court*.

19 Wash. Rev. Code § 49.46.090(1) (emphasis added). By using "and" to separate the remedies

20 available to a prevailing party, the Legislature made clear that an employer's liability for costs

21 and attorneys' fees are separate and *not* contingent on the first, the recovery of back wages for

22 an employee. *See, e.g., Hisle v. Todd Pac. Shipyards Corp*., 93 P.3d 108, 113, 115 (Wash. 2004)

23 (upholding award of attorneys' fees and costs under Section 49.46.090(1) for union members

24 who prevailed on MWA declaratory judgment action).

25          Under Section 49.48.030, courts "shall" award reasonable attorneys' fees to "any person"

26 who is successful "in any action" in recovering judgment for "wages or salary owed":

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1
2
3
4

> In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer, PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

5

Wash. Rev. Code § 49.48.030; *see also Lietz v. Hansen Law Offices, P.S.C.*, 271 P.3d 899, 911

6

(Wash. Ct. App. 2012) (that section "imposes a mandatory requirement on the trial court").

7

Section 49.48.030 is a remedial statute, which should be construed liberally to effectuate its

8

purpose." *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 42 P.3d 1265, 1267 (Wash.

9

2002). "In light of the liberal construction doctrine, Washington courts have interpreted [section]

10

49.48.030 broadly." *Id. See, e.g., Arnold v. City of Seattle*, 374 P.3d 111, 118–19 (Wash. 2016)

11

(awarding attorneys' fees under Section 49.48.030 even though the civil service commission that

12

awarded the underlying wages owed itself lacked authority to award attorneys' fees).

13

    **1.**      **Washington is entitled to attorneys' fees as "any person"**

14

      Under the fee-shifting statute, "any person" may recover for attorneys' fees. Wash. Rev.

15

Code § 49.48.030. A "person" need not be an "employee" to recover its attorneys' fees. *See, e.g.,*

16

*Wise v. City of Chelan*, 135 P.3d 951, 955 (Wash. Ct. App. 2006) (allowing an independent

17

contractor to recover fees). Rather, the statute's "any person" language is broad and must include

18

state agencies that enforce state labor laws. *See Int'l Ass'n of Fire Fighters*, 42 P.3d at 1267.

19

      For example, in *Department of Labor & Industries v. Overnite Transportation Co.*, 834

20

P.2d 638, 645–46 (Wash. Ct. App. 1992), the state court of appeals held that the Department of

21

Labor & Industries (the Department) is entitled to attorneys' fees when it uses its de jure

22

authority to enforce state labor laws, even absent an assignment from impacted workers. As the

23

*Overnite* court stated, "[p]ermitting the Department to recover attorneys' fees while serving in

24

its representative capacity is consistent with the statute, furthers the Department's ability to bring

25

future wage claims, and serves as a deterrent by placing employers on notice that they will be

26

liable for the attorneys' fees incurred because of their wrongful refusal to pay." *Id.* at 646.

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

The state court of appeals has since extended *Overnite*'s reasoning to the recovery of attorneys' fees under Section 49.48.030. *See Int'l Ass'n of Fire Fighters*, 6 P.3d 50, 53 (Wash. Ct. App. 2000), *affirmed*, 42 P.3d 1265 (Wash. Ct. App. 2002). In *International Association of Fire Fighters*, the state court of appeals observed that the *Overnite* statute authorized fees in an action "by the aggrieved employee or his assignee," yet that "precise phrase" included the Department "in light of the overall construction and purpose of the statutory scheme." *Id.* at 53. Since Section 49.48.030's "any person" phrase is "global" in comparison to "aggrieved employee or his assignee," and considering that "the purposes of the statutes and their impact on employee rights are similar," the *International Association of Fire Fighters* court recognized that "any person" must include a labor union that recovered a judgment for wages or salary owed to others. *Id.*

