1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

STATE OF WASHINGTON,

                 Plaintiff,

    v.

THE GEO GROUP, INC.,

                 Defendant.

CIVIL ACTION NO. 3:17-cv-05806-RJB

**PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO THE GEO GROUP, INC.'S RULE 52 MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, AMENDMENT OF THE COURT'S ORDER**

NOTE ON MOTION CALENDAR:
December 3, 2021

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   BACKGROUND..................................................................................................... 1

III.  LEGAL STANDARD ............................................................................................ 1

IV.   ARGUMENT ......................................................................................................... 3

      A.   GEO Wrongly Challenges Factual Findings That Are Well Supported in the
           Record............................................................................................................ 3

           1.   VWP's continuity ................................................................................ 3

           2.   Purpose of VWP .................................................................................. 5

           3.   Misuse of detainee labor .................................................................... 7

           4.   GEO's deliberate ignorance ............................................................... 9

      B.   The Court's Unjust Enrichment Conclusions of Law Are Consistent with
           Washington's Unjust Enrichment Law and Principles of Equity ................ 10

           1.   Unjust Enrichment squarely applies to the facts as proven at trial and
                incorporates, but is different than, the Minimum Wage Act verdict and
                remedy in Phases I and II of the trial ............................................... 10

           2.   Adequate legal remedies at law were unavailable to Washington .... 13

           3.   GEO was unjustly enriched because detainee workers, like all workers,
                expect to be paid for work performed; GEO's voluntary work agreements
                that set their pay rate at $1/hour are void and against public policy ... 16

           4.   Washington properly brought its unjust enrichment claim under its
                *parens patriae* authority ................................................................... 19

      C.   The Court's Related Minimum Wage Act Conclusions of Law Are Consistent
           with Washington Law, the Court's Prior Rulings, and the Factual Record..... 21

      D.   The Court Referred to Prior and Correct Rulings Dismissing GEO's
           Derivative Sovereign Immunity Defense ................................................... 22

V.    CONCLUSION.................................................................................................... 24

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*,
   810 P.2d 12 (Wash. Ct. App. 1991).................................................................................... 11

*Becerra v. Expert Janitorial, LLC*,
   332 P.3d 415 (Wash. 2014) ............................................................................................... 22

*Challenge v. Moniz*,
   218 F. Supp. 3d 1171, 1180 (E.D. Wash. 2016)................................................................. 20

*Chandler v. Wash. Toll Bridge Auth.*,
   137 P.2d 97 (Wash. 1943) ................................................................................................. 11

*City of Seattle v. McKenna*,
   529 P.3d 1087 (Wash. 2011) ............................................................................................. 19

*Davis v. City of San Francisco*,
   890 F.2d 1438 (9th Cir. 1989) ............................................................................................. 2

*Ellenburg v. Larson Fruit Co.*,
   835 P.2d 225 (Wash. Ct. App. 1992) ................................................................................. 16

*Gonzales v. Police Dep't*,
   901 F.2d 758 (9th Cir. 1990) ............................................................................................... 6

*H.B.H. v. Washington*,
   429 P.3d 484 (Wash. 2018) ............................................................................................... 19

*Heaton v. Imus*,
   608 P.2d 631 (Wash. 1980) ............................................................................................... 18

*Hendryx v. Turner*,
   187 P. 372 (Wash. 1920) ................................................................................................... 18

*Hisle v. Todd Pac. Shipyards Corp.*, 9
   3 P.3d 108 (Wash. 2004) ................................................................................................... 18

*In re Det. of K.M.*,
   9 Wash. App. 2d 1058, 2019 WL 3064062 (Wash. Ct. App. July 11, 2019) ...................... 20

*Lumbermen's Underwriting All. v. Can-Car, Inc.*,
   645 F.2d 17 (9th Cir. 1980) ........................................................................................... 2, 6

*Lynch v. Deaconess Med. Ctr.*,
   776 P.2d 681 (Wash. 1989) ............................................................................................... 11

*Menocal v. GEO Grp., Inc.*,
   113 F. Supp. 3d 1125 (D. Colo. 2015)............................................................................... 12

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Menocal v. GEO Grp., Inc.,*
   882 F.3d 905 (10th Cir. 2018) ................................................................. 12

*Missouri ex. rel. Koster v. Harris,*
   847 F.3d 646 (9th Cir. 2017) ................................................................. 21

*Organized Village of Kake v. U.S. Dep't of Agric.,*
   795 F.3d 956 (9th Cir. 2015) ................................................................. 21

*Osborn v. Boeing Airplane Co.,*
   309 F.2d 99 (9th Cir. 1962) ................................................................. 17

*Paradise Valley Investigation & Patrol Servs., Inc. v. U.S. Dist. Court,*
   521 F.2d 1342 (9th Cir. 1975) ................................................... 15, 17

*Pullman-Standard v. Swint,*
   456 U.S. 273 (1982) ................................................................. 3

*Rayonier, Inc. v. Polson,*
   400 F.2d 909 (9th Cir. 1968) ................................................................. 2, 6

*Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.,*
   991 P.2d 1126 (Wash. 2000), *amended by* 1 P.3d 578 (Wash. 2000) ........................ 13, 17

*Simeonoff v. Hiner,*
   249 F.3d 883 (9th Cir. 2001) ................................................................. 2, 6

*Town Concrete Pipe of Wash., Inc. v. Redford,*
   717 P.2d 1384 (Wash. Ct. App. 1986) ......................................................... 14

*United States v. Alpine Land & Reservoir Co.,*
   697 F.2d 851 (9th Cir. 1983) ................................................................. 2

*Unt v. Aerospace Corp.,*
   765 F.2d 1440 (9th Cir. 1985) ................................................................. 2

*Vance v. Am. Haw. Cruises, Inc.,*
   789 F.2d 790 (9th Cir. 1986) ................................................................. 2, 6

*Young v. Young,*
   191 P.3d 1258 (Wash. 2008) ................................................... 11, 12, 15

### **Rules**

Fed. R. Civ. P. 52(a)(1) ................................................................. 2

Fed. R. Civ. P. 52(a)(6) ................................................................. 3

Fed. R. Civ. P. 52(b) ................................................................. 3

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# I.      INTRODUCTION

Having lost at trial, Defendant The GEO Group, Inc. (GEO) now moves to reverse the Court's unjust enrichment order and obtain judgment in its favor. ECF No. 637. GEO's motion ignores the overwhelming evidence presented at trial and the jury's two unanimous verdicts, as well as the Court's many findings of fact and conclusions of law that support the judgment in favor of Washington. GEO also repeats a series of legal arguments the Court has rejected in the past. There is no basis in the record or law to vacate Washington's judgment or enter judgment as a matter of law in GEO's favor. To the extent the Court determines supplemental findings of fact or conclusions of law would prove helpful as additional explanation to those provided in its UJE Order, Washington proposes some limited additional language below and in its proposed order filed herewith.

