The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON, | Case No.: 3:17-cv-05806-RJB |
| Plaintiff, | |
| v. | **THE GEO GROUP, INC.'S REPLY IN SUPPORT OF RULE 52 MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, AMENDMENT OF THE COURT'S ORDER** |
| THE GEO GROUP, INC., | |
| Defendant. | |
| | **NOTE ON MOTION CALENDAR:** Date: December 3, 2021 |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

THE GEO GROUP, INC.'S RULE 52 MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, IN THE
ALTERNATIVE, AMENDMENT OF THE COURT'S ORDER
(3:17-CV-05806-RJB)

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

As noted in GEO's Rule 52 motion, the Court's Oral Order issued on November 2, 2021 includes a number of factual and legal errors. In its Response, the State proposes changes to the order. Those proposed changes do not address the errors raised by GEO. To the contrary, the State's proposed additions appear to be no more than an effort to expand upon the erroneous findings made by the Court. This Court should reject the State's proposals and instead amend its order to conform with the factual findings in the record and controlling law as explained herein.

## I.   THE COURT'S FACTUAL FINDINGS MUST BE AMENDED

### A.   The VWP Changed Over Time.

The State fails to point to the evidence in the record that would demonstrate that the VWP did not change "from 2005, the time of the contract between GEO and ICE, until now." Tr. Trans. 11/22/21 at Pg. 4. Instead, the State misrepresents the evidence in the record and engages in burden shifting. To be sure, it was <u>the State's</u> burden to prove it was entitled to relief for the entire time period for which damages were claimed. It was not GEO's burden to disprove the State's theory. Yet, the State failed to introduce the critical documentary evidence at trial that controlled the operation of the VWP before 2015, namely, the prior contract and the prior PBNDS. Without those documents before this Court, there is no support for its finding that the VWP remained unchanged during the noted time period.

The State's purported basis for the Court's finding of continuity from 2005 to the present lacks any evidentiary support. First the State cites to three agreed facts: 8, 15, and 16. Dkt. 655 at 8. Yet, none of the agreed facts cited by the State supports the proposition that the VWP has not changed over time. The facts lack temporal limits and do not concede continuity. Rather, one fact demonstrates that <u>at the time of trial</u>, GEO could have paid more than $1 per day to detainees while another simply states that the program has been in operation since 2005, without commenting on any changes. To be sure, the admitted fact does not state that GEO had the unfettered option to pay more than $1 per day for the entire period from 2005 to the present. To the contrary, the constraints changed over time. And even where witnesses' testimony made clear that GEO had the

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 1
61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1  *option to pay* more than $1 per day, it was still subject to ICE's approval to actually pay more. Tr.

2  Trans. 10/13/21 at 203-205 (McHatton).

3       Indeed, as the State concedes in its brief, the prior version of the PBNDS "did not contain

4  the 'at least' language," instead compelling payment of exactly $1 per day. Dkt. 655 at 8. This is

5  certainly a significant change in the GEO-ICE contract that runs directly contrary to the Court's

6  factual findings. Accordingly, the Court's finding that "there have been some 16 years of failure

7  to follow the law <u>and the contract</u>," lacks any support given that the contract, and the constraints

8  related to the VWP, changed over time. Tr. Trans. 11/02/21 at 13:12-13 (emphasis added). Thus,

9  the Court's finding that the VWP did not change from 2005 to the present must be amended.

10  **B.   The Court's finding that the VWP's Operations Were Inconsistent With the Expectations in the GEO-ICE Contract Lacks Any Support in The Record.**

11

12       In its opposition, the State argues that the record supports a finding that GEO "misused"

13  detainee labor. Yet, its contention boils down to a single <u>unsupported</u> sentence: "The objective of

14  'improving essential services' is not synonymous with performing substantial portions of the core

15  work required of GEO under the contract—all the janitorial services in the secure areas, much of

16  the meal services." Dkt. 655 at 10. This <u>argument</u> is no more than the State's theory about how the

17  NWIPC should operate. It is not a factual basis for how GEO was contractually obligated to

18  operate. There is no support in the record for the proposition that a detainee's participation in

19  "substantial portions of the core work" regarding non-secure areas of facility operations was in

