UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON,

Plaintiff,

v.

THE GEO GROUP, INC., a Florida corporation,

Defendant.

CASE NO. 3:17-cv-05806-RJB

ORDER ON STATE OF WASHINGTON'S MOTION FOR ATTORNEYS' FEES AND COSTS

THIS MATTER comes before the Court on the above referenced motion. Dkt. 640. The Court has considered all documents filed regarding the motion and is fully advised. Neither party has requested oral argument pursuant to Local Rule W.D. Wash. 7(b)(4).

In this case, the State secured injunctive relief enjoining The GEO Group, Inc. ("GEO") from violating Washington's Minimum Wage Act ("MWA") in the future, and a judgment of $5,950,340 for unjust enrichment. Dkt. 633. This case was consolidated, in part, with a private class action comprised of detainee workers who secured back wages under the MWA.

On October 27, 2021, in the first phase of these proceedings, the jury returned a verdict in favor of the Plaintiffs on the issue of whether GEO was liable under the MWA. Dkt. 620. In the second phase, the jury awarded damages to the class. In the final phase, the trial on the State's unjust enrichment claim was held and the State was awarded damages on that claim.

The State now moves for an award of $4,464,722.35 in attorneys' fees and $219,501.69 in non-taxable costs. For the reasons provided below, the State's motion (Dkt. 640) should be granted, in part, and it should be awarded $4,462,402.05 in attorneys' fees and $191,398.07 in non-taxable costs.

## DISCUSSION

### A. AVAILABILITY OF ATTORNEY'S FEES AND COSTS

The first question the Court must answer is whether there is any legal basis on which to award fees to the State. We know that the usual rules in the United States and in the State of Washington is "that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity." *McGreevey v. Oregon Mut. Ins. Co.,* 128 Wash.2d 26 (1995); *Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.,* 144 Wash.2d 130 (2001). Here, the State's claim is that it is a prevailing party, and that the MWA, RCW 49.46, and Wage Payment Collection Act, RCW 49.48, authorizes an attorney fee award.

The pertinent parts of the two Acts supporting a fee award are the following:

> Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee under this chapter, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.
>
> RCW 49.46.090(1) (MWA).
>
> In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer.
>
> RCW 49.48.030 (Wage Payment Collection Act).

There is no question that the State is the prevailing party here, nor is there any question that GEO is the "employer" here, having permitted the class members in the companion case, C17-5769RJB, to work. RCW 49.46.010.

In determining whether the State's judgment against GEO was for "wages or salary owed," we should consider the background of the State's role in this litigation.

The State sued GEO under its general authority. RCW 43.10.030. The suit was brought as an enforcement action to enforce the State's minimum wage laws. The State claimed that GEO was violating the state MWA and was thereby unjustly enriching itself. The prayer was for 1) an injunction preventing GEO from paying detainees less than the minimum wage; 2) a finding that GEO unjustly enriched itself by not paying the minimum wage; 3) disgorging the amount of unjust enrichment; and 4) attorneys' fees and costs. Dkt. 1.1.

Later, in the years of litigation, the class was joined for trial with the State's case because both Plaintiffs, as a basis for their claims, sought a jury finding that the MWA applied to the Voluntary Work Program and to GEO's detainees. Both Plaintiffs won that decision, the jury finding that GEO permitted the detainees to work and paid less than the MWA required. (*See* Dkt. 619, Jury Instructions, #16 at page 18, and Dkt. 620, Verdict).

At that point, the joint proceedings were over. In separate proceedings, the class won a verdict of $17,287,063.05 (Dkt. 522) for payment of the Washington State minimum wage for all work by the detainees who participated in the Voluntary Work Program since September 26, 2014 (less amounts paid). *See* C17-5769RJB, Dkt. 520, Jury Instruction #4 & Dkt. 522, Civil Judgment.

While the State did not participate in the class's damage case, it's participation in the joint phase of the case played an extremely important role in the trial that led to the class's wage recovery victory.

Armed with its success thus far, the State entered into the third phase of the proceedings – to prove damages. The State had, as GEO points out, consistently indicated that it was not seeking back wages, but unjust enrichment damages. The State argues that the damages awarded trigger eligibility for the fees requested pursuant to RCW 49.48.030.

"Section 49.48.030 is a remedial statute, which should be construed liberally to effectuate its purpose." *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett,* 42 P.3d 1265, 1267 (Wash. 2002). "In light of the liberal construction doctrine, Washington courts have interpreted [section] 49.48.030 broadly." *See, e.g., Arnold v City of Seattle,* 374 P.3d 111, 118-19 (Wash. 2016) (awarding attorney's fees under Section 48.49.030 even though the civil service commission that awarded the underlying wages owed itself lacked authority to award attorney's fees).