Here, Section 49.48.030's global phrase "any person" must also, by that same reasoning, include Washington. Exactly like the Department in *Overnite*, Washington brought this action under its de jure authority. One of the Attorney General's enumerated powers is to "act in any court, state, or federal trial or appellate, on 'a matter of public concern.'" *See City of Seattle v. McKenna*, 259 P.3d 1087, 1093 (Wash. 2011) (considering the Attorney General's authority under Section 43.10.030(1)). *See also Washington ex. rel. Hagan v. Chinook Hotel, Inc.*, 399 P.2d 8, 9 (Wash. 1965) (minimum wage claim brought by the Attorney General). Because GEO's failure to pay the state minimum wage for over a decade is a matter of public concern, Washington asserted a quasi-sovereign interest in the health and well-being of its residents and exercised its statutory authority to enforce a state labor law. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (concerning quasi-sovereign interests). Recovery of attorneys' fees here is authorized by statute for the reasons explained by the *Overnite* court: it furthers the Attorney General's ability to bring future wage claims in its representative or quasi-sovereign capacity and serves as a deterrent to other employers who may otherwise deliberately ignore state labor laws. *See Overnite*, 834 P.2d at 646.

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 2.    The Court awarded Washington a judgment for "wages or salary owed"

The Court's award to Washington for unjust enrichment is a judgment for wages or salary owed. Because Section 49.48.030 is a remedial statute, state courts interpret "wages or salary owed" broadly. *See, e.g., Dice v. City of Montesano*, 128 P.3d 1253, 1260 (Wash. Ct. App. 2006) (authorizing fees in a case involving severance pay); *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1206 (Wash. Ct. App. 2005) (signing bonus); *Bates v. City of Richland*, 51 P.3d 816, 828 (Wash. Ct. App. 2002) (underpaid pensions). Attorneys' fees under Section 49.48.030 are not limited to judgments only for wages and salaries earned for work performed, but, rather, attorneys' fees whenever a judgment is obtained for any type of compensation due 'by reason of employment.'" *Dice*, 128 P.3d at 1260; *Bates*, 51 P.3d at827; *Flower*, 111 P.3d at 1203.

Nor does Section 49.48.030 require that the recovery of "wages or salary owed" be achieved through a minimum wage action recovering back wages *See Hanson v. City of Tacoma*, 719 P.2d 104, 109 (Wash. 1986). As stated in *Hanson*, "RCW 49.48.030 provides reasonable attorneys' fees *in any action* in which a person is successful in recovering judgment of wages or salary owed." *Id.* (emphasis in original). In *Fraser v. Edmonds Community College*, 147 P.3d 631, 633 (Wash. Ct. App. 2006), for example, the state court of appeals awarded attorneys' fees under a promissory estoppel theory, reasoning that Section 49.48.030 applied to "money due by reason of employment" regardless of the "theory of recovery."

Indeed, state courts have specifically awarded attorneys' fees under Section 49.48.030 where a plaintiff prevails on an unjust enrichment theory. In *Sambasivan v. Kadlec Medical Center*, 171 Wash. App. 1013, 2012 WL 5208657, at *9–10 (Wash. Ct. App. Oct. 23, 2012), for example, the state court of appeals affirmed the lower court's award of attorneys' fees where the plaintiff, a doctor challenging a medical center's revocation of his staff privileges, brought numerous common law claims, but prevailed only on one: his unjust enrichment claim. Although the doctor was not in an employer-employee relationship with the medical center, the state court of appeals held Section 49.48.030 applied to implied contracts even in the absence of a direct

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

employment relationship. *Id.*; *see also Schoonover v. Carpet World, Inc.*, 588 P.2d 729, 734 (Wash. 1978) (awarding attorneys' fees where plaintiff who worked at the defendant's store prevailed and obtained an amount akin to the minimum wage based on a "theory of unjust enrichment").