# II.      BACKGROUND

Following three weeks and three phases of trial, the Court issued its findings of fact and conclusions of law in favor of the State of Washington on its Unjust Enrichment claim. Trial Tr. Nov. 2, 2021 (UJE Order). In that Order, the Court adopted the parties' admitted facts from the pretrial order, ECF No. 579, that were issued to the jury in the preliminary jury instructions, ECF No. 582 at 18-21 (Instruction No. 15), as part of its own findings of fact. UJE Order at 4:5-9 (Admitted Facts). The Court also adopted the jury's unanimous verdicts from Phase I of trial, ECF No. 620 (Minimum Wage Act liability), and Phase II of trial, *Nwauzor* ECF No. 522 (Class MWA back wages), into its own findings of fact and conclusions of law. UJE Order at 10:8-11 ("It is my conclusion that the jury's two verdicts were well supported by the evidence, and I agree with those findings of the jury and with those verdicts and that is part of my Findings and Conclusions."). In accordance with the UJE Order, the Court entered an Amended Judgment in favor of Washington on November 4, 2021. ECF No. 633.

# III.      LEGAL STANDARD

Federal Rule of Civil Procedure 52(a)(1) requires the Court, in a bench trial, to "find the

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The rule specifically permits the district court to make its findings orally." *Davis v. City of San Francisco*, 890 F.2d 1438, 1451 (9th Cir. 1989). "The findings and conclusions may be stated on the record after the close of the evidence[,]" Fed. R. Civ. P. 52(a)(1), and "must be sufficiently comprehensive and pertinent to the issues," *Lumbermen's Underwriting All. v. Can-Car, Inc.*, 645 F.2d 17, 18 (9th Cir. 1980), "to aid the appellate court's understanding of the basis of the trial court's decision." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001). In other words, "findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 856 (9th Cir. 1983) (quotations omitted). "This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Simeonoff*, 249 F.3d at 891. *See also Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir. 1985).

There is no requirement that a Court affirmatively list all disputed evidence or "base its findings on each and every fact presented at trial." *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986).

> [T]he federal rule relating to findings of a trial court does not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient. Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence.

*Rayonier, Inc. v. Polson*, 400 F.2d 909, 923 (9th Cir. 1968) (citations omitted) (affirming the sufficiency of the trial court's findings which showed that "the trial court both considered and ruled on each of the affirmative defenses" and the appeals court was "able to determine the basis of the court's decision on each.).

"On a party's motion . . . the court may amend its findings—or make additional

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Findings of fact, whether based on oral or other evidence, will not be set aside "unless clearly erroneous," as reviewing courts give "due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982). "If a district court's findings rest on an erroneous view of the law, they may be set aside on that basis." *Pullman-Standard*, 456 U.S. at 287.

## IV.    ARGUMENT

### A.    GEO Wrongly Challenges Factual Findings That Are Well Supported in the Record

GEO incorrectly challenges four key factual findings made by the Court, but none of GEO's arguments have merit. The Court's findings are supported by ample evidence. As noted below, however, Washington does not oppose minor additions to the Court's findings in order to address concerns GEO raises and ensure a complete record for appeal. Each of GEO's arguments is addressed below.

#### 1.    VWP's continuity

GEO first takes exception to the Court's finding that:

> [T]here was no substantial change in the voluntary work program or in the way it operated from 2005, the time of the contract between GEO and ICE, until now. It is appropriate that we consider all of that time, not only the time from the start of this lawsuit in 2017.

UJE Order at 4:17-22 (cited by GEO at ECF No. 637 at 2). GEO criticizes the Court for only analyzing the terms of the ICE-GEO 2015 contract, Exhibit 129, and not the previous NWDC contracts, or the PBNDS Standards prior to 2011. ECF No. 637 at 2-3. But GEO's argument is a red herring, because the Court's finding simply goes to the continuity of the detainee Voluntary Work Program (VWP) as it pertains to Washington's state law claims and standards of proof. Washington met those standards by proving that GEO permitted detainees to work, subject to GEO's $1/day labor practice, throughout the entire period from 2005 to the present.

Overwhelming evidence, including facts that GEO itself agreed to, support the Court's finding that the VWP existed and operated with continuity since 2005. *See, e.g.* Agreed Fact No.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO GEO'S RULE 52 MOTION FOR JUDGMENT AS A MATTER OF LAW

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  2 ("Since October of 2005, GEO has contracted with . . . ICE . . . to provide civil immigration

2  detention management services[.]"); Agreed Fact No. 8 ("Since October of 2005, GEO has

3  offered detainees positions in its Voluntary Work Program."); Agreed Fact No. 16 ("GEO has

4  never paid detainees in the Voluntary Work Program the state minimum wage."). GEO's

5  compliance manager, Mr. McHatton, created the original detainee-worker job descriptions in

6  2005/6, which were used thereafter. Trial Tr. Oct. 13 (McHatton) at 177:13-185:25 and Exs. 83

7  (Cook/Prep/Server job description), 84 (Dishwasher job description), 85 (Laundry job

8  description), 88 (Barber job description), 89 (Barbershop Cleaner job description); 91 (Pod

9  Porter job description). *See also* Trial Tr. Oct. 14 (Henderson) at 202:16-203:15. Detainee-

10  worker quotas for the kitchen remained consistent after set in 2011, *id.* at 192:10-193:13, and

11  detainee-worker kitchen training orientation remained consistent over time. *Id*. at 197:1-19.

12  Finally, payment of detainee workers for work in the VWP reveals relatively consistent

13  details/shifts worked over time. Trial Tr. Oct. 19 (Hill) at 34:7-35:25; Ex. 269 (same).

14          To the extent GEO's objections to the Court's findings pertain to changes in the PBNDS

15  and what GEO was required to pay detainee workers, ECF No. 637 at 2-3, GEO's objections

16  also fail. As GEO itself agreed, GEO had the discretion to pay more than $1/day from 2005 to

17  the present. *See, e.g.*, Agreed Fact No. 15 ("GEO has the option to pay more than $1/day to

18  detainee-workers for work performed in the VWP at the Center."); Agreed Fact No. 18

19  ("Performance Based National Detention Standard 5.8 states: "Detainees shall receive monetary

20  compensation for work completed in accordance with the facility's standard policy. The

21  compensation is at least $1.00 (USD) per day."). Even under the former contracts, and the former

22  PBNDS standards, which did not contain the "at least" language, GEO was still required to abide

23  by state law and, importantly, actually *did* pay detainee workers more than $1 per day for work

24  performed. Trial Tr. Oct. 13 (Singleton) at 119:10-17, 121:12-20; Trial Tr. Oct. 14 (Henderson)

25  at 209:5-11; Ex. 115 at GEO-State 104148-49.

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Further, to the extent GEO now seeks to rely on the actual terms of the earlier contracts and PBNDS standards to support its defenses, GEO has only itself to blame for the evidence in the record, not the Court. GEO failed to introduce the prior contracts at trial (Pretrial Order, ECF No. 561-1, Exs. 202 and 203) or the prior PBNDS standards or to present any evidence of them. *See* ECF No. 632 (list of admitted exhibits).

If the Court were to supplement its findings on this point, it could add:

> There were no material changes to the operation of the Voluntary Work Program, or GEO's $1/day payment of detainee workers, between the time of the original ICE-GEO contract in 2005 to the present. Similarly, GEO had the discretion to pay detainee workers more than $1/day throughout this entire period and did, in fact, pay more than $1/day during periods covered by former PBNDS Standards and the prior ICE-GEO contracts.