20  any way contrary to the expectations set forth in the GEO-ICE contract—indeed, exactly the

21  opposite conclusion is the correct one to make. At trial, there was no evidence that either of the

22  parties to the contract (GEO or ICE) intended fewer VWP participants. Instead, the evidence shows

23  that ICE approved of GEO's staffing plan, Tr. Trans. 10/14/21 at 51; that GEO complied with its

24  staffing plan, *id.*; Tr. Trans 10/18/21 at 163; and that ICE never informed GEO that it should

25  restrict the number of detainee volunteers and increase the staffing of GEO employees, *id.* at 169-

26  170. The fact that ICE never made such requests is dispositive since it is undisputed that ICE had

27

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 2
61165969;4

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1    final say over which detainees could participate in the VWP. Exhibit 129 at 82. The irrefutable

2    conclusion is that ICE's "Expected Outcome" that "[e]ssential operations and services shall be

3    enhanced through detainee productivity" Exhibit 127, Section 5.8, , is completely consistent with

4    the fact that VWP detainees are expected to provide substantial support to daily facility operations.

5    Insofar as the program met its express expectations regarding detainee workers, the same cannot

6    be classified as "misuse." Accordingly, the Court's factual conclusions are not supported by the

7    record.

8           Furthermore, there is no basis for the conclusion that the NWIPC was "understaffed" where

9    the staffing plan approved by ICE was followed. Had the State wished to show that ICE's

10   intentions were different than the written provisions in the GEO-ICE contract, it could have

11   solicited that testimony from ICE at trial. Instead, the State objected to testimony of ICE at trial.

12   Tr. Trans. 10/14/21 at 7-8. Nor did the State introduce an expert on the nuances of government

13   contracting to critique GEO's staffing levels. To the contrary, it successfully excluded the expert

14   who could have explained the expectations for staffing in government contracts. Dkt. 343. As such,

15   the State cannot now claim that the VWP was overused where all evidence from the contracting

16   parties undermines the State's argument and no contrary evidence was introduced at trial by the

17   State.

18          If ICE had believed that portions of the facility were understaffed, it would have sent GEO

19   a corrective action plan. *See e.g.,* Tr. Trans 10/13/21 at 197 (discussing a corrective action plan for

20   laundry staffing); Trial Exhibit 146 (same). From there, GEO would have adjusted its staffing. *Id.*

21   The only corrective action plan in the record was related to the laundry facilities. *Id.* GEO

22   responded to ICE's request by adding additional officers and detainee workers to the laundry area.

23   *Id.* Thereafter, ICE did not take issue with the revised staffing in the laundry area that also included

24   *additional* detainee volunteers. *Id.* This evidence cannot be ignored in favor of the State's

25   emotional and subjective plea that detainees should have been given fewer opportunities and less

26   time out of their dorms. In fact, a staffing plan with a large number of detainees supervised by a

27

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 3
61165969;4

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

smaller number of non-detained staff is consistent with the standard expectations and practices for detained individuals in Washington State.[1] Indeed, if all that was required for a finding of unjust enrichment was a subjective opinion that a facility was understaffed, the State's theory would expand the unjust enrichment doctrine too far.[2] In short, there is no evidence in the record that the facility was understaffed. Therefore, this Court must amend its findings which are supported only by the State's baseless arguments—not evidence.

Lastly, the State's argument that interpretation of the contract is "misplaced and irrelevant to Washington's claims" is incorrect because the Court's unjust enrichment ruling includes an interpretation of the contract. Specifically, the Court found that GEO "misuse[d] detainee labor to do the core work that was <u>required of GEO under the contract</u>[.]" Tr. Trans. 11/02/21 at Pg. 9; *see also* Tr. Trans. 11/02/21 (finding that "the government's interest and ICE's interest is in having the contract enforced according to its terms."). However, Court's failure to consider all portions of the contract and read them in harmony leads to an untenable construction of the Contract. Restatement (Second) of Contracts § 203 (1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."). A review of *all* the provisions in the Contract makes plain that the GEO-ICE contract expressly permits detainees in the VWP to perform work that is essential to the operations of the facility, *i.e.*, cooking, cleaning, and laundry.