Other examples of broad interpretation of the statute are found in *Hanson v City of Tacoma,* 719 P.2d 104 (Wash. 1986)(holding "RCW 49.48.030 provides reasonable attorney fees <u>in any action</u> in which a person is successful in recovering judgment of wages or salary owed.")(*emphasis in original*), and *Fraser v. Edmonds Community College*, 147 P.2d 631 (Wash. Ct. App. 2006)(awarding fees under a promissory estoppel theory and holding that RCW 49.48.030 applied to "money due by reason of employment" regardless of the theory of recovery).

Washington State courts have also awarded fees when the judgment was based on an unjust enrichment theory in *Sambasivan v Kadlec Medical Center*, 171 Wash. App. 1013 (Wash Ct. App. 2012) and *Schoonover v. Carpet World,* 91 Wn.2d 173 (Wash. 1978).

It appears, from this broad interpretation of RCW 48.48.030, that the question is: exactly what did the State's money judgment consist of? Was it "money due by reason of employment?" Or, was it so far unrelated to wages and employment as to make the statute inapplicable? The answer to these questions is found in the Court's oral opinion included in the Memorandum of Decision (Dkt. 665).

The damage award to the State was not, as GEO alleges in its brief (Dkt. 652 at page 4) "for disgorgement of profits under its unjust enrichment theory of liability." The Court rejected the theory of disgorgement of profits. Dkt. 665, at page 13, lines 4-7).

The award was based on Dr. Nickerson's opinion of net estimated wages at the Washington State minimum wage (Dkt. 620) less the amount of the Plaintiff classes' judgment for back wages. *See* Dkt. 665, at page 7, line 20 to page 13, line 14 for the Court's discussion of the reasons for the award. The award was for what the evidence showed that GEO should have paid, less what the class recovered. Clearly, the judgment was based on the balance of money GEO should have paid for wages, but did not. That money was unfairly retained by the Defendant, and unfairly enriched the Defendant. It was clearly wages and "money due by reason of employment." *Fraser,* at 634.

It follows, from that analysis, that reasonable attorney fees and expenses should be awarded to the State, consistent with the prayer in the State's Complaint, which provides:

> 7.5 Find and declare that Defendant has been unjustly enriched by its practice of failing to adequately pay detainee workers for their labor at [Northwest Detention Center];

> 7.6 Order Defendant to disgorge the amount by which it has been unjustly enriched;
>
> 7.7 An award of reasonable attorneys' fees and costs that the State incurs in connection with this action.

Dkt. 1-1, page 7, paragraphs 7.5, 7.6, 7.7.

The State, as a successful litigant in recovering judgment for money due by reason of employment, is entitled to reasonable attorney's fees in an amount to be determined by the Court, against GEO, the employer or former employer. *See* RCW 49.48.030; and *Fraser,* at 634.

Added to the foregoing conclusion is the injunction secured by the State consistent with its prayer (Dkt. 633) and the jury verdict (Dkt. 620), finding that Defendant was in violation of the MWA. Both of which, along with the history of this litigation seeking workplace justice for detainees working for GEO, strongly, in equity, militate toward an award of fees and costs.

This opinion will now turn to the amount of attorneys' fees and costs that should be awarded.

**B. REASONABLE ATTORNEYS' FEE STANDARD**

In determining what attorney's fee is reasonable in a particular case, the court arrives at the "lodestar amount," that is, multiplying the number of hours reasonably expended by a reasonable hourly rate. Jordan v. Multnomah County, 799 F.2d 1262, 1265 (9th Cir. 1986) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "While in most cases the lodestar figure is presumptively reasonable, in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in Kerr v. Screen Extras Guild, Inc., 526, F.2d 67, 69–70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 982 (9th Cir. 2008) (internal and quotations citations omitted).

Under Kerr, the court considers the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951 (1976). These considerations are consistent with Washington Rules of Professional Conduct 1.5.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. Gates v. Gomez, 60 F.3d 525, 534-35 (9th Cir. 1995)." Id. The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. Id.

**C. LODESTAR**

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." Bell v. Clackamas County, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). In making its calculation, the Court should consider the experience, skill, and reputation of the attorneys requesting fees. Schwarz v. Sec'y of Health & Human Serv., 73 F.3d 895, 906 (9th Cir. 1995). The Court is further allowed to rely on its own

knowledge and familiarity with the legal market in setting a reasonable hourly rate. Ingram v. Oroudjiam, 647 F.3d 955, 928 (9th Cir. 2011).