Here, Washington played an obvious and key role in securing the jury's verdict that GEO is liable for back wages to the private class of Washington residents. Washington also separately prevailed on its independent unjust enrichment claim. At the close of trial, the Court determined Washington succeeded on the merits of its unjust enrichment claim and awarded Washington $5,950,340. In its oral Findings of Facts and Conclusions of Law, the Court deemed it appropriate to consider the entire time GEO operated the voluntary work program while paying detainees only $1 per day, including the time before the private class action, i.e., pre-September 2014. More specifically, the Court calculated Washington's award by subtracting the class's recovery from "the estimates of hours worked by minimum wages going back to 2005 to the present." *See* Chien Decl. ¶ 19, Ex. B. In explaining its findings, the Court made clear that the award was derived "by reason of employment," *see Fraser*, 147 P.3d at 634, i.e., it was calculated based on the work performed by detainees since 2005. There is no question that Washington's unjust enrichment award is based on "wages or salary owed." In sum, Washington is the prevailing party and obtained a judgment based on wages or salary owed from 2005 until September 2014. Under Sections 49.48.030 and 49.46.090(1), Washington is entitled to reasonable attorneys' fees.

**B.      Washington's Hourly Rates and Total Fees Are Reasonable**

Pursuant to Sections 49.48.030 and 49.46.090(1), Washington seeks $4,464,722.35 in reasonable attorneys' fees. To determine a reasonable attorneys' fees award, the Court begins by calculating the "lodestar" amount. *Bostain v. Food Express, Inc.*, 153 P.3d 846, 857 (Wash. 2007). The lodestar figure is the product of the number of attorney hours reasonably expended in the litigation multiplied by the attorney's reasonable rate of hourly compensation. *Id.* This

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

lodestar may then be adjusted to reflect the contingent nature of success and the quality of the work performed. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 201–02 (Wash. 1983). The Court may consider additional factors to adjust the awards upwards or downwards. *Id*. The factors under which the lodestar may be adjusted are extremely limited because "in virtually every case the quality of the work will be reflected in the reasonable hourly rate." *Id*. at 204. Courts will usually only adjust the lodestar for quality of work in exceptional cases, as "a quality adjustment is appropriate only when the representation is unusually good or bad, taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the 'lodestar.'" *Id*. (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980)).

Here, Washington uses conservative hourly rates for its attorneys, paralegals, and investigators, based on the reasonable and customary fees charged in the area for professionals with similar years of experience. Washington is not seeking an upward lodestar quality adjustment, nor does it believe that a downward quality adjustment is warranted considering Washington's efforts, work product, and pre- and post-trial results. In calculating the lodestar here, the most significant factor is the reasonableness of time expended on the litigation. In considering reasonableness, the Court should take into account the fact that this case was complex and lasted over four years. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). With over 600 docket entries on file, not including the Ninth Circuit action, it is clear that the case has been heavily litigated and required the testimony of many witnesses and multiple experts, extensive discovery involving hundreds of thousands of pages of documents, extensive briefing on several significant motions, and two separate multi-week trials.

### 1.     The hours requested are reasonable

The number of hours Washington hereby requests are reasonable. Exhibit A to the accompanying Chien Declaration contains the detailed time entries for which Washington seeks recovery. Washington has taken a series of steps to exclude hours and pare down its total fee request.

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

First, Washington reviewed time records submitted by attorneys who worked on this matter and has written off time that was arguably redundant, inefficient, or non-billable. Second, Washington eliminated considerable administrative work from these charges, including internal litigation meetings (eliminating approximately 220 hours), work with trial consultants (approximately 150 hours), and the attendance of attorneys at depositions or hearings for which they did not take the deposition or argue the merits (approximately 40 hours). Chien Decl. ¶ 7. Additionally, Washington does not seek any fees for Colleen Melody, who is the Division Chief of the Civil Rights Division, and significantly curtails its request regarding Patricio Marquez, who directly managed the litigation. Both worked on this case from beginning to end, attended the two trials, and contributed significantly to the outcome in this case. However, to avoid charging for work that may be considered duplicative, Ms. Melody is not included in this fee petition at all (approximately 899 hours) and Mr. Marquez's time coordinating work of the trial team members was significantly reduced (by approximately 380 hours).