**2.    Purpose of VWP**

GEO next faults the Court for not calling out specific language about the purpose of the VWP as set forth in the PBNDS, ECF No. 637 at 3. But GEO is wrong. The Court specifically explained that "[t]he purpose of the voluntary work program . . . is found in a couple of places in the standards and the contract. The standards provide that the purpose of the voluntary work program . . . is to provide detainees opportunities to work and earn money while confined . . . ." UJE Order at 6:12-20. This language is supported by the record and is included in the PBNDS itself. Ex. 127 at 405. In fact, the Court included a specific finding about the relevant contract provision by explaining that "[i]t is clear under the contract, GEO agreed to develop a detainee work program that is voluntary and *may include work or program assignments for industrial, maintenance, custodial service or other jobs.*" UJE Order at 6:21-24 (emphasis added); Ex. 129 at GEO-State 036906(ICE-GEO 2015 contract).

GEO nonetheless claims the Court failed to consider testimony related to enhancing essential operations and services through detainee productivity simply because the Court did not read into the record each and every "Expected Outcome" under the PBNDS. ECF No. 637 at 3. GEO incorrectly claims *Gonzales v. Police Department*, stands for the proposition that the Court

1   is required to "consider *all* of the disputed evidence in reaching its conclusion," and include

2   factual findings consistent with the non-prevailing party's case, ECF No. 637 at 2, 3. But under

3   Rule 52, the Court has no obligation to issue findings on every fact presented or considered.

4   *Vance*, 789 F.2d at 792; *Rayonier, Inc.*, 400 F.2d at 923. It need only include findings necessary

5   to show its analysis for purposes of review. *Lumbermen's*, 645 F.2d at 18; *Simeonoff*, 249 F.3d

6   at 891. And in *Gonzales*, the Ninth Circuit set aside the trial court's findings not because of the

7   sufficiency of the factual findings, but based upon *errors of law,* and remanded with direction to

8   the district judge to consider all the relevant evidence, and only that evidence. 901 F.2d 758, 759

9   (9th Cir. 1990).

10      Here, GEO is wrong to say consideration of the "enhance the essential operations" goal

11  "compels a different result." ECF No.637 at 3. It does not. The objective of "improving essential

12  services" is not synonymous with performing substantial portions of the core work required of

13  GEO under the contract—all the janitorial services in the secure areas, much of the meal services,

14  all of the barbershop services, and much of the laundry–as the evidence in the record reveals.

15  GEO management decided where to assign detainees to work, not the ICE-GEO contract. Trial

16  Tr. Oct. 13 (Singleton) at 128:5-15. GEO assigned about 30 detainee workers per meal shift in

17  the kitchen of approximately 4 hours and about 10 on graveyard cleaning shift. *Id.* at 104:3-

18  105:1. The GEO staff cooks could "absolutely not" run the serving line in a timely way without

19  detainee workers. Trial Tr. Oct. 14 (Griffin) at 142:16-23.

20      In addition, about five laundry workers on each of two separate shifts worked 5-6 hours.

21  Trial Tr. Oct. 13 (Singleton) at 105:2-17, and female detainees work folding laundry in unit. *Id.*

22  *at* 106:16-107:3. *See also* Trial Tr. Oct. 15 (Tracy) at 123:21-125:13 (GEO Officer stating he

23  worked in laundry side-by-side with 1-4 detainee workers, with detainee-worker shifts that last

24  about four hours).

25      Other detainee worker assignments are also time consuming and difficult. *See, e.g.*, Trial

26  Tr. Oct. 15 (Tracy) at 120:7-122:2 (detainee-worker assignments of cleaning, stripping, waxing

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    and buffing floors required longer shifts, and took him 3.5-4 hours when he did it); Trial Tr. Oct.

2    15 (Johnson) at 139:2-140:1 (supervised floor waxing and buffing that took detainee workers

3    between 2-5 hours); 150:15-151:16 (listing pod work done by detainee workers as important and

4    needed to be done to keep it clean); Trial Tr. Oct. 13 (Singleton) at 105:18-22 (ten detainees

5    assigned to barbershop Monday-Friday).

6        It is undisputed that GEO's staff labor costs are its largest expense at the NWDC. Trial

7    Tr. Oct. 21 (Evans) at 174:21-175:8 (labor is 60% of costs); Trial Tr. Oct. 19 (Hill) at 11:20-

8    12:20; Ex. 253 (NWDC financial statement). Record evidence of GEO's overall staffing plans

9    reveals that its heavy reliance on large numbers of underpaid detainee workers compares with

10   extremely lean staffing by GEO employees hired from the community. *See* Trial Tr. Oct. 19

11   (Hill) at 30:18-33:4 (GEO staffing reflects thirteen kitchen staff, three janitors for the non-secure

12   areas, and 2.4 detention officers assigned to laundry); Trial Tr. Oct. 19 (Evans) at 59:9-14 (GEO

13   estimate: it would take 85 employees from the community to replace detainee workers).

14       In short, the Court's UJE Order is well supported by the evidence. Should the Court

15   consider supplementing its UJE Order, however, Washington offers the following language in

16   the enclosed proposed order:

17       The findings and conclusions in this Order related to the PBNDS, the purposes
         of the VWP, and the provisions of GEO's contract are included as part of my
18       evaluation of the equities of Washington's Unjust Enrichment claim.

19   **3.    Misuse of detainee labor**

20       GEO takes issue with the Court's finding that it "misused" detainee labor at the NWDC,

21   claiming there was no evidence to suggest work in the kitchen was "to be performed exclusively

22   by GEO staff, without the assistance of detainees." ECF No. 637 at 4. But GEO misstates the

23   Court's actual finding:

24       It is my conclusion from all the evidence in the case that GEO, by ignoring the
         Minimum Wage Act and misusing the detainee labor to do core work that was
25       required of GEO under the contract and that they were not to be doing under the
         contract, that GEO profited and continued to violate the Minimum Wage Act by
26       paying the minimum of only one dollar a day.

UJE Order at 9:24-10:5. The record is filled with evidence to support the Court's finding that GEO misused detainee labor. It is undisputed that the core services GEO provides to ICE under the contract includes "clean and vermin free facilities, food service . . . , clean uniforms and bedding, and barbershop/grooming services," Agreed Fact No. 4, and that VWP positions include work providing those very core services "in the kitchen, in the laundry room, cleaning of common areas, and cutting hair in the barbershop." Agreed Fact No. 13.

There is also testimony to support the Court's finding that GEO misused detainee workers. GEO had detainees do work that GEO employees themselves testified employees, and only employees, were responsible for doing. *Compare* Testimony of Food Service Manager, Trial Tr. Oct. 19 (Henderson) at 132:1-142:9 and Ex. 29 (GEO staff are responsible for meeting PBNDS standards to provide nutritional food services in a sanitary and hygienic operation, detainee workers are "absolutely not" responsible); *id.* at 147:9-17 (three cook supervisors in each of the morning and afternoon shifts have responsibilities to perform PBNDS requirements, detainee workers do not); 147:23-25 (detainees don't perform any GEO staff duties in the kitchen); 167:2-10 (detainee workers don't prepare food or follow recipes, only assist GEO staff); Trial Tr. Oct. 14 (Henderson) 195:7-24 (detailed kitchen cleaning schedule is for GEO staff, detainee workers just assist) *with* testimony of former GEO Cook Supervisor, Trial Tr. Oct. 14 (Griffin) at 130:22-131:20 (detainees did cook during breakfast shifts); 135:1-2, 146:9-25 (detainees cleaned walk in oven and deep cleaned kitchen).