---

[1] *See e.g.*, Washington grapples with license plate shortage brought on by pandemic, *available at* https://mynorthwest.com/3059274/washington-license-plate-shortage-pandemic-2021/ (last visited December 2, 2021) (noting that a team of four correctional complex staff and 30 detained individuals make most of the license plates for the State of Washington).

[2] *See e.g.,* Half of all workers say their companies are understaffed as labor shortage takes a toll on those still employed, *available at* https://www.cnbc.com/2021/11/05/half-of-all-workers-say-their-companies-are-understaffed-as-labor-shortage-takes-a-toll-on-those-still-employed-cnbcmomentive-workforce-survey.html (last visited December 2, 2021) ("Half of all workers say their companies are currently understaffed"); *see also* Washington hospitals brace for thousands of employees to leave, https://www.kiro7.com/news/local/washington-hospitals-brace-thousands-employees-leave/R44GEBCY2NBDXJZZANNSWAHTYE/ (last visited December 2, 2021) (discussing understaffing in Washington Hospitals).

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

61165969;4

1   Any finding that GEO's compliance with these provisions was a "failure to follow the contract"

2   or that GEO "misused" detainees in the VWP lacks an evidentiary basis and is clearly erroneous.

3   **C.   The Conclusion that the Minimum Wage Act Applies to ICE Detainees is a Novel Legal Conclusion, Not Longstanding Precedent of Which GEO Should have Been Aware.**

4   

5        The State's claim that GEO should have known that the Minimum Wage Act ("MWA")

6   applied to detainees at the facility ignores the reality of this case: as of the day before the jury

7   verdict, <u>no court or administrative agency had ever found that the MWA was applicable to detained</u>

8   <u>workers.</u> As this Court noted in its conclusions, some of its findings were "controversial," and this

9   Court made a plea to "other judges who review these proceedings" to follow its novel

10  interpretation. Tr. Trans. 11/02/21 at 18-19.

11       There is no evidence in the record that this result was likely or that it was foreshadowed by

12  case law. No agency, including the Attorney General, had ever reached out to GEO to

13  communicate such a novel interpretation. Tr. Trans. 10/21/21 at 128-132 (testimony of Grice); *Id.*

14  at 90 (testimony of Scott). Prior to the instant lawsuit, all precedent was clear that the MWA's

15  explicit terms excluded civil detainees from its reach. RCW 49.46.010(1)(k). In short, it was

16  reasonable for GEO to rely upon the then-existing legal landscape to determine that detainees were

17  outside of the scope of the MWA. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 107 (1971) ("[T]he

18  most [the litigant] could do was to rely on the law as it then was.") (citations omitted). There was

19  no indication that detainees fell within the ambit of the state's MWA. Washington Dkt. Nos. 304,

20  309, and 310 (admitted on 11/2/21). As such, a finding that GEO could have anticipated the jury's

21  novel application of the law lacks support in law[3] and fact.

22  **II.   THE COURT'S UNJUST ENRICHMENT FINDINGS MUST BE AMENDED.**

---

[3] Novel constructions wage and hour laws are subject to the rule of nonretroactivity. *Austin v. City of Bisbee, Ariz.*, 855 F.2d 1429, 1432 (9th Cir. 1988) ("We recognize that '[t]he longstanding common law rule is that a decision reformulating federal civil law will usually be applied retroactively.'"). Plainly stated, when a Court announces a new or novel rule of law, it cannot be applied retroactively if the party could not have reasonable anticipated the change in law. There is no reason to depart from that standard here.