The State requests that the Court approve a lodestar amount of $4,464,722.35. Following are the State's lawyers, their hourly rates, as well as the paralegals and their hourly rates:

Assistant Attorney General Marsha Chien requests $377 per hour. Dkt. 641. Ms. Chien has practiced law for over 11 years. Id.

Former Assistant Attorney General La Rond Baker requests $377 per hour and has practiced for over 11 years. Dkt. 641.

Assistant Attorney General Andrea Brenneke requests $417 per hour. Dkt. 641. Ms. Brenneke has practiced law for almost 30 years. Id.

Assistant Attorney General Lane Polozola requests $320 per hour and has practiced law for 10 years. Dkt. 641.

Assistant Attorney General Patricio Marquez requests $417 per hour. Dkt. 641. He has practiced law for around 19 years. Id.

Paralegal Judy Tucker has 19 years of experience. Dkt. 641. She requests $136 per hour. Id.

Alma Poletti is an investigator and has been with the Civil Rights Division since 2017. Dkt. 641. Her billing rate is $191. Id.

These rates are reasonable for the community and should be used to calculate fees. The rates claimed by the State's lawyers and paralegals are within the range of what is reasonable in the Western District of Washington at Tacoma. This opinion will now turn to the number of hours billed.

In the Ninth Circuit, "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). A district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)(*citing McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2008)).

The 12,886.55 hours claimed by the State are reasonable. While GEO complains that the State's requested hours were substantially greater than the class action's lawyers' request, it is appropriate here. The State's case schedule was ahead of the class case's schedule. The State had an additional claim, additional discovery was sought from it, had to litigate before the Ninth Circuit, and had to contend with additional defenses that did not apply to the class. In light of the circumstances here, "the time could reasonably have been billed to a private client." Moreno, at 1111.

GEO complains that attorneys' fees (and costs which will be addressed below) incurred in connection with the June 2021 trial, that ended with a hung jury, are not recoverable. Dkt. 652 (citing Goldstine v. FedEx Freight Inc., Western Dist. Wash. case number 18-1164 MJP, 2021 WL 952325 (W.D. Wash. March 12, 2021). In Goldstine, the court sua sponte declared a mistrial noting that both sides were responsible for the unreadiness of the case for trial. That is not the case here. Neither side caused the mistrial. It was necessary for all counsel to continue, seamlessly, with the litigation. The preparation for, and conducting, the first trial cannot reasonably be separated out from the whole litigation effort that finally led to the resulting jury verdict. The State should be awarded the time its lawyers spent on the first trial.

GEO argues that travel time should not be awarded when calculating a fee award and asserts that the State claims $146,844.40 in local travel time. Dkt. 652. The State has shown that the travel time was reasonable. The time to which GEO points often includes both travel and the event, like "travel and meeting," "trial and travel" or "travel and unload trial materials." The hours claimed were not unreasonable.

GEO argues that the State should not be awarded paralegal time for clerical tasks, identifying 11.8 hours, for a total of $2,320.30. Dkt. 652. The State indicates that it disagrees, "but is willing to forgo the 11.8 hours GEO identified." Dkt. 659.

GEO complains that it was unreasonable for the State's lawyers to bill for time for strategy conferences with the lawyers representing the plaintiffs in the class action and with supervising Assistant Attorney General Marquez. Dkt. 652. The State properly points out that the case was tried jointly with the class and that coordination was critical. The State reduced the hours spent in conferences with the class action lawyers by 220 hours and eliminated 380 hours related to Mr. Marquez's time. The State's claims for the hours spent in conferences with the private class' attorneys and for Mr. Marquez's time supervising them are reasonable.

GEO's assertion that State's counsel "block billed" (Dkt. 652) is unwarranted. The State's counsel adequately explained how they spent their time. GEO's criticism, that the State overstaffed the case with too many lawyers, is not well taken considering the number of lawyers that appeared for it. Overall, the hours claimed by the State are not "excessive, redundant, or otherwise unnecessary." Gonzalez, at 1203.

Based on a review of the time records submitted, $4,464,722.35 less $2,320.30, for the reduction referred to above, results in a reasonable lodestar amount for attorneys' fees in this case of $4,462,402.05.

**D. KERR FACTORS**

The State indicates that it is not seeking an upward adjustment of the lodestar figure. Dkt. 640. A quick review of those factors is necessary to determine whether a downward adjustment is appropriate.

After making the lodestar computation, the court must assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the factors announced in Kerr. Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). "Only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees." Id. Likewise, in Washington, an adjustment to the lodestar amount is "considered under two broad categories: the contingent nature of success and the quality of the work performed." Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 598 (1983). These categories are considered in the Kerr factors and the Kerr analysis applies to the Bowers considerations. Each of the Kerr factors (along with Bowers considerations) will be addressed below.