Based on the above write-offs and others, Washington has excluded 3,337.3 hours for a fee reduction of $1,070,537.70. *Id.* ¶¶ 7–9. In sum, all of the time for which Washington seeks fees, listed in Exhibit A to the Chien Declaration, was reasonable and necessary for the investigation and litigation in this matter. Chien Decl. ¶ 18.

**2.     The hourly rates requested are reasonable**

Next, the Court must consider whether the hourly rates are reasonable. Under Washington law, an attorney's established rate for billing clients is usually the reasonable hourly rate for calculation of the lodestar. *Bowers*, 675 P.2d at 203–04. Courts routinely award fees using counsel's billing rates at the time of judgment rather than historical rates in fee-shifting litigation to compensate for the delay in payment. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991).

Here, the quality of the work performed by the attorneys, investigators and paralegals in this case was professional, appropriate, and the rates requested are reasonable. Washington's

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

investigation and litigation involved significant efforts from Assistant Attorneys General Marsha

Chien, La Rond Baker, Andrea Brenneke, Lane Polozola, Patricio Marquez; investigator Alma

Poletti; and paralegal Judy Tucker. The qualifications and billing rates for each are set forth below.

Assistant Attorney General Marsha Chien graduated from the University of

Pennsylvania Law School in 2010. Chien Decl. ¶ 11. After clerking for the Honorable Judge

Marsha J. Pechman of the United States District Court for the Western District of Washington,

Ms. Chien worked for Legal Aid at Work as a Skadden Fellow and later as a Staff Attorney,

where she handled complex civil litigation. *Id.* Ms. Chien served as lead counsel and is a

supervising attorney in the Civil Rights Division of the Washington Attorney General's Office

(AGO). *Id.* Ms. Chien's hourly billing rate is $377. *Id.* Washington seeks reimbursement for

2,426.15 hours of Ms. Chien's service at this rate. *See* Chien Decl., Ex. A.

Assistant Attorney General La Rond Baker graduated from the University of

Washington School of Law in 2010. Ms. Baker joined the AGO in 2017. Chien Decl. ¶ 12. Ms.

Baker served as lead counsel prior to her departure from the AGO in 2019. *Id.* Ms. Baker's

hourly billing rate is $377. Washington seeks reimbursement for 1,816.20 hours of Ms. Baker's

service at this rate. *See* Chien Decl., Ex. A.

Assistant Attorney General Andrea Brenneke is a 1992 graduate of Harvard Law School.

Chien Decl. ¶ 13. Prior to joining the AGO, Ms. Brenneke worked at MacDonald Hoague and

Bayless for over twenty years, where she handled complex litigation, including civil rights and

employment matters. *Id.* Ms. Brenneke's hourly billing rate is $439. *Id.* Washington seeks

reimbursement for 3,673.30 hours of Ms. Brenneke's service at this rate. *See* Chien Decl., Ex. A.

Assistant Attorney General Lane Polozola is a 2011 graduate of Harvard Law School.

Chien Decl. ¶ 14. Before joining the Attorney General's Office in 2019, Mr. Polozola completed

a clerkship for the Honorable Judge John C. Coughenour of the United States District Court for

the Western District of Washington and worked in private practice at Perkins Coie. Mr.

Polozola's hourly billing rate is $320. *Id.* Washington seeks reimbursement for 2,102.60 hours

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS
10
ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

of Mr. Polozola's service at this rate. *See* Chien Decl., Ex. A.

Assistant Attorney General Patricio Marquez is a 2003 graduate of Columbia University School of Law. Chien Decl. ¶ 15. Before joining the Attorney General's Office in 2014 and becoming a supervising attorney, Mr. Marquez was in private practice at Heller Ehrman and Morrison & Foerster LLP. Mr. Marquez's hourly billing rate is $417. *Id.* Washington seeks reimbursement for 577.90 hours of Mr. Marquez's service at this rate. *See* Chien Decl., Ex. A.