Finally, GEO also claims the Court was required to read all portions of the GEO-ICE contract terms in harmony, and argues that there is no contractual limit on where the detainees work or the type of work they could perform. ECF No. 637 at 4-5. But such arguments are misplaced and irrelevant to Washington's claims, which don't hinge on interpretation of the contract, but on Washington law.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO GEO'S RULE 52 MOTION FOR JUDGMENT AS A MATTER OF LAW

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

**4.      GEO's deliberate ignorance**

GEO's next complaint is that the Court found there to be "no information in the record that indicates that particular labor law, the Minimum Wage Act, should not apply." ECF No. 637 at 5. But GEO's complaint is unfounded. The Court based its decision on ample evidence in the record and the lack of credibility GEO's witnesses had when stating, point blank, that they didn't think the MWA was applicable.

In particular, the Court adopted the jury's verdict that the MWA applies to detainee labor,. Additional evidence also supports the Court's findings that GEO's own contractual provisions put GEO on notice that it was required to comply with applicable State and local labor laws, including the Minimum Wage Act, UJE Order at 7:4-8:25. *See also* Ex. 129 at GEO-State 036868, GEO-State 036876, GEO-State 036906. Relatedly, the Court found that "[i]t is clear from the agreed facts that GEO could pay more regardless of that reimbursement rate." UJE Order at 9:1-6; Agreed Fact No. 15. Finally, the Court made a credibility determination that the testimony of GEO's own "witnesses who opined that the Minimum Wage Act was not applicable was not believable. I think they came to that conclusion for reasons other than the merits that were to be considered under the terms of the contract." UJE Order at 8:21-25. Based on this substantial evidence, the Court found GEO chose to be "deliberately ignorant" about the applicability of the MWA. UJE Order at 12:23-13:5.

Although GEO cites testimony that L&I never gave GEO notice that the MWA applied, ECF No. 637 at 5, notice is nowhere required for the MWA to be applicable. In other words, ignorance of the law is no defense. GEO's citations to Bruce Scott's suggestion that ICE told him that the MWA did not apply is self-serving, based on pure hearsay, and irrelevant because ICE does not determine whether or how Washington law applies.

Substantial evidence in the record supports the Court's conclusion that the reimbursement rate GEO agreed to with ICE and the rate of pay GEO is required to pay detainee workers are different. For example, Mr. Hill testified at length to the fact that this is just an a

1   matter of accounting, and that historically GEO has paid detainee wages in excess of the

2   reimbursement received and simply treated that as an additional expense and reduction of GEO's

3   margin.  Trial Tr. Oct. 19 (Hill) at 37:10-39:17; Ex. 262

4          GEO further claims that the reimbursement rate reflects the intention of the parties under

5   the ICE-GEO contract and that it is unreasonable that a federal contract would agree to fund

6   millions of dollars in detainee wages without reimbursement to the contractor. ECF No. 637 at

7   6-7. But the record reveals substantial evidence to the contrary. GEO could pay more than the

8   reimbursement rate of $1/day, Agreed Fact 15, and did pay $5/day during work stoppages, but

9   GEO chose not to increase the standard rate of pay because "[t]he more that they pay them, the

10  less money that they make." Trial Tr. Oct. 13 (Singleton) at 134:13-136:10 and Ex. 14. Further,

11  GEO's executives testified that amendments to the ICE-GEO contract were possible and that

12  they were sure ICE would reimburse GEO for higher detainee wages if GEO had to pay them

13  after appeal. Trial Tr. Oct. 21 (Evans) at 187:11-188:12. Finally, it is not absurd to imagine that

14  GEO would submit a bid with low wage estimates, obtain the lucrative federal contract, and then

15  roll the dice and hope the MWA would not be enforced, because by its own admission, GEO

16  would still have made millions of dollars in profit, over its anticipated 10% profit margin, if

17  GEO had paid detainee workers the minimum wage. Trial Tr. Oct. 19 (Evans) at 57:24-58:17

18  (GEO estimated $3.4 million to pay detainee workers minimum wage in 2018); 60:9-61:5

19  (GEO's NWDC gross margin in 2018 was $18.6 million so gross profits still would have been

20  over $15 million if GEO paid minimum wage). *See also* Trial Tr. Oct. 19 (Hill) at 20:4-21:8;

21  25:21-24 (10% anticipated net profit margin built into contract pricing).

22
23  **B.    The Court's Unjust Enrichment Conclusions of Law Are Consistent with Washington's Unjust Enrichment Law and Principles of Equity**

24          **1.    Unjust Enrichment squarely applies to the facts as proven at trial and incorporates, but is different than, the Minimum Wage Act verdict and remedy in Phases I and II of the trial**
25
26          GEO argues that unjust enrichment is "inapplicable" because it applies only insofar as

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

the MWA applies. ECF No. 637 at 7.[1] But GEO is wrong to conflate the two claims. First, as the Court knows, unjust enrichment occurs "when one retains money or benefits which in justice and equity belong to another." *Bailie Commc'ns*, *Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991). The three elements of an unjust enrichment claim under Washington law are general and in no way depend upon proof of a minimum wage violation: (1) the defendant receives a benefit; (2) the defendant obtained and appreciated that benefit at the plaintiff's expense; and (3) the circumstances make it unjust for the defendant to retain the benefit. *See Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). *See also Lynch v. Deaconess Med. Ctr.*, 776 P.2d 681, 683 (Wash. 1989); *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 102 (Wash. 1943) (quoting *Restatement (First) of Restitution* § 1(c) (1937)). As such, unjust enrichment does not hinge on whether GEO also violated the MWA—though, of course, GEO's decade-plus practice of paying subminimum wages certainly supports the unjust nature of GEO's conduct.

Here, the Court correctly set forth the legal standard and three elements of an unjust enrichment claim, UJE Order at 11:18-12:2, and entered findings of fact and conclusions of law that supported each element. The Court concluded that: 1) "GEO received the benefit of failure to pay the minimum wage . . . for many years"; 2) GEO was aware of this benefit it was receiving, in that "GEO knew or should have that payment under the Minimum Wage Act should have been made and considered"; and 3) "yes," it is "unfair for GEO to retain the benefit." UJE Order at 12:3-14.

GEO nonetheless claims the Court "found that unjust enrichment applies in this case *only* insofar as the MWA is applicable to this case," characterizing the Court as having ruled that Washington's success on the unjust enrichment claim is impossible without its previous success under the MWA. ECF No. 637 at 7. But the Court made no such ruling. Instead, the Court

---

[1] While not necessary for the unjust enrichment claim, the "applicability" of the MWA is clear; the findings and jury verdict are well supported in the evidence, as set forth in Washington's Response to GEO's Renewed Motion for Judgment as a Matter of Law. *See* ECF No. 650 at 6-12, 18-21.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  incorporated the unanimous jury verdict and findings related to the MWA as a part of its findings
2  on unjust enrichment.