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 5

61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1

**A.      The Court's Order Does not Support A Finding that GEO was Unjustly Enriched.**

2       The State acknowledges that the benefit allegedly conferred here was that of "failure to

3  pay [or collect] the minimum wage," Dkt. 655 at 11 (quoting Trial Tr., Nov. 2, 2021, at 12:7-8),

4  *i.e.*, the benefit of release from compliance with the MWA. Nevertheless, the State denies that the

5  unjust enrichment judgment depends on GEO being liable under the MWA. But the Court was

6  clear that "the first requirement" of unjust enrichment here was a "benefit conferred on GEO *by*

7  *the State of Washington*," and that the benefit Washington conferred was non-compliance with the

8  MWA. Trial Tr., Nov. 2, 2021, at 12:5-9 (emphasis added). In fact, the Court necessarily "ruled

9  that Washington's success on the unjust enrichment claim is impossible without its previous

10  success under the MWA," Dkt. 655 at 11. Accordingly, since GEO is not liable under the MWA,

11  *see, e.g.*, Dkt. 636; Dkt. 661, it is not liable for unjust enrichment.[4]

12       Moreover, as noted above, and in the evidence at trial, GEO operated innocently without

13  knowledge or constructive knowledge that payment under the MWA should have been made to

14  detainees in the VWP. The State's response fails to identify any evidence in the record to the

15  contrary. Thus, the inequitable circumstances required to support unjust enrichment are not present

16  and the State's claim must fail.

17  **B.      The State Had Adequate Legal Remedies.**

18       This Court's finding that GEO received a benefit is rooted in the underlying conclusion

19  that it was unjust for GEO to pay subminimum wages to VWP participants between 2005 and the

20  present. Tr. Trans. 111/02/21 at 12-13. The Court did not find that the benefit conferred upon GEO

21  was conferred by "all of the people in the State of Washington that were not detainee workers" as

22  the State now claims. As the jury (erroneously) found, detained individuals filled the VWP

23  positions as "employees", leaving no vacancies for others in the community to fill. In other words,

24

25

26  _____

[4] The State cites *Young v. Young*, 164 Wash.2d 477, 191 P.3d 1258, 1263 (2008), and *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 925-26 (10th Cir. 2018). But neither *Young*, which was not a minimum-wage case, nor *Menocal*, which did not involve Washington law, involved the benefit of non-compliance with the MWA.

27

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 6

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

61165969;4

no "workers in Pierce County [] miss[ed] out on job opportunities because of GEO's decision to employ detainees" as the State pleads. Dkt 655 at 18. Rather, the positions were filled with detainee workers from 2005 to 2014 (the period not covered by the Private class action). Thus, the State cannot rely upon the purported rights of non-detained individuals in Tacoma to justify its claim for equitable relief.

As for its representation of the detained population, this Court has held that the State was not subject to the statute of limitations in the MWA. Dkt. 466 ("There is no statute of limitations covering the State's claims in this case"). Therefore, the legal remedy available to the State left nothing to be resolved by equity. The State had an adequate remedy at law under the MWA—it could have brought a claim at law for back wages for 2014 backwards to fill the gap that the private plaintiffs were unable to collect. Thus, unjust enrichment is unavailable because an adequate legal remedy existed. *William Insulation Co. Inc. v. JH Kelly LLC*, No. C21-5083 BHS, 2021 WL 1894092, at *6 (W.D. Wash. May 11, 2021); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020) (federal courts are precluded from "from awarding equitable relief when an adequate legal remedy exists.").

Furthermore, the State cannot rely upon principles of deterrence to claim relief for unjust enrichment because the State had and availed itself of an adequate remedy at law to deter future wrongdoing: an injunction. As the Ninth Circuit has made clear, "injunctive relief is designed to deter future misdeeds." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990). "To put it another way, the purpose of a permanent injunction is not punishment but rather deterrence of future behavior." *United States v. Cannabis Cultivator's Club*, No. C 98-00085 CRB, 2002 WL 1310460, at *1 (N.D. Cal. June 10, 2002) (citing *Orantes-Hernandez*, 919 F.2d at 564). Therefore, the State had no need to turn to unjust enrichment to deter future violations.

## C.    There Was No Unmet Expectation of Benefit.

Nothing in the record suggests that the party allegedly conferring the benefit on GEO— "the State of Washington," Trial Tr., Nov. 2, 2021, at 12:6 – 7—expected payment for that

---

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 7

61165969;4

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

purported benefit. Nor, contrary to the State's view, did VWP workers expect to receive more than what they received while participating in the VWP. To be sure, the fact that detainees later engaged in activity to increase their stipend, whether work stoppages or lawsuits seeking minimum wage does not change the actual expectation they held at the time of entering into the voluntary work program. *See e.g.*, *In re Cascade Ag Servs., Inc.*, No. AP 15-01060-MLB, 2017 WL 5017405, at *10 (B.A.P. 9th Cir. Nov. 2, 2017) (the benefit of hindsight does not change the unjust enrichment analysis).