1. The Time and Labor Required. The Court has commented on the time and labor required in determining reasonable hours. The time required was extraordinary. No further analysis is warranted.

2. Novelty and Difficulty of Questions. Many of the issues in this case were somewhat novel, complex and difficult; some involved a straightforward application of the MWA. The State prevailed on most of the critical issues, and the ultimate issue decision marked the first time such an issue was decided in a plaintiff's favor. This factor does not favor an adjustment to the lodestar amount.

3. Requisite Skill, Quality of Work (*Bowers Consideration)*, and Preclusion of Other Employment. This case required skill to perform the legal services properly. The quality of

representation was good. The requisite skill and quality of representation are reflected in the hourly rates charged, which, although reasonable in the community, are on the high end. The case precluded other employment by these attorneys more than other cases would, due to the length of the litigation. The lodestar amount should not be altered based on this factor.

4. Customary Fee, Whether the Fee is Fixed or Contingent (both a *Kerr* and *Bowers* consideration), and Time Limits. The customary fee in wage cases is basically the lodestar amount. Enhancements are not customary. This was not a fixed or a contingent fee case for the State. There is no evidence that any unusual time limits were placed on counsel, either by the client or by the circumstances except regarding the mistrial and retrial. The lodestar amount should not be altered on these factors.

5. Amount Involved and Results Obtained. The substantial amount involved and the excellent results obtained warrant no change to the lodestar amount. The verdict was a total victory for the State after long (from 2017) and torturous litigation.

6. Experience, Reputation and Ability of Attorneys, Undesirability of Case and Relationship with Clients. The consideration of the experience, reputation, and ability of these attorneys is addressed above in the lodestar and no further consideration is required. The undesirability and risks of the case, the nature and length of the professional relationship with the clients, do not favor an enhancement or reduction of the lodestar.

7. Awards in Similar Cases. No other case supports a change in the lodestar amount.

8. Conclusion. The lodestar amount should be accepted. The State should be awarded, in attorneys' fees, the lodestar amount of $4,462,402.05.

**E. STATE'S MOTION FOR NON-TAXABLE COSTS**

As stated above, the MWA permits recovery of non-taxable costs (expenses of litigation) "as may be allowed by the court." RCW 49.46.090(1). The State has also filed a motion with the Clerk of the Court for taxable costs. Dkt. 643. In the instant motion, the State claims non-taxable costs in the amount of $219,501.69. Dkts. 641 and 659.

The MWA is a remedial statute and so it is construed "liberally to a achieve the legislature's broad public policy objectives." *McConnell v. Mothers Work, Inc*., 131 Wn. App. 525, 532 (2006). Accordingly, the MWA allows for "costs for expert witnesses; depositions and transcripts not used at trial; travel expenses; mediation fees; ordinary office expenses such as postage, phone, fax, copying, and so forth; and parking." *Id.*

The State's motion for an award of non-taxable cost should be granted, in part. Contrary to GEO's assertions, the State's claimed costs are sufficiently documented.

GEO complains that the State's request for reimbursement of hotel and parking (for over $12,000) is unreasonable and unwarranted because the State's office is less than an hour's drive away. Dkt. 652. It also argues that the State should not be awarded costs associated with video editing or synchronizing. Id. The State has sufficiently established these expenses (travel and video editing or synchronizing) as necessary to its success at trial.

GEO asserts that the State should not be awarded costs associated with the mistrial and that State's claim for $28,103.62 for Zoom costs for the first trial should also be denied. Dkt. 652. The State is entitled to recover most of the costs associated with the first trial. The first unsuccessful trial was a necessary part of the litigation required here. However, it is not entitled to the Zoom costs that it claims. The State claims costs for items like equipment rental, consultation, and trial support from an outside entity. These were unnecessary expenses; several

professionals are handling matters on Zoom without spending these substantial sums. The State's claimed costs of $219,501.69 should be reduced by $28,103.62. Accordingly, the State should be awarded $191,398.07 in non-taxable costs. Taxable costs will be determined by the Clerk of the Court.

**ORDER**

It is **ORDERED** that:

(1) The State's Motion for Attorneys' Fees (Dkt. 640) **IS GRANTED, IN PART, AND DENIED, IN PART**:

- The State is awarded **$4,462,402.05** in attorneys' fees; and

(2) The State's Motion for Costs (Dkt. 640) **IS GRANTED, IN PART, AND DENIED, IN PART:**

- The State is awarded **$191,398.07** in non-taxable costs.

The Clerk is directed to enter a supplemental judgment for these amounts.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 14th day of December, 2021.

ROBERT J. BRYAN
United States District Judge