Alma Poletti is the senior investigator in the Civil Rights Division. Chien Decl. ¶ 16. Ms. Poletti's efforts in identifying and interviewing witnesses have been integral to the investigation and litigation of this case since its inception. *Id.* All fees Washington seeks for Ms. Poletti's time are for work that is legal in nature and done under the supervision of attorneys. *Id.* Ms. Poletti's hourly billing rate is $191. Washington seeks reimbursement for 499.4 hours of Ms. Poletti's service at this rate. *See* Chien Decl., Ex. A.

Judy Tucker is a Paralegal at the Attorney General's Office. Chien Decl. ¶ 17. All fees the State seeks for Ms. Tucker's time are for work that was legal in nature and done under the supervision of attorneys. *Id.* Ms. Tucker's hourly billing rate is $136. Washington seeks reimbursement for 1,791 hours of Ms. Tucker's service at this rate. *See* Chien Decl., Ex. A.

All of the above rates are reasonable. In fact, many—if not all—are below market rate. For example, Judge Pechman recently approved rates of $525 per hour for an attorney with fewer years of experience than Ms. Brenneke, for whom Washington's rate is only $439 per hour. *See, e.g., Goldstine v. Fed-Ex*, No. C18-1164, ECF No. 410 (W.D. Wash 2021). Similarly, while Washington seeks only $136 per hour for time spent by Ms. Tucker, in this district, paralegal hourly rates from $145 to $240 are considered reasonable. *Stewart v. Snohomish Cnty. PUD No. 1*, No. C16-0020-JCC, 2017 WL 4538956, at *1 (W.D. Wash. Oct. 11, 2017).

### 3. Washington is entitled to fees for litigating post-judgment motions, including this one

Finally, Washington requests fees incurred in preparing this fee petition and responding

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   to GEO's currently pending post-judgment motions. A prevailing party is entitled to recover fees

2   for work performed in preparing the motion for attorneys' fees itself. *Steele v. Lundgren*, 982

3   P.2d 619, 624 (Wash. Ct. App. 1999). As with fees for the underlying litigation, the amount of

4   a fee award for a fee petition is calculated using the lodestar method. *Camacho v. Bridgeport*

5   *Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). Washington may also recover reasonable attorneys'

6   fees incurred litigating a variety of post-judgment motions. *Torres-Rivera v. O'Neill-Cancel*, 524

7   F.3d 331, 340–41 (1st Cir. 2008). Washington will supplement this fee petition in reply to

8   include hours spent litigating post-judgment motions.

9   **C.     Washington Is Entitled to Costs**

10          Washington also is entitled to recover costs. The remedies provision of the MWA

11   provides that any employer who pays any employee less than the MWA "shall be liable … for

12   costs . . . *as may be allowed by the court*." Wash. Rev. Code § 49.46.090(1) (emphasis added).

13   In other words, a prevailing party is not limited to recovery of statutory costs. *See McConnell v.*

14   *Mothers Work, Inc*., 128 P.3d 128, 130–31 (Wash. Ct. App. 2006) (allowing costs for expert

15   witnesses; deposition transcripts not used at trial; travel expenses; mediation fees; ordinary office

16   expenses such as postage, phone, fax, copying, and so forth; and parking).

17          Here, Washington seeks $219,501.69 in litigation costs and expenses not itemized on AO

18   133, the baseline bill of costs form. Costs include technical assistance and equipment for the June

19   Zoom trial, expert witness fees, and travel costs incurred for depositions and trial. Brenneke

20   Decl. in Support of Mot. for Fees & Costs ¶¶ 2-11, Exs. 1-6. To the extent the Clerk of the Court

21   denies any of the items on AO 133, *see* Washington's Mot. to Tax Costs and Brenneke Decl. in

22   Support of Mot. to Tax Costs, Washington seeks recovery for those litigation costs and expenses

23   as part of this motion.

24                                      **CONCLUSION**

25          Washington requests that the Court find that the State's requested fees and costs are

26   reasonable and appropriate for this matter.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 18th day of November 2021 in Montgomery Village, Maryland.

 s/ *Caitilin Hall*
Caitilin Hall
Legal Assistant

STATE OF WASHINGTON'S MOTION FOR
ATTORNEYS' FEES AND COSTS