3      And the Court got it right: Washington's unjust enrichment claim is separate and distinct.
4  Although the claim may arise out of a common nucleus of facts, none of the elements of an
5  unjust enrichment claim requires proof of a MWA violation as it is independent of any state
6  statute or contract and "is founded on notions of justice and equity." *Young*, 191 P.3d at 1263.
7  "Unjust enrichment is the method of recovery for the value of the benefit retained absent any
8  contractual relationship because notions of fairness and justice require it." *Id.* at 1262.

9      Other courts handling detainee wage claims against GEO also have recognized that
10  claims for unjust enrichment exist where statutory claims did not. For example, the district court
11  that addressed similar claims brought by Colorado immigration detainees against GEO
12  dismissed the GEO detainees' minimum wage act claim because of the narrow purpose of the
13  Colorado statute, but refused to dismiss the plaintiffs' unjust enrichment claim. *Menocal v. GEO*
14  *Grp., Inc*., 113 F. Supp. 3d 1125, 1133 (D. Colo. 2015). In so doing, the court noted that "the
15  remedies sought by the [minimum wage] claim and the unjust enrichment claim are different,
16  and the unjust enrichment claim is not duplicative." *Id.*; *see also Menocal v. GEO Grp., Inc*.,
17  882 F.3d 905, 925-26 (10th Cir. 2018) (upholding unjust enrichment class action brought by
18  detainee workers against GEO). In short, GEO's practices were unjust, and GEO cannot avoid
19  liability simply by trying to conflate unjust enrichment and the MWA.

20      If the Court were to supplement its findings, Washington proposes the following to make
21  clear its independent findings on this claim:

22      The Court also finds, independent of the MWA, that Washington proved all three
23      prongs of Unjust Enrichment in this case: 1) GEO benefitted from detainee labor
        both operationally and financially, as that work fulfilled core services that GEO
24      agreed to perform under its contract with ICE and GEO was paid for; 2) GEO
        was aware of the benefit conferred on it by detainee workers, recognized it as
25      'meaningful and valuable,' and GEO itself created the detainee job descriptions,
26      assigned detainees to particular jobs that needed to get done, and supervised their

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

work to ensure they performed satisfactorily; and 3) it is unjust for GEO to have paid them only $1/day from October 2005 to present and retain the benefit of that labor while paying inadequate wages.

### 2.    Adequate legal remedies at law were unavailable to Washington

GEO next raises a legal challenge that Washington's unjust enrichment claim is unavailable because "adequate legal remedies exist" in the form of detainee MWA back wage claims, including those actually brought by the Plaintiff Class of detainee workers, or those that could have been brought by detainee workers or by Washington on their behalf prior to 2017. ECF No. 637 at 8-9. This argument fails given the broad harms that Washington seeks to redress in bringing its unjust enrichment legal claim.

GEO ignores the harm caused by its $1/day practice to all of the people of the State of Washington that were not detainee workers, and therefore have no legal remedies under the MWA, on whose behalf Washington brings its claim. The Court long ago recognized Washington's broad interests and *parens patriae* authority in bringing this case:

> Plaintiff's quasi-government interest falls under the health and well-being category to protect Washington workers, which includes both detainee-workers and Washington resident-workers, . . . and to encourage employment opportunities within the state . . . , whereas Defendant's alleged failure to observe the State minimum wage has allegedly enriched Defendant at the expense of detainee-workers and Washington resident-workers.

ECF No. 29 at 12-13 (internal citations and quotations omitted).

The legal authority GEO cites to negate Washington's unjust enrichment case simply stands for the proposition that a party cannot bring an equitable unjust enrichment claim if that same party has a valid and adequate claim at law. ECF No. 637 at 8. But that rule has no applicability where alternative legal claims are either incomplete or inadequate. *See Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000), *amended by* 1 P.3d 578 (Wash. 2000) ("Incompleteness and inadequacy of the legal remedy are what determine the right to the equitable remedy of injunction[.]") (quoting *Phelan v. Smith*, 61 P. 31, 32 (Wash. 1900));

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  *Town Concrete Pipe of Wash., Inc. v. Redford*, 717 P.2d 1384, 1387 (Wash. Ct. App. 1986)
2  ("Equitable relief is available if there is no adequate remedy at law.").

3       Here, the MWA legal claim is inadequate in that it is available only to employees,
4  whereas Washington's unjust enrichment claim seeks to redress harms to and economy, as well
5  as to non-detainee workers, including workers in Pierce County who missed out on job
6  opportunities because of GEO's decision to employ detainees. From the very first filing in this
7  case, Washington made clear that it sought to redress harms to the labor market and to "protect
8  Washington workers," including both detainee workers and non-detainee workers in Pierce
9  County, as well as "Washington's economic health." *See* Complaint, ECF No. 1-1, ¶¶ 3.3, 3.4,
10  3.5. Washington has consistently highlighted this broad interest, in defending its right to bring
11  this claim against GEO's Motion to Dismiss, ECF No. 17 at 17, and in presenting evidence and
12  argument at trial. *See, e.g.*, Trial Tr. Oct. 13 (opening) at 30:16-22, Trial Tr. Oct. 19 (Gard) at
13  114:9-19, Trial Tr. Oct. 26 (closing) at 60:1-7.

14       Here, in issuing its findings, the Court recognized this and properly found that detainee
15  workers, and the *Nwauzor* class in particular, are only "part of the State's representation of those
16  harmed by failure to pay the minimum wage. They are, along with all the *other people* protected
17  by the Minimum Wage Act, part of who the State has brought this case on behalf of." UJE Order
18  at 10:18-25. The Court also found "[t]here is a legal remedy to that extent that the jury has
19  already ruled on, but there are the rest of the people protected by the Minimum Wage Act for
20  whom there is no legal remedy." UJE Order at 11:1-4. Indeed, only employees can bring the
21  MWA claims for back wages, not those deprived of jobs or harmed by the effect of GEO's
22  practices on the economy. This includes detainee workers prior to 2014, Tacoma area workers
23  who need work and would welcome the 85 steady, good paying jobs that would be available if
24  GEO did not rely on its captive pool of underpaid detainee labor, Trial Tr. Oct. 19 (Gard) at
25  114:9-19; Trial Tr. Oct. 19 (Evans) at 59:9-14.