Here, participants in the VWP signed an agreement giving notice that they should *not* expect anything more than $1 per day. *See, e.g.*, Exhibit A-286 (VWP agreement stating that payment would be $1 per day); Trial Tr., Oct. 18, 2021, Marquez at 98:8–10 (Marquez affirming that she knew payment would be "a dollar a day"); Trial Tr., Oct. 14, 2021, Medina-Lara at 83:11–20, 84:12–16 (Medina-Lara affirming that "earning a dollar a day" was a reason for participating in the VWP). The legal enforceability of those agreements is immaterial to their status as evidence of detainees' expectations, and under Washington law, "the mere fact that a defendant has received a benefit from the plaintiff is insufficient alone to justify recovery." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 490, 254 P.3d 835, 844 (2011). Therefore, regardless of whether GEO benefitted from the State or from detainees' services, the benefit cannot be considered unjust where any conferee received exactly what was expected. *Cascade Ag Servs., Inc.*, 2017 WL 5017405, at *9.

**D.    The Conferral of Benefit Was Voluntary.**

"To be unjust as between the two parties, the party conferring the benefit must not be a volunteer." *Cascade Ag Servs., Inc.*, , 2017 WL 5017405, at *9 (*citing Lynch v. Deaconess Med. Ctr.*, 113 Wash. 2d 162, 165–66 (1989)). Washington Courts have explained that "[v]olunteers act even though they have no legal or moral obligation to do so." *Martin v. Han*, 15 Wash. App. 2d 1039, *review denied*, 197 Wash. 2d 1006, 483 P.3d 784 (2021). Here, there is no evidence or argument that the State of Washington had any moral or legal obligation to confer the benefit of

---

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 8
61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1   "failure to pay [or collect] the minimum wage," Trial Tr., Nov. 2, 2021, at 12:7-8, on GEO. Nor

2   is there any evidence that detainees had a moral or legal obligation to participate in the VWP. To

3   the contrary, the program was wholly voluntary. Indeed, the program itself is called the

4   "voluntary" work program for that reason. As volunteers, detainees (and by extension the State)

5   cannot now claim to have conferred a benefit sufficient to give rise to an unjust enrichment claim.

6   **E.   Washington's *Parens Patriae* Authority Is Inapplicable.**

7         The State's arguments regarding *parens patriae* argument—that "Washington need not

8   show that Washington itself conferred a benefit on GEO"—is also unavailing. This Court held that

9   "the first requirement" of the State's claim was a "benefit conferred on GEO *by the State of*

10  *Washington*." Trial Tr., Nov. 2, 2021, at 12:5-9 (emphasis added). The Court is right, to support a

11  claim for unjust enrichment, a plaintiff must "show that it conferred a benefit on [the defendant],

12  and the circumstances made it unjust for [the defendant] to retain the benefit without paying."

13  *Allyis, Inc. v. Schroder*, 197 Wash. App. 1082, 2017 WL 751329, at *5 (2017) (unpublished).

14        In any event, there is insufficient evidence in the record to support that the State may obtain

15  any benefit bestowed by detainees of GEO. The State's cases establish no more than that the

16  Attorney General has authority under RCW 43.10.030(1) to bring a cognizable cause of action on

17  behalf of "residents of the state," *City of Seattle v. McKenna*, 172 Wash. 2d 551, 562, 259 P.3d

18  1087, 1093 (2011). The State has provided no legal or factual authority that residents of the

19  NWIPC are residents of the State—and has not even tried to do so for anyone other than Mr.

20  Marquez, Ms. Gomez Sotelo, and Mr. Nwauzor—none of whom were in the class of people for

21  which the State seeks recovery (those housed at the facility from 2005 to 2014). Nor has it provided

22  legal authority regarding its ability to bring claims on behalf of individuals who are not

23  Washington residents.

24        Additionally, the State cannot exercise *parens patriae* authority on behalf of those who

25  may seek relief themselves. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652–53 (9th Cir.