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Here, Washington sought and obtained injunctive relief that GEO must pay the State minimum wage to detainee-workers in the VWP, as it has been constituted, moving forward. ECF No. 1-1, ¶¶ 7.1, 7.2, ¶7.4; UJE Order at 17:16-24. By comparison, the plaintiffs in the Private Class Action could not and did not seek injunctive relief, because the vast majority were no longer detained or employed. In addition, Washington sought and obtained equitable relief through its unjust enrichment claim to disgorge GEO's unjust enrichment from the past failure to adequately pay detainees, Complaint, ECF No. 1-1 ¶¶ 7.5, 7.6, as a way to deter GEO's unlawful conduct and eliminate the incentive to violate Washington law. In similar law enforcement claims with a deterrence objective, recovery beyond just statutory damages that would have been owed to workers is well recognized as a legitimate approach to serve the purpose of deterrence. *See also SEC. v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993) (noting SEC "seeks disgorgement in order to deprive the wrongdoer of his or her unlawful profits and thereby eliminate the incentive for violating the . . . laws. The theory behind the remedy is deterrence and not compensation."); *Paradise Valley Investigation & Patrol Servs., Inc. v. U.S. Dist. Court*, 521 F.2d 1342, 1342-43 (9th Cir. 1975) (government's enforcement action under federal labor law seeking injunctive relief and disgorgement of illegally withheld overtime wages is "a suit in equity" to "vindicate a public, rather than a private, right").

Finally, the cases cited by GEO to support its proposition that "where all the party seeks are statutory damages, the relief is purely legal and cannot sound in equity," are inapposite. *See* ECF No. 637 at 8 (quoting *Clark v. Eddie Bauer LLC*, No. C20-1106-JCC, 2021 WL 1222521, at *4 (W.D. Wash. Apr. 1, 2021)). In *Young,* the Washington Supreme Court explicitly held that the remedy for "unjust enrichment" may be determined by either the fair market value of the services rendered or the enhanced value to the defendant, measured by calculating the full value of the benefit received. 191 P.3d at 1265. From the outset, Washington never sought statutory damages, but sought disgorgement of all the benefits GEO retained from it $1/day practice. *See* Complaint ECF No. 1-1 ¶¶ 7.5-7.6. At trial, Washington presented evidence of benefits GEO

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

retained that are separate and distinct from withheld detainee worker back wages, including GEO's avoidance of paying Tacoma area workers prevailing wages, FICA, and interest. Trial Tr. Oct. 29 (Nickerson) at 47:16-55:3, 58:5-60:14.

At GEO's urging and in its exercise of discretion and balancing of equities, the Court itself decided to value GEO's unjust enrichment based on the lower, minimum wage rates. UJE Order 14:22-15:6. The Court also decided to avoid imposing a penalty on GEO, or any appearance of "double recovery" against GEO, by setting off from Washington's unjust enrichment award that would have been $23 million, the $17.2 million awarded to the Plaintiff Class, for a net award of $5.9 million. UJE Order at 16:16-25. By exercising its equitable powers, the Court in no way undermined the validity of the unjust enrichment claim Washington brought in the first place and proved at trial, nor did it undercut Washington's right to obtain remedies beyond MWA remedies as part of its recovery on behalf of all Washingtonians.

### 3. GEO was unjustly enriched because detainee workers, like all workers, expect to be paid for work performed; GEO's voluntary work agreements that set their pay rate at $1/hour are void and against public policy

GEO's next two arguments are that unjust enrichment is unavailable where there is "no unmet expectation of payment held by the party bestowing the benefit[,]" and because "[n]othing in the record even hints that participants in the VWP had any expectation of payment beyond $1 per day," the amount set forth in the VWP Agreements that GEO requires detainee workers to sign. ECF No. 637 at 9-10. But GEO is wrong factually and as a matter of law.

The fact that detainee workers sign a VWP Agreement does not foreclose Washington's unjust enrichment claim, or convert a worker into a "mere volunteer" as claimed by GEO. ECF No. 637 at 10 (quoting *Lynch v. Deaconness Medical Center*, 776 P.2d 682, 683 (Wash. 1989)). In the unjust enrichment context, "volunteer" status is determined in light of "all surrounding circumstances." *Ellenburg v. Larson Fruit Co.*, 835 P.2d 225, 251-52 (Wash. Ct. App. 1992) (internal citations omitted). And an established expectation of payment will defeat a defense of

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

voluntariness. *Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 102 (9th Cir. 1962) (quasi-contract action available under Washington law unless "it is clear that there was indeed no expectation of payment").

Here, the totality of the circumstances would justify an unjust enrichment claim. The overwhelming evidence in the record proves that detainee workers are not "volunteers" who had "no expectation of payment." As an initial matter, detainee workers expected compensation— even GEO's VWP agreement clarifies that individuals work in exchange for compensation. Although GEO may have limited wages to $1 per day, the question of voluntariness does not turn on whether the workers acquiesced in the precise *amount* of payment, but rather on whether the workers expected payment *at all*. *Osborn*, 309 F.2d at 103 (unjust enrichment theory will only be foreclosed where facts demonstrate there is "indeed no expectation of payment, that a gratuity was intended to be conferred, that the benefit was conferred officiously, or that the question of payment was left to the unfettered discretion of the recipient"). As detainee workers testified at trial, they chose to work for the money, which they needed to stay in touch with loved ones and supplement the limited food and personal hygiene rations they receive. *See, e.g.*, Trial Tr. Oct. 18 (Marquez) at 76:12-77:14 (worked to buy food, save for surgery and pay legal costs); Trial Tr. Oct. 15 (Nwauzor) at 92:7-17; 97:3-8 (worked to pay for calls to brother, get documents, buy food from commissary); Trial Tr. Oct. 19 (Sotelo-Gomez) at 78:1-17 (worked to buy food, soaps and underwear, call children). They were not volunteers; they were employees who worked in exchange for wages, albeit unfair and unjustly low wages.

In addition, the VWP agreements are void as a matter of law.  It was GEO that required detainees to sign the VWP agreement and accept the $1/day wage rate or not work at all, Trial Tr. Oct. 20 (Henderson) at 50:5-8, which violated the MWA prohibition against contracting out of statutory wage rates. *Seattle Pro. Eng'g Emps. Ass'n*, 991 P.2d at1129-30 (Washington law creates "nonnegotiable, substantive rights regarding minimum standards for . . . payment of wages") (citing *United Food & Commercial Workers Union Local 1001 v. Mut. Benefit Life Ins.*

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Co.*, 925 P.2d 212, 214-15 (Wash. Ct. App. 1996)). While employers can negotiate pay rates above the minimum wage, "employees and employers may not bargain away these minimum requirements." *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 112 (Wash. 2004).

Because the VWP agreements cannot, as a matter of law, constitute valid contracts, an action in equity, like Washington's unjust enrichment claim, is the exact mechanism to challenge GEO's unjust benefit. *See, e.g.*, *Heaton v. Imus*, 608 P.2d 631, 632-33 (Wash. 1980) (recovery to be granted on the basis of quasi contract to prevent unjust enrichment following finding that there was no enforceable contract between the parties); *Hendryx v. Turner*, 187 P. 372, 374 (Wash. 1920) (remanding for trial on implied contract where no legal or binding contract between the parties existed related to care for child).