26  2017) (*parens patriae* inappropriate where aggrieved party can seek private relief). Detainees in

27

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 9
61165969;4

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

the past could have brought claims for back wages they allegedly were due, just like Mr. Nwauzor did. They did not; accordingly, the State's *parens patriae* authority does not extend to the claims herein.

**F.     The Court's Conclusion that "Everybody in the State is obligated [to pay minimum wage], if they permit people to work" is Contrary to Law.**

In balancing the equities of the case, the Court found that anyone in Washington who permits another to work is obligated to pay that person the minimum wage. Tr. Trans. 11/2/21. This statement lacks a basis in law or fact. As the Ninth Circuit has made clear "[n]ot all people who work at the permission of another are entitled to the minimum wage. 'The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.'" *Wirtz v. San Francisco & Oakland Helicopter Airlines, Inc.*, 370 F.2d 328, 328 (9th Cir. 1966). Among those <u>not</u> entitled to the minimum wage are agricultural employees, volunteers, government employees, newspaper carriers, firefighters, and detainees interns. RCW 49.46.010(1). Common sense dictates that the scope of an employee is not defined simply by who is permitted to work—such a definition is overbroad and impermissibly vague. Indeed, federal jurors do not become the Court's employees simply because they are permitted to work and do not fall within an explicit statutory exemption. A neighbor who helps cut down a tree for someone in his community is not automatically converted into an "employee" because he was permitted to work. Nor are musicians or performers at the Pike Place market entitled to minimum wage from their audience. Thus, the Court's order must be amended as the legal standard articulated is unworkable and impermissibly vague.

The State's continued focus on the fact that the NWIPC is a "privately owned and operated facility" in its Response continues to be a red herring. Dkt. 655 at 26. Indeed, the language in ESA.1—the interpretive guidance from the Department of Labor and Industries—explicitly exempts detainees who work for private corporations, on facility premises, at rates established and

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 10
61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1  paid for by public funds from the definition of employee. Dkt. 638-1. As such, under the State's

2  own guidance, private companies may engage detainees for work at the place they are detained.

3  While this Court may ultimately disregard the L&I guidance and conclude that the exemption does

4  not extend to private contractors who engage with the federal government for the same work, that

5  does not change the fact that the statement of the law was incorrect. It is simply not accurate that

6  everybody in the state is obligated to pay minimum wage if they permit people to work.

7  **III.     The Court's Derivative Sovereign Immunity Analysis is Flawed.**

8       Contrary to the State's vague assertions, GEO's derivative sovereign immunity defense was

9  never limited to only the MWA claims. It has always been equally applicable to the State's unjust

10  enrichment claims. Importantly, the Court did not grant summary judgment in favor of the State

11  with respect to GEO's derivative sovereign immunity defense. Therefore, it properly addressed

12  GEO's derivative sovereign immunity defense ("DSI") separately in Phase III. *See* Tr. Trans.

13  11/4/21.

14       Unfortunately, the Court applied the wrong legal standard to determine whether DSI

15  applied. As explained in GEO's motion, "a government contractor is not subject to suit if (1) the

16  government authorized the contractor's actions and (2) the government 'validly conferred' that

17  authorization." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018)

18  (citing *Yearsley*, 309 U.S. at 20-21). Accordingly, "the appropriate inquiry is whether [the

19  contractor] adhered to the Government's instructions as described in the contract documents."

20  *Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 176 (5th Cir. 2021). The standard does not place

21  any weight on whether the contractor had discretion under the government contract, but instead,

22  whether it followed the directives provided by the government. The Court must apply the correct

23  legal standard in its order. Additionally, it must articulate the basis of its decision beyond a

24  statement that GEO failed to meet its burden. *Colchester v. Lazaro*, No. 21-35210, 2021 WL

25  4929601, at *10 (9th Cir. Oct. 22, 2021).