In addition, as a factual matter, GEO ignores the obvious: The class-action lawsuit was filed against GEO in 2017 expressing the detainee workers' expectation of pay at the minimum wage rate. *See Nwauzor* ECF No. 1, ¶¶ 4.1-4.12, 6.1-6.4. In addition, testimony from GEO staff and detainee workers established that detainees worked for additional compensation beyond $1 per day, such as: additional food, Trial Tr. Oct. 14 (Henderson) at 194:15-195:1, sack lunches for night cleaning, Trial Tr. Oct. 15 (Henderson) at 9:11-10:6, and $2 or $5 per day when detainee-worker numbers were low, Trial Tr. Oct. 14 (Henderson) at 209:5-19; Trial Tr. Oct. 13 (Singleton) at 121:12-20, 121:21-125:2; Ex. 115. Finally, detainee workers who engaged in work stoppages, as well as GEO staff who engaged in advocacy to increase pay beyond $1 per day, did seek fair wages. *See* Trial Tr. Oct. 13 (Singleton) at 120:8-121:11 and Ex. 69 (June 2011 meeting in which Classification Officer Singleton explored incentives beyond $1/day for kitchen and laundry detainee workers who had longest shifts, most amount of work, and most turnover); Trial Tr. Oct. 13 (Singleton) at 134:16-135:11 and Ex. 14 (2012 memo written to address increase rate of pay for detainee workers). In short, detainees worked hard for their money and the expectation of payment motivated their work.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

2

#### 4.      Washington properly brought its unjust enrichment claim under its *parens patriae* authority

GEO next makes an additional three arguments that Washington doesn't have *parens patriae* authority to bring this claim, ECF No. 637 at 10-12, all of which lack legal foundation.

First, GEO argues Washington is unable to show that Washington itself conferred a benefit on GEO. ECF No. 637 at 10. As this Court recognized long ago, and again in its findings described above in Section IV.B.2, Washington is not suing for damages on behalf of itself, but to protect the health, safety, and well-being of its residents. ECF No. 29 at 12-13. As *parens patriae*, Washington need not show that Washington itself conferred a benefit on GEO, but only that *its state residents*, which include detainee workers, conferred a benefit on GEO. *Id.*

Second, GEO claims Washington's *parens patriae* powers are restricted to the protection of children, incapacitated adults, and people "qualified for citizenship in Washington." ECF No. 637 at 10-11. In fact, Washington's broad *parens patriae* powers are unrestricted. The Attorney General brings suit pursuant to his own authority under Wash. Rev. Code § 43.10.030(1). ECF No. 1-1, ¶ 2.1. As the Washington Supreme Court held, Wash. Rev. Code § 43.10.030(1) grants the Attorney General "discretionary authority to act in any court, state, or federal, trial or appellate, on 'a matter of public concern' provided that there is a 'cognizable common law or statutory cause of action.'" *City of Seattle v. McKenna*, 529 P.3d 1087, 1093 (Wash. 2011) (citation omitted). Because this claim is brought under Washington's common law to address GEO's engagement in unfair labor practices for over a decade and is a matter of public concern, Washington wields clear authority to enforce state law and to assert its quasi-sovereign interest in the health and well-being of all of its residents.

The cases cited by GEO recite simply that Washington has *parens patriae* authority to protect children and incapacitated adults, but they don't limit Washington's authority to those groups. *See H.B.H. v. Washington*, 429 P.3d 484, 489 (Wash. 2018) (acknowledging that in addition to parents, "the State has an equally compelling *parens patriae* interest in protecting the

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   physical, mental, and emotional health of children in this state."; *In re Det. of K.M.*, 9 Wash.

2   App. 2d 1058, 2019 WL 3064062, at *3 (Wash. Ct. App. July 11, 2019) (observing that the State

3   has a legitimate interest under its *parens patriae* powers "in providing care to those who are

4   unable to care for themselves" in a case related to involuntary commitments). Indeed,

5   Washington has broad *parens patriae* authority Washington to bring actions on behalf of all

6   current and future workers in the State of Washington, which in this case include both immigrant

7   detainees and Tacoma-area workers who are not immigrants. "[I]f the health and comfort of the

8   inhabitants of a [s]tate are threatened, the [s]tate is the proper party to represent and defend

9   them." *Challenge v. Moniz*, 218 F. Supp. 3d 1171, 1180, 1182 (E.D. Wash. 2016) (quoting

10  *Missouri v. Illinois*, 180 U.S. 208, 241(1901)) (finding *parens patriae* standing to protect worker

11  safety throughout Washington and future Hanford workers in RCRA environmental litigation).

12  GEO cites no case for the proposition that its *parens patriae* authority somehow is limited to

13  representing the subcategory of Washingtonians who have U.S. citizenship or permanent

14  residency in Washington, and the authority it does cite relates to voting rights or eligibility for

15  public benefits, both of which are unrelated to the claims here. *Cf.* ECF No. 637 at 11-12.

16      Since detainee workers undoubtedly enriched GEO while they resided at the NWDC in

17  Tacoma, their interests are core interests that Washington represents in this case. While some of

18  the detainees were brought to the NWDC and Washington State from elsewhere, many of the

19  detainees had lived permanently in Washington for years before their detention, intended to live

20  in Washington after they were released, and in fact still remain in Washington. *See, e.g.*, Trial

21  Tr. Oct. 18 (Marquez) at 62:23-24 (lives in Washington), 77:15-78:1 (released and works as

22  painter in Washington); Trial Tr. Oct. 19 (Gomez Sotelo) at 70:20-22 (lived in Washington for

23  22 years and still does); Trial Tr. Oct. 15 (Nwauzor) at 89:9-90:13 (presented himself at U.S.

24  border and sought asylum); 97:9-99:17 (granted asylum and works in downtown Seattle hotel).

25  The injustice visited upon them, and others like them, accrued to GEO's benefit and supports a

26  finding in favor of Washington on its unjust enrichment claim.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Third, GEO argues that the State cannot exercise its *parens patriae* authority on behalf

of those who may seek relief themselves, citing *Missouri ex. rel. Koster v. Harris* and *Organized*

*Village of Kake v. U.S. Department of Agriculture*. ECF No. 637 at 12. But *Missouri ex. rel.*

*Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017), and *Organized Village of Kake v. U.S.*

*Department of Agriculture*, 795 F.3d 956, 977-78 (9th Cir. 2015), only cement Washington's

*parens patriae* standing in this case. In *Missouri*, the Ninth Circuit held six states lacked standing

to challenge a California law where, unlike here, it was unclear whether the California law would

impact the plaintiff states' residents at all. *Missouri*, 847 F.3d at 651. In *Kake*, the Ninth Circuit

held the State of Alaska had an injury in fact sufficient to give it Article III standing to bring an

APA environmental appeal and seek to uphold agency action reversing application of the

"Roadless Rule" to the Tongass National Forest. 795 F.3d at 965. Notably, GEO cites the non-

binding dissent in that case for the notion that Alaska lacked *parens patriae* authority to bring

the claims it did, for failing to establish it had interests separate from those of private parties.

ECF No. 637 at 12. ). In this case, the Court recognized long ago that to maintain a *parens patriae*

action, "the State must articulate an interest apart from the interest of particular parties, i.e., the

State must be more than a nominal party," ECF No. 29 at 13 (quoting *Alfred L. Snapp & Son,*

*Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982)), and held that "the State is more than a nominal

party, because its alleged interests extend beyond the individual interest of the parties." *Id*. In

the UJE Order, the Court again found and affirmed that the State's *parens patriae* interests

include, but are broader than, the members of the *Nwauzor* class. UJE Order at 10:12-11:6.