26

27

---

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 11
61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1   The State's opposition does not argue that a different legal standard than what was expressed

2   in *Cunningham* should apply. Instead, it raises only factual arguments. Dkt. 655 at 27-28. The facts

3   raised by the State do not compel a different result. There is no dispute that ICE directed GEO to

4   implement a VWP. Nor is there a dispute that ICE instructed GEO to pay $1 per day before 2015,

5   and "at least" $1 per day thereafter. Either way, the direction of ICE was to pay subminimum

6   wages. ICE was well aware of the rate of pay and did not instruct GEO to pay more, even after the

7   instant lawsuit was filed. Despite performing inspections annually, ICE never communicated to

8   GEO that detainees should be paid minimum wages. Tr. Trans 10/14/21 (McHatton). To the

9   contrary, when GEO paid detainees more than one dollar per day, ICE told GEO to "stop doing

10  that" because the payment "was supposed to be a dollar a day. Period." Tr. Trans. 10/13/21 at

11  205:12-16. Just as ICE instructed GEO verbally, the Contract also did not direct GEO to pay

12  detainees the state's minimum wage, but instead a minimum of $1 per day. Accordingly, viewing

13  the facts as a whole, GEO simply performed as ICE directed and is entitled to immunity.

### III.   CONCLUSION

15  For the above stated reasons, GEO respectfully asks the Court to enter judgment as a matter

16  of law in its favor, or in the alternative, to amend the final order to conform with the record and

17  applicable law.

18  Respectfully submitted, this 3rd day of December 2021.

19  **AKERMAN LLP**

20  By: *s/ Adrienne Scheffey*
    Adrienne Scheffey (Admitted *pro hac vice*)

21  1900 Sixteenth Street, Suite 950

22  Denver, Colorado 80202
    Telephone:  (303) 260-7712

23  Facsimile:  (303) 260-7714
    Email: adrienne.scheffey@akerman.com

24

25  By: *s/ Jacqueline M. Arango*
    Jacqueline M. Arango (Admitted *Pro Hac Vice*)

26  98 Southeast Seventh Street, Suite 1100
    Miami, Florida 33131

27

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 12
61165969;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

1

Telephone:  (305) 374-5600
Facsimile:   (305) 374-5095
Email: jacqueline.arango@akerman.com

2

3

By: *s/ Lawrence D. Silverman*

4

Lawrence D. Silverman (Admitted *pro hac vice*)
98 Southeast Seventh Street, Suite 1100

5

Miami, Florida 33161
Telephone:  (305) 982-5666

6

Facsimile:   (305) 374-5905
Email: lawrence.silverman@akerman.com

7

8

9

**FOX ROTHSCHILD LLP**

10

By: *s/ Al Roundtree*
Al Roundtree, #54851

11

1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154

12

Telephone:  (206) 624-3600
Facsimile:   (206) 389-1708

13

Email: aroundtree@foxrothschild.com

14

**THE GEO GROUP, INC.**

15

By: *s/ Wayne H. Calabrese*

16

Wayne H. Calabrese (Admitted *Pro Hac Vice*)
Joseph Negron Jr. (Admitted *Pro Hac Vice*)

17

4955 Technology Way
Boca Raton, Florida 33431

18

Telephone:  (561) 999-7344
Telephone:  (561) 999-7535

19

Email: wcalabrese@geogroup.com

20

Email: jnegron@geogroup.com

21

*Attorneys for Defendant The GEO Group, Inc.*

22

23

24

25

26

27

---

THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS
RULE 52 MOTION FOR JUDGMENT AS A MATTER
OF LAW OR, IN THE ALTERNATIVE, AMENDMENT
OF THE COURT'S ORDER
(3:17-CV-05806-RJB) – PAGE 13

**AKERMAN LLP**

1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

## PROOF OF SERVICE

I hereby certify on the 3rd day of December, 2021, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS RULE 52 MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE AMENDMENT OF THE COURT'S ORDER** via the Court's CM/ECF system on the following:

**OFFICE OF THE ATTORNEY GENERAL**
Marsha J. Chien
Andrea Brenneke
Lane Polozola
Patricio A. Marquez
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

*Attorneys for Plaintiff State of Washington*

*s/ Abigail DeWitt*
Abigail DeWitt

PROOF OF SERVICE
(3:17-CV-05806-RJB) – PAGE 14

**AKERMAN LLP**
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
Telephone: 303-260-7712

61165969;4