### C. The Court's Related Minimum Wage Act Conclusions of Law Are Consistent with Washington Law, the Court's Prior Rulings, and the Factual Record

In its findings and conclusions, the Court highlighted a basic overview of Washington's

wage laws, explaining that "[e]verybody in the State, if they permit people to work, is obligated

to pay the minimum wage." ECF No. 637 at 12-14. GEO takes exception to that statement as an

incorrect statement of the law, but the Court's short-hand reference correctly summarizes

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Washington's Minimum Wage Act law as applied in this case, and as instructed to the jury, ECF No. 619 at 14. As the Court well knows, after four years of litigation, the Court dismissed all GEO's affirmative defenses and found no statutory exemptions apply. *See* ECF No. 650 at 16-17 (listing dismissals of GEO's residential and government facility exemptions). And consistent with the Court's statement, the Washington Supreme Court has explicitly recognized: "'[U]nder the MWA, an employee includes any individual permitted to work by an employer. This is a broad definition.'" *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 420 (Wash. 2014) (quoting *Anfinson v. FedEx Ground Package Sys., Inc*., 281 P.3d 289, 297 (Wash. 2012)).

To escape the Court's finding of "deliberate indifference," GEO claims a "narrow exception for where a governmental entity has provided affirmative, misleading information," and that the Department of Labor and Industries' ES.A.1 constitutes just that affirmative, misleading information. ECF. No. 637 at 13 (citing *Washington v. Minor*, 174 P.3d 1162, 1165 (Wash. 2008)). This fails on its face, because ES.A.1 nowhere suggests GEO is exempt from the MWA. NWDC is a privately owned and operated facility. Agreed Fact No. 1. ES.A.1 tracks the statutory exemptions to Washington Revised Code section 49.46, and subsection (k) applies only to "state, county, or municipal . . .  institutions" so work done by NWDC residents are not covered by its provisions. ECF No. 638-1 at 7. Further, GEO never remotely proved that it even knew of, let alone relied on, ES.A.1 in setting detainee worker pay rates at the NWDC. The evidence in fact supports the opposite conclusion—that GEO could not have relied upon L&I's guidance because there was no such guidance or final determination by L&I and GEO never asked L&I whether it should be paying detainee workers the minimum wage. Trial Tr. Oct. 21 (Grice) at 138:3-11.

**D.    The Court Referred to Prior and Correct Rulings Dismissing GEO's Derivative Sovereign Immunity Defense**

GEO next reiterates its Derivative Sovereign Immunity (DSI) defense, but the Court's refusal to absolve GEO of liability based on DSI was adequately set forth in the record and

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

substantively correct. *See* ECF No. 650 at 18-21. As a threshold matter, GEO's DSI defense was no longer in the case by Phase III of trial and is therefore not appropriately considered in GEO's current motion. The Court did not dismiss GEO's derivative sovereign immunity defense in its Unjust Enrichment findings of facts and conclusions of law, but made clear on the record that DSI "went by the wayside" earlier in the trial, explaining that "the reason for that is that [GEO] did not put up at evidence at trial to support that defense. In fact, it went by the wayside based upon the agreed facts in the case. It was not proven." UJE Order at 3:13-20.

Of course, the basis for the Court's decision was well known to GEO. Prior to trial, the Court had rejected GEO's DSI defense on multiple occasions. *See, e.g.*, ECF No. 288 at 9; ECF No. 302. During trial, the Court dismissed GEO's DSI defense after reviewing Washington's detailed Rule 50(a) motion setting forth the reasons that the defense fails. ECF No. 616; Trial Tr. Oct. 26 (The Court) at 5:9-16. Washington fully elaborated on the law and the evidence at trial that support rejection of GEO's DSI defense in its Rule 50 briefing, which are incorporated by reference herein. *See* ECF No. 611 (Washington Rule 50(a) brief); ECF No. 498 (Washington Rule 50(b) brief); ECF No. 508 (Washington's Opposition to GEO's Rule 50(b) Motion) at 19-21; ECF No. 650 (Washington's Opposition to GEO's Renewed Rule 50 Motion) at 18-21.

GEO also argues, contrary to the Court's findings about the clear notice in the contract, UJE Order at 7-8, and ample evidence in the record as described in *supra* IV.A.4, that its DSI defense should apply because there was "no reasonable basis for GEO to believe the MWA applied to detainees prior to this lawsuit," because no other court had made similar findings, Washington's governmental institutions had an exemption for prison labor, internal Department of Labor and Industries documents reveal that it had not made any determination about the applicability of the MWA at the NWDC, and ICE never informed GEO it was out of compliance with its contractual obligations. ECF No. 637 at 16-17. All of these arguments are irrelevant under governing DSI law and are misplaced in any event. By its own terms, the government facility exemption does not apply to the private NWDC run by GEO, Wash. Rev. Code §

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

23

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

49.46.010(3)(k); see Agreed Fact No. 1 (GEO owns and operates the NWDC), as the Court repeatedly ruled. *See, e.g.*, ECF Nos. 29 at 18; ECF No. 162 at 6–9; Nwauzor, ECF No. 280 at 13; ECF No. 529. Separately, GEO never knew about the internal L&I documents until after this litigation was initiated, ECF No. 625, and could therefore never have relied upon them. Further, ICE never audited for compliance with the state minimum wage, Trial Tr. Oct. 25 (Martin) at 14:15-19; 16:16-17:11 and Ex. 601 at 152-153, so ICE never telling GEO it needed to follow state law makes perfect sense. At the end of the day, it was GEO's discretionary actions—its *choice* to pay less than the minimum wage, even though it had the option to pay more, and obligation to follow state law—that give rise to GEO's liability, not actions it took under the federal government's specific direction.

If the Court were to supplement its findings of fact and conclusions of law, Washington suggests a supplemental finding on DSI to read: "If the federal contractor had no discretion, then derivative sovereign immunity applies. But here, ICE gave GEO discretion over the VWP and, specifically, the rate of pay for detainee workers, and GEO admitted that it had discretion to pay more than $1 per day. So, derivative sovereign immunity does not apply."

## V.    CONCLUSION

For the foregoing reasons, GEO's motion should be denied. To the extent the Court seeks to provide additional clarification of its findings and conclusions of law, Washington respectfully submits a proposed order containing supplemental findings consistent with the suggestions in this brief.

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

24

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

DATED this 29th day of November 2021.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington

s/Andrea Brenneke
MARSHA CHIEN, WSBA No. 47020
ANDREA BRENNEKE, WSBA No. 22027
LANE POLOZOLA, WSBA No. 50138
PATRICIO MARQUEZ, WSBA No. 47693
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
marsha.chien@atg.wa.gov
andrea.brenneke@atg.wa.gov
lane.polozola@atg.wa.gov
patricio.marquez@atg.wa.gov

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

25

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that the foregoing document was electronically filed with the United

3

States District Court using the CM/ECF system. I certify that all participants in the case are

4

registered CM/ECF users and that service will be accomplished by the CM/ECF system

5

6

     Dated this 29th day of November 2021.

7

8

                    CAITILIN HALL

9

                    Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATE OF WASHINGTON'S
RESPONSE TO GEO'S RULE 52
MOTION FOR JUDGMENT AS A
MATTER OF LAW

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744